**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-90273 (MI) |
| Debtors. | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u>
MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING DEBTORS TO (A) CONTINUE
INSURANCE PROGRAM AND (B) PAY ALL OBLIGATIONS
WITH RESPECT THERETO; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 7:30 a.m. on September 23, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 23, 2022 at 7:30 a.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing Debtors to (i) continue their insurance program and (ii) pay obligations with respect thereto; and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 364(c), and 503 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

**BACKGROUND**

5. On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6. The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space. With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs. In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales. The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

7. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this

Motion, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

## I. The Debtors' Insurance Program

8. The Debtors maintain approximately twenty (20) insurance policies (collectively, the "Insurance Policies")[3] that are provided by approximately thirteen (13) third-party insurance carriers (collectively, the "Insurance Carriers") through a program (the "Insurance Program") administered by Aon Risk Services Central, Inc. (the "Insurance Broker"). In connection with the operation of their businesses and the management of their properties, the Insurance Policies provide the Debtors with coverage for, among other things, general liability, business auto coverage, commercial property coverage, equipment breakdown coverage, ocean air cargo marine coverage, builders risk coverage, management liability, employment practices liability ("EPL"), crime coverage, and cyber coverage. In addition, the Insurance Policies include excess coverage for many of the Insurance Policies. The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry. A detailed list of the Insurance Policies is attached hereto as **Exhibit B**,[4] which is incorporated herein by reference.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

[3] The Debtors maintain additional employee-related insurance policies. These policies and programs are described, and relief is requested with respect thereto, in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

[4] The descriptions of the Insurance Policies set forth in **Exhibit B** are only summaries. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion. The Debtors request relief with respect to Insurance Policies payable to all Insurance Carriers, regardless of whether such Insurance Carrier is specifically identified on **Exhibit B**.

### A. Insurance Premiums

9. To procure and maintain the Insurance Policies, the Debtors pay premiums (the "Insurance Premiums") that are fixed at the beginning of the period during which the Debtors are insured (the "Policy Period"). As of the date hereof, the total amount in annual Insurance Premiums and payments associated with all of the Insurance Policies is approximately $3,582,798,[5] which is paid by the Debtors to the Insurance Carriers or Insurance Broker, as applicable. The Insurance Premiums are paid annually and due for each of the Insurance Policies on the date when coverage goes into effect for each respective new Policy Period, apart from the builders risk Insurance Policies for which premiums for the entire construction period, typically 6–9 months, are due approximately 30 days prior to groundbreaking. The Debtors do not believe any Insurance Premiums are due and outstanding but not yet paid as of the Petition Date. The Debtors seek authority, but not direction, to pay any Insurance Premiums in the ordinary course of business.

### B. Deductibles

10. Some of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, "Deductibles"). Generally, if a claim is made against the Insurance Policies, the Insurance Carriers administer the claim and make payments in connection therewith. As applicable, the Debtors must pay the Insurance Carrier the amount of any required Deductible which ranges from $5,000 to $250,000 for the various Insurance Policies. The Debtors do not believe any Deductibles are due and outstanding, but not yet paid as of the Petition Date. The

---

[5] Some of the Insurance Policies cover certain non-Debtor affiliates and operations. To the extent that there are amounts of Insurance Premiums apportioned to those non-Debtor affiliates or operations, they will be reconciled through reimbursement from the non-Debtor affiliates.

5

Debtors seek authority, but not direction, to continue paying applicable Deductibles that arise in the ordinary course of business.

### C. Premium Financing

11. The Debtors entered into three premium financing agreements (the "Financing Agreements") with Aon Premium Finance, LLC ("AON"), to finance the premiums and taxes due under the management liability, crime, and cyber Insurance Policies. The total annual premiums financed pursuant to the Financing Agreements are approximately $1,185,450 and the Financing Agreements carry interest rates of 2.99% percent. Under the terms of the Financing Agreements, the Debtors granted Aon security interests in all payments made with reference to the policies listed above, including gross return premiums and payments on account of losses which result in reduction of unearned premiums. The Debtors pay approximately $1,203,690 annually under the Financing Agreements and, as of the Petition Date, there is an outstanding amount of $692,989 under the Financing Agreements. The Debtors expect to renew the Aon Financing Agreements, with a renewal term starting approximately March 21, 2023. The Debtors will owe the first payment of approximately $117,000 on or around April 23, 2023. The Debtors seek authority, but not direction, to make postpetition payments that will become due under the Financing Agreements in the ordinary course and to renew, extend, or enter into new premium financing agreements, in the ordinary course of business, during the Chapter 11 Cases.

### D. Insurance Broker

12. The Insurance Policies are currently managed through the Insurance Broker. The coverage obtained with the assistance of the Insurance Broker has allowed the Company to operate its business in a reasonable and prudent manner and to realize savings in the procurement of such Insurance Policies.

