**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*[1] | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 7:30 a.m. on September 23, 2022.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 23, 2022 at 7:30 a.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **Isgur's home page.  The meeting code is "JudgeIsgur".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page.  Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (i) authorizing the Debtors to: (a) pay prepetition wages, salaries, compensation, reimbursable expenses, and certain incentives to Employees (as defined below) (collectively, the "Compensation"); and (b) continue providing Employees with benefits (the "Benefits") pursuant to the Employee Benefits Programs (as defined below) in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (ii) granting related relief.

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362, 363, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4002-1 and 9013-1 of the Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

5.      On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6.      The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space.  With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs.  In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales.  The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands-on

experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

7.     CN Wolf Hollow LLC, Compute North NE05 LLC, and CN Borrower LLC are non-Debtor affiliate entities controlled by Generate Lending, LLC (the "Generate Entities"). Pursuant to that certain Property Management Agreement (the "Wolf Hollow PMA") dated as of April 28, 2022, by and among CN Wolf Hollow LLC and Compute North LLC ("Compute North"), the Debtors manage and operate the data center, commonly referred to as "Wolf Hollow," located in Granbury, TX.  Pursuant to that certain Property Management Agreement (the "Kearney PMA" and, together with the Wolf Hollow PMA, the "PMAs") dated as of February 7, 2022, by and among Compute North NE05 LLC and Compute North, the Debtors manage and operate the data center, commonly referred to as "Kearney," located in Kearney, NE.  Pursuant to the PMAs, the Debtors provide various management services to Wolf Hollow and Kearney in exchange for fixed fees, potential bonus payments, and reimbursement of certain expenses. In order to comply with the terms of the PMAs, certain of the Debtors' Employees provide services to Wolf Hollow and Kearney either on-site at the locations or remotely.

8.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, is set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

## THE DEBTORS' WORKFORCE

9.      As of the Petition Date, the Debtors employ approximately 148 employees (collectively, the "Employees"), consisting of approximately 87 full-time salaried Employees, approximately 60 full-time hourly Employees, and 1 part-time hourly Employee.  All Employees are employed by Compute North.  In addition to the Employees, the Debtors supplement their workforce by utilizing independent contractors (the "Independent Contractors") sourced periodically from various staffing agencies (the "Staffing Agencies") who provide critical support to the Debtors' operations and support the efforts of the Debtors' Employees.  As of the Petition Date, the Debtors employ the services of three (3) Independent Contractors.

10.      Compute North has a co-employment relationship with Insperity PEO Services, L.P. ("Insperity"), the terms of which are set forth in that certain *Client Service Agreement*, effective as of May, 2018 (collectively, with all related agreements, amendments, and modifications, the "Insperity CSA").  Under the Insperity CSA, Insperity serves as the legal co-employer of the Employees and handles certain administrative responsibilities for human-resources related functions, including payroll, employee benefits, timecards, and certain Employee records.  Although the Debtors handle the day-to-day management of the Employees and their activities related to the Debtors' core business, Insperity supports the Debtors in many critical personnel issues.  The Debtors pay Insperity for the cost of Employee wages and benefits, as well as Insperity's fees for these services each pay period.

11.      The Employees perform a wide variety of services that are critical to the Debtors' businesses and restructuring efforts.  Their skills, knowledge, and understanding of the Debtors' infrastructure and operations are essential to the continued operation and viability of the Debtors' businesses and preserving operational stability and efficiency.  Many of the Employees are highly

trained personnel who are not easily replaced.  Without their continued, uninterrupted services, the Debtors will not be able to maintain their operations during these Chapter 11 Cases.

12.     The Debtors believe that the vast majority of the Employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families.  Thus, Employees will be exposed to significant financial hardship if the Debtors are not permitted to continue payment of their compensation, provide benefits, and maintain existing programs. The Debtors seek to minimize any personal hardship the Employees would suffer if the employee obligations described herein were not satisfied by the Debtors when due or expected.  The Debtors intend to continue their prepetition employee practices, programs, and policies in the ordinary course of business on a postpetition basis and, subject to the Court's approval of the relief sought herein, to pay prepetition amounts related thereto.

**EMPLOYEE COMPENSATION AND BENEFITS**

13.     The Debtors believe that, as of the Petition Date, the aggregate amount of accrued prepetition Compensation and Benefits is approximately $726,750.00.[3]  The prepetition amounts owing in relation to the Compensation and Benefits that the Debtors are seeking authority to pay pursuant to this Motion are summarized in the following table:

| Employee Compensation and Benefits | Estimated Prepetition Amount Outstanding | Estimated Amounts Attributable to Wolf Hollow and Kearney |
|---|---|---|
| **Compensation** | | |
| Unpaid Compensation | $600,000.00 | $70,000.00 |
| Withholding Obligations | $0.00 | $0.00 |
| Employer Payroll Taxes | $45,000.00 | $8,000.00 |
| Reimbursable Expenses | $13,000.00 | $3,000.00 |

