## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR EXISTING CASH
MANAGEMENT SYSTEM; (B) MAINTAIN THEIR EXISTING
BANK ACCOUNTS AND BUSINESS FORMS; (C) PAY RELATED
PREPETITION OBLIGATIONS; AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 7:30 a.m. on September 23, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 23, 2022 at 7:30 a.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Isgur's conference room number**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

is 954554.  Video communication will be by use of the GoToMeeting platform.
Connect via the free GoToMeeting application or click the link on Judge
Isgur's home page.  The meeting code is "JudgeIsgur".  Click the settings icon
in the upper right corner and enter your name under the personal information
setting.

Hearing appearances must be made electronically in advance of both
electronic and in-person hearings.  To make your appearance, click the
"Electronic Appearance" link on Judge Isgur's home page.  Select the case and
complete the required fields and click "Submit" to complete your appearance.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state
as follows in support of this motion (this "Motion"):

**RELIEF REQUESTED**

1.      The Debtors seek entry of an order, substantially in the form attached hereto
as **Exhibit A** (the "Order"), (a) authorizing the Debtors to (i) continue operating their cash
management system, (ii) maintain their existing bank accounts and business forms, (iii) pay related
prepetition obligations, and (iv) continue to perform intercompany transactions, and (b) granting
related relief.

**JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the Southern District of Texas
(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core
proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final
order by the Court in connection with this Motion to the extent that it is later determined that the
Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 345, 363, 364, and 503
of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## **BACKGROUND**

### I.      **Overview of Chapter 11 Cases**

5.      On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors have requested that the Chapter 11 Cases be jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6.      The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space.  With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs.  In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales.  The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on

experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

7.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

## II.     The Debtors' Cash Management System

### A.     Overview

8.     In the ordinary course of business, the Debtors maintain a cash management system (the "Cash Management System") to manage their cash in a cost-effective and efficient manner. The Debtors' Cash Management System is critical to the Debtors' business, as it streamlines the Debtors' ability to collect, transfer, and disburse cash generated from their operations and to facilitate cash monitoring, forecasting, and reporting. The Debtors' treasury department monitors the Cash Management System daily and employs appropriate and customary controls with respect to entering, processing, and releasing funds, including in connection with Intercompany Transactions (as defined below). The Debtors' accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

9.     As described more fully herein, the Cash Management System is an essential component of the Debtors' business. Any interruption of the Cash Management System would have an immediate and significant adverse effect on the Debtors' operations and ability to preserve

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

assets, to the detriment of the Debtors' estates and stakeholders. Accordingly, to minimize the disruption caused by these Chapter 11 Cases, the Debtors seek authority to continue to use their existing Cash Management System in the ordinary course of business on a postpetition basis in a manner consistent with past practice, and to pay any prepetition fees related to the Cash Management System.

**B.      Descriptions of the Debtors' Bank Accounts**

10.      As of the Petition Date, the Cash Management System is comprised of twelve (12) Debtor-owned and controlled bank accounts (each a "<u>Bank Account</u>," and collectively, the "<u>Bank Accounts</u>").[3] All of the Bank Accounts are located in the United States, with ten (10) of the Bank Accounts held at BMO Harris Bank, N.A. ("<u>BMO</u>") and two (2) Bank Accounts held at Fidelity Bank, a local bank chartered in Minnesota ("<u>Fidelity</u>" and, together with BMO, the "<u>Banks</u>"). As of the Petition Date, the Debtors have approximately $9.5 million of cash on hand in the Bank Accounts.

11.      A list of the Bank Accounts is attached hereto as **<u>Exhibit B</u>** (the "<u>Bank Accounts List</u>") and a diagram depicting the Cash Management System, including the flow of funds between Bank Accounts, is attached hereto as **<u>Exhibit C</u>**. As reflected in the diagram, the Debtors manage their receipts and disbursements primarily through their master operating account held by Compute North LLC ("<u>CN LLC</u>"). The Bank Accounts are described in more detail in the following table:

---

[3]      After the Petition Date, and subject to the entry of the Order, the Debtors plan to open an additional, new Bank Account with BMO for purposes of holding deposits for their utility service providers pursuant to section 366 of the Bankruptcy Code and as more fully described in the *Debtors' Emergency Motion for Entry of an Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utilities from Discontinuing Service, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief*, filed contemporaneously herewith.

