UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-90273 (MI) |
| Debtors. | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION
FOR ENTRY OF AN ORDER (I) DETERMINING
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (II) PROHIBITING UTILITIES FROM DISCONTINUING
SERVICE, (III) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT, AND (IV) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 7:30 a.m. on September 23, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 23, 2022 at 7:30 a.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **Connect via the free GoToMeeting application or click the link on Judge Isgur's home page.  The meeting code is "JudgeIsgur".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page.  Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) determining that the Proposed Adequate Assurance provides the Utility Providers (each as defined herein) with adequate assurance of payment within the meaning of section 366 of title 11 of the United States Code (the "Bankruptcy Code"), (b) prohibiting the Utility Providers from altering, refusing, or discontinuing services, (c) approving procedures for resolving any dispute concerning adequate assurance in the event that a Utility Provider is not satisfied with the Proposed Adequate Assurance, and (d) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

**BACKGROUND**

5. On September 22, 2022 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"). The Debtors have requested that the Chapter 11 Cases be jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6. The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space. With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs. In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales. The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on

experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

7. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

## UTILITY SERVICES AND PROPOSED ADEQUATE ASSURANCE

**I.     Utility Services and Utility Providers**

8. In connection with the operation of their businesses, the Debtors obtain water, internet, and trash removal, and in addition the Debtors obtain power for their high volume data center sites from certain site power providers (the "Site Power Providers"), and other similar services (collectively, the "Utility Services") from a number of utility companies or brokers (collectively, the "Utility Providers"). A non-exclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit B**.[3]

9. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations, and hence the overall success of these Chapter 11 Cases. The Debtors' business

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the First Day Declaration.

[3] Although the Debtors believe that the Utility Services List includes all of their Utility Providers, the Debtors reserve the right to supplement the list if they inadvertently omitted any Utility Provider. Additionally, the listing of an entity on the Utility Services List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

operations require them to maintain constant uninterrupted electricity, internet, and other utility services for their operations. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations and safety procedures could be severely disrupted. Any such disruption would jeopardize the Debtors' reorganization efforts. Accordingly, it is essential that the Utility Services continue uninterrupted during these Chapter 11 Cases.

10. To the best of the Debtors' knowledge, they are not in default of any undisputed[4] invoices for prepetition Utility Services. Historically on average, the Debtors pay approximately $654,158 each month for the Utility Services, as calculated based on utility payments made over the past three months.[5]

11. To the best of the Debtors' knowledge the Debtors are not in possession of any funds allocated for existing prepayments due with respect to any Utility Providers. However, certain Site Power Providers hold deposits from the Debtors or their non-Debtor affiliates (collectively, the "Existing Deposits") relating to operations at non-Debtor affiliate facilities. The Debtors are not seeking any relief with respect to those facilities or the Existing Deposits in this Motion, but make these disclosures out of an abundance of caution. Specifically, the Nebraska Public Power District ("NPPD"), which provides power to the Kearney Facility, requires a long-term energy deposit of $125,000 and prepayment of 50% of the prior month's invoice as escrow as a short-term energy deposit. The amount of the short-term deposit with NPPD was $1,326,525 as of June 30, 2022, $1,243,704 as of July 31, 2022, and $1,245,499 as of August 31, 2022. Constellation New Energy, which provides power to the Wolf Hollow Facility, has a long-term

---

[4] The Debtors have held back payments for the months of May through August of 2022 to Shell Energy due to inaccuracies in the invoices provided by Shell Energy to the Debtors. Shell Energy has agreed that there are issues and is working to send corrected invoices.

[5] The Debtors are utilizing a three-month lookback period for calculating the average cost of the Utility Services because a longer lookback period would have been artificially low due to projects coming on line in recent months.

5

deposit consisting of a rolling escrow with a floor of $6 million.  Additionally, Compute North LLC prepays the forthcoming month's anticipated energy expense three days prior to commencement of related month.  The drawn off amount was $2,250,247 as of June 30, 2022, $2,608,584 as of July 31, 2022, and $2,032,363 as of August 31, 2022.  As of August 31, 2022, Constellation New Energy holds approximately $2.032 million and NPPD holds approximately $1.245 million of Existing Deposits for future energy costs.

## II. Proposed Adequate Assurance of Payment

12. The Debtors intend to pay postpetition obligations owed to the Utility Providers in the ordinary course of business and in a timely manner.  The Debtors believe that current cash held by the Debtors and cash generated in the ordinary course of business will provide sufficient liquidity to pay the Utility Providers for Utility Services in accordance with prepetition practice during the pendency of the Chapter 11 Cases.

13. To provide additional assurance of payment, the Debtors propose to deposit approximately $114,579 (the "Adequate Assurance Deposit") into a segregated bank account (the "Adequate Assurance Account") within ten (10) business days of entry of the Order.  The Adequate Assurance Deposit is equal to approximately one half of the Debtors' average monthly cost of Utility Services, as calculated based on utility payments made in the past three-months.[6] The Adequate Assurance Deposit will be held in the Adequate Assurance Account for the duration of the Debtors' Chapter 11 Cases and may be applied to any postpetition defaults in payment to the Utility Providers.  The Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations and cash on hand, demonstrates the Debtors' ability to pay for future Utility

---

[6] With respect to Shell Energy the proposed Adequate Assurance is $0 as the Debtors are in the process of winding down the entity which is serviced by that Utility Provider and believe that Shell Energy's service will no longer be required in the near term.

