## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | (Emergency Hearing Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF
### (I) AN ORDER (A) APPROVING DEMINIMIS
### ASSET SALE PROCEDURES; (B) APPROVING CERTAIN
### BIDDING PROCEDURES, ASSUMPTION, ASSIGNMENT,
### AND REJECTION PROCEDURES, AND THE FORM AND MANNER OF
### NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO ENTER
### INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE
### BIDDERS; AND (D) SCHEDULING A HEARING ON THE APPROVAL
### OF THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
### ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT
### OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND
### (II) AN ORDER (A) AUTHORIZING THE SALE OF
### THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
### ENCUMBRANCES, (B) APPROVING ASSET PURCHASE AGREEMENTS,
### (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) WAIVING
### STAY PROVISIONS PURSUANT TO BANKRUPTCY RULES 6004(H) AND 6006(D)

> **Emergency relief has been requested.   Relief is requested not later than 9:00 a.m. on October 11, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **A hearing will be conducted on this matter on October 11, 2022 at 9:00 a.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):

## **RELIEF REQUESTED**

1.    The Debtors seek entry of (a) an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Bidding Procedures/De Minimis Asset Sale Order</u>"):

    i.    approving procedures for the sale of the Debtors' assets, including but not limited to computing equipment containers, power transformers, fixtures and equipment, spare parts, and any other miscellaneous assets, with an aggregated selling price equal to or less than $1,000,000 (collectively, the "<u>De Minimis Assets</u>");

    ii.    authorizing and approving certain bidding procedures (collectively, the "<u>Bidding Procedures</u>," a copy of which is attached as <u>Exhibit 1</u> to the Bidding Procedures/De Minimis Asset Sale Order)[2] for the sale of all or substantially all of the Debtors' remaining assets, including any subset thereof, that are not sold as De Minimis Assets (collectively, and together with the De Minimis Assets, the "<u>Assets</u>");

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures/De Minimis Asset Sale Order, as applicable.

iii. approving certain procedures (collectively, the "Assumption and Assignment Procedures") for the assumption and assignment of certain executory contracts and unexpired leases (each, a "Target Contract," and collectively, the "Target Contracts") in connection with the sale of any of the Assets, and the form and manner of notice thereof;

iv. approving certain procedures (collectively, the "Rejection Procedures" and, together with the Assumption and Assignment Procedures, the "Contract Procedures") for the rejection of certain executory contracts and unexpired leases that ultimately are not assumed and assigned in connection with a sale of the Debtors' Assets (collectively, the "Unassumed Contracts"), and the form and manner of notice thereof;

v. authorizing, but not directing, the Debtors to enter into one or more asset purchase agreements with stalking horse bidders subject to Court approval of any stalking horse protections; and.

vi. scheduling a hearing (the "Sale Hearing") on approval of the sale of the applicable Assets free and clear of all liens, claims, encumbrances, and other interests (collectively, "Encumbrances") and authorizing the assumption and assignment of the selected Target Contracts in connection therewith;

and (b) an order with respect to Assets offered for sale pursuant to the Bidding Procedures

(the "Sale Order"):

i. authorizing and approving the sale or sales of the Assets in question (the "Sale"), free and clear of all Encumbrances other than those permitted by the applicable asset purchase agreement for the relevant Assets (each, a "Purchase Agreement");

ii. authorizing and approving the Debtors' entry into each Purchase Agreement;

iii. authorizing and approving the assumption and assignment of the selected Target Contracts in connection therewith; and

iv. waiving the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) in accordance therewith.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final

3

order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### I.    General Background

5.    On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

6.    The Debtors' business is focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space. With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs. In addition to the Debtors' development and ownership of data centers, the

Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales. The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

7.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration").

## II.     Overview of Sale Procedures

### A.     De Minimis Asset Sale Procedures

8.     The Debtors propose to sell or transfer De Minimis Assets for the highest or otherwise best offer received, taking into consideration the circumstances of each such sale or transfer (each a "De Minimis Asset Sale"), under the following procedures (the "De Minimis Asset Sale Procedures"). In particular, with regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "De Minimis Asset Purchaser") with an aggregate selling price[3] equal to or less than $1,000,000:

> a.     The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that

---

[3]     For purposes of these De Minimis Asset Sale Procedures, "selling price" shall refer to the gross sale price or value set forth in any applicable purchase and sale agreement.

such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party;

b.    Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the proceeds of such sale or transfer, if any, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

c.    At least five (5) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached hereto as **Exhibit B** (the "De Minimis Asset Sale Notice") by email, if available, or overnight delivery to (i) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (ii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); (iii) any party known by the Debtors to have an interest in the applicable De Minimis Assets; and (iv) any Counterparty to any applicable Target Contract (collectively, the "De Minimis Notice Parties");

d.    The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) to the extent any Target Contract is to be assumed and assigned in connection with such De Minimis Asset Sale, a statement of the adequate assurance of future performance and the cure amount, if any, to be provided; and (v) the significant terms of the sale or transfer, if any, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators;

e.    If no written objections from the De Minimis Notice Parties are filed with the Court within four (4) days after service of such De Minimis Asset Sale Notice, then the Debtors are authorized to immediately consummate such De Minimis Asset Sale; *provided* that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel;

f.    If any De Minimis Notice Party files a written objection to any such De Minimis Asset Sale with the Court within four (4) days after service of such De Minimis Asset Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing. Any such objections shall be served on the Objection Notice Parties;

g.      In the event a hearing is required to resolve an objection to a De Minimis Asset Sale, the Debtors may notice the hearing on the matter for the next scheduled omnibus hearing date that is at least three (3) calendar days from the date of the filing of such notice or such other date set by the Court based upon the exigencies of the circumstances surrounding De Minimis Asset Sale.

9.      The Debtors reserve their rights to withdraw from any De Minimis Asset Sale prior to the consummation thereof, in their sole discretion.

10.      Additionally, during these Chapter 11 Cases, the Debtors will provide a written report or reports, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning any such sales or transfers made in accordance with the relief requested in this Motion (including the names of the purchasing parties and the types and amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

**B.      Bidding Procedures[4]**

11.      The Debtors are seeking approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on a timeline that allows the Debtors to consummate a sale of the Debtors' Assets pursuant to section 363 of the Bankruptcy Code.  The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders with the need to run an expeditious and efficient sale process.  The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit

---

[4]   Any summary of the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures/De Minimis Asset Sale Order. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures/De Minimis Asset Sale Order, the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures/De Minimis Asset Sale Order shall control.  Capitalized terms used but not defined in this summary of the Bidding Procedures shall have the meanings ascribed to such terms in the Bidding Procedures.

competitive, value-maximizing bids.  The Debtors believe that the Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will establish whether and to what extent any additional market for the assets exists, and provide interested parties with sufficient opportunity to participate.  Because the Bidding Procedures are attached as <u>Exhibit 1</u> to the Bidding Procedures/De Minimis Asset Sale Order, they are not restated in their entirety herein, but are incorporated herein by reference.  Generally speaking, the Bidding Procedures establish the following, among other things:

a.   the dates and deadlines related to the submission and evaluation of bids, the holding of the Auction, if any, and the Sale Hearing (*see* Bid. Procs., at ¶ 1).

b.   a description of the Assets available for sale (*see* Bid. Procs., at ¶ 2).

c.   the requirements that potential bidders must satisfy to participate in the bidding process and become Qualified Bidder (*see* Bid. Procs., at ¶ 3);

d.   the deadline and criteria by which the Debtors may select one or more Stalking Horse Bidders and may provide customary Bid Protections to such Stalking Horse Bidders (*see* Bid. Procs., at ¶ 4);

e.   the availability of, access to, and conduct during due diligence by Qualified Bidders (*see* Bid. Procs., at ¶ 6);

f.   the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be Qualified Bids sufficient to trigger an Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met for such bid to be a Qualified Bid (*see* Bid. Procs., at ¶¶ 7, 8);

g.   the manner in which Qualified Bids will be evaluated by the Debtors to determine the initial minimum overbid for the Auction (*see* Bid. Procs., at ¶ 9);

h.   the conditions for having an Auction and procedures for conducting the Auction, if any (*see* Bid. Procs., at ¶¶ 10, 12, 13);

i.   the criteria by which the Successful Bidder or Successful Bidders will be selected by the Debtors (*see* Bid. Procs., at ¶ 13); and

j.   various other matters relating to the sale process generally, including the designation of Back-Up Bids, the return of any good faith deposits to

Qualified Bidders that submit Qualified Bids, and certain reservations of rights (*see* Bid. Procs., at ¶¶ 13–18).

12.     The Bidding Procedures establish the following key dates for the sale process, as may be extended or modified by the Debtors in accordance with the terms of the Bidding Procedures and the Bidding Procedures/De Minimis Asset Sale Order:

| | |
|---|---|
| Bidding Procedures Hearing | October 11, 2022 at 9:00 a.m. (prevailing Central Time) |
| Deadline to Serve Assumption Notice | October 18, 2022 |
| Stalking Horse Designation Deadline | October 18, 2022 |
| Deadline to Object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | October 25, 2022 at 4:00 p.m. (prevailing Central Time) |
| Deadline to Object to Assumption Notice | October 25, 2022 at 4:00 p.m. (prevailing Central Time) |
| Bid Deadline | October 27, 2022 at 5:00 p.m. (prevailing Central Time) |
| Auction Commencement | November 1, 2022 at 10:00 a.m. (prevailing Central Time) |
| Deadline to Object to Conduct of Auction, Designation of Successful Bidders, and Adequate Assurance | November 3, 2022 at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | November 8, 2022 at [ ● ] (prevailing Central Time) |

13.     The Debtors believe the timeline set forth in the Bidding Procedures is reasonable and necessary under the specific circumstances of these Chapter 11 Cases.  Although necessarily compressed, this timeframe will allow parties in interest sufficient time to formulate bids for the Assets.  Moreover, relevant information regarding the Assets will be made available by the Debtors to allowing Qualifying Bidders to conduct sufficient due diligence.

C.      **Stalking Horse Purchaser Procedures**

14.     By this Motion and in connection with the Bidding Procedures, the Debtors seek

authority, but not direction, to enter into an agreement or agreements (each a "Stalking Horse

Agreement") with an interested bidder or interested bidders to serve as stalking horse bidders (each

a "Stalking Horse Purchaser") to acquire applicable Assets.  Stalking Horse Purchasers will aid

the Debtors in their sale process by providing a baseline from which other interested parties may

bid and will result in a firm commitment to consummate a Sale or Sales and definite consideration

on which the Debtors can begin to formulate a resolution of these Chapter 11 Cases.  The Debtors

request approval of the following procedures for the selection of Stalking Horse Purchasers:

   a.   Stalking Horse Agreement Notice.  In the event that the Debtors enter into
        any Stalking Horse Agreement that the Debtors determine is in the best
        interests of the Debtors and their estates, the Debtors will file with the Court,
        and serve on the Motion Notice Parties (as defined below), a notice or
        notices (each a "Stalking Horse Notice")[5] that shall include the following:
        (i) the identification of the Stalking Horse Purchaser or Stalking Horse
        Purchasers, including any affiliations with the Debtors; (ii) the Assets that
        are the subject of each Stalking Horse Agreement; (iii) a copy of each
        Stalking Horse Agreement(s); (iv) the purchase price provided in each
        Stalking Horse Agreement; (v) any proposed Bid Protections (as defined
        below); (vi) contact information for the Stalking Horse Purchaser so that
        Counterparties to the Selected Target Contracts may obtain the applicable
        Stalking Horse Purchaser's Adequate Assurance Information (as defined
        below), which shall be provided to each affected Counterparty on a
        confidential basis; and (vii) the deposit paid by the Stalking Horse
        Purchaser(s).

   b.   Stalking Horse Bid Protections.  As a condition to entering into a Stalking
        Horse Agreement, a Stalking Horse Purchaser may request reasonable bid
        protections, including either or both of a "Break-Up Fee" and an "Expense
        Reimbursement" (collectively "Bid Protections").

   c.   Timing of Designation of Stalking Horse Purchasers.  If the Debtors receive
        a Stalking Horse Agreement proposal prior to the initial hearing on this
        Motion, the Debtors will file a supplement to this Motion seeking authority

---

[5]   The Stalking Horse Notice that is served on the Motion Notice Parties (as defined below) need not attach a copy
      of the proposed Stalking Horse Agreement but, instead, shall indicate the manner in which the Motion Notice
      Parties may obtain a copy of the proposed Stalking Horse Agreement.

to designate such agreement as a Stalking Horse Agreement and approving any requested Bid Protections.  If such an event transpires on that timeline, the Debtors will endeavor to consult with the Consultation Parties with respect to the designation of any Stalking Horse Purchaser and Stalking Horse Agreement prior to the submission of any proposed Stalking Horse Notice.

If after the conclusion of the initial hearing on this Motion, no Stalking Horse Purchaser has been designated, the Debtors seek authority to continue to negotiate with and designate parties as Stalking Horse Purchasers on or prior  to  October 18, 2022 (the  "Stalking  Horse Designation Deadline").  By the Bidding Procedures/De Minimis Asset Sale Order, the Debtors request authority to designate, after the entry of the Bidding Procedures/De Minimis Asset Sale Order, Stalking Horse Purchasers and Stalking Horse Agreements and to submit an order under certification of counsel approving the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse without the need for further hearing so long as the following parameters are satisfied: (i) the Break-Up Fee  does  not exceed three percent (3.0%) of the cash purchase price; (ii) the Expense Reimbursement does not exceed the greater of $50,000 and one percent (1%) of the cash purchase price; and (iii) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code).  For the avoidance of doubt, however, the failure to meet any of the foregoing conditions shall not preclude the Debtors from seeking Court authorization to designate a Stalking Horse Purchaser and Stalking Horse Agreement, and the Debtors reserve the right to file a motion at any time on or before the Stalking Horse Designation Deadline to designate a Stalking Horse Purchaser and Stalking Horse Agreement.

