UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-90273 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF PORTAGE
POINT PARTNERS, LLC AS FINANCIAL ADVISOR TO THE DEBTORS
AND DEBTORS IN POSSESSION, EFFECTIVE AS OF SEPTEMBER 22, 2022**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on October 24, 2022 at 1:30 p.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application (this "Application"):

**RELIEF REQUESTED**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) to retain and employ Portage Point Partners, LLC ("Portage Point") as financial advisor for the Debtors, effective as of September 22, 2022 (the "Petition Date") and in accordance with the terms and conditions of that certain engagement letter dated as of July 5, 2022, which is attached hereto as **Exhibit B** and incorporated herein by reference (the "Engagement Letter").[2]

2. In support of this Application, the Debtors rely upon and incorporate by reference, the *Declaration of Ryan Mersch in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Portage Point Partners, LLC as Financial Advisor to the Debtors and Debtors in Possession, Effective as of September 22, 2022*, which is attached hereto as **Exhibit C** (the "Mersch Declaration").

---

[2] The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Order, shall control. The Debtors reserve the right to amend, restate, supplement, or modify the Engagement Letter, as the case may be, and any such amended, restated, supplemented, or modified Engagement Letter will be filed with the Court. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Letter or in the First Day Declaration (defined below), as applicable.

**JURISDICTION AND VENUE**

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a), 327(a), 328(a), 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1, 2016-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

**BACKGROUND**

6. On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

7. The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in

3

the blockchain, cryptocurrency mining, and distributed computing space. With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs. In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales. The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

8. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of these Chapter 11 Cases, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration").

## PORTAGE POINT'S QUALIFICATIONS

9. Portage Point is a restructuring and turnaround management firm whose professionals have a wealth of experience in providing restructuring advisory services and enjoy an excellent reputation for services they have rendered on behalf of debtors and creditors throughout the United States.

10. Professionals currently employed by Portage Point have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *In re Alex and Ani, LLC*, Case No. 21-10918 (CTG)

(Bankr. D. Del. July 9, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. March 29, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. October 22, 2020); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020); *In re Hornbeck Offshore Services, LLC*, No. 20-32685 (DRJ) (June 18, 2020); *In re Dura Automotive Systems*, No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re The Financial Oversight and Management Board for Puerto Rico*, No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017);*In re Rupari Holding Corp.*, No. 17-10793 (KJC) (Bankr. D. Del. April 10, 2017); *In re Triangle USA Petroleum Corporation*, No. 16-11566 (MFW) (Bankr. D. Del. June 29 2016).

11. Since July 2022, Portage Point has provided financial advisory services to the Debtors. In providing such prepetition professional services, Portage Point has acquired knowledge of the Debtors and their businesses, and developed familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, Portage Point and its personnel (the "Portage Point Professionals") have worked closely with the Debtors' senior management and other advisors to understand the Debtors' business. For these reasons, Portage Point is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise inthe context of these Chapter 11 Cases. The retention of Portage Point on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## **SERVICES TO BE PROVIDED**

12. The terms of the Engagement Letter shall govern the Debtors' retention of Portage Point except as explicitly set forth herein or in any order granting this Application.

13. Among other things, the Portage Point Professionals will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans, and supporting negotiations among the Debtors, their advisors and their creditors with respect to an overall exit strategy for their Chapter 11 Cases.

14. Portage Point will provide such restructuring support services as Portage Point and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these Chapter 11 Cases, including, but not limited to:

   a. assisting in developing a business plan or such other related forecasts and analyses as requested by the Company that may be required by various current and prospective stakeholders including, without limitation, board of directors, management, other professionals, current and potential investors, current and potential lenders and other potential stakeholders ("Stakeholders");

   b. assisting in evaluating or developing a short-term cash flow model and related liquidity management tools as requested by the Company for general corporate purposes or as may be required by the Stakeholders;

   c. assisting in evaluating or developing various strategic alternatives and financial analyses as requested by the Company for general corporate purposes or in connection with the strategic alternatives process ("SA Process");

   d. assisting in working with Stakeholders including, but not limited to, meeting with Stakeholders, developing presentations, and providing management with financial analytical assistance necessary to facilitate such meetings, discussions, and the SA Process;

   e. assisting in developing and distributing various other information that may be required by the Company or the Stakeholders; and

   f. assisting with such other matters as may be requested by the Company that fall within Portage Point expertise and that are mutually agreeable.

6

15. The foregoing services are necessary to enable the Debtors to pursue and consummate the value-maximizing transactions contemplated in these Chapter 11 Cases.

**PROFESSIONAL COMPENSATION**.

16. Portage Point has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices, subject to periodic adjustments as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

17. Portage Point's current standard hourly rates for financial advisory services, are as follows:

| Title | Hourly Rate (USD) |
|---|---|
| Managing Partner | $945 |
| Managing Director | $765 - $875 |
| Director | $645 - $695 |
| Vice President | $545 - $630 |
| Associate | $390 - $425 |

In the ordinary course of its business, Portage Point may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates have become effective. Portage Point shall provide ten (10) business days' notice to the Debtors, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and any official committee appointed in these Chapter 11 Cases before any increases in the hourly rates set forth in the Application or the Engagement Letter are implemented. Portage

7

Point's hourly rates are typically adjusted quarterly to reflect the advancing expertise, capabilities, and seniority of Portage Point's professionals as well as general economic factors.

18.     The foregoing are Portage Point's current customary hourly rates, and the Debtors and Portage Point respectfully submit that such rates are reasonable. In addition to compensation for professional services rendered by Portage Point's personnel, Portage Point will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to data sets, reports, technology, outside copy services, travel, lodging, meals, and services of outside vendors.

19.     The Debtors understand that Portage Point intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Bankruptcy Local Rules, orders of this Court, and guidelines established by the U.S. Trustee.

20.     The Debtors submit that the Fee and Expense Structure is reasonable, market-based, and designed to compensate Portage Point fairly for its work and to cover fixed and routine overhead expenses. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Portage Point and the fee structures typically utilized by leading advisory firms of similar stature to Portage Point for comparable engagements. The Fee and Expense Structure is consistent with Portage Point's normal and customary billing practices for cases of this size and complexity and that require the level and scope of services outlined herein.

### PORTAGE POINT'S PREPETITION COMPENSATION

21.     Prior to the Petition Date, Portage Point received advance payments totaling $1,600,000 (the "Retainer"). Portage Point's fees and reimbursable expenses for the prepetition

period totaled approximately $1,598,426. The portion of the Retainer not applied to prepetition fees and disbursements is currently estimated to be approximately $1,574. To the extent there are any additional fees and expenses that were incurred prepetition but not yet applied against Portage Point's Retainer, Portage Point will apply such fees and expenses against Portage Point's Retainer and hold the remaining portion of the Retainer as security until Portage Point's final fees and expenses are awarded by the Court.

22. Pursuant to Bankruptcy Rule 2016(b), Portage Point has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with Portage Point professionals or (b) any compensation another person or party has received or may receive from the Debtors.

## NO DUPLICATION OF SERVICES

23. The Debtors believe that the services provided by Portage Point will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, Portage Point will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

## INDEMNIFICATION PROVISIONS

24. As part of this Application, the Debtors also request that the Court approve the indemnification provisions set out in the Engagement Letter (the "Indemnification Provisions"). The terms and conditions of the Engagement Letter, including the Indemnification Provisions set forth therein, were negotiated by the Debtors and Portage Point at arm's length and in good faith. The Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Portage Point's proposed retention, and as modified by the Order requested

herein, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Portage Point's services for a successful result in these cases. As set forth in the Proposed Order, during the pendency of these Chapter 11 Cases, the Engagement Letter's indemnification provisions shall be subject to the following:

a. subject to the provisions of subparagraphs (b) and (c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, Portage Point in accordance with the Engagement Letter for any claim arising from related to or in connection with the services provided for, whether pre-petition or post-petition, in the Engagement Letter;

b. the Debtors shall have no obligation to indemnify Portage Point for any claim or expense that is either (i) judicially determined (the determination having become final) to have resulted primarily from Portage Point's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud unless the Court determines that indemnification would be permissible under applicable law or (ii) settled prior to a judicial determination as to Portage Point's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be a claim or expense for which Portage Point should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Letter; and

c. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, Portage Point believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, Portage Point must file an application therefore in this Court, and the Debtors may not pay any such amounts to Portage Point before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution, or reimbursement by Portage Point and not a provision limiting the duration of the Debtors' obligation to indemnify Portage Point.

### **PORTAGE POINT'S DISINTERESTEDNESS**

25. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Mersch Declaration: (a) Portage Point is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; (b) Portage Point has no connection to the Debtors, their creditors, or other parties-in-interest in these Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed by the U.S. Trustee's office; and (c) does not hold any interest adverse to the Debtors' estates.

26. As set forth in further detail in the Mersch Declaration, Portage Point has certain connections with creditors, equity security holders, and other parties-in-interest in these Chapter 11 Cases. All of these matters, however, are unrelated to these Chapter 11 Cases. Portage Point does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

27. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Portage Point's retention are discovered or arise, Portage Point will use reasonable efforts to promptly file a supplemental declaration disclosing the same.

## BASIS FOR RELIEF

28. The Debtors submit that the retention of Portage Point under the terms described herein is appropriate under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    a.    is not a creditor, an equity security holder, or an insider;

  b.  is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

  c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

29. Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Portage Point's prepetition relationship with the Debtors is therefore not an impediment to Portage Point's retention as Debtors' postpetition financial advisor.

30. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of Portage Point's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.

31. The Debtors selected Portage Point as their financial advisor because of Portage Point's experience and reputation for providing financial advisory services in large, complex chapter 11 cases, such as the Debtors' cases. Furthermore, Portage Point has performed substantial prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, Portage Point's professionals have worked closely with the Debtors' management and their other advisors.

Accordingly, Portage Point has experience, expertise, and relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. The Debtors submit that the retention of Portage Point on the terms and conditions set forth herein are necessary and appropriate, in the best of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

32. The Debtors submit that the terms of the Engagement Letter were negotiated in good faith and at arms' length between the Debtors and Portage Point and reflect the extensive work and substantial commitment undertaken by Portage Point before the Petition Date, as well as the Debtors' evaluation of the extensive work and substantial commitment remaining to be completed by Portage Point during these Chapter 11 Cases. The Debtors submit that the terms and conditions of the Engagement Letter, including the Fee and Expense Structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that Portage Point may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, (b) Portage Point's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (c) Portage Point's substantial experience with respect to the provision of financial advisory services, (d) the market prices for Portage Point's services for engagements of this nature, and (e) the fee structures typically utilized by Portage Point and other financial advisory firms in bankruptcy or otherwise.

33. The Debtors request that Portage Point's retention be made effective as of the Petition Date to allow Portage Point to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Application. The Debtors submit that, under

the circumstances, and to avoid harm to the Debtors' estates that may occur if Portage Point is not immediately retained, retroactive approval to the Petition Date is warranted.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

34. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

35. The Debtors will provide notice of this Application to: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

The Debtors respectfully request entry of the Order granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

Dated: October 3, 2022
Eden Prairie, Minnesota

/s/ *Harold Coulby*
Harold Coulby
Chief Financial Officer and Treasurer of
Compute North LLC

**Certificate of Service**

      I certify that on October 3, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                             */s/ James T. Grogan III*
                                                                                             James T. Grogan III