**Exhibit B**

**Engagement Letter**



Portage Point Partners, LLC
300 North LaSalle, Suite 1420
Chicago, IL 60654
portagepointpartners.com

Mr. Barry Coulby
Chief Financial Officer
Compute North LLC
7575 Corporate Way
Eden Prairie, MN 55344

Re:  *Agreement for the Provision of Consulting Services*

Dear Mr. Coulby:

This letter, together with the attached Schedule(s), Exhibit and General Terms and Conditions, sets forth the agreement (this "Agreement") between Portage Point Partners, LLC ("Portage Point") and Compute North Holdings, Inc. (including its subsidiaries and affiliates, the "Company") for the engagement of Portage Point to provide certain consulting services to the Company.

All defined terms shall have the meanings ascribed to them in this Agreement. The Company and Portage Point are each a "party," and together the "parties."

## OBJECTIVE AND TASKS

Working collaboratively with the Company's senior management team, Board and other professionals, Portage Point will assist in evaluating and developing various financial forecasting, strategic alternatives analysis and other strategic planning initiatives for general corporate purposes or in connection with a potential strategic alternatives process ("SA Process").

The primary Portage Point workstreams will be as follows:

- Assist in developing a business plan and / or such other related forecasts and analyses as requested by the Company that may be required by various current and prospective stakeholders including, without limitation, board of directors, management, other professionals, current and potential investors, current and potential lenders and other potential stakeholders ("Stakeholders").

- Assist in evaluating and / or developing a short-term cash flow model and related liquidity management tools as requested by the Company for general corporate purposes or as may be required by the Stakeholders.

- Assist in evaluating and / or developing various strategic alternatives and financial analyses as requested by the Company for general corporate purposes or in connection with the SA Process.

- Assist in working with Stakeholders including, but not limited to, meeting with Stakeholders, developing presentations and providing management with financial analytical assistance necessary to facilitate such meetings, discussions and the SA Process.

- Assist in developing and distributing various other information that may be required by the Company or the Stakeholders.

- Assist with such other matters as may be requested by the Company that fall within Portage Point expertise and that are mutually agreeable.



## STAFFING

Portage Point will provide its partners, directors, officers, employees, ICs, agents or other personnel ("Portage Point Staff") subject to the terms and conditions of this Agreement, with the titles, pay rates and other descriptions set forth Schedule 1. The Portage Point Staff may be assisted by or replaced by other professionals at various levels, as required, who shall also become Portage Point Staff.

## TIMING AND FEES

Portage Point will commence this engagement on or about July 5, 2022.

The Company shall compensate Portage Point for its services and reimburse Portage Point for expenses, as set forth on Schedule 1.

[*Signature Page Follows*]



If these terms are acceptable, please sign and return this Agreement at your earliest convenience.

We look forward to our work together.

Sincerely,

Portage Point Partners, LLC

*[signature]*

Matthew D. Ray
Founder & Managing Partner


*Acknowledged and Agreed to:*

Compute North LLC

By: _____

Its: ____CFO_____

Date: July 5, 2022



## SCHEDULE 1

### FEES AND EXPENSES

1. **Fees**: The Company shall pay Portage Point based on the hours spent at the hourly rate fees set forth below.

   | Title | Hourly Rate [1] |
   |---|---|
   | Managing Partner | $935 |
   | Managing Director | $760 - $795 |
   | Director | $640 - $695 |
   | Vice President | $540 - $625 |
   | Associate | $380 - $425 |

   [1] Hourly Rates may change in the future from time to time and are typically adjusted quarterly to reflect advancing experience, capabilities and seniority of our professionals as well as general economic factors.

2. **Expenses**: In addition to the Fees set forth in this Schedule 1, the Company shall reimburse Portage Point for all direct external project related expenses incurred in connection with this engagement (i.e. data sets, reports, outside copy services, travel, lodging, meals, services of outside vendors, etc) plus an amount equal to two percent (2%) of Fees to cover internal expenses which are not billed through as direct reimbursable expenses (i.e. memoranda production costs, courier, database and information services, administrative support, research and other similar expenses as well as other overhead expenses such as technology (including information security), telecommunications, supplies, photocopies and other incidental expenses that are not readily itemized). Portage Point will provide a reasonably itemized statement of expenses incurred on this engagement and shall provide copies of original invoice or other documentation on itemized expenses over $75 upon request. The Company shall reimburse Portage Point for reasonable itemized expenses less than $75 without a copy of the original invoice or other documentation.

3. **Retainer**: The Company will pay a retainer in the amount of $50,000 ("Retainer") to Portage Point prior to commencement of the engagement. The Retainer will be applied against Fees and Expenses as set forth in this Schedule 1 and in accordance with Section 2 of the General Terms and Conditions. The Company shall periodically replenish the Retainer immediately upon receipt of notice such requirement by Portage Point.

4. **Payment**: Portage Point will submit invoices from time to time setting forth the services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt and paid via wire transfer. No discount is provided for prompt payment, and none shall be taken, but interest on any invoices paid late shall accrue in accordance with Section 2 of the General Terms and Conditions. Portage Point wire instructions are provided below.

   Portage Point Partners, LLC
   JPMorgan Chase Bank, N.A.
   383 Madison Avenue New York, NY 10017
   Routing number: 021000021
   Account number: 758585033

   *All Fees, Expenses and other compensation outlined in this Agreement shall be paid by the Company to Portage Point and not directly to any of the Portage Point Staff.*

## PORTAGE POINT PARTNERS, LLC
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into this Agreement to which these Terms are attached. In case of conflict between the wording in this Agreement and/or schedule(s) and these Terms, the wording of this Agreement and/or schedule(s) shall prevail.

**Section 1. Company Responsibilities.**

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation; and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by Portage Point in connection with this Agreement.

Portage Point delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities and (ii) timely decisions and approvals made by the Company's management.

If in connection with any Chapter 11 filing the Company applies to the Bankruptcy Court for approval of the Company's retention of Portage Point, such retention shall be under the terms of the Agreement. Portage Point shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless Portage Point retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to Portage Point. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to Portage Point fee and expense matters.

**Section 2. Retainer, Billing, Payments and Taxes.**

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay Portage Point the agreed-upon advance Retainer as set forth on Schedule 1. Invoices shall be offset against the Retainer. Any unearned portion of the Retainer will be applied against the final invoice or returned to the Company at the end of the engagement.

**Billing and Payments.** All payments to be made to Portage Point shall be due and payable upon delivery of invoice via wire transfer to Portage Point bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to Portage Point in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, Portage Point may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. Portage Point will seek Court approval to apply the Retainer to these amounts.

**Taxes.** Portage Point fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on Portage Point income generally). If Portage Point fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then Portage Point will include such taxes on its invoices as separate line items.

**Section 3. Relationship of the Parties.**

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, Portage Point will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its partners, directors, officers, employees, ICs, agents or other personnel ("Portage Point Personnel"), and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Portage Point Personnel will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. Portage Point will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

If Portage Point augments its consulting staff with independent contractors (each, an "IC") and the Company becomes a debtor under the Bankruptcy Code, (i) Portage Point will file, and require each IC to file, 2014 affidavits indicating that the IC reviewed the list of the interested parties in this case, disclosing the IC's relationships, if any, with the interested parties and indicating that the IC is a disinterested person (as that term is defined in the Bankruptcy Code), (ii) the IC must remain disinterested during the time that Portage Point is involved in providing services on behalf of the Company; and (iii) the IC must represent that he/she will not work for the Company or other parties in interest in this case during the time Portage Point is involved in providing services to the Company.

**Section 4. Confidentiality.**

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of Portage Point services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity.

"Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting Portage Point from making such disclosures of Confidential Information that Portage Point reasonably believes are required by law or any regulatory requirement or authority, to clear client conflicts. Portage Point may also disclose Confidential Information to Portage Point Personnel who have a need to know the Confidential Information as it relates to the services being provided under this Agreement. Portage Point may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of Portage Point obligations and assignments hereunder, provided Portage Point reasonably believes that such third party is bound by confidentiality obligations. In addition, Portage Point will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

Work Product (as defined in Section 5) may contain Portage Point proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5) generated by Portage Point in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement and (ii) no such information shall be used for any other purpose, disseminated to any third parties, or quoted or referred to with or without attribution to Portage Point at any time in any manner or for any purpose without Portage Point prior approval (not to be unreasonably withheld or delayed), except as required by law.

Portage Point acknowledges and agrees that certain Confidential Information and Work Product may be subject to the attorney-client privilege, waiver of which may only be provided by legal counsel for the Company, and that Portage Point will not disclose any such privileged information to any third party without express written consent from legal counsel for the Company.

**Section 5. Intellectual Property.**

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that Portage Point creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Confidential

## PORTAGE POINT PARTNERS, LLC
## GENERAL TERMS AND CONDITIONS

Information as defined above. Portage Point may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that Portage Point has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of Portage Point. The Company shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining Portage Point solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend Portage Point Personnel, Portage Point and its affiliates (collectively, the "Portage Point Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of Portage Point that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the Portage Point Parties may engage separate counsel to represent them at the Company's expense.

In addition to the above indemnification, Portage Point Parties serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise.

The Company shall specifically include and cover Portage Point Parties serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O Insurance"). Prior to Portage Point accepting any officer position, the Company shall, at the request of Portage Point, provide Portage Point a copy of its current D&O Insurance policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other documents as Portage Point may reasonably request evidencing the appointment and coverage of the indemnitees. The Company will maintain such D&O Insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O Insurance coverage with respect to such persons. In the event that the Company is unable to include Portage Point Parties under the D&O Insurance policy or does not have first dollar coverage acceptable to Portage Point in effect for at least $10 million (i.e., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), Portage Point may, at its option, attempt to purchase a separate D&O insurance policy that will cover Portage Point Parties only ("Portage Point Insurance"). The cost of the Portage Point Insurance policy shall be invoiced to the Company as an out-of-pocket expense. If Portage Point is unable or unwilling to purchase such Portage Point Insurance, then Portage Point reserves the right to terminate the Agreement.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that Portage Point may offer to its personnel generally, and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to, and without allocation against, any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by Portage Point or otherwise). Portage Point is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third-party products or services are against the third-party vendor and not against Portage Point, whether or not Portage Point is instrumental in procuring such third-party product or service.

Portage Point acknowledges that, during the pendency of any Bankruptcy Court approved retention, these indemnification provisions are subject to modification as may be stated within the Bankruptcy Court's retention order.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of Illinois with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within thirty (30) days after their appointment the two-party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Chicago, Illinois under the AAA Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, Portage Point may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim (and any subsequent counter claim) against the Company relating to either (i) the non-payment of Fees or expenses due under this Agreement or (ii) the non-performance of obligations under Section 7.

In the event the Company files under Chapter 11, the Company and Portage Point agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination Portage Point will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of Portage Point.

Additionally, unless the Agreement is terminated by the Company due to Portage Point material breach (and such material breach continues after thirty (30) days written notice thereof and opportunity to cure), Portage Point shall remain entitled to the success fee(s), if any, that otherwise would be payable at any point after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of these Terms, the provisions of <u>Schedule 1</u> and the obligation to pay accrued and minimum fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Non-Solicitation of Portage Point Personnel

The Company acknowledges and agrees that Portage Point has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two (2) years after the final invoice is rendered by Portage Point with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any Portage Point Personnel.

## PORTAGE POINT PARTNERS, LLC
## GENERAL TERMS AND CONDITIONS

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any Portage Point Personnel in violation of the preceding paragraph, the Company agrees to pay to Portage Point as liquidated damages and not as a penalty the sum total of (i) $1,000,000 for a Managing Director or higher, (ii) $700,000 for a Director, (iii) $500,000 for an Associate and (iv) $250,000 for any other Portage Point Personnel. The

Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse Portage Point for the costs of recruiting, hiring and training the Portage Point Personnel as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that Portage Point has made in the Portage Point Personnel and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

Section 11.  Limit of Liability.

THE PORTAGE POINT PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY.  EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF- DEALING OR INTENTIONAL MISCONDUCT OF Portage Point. THE Portage Point PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE Portage Point PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO PORTAGE POINT FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the Portage Point Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by Portage Point pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the Portage Point Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the Portage Point Parties pursuant to this Agreement exceed the Liability Cap.

Portage Point acknowledges that, during the pendency of any Bankruptcy Court approved retention, the Liability Cap may be subject to modification as may be stated within the Bankruptcy Court's retention order.

Section 12  General.

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Related Matters.** If a Portage Point Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse Portage Point for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, except in cases where a Portage Point Party is a party to the proceeding or the subject of the investigation.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by Portage Point and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services, The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. Portage Point is not responsible

for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If there is more than one party to this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The indemnitees shall be third-party beneficiaries with respect to Section 7 hereof.

**Data Protection.** Portage Point acknowledges and the Company agrees that in performing the services Portage Point may from time to time be required to process certain personal data on behalf of the Company. In such cases, (i) the Company agrees that it is acting as a data controller with respect to any such personal data and that it shall comply with all applicable international, federal, state, provincial and local data protection, privacy or information security laws, rules, regulations, directives, and governmental requirements, (ii) Portage Point will not be required to provide any notices to the data subjects of any such personal data before processing the data, if any such notices or consents are required and (iii) Portage Point shall endeavor to (a) act only on reasonable instructions from the Company within the scope of the services of this Agreement, (b) have in place appropriate technical and organizational security measures against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damage to personal data and (c) comply (to the extent applicable to it and/or the process) with relevant data protection, privacy or other similar laws or regulations regarding the collection, storage, processing and use of personal data in connection with this Agreement. Portage Point is authorized by Company to include The Company name / corporate logos as a "client" and general description of services in its promotional, marketing, award nominations and/or advertising materials including, without limitation the Portage Point website.

**Assignment of Agreement.** Portage Point shall have the unfettered right to transfer this Agreement, including the letter, the Terms and the schedule(s) to any entity under substantially similar control as Portage Point. To the extent such a transfer occurs this Agreement, including the letter, the Terms and the schedule(s) shall remain in full force and effect.

**Limitations.** Portage Point makes no representation or guarantee that, *inter alia*, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, Portage Point does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. Portage Point shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Company and only to the extent and in the manner authorized by and directed by the Board of the Company and agreed to by Portage Point.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to Portage Point, to:

Portage Point Partners, LLC
300 North LaSalle, Suite 1420
Chicago, IL 60654
Attention: Matthew Ray

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to Portage Point. All notices under the

## PORTAGE POINT PARTNERS, LLC
### GENERAL TERMS AND CONDITIONS

Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.