**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT
BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), EFFECTIVE AS OF
SEPTEMBER 22, 2022 AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on October 24, 2022 at 1:30 p.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (a) authorizing the Debtors to retain and employ Jefferies LLC ("Jefferies") as their investment banker, effective as of September 22, 2022 (the "Petition Date"), pursuant to the terms and subject to the conditions of that certain engagement letter between Jefferies and the Debtors dated as of July 1, 2022, a copy of which is attached as Exhibit 1 to the Proposed Order (the "Engagement Letter");[2] and (b) waiving and modifying certain of the time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "Trustee Guidelines") of the United States Trustee, and any other guidelines regarding submission and approval of fee applications. The Engagement Letter describes (a) the various services that the Debtors seek Jefferies to perform on their behalf during these Chapter 11 Cases and (b) the terms and conditions of Jefferies' proposed engagement by the Debtors.

---

[2] The Engagement Letter amended and restated in its entirety that certain engagement letter between the Debtors and Jefferies dated August 16, 2021 (the "Prior Engagement Letter"). The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter (except with respect to the crediting of any fees on account of certain fees that might have been payable to Citigroup, as described further herein), as approved by the Court pursuant to the Order, shall control. The Debtors reserve the right to amend, restate, supplement, or modify the Engagement Letter, as the case may be, and any such amended, restated, supplemented, or modified Engagement Letter will be filed with the Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

2. In support of this Application, the Debtors attach the *Declaration of Jeffrey Finger in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker for the Debtors and Debtors In Possession Pursuant to 11 U.S.C. §§ 327(A) and 328(A), Effective as of September 22, 2022 and (II) Waiving Certain Time-Keeping Requirements* (the "Finger Declaration") as **Exhibit B**.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2014(a) and 2016, and rules 2014-1, 2016-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

6. On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate

their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committee has been appointed or designated.

7. The Debtors are a leader in data centers, focused on the development and management of sustainable, cost-efficient computer data centers that can be used by customers in the blockchain, cryptocurrency mining, and distributed computing space. With operations across the United States, the Debtors bring a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs. In addition to the Debtors' development and ownership of data centers, the Debtors' operations also include cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales. The Debtors' core business segment is cryptocurrency mining hosting services and the Debtors provide a suite of services to customers that range from offering rack space, energy, and broadband access to a full scale, hands on experience which provides customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

8. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22].

**JEFFERIES' QUALIFICATIONS AND THE NEED FOR JEFFERIES' SERVICES**

9. The Debtors submit this Application because of their need to retain a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through

these Chapter 11 Cases. The Debtors believe that their retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by the Debtors' chapter 11 proceedings, successfully pursue and consummate Transactions in these Chapter 11 Cases, and effectively carry out their duties as debtors in possession.

10. The Debtors selected Jefferies as their investment banker in these Chapter 11 Cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and its excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Jefferies was first engaged by the Debtors in August 2021 in connection with certain special purpose acquisition company and private placement processes, and, as a result, is familiar with the Debtor's corporate and capital structure, management, business operations, and potential investor universe.[3] Thus, the Debtor believes that Jefferies is both well qualified and uniquely able to advise the Debtors in these Chapter 11 Cases.

11. As set forth in the Finger Declaration, Jefferies is a full-service investment banking firm, with approximately 4,000 employees in more than 45 offices around the world. Jefferies and its senior professionals have extensive expertise in providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Jefferies and its professionals are providing or have provided investment banking, financial advisory, and other services in connection with the following recent cases, among others: *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Sept. 19, 2022*); In re Vewd Software USA, LLC*, Case No. 21-12065 (MEW) (Bankr. S.D.N.Y. Dec. 15, 2021); *In re Limetree Bay*

---

[3] No transaction was consummated in connection with the work performed under the Prior Engagement Letter.

*Services, LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex. Sep. 10, 2021); *In re Hospitality Investors Trust*, Case No. 21-10831 (CTG) (Bankr. D. Del. May 20, 2021); *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Gulfport Energy Corporation*, Case No. 20-35562 (DRJ) (Bankr. S.D. Tex. Jan. 21, 2021); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021); *In re Bouchard Transportation Co., Inc.*, Case No. 20-34682 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex. Nov. 04, 2020); *In re Foresight Energy LP*, Case No. 20-41308-659 (Bankr. E.D. Mo. Apr. 7. 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan. 8, 2020); *In re Dura Auto. Sys., LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019); *In re Synergy Pharm. Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Mar. 7, 2019); *In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018); *In re Mission Coal Co., LLC*, Case No. 18-04177-TOM11 (TOM) (Bankr. N.D. Ala. Nov. 30, 2018); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018).

## SCOPE OF SERVICES

12.     Subject to the Bankruptcy Court's approval, the Debtors anticipate that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Debtors, and as appropriate:[4]

  a.   Provide advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as exclusive financial advisor to the Debtors in connection with, the restructuring, reorganization, recapitalization, repayment or modification of the Debtors' outstanding

---

[4] To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

    indebtedness, however achieved, including, without limitation, through a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to the Bankruptcy Code, the execution of any agreement giving effect thereto, or any similar balance sheet restructuring involving the Debtors (any such transaction considered in this paragraph is hereinafter referred to as a "Restructuring");

  b. Perform the following financial advisory services, among others, for the Debtors in connection with a Restructuring: (i) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing, the business, operations, properties, financial condition and prospects of the Debtors; (ii) advising the Debtors on the current state of the "restructuring market"; (iii) assisting and advising the Debtors in developing a general strategy for accomplishing a Restructuring; (iv) assisting and advising the Debtors in implementing a Restructuring; (v) assisting and advising the Debtors in evaluating and analyzing a Restructuring, including the value of the securities or debt instruments, if any, that may be issued in any such Restructuring; and (vi) rendering such other financial advisory services as may from time to time be agreed upon by the Debtors and Jefferies; and

  c. Act as advisor in connection with any of the following (each, a "Financing", and a Financing, a Restructuring and an M&A Transaction, each and together, a "Transaction"): (i) the sale and/or placement, whether in one or more public or private transactions, of (A) common equity, preferred equity, and/or equity-linked securities of the Debtors (regardless of whether sold by the Debtors or their securityholders), including, without limitation, convertible debt securities (individually and collectively, "Equity Securities"), and/or (B) notes, bonds, debentures and/or other debt securities of the Debtors, including, without limitation, mezzanine and asset-backed securities (individually and collectively, "Debt Securities"), and/or (ii) the arrangement and/or placement of any bank debt and/or other credit facility of the Debtors (individually and collectively, "Bank Debt," and any or a combination of Bank Debt, Equity Securities and/or Debt Securities, "Instruments"). For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of the engagement.

13. The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and Jefferies will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.

## PROFESSIONAL COMPENSATION

14. As set forth more fully in the Engagement Letter,[5] Jefferies and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[6]

   a. **Monthly Fee**. A monthly fee (the "Monthly Fee") equal to $150,000 per month until the termination of the engagement. The first Monthly Fee shall accrue as of the date of the Engagement Letter and each subsequent Monthly Fee shall accrue on each monthly anniversary thereafter and shall be payable upon the earlier of (i) the Debtors' consummation of a Transaction, (ii) the commencement of proceedings under the Bankruptcy Code with respect to one or more entities compromising the Debtor(s) and/or (iii) the termination of the engagement. Notwithstanding the foregoing, in the event that any such Transaction is consummated or any such bankruptcy proceedings are commenced, all subsequent Monthly Fees shall become payable in advance of each monthly anniversary of the date of the Engagement Letter. Additionally, after the payment of $600,000 in Monthly Fees to Jefferies, 100% of any Monthly Fees actually paid to Jefferies thereafter shall be credited once, without duplication, against any Restructuring Fee, M&A Transaction Fee, Minority M&A Transaction Fee and/or Financing Fee (each as defined below) subsequently payable to Jefferies.

   b. **Restructuring Fee**. Promptly upon the consummation of a Restructuring, a fee (the "Restructuring Fee") in an amount equal to $5.0 million.

   c. **M&A Transaction Fee**. Promptly upon the consummation of an M&A Transaction involving the assets or equity of Compute North Holdings, Inc. and/or Compute North LLC, a fee (the "M&A Transaction Fee") equal to the greater of (x) $8.0 million and (y) an amount to be determined according to the following schedule:

---

[5] When Jefferies and the Debtors entered into the Engagement Letter in July 2022, it was possible that the Debtors would utilize the services of both Jefferies and Citigroup in connection with certain M&A and Financing transactions. Accordingly, the Debtors and Jefferies agreed that, given the work to be performed by Citigroup, whatever was actually paid to Citigroup in connection with such transactions would be partially credited from the fees payable to Jefferies on account of such transactions. Citigroup, however, is not being engaged by the Debtors during these Chapter 11 Cases and, thus, will not perform any services in connection with such transactions. The Debtors and Jefferies have, therefore, agreed that such crediting provisions with respect to Citigroup shall have no force and effect.

[6] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control (except with respect to the crediting of any fees on account of certain fees that might have been payable to Citigroup, as described above).

8

    i. 1.2% of the Transaction Value of such M&A Transaction equal to or less than $1.0 billion; plus

    ii. An additional 1.0% of the Transaction Value of such M&A Transaction greater than $1.0 billion and less than or equal to $2.0 billion; plus

    iii. An additional 0.80% of the Transaction Value of such M&A Transaction greater than $2.0 billion.

  d. **Minority M&A Transaction Fee**. Promptly upon the consummation of an M&A Transaction not covered by clause (c) above, a fee (the "Minority M&A Transaction Fee") equal to the greater of (i) $2.5 million and (ii) 4.0% of the Transaction Value of such M&A Transaction. Notwithstanding anything to the contrary in the Engagement Letter (including clause (c) above), to the extent that any M&A Transaction solely involves the sale of equity in or the assets of a direct or indirect subsidiary of Compute North LLC, then Jefferies shall be entitled to a Minority M&A Transaction Fee and not an M&A Transaction Fee on account of the consummation of such M&A Transaction. Additionally, it is expressly understood that a separate Minority M&A Transaction Fee shall be payable in respect of each M&A Transaction not covered by clause (c) above in the event that more than one such M&A Transaction shall occur.

  e. **Financing Fee**. Promptly upon the consummation of a Financing, a fee (the "Financing Fee") equal to 5.0% of the first $300.0 million of gross proceeds raised or committed in connection with such Financing, plus 4.0% of the gross proceeds raised or committed in connection with such Financing in excess of $300.0 million.

  f. **Expenses**. In addition to any fees that may be paid to Jefferies under the Engagement Letter, whether or not any Transaction occurs, the Debtors will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including fees and expenses of its counsel, and the fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated under the Engagement Letter and/or the Prior Engagement Letter (including, without limitation, any unpaid expenses incurred in connection with the Prior Engagement Letter as of the date of the Engagement Letter).

15. During the pendency of these Chapter 11 Cases, Jefferies shall apply to the Bankruptcy Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Bankruptcy Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

16. The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter is reasonable. The Fee and Expense Structure appropriately reflects both the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court. The Fee and Expense structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these Chapter 11 Cases. The Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.

17. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing, and in light of the fact that Jefferies' compensation is based on fixed fees, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, any order of this Bankruptcy Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee Guidelines in connection with the services to be rendered pursuant to the

Engagement Letter. Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

## INDEMNIFICATION OF JEFFERIES

18. As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees, and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs, and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[7] Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases.

## JEFFERIES' DISINTERESTEDNESS

19. Jefferies has informed the Debtors that as of the date hereof, except as set forth in the Finger Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Jefferies professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected

---

[7] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

11

any United States Bankruptcy Judge for the Southern District of Texas, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), or any person employed by the U.S. Trustee.

20. During the 90-day period prior to the commencement of these Chapter 11 Cases, Jefferies was paid the following amounts: (a) on August 26, 2022, (i) $300,000.00 for the prepayment of the September and October 2022 Monthly Fees; (ii) $25,000.00 on account of an expense advance; and (iii) $83,967.81 in expenses incurred by Jefferies in connection with services performed under the Prior Engagement Letter[8] relating to the special purpose acquisition company and private placement processes and (b) on September 16, 2022, $150,000.00 for the prepayment of the November 2022 Monthly Fee.[9]

21. The Debtors have been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

22. Based on the foregoing, the Debtors believe that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

## BASIS FOR RELIEF

23. The Debtors seek entry of an order authorizing them to retain and employ Jefferies pursuant to sections 327 and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Bankruptcy Court's approval, "may employ one or more attorneys, accountants . . . or other professional person." Section 328(a) of

---

[8] Jefferies will apply any expense advance received first to expenses incurred but not reimbursed prepetition, and second to any expenses incurred after the Petition Date.

[9] To the extent any fees or expenses owed to Jefferies under the Engagement Letter and Prior Engagement Letter are unpaid, Jefferies waives any right to collect such amounts.

the Bankruptcy Code provides, in relevant part, that the Debtors, with the Bankruptcy Court's approval, "may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

24. Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code. The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services, (b) Jefferies' substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

25. Finally, the Court also has discretion to issue an order approving the employment of an estate professional *nunc pro tunc*. *See In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1288-89 (5th Cir. 1983); Bankruptcy Local Rule 2014-1(b). The Debtors believe that employment of Jefferies *nunc pro tunc* to July 16, 2021 is warranted under the circumstances of these Chapter 11 Cases. More specifically, Jefferies has provided, and will continue to provide, valuable services to the Debtors. *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power."). While providing these valuable services since July 16, 2021, Jefferies has been working diligently to undertake its connections checking

processes in order to be able to submit the Finger Declaration in support of this Application. To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest, because, among other things, the services provided by Jefferies will assist the Debtors in these Chapter 11 Cases, which is in the best interest of the Debtors' estates and their creditor constituencies.

26. As set forth above, and notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Bankruptcy Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of this Bankruptcy Court, with certain limited modifications as set forth herein. Notwithstanding the foregoing, Jefferies agrees that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

27. In light of the foregoing, the Debtors submit that the retention of Jefferies is in the best interest of the estates, their creditors, and all parties in interest in these Chapter 11 Cases. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for services rendered in Chapter 11 Cases on behalf of debtors and creditor constituencies throughout the United States. The Debtors have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Jefferies in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

29. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc., (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request that the Bankruptcy Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: October 3, 2022
Eden Prairie, Minnesota

/s/ *Harold Coulby*
Harold Coulby
Chief Financial Officer and Treasurer

## Certificate of Service

I certify that on October 3, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                              */s/ James T. Grogan III*
                                              James T. Grogan III