United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 13, 2022

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 91** |

**ORDER (A) APPROVING DE MINIMIS ASSET SALE
PROCEDURES; (B) APPROVING REJECTION PROCEDURES AND
CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND THE FORM
AND MANNER OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS
TO ENTER INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE
BIDDERS; AND (D) SCHEDULING A FURTHER HEARING ON THE APPROVAL
OF THE DEBTORS' PROPOSED BIDDING PROCEDURES AND RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Initial Sale Procedures Order"), among other things: (a) approving the De Minimis Asset Sale Procedures; (b) authorizing and approving the Rejection Procedures and certain Assumption and Assignment Procedures and the form and manner of notice thereof; and (c) authorizing, but not directing, the Debtors to enter into Purchase Agreements with one or more Stalking Horse Purchasers subject to Court approval of any Bid Protections; and the relief requested by the Debtors in the Motion with respect to the Bidding Procedures, the final approval of the Subsequent Assumption and Assignment Procedures (as

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

defined below), and the related notices and deadlines in connection with each of the foregoing being continued to a further hearing to be held on October 21, 2022 at 1:30 p.m. (prevailing Central Time) (the "Final Sale Procedures Hearing) and subject to the entry of a further order of the Court (the "Final Sale Procedures Order"); and this Court having reviewed the Motion; and upon the First Day Declaration and upon the record of the hearing and all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, and Local Rule 9013-1.

D.      The Debtors have demonstrated that good and sufficient notice of the relief granted by this Initial Sale Procedures Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Initial Sale Procedures Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.      The Stalking Horse Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identity of the Stalking Horse Purchaser or Stalking Horse Purchasers, including any affiliations with the Debtors; (ii) the Assets that are the subject of each Stalking Horse Agreement; (iii) a copy of each Stalking Horse Agreement(s); (iv) the purchase price provided in each Stalking Horse Agreement; (v) any proposed Bid Protections; (vi) contact information for the Stalking Horse Purchaser so that Counterparties to the Selected Target Contracts may obtain the applicable Stalking Horse Purchaser's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis; and (vii) the deposit paid by the Stalking Horse Purchaser(s).

F.      The De Minimis Asset Sale Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identity of the applicable De Minimis Asset Purchaser, including any affiliations with the Debtors; (ii) the Assets that are the subject of each De Minimis Asset Sale Notice; (iii) significant terms of the proposed De Minimis Asset sale; and (iv) the purchase price to be provided by each De Minimis Asset Purchaser.  No other or further notice will be required of the foregoing.

G.      The De Minimis Asset Sale Procedures are (i) fair, reasonable, and appropriate and (ii) designed to maximize recovery with respect to the Assets.

H.      The Assumption and Assignment Procedures, the Rejection Procedures, and the De Minimis Asset Sale Procedures provided for herein and the Assumption Notice and the Rejection Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures, the Rejection Procedures, the De Minimis Asset Sale Procedures, the Assumption Notice, and the

Rejection Notice have been tailored to provide an adequate opportunity for all Counterparties to assert any Contract Objections or Rejection Objection.

I.      The Bid Protections, consisting of the Break-Up Fee and the Expense Reimbursement, to the extent afforded by the Debtors to a Stalking Horse Bidder in accordance with the Bidding Procedures and payable under the terms of a Stalking Horse Agreement, shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

J.      Entry of this Initial Sale Procedures Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties, and the legal and factual bases set forth in the Motion, the First Day Declaration, and at the hearing on the Motion establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Omitted.

2.      Any objections to the Motion as it pertains to the Initial Sale Procedures or the relief granted by this Initial Sale Procedures Order that have not been withdrawn, waived, or settled, and

_____

all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.  Any objections to the Final Sale Procedures Order or the relief sought at the Final Sale Procedures Hearing that were timely asserted at or prior to the initial hearing on the Motion may be heard and considered at the Final Sale Procedures Hearing and any other objections to such relief shall be barred as untimely and overruled on the merits with prejudice, *provided* that the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee") may file such an objection so as to be actually received by proposed counsel to the Debtors on or before **4:00 p.m. (prevailing Central Time) on October 20, 2022**.

**I.      De Minimis Asset Sale Procedures**

3.      With regard to sales or transfers of the De Minimis Assets[4] in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "De Minimis Asset Purchaser") with an aggregate selling price equal to or less than $1,000,000, the following De Minimis Asset Sale Procedures are hereby approved:

a.      The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party except as otherwise set forth herein;

b.      Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the proceeds of such sale or transfer, if any, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

c.      At least six (6) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Motion as Exhibit B (the "De Minimis Asset Sale Notice") by email, if available, or overnight delivery to (i) proposed counsel to the Committee, McDermott Will & Emery LLP 2501 North Harwood Street, Suite 1900, Dallas, Texas 75201, Attn: Charles R. Gibbs (crgibbs@mwe.com); One Vanderbilt Avenue, New York, New

---

[4]    For the avoidance of doubt, the Debtors have not sought authorization for, and this Initial Sale Procedures Order does not authorize, the sale of assets that are owned by non-Debtor third parties and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

York 10017, Attn: Kristin K Going, Darren Azman, Stacy A. Lutkus, and Natalie Rowles (kgoing@mwe.com, dazman@mwe.com, salutkus@mwe.com, and nrowles@mwe.com); (ii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); (iii) any party, including counsel to any party, known by the Debtors to have an interest in the applicable De Minimis Assets; (iv) any Counterparty to any applicable Target Contract; (v) counsel to Marathon Digital Holdings, Inc., Lamberth, Cifelli, Ellis & Nason, P.A., 6000 Lake Forrest Drive, N.W., Suite 435, Atlanta, Georgia 30328 Attn: Gregory D. Ellis, (gellis@lcenlaw.com); and (vi) counsel to Generate Lending, LLC to the extent any of the De Minimis Assets subject to such De Minimis Asset Sale Notice are subject to a lien by Generate Lending, LLC and its affiliates and/or owned by a Debtor entity but used by non-Debtors CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC (collectively, the "De Minimis Notice Parties");

d.      The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) a copy of the sale agreement evidencing the terms of the sale (if any) or, alternatively, a summary of the material economic terms and conditions of the sale, (v) the proposed closing date of such sale, (vi) to the extent any Target Contract is to be assumed and assigned in connection with such De Minimis Asset Sale, a statement of the adequate assurance of future performance and the cure amount, if any, to be provided, and (vii) any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators;

e.      If no written objections from the De Minimis Notice Parties are filed with the Court within five (5) days after service of such De Minimis Asset Sale Notice, then the Debtors are authorized to immediately consummate such De Minimis Asset Sale; *provided* that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel;

f.      If any De Minimis Notice Party files a written objection to any such De Minimis Asset Sale with the Court within five (5) days after service of such De Minimis Asset Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing. Any such objections shall be served on the Objection Notice Parties;

g.     In the event a hearing is required to resolve an objection to a De Minimis Asset Sale, the Debtors may notice the hearing on such objection for the next scheduled omnibus hearing date that is at least three (3) calendar days from the date of the filing of such notice or such other date set by the Court based upon the exigencies of the circumstances surrounding De Minimis Asset Sale.

4.     The Debtors shall provide a written report or reports, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning any De Minimis Asset Sales (including the names of the purchasing parties and the types of amounts of the sales) to (a) the De Minimis Notice Parties, (b) counsel to the Texas Taxing Authorities (as defined below), Perdue Brandon Fielder Collins & Mott LLP, 1204 Avenue R, Suite 200, Lubbock, Texas 79408, Attn: R. Douglas Jordan (djordan@pbfcm.com), and (c) those parties requesting notice under Bankruptcy Rule 2002.

5.     The Debtors may withdraw from any De Minimis Sale prior to the consummation thereof, in their sole discretion.

6.     Notwithstanding anything to the contrary set forth in a sale or transfer agreement, all De Minimis Asset Purchasers are deemed to understand and agree that the Debtors are conveying their rights to the applicable De Minimis Assets and any Target Contracts as is, without warranties or representations of any kind, whether express or implied.

7.     Purchasers and transferees of De Minimis Assets are entitled to the protections afforded to good-faith purchasers under section 363(m) of the Bankruptcy Code.

8.     Sales of De Minimis Assets shall be deemed arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

9.     With respect to all sale transactions consummated pursuant to this Initial Sale Procedures Order, provided the procedures in this Initial Sale Procedures Order are followed, this Initial Sale Procedures Order shall be sole and sufficient evidence of the transfer of title to any

particular buyer, and the sale transactions consummated pursuant to this Initial Sale Procedures Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Initial Sale Procedures Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Initial Sale Procedures Order as sole and sufficient evidence of such transfer of title and shall rely upon this Initial Sale Procedures Order in consummating the transactions contemplated hereby.

10.     Notwithstanding any other provision included in this Initial Sale Procedures Order, any valid, perfected, and enforceable statutory liens (the "Tax Liens") of Howard County, Texas and the taxing entities for which it collects (the "Texas Taxing Authorities") against any of the De Minimis Assets that secure any of the Debtors' obligations to the Texas Taxing Authorities on account of ad valorem taxes (such assets, the "Subject Property"), whether for prepetition or postpetition taxes, shall attach to the proceeds of the sale of such Subject Property to the same extent and with the same priority as such Tax Liens attached to the Subject Property immediately prior to the closing of such sale.  As adequate protection for the claims of the Texas Taxing Authorities against the Debtors on account of such taxes (the "Tax Claims"), the Debtors will either pay such claims directly, or establish an ad valorem tax reserve, from the proceeds of the sale of the Subject Property (the "Tax Reserve") equal to the estimated amount of ad valorem taxes owing by the Debtors to the Texas Taxing Authorities for Tax Claims based on the 2022 tax year.

The Tax Reserve shall be maintained solely for the purpose of providing adequate protection for the Tax Liens prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the Tax Claims, nor a floor or cap on the amounts the Texas Taxing Authorities may be entitled to receive on account of the Tax Claims. All parties' rights to object to the priority, validity, amount, and extent of the Tax Claims and the asserted Tax Liens are fully preserved. Funds in the Tax Reserve may be distributed upon agreement between the Texas Taxing Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities. All subsequent years' taxes assessed by the Texas Taxing Authorities against any of the Debtor's assets remaining unsold as of January 1, 2023, if any, shall be paid by the Debtors in the ordinary course of business, subject to the Debtors' rights under applicable law, including the right to dispute any such assessed taxes, and any valid, perfected, and enforceable statutory lien on the Debtors' assets securing such taxes owed to the Texas Taxing Authorities shall be retained in accordance with applicable non-bankruptcy law until paid. Nothing in this paragraph 10 or elsewhere in this Initial Sale Procedures Order shall supersede, override, change, or otherwise alter the allocation of responsibility for any ad valorem or other taxes owed or to be owed on or in respect of any De Minimis Assets or other assets or properties of any of the Debtors between any of the Debtors and any purchaser of such De Minimis Assets or other assets or properties as set forth in the applicable Purchase Agreement (as defined below).

## II.    **Designation of Stalking Horse Purchaser**

11.    In the event that the Debtors enter into one or more Stalking Horse Agreements on or prior to the Stalking Horse Designation Deadline of **October 18, 2022**, the Debtors shall file with the Court and serve on the Motion Notice Parties a Stalking Horse Notice. If the Stalking Horse Agreement(s) satisfy the following conditions—(a) the Break-Up Fee does not exceed three percent (3.0%) of the cash purchase price; (b) the Expense Reimbursement does not exceed the

greater of $50,000 and one percent (1%) of the cash purchase price; and (c) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel and the Court shall schedule an emergency hearing on the date that is two business days following such submission to consider the approval of the designation of the Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) as a stalking horse and objections to such approval, if any, shall be filed or raised at or prior to such emergency hearing.  If a Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) are designated that do not satisfy each of the conditions (a) through (c) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Central Time) the day prior to such hearing.

## III.    Assumption and Assignment Procedures

12.    The following portions of the Assumption and Assignment Procedures (the "Preliminary Assumption and Assignment Procedures") are hereby approved on a final basis:

a.    On or before **October 18, 2022**, (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to a Target Contract a notice, substantially in the form attached to the Motion as Exhibit D (the "Assumption Notice").

b.    The Assumption Notice shall include, without limitation:  (i) the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts; (ii) the title of (or other identifying reference to) each Target Contract; (iii) the Debtor or Debtors party to each Target Contract; (iv) the names and addresses of the counterparties to each Target Contract; (v) a description of any material amendments to the Target Contract made outside of the ordinary course of business; and (vi) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).

c.      If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "Additional Contracts"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline.  In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

13.     The following remaining portions of the Assumption and Assignment Procedures (the "Subsequent Assumption and Assignment Procedures") are subject to final approval at the Final Sale Procedures Hearing:

a.      As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "Notice of Successful Bidder"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), (iii) the proposed assignee(s) of such Selected Target Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the Selected Target Contracts may obtain the applicable Successful Bidder's Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis.

b.      No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty and all parties requesting notice under Bankruptcy Rule 2002.

c.      If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "Contract Objection"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 4:00 p.m. (prevailing Central Time) on October 25, 2022** (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline,

upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder other than a De Minimis Asset Purchaser shall be filed not later than **November 7, 2022**, **at 4:00 p.m. (prevailing Central Time)**. Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth above.

d. The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) proposed counsel to the Committee, McDermott Will & Emery LLP 2501 North Harwood Street, Suite 1900, Dallas, Texas 75201, Attn: Charles R. Gibbs (crgibbs@mwe.com); One Vanderbilt Avenue, New York, New York 10017, Attn: Kristin K Going, Darren Azman, Stacy A. Lutkus, and Natalie Rowles (kgoing@mwe.com, dazman@mwe.com, salutkus@mwe.com, and nrowles@mwe.com); (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

e. At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "Selected Target Contract," and collectively, the "Selected Target Contracts"). The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately designated as Selected Target Contracts.

f. If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the

Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

g.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

h.     Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order and paragraph 13(f) above.

14.     Other than as provided by the De Minimis Asset Sale Procedures, the Debtors' decision to assume and assign any Target Contract is subject to this Court's further approval and the closing of the Sale.  Accordingly, other than as provided by the De Minimis Asset Sale Procedures, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

15.     Subject to entry of the Final Sale Procedures Order, any party failing to timely file an objection to the proposed Cure Amount, the proposed assumption and assignment of a Target Contract or Additional Contract listed on an Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Target Contract or Additional Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale.  Subject to entry of the Final Sale Procedures Order, such party shall be forever barred and estopped from objecting to the Cure Amounts, the assumption and assignment of the Target Contract, or Additional Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or the Back-Up Bidder for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Back-Up Bidder, as applicable, with respect to such party's Target Contract or Additional Contract.

16.     The Preliminary Assumption and Assignment Procedures are appropriate and fair to all Counterparties.  The Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume

14

and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights impacted by the Motion and the relief granted by this Initial Sale Procedures Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

17.     The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of all parties with respect thereto shall be reserved.

**IV.     <u>Rejection Procedures</u>**

18.     The Debtors are authorized, but not required, to reject executory contracts or unexpired leases in accordance with the following Rejection Procedures:

a.     The Debtors, after consultation with counsel to the Committee, will file with the Court and serve on the Rejection Notice Parties (as defined below) a notice (the "<u>Rejection Notice</u>"), substantially in the form attached to the Motion as <u>Exhibit E</u>, to reject the identified Unassumed Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Unassumed Contracts to be rejected; (ii) the names and addresses of the counterparties to such Unassumed Contracts; (iii) the proposed effective date of the rejection for each such Unassumed Contracts (the "<u>Rejection Date</u>"); (iv) whether or not the Debtors intend to abandon any property at the leased premises (as described further in subparagraph b below) and a description of the same; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Rejection Notice shall include the proposed order approving rejection of the Unassumed Contracts (the "<u>Rejection Order</u>"). For the avoidance of doubt, the Committee's rights to file a Rejection Objection (as defined below), in accordance with these Rejection Procedures, to object to the rejection of any executory contracts or unexpired leases pursuant to a Rejection Notice are reserved.

b.     When rejecting a lease of real property ("<u>Real Property Leases</u>"), the Debtors will specify in the Rejection Notice whether they intend to abandon any personal property, including, without limitation, inventory, furniture, fixtures, equipment, or other material at the leased premises as of the

Rejection Date.  Absent a timely objection in accordance with these Rejection Procedures, any such property of the Debtors remaining after the Rejection Date shall be deemed abandoned to the landlord, other applicable lease counterparty, or designee (the "Landlord") without further notice or order by the Court, free and clear of all liens, claims, interests, or other encumbrances; *provided* that the Debtors shall remove any hazardous or toxic materials (as such terms are defined in any applicable federal, state, or local law, rule, regulation, or ordinance) from the leased premises prior to the Rejection Date.  Any Landlord shall be free to dispose of any such items without notice or liability to any party, and the Landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest, including the Debtors, to object to such claims.

c.      With respect to any personal property that is leased to the Debtors by a third party or owned by a third party, such third party shall contact the Debtors to remove or cause to be removed such personal property from the leased premises prior to the Rejection Date.  For the avoidance of doubt, if any such personal property remains on the leased premises after the Rejection Date, the Landlord may dispose of any and all such property as set forth above.

d.      The Debtors will cause the Rejection Notice to be served by overnight mail or email upon (i) the Unassumed Contract counterparties affected by the Rejection Notice, and their counsel, if known; (ii) with respect to Real Property Leases, any party known to have an interest in, or that has filed a UCC-1 statement against, personal property located at the applicable leased premises including any personal property proposed to be abandoned; (iii) any party known to assert a lien on any real property subject to the Leases; (iv) the Office of the United States Trustee for the Southern District of Texas; (v) counsel for the Committee; and (vi) Generate Lending, LLC and its counsel for the reasons set forth in this paragraph 18(d)(i) and with respect to any Unassumed Contracts by and among the Debtors and CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC, or any Unassumed Contracts assigned by the Debtors to CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC, or any other Unassumed Contracts related to CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC (collectively, the "Rejection Notice Parties").

e.      Parties objecting to a proposed rejection or abandonment must file and serve a written objection (a "Rejection Objection") so that the Rejection Objection is filed with the Court and is actually received by (i) proposed counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn:  Luc Despins, Sayan Bhattacharyya, and Daniel

16

Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (ii) the Rejection Notice Parties, no later than ten (10) calendar days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline"). Each Rejection Objection must state with specificity the legal and factual grounds for objection to the proposed rejection or abandonment.

f.    If no Rejection Objection is timely filed and served in accordance with these Rejection Procedures by the Rejection Objection Deadline, the Debtors may submit the proposed Rejection Order to the Court after the Rejection Objection Deadline and the Court may enter such order without a hearing. The Rejection Order shall set forth the applicable Rejection Date, which shall be (unless otherwise ordered by the Court), with respect to Unassumed Contracts other than Real Property Leases, the date the Debtors filed and served the Rejection Notice, and with respect to the Real Property Leases, the date the Debtors surrendered the leased premises to the landlord via the delivery of keys, key codes, or alarm codes to the premises, as applicable, to the applicable Real Property Lease counterparty, or if not delivering such keys or codes, provided notice that the landlord may re-let the premises. If a Rejection Objection is filed for fewer than all of the Unassumed Contracts included on the Rejection Notice, the Debtors may proceed to submit a proposed Rejection Order in accordance with the above procedures for the Unassumed Contracts on the Rejection Notice for which no Rejection Objection was filed.

g.    If a Rejection Objection is timely filed and not withdrawn or resolved (an "Unresolved Rejection Objection"), the Debtors shall file a notice for a hearing for the Court to consider the Unresolved Rejection Objection after the Rejection Objection Deadline, subject to the Court's schedule. The Debtors may resolve the Unresolved Rejection Objection without further notice or Court approval in advance of the hearing. If the Unresolved Rejection Objection is overruled or withdrawn, the effective date of rejection shall be (i) the date to which the Debtors, the counterparty that is the subject of the Unresolved Rejection Objection, and the party that has filed the Unresolved Rejection Objection, if applicable, have agreed, or (ii) such other date as determined by the Court.

h.    The deadline to file a proof of claim to assert any damage claim arising from the rejection of an Unassumed Contract shall be the later of (i) the deadline fixed by the Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order. If a proof of claim is not timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11

Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

i.   If the Debtors have deposited funds with a counterparty to an Unassumed Contract as a security deposit or other similar arrangement, such counterparty may not set off or otherwise use such deposit without the prior authorization of this Court or consent of the Debtors.  For the avoidance of doubt, the preceding sentence is not intended to modify, waive, or release any party's existing set off rights.

19.   The form of Rejection Notice attached to the Motion as <u>Exhibit E</u> is approved.

20.   Pursuant to section 554(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in their sole discretion, to abandon the Abandoned Assets, if any, located at the applicable leased premises, subject to notice of such abandonment being given in accordance with the Rejection Procedures; *provided* that if the Debtors are abandoning assets which may contain personal or confidential information about the Debtors' employees or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such assets before such abandonment, and retain such Confidential Information until further order of the Court.   Any personal property of the Debtors remaining at the leased premises after the Rejection Date shall be deemed abandoned as of the Rejection Date.

21.   The Debtors may not abandon any toxic or hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) material, if any, at the leased premises, and must remove all such materials from the leased premises designated for rejection prior to rejection.

22.     Approval of the Rejection Procedures and entry of this Initial Sale Procedures Order will not prevent the Debtors from seeking to reject a lease by separate motion or pursuant to a chapter 11 plan.

**V.      Notice Procedures for the Sale and De Minimis Asset Sales**

23.     The Stalking Horse Notice, the Assumption Notice, the Preliminary Assumption and Assignment Procedures, the De Minimis Asset Sale Notice, the De Minimis Asset Sale Procedures, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to any of the foregoing.

24.     The Debtors shall post any Stalking Horse Notice, any De Minimis Asset Sale Notice, and this Initial Sale Procedures Order on the website of the Debtors' claims and noticing agent, at https://dm.epiq11.com/case/ComputeNorthHoldings/info.

**VI.     Final Sale Procedures Hearing**

25.     The Final Sale Procedures Hearing shall be held on October 21, 2022 at 1:30 p.m. (prevailing Central Time) before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of Texas, Courtroom 404, 4th Floor, 515 Rusk Street, Houston, Texas 77002, both in person and via the Court's remote video and audio conferencing system.

**VII.    Miscellaneous**

26.     The Debtors are authorized to conduct the De Minimis Asset Sales without the necessity of complying with any state or local bulk transfer laws or requirements.

27.     Nothing in this Initial Sale Procedures Order shall be deemed to limit the Debtors' rights to consummate a sale of assets through a chapter 11 plan, and all such rights are hereby preserved.

28.     Prior to mailing the Assumption Notice, and any De Minimis Asset Sale Notice or Rejection Notice, as applicable, the Debtors may fill-in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Initial Sale Procedures Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

29.     All persons or entities that participate in a De Minimis Asset Sale shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Initial Sale Procedures Order to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

30.     TZ Holding Company LLC and its affiliates reserve all of their rights with respect to the Debtors' conduct of the sale process.

31.     This Initial Sale Procedures Order shall be effective immediately upon entry and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Initial Sale Procedures Order and may, in their reasonable discretion and without further delay, take any action and perform any act authorized or approved under this Initial Sale Procedures Order.  Further, to the extent applicable, the requirements of Bankruptcy Rule 6006(e) are hereby waived.

32.     Notwithstanding the relief granted in this Initial Sale Procedures Order and any actions taken pursuant to such relief, nothing in this Initial Sale Procedures Order shall be deemed

(a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

33.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

34.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

35.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Initial Sale Procedures Order in accordance with the Motion.

Signed:  October 13, 2022

_____
Marvin Isgur
United States Bankruptcy Judge

36.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Initial Sale Procedures Order.

Dated: _____, 2022
           Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE