**Exhibit A**

**Revised Proposed Final Sale Procedures Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 91 & 191** |

**ORDER (A) APPROVING DE MINIMIS ASSET SALE PROCEDURES;
(B) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION, ASSIGNMENT,
AND REJECTION PROCEDURES, AND THE FORM AND MANNER OF NOTICE
THEREOF; (C) AUTHORIZING THE DEBTORS TO ENTER INTO ASSET
PURCHASE AGREEMENTS WITH STALKING HORSE BIDDERS; AND
(D) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE
OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL
ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Final Sale Procedures Order</u>"), among other things: (a) approving the De Minimis Asset Sale Procedures; (b) authorizing and approving the Bidding Procedures, attached hereto as **Exhibit 1**, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof; (c) authorizing, but not directing, the Debtors to enter into Purchase Agreements with one or more Stalking Horse Purchasers subject to Court approval of any Bid Protections; and (d) scheduling the Sale Hearing

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for the Court's consideration of the sale of the applicable Assets free and clear of Encumbrances, and authorizing the assumption and assignment of the Selected Target Contracts in connection therewith; and upon the *Declaration of Ryan Hamilton in Support of Debtors' Bidding Procedures Motion* [Docket No. 145]; and the Court having held a hearing on October 11, 2022 to consider approval of certain of the relief requested in the Motion; and, on October 13, 2022, the Court having entered the *Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Rejection Procedures and Certain Assumption and Assignment Procedures and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Further Hearing on the Approval of the Debtors' Proposed Bidding Procedures and Related Relief* [Docket No. 191] (the "Initial Sale Procedures Order"); and this Court having reviewed the Motion; and upon the First Day Declaration and upon the record of the hearing and all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, and Local Rule 9013-1.

D.      The Debtors have demonstrated that good and sufficient notice of the relief granted by this Final Sale Procedures Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Final Sale Procedures Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Stalking Horse Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identity of the Stalking Horse Purchaser or Stalking Horse Purchasers, including any affiliations with the Debtors; (ii) the Assets that are the subject of each Stalking Horse Agreement; (iii) a copy of each Stalking Horse Agreement(s); (iv) the purchase price provided in each Stalking Horse Agreement; (v) any proposed Bid Protections; (vi) contact information for the Stalking Horse Purchaser so that Counterparties to the Selected Target Contracts may obtain the applicable Stalking Horse Purchaser's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis; and (vii) the deposit paid by the Stalking Horse Purchaser(s).

F.      The De Minimis Asset Sale Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identity of the applicable De Minimis Asset Purchaser, including any affiliations with the Debtors; (ii) the Assets that are the subject of each De Minimis Asset Sale Notice; (iii) significant terms of

the proposed De Minimis Asset sale; and (iv) the purchase price to be provided by each De Minimis Asset Purchaser.  No other or further notice will be required of the foregoing.

G.      The Bidding Procedures and the De Minimis Asset Sale Procedures are (i) fair, reasonable, and appropriate and (ii) designed to maximize recovery with respect to the Assets.

H.      The Assumption and Assignment Procedures, the Rejection Procedures, and the De Minimis Asset Sale Procedures provided for herein and the Assumption Notice and the Rejection Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures, the Rejection Procedures, the De Minimis Asset Sale Procedures, the Assumption Notice, and the Rejection Notice have been tailored to provide an adequate opportunity for all Counterparties to assert any Contract Objections or Rejection Objection.

I.      The Bid Protections, consisting of the Break-Up Fee and the Expense Reimbursement, to the extent afforded by the Debtors to a Stalking Horse Bidder in accordance with the Bidding Procedures and payable under the terms of a Stalking Horse Agreement, shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

J.      Entry of this Final Sale Procedures Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties, and the legal and factual bases set forth in the Motion, the First Day Declaration, and at the hearing on the Motion establish just cause for the relief granted herein.

**<u>NOW, THEREFORE, IT IS HEREBY ORDERED THAT</u>:**

1.      Any objections to the Motion as it pertains to the relief granted by this Final Sale Procedures Order that have not been withdrawn, waived, or settled, and all reservations of rights

included therein, are hereby overruled and denied on the merits with prejudice except as specifically set forth herein.

I.     **De Minimis Asset Sale Procedures**

2.     With regard to sales or transfers of the De Minimis Assets[4] in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "De Minimis Asset Purchaser") with an aggregate selling price equal to or less than $1,000,000, the following De Minimis Asset Sale Procedures are hereby approved:

a.     The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party except as otherwise set forth herein;

b.     Any such transaction(s) shall be free and clear of all liens, with such liens attaching only to the proceeds of such sale or transfer, if any, with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

c.     At least six (6) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Motion as Exhibit B (the "De Minimis Asset Sale Notice") by email, if available, or overnight delivery to (i) proposed counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"), McDermott Will & Emery LLP, 2501 North Harwood Street, Suite 1900, Dallas, Texas 75201, Attn: Charles R. Gibbs (crgibbs@mwe.com); One Vanderbilt Avenue, New York, New York 10017, Attn: Kristin K Going, Darren Azman, Stacy A. Lutkus, and Natalie Rowles (kgoing@mwe.com, dazman@mwe.com, salutkus@mwe.com, and nrowles@mwe.com); (ii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); (iii) any party, including counsel to any party, known by the Debtors to have an interest in the applicable De Minimis Assets; (iv) any Counterparty to any applicable Target Contract; and (v) counsel to Marathon Digital Holdings, Inc., Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jessica Liou

---

4    For the avoidance of doubt, the Debtors have not sought authorization for, and this Final Sale Procedures Order does not authorize, the sale of assets that are owned by non-Debtor third parties and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

(jessica.liou@weil.com) and Alexander P. Cohen (alexander.cohen@weil.com); and (vi) counsel to Generate Lending, LLC, Kirkland & Ellis LLP, 601 Lexington Ave., New York, New York 10022, Attn: Christopher Marcus, P.C. (christopher.marcus@kirkland.com) and Elizabeth Helen Jones (elizabeth.jones@kirkland.com); 609 Main Street, Houston, Texas 77002, Attn: Anna Rotman, P.C. (anna.rotman@kirkland.com), to the extent any of the De Minimis Assets subject to such De Minimis Asset Sale Notice are subject to a lien by Generate Lending, LLC and its affiliates and/or owned by a Debtor entity but used by non-Debtors CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC (collectively, the "De Minimis Notice Parties");

d. The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) a copy of the sale agreement evidencing the terms of the sale (if any) or, alternatively, a summary of the material economic terms and conditions of the sale, (v) the proposed closing date of such sale, (vi) to the extent any Target Contract is to be assumed and assigned in connection with such De Minimis Asset Sale, a statement of the adequate assurance of future performance and the cure amount, if any, to be provided, and (vii) any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators;

e. If no written objections from the De Minimis Notice Parties are filed with the Court within five (5) days after service of such De Minimis Asset Sale Notice, then the Debtors are authorized to immediately consummate such De Minimis Asset Sale; *provided* that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel;

f. If any De Minimis Notice Party files a written objection to any such De Minimis Asset Sale with the Court within five (5) days after service of such De Minimis Asset Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing. Any such objections shall be served on the Objection Notice Parties;

g. In the event a hearing is required to resolve an objection to a De Minimis Asset Sale, the Debtors may notice the hearing on such objection for the next scheduled omnibus hearing date that is at least three (3) calendar days from the date of the filing of such notice or such other date set by the Court

based upon the exigencies of the circumstances surrounding De Minimis Asset Sale.

3.     The De Minimis Asset Sale Notice, substantially in the form attached to the Motion as <u>Exhibit B</u>, is hereby approved.

4.     The Debtors shall provide a written report or reports, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning any De Minimis Asset Sales (including the names of the purchasing parties and the types of amounts of the sales) to (a) the De Minimis Notice Parties, (b) counsel to the Texas Taxing Authorities (as defined below), Perdue Brandon Fielder Collins & Mott LLP, 1204 Avenue R, Suite 200, Lubbock, Texas 79408, Attn:    R. Douglas Jordan (djordan@pbfcm.com), and (c) those parties requesting notice under Bankruptcy Rule 2002.

5.     The Debtors may withdraw from any De Minimis Sale prior to the consummation thereof, in their sole discretion.

6.     Notwithstanding anything to the contrary set forth in a sale or transfer agreement, all De Minimis Asset Purchasers are deemed to understand and agree that the Debtors are conveying their rights to the applicable De Minimis Assets and any Target Contracts as is, without warranties or representations of any kind, whether express or implied.

7.     Purchasers and transferees of De Minimis Assets are entitled to the protections afforded to good-faith purchasers under section 363(m) of the Bankruptcy Code.

8.     Sales of De Minimis Assets shall be deemed arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

9.     With respect to all sale transactions consummated pursuant to this Final Sale Procedures Order, provided the procedures in this Final Sale Procedures Order are followed, this Final Sale Procedures Order shall be sole and sufficient evidence of the transfer of title to any

particular buyer, and the sale transactions consummated pursuant to this Final Sale Procedures Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Final Sale Procedures Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Final Sale Procedures Order as sole and sufficient evidence of such transfer of title and shall rely upon this Final Sale Procedures Order in consummating the transactions contemplated hereby.

10.     Notwithstanding any other provision included in this Final Sale Procedures Order, any valid, perfected, and enforceable statutory liens (the "Tax Liens") of Howard County, Texas and the taxing entities for which it collects (the "Texas Taxing Authorities") against any of the De Minimis Assets that secure any of the Debtors' obligations to the Texas Taxing Authorities on account of ad valorem taxes (such assets, the "Subject Property"), whether for prepetition or postpetition taxes, shall attach to the proceeds of the sale of such Subject Property to the same extent and with the same priority as such Tax Liens attached to the Subject Property immediately prior to the closing of such sale.  As adequate protection for the claims of the Texas Taxing Authorities against the Debtors on account of such taxes (the "Tax Claims"), the Debtors will either pay such claims directly, or establish an ad valorem tax reserve, from the proceeds of the sale of the Subject Property (the "Tax Reserve") equal to the estimated amount of ad valorem taxes owing by the Debtors to the Texas Taxing Authorities for Tax Claims based on the 2022 tax year.

The Tax Reserve shall be maintained solely for the purpose of providing adequate protection for the Tax Liens prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the Tax Claims, nor a floor or cap on the amounts the Texas Taxing Authorities may be entitled to receive on account of the Tax Claims.  All parties' rights to object to the priority, validity, amount, and extent of the Tax Claims and the asserted Tax Liens are fully preserved.  Funds in the Tax Reserve may be distributed upon agreement between the Texas Taxing Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities.  All subsequent years' taxes assessed by the Texas Taxing Authorities against any of the Debtor's assets remaining unsold as of January 1, 2023, if any, shall be paid by the Debtors in the ordinary course of business, subject to the Debtors' rights under applicable law, including the right to dispute any such assessed taxes, and any valid, perfected, and enforceable statutory lien on the Debtors' assets securing such taxes owed to the Texas Taxing Authorities shall be retained in accordance with applicable non-bankruptcy law until paid.  Nothing in this paragraph 10 or elsewhere in this Final Sale Procedures Order shall supersede, override, change, or otherwise alter the allocation of responsibility for any ad valorem or other taxes owed or to be owed on or in respect of any De Minimis Assets or other assets or properties of any of the Debtors between any of the Debtors and any purchaser of such De Minimis Assets or other assets or properties as set forth in the applicable Purchase Agreement (as defined below).

## II.      **Bidding Procedures and Auction**

11.      The Bidding Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Final Sale Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety as if fully set forth in this Final Sale Procedures Order.  The Debtors are

hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Final Sale Procedures Order.

12.     Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale, *provided* that the information was provided in accordance with this Final Sale Procedures Order; *provided further* that nothing in this paragraph 12 shall alter or waive any rights that TZ Capital Holdings, LLC ("TZCH") has with respect to the confidentiality provisions of that certain *Limited Liability Company Agreement of TZRC LLC* dated as of November 24, 2021, as amended (the "TZRC LLC Agreement").

13.     For all purposes under the Bidding Procedures: (a) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and any Stalking Horse Agreement shall be considered a Qualifying Bid; (b) should any Secured Creditor desire to credit bid, such Secured Creditors may seek to credit bid some or all of their claims within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by their Secured Claim Documentation; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and may only credit bid claims secured by a first lien unless the bid is accompanied by a cash bid in an amount sufficient to satisfy all senior

liens in such collateral; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets and subsets thereof.

14.     The Bidding Procedures shall apply to the Potential Bidders; the Qualifying Bidders; the submission, receipt, and analysis of all bids relating to the Sale; and the conduct of the Sale and the Auction.

15.     A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Objection Notice Parties so as to be received on or before **October 27, 2022, at 5:00 p.m. (prevailing Central Time) (the "Bid Deadline")**; *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same.  **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction**.

16.     All persons or entities submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Purchase Agreement.

17.     If only one Qualifying Bid is submitted for certain Assets on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing, or such earlier date that may be scheduled by the Court upon request of the Debtors, that this Court approve such Qualifying Bid and the transactions contemplated thereunder for those Assets.  In the event

that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall conduct the Auction for the subject Assets on **November 1, 2022, at 10:00 a.m. (prevailing Central Time)**, at (a) the offices of Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (b) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; *provided* that such other date and time is no earlier than one (1) business day following the delivery of such notice.

18.     Each Auction Bidder shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction; and (b) its Qualifying Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder. All proceedings at the Auction shall be transcribed.

19.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Assets or subsets thereof.

20.     The Debtors, subject to the terms of this Final Sale Procedures Order and the Bidding Procedures, shall have the right as they may reasonably determine, in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine the Baseline Bids; (d) determine which bids are the Successful Bids and Back-Up Bids, each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Auction and the Sale Hearing in open court without further notice (other than the

filing of a notice of such adjournment or cancellation on the docket of these Chapter 11 Cases, which notice may be the hearing agenda in the case of a Sale Hearing) or as provided in this Final Sale Procedures Order and in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion as it relates to a Sale at any time with or without prejudice.

### III.   **Designation of Stalking Horse Purchaser**

21.     In the event that the Debtors enter into one or more Stalking Horse Agreements on or prior to the Stalking Horse Designation Deadline of **October 25, 2022**, the Debtors shall file with the Court and serve on the Motion Notice Parties a Stalking Horse Notice.  If the Stalking Horse Agreement(s) satisfy the following conditions—(a) the Break-Up Fee does not exceed three percent (3.0%) of the cash purchase price; (b) the Expense Reimbursement does not exceed the greater of $50,000 and one percent (1%) of the cash purchase price; and (c) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel and the Court shall schedule an emergency hearing on the date that is two business days following such submission to consider the approval of the designation of the Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) as a stalking horse and objections to such approval, if any, shall be filed or raised at or prior to such emergency hearing.  If a Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) are designated that do not satisfy each of the conditions (a) through (c) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Central Time) the day prior to such hearing.

IV.     **Assumption and Assignment Procedures**

22.     The following Assumption and Assignment Procedures are hereby approved:

a.      On or before **October 18, 2022**, (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to a Target Contract a notice, substantially in the form attached to the Motion as Exhibit D (the "Assumption Notice").

b.      The Assumption Notice shall include, without limitation:  (i) the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts; (ii) the title of (or other identifying reference to) each Target Contract; (iii) the Debtor or Debtors party to each Target Contract; (iv) the names and addresses of the counterparties to each Target Contract; (v) a description of any material amendments to the Target Contract made outside of the ordinary course of business; and (vi) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).

c.      If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "Additional Contracts"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline.  In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

d.      As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "Notice of Successful Bidder"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), (iii) the proposed assignee(s) of such Selected Target Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the Selected Target Contracts may obtain the applicable Successful Bidder's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis.

e.　　No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty and all parties requesting notice under Bankruptcy Rule 2002.

f.　　If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "Contract Objection"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 4:00 p.m. (prevailing Central Time) on November 1, 2022** (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder other than a De Minimis Asset Purchaser shall be filed not later than the later of (i) **November 7, 2022, at 8:00 a.m. (prevailing Central Time)** and (ii) 4:00 p.m. (prevailing Central Time) on the date that is two (2) days after service of the Notice of Successful Bidder. Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth above.

g.　　The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); (ii) proposed counsel to the Committee, McDermott Will & Emery LLP 2501 North Harwood Street, Suite 1900, Dallas, Texas 75201, Attn: Charles R. Gibbs (crgibbs@mwe.com); One Vanderbilt Avenue, New York, New York 10017, Attn: Kristin K Going, Darren Azman, Stacy A. Lutkus, and Natalie Rowles (kgoing@mwe.com, dazman@mwe.com, salutkus@mwe.com, and nrowles@mwe.com); (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street,

Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Jana Whitworth (Jayson.B.Ruff@usdoj.gov and Jana.Whitworth@usdoj.gov); and (iv) counsel to each Stalking Horse Purchaser, if any.

h.   At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "Selected Target Contract," and collectively, the "Selected Target Contracts").  The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately designated as Selected Target Contracts.

i.   If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

j.   To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable

Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

k.    Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order and paragraph 22(i) above.

23.    The Assumption Notice, substantially in the form attached to the Motion as Exhibit D, is hereby approved.

24.    Other than as provided by the De Minimis Asset Sale Procedures, the Debtors' decision to assume and assign any Target Contract is subject to this Court's further approval and the closing of the Sale.  Accordingly, other than as provided by the De Minimis Asset Sale Procedures, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

25.    Any party failing to timely file an objection to the proposed Cure Amount, the proposed assumption and assignment of a Target Contract or Additional Contract listed on an Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Target Contract or Additional Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Amounts, the assumption and assignment of the Target Contract, or Additional Contract, adequate assurance of

future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or the Back-Up Bidder for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Back-Up Bidder, as applicable, with respect to such party's Target Contract or Additional Contract.

26.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties.  The Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights impacted by the Motion and the relief granted by this Final Sale Procedures Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

27.     The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of all parties with respect thereto shall be reserved.

28.     As part of its bid, each Qualifying Bidder must provide the Debtors information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "Adequate Assurance Information"), including (a) the bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of

any Target Contract; and (c) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance. To the extent available, the Adequate Assurance Information may also include (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns, and annual reports. Furthermore, given that the Debtors will submit evidence at the Sale Hearing that all requirements for the assumption and assignment of the Selected Target Contracts have been satisfied, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

29.     The Debtors, the Consultation Parties, and the Counterparties to any Target Contracts included in an applicable bid shall keep confidential all Adequate Assurance Information provided to them and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Final Sale Procedures Order unless the Qualifying Bidder that provided such Adequate Assurance Information otherwise consents in writing. Each Counterparty in receipt of Adequate Assurance Information shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph. Such Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "Representatives"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; (b) in support of any objection (the "Assignment Objection") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance; and (c) if the proposed assignee

is successful and becomes a party to the Target Contract, on a confidential basis, in the ordinary course of the contractual relationship.  Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). This Final Sale Procedures Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further order of this Court; *provided*, that unredacted versions of such Assignment Objections shall be served upon the Debtors, the Consultation Parties, and the U.S. Trustee, with a copy to the Court's chambers; *provided*, *further*, that parties shall have a period of ten (10) business days after the filing of any redacted Assignment Objection to object to the sealing of any information.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Final Sale Procedures Order.

## V.    **Rejection Procedures**

30.    The Debtors are authorized, but not required, to reject executory contracts or unexpired leases in accordance with the following Rejection Procedures:

a.    The Debtors, after consultation with counsel to the Committee, will file with the Court and serve on the Rejection Notice Parties (as defined below) a notice (the "Rejection Notice"), substantially in the form attached to the Motion as Exhibit E, to reject the identified Unassumed Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Unassumed Contracts to be rejected; (ii) the names and addresses of the counterparties to such Unassumed Contracts; (iii) the proposed effective date of the rejection for each such Unassumed Contracts (the "Rejection Date"); (iv) whether or not the Debtors intend to abandon any property at the leased premises (as described further in subparagraph b below) and a description of the same; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Rejection Notice shall include the proposed order approving rejection of the Unassumed Contracts (the "Rejection Order"). For the avoidance of doubt, the Committee's rights to file a Rejection Objection (as defined below), in accordance with these Rejection

Procedures, to object to the rejection of any executory contracts or unexpired leases pursuant to a Rejection Notice are reserved.

b.  When rejecting a lease of real property ("Real Property Leases"), the Debtors will specify in the Rejection Notice whether they intend to abandon any personal property, including, without limitation, inventory, furniture, fixtures, equipment, or other material at the leased premises as of the Rejection Date. Absent a timely objection in accordance with these Rejection Procedures, any such property of the Debtors remaining after the Rejection Date shall be deemed abandoned to the landlord, other applicable lease counterparty, or designee (the "Landlord") without further notice or order by the Court, free and clear of all liens, claims, interests, or other encumbrances; *provided* that the Debtors shall remove any hazardous or toxic materials (as such terms are defined in any applicable federal, state, or local law, rule, regulation, or ordinance) from the leased premises prior to the Rejection Date. Any Landlord shall be free to dispose of any such items without notice or liability to any party, and the Landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest, including the Debtors, to object to such claims.

c.  With respect to any personal property that is leased to the Debtors by a third party or owned by a third party, such third party shall contact the Debtors to remove or cause to be removed such personal property from the leased premises prior to the Rejection Date. For the avoidance of doubt, if any such personal property remains on the leased premises after the Rejection Date, the Landlord may dispose of any and all such property as set forth above.

d.  The Debtors will cause the Rejection Notice to be served by overnight mail or email upon (i) the Unassumed Contract counterparties affected by the Rejection Notice, and their counsel, if known; (ii) with respect to Real Property Leases, any party known to have an interest in, or that has filed a UCC-1 statement against, personal property located at the applicable leased premises including any personal property proposed to be abandoned; (iii) any party known to assert a lien on any real property subject to the Leases; (iv) the Office of the United States Trustee for the Southern District of Texas; (v) counsel for the Committee; and (vi) Generate Lending, LLC and its counsel for the reasons set forth in this paragraph 18(d)(i) and with respect to any Unassumed Contracts by and among the Debtors and CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC, or any Unassumed Contracts assigned by the Debtors to CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC, or any other Unassumed Contracts related to CN Borrower LLC, Compute North NE05, LLC, and/or CN Wolf Hollow LLC (collectively, the "Rejection Notice Parties").

e.　　Parties objecting to a proposed rejection or abandonment must file and serve a written objection (a "<u>Rejection Objection</u>") so that the Rejection Objection is filed with the Court and is actually received by (i) proposed counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (ii) the Rejection Notice Parties, no later than ten (10) calendar days after the date the Debtors file and serve the relevant Rejection Notice (the "<u>Rejection Objection Deadline</u>"). Each Rejection Objection must state with specificity the legal and factual grounds for objection to the proposed rejection or abandonment.

f.　　If no Rejection Objection is timely filed and served in accordance with these Rejection Procedures by the Rejection Objection Deadline, the Debtors may submit the proposed Rejection Order to the Court after the Rejection Objection Deadline and the Court may enter such order without a hearing. The Rejection Order shall set forth the applicable Rejection Date, which shall be (unless otherwise ordered by the Court), with respect to Unassumed Contracts other than Real Property Leases, the date the Debtors filed and served the Rejection Notice, and with respect to the Real Property Leases, the date the Debtors surrendered the leased premises to the landlord via the delivery of keys, key codes, or alarm codes to the premises, as applicable, to the applicable Real Property Lease counterparty, or if not delivering such keys or codes, provided notice that the landlord may re-let the premises. If a Rejection Objection is filed for fewer than all of the Unassumed Contracts included on the Rejection Notice, the Debtors may proceed to submit a proposed Rejection Order in accordance with the above procedures for the Unassumed Contracts on the Rejection Notice for which no Rejection Objection was filed.

g.　　If a Rejection Objection is timely filed and not withdrawn or resolved (an "<u>Unresolved Rejection Objection</u>"), the Debtors shall file a notice for a hearing for the Court to consider the Unresolved Rejection Objection after the Rejection Objection Deadline, subject to the Court's schedule. The Debtors may resolve the Unresolved Rejection Objection without further notice or Court approval in advance of the hearing. If the Unresolved Rejection Objection is overruled or withdrawn, the effective date of rejection shall be (i) the date to which the Debtors, the counterparty that is the subject of the Unresolved Rejection Objection, and the party that has filed the Unresolved Rejection Objection, if applicable, have agreed, or (ii) such other date as determined by the Court.

h.  The deadline to file a proof of claim to assert any damage claim arising from the rejection of an Unassumed Contract shall be the later of (i) the deadline fixed by the Court to file general unsecured proofs of claim; or (ii) thirty (30) days after the entry of the Rejection Order.  If a proof of claim is not timely filed, such claimant shall not be treated as a creditor with respect to such claims for voting on any chapter 11 plan in these Chapter 11 Cases and shall be forever barred from asserting claims for rejection damages and from participating in any distributions made in connection with these Chapter 11 Cases on account of such rejection damages.

i.  If the Debtors have deposited funds with a counterparty to an Unassumed Contract as a security deposit or other similar arrangement, such counterparty may not set off or otherwise use such deposit without the prior authorization of this Court or consent of the Debtors.  For the avoidance of doubt, the preceding sentence is not intended to modify, waive, or release any party's existing set off rights.

31.  The form of Rejection Notice, substantially in the form attached to the Motion as Exhibit E, is approved.

32.  Pursuant to section 554(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in their sole discretion, to abandon the Abandoned Assets, if any, located at the applicable leased premises, subject to notice of such abandonment being given in accordance with the Rejection Procedures; *provided* that if the Debtors are abandoning assets which may contain personal or confidential information about the Debtors' employees or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such assets before such abandonment, and retain such Confidential Information until further order of the Court.  Any personal property of the Debtors remaining at the leased premises after the Rejection Date shall be deemed abandoned as of the Rejection Date.

33.  The Debtors may not abandon any toxic or hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) material, if any, at the leased premises, and must remove all such materials from the leased premises designated for rejection prior to rejection.

23

34.     Approval of the Rejection Procedures and entry of this Final Sale Procedures Order will not prevent the Debtors from seeking to reject a lease by separate motion or pursuant to a chapter 11 plan.

**VI.     Notice Procedures for the Sale and De Minimis Asset Sales**

35.     The Stalking Horse Notice, the Assumption Notice, the Sale Notice, the Bidding Procedures, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the De Minimis Asset Sale Notice, the De Minimis Asset Sale Procedures, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the De Minimis Asset Sale Procedures.

36.     The assumption and assignment to the Successful Bidder of the Target Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and such notice and objection periods are hereby approved.

37.     The Sale Notice, substantially in the form attached to the Motion as Exhibit C, is hereby approved.  Within two (2) business days of the entry of this Final Sale Procedures Order, the Debtors shall serve the Sale Notice on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Debtors' secured and unsecured prepetition lenders; (c) all parties known by the Debtors to have asserted a lien on any of the Assets; (d) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (g) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (h) all taxing

authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (i) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (j) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (k) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date; and (l) proposed counsel to the Committee (collectively, the "Sale Notice Parties").

38.     The Debtors shall post any Stalking Horse Notice, the Sale Notice, De Minimis Asset Sale Notice, and this Final Sale Procedures Order on the website of the Debtors' claims and noticing agent, at https://dm.epiq11.com/case/ComputeNorthHoldings/info.

**VII.   Sale Hearing**

39.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before **4:00 p.m. (prevailing Central Time) on November 3, 2022** (the "Sale Objection Deadline"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties.

40.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, including at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by a Purchase Agreement with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

41.     The Debtors shall have until **5:00 p.m. (prevailing Central Time) on the day prior to the Sale Hearing** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

42.     The Sale Hearing shall be held before this Court on November 7, 2022, at 9:00 a.m. (prevailing Central Time) before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of Texas, Courtroom 404, 4th Floor, 515 Rusk Street, Houston, Texas 77002 via the Court's remote video and audio conferencing system.

## VIII.   <u>Miscellaneous</u>

43.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

44.     In the event that there is a conflict between this Final Sale Procedures Order and the Bidding Procedures, this Final Sale Procedures Order shall control and govern.  In the event there is a conflict between this Final Sale Procedures Order and the Initial Sale Procedures Order, this Final Sale Procedures Order shall control and govern.

45.     Nothing in this Final Sale Procedures Order shall be deemed to limit the Debtors' rights to consummate a sale of assets through a chapter 11 plan, and all such rights are hereby preserved.

46.     Prior to mailing the Assumption Notice, the Sale Notice, and any De Minimis Asset Sale Notice, as applicable, the Debtors may fill-in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Final Sale Procedures Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

47.     All persons or entities that participate in the Sale or a De Minimis Asset Sale shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this

Court in connection with the Motion or this Final Sale Procedures Order (including any disputes relating to the bidding process, the Auction, or any Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

48.    TZCH and its affiliates reserve all of their rights (a) as set forth in the TZRC LLC Agreement with respect to any consent required in connection with a sale of the Debtors' equity interests in TZRC LLC and (b) with respect to the confidentiality provisions of the TZRC LLC Agreement.

49.    For the avoidance of doubt, the Debtors have not sought authorization for, and this Final Sale Procedures Order does not authorize, the sale of assets that are owned by non-Debtor third parties and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

50.    On October 12, 2022, Sunbelt Solomon Services, LLC ("Sunbelt") filed a Notice of Reclamation Claim applicable to certain equipment delivered by Sunbelt to CN Corpus Christi LLC (the "Sunbelt Equipment").  The Sunbelt Equipment is not subject to any lien or other encumbrance on Debtor's Assets and Sunbelt reserves all rights with respect to its reclamation demand for the Sunbelt Equipment.  Consequently, nothing in this Final Sale Procedures Order impacts or otherwise reduces any rights or property interests that Sunbelt has in the Sunbelt Equipment.  In association with Debtors' marketing efforts, Sunbelt will be receptive to any prospective purchaser's desire to purchase the Sunbelt Equipment, to the extent the inclusion of sale by Sunbelt of the Sunbelt Equipment to such purchasers is supportive of Debtors' efforts to maximize value for the estate in sale of estate property.

51.     This Final Sale Procedures Order shall be effective immediately upon entry and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Final Sale Procedures Order and may, in their reasonable discretion and without further delay, take any action and perform any act authorized or approved under this Final Sale Procedures Order.  Further, to the extent applicable, the requirements of Bankruptcy Rule 6006(e) are hereby waived.

52.     Notwithstanding the relief granted in this Final Sale Procedures Order and any actions taken pursuant to such relief, nothing in this Final Sale Procedures Order shall be deemed (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the

Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

53.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

54.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

55.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Sale Procedures Order in accordance with the Motion.

56.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Final Sale Procedures Order.

Dated: _____, 2022
         Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

<u>**Exhibit 1 to Final Sale Procedures Order**</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re:  Docket No. 91 & [ ● ]** |

**BIDDING PROCEDURES**

On September 22, 2022 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved the procedures set forth herein (collectively, the "Bidding Procedures") to be employed by the Debtors in connection with a sale of substantially all of their assets (collectively, the "Assets"),[2] or components thereof.

**Any party interested in bidding on the Assets should contact the Debtors' investment banker, Jefferies LLC, at the following email addresses:  Jeffrey Finger (jfinger@jefferies.com),  Ryan  Hamilton  (rhamilton@jefferies.com),  and Project.Centauri.20222@jefferies.com**.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   For the avoidance of doubt, the Debtors have not sought authorization pursuant to the Bidding Procedures for, and the Final Sale Procedures Order does not authorize, the sale of assets that are owned by non-Debtor third parties and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

1.      **Summary of Important Dates**

| | |
|---|---|
| Initial Bidding Procedures Hearing | October 11, 2022 at 9:00 a.m. (prevailing Central Time) |
| Deadline to Serve Assumption Notice | October 18, 2022 |
| Final Bidding Procedures Hearing | October 21, 2022 at 1:30 p.m. (prevailing Central Time) |
| Stalking Horse Designation Deadline | October 25, 2022 |
| Bid Deadline | October 27, 2022 at 5:00 p.m. (prevailing Central Time) |
| Auction Commencement | November 1, 2022 at 10:00 a.m. (prevailing Central Time) |
| Deadline to Object to Assumption Notice | November 1, 2022 at 4:00 p.m. (prevailing Central Time) |
| Deadline to Object to Sale | November 3, 2022 at 4:00 p.m. (prevailing Central Time) |
| Deadline to Object to Adequate Assurance | November 7, 2022 at 8:00 a.m. (prevailing Central Time) |
| Sale Hearing | November 7, 2022 at 9:00 a.m. (prevailing Central Time) |

2.      **Assets to Be Sold**

The Debtors are offering for sale all of the Assets.  Potential Bidders (as defined below) may bid on all or any number or combination of the Assets.  Potential Bidders may bid to acquire Assets pursuant to an order entered under section 363 of the Bankruptcy Code or through a chapter 11 plan to be confirmed by the Bankruptcy Court.

For the avoidance of doubt, the Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, may elect to exclude any Assets from the Bidding Procedures and sell such Assets at either a private or public sale, subject to Court approval of any alternative sale method.

### 3.     <u>Participation Requirements</u>

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "<u>Potential Bidder</u>") must first become a "<u>Qualifying Bidder</u>."  To become a Qualifying Bidder, a Potential Bidder must submit to the Debtors and their advisors:

> a.     documentation identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Sale;

> b.     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

> c.     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a Sale; and.

> d.     sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with a Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties (as defined below), or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Sale.  Failure of a Potential Bidder or Qualifying Bidder to comply with any such information or diligence requests can, at the Debtors' discretion (upon consultation with the Consultation Parties), constitute cause to eliminate such bidder from the Sale process.

The Debtors and their advisors may (a) engage with one or more Potential Bidders for the purpose of soliciting a joint bid or combining separate bids into a joint bid that meets the criteria set forth herein and qualifies as a Qualifying Bid (defined below) and (b) engage with one or more Qualifying Bidders at any point prior to the conclusion of the Auction (defined below) for the purpose of combining separate Qualifying Bids into a joint bid that continues to meet the criteria set forth herein and qualifies as a Qualifying Bid.  The Debtors, in consultation with the Consultation Parties, are authorized to approve such joint bids in their reasonable discretion on a case-by-case basis, *provided* that such joint bidders provide a written statement certifying that they have not engaged in collusion with respect to the submission of any bid, *provided further* that coordination of Potential Bidders or Qualified Bidders facilitated by the Debtors shall not constitute collusion.

As promptly as practicable after a Potential Bidder satisfies the Participation Requirements in this Section 3, the Debtors will determine in their reasonable business judgment whether such

Potential Bidder is a Qualifying Bidder, and the Debtors will inform such Potential Bidder regarding whether such Potential Bidder is a Qualifying Bidder.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (x) each of Generate Lending, LLC and Marathon Digital Holdings, Inc. shall be considered a Qualifying Bidder; (y) any designated Stalking Horse Purchaser (as defined below) shall be considered a Qualifying Bidder and a Stalking Horse Agreement (as defined below) shall be considered a Qualifying Bid (as defined below); and (z) the Debtors may consider a combination of bids for the Assets in determining whether the Potential Bidders constitute Qualifying Bidders.

4.    **Stalking Horse Designation**

On or prior to **October 25, 2022**, (the "Stalking Horse Designation Deadline"), the Debtors may, in consultation with the Consultation Parties, enter into an agreement or agreements (each a "Stalking Horse Agreement") with an interested bidder or interested bidders to serve as stalking horse bidders (each a "Stalking Horse Purchaser") to acquire applicable Assets without the need for a hearing; *provided*, however, that (a) any break-up fee (a "Break-Up Fee") does not exceed three percent (3.0%) of the cash purchase price; (b) any expense reimbursement (an "Expense Reimbursement" and collectively with any associated Break-Up Fee, the "Bid Protections") does not exceed the greater of $50,000 and one percent (1%) of the cash purchase price; and (c) the Stalking Horse Purchaser is not an insider (as defined in Section 101(31) of the Bankruptcy Code). If the Debtors designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, in accordance with the proviso at the end of the prior sentence, they shall file for each Stalking Horse Purchaser a Stalking Horse Notice in accordance with the Bidding Procedures Order and submit an order for approval of the same under certification of counsel.  The Court shall schedule an emergency hearing on the date that is two business days following such submission to consider the approval of the designation of the Stalking Horse Purchaser(s) and Stalking Horse Agreement(s) as a stalking horse and objections to such approval, if any, shall be filed or raised at or prior to such emergency hearing.

The Debtors, however, reserve the right to file a Stalking Horse Notice, on or before the Stalking Horse Designation Deadline, to designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, that do not meet the qualifications in the immediately preceding paragraph and to seek a hearing on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Central Time) the day prior to such hearing.  Notwithstanding anything herein to the contrary and for the avoidance of doubt, the designation of any Stalking Horse Purchaser that is an insider shall only be authorized and approved after the notice and a hearing provided for in the prior sentence.

5.    **Bankruptcy Court Jurisdiction**

Any Potential Bidder shall (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders (as

defined below), (b) solely bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

6.      **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment banker, Jefferies LLC, at the following email addresses: Jeffrey Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), and Project.Centauri.20222@jefferies.com.

The Debtors reserve the right in their reasonable business judgment, after consultation with the Consultation Parties, to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to a Qualifying Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualifying Bidder.

The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline. The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Sale.

7.      **Bid Requirements**

Qualifying Bidders intending to submit bids must include with their bids an asset purchase agreement (a "Purchase Agreement"). The Purchase Agreement shall be: (a) if a Stalking Horse Purchaser has been designated for the applicable Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable, and include a redline marked against the Stalking Horse Agreement, and (b) otherwise, in the form of the Purchase Agreement to be provided by the Debtors and include a redline marked against the form Purchase Agreement.

In addition, other than in the case of a bid submitted by a Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid

Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "Bid Requirement"):

a. be in writing;

b. fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder; *provided* that if there are multiple parties participating in the bid, then the Qualifying Bidder shall fully disclose the complete terms of any such joint participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the bid;

c. set forth the purchase price to be paid by such Qualifying Bidder for the Assets in question;

d. if a bid includes a credit bid under section 363(k), evidence of the amount of the claim, the Assets constituting the collateral securing the claim, and evidence of the grant, perfection, priority, and validity of the lien (the "Secured Claim Documentation");

e. not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures and the Bidding Procedures Order, which, for the avoidance of doubt, shall include a credit bid);

f. state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

g. specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the applicable Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

h. state that such Qualifying Bidder's offer is formal, binding, and unconditional and is irrevocable unless and until the Debtors select a Successful Bid (as defined herein) and such Successful Bid is approved by the Court at the Sale Hearing; *provided*, that such Qualifying Bidder is not selected as the Successful Bidder or the Back-Up Bidder (each as defined herein);

i. state that such Qualifying Bidder is financially capable of timely consummating the Sale contemplated by the bid and provide written financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities

to timely close the Sale contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any executory contracts or unexpired leases that are to be assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve, within one (1) business day after such receipt, such information on any counterparties to any contracts or leases being assumed and assigned (or assumed) in connection with the Sale that have requested, in writing, such information;

j.     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated Sale;

k.     a commitment to close the Sale by November 15, 2022, or such other date as agreed to by the Debtors in consultation with the Consultation Parties;

l.     not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment, unless such Qualifying Bidder is a Stalking Horse Purchaser;

m.     in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (i) the purchase price under the Stalking Horse Agreement, (ii) any Break-Up Fee (as defined below), (iii) any Expense Reimbursement (as defined below), and (iv) the  greater of $100,000 and one percent (1%) of the purchase price under the Stalking Horse Agreement;

n.     not contain (i) any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, due diligence or the absence of any material adverse effect or (ii) any escrow arrangements, indemnities, or adjustments to the purchase price (in each case except as such terms are included in a Stalking Horse Agreement (if any));

o.     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets in question, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the proposed Sale;

p.     provides for the Qualifying Bidder to serve as a backup bidder (the "<u>Back-Up Bidder</u>") if the Qualifying Bidder's bid is the next highest or best bid (the "<u>Back-Up Bid</u>") after the Successful Bid (as defined below) for the applicable Assets;

q.     includes written evidence reasonably acceptable to the Debtors demonstrating corporate or similar governance authorization and approval with respect to the submission, execution, delivery, and consummation of the subject bid; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the bid, then the Qualifying Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission, execution, delivery, and consummation of the bid by the equity holder(s) of such Qualifying Bidder and any other governing body of the Qualifying Bidder that is required to approve the submission, execution, delivery, and consummation of the bid;

r.     provides a good faith cash deposit (the "<u>Deposit</u>") in an amount equal to ten percent (10%) of the cash purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be held in a noninterest-bearing escrow account to be identified and established by the Debtors; *provided* that, for the avoidance of doubt, a Deposit is not required for any amount of the purchase price comprised of a credit bid; and

s.     provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is initially deemed not a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (x) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures and (y) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and a Sale.

### 8.     <u>Bid Deadline</u>

A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format so as to be received on or before **October 27, 2022 at 5:00 p.m. (prevailing Central Time)** (the "<u>Bid Deadline</u>") by the following:  (i) the Debtors,  Compute North LLC, 7575 Corporate Way, Eden Prairie,  Minnesota  55344,  Attn:  Jason  Stokes,  Chief  Legal  Officer (jason.stokes@computenorth.com); (ii) the Debtors' investment banker, Jefferies LLC, Attn: Jeffrey  Finger  (jfinger@jefferies.com),  Ryan  Hamilton  (rhamilton@jefferies.com),  and

Project.Centauri.20222@jefferies.com; (iii) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn: Luc Despins, Sayan Bhattacharyya, Matthew Schwartz, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, mattschwartz@paulhastings.com, and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn: Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com); and (iv) proposed counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases; *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties and Generate Lending, LLC and its counsel. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction**.

9. **Evaluation of Qualifying Bids**

The Debtors will deliver by no later than **4:00 p.m. (prevailing Central Time) on the day following the Bid Deadline**, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than **10:00 a.m. (prevailing Central Time) on the day before the commencement of the Auction**. In the event that a bid is determined not to be a Qualifying Bid, including with respect to any proposed credit bid amount, the Qualifying Bidder shall be notified by the Debtors and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors and to provide additional Secured Claim Documentation, as applicable; *provided* that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid as to the applicable Assets for purposes of constituting the opening bid of the Auction with respect to such Assets (each a "Baseline Bid" and the Qualifying Bidder submitting each such Baseline Bid, a "Baseline Bidder") and shall notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid or Baseline Bids no later than the opening of the Auction. For the avoidance of doubt, the Debtors may select more than one Baseline Bidder to collectively serve as the Baseline Bid if each such Baseline Bidder contemplates the purchase of different Assets. In making such determination, the Debtors may take into account, among other things, (i) the amount of the Qualifying Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualifying Bid, (iv) the timing associated with consummating such Qualifying Bid, (v) the ability of the Qualifying Bidder to obtain appropriate regulatory approvals, (vi) the

execution risk attendant to any submitted Bids, and (vii) any other factors deemed relevant by the Debtors.

### 10.    <u>No Qualifying Bids</u>

If no timely Qualifying Bids—other than any Stalking Horse Purchaser's Qualifying Bid—are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that the Stalking Horse Purchaser (if any) be deemed the Successful Bidder (as defined herein) and that the Court approve the Stalking Horse Agreement (if any) and the Sales contemplated thereunder, in which case the Debtors shall cause notice of the cancellation of the Auction and the date and time of the Sale Hearing (defined below) to be filed with the Court and published on the case website maintained by the Debtors' claims and noticing agent.

### 11.    <u>Right to Credit Bid</u>

Any Qualifying Bidder who has a valid and perfected lien on any Assets of the Debtors' estates that is not subject to an objection by the commencement of the Auction (a "<u>Secured Creditor</u>") shall have the right to credit bid all or a portion of the value of such Secured Creditor's secured claim within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by the Secured Claim Documentation; *provided, however* that any Secured Creditor whose claims are subject to an objection by the Auction shall have the ability to provisionally credit bid its claim subject to resolution of the objection; *provided further* that to the extent any Secured Creditor's claim is subject to a partial objection, such Secured Creditor shall have the right to credit bid all amounts not subject to dispute; *provided further* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.

### 12.    <u>Auction</u>

If the Debtors timely receive one or more Qualifying Bids for any of the Assets (inclusive of any Stalking Horse Purchaser's Qualifying Bid), then the Debtors shall conduct an auction (the "<u>Auction</u>").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets or subsets thereof, which will be determined by considering, among other things, the following non-binding factors:

  a.  the terms of the Purchase Agreement requested by each bidder;

  b.  the extent to which such terms are likely to delay closing of a Sale, the cost to the Debtors and their estates of such delay, and any incremental financing being offered to accommodate any delay;

  c.  the total consideration to be received by the Debtors and their estates and the form of such consideration;

  d.  the Sale structure and execution risk, including, without limitation, conditions to, timing of, and certainty of closing, termination provisions,

availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval;

e.  the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement;

f.  the impact on interested parties; and

g.  any other qualitative or quantitative factors the Debtors may reasonably deem relevant.

**13.  <u>Auction Procedures</u>**

The Auction shall be governed by the following procedures:

a.  the Auction shall commence on November 1, 2022, at 10:00 a.m. (prevailing Central Time) (the "<u>Auction Date</u>"), at (i) the offices of Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002 or (ii) virtually by videoconference or teleconference, or such other date, time, or location as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids;

b.  only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "<u>Auction Bidders</u>") shall be entitled to make any bids at the Auction;

c.  the Auction Bidders shall appear at the Auction or through a duly authorized representative (in the event that the Auction is held virtually, such Auction Bidder and/or its duly authorized representative shall appear virtually);

d.  only the Debtors, the Auction Bidders, and the Consultation Parties, together with the professional advisors to each of the foregoing parties, may attend the Auction;

e.  the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

f.  the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

g.  bidding shall commence at the amount of the Baseline Bid or Baseline Bids, and the Auction Bidders may submit successive bids in increments of at least the greater of $25,000 and one percent (1%) of the current highest or best bid (or Baseline Bid for the first round) (the "<u>Bid Increment</u>"), which, for the avoidance of doubt may also be in the form of an increased credit bid; *provided* that: (A) each such successive bid must be a Qualifying Bid; (B) if the then-highest or best bid was made by any Stalking Horse

Purchaser, such bid shall be deemed to include the sum of the amount of, if applicable, (1) any Break-Up Fee and (2) any Expense Reimbursement; (C) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (1) the applicable Baseline Bid or the then-highest or best bid, as applicable, plus (2) the Bid Increment, less (3) the sum of the amount of, if applicable, (x) any Break-Up Fee and (y) any Expense Reimbursement; and (D) the Debtors, in consultation with the Consultation Parties, reserve the right to modify the Bid Increment during the course of the Auction and any such modification shall be made on the record at the Auction;

h.    the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

i.    all material terms of the bid that is deemed to be the highest or best bid for the Assets or a specific subset thereof for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or best bid or bids;

j.    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (A) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (B) disclosed to the Auction Bidders;

k.    Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, *provided* that (A) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (B) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

l.      to remain eligible to participate in the Auction, in each round of bidding, (i) each Qualifying Bidder must submit an overbid with respect to such round of bidding and (ii) to the extent a Qualifying Bidder fails to submit an overbid with respect to such round of bidding, such Qualifying Bidder shall be disqualified from continuing to participate in the Auction; *provided* that the Qualifying Bidder with the highest bid from the previous round shall not be required to submit an overbid to its own bid;

m.      the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the Sale(s) contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

n.      upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (each a "Successful Bid").  In making this decision, in consultation with the Consultation Parties, the Debtors shall consider, among other things, the non-binding factors set forth above in Section 12. The bidders submitting such Successful Bids, which may be a Stalking Horse Purchaser, shall each become a "Successful Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable.  The Debtors may, in their sole discretion, designate Back-Up Bids (and corresponding Back-Up Bidders) to purchase the applicable Assets in the event that the Successful Bidder or Successful Bidders do not close the Sale; and

o.      prior to the Sale Hearing, each Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the applicable Successful Bid was made.

Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualifying Bidders; allow individual Qualifying Bidders to consider how they wish to proceed; or give Qualifying Bidders the opportunity to provide the Debtors with additional evidence that the Qualifying Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed bid at the prevailing overbid amount.

Qualifying Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors, which consent shall not be unreasonably withheld. All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualifying Bidder participating in the Auction, including any Stalking Horse Bidder, must confirm on the record at the commencement of the Auction that it (i) has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph, (ii) its Qualifying Bid is a good faith bona fide offer and it intends to consummate the transaction contemplated by such Qualifying Bid if selected as the Successful Bidder, (iii) has reviewed, understands, and accepts the Bidding Procedures, and (iv) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures and the Auction.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided* that parties may speak with clients or parties necessary to place or increase their Qualifying Bid so long as such individuals are advised of this confidentiality restriction

EACH SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND ANY BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall file with the Court notice of the Successful Bid and Successful Bidder and any Back-Up Bid and Back-Up Bidder. The Debtors shall not consider any bids or overbids submitted after the Auction has closed, and any and all bids or overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a bid or overbid.

14. **Sale Hearing**

Each Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the applicable Stalking Horse Agreement) will be subject to approval by the Court. The hearing to approve each Successful Bid and any Back-Up Bid (the "Sale Hearing") shall take place on **November 7, 2022 at 9:00 a.m. (prevailing Central Time)**. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases. **For the avoidance of doubt, by no later than the time of announcement of any Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof,**

**from the Auction and sale process, and adjourn the Sale Hearing with respect to the withdrawn Assets on the terms set forth herein**.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things:

   a.   authorizes and approves each Sale to a Successful Bidder (and, if applicable, the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement or Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such Sale shall be transferred free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code;

   b.   unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such Sale;

   c.   finding that each Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

   d.   as appropriate, exempting the Sale(s) and conveyance(s) of the applicable Assets from any transfer tax, stamp tax, or similar tax, or deposit under any applicable bulk sales statute.

### 15.    Back-Up Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale by **November 15, 2022**, or such date as may be extended by the Debtors, in consultation with the Consultation Parties, the Back-Up Bid will be deemed to be the Successful Bid, the applicable Back-Up Bidder will be deemed to be a Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the applicable Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than **three (3) business days following the date upon which such Back-Up Bid is deemed to be the Successful Bid**.

### 16.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or a Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing.  The Deposit of each Successful Bidder or, if a Sale is closed with the relevant Back-Up Bidder, the Deposit of the Back-Up Bidder, shall be applied to the purchase price for the applicable Sale.  If a Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate a Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up

Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

17.  **Notice and Consultation Parties**

    a.    The term "Notice Parties" as used in these Bidding Procedures shall mean:

        i.    the Debtors,  Compute North LLC, 7575 Corporate Way, Eden Prairie, Minnesota 55344, Attn:  Jason Stokes, Chief Legal Officer (jason.stokes@computenorth.com); and

        ii.    counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn:  James T. Grogan III (jamesgrogan@paulhastings.com); 200 Park Avenue, New York, New York 10166, Attn:  Luc Despins, Sayan Bhattacharyya, Matthew Schwartz, and Daniel Ginsberg (lucdespins@paulhastings.com, sayanbhattacharyya@paulhastings.com, mattschwartz@paulhastings.com and danielginsberg@paulhastings.com); and 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Matthew Micheli and Michael Jones (mattmicheli@paulhastings.com and michaeljones@paulhastings.com).

    b.    The term "Consultation Parties" as used in these Bidding Procedures shall mean:

        i.    TZ Capital Holdings, LLC, solely with respect to Compute North Member LLC assets related to its subsidiary TZRC LLC and any of TZRC LLC's business, operations, and/or subsidiaries;

        ii.    with respect to any subset of the Debtors' Assets, each secured lender with liens on such Assets, if any; and

        iii.    counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee").

To the extent that any party is a Consultation Party in connection with any of the Debtors' Assets, such party shall not be a Potential Bidder or Qualifying Bidder.  If any party receives confidential information about the Assets from the Debtors that is not otherwise generally available to Potential Bidders or Qualifying Bidders, such party shall be prohibited from being a Potential Bidder or a Qualifying Bidder; *provided* that Generate Lending, LLC, in its capacity as a secured lender, may receive certain information regarding the Assets to the extent that existing loan documents or other agreements between Generate Lending, LLC and any of the Debtors or their non-Debtor affiliates provide for such information rights with respect to such Assets without violating its status as a Qualifying Bidder.

16

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

If a member of the Committee is a potential bidder, the Committee will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that the Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

### 18.    <u>Reservation of Rights</u>

Notwithstanding any of the foregoing, the  Debtors and their estates shall have the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.