<u>**Exhibit C**</u>

**Interim Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No~Nos.~ 125, 236** |

**ORDER (I) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT
BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), EFFECTIVE AS OF
SEPTEMBER 22, 2022 AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS**

Upon the application (the "<u>Application</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) authorizing the Debtors to retain and employ Jefferies LLC ( "<u>Jefferies</u>") as their investment banker, effective as of September 22, 2022 (the "<u>Petition Date</u>"), pursuant to the terms and subject to the conditions of the Engagement Letter, which is annexed to this Order as **Exhibit 1**, as modified by this Order, (b) modifying certain of the timekeeping requirements, and (c) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Finger Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   Capitalized terms used and not defined herein have the meanings ascribed to them in the Application.

States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Debtors are authorized to retain and employ Jefferies as their investment banker in these Chapter 11 Cases, as of the Petition Date, pursuant to the terms and subject to the conditions set forth in the Engagement Letter attached hereto as **Exhibit 1**, as modified by this Order, including, without limitation, paragraph 2 below.

2.      Notwithstanding anything to the contrary in the Application or Engagement Letter, the Restructuring Fee, M&A Transaction Fee, Minority M&A Transaction Fee, and Financing Fee shall only be payable to Jefferies as follows:

      a.      **Restructuring Fee**.  Promptly upon the consummation of a Restructuring, Jefferies shall be paid a fee equal to $4.25 million.  Additionally, for the avoidance of doubt, a Restructuring Fee shall be payable upon the consummation of any chapter 11 plan.

      b.      **M&A Transaction Fee**.  Promptly upon the consummation of an M&A Transaction involving all or substantially all of the assets or equity of the Debtors at the time of the consummation of such M&A Transaction, Jefferies shall be paid a fee as follows:

         i.   $4.25 million, plus

        ii.   An additional $500,000 if the aggregate amount of cash and the fair market value of any securities or other property payable to the Debtors

on account of such M&A Transaction (the "<u>Consideration</u>") exceeds $30 million, plus

    iii.   An additional $500,000 if the Consideration exceeds $35 million; plus

    iv.   An additional $750,000 if the Consideration exceeds $40 million.

c.   **<u>Minority M&A Transaction Fee</u>**.  Promptly upon the consummation of an M&A Transaction that does not involve all or substantially all of the assets or equity of the Debtors at the time of the consummation of such M&A Transaction, Jefferies shall be paid a fee equal to the lesser of $2 million and 25.0% of the Consideration of such M&A Transaction.  Notwithstanding the foregoing, to the extent an M&A Transaction is consummated that solely involves a private sale of the equity of CN Borrower LLC on an expedited basis under the Bankruptcy Rules, then the Minority M&A Transaction Fee payable on account of such M&A Transaction shall be equal to $1 million.  Additionally, one hundred percent (100%) of each Minority M&A Transaction Fee actually paid to Jefferies shall be credited once, without duplication, against any M&A Transaction Fee.

d.   **<u>Financing Fee</u>**.  Promptly upon the consummation of a Financing, Jefferies shall be paid a fee as follows:

    i.   2.0% of any senior secured Debt Securities and/or senior secured Bank Debt; plus

    ii.   3.5% of any junior secured or unsecured Debt Securities and/or junior secured or unsecured Bank Debt; plus

    iii.   5.0% of the aggregate gross proceeds received or to be received from the sale of Equity Securities, including, without limitation, aggregate amounts committed by investors to purchase Equity Securities.

    iv.   Additionally, fifty percent (50%) of any Financing Fee actually paid to Jefferies shall be credited once, without duplication, against any M&A Transaction Fee and/or Restructuring Fee.

Notwithstanding the foregoing, Jefferies shall only be entitled to one Restructuring Fee or one M&A Transaction Fee.  Furthermore, to the extent that a Transaction qualifies as both a Restructuring and an M&A Transaction, Jefferies shall only be paid the higher of, and not both, the Restructuring Fee and the M&A Transaction Fee payable on account of such Transaction,

and, if the Restructuring Fee and M&A Transaction Fee payable on account of such Transaction are equal, then Jefferies shall only be paid one such fee on account of such Transaction.

3.       Except to the extent set forth herein, the Engagement Letter (together with all annexes thereto), including without limitation the Fee and Expense Structure, are approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtors are authorized and directed to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.  Subject to Paragraph 4 of this Order, all compensation and reimbursement of expenses payable under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

4.       Jefferies shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules or Bankruptcy Local Rules as may then be applicable, and any other applicable orders and procedures of this Bankruptcy Court; *provided*, *however*, that Jefferies shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code and that Jefferies' fees and expenses shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that, notwithstanding any provisions to the contrary in this Order, the Application or any of its attachments, the U.S. Trustee shall retain all rights and be entitled to object to Jefferies' request(s) for fees and reimbursement of expenses, including but not limited to those set forth in interim and final fee applications, under the standards provided in sections 330 and 331 of the Bankruptcy Code.  Accordingly, nothing in

this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Jefferies' fees and reimbursement requests.

5.     Notwithstanding anything to the contrary in the Application or any of its attachments, including but not limited to the Engagement Letter, Jefferies shall comply with all requirements of Bankruptcy Rule 2016(a), and Bankruptcy Local Rule 2016-1, including all information and time keeping requirements of subsection (d) of Bankruptcy Local Rule 2016-1, except that Jefferies and its professionals shall be permitted to maintain time records of services rendered for the Debtors in half-hour increments.

6.     Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Jefferies absent an order of this Bankruptcy Court approving a fee application filed on notice to parties in interest in these Chapter 11 Cases under the procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals, except that the Debtors are authorized to pay the Monthly Fee to Jefferies each month when required under the Engagement Letter without a prior fee statement or application, provided that Jefferies shall file interim fee applications with time entries and requests for reimbursement that comply with Bankruptcy Local Rule 2016-1, except as otherwise expressly set forth in this Order, pursuant to the deadlines and other procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals.

7.     In the event that, during the pendency of these Chapter 11 Cases, Jefferies requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in Jefferies' fee applications, and such invoices and

time records shall be in compliance with Bankruptcy Local Rule 2016-1 and the U.S. Trustee Guidelines and subject to approval of the Bankruptcy Court under the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Notwithstanding the foregoing, Jefferies shall only be reimbursed for any legal fees incurred in connection with these Chapter 11 Cases to the extent permitted under applicable law and the decisions of this Bankruptcy Court.

8.      The indemnification, contribution, and reimbursement provisions included in Schedule A to the Engagement Letter are approved, subject to the following modifications, applicable during the pendency of these Chapter 11 Cases:

    a.      Indemnified Persons (as that term is defined in Schedule A to the Engagement Letter) shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for claims arising from services other than the services provided under the Engagement Letter, unless such services are approved by this Bankruptcy Court;

    b.      Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person or entity or provide contribution or reimbursement to any person or entity for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from that person's or entity's gross negligence, willful misconduct, fraud, breach of fiduciary duty (if any), or bad faith, or (ii) for a contractual dispute in which the Debtors allege breach of the obligations of Jefferies or another Indemnified Person under the Engagement Letter unless this Bankruptcy Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to sub-clauses (i) or (ii) above, but determined by this Bankruptcy Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

    c.      If, during the pendency of these Chapter 11 Cases, the indemnification provided in Schedule A to the Engagement Letter is held unenforceable by reason of the exclusions set forth in paragraph (b) above, and Jefferies or

another Indemnified Person makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the limitations on Jefferies' contribution obligations set forth in the second and third sentences of the fifth paragraph of <u>Schedule A</u> shall not apply;[3] and

d.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, Jefferies or another Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Jefferies must file an application before this Bankruptcy Court and the Debtors may not pay any such amounts before the entry of an order by this Bankruptcy Court approving the payment; provided, however, that for the avoidance of doubt, this subparagraph (d) is intended only to specify the period of time under which this Bankruptcy Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Jefferies or any other Indemnified Person.  All parties in interest, including the U.S. Trustee, shall retain the right to <u>object to</u> any request for indemnification, contribution, or reimbursement by Jefferies or any other Indemnified Person.

9.     To the extent that there may be any inconsistency between the terms of the Application, the Finger Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

10.    Notwithstanding anything to the contrary in the Engagement Letter, the provisions in the Engagement Letter regarding crediting of any Citigroup fees shall have no force and effect.

11.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

---

[3]   For the avoidance of doubt, the fifth paragraph of <u>Schedule A</u> to the Engagement Letter is the paragraph that begins, "If, for any reason…."

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.     This Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2022
       Houston, Texas

                                        _____
                                        THE HONORABLE MARVIN ISGUR
                                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

Strictly Confidential

**Engagement Letter**

As of July 1, 2022

**Compute North Holdings, Inc.**
7575 Corporate Way
Eden Prairie, MN 55344

Attention:    Dave Perrill
              Chief Executive Officer

Re: Advisory Service; Financing Transaction

This agreement (this "Agreement") will confirm the arrangements under which Jefferies LLC ("Jefferies") has been engaged by Compute North Holdings, Inc., a Delaware corporation, and its present and future affiliates and subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby (collectively, the "Company") to act as set forth herein. The parties hereto acknowledge and agree that the Agreement amends and restates in its entirety that certain engagement letter between the parties dated August 16, 2021 (the "Prior Agreement").

1.    Retention.

(a)    Restructuring.  During the term of this engagement, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will:

(i)    provide advice and assistance to the Company in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as exclusive financial advisor to the Company in connection with, the restructuring, reorganization, recapitalization, repayment or modification of the Company's outstanding indebtedness, however achieved, including, without limitation, through a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), the execution of any agreement giving effect thereto, or any similar balance sheet restructuring involving the Company (any such transaction considered in this paragraph is hereinafter referred to as a "Restructuring"); and

(ii)    perform the following financial advisory services, among others, for the Company in connection with a Restructuring:  (a) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing, the business, operations, properties, financial condition and prospects of the Company; (b) advising the Company on the current state of the "restructuring market"; (c) assisting and advising the Company in developing a general strategy for accomplishing a Restructuring; (d) assisting and advising the Company in implementing a Restructuring; (e) assisting and advising the Company in evaluating and analyzing a Restructuring, including the value of the securities or debt instruments, if any, that may be issued in any such Restructuring; and

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 2

(f) rendering such other financial advisory services as may from time to time be agreed upon by the Company and Jefferies.

    (b)   <u>M&A Transaction</u>. Furthermore, during the term of this engagement, and as mutually agreed upon by Jefferies and the Company, Jefferies will provide the Company with financial advice and assistance in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a material portion of the equity or assets of one or more entities comprising the Company, whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, tender or exchange offer, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, spin-off, split-off, joint venture, strategic partnership, license, a sale under section 363 of the Bankruptcy Code (including any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "<u>M&A Transaction</u>").

    (c)   <u>Financing</u>.

        (i)   The Company hereby retains and authorizes Jefferies, during the term of this engagement, to act as lead advisor, manager, bookrunner, placement agent, arranger, underwriter and/or initial purchaser, as the case may be, in connection with any of the following (each, a "<u>Financing</u>", and a Financing, a Restructuring and an M&A Transaction, each and together, a "<u>Transaction</u>"): (i) the sale and/or placement, whether in one or more public or private transactions, of (A) common equity, preferred equity, and/or equity-linked securities of the Company (regardless of whether sold by the Company or its securityholders), including, without limitation, convertible debt securities (individually and collectively, "<u>Equity Securities</u>"), and/or (B) notes, bonds, debentures and/or other debt securities of the Company, including, without limitation, mezzanine and asset-backed securities (individually and collectively, "<u>Debt Securities</u>"), and/or (ii) the arrangement and/or placement of any bank debt and/or other credit facility of the Company (individually and collectively, "<u>Bank Debt</u>," and any or a combination of Bank Debt, Equity Securities and/or Debt Securities, "<u>Instruments</u>"). For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of this Agreement.

        (ii)   In connection with a Financing, the Company shall enter into such underwriting agreement, placement agency agreement, credit agreement and/or purchase agreement with Jefferies as Jefferies deems necessary, which agreement will be based on Jefferies' customary form for the applicable Financing (a "<u>Definitive Agreement</u>"). It is understood and agreed that the Company's engagement of Jefferies pursuant to this Agreement is not an express or implied commitment by, nor shall this Agreement otherwise create any obligation on, Jefferies to underwrite, place or purchase any Instruments or otherwise provide or arrange any financing, and that any such obligation shall only exist as set forth in, and subject to the provisions of, such Definitive Agreement

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 3

2.      Cooperation.

    (a)      The Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company relevant to the transactions contemplated hereby and all other information and data, and access to the Company's officers, directors, employees and professional advisors, which Jefferies reasonably requests in connection with Jefferies' activities hereunder, and if necessary, all solicitation materials prepared by the Company (and provided to Jefferies for comments) with respect to the Company. All such materials, information and data shall to the best of the Company's knowledge following due inquiry be complete and accurate in all material respects and not misleading. The Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the completeness or accuracy of the information previously furnished to Jefferies, and agrees that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been consulted in advance thereof. If the Company or, to the Company's knowledge, any of its securityholders, affiliates or other advisors or representatives are contacted by any party concerning a potential Transaction, the Company will promptly inform Jefferies of such inquiry, and all relevant details thereof.

    (b)      The Company further acknowledges that, except to the extent Jefferies, in its sole discretion, deems necessary to establish applicable "due diligence" defenses, Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Company or other parties to a Transaction) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Company or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Company or other party to a Transaction, as the case may be (and if such forecasts no longer reflect such estimates and judgments, then the Company will promptly inform, and provide updated forecasts to, Jefferies).

    (c)      The Company authorizes Jefferies to distribute to prospective investors in a Financing a registration statement and prospectus or confidential offering, placement or information memorandum and other disclosure materials prepared or reviewed and approved by the Company for use in connection with a Financing (for purposes of the immediately following sentence and the indemnification provisions in Schedule A, together with any reports, statements and other documents publicly filed by the Company with the Securities and Exchange Commission pursuant to Sections 13(a), 13(c), 14 and 15(d) of the U.S. Securities Exchange Act of 1934, as amended, and any Rating Agency Presentation (as defined below), in each case, if applicable, the "Materials"), which Materials shall be subject to Jefferies' review and approval prior to distribution. The

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 4

Company acknowledges that the Company shall be solely responsible for the accuracy and completeness of the Materials and all other information distributed in connection with a Financing, and agrees that such Materials and information shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading. The Company further agrees that it will (i) provide Jefferies as soon as practicable but in any event no later than is reasonable and customary for the applicable Financing, with a complete initial draft of the Materials, which contains all financial statements and other data to be included therein (including all audited financial statements, all unaudited financial statements (which shall have been reviewed by the independent accountants for the Company as provided in Statement on Auditing Standards No. 100) and all appropriate pro forma financial statements prepared in accordance with, or reconciled to, generally accepted accounting principles and practices in the United States and prepared in accordance with Regulation S-X under the Securities Act of 1933, as amended, and all other information and data (including selected financial data) that the Securities and Exchange Commission would require in a registered offering of any securities in the Financing or that would be necessary for Jefferies to receive customary "comfort" (including "negative assurance" comfort) from independent accountants in connection with the Financing) (collectively, the "<u>Required Financial Information</u>"), and (ii) provide Jefferies, if applicable, as soon as practicable but in any event no later than is reasonable and customary for financings of such type, with complete printed preliminary Materials suitable for use in a customary "road show" relating to the Financing (including the Required Financial Information) in such number of copies as Jefferies (and, if any, the other underwriters for the Financing) reasonably requests. The Company also agrees that, if applicable, it will promptly commence the preparation of a presentation to Standard & Poor's Rating Group and Moody's Investors Service, Inc. for a rating on any applicable Instruments (a "<u>Rating Agency Presentation</u>").

(d)     Prior to amending or supplementing the Materials, the Company shall furnish to Jefferies for review a copy of each such proposed amendment or supplement. If, prior to the pricing of a Transaction, any event shall occur or condition shall exist as a result of which it is necessary to amend or supplement the Materials so that the Materials do not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements therein, in the light of the circumstances in which they are made, not misleading, the Company shall promptly prepare and furnish to Jefferies such amendments or supplements.

(e)     The Company shall comply, and shall assist Jefferies in complying, with all federal and state securities laws and regulations applicable to the Transaction.

(f)     The Company agrees that any teaser, confidential information memorandum or other disclosure materials used in connection with an M&A Transaction shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 5

(g)     The Company acknowledges that this assignment may lead to an outcome not anticipated in this Agreement.  In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Company agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.     <u>Use of Name, Advice, Agreement etc.</u>

(a)     No information or advice provided (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent.  In addition, the Company agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.   The Company shall not disseminate any materials bearing the Jefferies name or logo outside of the Company without Jefferies' knowledge and consent.  The Company agrees not to disclose this Agreement, the contents hereof or the activities of Jefferies pursuant hereto to any other party without the prior approval of Jefferies.

(b)     Jefferies' advice is solely for the confidential use and information of the Company's management and Board (solely in their capacities as such), and is only to be used in considering the matters to which this Agreement relates.  Such advice may not be relied upon by any other party (including, without limitation, securityholders, affiliates, creditors or employees of the Company).

4.     <u>Compensation</u>.  The Company agrees to pay Jefferies each of the following:

(a)     A monthly fee (the "<u>Monthly Fee</u>") equal to $150,000 per month until the termination of this Agreement.  The first Monthly Fee shall accrue as of the date set forth above and each subsequent Monthly Fee shall accrue on each monthly anniversary thereafter and shall be payable upon the earlier of (i) the Company's consummation of a Transaction, (ii) the commencement of proceedings under the Bankruptcy Code with respect to one or more entities compromising the Company and/or (iii) the termination of this Agreement. Notwithstanding the foregoing, in the event that any such Transaction is consummated or any such bankruptcy proceedings are commenced, all subsequent Monthly Fees shall become payable in advance of each monthly anniversary of the date set forth above.  Additionally, after the payment of $600,000 in Monthly Fees to Jefferies, 100% of any Monthly Fees actually paid to Jefferies thereafter shall be credited once, without duplication, against any Restructuring Fee, M&A Transaction Fee, Minority M&A Transaction Fee and/or Financing Fee subsequently payable to Jefferies.

(b)     Promptly   upon   the   consummation   of   a   Restructuring,   a   fee (the "<u>Restructuring Fee</u>") in an amount equal to $5.0 million.

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 6

(c)    Promptly upon the consummation of an M&A Transaction involving the assets or equity of Compute North Holdings, Inc. and/or Compute North LLC, a fee (the "M&A Transaction Fee") equal to the greater of (x) $8.0 million and (y) an amount to be determined according to the following schedule:

(i)    1.2% of the Transaction Value (as defined below) of such M&A Transaction equal to or less than $1.0 billion; plus

(ii)    An additional 1.0% of the Transaction Value of such M&A Transaction greater than $1.0 billion and less than or equal to $2.0 billion; plus

(iii)    An additional 0.80% of the Transaction Value of such M&A Transaction greater than $2.0 billion.

The foregoing notwithstanding, the M&A Transaction Fee shall be reduced for any amounts actually paid by the Company to Citigroup with respect to the underlying M&A Transaction, such reduction not to exceed an amount equal to 50% of the M&A Transaction Fee calculated in accordance with the above.

(d)    Promptly upon the consummation of an M&A Transaction not covered by Section 4(c) above, a fee (the "Minority M&A Transaction Fee") equal to the greater of (i) $2.5 million and (ii) 4.0% of the Transaction Value of such M&A Transaction. Notwithstanding anything to the contrary herein (including Section 4(c) above), to the extent that any M&A Transaction solely involves the sale of equity in or the assets of a direct or indirect subsidiary of Compute North LLC, then Jefferies shall be entitled to a Minority M&A Transaction Fee and not an M&A Transaction Fee on account of the consummation of such M&A Transaction. Additionally, it is expressly understood that a separate Minority M&A Transaction Fee shall be payable in respect of each M&A Transaction not covered by Section 4(c) above in the event that more than one such M&A Transaction shall occur. The foregoing notwithstanding, the Minority M&A Transaction Fee shall be reduced to the extent of any amounts actually paid by the Company to Citigroup with respect to the underlying M&A Transaction, such reduction not to exceed an amount equal to 50% of the Minority M&A Transaction Fee calculated in accordance with the foregoing.

"Transaction Value" shall mean (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid or payable in connection with an M&A Transaction, including, without limitation, (1) any dividends or distributions or any stock redemptions or repurchases outside the normal course of business, (2) amounts payable under retention or severance arrangements, consulting agreements, agreements not to compete or similar arrangements and other payments to any of the Company's directors, management or key employees, (3) all amounts payable in relation to, or other value ascribed in the M&A Transaction (including the form of "rollover" options or warrants) in respect of, warrants, options or other convertible securities, (4) the full amount of any consideration placed in

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 7

escrow or otherwise withheld to support the Company's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the M&A Transaction, (5) the full amount of any contingent consideration to be paid in the future and (6) the full amount of any payments in installments; plus (B) all indebtedness for borrowed money, pension liabilities, guarantees, capitalized leases and other liabilities (whether consolidated, off-balance sheet or otherwise) and preferred stock directly or indirectly assumed, refinanced, retired or extinguished (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs) in connection with the M&A Transaction (including, in the case of the sale, exchange or purchase of equity securities, any such liabilities outstanding at the closing of the M&A Transaction) and the value of operating leases (calculated by multiplying the latest quarter annualized operating lease rental expense prior to closing by 8); plus (C) in the case of an M&A Transaction structured as a sale, transfer, exchange or purchase of equity securities, if less than 100% of the equity of the Company is transferred in the M&A Transaction, the value of any retained interest in the Company based on the value paid for or ascribed to the equity interests transferred in the M&A Transaction; plus (D) in the case of an M&A Transaction structured as a sale, transfer, exchange or disposition of assets, if less than 100% of the assets of the Company are transferred in the M&A Transaction, the fair market value of any assets (including, without limitation, accounts receivable, inventory, investments, cash and cash equivalents) retained by the Company; plus (E) in the case of a joint venture or similar transaction (a "Joint Venture"), the aggregate value of the proceeds, assets and other consideration contributed or to be contributed to such Joint Venture by all parties to such Joint Venture in connection with the M&A Transaction (which shall be deemed to include up-front payments, milestone payments, research and development payments, licensing fees and royalties, installment amounts, future and contingent payments and other payments), including, without limitation, cash, notes, securities, intellectual property, licenses, marketing or distribution rights and other property and the amount of any liabilities assumed by such Joint Venture.

For purposes of computing the M&A Transaction Fee and/or Minority M&A Transaction Fee, (x) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of announcement of the M&A Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Jefferies.

     (e)     Promptly upon the consummation of a Financing, a fee (the "Financing Fee") equal to 5.0% of the first $300.0 million of gross proceeds raised or committed in connection with such Financing, plus 4.0% of the gross proceeds raised or committed in connection with such Financing in excess of $300.0 million. The foregoing notwithstanding, the Financing Fee shall be reduced to the extent of any amounts actually paid by the Company to Citigroup with respect to the underlying Financing, such reduction not to exceed an amount equal to 50% of the Financing Fee calculated in accordance with the foregoing.

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 8

(f)      The Company expressly acknowledges and agrees that (i) more than one of the same fee may be payable to Jefferies under this Agreement and (ii) more than one type of fee may be payable to Jefferies with respect to each Transaction. Notwithstanding the foregoing, to the extent a Transaction qualifies as both a Restructuring and an M&A Transaction covered by Section 4(c) above, Jefferies shall only be entitled to the higher of the Restructuring Fee and M&A Transaction Fee payable on account of such Transaction and not both such fees.

(g)      The Company acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.   The Company further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Company in connection with any Transaction and that the value to the Company of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.      Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including fees and expenses of its counsel, and the fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder and/or the Prior Agreement (including, without limitation, any unpaid expenses incurred in connection with the Prior Agreement as of the date of this Agreement).

6.      Indemnification, etc.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination of this Agreement. Additionally, the indemnification, exculpation and other obligations described in Schedule A hereto shall be effective as of the date of the Prior Agreement.

7.      Termination.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by both the Company and Jefferies, and the Agreement will remain in full force and effect (and will not be deemed completed) until terminated by either party on five days' written notice to the other; provided that the Company may not unilaterally terminate this Agreement prior to 6 months from the date hereof.  Upon any termination of this Agreement, the Company shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies

Compute North Holdings, Inc.
As of July 1, 2022
Page 9

shall be entitled to the applicable fee or fees set forth in Section 4 if, on or prior to 12 months from the effective date of termination of this Agreement, the Company consummates, or enters into an agreement which subsequently results in, a Transaction. Any such fee or fees shall be payable upon closing of any such Transaction. Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 10-17, and Schedule A, which shall survive such termination.

8.      Co-Advisors.   Jefferies acknowledges that the Company may, outside of any proceedings under the Bankruptcy Code, retain or have retained one or more additional financial advisors in connection with a Transaction, provided that: (i) Jefferies shall be the lead financial advisor, (ii) except as otherwise expressly stated herein any such retention of another financial advisor shall not affect Jefferies' rights (including with respect to fee entitlement) or the Company's obligations hereunder and (iii) Jefferies shall not be liable or responsible for any acts or omissions of such other financial advisor, including, for the avoidance of doubt, with respect to any act or omission of such advisor that would constitute gross negligence or willful misconduct.

9.      Bankruptcy Retention.   If the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company agrees promptly to retain Jefferies as its exclusive financial advisor in the Company's bankruptcy cases (pursuant to a new engagement letter on terms agreeable to Jefferies and the Company), and to apply to the bankruptcy court having jurisdiction over such cases (the "Bankruptcy Court") for the approval of such retention pursuant to section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Jefferies with a draft of any application and proposed order authorizing Jefferies' retention sufficiently in advance of its filing to enable Jefferies to review and approve any such application or order prior to its filing. Jefferies shall have no obligation to provide any services under this Agreement if the Company becomes a debtor under the Bankruptcy Code unless Jefferies' retention is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is acceptable to Jefferies in its sole discretion. Prior to commencing a bankruptcy case, the Company shall pay to Jefferies in cash all amounts due and payable to Jefferies under this or any other Agreement.

10.     Other Transactions; Disclaimer.

        (a)     If the Company determines, during the term of this Agreement or during the 24-month period following the effective date of termination of this Agreement, to pursue (i) any equity, equity-linked, debt or mezzanine financing or other investment in the Company (including a secondary sale or offering by securityholders effected with the Company's assistance), then Jefferies shall have the right, but not the obligation, to act as bookrunning manager, placement agent and/or arranger, as the case may be, in any such and all such financing or financings and to receive the aggregate gross spread or fees from any and such financing or financings (such gross spread or fees in such financing or

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 10

financings will be mutually determined in good faith by the Company and Jefferies and will be based on the prevailing market for similar services for global, full-service investment banks), (ii) any tender or exchange offer for, or consent solicitation with respect to, debt (including, without limitation, convertible debt) securities, then Jefferies shall have the right, but not the obligation, to act as sole dealer manager and/or solicitation agent for any and all such tender or exchange offers and/or consent solicitations and to receive a fee in an amount to be mutually determined in good faith by the Company and Jefferies and will be based on the prevailing market for similar services for global, full-service investment banks and/or (iii) any acquisition of all or a material portion of the stock or assets of another party or group of affiliated parties, whether in one or a series of transactions, or any restructuring transaction (through a recapitalization, extraordinary dividend, stock repurchase, spin-off, joint venture or otherwise), or any other activity for which the Company would engage a financial advisor, then Jefferies shall have the right, but not the obligation, to act as exclusive financial advisor to the Company for any and all such transaction or transactions and to receive fees in an amount to be mutually determined in good faith by the Company and Jefferies and will be based on the prevailing market for similar services for global, full-service investment banks. It is acknowledged and agreed that the Company's obligation to pay fees in an amount that are customary for a transaction of this type shall be subject to the review of the Financial Industry Regulatory Authority ("FINRA") and the amount of such fees may be amended to meet any restrictions imposed by FINRA.

(b)     The Company will promptly notify Jefferies in writing if it intends to pursue any of the transactions referenced in clause (a) above setting out in reasonable detail the proposed transaction and other relevant information and, if Jefferies exercises its rights with respect thereto, then the Company will enter into and, to the extent requested by Jefferies, will require that any selling stockholders of the Company in any of the foregoing transactions referred to in clause (a)(i) enter into, a separate agreement in Jefferies' customary form for such engagement containing terms and conditions no less favorable to Jefferies than those contained in this Agreement. It is expressly agreed and acknowledged that the absence of any such separate agreements will not relieve the Company of its obligations under this Section 10.

(c)     If the Company requests that Jefferies or one of its affiliates make available acquisition financing to prospective counterparties in a Transaction, upon such request, the Company will be deemed to have waived any and all actual and/or potential conflicts of interest in connection therewith. In any such event, if Jefferies proceeds with such financing, the Company and Jefferies will discuss appropriate procedures to put in place to prevent the inappropriate disclosure of the Company's confidential information under such circumstances, subject to all applicable securities laws. For the avoidance of doubt, any fees payable to Jefferies in connection with a financing described in this paragraph shall not be the responsibility of the Company, and no fee payable to Jefferies in connection with any such financing shall reduce the fees payable by the Company hereunder.

Compute North Holdings, Inc.
As of July 1, 2022
Page 11

(d)     The Company acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities).   The Company also acknowledges that Jefferies Group LLC's ultimate parent, Jefferies Financial Group Inc. (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "Jefferies Financial Group"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Jefferies Financial Group maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies.  Information that is held elsewhere within Jefferies Financial Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement.  Neither Jefferies nor any other part of Jefferies Financial Group has or will have any duty to disclose to the Company or use for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, Jefferies Financial Group may trade the securities of the Company and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities.  Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise.  Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.  Jefferies Financial Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(e)     The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies may provide tools or online document repository spaces to facilitate the Transaction, that such

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 12

products or services are provided by third party vendors and that the Company uses those products or services at its own risk, (iv) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

(f)     In connection with any Transaction involving the offer and sale by the Company of any securities, (i) such sale, including the determination of the price of such securities, shall be an arm's-length commercial transaction between the Company and the other parties to a Transaction (including Jefferies in the event that it acts as an underwriter or initial purchaser), (ii) Jefferies will not be the agent or fiduciary of the Company or its securityholders, affiliates, creditors, employees or any other party, (iii) Jefferies shall not assume fiduciary responsibility in favor of the Company (irrespective of whether Jefferies has advised or is currently advising the Company on other matters) and Jefferies shall have no obligation to the Company with respect to the Transaction except as may be set forth herein or in a Definitive Agreement (as applicable), and (iv) the Company agrees that it will not hold Jefferies liable or responsible in the event that a Transaction is not successfully consummated, including but not limited to, as a result of an adverse change in the financial or securities markets, insufficient demand for instruments similar to the Instruments or lack of interest by investors in the Transaction.

11.     <u>Governing Law</u>.   This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

12.     <u>Exclusive Jurisdiction</u>.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement to this Section 12 (any of the foregoing, a "<u>Claim</u>") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law.  The Company and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of forum non-conveniens.  The Company and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier, or personally delivered, to the addresses set forth or referred to in Section 15 hereof.  The Company shall pay all of

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 13

Jefferies' costs and expenses (including, without limitation, fees and expenses of counsel) in an enforcement proceeding if the court in such proceeding determines that Jefferies is entitled to recover amounts due hereunder. The Company and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced. Neither Jefferies or any of the Indemnified Persons (as defined in Schedule A), nor the Company or its affiliates, shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof; provided that the foregoing shall not place any limitation on the Company's indemnification obligations under this Section 12 and Schedule A in connection with third-party claims. In addition, the Company agrees that irreparable harm to Jefferies will result in the event the Company fails, within 10 days of the receipt of a written demand from Jefferies, to pay any of the fees payable pursuant to Section 4 hereof, and in such event the Company agrees that Jefferies may obtain, at its discretion, and in addition to any other remedies available to it, at law or in equity, either specific performance or summary judgment in lieu of complaint from any such court. The Company also hereby consents to personal jurisdiction, service and venue in any court in which any action (as defined in <u>Schedule A</u>) is brought by any third party against Jefferies or any Indemnified Person.

13.   <u>Payments</u>.

(a)   All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Such fee may be paid by the Company in the form of a "gross spread" or a similar underwriting discount, if Jefferies' role hereunder is that of an underwriter or an initial purchaser. No fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim. The Company agrees that (a) any definitive or other binding agreement entered into by the Company in respect of a Transaction shall provide for the transfer to Jefferies at the closing of the Transaction of a cash amount sufficient to pay in full, in accordance with Sections 4 and 5 above, Jefferies' fees and expenses to the extent not previously paid or reimbursed and (b) the Company shall not close the Transaction unless such transfer is made to Jefferies in accordance with the provisions hereof.

(b)   All amounts payable to Jefferies or any other Indemnified Person under the terms of the Agreement shall be paid to Jefferies or any other Indemnified Person in U.S. dollars, free and clear of all deductions or withholdings. If the deduction or withholding is required by law, the Company will pay such additional amount as will be required to ensure that the net amount received by Jefferies or any other Indemnified Person is equal to the amount it would have received had no such deduction or withholding or charge been made.

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 14

     (c)    All fees and expenses payable under the provisions of the Agreement are subject to any applicable value added, sales, turnover, consumption or similar tax, which will be payable by or charged to the Company.

14.    <u>Announcements, etc</u>. The Company agrees that Jefferies may, following the announcement or disclosure of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Company's name and logo in connection therewith. The Company agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role as financial advisor to the Company in connection with the Transaction in form and substance reasonably satisfactory to Jefferies.

15.    <u>Notices</u>. Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be mailed by next-day delivery using a nationally-recognized overnight courier or hand-delivered (a) if to the Company, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

16.    <u>Miscellaneous</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is binding upon and inures to the benefit of each party's permitted successors and permitted assigns. This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; <u>provided</u> that Jefferies may, in the performance of its services hereunder, procure the services of other members of Jefferies Financial Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. All references to "$" or "dollars" herein shall be references to U.S. dollars. "Third party" as used herein shall mean any party other than the parties hereto. No failure or delay by Jefferies in exercising any right, power or remedy hereunder or pursuant hereto, or any failure to give notice of any breach of or to require compliance with any term of this Agreement, shall operate as a waiver thereof. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by each of the

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 15

signatories hereto and its counsel. There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

17.    Patriot Act.    Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

*[Remainder of Page Intentionally Left Blank]*

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 16

Please sign below and return to Jefferies to indicate the Company's acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By _____
Name:   Jeffrey Finger
Title:   Managing Director

Accepted and Agreed:

**COMPUTE NORTH HOLDINGS, INC.**
On behalf of its present and future affiliates and subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby

By _____
Name: DAVE PERRILL
Title: CEO

**COMPUTE NORTH LLC**

By _____
Name: DAVE PERRILL
Title: CEO, Compute North Holdings, Inc.

**CN BORROWER LLC**

By _____
Name: DAVE PERRILL
Title: CEO, Compute North Holdings, Inc.

[SIGNATURE PAGE TO ENGAGEMENT LETTER]

**Compute North Holdings, Inc.**
As of July 1, 2022
Page 17

**CN CORPUS CHRISTI LLC**

By _____
    Name: DAVE PERRILL
    Title: CEO, COMPUTE NORTH HOLDINGS, INC.

**CN MINING LLC**

By _____
    Name: DAVE PERRILL
    Title: COMPUTE NORTH HOLDINGS, INC.

**COMPUTE NORTH MEMBER LLC**

By _____
    Name: DAVE PERRILL
    Title: COMPUTE NORTH HOLDINGS, INC.

[SIGNATURE PAGE TO ENGAGEMENT LETTER]

SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Company. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates and their successors and permitted assigns (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs and expenses (an "Action") (including, without limitation, full reimbursement of all fees and expenses of counsel incurred in investigating, preparing or defending against any such Action and in enforcing the terms of this Schedule A), as incurred, (a) related to or arising out of or in connection with any untrue or alleged untrue statement of material fact contained in the Materials or other information provided by or on behalf of the Company to Jefferies, investors or parties to a Transaction, or omission or alleged omission to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading or (b) otherwise, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that , in the case of the foregoing clause (b), the Company shall not be responsible for any Excluded Losses. "Excluded Losses" shall mean  Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company).

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except for Excluded Losses.

The Company agrees that it will not settle, facilitate any settlement of, or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations.  Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement.  Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the termination of the Agreement or completion of Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Schedule A, the Company will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Company set forth in this Schedule A, including the assumption of such

SCHEDULE A

obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Jefferies; provided, however, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this Schedule A has been made, the Company's obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.