1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                   HOUSTON DIVISION

4   IN RE:                    §     CASE NO. 22-90273-11
                              §     HOUSTON, TEXAS
5   COMPUTE NORTH HOLDINGS, INC., §
    AND CN MINING, LLC,        §     FRIDAY,
6                              §     OCTOBER 21, 2022
                   DEBTORS.    §     1:27 P.M. TO 2:03 P.M.
7

8                 **BID PROCEDURES ORDER**

9          BEFORE THE HONORABLE MARVIN ISGUR
              UNITED STATES BANKRUPTCY JUDGE
10

11

          APPEARANCES:                (SEE NEXT PAGE)
12

          CASE MANAGER:               TYLER LAWS
13

14

15

16

17      (Recorded via CourtSpeak; no logs notes available)

18

19

20              TRANSCRIPTION SERVICE BY:

21          JUDICIAL TRANSCRIBERS OF TEXAS, LLC
               935 Eldridge Road, #144
22              Sugar Land, TX 77478
                   281-277-5325
23              www.judicialtranscribers.com

24

    Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

1                          APPEARANCES:

2


3  FOR THE DEBTORS:              PAUL HASTINGS, LLP
                                 James T. Grogan, III, Esq.
4                                600 Travis Street
                                 58th Floor
5                                Houston, Texas  77002
                                 713-860-7300
6  FOR SUNBELT
   SOLOMON SERVICES:             MAYER BROWN, LLP
7                                Brandon Renken, Esq.
                                 700 Louisiana Street
8                                Suite 3400
                                 Houston, Texas  77002
9                                713-238-2602

10 FOR OFFICIAL COMMITTEE
   OF UNSECURED CREDITORS:       MCDERMOTT WILL & EMERY, LLP
11                               Charles R. Gibbs, Esq.
                                 2501 N Harwood Street
12                               Suite 1900
                                 Dallas, Texas  75201
13                               214-295-8063

14 FOR THE US TRUSTEE:           US TRUSTEE'S OFFICE
                                 Jayson B. Ruff, Esq.
15                               515 Rusk Street
                                 Suite 3516
16                               Houston, Texas  77002
                                 713-718-4650

17

18                     (ALSO APPEARING VIA ZOOM):

19 FOR TZ CAPITAL HOLDINGS:      HAYNES & BOONE, LLP
                                 Stephen M. Pezanosky, Esq.
20                               201 Main Street
                                 Suite 2200
21                               Fort Worth, Texas  76102
                                 817-347-6600
22

23 FOR THE DEBTORS:              PAUL HASTINGS, LLP
                                 Matthew Micheli, Esq.
24                               71 South Wacker Drive
                                 Suite 4500
25                               Chicago, Illinois   60606
                                 312-499-6018


                  JUDICIAL TRANSCRIBERS OF TEXAS, LLC

1                    <u>APPEARANCES (VIA ZOOM CONTINUED)</u>:

2

3    FOR MARATHON
     DIGITAL HOLDINGS:                WEIL GOTCHAL & MANGES, LLP
4                                     Jessica Liou, Esq.
                                      767 Fifth Avenue
5                                     New York, New York  10153
                                      212-310-8817
6

7    FOR GENERATE LENDING:           KIRKLAND & ELLIS, LLP
                                     Christopher Marcus, Esq.
8                                     601 Lexington Avenue
                                      New York, New York  10022
9                                     212-446-4878

10

11

12

13

14   (Please also see Electronic Appearances.)

15

16

17

18

19

20

21

22

23

24

25

1      **HOUSTON, TEXAS; FRIDAY, OCTOBER 21, 2022; 1:27 P.M.**

2           THE COURT:  All right.  We are here in the Compute

3    North Holdings case.  It's 22-90273.

4           Appearances have been made electronically.  If you

5    intend to speak at today's hearing, please come forward and

6    identify yourself, if you're in the courtroom, or press five

7    star if you're on the phone.

8           Mr. Grogan, good afternoon.

9           MR. GROGAN:  Good afternoon, Your Honor.

10          James Grogan from Paul Hastings, on behalf of

11   Compute North Holdings and its debtor affiliates.  With me

12   today is Mr. Matt Micheli.  Mr. Micheli is going to be

13   handling the discussion around the bid procedures Order.

14   Thank you.

15          THE COURT:  Thank you, Mr. Grogan.

16          Mr. Gibbs, good afternoon.

17          MR. GIBBS:  Good afternoon, Your Honor.  For the

18   Record, Chuck Gibbs at McDermott Will and Emery, proposed

19   counsel for the Official Committee.

20          THE COURT:  Thank you.

21          MR. RUFF:  Good afternoon, Your Honor.

22          Jayson Ruff for the US Trustee.

23          THE COURT:  Good afternoon, Mr. Ruff.

24          Mr. Pezanosky, good afternoon.

25          MR. RENKEN:  Good morning, Your Honor.

1          THE COURT:  I'm sorry, I didn't --

2          MR. RENKEN:  No, no, no, my apologies.

3          THE COURT:  I'm sorry, I wasn't --

4          MR. RENKEN:  Just out of abundance of caution,

5   Brandon Renken for Sunbelt Solomon, one of the creditors.

6          THE COURT:  Thank you, Mr. Renken.

7          MR. RENKEN:  Thank you, Your Honor.

8          THE COURT:  I'm sorry that I wasn't looking up.

9          MR. RENKEN:  My fault.

10          THE COURT:  Mr. Pezanosky?

11          MR. PEZANOSKY:  Your Honor, Stephen Pezanosky and

12   Ben Krausman (phonetic), Haynes and Boone, on behalf of

13   TZ Holdings Company, which is an affiliate of Mercuria

14   Energy Resources.

15          THE COURT:  Thank you.

16          Mr. Micheli?

17          MR. MICHELI:  Good afternoon, Your Honor.

18          Matt Micheli of Paul Hastings proposed counsel to

19   Compute North Holdings, Inc. and its affiliate debtors.

20          THE COURT:  Thank you.  Ms. Liou, good afternoon.

21          MS. LIOU:  (No verbal response).

22          MR. MICHELI:  If there's no one else, Your Honor,

23   I guess we can get started.

24          THE COURT:  No.  Ms. Liou was making an

25   appearance.

1              Go ahead, Ms. Liou.

2              MS. LIOU:  Yes.  I'm sorry.  Thank you,

3   Your Honor.  Jessica Liou from Weil Gotshal and Manges, here

4   on behalf of Marathon Digital Holdings, Inc.  Your Honor may

5   have noticed that we filed a notice of appearance and a

6   motion to substitute counsel.  We'll be taking over this

7   matter from Mr. Gregory Ellis and his firm.

8              Thank you, Ms. Liou.

9              I've got one more person that wants to appear.

10             Mr. Marcus, good afternoon.

11             MR. MARCUS:  Thank you, Your Honor.

12             Christopher Marcus from Kirkland and Ellis, on

13   behalf of Generate.

14             THE COURT:  Thank you.  All right.  Mr. Micheli?

15             MR. MICHELI:  Thank you, Your Honor.  Your Honor,

16   we're here, as Mr. Grogan noted, on our final order

17   approving certain sale and bidding procedures.  Earlier

18   today we filed an amended agenda, which appears at Docket

19   No. 223.  The bid procedures Motion is the only item up

20   today.

21             The amended agenda also reflects some additional

22   material that we filed.  Most notably earlier today we filed

23   a clean and redline version of the proposed form of Order

24   and that appears at Docket No. 222 and includes a clean and

25   two versions of redlines.  I know we filed it only a few

1   hours before the hearing so I'm not certain if the Court's

2   had a chance to review those changes, but we did include a

3   redline against the Order that was originally filed with the

4   Motion and we also filed a redline against the initial sales

5   procedure Order that was entered a couple of weeks ago.

6         The proposed form of Order tracks the original

7   filed version so it incorporates those items and those

8   procedures that were approved as part of the initial sale

9   procedures Order and we did that, Your Honor, to avoid

10  confusion of the parties looking to multiple orders to

11  figure out what the procedures were that were governing the

12  sale process.

13        By the way, let me -- over the last couple of days

14  and frankly during the last 24 hours, we I believe have

15  reached a resolution to all remaining issues and objections

16  that were filed in the cases.  You heard from some of the

17  counsel that are present today.

18        I'm sure they'll correct me if I'm wrong, but I

19  am -- I do believe that that revised form of Order reflects

20  the consensual form of Order that we're prepared to go

21  forward with today, Your Honor.

22        THE COURT:  So one of these issues I tried -- and

23  I did look through it, but I don't think I found what I was

24  looking for in one particular issue.  There are a couple of

25  objections that say both "We want to be a qualified bidder

1   or we want to be a credit bidder and we want to receive

2   inside information." We talked about this, I think, some at

3   the last hearing.

4           How does the Order reconcile that no bidder,

5   whether they're a credit bidder or a qualified bidder, can

6   both receive information and then be a bidder? They can be

7   bidder, drop out of being a bidder and then get insider

8   information, but they can never get insider information and

9   subsequently bid. So how is that reconciled in the proposed

10  Order?

11          MR. MICHELI: So in the bid procedures themselves,

12  Your Honor -- and I'm looking at Docket Entry 222-2,

13  which -- this is the --

14          THE COURT: Okay.

15          MR. MICHELI: -- redline version against the

16  original filed Order. On page 16 of those bid procedures or

17  I guess page 100 of 150 of the cumulative filed document --

18          THE COURT: Hold on. My 222-2 only has 49 pages.

19          MR. MICHELI: I'm on page 48 of 49.

20          THE COURT: Great.

21          MR. MICHELI: Sorry.

22          THE COURT: No. Okay. I'm on 48 of 49.

23          MR. MICHELI: So we added the paragraph,

24  Your Honor, at the bottom to address this issue.

25          THE COURT: I don't --

1          MR. MICHELI:  So they're not entitled to be --

2          THE COURT:  I don't know what that means.

3          MR. MICHELI:  Okay.

4          THE COURT:  I guess I better look at the complex

5   case procedures to see just what we said there on this issue

6   because I don't have it memorized.

7          MR. MICHELI:  I did look at them.  I will pull

8   them up as well, Your Honor, to make sure we're clear, but

9   the intent, Your Honor, is that parties that are

10  consultation parties and receive information about other

11  bidders are prohibited from becoming a bidder.

12         And as you'll see in the redline, we added

13  TZ Capital Holdings, LLC and they're aware of that -- they

14  were aware of that restriction.  We had this discussion with

15  them and they understand that by becoming a consultation

16  party, they are giving up their right to be a bidder.

17         THE COURT:  I thought that you said in your

18  proposed Order that they reserved all of their rights to

19  object to everything and that that was going to be okay with

20  you.

21         MR. MICHELI:  We did say, Your Honor, we provided

22  them -- that they reserved the right to object to the sale

23  process as it has been conducted by the Debtors and that

24  appears at paragraph 45.

25         THE COURT:  Does that include the right to object

1  to this, i.e., can they come in, get inside information and

2  then bid?

3          MR. MICHELI:  I don't believe it does, Your Honor,

4  and I guess counsel to TZCH can weigh in on this, but that

5  was not our intent.

6          MR. PEZANOSKY:  Your Honor, I hope I'm unmuted.

7          THE COURT:  You are, you're unmuted.

8          MR. PEZANOSKY:  Your Honor, Steve Pezanosky, on

9  behalf of TZ Capital Holdings.  We do understand that if we

10  elect to be a consultation party, that we are going to be

11  prohibited from bidding and we decided not to be a bidder so

12  we're fine with that.

13          THE COURT:  All right.  I want to go back and read

14  the complex rules on this question.

15          MR. MICHELI:  Yeah.  It appears in paragraph 37 of

16  the complex rules, Your Honor.

17      (Pause in the proceedings.)

18          THE COURT:  Yeah, that's not adequate because that

19  only applies to secured lenders and to committee members.  I

20  want anyone who gets inside information, whether they are a

21  secured lender or a committee member, no one can both -- I

22  don't know why we can't say it in plain English is that once

23  someone receives inside information, they may not in the

24  future become a bidder.

25          Can we just say that?

1          MR. MICHELI:  Yes, we can, Your Honor.

2          THE COURT:  Okay.  So let me hear from others

3  about the relief that is sought.  We'll start with the

4  Committee.

5          Mr. Gibbs?

6          MR. GIBBS:  Good afternoon again, Your Honor.

7          Chuck Gibbs with McDermott Will and Emery, on

8  behalf of proposed counsel for the Committee.  On the last

9  point you just raised and that was addressed by Debtors'

10  counsel I wanted the Court to be aware that we have a five-

11  member committee.  Two of those committee members have

12  indicated an interest in bidding on assets and have been --

13  I think they've now signed NDAs and are evaluating

14  information in the data room.

15          Once we learned that that happened and luckily

16  prior to those actions, those committee members had not

17  received any inside information regarding the sale efforts

18  or information they've gleaned from the Debtors and their

19  advisors.  And in the meeting subsequent to that

20  acknowledgement, they've been excused for any conversations

21  and deliberations about what's going on.

22          THE COURT:  Thank you for doing that.  I think

23  that's got to be the appropriate way for you to handle it

24  and I appreciate that.

25          MR. GIBBS:  Yeah.

1          THE COURT:  What do you think the concept of this

2    is me sort of forcing this issue on everyone?  Do you have

3    any problem with forcing it and saying you can't -- I don't

4    know that you're ever going to be in a fair bidding process

5    if some of the bidders have inside information, some don't

6    and that's why I'm just being sure that we attract as many

7    bidders as possible, but what is the Committee's view about

8    that?

9          MR. GIBBS:  We are completely aligned with the

10   concerns Your Honor raised and the position you suggested

11   needs to be clearly stated.  We want everybody that wants to

12   get in will be considered -- a good consideration making a

13   bid to get in and get all the information they can as

14   quickly as possible to try to formulate a bid that would be

15   qualified.

16         And to the extent that anybody is asking for

17   consultation rights or any other kind of information rights

18   about the process, they simply can't get in.  I've seen too

19   many instances where the playing field gets unleveled

20   because of that.

21         THE COURT:  What about the rest of the proposed

22   form of Order that was filed in redline form?

23         MR. GIBBS:  We're fine with it, Your Honor.  We

24   reviewed the final changes -- well, the first round of

25   changes since the last hearing as well as the changes that

1   were incorporated and filed earlier today.

2          There was a separate discussion between committee

3   counsel and the Debtor regarding an extension of the

4   deadline for parties that receive notices of assumption to

5   file their response.  It was originally requiring a response

6   by August -- excuse me -- October 25 and that's now been

7   extended to November 1.

8          The Debtors' Motion regarding assumption notice

9   was 135 pages long.  Probably each page had 10 parties with

10  contracts.  The members of the Committee that received those

11  notices were telling us they were having a hard time

12  reconciling contract numbers versus parties and what exact

13  contracts the Debtor was proposing and they simply needed

14  more time.  And we assume, I think correctly, that those

15  same problems were being run into by other creditors that

16  received those notices so we reached out to the Debtor and

17  they accommodated and extended that deadline.  The rest of

18  the Order we are fine with.

19          And that sort of leads to maybe my overall

20  comments to the Court on where we find ourselves.  We worked

21  really diligently since we were retained as has Miller

22  Buckfire, proposed advisors to the Committee.  We're trying

23  to get up to speed and get knowledgeable both about the

24  status of the sale process, the extent of the interest, the

25  extent of the negotiations as well as the efforts to try to

1   find DIP financing.

2            We've also spent a lot of time scrubbing and

3   pressure testing the 13-week budget that the Debtors'

4   advisors have put together to see if we could figure out a

5   way to cut costs and therefore extend the potential runway

6   to get bids.

7            Unfortunately given the sort of inherent pressure

8   between trying to cut costs and trying to preserve a going

9   concern value, there's just not a lot on the very short-term

10  basis that the Debtor, we think, can cut that would

11  effectively give them the ability to extend the runway.

12           And that coupled with the insights that we have

13  gained about the status of the process we reluctantly don't

14  feel it'd be fiscally prudent to ask the Court to order them

15  to give us a longer runway.  I don't think -- we should

16  never risk administrative insolvency by extending the

17  process beyond what their budget looks like.  They can

18  afford keeping the Debtor going as a going concern so we're

19  supportive of that.

20           THE COURT:  I appreciate very much that adult

21  approach taken by the Committee.

22           MR. GIBBS:  So we're not opposing and -- but we

23  do, for the Record, want and frankly expect that the Debtor

24  will continue its efforts to cut costs everywhere they can

25  and to continue to look under any rock to find some

1   immediate sources of liquidity, which may give them the

2   opportunity to extend the current deadline for bids which is

3   next week.  So generally speaking more time is always

4   better.  This is a very short timeline.  We would have loved

5   to have 60 days not 35, but we're comfortable with where the

6   process is and we think it's being conducted thoroughly and

7   successfully so we'll see what the bids looks like on the

8   27th.

9           THE COURT:  Okay.  Before you leave, I want to

10   talk about two paragraphs.  I've got Mr. Pezanosky, who I

11   hope I can have him join in with the Committee and the

12   Debtor on this as well, and this is without limiting any

13   other party's right to object to anything.  I just want to

14   get a couple of things squared away here --

15           MR. GIBBS:  All right.

16           THE COURT:  -- before we go much further.  I want

17   to go down to paragraph 45.

18           Assuming that I understood you correctly,

19   Mr. Pezanosky, and -- here it is, paragraph 48.  I am not

20   trying to change what I heard you say, Mr. Pezanosky.  I

21   think I just want to rewrite this a little bit and if I am

22   doing injury to your deal, I hope that you will speak up and

23   let me know.

24           But I think what you're telling me is is that

25   paragraph 48 doesn't deal with reserving rights with respect

1   to the Order, but reserves rights with respect to whether

2   people carry out the Order, i.e., does the sale process

3   occur in the manner in which we are ordering it?  But that

4   you're not trying to reserve rights if the sale process is

5   carried out in the way that we order it as to whether that

6   is appropriate.  And I want to be sure I heard you right.

7          MR. PEZANOSKY:  Your Honor, a little bit different

8   than that, but our concern is that the Debtor that are a

9   joint venture partner with, which is CN member, has certain

10  obligations under our LLC Agreement including

11  confidentiality obligations under that LLC Agreement.  And

12  there was a provision in this Order which effectively would

13  isolate them from any violations of those confidentiality

14  obligations within that LLC Agreement.

15         This paragraph, this sentence, was effectively

16  negotiated to be put in there to -- obviously the Debtors

17  don't believe that they've done anything wrong and our --

18  and it may be that they haven't or it may be that even if

19  they have, it doesn't matter, but this sentence I think in

20  this paragraph was designed to reserve all of our rights

21  with respect to that so that the sentence in the paragraph

22  (indiscernible) effectively exculpated from providing the

23  information to potential bidders does not trump this

24  section.

25         That being said -- again I will reiterate -- we do

1  understand the prohibition between getting -- being a

2  consultation party and being a bidder and we chose not to be

3  a bidder and we understand that.  We would choose to be a

4  consultation party as a secured creditor with respect to

5  that membership interest.

6          THE COURT:  Yeah, so maybe then there is an issue.

7  Let's assume that they follow this Order and we get down to

8  a sale hearing and there is a high bidder.

9          Are you reserving the right to come back and

10  challenge -- and everybody agrees it's the high bidder, you

11  even agree it's the high bidder, so everyone agrees they're

12  the high bidder.  Are you reserving the right to challenge

13  whether the sale can then occur to the high bidder or are

14  you reserving the right for other things?

15          MR. PEZANOSKY:  I'm reserving the right -- well,

16  two things, Your Honor.   Number one, I'm reserving the

17  right to assert claims against the Debtor to the extent we

18  are injured by virtue of their filing their confidentiality

19  agreements post-petition and the LLC Agreement.  That's the

20  first reservation of rights.

21          Second -- and this is not up for today, but we

22  would intend to file an objection to the sale to tee this

23  issue up, but we have a right under the LLC Agreement to

24  consent to who are joint venture partner is going to be so

25  we have a consent right with respect to the sale.

1          We're not asking the Court to rule on whether or

2     not that consent right is enforceable today or not.  We

3     believe it is.  We'll take that up in connection with the

4     sale.  And we are reserving the right to take that issue up

5     later as well.

6          THE COURT:  So I'll hear from others.  I actually

7     can live with those two reservations so long as there aren't

8     more than I don't know about, and I would want paragraph 48

9     to reserve those two.  Let me hear from others about whether

10    it's okay with -- and it may be okay with everybody to just

11    say you can come in later and object to the whole process,

12    but this is a very broad reservation.

13         If we're in the urgent situation that Mr. Gibbs is

14    describing, I don't want to get to the end and then have

15    other objections that -- I've got no problem you're trying

16    to reserve, but I may have a problem letting you reserve,

17    but I may want to get them cleared up now.  But again those

18    two I'm okay leaving if others are.

19         MR. GIBBS:  I frankly like your suggestion better

20    than what the Order currently says, but we understood what

21    paragraphs 48 and 49 to do was to give Mr. Pezanosky's

22    client the reservation of their rights to complain, as he's

23    described, and nothing more.

24         And to the extent that they have a specific

25    complaint about a bidder that's been designated as the

1  highest bidder based upon some elimination of what they

2  assert to be consent rights, that they have the right to

3  come complain to the Court at the sale hearing about that

4  and the sale process is not affecting their rights to urge

5  that position.  We were okay with that.

6         THE COURT:  Let me ask Mr. Micheli and let me ask

7  Mr. Pezanosky.

8         MR. MICHELI:  Yes, Your Honor.  So as

9  Mr. Pezanosky described, that's what we understood to be

10 their reservation of rights.

11        And I think just for clarification, there are two

12 reservation of rights in here.  The first one with respect

13 to Mr. Pezanosky's client appears at the end of paragraph 9

14 and this is the paragraph that they took specific issue with

15 regarding confidentiality information.  And so it starts

16 with "Provided further" at the end of that paragraph 9

17 unless -- and I apologize.  I think the -- going to the

18 clean version, Your Honor, I think that a redline has

19 some -- paragraph number issues.

20        THE COURT:  I thought this was the clean version

21 that I was in.

22        MR. MICHELI:  You are.  I was looking at a redline

23 and I gave you the wrong -- it's paragraph 12.  My

24 apologies.

25        THE COURT:  Not a problem.

1          MR. MICHELI:  The end of paragraph 12 starting

2     with the provided language was added to address the

3     confidentiality concerns that Mr. Pezanosky raised.

4          THE COURT:  Right.

5          MR. MICHELI:  And the paragraph 48, if I'm not

6     mistaken, was -- that language was actually included in the

7     interim form of Order.  And to make matters more confusing,

8     in the interim form of Order, we deleted paragraph -- what

9     was then paragraph 12 because it wasn't applicable to the

10    relief that was being granted.

11         So we -- but we have spoken with Mr. Pezanosky and

12    we agree that this Order is not intended to do anything to

13    impact his rights as they may be with respect to consent or

14    other issues under the terms of the Limited Liability

15    Company Agreement, Your Honor.

16         THE COURT:  So I've got consent, I've

17    confidentiality.  It sounds like you don't have any problem

18    with that.  Mr. Gibbs doesn't.

19         Mr. Pezanosky, do you have any problem defining 48

20    to that so that we know what we're dealing with?

21         MR. PEZANOSKY:  Not at all.  That's completely

22    fine with us, Your Honor.

23         THE COURT:  That's great.  Thank you.

24         Then let's, Mr. Micheli, get you to revise 48 in a

25    manner that Mr. Pezanosky can agree to the language on, get

1  Mr. Gibbs to sign off on it so that 48 is dealing with those

2  two issues and they will, in fact, be preserved.

3         So let me hear from others, not only on those

4  issues but on any other issues with respect to the proposed

5  form of Order.  I will start with Mr. Ruff.

6         Mr. Ruff, what's the US Trustee's position of

7  moving pretty fast to get a sale done.

8         MR. RUFF:  Your Honor, I think just given the

9  economic realities of this case, I think what is laid out

10  here is a fair and as robust of a process as I could hope

11  for.

12         One of the concerns that we -- that was addressed

13  that we raised with the Debtors here, which is the timeline

14  for the *de minimis* sales, as you can see in this Order, it

15  was extended just by a day.  Because we're dealing with

16  calendar days here and just the concern if we ran into a

17  holiday weekend or something along those timelines that it

18  would still give people reasonable notice.  We're grateful

19  for the Court's comments and the Debtors' agreement to

20  incorporate those.  But with those changes, Your Honor, I

21  think this process is fair and probably the best process

22  that we can have given the facts and circumstances of this

23  case.

24         THE COURT:  Thank you.  Ms. Liou?

25         MS. LIOU:  Your Honor, I think we are fine with

1  everything that's been discussed and the changes in the

2  Order.  We would only ask that we see copy of the revised

3  Order before it ultimately is filed with the Court.

4          THE COURT:  Thank you.  Anyone else?

5      (No verbal response.)

6          THE COURT:  All right.

7          MR. MARCUS:  Your Honor, this is Mr. Marcus.

8          THE COURT:  I'm sorry, go ahead, Mr. Marcus.

9          MR. MARCUS:  Yeah.  Can you hear me okay,

10 Your Honor?

11         THE COURT:  Yes, sir.  Thank you.

12         MR. MARCUS:  I just want to ask for a

13 clarification and it relates to Your Honor's comments about

14 the -- you can't be a consultation party and a bidder, which

15 I totally understand.  We are a bidder, Generate is a bidder

16 and so we're okay not being a consultation party, but there

17 were some comments made and I really just want to be

18 transparent about this.

19         Given the structure of the ownership of each silos

20 and we'll call them "Kearney" silo -- remember that's

21 CN Pledgor -- we, as the Debtor, hold the equity of several

22 entities below and there's 100 plus (indiscernible) entities

23 below or there could be a situation where bidders need to

24 have conversations with the lender down at those silos in

25 order to have some -- in order to put a different type of

1  bid in and I wouldn't want to --

2        THE COURT:  Right.  Yeah, I'm familiar with the

3  problem in other cases, Mr. Marcus.  I would like to hear

4  from everyone else, but in general it seems to me that if a

5  bidder chooses to contact your client as a potential lender,

6  that you're not then receiving any inside information from

7  the Debtor, you're receiving it from a bidder and I don't

8  think I have any problem with that, but I need to hear from

9  others who --

10        MR. MARCUS:  Just to be clear, Your Honor, we

11  would not talk to another bidder without the consent of the

12  Debtor and without full transparency to the Debtor and the

13  Committee.  We will not do that.

14        The question is more about with the consent and

15  with that transparency, I just want to make sure -- look

16  this is really an issue for the Debtors, right?  If the

17  Debtors decide that (indiscernible) would be maximized by

18  allowing us to have those conversations -- I've certainly

19  seen that before -- we're ready to do it.  I don't want to

20  do anything that would run afoul of the language in this

21  Order, that's all.

22        THE COURT:  Yeah.  No, look I think, Mr. Marcus,

23  what I'm trying to say is -- and I agree that it's got to be

24  a process where the Debtors give authority to another bidder

25  to contact you.  I don't have a problem with that and I

1  don't have a problem with another bidder contacting you.

2  The Debtors don't give you inside information.  The Debtors

3  consent to another bidder given you whatever information the

4  other bidder wants to give you.  If the other bidder chooses

5  to share information with you to try and get you to provide

6  debt to them for their bid or some other feature that you

7  might be negotiating with them, I have no heartburn from

8  that because that doesn't seem to me to impair other bidders

9  in any different sense than they would be in an open

10 marketplace outside of bankruptcy.

11       The problem with doing it in bankruptcy when we're

12 requiring the provision of insider information, for example,

13 if your client was not a bidder, they would get a whole lot

14 more information as a consultation party and that wouldn't

15 occur outside.  So I don't have a problem with what you're

16 describing.

17       But we ought to make it clear when you write that

18 provision, Mr. Micheli, and replace the paragraph for that

19 unless you have a problem with what Mr. Marcus is

20 describing.

21       MR. MICHELI:  Thank you, Your Honor.  I don't.  I

22 think we can make it clear that it's information that is

23 provided by the Debtors to those parties and we can clarify

24 that language to make sure that there's no issue there.

25       And we also have language throughout the -- in the

1   bid procedures that allow the Debtors to put bidders

2   together to either combine bids or to have discussions

3   surrounding that, but the Debtors will facilitate that.  So

4   I think that given those provisions, we do not have an issue

5   with it.

6          THE COURT:  All right.  So let's be sure that we

7   have Mr. Marcus sign off on this revised language as well.

8          Mr. Gibbs, I see you nodding your head.  I don't

9   know that other people do.  You sound like -- you look like

10  you're okay with this, right?

11         MR. GIBBS:  I was nodding my head being I'm okay

12  with it.

13         THE COURT:  Thank you.  All right.  What other

14  issues should we address today?

15      (No verbal response.)

16         THE COURT:  All right.  I am authorizing ECF 222

17  with the changes that have been discussed on the Record,

18  will be signed by the Court once submitted, but I'm

19  authorizing that the Debtors and others can perform under

20  222 now as amended orally on the Record so that we don't

21  have any delay in the implementation of it.

22         And hopefully, Mr. Micheli, you'll get that done

23  later today or first thing Monday and I may not get it

24  signed until Monday or something, but you can act on it

25  immediately.

1          Does that work?

2          MR. MICHELI:  Thank you, Your Honor.  One point --

3    that does work for the Debtors, Your Honor, and I think we

4    can quickly resolve these issues.  One point I did want to

5    raise with the Court, we have a proposed sale hearing date

6    in the form of Order for November 8th with -- we presumed

7    the Court's availability there and I want to confirm before

8    we enter the final form of Order that that is -- that that

9    date is available and we can lock in the time for that.  And

10   that appears, I believe, in paragraph 42.

11         THE COURT:  It may not work actually.

12         What time did you need your hearing?

13         MR. MICHELI:  We didn't have a time, Your Honor.

14   The day I think was more important than the time for the

15   Debtors but.

16         THE COURT:  Well, let me just see.

17      (Pause in the proceedings.)

18         THE COURT:  How long would you expect to need for

19   that hearing?  I'm not going to hold you to this, but I

20   just -- I've got an afternoon doctor's appointment and an

21   afternoon fight and so I'm trying to figure out what to do

22   about you.

23         MR. MICHELI:  So I'm hopeful, Your Honor, that we

24   can work to get to a consensual hearing on that.  I think if

25   we had an hour to an hour and a half, we should be able to

1  do that.  It's a little hard to tell at this point.

2          MR. GROGAN:  Your Honor, if it was helpful,

3  November 7th, November 9th, we can be a little flexible on

4  that.  It doesn't have to be the 8th.

5          THE COURT:  Okay.

6      (Pause/voices off record.)

7          MR. GROGAN:  I think we already -- we actually

8  already have something on the 7th, Your Honor.

9          THE COURT:  You do, but it's very short.

10          MR. GROGAN:  Yeah, at 9:00 a.m.

11          THE COURT:  Let's go ahead and calendar it for the

12  7th at 9:00 a.m. and I'll -- you may have an interruption or

13  two, but I don't think it'll be bad.

14          MR. GROGAN:  Okay.

15          THE COURT:  Will that work?  Does anyone have a

16  conflict on the 7th at 9:00 a.m. for the hearing?

17          MR. GIBBS:  That's fine with the Committee,

18  Your Honor.

19          THE COURT:  Other choice is 8:00 a.m.

20          MR. GIBBS:  Pardon?

21          THE COURT:  There's also an 8:00 a.m. choice if

22  you'd prefer.

23          MR. GIBBS:  That'd be fine.

24          MR. GROGAN:  I think 9:00 a.m. is fine,

25  Your Honor.

1          THE COURT:  Okay.

2          MR. GROGAN:  Okay.

3          THE COURT:  November 7th, 9:00 a.m.  There may be

4  some interruptions as we move through the morning, but we'll

5  get you finished that way.

6          MR. GROGAN:  All right.

7          MR. GIBBS:  Thank you, Judge.

8          THE COURT:  Thank you.  Anything else I can --

9          MR. MICHELI:  Thank you, Your Honor.

10          THE COURT:  Anything else I need to get done?

11     (No verbal response.)

12          THE COURT:  All right.

13          MR. MICHELI:  Your Honor, I believe that those

14  were all the issues for the hearing today.

15          THE COURT:  I appreciate all the hard work.  I

16  look forward to getting an order submitted, Mr. Micheli.

17  Thank you.

18     (Counsel thank the Court.)

19     (Hearing adjourned at 2:03 p.m.)

20

21

22

23

24

25                    *  *  *  *  *

1          I certify that the foregoing is a correct

2   transcript to the best of my ability due to the condition of

3   the electronic sound recording of the ZOOM/video/telephonic

4   proceedings in the above-entitled matter.

5   /S/ MARY D. HENRY

6   CERTIFIED BY THE AMERICAN ASSOCIATION OF

7   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

8   JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9   JTT TRANSCRIPT #66464

10  DATE FILED:  OCTOBER 25, 2022

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25