<pre>
 1                  IN THE UNITED STATES BANKRUPTCY COURT

 2                 FOR THE SOUTHERN DISTRICT OF TEXAS

 3                          HOUSTON DIVISION

 4   IN RE:                     §    CASE NO. 22-90273-11
                                §    HOUSTON, TEXAS
 5   COMPUTE NORTH HOLDINGS, INC., §
     AND CN MINING, LLC,         §    MONDAY,
 6                               §    OCTOBER 24, 2022
                 DEBTORS.        §    1:29 P.M. TO 2:01 P.M.
 7

 8                  MOTIONS HEARING (VIA ZOOM)

 9             BEFORE THE HONORABLE MARVIN ISGUR
                UNITED STATES BANKRUPTCY JUDGE
10

11

12      APPEARANCES:                    (SEE NEXT PAGE)

13      CASE MANAGER:                   TYLER LAWS

14

15

16

17        (Recorded via CourtSpeak; no logs notes.)

18

19

20              TRANSCRIPTION SERVICE BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22              Sugar Land, TX 77478
                   281-277-5325
23            www.judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.
</pre>

```
 1                        APPEARANCES:

 2

 3   FOR THE DEBTORS:              PAUL HASTINGS, LLP
                                   James T. Grogan, III, Esq.
 4                                 600 Travis Street
                                   58th Floor
 5                                 Houston, Texas  77002
                                   713-860-7300
 6

 7                      APPEARING (VIA ZOOM):

 8

 9   FOR OFFICIAL COMMITTEE
     OF UNSECURED CREDITORS:       MCDERMOTT WILL & EMERY, LLP
10                                 Charles R. Gibbs, Esq.
                                   2501 N Harwood Street
11                                 Suite 1900
                                   Dallas, Texas  75201
12                                 214-295-8063

13                                 MCDERMOTT WILL & EMERY, LLP
                                   Kristin K. Going, Esq.
14                                 One Vanderbilt Ave.
                                   New York, New York  10017
15                                 212-547-5430

16

17   FOR THE US TRUSTEE:          US TRUSTEE'S OFFICE
                                   Jayson B. Ruff, Esq.
18                                 515 Rusk Street
                                   Suite 3516
19                                 Houston, Texas  77002
                                   713-718-4650
20

21   FOR THE DEBTORS:             PAUL HASTINGS, LLP
                                   Matthew Micheli, Esq.
22                                 71 South Wacker Drive
                                   Suite 4500
23                                 Chicago, Illinois   60606
                                   312-499-6018
24

25
```

1                          APPEARING (VIA ZOOM):

2

3    FOR GENERATE LENDING:          KIRKLAND & ELLIS, LLP
                                    Christopher Marcus, Esq.
4                                   601 Lexington Avenue
                                    New York, New York  10022
5                                   212-446-4878

6

7    FOR JEFFERIES:                 SIDLEY AUSTIN, LLP
                                    Ryan Fink, Esq.
8                                   One South Dearborn
                                    Chicago, Illinois  60603
9                                   312-853-7000

10

11

12   (Please also see Electronic Appearances.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **HOUSTON, TEXAS; MONDAY, OCTOBER 24, 2022; 1:29 P.M.**

2        THE COURT:  All right.  Good afternoon.  We are

3 here in the Compute North Holdings case.  It is 22-90273,

4 and we only have one participant, Mr. Grogan, here in the

5 courtroom.  We'll start with him.

6        If anyone wishes to speak at today's hearing, it

7 is remote, would you please press five star one time on your

8 phone?

9        Mr. Grogan, good afternoon.

10        MR. GROGAN:  Good afternoon, Your Honor.  James

11 Grogan from Paul Hastings, here as proposed counsel to

12 Compute North and its Debtor affiliates.

13        THE COURT:  Thank you, Mr. Grogan.

14        Mr. Marcus, good afternoon.

15        MR. MARCUS:  Good afternoon, Your Honor.

16 Christopher Marcus from Kirkland & Ellis on behalf of

17 Generate.

18        THE COURT:  Good afternoon.

19        Mr. Micheli?

20        MR. MICHELI:  Good afternoon, Your Honor.  Matt

21 Micheli on behalf of the Debtors.

22        THE COURT:  Good afternoon.

23        Mr. Ruff?

24        MR. RUFF:  Good afternoon, Your Honor.  Jayson

25 Ruff from the US Trustee's Office.

1          THE COURT:  Good afternoon.

2          Mr. Gibbs?

3          MR. GIBBS:  Good afternoon, Your Honor.  Chuck

4   Gibbs with McDermott Will & Emery, proposed counsel for the

5   Committee.  With me is my partner, Kristin Going.

6          THE COURT:  Thank you.

7          Anyone else that wishes to participate, I believe

8   has already done an electronic appearance, which is fine.

9   If there is anyone else that wishes to be authorized to

10  speak right now, you will still need to press five star,

11  although you can do that if something comes up that you need

12  to talk about in a minute.

13     (Pause in the proceedings.)

14          THE COURT:  All right.  Mr. Grogan, it's a boring

15  Agenda.  Why don't you go ahead?

16          MR. GROGAN:  So actually I was going to suggest

17  that it may not be quite as boring as it was originally

18  because literally three minutes before the hearing started,

19  we did file a Stipulation and Agreed Order, which I'd like

20  to visit at the end of this hearing.

21          THE COURT:  I haven't seen -- I have not seen

22  whatever that is.

23          MR. GROGAN:  And I understand the Court has not

24  read it, but it will be a good -- you know, it's a good

25  development.  It has to do with, you know, facilitating our

1  sale process and in particular how it relates to the

2  divestiture of the Generate Silo and it's an agreement

3  between us and Generate over funding on a go-forward basis.

4          But we'll cover that at the end.

5          Mr. Micheli is going to handle the more mundane

6  second day matters, including the retention applications and

7  interim compensation.

8          Thank you, Your Honor.

9          THE COURT:  Thank you.

10          Mr. Micheli?

11          MR. MICHELI:  Thank you, Your Honor.  Again, Matt

12  Micheli, Paul Hastings, on behalf of the Debtors.

13          We did file an Amended Agenda earlier today and

14  I'll note that there's been one change since we filed that

15  Agenda, which I'll cover when we get there, but I'd like to

16  proceed in accordance with the Agenda, if that pleases the

17  Court?

18          THE COURT:  Of course.

19          MR. MICHELI:  So the first matter up today is the

20  continued Cash Management Motion that was originally filed

21  at Docket No. 19 on the First day in these cases.  An

22  Interim Order was also entered, and appeared at Docket

23  No. 84.

24          And then, Your Honor, we did yesterday submit an

25  Amended Form of Interim Order, which appears at Docket

1  No. 232.  There are some changes in that Order that are

2  based upon comments that we received from the Debtors' main

3  banking partner, BMO.  We were able to make those changes

4  and accommodate BMO's issues, which again is reflected in

5  Docket No. 232 and then the redlines associated with it.

6          The US Trustee was given an opportunity to review

7  and then signed off on those changes as well.

8          I'm happy to walk the Court through those changes

9  and explain what was there, if that would be helpful?

10      THE COURT:  I'm going to leave it up to you what

11  you want to do.  I was able to read stuff this morning

12  before I came out, but it's up to you.  You can present this

13  if you think you need to.

14      MR. MICHELI:  I think, Your Honor, if you've been

15  handed -- if you've had the chance to read it, I think that

16  we would request that the Order be entered with the changes

17  from -- the changes requested by BMO.

18      THE COURT:  All right.  Let me hear from anyone

19  that has any objections to the Order that was filed at

20  ECF 232.

21    (No audible response.)

22      THE COURT:  Do you want to put on any evidence in

23  support of any of these, or do you want to just rely on your

24  First Day pleadings?  How are you planning to do that,

25  Mr. Micheli?

1          MR. MICHELI:  Your Honor, we would propose to rely

2     on the First Day pleadings and the First Day Declaration

3     that was supported -- excuse me, that supported our First

4     Day pleadings with the Declaration of Mr. Harold Coulby, who

5     is in the courtroom today and we could -- we would submit

6     that in support of this Cash Management Motion.

7          THE COURT:  Anyone objecting to the admission of

8     Mr. Coulby's Declaration for all purposes for today's

9     hearing only?

10         (No audible response.)

11         THE COURT:  All right.  It is admitted.  I'm going

12    to sign this Order -- I'm sorry, go ahead.

13         MR. GIBBS:  Your Honor?

14         THE COURT:  Yes, go ahead, please.

15         MR. GIBBS:  This is Chuck Gibbs for the Committee.

16         We have no objection to this Declaration for being

17    used for all the motions that were set.  To the extent it's

18    being used for a Stipulation that Mr. Grogan mentioned, I'm

19    not sure I'm in a position to consent to that.

20         THE COURT:  Yeah, I'm just going to take it then,

21    given your clarification, as evidentiary support for the

22    matters that were on today's Agenda only.  And then if

23    something else comes up, it can be reoffered for that

24    purpose.

25         Will that work for you?

1          MR. GIBBS:  Absolutely, Judge.  Thank you.

2          THE COURT:  Thank you.

3          All right.  I have signed 232.  Let me get it to

4   docketing.

5      (Pause in the proceedings.)

6          THE COURT:  232 has been sent to docketing.

7          Where do you want to go next?

8          MR. MICHELI:  Thank you, Your Honor.

9          The next item on the Agenda is Debtors'

10  application to retain certain professionals in the ordinary

11  course of business.  This motion appeared originally at

12  Docket No. 121.  We did receive some comments from the US

13  Trustee, which we incorporated into a revised Form of Order

14  that was filed yesterday at Docket No. 233.

15          Those comments were certain clarifying procedural

16  comments to address some issues raised by the US Trustee.

17  The Debtors were planning on incorporating those.  The

18  material issues were providing some additional time for

19  parties to object from 10 to 14 days and also including some

20  case caps with respect to the professionals.  So we have two

21  tiers of professionals with respect to this pleading:  Tier

22  One OCP, which is estimated to be about $75,000 a month and

23  a Tier Two OCP, which is estimated to be $25,000 a month.

24          The US Trustee asked that we incorporate a case

25  cap for Tier One ordinary course professionals at $950,000

1 | and Tier Two at $350,000.

2 |       These changes were acceptable, Your Honor, and are

3 | reflected in the revised Form of Order that appears at

4 | Docket No. 233.

5 |       THE COURT:  Do we have any objection to the

6 | issuance of 233?

7 |    (No audible response.)

8 |       THE COURT:  All right.  I've reviewed 233.  This

9 | is in support of a motion that was filed at First Day.  No

10 | objections have been filed.  It's supported by the

11 | Declarations.

12 |       I've signed the Order.  233 will be sent to

13 | docketing.

14 |       What you got next?

15 |       MR. MICHELI:  Thank you, Your Honor.

16 |       The next pleading is the Debtors' motion for

17 | interim compensation procedures for professionals.  We did

18 | receive -- we filed a motion, which appeared at Docket

19 | No. 122.  We did receive comments from the United States

20 | Trustee and from the Official Committee.  And those changes

21 | were incorporated into a revised Form of Order that we filed

22 | yesterday at Docket No. 234.

23 |       The changes were some clarifying language giving

24 | all parties an opportunity to object, not just the notice

25 | parties, and clarifying the procedures' compliance with the

1  complex case procedures and specifying certain dates by

2  which interim fee applications can be filed.

3          THE COURT:  All right.  Are there any outstanding

4  objections again to granting this First Day Motion to which

5  no objection has been filed?

6      (No audible response.)

7          THE COURT:  All right.  Based on the Declaration

8  that we've already admitted, I have signed the Order without

9  objection.  234 --

10          MR. MICHELI:  Thank you, Your Honor.

11          THE COURT:  -- we'll send that to docketing.

12          MR. MICHELI:  Thank you.

13          Your Honor, the next three items up are the

14  retention applications for Portage Point, Paul Hastings, and

15  Jefferies.  We'll start with --

16          THE COURT:  Yeah, let me interrupt -- let me

17  interrupt you just for a minute to tell my staff that for

18  whatever reason, I'm sending this to Work Group, rather than

19  directly to docketing.  So you'll find it over in Work

20  Group.

21          Sorry, just wanted to be sure they could find it.

22          Okay.  Go ahead, next?

23          MR. MICHELI:  Yes, the next item is the retention

24  application for Portage Point Partners.  The application

25  appears at Docket No. 123.  Portage Point is where the

1  Debtors are requesting that Portage Point be retained as a

2  financial advisor to the Debtors in these cases.  We did

3  receive some informal comments from the Office of the United

4  States Trustee.  I think it was one comment, which was

5  incorporated into the Form of Order that we filed yesterday,

6  which appears at Docket No. 235.

7          And with that change, Your Honor, we request that

8  the application be granted.

9          THE COURT:  Any objection to 235, the retention of

10 Portage?

11     (No audible response.)

12         THE COURT:  All right.  There is no objection.

13 Debtor is going to authorize Portage to be -- the Court will

14 authorize the Debtor to retain Portage, excuse me.

15         I've signed the Order.

16         MR. MICHELI:  Thank you, Your Honor.

17         THE COURT:  Let me just see if that's going to

18 work.  And I've sent that directly to docketing.  Okay?

19         And then we have your firm, for which I don't

20 think any amendment was filed, right?  It's the original?

21         MR. MICHELI:  We did not.  That is correct.  It's

22 Exhibit 124-1 of the Order.  We request that that be

23 approved, Your Honor.

24         THE COURT:  All right.  Any objection to the

25 retention of Paul Hastings under the Form of Order

1  originally filed with the motion?

2      (No audible response.)

3          THE COURT:  I've signed that.

4          MR. MICHELI:  Thank you, Your Honor.

5          Your Honor, the next is the application to retain

6  Jefferies as investment banker for the Debtors.

7          Your Honor, we did receive some comments from the

8  Committee with respect to this and as you'll recall, there

9  was an objection that was lodged by Marathon with respect to

10 the bid procedures.  That issue was resolved and Marathon

11 filed a statement of no objection, which appears at Docket

12 No. 192.

13         However, to clarify that there were no issues

14 associated with that objection, and in discussions with the

15 Office of the United States Trustee, Jefferies did file a

16 supplemental Declaration of Jeffrey Finger, which appears at

17 Docket No. 196.  And with the filing of that, Your Honor,

18 that resolved any and all issues the US Trustee may have had

19 with respect to Jefferies retention.

20         I would offer, Your Honor, Mr. Finger's

21 Declaration in support of Jefferies application today, which

22 again appears at Docket No. 196.

23         THE COURT:  So I read 196 and if we hadn't had the

24 earlier matter filed, which I know is now being withdrawn,

25 this wouldn't be here.  But can someone just tell me

1   directly what relationship, if ever, Jefferies had with

2   respect to the now withdrawn quasi-objection and the Debtor?

3          In other words, was any work done for that entity

4   at all or no work at all done for them?

5          MR. MICHELI:  My understanding, Your Honor, and I

6   believe Jefferies' outside counsel is also appearing today,

7   too, so they can step in and correct me.

8          My understanding is Jefferies acted as lead

9   forerunner to -- as part of an issuing of convertible notes

10  in November of 2021 with respect to Marathon.  That work was

11  unrelated to the Debtors and again, we don't believe that

12  there are any conflict issues with respect to it.  It is a

13  connection that was disclosed in Jefferies original (glitch

14  in the audio) and we believe that with those disclosures,

15  Your Honor, and in addition, I believe it represented a

16  *de minimis* amount of revenue for Jefferies within that year,

17  the Debtors and Jefferies and I believe that the US Trustee

18  can speak up that there were no concerns or issues with

19  respect to the retention of Jefferies, given the items set

20  forth in the Supplemental Declaration.

21          THE COURT:  So I have someone from area code

22  949-946-7765, can someone tell me who that is?

23          MR. FINK:  Good afternoon, Your Honor.  This is

24  Ryan Fink from Sidley on behalf of Jefferies.  I'm just

25  making myself available to the extent I can answer

1    questions, but nothing to add to already discussed in the

2    Supplemental Declaration.

3           THE COURT:  So the Supplemental Declaration, as I

4    appreciate it, says that they did work to the other entity,

5    but that that work was unrelated to Compute North, but their

6    objection had originally characterized it as work having to

7    do with Compute North.  And they've withdrawn that, so maybe

8    that's nothing, but I just would like somebody affirmatively

9    to tell me that they did not do any work with respect to the

10   relationship between those two entities.

11          How do I get that into the evidentiary record?

12          MR. MICHELI:  Your Honor, I will point out and

13   maybe this isn't sufficient and we can think of another way

14   to handle it, but in the Supplemental Declaration,

15   paragraph 4, Mr. Finger notes that the offering was

16   completely unrelated to the Debtors and these Chapter 11

17   cases.

18          THE COURT:  Right, which I very much appreciate.

19          What I'm not -- what I don't actually have a

20   direct statement on, is did Jefferies ever do any work with

21   respect to Marathon and the Debtor on that work?

22          Does that question make sense?

23          MR. MICHELI:  Meaning did Marathon -- sorry, did

24   Jefferies represent Marathon in its role as lead forerunner,

25   did it ever do any work with the Debtors in connection with

1   that engagement?

2          THE COURT:  No.  Did Jefferies ever do any work

3   for Marathon that involved Compute North?

4          Because I thought its work as lead runner, didn't

5   involve Compute North at all.  They just did work for

6   Marathon.  That doesn't bother me.

7          But what I'm looking for is an affirmative

8   statement as to whether Jefferies ever did any work for

9   Marathon involving Compute North?

10          That we have somebody --

11          MR. FINK:  Your Honor, this is Ryan Fink from

12   Sidley Austin on behalf of Jefferies again.

13          The statement that the Debtors' counsel mentioned,

14   the offering was unrelated.  That is my understanding the

15   only work that Jefferies did on behalf of Marathon, so to

16   the extent that you would like an affirmative statement

17   clarifying that point that there was no other work, I'm sure

18   Jefferies could provide that point.

19          THE COURT:  So we have somebody on the phone from

20   212-708-2733, is that -- who do we have there?

21          MR. FINGER:  Yes, Your Honor.  It's Jeffrey Finger

22   of Jefferies.

23          THE COURT:  Mr. Finger, I do want to just tie this

24   up with a bow.  So would you go ahead and raise your right

25   hand.  I don't think you're on the video, but let me see.

1          MR. FINGER:  I believe I am.

2          THE COURT:  There you are.  I apologize.  It just

3    took me a minute to find you.

4          Do you swear to tell the truth, the whole truth

5    and nothing but the truth?

6          MR. FINGER:  Yes.  I do.

7       (Mr. Finger sworn.)

8          THE COURT:  Thank you.

9          Mr. Finger, did Jefferies ever do any work for

10   Marathon that involved Compute North?

11         MR. FINGER:  My understanding, Your Honor, is no.

12   It would not have been my team directly, but my

13   understanding is no.  Aside from the convert offering that

14   we lead, there were no other retentions with them or any

15   business with them and certainly not with respect to Compute

16   North.

17         THE COURT:  And with respect to the due diligence

18   that you did in order to make those statements in your

19   Declaration, I understand you can't have literal personal

20   knowledge of everybody within the whole Jefferies

21   organization.  In that work, you did not run across anything

22   that would implicate work done by Jefferies for Marathon

23   involving Compute North.

24         Is that accurate?

25         MR. FINGER:  That's correct.

1          THE COURT:  Okay.  Does anyone else have any

2     issues here at all?  Because I just -- I think I've beaten

3     to death the question that I wanted to be sure was the right

4     answer.  I think it is, but maybe I should ask Mr. Ruff to

5     be sure he's in good shape, as well.

6          Mr. Ruff, any issues here at all?

7          MR. RUFF:  Your Honor, thank you again.  Jason

8     Ruff for the US Trustee's Office.

9          We actually spoke to Jefferies and asked similar

10    questions last week or perhaps even before now, prior to the

11    updated and revised Declaration being filed.  And we were

12    satisfied that anything that they did was not -- did not

13    bear on the relation of these two parties, the Debtors and

14    Marathon, and it was fully separate.

15          I think from what I'm hearing we're on the same

16    thing today, so with that, you know, unless something

17    changes and you know, we're satisfied, Your Honor.

18          THE COURT:  All right.  And I think Marathon has

19    withdrawn and they may not have used those words at all.  I

20    was left with that impression by Marathon and perhaps it was

21    my error in reading it, but they've even withdrawn the

22    allegations.  I just wanted to be sure we don't have

23    anything here.

24          So Mr. Micheli, I'm going to end up approving

25    this.  I do need you to take me through the changes,

1  however, that got us to 245 because that is something that I

2  had not seen before I got out here.

3           Is there a redline between 245 and the other one,

4  or do you want to just talk me through it?  What do you want

5  to do?

6           MR. MICHELI:  There is, there is a redline between

7  245 and 236.  They were -- apologies for the confusion.

8  Those were -- I'll call "versioning errors" in the actual

9  redline itself.

10          So if you look at 245-3, that is the interim

11 redline between 236 and 245, which will show the two changes

12 in paragraphs 8(b) and 8(d).

13          Your Honor, these were -- this was language that

14 was actually incorporated in the Form of Order that was

15 attached to the motion.  In the process of negotiating the

16 changes, the prior version of the Order was used and these

17 changes weren't picked up.  We noticed it after it was filed

18 yesterday and corrected that at 245.

19          THE COURT:  Got it.  So it's just those two

20 changes?

21          MR. MICHELI:  That's correct.

22          And then 245-2 is the cumulative redline and I can

23 walk you through -- if you have not had a chance to review,

24 I can walk you through the changes that set forth the

25 settlement between the Debtors, Jefferies, and the Committee

1   with respect to the issues that were raised by the

2   Committee, which appear in paragraph 2 of the Order.

3         THE COURT:  Well, I'm happy to have you do that,

4   if you want to.  But I have read that already because that

5   had been filed in enough time for me to get it read.  I just

6   hadn't read the 245, so whatever you want to do on that.

7         MR. MICHELI:  Thank you.  Unless you have any

8   questions, Your Honor, you know, this -- we believe this

9   resolves all issues with respect to Jefferies' retention and

10  we would request that the Order as revised at Docket No. 245

11  be entered.

12        THE COURT:  Let me ask if there's any party that

13  has any objection to the retention of Jefferies and

14  utilizing the Form of Order that is 245?

15        MR. GIBBS:  Your Honor, this is Chuck Gibbs for

16  the Committee.

17        THE COURT:  Mr. Gibbs.

18        MR. GIBBS:  We have no objection to the -- yes, we

19  have no objection to the entry of the Order as revised.  I

20  just wanted the Court to know that since we got involved, we

21  have negotiated with the Debtor and with Jefferies directly

22  to try to accomplish some changes in their proposed terms of

23  retention.  We are satisfied with the changes that were

24  agreed to, that are reflected in the Revised Order that you

25  have before you.

1         And just frankly want to offer our appreciation

2    and thanks to Jefferies for cooperatively working with us to

3    try to get to a fee structure that we thought was reflective

4    of the case condition and also the result of which I think

5    significant savings will inure to the benefit of the estate.

6         That's all.

7         THE COURT:  Thank you, Mr. Gibbs.

8         Anyone else?

9      (No audible response.)

10        THE COURT:  All right.  The Order has been signed

11   and it's been sent to docketing.

12        Where to now?

13        MR. MICHELI:  Thank you, Your Honor.

14        That takes us through the motions that were

15   included on the Agenda.  I'll turn the podium back over to

16   Mr. Grogan to discuss the Stipulation that was filed prior

17   to the hearing.

18        Thank you, Your Honor.

19        THE COURT:  The one I haven't seen, right,

20   Mr. Grogan?

21        MR. GROGAN:  Yes, Your Honor.  James Grogan, Paul

22   Hastings, counsel to the Debtors.

23        Your Honor, I'm happy to do this in the most

24   efficient way for the Court.  I don't know if you want to

25   take a brief recess and read it.  It was filed at Docket

1  No. 246.

2        I will say it's a relatively short Stipulation,

3  you know, just to --

4        THE COURT:  Are you asking me to act on it in a

5  short time frame or what?

6        MR. GROGAN:  We -- yes, Your Honor.  There's a few

7  components that are important to the process.  First of all,

8  the -- you know, this relates to the Kerniam (phonetic) Wolf

9  Hollow projects, which have been operating at a loss at the

10 Debtor level for some time.

11       And this solves that cash burn problem.  So we

12 would get -- we would get an immediate infusion of -- on the

13 next day, we would get $710,000 to continue funding the

14 operations, plus there's an additional up to $650,000 into

15 November, which would allow us, you know, the money we need

16 to continue operating that as a going concern.

17       At the same time, this dovetails with a planned

18 sale of those assets to Generate, which we will be under the

19 gun to negotiate and finalize over the next three days to

20 prepare an APA that we would then present on a separate

21 motion and timeline.

22       But it solves a lot of problems for us from a

23 liquidity perspective.  We have an agreement in principle on

24 the purchase price, which also will infuse the estate with

25 some much needed liquidity and so we do need this issue

1  addressed in the near term.

2       THE COURT:  What is your latest date on which I

3  can hear this and not have any adverse consequences to the

4  estate by the delay?  Is it one day from now?  Is it five

5  days from now?  I mean, you just need to tell me how long

6  and I happen to have a really light schedule for the next

7  couple of weeks, so I should be able to fit you in pretty

8  much any time.

9       MR. GROGAN:  You know, if -- I think if we could

10  come back, you know, tomorrow morning?  I'll -- you know,

11  Mr. Marcus is on for Generate, too, but you know, we don't

12  want to put this off very long at all because we do need to

13  address the schedule that's proposed in there and also, we

14  need the money.

15       THE COURT:  So Mr. Gibbs, I haven't read this.  I

16  don't know what it is.  How long do you need to be prepared

17  to support or oppose the relief?

18       MR. GIBBS:  I think if you hear this tomorrow, we

19  would be ready to take a position.  We've got a prior draft

20  -- I've lost track of time -- either late yesterday or early

21  this morning.  We suggested some comments.  I have no idea

22  if any of those were incorporated in what was filed and we

23  certainly haven't had a chance to look at it, other than

24  during this hearing.  And I don't know the basis for the

25  change in the monetary figures that are in the Stipulation

1   from the one we saw.

2          But that's not going to be a heavy lift for us to

3   get knowledgeable enough to be in a position to tell Your

4   Honor on the Record where we are, and I'll remind the Court

5   just last Friday we were imploring the Debtor to continue to

6   look under rocks to try to find additional interim

7   liquidity.  This we know conceptually does that.  We just

8   need to get a little better understanding of how they

9   arrived at certain numbers and how they dovetail with the

10  possible sale of the assets that are currently being managed

11  by the Debtors.

12          So if Your Honor has time tomorrow, we can

13  certainly accommodate the parties and make ourselves ready.

14          THE COURT:  What time can you be ready?

15          MR. GIBBS:  The afternoon would be better, Your

16  Honor.  I can do -- we can do in the morning, if that's

17  better for the Court.  I'm just sort of -- I have a problem

18  I can't move between 11:00 and 3:00.  So either before 11:00

19  or after 3:00 would -- I would be able to --

20          THE COURT:  I have zero hearings tomorrow.  I have

21  a lot of stuff I'm doing, but it won't matter when I take a

22  break in terms of what I'm doing.  You tell me what works.

23          The Committee is the one that needs time, not the

24  Debtor, although the Debtor needs speed and you're offering

25  them speed.  Tell me what you need, what time?

1          MR. GIBBS:  3:00 o'clock would be fine.

2          THE COURT:  Is there anyone that objects to having

3   a hearing on whatever is contained in the Stipulation that

4   just got filed?  I don't even know what it is, but you-all

5   do.  Anyone that objects to have a hearing on that tomorrow

6   at 3:00.

7          And would you confirm 3:00 o'clock actually is

8   sufficient time for you to avoid your emergency?

9          MR. GROGAN:  Your Honor, we can live with

10  3:00 o'clock tomorrow.

11         THE COURT:  Okay.  So we're talking about 246.

12  Anyone have any objection to hearing 246 tomorrow at

13  3:00 o'clock?

14      (No audible response.)

15         THE COURT:  All right.  It is set now for --

16         MR. GIBBS:  Your Honor?  Your Honor?

17         THE COURT:  Mr. Gibbs.

18         MR. GIBBS:  Your Honor, I apologize.  I was

19  reading my calendar as I was trying to respond.

20         I finish a presentation at 3:00.  Is there any way

21  we can start at 3:15, just so I don't have to walk off the

22  stage?

23         THE COURT:  3:30, how's that?  That way you won't

24  have to walk off the stage without greeting people.

25         Does anyone object to --

1          MR. GIBBS:  It won't be accompanied by a mic drop.

2          THE COURT:  -- to a 3:30 hearing tomorrow on 246?

3      (No audible response.)

4          THE COURT:  Okay.  It's set for tomorrow at 3:30.

5          What else do we need to do today?

6          MR. GROGAN:  Nothing on my list, Your Honor.

7  Thank you very much for the flexibility.

8          MR. MICHELI:  Your Honor?

9          THE COURT:  Yes, sir.

10         MR. MICHELI:  Your Honor, Matt Micheli.

11         I did want to note in the flurry of filings that

12  happened between yesterday and today, we did put a revised

13  Form of Sale Procedures Order with the agreement of all of

14  the relevant parties at Docket No. 242.  Despite my optimism

15  on Friday, it took a little longer than anticipated, but we

16  were able to get that revised Form of Order at 242 and I

17  wanted to mention that.

18         THE COURT:  All right.  I'll just ask -- well,

19  here, I can do that.

20     (Pause in the proceedings.)

21         THE COURT:  I should actually be able to get to

22  that before I go home tonight, so I would guess it will get

23  docketed if not this afternoon, overnight assuming that I

24  don't have any issues with it.

25         I have moved that into my In Box, so I'll be able

1    to do it right away.

2            What else --

3            MR. MICHELI:  Thank you, Your Honor.

4            THE COURT:  What else do we need to do?  Anyone

5    else have anything?

6        (No audible response.)

7            THE COURT:  Okay.  Thank you-all.  I appreciate

8    all the deals that got made and the easy Agenda.

9            Thank you.

10       (The parties thank the Court.)

11           THE COURT:  Okay.  We are in recess for the

12   afternoon.  Thank you.

13       (Hearing adjourned at 2:01 p.m.)

14                        *  *  *  *  *

15           *I certify that the foregoing is a correct*

16   *transcript to the best of my ability due to the condition of*

17   *the electronic sound recording of the ZOOM/video/telephonic*

18   *proceedings in the above-entitled matter.*

19   */S/ MARY D. HENRY*

20   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

21   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

22   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

23   *JTT TRANSCRIPT #66471*

24   *DATE FILED:  OCTOBER 28, 2022*

25