IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § § § | Case No. 22-90273 (MI) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § | Re: Docket Nos. 209, 256, & 332 |

**MARATHON DIGITAL HOLDINGS, INC.'S
(I) OBJECTION TO (A) ASSUMPTION AND
ASSIGNMENT OF CONTRACTS AND CURE AMOUNTS AND
(B) PROPOSED GENERATE SALE ORDER AND (II) RESERVATION OF RIGHTS**

1.  Marathon Digital Holdings, Inc. (together with its affiliates, "**Marathon**"), a significant customer of the Debtors, hereby objects to the assumption and assignment of its contracts with the Debtors, including Compute North LLC ("**Compute North**" and together with its debtor affiliates in the above-captioned chapter 11 cases, the "**Debtors**").

2.  Marathon is a cutting-edge, digital-currency company that mines bitcoin. To generate bitcoin, Marathon employs high-tech, state of the art, commercial-grade computers, or miners, to constantly run algorithms and decrypt complex mathematical problems for the opportunity to verify transactions on the Bitcoin blockchain, which, once solved, entitle the miner to rewards and transaction fees in the form of additional bitcoin. Marathon operates on an asset light business model and, rather than building its own data facilities to store, operate and manage

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

its miners, it typically contracts with third parties, like Compute North, which will provide facilities and hosting services to keep Marathon's miners running.

3. Compute North operates several facilities that collectively host tens of thousands of Marathon's miners. Marathon's miners are housed at multiple facilities hosted by Compute North, including King Mountain, Wolf Hollow, Kearney, South Dakota, and Big Spring.

4. Prior to September 22, 2022 (the "**Petition Date**"), Marathon entered into the Agreements (as defined below) with Compute North. Pursuant to those Agreements, Marathon deposited and prepaid Compute North over $40 million to host and maintain Marathon's miners so they could properly function to continuously mine bitcoin, as well as $8 million in expedite fees. At this time, Marathon does not know where its deposits are held or how much of its deposits remain; furthermore, not only did Compute North fail to expedite miner installation and operation, it also failed to obtain promised sites and, on multiple occasions, delayed (sometimes by more than six months) commencing hosting of Marathon's miners.

5. Marathon files this Objection (i) to the extent the Debtors are using the assumption and assignment process to strip Marathon of its right to offset and recoup any outstanding deposits (or any deposits that may have been misused by Compute North) and (ii) to object to the lack of adequate assurance of future performance provided (and preserve its rights to supplement its objection to the same) based on Marathon's present inability to ascertain the identity of the potential assignee of the contracts to which Marathon is a party and whether any such assignee is able to perform under such contracts. Marathon's rights are straightforward; however, the lack of information from the Debtors—despite Marathon's attempts to ascertain such information—results in Marathon's inability to determine (i) the current location of its deposits, (ii) whether such deposits have been properly reserved for their intended purpose under the contracts, (iii) the

2

identity of the party to which the Debtors will seek to assign contracts to which Marathon is a party, and (iv) whether such assignee will be able to cure outstanding defaults under, or provide adequate assurances of future performance in respect of, any such contracts that are so assigned.

## Background

6. The business relationship between Marathon and the Debtors is largely defined by two types of agreements: Master Service Agreements and Order Forms (together, "**the Agreements**").[2] The Agreements, which are governed under either New York or Minnesota law, set forth the parties' rights and obligations for each of four sites where Compute North hosts Marathon's miners: Wolf Hollow, King Mountain, Kearney, and South Dakota.

7. The Debtors listed a number of the Agreements for potential assumption and assignment to a potential third-party purchaser. *See Notice of Filing of Cure Schedule in Connection with Proposed Sale,* filed at Docket No. 209 (the "**Cure Notice**," and the Cure Schedule appended thereto as Exhibit A, the "**Cure Schedule**"). But Debtors have not disclosed to Marathon to whom the Agreements actually will be assigned (or if they will be assigned at all).

8. Under the Agreements, Marathon was obligated to pay initial deposits to Compute North, which were to be used to subsidize ongoing monthly service and package fee payments made by Marathon to Compute North. *See, e.g.*, Sept. 3, 2021 Master Service Agreement, §§ 6.1, 6.2 & Ex. A pp. 11–12). In total, Marathon prepaid Compute North deposits of more than $11 million towards the Wolf Hollow mining site, $30 million, towards the King Mountain mining site, and $560,000 towards the Kearney and South Dakota mining sites.

---

[2] Some of these Agreements are partially assigned to third-parties. Despite the assignments, Compute North remains responsible for its liabilities under the Agreements. *See, e.g.*, Restatement (Second) of Contracts § 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.").

9.These deposits are currently unaccounted for by Compute North. Marathon has no indication of where its deposits are being held or whether its deposits have been appropriately reserved for their designated purpose.

10.Moreover, a number of the Agreements relate to the businesses that Generate Lending, LLC (or its designee, including an affiliate formed for purposes of taking title to the assets to be purchased thereby, "**Generate**") presently seeks to purchase from the Debtors, including the Wolf Hollow and Kearney facilities (the "**Proposed Generate Sale**"). But Generate has not yet designated the contracts that it seeks to purchase from the Debtors as part of the proposed sale. Instead, the *Notice of Successful Bidder for CN Pledgor Assets*, filed at Docket No. 331 (the "**Generate Sale Notice**"), states that Generate will have until November 3, 2022 to designate the contracts of which Generate will seek assignment. *See* Generate Sale Notice, at 2.

## Argument

11.To assume and assign any contracts to which Marathon is a party—including the Agreements—to any party, including Generate, the Debtors must satisfy the standards set forth in section 365 of title 11 of the United States Code (the "**Bankruptcy Code**"). Section 365 allows a debtor to assume and assign an executory contract to a third party, if the debtor (i) cures any outstanding default under the contract or provides adequate assurance the default will be promptly cured, (ii) compensates the counterparty to the contract for any pecuniary loss or provides adequate assurance of compensation, and (iii) provides adequate assurance of the assignee's future performance of the contract. *See* 11 U.S.C. §§ 365(b)(1)(A)–(C), 365(f).

12.The obligation to cure extends to monetary and non-monetary defaults under a contract. *See id.* To cure a ***monetary*** default under section 365, a debtor must pay all amounts due under the contract. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del.

4

2005). To determine the appropriate means of curing a **non-monetary** default, courts examine the provisions of the contract to define "the nature of a default and the cure it requires." *Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (citing *In re Shangra-La, Inc.*, 167 F.3d 843, 848–49 (4th Cir. 1999)).

13. Regarding adequate assurance of future performance, courts look to "'factual conditions,' including 'consider[ation of] whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee.'" *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438–39 (5th Cir. 2002) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985)).

14. When the debtor is assuming and then assigning a contract, the "adequate assurance" analysis focuses on the assignee, rather than the debtor, as the assignee is the party that will continue performing the contract going forward. *See* 11 U.S.C. § 365(f)(1)(B). In that instance, when a contract is being assumed and assigned, the requirement of "adequate assurance of future performance by the assignee" provides "needed protection to the non-debtor party because the assignment relieves the [debtor] and the bankruptcy estate from liability for breaches arising after the assignment." *In re Fleming Cos., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001)) (citing 11 U.S.C. § 365(k)). In other words, the statute protects a non-debtor counterparty from losing the benefit of its bargain by virtue of an assignment in bankruptcy. *See id.*; *see also In re Nat'l Gypsum Co.*, 208 F.3d 498, 509 (5th Cir. 2000) ("Section 65(b)(1) provides a guarantee to the non-debtor party . . . that as a condition to [the assumption or assignment of its contract], any losses or defaults existing at the

time will be satisfied either through a timely cure or through reasonable assurances of future payment.").

A. **Marathon is Entitled to an Offset or Recoupment for Its Deposits Given to Debtors Under the Agreements.**

15. To be made whole under the Agreements, Marathon is entitled to its continued legal right to an offset or recoupment for its deposits under the Agreements.[3] Put another way, to properly assume and assign the Agreements, the assignee must take the obligation to honor the deposits given by Marathon to the Debtors under the Agreements.

16. Both New York and Minnesota law, which govern the Agreements, recognize a party's rights of setoff and recoupment. *See In re McMahon*, 129 F.3d 93, 96–97 (2d Cir. 1997) (setting out the requirements for recoupment under New York law); *Minn. Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.*, 708 N.W.2d 521, 525 (Minn. 2006) ("[I]n addition to a contractual setoff right, Minnesota also recognizes an equitable setoff right."); *Household Fin. Corp. v. Pugh*, 288 N.W.2d 701, 703 (Minn. 1980) (recognizing the right to recoupment); *Matter of Midland Ins. Co.*, 167 A.D.2d 75, 78 (N.Y. 1st Dept. 1991) (noting New York recognizes setoff even in the absence of agreement or statute), *aff'd*, 79 N.Y.2d 253 (1992). Nothing in any of the Agreements alters these essential rights.

17. These rights do not change because the Debtors filed for chapter 11 protection. To be sure, the Bankruptcy Code expressly honors setoff and recoupment rights. *See* 11 U.S.C. § 553(a); *see also In re Fieldwood Energy LLC*, No. 20-33948, 2022 Bankr. LEXIS 327, at *8 (Bankr. S.D. Tex. Feb. 8, 2022) (citing *Feltman v. Noor Staffing Grp., LLC (In re Corp. Res. Servs., Inc.)*, 564 B.R. 196, 203 (Bankr. S.D.N.Y. 2017). Section 553 provides:

---

[3] The right of setoff is typically asserted for the purpose of reducing or extinguishing a mutual debt arising from different transactions, while recoupment concerns reducing or extinguishing a debt arising from the same transaction. *See In re Bram*, 179 B.R. 824, 826 (Bankr. E.D. Tex. 1995).

6

> Except as otherwise provided in this section and in sections 362 and 363 of this title, ***this title [i.e., the Bankruptcy Code] does not affect any right of a creditor to offset*** a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . .

*Id.* (emphasis added).

18. Thus, to have a valid right of setoff in bankruptcy, a party must establish (i) a prepetition ***debt*** owed by the debtor to the creditor, (ii) a prepetition ***claim*** of the creditor against the debtor, and (iii) that the debt and claim are "mutual obligations—involving the same parties standing in the same capacity." *In re Pearl Res. LLC*, 643 B.R. 436, 461–62 (Bankr. S.D. Tex. 2022) (citing *In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001)). And recoupment in the bankruptcy context requires that (i) the party asserting recoupment have made an overpayment and (ii) both that party's claim and the amount owed the debtor having arisen "from a single contract or transaction." *Pearl Res. LLC*, 643 B.R. at 461 (citing *Kosadnar v. Metropolitan Life Ins. Co. (In re Kosadnar)*, 157 F.3d 1011, 1014 (5th Cir. 1998)).

19. Moreover Marathon's rights to offset and recoupment will also survive any assignment of the Agreements by Compute North. Indeed, it is a fundamental aspect of assignment that the assignee continues to stand in the shoes of the assignor, taking on all liabilities and remaining subject to all defenses that could have been asserted against the assignor. *See, e.g.*, *Meyers v. Postal Fin. Co.*, 287 N.W.2d 614, 617 (Minn. 1979); *Kochlin v. Norwest Mortg., Inc.*, 2001 WL 856206, at *7 (Minn. Ct. App. July 31, 2001) ("Generally, an assignee stands in no better shoes than the assignor."); 6A N.Y. Jur. 2d Assignments § 70; *see also In re Enron Corp.*, 379 B.R. 425, 435 n.55 (S.D.N.Y. 2007) ("[I]t is a fundamental rule of the law of contract that the assignee stands in the shoes of the assignor, possessing the same rights and remaining subject to the same defenses as the assignor.").

7

20. This general rule applies to both the rights of setoff and recoupment. *See, e.g.*, *Gen. Elec. Co. v. O'Connell*, 136 N.W. 404, 406–07 (Minn. 1912) (recognizing right to recoupment of damages from assignor); *Meyers*, 287 N.W.2d at 617 ("Generally, when contract rights are assigned, the assignee's right to collect under the contract from the account debtor . . . is subject to those defenses, setoffs, and counter-claims which the account debtor could assert against the assignor."); *Seibert v. Dunn*, 216 N.Y. 237, 245–46 (1915) (for purposes of recoupment, "the assignee occupied, as to the assigned claim, the place and position of the assignor"); *Chatham Sec. Corp. v. J. R. Williston & Beane*, 22 A.D.2d 260, 265 (N.Y. 1st Dep't 1964) ("An assignee is subject to setoffs available against the assignor whenever the setoffs are based on facts existing prior to knowledge by the obligor of the assignment, and indisputably after the facts have given rise to a claim or demand[.]"), *aff'd*, 16 N.Y.2d 1016 (1965); *see also* Restatement (Second) of Contracts § 336 cmt. c, illus. 5 (assignment as to setoff); *id.* cmt. d, illus. 7 (assignment as to recoupment).

21. And nothing in the Bankruptcy Code disturbs that general rule when a debtor assumes and assigns a contract pursuant to section 365 rather than assigning it pursuant to non-bankruptcy law. Indeed, courts generally agree that "an assignment of rights can create mutuality for setoff purposes." *U.S. Aeroteam, Inc. v. Delphi Auto. Sys., LLC (In re U.S. Aeroteam, Inc.)*, 327 B.R. 852, 865 (Bankr. S.D. Ohio 2005) (collecting cases); *see also Fieldwood Energy*, 2022 Bankr. LEXIS 327, at *9 n.9 (quoting *Aeroteam* for the above proposition). In sum, Marathon is entitled to setoff or recoupment for its deposits, even after its agreements are assigned to a third party by the Debtors.

22. Despite Marathon's clear rights, Marathon's Objection is complicated by the lack of information that Marathon has regarding any potential assumptions of the Agreements or

information about its deposits generally. Marathon does not currently know the remaining value of its deposits or their location. Marathon also does not know to whom the Agreements may be assigned or whether the Debtors will assume all, some, or none of the Agreements. Consequently, Marathon cannot know whether any assignee will honor Marathon's entitlement to its rights arising from its deposits, including those rights related to setoff and recoupment. To the extent any of Marathon's agreements with the Debtors is proposed to be sold, assigned, or transferred to any buyer free and clear of Marathon's setoff, recoupment, or any similar equitable right, Marathon objects to such relief and reserves all rights to further object or supplement this Objection.

**B.     The Debtors Have Failed to Cure Outstanding Defaults or Provide Adequate Assurance of Future Performance to Marathon, Including with Respect to the Proposed Generate Sale.**

23.     Despite listing a number of Marathon's contracts on the Cure Schedule, the Debtors have failed to provide any information—let alone sufficient information—to support a finding that outstanding defaults have been cured or of "adequate assurance of future performance by the assignee" with respect to any such contract that the Debtors now seek to assume and/or assume and assign. Despite this, in the proposed *Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free And Clear of All Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief*, attached to the Notice filed at Docket No. 332 (the "**Proposed Generate Sale Order**"), the Debtors and Generate seek authority from the Court to assume and assign certain contracts to Generate.

24.     The Debtors provide a carve-out, but it is far too narrow: the assumption and assignment of contracts to Generate is subject only "to resolution of any pending, timely **Cure Disputes**." Proposed Generate Sale Order ¶ 11 (emphasis added). But a "Cure Dispute," as

9

defined in the *Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter Into Asset Purchase Agreements With Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances as Well as the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases*, entered at Docket No. 256 (the "**Bidding Procedures Order**"), only includes an objection to the *cure amounts* listed on the Cure Schedule pursuant to sections 365(b)(1)(A) and (b)(1)(B) of the Bankruptcy Code. *See* Bidding Procedures Order ¶ 22(j). "Cure Disputes" ***does not*** include objections based on outstanding performance defaults or adequate assurance objections. *See id.* Thus, if Generate is the proposed assignee of the Marathon contracts, Marathon will have no way of knowing whether Generate—or some other proposed assignee (if any)—can cure existing defaults or provide adequate assurance of prompt cure, compensation for pecuniary loss, or future performance with respect to those contracts prior to entry of the Proposed Generate Sale Order, which would authorize the assignment of those contracts, despite any outstanding issues related to existing defaults or such adequate assurance.

25. Put another way, the Proposed Generate Sale Order does not appear to preserve Marathon's rights to later object in respect of existing defaults and to adequate assurance of future performance by Generate (or any other assignee) following entry thereof. Nor, as noted above, are rights to setoff and recoupment expressly preserved. And, Marathon's inability to ascertain with any certainty the identity of the assignee of the contracts to which it is a party, before losing its right to object to that potential assignee's ability to provide adequate assurance of future performance, violates basic principles of due process and notice.

26. To be sure, the identity of the assignee matters for these contracts. For example, Marathon currently has no way of knowing whether an assignee (or third-party operator hired by the assignee of the contracts) has the requisite expertise, capabilities or experience to operate at scale the data centers, has debilitating conflicts of interest, including that it engages in "self-mining," is otherwise a direct competitor to Marathon, or is a similar party with commercial or legal interests adverse to Marathon. Further, as a public company, Marathon has certain reporting and internal control obligations, including near-term inventory reporting requirements related to its mining equipment. Without knowing the identity of the to-be operator of Marathon's miners at Wolf Hollow and Kearney, Marathon will have difficulty complying with those obligations.

27. Accordingly, Marathon reserves all rights to further supplement this Objection if and when it learns the identity of the assignee of its Agreements or any other contract with between Marathon and one or more of the Debtors.

### Proposed Revisions to Proposed Generate Sale Order

28. Marathon proposes the following revisions to the Proposed Generate Sale Order to address its Objection to the Generate Sale.

> Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, to the extent that any agreement between one or more of the Debtors and Marathon Digital Holdings, Inc. or any of its affiliates (collectively, "**Marathon**") constitutes an "Assigned Contract" or otherwise will be transferred or assigned to the Purchaser or a third party designated by Purchaser pursuant to this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale (each, a "**Marathon Agreement**"), Marathon's setoff, recoupment, and common law or statutory rights under similar doctrines, whether arising out of state law or bankruptcy law, shall be expressly preserved notwithstanding any such assumption, assignment, purchase, or transfer.

11

>Nothing in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale shall be deemed to authorize the sale, assignment, or transfer of any equipment owned by Marathon, including, without limitation, the miners owned by Marathon located at the Wolf Hollow Project or Kearney Project (each as defined in the Purchase and Sale Agreement).
>
>Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, Marathon's rights are preserved to object to the assumption or assumption and assignment of any of its agreements with the Debtors to Purchaser or a third party designated by Purchaser on the basis of failure to provide adequate assurance of prompt cure, compensation for pecuniary loss, or future performance.

29. Marathon reserves all rights to further supplement its objections to the Proposed Generate Sale Order.

**Reservation of Rights**

30. Marathon reserves the right to amend or supplement this objection as necessary to, among other things, (i) object to the assumption and assignment of any other executory contract between Marathon and the Debtors included on any supplemental Cure Schedule, (ii) object to the proposed cure amounts thereunder, and (iii) object to any other relief sought by the Debtors in respect of any agreement to which Marathon and any of the Debtors are party. Marathon also reserves its rights to object on any other grounds to the assumption or assignment of its agreements with the Debtors, including the failure to provide adequate assurance of future performance or of the ability to cure existing defaults, in accordance with the Bankruptcy Code and the Bidding Procedures Order.

Date:  October 31, 2022
      Houston, Texas

    /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (admitted *pro hac vice*)
Robert S. Berezin (*pro hac vice* pending)
Jessica Liou (admitted *pro hac vice*)
Alexander P. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Emails:  Gary.Holtzer@weil.com
         Robert.Berezin@weil.com
         Jessica.Liou@weil.com
         Alexander.Cohen@weil.com

*Counsel for Marathon Digital Holdings, Inc.*

**Certificate of Service**

I hereby certify that on October 31, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  /s/  Alfredo R. Pérez
                                                 Alfredo R. Pérez