**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Compute North Holdings, Inc.** *et al.*,[1] | **Case No. 22-90273 (MI)** |
| **Debtors.** | **(Jointly Administered)** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF GEM MINING 1, LLC**
**IN CONNECTION WITH DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN GEM MINING CONTRACTS AND PROPOSED SALE**

GEM Mining 1, LLC ("GEM Mining"), by its undersigned counsel, files this limited objection and reservation of rights (this "Limited Objection") in connection with the Debtors': (i) *Notice of Filing Cure Schedule in Connection With Proposed Sale* (Docket No. 209) (the "Notice"); and (ii) *Emergency Motion for Entry of (I) an Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter Into Asset Purchase Agreements With Stalking Horse Bidders; and (D) Scheduling a Hearing On the Approval of the Sale of the Debtors Assets Free and Clear of All Encumbrances As Well As the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) an Order (A) Authorizing the Sale of the Debtors Assets Free and Clear of all*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

*Encumbrances, (B) Approving Asset Purchase Agreements, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Waiving Stay Provisions Pursuant to Bankruptcy Rules 6004(H) and 6006(D)* (Docket No. 91) (the "<u>Sale Motion</u>"). In support of this Limited Objection, GEM Mining respectfully states:

## <u>BACKGROUND</u>

1.     On September 22, 2022, the above-captioned debtors (the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (this "<u>Court</u>").

2.     Upon information and belief, the Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     GEM Mining and the Debtors are party to that certain Master Services Agreement dated as of March 8, 2021, pursuant to which the Debtors provide colocation, management, and other services for GEM Mining's Bitcoin mining equipment (the "<u>Master Services Agreement</u>").

4.     In connection with (and pursuant to) the Master Services Agreement, GEM Mining and the Debtors entered into an agreement for the hosting of Bitcoin miners in the Debtors' Kearney, Nebraska facility (the "<u>Kearney Agreement</u>"). GEM Mining provided the Debtors with a $500,000.00 deposit for the last two months of hosting services, as required by the Kearney Agreement. The term of the Kearney Agreement is set to expire on May 31, 2024.

5.      Additionally, in connection with (and pursuant to) the Master Services Agreement, GEM Mining and the Debtors entered into a separate Order Form for the purchase of Bitcoin miners to be hosted at the Debtors' Savoy, Texas facility (the "<u>Savoy Agreement</u>"). GEM Mining currently has a credit under the Savoy Agreement in an amount not less than

$1,161,916.42 for the Debtors' partial failure to deliver certain contracted Bitcoin miners under the Savoy Agreement.

6.     The Bitcoin miners currently hosted by the Debtors pursuant to the Master Services Agreement (including the Kearney Agreement and the Savoy Agreement) are exclusively owned by, and property of, GEM Mining (collectively, the "GEM Miners").

7.     On September 26, 2022, the Debtors filed the Sale Motion which, among other things, sought to establish a bidding and sale process for substantially all of the Debtors' assets, either in whole or in part, including certain "de minimis" assets (the "Proposed Sale").

8.     On October 24, 2022, this Court entered its *Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors Assets Free and Clear of All Encumbrances as well as the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (Docket No. 256) (the "Bidding Procedures Order"), which, among other things, authorized and approved procedures for the Proposed Sale and for the assumption and assignment of certain contracts of the Debtors' business.[2]

9.     On October 18, 2022, the Debtors filed the Notice, which identifies certain contracts for potential assumption and assignment to a successful bidder pursuant to an asset purchase agreement, all in connection with the Bidding Procedures Order. GEM Mining cannot identify whether the Master Services Agreement, including the Kearney Agreement and the

---

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

Savoy Agreement, are included on the Notice. The Notice has redacted the names and addresses of customers, such as GEM Mining, making it impossible to identify the Master Services Agreement.

## **LIMITED OBJECTION**

A.      *Assumption and Assignment of the GEM Mining Contracts in their Entirety*

10.      As part of the assumption and assignment of the GEM Mining Contracts, the Debtors must assume and assign the GEM Mining Contracts in their entirety, including any and all related agreements, along with all conditions, covenants, obligations and terms contained therein. *See In re MF Global Holding Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) (a debtor must assume an executory contract in its entirety). This obligation requires the Debtors to assume and assign all terms, conditions, covenants, and obligations under the GEM Mining Contracts, whether monetary or non-monetary, for which the Debtors are responsible pursuant to the GEM Mining Contracts, regardless of whether the contractual obligations relate to the period prior to, or after, the closing of the Proposed Sale and the assumption and assignment of the GEM Mining Contracts to the prevailing bidder and regardless of any of the other terms and conditions of any order entered by this Court approving the Proposed Order or the terms of any asset purchase agreement. *See In re ATP Oil & Gas Corp.*, 517 B.R. 756, 759 (Bankr. S.D. Tex. 2014) (finding that a "debtor may not pick and choose those portions that it wishes" to assume or reject).

11.      For the avoidance of doubt, any assignee of the GEM Mining Contracts shall be required to honor any deposits, pre-payments, or credits that GEM Mining has in place with the Debtors in connection with the GEM Mining Contracts. Until such time as the Debtors agree to assume the GEM Mining Contracts in their entirety and on the terms and conditions set forth in this Limited Objection, GEM Mining objects to the assumption of the GEM Mining Contracts.

B.      *Preservation of Recoupment Rights*

12.      While section 363(f) of the Bankruptcy Code authorizes a trustee to sell property free and clear of any interest that any entity has in such property, 11 U.S.C. §363(f), it is well settled that that a debtor is not permitted to sell their assets free and clear of the right of recoupment, since such right is a defense and not an interest that can be extinguished through a section 363(f) sale. *Matter of U.S. Abatement Corp*., 79 F.3d 393, 399 (5th Cir. 1996); *see Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 260, 262-63 (3d Cir. 2000). In *Matter of U.S. Abatement Corp.*, 79 F.3d 393, 399 (5th Cir. 1996), the Fifth Circuit held that, to the extent a recoupment right exists, the debtor has no right in the funds subject to recoupment:

> The justification for the recoupment doctrine is that 'where the creditor's claim against the debtor *arises from the same transaction as the debtor's claim*, it is essentially a defense to the debtor's claim against the creditor....' We have held that the trustee of a bankruptcy estate 'takes the property subject to the rights of recoupment.' In other words, to the extent that a party is entitled to recoupment of funds, 'the debtor *has no interest* in the funds.'

*Id*. (emphasis in original; quotations and citations omitted).

13.      Furthermore, in *Folger Adam*, the Third Circuit discussed a debtor's ability to sell assets free and clear of both recoupment and setoff rights. Regarding recoupment, the court noted that:

> Recoupment . . . allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be setoff under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitation of setoff in bankruptcy would be inequitable.

209 F.3d at 260. Accordingly, the Third Circuit held that "a right of recoupment is a defense and not an interest and, therefore, is not extinguished by a § 363(f) sale" *Id*. at 261; *see also Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June

11, 2003) ("recoupment is not a 'claim' within the meaning of the Bankruptcy Code...");
*Formtech LLC v. Magna Powertrain USA, Inc.* (*In re Formtrech Industries, LLC*), 439 B.R. 352
(Bankr. D. Del. 2010) (recoupment rights are defenses not extinguished under Bankruptcy Code
section 363(f)); *In re Northstar Offshore Grp., LLC*, No. 16-34028, 2018 WL 4445082, at *3
(Bankr. S.D. Tex. Sept. 14, 2018) ("a debtor has no interest in property that is subject to a right
of recoupment").

14.    Accordingly, to the extent the Debtors seek to assume and assign the GEM
Mining Contracts, the Debtors should not be permitted to assume and assign the GEM Mining
Contracts free and clear of any of GEM Mining's recoupment rights. Any order approving the
Proposed Sale, which includes the assumption and assignment of the GEM Mining Contracts,
should preserve any recoupment rights that GEM Mining may have in connection with the GEM
Mining Contracts.

C.    *Adequate Assurance Objection*

15.    While GEM Mining does not generally oppose the assumption and assignment of
the GEM Mining Contracts to a financially viable and operationally competent assignee, GEM
Mining objects to the proposed assumption and assignment of the GEM Mining Contracts by the
Debtors because, upon information and belief, the proposed assumption and assignment of the
GEM Mining Contracts fails to strictly comply with the requirements of section 365 of the
Bankruptcy Code and the terms and conditions of the GEM Mining Contracts.

16.    To assume and assign an executory contract, 11 U.S.C. §365(f) requires adequate
assurance of future performance by the assignee.  11 U.S.C. §365(f)(2)(B).  The requirement of
adequate assurance of future performance should be given a "practical, pragmatic construction
based on… the circumstances of [the] case."  *In re PRK Enterprises, Inc.,* 235 B.R. 597, 603

(Bkrtcy. E.D. Tex. 1999) (quoting *In re Prime Motor Inns, Inc.,* 166 B.R. 933, 997 (Bkrtcy. S.D. Fla. 1994).  Adequate assurance of future performance does require that performance be more probable than not.  *Id.*

17.    The Debtors bear the burden of demonstrating the proposed assignee's ability to provide adequate assurance of future performance. *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Citrus Tower Blvd. Imaging Ctr., LLC*, No. 11-70284-MGD, 2012 WL 1820814, at *3 (Bankr. N.D. Ga. Apr. 2, 2012). Although the Code does not define adequate assurance, courts have examined whether a debtor has "an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." *In re Huey's, Inc.*, No. 91-41391, 1992 WL 12004008, at *2 (Bankr. S.D. Ga. Aug. 11, 1992) (*quoting Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir.1985)).

18.    The Debtors and the proposed assignee must provide GEM Mining adequate assurance of "material and economically significant contract terms. A contract term is material if it was integral to the bargained-for exchange and is economically significant if performance is required to give the contract counterparty the full benefit of its bargain." 3–365 Collier on Bankruptcy ¶ 365.09 (16th ed. 2015); *see also In re Huey's, Inc.*, 1992 WL 12004008, at *2 ("Adequate assurance must be provided as to general performance and to each covenant within the agreement.").

19.    Again, while GEM Mining does not generally oppose the assumption and assignment of the GEM Mining Contracts to a financially viable assignee that is capable of performing under the GEM Mining Contracts without breach, the Debtors must first provide GEM Mining with information necessary to sustain their burden under section 365(f)(2)(B) of

the Bankruptcy Code. Until that necessary information is provided to GEM Mining by the Debtors and the proposed assignee, the request of the Debtors to assume and assign the GEM Mining Contracts to the proposed buyer should be denied by this Court.

        D.     *Potential Sale of the GEM Miners*

        20.     Section 363 of the Bankruptcy Code permits the Debtors, after notice and a hearing, to sell *property of the estate* outside the ordinary course of business. 11 U.S.C. § 363(b)(1) (emphasis added); *see also In re Sw. Fla. Heart Grp., P.A.*, 342 B.R. 639, 643 (Bankr. M.D. Fla. 2006). Property of the estate is defined, among other things, as "all legal or equitable interests of the debtor in property as of the commencement of the case" 11 U.S.C. § 541(a)(1). Thus, a debtor in possession or trustee may only sell property in which the debtor has a legal or equitable interest. *See In re Billingsley*, 338 B.R. 372, 376 (Bankr. C.D. Ill. 2006).

        21.     Here, the GEM Miners are exclusively owned by, and property of, GEM Mining. GEM Miners are merely at the Debtors' facilities for the provision of hosting services pursuant to the Master Services Agreement, which does not purport to provide any property or otherwise interest in GEM Miners to the Debtors. The Debtors have no legal or equitable interest in the GEM Miners. Indeed, the Debtors have offered no basis to support a finding that they have a legal or equitable interest in GEM Miners sufficient to meet the requirements of §§ 363(b) and 541(a) of the Bankruptcy Code. No justifications or otherwise support for this sale has been offered by the Debtors, and the Proposed Sale fails to facially establish the requisite elements necessary to be approved by this Court. Therefore, the GEM Miners are not property of the Debtors' estates and cannot be sold pursuant to the Proposed Sale.

## **RESERVATION OF RIGHTS**

22.     GEM Mining expressly reserves all of its rights under the GEM Mining Contracts, the Bankruptcy Code, or applicable law, including, without limitation, the right to: (a) supplement or amend this Limited Objection and to assert any additional issues with respect to any proposed assumption and assignment of the GEM Mining Contracts on any and all grounds, and amend or supplement any objections thereto; (b) assert any and all additional issues in connection with any proposed cure amount for the GEM Mining Contracts, and amend or supplement any objections thereto; (c) assert any nonmonetary defaults under the GEM Mining Contracts; (d) assert any rights for indemnification or contribution or setoff against the Debtors arising under the GEM Mining Contracts; (e) object to any proposed assignee's adequate assurance of future performance; or (f) assert any further objections as GEM Mining deems necessary or appropriate.

Dated: October 31, 2022

Respectfully submitted,

**FROST BROWN TODD LLC**

*/s/ A.J. Webb*
A.J. Webb, Esq.
S.D. Tex. Bar No. 3050291
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
Email: awebb@fbtlaw.com

-and-

4400 Post Oak Parkway
Suite 2850
Houston, Texas 77027
Tel: (713) 590-9300
Fax: (713) 590-9399

**COUNSEL FOR GEM MINING 1, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2022 a true and correct copy of the foregoing was

sent via ECF to all parties receiving ECF Notices in these chapter 11 cases.

*/s/ A.J. Webb*
A.J. Webb

0151489.0762429   4865-6643-8968v3