# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 91, 256, 331, & 332** |

## DECLARATION OF RYAN HAMILTON
## IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING THE SALE OF DEBTOR CN PLEDGOR LLC'S EQUITY INTERESTS IN CN BORROWER LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

I, Ryan Hamilton, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am a Senior Vice President at Jefferies LLC ("Jefferies"), a global investment banking firm with its principal offices at 520 Madison Avenue, 6th Floor, New York, New York 10022.

2. I submit this declaration (this "Declaration") in support of (a) the motion [Docket No. 91] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, approval to sell all or substantially all or any subset of the Debtors' assets (collectively, the "Assets") free and clear of any liens, claims, and encumbrances, (b) the *Notice of Successful Bidder for CN Pledgor Assets* [Docket No. 331]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Notice of Successful Bidder") designating Generate Lending, LLC or its designee (the "Purchaser"), based upon the Purchaser's bid set forth in that certain *Purchase and Sale Agreement*, the substantially final form of which is attached to the Notice of Successful Bidder as Exhibit A (the "Purchase and Sale Agreement"), as the Successful Bidder for the 100 percent equity interests (the "Pledged Equity") owned by Debtor CN Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC ("CN Borrower") (together with any related executory contracts or unexpired leases to be designated by the Purchaser, if any, the "CN Pledgor Assets"), and (c) the proposed form of order [Docket No. 332] (the "Sale Order") approving the sale of the CN Pledgor Assets to the Purchaser.

## QUALIFICATIONS

3. I have advised companies in financial restructurings and distressed mergers and acquisitions, raised capital for troubled companies, and represented debtors and creditor constituencies in bankruptcy proceedings. Before joining Jefferies in 2017, I was a vice president in the restructuring and finance group of Barclays Capital, Inc., which I joined in 2009. I have an MBA from the University of Chicago Booth School of Business, a JD from the University of Chicago Law School, and a BA from Emory University.

4. On August 16, 2021, the Debtors engaged Jefferies as their investment banker under an engagement letter to explore mergers and acquisitions and capital markets financing alternatives. On July 1, 2022, the scope of Jefferies engagement with the Debtors was expanded to include exploring restructuring alternatives. As a result, Jefferies is familiar with the Debtors' corporate and capital structure, management, business operations, and potential investor universe. In addition, in its capacity as the Debtors' investment banker, members of the Jefferies team and I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and in the development of the bidding procedures and the Debtors' marketing and sale process.

5. As a professional retained by the Debtors in these chapter 11 cases, Jefferies is charging for services provided in this matter, but I am not being specifically compensated for providing this Declaration or testimony. I am authorized to submit this Declaration on behalf of the Debtors.

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Jefferies team, the Debtors' management team, and the Debtors' other advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and my views based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## THE MARKETING PROCESS AND PROPOSED SALE

**A.  General Background and the CN Pledgor Assets**

7. The Debtors are a leader in the data center space and develop, own, and manage data centers across the United States with approximately 250MW of capacity currently operating across five different locations. The Debtors also have development assets representing an additional 335MW of capacity, plus a future development pipeline. In addition to their operating and in-development data center projects, the Debtors also have excess inventory and equipment that is available for sale, including modular data centers, pad mount transformers, and main power transformers.

8. The CN Pledgor Assets consist primarily of the 100 percent equity interests that Debtor CN Pledgor holds in non-Debtor CN Borrower, which in turn holds 100 percent of the equity interests in (a) non-Debtor CN Wolf Hollow LLC, which owns the modular data center located at Granbury, Texas ("Wolf Hollow") and (b) non-Debtor Compute North NE05 LLC, which owns the modular data center located in Kearney, Nebraska ("Kearney"). CN Borrower is

the borrower under a secured lending facility provided by Generate Lending, LLC (the "Generate Facility"), which I understand is secured by Wolf Hollow and Kearney and is further supported by a pledge of the Pledged Equity. As of the Petition Date, I understand that the amount outstanding under the Generate Facility was approximately $101,383,119.

9. The Debtors entered these chapter 11 cases with very limited liquidity and sought approval of a sale process that would maximize the value of the Debtors' Assets within the timeframe permitted by the Debtors' liquidity. On October 24, 2022, Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, certain bidding procedures governing the proposed sale of the Debtors' Assets (the "Bidding Procedures").

**B.     The Marketing Process and Designation of Successful Bidder**

10. At the direction of the Debtors, Jefferies began a formal marketing process in September 2022 with respect to a potential sale of the Debtors' Assets, including a sale of the CN Pledgor Assets.

11. Since the commencement of these cases, Jefferies has continued to administer a postpetition marketing and sale process on behalf of the Debtors consistent with Bidding Procedures in an effort to maximize value for the Debtors' estates and creditors. To date, the Debtors, with the assistance of Jefferies, solicited indications of interest from potential buyers, 66 of which executed non-disclosure agreements and were provided access to a dataroom containing confidential information regarding the Debtors and their business and Assets, including the CN Pledgor Assets. Accordingly, the Debtors and their professionals have afforded all potential bidders an opportunity to submit bids to acquire the Assets, including the CN Pledgor Assets.

12. After the foregoing marketing and sale process, the Debtors did not receive any Qualifying Bids by the Bid Deadline for the CN Pledgor Assets other than the Qualifying Bid submitted by the Purchaser pursuant to the Purchase and Sale Agreement. Specifically, the Purchase and Sale Agreement provides for, among other things, a cash purchase price of $5,000,000 to be paid to the Debtors on the closing date.

13. Pursuant to the Bidding Procedures Order and the Bidding Procedures, on October 28, 2022, the Debtors filed the Notice of Successful Bidder, advising parties in interest that the Debtors, in consultation with the Consultation Parties, designate the Purchaser as the Successful Bidder for the CN Pledgor Assets and will seek approval of the Sale Order approving the Purchase and Sale Agreement at a hearing to be held on October 31, 2022 at 5:00 p.m. (prevailing Central Time).

### THE PURCHASE AND SALE AGREEMENT IS THE BEST AVAILABLE TRANSACTION

14. Based on the foregoing marketing and sale process and my experience as an investment banker, I believe that the Purchase and Sale Agreement constitutes the highest and best offer for the CN Pledgor Assets and will thereby provide the greatest possible recovery for the Debtors' estates. I also believe, based on the foregoing sale process, that the consideration provided by the Purchaser pursuant to the Purchase and Sale Agreement constitutes fair and reasonable consideration for the CN Pledgor Assets given the circumstances, particularly in light of the liabilities of CN Borrower, Wolf Hollow, and Kearney in connection with the Generate Facility. I also believe that the Purchase and Sale Agreement represents the highest and best offer for the CN Pledgor Assets because it reflects the highest and only actionable bid received for such assets throughout the sale process.

15.     I further believe that the releases provided for in the Purchase and Sale Agreement and the Sale Order are necessary to obtain the Purchaser's approval of the Purchase and Sale Agreement.  It is my understanding that the Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the sale and the transactions contemplated thereunder, without the releases set forth in the Purchase and Sale Agreement.

## **GOOD FAITH**

16.     I believe that the Debtors, with the aid of their advisors, thoroughly and fairly marketed the Assets, including the CN Pledgor Assets, under the circumstances, and conducted the related sale process in good faith pursuant to the Bidding Procedures and the Bidding Procedures Order.  Based on my involvement in the foregoing sale process, I also believe that the terms of the Purchase and Sale Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.

17.     Finally, I am not aware of any indication of fraud or collusion between any of the bidders that participated in the sale process or any similar conduct that would taint the sale process or the sale of the CN Pledgor Assets to the Purchaser.

## **CONCLUSION**

18.     Given the above described marketing process, and the diligence conducted by the potential bidders, I believe that the CN Pledgor Assets have been fairly and thoroughly marketed under the circumstances.  Further, given the fact that the Debtors received only one Qualifying Bid for the CN Pledgor Assets, I believe that the consideration being given under the Purchase and Sale Agreement represents the highest and otherwise best offer for the CN Pledgor Assets.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 31, 2022
New York, New York

Respectfully submitted,

*/s/ Ryan Hamilton*
Ryan Hamilton
Senior Vice President
Jefferies LLC