UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket Nos. 91, 256, 331, & 332** |

**DECLARATION OF DRAKE HARVEY
IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING THE SALE OF
DEBTOR CN PLEDGOR LLC'S EQUITY INTERESTS IN CN BORROWER LLC FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

I, Drake Harvey, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the President of Compute North LLC and the other above-captioned debtors and debtors in possession (collectively, "Compute North" or the "Debtors").

2. I submit this declaration (this "Declaration") in support of (a) the Debtors' motion [Docket No. 91] (the "Motion")[2] seeking, among other things, approval to sell all or substantially all or any subset of the Debtors' assets (collectively, the "Assets") free and clear of any liens, claims, and encumbrances, (b) the *Notice of Successful Bidder for CN Pledgor Assets* [Docket No. 331] (the "Notice of Successful Bidder") designating Generate Lending, LLC or its designee (the "Purchaser"), based upon the Purchaser's bid set forth in that certain *Purchase and Sale*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Agreement*, the substantially final form of which is attached to the Notice of Successful Bidder as Exhibit A (the "Purchase and Sale Agreement"), as the Successful Bidder for the 100 percent equity interests (the "Pledged Equity") owned by Debtor CN Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC ("CN Borrower") (together with any related executory contracts or unexpired leases to be designated by the Purchaser, if any, the "CN Pledgor Assets"), and (c) the proposed form of order [Docket No. 332] (the "Sale Order") approving the sale of the CN Pledgor Assets to the Purchaser.

## QUALIFICATIONS

3.  I was appointed President of Compute North in September 2022, and prior to that appointment I served as Compute North's Chief Operating Officer.  In my capacity as President of Compute North, I am generally familiar with Compute North's business, operations, assets, liabilities, day-to-day operations, and financial affairs and I have been actively involved in the Debtors' restructuring efforts, including the marketing and proposed sale of the CN Pledgor Assets.

4.  Prior to joining Compute North in April 2021, I held leadership positions in telecommunications, technology, and SaaS businesses, and also have experience leading startup companies.  I hold a BS in Business Administration from the University of Delaware.

5.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## BACKGROUND ON THE SALE PROCESS AND CN PLEDGOR ASSETS

6. The Debtors are a leader in the data center space and develop, own, and manage data centers across the United States with approximately 250MW of capacity currently operating across five different locations. The Debtors also have development assets representing an additional 335MW of capacity, plus a future development pipeline. In addition to their operating and in-development data center projects, the Debtors also have excess inventory and equipment that is available for sale, including modular data centers, pad mount transformers, and main power transformers.

7. The CN Pledgor Assets consist primarily of the 100 percent equity interests that Debtor CN Pledgor holds in non-Debtor CN Borrower, which in turn holds 100 percent of the equity interests in (a) non-Debtor CN Wolf Hollow LLC, which owns the modular data center located at Granbury, Texas ("Wolf Hollow") and (b) non-Debtor Compute North NE05 LLC, which owns the modular data center located in Kearney, Nebraska ("Kearney"). CN Borrower is the borrower under a secured lending facility (the "Generate Facility") provided by Generate Lending, LLC ("Generate") as lender, which is secured by Wolf Hollow and Kearney and is further supported by a pledge of the Pledged Equity. As of the Petition Date, the amount outstanding under the Generate Facility was approximately $101,383,118. As set forth in the First Day Declaration,[3] prior to the Petition Date, Generate exercised certain voting rights with respect to the Pledged Equity, pursuant to which Generate established a board of managers at CN Borrower and appointed managers to that board. As a result of these actions, the Debtors no longer control the

---

[3] "First Day Declaration" means the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22].

governance of CN Borrower, Wolf Hollow, or Kearney, but the Debtors do retain the ownership of the Pledged Equity.

8. Prior to the Petition Date, the Debtors, with the assistance of their advisors, evaluated available alternatives in light of the Debtors' financial condition, including potential scenarios and transactions with respect to the CN Pledgor Assets. Following the Petition Date, and in light of the Debtors' very limited available liquidity, the Debtors, with the assistance and advice of their advisors, determined that pursuing a sale of the Assets, including the CN Pledgor Assets, presented the best available opportunity to maximize the value of the Debtors' estates for the benefit of all stakeholders. On October 24, 2022, Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, certain bidding procedures governing the proposed sale of the Debtors' Assets (the "Bidding Procedures"). The CN Pledgor Assets, along with all of the Debtors' other Assets, were marketed for sale in accordance with the Bidding Procedures Order and the Bidding Procedures and the Debtors, with the assistance of their advisors, solicited bids from all interested parties.

## THE PROPOSED SALE

9. I have reviewed with the Debtors' advisors the bids that were submitted by the Bid Deadline. No other bid for the CN Pledgor Assets was received by the Bid Deadline except for the bid submitted by the Purchaser as set forth in the Purchase and Sale Agreement. Further, I am not aware of any other prospective purchaser who has indicated a desire to acquire the CN Pledgor Assets on more advantageous financial terms than those offered by the Purchaser pursuant to the Purchase and Sale Agreement.

10. The Purchase and Sale Agreement provides for, among other things, the payment of a cash purchase price of $5,000,000 upon closing. This payment will provide much needed

4

liquidity for the Debtors' estates, which will benefit the Debtors' stakeholders, including by allowing the Debtors to continue pursuing potential sales of the Debtors' other Assets.

11. I believe that the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale of the CN Pledgor Assets to the Purchaser because such sale is necessary to preserve and maximize the value of the Debtors' estates for the benefit of creditors. I believe that the consideration provided by the Purchaser pursuant to the Purchase and Sale Agreement constitutes fair and reasonable consideration for the CN Pledgor Assets given the circumstances, particularly in light of the liabilities of CN Borrower, Wolf Hollow, and Kearney in connection with the Generate Facility. I also believe that the Purchase and Sale Agreement represents the highest and best offer for the CN Pledgor Assets because it reflects the highest and only actionable bid received for such assets throughout the sale process.

12. I believe that approval of the Purchase and Sale Agreement (including all transactions and actions contemplated thereunder) at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Further, I believe that the terms of the Purchase and Sale Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.

13. I believe that CN Pledgor holds title to the Pledged Equity and, based upon the advice of the Debtors' advisors, I believe that the CN Pledgor Assets constitute property of the Debtors' estates and that title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (a) have full corporate power and authority to execute the Purchase and Sale Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been, or will be, duly and validly authorized by all necessary corporate action), (b) have full corporate power and authority necessary to consummate the transactions

contemplated by the Purchase and Sale Agreement, (c) have taken, or will take, all corporate actions necessary to authorize and approve the Purchase and Sale Agreement and the consummation by the Debtors of the transactions contemplated thereunder, and (d) require no consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, to consummate such transactions.

14. I believe that the Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the sale and the transactions contemplated thereunder, if the sale of the CN Pledgor Assets were not, except as otherwise provided in the Purchase and Sale Agreement, free and clear of all Encumbrances (as defined in the Purchase and Sale Agreement), or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Purchase and Sale Agreement, including with respect to the Assumed Liabilities), be liable for any such Encumbrances.

15. I further believe that the releases provided for in the Purchase and Sale Agreement and the Sale Order are consensual, reasonable in scope, and necessary to obtain the Purchaser's approval of the Purchase and Sale Agreement. It is my belief that the Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the sale and the transactions contemplated thereunder, without the releases set forth in the Purchase and Sale Agreement.

16. In conclusion, I believe that the sale of the CN Pledgor Assets to the Purchaser is in the best interest of the Debtors' estates and, based upon the advice of the Debtors' advisors, satisfies all of the applicable requirements of the Bankruptcy Code and should be approved.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 31, 2022
Eden Prairie, Minnesota

Respectfully submitted,

*/s/ Drake Harvey*
Drake Harvey
President
Compute North LLC