## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket Nos. 91, 256, 332, & 350** |

### NOTICE OF FURTHER REVISED PROPOSED ORDER
### (I) APPROVING THE SALE OF DEBTOR CN PLEDGOR LLC'S
### EQUITY INTERESTS IN CN BORROWER LLC FREE AND CLEAR
### OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING THE
### ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
### IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE THAT:**

1.      On September 26, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion [Docket No. 91] (the "Sale Motion")[2] seeking, among other things, approval of the sale of all or substantially all or any subset of the Debtors' assets.

2.      On October 24, 2022, the Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving certain bidding procedures in connection with the proposed sale of the Debtors' assets pursuant to the Sale Motion.

3.      On October 28, 2022, the Debtors filed the *Notice of Successful Bidder for CN Pledgor Assets* [Docket No. 331] (the "Successful Bidder Notice"), notifying parties in interest

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

that, pursuant to the Bidding Procedures Order, the Debtors have designated Generate Lending, LLC or its designee, including an affiliate formed for purposes of taking title to the CN Pledgor Assets, (the "Purchaser") as the Successful Bidder for the 100 percent equity interests owned by Debtor CN Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC (together with any related executory contracts or unexpired leases to be designated by the Purchaser, if any, the "CN Pledgor Assets").

4.      On October 28, 2022, the Debtors filed the *Notice of Proposed Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free and Clear of All Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* [Docket No. 332] (the "Sale Order Notice").

5.      A proposed form of order approving the sale of the CN Pledgor Assets to the Purchaser was attached to the Sale Order Notice as Exhibit A (the "Initial Proposed Order").

6.      On October 31, 2022, the Debtors filed a revised proposed form of order [Docket No. 350] (the "Revised Proposed Order").

7.      On October 31, 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") held a hearing (the "Sale Hearing") to consider the Sale.  At the Sale Hearing, parties in interest raised concerns with respect to certain provisions of the Revised Proposed Order.

8.      The Debtors hereby file a further revised proposed form of order, attached hereto as **Exhibit A** (the "Further Revised Proposed Order") approving the sale of the CN Pledgor Assets to the Purchaser, which incorporates certain changes in response to comments received from parties in interest.  For the convenience of the Court and parties in interest, a cumulative redline

of the Further Revised Proposed Order marked against the Initial Proposed Order is attached hereto as **Exhibit B** and an interim redline of the Further Revised Proposed Order marked against the Revised Proposed Order is attached hereto as **Exhibit C**.

[*Remainder of Page Intentionally Left Blank*]

Dated:  October 31, 2022
Houston, Texas

/s/   *James T. Grogan III*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg  (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
　　　　sayanbhattacharyya@paulhastings.com
　　　　danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
　　　　michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Further Revised Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (I) APPROVING THE SALE OF
DEBTOR CN PLEDGOR LLC'S EQUITY INTERESTS IN CN BORROWER LLC FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 91] (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving

and authorizing the sale (the "Sale") of the 100 percent equity interests owned by Debtor CN

Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC (the "Acquired Interests") free

and clear of all liens, claims, and encumbrances to the Purchaser, pursuant to that certain purchase

and sale agreement (the "Purchase and Sale Agreement") substantially in the form attached hereto

as **Exhibit 1**, (ii) approving the Purchase and Sale Agreement in its entirety and authorizing the

parties thereto to implement and consummate the transactions, including the Sale, contemplated

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase and Sale Agreement, as applicable.

thereunder; (iii) authorizing the Debtors to assume and assign certain executory contracts in connection therewith, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having entered an order on October 24, 2022 [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and leases (the "Assumption and Assignment Procedures") and the dates, deadlines, and bidding procedures (the "Bidding Procedures") with respect to, and notice of, the proposed sale of the Acquired Interests (as defined in the Purchase and Sale Agreement); and the Court having conducted a hearing on the Motion on October 31, 2022 (the "Sale Hearing"); and this Court having reviewed the Motion and considered the arguments of counsel and the matters addressed at the Sale Hearing, including the Harvey Declaration and Hamilton Declaration; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     The findings and conclusions herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.  To the extent of any conflict, the oral rulings shall control.

B.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Motion is a core proceeding under 28 U.S.C. §157(b)(2).  The Court may enter this Order, which constitutes a final order, consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and applicable Bankruptcy Local Rules.

C.      On October 24, 2022, this Court entered the Bidding Procedures Order, and thereby (a) approved the Bidding Procedures, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof, (b) authorized the Debtors to enter into Asset Purchase Agreements with Stalking Horse Bidders; and (c) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts (the "Cure Amounts") and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order. The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

D.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Acquired Interests.  The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures. The Debtors did not

receive any Qualifying Bids by the Bid Deadline for the Acquired Interests other than the Purchase and Sale Agreement, and therefore, on October 28, 2022, filed and served the Notice of Cancellation of Auction, Selection of Successful Bidder, and Scheduling of Sale Hearing [Docket No. 331]. In accordance with the Bidding Procedures, the Debtors, in consultation with the Consultation Parties, determined that the bid submitted by the Purchaser and memorialized by the Purchase and Sale Agreement is the Successful Bid (as defined in the Bidding Procedures) for the Acquired Interests.  The Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests constitutes a valid and sound exercise of the Debtors' business judgment.

E.      As evidenced by the certificates of service filed by the Debtors with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, (i) the Motion, (ii) the Sale Hearing, (iii) the entry of this Order, (iv) the Purchase and Sale Agreement, and (v) the transactions contemplated under the Purchase and Sale Agreement, including the Sale, the assumption and assignment of the Assigned Contracts (as defined in the Purchase and Sale Agreement), and the fixing of Cure Amounts in connection therewith, has been provided to all parties entitled thereto, including, without limitation, all counterparties to the Assigned Contracts.  Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

F.      The Acquired Interests constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The

Debtors (i) have full corporate power and authority to execute the Purchase and Sale Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been duly and validly authorized by all necessary corporate action), (ii) have full corporate power and authority necessary to consummate the transactions (including the Sale) contemplated by the Purchase and Sale Agreement, (iii) have taken all corporate actions necessary to authorize and approve the Purchase and Sale Agreement and the consummation by the Debtors of the transactions contemplated thereunder (including the Sale), and (iv) require no consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, to consummate such transactions.

G.      The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of the Debtors' business judgment, (i) to sell the Acquired Interests on the terms and conditions set forth in the Purchase and Sale Agreement, (ii) to assume and assign the Assigned Contracts to the Purchaser, and (iii) to consummate all transactions contemplated by the Purchase and Sale Agreement.  All such actions or transactions relating to the Sale and/or contemplated by the Purchase and Sale Agreement are appropriate exercises of the Debtors' business judgment.  Approval of the Purchase and Sale Agreement (including all transactions and actions contemplated thereunder) and of the assumption and assignment of the Assigned Contracts at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.      The consideration provided by the Purchaser pursuant to the Purchase and Sale Agreement (i) is fair and reasonable, (ii) represents the highest and best offer reasonably and practically obtainable for the Acquired Interests under the circumstances, and (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Interests.

I.      The Debtors may sell the Acquired Interests free and clear of any and all liens, claims, interests, rights of setoff, recoupment, netting and deductions, any successor or successor-in-interest liability theory, and other encumbrances of any kind or nature whatsoever (if any, and except for the Assumed Liabilities, the "Encumbrances"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the Sale, the Motion, the Purchase and Sale Agreement, any transaction contemplated thereunder, and/or the assumption and assignment of the Assigned Contracts, are deemed to have fully consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances on the Acquired Interests, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the Sale (after giving effect to any closing costs payable by the Debtors) attributable to the Acquired Interests in which such holder alleges an Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

J.      The releases provided for in the Purchase and Sale Agreement and this Order are consensual, reasonable in scope, and necessary to obtain the Purchaser's approval of the Purchase and Sale Agreement.  The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, without the releases set forth in the Purchase and Sale Agreement and this Order.  The Motion shall be deemed a motion to approve the good-faith compromise and settlement of all such claims,

interests, and controversies pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and the entry of this Order shall constitute the Court's approval of such compromise and settlement under section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is a valid exercise of the Debtors' business judgment, fair, equitable, reasonable, and in the best interests of the Debtors and their estates.

K.     The Purchaser is not, and shall not be considered or deemed, a successor to any of the Debtors or their respective estates, and there is no continuity of enterprise between the Purchaser and any Debtor.  The Purchaser (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

L.     The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, if the Sale and the assumption and assignment of the Assigned Contracts were not, except as otherwise provided in the Purchase and Sale Agreement, free and clear of any and all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Purchase and Sale Agreement and with respect to the Assumed Liabilities), be liable for any of such Encumbrances.

M.     Subject to further order of this Court and the reservations as included herein, the Assigned Contracts identified in the Purchase and Sale Agreement are valid and binding, in full force and effect, and enforceable in accordance with their terms, and are property of the Debtors'

estates pursuant to section 541(a) of the Bankruptcy Code, subject to resolution of any pending Cure Disputes, as applicable.

N.       Subject to further order of this Court and the reservations as included herein, the Purchaser has provided, or will provide following resolution of any applicable Cure Dispute, adequate assurance, within the meaning of Section 365(b)(1) of the Bankruptcy Code, of cure of all defaults, obligations, and liabilities under the Assigned Contracts and of payment of the Cure Amount for each of the Assigned Contracts as set forth in the Purchase and Sale Agreement or in accordance with the resolution of an applicable Cure Dispute.  The undisputed Cure Amount shall be paid in accordance with the terms of any order entered by the Court approving the assumption and assignment of such Assigned Contract or as otherwise agreed among the parties, following resolution of any cure dispute.

O.       To the extent that any non-Debtor party to any Assigned Contract objects or asserts or claims some greater amount is owed to it under such Assigned Contract other than the Cure Amount stated with respect to the relevant Assigned Contract, such objection, assertion, and/or claim is expressly overruled, unless it has been properly preserved by timely objection for future resolution pursuant to the Assumption and Assignment Procedures.

P.       The Assumption and Assignment Procedures, as set forth and defined in the Bidding Procedures Order, are reasonable and provide all parties with appropriate notice and ability to object.  Each of the non-Debtor parties to the Assigned Contracts (i) has had a fair and reasonable opportunity to object to the Assumption Notice served on October 18, 2022 [Docket No. 209], and (ii) will have a fair and reasonable opportunity to object to the supplement to the Assumption Notice served on October 28, 2022 [Docket No. 334], and (iii) will have a fair and reasonable opportunity to object to the Notice of Successful Bidder detailing the Assigned

Contracts to be assumed and assigned and served on October 28, 2022 [Docket No. 331] , subject to the applicable objection deadline provided in the Bidding Procedures Order.

Q.     It is essential that the Sale occur within the time constraints set forth in the Purchase and Sale Agreement.  Time is of the essence in consummating the Sale.

R.     The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b). and 365(f).  All of the applicable requirements of such sections have been complied with in respect of the Sale.

S.     The terms of the Purchase and Sale Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.  Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, director, officer, or representative of the Purchaser has engaged in any conduct that would cause or permit the Purchase and Sale Agreement, the Sale or any transactions contemplated thereunder, or this Order to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

T.     Neither the Purchaser nor any of its affiliates, members, managers, principals, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not otherwise affiliated with the Debtors.

U.     The Purchaser has proceeded in good-faith and without collusion in all respects in connection with the Sale and the Purchase and Sale Agreement.  The negotiation and execution of the Purchase and Sale Agreement and related documents were conducted in good-faith and constituted an arm's-length transaction, and the Purchase and Sale Agreement was not entered

into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors.  The Purchaser is therefore a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Purchase and Sale Agreement and this Order.  The Purchaser has otherwise proceeded in good-faith in connection with these chapter 11 cases and this proceeding.

V.      In the absence of a stay pending appeal, the Purchaser may close the Sale and the other transactions contemplated by the Purchase and Sale Agreement at any time after entry of this Order.  Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Sale and the transactions contemplated in the Purchase and Sale Agreement is GRANTED and approved as set forth herein.

2.      All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and the entry of this Order, whether filed or stated on the record before this Court, which have not been withdrawn with prejudice, waived, settled, or preserved at the Sale Hearing, and all reservations of rights included in such objections (except for pending Cure Disputes or as provided for herein), are hereby overruled and denied on the merits and with prejudice.

3.      Notice of the Motion, the Sale, the Purchase and Sale Agreement, all transactions contemplated thereunder, the Sale Hearing, and the entry of this Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.      In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Sale, including all of the terms and conditions related thereto as set forth in the Purchase and Sale Agreement, is hereby authorized and approved in all respects. The Purchase and Sale Agreement, together with all annexes, exhibits, and amendments thereto, including all actions and transactions contemplated therein and all of the terms and conditions thereof, is hereby authorized and approved in its entirety.  The Debtors are hereby authorized and directed to enter into the Purchase and Sale Agreement and to perform all of their obligations thereunder.  The failure to specifically include any particular provision of the Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement, and any related agreements, and any amendments thereto as may be made by the parties thereunder in accordance with the Purchase and Sale Agreement, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.      The releases provided in paragraph 21 of this Order are hereby authorized and approved in all respects.

6.      Subject to further order of this Court and the reservations as included herein, the Debtors are authorized to assume the Assigned Contracts and to assign them to the Purchaser without limiting any Counterparty's rights under timely and unresolved Cure Disputes.  Unless otherwise agreed with the Purchaser, no employment or benefits agreements will be assumed and assigned to the Purchaser.

7.      The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code as to all aspects of the Sale and the transactions under

and pursuant to the Purchase and Sale Agreement and this Order.  The transfer of the Acquired

Interests to the Purchaser, and the related transactions to be consummated in accordance with the

Purchase and Sale Agreement, constitute a good-faith transaction entitled to the protections

afforded by section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on

appeal of the authorization provided herein to consummate the Sale shall not affect the validity of

the sale of the Acquired Interests to the Purchaser (including the assumption and assignment by

the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending

such appeal.

8.      The terms of the Purchase and Sale Agreement (including regarding the Sale and

any and all other transactions contemplated thereunder) were negotiated, proposed, and entered

into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length

bargaining positions.  The consideration provided by the Purchaser for the Acquired Interests

under the Purchase and Sale Agreement is fair and reasonable, and the Sale and any transactions

under the Purchase and Sale Agreement may not be avoided under section 363(n) of the

Bankruptcy Code.

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy

Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or

in equity, the Debtors are authorized to and shall transfer the Acquired Interests to the Purchaser

at the Closing (as defined in the Purchase and Sale Agreement), and the Sale shall be, free and

clear of any and all liens, claims, encumbrances, and interests of any kind or nature whatsoever,

with any and all such valid or asserted liens, claims, encumbrances, and interests, if any, upon the

Closing, attaching solely to the proceeds of the Sale ultimately attributable to the Acquired

Interests against which the holders thereof assert an interest, with the same nature, validity,

priority, extent, perfection, force, and effect, if any, that such liens, claims, encumbrances, and interests encumbered all or any portion of the Acquired Interests immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto. For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

10.     The Acquired Interests shall be transferred to the Purchaser upon and as of the Closing, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Interests. The Debtors are further authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase and Sale Agreement; (b) close the Sale as contemplated by the Purchase and Sale Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase and Sale Agreement and any actions or transactions contemplated thereunder, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase and Sale Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations contemplated by the Purchase and Sale Agreement and such other ancillary documents.

11.     Subject to further order of this Court and the reservations as included herein, the assumption of the Assigned Contracts and the assignment thereof to the Purchaser is approved, subject to resolution of any pending, timely Cure Disputes. The Debtors are authorized and directed to assign the Assigned Contracts in connection with the Sale under the Purchase and Sale Agreement, with such assignment, in each case, being effective as of the later of (x) Closing and

(y) resolution of any pending, timely Cure Disputes.  All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for such assumption by the relevant Debtor and assignment to the Purchaser of each Assigned Contract have been satisfied and, upon the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes, as applicable, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract, and each Assigned Contract shall remain valid and binding, and in full force and effect, for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Cure Amount set forth in an Assumption Notice, or as otherwise agreed by the non-Debtor parties to the Assigned Contracts or by order of the Court, constitute all of the Cure Amount that is required to be paid under section 365(b)(1) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts.  Pursuant to section 365(k) of the Bankruptcy Code, other than as provided for in the Purchase and Sale Agreement, upon the assignment of the Assigned Contracts to the Purchaser, neither the Debtors nor the Purchaser shall have any further liability or obligations with respect thereto.

12.    Upon the Closing Date, and except as otherwise provided herein or in the Purchase and Sale Agreement, the Purchaser shall not be liable for any liability or other obligation of the Debtors arising under or related to any of the Acquired Interests.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Purchase and Sale Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known

or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, claims arising under the federal Worker Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the United States Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, environmental liabilities, workers' compensation "experience rating," unemployment tax "contribution rating" rule or regulation, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Interests prior to the Closing.

13.     All persons and entities holding liens or interests in the Acquired Interests arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Interests, or the transfer of the Acquired Interests to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Acquired Interests, such persons' or entities' liens or interests in and to the Acquired Interests.

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record.

15.     If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, the Acquired Interests shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of liens or interests which the person or entity

has or may assert with respect to the Acquired Interests, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Interests.

16. This Order, whether or not filed, registered, or otherwise recorded (including by entry on this Court's docket), shall be effective as a conclusive determination of the transfer of title in the Acquired Interests to the Purchaser, and that all liens, claims, encumbrances, and interests of any kind or nature whatsoever existing as to all or a portion of the Acquired Interests have been unconditionally released, discharged, and terminated. The Sale and this Order are and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase and Sale Agreement.

17. The Purchase and Sale Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the

rights of any party holding a lien, claim, or encumbrance, if any, on or against the Acquired Interests.

      18.     All time periods set forth in this Order and the Purchase and Sale Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

      19.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit closing of the sale of the Acquired Interests.  This Order shall otherwise be effective immediately upon its entry.

      20.     To the extent there is any inconsistency between the terms of the Purchase and Sale Agreement, the Motion, and this Order, the terms of this Order shall govern.

21. **Mutual Release**.

      (i)     For good and valuable consideration on behalf of the Purchaser, the adequacy of which is hereby confirmed, on and after the Closing, each of the Debtors[3] (in their own right, on behalf of their estates and their current and former direct and indirect subsidiaries (other than the Acquired Companies), and each such entity's and its current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Debtor Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Purchaser, the Purchaser's current and former direct and indirect subsidiaries, and the Purchaser's and the Purchaser's current and former direct and indirect subsidiaries' directors, officers, managers, members, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management

---

[3]    The "Debtors" are the following entities: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871) (also the Seller); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, successors, and assigns, and the attorneys and current directors of CN Borrower, LLC, CN Wolf Hollow LLC, and Compute North NE05, LLC (collectively, the "Purchaser Released Parties") and their respective property and assets from any and all acts and omissions of the Purchaser Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Debtor Releasing Parties now have, may claim to have or may come to have against the Purchaser Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (c) any and all claims and causes of action based on or relating to or in any manner arising from in whole or in part, any Purchaser Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) that certain Credit and Guaranty Agreement, dated as of February 7, 2022, as amended by that certain Consent and Amendment No. 1 to Credit and Guaranty Agreement and Amendment No. 1 to Pledge and Security Agreement, dated as of April 28, 2022, that certain Consent and Amendment No. 2 to Credit and Guaranty Agreement, dated as of June 17, 2022, that certain Amendment No. 3 to Credit and Guaranty Agreement, dated as of August 23, 2022, and that certain Amendment No. 4 to Credit and Guaranty Agreement, dated as of September 16, 2022, and as the same may be further amended, amended and restated, restated, modified or supplemented and in effect from time to time prior to the date of entry of this Order, by and among CN Borrower LLC, certain subsidiary guarantors from time to time party thereto, Generate Lending, LLC, as administrative agent and collateral agent, and the lenders from time to time party thereto (the "Credit Agreement"), (iii) that certain Guaranty Agreement, dated as of February 7, 2022, entered into by Compute North LLC and Compute North Holdings, Inc. ("CN Holdings"), as the sponsors, in favor of Generate Lending, LLC as Administrative Agent (the "Guaranty Agreement"), (iv) that certain Pledge Agreement, dated as of February 7, 2022, entered into by CN Pledgor LLC, as Pledgor, and Generate Lending, LLC, as Collateral Agent (the "Pledge Agreement"), (v) that certain Voting Agreement, dated as of February 2, 2022, by and among CN Holdings and each holder of the preferred stock of CN Holdings party thereto (the "Voting Agreement"), (vi) that certain Letter Agreement, dated as of October 18, 2022, by and among Mercuria Energy America, LLC, CN Wolf Hollow LLC and Generate Lending, LLC (the "Letter Agreement") or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty

Agreement, Pledge Agreement, Voting Agreement, or Letter Agreement or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, (d) any actions taken by or on behalf of any of the Purchaser Released Parties in connection with the ownership of the preferred stock of Compute North Holdings or their participation on the Board of Directors of CN Holdings, and (e) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, including without limitation, any right to assert any disgorgement or recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Purchaser Released Party (including, for these purposes, CN Wolf Hollow LLC, and Compute North NE05, LLC) from any claims, obligations or liabilities (1) arising after Closing under the Sale Order, the PSA or the TSA or (2) for fees payable in exchange for services provided under, and reimbursement of costs and expenses incurred in connection with services provided under, the Kearney PMA (as defined in the PSA) or the WH PMA (as defined in the PSA), each as amended and supplemented by that certain  Stipulation and Agreed Order by and among Compute North LLC, Compute North NE05 LLC, CN Wolf Hollow LLC, and Generate Lending, LLC Concerning Certain Project Management Agreement [Dkt. No. 266] (the "Stipulation"), as required thereunder.

(ii)      On and after the Closing, the Purchaser (in its own right, on behalf of its current and former direct and indirect subsidiaries (including the Acquired Companies), and the Purchaser's and its current and former direct and indirect subsidiaries' current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Purchaser Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Debtors, the Debtors' current and former direct and indirect subsidiaries (other than the Acquired Companies), and any of the Debtors' and the Debtors' current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, and

successors and assigns (collectively, the "Debtor Released Parties") and their respective property and assets from any and all acts and omissions of the Debtor Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Purchaser, or the Purchaser's successors or assigns, whether individually or collectively), which the Purchaser Releasing Parties now have, may claim to have or may come to have against the Debtor Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (b) any and all claims and causes of action based on or relating to or in any manner arising from in whole or in part, any Debtor Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) the Credit Agreement, (iii) the Guaranty Agreement, (iv) the Pledge Agreement, (v) the Voting Agreement, (vi) the Letter Agreement or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty Agreement, Pledge Agreement, Voting Agreement, or Letter Agreement or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, and (d) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any claim or cause of action arising under or pursuant to the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Debtor Released Party from any claims, obligations or liabilities arising under the Stipulation or after Closing under the Sale Order, the PSA, or the TSA.

(iii)   These paragraphs are in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Debtor Releasing Parties in favor of the Purchaser Released Parties or by the Purchaser Releasing Parties in favor of the Debtor Released Parties.

22.   The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

23.   Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

25.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase and Sale Agreement, the Motion, and this Order.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization of the Debtors, or dismissing any Debtors' chapter 11 cases, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Order or the Purchase and Sale Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' chapter 11 cases.  Any order granting conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Order shall survive such conversion or dismissal.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Order and the terms and provisions of the Purchase and Sale Agreement (including all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith).

29.     This Order and the Purchase and Sale Agreement (including the releases provided in paragraph 21 of this Order and all terms and provisions thereof) shall be binding in all respects

upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Acquired Interests, and, as applicable, any trustee that may be appointed in these chapter 11 cases or any superseding cases under chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of the Purchase and Sale Agreement or this Order.

30.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, all rights and issues related to Assumed Contracts, including, assumption and assignments issues, cure amounts and adequate assurance of future performance are reserved and shall be heard on November 7, 2022 or such later date as determined by the Court.

31.     Notwithstanding anything to the contrary in this Order, absent further order of the Court, including on an emergency basis, or the consent of TZ Capital Holdings, LLC, the Debtors will not (i) assume and assign contracts to the Purchaser pursuant to this Order related to the operations of TZRC LLC or (ii) waive any non-competition or similar restrictive covenant under section 6.13 of the Purchase and Sale Agreement with respect to any employees that provide on-site services to TZRC LLC.

32.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, to the extent that any agreement between one or more of the Debtors and any of the Objecting

Counterparties[4] constitutes an "Assigned Contract" or otherwise will be transferred or assigned to the Purchaser or a third party designated by Purchaser pursuant to this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, such Objecting Counterparty's right to assert setoff, recoupment, and common law or statutory rights under similar doctrines, whether arising out of state law or bankruptcy law, shall be expressly preserved and the rights of all parties in interest, including the Debtors and the Purchaser, to respond or object to such setoff, recoupment, and common law or statutory rights under similar doctrines are also expressly preserved.

33.     For the avoidance of doubt, the Debtors have not sought authorization for, and this Order does not authorize, the sale of assets that are owned by non-Debtor third parties, including, without limitation, the sale, assignment, or transfer of any equipment owned by the Objecting Counterparties, including, without limitation, the miners owned by any Objecting Counterparties located at the Wolf Hollow Project or Kearney Project (each as defined in the Purchase and Sale Agreement), and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

34.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, the Objecting Counterparties' rights are preserved to object to the assumption or assumption and assignment of any of such Objecting Counterparty's agreements with the Debtors to Purchaser or a third party designated by Purchaser on any basis, including (without limitation) the failure to provide adequate assurance of prompt cure, compensation for pecuniary loss, or future

---

[4]     "Objecting Counterparties" means (i) Marathon Digital Holdings, Inc. or any of its affiliates; (ii) GEM Mining 1, LLC or any of its affiliates; (iii) Decimal Digital Currency I, LLC or any of its affiliates; (iv) Sphere 3D Corp. or any of its affiliates; and (v) Foundry Digital LLC or any of its affiliates.

performance, and the rights of all parties in interest, including the Debtors and the Purchaser, to respond to any such objection are also expressly preserved.

35.     Any objections or responses to cure amounts, assumption and assignment, and adequate assurance of future performance shall be filed on or before 7:00 a.m., prevailing Central Time, on November 7, 2022.  The hearing on any such objections or responses shall be held on November 7, 2022, at 9:00 a.m., prevailing Central Time, or such later date as agreed upon by the Debtors, the Purchaser, and such objecting party.

Houston, Texas
Dated:  _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**PURCHASE AND SALE AGREEMENT**

**<u>Exhibit B</u>**

**Cumulative Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
| Debtors. | ) | (Jointly Administered) |

**ORDER (I) APPROVING THE SALE OF**
**DEBTOR CN PLEDGOR LLC'S EQUITY INTERESTS IN CN BORROWER LLC FREE**
**AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 91] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving and authorizing the sale (the "Sale") of the 100 percent equity interests (the "Acquired Interests") (comprising the Debtors' equity interests owned by Debtor CN Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC and its direct or indirect subsidiaries, or (the "Acquired Entities Interests") free and clear of all liens, claims, and encumbrances to the Purchaser, pursuant to that certain purchase and sale agreement (the "Purchase and Sale Agreement") substantially in the form attached hereto as **Exhibit 1**, (ii) approving the Purchase and Sale Agreement in its entirety and authorizing the parties thereto to implement and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase and Sale Agreement, as applicable.

consummate the transactions, including the Sale, contemplated thereunder; (iii) authorizing the Debtors to assume and assign certain executory contracts in connection therewith, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having entered an order on October 24, 2022 [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and leases (the "Assumption and Assignment Procedures") and the dates, deadlines, and bidding procedures (the "Bidding Procedures") with respect to, and notice of, the proposed sale of the Acquired Interests (as defined in the Purchase and Sale Agreement); and the Court having conducted a hearing on the Motion on October [31], 2022 (the "Sale Hearing"); and this Court having reviewed the Motion and considered the arguments of counsel and the matters addressed at the Sale Hearing[, including the [●]Harvey Declaration and Hamilton Declaration]; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      The findings and conclusions herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of

fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing. To the extent of any conflict, the oral rulings shall control.

B.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Motion is a core proceeding under 28 U.S.C. §157(b)(2).  The Court may enter this Order, which constitutes a final order, consistent with Article III of the United States Constitution.   The statutory predicates for the relief requested in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and applicable Bankruptcy Local Rules.

C.      On October 24, 2022, this Court entered the Bidding Procedures Order, and thereby (a) approved the Bidding Procedures, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof, (b) authorized the Debtors to enter into Asset Purchase Agreements with Stalking Horse Bidders; and (c) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.   The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts (the "Cure Amounts") and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order. The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

D.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the

Bidding Procedures Order.   The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Acquired Interests.   The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures. The Debtors did not receive any Qualifying Bids by the Bid Deadline for the Acquired Interests other than the Purchase and Sale Agreement, and therefore, on October [28], 2022, filed and served the Notice of Cancellation of Auction, Selection of Successful Bidder, and Scheduling of Sale Hearing [Docket No. ⎯]331]. In accordance with the Bidding Procedures, the Debtors, in consultation with the Consultation Parties, determined that the bid submitted by the Purchaser and memorialized by the Purchase and Sale Agreement is the Successful Bid (as defined in the Bidding Procedures) for the Acquired Interests.   The Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests constitutes a valid and sound exercise of the Debtors' business judgment.

E.      As evidenced by the certificates of service filed by the Debtors with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, (i) the Motion, (ii) the Sale Hearing, (iii) the entry of this Order, (iv) the Purchase and Sale Agreement, and (v) the transactions contemplated under the Purchase and Sale Agreement, including the Sale, the assumption and assignment of the Assigned Contracts (as defined in the Purchase and Sale Agreement), and the fixing of Cure Amounts in connection therewith, has been provided to all parties entitled thereto, including, without limitation, all counterparties to the Assigned Contracts.   Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be

heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

      F.     The Acquired Interests constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (i) have full corporate power and authority to execute the Purchase and Sale Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been duly and validly authorized by all necessary corporate action), (ii) have full corporate power and authority necessary to consummate the transactions (including the Sale) contemplated by the Purchase and Sale Agreement, (iii) have taken all corporate actions necessary to authorize and approve the Purchase and Sale Agreement and the consummation by the Debtors of the transactions contemplated thereunder (including the Sale), and (iv) require no consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, to consummate such transactions.

      G.     The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of the Debtors' business judgment, (i) to sell the Acquired Interests on the terms and conditions set forth in the Purchase and Sale Agreement, (ii) to assume and assign the Assigned Contracts to the Purchaser, and (iii) to consummate all transactions contemplated by the Purchase and Sale Agreement. All such actions or transactions relating to the Sale and/or contemplated by the Purchase and Sale Agreement are appropriate exercises of the Debtors' business judgment. Approval of the Purchase and Sale Agreement (including all transactions and actions contemplated thereunder) and of the assumption and assignment of the Assigned Contracts at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.      The consideration provided by the Purchaser pursuant to the Purchase and Sale Agreement (i) is fair and reasonable, (ii) represents the highest and best offer reasonably and practically obtainable for the Acquired Interests under the circumstances, and (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Interests.

I.      The Debtors may sell the Acquired Interests free and clear of any and all liens, claims, interests, rights of setoff, recoupment, netting and deductions, any successor or successor-in-interest liability theory, and other encumbrances of any kind or nature whatsoever (if any, and except for the Assumed Liabilities, the "Encumbrances"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the Sale, the Motion, the Purchase and Sale Agreement, any transaction contemplated thereunder, and/or the assumption and assignment of the Assigned Contracts, are deemed to have fully consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances on the Acquired Interests, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the Sale (after giving effect to any closing costs payable by the Debtors) attributable to the Acquired Interests in which such holder alleges an Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

J.      The releases provided for in the Purchase and Sale Agreement and this Order are consensual, reasonable in scope, and necessary to obtain the Purchaser's approval of the

Purchase and Sale Agreement.  The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, without the releases set forth in the Purchase and Sale Agreement and this Order.  The Motion shall be deemed a motion to approve the good-faith compromise and settlement of all such claims, interests, and controversies pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and the entry of this Order shall constitute the Court's approval of such compromise and settlement under section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is a valid exercise of the Debtors' business judgment, fair, equitable, reasonable, and in the best interests of the Debtors and their estates.

K.      The Purchaser is not, and shall not be considered or deemed, a successor to any of the Debtors or their respective estates, and there is no continuity of enterprise between the Purchaser and any Debtor.  The Purchaser (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

L.      The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, if the Sale and the assumption and assignment of the Assigned Contracts were not, except as otherwise provided in the Purchase and Sale Agreement, free and clear of any and all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the

Purchase and Sale Agreement and with respect to the Assumed Liabilities), be liable for any of such Encumbrances.

M.      ~~The Assigned Contracts, including any~~Subject to further order of this Court and the reservations as included herein, the Assigned Contracts ~~pending resolution of timely Cure Disputes, are~~identified in the Purchase and Sale Agreement. ~~Each of the Assigned Contracts is~~ are valid and binding, in full force and effect, and enforceable in accordance with ~~its~~their terms, and ~~is~~are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code, subject to resolution of any pending Cure Disputes, as applicable.

N.      ~~The~~Subject to further order of this Court and the reservations as included herein, the Purchaser has provided, or will provide following resolution of any applicable Cure Dispute, adequate assurance, within the meaning of Section 365(b)(1) of the Bankruptcy Code, of cure of all defaults, obligations, and liabilities under the Assigned Contracts and of payment of the Cure Amount for each of the Assigned Contracts as set forth in the Purchase and Sale Agreement or in accordance with the resolution of an applicable Cure Dispute.  The undisputed Cure Amount shall be paid in ~~cash at~~accordance with the ~~closing under the Purchase and Sale Agreement (the "Closing"),~~terms of any order entered by the Court approving the assumption and assignment of such Assigned Contract or as otherwise agreed among the parties, following resolution of any cure dispute~~, or as directed by separate order of the Court~~.

O.      To the extent that any non-Debtor party to any Assigned Contract objects or asserts or claims some greater amount is owed to it under such Assigned Contract other than the Cure Amount stated with respect to the relevant Assigned Contract, such objection, assertion, and/or claim is expressly overruled, unless it has been properly preserved by timely objection for future resolution pursuant to the Assumption and Assignment Procedures.

P.      The Assumption and Assignment Procedures, as set forth and defined in the Bidding Procedures Order, are reasonable and provide all parties with appropriate notice and ability to object.  Each of the non-Debtor parties to the Assigned Contracts (i) has had a fair and reasonable opportunity to object to the Assumption Notice served on October 18, 2022 [Docket No. 209] [[, and (ii) will have a fair and reasonable opportunity to object to the supplement to the Assumption Notice and served on October [28], 2022 [Docket No. —334], and (iii) will have a fair and reasonable opportunity to object to the Notice of Successful Bidder detailing the Assigned Contracts to be assumed and assigned and served on October [28], 2022 [Docket No. —331] , subject to the applicable objection deadline provided in the Bidding Procedures Order.

Q.      It is essential that the Sale occur within the time constraints set forth in the Purchase and Sale Agreement.  Time is of the essence in consummating the Sale.

R.      The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b). and 365(f).  All of the applicable requirements of such sections have been complied with in respect of the Sale.

S.      The terms of the Purchase and Sale Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.   Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, director, officer, or representative of the Purchaser has engaged in any conduct that would cause or permit the Purchase and Sale Agreement, the Sale or any transactions contemplated thereunder, or this Order to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

T.      Neither the Purchaser nor any of its affiliates, members, managers, principals, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not otherwise affiliated with the Debtors.

U.      The Purchaser has proceeded in good-faith and without collusion in all respects in connection with the Sale and the Purchase and Sale Agreement.  The negotiation and execution of the Purchase and Sale Agreement and related documents were conducted in good-faith and constituted an arm's-length transaction, and the Purchase and Sale Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors.  The Purchaser is therefore a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Purchase and Sale Agreement and this Order.  The Purchaser has otherwise proceeded in good-faith in connection with these chapter 11 cases and this proceeding.

V.      In the absence of a stay pending appeal, the Purchaser may close the Sale and the other transactions contemplated by the Purchase and Sale Agreement at any time after entry of this Order.  Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Sale and the transactions contemplated in the Purchase and Sale Agreement is GRANTED and approved as set forth herein.

2.      All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and the entry of this Order, whether filed or stated on the record before this Court,

which have not been withdrawn with prejudice, waived, settled, or preserved at the Sale Hearing, and all reservations of rights included in such objections (except for pending Cure Disputes or as provided for herein), are hereby overruled and denied on the merits and with prejudice.

3.    Notice of the Motion, the Sale, the Purchase and Sale Agreement, all transactions contemplated thereunder, the Sale Hearing, and the entry of this Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.    In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Sale, including all of the terms and conditions related thereto as set forth in the Purchase and Sale Agreement, is hereby authorized and approved in all respects. The Purchase and Sale Agreement, together with all annexes, exhibits, and amendments thereto, including all actions and transactions contemplated therein and all of the terms and conditions thereof, is hereby authorized and approved in its entirety.  The Debtors are hereby authorized and directed to enter into the Purchase and Sale Agreement and to perform all of their obligations thereunder. The failure to specifically include any particular provision of the Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement, and any related agreements, and any amendments thereto as may be made by the parties thereunder in accordance with the Purchase and Sale Agreement, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.    The releases provided in paragraph 21 of this Order are hereby authorized and approved in all respects.

6.      ~~The~~Subject to further order of this Court and the reservations as included herein, the Debtors are authorized to assume the Assigned Contracts and to assign them to the Purchaser without limiting any Counterparty's rights under timely and unresolved Cure Disputes.  Unless otherwise agreed with the Purchaser, no employment or benefits agreements will be assumed and assigned to the Purchaser.

7.      The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code as to all aspects of the Sale and the transactions under and pursuant to the Purchase and Sale Agreement and this Order.  The transfer of the Acquired Interests to the Purchaser, and the related transactions to be consummated in accordance with the Purchase and Sale Agreement, constitute a good-faith transaction entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Acquired Interests to the Purchaser (including the assumption and assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.

8.      The terms of the Purchase and Sale Agreement (including regarding the Sale and any and all other transactions contemplated thereunder) were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.  The consideration provided by the Purchaser for the Acquired Interests under the Purchase and Sale Agreement is fair and reasonable, and the Sale and any transactions under the Purchase and Sale Agreement may not be avoided under section 363(n) of the Bankruptcy Code.

9.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Debtors are authorized to and shall transfer the Acquired Interests to the Purchaser at the Closing (as defined in the Purchase and Sale Agreement), and the Sale shall be, free and clear of any and all liens, claims, encumbrances, and interests of any kind or nature whatsoever, with any and all such valid or asserted liens, claims, encumbrances, and interests, if any, upon the Closing, attaching solely to the proceeds of the Sale ultimately attributable to the Acquired Interests against which the holders thereof assert an interest, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such liens, claims, encumbrances, and interests encumbered all or any portion of the Acquired Interests immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

10.     The Acquired Interests (including the Assigned Contracts, pending resolutions of Cure Disputes, as applicable) shall be transferred to the Purchaser upon and as of the Closing, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Interests.   The Debtors are further authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase and Sale Agreement; (b) close the Sale as contemplated by the Purchase and Sale Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase and Sale Agreement and any actions or transactions contemplated thereunder, together with all additional instruments and documents

that may be reasonably necessary or desirable to implement the Purchase and Sale Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations contemplated by the Purchase and Sale Agreement and such other ancillary documents.

11.     The Subject to further order of this Court and the reservations as included herein, the assumption of the Assigned Contracts and the assignment thereof to the Purchaser is approved, subject to resolution of any pending, timely Cure Disputes.   The Debtors are authorized and directed to assign the Assigned Contracts in connection with the Sale under the Purchase and Sale Agreement, with such assignment, in each case, being effective as of the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes.  All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for such assumption by the relevant Debtor and assignment to the Purchaser of each Assigned Contract have been satisfied and, upon the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes, as applicable, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract, and each Assigned Contract shall remain valid and binding, and in full force and effect, for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Cure Amount set forth in an Assumption Notice  , or as otherwise agreed by the non-Debtor parties to the Assigned Contracts or by order of the Court, constitute all of the Cure Amount that is required to be paid under section 365(b)(1) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts.  Pursuant to section 365(k) of the Bankruptcy Code, other than as provided for in the Purchase and Sale

Agreement, upon the assignment of the Assigned Contracts to the Purchaser, neither the Debtors nor the Purchaser shall have any further liability or obligations with respect thereto.]

12.     Upon the Closing Date, and except as otherwise provided herein or in the Purchase and Sale Agreement, the Purchaser shall not be liable for any liability or other obligation of the Debtors arising under or related to any of the Acquired Interests.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Purchase and Sale Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, claims arising under the federal Worker Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the United States Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, environmental liabilities, workers' compensation "experience rating," unemployment tax "contribution rating" rule or regulation, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Interests prior to the Closing.

13.     All persons and entities holding liens or interests in the Acquired Interests arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Interests, or the transfer of the Acquired Interests to the Purchaser, hereby are forever barred, estopped, and

permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Acquired Interests, such persons' or entities' liens or interests in and to the Acquired Interests.

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record.

15.     If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, the Acquired Interests shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of liens or interests which the person or entity has or may assert with respect to the Acquired Interests, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Interests.

16.     This Order, whether or not filed, registered, or otherwise recorded (including by entry on this Court's docket), shall be effective as a conclusive determination of the transfer of title in the Acquired Interests to the Purchaser, and that all liens, claims, encumbrances, and interests of any kind or nature whatsoever existing as to all or a portion of the Acquired Interests have been unconditionally released, discharged, and terminated. The Sale and this Order are and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be

required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase and Sale Agreement.

17.     The Purchase and Sale Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim, or encumbrance, if any, on or against the Acquired Interests.

18.     All time periods set forth in this Order and the Purchase and Sale Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit closing of the sale of the Acquired Interests.  This Order shall otherwise be effective immediately upon its entry.

20.     To the extent there is any inconsistency between the terms of the Purchase and Sale Agreement, the Motion, and this Order, the terms of this Order shall govern.

21. **Mutual Release**.

(i)     For good and valuable consideration on behalf of the Purchaser, the adequacy of which is hereby confirmed, on and after the Closing, each of the Debtors3 (in their own right, on behalf of their estates and their current and former direct and indirect subsidiaries (other than the Acquired Companies), and each such entity's and its current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Debtor Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Purchaser, the Purchaser's current and former direct and indirect subsidiaries, and the Purchaser's and the Purchaser's current and former direct and indirect subsidiaries' directors, officers, managers, members, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, successors, and assigns, and the attorneys and current directors of CN Borrower, LLC, CN Wolf Hollow LLC, and Compute North NE05, LLC (collectively, the "Purchaser Released Parties") and their respective property and assets from any and all acts and omissions of the Purchaser Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Debtor Releasing Parties now have, may claim to have or may come to have against the Purchaser Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (c) any and all claims and causes of action based on or relating

---

3   The "Debtors" are the following entities: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871) (also the Seller); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

to or in any manner arising from in whole or in part, any Purchaser Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) that certain Credit and Guaranty Agreement, dated as of February 7, 2022, as amended by that certain Consent and Amendment No. 1 to Credit and Guaranty Agreement and Amendment No. 1 to Pledge and Security Agreement, dated as of April 28, 2022, that certain Consent and Amendment No. 2 to Credit and Guaranty Agreement, dated as of June 17, 2022, that certain Amendment No. 3 to Credit and Guaranty Agreement, dated as of August 23, 2022, and that certain Amendment No. 4 to Credit and Guaranty Agreement, dated as of September 16, 2022, and as the same may be further amended, amended and restated, restated, modified or supplemented and in effect from time to time prior to the date of entry of this Order, by and among CN Borrower LLC, certain subsidiary guarantors from time to time party thereto, Generate Lending, LLC, as administrative agent and collateral agent, and the lenders from time to time party thereto (the "Credit Agreement"), (iii) that certain Guaranty Agreement, dated as of February 7, 2022, entered into by Compute North LLC and Compute North Holdings, Inc. ("CN Holdings"), as the sponsors, in favor of Generate Lending, LLC as Administrative Agent (the "Guaranty Agreement"), (iv) that certain Pledge Agreement, dated as of February 7, 2022, entered into by CN Pledgor LLC, as Pledgor, and Generate Lending, LLC, as Collateral Agent (the "Pledge Agreement"), (v) that certain Voting Agreement, dated as of February 2, 2022, by and among CN Holdings and each holder of the preferred stock of CN Holdings party thereto (the "Voting Agreement"), (vi) that certain Letter Agreement, dated as of October 18, 2022, by and among Mercuria Energy America, LLC, CN Wolf Hollow LLC and Generate Lending, LLC (the "Letter Agreement") or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty Agreement, Pledge Agreement, Voting Agreement, or [Letter Agreement] or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, (d) any actions taken by or on behalf of any of the Purchaser Released Parties in connection with the ownership of the preferred stock of Compute North Holdings or their participation on the Board of Directors of CN Holdings, and (e) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, including without limitation, any right to assert any disgorgement or recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Purchaser Released Party (including, for these purposes, CN Wolf Hollow LLC,

and Compute North NE05, LLC) from any claims, obligations or liabilities (1) arising (1) after Closing under the Sale Order, the PSA or the TSA or (2) under for fees payable in the ordinary course exchange for services provided under, and reimbursement of costs and expenses incurred in connection with services provided under, the Kearney PMA (as defined in the PSA) or the WH PMA (as defined in the PSA), each as amended and supplemented by that certain Stipulation and Agreed Order by and among Compute North LLC, Compute North NE05 LLC, CN Wolf Hollow LLC, and Generate Lending, LLC Concerning Certain Project Management Agreement [Dkt. No. 266] (the "Stipulation") for any payable fees or other amounts accrued or owed by such Purchaser Released Party to Compute North LLC, as required thereunder.

(ii)     On and after the Closing, the Purchaser (in its own right, on behalf of its current and former direct and indirect subsidiaries (including the Acquired Companies), and the Purchaser's and its current and former direct and indirect subsidiaries' current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Purchaser Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Debtors, the Debtors' current and former direct and indirect subsidiaries (other than the Acquired Companies), and any of the Debtors' and the Debtors' current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, and successors and assigns (collectively, the "Debtor Released Parties") and their respective property and assets from any and all acts and omissions of the Debtor Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Purchaser, or the Purchaser's successors or assigns, whether individually or collectively), which the Purchaser Releasing Parties now have, may claim to have or may come to have against the Debtor Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (b) any and all claims and causes of action based on or relating to or in any manner

arising from in whole or in part, any Debtor Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) the Credit Agreement, (iii) the Guaranty Agreement, (iv) the Pledge Agreement, (v) the Voting Agreement, (vi) the Letter Agreement or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty Agreement, Pledge Agreement, Voting Agreement, [or Letter Agreement] or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, and (d) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any claim or cause of action arising under or pursuant to the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Debtor Released Party from any claims, obligations or liabilities arising under the Stipulation or after Closing under the Sale Order, the PSA, or the TSA.

(iii)    These paragraphs are in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Debtor Releasing Parties in favor of the Purchaser Released Parties or by the Purchaser Releasing Parties in favor of the Debtor Released Parties.

22.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

23.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

24.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

25.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase and Sale Agreement, the Motion, and this Order.

26.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization of the Debtors, or dismissing any Debtors' chapter 11 cases, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Order or the Purchase and Sale Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' chapter 11 cases.  Any order granting conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Order shall survive such conversion or dismissal.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Order and the terms and provisions of the Purchase and Sale Agreement (including all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith).

29.     This Order and the Purchase and Sale Agreement (including the releases provided in paragraph 21 of this Order and all terms and provisions thereof) shall be binding in all respects upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Acquired Interests, and, as applicable, any trustee that may be appointed in these chapter 11 cases or any superseding cases under chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming

any plan shall conflict with or derogate from the provisions of the Purchase and Sale Agreement or this Order.

30.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, all rights and issues related to Assumed Contracts, including, assumption and assignments issues, cure amounts and adequate assurance of future performance are reserved and shall be heard on November 7, 2022 or such later date as determined by the Court.

31.     Notwithstanding anything to the contrary in this Order, absent further order of the Court, including on an emergency basis, or the consent of TZ Capital Holdings, LLC, the Debtors will not (i) assume and assign contracts to the Purchaser pursuant to this Order related to the operations of TZRC LLC or (ii) waive any non-competition or similar restrictive covenant under section 6.13 of the Purchase and Sale Agreement with respect to any employees that provide on-site services to TZRC LLC.

32.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, to the extent that any agreement between one or more of the Debtors and any of the Objecting Counterparties[4] constitutes an "Assigned Contract" or otherwise will be transferred or assigned to the Purchaser or a third party designated by Purchaser pursuant to this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, such Objecting Counterparty's right to assert setoff, recoupment, and common law or statutory rights under similar doctrines, whether arising out of state law or bankruptcy law, shall be expressly preserved and the rights of all parties in interest,

---

[4]   "Objecting Counterparties" means (i) Marathon Digital Holdings, Inc. or any of its affiliates; (ii) GEM Mining 1, LLC or any of its affiliates; (iii) Decimal Digital Currency I, LLC or any of its affiliates; (iv) Sphere 3D Corp. or any of its affiliates; and (v) Foundry Digital LLC or any of its affiliates.

including the Debtors and the Purchaser, to respond or object to such setoff, recoupment, and common law or statutory rights under similar doctrines are also expressly preserved.

33.     For the avoidance of doubt, the Debtors have not sought authorization for, and this Order does not authorize, the sale of assets that are owned by non-Debtor third parties, including, without limitation, the sale, assignment, or transfer of any equipment owned by the Objecting Counterparties, including, without limitation, the miners owned by any Objecting Counterparties located at the Wolf Hollow Project or Kearney Project (each as defined in the Purchase and Sale Agreement), and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

34.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, the Objecting Counterparties' rights are preserved to object to the assumption or assumption and assignment of any of such Objecting Counterparty's agreements with the Debtors to Purchaser or a third party designated by Purchaser on any basis, including (without limitation) the failure to provide adequate assurance of prompt cure, compensation for pecuniary loss, or future performance, and the rights of all parties in interest, including the Debtors and the Purchaser, to respond to any such objection are also expressly preserved.

35.     Any objections or responses to cure amounts, assumption and assignment, and adequate assurance of future performance shall be filed on or before 7:00 a.m., prevailing Central Time, on November 7, 2022.  The hearing on any such objections or responses shall be held on November 7, 2022, at 9:00 a.m., prevailing Central Time, or such later date as agreed upon by the Debtors, the Purchaser, and such objecting party.

Houston, Texas
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**PURCHASE AND SALE AGREEMENT**

**<u>Exhibit C</u>**

**Interim Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) )  Case No. 22-90273 (MI) |
| Debtors. | ) )  (Jointly Administered) |

**ORDER (I) APPROVING THE SALE OF**
**DEBTOR CN PLEDGOR LLC'S EQUITY INTERESTS IN CN BORROWER LLC FREE**
**AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 91] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving and authorizing the sale (the "Sale") of the 100 percent equity interests (the "Acquired Interests") (comprising the Debtors' equity interests owned by Debtor CN Pledgor LLC ("CN Pledgor") in non-Debtor CN Borrower LLC and its direct or indirect subsidiaries, or (the "Acquired Entities Interests") free and clear of all liens, claims, and encumbrances to the Purchaser, pursuant to that certain purchase and sale agreement (the "Purchase and Sale Agreement") substantially in the form attached hereto as **Exhibit 1**, (ii) approving the Purchase and Sale Agreement in its entirety and authorizing the parties thereto to implement and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase and Sale Agreement, as applicable.

consummate the transactions, including the Sale, contemplated thereunder; (iii) authorizing the Debtors to assume and assign certain executory contracts in connection therewith, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having entered an order on October 24, 2022 [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and leases (the "Assumption and Assignment Procedures") and the dates, deadlines, and bidding procedures (the "Bidding Procedures") with respect to, and notice of, the proposed sale of the Acquired Interests (as defined in the Purchase and Sale Agreement); and the Court having conducted a hearing on the Motion on October 31, 2022 (the "Sale Hearing"); and this Court having reviewed the Motion and considered the arguments of counsel and the matters addressed at the Sale Hearing, including the Harvey Declaration and Hamilton Declaration; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     The findings and conclusions herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent any findings of facts are conclusions of law, they are adopted as such.   To the extent any conclusions of law are findings of fact, they are adopted as such.   The Court's findings shall also include any oral findings of

fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing. To the extent of any conflict, the oral rulings shall control.

B.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Motion is a core proceeding under 28 U.S.C. §157(b)(2).  The Court may enter this Order, which constitutes a final order, consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and applicable Bankruptcy Local Rules.

C.      On October 24, 2022, this Court entered the Bidding Procedures Order, and thereby (a) approved the Bidding Procedures, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof, (b) authorized the Debtors to enter into Asset Purchase Agreements with Stalking Horse Bidders; and (c) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts (the "Cure Amounts") and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order. The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

D.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the

3

Bidding Procedures Order.   The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Acquired Interests.   The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures. The Debtors did not receive any Qualifying Bids by the Bid Deadline for the Acquired Interests other than the Purchase and Sale Agreement, and therefore, on October 28, 2022, filed and served the Notice of Cancellation of Auction, Selection of Successful Bidder, and Scheduling of Sale Hearing [Docket No. 331]. In accordance with the Bidding Procedures, the Debtors, in consultation with the Consultation Parties, determined that the bid submitted by the Purchaser and memorialized by the Purchase and Sale Agreement is the Successful Bid (as defined in the Bidding Procedures) for the Acquired Interests.   The Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase and Sale Agreement constitutes the highest and best offer for the Acquired Interests constitutes a valid and sound exercise of the Debtors' business judgment.

E.      As evidenced by the certificates of service filed by the Debtors with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, (i) the Motion, (ii) the Sale Hearing, (iii) the entry of this Order, (iv) the Purchase and Sale Agreement, and (v) the transactions contemplated under the Purchase and Sale Agreement, including the Sale, the assumption and assignment of the Assigned Contracts (as defined in the Purchase and Sale Agreement), and the fixing of Cure Amounts in connection therewith, has been provided to all parties entitled thereto, including, without limitation, all counterparties to the Assigned Contracts.   Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be

heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

F.      The Acquired Interests constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The Debtors (i) have full corporate power and authority to execute the Purchase and Sale Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been duly and validly authorized by all necessary corporate action), (ii) have full corporate power and authority necessary to consummate the transactions (including the Sale) contemplated by the Purchase and Sale Agreement, (iii) have taken all corporate actions necessary to authorize and approve the Purchase and Sale Agreement and the consummation by the Debtors of the transactions contemplated thereunder (including the Sale), and (iv) require no consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, to consummate such transactions.

G.      The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of the Debtors' business judgment, (i) to sell the Acquired Interests on the terms and conditions set forth in the Purchase and Sale Agreement, (ii) to assume and assign the Assigned Contracts to the Purchaser, and (iii) to consummate all transactions contemplated by the Purchase and Sale Agreement.  All such actions or transactions relating to the Sale and/or contemplated by the Purchase and Sale Agreement are appropriate exercises of the Debtors' business judgment.  Approval of the Purchase and Sale Agreement (including all transactions and actions contemplated thereunder) and of the assumption and assignment of the Assigned Contracts at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.      The consideration provided by the Purchaser pursuant to the Purchase and Sale Agreement (i) is fair and reasonable, (ii) represents the highest and best offer reasonably and practically obtainable for the Acquired Interests under the circumstances, and (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Interests.

I.      The Debtors may sell the Acquired Interests free and clear of any and all liens, claims, interests, rights of setoff, recoupment, netting and deductions, any successor or successor-in-interest liability theory, and other encumbrances of any kind or nature whatsoever (if any, and except for the Assumed Liabilities, the "Encumbrances"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the Sale, the Motion, the Purchase and Sale Agreement, any transaction contemplated thereunder, and/or the assumption and assignment of the Assigned Contracts, are deemed to have fully consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances on the Acquired Interests, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the Sale (after giving effect to any closing costs payable by the Debtors) attributable to the Acquired Interests in which such holder alleges an Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

J.      The releases provided for in the Purchase and Sale Agreement and this Order are consensual, reasonable in scope, and necessary to obtain the Purchaser's approval of the

Purchase and Sale Agreement.  The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, without the releases set forth in the Purchase and Sale Agreement and this Order.  The Motion shall be deemed a motion to approve the good-faith compromise and settlement of all such claims, interests, and controversies pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and the entry of this Order shall constitute the Court's approval of such compromise and settlement under section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is a valid exercise of the Debtors' business judgment, fair, equitable, reasonable, and in the best interests of the Debtors and their estates.

K.     The Purchaser is not, and shall not be considered or deemed, a successor to any of the Debtors or their respective estates, and there is no continuity of enterprise between the Purchaser and any Debtor.  The Purchaser (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

L.     The Purchaser would not have entered into the Purchase and Sale Agreement, and would not consummate the Sale and the transactions contemplated thereunder, if the Sale and the assumption and assignment of the Assigned Contracts were not, except as otherwise provided in the Purchase and Sale Agreement, free and clear of any and all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the

Purchase and Sale Agreement and with respect to the Assumed Liabilities), be liable for any of such Encumbrances.

M.    ~~The Assigned Contracts, including any~~Subject to further order of this Court and the reservations as included herein, the Assigned Contracts ~~pending resolution of timely Cure Disputes, are~~identified in the Purchase and Sale Agreement. ~~ Each of the Assigned Contracts is~~ are valid and binding, in full force and effect, and enforceable in accordance with ~~its~~their terms, and ~~is~~are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code, subject to resolution of any pending Cure Disputes, as applicable.

N.    ~~The~~Subject to further order of this Court and the reservations as included herein, the Purchaser has provided, or will provide following resolution of any applicable Cure Dispute, adequate assurance, within the meaning of Section 365(b)(1) of the Bankruptcy Code, of cure of all defaults, obligations, and liabilities under the Assigned Contracts and of payment of the Cure Amount for each of the Assigned Contracts as set forth in the Purchase and Sale Agreement or in accordance with the resolution of an applicable Cure Dispute.  The undisputed Cure Amount shall be paid in ~~cash at~~accordance with the ~~closing under the Purchase and Sale Agreement (the "Closing").~~terms of any order entered by the Court approving the assumption and assignment of such Assigned Contract or as otherwise agreed among the parties, following resolution of any cure dispute~~, or as directed by separate order of the Court~~.

O.    To the extent that any non-Debtor party to any Assigned Contract objects or asserts or claims some greater amount is owed to it under such Assigned Contract other than the Cure Amount stated with respect to the relevant Assigned Contract, such objection, assertion, and/or claim is expressly overruled, unless it has been properly preserved by timely objection for future resolution pursuant to the Assumption and Assignment Procedures.

P.      The Assumption and Assignment Procedures, as set forth and defined in the Bidding Procedures Order, are reasonable and provide all parties with appropriate notice and ability to object.  Each of the non-Debtor parties to the Assigned Contracts (i) has had a fair and reasonable opportunity to object to the Assumption Notice served on October 18, 2022 [Docket No. 209], and (ii) will have a fair and reasonable opportunity to object to the supplement to the Assumption Notice served on October 28, 2022 [Docket No. 334], and (iii) will have a fair and reasonable opportunity to object to the Notice of Successful Bidder detailing the Assigned Contracts to be assumed and assigned and served on October 28, 2022 [Docket No. 331] , subject to the applicable objection deadline provided in the Bidding Procedures Order.

Q.      It is essential that the Sale occur within the time constraints set forth in the Purchase and Sale Agreement.  Time is of the essence in consummating the Sale.

R.      The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b). and 365(f).  All of the applicable requirements of such sections have been complied with in respect of the Sale.

S.      The terms of the Purchase and Sale Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.   Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, director, officer, or representative of the Purchaser has engaged in any conduct that would cause or permit the Purchase and Sale Agreement, the Sale or any transactions contemplated thereunder, or this Order to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

T.     Neither the Purchaser nor any of its affiliates, members, managers, principals, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not otherwise affiliated with the Debtors.

U.     The Purchaser has proceeded in good-faith and without collusion in all respects in connection with the Sale and the Purchase and Sale Agreement.  The negotiation and execution of the Purchase and Sale Agreement and related documents were conducted in good-faith and constituted an arm's-length transaction, and the Purchase and Sale Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors.  The Purchaser is therefore a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Purchase and Sale Agreement and this Order.  The Purchaser has otherwise proceeded in good-faith in connection with these chapter 11 cases and this proceeding.

V.     In the absence of a stay pending appeal, the Purchaser may close the Sale and the other transactions contemplated by the Purchase and Sale Agreement at any time after entry of this Order.  Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE, IT IS HEREBY ORDERED THAT**:

1.     The Sale and the transactions contemplated in the Purchase and Sale Agreement is GRANTED and approved as set forth herein.

2.     All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and the entry of this Order, whether filed or stated on the record before this Court,

which have not been withdrawn with prejudice, waived, settled, or preserved at the Sale Hearing, and all reservations of rights included in such objections (except for pending Cure Disputes or as provided for herein), are hereby overruled and denied on the merits and with prejudice.

3.    Notice of the Motion, the Sale, the Purchase and Sale Agreement, all transactions contemplated thereunder, the Sale Hearing, and the entry of this Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.    In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Sale, including all of the terms and conditions related thereto as set forth in the Purchase and Sale Agreement, is hereby authorized and approved in all respects. The Purchase and Sale Agreement, together with all annexes, exhibits, and amendments thereto, including all actions and transactions contemplated therein and all of the terms and conditions thereof, is hereby authorized and approved in its entirety.  The Debtors are hereby authorized and directed to enter into the Purchase and Sale Agreement and to perform all of their obligations thereunder. The failure to specifically include any particular provision of the Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement, and any related agreements, and any amendments thereto as may be made by the parties thereunder in accordance with the Purchase and Sale Agreement, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.    The releases provided in paragraph 21 of this Order are hereby authorized and approved in all respects.

6. ~~The~~Subject to further order of this Court and the reservations as included herein, the Debtors are authorized to assume the Assigned Contracts and to assign them to the Purchaser without limiting any Counterparty's rights under timely and unresolved Cure Disputes. Unless otherwise agreed with the Purchaser, no employment or benefits agreements will be assumed and assigned to the Purchaser.

7. The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code as to all aspects of the Sale and the transactions under and pursuant to the Purchase and Sale Agreement and this Order. The transfer of the Acquired Interests to the Purchaser, and the related transactions to be consummated in accordance with the Purchase and Sale Agreement, constitute a good-faith transaction entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Acquired Interests to the Purchaser (including the assumption and assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.

8. The terms of the Purchase and Sale Agreement (including regarding the Sale and any and all other transactions contemplated thereunder) were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions. The consideration provided by the Purchaser for the Acquired Interests under the Purchase and Sale Agreement is fair and reasonable, and the Sale and any transactions under the Purchase and Sale Agreement may not be avoided under section 363(n) of the Bankruptcy Code.

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Debtors are authorized to and shall transfer the Acquired Interests to the Purchaser at the Closing (as defined in the Purchase and Sale Agreement), and the Sale shall be, free and clear of any and all liens, claims, encumbrances, and interests of any kind or nature whatsoever, with any and all such valid or asserted liens, claims, encumbrances, and interests, if any, upon the Closing, attaching solely to the proceeds of the Sale ultimately attributable to the Acquired Interests against which the holders thereof assert an interest, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such liens, claims, encumbrances, and interests encumbered all or any portion of the Acquired Interests immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Interests prior to the Sale shall not attach to the proceeds of the Sale.

10.     The Acquired Interests (including the Assigned Contracts, pending resolutions of Cure Disputes, as applicable) shall be transferred to the Purchaser upon and as of the Closing, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Interests.   The Debtors are further authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase and Sale Agreement; (b) close the Sale as contemplated by the Purchase and Sale Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase and Sale Agreement and any actions or transactions contemplated thereunder, together with all additional instruments and documents

13

that may be reasonably necessary or desirable to implement the Purchase and Sale Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations contemplated by the Purchase and Sale Agreement and such other ancillary documents.

11.     ~~The~~Subject to further order of this Court and the reservations as included herein, the assumption of the Assigned Contracts and the assignment thereof to the Purchaser is approved, subject to resolution of any pending, timely Cure Disputes.   The Debtors are authorized and directed to assign the Assigned Contracts in connection with the Sale under the Purchase and Sale Agreement, with such assignment, in each case, being effective as of the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes.   All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for such assumption by the relevant Debtor and assignment to the Purchaser of each Assigned Contract have been satisfied and, upon the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes, as applicable, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract, and each Assigned Contract shall remain valid and binding, and in full force and effect, for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.   The Cure Amount set forth in an Assumption Notice  , or as otherwise agreed by the non-Debtor parties to the Assigned Contracts or by order of the Court, constitute all of the Cure Amount that is required to be paid under section 365(b)(1) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts.   Pursuant to section 365(k) of the Bankruptcy Code, other than as provided for in the Purchase and Sale

Agreement, upon the assignment of the Assigned Contracts to the Purchaser, neither the Debtors nor the Purchaser shall have any further liability or obligations with respect thereto.]

12.     Upon the Closing Date, and except as otherwise provided herein or in the Purchase and Sale Agreement, the Purchaser shall not be liable for any liability or other obligation of the Debtors arising under or related to any of the Acquired Interests.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Purchase and Sale Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, claims arising under the federal Worker Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the United States Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, environmental liabilities, workers' compensation "experience rating," unemployment tax "contribution rating" rule or regulation, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Interests prior to the Closing.

13.     All persons and entities holding liens or interests in the Acquired Interests arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Interests, or the transfer of the Acquired Interests to the Purchaser, hereby are forever barred, estopped, and

permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Acquired Interests, such persons' or entities' liens or interests in and to the Acquired Interests.

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record.

15.     If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, the Acquired Interests shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of liens or interests which the person or entity has or may assert with respect to the Acquired Interests, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Interests.

16.     This Order, whether or not filed, registered, or otherwise recorded (including by entry on this Court's docket), shall be effective as a conclusive determination of the transfer of title in the Acquired Interests to the Purchaser, and that all liens, claims, encumbrances, and interests of any kind or nature whatsoever existing as to all or a portion of the Acquired Interests have been unconditionally released, discharged, and terminated.  The Sale and this Order are and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be

required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase and Sale Agreement.

17.     The Purchase and Sale Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim, or encumbrance, if any, on or against the Acquired Interests.

18.     All time periods set forth in this Order and the Purchase and Sale Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit closing of the sale of the Acquired Interests.  This Order shall otherwise be effective immediately upon its entry.

20.     To the extent there is any inconsistency between the terms of the Purchase and Sale Agreement, the Motion, and this Order, the terms of this Order shall govern.

17

21. **Mutual Release**.

(i)     For good and valuable consideration on behalf of the Purchaser, the adequacy of which is hereby confirmed, on and after the Closing, each of the Debtors3 (in their own right, on behalf of their estates and their current and former direct and indirect subsidiaries (other than the Acquired Companies), and each such entity's and its current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Debtor Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Purchaser, the Purchaser's current and former direct and indirect subsidiaries, and the Purchaser's and the Purchaser's current and former direct and indirect subsidiaries' directors, officers, managers, members, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, successors, and assigns, and the attorneys and current directors of CN Borrower, LLC, CN Wolf Hollow LLC, and Compute North NE05, LLC (collectively, the "Purchaser Released Parties") and their respective property and assets from any and all acts and omissions of the Purchaser Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Debtor Releasing Parties now have, may claim to have or may come to have against the Purchaser Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (c) any and all claims and causes of action based on or relating

---

3   The "Debtors" are the following entities: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871) (also the Seller); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

18

to or in any manner arising from in whole or in part, any Purchaser Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) that certain Credit and Guaranty Agreement, dated as of February 7, 2022, as amended by that certain Consent and Amendment No. 1 to Credit and Guaranty Agreement and Amendment No. 1 to Pledge and Security Agreement, dated as of April 28, 2022, that certain Consent and Amendment No. 2 to Credit and Guaranty Agreement, dated as of June 17, 2022, that certain Amendment No. 3 to Credit and Guaranty Agreement, dated as of August 23, 2022, and that certain Amendment No. 4 to Credit and Guaranty Agreement, dated as of September 16, 2022, and as the same may be further amended, amended and restated, restated, modified or supplemented and in effect from time to time prior to the date of entry of this Order, by and among CN Borrower LLC, certain subsidiary guarantors from time to time party thereto, Generate Lending, LLC, as administrative agent and collateral agent, and the lenders from time to time party thereto (the "Credit Agreement"), (iii) that certain Guaranty Agreement, dated as of February 7, 2022, entered into by Compute North LLC and Compute North Holdings, Inc. ("CN Holdings"), as the sponsors, in favor of Generate Lending, LLC as Administrative Agent (the "Guaranty Agreement"), (iv) that certain Pledge Agreement, dated as of February 7, 2022, entered into by CN Pledgor LLC, as Pledgor, and Generate Lending, LLC, as Collateral Agent (the "Pledge Agreement"), (v) that certain Voting Agreement, dated as of February 2, 2022, by and among CN Holdings and each holder of the preferred stock of CN Holdings party thereto (the "Voting Agreement"), (vi) that certain Letter Agreement, dated as of October 18, 2022, by and among Mercuria Energy America, LLC, CN Wolf Hollow LLC and Generate Lending, LLC (the "Letter Agreement") or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty Agreement, Pledge Agreement, Voting Agreement, or Letter Agreement or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, (d) any actions taken by or on behalf of any of the Purchaser Released Parties in connection with the ownership of the preferred stock of Compute North Holdings or their participation on the Board of Directors of CN Holdings, and (e) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, including without limitation, any right to assert any disgorgement or recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Purchaser Released Party (including, for these purposes, CN Wolf Hollow LLC,

and Compute North NE05, LLC) from any claims, obligations or liabilities (1) arising after Closing under the Sale Order, the PSA or the TSA or (2) for fees payable in exchange for services provided under, and reimbursement of costs and expenses incurred in connection with services provided under, the Kearney PMA (as defined in the PSA) or the WH PMA (as defined in the PSA), each as amended and supplemented by that certain  Stipulation and Agreed Order by and among Compute North LLC, Compute North NE05 LLC, CN Wolf Hollow LLC, and Generate Lending, LLC Concerning Certain Project Management Agreement [Dkt. No. 266] (the "Stipulation"), as required thereunder.

(ii)     On and after the Closing, the Purchaser (in its own right, on behalf of its current and former direct and indirect subsidiaries (including the Acquired Companies), and the Purchaser's and its current and former direct and indirect subsidiaries' current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Purchaser Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Debtors, the Debtors' current and former direct and indirect subsidiaries (other than the Acquired Companies), and any of the Debtors' and the Debtors' current and former direct and indirect subsidiaries' (other than the Acquired Companies) current and former officers, members, managers, directors, equityholders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including both general and limited partners), predecessors, and successors and assigns (collectively, the "Debtor Released Parties") and their respective property and assets from any and all acts and omissions of the Debtor Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Purchaser, or the Purchaser's successors or assigns, whether individually or collectively), which the Purchaser Releasing Parties now have, may claim to have or may come to have against the Debtor Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (b) any and all claims and causes of action based on or relating to or in any manner arising from in whole or in part, any Debtor Released Party's efforts related to the PSA, intercompany transactions, the formulation, preparation, dissemination,

negotiation, modification, amendment, entry into, or filing of the (i) PSA, (ii) the Credit Agreement, (iii) the Guaranty Agreement, (iv) the Pledge Agreement, (v) the Voting Agreement, (vi) the Letter Agreement or (vii) any contract, instrument, release, or other agreement or document created or entered into in connection with the PSA, Credit Agreement, Guaranty Agreement, Pledge Agreement, Voting Agreement, or Letter Agreement or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, and (d) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any claim or cause of action arising under or pursuant to the Bankruptcy Code or under other similar provisions of applicable state, federal, or foreign laws, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Debtor Released Party from any claims, obligations or liabilities arising under the Stipulation or after Closing under the Sale Order, the PSA, or the TSA.

(iii)     These paragraphs are in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Debtor Releasing Parties in favor of the Purchaser Released Parties or by the Purchaser Releasing Parties in favor of the Debtor Released Parties.

22.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

23.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

25.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase and Sale Agreement, the Motion, and this Order.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization of the Debtors, or dismissing any Debtors' chapter 11 cases, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Order or the Purchase and Sale Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' chapter 11 cases.  Any order granting conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Order shall survive such conversion or dismissal.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Order and the terms and provisions of the Purchase and Sale Agreement (including all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith).

29.     This Order and the Purchase and Sale Agreement (including the releases provided in paragraph 21 of this Order and all terms and provisions thereof) shall be binding in all respects upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Acquired Interests, and, as applicable, any trustee that may be appointed in these chapter 11 cases or any superseding cases under chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming

any plan shall conflict with or derogate from the provisions of the Purchase and Sale Agreement or this Order.

30.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, all rights and issues related to Assumed Contracts, including, assumption and assignments issues, cure amounts and adequate assurance of future performance are reserved and shall be heard on November 7, 2022 or such later date as determined by the Court.

31.     Notwithstanding anything to the contrary in this Order, absent further order of the Court, including on an emergency basis, or the consent of TZ Capital Holdings, LLC, the Debtors will not (i) assume and assign contracts to the Purchaser pursuant to this Order related to the operations of TZRC LLC or (ii) waive any non-competition or similar restrictive covenant under section 6.13 of the Purchase and Sale Agreement with respect to any employees that provide on-site services to TZRC LLC.

32.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, to the extent that any agreement between one or more of the Debtors and any of the Objecting Counterparties[4] constitutes an "Assigned Contract" or otherwise will be transferred or assigned to the Purchaser or a third party designated by Purchaser pursuant to this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any other document related to the Sale, such Objecting Counterparty's right to assert setoff, recoupment, and common law or statutory rights under similar doctrines, whether arising out of state law or bankruptcy law, shall be expressly preserved and the rights of all parties in interest,

---

[4]   "Objecting Counterparties" means (i) Marathon Digital Holdings, Inc. or any of its affiliates; (ii) GEM Mining 1, LLC or any of its affiliates; (iii) Decimal Digital Currency I, LLC or any of its affiliates; (iv) Sphere 3D Corp. or any of its affiliates; and (v) Foundry Digital LLC or any of its affiliates.

including the Debtors and the Purchaser, to respond or object to such setoff, recoupment, and common law or statutory rights under similar doctrines are also expressly preserved.

33. 31. For the avoidance of doubt, the Debtors have not sought authorization for, and this Order does not authorize, the sale of assets that are owned by non-Debtor third parties, including, without limitation, the sale, assignment, or transfer of any equipment owned by the Objecting Counterparties, including, without limitation, the miners owned by any Objecting Counterparties located at the Wolf Hollow Project or Kearney Project (each as defined in the Purchase and Sale Agreement), and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

34. 32. The hearing on Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Purchase and Sale Agreement, or any Contract Objection other document related to cure amounts, the Sale, the Objecting Counterparties' rights are preserved to object to the assumption or assumption and assignment and of any of such Objecting Counterparty's agreements with the Debtors to Purchaser or a third party designated by Purchaser on any basis, including (without limitation) the failure to provide adequate assurance of prompt cure, compensation for pecuniary loss, or future performance, and the rights of all parties in interest, including the Debtors and the Purchaser, to respond to any such objection are also expressly preserved.

35. Any objections or responses to cure amounts, assumption and assignment, and adequate assurance of future performance shall be filed on or before 7:00 a.m., prevailing Central Time, on November 7, 2022. The hearing on any such objections or responses shall be held on November 7, 2022, at 9:00 a.m., prevailing Central Time. Any objections, or responses to (a) the applicable Cure Amount or (b) the Debtors' ability to assume and assign the applicable

~~Contract shall be filed on or before the later of (x) 4:00 p.m., prevailing Central Time, on November 1, 2022, and (y) with respect to any Additional Contracts, 7:00 a.m., prevailing Central Time, on November 7, 2022.~~   Any objections or responses to adequate assurance of future performance by a Successful Bidder shall be filed on or before ~~8:00 a.m., prevailing Central Time, on November 7, 2022~~<u>such later date as agreed upon by the Debtors, the Purchaser, and such objecting party</u>.

Houston, Texas
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**PURCHASE AND SALE AGREEMENT**