IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § |
| | §   Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § |
| | §   Case No. 22-90273 (MI) |
| Debtors.[1] | § |
| | §   (Jointly Administered) |
| | § |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF DECIMAL DIGITAL CURRENCY I, LLC REGARDING THE DEBTORS' NOTICE OF FILING OF CURE SCHEDULE IN CONNECTION WITH PROPOSED SALE**

Decimal Digital Currency I, LLC ("Decimal"), a creditor and contract counterparty in the above-captioned cases, by and through its undersigned counsel, submits this limited objection and reservation of rights ("Limited Objection") regarding the *Notice of Filing of Cure Schedule in Connection with Proposed Sale* [Dkt. No. 209] (the "Assumption Notice"). In support of this Limited Objection, Decimal respectfully states as follows:

**Background**

1. Decimal is a hedged multicurrency crypto infrastructure and mining platform. Decimal and debtor Compute North LLC ("Compute North") are parties to (i) that certain Master Agreement, dated January 27, 2022 (the "Master Agreement"), pursuant to which Compute North shall provide colocation and other services (collectively, "Colocation Services") for Decimal's cryptocurrency mining hardware (the "Mining Equipment"), and (ii) that certain Equipment Order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

Agreement, dated November 5, 2021 (as further amended, modified, or supplemented from time to time, the "EPA"), pursuant to which Decimal purchased from Compute North certain Mining Equipment as described more fully in the EPA (the "Acquired Hardware"). The EPA provides that Compute North shall procure the Acquired Hardware for and on behalf of Decimal from third-party seller Bitmain Technologies Limited ("Bitmain").[2]

2. On February 1, 2022, Decimal and Compute North executed an Order Form (the "Order Form") pursuant to which (i) Compute North was to deploy the Mining Equipment at Compute North's colocation facilities and (ii) Compute North was to install the Mining Equipment and provide, among other things, electricity and network connectivity necessary to operate those miners. The Master Agreement includes certain deadlines by which the Mining Equipment shall be installed. Compute North's failure to install the Mining Equipment by the relevant deadline entitles Decimal to a credit equal to $0.005 kWh per day for such Mining Equipment until it has been installed at a Compute North facility.

3. To date, Compute North has failed to perform its obligations under the Master Agreement, the Order Form, and the EPA. To wit, only a fraction of the Mining Equipment has been installed and powered on at a Compute North colocation facility. As a result, Decimal has suffered, and continues to suffer, damages due to its inability to utilize its Mining Equipment for its intended business purpose.[3]

---

[2] Upon information and belief, Compute North has procured the relevant cryptocurrency mining hardware pursuant to a Non-Fixed Price Sales and Purchase Agreement between Bitmain and Compute North, dated November 17, 2021 (the "SPA"). The Debtors intend to assume the SPA as evidenced by its inclusion on the Assumption Notice.

[3] For the avoidance of doubt, Decimal has paid Compute North the full amount payable for the Acquired Hardware, and legal title to the Acquired Hardware has transferred to Decimal. As described more fully herein, Compute North owes Decimal certain credits against the price of the Acquired Hardware as a result of downward price adjustments given by Bitmain.

4. Upon its entry into the Master Agreement and the associated Order Form, Decimal paid Compute North an initial deposit (the "Initial Deposit") in the amount of $80,119.20. The Initial Deposit represents two months of Service Fees and Package Fees (each as defined in the Master Agreement) and is designed to serve as the final months' payments due under the Master Agreement.

5. In addition to the Initial Deposit, Compute North also holds cash credits in favor of Decimal in an amount not less than $291,950.00 (the "Cash Credits"). The Cash Credits stem from certain downward price adjustments made by Bitmain to the cost of the Acquired Hardware under the EPA which resulted in Decimal overpayments to Compute North. Additional credits are expected to accrue between the date hereof and the date the EPA is assumed, and Decimal reserves all rights to seek payment of any and all credits at assumption.

6. On September 22, 2022, the Debtors, including Compute North, each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors continue to operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. On October 24, 2022, the Court entered the *Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Sale of the Debtors' Remaining Assets Free and Clear of all Encumbrances as well as the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Dkt. No. 256 (the "Final Sale Procedures Order").

8.      The Final Sale Procedures Order authorized and approved, *inter alia,* certain sale and bid procedures regarding the sale of the Debtors' assets free and clear of all liens, claims, interests, and encumbrances (the "Sale").  In connection with the Sale, the Final Sale Procedures Order approved certain assumption and assignment procedures with respect to those executory contracts and unexpired leases that the Debtors propose to assume and assign to one or more Successful Bidders.[4]

9.      On October 18, 2022, the Debtors filed the Assumption Notice.  The Debtors include the Master Agreement, the Order Form, and the EPA on the Cure Schedule, included as Exhibit A to the Assumption Notice, as executory contracts that may be assumed and assigned by the Debtors as part of the Sale pursuant to section 365 of the Bankruptcy Code.  The Debtors list $0.00 as the Cure Amount for each of the Master Agreement, the Order Form, and the EPA.

## Limited Objection and Reservation of Rights

10.     Assumption of the Master Agreement requires compliance with all contract terms, and amounts determined to be owed under such assumed contracts are not discharged.  *See In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000).

11.     Where there has been a default in an executory contract, a debtor may not assume the contract unless, at the time of assumption of such contract, the debtor:

(A) cures, or provides adequate assurance that the debtor will promptly cure, such default;

(B) compensates, or provides adequate assurance that the debtor will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Final Sale Procedures Order.

4

*See* 11 U.S.C. § 365(b)(1).

12. Put simply, "[i]f [a] debtor has defaulted under the contract . . . the debtor may not assume the contract unless the debtor, *inter alia,* cures the default or provides adequate assurance that it will do so." *Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 F. App'x 462, 465 (5th Cir. 2011).

13. "Where the debtor assumes an executory contract, it must assume the entire contract, *cum onere*—the debtor accepts both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d at 506 (citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984)).

14. Here, pursuant to the Master Agreement and Order Form, Compute North was to provide Colocation Services for the Mining Equipment in exchange for Decimal's payment of monthly Service Fees and Package Fees.

15. However, Compute North has failed to install the vast majority of the Mining Equipment at their colocation facilities and is therefore in default under the Master Agreement.

16. As a result of Compute North's default, Decimal has been denied use of its Mining Equipment and has been unable to deploy and monetize the Mining Equipment in the ordinary course of its business. Decimal has lost, and continues to lose, revenue due to Compute North's failure to perform its obligations under the Master Agreement and Order Form.

17. Therefore, any cure amount associated with the assumption of the Master Agreement must include the pecuniary loss suffered by Decimal through the date of assumption,

calculated as Decimal's lost revenue less applicable Service Fees and Package Fees.[5] Anything less fails to insure that upon assumption of the Master Agreement, Decimal will have received the full benefit of its bargain. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (quoting *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)).

18.     In addition, in the event that Compute North ultimately assumes the Master Agreement or assumes and assigns the Master Agreement to a Successful Bidder, the Initial Deposit that Decimal paid to Compute North must be preserved by Compute North or the Successful Bidder, as applicable, and applied against future monthly fees consistent with the terms of the Master Agreement. Similarly, Compute North or the Successful Bidder must account for the Cash Credits owed Decimal in connection with the EPA.

19.     Decimal does not waive any of its rights under the Master Agreement, the Order Form, the EPA, or applicable law. Decimal expressly reserves all rights to amend, modify, or supplement this Limited Objection, and to object to adequate assurance of future performance by a Successful Bidder if and as necessary at the appropriate time consistent with the Final Sale Procedures Order.

WHEREFORE, Decimal respectfully requests that the Court (i) condition assumption of the Master Agreement and the EPA on the immediate payment in full of all amounts necessary to cure the Debtors' default under the Master Agreement and the EPA, including any pecuniary losses suffered by Decimal as a result of the Debtors' default, (ii) require compliance with all obligations under the Master Agreement and the EPA, (iii) require that the Debtors or any Successful Bidder

---

[5] Decimal calculates that its lost revenue from September 1, 2022, through November 1, 2022 is 2.58729118 Bitcoin (approximately $52,500). Lost revenue continues to accrue as deployment deadlines are missed, and assumption must be conditioned on Decimal receiving payment for such lost revenue at assumption.

honor any deposits paid to the Debtors in connection with the Master Agreement, and any Cash Credits owed to Decimal in connection with the EPA, and (iv) grant Decimal such other relief as may be just and proper.

Dated: November 1, 2022

| | |
|---|---|
| Respectfully submitted, | PRYOR CASHMAN LLP |
| ANDREWS MYERS P.C. | Seth H. Lieberman (admitted *pro hac vice*) |
| | SBN: 4317145 |
| */s/ T. Josh Judd* | Matthew W. Silverman (admitted *pro hac vice*) |
| T. JOSH JUDD | SBN: 5198783 |
| SBN: 24036866 | 7 Times Square, 40th Floor |
| 1885 Saint James Place, 15th Floor | New York, NY 10036-6596 |
| Houston, TX 77056 | Tel: 212-421-4100 |
| Tel: 713-850-4200 | Fax: 212-326-0806 |
| Fax: 713-850-4211 | slieberman@pryorcashman.com |
| jjudd@andrewsmyers.com | msilverman@pryorcashman.com |
| **LOCAL COUNSEL FOR DECIMAL DIGITAL CURRENCY I, LLC** | **COUNSEL FOR DECIMAL DIGITAL CURRENCY I, LLC** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of November 2022, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system.

                                 */s/T. Josh Judd*
                                 T. Josh Judd