UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------- x

In re:

COMPUTE NORTH HOLDINGS, INC., et al.

    Debtors.

------------------------------------------------------------

Chapter 11

Case No. 22-90273 (MI)

(Jointly Administered)

Docket Entry No. 209

## LIMITED OBJECTION OF GH EFFECT, INC. TO DEBTORS' NOTICE OF FILING OF CURE SCHEDULE IN CONNECTION WITH PROPOSED SALE

GH Effect, Inc. (the "**GH Effect**"), hereby submits this Limited Objection (the "**Limited Objection**") to the Debtor's *Notice of Filing of Cure Schedule in Connection with Proposed Sale* dated October 18, 2022 [Docket No. 209] (the "**Filed Cure Notice**"). In support of this Limited Objection, GH Effect respectfully states as follows:

### PRELIMINARY STATEMENT

1.    GH Effect is the counterparty to a Master Agreement (defined below) with one of the jointly administered Debtors, Compute North, LLC (the "**Debtor Counterparty**"). Compute North was in default under the Master Agreement as of the Petition Date. GH Effect object to Debtors' Filed Cure Notice because (a) it is unclear by reference to the Filed Cure Notice whether the Master Agreement is proposed to be assumed; (b) to the extent that the Debtors intend to assume the Master Agreement, GH Effect asserts that the appropriate cure amount under the Master Agreement is the amount of the Deposit (defined below); (c) the Debtors cannot show their ability to perform their obligations under the Master Agreement and/or, to the extent the Debtors are assuming and assigning the Master Agreement to another entity, the Debtors should show that

1

entity's ability to perform; and (d) GH Effect reserves the right to dispute that the Master Agreement is an executory contract capable of assumption and assignment.

## BACKGROUND

**A.     The Bankruptcy Case**

2. On September 22, 2022 (the "**Petition Date**"), Compute North Holdings, Inc. and eighteen affiliates, including Compute North (together, the "**Debtors**"), filed chapter 11 petitions with this Court. Since the Petition Date, the Debtors have continued to operate and manage their business as a debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On October 13, 2022, the Court entered the Order (A) Approving de Minimis Asset Sale Procedures; (B) Approving Rejection Procedures and Certain Assumption and Assignment Procedures and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Further Hearing on the Approval of the Debtors' Proposed Bidding Procedures and Related Relief (the "**Initial Bid Procedures Order**," Docket No. 191).

4. On October 18, 2022, the Debtors filed the Filed Cure Notice. The Filed Cure Notice does not list GH Effect.

5. On October 24, 2022, the Court entered the Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances as well as the Assumption and Assignment of Certain Executory Contract and

Unexpired Leases (the "**Final Bid Procedures Order**," Docket Entry No. 256). The Final Bid Procedures Order provides a November 1, 2022, deadline to file cure objections.

6. GH Effect is aware that other similarly situated parties with similar contracts were served with a *Notice of Entry of Initial Sale Procedures Order and Proposed Sale* dated October 18, 2022. GH Effect has no record of having received a *Notice of Entry of Initial Sale Procedures Order and Proposed Sale* from the Debtors.

7. Although GH Effect is not listed in the Filed Cure Notice, GH Effect files this Limited Objection out of an abundance of caution to assert its rights under the Master Agreement.

**B.    The Master Agreement**

8. GH Effect is the counterparty to a Master Agreement dated July 27, 2022, (the "Master Agreement") with Debtor Compute North, under which Compute North agreed to provide colocation and other managed services for GH Effect's cryptocurrency mining hardware.

9. GH Effect paid a $62,166.00 deposit (the "Deposit") relating to the Master Agreement, which represents the last two months of monthly service and package fees. Upon information and belief, the Debtors are still holding the Deposit.

10. In connection with entry into the Master Agreement, GH Effect delivered to Compute North certain Bitmain cryptocurrency Antminers, as particularly detailed in GH Effect's respective Order Form (the "Equipment"), which Compute North was obligated to deploy under the Master Agreement.

11. GH Effect does not appear on Compute North's Schedules.

12. Compute North has never deployed GH Effect's Equipment pursuant to the Master Agreement, even though the Debtors remain in possession of GH Effect's Deposit and Equipment.

13. Section 4.1 of each Master Agreement describes the Effective Date and Term of the Master Agreement as follows:

> 4.1. <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all Equipment Terms for all Equipment under each Order Form have expired or terminated.

14. Section 4.2 of each Master Agreement outlines how and when the Equipment Terms commences and end as follows:

> 4.2. <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for each piece of Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

15. Compute North assured GH Effect prepetition that the Equipment would be deployed and operating by September 15, 2022.

16. GH Effect has received no notification from the Debtors in accordance with Section 4.2 of the Master Agreement that the Equipment has been received and turned on by Compute North, however. Accordingly, the Equipment Term under each of the Master Agreement has not commenced.

17. Further, even though the Debtors remain in possession of the Equipment, they have not deployed the Equipment to mine Bitcoin pursuant to the Master Agreement.

18. Section 5.2 of the Master Agreement provides that GH Effect "shall pay to Compute North the Monthly Service Fees and the Monthly Package Fees (collectively the 'Fees') as set forth on the Order Form." The Order Form provides that the Fees "will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North."

19.     Section 8.3 of the Master Agreement provides that "provided that Customer has paid all amount due and owing under [the Master Agreement] . . . [Compute North] shall decommission and make the [Equipment] available to Customer for pick up at, or shipment from, the Facility within thirty (30) of Customer's written request. Customer shall be responsible for all deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning the [Equipment]."

**20.     GH Effect has paid all amounts currently due and owing under the Master Agreement and hereby makes its written request to the Debtors to pick up its Equipment within thirty (30) days of the date of an entry by this Court of an Order permitting GH Effect to exercise its right to recover its Equipment.**

## LIMITED OBJECTION

21.     Under Section 365(b)(1) of the Bankruptcy Code, the Debtors are required to cure all outstanding defaults under the Master Agreement prior to assumption.

**A.      Debtors' intentions as to the Master Agreement is unclear.**

22.     Because GH Effect is aware that the Debtors intend to assume the contracts of other similarly situated parties with similar contracts to the Master Agreement, GH Effect is unclear whether the Debtors proposed to assume the Master Agreement. If the Debtors do not intend to assume the Master Agreement, the Deposit should be returned in full.

**B.      To the extent that the Debtors intend to assume the Master Agreement, the cure amount under the Master Agreement is the Deposit amount.**

23.     The Debtors are in default under the Master Agreement as of the Petition Date and are continuing to default under the Master Agreement postpetition as a result of, *inter alia*, their absolute failure to deploy the Equipment to mine Bitcoin as set forth in the Master Agreement. As

5

of the date of this Amended Limited Objection, no Equipment has been deployed, and no revenue has been generated.

24. In accordance with Section 11.3 and 11.4 of the Master Agreement, GH Effect shall obtain a refund of any fees paid to the Debtors for services. The Deposit represents the last two months of monthly service and package fees under the Master Agreement and related Order Form. Accordingly, the appropriate cure amount under each Master Agreement is at least $62,166.00.

25. Moreover, the Deposit may not be property of the estate under Section 541(a) of the Bankruptcy Code because the Debtors have failed to deploy the Bitcoin miners to operate the Equipment such that the Deposit is unearned.

## C. Compute North's failure to perform under the Master Agreement is evidence of the Debtors' inability to perform under the Master Agreement.

26. Section 365(b)(1)(C) requires the Debtors to show that they can provide adequate assurance of future performance in order to assume a contract. The Debtors cannot show their ability to assume and perform under the Master Agreement. The Debtors assured GH Effect that they would have miners and the Equipment deployed and operating by September 15, 2022—an outside date that was well beyond the scope of the original start date contemplated by the parties. Accordingly, because the Debtors have failed to perform and continue to fail to perform under the Master Agreement, the Debtors cannot show their ability to assume the Master Agreement. To the extent that the Debtors intend to assume and assign the Master Agreement to another entity, the Debtors should be required to show that that entity is capable of performing under the Master Agreement.

**D.     To the extent that the Debtors intend to assume the Master Agreement, GH Effect reserves the right to object to assumption and assignment of the Master Agreement because it is not an executory contract.**

27.     To the extent that the Debtors intend to assume the Master Agreement, GH Effect reserves the right to object to assumption and/or assignment of the Master Agreement because it is not an executory contract due to Compute North's prepetition repudiation of the Master Agreement by failing to deploy the Equipment as promised. *See, e.g., In re Food Management Group*, LLC, 372 B.R. 171, 190-91 (Bankr. S.D.N.Y. 2007) ("Anticipatory repudiation by one party precludes fulfillment of the contract by both sides and, therefore, excuses performance by the counter-party"). In failing to deploy the Equipment, Compute North foreclosed GH Effect' ability to perform its obligations under the Master Agreement, thus excusing GH Effect of its obligation to perform under the Master Agreement. *Id*. GH Effect cannot perform on its obligations to pay the Fees under the Master Agreement because Compute North has not installed and begun to operate the Equipment. *See* Master Agreement Section 5.2 and Order Form. Since GH Effect is excused of the obligation to perform under the Master Agreement as a result of the Debtors' failure to perform, the Master Agreement may not be an executory contract. *Cf. In re Falcon V, L.L.C.*, 44 F. 4th 348, 352 (5th Cir. 2022) (a contract is executory when there are material obligations on both sides yet to be performed as of the petition date).

28.     GH Effect respectfully requests that the Court enter an order (i) conditioning the assumption and/or assignment of the Master Agreement on the prompt payment of cure amounts as set forth in this Limited Objection to GH Effect in full; (ii) requiring compliance with all obligations under the Master Agreement; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: November 1, 2022          POLSINELLI PC

By: */s/ Meredyth A. Kippes*
Meredyth A. Kippes (SBN 24007882)
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
mkippes@polsinelli.com

*Counsel for the GH Effect*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2022, a true copy of the foregoing was served on those parties who consent to service by the Court's ecf notification system and by the method and on the following parties as indicated:

*/s/Meredyth A. Kippes*_____
Meredyth A. Kippes

By email to the following parties:

Paul Hastings LLP
600 Travis Street
58th Floor
Houston, Texas 77002
Attn: James T. Grogan III (jamesgrogan@paulhastings.com)

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn: Luc Despins (lucdespins@paulhastings.com)
Sayan Bhattacharyya (sayanbhattacharyya@paulhastings.com)
Daniel Ginsberg (danielginsberg@paulhastings.com)

Paul Hastings, LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Attn: Matthew Micheli (mattmicheli@paulhastings.com)
Michael Jones (michaeljones@paulhastings.com)

McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attn: Charles R. Gibbs (crgibbs@mwe.com)

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
Attn: Kristin K Going (kgoing@mwe.com)
Darren Azman (dazman@mwe.com)
Stacy A. Lutkus (salutkus@mwe.com)
Natalie Rowles (nrowles@mwe.com)

Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attn: Jayson B. Ruff (Jayson.B.Ruff@usdoj.gov)
Jana Whitworth (Jana.Whitworth@usdoj.gov)