IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-90273 (MI) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**SUNBELT SOLOMON SERVICES, LLC's
OBJECTION TO ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND CURE
AMOUNTS AND RESERVATION OF RIGHTS**

1. Sunbelt Solomon Services, LLC (together with Solomon Corporation and its other affiliated parties in interest, "**Solomon**"), a significant supplier and creditor of the Debtors, hereby objects to the assumption and assignment of its contracts with the Debtors, including Compute North LLC ("**Compute North**" and together with its debtor affiliates in the above-captioned chapter 11 cases, the "**Debtors**"). The assumption and assignment of such contracts is identified in the Debtors' *Notice of Filing of Cure Schedule in Connection with Proposed Sale* [Docket No. 209] (the "**Cure Notice**," and the Cure Schedule appended thereto as Exhibit A, the "**Cure Schedule**"), as supplemented by Debtors' *Notice of Filing of Supplemental Cure Schedule in Connection with Proposed Sale* [Docket No. 334] (the "**Supplemental Cure Notice**" and the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397) CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190) CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639) Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these Chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

1

"**Supplemental Cure Schedule**" attached thereto as Exhibit A).[2] Solomon expressly reserves its rights to amend this objection (the "**Objection**").

2. Solomon is one of the world's largest providers of commercial and industrial electrical distribution equipment. Once separately known as Sunbelt Transformer and Solomon Corporation, Solomon is now a culmination of two companies joining to offer an unparalleled breadth of product offerings and service capabilities.

3. The relationship between Solomon and the Debtors are governed by a series of agreements (the "**CN Contracts**," defined below). Under the CN Contracts, Solomon provided and continues to provide the Debtors with customized high-voltage Padmount Transformers (the "**Transformers**"), as well as Equipment rentals and Equipment servicing. Solomon's Transformers are used to transmit, distribute, and utilize alternating current ("**AC**") voltage levels through and between various electric circuits at high volumes. The Transformers are used to transfer power at high voltages, which is more efficient than doing so at a low voltage, because it reduces power loss due to heat. Critically, the Transformers are specially designed and built for the Debtors' use and cannot be easily or cheaply repurposed for another use.

4. The Debtors operate several facilities that collectively use hundreds of Solomon's CN Transformers. Solomon's CN Transformers are used at multiple facilities hosted by Compute North, including Greenville, Kearney, Wolf Hollow, Minden, and Corpus/Boot Strap.

5. Prior to September 22, 2022 (the "**Petition Date**"), Solomon entered into a series of agreements with Compute North. These agreements include a December 20, 2021 Master Sale, Rental and Services Agreement (the "**Master Agreement**") and a series of subsequently-issued

---

[2] The Supplemental Cure Notice and Supplemental Cure Schedule do not appear to identify any agreements between the Debtors and Solomon. For the avoidance of doubt, Solomon objects to the Cure Notice and Cure Schedule in its entirety, as supplemented, and as may be further supplemented or amended from time to time.

Purchase Orders issued thereunder between 2021 and 2022 (the "**P.O.s**" and together with the Master Agreement, the "**CN Contracts**"). Pursuant to the CN Contracts, Solomon delivered its Transformers and issued corresponding invoices to Debtors in compliance with the Master Agreement.

6. As evidenced by, among other things, Debtors' Cure Schedule, Debtors have failed to pay invoices for goods and services received on several occasions. Debtors' failures to pay for goods and services are defaults under the Master Agreement. *See, e.g.,* Ex. 1, Master Agreement §§ 2 (Nature of Base Agreement for Sales and Rentals of Equipment and for Services); 4 (Compensation; Change Orders); 9 (Items Particular to Rental Equipment). As shown herein, based on the insufficient information provided by Debtors in their Notice of Cure Schedule, Solomon is presently unable to determine whether Debtors plan to completely cure the amounts due and owing to Solomon under the CN Contracts.

7. In their Notice of Cure Schedule, the Debtors identify two purported agreements with Solomon: (1) the Master Agreement, for which a Cure Amount of $0.00 is noticed (*See Notice of Cure Schedule*, at 110), and (2) A "Sunbelt Solomon SOW 01 20 2022," for which a Cure Amount of $1,717,771.48 is noticed (the "**Alleged SOW**"). *Id.* at 113. Solomon presumes "SOW" stands for "Statement of Work," but is unable to identify such Statement of Work between it and the Debtors dated January 20, 2022, and despite its best efforts, has been unable to obtain further information from the Debtors (and Debtors' Financial Advisors) regarding this Alleged SOW and the Cure Amount listed thereunder. Additionally, Solomon has been unable to determine the legal and/or factual bases for the Debtors' conclusion that the Cure Amount for the Master Agreement is $0.00.

8. Solomon therefore files this Objection on several bases. First, Solomon has had

3

insufficient time to confirm the existence of the Alleged SOW contract listed in the Notice of Cure Schedule, and has been unable to get any clarification from the Debtors or their Financial Advisors on this contract. Second, Solomon has had insufficient time to confirm the Cure Amounts listed in the Cure Schedule for the alleged contracts between Solomon and the Debtors. Third, Solomon objects to the lack of adequate assurance of future performance provided (and preserves its right to supplement its objection to the same) based on Solomon's present inability to ascertain the identity of the potential assignee of the contracts to which Solomon is a party and whether any such assignee is able to perform under such contracts (and cure the relevant defaults).

9. Finally, Solomon objects to the Cure Amount of $0.00 identified by Debtors for the Master Agreement. Debtors must pay Solomon all amounts due and owing under the Master Agreement in order to cure the defaults existing under the Master Agreement. *See, e.g.,* Master Agreement §§ 2, 4, 9.

10. Solomon reserves its rights to amend this Objection.

**Background**

11. As introduced above, the business relationship between Solomon and the Debtors are governed by the CN Contracts, composed of two types of agreements: the Master Agreement and a variety of Purchase Orders. The CN Contracts set forth the parties' rights and obligations for each of the sites where Compute North uses Solomon's Transformers.

12. The Cure Notice and Cure Schedule list a number of agreements (including the Master Agreement) for potential assumption and assignment to an unknown third-party purchaser. *See* Cure Notice and Cure Schedule. However, the Debtors have not disclosed to Solomon to whom the CN Contracts will be assigned, or whether the agreements will be assigned at all. Moreover, Solomon has been unable to determine what agreement(s) comprise the Alleged SOW.

4

**Argument**

I. **Debtors Must Cure Any Monetary and Non-Monetary Defaults Before Assuming and Assigning any Contract to Which Solomon is a Party, and Debtors Must Provide Adequate Assurance of the Assignee's Ability to Perform Under the Contracts to Be Assigned.**

13. Before the Debtors assume and assign any contract to which Solomon is a party—including, for the avoidance of doubt, the CN Contracts—the Debtors must satisfy the standards and requirements contained in Section 365 of the United States Code (the "**Bankruptcy Code**"). Section 365 allows a debtor to assume and assign an executory contract to a third party, if the debtor (i) cures any outstanding default under the contract or provides adequate assurance the default will be promptly cured, (ii) compensates the counterparty to the contract for any pecuniary loss or provides adequate assurance of compensation, and (iii) provides adequate assurance of the assignee's future performance of the contract. *See* 11 U.S.C. §§ 365(b)(1)(A)–(C), 365(f); *see also In re Tex. Health Enterprises Inc.*, 72 Fed. Appx. 122, 126 (5th Cir. 2003).

14. The Debtors' cure obligation extends to monetary and non-monetary defaults under a contract. 11 U.S.C. §§ 365(b)(1)(A)–(C), 365(f). To cure a monetary default under Section 365, the Debtors must pay all amounts due under the contract. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005). To determine the appropriate cure for a non-monetary default, however, Courts rely on the contractual language and provisions in order to define "the nature of a default and the cure it requires."). *Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (citing *In re Shangra-La, Inc.*, 167 F.3d 843, 848–49 (4th Cir. 1999)).

15. The burden of proof is on a Debtor to show it gave "adequate assurance." *In re Tex. Health*, 72 Fed. Appx. 126. "[W]hether a debtor has given adequate assurance is extremely fact-specific." *Id.* Courts have found the following factors helpful in this analysis: "whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations,

5

the general economic outlook in the debtor's industry, and the presence of a guarantee." *Id.* (internal citations and quotations omitted); *see also In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438–39 (5th Cir. 2002) (same) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985)).

16. When a debtor is assuming and then assigning a contract, the adequate assurance analysis focuses on the ultimate assignee—rather than the Debtor—as the assignee is the party that will continue performing the contract following assignment. *See* 11 U.S.C. § 365(f)(1)(B). In this situation, requiring a showing of adequate assurance of future performance by the assignee provides "needed protection to the non-debtor party because the assignment relieves the [debtor] and the bankruptcy estate from liability for breaches arising after the assignment." *In re Fleming Cos., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001)) (citing 11 U.S.C. § 365(k)). Stated differently, the statute protects a non-debtor counterparty from losing the benefit of its bargain on account of an assignment in bankruptcy. *See id.*; *see also In re Nat'l Gypsum Co.*, 208 F.3d 498, 509 (5th Cir. 2000) ("Section 65(b)(1) provides a guarantee to the non-debtor party . . . that as a condition to [the assumption or assignment of its contract], any losses or defaults existing at the time will be satisfied either through a timely cure or through reasonable assurances of future payment.").

## II. Debtors Have Failed to Cure Outstanding Defaults or Provide Adequate Assurance of Future Performance to Solomon.

17. Despite listing multiple of Solomon's CN Contracts (or alleged contracts) on the Cure Schedule, the Debtors and their Financial Advisor have repeatedly failed to provide any information—let alone sufficient information—to support a finding that outstanding defaults have been cured, or of adequate assurance of future performance by the assignee with respect to any such contract that the Debtors now seek to assume and/or assume and assign. In fact, from the

6

Cure Notice and Cure Schedule, it appears to Solomon that the Debtors do not plan to cure any amounts due and owing under the Master Agreement.

18.     The Master Agreement serves as the "base agreement" between the parties, under which they "can enter into multiple specific transactions" contemplated thereunder (including, for the avoidance of doubt, for the purchase and sale of Transformers, and any related rentals and/or service work). *See* Ex. 1, Master Agreement § 2(a). In the Master Agreement, the parties also agreed Solomon would follow certain price quoting parameters for the Transformers, and Solomon would be Compute North's "preferred vendor for [T]ransformers." *Id.* § 2(c). The term of the Master Agreement is in effect for one (1) year from the Effective Date (as that term is defined therein), "and from year-to-year thereafter until terminated by either Party[.]" *Id.* § 3.

19.     The Master Agreement also contains certain invoicing and payment provisions. Section 4 outlines the method and contents of invoicing by Solomon to Compute North and dictates the "[p]ayment terms are net thirty (30) days from the date the invoice is received unless otherwise agreed by the Parties." *See* Ex. 1, Master Agreement § 4(b). Compute North is required to promptly pay all undisputed invoices. *Id.* Moreover, the Master Agreement permits Solomon to "charge and accrue interest on any past due amounts . . . at the lesser of one percent (1%) per month or the maximum rate permitted by law." *Id.* Any change orders to the scope or performance of Work under the Master Agreement must be made in writing and comply with the requirements of the Master Agreement. *Id.* § 4(c).

20.     Section 9 of the Master Agreement governs Rental Equipment. Section 9(a) details the Rental charge and billing parameters for any Rental Equipment leased to Compute North, as well as Compute North's payment obligations for such Rentals. *See* Ex. 1, Master Agreement § 9(a). Section 9(b) governs the return of Rental Equipment and Compute North's financial

obligations therefor. *Id.* § 9(b). And Section 9(c) requires Compute North to purchase and maintain certain insurance on the Rental Equipment for the benefit of Solomon. *Id.* § 9(c).

21. As contemplated by the Master Agreement, Solomon and the Debtors ultimately entered into a series of P.O.s, under which Debtors purchased certain Transformers from Solomon, leased certain Equipment from Solomon, and obtained certain Equipment servicing work from Solomon. *See, e.g.,* Ex. 1, Master Agreement § 2(a). Solomon has timely invoiced Debtors for these sales, leases, and services in accordance with the Master Agreement. *See id.* § 4, 9. Debtors' failures to pay for goods and services within the time period specified under the Master Agreement are defaults under the Master Agreement. *See, e.g., id.* §§ 2, 4(b)-(c), 9(a)-(b). Based on the insufficient information provided by Debtors in their Notice of Cure Schedule, Solomon is presently unable to determine whether Debtors plan to completely cure the amounts due and owing to Solomon under the CN Contracts. Solomon further notes and objects that because there are unpaid amounts that remain due to Solomon under the terms of the Master Agreement, the cure amount for the Master Agreement cannot be $0.

22. Further, the identity of the assignee matters for the CN Contracts. At this time, Solomon has no way of knowing whether an assignee has the requisite expertise, capabilities, or experience to operate at scale the complex electrical circuits and power supply systems required to run the Debtors' mining operations. Nor does Solomon have any way of knowing whether a potential assignee has any material conflicts of interest, is a direct or indirect competitor of Solomon, or has commercial or legal interests adverse to Solomon. This information is critical to Solomon, because Solomon's Transformers (and other Equipment, as that term is defined) are and/or contain protected intellectual property, which Solomon only shares with certain customers (such as Compute North) and has a substantial business and legal interest in keeping confidential.

Accordingly, Solomon reserves all rights to further supplement this Objection if and when it learns the identity of the assignee of the CN Contracts or any other contract between Solomon and one or more of the Debtors.

## Reservation of Rights

23. Solomon reserves the right to amend or supplement this Objection as necessary to, among other things, (i) object to the assumption and assignment of any other executory contract between Solomon and the Debtors included on any supplemental or amended Cure Schedule, (ii) object to the proposed cure amounts thereunder, (iii) specifically object to the Alleged SOW and the Cure Amount listed thereunder, and (iv) object to any other relief sought by the Debtors with respect to any agreement to which Solomon and any of the Debtors are party. Solomon also reserves its rights to object on any other grounds to the assumption or assignment of its agreements with the Debtors, including the failure to provide adequate assurance of future performance or of the ability to cure existing defaults, in accordance with the Bankruptcy Code, the Bidding Procedures Order, and any other applicable law or order of this Court as may be applicable from time to time.

DATED: November 1, 2022
Houston, Texas

**MAYER BROWN LLP**

*/s/ Brandon F. Renken*
Charles S. Kelley
Texas Bar No. 11199580
Brandon F. Renken
Texas Bar No. 24056197
Andrew C. Elkhoury
Texas Bar No. 24097648
700 Louisiana Street, Suite 3400
Houston, TX 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com
brenken@mayerbrown.com
aelkhoury@mayerbrown.com

*Attorneys for Sunbelt Solomon Services, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was duly served by electronic transmission to all registered ECF users appearing in this case on November 1, 2022.

*/s/ Brandon F. Renken*
Brandon F. Renken