IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § CASE NO. 22-90273-11 |
| | § HOUSTON, TEXAS |
| COMPUTE NORTH HOLDINGS, INC., | § TUESDAY, |
| ET AL, | § OCTOBER 25, 2022 |
| DEBTORS. | § 3:27 P.M. TO 3:44 P.M. |

**<u>HEARING ON THE STIPULATION AND AGREED ORDER</u>**

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

**(Recorded via CourtSpeak; no log notes.)**

<u>TRANSCRIPTION SERVICE BY</u>:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
mary@judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

FOR THE DEBTOR:                    PAUL HASTINGS, LLP
                                   James T. Grogan, III, Esq.
                                   600 Travis Street, 58th Floor
                                   Houston, TX  77002
                                   713-860-7300


FOR MARATHON DIGITAL
HOLDINGS, INC.:                    WEIL GOTSHAL & MANGES, LLP
                                   Jessica Liou, Esq.
                                   700 Louisiana, Ste. 1700
                                   Houston, TX  77002
                                   713-546-5040


FOR GENERATE CAPITAL:              KIRKLAND & ELLIS, LLP
                                   Christopher Marcus, PC
                                   601 Lexington Avenue
                                   New York, NY  10022
                                   212-446-4800


FOR COMPUTE NORTH NEO5:            ARENT FOX SCHIFF
                                   Jeffrey R. Gleit, Esq.
                                   1301 Avenue of the Americas
                                   42nd Floor
                                   New York, NY 10019
                                   212-484-3900


FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS:            MCDERMOTT WILL & EMERY, LLP
                                   Charles R. Gibbs, Esq.
                                   2501 North Harwood St.
                                   Suite 1900
                                   Dallas, TX  75201
                                   214-295-8063

INDEX

| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| DRAKE HARVEY | | | | |
|  By Proffer | 10 | . | . | . |
|  By the Court | 12 | . | . | . |

| EXHIBITS: | Marked | Offered | Admitted |
|---|---|---|---|

(None offered.)

\*\*\*

**HOUSTON, TEXAS; TUESDAY, OCTOBER 25, 2022; 3:27 P.M.**

THE COURT: All right. We're here in the Computer North Holdings case, it's 22-90273.

We'll go ahead and take appearances here in the courtroom; and then, if you wish to appear on the phone, please press five-star. We've already got a couple of people who have done that.

Go ahead, please, Mr. Grogan. Good afternoon.

MR. GROGAN: Good afternoon, Your Honor. James Grogan from Paul Hastings on behalf of the Debtors.

THE COURT: Thank you.

Ms. Liou, good afternoon.

MS. LIOU: Good afternoon, Your Honor. Jessica Liou from Weil, Gotshal & Manges, here on behalf of Marathon Digital Holdings, Incorporated.

THE COURT: Thank you.

Mr. Marcus, good afternoon.

MR. MARCUS: Good afternoon, Judge. Christopher Marcus from Kirkland & Ellis on behalf of Generate Capital.

THE COURT: Thank you.

From 212-457-5427, who do we have?

MR. GLEIT: Good afternoon, Your Honor. It's Jeff Gleit with ArentFox Schiff. I represent the nonDebtor affiliate, CN Borrower, CN Wolf Hollow, and Compute North NE05.

1        THE COURT: All right. Thank you.

2        Mr. Harvey?

3        MR. HARVEY: Good afternoon, Your Honor. Drake
4   Harvey with Compute North.

5        THE COURT: Good afternoon.

6        And Mr. Gibbs.

7        MR. GIBBS: Good afternoon, Your Honor. Chuck Gibbs
8   with McDermott, Will & Emery, proposed counsel for the
9   Committee.

10       THE COURT: Thank you.

11       All right. Mr. Grogan, where are we?

12       MR. GROGAN: Thank you, Your Honor. Again, James
13  Grogan from -- for the Debtors.

14       Your Honor, we're here today on one matter, which is
15  the stipulation and agreed order that we filed yesterday at
16  Docket Number 246.

17       Your Honor, as we -- as I previously stated, we do
18  view this as a very beneficial initial step toward getting to
19  a sale of the Kearney and Wolf Hollow assets in this case.
20  This stipulation does not commit us to enter into an APA, but
21  it does provide the -- a bridge to get there, including the
22  payment of approximately $700,000 in one day to cover costs
23  and expenses associated with continued operations of those
24  projects, and then an additional amount of money going forward
25  in the form of payments weekly of $110,000 to continue the

1  project management.

2  We also agreed to a time line if we can enter into
3  an asset purchase agreement with Generate.  That APA would be
4  due to be signed by the 27th, and we would come back on the
5  31st for a hearing.  We do think that this --
6  THE COURT:  The "31st," meaning Monday, right?
7  MR. GROGAN:  Correct, Your Honor.
8  THE COURT:  Okay.
9  MR. GROGAN:  I do have a short proffer from Mr.
10  Harvey as evidentiary support for our decision to enter into
11  the stipulation.  I don't know if you want to hear from other
12  parties before --
13  THE COURT:  Let's see whether I'm hearing this in an
14  opposed or an unopposed --
15  MR. GROGAN:  Yeah.
16  THE COURT:  -- before we get there.
17  MR. GROGAN:  Sure.
18  THE COURT:  Just looking at the 31st, though, just
19  so that everyone knows, it's a reasonably difficult day.  I'm
20  not telling you we can't do it because we can.  I will tell
21  you, however, that, if the parties would prefer to come in on
22  the next day, there's more time.  But if we do it on the 31st,
23  realistically, we'll start at around 5:00, at the end of the
24  Pipeline Health series of motions.  That's a hospital case and
25  it's -- so some of those take an unpredictable amount of time.

1     MR. GROGAN: Yes.

2     THE COURT: So we can probably come back at 5:00 on
3 the 31st. Just --

4     MR. GROGAN: I -- you know --

5     THE COURT: -- that way, you know where we are.

6     MR. GROGAN: -- I think I would go ahead and take
7 that because, on the 1st, we -- on the other pieces of this
8 puzzle of like selling King Mountain, for example, we have our
9 auction scheduled for the 1st --

10     THE COURT: Okay.

11     MR. GROGAN: -- which was part of the reason why I
12 wanted to do this on the 31st and kind of get it out of the
13 way in advance of the auction.

14     THE COURT: Okay. Then we'll pencil it in for -- as
15 other people make their comments --

16     MR. GROGAN: Yes.

17     THE COURT: -- so we're shooting for 5:00 o'clock --

18     MR. GROGAN: -- Sure.

19     THE COURT: -- on Monday.

20     MR. GROGAN: Okay.

21     THE COURT: So let me hear from others that have
22 comments on the requested relief. Anyone?

23     (Participants speak simultaneously)

24     MR. MARCUS: I'm sorry, Chuck. You go -- Mr. Gibbs,
25 you go first.

MR. GIBBS: Good afternoon again, Your Honor. Chuck Gibbs, proposed counsel for the Committee.

We have dug into the proposed stipulation that we have seen maybe 12 or 14 hours before yesterday and then haven't seen the revised one, so, you know (indiscernible) started. Our financial advisors met with the Debtors' financial advisors to pressure test the numbers to make sure that we understood exactly what was being paid under this proposed stipulation and confirming that what was being paid was, in fact, what was owed and not some deep discount over what was owed.

We have satisfied ourselves, after doing that due diligence, and we think that the proposed stipulation makes good business sense and also helps out some of the problems that (indiscernible) could result in (indiscernible) when we're trying to get other assets sold. So, bottom line, the Committee is supportive of the proposed stipulation.

THE COURT: Mr. Gibbs, thank you.

Mr. Marcus?

MR. MARCUS: Thank you, Your Honor.

Just a clarification for the record. I had a conversation with Ms. Liou earlier. There's a provision in the stipulation at Paragraph 10, a proviso at the end that talks about spare parts and equipment. I just wanted to clarify on the record that does not -- we are not referring to

1    Marathon's equipment or any other customer's equipment there.
2    This is just spare parts and equipment that's used at the
3    projects to help it run, electric wire and filters and things
4    of that sort.  That was all I had, Your Honor.
5             THE COURT:  I just want to -- hold on.
6         (Pause in proceedings)
7             THE COURT:  Got it.  Thank you.
8             MR. MARCUS:  You're welcome, Judge.
9             THE COURT:  Can I hear from any party that believes
10   that it is inappropriate for me to approve the stipulation
11   today?
12        (No verbal response)
13            THE COURT:  All right.  Then I think you wanted to
14   make a proffer of Mr. Harvey's testimony.  Is that right?
15            MR. GROGAN:  Yes, Your Honor.
16            THE COURT:  Any objection to doing this by proffer?
17        (No verbal response)
18            THE COURT:  All right.  Go ahead.
19            MR. GROGAN:  Thank you, Your Honor.
20            So, Your Honor, I don't know if you want to swear
21   Mr. Harvey in, but --
22            THE COURT:  Sure.
23            MR. GROGAN:  -- he is available by video conference.
24            THE COURT:  Mr. Harvey, would you raise your right
25   hand, please, sir?

1 DRAKE HARVEY, WITNESS FOR THE DEBTORS, SWORN
2 THE COURT: Thank you.
3 DIRECT EXAMINATION BY PROFFER OF DRAKE HARVEY
4 MR. GROGAN: Your Honor, if Mr. Harvey were called
5 to testify, he would testify that he is the President of
6 Compute North, LLC and its Debtor affiliates.
7 As President, he is involved in many aspects of the
8 Debtors' business. He has been involved with and has personal
9 knowledge concerning the management and operation of the Wolf
10 Hollow and Kearney projects. He would testify that Compute
11 North is the operator of the Wolf Hollow and Kearney projects.
12 He would further testify that Compute North
13 currently operates those projects at a loss under the existing
14 project management agreements.
15 He would further testify that, absent a change in
16 the status quo, the Debtors would be forced to reject the
17 project management agreements, which would disruptive to the
18 ongoing operations and reduce the prospects of a going concern
19 sale.
20 Mr. Harvey would further testify that, if the
21 Debtors rejected the project management agreements, they would
22 also be forced to terminate the employment of approximately 45
23 employees who work directly on the Kearney and Wolf Hollow
24 projects.
25 However, if the Court approves the proposed

1  stipulation, the Debtors will have additional funding to cover
2  the cost of keeping those -- these employees on the payroll
3  and keeping the Kearney and Wolf Hollow projects operating in
4  the ordinary course of business, which will preserve the going
5  concern value of those projects for a future asset sale in the
6  near term.
7  　　　　　Your Honor, Mr. Harvey would further testify that,
8  under the stipulation, the project owners and Generate have
9  agreed to pay the estimated incremental costs of continued
10 operation of the projects to bridge to a sale of those
11 projects.  In that regard, the Debtors are engaged in advanced
12 discussions with Generate regarding a going concern sale of
13 the project, which the Debtors are hopeful would bring --
14 which the Debtors are hopeful they can bring before the Court
15 in the near future.
16 　　　　　Mr. Harvey would further testify that, in
17 consideration for the additional cash, the Debtors have agreed
18 not to reject the PMAs prior to a termination of this
19 stipulation on the terms set forth in the stipulation.  And
20 moreover, while the stipulation contemplates the ultimate sale
21 of the projects to Generate on an agreed time line, it does
22 not obligate the Debtors to accept any particular asset
23 purchase agreement put forward by Generate.  The stipulation
24 simply solves for operational cash neutrality at the projects
25 while the Debtors and Generate finalize negotiations over an

1 asset purchase agreement.

2 And that concludes Mr. Harvey's testimony.

3 THE COURT: Thank you.

4 EXAMINATION OF DRAKE HARVEY

5 BY THE COURT: Mr. Harvey, do you have any additions
6 or corrections to Mr. Grogan's proffer of your testimony?

7 THE WITNESS: I do not, Your Honor.

8 BY THE COURT: Thank you.

9 Mr. Harvey, if it turns out that another offer comes
10 in that is superior to the Generate offer, does what we're
11 about to do today create a disadvantage with respect to some
12 other offer that might be received?

13 THE WITNESS: I don't believe it does, Your Honor.
14 I think Mr. Grogan, through my proffer, articulated it
15 accurately. We're trying to solve for negative economics at
16 these projects, which obviously has harm and, you know,
17 ongoing expense to the estate.

18 We're also being very cognizant of the fact that the
19 projects have more value in a potential sale if they're
20 operating versus if they're not operating.

21 We also -- and very, very much at the front of my
22 mind -- forefront of my mind is the fact that we have
23 approximately 45 employees that are in the balance on this, as
24 well. And you know, the best outcome is going to be to have
25 the project operating and these employees employed through the

1  duration. It's very likely that any asset purchase would
2  likely be preferential to those employees for future
3  employment. Obviously, there's no commitment or guarantee to
4  that, but we're trying to find and strike the right balance.
5      BY THE COURT: With respect to marketing to third-
6  party buyer; i.e., not Generate, does this order, in your
7  view, or this stipulation have a positive effect on your
8  ability to market to others? I think you said it doesn't
9  have --
10     THE WITNESS: It --
11     BY THE COURT: -- a negative effect.
12     THE WITNESS: I think it has a positive effect, to
13 the extent that the project is operating, as opposed to the
14 project being sitting dormant.
15     BY THE COURT: So the primary swing that you're
16 trying to effectuate, as I read it, was exactly what you said,
17 which is you're trying to sell an open, rather than a closed
18 business, and this is not buyer-specific. You just happen to
19 have -- your expected buyer wants to be sure that that's what
20 they're going to be bidding on. That's what it looks like we
21 have and I just want to confirm with you I'm not missing
22 something that's staring me in the face and I'm just not
23 reading it right.
24     THE WITNESS: No. I read it that way, Your Honor,
25 as well. And I -- and I think I would also characterize it

1  that we're agreeing to conduct the same services that we
2  conduct today under the PMA, we're just doing it at economics
3  that keep it cash-neutral.
4        THE COURT:  All right.  Does anyone else have any
5  questions for Mr. Harvey?
6     (No verbal response)
7     (Witness excused.)
8        THE COURT:  Are there any other witnesses anybody
9  wants to offer today?
10    (No verbal response)
11       THE COURT:  All right.  I'm going to sign the order
12 without change.  I think, although we're doing this on an
13 expedited basis, this asset, by all accounts, will be worth
14 more open than closed.  We know you've got at least one buyer
15 for it.  And I can't imagine this isn't the right thing to do.
16       The Committee has had the amount of time they said
17 they needed in order to determine their support of it.  I
18 think these emergencies get a lot easier when you've got the
19 Committee already behind it.  And so I'm going to accept both
20 the estates' desire, as well as the Committee's recommendation
21 for that and sign the order.  This will be docketed
22 momentarily.
23       Is there anything else that we ought to try and do
24 today?
25       MR. GROGAN:  No, Your Honor.  That concludes my

1   presentation.
2           THE COURT:  All right.  Anything else anyone else
3   has that they need to introduce?
4       (No verbal response)
5           THE COURT:  Okay.  Thanks, you all.  Thanks for
6   coming in.
7           MR. GROGAN:  Yes.  Thank you, Your Honor.
8           COUNSEL:  Thank you, Your Honor.  Thank you, Judge.
9           THE COURT:  Thank you.
10      (Proceedings concluded at 3:44 p.m.)
11                          * * * * *
12          *I certify that the foregoing is a correct transcript*
13  *to the best of my ability produced from the electronic sound*
14  *recording of the proceedings in the above-entitled matter.*
15     /S./  MARY D. HENRY
16  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
17  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
18  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
19  *JTT TRANSCRIPT #66491*
20  *DATE FILED:  NOVEMBER 1, 2022*
21
22
23
24
25