**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

| | |
|---|---|
| In re: | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., et al. | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |
| | Docket Entry No. 209 |

---

### OBJECTION OF ALDER OPPORTUNITY, LP, ALDER SPV I, LLC, AND ALDER BTC, LLC TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

Alder Opportunity, LP ("**Alder Opportunity**"); Alder SPV I, LLC ("**Alder SPV I**"); and Alder BTC Holdings, LLC ("**Alder BTC**," and with Alder Opportunity and Alder SPV I, the "**Alder Entities**"), hereby submit this Objection (the "**Objection**") to adequate assurance of future performance under certain Master Agreements (defined below) proposed to be assumed in accordance with the assumption and assignment procedures approved under this Court's Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances as well as the Assumption and Assignment of Certain Executory Contract and Unexpired Leases (the "**Final Bid Procedures Order**," Docket Entry No. 256). In support of this Objection, the Alder Entities respectfully state as follows:

1

**PRELIMINARY STATEMENT**

1. Each of the Alder Entities are counterparties to certain Master Agreements with one of the jointly administered Debtors, Compute North, LLC (the "**Compute North**"). Compute North was in default under the Master Agreement as of the Petition Date. The Debtors propose to assume some or all of the Master Agreements. The Alder Entities object to assumption of their agreements because (a) the Debtors cannot show their ability to perform their obligations under the Master Agreements because of their prepetition defaults under the Master Agreements; (b) to the extent the Debtors are assuming and assigning the Master Agreements to another entity, the Debtors should show that entity's ability to perform; and (c) the Alder Entities reserve the right to dispute that the Master Agreements are executory contracts capable of assumption and assignment.

**BACKGROUND**

**A.     The Bankruptcy Case**

2. On September 22, 2022 (the "**Petition Date**"), Compute North Holdings, Inc. and eighteen affiliates, including Compute North (together, the "**Debtors**"), filed chapter 11 petitions with this Court. Since the Petition Date, the Debtors have continued to operate and manage their business as a debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On October 13, 2022, the Court entered the Order (A) Approving de Minimis Asset Sale Procedures; (B) Approving Rejection Procedures and Certain Assumption and Assignment Procedures and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Further Hearing

on the Approval of the Debtors' Proposed Bidding Procedures and Related Relief (the "**Initial Bid Procedures Order**," Docket No. 191).

4. On October 18, 2022, the Debtors filed the *Notice of Filing of Cure Schedule in Connection with Proposed Sale* dated October 18, 2022 (the "**First Cure Notice,**" Docket Entry No. 209). The First Cure Notice does not list any of the Alder Entities.

5. On October 28, 2022, the Debtors filed the Notice of Filing of Supplemental Cure Schedule in Connection with Proposed Sale (the "**Supplemental Cure Notice**," Docket Entry No. 334). The Supplemental Cure Notice does not list any of the Alder Entities.

6. On November 1, 2022, the Debtors filed the Notice of Filing of Cure Schedule in Connection with Proposed Sale (the "**Amended Cure Notice**," Docket Entry No. 357). The Amended Cure Notice does not list the Alder Entities.

7. Alder BTC Holdings, LLC received the Notice of Entry of Initial Sale Procedures Order and Proposed Sale dated October 18, 2022 (the "**Served Cure Notice**") on October 18, 2022, which reflects a cure amount in the amount of $0.00 owing to Alder BTC Holdings, LLC's Master Agreement.

8. Alder Opportunity may have also been served with a cure notice similar to the Served Cure Notice that Alder BTC received.

9. On October 24, 2022, the Court entered the Bid Procedures. The Final Bid Procedures Order provides a November 7, 2022, deadline to object to adequate assurance of future performance.

**B.     The Master Agreements**

10. The Alder Entities are parties to the following master agreements (the "Master Agreements") with Compute North:

3

a. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder BTC, under which Compute North agreed to provide colocation and other managed services for Alder BTC's cryptocurrency mining hardware;

b. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder Opportunity, under which Compute North agreed to provide colocation and other managed services for Alder Opportunity's cryptocurrency mining hardware; and

c. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder SPV I, under which Compute North agreed to provide colocation and other managed services for Alder SPV I's cryptocurrency mining hardware.

11. The Alder Entities paid cumulatively $236,834.40 in deposits (the "Deposits") relating to the Master Agreements and as set forth on the Order Forms, which represents the last two months of monthly service and package fees, as follows:

a. $38,925.60 paid by Alder BTC;

b. $44,981.40 paid by Alder Opportunity; and

c. $152,924.40 paid by Alder SPV I.

12. The Alder Entities financed the purchase of the Equipment, as hereinafter defined.

13. In connection with entry into the Master Agreements, the Alder Entities delivered to Compute North certain Bitmain cryptocurrency Antminers, as particularly detailed in the Alder Entities' respective Order Forms (the "**Equipment**"), which Compute North was obligated to deploy under the Master Agreements.

14. The Alder Entities do not appear on Compute North's Schedules.

15. The Alder Entities' Order Forms under each of the Master Agreement provides a payment term of 60 months (the "**Equipment Term**").

16. Compute North has never deployed the Alder Entities' Equipment pursuant to the Master Agreements, even though the Debtors remain in possession of the Alder Entities' Deposits and Equipment.

17. Section 4.1 of each Master Agreement describes the Effective Date and Term of the Master Agreement as follows:

> 4.1. <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all Equipment Terms for all Equipment under each Order Form have expired or terminated.

18. Section 4.2 of each Master Agreement outlines how and when the Equipment Terms commences and ends as follows:

> 4.2. <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for each piece of Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

19. Compute North assured the Alder Entities prepetition that the Equipment would be deployed and operating by September 15, 2022.

20. The Alder Entities have received no notification from the Debtors in accordance with Section 4.2 of the Master Agreements that the Equipment has been received and turned on by Compute North, however. Accordingly, the Equipment Term under each of the Master Agreements has not commenced.

21. Further, even though the Debtors remain in possession of the Equipment, they have not deployed the Equipment to mine Bitcoin pursuant to the Master Agreements.

22. The Alder Entities' estimated lost revenue due to Compute North's failure to energize the Alder Entities' hosted miners due to failure of Debtor Counterparty to energize such miners in a commercially reasonable manner on the quoted energization date of September 15, 2022, less applicable Service Fees and Package Fees (each as defined under the Master Agreements) is as follows:

   a. Alder SPV I – $70,346.90;

b. Alder BTC – $18,008.71; and

c. Alder Opportunity – $16,895.77.

23. Section 5.2 of the Master Agreements provides that the Alder Entities "shall pay to Compute North the Monthly Service Fees and the Monthly Package Fees (collectively the 'Fees') as set forth on the Order Form." The Order Forms provides that the Fees "will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North."

24. Section 8.3 of the Master Agreements provides that "provided that Customer has paid all amount due and owing under [the Master Agreement] . . . [Compute North] shall decommission and make the [Equipment] available to Customer for pick up at, or shipment from, the Facility within thirty (30) of Customer's written request. Customer shall be responsible for all deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning the [Equipment]."

25. The Alder Entities have previously objected to the cure proposed by the Debtors (Docket Entry No. 370) (the "**Cure Objection**") and to the proposed sale to the extent that the Debtors propose to sell the Alder Entities' Equipment (Docket Entry No. 395). In the Cure Objection, the Alder Entities also demanded the return of their Equipment.

### **OBJECTION**

**A. Compute North's failure to perform under the Master Agreements is evidence of the Debtors' inability to perform under the Master Agreements.**

26. Section 365(b)(1)(C) requires the Debtors to show that they can provide adequate assurance of future performance in order to assume a contract. The Debtors cannot show their ability to assume and perform under the Master Agreements. The Debtors assured the Alder Entities that they would have miners and the Equipment deployed and operating by September 15,

6

2022—an outside date that was well beyond the scope of the original start date contemplated by the parties.

27. "Evidence of prior defaults, though, is probative of whether the debtor will be able to perform in the future." *In re Texas Health Enterprises, Inc.*, 2003 WL 21770822 *3 (5th Cir. 2003). Because the Debtors have failed to perform and continue to fail to perform under the Master Agreement, the Debtors cannot show their ability to assume the Master Agreement.

28. The Alder Entities also object on the grounds that they have received no information regarding the identity of the proposed purchaser(s) of the Debtors' assets. To the extent that the Debtors intend to assume and assign the Master Agreement to another entity, the Debtors should be required to show that that entity is capable of performing under the Master Agreement. As a result, the Alder Entities are unable to evaluate whether the Debtors' obligations under the Master Agreements will be performed and/or when the Equipment will be returned to the Alder Entities.

**B.     The Alder Entities reserve the right to object to assumption and assignment of the Master Agreements because they are not executory contracts.**

29. The Alder Entities reserve the right to object to assumption and/or assignment of the Master Agreements because they are not executory due to Compute North's prepetition repudiation of the Master Agreements by failing to deploy the Equipment as promised. *See, e.g., In re Food Management Group, LLC*, 372 B.R. 171, 190-91 (Bankr. S.D.N.Y. 2007) ("Anticipatory repudiation by one party precludes fulfillment of the contract by both sides and, therefore, excuses performance by the counter-party"). In failing to deploy the Equipment, Compute North foreclosed the Alder Entities' ability to perform their obligations under the Master Agreements, thus excusing the Alder Entities of their obligation to perform under the Master Agreements. *Id.* The Alder Entities cannot perform their obligations to pay the Fees under the

Master Agreement because Compute North has not installed and begun to operate the Equipment. *See* Master Agreements Section 5.2 and Order Forms. Since the Alder Entities are excused of their obligation to perform under the Master Agreements as a result of Compute North's failure to perform, the Master Agreements may not be executory contracts. *Cf. In re Falcon V, L.L.C.*, 44 F. 4th 348, 352 (5th Cir. 2022) (a contract is executory when there are material obligations on both sides yet to be performed as of the petition date).

30. The Alder Entities respectfully request that the Court enter an order (i) conditioning the assumption and/or assignment of the Master Agreements on the prompt payment of cure amounts as set forth in the Cure Objection filed by the Alder Entities; (ii) conditioning the assumption and/or assignment of the Master Agreements on the Debtors providing adequate assurance of future performance to the Alder Entities; (iii) requiring compliance with all obligations under the Master Agreements; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: November 3, 2022.                         POLSINELLI PC

By: */s/ Meredyth A. Kippes*
Meredyth A. Kippes (SBN 24007882)
2950 N. Harwood Street, Suite 2100
Dallas, Texas  75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
mkippes@polsinelli.com

*Counsel for the Alder Entities*

## CERTIFICATE OF SERVICE

I certify that on November 3, 2022, a true copy of the foregoing was served on those parties who consent to service by the Court's ecf notification system and by the method and on the following parties as indicated:

*/s/ Meredyth A Kippes.*
Meredyth A. Kippes

8

By email to the following parties:

Paul Hastings LLP
600 Travis Street
58th Floor
Houston, Texas 77002
Attn: James T. Grogan III (jamesgrogan@paulhastings.com)

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn: Luc Despins (lucdespins@paulhastings.com)
Sayan Bhattacharyya (sayanbhattacharyya@paulhastings.com)
Daniel Ginsberg (danielginsberg@paulhastings.com)

Paul Hastings, LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Attn: Matthew Micheli (mattmicheli@paulhastings.com)
Michael Jones (michaeljones@paulhastings.com)

McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attn: Charles R. Gibbs (crgibbs@mwe.com)

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
Attn: Kristin K Going (kgoing@mwe.com)
Darren Azman (dazman@mwe.com)
Stacy A. Lutkus (salutkus@mwe.com)
Natalie Rowles (nrowles@mwe.com)

Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attn: Jayson B. Ruff (Jayson.B.Ruff@usdoj.gov)
Jana Whitworth (Jana.Whitworth@usdoj.gov)