IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>COMPUTE NORTH HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | § Chapter 11<br>§<br>§ Case No. 22-90273 (MI)<br>§<br>§ (Jointly Administered)<br>§<br>§ **Re Docket No. 342** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO ROHIT SHIROLE'S MOTION FOR RELIEF UNDER 11 U.S.C. § 362(d)
FROM AUTOMATIC STAY TO CONTINUE LITIGATION AGAINST
CERTAIN DEBTORS AND WAIVER OF 30-DAY HEARING REQUIREMENT**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby objects (the "Objection") to the *Motion for Relief Under 11 U.S.C. § 362(d) From Automatic Stay to Continue Litigation Against Certain Debtors and Waiver of 30-Day Hearing Requirement* [ECF No. 342] (the "Motion")[2] filed by Rohit Shirole (the "Movant"). In support of the Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not defined in the Objection have the meanings ascribed to them in the Motion.

## BACKGROUND[3]

1. Movant is a former employee of the Debtors. In December 2021, Movant commenced a lawsuit in Minnesota state court (the "Minnesota Action") asserting various claims against the Debtors that arise out of his employment (discrimination, retaliation, wage loss, wrongful termination, breach of contract, unjust enrichment, etc.). In response, the Debtors asserted various counterclaims against Movant (breach of the duty of loyalty, tortious interference with contract, unfair competition, etc.). The Minnesota Action is presently stayed as a result of the commencement of the Chapter 11 Cases.

2. By the Motion, Movant requests that the Court lift the automatic stay so that the Minnesota Action can continue. However, Movant has failed to carry the heavy burden of demonstrating that cause exists to lift the stay. The Motion must therefore be denied.

## OBJECTION

3. The automatic stay arising under Bankruptcy Code section 362 is, without doubt, "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dept. of Envt'l Protection*, 474 U.S. 494, 503 (1986). Beyond that, the automatic stay is a fundamental creditor protection because it prevents individual creditors from pursuing remedies outside of bankruptcy to the detriment of other creditors. *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (noting that the automatic stay "protect[s] creditors by preventing a race for the debtor's assets"). In short, the stay is essential to ensuring the collective nature of a bankruptcy proceeding.

---

[3] The Committee is not a party to the underlying state-court action and, having only recently been appointed, is not in a position to dispute the Motion's factual allegations. Thus, for purposes of the Objection, the Committee accepts the Motion's factual statements as true. Nevertheless, the facts, as asserted in the Motion, do not support granting relief from the automatic stay.

4. The automatic stay also is intended to give debtors a crucial "breathing spell" after the commencement of a bankruptcy case. *See Commonwealth Oil*, 805 F.2d at 1182 (stating that one purpose of the automatic stay is "to give the debtor a 'breathing spell' from [its] creditors"). The automatic stay therefore shields debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor and its personnel should be focusing on maximizing the value of the estate for **all** stakeholders. Thus, as one court aptly stated, "even slight interference with the administration [of a debtor's estate] may be enough to preclude relief [from the automatic stay]." *In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994).

5. Before a court will deprive a debtor and its creditors of this crucial protection, the movant must demonstrate that "cause" exists to do so. *In re Baytown Nav., Inc.*, No. BR 11-35926, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) ("The movant bears the initial burden of showing 'cause' for relief from the automatic stay."). Bankruptcy Code section 362(d) does not offer guidance as to what constitutes "cause," so courts have relied upon a set of twelve factors (sometimes called the "*Curtis*" or "*Sonnax*" factors) when determining whether cause exists. *See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).[4]

---

4     The twelve factors are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

6. All factors may not be relevant in a given case, and only the relevant factors need to be considered. *See Sonnax*, 907 F.2d at 1286. Further, "[i]f the movant fails to make an initial showing of cause, [] the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id*. at 1285; *see also In re Gramercy Court, Ltd.*, Nos. 07-80177-G3-11, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007). Here, despite correctly reciting the twelve factors, Movant has failed to demonstrate that the relevant factors support lifting the stay.

**(1) Factors 1 and 10: Relief Will Not Fully Resolve the Issues or Promote Judicial Economy**

7. Factors 1 and 10 consider the extent to which lifting the stay will resolve the issues between the parties and promote judicial economy. *See Curtis,* 40 B.R. at 799–800; *Sonnax*, 907 F.2d at 1286. In this case, lifting the stay will not result in the complete resolution of the issues because Movant will have to return to this Court to seek to have his claims allowed, and the claims' treatment will be determined through the chapter 11 process. Courts have denied lift stay motions in analogous circumstances. *See, e.g.*, *In re Residential Capital*, No. 12-12020 (MG), 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012) (finding that the first *Sonnax* factor weighed against lifting the stay because the movants would be required to go through the bankruptcy court claims process to collect on any judgment). "Claims for damages against [debtors] are the usual grist for the bankruptcy claims allowance process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims." *Id.* at *4. Movant cannot identify any "unusual circumstances" that would support deviating from the normal claims allowance process.

8. Moreover, lifting the stay would not promote judicial economy. To the contrary, lifting the stay would result in one court (the Minnesota court) addressing the merits of the claims

and another court (this Court) determining the claims' allowability and treatment. Consequently, it is **refusing** to lift the stay that would promote judicial economy by allowing all issues related to the claims to be resolved in a single forum. These factors therefore support denying the Motion.

### (2) Factors 2 and 7: Relief Will Interfere With the Bankruptcy Case and Prejudice Other Creditors

9. Factors 2 and 7 are concerned with whether lifting the stay will interfere with the bankruptcy case and prejudice other creditors. *See Curtis,* 40 B.R. at 800; *Sonnax*, 907 F.2d at 1286. Here, lifting the stay would subject the Debtors to litigation in another jurisdiction, creating an unnecessary distraction as the Debtors seek to expeditiously resolve the Chapter 11 Cases. Moreover, if the Motion were granted, not only would the litigation be a distraction, but other would-be litigants would be incentivized to seek the same relief. *See Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026 REG, 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that the potential for opening the floodgates to "other litigants with garden variety claims" is "the very state of affairs the automatic stay was enacted to prevent"). Merely having to respond to additional stay-relief motions and requests would divert the Debtors' attention away from more critical tasks that are central to the administration of these cases.

10. Lifting the stay and requiring the Debtors to defend prepetition litigation in another forum at this early and critical stage of the Chapter 11 Cases would prejudice the Debtors' restructuring efforts and thereby prejudice the Debtors' other creditors. Indeed, allowing litigation to proceed in another forum undercuts the core rationale for the automatic stay. *See In re Mirant Corp.*, 316 B.R. 234, 241 (Bankr. N.D. Tex. 2004) (finding that "[l]iquidation of numerous claims through various arbitration proceedings would [] subject Debtors and creditors to piecemeal litigation" contrary to a core purpose of the Bankruptcy Code). Accordingly, authorizing the stay relief requested in the Motion will negatively affect the Debtors, their estates, and other general

unsecured creditors while providing no benefit to the Debtors. Accordingly, these factors also weigh in favor of denying the Motion.

### (3) Factor 4: No "Specialized Tribunal" Has Been Established

11. The fourth factor looks at whether a specialized tribunal with the necessary expertise has been established to hear the cause of action. *See Curtis,* 40 B.R. at 800; *Sonnax*, 907 F.2d at 1286. Although claims in the Minnesota Action arise under state law, bankruptcy courts are perfectly capable of resolving state-law claims. Indeed, because, as a general rule, substantive rights in bankruptcy are determined by reference to state law, *see Butner v. United States*, 440 U.S. 48 (1979), bankruptcy courts are routinely called upon to decide state-law issues. *See, e.g.*, *Residential Cap., LLC*, 2012 WL 3249641, at *5 ("This Court can and does interpret and apply state law to resolve claims through the bankruptcy process."). Movant himself concedes that "this Court certainly has the skill, knowledge, and expertise to interpret the law of any forum." Motion, at 10. The fourth factor therefore supports denying the Motion.

### (4) Factor 5: No Insurer Has Assumed Responsibility for the Minnesota Action

12. The fifth factor asks "whether the debtor's insurer has assumed full responsibility for defending" the underlying action. *Curtis,* 40 B.R. at 800; *Sonnax*, 907 F.2d at 1286. In the present case, it is unknown whether the Debtors carry any insurance policies that would be implicated by the Minnesota Action. In fact, Movant explains that he wishes for the stay to be lifted "so that he might identify whether the Defendants ***may have*** applicable insurance coverage that may satisfy any damages resulting from his claims." Motion, at 3 (emphasis added). Even assuming such insurance exists, the policies may very well require the Debtors to pay some form of deductible or self-insured retention before any insurance proceeds become available to cover losses on account of the Minnesota Action. *See*, *e.g.*, *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, No. SA-05-CA-135-RF, 2005 WL 3487723, at *3-5 (W.D. Tex. Nov. 3, 2005) (holding

that an insurer had no obligation to defend or indemnify unless and until the debtor-insured first satisfied the applicable self-insured retention by actual payment). Once again, this factor supports denial of the Motion.

### (5) Factor 12: The Balance of Harms Weighs in Favor of Maintaining the Automatic Stay

13. The final factor—the balance of the harms—weighs against modifying the automatic stay. Ultimately, to lift the automatic stay, the moving party "bears 'the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief.'" *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) (quoting *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990)). Movant has failed to show that he will incur any unique hardship from the continuation of the stay. The Motion does not mention any specific prejudice suffered thus far—or to be suffered in the future—by Movant due to the continued imposition of the automatic stay. Nor could Movant make such a showing, as Movant is in the same boat as every other unsecured creditor in the case.

14. To the extent Movant has legitimate claims against the Debtors, those claims, ***like those of every other creditor***, must be pursued as part of the collective bankruptcy process. *See Residential Capital*, 2012 WL 3249641, at *4 (noting that the creditor would merely have a general unsecured claim against the estate to be paid in accordance with a plan if the state court rendered a judgment against the debtor, which weighed against lifting the stay). There are countless creditors in the Chapter 11 Cases currently awaiting recovery. Until such time that a plan is confirmed, the recoveries of general unsecured claims, if any, are unknown. Delaying Movant's potential recovery on his claims will undoubtedly inflict less harm on Movant than the harm the Debtors and their creditors will experience if Movant is given preferential treatment in the form of lifting the stay.

15.     In sum, the Chapter 11 Cases are at a critical juncture, and the Debtors should be allowed to focus their efforts on resolving the cases for the benefit of *all* creditors. Because Movant has failed to establish cause to lift the stay, the Motion must be denied.

## RESERVATION OF RIGHTS

16.     The Committee reserves the right to supplement this Objection or to raise additional or further objections to the Motion.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

It is in the best interests of the Debtors and their various stakeholders that the Debtors achieve a successful and prompt resolution of the Chapter 11 Cases. Accordingly, the Court should decline to lift the stay so that the Debtors can focus on achieving that goal, rather than expending time and energy defending against the Movant's state court proceeding. The Committee therefore requests that the Court deny the Motion.

Dated: November 9, 2022    Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

/s/ Charles R. Gibbs
Charles R. Gibbs
Texas State Bar No. 7846300
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: crgibbs@mwe.com

- and -

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Stacy A. Lutkus admitted (*pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-5404
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
Email: kgoing@mwe.com
       dazman@mwe.com
       salutkus@mwe.com
       nrowles@mwe.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

      I certify that on November 9, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                       */s/ Charles R. Gibbs*
                                                                     Charles R. Gibbs