13. The Debtors generally pay premiums under the Insurance Policies to the Insurance Broker who then remits such payments to the Insurance Carriers. The Insurance Broker receives an annual brokerage fee and commissions (the "Insurance Broker Fees," and together with the Insurance Premiums, the Deductibles, and any other associated payments, the "Insurance Obligations") in exchange for their services. For services rendered by the Insurance Broker to the Debtors, the Debtors will pay approximately $300,000 annually. Of this amount, the Debtors do not anticipate any payments will come due postpetition, however, the Debtors request authority, but not direction, to pay the Insurance Broker Fees in the ordinary course. The Debtors also request authority to continue utilizing the Insurance Broker or retain any other Insurance Broker the Debtors deem appropriate in the ordinary course of business.

E. **Continuation of Insurance Program**

14. Continuation of the Insurance Policies, and entry into new insurance policies, is essential to the preservation of the value of the Debtors' business, properties, assets, and operations. In some instances, continuation of the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the requirement of the Office of the United States Trustee that a debtor maintain adequate coverage.

15. Therefore, the Debtors request authorization to maintain, amend, extend, terminate, renew, or replace the Insurance Policies, as necessary, in the ordinary course of business, including authorization to pay any prepetition claims arising on account of any Insurance Obligations and continue the Insurance Program. The Debtors respectfully submit that the postpetition continuation of their existing Insurance Policies falls squarely within the ordinary course of business and have only sought relief pursuant to this Motion with respect to the payment of postpetition Insurance Obligations out of an abundance of caution.

**BASIS FOR RELIEF**

I. **Maintenance of the Insurance Policies Is Necessary to Comply with the Bankruptcy Code, the U.S. Trustee Operating Guidelines, and Applicable Non-Bankruptcy Law**

16. The Insurance Policies provide a comprehensive range of protection for the Debtors' business, properties, and assets. It is essential that the Debtors' insurance coverage continue in full force and effect during the Chapter 11 Cases.

17. Section 1112(b)(4)(C) of the Bankruptcy Code provides that the "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).

18. In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 7 (the "U.S. Trustee Operating Guidelines"), which includes the Southern District of Texas.

19. The Debtors believe it is essential to their estates and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that they continue to satisfy all obligations related to the Insurance Policies and have the authority to maintain, amend, extend, terminate, renew, and/or replace the Insurance Policies as needed in the ordinary course of business without further order of the Court.

II. **Sections 105(a), 363(b), 363(c), and 1107(a) of the Bankruptcy Code Support Maintenance of Insurance Program**

20. Section 363(c)(1) of the Bankruptcy Code provides that a debtor may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1). The maintenance of the Insurance Policies are ordinary course transactions and the Debtors are authorized by section 363(c)(1) of the Bankruptcy Code to pay obligations arising thereunder postpetition.

21. Additionally, pursuant to section 363(b) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

22. Moreover, section 105(a) of the Bankruptcy Code states that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" provides a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").

23. In addition, under section 1107(a) of the Bankruptcy Code, a debtor has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

24. Satisfying possible outstanding or future obligations related to the Insurance Policies is warranted under sections 105(a), 363(b), 363(c), and 1107 of the Bankruptcy Code.

Continuation of the Insurance Policies is essential to preserving uninterrupted operations and the value of the Debtors' estates. Failing to maintain the Insurance Policies would impair—if not altogether halt—the Debtors' ability to operate, resulting in a material adverse effect on the Debtors' business and the value of their estates.

25. Based on the foregoing, the Debtors respectfully submit that the maintenance and continuation of the Insurance Policies and the payment of any obligations (including prepetition obligations) arising therefrom or relating thereto should be authorized under sections 105(a), 363(b), 363(c), and 1107(a) of the Bankruptcy Code. Such relief is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases.

### III. To the Extent the Court Determines that the Financing Agreements Are a Secured Extension of Credit, Relief Is Appropriate under Section 364 of the Bankruptcy Code

26. Under section 364(c) of the Bankruptcy Code, the Debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets. 11 U.S.C. § 364(c). To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). To the extent the Financing Agreements are deemed an extension of credit, section 364 of the Bankruptcy Code provides the Debtors ample authority to renew such arrangement as necessary.

27. Continuing the Financing Agreements are necessary to finance the premiums due under the ocean air cargo marine, management liability, and cyber Insurance Policies. Failure to maintain the Financing Agreements may jeopardize the Debtors' ability to operate their business.

Therefore, the Debtors seek authority, but not direction, to renew the Financing Agreements and make postpetition payments in connection therewith, or extend or enter into new premium financing agreements, in the ordinary course of business, to the extent necessary during the Chapter 11 Cases.

## EMERGENCY CONSIDERATION

28. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested in this Motion could jeopardize the Debtors' ability to restructure. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

29. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

30. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any

11

grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

31. The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Insurance

Carriers; (h) the Insurance Broker; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request entry of the Order, granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated: September 22, 2022
Houston, Texas

/s/ *James T. Grogan III*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (pro hac vice admission pending)
Daniel Ginsberg (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
sayanbhattacharyya@paulhastings.com
danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                     */s/ James T. Grogan III*
                                                     James T. Grogan III

**Certificate of Service**

I certify that on September 22, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                     */s/ James T. Grogan III*
                                                     James T. Grogan III