---

[3]     As summarized in the accompanying table, of the $726,750.00 in accrued prepetition Compensation and Benefits, approximately $90,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

| | | |
|---|---|---|
| Independent Contractors and Staffing Agency Obligations | $13,000.00 | $0.00 |
| Administration Fees | $16,000.00 | $4,000.00 |
| **Employee Benefits Programs** | | |
| Medical Benefit Programs | $28,000.00 | $4,000.00 |
| Insurance Benefits Programs | $0.00 | $0.00 |
| 401(k) Plan | $8,000.00 | $1,000.00 |
| Leave Policy | $0.00 | $0.00 |
| **Workers' Compensation Obligations** | $0.00 | $0.00 |
| **Employee Incentive Programs** | $3,750.00 | $0.00 |
| **Board Fees** | $0.00 | $0.00 |
| **TOTAL:** | **$726,750.00** | **$90,000.00** |

## I.    Compensation

14.    The Debtors, through Insperity, provide compensation for its Employees and its Independent Contractors and pay various related administration fees and taxes related to such compensation. The Debtors' compensation falls within the following categories (each as defined below): (a) Employee Compensation, (b) Withholding Obligations, (c) Employer Payroll Taxes, (d) Reimbursable Expenses, (e) Independent Contractor and Staffing Agency Obligations, and (f) Administration Fees (collectively, the "Compensation").  The Debtors estimate that, as of the Petition Date, the aggregate accrued, but unpaid prepetition amounts related to the Compensation totals approximately $687,000.00.[4] The categories of Compensation are explained in more detail below.

### A.    Employee Compensation

15.    In the ordinary course, the Debtors incur obligations to their Employees for, among other things, wages, salaries, bonuses, overtime, and other obligations described herein (collectively, the "Employee Compensation"). In the ordinary course, the Debtors pre-fund Insperity for all Employee Compensation owed to the Employees.  Insperity is responsible for

---

[4]    Of the $687,000.00 in accrued prepetition Compensation, approximately $85,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

administering and distributing the Employee Compensation to the Employees.  Historically, Insperity pays obligations relating to the Employee Compensation bi-weekly every other Friday. On average, the Debtors, through Insperity, pay approximately $1,300,000.00 per month for all Employee Compensation.  Payroll often varies depending upon taxes, overtime, and other factors. The Debtors' last scheduled payroll before the Petition Date was disbursed to Employees on September 16, 2022.

16.     The Debtors estimate that, as of the Petition Date, the aggregate amount of accrued, but unpaid prepetition Employee Compensation totals approximately $600,000.00 (the "Unpaid Compensation").[5]  The Debtors seek authority to continue paying, through Insperity,  the Employee Compensation in the ordinary course and to pay the Unpaid Compensation in full, up to the $15,150.00 priority cap under section 507(a)(4) of the Bankruptcy Code.  The Debtors do not believe that they owe any Employee an amount in excess of the priority wage cap.  As described above, loss of the Unpaid Compensation that the Employees are owed could cause such Employees to experience financial hardship.  In light of the substantial benefit the Employees will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship.

### 1.     Withholding Obligations and Employer Payroll Taxes

17.     During each applicable payroll period, the Debtors, through Insperity, routinely deduct certain amounts from Employees' paychecks, including garnishments, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain Employee benefit plans discussed below, such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions

---

[5]   Of the $600,000.00 in accrued but unpaid prepetition Unpaid Compensation, approximately $70,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

(collectively, the "Deductions"), and forward such amounts to various third-party recipients.  The total amount of Deductions during the month of August were $111,932.78.

18.     In addition to the Deductions, the Debtors, through Insperity, are required by law to withhold from Employees' salaries, wages, and other compensation amounts related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Withholding Taxes" and, together with the Deductions, the "Withholding Obligations") and remit them to the appropriate taxing authorities (collectively, the "Taxing Authorities").  As of the Petition Date, the Debtors do not believe that there are any amounts owed on account of the Withholding Obligations, other than those that are included in the Unpaid Compensation set forth above. The Debtors seek authority to continue collecting, through Insperity, and remitting the Withholding Obligations incurred in the ordinary course and to remit any prepetition amounts withheld, or otherwise required to be paid.

19.     The Debtors, through Insperity, are also required by law to make payments from their own funds on account of Social Security and Medicare taxes and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (the "Employer Payroll Taxes").  As of the Petition Date, the Debtors estimate that the amount outstanding on account of the Employer Payroll Taxes is approximately $45,000.00.[6]  The Debtors seek authority to continue, through Insperity, paying the Employer Payroll Taxes incurred in the ordinary course and to remit any prepetition amounts related thereto.

---

[6]     Of the $45,000.00 in prepetition Employer Payroll Taxes, approximately $8,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

### B.     Reimbursable Expenses

20.     In the ordinary course of business, the Debtors, through Insperity, reimburse their Employees for certain eligible business-related expenditures ("Reimbursable Expenses") incurred by the Employees while performing their duties on the Debtors' behalf.  Reimbursable Expenses typically include expenses associated with travel, transportation, lodging, meals, personal vehicle use, entertainment, professional and technical organizational dues, trainings and seminars, office equipment and supplies, and other reasonable business-related expenses.

21.     The Debtors reimburse Employees for Reimbursable Expenses through direct reimbursement of out-of-pocket expenses.  Employees who pay for their own Reimbursable Expenses up front can apply for reimbursement by submitting a daily record of expenses, which shows the date, business location (city and state), and business purpose.  Receipts must be attached for individual meals, entertainment, lodging, auto rental, cab fare, and commercial travel.  Once the Debtors have determined that the charges are for legitimate reimbursable business expenses, the Debtors, through Insperity, reimburse the Employees for such expenses.  The uninterrupted processing of Reimbursable Expenses is imperative to the smooth operation of the Debtors' business.  Any interruption would be value destructive and may result in Employee attrition.

22.     As of the Petition Date, the Debtors estimate an aggregate of approximately $13,000.00 in accrued but unpaid prepetition Reimbursable Expenses remain outstanding.[7] Although the Debtors ask that Employees submit reimbursement requests promptly, sometimes submission delays occur and Employees may submit reimbursement requests for prepetition Reimbursable Expenses postpetition.  Employees incurred the Reimbursable Expenses as business

---

[7]     Of the $13,000.00 in accrued but unpaid prepetition Reimbursable Expenses, approximately $3,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

expenses on the Debtors' behalf and with the understanding that the Debtors would fully reimburse such expenses.   Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses and who may become personally liable for such expenses, the Debtors seek authority to pay, through Insperity, such prepetition Reimbursable Expenses and to continue paying the Reimbursable Expenses in the ordinary course of business.

### C.    Independent Contractor and Staffing Agency Obligations

23.    In addition to the Employees, from time to time, the Debtors rely on and make payments to Independent Contractors for the performance of certain services critical to the Debtors' operations.  The Employees rely on the support of Independent Contractors to complete discrete projects that help the Debtors' business and fill short-term positions that are not economically feasible to fill on a full or part-time basis with the Employees.  The Debtors believe the authority to continue paying its Independent Contractors is critical to minimize disruption of the Debtors' continued business operations.  As of the Petition Date, the Debtors have contracted with approximately three (3) Independent Contractors.

24.    The Debtors source and pay the Independent Contractors through various Staffing Agencies (the "Independent Contractor Obligations").  As of the Petition Date, the Debtors utilize the services of two Staffing Agencies, Hello Temp, Inc. and Roth Staffing Companies, LLP, and pay certain fees related thereto (together with the Independent Contractor Obligations the "Independent Contractor and Staffing Agency Obligations").   The Debtors believe the authority to continue utilizing and paying the Staffing Agencies for the continued service and supply of Independent Contractors is critical to the Debtors' business operations.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid Independent Contractor and Staffing Agency Obligations are approximately $13,000.00.   Accordingly, the Debtors are seeking the

authority to pay any prepetition amounts relating to the Independent Contractor and Staffing Agency Obligations and to continue paying any further in the ordinary course of business.

### D.    Administration Fees

25.    As previously stated, the Debtors pay Insperity for the cost of Employee wages and benefits, as well as Insperity's fees for these services each pay period, pursuant to the Insperity CSA (the "Administration Fees"). The Administration Fees are paid each pay period along with the cost of Employee wages and benefits. The Debtors pay approximately $13,000.00 per pay period on account of the Administration Fees.

26.    As of the Petition Date, the Debtors estimate that the accrued amount outstanding on account of the Administration Fees is approximately $16,000.00.[8]  The Debtors' relationship with Insperity is vital to the Debtors' progress moving forward as a company. As previously noted, the relationship with Insperity allows the Debtors to (a) realize substantial cost savings with respect to the administration of its Employee payroll and benefits by not having to employ additional human resources professionals and administer payroll and benefit programs in several states, and (b) significantly reduce and contain the costs of participating in certain benefit programs, including the medical plans, relative to the costs of participating in those programs without a third-party intermediary like Insperity. As such, the Debtors are seeking the authority to continue paying the Administration Fees in the ordinary course of business.

## II.    Employee Benefits Programs

27.    In addition to the aforementioned payment-related obligations, the Debtors maintain various Employee benefit plans and policies for eligible Employees. The benefit

---

[8] Of the $16,000.00 in accrued but unpaid prepetition Administration Fees, approximately $4,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

programs fall within the following categories (each as defined below): (a) Medical Benefits Program, (b) Insurance Benefits Program, (c) Other Benefit Programs, (d) 401(k) Plan, and (e) Leave Program (collectively, the "Employee Benefits Programs").  All full-time Employees who have registered at least thirty (30) days of services are eligible for the Employee Benefits Programs.  The Debtors estimate that, as of the Petition Date, the aggregate accrued, but unpaid prepetition amounts related to Employee Benefits Programs totals approximately $36,000.00, which will not exceed the cap set forth in section 507(a)(5) of the Bankruptcy Code on a per Employee basis.[9]  The Employee Benefits Programs are explained in more detail below.

**A.      Medical Benefits Program**

28.      The Debtors offer their Employees and their dependents the opportunity to participate in a number of health benefits plans, including medical, dental, and vision plans (collectively, the "Medical Benefits Program").  As of the Petition Date, the Debtors estimate that they owe approximately $28,000.00 on account of the Medical Benefits Program.[10]  The Debtors seek authority to continue, through Insperity, administering and paying their obligations under the Medical Benefits Programs in the ordinary course and to pay, in full, any prepetition amounts on account thereof.  Each Medical Benefits Program is set forth in more detail below.

**1.      Medical Plan**

29.      The Debtors, through Insperity, offer medical coverage (the "Medical Plans") to eligible Employees and their dependents through UnitedHealthcare ("UHC").  Under the Medical Plans, participants receive coverage for, among other things, preventive care, doctor visits, hospital

---

[9]   Of the $36,000.00 in accrued prepetition amounts related to Employee Benefits Programs, approximately $5,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

[10]   Of the $28,000.00 owed on account of the Medical Benefits Programs, approximately $4,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

care, prescription drugs, and wellness.  The Debtors, through Insperity, partially or fully subsidize the Medical Plans depending on the plan selected and whether the participant has dependents covered by the plan.  The Debtors, through Insperity, pay approximately $45,000.00 a month on account of the Medical Plans.  To the extent the Employee's participation is not fully covered, the participating Employee's contributions are deducted from their paychecks.  Amounts due under the Medical Plans are paid each pay period and accrue on a daily basis.  As of the Petition Date, the Debtors believe approximately $22,000.00 is accrued and outstanding under the Medical Plans.

### 2.    Dental Plan

30.    The Debtors, through Insperity, offer eligible Employees dental coverage (the "Dental Plan"), through UHC.  Under the Dental Plan, participants receive coverage for, among other things, routine exams, cleaning, x-rays, fillings, and oral surgery.  The Dental Plan is fully funded by the premiums paid by eligible Employees that participate in the program.  The Debtors do not contribute to the Dental Plan, but withhold, through Insperity, the applicable premiums from participating Employees' salary and wages each pay period.  As such, the Debtors do not believe that there are any amounts outstanding on account of the Dental Plan as of the Petition Date.  The Debtors seek authority to continue withholding, through Insperity, and remitting the applicable premiums under the Dental Plan in the ordinary course of business.

### 3.    Vision Plan

31.    The Debtors, through Insperity, offer eligible Employees vision coverage (the "Vision Plan"), through UHC.  Under the Vision Plan, participants receive coverage for, among other things, benefits for frames, retinal screening, contact lenses, and medical exams for a host of vision related conditions.  The Vision Plan is fully funded by the premiums paid by eligible employees that participate in the program.  The Debtors do not contribute to the Vision

Plan, but withhold, through Insperity, the applicable premiums from participating Employees' salary and wages each pay period. As such, the Debtors do not believe there are any amounts outstanding on account of the Vision Plan as of the Petition Date. The Debtors seek authority to continue withholding, through Insperity, and remitting the applicable premiums under the Vision Plan in the ordinary course of business.

### 4.    Health Savings Account

32.    For Employees who participate in the high deductible Medical Plan, the Debtors, through Insperity, offer access to health savings accounts ("HSAs"), through Optum Bank ("Optum"). Participating Employees can opt to make pre-tax contributions to their individual HSA through payroll deductions to cover reimbursements under the program up to the maximum amount permitted by the Internal Revenue Service. The Debtors, through Insperity, transfer approximately $7,000.00 per pay period in withheld Employee contributions in connection with the HSAs. The Debtors do not contribute to the HSAs, but withhold, through Insperity, the applicable contributions from participating Employees' salary and wages each pay period. As of the Petition Date, the Debtors do not believe there are any amounts outstanding on account of the HSAs. The Debtors seek authority to continue withholding, through Insperity, and remitting the applicable Employee contributions in connection with the HSAs in the ordinary course of business.

### 5.    Flexible Spending Account Plan

33.    The Debtors, through Insperity, also offer eligible Employees the ability to enroll in a health care flexible spending account plan (the "FSA Plans"), through Optum. Participating Employees can elect to make pretax contributions up to the annual maximum through payroll deductions for qualifying health care expenses incurred during the plan year. Eligible expenses include copays, coinsurance, and deductibles for medical, prescription, dental and vision expenses,

as well as certain over-the-counter health care expenses.  The Debtors, through Insperity, transfer approximately $700.00 per pay period in withheld Employee contributions in connection with the FSA Plans.  The Debtors do not contribute to the FSA Plans, but withhold, through Insperity, the applicable contributions from participating Employees' salary and wages each pay period.  As of the Petition Date, the Debtors do not believe there are any amounts outstanding on account of the FSA Plans.  The Debtors seek authority to continue withholding, through Insperity, and remitting the applicable Employee contributions in connection with the FSA Plans in the ordinary course of business.

### 6.     COBRA

34.     Under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), Employees and their families who are terminated have the right to continue their health benefits from their employer for a limited period of time and under certain circumstances. COBRA benefits are provided to exiting Employees as required by law.  The Debtors reimburse, through Insperity, the monthly premiums associated with the COBRA benefits for three (3) former Employees, averaging a totaling of $6,000.00 per month (the "COBRA Obligations").  As of the Petition Date, the Debtors believe approximately $6,000.00 is accrued and outstanding on account of the COBRA Obligations.  The Debtors seek authority to pay, through Insperity, any prepetition amounts on account of the COBRA Obligations and to continue to pay any such obligations that come due in the ordinary course.

### 7.     Employee Assistance Program

35.     To encourage and improve the health and well-being of the Employees that may be faced with personal challenges, the Debtors provide Employees access to an employee assistance program (the "Employee Assistance Program").  The Employee Assistance Program, provides

confidential support, counseling, as well as customized resources and referrals to help Employees and their immediate families with work-life services, health information lines, and legal and financial services referrals.  As of the Petition Date, the Debtors do not believe there are any amounts outstanding on account of the Employee Assistance Program.

> **B.** **Insurance Benefits Program**

36.     The Debtors offer insurance benefit plans to the Employees under various policies and programs, in some cases automatically and in others upon election by an eligible Employee. These include Basic Life & AD&D Insurance Plans and the Supplemental Insurance Plans (each as defined herein, and together, the "Insurance Benefits Programs").  As of the Petition Date, the Debtors do not believe there are any amounts owed on account of the Insurance Benefits Programs. The Debtors seek authority to continue the Insurance Benefits Programs, and all constituent plans and programs, in the ordinary course of business.  The Insurance Benefits Programs are described in more detail below.

> **1.** **Basic Life & AD&D Insurance Plans**

37.     The Debtors, through Insperity, provide all eligible Employees, automatically at no cost to such eligible Employees, with basic life and accidental death and dismemberment insurance coverage (the "Basic Life and AD&D Insurance Plan"), which is administered and fully insured by New York Life ("NYL").  Premiums vary based upon the number of employees who receive coverage and the plan elections by employees but total approximately $2,484.76 per month.  The Debtors pay amounts due and owing under the Basic Life and AD&D Insurance Plan monthly in advance.  As of the Petition Date, the Debtors do not believe there are any outstanding amounts on account of the Basic Life and AD&D Insurance Plan.

### 2.     Voluntary Life & AD&D Insurance Plan

38.     Employees can also elect, through Insperity, to purchase additional insurance coverage plans (the "Supplemental Insurance Plans") at their own expense.  The Supplemental Insurance Plans include additional voluntary life and voluntary accidental death and dismemberment coverage, which is provided by NYL.  Premiums for the Supplemental Insurance Plans are deducted from program participants' payroll and then transferred by the Debtors, through Insperity, to NYL.  The Debtors do not contribute any amounts under the Supplemental Insurance Plans, but deduct, through Insperity, the applicable premiums from participating Employees' salary and wages each pay period.  As of the Petition Date, the Debtors do not believe there are any outstanding amounts on account of the Supplemental Insurance Plans.  The Debtors seek authority to continue deducting, through Insperity, and remitting the applicable premiums in connection with the Supplemental Insurance Plans in the ordinary course of business.

### 3.     Disability Plans

39.     The Debtors, through Insperity, provide eligible Employees with long-term disability benefits (the "Long-Term Disability Benefits").  Eligible Employees can also elect to purchase short-term disability benefits (the "Short-Term Disability Benefits," and together with the Long-Term Disability Benefits, the "Disability Plans").  The Disability Plans provide income protection if an Employee is unable to perform his or her job due to illness or injury (including pregnancy/childbirth).  The Short-Term Disability Benefits are limited to 60% of an Employee's covered weekly earnings up to $2,308.00 per week and begins fourteen days after disability (the "Elimination Period"), lasting until the earlier of the date at which the Employee is no longer disabled or twenty four (24) weeks following the Elimination Period.  The Long-Term Disability Benefits are limited to 60% of the Employee's covered monthly earnings up to $10,000.00 per

month and begins after six (6) continuous months of disability.  The duration of the Long-Term Disability Benefits will depend on the circumstances of the disability and the age of the Employee. The Debtors do not contribute to the Disability Plans, but withhold, through Insperity, the applicable premiums from participating Employees' salary and wages each pay period.  As such, the Debtors do not believe there are any amounts outstanding on account of the Disability Plans as of the Petition Date. The Debtors seek authority to continue withholding, through Insperity, and remitting the applicable premiums under the Disability Plans in the ordinary course of business.

   **C.    Other Benefit Programs**

   40.    The Debtors offer certain other benefit plans and programs to eligible Employees under various policies and programs.  These include the Commuter Benefits Program and the Adoption Assistance Program (each as defined herein, and together, the "Other Benefit Programs").  As of the Petition Date, the Debtors do not believe there are any amounts owed on account of the Other Benefit Programs.  The Debtors seek authority to continue the Other Benefit Programs in the ordinary course of business.  The Other Benefit Programs are described in more detail below.

   **1.    Commuter Benefits Program**

   41.    The Debtors, through Insperity, offer all Employees the opportunity to participate in a commuter benefits program that allows them to save on their work commute by paying for eligible mass transit and/or parking expenses with pretax dollars (the "Commuter Benefits Program").  Eligible mass transit fees include tickets, passes, tokens, vouchers or fares for buses, trains, subways, ferries, streetcars, commercial vanpools or other mass transportation vehicles an Employee may use to travel between their residence and the workplace.  The cost of commuting in a taxi or in a personal car or van is not included.  Eligible parking fees include the cost of parking at or near an Employee's place of work, or parking fees for a location from which an Employee

19

commutes to work via mass transportation or a vanpool, such as a park-and-ride lot.  Residential

parking fees are not eligible under the Commuter Benefits Program.  Expenses are automatically

deducted from participating Employees' paychecks on a pretax basis, up to the monthly limits

established by the Internal Revenue Service for the current calendar year.  Expenses above the

monthly pretax limit are deducted on an after-tax basis from the participating Employee paycheck.

As of the Petition Date, the Debtors do not believe there are any outstanding amounts on account

of the Commuter Benefits Program.

### 2.    Adoption Assistance Program

42.      The Debtors, through Insperity, offer all eligible Employees the opportunity to

participate in an adoption assistance program (the "Adoption Assistance Program").  The Adoption

Assistance Program is available to full-time Employees who work thirty (30) or more hours per

week, on average, with at least 180 days of continuous service prior to the date of the final adoption

decree(s).  If an eligible Employee is adopting a child through private adoption or a licensed

adoption agency, such Employee may be reimbursed up to $1,500.00 for eligible adoption

expenses, per qualified adoption.  Expenses eligible for reimbursement must be directly related to

and with the main purpose of adoption of an eligible child, and include (a) reasonable and

necessary adoption fees, and (b) court costs and attorney's fees.  Under the Adoption Assistance

Program, the reimbursement of expenses is not available for the adoption of a stepchild(ren), or

the child(ren) of a spouse/domestic partner, or expenses related to any surrogate parenting

arrangement.  Additionally, travel and lodging expenses associated with an adoption are also

excluded.  As of the Petition Date, the Debtors do not believe there are any outstanding amounts

on account of the Adoption Assistance Program.

### D.     401(k) Plan

43.     The Debtors offer eligible employees the opportunity to participate in a tax-qualified defined contribution retirement plan (the "401(k) Plan").  The 401(k) Plan is provided by Charles Schwab Trust Bank and is administered by Perfect401(k) (the "401(k) Plan Trustee"). Only those full-time Employees who are at least twenty-one years old and have registered at least three (3) months of services to the Debtors are eligible to participate in the 401(k) Plan.  Once an Employee has satisfied the eligibility requirements, they may enter the 401(k) Plan on the first of the month.  The 401(k) Plan is primarily funded by withholdings from Employees' wages and salaries (the "401(k) Plan Withholdings").  The Debtors remit the 401(k) Plan Withholdings to the 401(k) Plan Trustee, as soon as practicable after a contributing Employee's payroll is processed.  In addition, as part of the 401(k) Plan, the Debtors make discretionary matching contributions of $0.25 per every $1.00 contributed by eligible Employees, up to $1,000.00.  The Debtors fund these matches concurrent with the Employee contributions.  As of the Petition Date, the Debtors estimate that they will owe approximately $8,000.00 in accrued prepetition matching contributions.[11]  The Debtors seek authority to continue the 401(k) Plan, honor their obligations thereunder in the ordinary course and to remit and pay any prepetition amounts on account of the 401(k) Plan, including matching contributions consistent with historical practices.

### E.     Leave Policy

44.     The Debtors provide eligible employees with paid and unpaid time off benefits that include (a) PTO, (b) Parental Leave, and (c) Other Leave Policies (each as defined below, and collectively, the "Leave Policy").

---

[11]   Of the $8,000.00 owed on account of prepetition matching contributions, approximately $1,000.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

45.     The Debtors believe that the continuation of the Leave Policy in accordance with prior practice is essential to maintaining employee morale during these Chapter 11 Cases.  Further, the Leave Policy is a broad-based program upon which Employees have come to depend.  Finally, the Debtors anticipate that most of the Employees will use any accrued paid leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.  As of the Petition Date, the Debtors do not believe there are any amounts owed on account of the Leave Program. The Debtors request authority to continue the Leave Policy in the ordinary course and consistent with past practice and to honor any amounts accrued thereunder prior to the Petition Date.

### 1.     Paid Time Off

46.     As part of the Leave Policy, eligible Employees generally accrue paid time off ("PTO") on a pro rata basis per pay cycle as follows, based on their years of service to the Debtors: (a) Employees with 4 years or less of service earn 4.61 hours of PTO, per pay cycle and up to a maximum of 120 hours of PTO annually; (b) Employees with 5 to 9 years of service earn 6.15 hours of PTO, per pay cycle and up to a maximum of 160 hours of PTO annually; and (c) Employees with 10 or more years of service earn 7.69 hours of PTO, per pay cycle and up to a maximum of 200 hours of PTO annually.  Under the Debtors' PTO policy, an Employee may carry-over a PTO balance from one calendar year to the next, up to a maximum of 80 hours of accrued PTO.

47.     Under the Debtors' PTO policies, upon the separation of employment between an Employee and the Debtors, he or she, subject to applicable state laws, is entitled to receive payment, through Insperity, for their accrued but unused PTO upon separation (the "PTO Obligations").  For the avoidance of doubt, the Debtors are seeking authority to permit Employees

to take PTO during the pendency of these Chapter 11 Cases in the ordinary course of business.  To the extent that any Employees are entitled to a cash out of accrued PTO, the Debtors seek authority to pay any such amounts, subject to applicable statutory caps.[12]

### 2.    Parental Leave

48.    The Debtors also offer parental leave of absence to eligible Employees for the birth or adoption of a child, prenatal care, or incapacity due to pregnancy, childbirth, or related health conditions ("Parental Leave").  Employees are eligible for up to twelve (12) weeks of Parental Leave if they have worked for at least twelve (12) consecutive months preceding the request for an average of twenty (20) hours per week.  The Debtors offer up to six (6) weeks of total time off for Parental Leave.  If additional paid time off is needed, Employees can use accrued, yet unused, PTO hours.  Employees may continue to use the benefits afforded to them under the Medical Benefits Programs for up to twelve (12) weeks.

### 3.    Other Leave Policies

49.    In addition to PTO and Parental Leave, the Debtors provide certain other forms of paid and unpaid leave (collectively, "Other Leave Policies"), including:

- paid and unpaid leave under the Family and Medical Leave Act of 1993 for: (a) birth, adoption, or foster care, (b) family care, (c) medical emergencies, (d) military exigencies, and (e) military caregiving needs; and

- other paid and unpaid leaves of absence for personal reasons, many of which are required by law, including missed work time in the ordinary course of business for time spent voting, and unpaid leaves of absence for family medical emergencies, bereavement, and military service.

---

[12]    The Debtors reserve all rights to seek later relief to pay any required cash out in excess of the statutory cap.

### III.     Workers' Compensation Program

50.     The Debtors, through Insperity, maintain workers' compensation insurance for employees at the levels required by laws in the states in which the Debtors operate (collectively, the "Workers' Compensation Program").   The Debtors maintain coverage for the Workers' Compensation Program for non-monopolistic states through a policy with the coverage period of October 1, 2021 to October 1, 2022 (the "Chubb Policy") issued by Chubb Limited ("Chubb"), who also administers the Workers' Compensation Program.  Contributions under the Chubb Policy are paid, through Insperity, per pay period on a bi-weekly basis.   The average bi-weekly contribution for the Chubb Policy is approximately $3,400.00.[13]

51.     The Debtors, through Insperity, must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[14]  As of the Petition Date, the Debtors believe that there is approximately one (1) open claim under the Workers' Compensation Program.   The Debtors do not pay claims under the Workers' Compensation Program because they are fully insured under the Chubb Policy.

52.     The Debtors request (a) authority to continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis, including by renewing or replacing the

---

[13]   Of the $3,400.00 bi-weekly contributions on account of the Chubb Policy, approximately $800.00 is attributable to Employees who perform services at or on behalf of Wolf Hollow and Kearney.

[14]   The Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary, subject to applicable law.

Chubb Policy, and (b) that the Court modify the automatic stay solely to allow Employees to assert claims, if any, under the Workers' Compensation Program.

## IV.     Employee Incentive Programs

53.     In the ordinary course of business, to encourage and reward outstanding performance and attract and retain valuable employees, the Debtors offer certain eligible Employees the opportunity to earn additional compensation under certain programs (collectively, the "Employee Incentive Programs"), including, (a) the 2022 Bonus Program,  and (b) the Employee Referral Program (each as defined below).  The Debtors seek authority, out of an abundance of caution, to continue administering the Employee Incentive Programs, pay any outstanding prepetition amounts relating thereto, and to continue paying amounts thereunder in the ordinary course of business.[15]

### A.     2022 Bonus Program

54.     The Debtors currently maintain an incentive bonus program for eligible Employees, which helps align company performance and individual performance among the Employees (the "2022 Bonus Program").   Only full-time, non-commission Employees are eligible to participate in the 2022 Bonus Program.  Part-time or commission Employees, interns, Independent Contractors, and any Employee with a documented warning or on a performance improvement plan at the time of any bonus payment are not eligible to participate.  Under the 2022 Bonus Program, the Debtors have implemented certain performance-based metrics, which correspond with company growth, and issue bonus payments to Employees based on a multiple of the past performance of the Debtors and the individual Employee.  Payments under the 2022 Bonus

---

[15]   The Debtors also maintain a sales commission incentive program (the "Commission Program") which recognizes the efforts and strategic execution of certain Employees in bringing in large scale hosting contracts to the Debtors. The Debtors are not seeking authority to honor the Commission Program at this time.

Program are currently scheduled to be paid to eligible Employees after year-end, with a target date of March 15, 2023.  As of the Petition Date, the Debtors estimate that there are no amounts outstanding under the 2022 Bonus Program.  The Debtors seek authority, out of an abundance of caution, to continue paying any awards that may come due under the 2022 Bonus Program in the ordinary course of business after the Petition Date.

### B.  Employee Referral Program

55.     In the ordinary course of business, eligible Employees who refer candidates that are hired by the Debtors are eligible for a referral bonus ("Employee Referral Program").  Employees who meet the requirements of the Employee Referral Program receive a referral bonus of $625.00 when the referral begins his or her employment and another $625.00 after the referral has been employed for six (6) months.  As of the Petition Date, the Debtors estimate that approximately $3,750.00 remains outstanding under the Employee Referral Program.  The Debtors could incur an additional $5,000.00 in obligations under the Employee Referral Program if certain referrals remain employed for the Debtors for at least six (6) months.

### V.  Board Fees

56.     In the ordinary course of business, the Debtors pay fees ("Board Fees") to three (3) independent directors (the "Independent Directors") of the board of directors (the "Board") of the Debtors, which oversees all of the Debtors' operations.  The Board Fees include (a) a monthly fee of $10,000.00 for all Independent Directors and (b) a monthly fee of $15,000.00 for membership on any special committee of the Debtors.  The Board Fees are generally paid monthly in advance. In addition, the Debtors reimburse the members of the Board for reasonable and documented out-of-pocket expenses.  As of the Petition Date, the Debtors do not believe there are any amounts owed on account of the Board Fees.  The Debtors seek authority, out of an abundance of caution,

to pay any outstanding prepetition Board Fees and to continue paying the Board Fees in the ordinary course of business after the Petition Date.

**BASIS FOR RELIEF**

**I.      Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits**

      **A.      Certain Compensation and Benefits Are Entitled to Priority**

57.      Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits owed to the Employees to priority treatment.  Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code requires the Debtors to pay wages, salaries, commissions, vacation, severance, sick leave, and contributions to employee benefits plans as administrative priority claims up to a limit of $15,150.00 per individual.  Because such claims are priority claims, the Debtors are required to pay them in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment in full of certain allowed unsecured claims for (a) wages, salaries, or commissions, including severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  Thus, granting the relief requested herein with respect to payment of certain amounts up to the priority cap will likely only affect the timing of such payments, and should not negatively affect recoveries for general unsecured creditors. Payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties as the continued operation of the Debtors' business relies on the employees, without whom the Debtors would have to shut down operations and the enterprise value of their business would greatly decline.

      **B.      Payment of Certain Compensation and Benefits Is Required by Law**

58.      The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees'

paychecks.  Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see In re Chabrand*, 301 B.R. 468, 475–81 (Bankr. S.D. Tex. 2003) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

59.     Similarly, state laws require the Debtors to pay the Employer Payroll Taxes and maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program or pay the Employer Payroll Taxes, state and federal laws may prohibit the Debtors from operating.  Payment of all Workers' Compensation Program and Employer Payroll Tax amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' restructuring.

## II.     Payment of the Employee Compensation and Benefits Is Warranted Under Sections 105(a), 363(b), and 1107 of the Bankruptcy Code

60.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's

request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons.  *See, e.g.*, *Inst'l Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale.").

61.     Further, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").  Additionally, section 1107 of the Bankruptcy Code provides that a debtor in possession has, among other things, an "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497).

62.     Payment of the Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases.  The Debtors believe that the vast majority of the Debtors'

employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families.  Thus, the Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits.  Consequently, the relief requested is necessary and appropriate.

63.     Moreover, the Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that, absent the payment of the Compensation and Benefits owed to the Employees, the Debtors may experience turnover and instability at this critical time.  The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships they may face, causing them to elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their employees, which cannot be replaced without significant efforts—which efforts may not be successful given the potential overhang and stigma associated with being a debtor in possession.  Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario.  Payment of the prepetition obligations with respect to the Compensation and Benefits is thus a necessary and critical element of the Debtors' efforts to preserve value and will provide the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these Chapter 11 Cases.

64.     Accordingly, the Debtors request that the Court authorize the Debtors to pay the prepetition and postpetition obligations specified herein and to continue the Compensation and Benefits in the ordinary course of business and consistent with past practice.

III.   **A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here**

65.    Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

66.    Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).  Cause exists here to modify the automatic stay to permit the Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum.  Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees.

IV.   **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfer**

67.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of the anticipated use of cash collateral.  In addition, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Compensation and Benefits, as applicable.  Accordingly, the Debtors believe there is minimal risk that checks, ACH transfers, or wire transfer requests the Court has not authorized will be made inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, ACH transfers, or wire transfer requests in respect of the relief requested in this Motion.

## EMERGENCY CONSIDERATION

68.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested could jeopardize the Debtors' ability to restructure.  The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

69.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

70.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any

creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## <u>NOTICE</u>

71.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders: (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request entry of the Order, granting the relief requested in this

Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  September 22, 2022
Houston, Texas

*/s/  James T. Grogan III*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
           sayanbhattacharyya@paulhastings.com
           danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
           michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *James T. Grogan III*
James T. Grogan III


## Certificate of Service

I certify that on September 22, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

/s/ *James T. Grogan III*
James T. Grogan III