| Accounts | Debtor | Description of Accounts |
|---|---|---|
| **Disbursement Account** | | |
| (2931)(BMO) | CN LLC | The Debtors maintain a disbursement account at CN LLC.  This is a zero balance account below the master operating account CN LLC (2881).  Payroll for all employees is paid from this disbursement account. |
| **Operating Accounts** | | |
| (2881)(BMO) (6530)(Fidelity) | CN LLC | The CN LLC operating account (2881) serves as the master operating account. This account receives customer payments from the Debtors' respective business segment operations.  Seven other of the Debtor entities maintain operating accounts.  Those site operating accounts are utilized as disbursement accounts for operations.  The excess funds in the site operating accounts are swept into the master operating account.  The Compute North Holdings, Inc. account (4424) is historically inactive and not used in the standard cash management process. |
| (4424)(BMO) | Compute North Holdings, Inc. | |
| (5073)(BMO) | CN Mining LLC | |
| (4977)(BMO) | CN Colorado Bend LLC | |
| (5057)(BMO) | CN Developments LLC | |
| (2949)(BMO) | Compute North Texas LLC | |
| (2972)(BMO) | Compute North SD, LLC | |
| (5008)(BMO) | Compute North NC08 LLC | |
| **Cash Collateral Account** | | |
| (5743)(BMO) | CN Minden LLC | The balance of this account serves as cash collateral relating to the CN Minden LLC letter of credit ("LOC") for $813,457 in favor of the Nebraska Public Power District ("NPPD"). The LOC is issued by BMO.  As security for the LOC, BMO required CN Minden LLC to deposit $829,726, 102% of the collateral, into this cash collateral account. |
| **Cash Receipts Account** | | |
| (6534)(Fidelity) | CN LLC | This account serves as a cash receipts account which is used to consolidate cash inflows before transfer to operating accounts. |

III.   **Compliance of the Bank Accounts with Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines**

A.   **Compliance with Section 345(b) of the Bankruptcy Code**

12.   Section 345(a) of the Bankruptcy Code authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the court "for cause" orders otherwise.  11 U.S.C. § 345(a)–(b).

13.   The Cash management System is in substantial compliance with section 345(b) of the Bankruptcy Code.  All of the Bank Accounts are insured by the FDIC.  Under the circumstances, the Debtors submit that there is ample justification to waive the requirements of section 354(b) in this instance.

B.   **Compliance with U.S. Trustee Guidelines**

14.   The *Region 7 Guidelines for Debtors in Possession* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").

15.   Ten (10) of the Debtors' Bank Accounts are held at BMO, which is an authorized depository.  The remaining two (2) Bank Accounts are held at Fidelity, which is not an authorized depository.  Nevertheless, the Debtors request that the Court authorize the Debtors to continue to

maintain their applicable Bank Accounts at Fidelity in the ordinary course of business as an account of the Debtors as debtors in possession.  Fidelity is a well-capitalized independent banking institution and the Bank Accounts maintained at Fidelity are FDIC insured and hold balances that are below the FDIC insured limit.  For these reasons, the Debtors submit that there is ample reason to waive the requirements of the U.S. Trustee Guidelines with respect to the Fidelity Bank Accounts.

**IV.     Bank Fees**

16.     The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System, which fees and services are generally paid each month (the "Bank Fees").  The Bank Fees associated with the Bank Accounts held at BMO and Fidelity average approximately $6,000 per month, depending on the transaction volume.  These fees are routinely paid from the CN LLC operating account monthly.  The Debtors seek permission to pay all Bank Fees in the ordinary course in accordance with past practices.

**B.     Business Forms**

17.     The Debtors utilize certain preprinted correspondence and business forms, such as letterhead, purchase orders, and invoices (collectively, the "Business Forms"), in the ordinary course of their businesses.  The Debtors also print checks using a set template.  To avoid significant disruption to their business operations, minimize unnecessary additional expenses to their estates, and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of the Chapter 11 Cases, the Debtors request that the Court authorize their continued use of their Business Forms, without reference to the Debtors' status as debtors in possession as required by the U.S. Trustee Guidelines, rather than requiring the Debtors to incur the unnecessary expense and delay of ordering entirely new forms or altering current printing arrangement or invoicing process.

## V.     Intercompany Transactions

18.     The Debtors have historically engaged, in the ordinary course of their businesses, in routine business transactions with each other (collectively, the "Intercompany Transactions"), resulting in intercompany receivables and payables (collectively, the "Intercompany Balances").[4] In the ordinary course of their business, the Debtors settle Intercompany Transactions in cash or as journal-entry receivables and payables, from time to time, primarily to reimburse CN LLC for various expenditures associated with site operations, as needed, and these Intercompany Transactions are reconciled each month.

19.     The Intercompany Transactions are an essential component of the Debtors' operations.  Any interruption to Intercompany Transactions would disrupt operations and result in harm to the Debtors' estates and their stakeholders.  The Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with prepetition practice.

## VI.    Corporate Cards

20.     As part of the Cash Management System, the Debtors have provided approximately 73 physical and 14 virtual corporate cards (collectively, the "Corporate Cards") issued by Ramp Business Corporation ("RAMP") to be used by the Debtors' employees for specific corporate purposes or to cover legitimate business expenses, including certain travel expenses, incurred in the ordinary course of business in connection with their employment as well

---

[4]    This motion provides an illustrative overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions specifically described in this motion.  To the extent that there are any outstanding prepetition transactions related to Intercompany Transactions not described in this motion, the Debtors, out of an abundance of caution, seek authority to continue such transactions.  For the avoidance of doubt, the relief requested in this motion with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom does not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen.

as certain vendor payments.  Historically, the Debtors accrued and paid approximately $150,000 per month on account of the Corporate Cards, which hold a $500,000 aggregate credit limit.  As of the Petition Date, the Corporate Cards hold a balance of approximately $12,535.  The Corporate Cards are paid on a monthly basis with the balance incurred being automatically drawn on the twenty-fourth day of each month from the CN LLC account (2931).

21.     The Corporate Cards are an integral part of the Debtors' cash management and account functions.  The ability of the Debtors to use the Corporate Cards on a go-forward basis is essential to the continued operation of the Debtors' business and the corporate administration thereof in order for the relevant employees to have assurance that they will be able to purchase certain business expenses without having to seek reimbursement from their own account or otherwise seek proper remittance.  Accordingly, the Debtors' inability to maintain the Corporate Cards would result in unnecessary hardship on the continued operation of the Debtors' business.  Out of an abundance of caution, the Debtors seek authorization to continue honoring obligations in relation to the Corporate Cards on a postpetition basis in the ordinary course of business.

**BASIS FOR RELIEF**

**I.     The Court Should Authorize the Debtors to Continue to Use the Cash Management System**

22.     The Debtors request authority to continue using the Cash Management System in the same manner as they did before the Petition Date.  Such relief is appropriate under sections 363(c) and 105(a) of the Bankruptcy Code.

23.     Pursuant to the U.S. Trustee Guidelines, debtors in possession are required to, among other things, (a) close all existing bank accounts and open new debtor in possession accounts; (b) establish one debtor in possession bank account for all estate monies required for the payment of taxes; (c) maintain a separate debtor in possession account for cash collateral; and

(d) use new business forms indicating the debtor in possession status of the chapter 11 debtors. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

24.     Considering, however, the complex Cash Management System that the Debtors have in place for the transfer and distribution of funds, which ties into the Debtors' existing corporate accounting and cash forecasting reporting, enforcement of this provision of the U.S. Trustee Guidelines during the Chapter 11 Cases would disrupt the Debtors' ability to efficiently administer the Chapter 11 Cases.  Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed on the Bank Accounts List as they were maintained in the ordinary course before the Petition Date.

25.     The Court can authorize continuation of the Cash Management System pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr.  N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business).  That authorization extends to requests to continue the operation of a prepetition cash management system.  The Fifth Circuit has found that the continued use of its prepetition cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets."  *Southmark Corp. v.  Grosz (In re Southmark Corp.),* 49 F.3d 1111, 1114 (5th Cir. 1995).  Additionally, under section 105(a)

of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carry out due provisions of this title." 11 U.S.C. § 105(a).

26.     The Cash Management System constitutes an ordinary course and essential business practice that allows the Debtors to receive revenues, pay expenses, control corporate funds, reduce administrative expenses, and ensure the availability of timely and accurate account balance information.  Requiring the Debtors to adopt a new cash management system would be expensive and disruptive to the Debtors' operations and daily responsibilities, which in turn would be detrimental to the Debtors' estates and creditors.  Importantly, such a disruption is unnecessary because the Debtors have and will continue to track and report the location and transfer of funds, which will ultimately facilitate the Debtors' transition into chapter 11.

27.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System.  The Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' respective accounting departments.  Additionally, the Debtors will continue to work closely with its Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.  In light of such protective measures, maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

## II.     Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted

28.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  If the

Debtors' ability to conduct transactions by debit, wire transfer, credit card, ACH, or other similar methods is impaired, the Debtors' day-to-day activities may be unnecessarily disrupted, and their estates will incur additional costs.

**III.  The Court Should Authorize the Banks to Continue to Administer the Bank Accounts and the Debtors to Pay the Bank Fees**

29.  For the Cash Management System to operate, the Banks must be authorized to continue to administer such accounts without interruption in the ordinary course of business. Therefore, the Banks should also be authorized to receive, process, honor, and pay any and all checks, wire transfers, credit cards, ACH payments, and other instructions and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

30.  In connection with continuing the Cash Management System, the Debtors also request authority to pay any prepetition Bank Fees that remain unpaid as of the Petition Date. Section 105(a) of the Bankruptcy Code states that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" provides a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr.  N.D. Tex. 2002) (recognizing the "doctrine of necessity" and holding that sections 105 and 1107 of Bankruptcy

13

Code provide authority for a debtor-in-possession to pay certain prepetition claims that are necessary to the operation of the debtors' business).

31.     Payment of the prepetition Bank Fees is in the best interests of the Debtors, their estates, and all parties in interest as it will prevent any disruption to the Cash Management System. Moreover, because the Banks may have setoff rights with respect to the prepetition Bank Fees, payment of any prepetition Bank Fees will not affect unsecured creditors and would merely be a matter of timing.  Accordingly, the Debtors submit that the payment of such fees pursuant to section 105(a) of the Bankruptcy Code and the doctrine of necessity is warranted.

32.     For the foregoing reasons, continuation of the Cash Management System is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases and should be authorized pursuant to sections 363(c)(1) and 105(a) of the Bankruptcy Code.

**IV.    The Court Should Authorize the Debtors to Continue Using Their Current Business Forms**

33.     To avoid disruption of the Cash Management System and unnecessary expense to their estates, the Debtors request that the Court authorize them to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.

**V.    Cause Exists to Waive Any Non-Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines to the Extent Applicable to the Cash Management System**

34.     The Debtors are in substantial compliance with section 345 of the Bankruptcy Code.  Each Bank Account is insured by the FDIC.

35.     Ten (10) of the Debtors' twelve (12) Bank Accounts are held at BMO, which is designated as an authorized depository under the U.S. Trustee Guidelines.  The two remaining Bank Accounts are held by CN LLC at Fidelity, which is not an authorized depository but is a well-capitalized local banking institution.  Moreover, CN LLC's Bank Accounts at Fidelity are FDIC insured and hold balances below the FDIC insurance threshold.  Accordingly, the Debtors submit that cause exists to waive any non-compliance with the U.S. Trustee Guidelines and to authorize the Debtors to maintain the Bank Accounts at Fidelity in the ordinary course.[5]

**VI.     The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Balances Among the Debtors**

36.     As described above, certain of the Debtors engage in Intercompany Transactions with other Debtors in the ordinary course.  The Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the detriment of the Debtors and their estates.

37.     To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to section 503(b)(1) of the Bankruptcy Code, that all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status, subject and subordinate to adequate protection claims granted pursuant to any applicable orders of the Court

---

[5]     To the extent the Court ultimately declines to waive the requirements of section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines as requested herein, the Debtors request that they be provided a period of thirty (30) days following such ruling to close any such non-compliant Bank Account and transfer the funds to a compliant Bank Account.

regarding the use of cash collateral and superpriority claims arising under any debtor-in-possession financing facility.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

38.     Further, because the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that directly benefit the Debtors and their ongoing operations, the Debtors request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition obligations between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status.   Under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . . ."  11 U.S.C. § 503(b)(1)(A).  Section 364(b) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."  11 U.S.C. § 364(b).

39.     The Debtors track all intercompany transfers in the Debtors' accounting system and have the ability to identify and account for all Intercompany Transactions, including all cash receipts and disbursements.  Continuation of the Intercompany Transactions is in the best interests of each Debtor, its estate, and all parties in interest as it promotes the preservation of the going concern value of the Debtors.  Granting administrative expense status will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the

recoveries available to such Debtor's respective creditors.  As such, the Debtors request that, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, all Intercompany Balances between Debtors arising after the Petition Date be accorded administrative expense priority.

## PROCESSING OF CHECKS AND ELECTRONIC
## FUND TRANSFERS SHOULD BE AUTHORIZED

40.     The Debtors expect to have sufficient funds to pay the amounts described in this Motion in the ordinary course of business during the pendency of the Chapter 11 Cases by virtue of expected cash flows from ongoing business operations and cash on hand.  In addition, under the Debtors' Cash Management System, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of applicable payments pursuant to this Motion.  The Debtors believe there is minimal risk that checks or wire transfer requests the Court has not authorized will be made inadvertently.  Therefore, the Debtors request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## EMERGENCY CONSIDERATION

41.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested in this Motion could jeopardize the Debtors' ability to restructure.  The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that

the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

42.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

43.    Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all

such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### **NOTICE**

44.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Banks; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

The Debtors respectfully request entry of the Order, granting the relief requested in this

Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  September 22, 2022
Houston, Texas

/s/  *James T. Grogan III*
_____

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
          sayanbhattacharyya@paulhastings.com
          danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
          michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in*
*Possession*

### **Certificate of Accuracy**

   I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ James T. Grogan III*
James T. Grogan III

### **Certificate of Service**

   I certify that on September 22, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ James T. Grogan III*
James T. Grogan III