6

Services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

### III.     The Adequate Assurance Procedures

14.     Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "Adequate Assurance Request") pursuant to the adequate assurance procedures set forth in the Order attached hereto as **Exhibit A** (the "Adequate Assurance Procedures").  The Adequate Assurance Procedures are a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while also allowing the Debtors to continue their business operations uninterrupted.  The Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon the Notice Parties (as defined in the Order).  The Debtors, in their discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court.  If the Debtors determine that the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors will seek Court resolution of the Adequate Assurance Request pursuant to Bankruptcy Rule 9019(b).  Unless and until a Utility Provider files an objection or serves an Adequate Assurance Request, such Utility Provider shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code and (b) forbidden from (i) discontinuing, altering, or refusing services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, the commencement of these Chapter 11 Cases, or any

perceived inadequacy of the Proposed Adequate Assurance, and (ii) requiring additional assurance of payment other than the Proposed Adequate Assurance.

**IV.     Modifications to the Utility Services List**

15.     The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Services List.  To the extent the Debtors subsequently identify additional Utility Providers (each, a "Subsequently Identified Utility Provider"), or discontinue Utility Services from an existing Utility Provider, the Debtors seek authority, in their sole discretion, to amend the Utility Services List to add or remove any Utility Provider, *provided*, that such amended Utility Services List shall be filed and served to allow for a hearing on or before the date that is thirty (30) days following the Petition Date.

16.     The Debtors request authority, following a period of seven (7) days afforded to the affected Utility Provider to object, and the Debtors having received no objection from any such Utility Provider, to remove any Utility Provider from the Utilities Services List.  If an objection is received and the Debtors and the affected Utility Provider are not able to resolve such dispute by mutual agreement, the Debtors seek authority to request a hearing before the Court at the next omnibus hearing date or such other date as the Debtors and the Utility Company may agree.

17.     The Debtors further request that any entered order relating to the Motion be binding on all Utility Providers, regardless of when any particular Utility Provider was added to the Utility Services List, *provided*, however, that if the Debtors supplement the Utility Services List subsequent to the entry of an order granting this Motion, the Debtors will promptly augment the Adequate Assurance Deposit to include an amount the Debtors estimate in good faith to equal an average of one-half (1/2) of one month of Utility Services.  Moreover, if the Debtors remove any Utility Provider from the Utility Services Lists, the Debtors will provide such Utility Provider with

seven (7) days' notice of such removal and, absent a response thereto, reduce the amount of the Adequate Assurance Deposit to the extent that it includes an amount for such removed Utility Provider.

### V. Prohibition on Altering, Refusing, or Discontinuing Service

18. The Debtors request that all Utility Providers, including Subsequently Identified Utility Providers added to the Utility Services List, be prohibited from altering, refusing, or discontinuing any Utility Services to the Debtors absent further order of the Court.

### BASIS FOR RELIEF

19. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty (30) days of the petition date, or the utility provider may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples for what constitutes "assurance of payment." Although assurance of payment must be "adequate," it is not a guarantee of payment. *See In re Cont'l Common, Inc.*, No. 10-37542, 2011 U.S. Dist. LEXIS 171531, at *18 (N.D. Tex. Feb. 14, 2011) ("Section 366 requires a determination that a utility is not subject to unreasonable risk of nonpayment, but does not require a guarantee of payment.").

20. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See, e.g., In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)). In determining the level of adequate assurance, however, "a bankruptcy court must

9

focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (abrogated on other grounds by *In re LEASE-A-FLEET, INC.*, 131 B.R. 945 (Bankr. E.D. Pa. 1991)).

21. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof.

22. Termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 Bankr. LEXIS 2, at *6 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *see also In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtors have a history of paying all utility bills on time and in the ordinary course. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers.

23. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 Bankr. LEXIS 237, at *16–17 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the [u]tility [o]rder"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*. Notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6; *supra* ¶ 14. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See* the Adequate Assurance Procedures set forth in the Order attached hereto as **Exhibit A**. The Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See In re Circuit City Stores Inc.*, 2009 Bankr. LEXIS 237, at *16–17.

24. The Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code. The Court should exercise its power under sections 105(a) and 366 of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## EMERGENCY CONSIDERATION

25. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days

11

after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested in this Motion could jeopardize the Debtors' ability to restructure. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable

law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

28.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d)  the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request entry of the Order, granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated: September 22, 2022
Houston, Texas

/s/ *James T. Grogan III*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
sayanbhattacharyya@paulhastings.com
danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                 */s/ James T. Grogan III*
                                                 James T. Grogan III

**Certificate of Service**

I certify that on September 22, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 */s/ James T. Grogan III*
                                                 James T. Grogan III