**D.      Notice Procedures for the Sale**

15.      The Debtors also request approval of the sale notice (the "Sale Notice"), substantially in the form attached hereto as **Exhibit C**.  The Debtors will serve the Sale Notice  by email, mail, or facsimile within one (1) business day of entry of the Bidding Procedures/De Minimis Asset Sale Order upon: (a) the Office of the United States Trustee for the Southern District of Texas; (b) all parties known by the Debtors to assert a lien on any of the Assets; (c) all persons known or reasonably believed to have expressed an interest in acquiring all or a portion of the Assets within the twelve (12) months prior to the Petition Date; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the Office of the Attorney General in each state in

which the Debtors operate; (f) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (g) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (h) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (i) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (j) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date, and (k) counsel to any official committee appointed in these Chapter 11 Cases (collectively, the "Sale Notice Parties").

16.     The Debtors will also post the Sale Notice and the Bidding Procedures/De Minimis Asset Sale Order on the website of the Debtors' claims and noticing agent, https://dm.epiq11.com/case/ComputeNorthHoldings/info (the "Claims Agent Website").

E.     **Assumption and Assignment Procedures**

17.     To facilitate the Sale of the Assets, the Debtors seek authority to assume and assign to the Successful Bidder(s) and De Minimis Asset Purchasers (as defined below) any selected Target Contracts in accordance with the Assumption and Assignment Procedures, which are as follows:

a.     On or before **October 18, 2022**, (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to a Target Contract a notice, substantially in the form attached hereto as **Exhibit D** (the "Assumption Notice").

b.     The Assumption Notice shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts.

c.     If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "Additional Contracts"), as soon as practicable thereafter and in no event later than immediately prior to the

commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline.  In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

d.      As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "<u>Notice of Successful Bidder</u>"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), (iii) the proposed assignee(s) of such Selected Target Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the Selected Target Contracts may obtain the applicable Successful Bidder's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis.

e.      No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty and all parties requesting notice under Bankruptcy Rule 2002.

f.      If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "<u>Contract Objection</u>"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 4:00 p.m. (prevailing Central Time) on October 25, 2022** (the "<u>Contract Objection Deadline</u>"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder other than a De Minimis Asset Purchaser shall be filed

13

not later than **November 3, 2022**, **at 4:00 p.m. (prevailing Central Time)**. Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth above.

g.    The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

h.    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "Selected Target Contract," and collectively, the "Selected Target Contracts"). The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately designated as Selected Target Contracts.

i.    If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any

14

Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

j.      To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

k.      Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order and paragraph 17(i) above.

## F.      Rejection Procedures

18.      With respect to any Unassumed Contracts, the Debtors seek authority to reject such contracts pursuant to the following Rejection Procedures if, in the Debtors' business judgment, such Unassumed Contracts are not beneficial to the Debtors' estates:

a.      The Debtors will file with the Court and serve on the Rejection Notice Parties (as defined below) a notice (the "Rejection Notice"), substantially in the form attached hereto as **Exhibit E**, to reject the identified Unassumed Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Unassumed Contracts to be rejected; (ii) the names and addresses of the counterparties to such

Unassumed Contracts; (iii) the proposed effective date of the rejection for each such Unassumed Contracts (the "Rejection Date"); (iv) whether or not the Debtors intend to abandon any property at the leased premises (as described further in subparagraph b below) and a description of the same; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). The Rejection Notice shall include the proposed order approving rejection of the Unassumed Contracts (the "Rejection Order").

b.      When rejecting a lease of real property ("Real Property Leases"), the Debtors will specify in the Rejection Notice whether they intend to abandon any personal property, including, without limitation, inventory, fixtures, equipment, or other material at the leased premises as of the Rejection Date. Absent a timely objection in accordance with these Rejection Procedures, any such property of the Debtors remaining after the Rejection Date shall be deemed abandoned to the landlord, other applicable lease counterparty, or designee (the "Landlord") without further notice or order by the Court, free and clear of all liens, interests, or other encumbrances; *provided* that the Debtors shall remove any hazardous or toxic materials (as such terms are defined in any applicable federal, state, or local law, rule, regulation, or ordinance) from the leased premises prior to the Rejection Date. Any Landlord shall be free to dispose of any such items without notice or liability to any party, and the Landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest, including the Debtors, to object to such claims.

c.      With respect to any personal property that is leased to the Debtors by a third party or owned by a third party, such third party shall contact the Debtors to remove or cause to be removed such personal property from the leased premises prior to the Rejection Date. For the avoidance of doubt, if any such personal property remains on the leased premises after the Rejection Date, the Landlord may dispose of any and all such property as set forth above.

d.      The Debtors will cause the Rejection Notice to be served by overnight mail or email upon (i) the Unassumed Contract counterparties affected by the Rejection Notice, and their counsel, if known; (ii) with respect to Real Property Leases, any party known to have an interest in, or that has filed a UCC-1 statement against, personal property located at the applicable leased premises including any personal property proposed to be abandoned; (iii) any party known to assert a lien on any real property subject to the Leases; (iv) the Office of the United States Trustee for the Southern District of Texas; and (v) counsel for any statutory committee appointed in these Chapter 11 Cases (collectively, the "Rejection Notice Parties").

16

e.      Parties objecting to a proposed rejection or abandonment must file and serve a written objection (a "<u>Rejection Objection</u>") so that the Rejection Objection is filed with the Court and is actually received by (i) proposed counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (ii) the Rejection Notice Parties, no later than ten (10) calendar days after the date the Debtors file and serve the relevant Rejection Notice (the "<u>Rejection Objection Deadline</u>"). Each Rejection Objection must state with specificity the legal and factual grounds for objection to the proposed rejection or abandonment.

f.      If no Rejection Objection is timely filed and served in accordance with these Rejection Procedures by the Rejection Objection Deadline, the Debtors may submit the proposed Rejection Order to the Court after the Rejection Objection Deadline and the Court may enter such order without a hearing. The Rejection Order shall set forth the applicable Rejection Date, which shall be (unless otherwise ordered by the Court), with respect to Unassumed Contracts other than Real Property Leases, the date the Debtors filed and served the Rejection Notice, and with respect to the Real Property Leases, the date the Debtors surrendered the leased premises to the landlord via the delivery of keys, key codes, or alarm codes to the premises, as applicable, to the applicable Real Property Lease counterparty, or if not delivering such keys or codes, provided notice that the landlord may re-let the premises. If a Rejection Objection is filed for fewer than all of the Unassumed Contracts included on the Rejection Notice, the Debtors may proceed to submit a proposed Rejection Order in accordance with the above procedures for the Unassumed Contracts on the Rejection Notice for which no Rejection Objection was filed.

g.      The deadline to file a proof of claim to assert any damage claim arising from the rejection of an Unassumed Contract shall be the later of (i) the deadline fixed by the Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order. If a proof of claim is not timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11 Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

17

h.   If the Debtors have deposited funds with a counterparty to an Unassumed Contract as a security deposit or other similar arrangement, such counterparty may not set off or otherwise use such deposit without the prior authorization of this Court or consent of the Debtors.

19.   The Debtors seek approval of the Rejection Procedures in an effort to streamline the rejection process with respect to Unassumed Contracts, consistent with applicable law, minimize costs to the Debtors' estates, reduce the burden on this Court, and provide counterparties to the Unassumed Contracts with adequate notice and an opportunity to object to the proposed rejection. The Rejection Procedures will provide a uniform, efficient mechanism for the rejection of certain leases and provide the Debtors with the necessary flexibility to execute their chapter 11 strategy to maximize value and minimize costs. For these reasons, and those set more fully below, the Rejection Procedures should be approved.

## BASIS FOR RELIEF

### I.   The Procedures Contemplated Herein Are Appropriate and in the Best Interests of the Debtors, Their Estates, and Creditors

#### A.   The De Minimis Asset Sale Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code

20.   As set forth more fully in section II.A below, while section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.

21.   Here, the Debtors have identified and continue to identify assets, the sale or transfer of which may not add substantial value to the Debtors' estates. To that end, the Debtors have proposed the De Minimis Asset Sale Procedures to efficiently effectuate the disposal of such De Minimis Assets. If the requested relief is granted, the Debtors will be able to avoid  many unnecessary administrative costs associated with maintaining the De Minimis Assets, and also will

provide parties in interest and any known affected creditor asserting a lien on a De Minimis Asset the opportunity to object to its sale and obtain a hearing, if necessary.

22.     In connection therewith, the Debtors submit that the De Minimis Asset Sale Procedures are appropriate under section 363 of the Bankruptcy Code, including sections 363(b), (f), and (m).

**B.     The Bidding Procedures Are Reasonable, Appropriate, and Will Maximize Value**

23.     The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate.[6]   Courts have recognized that procedures intended to enhance competitive bidding in a chapter 11 sale process are consistent with the paramount goal of maximizing the value received by the debtor's estate and, are therefore appropriate.[7]   Courts have also made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate.[8]

24.     Here, the Debtors have sound business justifications for implementing the Bidding Procedures.  The Debtors have designed the Bidding Procedures to promote a competitive and fair bidding process and, thus, to maximize value for the Debtors' estates and creditors under the unique circumstances and time pressures of these cases.  The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage

---

[6]     *See, e.g.*, *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . debtor's duty . . . is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

[7]     *See, e.g.*, *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019).

[8]     *See ASARCO, L.L.C. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 603 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re TM Vill., Ltd.*, No. 18-32770, 2019 Bankr. LEXIS 651, at *20 (Bankr. N.D. Tex. Feb. 28, 2019) ("As long as the sale appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)).

participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the highest or best possible consideration for the applicable Assets. Furthermore, the Bidding Procedures provide an appropriate framework for the Debtors to review, analyze, and compare any bids received to determine which bids are in the best interests of the Debtors' estates and their creditors.

25.     As provided in the Bidding Procedures, the Debtors and their estates, in consultation with the Consultation Parties, reserve the right to modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

26.     For these reasons, the Debtors submit that the Bidding Procedures are a sound exercise of the Debtors' business judgment, are fair and transparent, and will derive the highest or best bids for the Assets. Therefore, the Debtors request that the Court approve the Bidding Procedures, including, without limitation, the dates established thereby for the Auction and the Sale Hearing.

**C.     Bidding Protections Are in the Best Interest of the Debtors and Their Estates and Should Be Authorized**

27.     The Debtors believe that having the ability to put in place one or more Stalking Horse Purchasers for the Assets will achieve maximum value in their proposed Sale process and, to that end, the Debtors and their advisors intend to solicit interest in the market for parties to serve as Stalking Horse Purchasers. The Debtors believe that if they identify a viable Stalking Horse

Purchaser, they may need to offer that party Bid Protections. The Debtors seek authority to negotiate a Break-Up Fee of up to three percent (3.0%) and an Expense Reimbursement of up to the greater of $50,000 and one percent (1%) of the cash purchase price, which are amounts that the Debtors believe are reasonable in this type of transaction and within the range of other court-approved bid protections fees.[9]  Further, payment of the Bid Protections would not diminish the Debtors' estates, as the Debtors would not incur the obligation to pay the Break-Up Fee unless a higher and better bid is accepted and such transaction closes.  Absent authorization of the Bidding Protections, the Debtors could lose a potential Stalking Horse Purchaser and thus may lose the opportunity to obtain the best offer for the Assets.[10]

28.     Any Bid Protections to be paid under the circumstances described herein will be: (a) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2); (b) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder(s); (c) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, to the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Bidder(s); (d) necessary to induce the Stalking Horse Bidder(s) to

---

[9]     *See In re Integrated Res., Inc.*, 147 B.R. at 662 (noting expert testimony that 3.3% is industry average for break-up fees); *see also, e.g.*, *In re Fresh Acquisitions, LLC*, No. 21-30721 (SGJ) (Bankr. N.D. Tex. Sept. 21, 2021) (approving breakup fee of $150,000, which constituted less than 5% of the cash component of the stalking horse bid); *In re Lockwood Holdings, Inc.*, No. 18-30197 (DRJ) (Bankr. S.D. Tex. July 17, 2018) (approving break-up fee of 3% for a potential stalking horse bidder to be named later); *In re Stone Energy Corp.*, No. 16-26390 (MI) (Bankr. S.D. Tex. Jan. 18, 2017) (approving break-up fee of 3% of the purchase price); *In re UGHS Senior Living, Inc.*, No. 15-80399 (DRJ) (Bankr. S.D. Tex. Nov. 24, 2015) (approving 3% break-up fee and 1% expense reimbursement); *In re TransCom USA Mgmt. Co., L.P.*, No. 01-35158 (KKB) (Bankr. S.D. Tex., Feb. 12, 2002) (approving break-up fee of more than 3.6%).

[10]    *In re Integrated Res., Inc.*, 147 B.R. at 660–61 (recognizing that bid protections can prompt bidders to commence negotiations and ensure that a bidder does not retract its bid); *see also In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's due diligence.").

21

continue to pursue a purchase of the Assets and to continue to be bound by any Stalking Horse Agreement; and (e) subject to all parties in interests' rights to object and be heard with respect to approval of such Bid Protections.  Indeed, the Bid Protections will enable the Debtors to secure an adequate floor price for their Assets, thereby ensuring that competing bids would be materially higher or otherwise better than the bids reflected in any Stalking Horse Agreement(s)—a clear benefit to the Debtors' estates. Moreover, it is not likely that any Stalking Horse Bidder would agree to act as a stalking horse absent the Bid Protections.  Accordingly, without the Bid Protections, the Debtors may lose the opportunity to obtain the highest or best offer for the Assets and would certainly lose the downside protection that will be afforded by the existence of the Stalking Horse Bidder(s) and Stalking Horse Agreement.

**D.**   **Secured Parties Should Be Authorized to Credit Bid on the Assets under Section 363(k) of the Bankruptcy Code**

29.    Section 363(k) of the Bankruptcy Code provides that, unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of a sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."[11]  Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the full face value of its claim and does not limit the credit bid to the claim's economic value.[12]

30.    As a result, the Debtors propose that any party holding claims, that are not subject to objection by the start of the Auction and that are secured by valid, binding, enforceable, non-avoidable, and perfected liens on and security interests in the Assets, be permitted to submit

---

[11]    11 U.S.C. § 363(k).

[12]    *See Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.)*, 432 F.3d 448, 459-60 (3d Cir. 2006).

a credit bid for such Assets subject to those liens and security interests, subject to providing Secured Claim Documentation (as defined in the Bidding Procedures) satisfactory to the Debtors.

### E.    The Notice Procedures for the Sale Are Reasonable and Appropriate

31.    Pursuant to Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the Sale, including a disclosure of the time and place of any auction, the terms and conditions of the sale, and the deadline for filing any objections.  The Debtors submit that the notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Assets.  Further, the Assumption and Assignment Procedures ensure that each Counterparty will have sufficient notice, under the circumstances, of such potential assumption and assignment, and an opportunity to contest the Cure Amount, if any, for its Target Contract, as well as the ability of the relevant Successful Bidder(s) to provide adequate assurance of future performance with respect to such Selected Target Contract.  Accordingly, the Debtors respectfully request that the Court approve the notice procedures set forth in this Motion, including the form and manner of service of the Sale Notice and service of the Assumption Notice, and that no other or further notice of the Sale, Bidding Procedures, Auction, or Sale Hearing is necessary or required.

### F.    The Rejection Procedures Are Reasonable, in the Best Interest of the Debtors' Estates, and Should Be Approved

32.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may reject any . . . executory contract or unexpired lease of the debtor."[13]  The

---

[13]    11 U.S.C. § 365(a); *see also In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 225 (4th Cir. 2005); *In re TransAmerican Nat'l Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987).

purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property."[14]  The standard applied by courts in determining whether the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code should be approved is the "business judgment" test, which requires that the debtor have determined that the requested rejection would be beneficial to its estate.[15]

33.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject contracts.[16]  In this case, the Debtors anticipate that certain executory contracts or unexpired leases may ultimately not be selected by potential purchasers for assumption and assignment in connection with a sale of the Debtors' assets (*i.e.*, the Unassumed Contracts).  In order to avoid incurring additional costs or expenses in connection with the Unassumed Contracts, the Debtors will need an efficient and expedient means for rejecting such contracts in order to preserve the value of the Debtors' estates.  Absent approval of the Rejection Procedures, the Debtors would need to obtain separate Court approval of each rejection, which

---

[14]   *In re Shangra-La, Inc.*, 167 F3d 843, 849 (4th Cir. 1999) ("[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984))); *In re Republic Airways Holdings Inc.*, 547 B.R.578, 582 (Bankr. S.D.N.Y. 2016) (quoting O*rion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010), as amended (June 24, 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization").

[15]   *See, e.g.*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that the question of whether a lease should be rejected is on of business judgment") (citing *Group of Inst. Investors, Inc. v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) (noting "the question whether a lease should be rejected . . . is one of business judgment")).

[16]   *See, e.g.*, *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal Finishers, Inc.*), 756 F.2d 1043, 1046 (4th Cir. 1985) ("the bankrupt's decision [to reject] . . . is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors"); *Quality Inns Int'l, Inc. v. L.B.H. Assocs. Ltd. P'ship*, 911 F.2d 724 (4th Cir. 1990); *In re Alpha Natural Resources, Inc.*, 555 B.R. 520, 529-30 (Bankr. E.D. Va. 2016) ("[a] court should not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease unless there is a showing of bad faith or gross abuse of discretion).

would require multiple hearings on separate motions with respect to potentially each Unassumed Contract that the Debtors determine to reject, thereby imposing unnecessary administrative burdens on the Debtors and the Court and decreasing the economic benefits to the estates of rejection.  The Rejection Procedures are designed to minimize administrative and legal expenses for rejection of the Unassumed Contracts, and their adoption is in the best interests of the Debtors' estates.  The Rejection Procedures will provide clarity and uniformity as to the procedures that will govern most rejections in these Chapter 11 Cases.  Further, the Rejection Procedures are fair and reasonable to the counterparties to Unassumed Contracts because they afford parties in interest the opportunity to object, appear, and be heard with respect to the rejection of such Unassumed Contracts.

34.     The Rejection Procedures provide the Debtors the ability to set an effective Rejection Date that is earlier than the date of entry of the Rejection Order.  Such retroactive rejection is not prohibited under section 365 of the Bankruptcy Code.[17]  Authorizing the rejection of contracts and leases effective as of the Rejection Date is consistent with prior rulings of courts in this and other circuits, which have held that a bankruptcy court may authorize the retroactive rejection of an executory contracts or unexpired lease if the balance of the equities favors such retroactive rejection.[18]  The proposed Rejection Date is fair and equitable to all parties because,

---

[17]   *See In re Amber's Stores, Inc.*, 193 B.R. 819, 826-27 (Bankr. N.D. Tex. 1996) ("[N]othing precludes [the court] . . . from approving . . . rejection of a non-residential real property lease retroactively to an earlier date.").

[18]   *See, e.g.*, *id.* at 826 (using a standard based on the equities of the case); *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *see also Thinking Machs. Corp. v. Mellon Fin. Servs. Corp.* (*In re Thinking Machs. Corp.*), 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, in the context of rejections of executory contracts, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection), *cert. denied sub nom. Pac. Shores Dev., LLC v. At Home Corp.*, 546 U.S. 814 (2005).

upon service of the Rejection Notice, the relevant counterparties will have adequate notice of the Debtors' intent to reject the Unassumed Contracts and, with respect to any Real Property Leases, the Debtors will surrender the premises to the landlord as of the Rejection Date. In view of the foregoing, the Debtors respectfully submit the proposed Rejection Date set forth in the Rejection Procedures is appropriate and should be approved.

35.      Furthermore, the Rejection Procedures comply with the procedural requirements of the Bankruptcy Rules, which provide that "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."[19]  Bankruptcy Rule 9014 states that "[i]n a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."[20]  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.[21]  The Rejection Procedures provide for notice to the affected counterparties and other parties in interest and an opportunity to be heard at a hearing, and thus satisfy the requirements of Bankruptcy Rules 6006(a) and 9014.

36.      Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).[22]  Bankruptcy Rule 6006(f) sets forth six requirements that motions to reject multiple executory contracts or unexpired leases must satisfy. These requirements are procedural in nature.

---

[19]   Fed. R. Bankr. P. 6006(a).

[20]   Fed. R. Bankr. P. 9014(a).

[21]   *See* 11 U.S.C. §102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and anopportunity for hearing "as [are] appropriate in the particular circumstances").

[22]   *See* Fed. R. Bankr. P. 6006(e).

Pursuant to Bankruptcy Rule 6006(f), a motion to reject multiple executory contracts or unexpired leases that are not between the same parties shall:

     a.     state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

     b.     list parties alphabetically and identify the corresponding contract or lease;

     c.     specify the terms, including the curing of defaults, for each requested assumption or assignment;

     d.     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

     e.     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

     f.     be limited to no more than 100 executory contracts or unexpired leases.[23]

37.     The Rejection Procedures satisfy Bankruptcy Rule 6006(f).  The clear purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of the counterparties. The counterparties must be able to locate their contracts or leases and readily determine whether their contracts or leases are being assumed or rejected.  The Debtors will comply with all applicable procedural requirements of Bankruptcy Rule 6006(f) when serving the Rejection Notices.

38.     Finally, the Debtors also request authority to abandon any property remaining at a leased premises on the Rejection Date of the applicable Real Property Leases that the Debtors determine in their business judgment is too difficult to remove or expensive to store, such that the economic benefits of removing or storing such remaining property would be outweighed by the attendant costs (the "Abandoned Assets").

39.     Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of

---

[23]    Fed. R. Bankr. P. 6006(f).

inconsequential value and benefit to the estate."[24]  The right to abandon is virtually unfettered, unless abandonment of the property will contravene state and federal laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare.[25] Neither of these limitations is relevant in these cases.  The Debtors submit that any abandoned personal property is of inconsequential value or burdensome to the Debtors' estates to remove. Among other things, the Debtors believe that the cost of retrieving, marketing, and reselling the Abandoned Assets outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such abandoned personal property.  As a result, the Debtors have determined, in their business judgment, that the abandonment of any such abandoned personal property, effective as of the Petition Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

40.     Under the circumstances, obtaining separate Court approval of each rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in unnecessary costs to the Debtors' estates. The Debtors, therefore, request approval of the Rejection Procedures as the most efficient and economical way for the Debtors to address rejection of their unexpired leases and executory contracts.

**II.    Approval of the Sale of the Assets Is Appropriate and in the Best Interests of the Debtors' Estates**

**A.     Sufficient Business Justification Exists for the Consummation of the Sale under Sections 105(a) and 363(b) of the Bankruptcy Code**

41.     Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."[26]

---

[24]    11 U.S.C. § 554(a).

[25]    *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501–02 (1986).

[26]    11 U.S.C. § 105(a).

Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[27]  Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts within the Fifth Circuit and elsewhere have required that such use, sale or lease be based upon the sound business judgment of the debtor.[28]  Further, the demonstration of a valid business justification by a debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[29]

42.   To approve the use, sale, or lease of the property outside the ordinary course of business, the Court need only determine that the Debtors' decision is supported by "some articulated business justification."[30]  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was

---

[27]   11 U.S.C. § 363(b).

[28]   *See Inst. Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988); *see also, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of In re Lionel Corp.).

[29]   *Integrated Res.*, 147 B.R. at 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

[30]   *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d. Cir. 1983); *see also Inst. Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Cadle Company v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010).

in the best interests of the company.'"[31]  In evaluating such a sale, a court must balance the need

for flexibility with the concern of affected creditors.[32]

43.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction

in question should be approved under Bankruptcy Code section 363(b)(1).  When applying the

business judgment standard, courts show great deference to a debtor's business decisions.[33]  The

Debtors' decision to pursue a sale of the Assets represents a reasonable exercise of the Debtors'

business judgment, and, accordingly, the Debtors should be authorized to sell the Assets under

sections 105(a) and 363(b) of the Bankruptcy Code.

44.     Given the De Minimis Assets' limited value, the Debtors submit that selling the De

Minimis Assets through efficient procedures will reduce costs and other administrative expenses

that would otherwise be incurred by selling such assets by separate motions.  In addition,

conducting the sale of De Minimis Assets pursuant to the De Minimis Asset Sale Procedures will

streamline the Debtors' operations by eliminating the cost of maintaining nonessential property

and generating additional cash for the estates.  Given the value of such De Minimis Assets in

relation to the Debtors' overall operations, it would be inefficient to seek separate court approval

every time the Debtors have an opportunity to sell such De Minimis Assets.

45.     As for the balance of the Assets, the open and fair auction and sale process

contemplated by the Bidding Procedures will ensure that the Debtors' estates receive the highest

or otherwise best value available for the Assets by allowing the market to determine the purchase

---

[31]   *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re ASARCO*, 650 F.3d at 601 ("The business
       judgment standard in section 363 is flexible and encourages discretion."); *In re Integrated Res., Inc.*, 147 B.R. at
       656 (Bankr. S.D.N.Y. 1992); *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-
       Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a
       debtor's management decisions.").

[32]   *In re ASARCO*, 650 F.3d at 601; *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989).

[33]   *Id.*

price of the Assets.  The proposed Sale will also minimize the administrative expenses the Debtors' estates are forced to incur while providing a greater recovery than would be realized by any other available alternative.  Furthermore, compliance with the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid by any Stalking Horse Purchaser or other Successful Bidder, and will establish that the Debtors and such bidder have proceeded in good faith.

46.     Accordingly, the proposed Sale is the best path forward for maximizing recoveries to the Debtors' estates, their creditors, and all parties in interest, given both the open nature of the proposed process and the need for a Sale to occur given the Debtors' current financial circumstances as outlined in the First Day Declaration.  The Debtors submit that ample business justification exists for the consummation of Sale and, therefore, request that the Court approve such Sale.

**B.      The Sale of the Assets Free and Clear of All Encumbrances Is Authorized Under Section 363(f) of the Bankruptcy Code**

47.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[34]

This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out

---

[34]   11 U.S.C. § 363(f).

the provisions of [the Bankruptcy Code]."[35]  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.[36]  Furthermore, a debtor possesses broad authority to sell assets free and clear of liens.[37]

48.     The Debtors submit that, to attract the highest or otherwise best value for creditors, it is appropriate to sell their Assets on a final "as is" basis, free and clear of any and all Encumbrances (except as otherwise expressly set forth in the Sale Order and a Stalking Horse Agreement or a Purchase Agreement with a Successful Bidder, as applicable) in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale.

49.     In particular, the Debtors believe that they will meet section 363(f)(2) of the Bankruptcy Code with respect to the Debtors' prepetition secured lenders that have a first-lien position on any of the Assets because the Debtors' prepetition secured lenders will consent to the Sale.  Moreover, with respect to any other party asserting a lien, claim, or encumbrance against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set

---

[35]   11 U.S.C. § 105(a).

[36]   *In re Motors Liquidation Co.*, 829 F.3d 135, 154 (2d Cir. 2016) ("A sale pursuant to § 363(b) may be made 'free and clear of any interest in such property' if any condition on a list of conditions is met."); *Michigan Employment Sec. Comm. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that "Bankruptcy Code §363(f) is written in the disjunctive" and holding that the court may approve the sale free and clear provided that at least one of the subsections of § 363(f) is met); *In re Ditech Holding Corp.*, 606 B.R. 544, 580 (Bankr. S.D.N.Y. 2019) ("A sale pursuant to section 363(b) may be made 'free and clear of any interest in such property' if the trustee or debtor satisfies any of the conditions set forth in section 363(f).").

[37]   *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).  Additionally, the Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) did not apply.  *See In re Ditech Holding Corp.*, 606 B.R. at 591 ("[P]lan sales can be free and clear of claims without invoking section 363(f)."); *In re Trans World Airlines. Inc.*, No. 01–0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("[B]ankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of section 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

forth in section 363(f) of the Bankruptcy Code.  In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested.  Such lienholders that do not object to the Sale should be deemed to have consented.[38]  Consistent with the foregoing, the Bidding Procedures/De Minimis Asset Sale Order provides that the absence of a timely objection to the sale of the Assets in accordance therewith shall be "consent" to such sale within the meaning of section 363(f)(2) of the Bankruptcy Code.  Furthermore, the Debtors propose that any Encumbrances asserted against the Assets be transferred to and attach to the proceeds of such Sale.

C. **The Sale Should Be Subject to the Protections of Section 363(m) of the Bankruptcy Code**

50.    Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[39]  Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.[40]  To the extent the Debtors seek Court approval of a Sale, the Debtors will adduce facts at the Sale Hearing

---

[38]    *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

[39]    11 U.S.C. § 363(m).

[40]    *See O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *Mark Bell Furn. Warehouse, Inc. v. D.M. Reid Assoc., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986); *Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023 (4th Cir. 1985); *Factory Mut. Ins. V. Panda Energy Int'l (In re Hereford Biofuels, LP)*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012).

demonstrating that any bidder who is deemed a Successful Bidder for the Assets had negotiated at arm's length, with all parties represented by their own counsel.

51.     In approving the Sale free and clear of Encumbrances, the Debtors request that the Court find and hold that all purchasers of applicable Assets are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Such relief is appropriate in that parties in interest will have the opportunity to review and object to a proposed transaction, and selection of a Successful Bidder or Successful Bidders will be the result of a competitive bidding process and arm's-length, good-faith negotiations.

**D.     The Assumption and Assignment of the Selected Target Contracts in Connection with the Sale Satisfies Section 365 of the Bankruptcy Code**

52.     In connection with the potential assumption and assignment of the Selected Target Contracts, establishing a process is necessary by which (a) the Debtors and the non-debtor counterparties can reconcile cure obligations, if any, in accordance with Bankruptcy Code section 365, and (b) such counterparties can object to the assumption and assignment of executory contracts and unexpired leases and any applicable Cure Amount.

53.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor."[41]  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.[42]   If the debtor's business

---

[41]   11 U.S.C. § 365(a).

[42]   *See, e.g.*, *In re Senior Care Ctrs., LLC*, No. 18-33967, 2019 Bankr. LEXIS 3185, at *7 (Bankr. D. N.D. Tex. Oct. 4, 2019) (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Republic Airways Holdings Inc.*, 2016 Bankr. LEXIS 1927, at *10-11 (Bankr. S.D.N.Y. May 3, 2016) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that Section 365 is traditionally subject to the "business judgment" standard); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996).

judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract.[43]  Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate.[44]  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the Court's ability to control a case impartially.[45]

54.     Generally, courts defer to a debtor in possession's business judgment to assume or reject an executory contract or lease,[46] and here, the Debtors have exercised their sound business judgment in determining that assumption and assignment of the Selected Target Contracts in connection with the Sale is in the best interests of the Debtors and their estates.  Accordingly, the proposed assumption under section 365(a) of the Bankruptcy Code is appropriate.[47]  As set forth

---

[43]   *See Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) ("The bankruptcy court will generally approve [the debtor's] choice, under the deferential 'business judgment' rule.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)); *see also Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d. Cir. 1989).

[44]   *See In re Tayfur*, 599 Fed. App'x. 44, 46 (3rd Cir. 2015); *In re Republic Airways Holdings Inc.*, Case No. 16-10429, 2016 Bankr. LEXIS 1927, at *10-11 (Bankr. S.D.N.Y. May 3, 2016) ("Courts generally will not second-guess a debtor's business judgment concerning whether an assumption or rejection benefits the debtor's estate."); *In re Gunner Hotel Assoc.*, 96 B.R. 696, 698, (Bankr. W.D. Tex. 1988); *In re Food City, Inc.*, 94 B.R. 91, 93–94 (Bankr. W.D. Tex. 1988); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assoc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984) ("The business judgment test "requires only that the trustee (or debtor-in-possession) demonstrate that rejection of the executory contract will benefit the estate.").

[45]   *See Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

[46]   *See Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (stating that the business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate."); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42–43 (2d Cir. 1979); *In re Riodizio, Inc.*, 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

[47]   *See, e.g.*, *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182–83 (Bankr. E.D. Pa. 2010) (stating that if a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an executory contract or unexpired lease); Wes*tbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

above, the Sale will yield the maximum value for the Debtors' estates and the Debtors expect that a large part of that value will be tied to the assumption, assignment, and sale of the Selected Target Contracts. In addition, under section 365(k) of the Bankruptcy Code, a debtor's assignment of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."[48] Thus, following an assignment to a Successful Bidder of a Target Contract, the Debtors will be relieved from any liability for any subsequent breach associated therewith.

55. Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default.[49] The Debtors propose to file with the Court, and serve on each Counterparty to a Target Contract, an Assumption Notice that indicates the proposed Cure Amount for each such contract. As such, each Counterparty will have the opportunity to object to the proposed assumption and assignment to the applicable Successful Bidder and to the proposed Cure Amount, if applicable. Moreover, the payment or reserve of the applicable Cure Amount, as provided for in the Bidding Procedures, will be a condition to the Debtors' assumption and assignment of any Selected Target Contract.

56. Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided."[50] The

---

[48]   11 U.S.C. § 365(k).

[49]   11 U.S.C. § 365(b)(1).

[50]   11 U.S.C. § 365(f)(2); *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Center, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."); *see also RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) ("Once a trustee assumes an executory contract, a trustee may generally also assign

meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."[51]   Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.[52]

57.    Here, any Successful Bidder will have provided adequate assurance of future performance with respect to any Selected Target Contract.  For a bid to be deemed a Qualifying Bid, each Qualifying Bidder will be required to provide evidence supporting its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "Adequate Assurance Information"), including: (a) the bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of any Target Contract; and (c) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance.  To the extent available, the Adequate Assurance Information may also include (x) a corporate organization chart or similar disclosure identifying

---

the contract even where legal or contractual provisions would otherwise prohibit assignment."); *Leonard v. General Motors Corp. (In re Headquarters Dodge, Inc.)*, 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).

[51]   *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B. R. 524, 538 (Bankr. D.N.J. 1989); *see also Absinthe Bar, L.L.C. v. Bourbon Saloon, Inc. (In re Bourbon Saloon, Inc.)*, 647 Fed. App'x. 342, 346 (5th Cir. 2016) ("A bankruptcy court's determination of adequate assurance of future performance and the ability to cure under § 365 is a fact-specific question.") (citing T*ex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x. 122, 126 (5th Cir. 2003)); *Winters Nursery LLC v. Color Spot Holdings, Inc. (In re Color Spot Holdings, Inc.)*, 2018 WL 3996938, at *2 (D. Del. 2018); *In re Texas Health Enterprises, Inc.*, 246 B.R. 832, 834 (Bankr. E.D. Tex Jan. 27, 2000); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (stating that adequate assurance of future performance does not mean absolute assurance that debtor will thrive).

[52]   *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when a prospective assignee of a lease from debtors has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding); *In re Old South Coors, Inc.*, 27 B.R. 923, 926 (Bankr. N.D. Miss. 1983) (finding that successful business experience and financial strength of assignees met "all reasonable standards of adequate assurance . . . .").

ownership and control of the proposed assignee and (y) financial statements, tax returns, and annual reports. Furthermore, given that the Debtors will submit evidence at the Sale Hearing that all requirements for the assumption and assignment of the Selected Target Contracts have been satisfied, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

58.    Therefore, the Debtors respectfully request that the Court (a) approve the proposed assumption and assignment of the Target Contracts and (b) find that all anti-assignment provisions of such contracts to be unenforceable under section 365(f) of the Bankruptcy Code.[53]

## EMERGENCY CONSIDERATION

59.    The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which allows this Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."   An expedited and orderly sale of the Debtors' Assets is necessary to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders. The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis in order to preserve the ongoing value of the Debtors' estates.

---

[53]   Section 365(f)(1) provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ."  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

60.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

61.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority

of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## NOTICE

62.    The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) any party known by the Debtors to have asserted a lien on any of the Assets; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Motion Notice Parties").  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request entry of the Bidding Procedures/De Minimis Asset Sale Order and the Sale Order, granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  September 26, 2022
Houston, Texas

/s/ *James T. Grogan III*
_____

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
          sayanbhattacharyya@paulhastings.com
          danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
          michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<ins>Certificate of Accuracy</ins>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

 */s/ James T. Grogan III*

James T. Grogan III

**<ins>Certificate of Service</ins>**

I certify that on September 26, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 */s/ James T. Grogan III*

James T. Grogan III

## **Exhibit A**

**Bidding Procedures/De Minimis Asset Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-992073 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. [ ● ]** |

**ORDER (A) APPROVING DE MINIMIS ASSET SALE PROCEDURES;**
**(B) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION, ASSIGNMENT,**
**AND REJECTION PROCEDURES, AND THE FORM AND MANNER OF NOTICE**
**THEREOF; (C) AUTHORIZING THE DEBTORS TO ENTER INTO ASSET**
**PURCHASE AGREEMENTS WITH STALKING HORSE BIDDERS; AND**
**(D) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE**
**OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL**
**ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), among other things: (a) approving

the De Minimis Asset Sale Procedures; (b) authorizing and approving the Bidding Procedures,

attached hereto as **Exhibit 1**, the Assumption and Assignment Procedures, the Rejection

Procedures, and the form and manner of notice thereof; (c) authorizing, but not directing, the

Debtors to enter into Purchaser Agreements with one or more Stalking Horse Purchasers subject

to Court approval of any Bid Protections; and (d) scheduling the Sale Hearing for the Court's

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

consideration of the sale of the applicable Assets free and clear of Encumbrances, and authorizing the assumption and assignment of the Selected Target Contracts in connection therewith; and this Court having reviewed the Motion; and upon the First Day Declaration and upon the record of the hearing and all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, and Local Rule 9013-1.

D.      The Debtors have demonstrated that good and sufficient notice of the relief granted by this Bidding Procedures/De Minimis Asset Sale Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Bidding Procedures/De Minimis Asset Sale Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Stalking Horse Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (a) the

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

identity of the Stalking Horse Purchaser or Stalking Horse Purchasers, including any affiliations with the Debtors; (b) the Assets that are the subject of each Stalking Horse Agreement; (c) a copy of each Stalking Horse Agreement(s); (d) the purchase price provided in each Stalking Horse Agreement; (e) any proposed Bid Protections; (f) contact information for the Stalking Horse Purchaser so that Counterparties to the Selected Target Contracts may obtain the applicable Stalking Horse Purchaser's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis; and (g) the deposit paid by the Stalking Horse Purchaser(s).

F.      The De Minimis Asset Sale Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identity of the applicable De Minimis Asset Purchaser, including any affiliations with the Debtors; (ii) the Assets that are the subject of each De Minimis Asset Sale Notice; (iii) significant terms of the proposed De Minimis Asset sale; and (iv) the purchase price to be provided by each De Minimis Asset Purchaser.  No other or further notice will be required of the foregoing.

G.      The Bidding Procedures and the De Minimis Asset Sale Procedures are (i) fair, reasonable, and appropriate and (ii) designed to maximize recovery with respect to the Assets.

H.      The Assumption and Assignment Procedures, the Rejection Procedures, and the De Minimis Asset Sale Procedures provided for herein and the Assumption Notice and the Rejection Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures, the Rejection Procedures, the De Minimis Asset Sale Procedures, the Assumption Notice, and the Rejection Notice have been tailored to provide an adequate opportunity for all Counterparties to assert any Contract Objections or Rejection Objection.

I.        The Bid Protections, consisting of the Break-Up Fee and the Expense Reimbursement, to the extent afforded by the Debtors to a Stalking Horse Bidder in accordance with the Bidding Procedures and payable under the terms of a Stalking Horse Agreement, shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

J.        Entry of this Bidding Procedures/De Minimis Asset Sale Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties, and the legal and factual bases set forth in the Motion, the First Day Declaration, and at the hearing on the Motion establish just cause for the relief granted herein.

**<u>NOW, THEREFORE, IT IS HEREBY ORDERED THAT</u>:**

1.        Those portions of the Motion seeking approval of (a) the De Minimis Asset Sale Procedures, (b) the Bidding Procedures, (c) the Assumption and Assignment Procedures, (d) the Rejection Procedures (e) the date and time of the Sale Hearing, (f) the procedures regarding entry into Stalking Horse Agreements, and (g) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Stalking Horse Notice, the De Minimis Asset Sale Notice, substantially in the form attached to the Motion as <u>Exhibit B</u>, the Sale Notice, substantially in the form attached to the Motion as <u>Exhibit C</u>, the Assumption Notice, substantially in the form attached to the Motion as <u>Exhibit D</u>, and the Rejection Notice, substantially in the form attached to the Motion as <u>Exhibit E</u> (subclauses (a)–(g) above, collectively, the "<u>Bidding and Auction Process/De Minimis Asset Sale Procedures</u>"), are hereby GRANTED to the extent set forth herein.

2.        Any objections to the Motion as it pertains to the Bidding and Auction Process/De Minimis Asset Sale Procedures or the relief granted by this Bidding Procedures/De Minimis Asset

Sale Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**I.**     **De Minimis Asset Sale Procedures**

3.     With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "De Minimis Asset Purchaser") with an aggregate selling price equal to or less than $1,000,000, the following De Minimis Asset Sale Procedures are hereby approved:

a.    The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party;

b.    Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the proceeds of such sale or transfer, if any, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

c.    At least five (5) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Motion as Exhibit B (the "De Minimis Asset Sale Notice") by email, if available, or overnight delivery to (i) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (ii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); (iii) any party known by the Debtors have an interest in the applicable De Minimis Assets; and (iv) any Counterparty to any applicable Target Contract (collectively, the "De Minimis Notice Parties");

d.    The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) to the extent any Target Contract is to be assumed and assigned in connection with such De Minimis Asset Sale, a statement of the adequate assurance of future performance and the cure amount, if any, to be provided; and (v) the significant terms of the sale or transfer, if any, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators;

e.      If no written objections from the De Minimis Notice Parties are filed with the Court within four (4) days after service of such De Minimis Asset Sale Notice, then the Debtors are authorized to immediately consummate such De Minimis Asset Sale; *provided* that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel;

f.      If any De Minimis Notice Party files a written objection to any such De Minimis Asset Sale with the Court within four (4) days after service of such De Minimis Asset Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing.  Any such objections shall be served on the Objection Notice Parties;

g.      In the event a hearing is required to resolve an objection to a De Minimis Asset Sale, the Debtors may notice the hearing the matter for the next scheduled omnibus hearing date that is at least three (3) calendar days from the date of the filing of such notice or such other date set by the Court based upon the exigencies of the circumstances surrounding De Minimis Asset Sale.

4.      The Debtors shall provide a written report or reports, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning any De Minimis Asset Sales (including the names of the purchasing parties and the types of amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

5.      The Debtors may withdraw from any De Minimis Sale prior to the consummation thereof, in their sole discretion.

6.      Notwithstanding anything to the contrary set forth in a sale or transfer agreement, all De Minimis Asset Purchasers are deemed to understand and agree that the Debtors are conveying their rights to the applicable De Minimis Assets and any Target Contracts as is, without warranties or representations of any kind, whether express or implied.

II.     **Bidding Procedures and Auction**

7.      The Bidding Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures/De Minimis Asset Sale Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety as if fully set forth in this Bidding Procedures/De Minimis Asset Sale Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Bidding Procedures/De Minimis Asset Sale Order.

8.      Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale, provided that the information was provided in accordance with this Bidding Procedures/De Minimis Asset Sale Order.

9.      For all purposes under the Bidding Procedures: (a) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and any Stalking Horse Agreement shall be considered a Qualifying Bid; (b) should any Secured Creditor desire to credit bid, such Secured Creditors may seek to credit bid some or all of their claims within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by their Secured Claim Documentation; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and may only credit bid claims secured by a

first lien unless the bid is accompanied by a cash bid in an amount sufficient to satisfy all senior liens in such collateral; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets and subsets thereof.

10.     The Bidding Procedures shall apply to the Potential Bidders; the Qualifying Bidders; the submission, receipt, and analysis of all bids relating to the Sale; and the conduct of the Sale and the Auction.

11.     A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Objection Notice Parties so as to be received on or before **October 27, 2022, at 5:00 p.m. (prevailing Central Time) (the "<u>Bid Deadline</u>")**; *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction**.

12.     All persons or entities submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Purchase Agreement.

13.     If only one Qualifying Bid is submitted for certain Assets on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that this Court approve such Qualifying Bid and the transactions contemplated thereunder for those Assets.  In

the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall conduct the Auction for the subject Assets on **November 1, 2022, at 10:00 a.m. (prevailing Central Time)**, at (a) the offices of Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (b) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; *provided* that such other date and time is no earlier than one (1) business day following the delivery of such notice.

14.     Each Auction Bidder shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction; and (b) its Qualifying Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

15.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Assets or subsets thereof.

16.     The Debtors, subject to the terms of this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, shall have the right as they may reasonably determine, in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine the Baseline Bids; (d) determine which bids are the Successful Bids and Back-Up Bids, each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Auction and the Sale Hearing in open court without further notice

(other than the filing of a notice of such adjournment or cancellation on the docket of these Chapter 11 Cases, which notice may be the hearing agenda in the case of a Sale Hearing) or as provided in this Bidding Procedures/De Minimis Asset Sale Order and in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion as it relates to a Sale at any time with or without prejudice.

### III.   **Designation of Stalking Horse Purchaser**

17.     In the event that the Debtors enter into a Stalking Horse Agreement on or prior to the Stalking Horse Designation Deadline of **October 18, 2022**, the Debtors shall file with the Court and serve on the Motion Notice Parties a Stalking Horse Notice.  If the Stalking Horse Agreement satisfies the following conditions—(a) the Break-Up Fee does not exceed three percent (3.0%) of the cash purchase price; (b) the Expense Reimbursement does not exceed the greater of $50,000 and one percent (1%) of the cash purchase price; and (c) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse without the need for further hearing.  If a Stalking Horse Purchaser and Stalking Horse Agreement are designated that do not satisfy each of the conditions (a) through (c) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Central Time) the day prior to such hearing.

IV.   **Assumption and Assignment Procedures**

18.   The following Assumption and Assignment Procedures are hereby approved:

a.   On or before **October 18, 2022**, (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to a Target Contract a notice, substantially in the form attached to the Motion as Exhibit D (the "Assumption Notice").

b.   The Assumption Notice shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts.

c.   If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "Additional Contracts"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline. In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

d.   As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "Notice of Successful Bidder"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), (iii) the proposed assignee(s) of such Selected Target Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the Selected Target Contracts may obtain the applicable Successful Bidder's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis.

e.   No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty and all parties requesting notice under Bankruptcy Rule 2002.

f.      If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "Contract Objection"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 4:00 p.m. (prevailing Central Time) on October 25, 2022** (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder other than a De Minimis Asset Purchaser shall be filed not later than **November 3, 2022**, **at 4:00 p.m. (prevailing Central Time)**. Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth above.

g.      The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

h.      At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "Selected Target Contract," and collectively, the "Selected Target Contracts"). The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately designated as Selected Target Contracts.

i.      If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

j.      To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

k.      Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such

assumption and assignment shall be subject to the terms of the Sale Order and paragraph 18(i) above.

19.     Other than as provided by the De Minimis Asset Sale Procedures, the Debtors' decision to assume and assign any Target Contract is subject to this Court's further approval and the closing of the Sale.  Accordingly, other than as provided by the De Minimis Asset Sale Procedures, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

20.     Any party failing to timely file an objection to the proposed Cure Amount, the proposed assumption and assignment of a Target Contract or Additional Contract listed on an Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Target Contract or Additional Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Amounts, the assumption and assignment of the Target Contract, or Additional Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or the Back-Up Bidder for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Back-Up Bidder, as applicable, with respect to such party's Target Contract or Additional Contract.

21.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties.  The Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume

14

and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights impacted by the Motion and the relief granted by this Bidding Procedures/De Minimis Asset Sale Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

22.    The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of all parties with respect thereto shall be reserved.

23.    As part of its bid, each Qualifying Bidder must provide the Debtors information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "Adequate Assurance Information"), including (a) the bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of any Target Contract; and (c) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance.  To the extent available, the Adequate Assurance Information may also include (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns, and annual reports.  Furthermore, given that the Debtors will submit evidence at the Sale Hearing that all requirements for the assumption and assignment of the Selected Target Contracts have been satisfied, the Court and other interested parties will have the

opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

24.     The Debtors, the Consultation Parties, and the Counterparties to any Target Contracts included in an applicable bid shall keep confidential all Adequate Assurance Information provided to them and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Bidding Procedures/De Minimis Asset Sale Order unless the Qualifying Bidder that provided such Adequate Assurance Information otherwise consents in writing.  Each Counterparty in receipt of Adequate Assurance Information shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph.  Such Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "Representatives"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; (b) in support of any objection (the "Assignment Objection") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance; and (c) if the proposed assignee is successful and becomes a party to the Target Contract, on a confidential basis, in the ordinary course of the contractual relationship.  Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  This Bidding Procedures/De Minimis Asset Sale Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further order of this Court; *provided*,

that unredacted versions of such Assignment Objections shall be served upon the Debtors, the

Consultation Parties, and the U.S. Trustee, with a copy to the Court's chambers; *provided*, *further*,

that parties shall have a period of ten (10) business days after the filing of any redacted Assignment

Objection to object to the sealing of any information.  Any Representative receiving Adequate

Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in

this Bidding Procedures/De Minimis Asset Sale Order.

V.    **Rejection Procedures**

25.    The Debtors are authorized, but not required, to reject executory contracts or

unexpired leases in accordance with the following Rejection Procedures:

   a.    The Debtors will file with the Court and serve on the Rejection Notice Parties (as defined below) a notice (the "<u>Rejection Notice</u>"), substantially in the form attached to the Motion as <u>Exhibit E</u>, to reject the identified Unassumed Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Unassumed Contracts to be rejected; (ii) the names and addresses of the counterparties to such Unassumed Contracts; (iii) the proposed effective date of the rejection for each such Unassumed Contracts (the "<u>Rejection Date</u>"); (iv) whether or not the Debtors intend to abandon any property at the leased premises (as described further in subparagraph 18.b below) and a description of the same; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Rejection Notice shall include the proposed order approving rejection of the Unassumed Contracts (the "<u>Rejection Order</u>").

   b.    When rejecting a lease of real property ("<u>Real Property Leases</u>"), the Debtors will specify in the Rejection Notice whether they intend to abandon any personal property, including, without limitation, inventory, furniture, fixtures, equipment, or other material at the leased premises as of the Rejection Date.  Absent a timely objection in accordance with these Rejection Procedures, any such property of the Debtors remaining after the Rejection Date shall be deemed abandoned to the landlord, other applicable lease counterparty, or designee (the "<u>Landlord</u>") without further notice or order by the Court, free and clear of all liens, claims, interests, or other encumbrances; *provided* that the Debtors shall remove any hazardous or toxic materials (as such terms are defined in any applicable federal, state, or local law, rule, regulation, or ordinance) from the leased premises prior to the Rejection Date.  Any Landlord shall be free to dispose of any such items without notice or liability to any party, and the Landlord's rights, if any, to

17

file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest, including the Debtors, to object to such claims.

c.    With respect to any personal property that is leased to the Debtors by a third party or owned by a third party, such third party shall contact the Debtors to remove or cause to be removed such personal property from the leased premises prior to the Rejection Date. For the avoidance of doubt, if any such personal property remains on the leased premises after the Rejection Date, the Landlord may dispose of any and all such property as set forth above.

d.    The Debtors will cause the Rejection Notice to be served by overnight mail or email upon (i) the Unassumed Contract counterparties affected by the Rejection Notice, and their counsel, if known; (ii) with respect to Real Property Leases, any party known to have an interest in, or that has filed a UCC-1 statement against, personal property located at the applicable leased premises including any personal property proposed to be abandoned; (iii) any party known to assert a lien on any real property subject to the Leases; (iv) the Office of the United States Trustee for the Southern District of Texas; and (v) counsel for any statutory committee appointed in these Chapter 11 Cases (collectively, the "Rejection Notice Parties").

e.    Parties objecting to a proposed rejection or abandonment must file and serve a written objection (a "Rejection Objection") so that the Rejection Objection is filed with the Court and is actually received by (i) proposed counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (ii) the Rejection Notice Parties, no later than ten (10) calendar days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline"). Each Rejection Objection must state with specificity the legal and factual grounds for objection to the proposed rejection or abandonment.

f.    If no Rejection Objection is timely filed and served in accordance with these Rejection Procedures by the Rejection Objection Deadline, the Debtors may submit the proposed Rejection Order to the Court after the Rejection Objection Deadline and the Court may enter such order without a hearing. The Rejection Order shall set forth the applicable Rejection Date, which shall be (unless otherwise ordered by the Court), with respect to Unassumed

18

Contracts other than Real Property Leases, the date the Debtors filed and served the Rejection Notice, and with respect to the Real Property Leases, the date the Debtors surrendered the leased premises to the landlord via the delivery of keys, key codes, or alarm codes to the premises, as applicable, to the applicable Real Property Lease counterparty, or if not delivering such keys or codes, provided notice that the landlord may re-let the premises. If a Rejection Objection is filed for fewer than all of the Unassumed Contracts included on the Rejection Notice, the Debtors may proceed to submit a proposed Rejection Order in accordance with the above procedures for the Unassumed Contracts on the Rejection Notice for which no Rejection Objection was filed.

g.    If a Rejection Objection is timely filed and not withdrawn or resolved (an "Unresolved Rejection Objection"), the Debtors shall file a notice for a hearing for the Court to consider the Unresolved Rejection Objection after the Rejection Objection Deadline, subject to the Court's schedule. The Debtors may resolve the Unresolved Rejection Objection without further notice or Court approval in advance of the hearing. If the Unresolved Rejection Objection is overruled or withdrawn, the effective date of rejection shall be (i) the date to which the Debtors, the counterparty that is the subject of the Unresolved Rejection Objection, and the party that has filed the Unresolved Rejection Objection, if applicable, have agreed, or (ii) such other date as determined by the Court.

h.    The deadline to file a proof of claim to assert any damage claim arising from the rejection of an Unassumed Contract shall be the later of (i) the deadline fixed by the Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order. If a proof of claim is not timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11 Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

i.    If the Debtors have deposited funds with a counterparty to an Unassumed Contract as a security deposit or other similar arrangement, such counterparty may not set off or otherwise use such deposit without the prior authorization of this Court or consent of the Debtors.

26.    The form of Rejection Notice attached to the Motion as Exhibit E is approved.

27.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in their sole discretion, to abandon the Abandoned Assets, if any, located at the applicable leased premises free and clear of any interests of any party, subject to notice of such

abandonment being given in accordance with the Rejection Procedures; *provided* that if the Debtors are abandoning assets which may contain personal or confidential information about the Debtors' employees or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such assets before such abandonment, and retain such Confidential Information until further order of the Court.  Any Landlord or other designee shall be free, notwithstanding the automatic stay, to dispose of Abandoned Assets without notice or liability to any party and without further notice or order of the Court.  Any personal property of the Debtors remaining at the leased premises after the Rejection Date shall be deemed abandoned as of the Rejection Date, free and clear of all liens, claims, interests, or other encumbrances.

28.    The Debtors may not abandon any toxic or hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) material, if any, at the leased premises, and must remove all such materials from the leased premises designated for rejection prior to rejection.

29.    Approval of the Rejection Procedures and entry of this Bidding Procedures/De Minimis Asset Sale Order will not prevent the Debtors from seeking to reject a lease by separate motion or pursuant to a chapter 11 plan.

**VI.    Notice Procedures for the Sale and De Minimis Asset Sales**

30.    The Stalking Horse Notice, the Assumption Notice, the Sale Notice, the Bidding Procedures, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the De Minimis Asset Sale Notice, the De Minimis Asset Sale Procedures, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the De Minimis Asset Sale Procedures.

31.     The assumption and assignment to the Successful Bidder of the Target Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and such notice and objection periods are hereby approved.

32.     Within two (2) business days of the entry of this Bidding Procedures/De Minimis Asset Sale Order, the Debtors shall serve the Sale Notice on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Debtors' secured and unsecured prepetition lenders; (c) all parties known by the Debtors to have asserted a lien on any of the Assets; (d) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (g) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (h) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (i) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (j) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (k) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date; and (l) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases (collectively, the "Sale Notice Parties").

33.     The Debtors shall post any Stalking Horse Notice, the Sale Notice, De Minimis Asset Sale Notice, and this Bidding Procedures/De Minimis Asset Sale Order on the website of the Debtors' claims and noticing agent, at https://dm.epiq11.com/case/ComputeNorthHoldings/info.

VII. **Sale Hearing**

34.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before **4:00 p.m. (prevailing Central Time) on November 3, 2022** (the "Sale Objection Deadline"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties.

35.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, including at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by a Purchase Agreement with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

36.     The Debtors shall have until **5:00 p.m. (prevailing Central Time) on the day prior to the Sale Hearing** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

37.     The Sale Hearing shall be held before this Court on November 8, 2022, at [●].m. (prevailing Central Time) before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of Texas, Courtroom 404, 4th Floor, 515 Rusk Street, Houston, Texas 77002 via the Court's remote video and audio conferencing system.

## VIII.   <u>Miscellaneous</u>

38.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

39.     In the event that there is a conflict between this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, this Bidding Procedures/De Minimis Asset Sale Order shall control and govern.

40.     Nothing in this Bidding Procedures/De Minimis Asset Sale Order shall be deemed to limit the Debtors' rights to consummate a sale of assets through a chapter 11 plan, and all such rights are hereby preserved.

41.     Prior to mailing the Assumption Notice, the Sale Notice, and any De Minimis Asset Sale Notice, as applicable, the Debtors may fill-in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Bidding Procedures/De Minimis Asset Sale Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

42.     All persons or entities that participate in the Sale or a De Minimis Asset Sale shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures/De Minimis Asset Sale Order (including any disputes relating to the bidding process, the Auction, or any Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

43.     This Bidding Procedures/De Minimis Asset Sale Order shall be effective immediately upon entry and any stay of orders provided for in Bankruptcy Rules 6004(h)

or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Bidding Procedures/De Minimis Asset Sale Order and may, in their reasonable discretion and without further delay, take any action and perform any act authorized or approved under this Bidding Procedures/De Minimis Asset Sale Order. Further, to the extent applicable, the requirements of Bankruptcy Rule 6006(e) are hereby waived.

44.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid and the rights of all

parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

45.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

46.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

47.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

48.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

Dated: _____, 2022
        Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to Bidding Procedures/De Minimis Asset Sale Order</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. [___]** |

**BIDDING PROCEDURES**

On September 22, 2022 (the "<u>Petition Date</u>"), each of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered an order [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"), which, among other things, authorized the Debtors to solicit bids and approved the procedures set forth herein (collectively, the "<u>Bidding Procedures</u>") to be employed by the Debtors in connection with a sale of substantially all of their assets (collectively, the "<u>Assets</u>"), or components thereof.

**Any party interested in bidding on the Assets should contact the Debtors' investment banker, Jefferies LLC, at the following email addresses: Jeffrey Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), and Project.Centauri.20222@jefferies.com.**

1.   <u>Summary of Important Dates</u>

| | |
|---|---|
| Bidding Procedures Hearing | October 11, 2022 at 9:00 a.m. (prevailing Central Time) |
| Deadline to Serve Assumption Notice | October 18, 2022 |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

| Stalking Horse Designation Deadline | October 18, 2022 |
|---|---|
| Deadline to Object to Assumption Notice | October 25, 2022 at 4:00 p.m. (prevailing Central Time) |
| Bid Deadline | October 27, 2022 at 5:00 p.m. (prevailing Central Time) |
| Auction Commencement | November 1, 2022 at 10:00 a.m. (prevailing Central Time) |
| Deadline to Object to Sale or Adequate Assurance | November 3, 2022 at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | November 8, 2022 at [ ● ] (prevailing Central Time) |

2. **Assets to Be Sold**

The Debtors are offering for sale all of the Assets. Potential Bidders (as defined below) may bid on all or any number or combination of the Assets. Potential Bidders may bid to acquire Assets pursuant to an order entered under section 363 of the Bankruptcy Code or through a chapter 11 plan to be confirmed by the Bankruptcy Court.

3. **Participation Requirements**

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder." To become a Qualifying Bidder, a Potential Bidder must submit to the Debtors and their advisors:

     a.     documentation identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Sale;

     b.     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

     c.     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a Sale; and.

     d.     sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to

2

be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with a Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties (as defined below), or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Sale.  Failure of a Potential Bidder or Qualifying Bidder to comply with any such information or diligence requests can, at the Debtors' discretion (upon consultation with the Consultation Parties), constitute cause to eliminate such bidder from the Sale process.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (x) any designated Stalking Horse Purchaser (as defined below) shall be considered a Qualifying Bidder and a Stalking Horse Agreement (as defined below) shall be considered a Qualifying Bid (as defined below); and (y) the Debtors may consider a combination of bids for the Assets in determining whether the Potential Bidders constitute Qualifying Bidders.

4.    **Stalking Horse Designation**

On or prior to **October 18, 2022**, (the "Stalking Horse Designation Deadline"), the Debtors may, in consultation with the Consultation Parties, enter into an agreement or agreements (each a "Stalking Horse Agreement") with an interested bidder or interested bidders to serve as stalking horse bidders (each a "Stalking Horse Purchaser") to acquire applicable Assets without the need for a hearing; *provided*, however, that (a) any break-up fee (a "Break-Up Fee") does not exceed three percent (3.0%) of the cash purchase price; (b) any expense reimbursement (an "Expense Reimbursement" and collectively with any associated Break-Up Fee, the "Bid Protections") does not exceed the greater of $50,000 and one percent (1%) of the cash purchase price; and (c) the Stalking Horse Purchaser is not an insider (as defined in Section 101(31) of the Bankruptcy Code). If the Debtors designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, in accordance with the proviso at the end of the prior sentence, they shall file for each Stalking Horse Purchaser a Stalking Horse Notice in accordance with the Bidding Procedures Order and submit an order approving the same under certification of counsel.

The Debtors, however, reserve the right to file a Stalking Horse Notice, on or before the Stalking Horse Designation Deadline, to designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, that do not meet the qualifications in the immediately preceding paragraph and to seek a hearing on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Central Time) the day prior to such hearing.  Notwithstanding anything herein to the contrary and for the avoidance of doubt, the designation of any Stalking Horse Purchaser that is an insider shall only be authorized and approved after the notice and a hearing provided for in the prior sentence.

5.    **Bankruptcy Court Jurisdiction**

Any Potential Bidder shall (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any

3

actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders (as defined below), (b) solely bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

**6.**   **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Debtors' investment banker, Jefferies LLC, at the following email addresses:   Jeffrey Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), and Project.Centauri.20222@jefferies.com.

The due diligence period shall extend through and include the Bid Deadline (as defined below).  The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.  The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is not appropriate for disclosure to a Qualifying Bidder.   Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Sale.

**7.**   **Bid Requirements**

Qualifying Bidders intending to submit bids must include with their bids an asset purchase agreement (a "Purchase Agreement").  The Purchase Agreement shall be: (a) if a Stalking Horse Purchaser has been designated for the applicable Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable, and include a redline marked against the Stalking Horse Agreement, and (b) otherwise, in the form of the Purchase Agreement to be provided by the Debtors and include a redline marked against the form Purchase Agreement.

In addition, other than in the case of a bid submitted by a Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "Bid Requirement"):

       a.      be in writing;

b.      fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder; *provided* that if there are multiple parties participating in the bid, then the Qualifying Bidder shall fully disclose the complete terms of any such joint participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the bid;

c.      set forth the purchase price to be paid by such Qualifying Bidder for the Assets in question;

d.      if a bid includes a credit bid under section 363(k), evidence of the amount of the claim, the Assets constituting the collateral securing the claim, and evidence of the grant, perfection, priority, and validity of the lien (the "Secured Claim Documentation");

e.      not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures and the Bidding Procedures Order);

f.      state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

g.      specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the applicable Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

h.      state that such Qualifying Bidder's offer is formal, binding, and unconditional and is irrevocable until two (2) business days after the closing of the sale of the Assets;

i.      state that such Qualifying Bidder is financially capable of timely consummating the Sale contemplated by the bid and provide written financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to timely close the Sale contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any executory contracts or unexpired leases that are to be assumed and assigned to the Qualifying Bidder, in a form that allows the

Debtors to serve, within one (1) business day after such receipt, such information on any counterparties to any contracts or leases being assumed and assigned (or assumed) in connection with the Sale that have requested, in writing, such information;

j.      identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated Sale;

k.      a commitment to close the Sale by November 15, 2022, or such other date as agreed to by the Debtors in consultation with the Consultation Parties;

l.      not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

m.      in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (i) the purchase price under the Stalking Horse Agreement, (ii) any Break-Up Fee (as defined below), (iii) any Expense Reimbursement (as defined below), and (iv) the greater of $100,000 and one percent (1%) of the purchase price under the Stalking Horse Agreement;

n.      not contain (i) any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, due diligence or the absence of any material adverse effect or (ii) any escrow arrangements, indemnities, or adjustments to the purchase price (in each case except as such terms are included in a Stalking Horse Agreement (if any));

o.      contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets in question, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the proposed Sale;

p.      provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest or best bid (the "Back-Up Bid") after the Successful Bid (as defined below) for the applicable Assets;

q.      includes written evidence reasonably acceptable to the Debtors demonstrating corporate or similar governance authorization and approval with respect to the submission, execution, delivery, and consummation of the subject bid; *provided* that, if the Bidder is an entity specially formed for

6

the purpose of effectuating the bid, then the Qualifying Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission, execution, delivery, and consummation of the bid by the equity holder(s) of such Qualifying Bidder and any other governing body of the Qualifying Bidder that is required to approve the submission, execution, delivery, and consummation of the bid;

r.  provides a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be held in a noninterest-bearing escrow account to be identified and established by the Debtors; and

s.  provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is initially deemed not a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (x) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures and (y) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and a Sale.

## 8.   Bid Deadline

A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format so as to be received on or before **October 27, 2022 at 5:00 p.m. (prevailing Central Time)** (the "Bid Deadline") by the following:  (i) the Debtors,  Compute North LLC, 7575 Corporate Way, Eden Prairie, Minnesota 55344, Attn: Jason Stokes, Chief Legal Officer (jason.stokes@computenorth.com); (ii) the Debtors' investment banker, Jefferies LLC, Attn: Jeffrey Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), and Project.Centauri.20222@jefferies.com; (iii) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, Matthew Schwartz, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, mattschwartz@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (iv) proposed counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases; *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties.  To the extent that the Bid Deadline is extended for

all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction**.

9.      Evaluation of Qualifying Bids

The Debtors will deliver by no later than **4:00 p.m. (prevailing Central Time) on the day following the Bid Deadline**, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than **10:00 a.m. (prevailing Central Time) on the day before the commencement of the Auction**.  In the event that a bid is determined not to be a Qualifying Bid, including with respect to any proposed credit bid amount, the Qualifying Bidder shall be notified by the Debtors and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors and to provide additional Secured Claim Documentation, as applicable; *provided* that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid as to the applicable Assets for purposes of constituting the opening bid of the Auction with respect to such Assets (each a "Baseline Bid" and the Qualifying Bidder submitting each such Baseline Bid, a "Baseline Bidder") and shall notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid or Baseline Bids no later than the opening of the Auction.

10.      No Qualifying Bids

If no timely Qualifying Bids—other than any Stalking Horse Purchaser's Qualifying Bid—are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that the Stalking Horse Purchaser (if any) be deemed the Successful Bidder (as defined herein) and that the Court approve the Stalking Horse Agreement (if any) and the Sales contemplated thereunder, in which case the Debtors shall cause notice of the cancellation of the Auction and the date and time of the Sale Hearing (defined below) to be filed with the Court and published on the case website maintained by the Debtors' claims and noticing agent.

11.      Right to Credit Bid

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates that is not subject to an objection by the commencement of the Auction (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's secured claim within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by the Secured Claim Documentation; *provided* that a Secured Creditor shall have

the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.

12.    **Auction**

If the Debtors timely receive one or more Qualifying Bids for any of the Assets (inclusive of any Stalking Horse Purchaser's Qualifying Bid), then the Debtors shall conduct an auction (the "Auction").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets or subsets thereof, which will be determined by considering, among other things, the following non-binding factors:

      a.    the terms of the Purchase Agreement requested by each bidder;

      b.    the extent to which such terms are likely to delay closing of a Sale, the cost to the Debtors and their estates of such delay, and any incremental financing being offered to accommodate any delay;

      c.    the total consideration to be received by the Debtors and their estates and the form of such consideration;

      d.    the Sale structure and execution risk, including, without limitation, conditions to, timing of, and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval;

      e.    the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement;

      f.    the impact on interested parties; and

      g.    any other qualitative or quantitative factors the Debtors may reasonably deem relevant.

13.    **Auction Procedures**

The Auction shall be governed by the following procedures:

      a.    the Auction shall commence on November 1, 2022, at 10:00 a.m. (prevailing Central Time) (the "Auction Date"), at (i) the offices of  Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (ii) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids;

b.      only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "<u>Auction Bidders</u>") shall be entitled to make any bids at the Auction;

c.      the Auction Bidders shall appear at the Auction or through a duly authorized representative;

d.      only the Debtors, the Auction Bidders, and the Consultation Parties, together with the professional advisors to each of the foregoing parties, may attend the Auction;

e.      the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

f.      the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

g.      bidding shall commence at the amount of the Baseline Bid or Baseline Bids, and the Auction Bidders may submit successive bids in increments of at least the greater of $25,000 and one percent (1%) of the current highest or best bid (or Baseline Bid for the first round) (the "<u>Bid Increment</u>"); *provided* that: (A) each such successive bid must be a Qualifying Bid; (B) if the then-highest or best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of, if applicable, (1) any Break-Up Fee and (2) any Expense Reimbursement; (C) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (1) the applicable Baseline Bid or the then-highest or best bid, as applicable, plus (2) the Bid Increment, less (3) the sum of the amount of, if applicable, (x) any Break-Up Fee and (y) any Expense Reimbursement; and (D) the Debtors, in consultation with the Consultation Parties, reserve the right to modify the Bid Increment during the course of the Auction and any such modification shall be made on the record at the Auction;

h.      the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

i.      all material terms of the bid that is deemed to be the highest or best bid for the Assets or a specific subset thereof for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or best bid or bids;

j.      the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the

amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (A) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (B) disclosed to the Auction Bidders;

k.      Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, *provided* that (A) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (B) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

l.      to remain eligible to participate in the Auction, in each round of bidding, (i) each Qualifying Bidder must submit an overbid with respect to such round of bidding and (ii) to the extent a Qualifying Bidder fails to submit an overbid with respect to such round of bidding, such Qualifying Bidder shall be disqualified from continuing to participate in the Auction;

m.      the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the Sale(s) contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

n.      upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (each a "Successful Bid"). In making this decision, in consultation with the Consultation Parties, the Debtors shall consider, among other things, the non-binding factors set forth above in Section 12. The bidders submitting such Successful Bids, which may be a Stalking Horse Purchaser, shall each become a "Successful Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the subject

Purchase Agreement, as applicable.  The Debtors may, in their sole discretion, designate Back-Up Bids (and corresponding Back-Up Bidders) to purchase the applicable Assets in the event that the Successful Bidder or Successful Bidders do not close the Sale; and

o.     prior to the Sale Hearing, each Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the applicable Successful Bid was made.

Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualifying Bidders; allow individual Qualifying Bidders to consider how they wish to proceed; or give Qualifying Bidders the opportunity to provide the Debtors with additional evidence that the Qualifying Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed bid at the prevailing overbid amount.

Qualifying Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors, which consent shall not be unreasonably withheld.  All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualifying Bidder participating in the Auction, including any Stalking Horse Bidder, must confirm on the record at the commencement of the Auction that it (i) has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph, (ii) its Qualifying Bid is a good faith bona fide offer and it intends to consummate the transaction contemplated by such Qualifying Bid if selected as the Successful Bidder, (iii) has reviewed, understands, and accepts the Bidding Procedures, and (iv) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures and the Auction.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided* that parties may speak with clients or parties necessary to place or increase their Qualifying Bid so long as such individuals are advised of this confidentiality restriction

EACH SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND ANY BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall file with the Court notice of the Successful Bid and Successful Bidder and any Back-Up Bid and Back-Up Bidder.  The Debtors shall not consider any bids or overbids submitted after the Auction has closed, and any and all bids or overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a bid or overbid.

**14.    Sale Hearing**

Each Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the applicable Stalking Horse Agreement) will be subject to approval by the Court.  The hearing to approve each Successful Bid and any Back-Up Bid (the "Sale Hearing") shall take place on **November 8, 2022 at [ ● ] (prevailing Central Time)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases.  **For the avoidance of doubt, by no later than the time of announcement of any Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof, from the Auction and sale process, and adjourn the Sale Hearing with respect to the withdrawn Assets on the terms set forth herein**.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things:

a.    authorizes and approves each Sale to a Successful Bidder (and, if applicable, the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement or Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such Sale shall be transferred free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code;

b.    unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such Sale;

c.    finding that each Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

d.    as appropriate, exempting the Sale(s) and conveyance(s) of the applicable Assets from any transfer tax, stamp tax, or similar tax, or deposit under any applicable bulk sales statute.

### 15. Back-Up Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale by **November 15, 2022**, or such date as may be extended by the Debtors, in consultation with the Consultation Parties, the Back-Up Bid will be deemed to be the Successful Bid, the applicable Back-Up Bidder will be deemed to be a Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the applicable Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than **three (3) business days following the date upon which such Back-Up Bid is deemed to be the Successful Bid**.

### 16. Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or a Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing. The Deposit of each Successful Bidder or, if a Sale is closed with the relevant Back-Up Bidder, the Deposit of the Back-Up Bidder, shall be applied to the purchase price for the applicable Sale. If a Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate a Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

### 17. Notice and Consultation Parties

    a.    The term "Notice Parties" as used in these Bidding Procedures shall mean:

        i.    the Debtors, Compute North LLC, 7575 Corporate Way, Eden Prairie, Minnesota 55344, Attn: Jason Stokes, Chief Legal Officer (jason.stokes@computenorth.com); and

        ii.    counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, Matthew Schwartz, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, mattschwartz@paulhastings.com and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com).

b.    The term "<u>Consultation Parties</u>" as used in these Bidding Procedures shall mean:

      i.    with respect to any subset of the Debtors' Assets, each secured lender with liens on such Assets, if any; and

      ii.    counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "<u>Creditors' Committee</u>").

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

In the event that any Consultation Party (other than the Creditors' Committee) or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged, and released without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

### 18.    <u>Reservation of Rights</u>

Notwithstanding any of the foregoing, the  Debtors and their estates shall have the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

**<u>Exhibit B</u>**

**De Minimis Asset Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: [●], 2022 at 4:00 p.m.** |
| | ) **(prevailing Central Time)** |
| | ) |
| | ) **Re:  Docket No. [____]** |

**NOTICE OF ENTRY OF DE MINIMIS ASSET
SALE ORDER AND PROPOSED DE MINIMIS ASSET SALE**

        **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on September 22, 2022, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  The Debtors are seeking to sell their assets with a fair market value of under $1,000,000, including but not limited to computing equipment containers, power transformers, fixtures and equipment, spare parts, and any other miscellaneous assets (the "De Minimis Assets"), or subset(s) thereof, free and clear of all liens, claims, encumbrances, and other interests.

        **PLEASE TAKE FURTHER NOTICE** that by order dated [●], 2022 [Docket No. [●]] (the "De Minimis Asset Sale Order"),[2] the Bankruptcy Court approved, among other things, certain procedures for the sale of De Minimis Assets (the "De Minimis Asset Sale Procedures").  All interested parties should carefully read the De Minimis Asset Sale Order and the De Minimis Asset Sale Procedures set forth therein.  Copies of the De Minimis Asset Sale Order are available upon request to the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC, at ComputeNorthHoldingsInfo@epiqglobal.com and are available for download from the Case Website.  A separate notice [has been provided/will be provided] to counterparties to executory

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the De Minimis Asset Sale Order.

contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the De Minimis Asset Sale (the "Target Contracts") that provides the current amounts owing according to the Debtors (the "Cure Amounts") under each Target Contract with details on how contract counterparties can object to the Cure Amounts (each a "Contract Objection").

PLEASE TAKE FURTHER NOTICE that, in accordance with the De Minimis Asset Sale Procedures, the Debtors intend to sell or transfer the De Minimis Assets (the "De Minimis Asset Sale") set forth on **Exhibit A** attached hereto (the "Sale Schedule"). In accordance with the De Minimis Asset Sale Procedures, the Asset Schedule identifies (a) the De Minimis Assets being sold or transferred, (b) the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (c) the selling price, and (d) the significant terms of the sale or transfer agreement, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators. Information regarding adequate assurance of future performance is being served concurrently herewith.

PLEASE TAKE FURTHER NOTICE that any objections to the De Minimis Asset Sale, the adequate assurance of future performance of the De Minimis Asset Sale Purchaser, or the relief requested in connection therewith (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before 4:00 p.m. (prevailing Central Time) on [ ● (4 days following service of notice)] (the "Sale Objection Deadline"); and (e) be served so as to be actually received on or before the Sale Objection Deadline, upon the following parties (the "Objection Notice Parties"): (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn:  James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn:  Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; and (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE THAT, SHOULD AN OBJECTION BE TIMELY FILED, A HEARING ON THE OBJECTION WILL BE HELD BEFORE THE HONORABLE MARVIN ISGUR ON [●] AT [●].M. (PREVAILING CENTRAL TIME) IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002, OR AT SUCH OTHER DATE AND TIME AS MAY BE DETERMINED BY THE DEBTORS OR THE COURT MAY DESIGNATE UPON NOTICE TO AFFECTED PARTIES**.

**PLEASE TAKE FURTHER NOTICE THAT, IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE DE MINIMIS ASSET SALE ORDER, THEN THE**

2

**DEBTORS SHALL BE AUTHORIZED, PURSUANT TO THE DE MINIMIS ASSET SALE ORDER, TO CONSUMMATE THE PROPOSED DE MINIMIS ASSET SALE IN ACCORDANCE WITH THE TERMS SET FORTH ON THE ATTACHED SALE SCHEDULE WITHOUT FURTHER NOTICE OR HEARING, AND YOU SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ANY RIGHT TO ASSERT SUCH AN OBJECTION**.

Dated:  [____], 2022
Houston, Texas

/s/ *DRAFT*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
            sayanbhattacharyya@paulhastings.com
            danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
            michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A to De Minimis Asset Sale Notice</u>**

**Sale Schedule**

**<u>Exhibit C</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Sale Objection Deadline:** |
| | ) **November 3, 2022 at 4:00 p.m.** |
| | ) **(prevailing Central Time)** |
| | ) |
| | ) Re: Docket No. [___] |

**NOTICE OF ENTRY OF BIDDING PROCEDURES ORDER AND PROPOSED SALE**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on September 22, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Debtors are seeking to sell all, or substantially all, of their assets (collectively, the "Assets"), or subset(s) thereof, free and clear of all liens, claims, encumbrances, and other interests. The Debtors have reserved the right to designate, prior to October 18, 2022, one or more parties to serve as stalking horse purchasers for the Assets (each a "Stalking Horse Purchaser"). For each Stalking Horse Purchaser, a notice will be filed on the Bankruptcy Court's docket and posted at https://dm.epiq11.com/case/ComputeNorthHoldings/info (the "Case Website") identifying the Stalking Horse Purchaser, the terms of the Stalking Horse Agreement, and other information regarding the Stalking Horse Purchaser, as described in the Bidding Procedures Order (defined below).

**PLEASE TAKE FURTHER NOTICE** that by order dated [●], 2022 [Docket No. [●]] (the "Bidding Procedures Order"),[2] the Bankruptcy Court approved, among other things, certain procedures for the sale of Assets (the "Bidding Procedures"). All interested parties should

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

carefully read the Bidding Procedures Order and the Bidding Procedures.  Copies of the Bidding Procedures Order and the Bidding Procedures are available upon request to the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC, at ComputeNorthHoldingsInfo@epiqglobal.com and are available for download from the Case Website.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale.  Any interested bidder should contact Jeffrey Finger (jfinger@jefferies.com) and Ryan Hamilton (rhamilton@jefferies.com).

**PLEASE TAKE FURTHER NOTICE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES IN CONNECTION WITH THE SALE, WHICH DATES AND DEADLINES SUPERSEDE ANY DATES AND DEADLINES SET FORTH IN THE MOTION [DOCKET NO. [●]] PREVIOUSLY FILED AND SERVED BY THE DEBTORS**.

- The deadline to submit a bid for any Assets is October 27, 2022, at 5:00 p.m. (prevailing Central Time).  All bids must be submitted to the following:

  o the Debtors,  Compute North LLC, 7575 Corporate Way, Eden Prairie, Minnesota 55344, Attn:  Jason Stokes, Chief Legal Officer (jason.stokes@computenorth.com);

  o the Debtors' investment banker, Jefferies LLC, Attn:  Jeffrey Finger (jfinger@jefferies.com) and Ryan Hamilton (rhamilton@jefferies.com);

  o counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn:  James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn:  Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com  and  michaeljones@paulhastings.com); and

  o proposed counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases.

- Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before 4:00 p.m. (prevailing Central Time) on November 3, 2022 (the "Sale Objection Deadline"); and (e) be served so as to be actually received on or before the Sale Objection Deadline, upon the following parties (the "Objection Notice Parties"): (i) counsel

2

to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on November 1, 2022, at 10:00 a.m. (prevailing Central Time), at (i) the offices of Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (ii) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider approval of the Sale on November 8, 2022, at [●].m. (prevailing Central Time).

**PLEASE TAKE FURTHER NOTICE THAT, IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER, THEN THE OBJECTING PARTY SHALL BE BARRED FROM OBJECTING TO THE SALE AND SHALL NOT BE HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated:  [____], 2022
Houston, Texas

/s/ *DRAFT*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
            sayanbhattacharyya@paulhastings.com
            danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
            michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit D**

**Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |
| | **Cure Objection Deadline:** |
| | **October 25, 2022 at 4:00 p.m.** |
| | **(prevailing Central Time)** |
| | **Re: Docket No. [___]** |

**NOTICE OF ENTRY OF BIDDING**
**PROCEDURES/DE MINIMIS ASSET SALE ORDER AND PROPOSED SALE**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on September 22, 2022, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with one or more sales of assets (collectively, the "Assets"). The Debtors are seeking Court approval of such sales and assumptions and assignments pursuant to a motion, dated [ ● ] [Docket No. [●]] (the "Motion").[2]

The Court has entered an order [Docket No. [●]] (the "Bidding Procedures/De Minimis Asset Sale Order") approving (a) certain procedures for the sale of Assets with an aggregated selling price equal to or less than $1,000,000 (the "De Minimis Asset Sale Procedures"), (b) certain procedures for the sale of Assets with an individual or collective value over $1,000,000 (the "Bidding Procedures"), and (c) certain procedures that govern the assumption and assignment of certain executory contracts and unexpired leases transferred pursuant to either the De Minimis

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Asset Sale Procedures or the Bidding Procedures. Copies of the Motion and the Bidding Procedures/De Minimis Asset Sale Order are available for download at https://dm.epiq11.com/case/ComputeNorthHoldings/info (the "Case Website").

The Debtors have reserved the right to designate, prior to October 18, 2022, one or more parties to serve as stalking horse purchasers for the Assets (each a "Stalking Horse Purchaser"). For each Stalking Horse Purchaser, a notice will be filed on the Bankruptcy Court's docket and posted on the Case Website identifying each Stalking Horse Purchaser, the terms of each Stalking Horse Agreement, and other information regarding each Stalking Horse Purchaser, as described in the Bidding Procedures/De Minimis Asset Sale Order.

You are receiving this notice because you may be a party to an unexpired lease or an executory contract that is potentially to be assumed and assigned (collectively, the "Contracts"), in connection with a sale under either the De Minimis Asset Sale Procedures or the Bidding Procedures. The Contract (or Contracts) to which you are a party is identified on **Exhibit A** hereto (the "Cure Schedule").

The Debtors have determined the current amounts owing (the "Cure Amounts") under each Contract and have listed the applicable Cure Amount for the Contract(s) to which you are a party on the Cure Schedule. The Cure Amounts are the only amounts proposed to be paid upon any assumption and assignment of the Contracts, in full satisfaction of all amounts outstanding under the Contracts.

To the extent that you as a counterparty to a Contract (a "Counterparty") object to (i) the applicable Cure Amount or (ii) the Debtors' ability to assume and assign your Contract, you must file and serve an objection (a "Contract Objection"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before 4:00 p.m. (prevailing Central Time) on October 25, 2022 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties (set forth below); and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that you believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Contract in question, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto.

Any objections to adequate assurance of future performance by a Successful Bidder other than a De Minimis Asset Purchaser shall be filed not later than November 3, 2022, at 4:00 p.m. (prevailing Central Time) (the "Adequate Assurance Objection Deadline"). Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures and addressed via separate notice.

The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com,

sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

If no objection is timely received with respect to a Cure Amount, then upon the closing of the applicable sale and payment of any Cure Amounts set forth in this notice: (i) you shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amount set forth on **Exhibit A** attached hereto shall be controlling, notwithstanding anything to the contrary in any Contract, or any other document, and you shall be deemed to have consented to the Cure Amount, and (iii) you shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them.

If no objection is received by the Adequate Assurance Objection Deadline to any Successful Bidder's adequate assurance of future performance with respect to your Contract, you shall be deemed to have consented to the assumption, assignment, and transfer of the applicable Contract to the applicable Successful Bidder and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and transfer must be satisfied under such applicable Contract or that any related right or benefit under such applicable Contract cannot or will not be available to the applicable Successful Bidder.

Subject to the terms of the Bidding Procedures/De Minimis Asset Sale Order, an auction (the "Auction") for the Assets, including the Contracts, will be conducted on November 1, 2022, at 10:00 a.m. (prevailing Central Time) at (i) the offices of  Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (ii) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids.  As soon as reasonably practicable after the Auction, the Debtors will file with the Court and post to the Case Website a notice identifying the Successful Bidder(s), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Contracts selected by the Successful Bidder to be assumed and assigned, (iii) the proposed assignee(s) of such Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the selected Contracts may obtain the applicable Successful Bidder's adequate assurance information, which shall be provided to each affected Counterparty on a confidential basis.

The Debtors will seek to assume and assign the Contracts that have been selected by a Successful Bidder (the "Selected Assumed Contracts") at a hearing before the Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, Courtroom 404, 4th Floor, 515 Rusk Street, Houston, Texas 77002 (a "Sale Hearing") on November 8, 2022 at [●].m. (prevailing Central Time), or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures/De Minimis Asset Sale Order.

To the extent that the Debtors and a Counterparty are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount, if any, required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

[*Remainder of Page Intentionally Left Blank*]

Dated:  [___], 2022
Houston, Texas

/s/ *DRAFT*
_____

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
          sayanbhattacharyya@paulhastings.com
          danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
          michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

**<u>Exhibit A to Assumption Notice</u>**

**Cure Schedule**

**<u>Exhibit E</u>**

**Rejection Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. [___]** |

**NOTICE OF REJECTION OF**
**CERTAIN EXECUTORY CONTRACTS OR UNEXPIRED**
**LEASES AND ABANDONMENT OF PROPERTY IN CONNECTION THEREWITH**

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on September 22, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

      **PLEASE TAKE FURTHER NOTICE** that, on [●], 2022, the Bankruptcy Court entered an order approving, among other relief, certain procedures for the rejection of the Debtors' executory contracts and unexpired leases [Docket No. [●]] (the "Rejection Procedures Order").[2] An electronic copy of the Rejection Procedures Order can found at https://dm.epiq11.com/case/ComputeNorthHoldings/info.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Rejection Procedures Order, the Debtors hereby give notice of their intent to reject the contract(s) or lease(s) set forth on the schedule annexed hereto as **Exhibit A** (each, a "Rejected Contract," and together, the "Rejected Contracts"), effective as of the date of rejection listed for each Rejected Contract (the "Rejection Date").

      **PLEASE TAKE FURTHER NOTICE** that, the Debtors intend to abandon the personal property remaining in or on the property that is the subject of the Rejected Contracts as described

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Rejection Procedures Order.

in the scheduled attached hereto as **Exhibit A** (if any).  Pursuant to the terms of the Rejection Procedures, upon entry of the Rejection Order (defined below), the Landlord shall be entitled to use or dispose of such abandoned personal property without further notice or order of the Bankruptcy Court and without notice or liability for such disposal to the Debtors or any third party.

PLEASE TAKE FURTHER NOTICE that any party wishing to object to the Debtors' proposed rejection of a Rejected Contract or abandonment of personal property remaining on the leased premises, must file with the Bankruptcy Court and serve a written objection setting forth the legal and factual bases for such objection (a "Rejection Objection") so that it is actually filed with the Bankruptcy Court and served on the following parties no later than ten (10) calendar days after the date of filing and service of this Rejection Notice (the "Rejection Objection Deadline"): (i) the Debtors,  Compute North LLC, 7575 Corporate Way, Eden Prairie, Minnesota 55344, Attn:  Jason Stokes, Chief Legal Officer (jason.stokes@computenorth.com); (ii) the proposed counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn:  James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn:   Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (iii) the applicable counterparty to the Rejected Contract that is the subject of the Rejection Objection; (iv) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (v) counsel for any statutory committee appointed in these Chapter 11 Cases.

PLEASE TAKE FURTHER NOTICE that if no Rejection Objection is filed and served in compliance with the foregoing, the Debtors may submit to the Bankruptcy Court after the Rejection Objection Deadline a proposed order approving the rejection of the Rejected Contract(s) (each such order, a "Rejection Order"), substantially in the form attached hereto as **Exhibit B**, and the Bankruptcy Court may enter such Rejection Order without a hearing.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Rejection Procedures Order, if no Rejection Objection is properly filed and served in compliance with the foregoing, the rejection of each Rejected Contract shall become effective as of the Rejection Date. The deadline to file a proof of claim to assert any damage claim arising from the rejection of a Rejected Contract shall be the later of (i) the deadline fixed by the Bankruptcy Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order.  If a proof of claim is not timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11 Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

PLEASE TAKE FURTHER NOTICE that if a Rejection Objection is properly filed and served in compliance with the foregoing and not withdrawn or resolved (an "Unresolved Rejection Objection"), the Debtors shall file a notice for a hearing for the Bankruptcy Court to consider the Unresolved Rejection Objection after the Rejection Objection Deadline, subject to the Bankruptcy Court's schedule.  The Debtors may resolve the Unresolved Rejection Objection without further

notice or Bankruptcy Court approval in advance of the hearing.  If the Unresolved Rejection Objection is overruled or withdrawn, the effective date of rejection shall be (i) the date to which the Debtors, the counterparty that is the subject of the Unresolved Rejection Objection, and the party that has filed the Unresolved Rejection Objection, if applicable, have agreed, or (ii) such other date as determined by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Rejection Procedures Order, if the Debtors have deposited monies with a lessor as a security deposit or arrangement, such lessor or lease counterparty may not off-set or otherwise use such deposit without the prior authorization of the Bankruptcy Court or consent of the Debtors.

[*Remainder of Page Intentionally Left Blank*]

Dated:  [___], 2022
Houston, Texas

/s/ *DRAFT*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (*pro hac vice* admission pending)
Sayan Bhattacharyya (*pro hac vice* admission pending)
Daniel Ginsberg  (*pro hac vice* admission pending)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
         sayanbhattacharyya@paulhastings.com
         danielginsberg@paulhastings.com

-and-

Matthew Micheli (*pro hac vice* admission pending)
Michael Jones (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
         michaeljones@paulhastings.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A to Rejection Notice

### List of Rejected Contracts

| Counterparty Name | Contract or Lease | Real Property Address (if applicable) | Debtor | Proposed Rejection Date | Property to Be Abandoned (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**<u>Exhibit B to Rejection Notice</u>**

**Rejection Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. [___]** |

**ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND ABANDONMENT OF PROPERTY IN CONNECTION THEREWITH**

Pursuant to and in accordance with the order of this Court entered on [●], 2022 [Docket No. [●]] (the "<u>Rejection Procedures Order</u>")[2] entered in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and the Debtors having properly filed with this Court and served on the Rejection Notice Parties a notice (the "<u>Rejection Notice</u>") of their intent to reject certain executory contracts or unexpired leases (the "<u>Rejected Contracts</u>") identified on **Exhibit 1** attached hereto and to abandon any property remaining at the premises on the Rejection Date of the applicable Rejected Contracts, if any, that the Debtors determine is too difficult to remove or expensive to store, such that the economic benefits of removing or storing such remaining property would be outweighed by the attendant costs (such assets, the "<u>Abandoned Assets</u>") in accordance with the terms of the Rejection

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Rejection Procedures Order.

Procedures Order; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and no timely objections having been filed to the Rejection Notice; and the Court having found and determined that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Rejected Contracts identified on **Exhibit 1** attached hereto are hereby rejected as set forth herein, effective as of the later of: (a) service of the Rejection Notice; (b) the Debtors' unequivocal surrender of the leased premises via the delivery of the keys, key codes, and alarm codes to the premises, each as applicable, to the applicable Landlord, or in the absence of delivering such keys and codes, providing written notice to the Landlord that the Landlord may enter and re-let the premises; and (c) such other date as determined by the Court (the "Rejection Date").

2.      The Abandoned Assets, if any, remaining at the leased premises as of the applicable Rejection Date shall be deemed abandoned upon the Rejection Date without further notice or order of the Court, free and clear of all liens, claims, interests, or other encumbrances.

3.      With respect to any Abandoned Assets abandoned at one of the Debtors' leased properties, the applicable Landlord or other designee shall be free, notwithstanding the automatic stay, to dispose of such property without liability to any party and without further notice or order of the Court; and the applicable Landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest, including the Debtors, to object to such claims.

4.      If any affected non-Debtor party (each, a "<u>Counterparty</u>") to a Rejected Contract asserts a claim against the Debtors arising from the rejection of the Rejected Contract, the Counterparty shall submit a proof of claim by the later of (i) the deadline fixed by the Bankruptcy Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order.

5.      If a Counterparty does not timely file a proof of claim in accordance with the terms of the Rejection Procedures Order and this Order, the Counterparty shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11 Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

6.      Nothing herein shall prejudice the Debtors' rights to argue that any of the Rejected Contracts were terminated prior to the Petition Date, or that any claim for damages arising from the rejection of the Rejected Contracts is limited to the remedies available under any applicable termination provision of such Rejected Contract or that any such claim is an obligation of a third party, and not that of the Debtors or their estates.

7.      Nothing contained in this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as: (a) an admission as to the validity of any claim against the Debtors, (b) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (c) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (d) an agreement or obligation to pay any claims, (e) a waiver of any claims or causes of action which may exist against

any creditor or interest holder, or (f) an approval, assumption, or adoption of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

8.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights of or enhance the status of any claim by any party.

9.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2022
        Houston, Texas

                                    _____
                                    THE HONORABLE MARVIN ISGUR
                                    UNITED STATES BANKRUPTCY JUDGE

<u>**Exhibit 1 to Rejection Order**</u>

**List of Rejected Contracts**

| Counterparty Name | Contract or Lease | Real Property Address (if applicable) | Debtor | Proposed Rejection Date | Property to Be Abandoned (if applicable) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |