**<u>Exhibit A</u>**

# MASTER AGREEMENT

This Master Agreement (the "**Agreement**"), dated February 5, 2021, is between Compute North LLC ("**Compute North**") and U.S. Data Mining Group, Inc., dba US Bitcoin Corp, a Nevada corporation ("**Customer**"). In consideration of the promises set forth below, the parties agree as follows:

1.      **Services.** Subject to the terms and conditions of this Agreement, Compute North shall provide, and Customer shall pay for, the colocation, managed and other services (the "**Services**") for Customer's miners (the "Mining Equipment," and collectively with any Capital Equipment and Acquired Hardware, the "**Equipment**") identified on the order form attached hereto as Exhibit A, as may be updated in writing and duly signed by Customer and Compute North from time to time (the "**Order Form**"). Compute North shall provide the Services consistent with, and as more fully described in, its customer handbook (the "**Customer Handbook**"), available at *www.computenorth.com/handbook-sla.pdf* and incorporated herein, as Compute North may update from time to time in is sole discretion.

2.      **Colocation Services.**

2.1.    <u>Colocation Facility</u>. Compute North will provide cryptocurrency mining facility, including rack space, electrical power, ambient air cooling, internet connectivity and physical security ("**Colocation Services**") for Mining Equipment at the Compute North facility specified the Order Form (the "**Facility**") in accordance with the Customer Handbook.

2.2.    <u>Acceptable Use Policy</u>. Customer's receipt of Colocation Services and its use of Mining Equipment under this Agreement is subject to Customer's compliance with Compute North's then-current Acceptable Use Policy, available at *www.computenorth.com/acceptable-use-policy* and incorporated herein, as Compute North may update from time to time in its sole discretion.

2.3.    <u>Customer Portal</u>. Compute North will provide Customer with access to its customer portal (the "**Customer Portal**"). Customer's access to and use of the Customer Portal is subject to, and Customer agrees to be bound by, Compute North's Terms of Use, available at *www.computenorth.com/terms-of-use/* and incorporated herein, as Compute North may update from time to time in its sole discretion. All written notices required by Customer under this Agreement shall be submitted using the Customer Portal.

2.4.    <u>Transfer of Mining Equipment</u>. Customer shall provide prompt written notice to Compute North if it transfers legal title to any Mining Equipment to a third party. In the event of such a transfer, Customer shall remain obligated to pay Compute North the Monthly Service Fees for the transferred Mining Equipment for the remainder of the term applicable to such Mining Equipment (the "**Equipment Term**") unless and until such Mining Equipment is placed into service under, and is subject to, a collocation agreement between the acquiring third party and Compute North, which shall need Compute North's approval which shall not be unreasonably withheld.

2.5.    <u>Transfer of Services</u>. Except as provided in Section 16.4, Customer may not sublicense, assign, delegate or otherwise transfer its receipt of Colocation Services under this Agreement to any third party without Compute North's express written consent which shall not be reasonably withheld. In the event of a sublicense, assignment, delegation or transfer under this Section 2.5, Customer shall remain fully responsible and liable to Compute North for the performance of all of Customer's obligations under this Agreement, and under no circumstances shall Compute North be deemed to be providing any Colocation Services to any third party for Customer or on its behalf.

**3.      Managed Services.**

3.1.    <u>Managed Services</u>. Compute North will provide managed services for the Mining Equipment as elected on the Order Form ("**Managed Services**"). Compute North will provide Managed Services in a professional and workmanlike manner consistent with the Customer Handbook. If Customer does not elect Managed Services, Customer shall be solely responsible for configuring and maintaining the Mining Equipment remotely via VPN.

3.2.    <u>Third-Party Management</u>. Customer shall notify Compute North if it engages a third party to provide services on its behalf with respect to the Equipment. Customer shall be fully responsible and liable to Compute North under this Agreement for any acts or omissions by any third-party service provider acting for or on its behalf.

**4.      Hardware Acquisition.** Compute North agrees to sell to Customer, and Customer agrees to buy from Compute North, such hardware, if any, elected on the Order Form ("**Acquired Hardware**"). A deposit equal to fifty percent (50%) of the fee set forth on the Order Form (the "**Hardware Deposit**") shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form, with the remaining amount due and payable by the earlier of (a) the date on which Compute North notifies Customer that the Acquired Hardware has been shipped or (b) thirty (30) days after the Hardware Deposit. Legal title to the Acquired Equipment only shall transfer to Customer when the fee for the Acquired Hardware is paid in full. The Acquired Hardware shall be Mining Equipment subject to this Agreement upon its delivery to the Facility Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof.

**5.      Term and Termination.**

5.1.    <u>Term</u>. This Agreement shall be effective as of the date on which it has been executed by both Compute North and Customer (the "**Effective Date**"), and shall remain in effect for the remainder of any Equipment Term set forth on the Order Form. The Equipment Term for the Mining Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North.

5.2.    <u>Mining Equipment Return</u>. Upon Customer's written request, and provided Customer has paid all undisputed amounts then due and owing under this Agreement, Compute North shall decommission and return the corresponding Mining Equipment to Customer upon the expiration of an Equipment Term as provided in Section 9.4.

5.3.    <u>Termination for Cause</u>. Compute North may terminate this Agreement for cause immediately upon written notice to Customer if Customer: (a) fails to make any payment(s) due pursuant to this Agreement; (b) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and any such matter is not cured within fifteen (15) days after written notice from Compute North; or (c) enters into bankruptcy, dissolution, financial failure or insolvency (each, a "**Default**"). If the agreement is terminated for cause, Compute North will consider in good faith refunding or crediting amounts paid by Customer hereunder based on the circumstances of the termination.

5.4.    <u>Effect of Default</u>. In the event of a Default by Customer, Compute North shall have the right, but not the obligation, to terminate this Agreement on written notice to Customer, and Customer shall pay immediately to Compute North all amounts then owed under this Agreement and, as liquidated damages and not a penalty, all amounts due for the remainder of the applicable term of the Agreement. If Customer fails to make any such payments, in

addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Mining Equipment without any cost, obligation or liability of Compute North to Customer.

**6.**     **Fees and Payment.**

6.1.     <u>Initial Fees</u>. The Initial Setup Fees and Initial Deposit set forth on the Order Form and any Hardware Deposit shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form. Unless Compute North is unable to provide Services under this Agreement, the Initial Setup Fees, Initial Deposit and Hardware Deposit are non-refundable under any circumstance.

6.2.     <u>Monthly Fees</u>. On the first day of every month during the Term of this Agreement, Customer shall pay Compute North the Monthly Service Fees and Monthly Package Fees (collectively, the "**Fees**") set forth on the Order Form. Compute North reserves the right to adjust the Monthly Service Fees if the configuration or performance of the Mining Equipment differs materially from that stated on the Order Form, as reasonably determined by Compute North.

6.3.     <u>Taxes</u>. All amounts payable by Customer under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties and fees, including federal, state and local taxes on manufacture, sales, gross income, receipts, occupation and use, not based on Compute North's income that arise out of this Agreement.

6.4.     <u>Payment Method</u>. All payments due and owing under this Agreement shall be made through automated clearing house ("**ACH**") transfers by Compute North from an account established by Customer at a United States bank designated by Customer (the "**Payment Account**"). Customer hereby agrees to execute and deliver to Compute North or its ACH payment agent an authorization agreement authorizing Compute North to initiate ACH transfers from the Payment Account to Compute North in the amounts required or permitted under this Agreement. For as long as this Agreement remains effective, Customer shall be responsible for all costs, expenses or other fees and charges incurred by Compute North as a result of any failed or returned ACH transfers, whether resulting from insufficient sums being available in the Payment Account or otherwise. Any other payment method must be pre-authorized by Compute North and will be subject to a fee.

6.5.     <u>Service Credits</u>. All requests for service credits will be governed by the then-current Compute North credit policy published at *www.computenorth.com/credit-request*. All requests for service credits must be submitted to Compute North online via this link.

**7.**     **Security Interest.** Customer hereby grants a security interest in the Equipment, including the Capital Equipment and Acquired Hardware, in favor of Compute North to secure the obligations of Customer under this Agreement. Compute North may, at such time as it determines appropriate, file a UCC 1 Financing Statement in such places as it determines to evidence the security interest granted by Customer to Compute North under this Agreement. Customer represents and warrants that it has not granted a security interest in the Equipment in favor of a third party priority over the security interest granted to Compute North herein.

**8.**     **Network and Access.**

8.1.     <u>Network</u>. Compute North will provide a minimum of 100 mbps of local network connectivity to each piece of Mining Equipment on a single Ethernet segment. Customer may elect to use

Compute North's standard firewall and Dynamic Host Configuration Protocol ("**DHCP**") services by notifying Compute North in writing. Customer is solely responsible for all network and device security, including providing an appropriate firewall and managing passwords. Customer acknowledges and agrees that Compute North may monitor Customer's network usage and traffic and Customer hereby authorizes Compute North to access, collect and use data relating to the Mining Equipment and Customer's use thereof. Customer's requirement that it is solely responsible for all network and device security is void where any acts or omission or violations of applicable laws, data security and unauthorized disclosures/breaches are due to the gross negligence or intentional misconduct by Compute North or anyone acting for or on its behalf.

8.2.   <u>Access</u>. Only those persons specifically authorized by Compute North in writing may access the Facility. Compute North may deny or suspend Customer's access to the Equipment based on Compute North's then-current Security Policies and Procedures, which include, but are not limited to:

    8.2.1.   All access into the Facility must be supervised by a Compute North representative;

    8.2.2.   Customer shall provide two (2) day' written notice to Compute North prior to any maintenance or repair of the Equipment;

    8.2.3.   Customer shall perform Equipment maintenance and repairs during normal business hours (Monday-Friday, 7AM – 6PM Central Time);

    8.2.4.   Customer may request immediate or after-hour access to the Facility to perform emergency maintenance. Compute North will make every reasonable attempt to accommodate Customer's after-hour emergency access requests.

Customer shall be solely responsible for any damage or loss caused by anyone acting for or on its behalf while at the Facility.

8.3.   <u>Hazardous Conditions</u>. If, in the reasonable discretion of Compute North, any hazardous conditions arise on, from, or affecting the Facility, whether caused by Customer or a third party, Compute North is hereby authorized to suspend service under this Agreement without subjecting Compute North to any liability.

8.4.   <u>Demand Response/Load Resource Participation Program</u>. Customer acknowledges and understands that Compute North participates in various Demand Response/Load Resource Participation Programs ("**LRP Program**") at its facilities. As set forth in the Customer Handbook, the LRP Program provides the local grid operator with the capability to shut off the power load serving Compute North customers in response to emergency load situations. Customer agrees that the Fees reflect Compute North's participation in the LRP Program and that Compute North shall have no liability to Customer for any actions or omissions due to or resulting from its participation in the LRP Program.

## 9.   **Pause and Reactivation.**

9.1.   <u>Mining Equipment Pause</u>. At Compute North's reasonable discretion, and provided that Customer has paid all amounts then due and owing under this Agreement, Compute North may permit Customer may pause and suspend Services for specified Mining Equipment ("**Paused Equipment**"). The pause shall remain in effect until the earlier of (i) the six (6) month anniversary of the date upon which Services were paused and suspended and (ii) the date upon

which Customer gives written notice to Compute North that it intends to resume use of the Paused Equipment.

9.2.  <u>Reconfiguration</u>. While Services are paused, Compute North may reconfigure and use the Paused Equipment for and on its own behalf. Such use may include revoking Customer's access to the Paused Equipment and reconfiguring the Paused Equipment so that all profits accrue to Compute North's benefit without owing any compensation, payment or other consideration to Customer. Customer acknowledges and agrees it is and shall remain solely liable for the Paused Equipment at all times during which service is paused and suspended and that Compute North shall not have any liability to Customer for its use of the Paused Equipment or for any loss, deletion or corruption of Customer's data or files on the Paused Equipment.

9.3.  <u>Fees During Pause</u>. Upon reconfiguration of the Paused Equipment by Compute North, Customer shall not owe Fees with respect thereto. Customer otherwise shall remain liable to Compute North for all amounts due and payable with respect to the Paused Equipment, and the Equipment Term for such Paused Equipment shall be extended by a like period.

9.4.  <u>Reactivation</u>. Within five (5) business days of receiving written notice from Customer, Compute North shall reconfigure the identified Paused Equipment for Customer's use. Customer shall pay Compute North its then-current Setup Fee for each device reconfigured for Customer's use, which shall be due and payable to Compute North with its next monthly invoice following reconfiguration.

**10.**  **Removals and Relocation of Mining Equipment.**

10.1.  <u>Relocation</u>. Compute North may require Customer to relocate Mining Equipment within the Facility or to another Compute North facility upon twenty (20) days' prior written notice to Customer, provided that the site of relocation shall afford comparable environmental conditions for Mining Equipment and comparable accessibility to the Mining Equipment. Notwithstanding the foregoing, Compute North shall not arbitrarily or capriciously require Customer to relocate Mining Equipment. If Mining Equipment is relocated according to this Section, the reasonable costs of relocating the Mining Equipment and improving the Facility to which the Mining Equipment will be relocated shall be borne by Compute North. Compute North will require commercially-reasonable approval of the Customer to relocate.

10.2.  <u>Interference</u>. In the case that the Customer's machines are being ran in Compute North's containers in the event of the Customer's containers being maintenance, if at any time Mining Equipment causes unacceptable interference to existing or prospective Compute North customers or their Mining Equipment in Compute North's reasonable opinion, Compute North may require Customer to remove or relocate such Mining Equipment at Customer's sole expense. If Customer is unable to cure such interference by relocating the Mining Equipment, Compute North may terminate this Agreement without further obligation to Customer under this Agreement.

10.3.  <u>Emergency</u>. In the event of an emergency, as determined in Compute North's reasonable discretion, Compute North may rearrange, remove, or relocate Mining Equipment without any liability to Compute North. Notwithstanding the foregoing, in the case of emergency, Compute North shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, or relocating Mining Equipment.

10.4.  <u>Mining Equipment Return</u>. Provided that Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and make the corresponding

Mining Equipment available to Customer. Compute North shall work to uninstall and prepare for pickup all Mining Equipment of the Customer at the facility based on a mutually agreeable schedule for de-installation beginning on the date of Termination. Customer shall arrange for pickup within thirty (30) days of Compute North notifying the Customer that the Mining Equipment is or will be ready for pickup. The Customer shall be responsible for all reasonable, documented pickup, delivery, transportation and de-installation costs associated with removing the Mining Equipment. If Customer does not remove the Mining Equipment as provided herein, Customer agrees that Compute North may charge Customer for storage of such Mining Equipment from the date of termination. Return of Mining Equipment shall not relieve Customer of any liability to Compute North for all amounts due for such Mining Equipment, if any.

**11.   Customer Responsibilities.**

11.1.   <u>Compliance with Laws</u>. Customer's use of the Facility and the Equipment located at the Facility must at all times conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Customer is doing business, and the laws of the city, county and state where the Facility is located.

11.2.   <u>Licenses and Permits</u>. Compute North shall use its best efforts to identify and assist Customer with obtaining applicable licenses and permits. Customer shall be responsible for obtaining any licenses, permits, consents, and approvals from any federal, state or local government that may be necessary to install, possess, own, or operate the Equipment.

11.3.   <u>Insurance</u>. Compute North shall identify and reasonably assist Customer with obtaining an insurance policy that includes commercial general liability insurance for both bodily injury and property damage. This insurance shall remain active by the Customer throughout the Term of this Agreement.

11.4.   <u>Mining Equipment in Good Working Order</u>. Except with respect to Acquired Hardware, Customer shall be responsible for delivering the Mining Equipment to the Facility in good working order and suitable for use in the Facility. Customer shall be responsible for any and all costs associated with the troubleshooting and repair of any such Mining Equipment received in non-working order, including parts and labor at Compute North's then-current rates that are in line with the market. All labor by Compute North will be performed in a professional and workmanlike manner. Compute North shall provide reasonable warranties with respect to work performed and parts installed by Compute North. Compute North is not responsible in any way for installation delays or loss of profits as a result of Equipment deemed not to be in good working order upon arrival at Facility.

11.5.   <u>Modification or Overclocking of Mining Equipment</u>. Customer shall notify and obtain prior written approval from Compute North before any material modifications, alternations, firmware adjustments, over- or under-clocking, or other changes are made to Mining Equipment ("**Modified Equipment**") that is intended to or might cause the Mining Equipment's performance to deviate from the standard or factory specifications. If Compute North determines that any Mining Equipment has been materially altered or modified without Compute North's prior written approval ("**Non-Compliant Equipment**"), it shall be an event of Default.

11.6.   <u>Representations</u>. Customer and Computer North each represents and warrants that (i) it is properly constituted and organized, (ii) it is duly authorized to enter into and perform this Agreement, and (iii) the execution and delivery of this Agreement and its performance of its

duties hereunder will not violate the terms of any other agreement to which it is a party or by which it is bound.

12. **Common Carrier.** Compute North and Customer agree that Compute North is acting solely as a common carrier in its capacity of providing the Service hereunder and is not a publisher of any material or information. Furthermore, Compute North has no right or ability to censor materials or information traversed through Compute North's networks.

13. **Warranty and Disclaimer**. COMPUTE NORTH MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES, THE FACILITY AND ANY ACQUIRED HARDWARE AND CAPITAL EQUIPMENT ARE PROVIDED "AS IS." COMPUTE NORTH DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY AND OTHER CONDITIONS. COMPUTE NORTH MAKES NO WARRANTY WHATSOEVER, AND HEREBY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, WITH RESPECT TO GOODS AND SERVICES SUBJECT TO THIS AGREEMENT, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF NONINFRINGEMENT AND (D) WARRANTY AGAINST INTERFERENCE. COMPUTE NORTH DOES NOT WARRANT THAT (A) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM INTERRUPTION; (B) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS EXPRESSLY SET FORTH HEREIN; OR (C) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL PROVIDE ANY FUNCTION NOT EXPRESSLY DESIGNATED AND SET FORTH HEREIN.

14. **Limitation of Liability.**

14.1.    Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control. This includes, but is not limited to force majeure, weather, network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or Acts of God. COMPUTE NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.

14.2.    IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS, INCLUDING, BUT NOT LIMITED TO, THOSE THAT MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF COMPUTE

NORTH PURSUANT TO THIS AGREEMENT. COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER IN THE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE EVENT GIVING RISE TO THE CLAIM.

14.3.   <u>Remedy</u>. Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the then-current service month.

14.4.   <u>Insurance loss</u>. For any insurance related claims, Customer agrees to look exclusively to Customer's insurer to recover for injury or damage in the event of any loss or injury, and releases and waives all right of recovery against Compute North.

**15.** **Indemnification.** Customer shall indemnify, hold harmless and defend Compute North, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Equipment or Customer's use thereof, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Customer. Customer shall not enter into any settlement or resolution with a third party under this section without Compute North's prior written consent, which shall not be unreasonably withheld.

**16.** **Miscellaneous.**

16.1.   <u>Lease Agreement</u>. Compute North may lease certain premises in the Facility from the Facility's owner ("**Leaser**") pursuant to a lease agreement (**"Lease"**). Customer is not a party to or a beneficiary under such Lease, if any, and has no rights thereunder; however, Customer shall be required to adhere to any and all rules of operation established by Leaser for the Facility. Whether owned or leased by Compute North, Customer acknowledges and agrees that it does not have, has not been granted, and will not own or hold any real property interest in the Facility, that it is a licensee and not a tenant, and that it does not have any of the rights, privileges or remedies that a tenant or lessee would have under a real property lease or occupancy agreement.

16.2.   <u>Entire Agreement</u>. This Agreement, including the Order Form and any documents referenced herein, constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding between them relating thereto. Customer acknowledges and agrees that it has not, and will not, rely upon any representations, understandings, or other agreements not specifically set forth in this Agreement. This Agreement shall not be superseded, terminated, modified or amended except by express written agreement of the parties that specifically identifies this Agreement.

16.3.   <u>Waiver, Severability</u>. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

16.4.   <u>Assignment</u>. Except as part of or in connection with a Change of Control or a reorganization solely among Customer and its Affiliates, Customer shall not assign or otherwise transfer any of its rights, or delegate or otherwise transfer any of its obligations or performance under this Agreement, in each case whether voluntarily, involuntarily, by operation of law, or otherwise, without Compute North's prior written consent. "**Change of Control**" means (i) a sale by Customer of all or substantially all of its assets that are the subject of this Agreement to an unaffiliated person or entity, (ii) a merger, reorganization, conversion or other transaction in which more than fifty percent (50%) of the voting control of Customer is held by persons or entities who did not hold voting control of such party, whether directly or indirectly, immediately prior to such transaction (excluding any reorganization solely among Customer and any entities that directly or indirectly controls, is controlled by, or is under common control with Customer (each, an "**Affiliate**"), or (iii) a sale by the equity holders of Customer that results in more than fifty percent (50%) of the voting control of such party being held by persons or entities who did not hold voting control of Customer, whether directly or indirectly, immediately prior to such sale (excluding any reorganization solely among Customer and its Affiliates). Compute North may at any time assign, transfer, delegate or subcontract any or all of its rights or obligations under this Agreement without Customer's prior written consent. Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

16.5.   <u>Force Majeure</u>. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing. This also includes planned service and maintenance needs.

16.6.   <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to principals of conflicts of laws. Any action arising out of or relating to this Agreement shall be brought only in the state or federal courts located in the State of Minnesota, and Recipient consent to the exclusive jurisdiction and venue of such courts. An action by a party to enforce any provision of this Agreement shall not relieve the other party from any of its obligations under this Agreement, and no failure to enforce any provision of this Agreement shall constitute a waiver of any future default or breach of that or any other provision.

16.7.   <u>Relationship of the Parties</u>. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, neither Compute North nor Customer shall not be responsible for any costs and expenses arising from the other Party's performance of its duties and obligations pursuant to this Agreement, except as otherwise provided for in this Agreement.

16.8.   <u>Third-Party Beneficiaries</u>. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

16.9.  <u>Notices.</u> All notices required or permitted under this Agreement shall be made via the Customer Portal.

16.10.  <u>Construction; Interpretation</u>. Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "any" and "all" shall not be construed as terms of limitation; and, a reference to a thing (including any right or other intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

16.11.  <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document.

IN WITNESS WHEREOF, the parties have executed this Agreement in a manner appropriate to each and with the authority to do so as of the date set forth below.

**Compute North LLC**

By: _____

Name: Tad Piper

Its: Chief Financial Officer

**Customer**

By: _____

Name: Michael Ho

Its: CEO

**Exhibit A – Order Form**

**Facility**:        Savoy, TX USA (TX06 Data Center)

**Equipment and Fees:**

| Batch # | 001 | | | |
|---|---|---|---|---|
| Order Type | ☒ New Order     ☐ Renewal     ☐ Change Order | | | |
| Equipment | | | | |
| **Quantity** | **Model** | **Unit Efficiency (W/TH)** | | **Real-Time Interruptible Power** |
| 3000 July Batch | Bitmain S19j 90T | 36.11W/TH | ☒ Yes | ☐ No |
| 2630 July Batch | Bitmain S19j Pro 100T | 30.5W/TH | ☒ Yes | ☐ No |
| 1000 August Batch | Bitmain S19j 90T | 36.11W/TH | ☒ Yes | ☐ No |
| 1000 August Batch | Bitmain S19j Pro 100T | 30.5W/TH | ☒ Yes | ☐ No |
| 1000 September Batch | Bitmain S19j 90T | 36.11W/TH | ☒ Yes | ☐ No |
| | | | | |
| Power Fee | Pass through Power – estimated at $0.02 / kWh (Anticipated Daily Power Fee: $13,114.08) | | | |
| Hosting Services Fee | $0.018 / kWh (Anticipated Daily Hosting Service Fee: $11,802.67) | | | |
| Total Monthly Package Fee (per unit) | Select @ $0.0000 | | | |
| Equipment Term | 5 Years | | | |
| Reservation (Initial) Deposit | $1,515,769.08 | | | |

**Package Details:**

| | **Select** | **Premier** |
|---|---|---|
| Core Features | | |
| Equipment | Customer Provided | Customer Provided |
| Equipment Managed | Yes | Yes |
| Rack Space | X | X |
| 240V Power | X | X |
| Ambient Air Cooling | X | X |
| Redundant Internet Connectivity | X | X |
| Physical Security | X | X |
| Technical Support | | |
| Basic Remote Hands | X | X |
| Advanced Remote Hands | X | X |
| SLA Level | Hashrate Performance | Hashrate Performance |
| RMA Processing | X | X |
| Premium Features | | |
| Miner Configuration | X | X |
| Miner Monitoring | X | X |
| Alert Management and Proactive Response | X | X |
| Automated Rules-based Reboots | X | X |
| Stock Firmware Upgrades | X | X |
| Compute North Pool (U.S.-based pool) | | X |
| Pool to Hash Performance Monitoring, Audit, Reconciliation | | X |
| Discounted Pool Fee | | X |
| Performance Enhancing Firmware | | X |

| | | |
|---|---|---|
| • Overclocking, Underclocking, Auto-tuning, Upgrades<br>• Customer provided (subject to Compute North approval) or<br>• Compute North provided (miner model limited) | | |

**Payment and Billing Terms:**

- **Monthly Fees:**

  - The Monthly Service Fees, which include the Power Fees, Hosting Service Fees, and Monthly Package Fees, are payable on a monthly basis. Customer shall pay the Monthly Package Fees and seventy percent (70%) of the Anticipated Power and Monthly Hosting Fees monthly in advance. Customer shall pay the balance of the actual Monthly Service Fees monthly in arrears, which are calculated as follows:

    Hosting Service Fees are based on actual hashrate performance of the Equipment per miner type, calculated as follows:

    Actual Monthly Hosting = Anticipated Daily Hosting x Days in Month x (100% - actual hashrate performance percentage by model type x Infrastructure and staffing adjustment factor of 60%)

    Power Fees are payable as based on actual power rate net of all discounts and credits, calculated as follows:

    Actual Monthly Power Fees = Anticipated Daily Power Fee x Days in Month x (100% - ((Actual Power Rate – Anticipated Power Rate) / Actual Power Rate)

  - The Anticipated Daily Power Fee and the Anticipated Daily Hosting Service Fee initially reflect the stated specifications for the Equipment and are subject to periodic adjustment by Compute North in its reasonable discretion based on actual performance and power consumption.

  - A deposit equal to two months (60 days) is due to reserve capacity within the Facility. Customer, or assignee, will deposit two (2) months (60 days) of Anticipated Daily Hosting Fee, the Anticipated Daily Power Fee, and Managed Services Fees (the "Initial Deposit"). Initial Deposit is due thirty(30) days prior to estimated energizing of Equipment. Equipment installation will not begin until the Initial Deposit is received.

  - All invoices are due upon receipt of invoices submitted by Compute North. Late payments will incur interest at the lesser of 1.5% per month (18% annum) or the maximum amount allowed under applicable law.

  - All rates and fees are quoted in United States Dollars. Customer is not eligible for service credits under Section 6.5 of the Master Agreement or otherwise. Pricing is subject to monthly automated ACH payments or daily BTC fees. Other payment methods may be subject to a service fee.

  - Customer has an option, by May 1, 2021, to pre-pay Anticipated Daily Hosting Fee, the Anticipated Daily Power Fee, and Managed Services Fees. Pre-payment of six (6) months will net a $0.001/kWh reduction. A pre-payment of twelve (12) months will net a $0.002/kWh reduction in Monthly Service Fees for the entirety of the Initial Equipment Term.

  - Customer, and/or assignee understands that power may be curtailed up to 5% of the time on an annual basis.

**Real-Time Interruptible Power:**

Real-time interruptible power may not be available for all Equipment. When real-time interruptible power is available, Customer consents to Compute North installing, configuring and maintaining software (including firmware) on the applicable Equipment and using such software to provide real-time interruptible power services subject to this Agreement. Customer acknowledges and agrees that its use of such software is subject to Compute North's agreement with the licensor(s) thereof.

**Equipment Term:**

The Equipment Term for all Equipment subject to the Agreement shall automatically renew for successive one (1) year terms unless Compute North or Customer gives written notice to the other at least 180 days prior to the end of the then-current Equipment Term.

**Capital Equipment Terms:**

Additional terms and conditions governing Customer's participation in Compute North's capital equipment program are set forth in Schedule 1 to this Order Form.

**Compute North Pool:**

At Customer's request, Compute North will enroll and configure Customer in Compute North's Bitcoin mining pool, which operates on a Full-Pay-Per-Share (FPPS) basis. Customer's use of Compute North's mining pool is subject to, and constitutes Customer's acceptance of, the then-current terms of service posted at *https://mining.luxor.tech/legal/tos*, as may be updated from time to time. Compute North shall be entitled to a fee equal to equal to 0.5% of Customer's mining reward from its participation in Compute North's pool. Customer acknowledges and agrees that Compute North is providing Customer with access to its mining pool for Customer's convenience on an as-is basis and that Compute North does not make any warranties or guarantees, whether express or implied, regarding the availability or performance thereof.

**Firmware:**

Customer acknowledges and agrees that its use of alternate or non-standard firmware may be subject to third-party fees or other charges, which shall be Customer's sole responsibility. Customer acknowledges and agrees that Compute North's consent to Customer's use of alternate or non-standard firmware and its provision of services relating thereto is for Customer's convenience on an as-is basis, that Customer's use of alternate or non-standard firmware is at Customer's sole risk, that Customer's use of alternate or non-standard firmware may affect the Equipment's power consumption and may require corresponding adjustments to the Monthly Service Fees for such Equipment, and that Compute North does not make any warranties or guarantees, whether express or implied, with respect thereto.

**Order Type:**

☐ **For orders designated as "Renewal" or "Change Order":** This Order Form replaces all then-existing order forms under the applicable Agreement between Compute North and Customer for the identified Equipment, with all other order forms remaining in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

☒ **For orders designated as "New":** This Addendum is and shall be in addition to all then-existing order forms under the applicable Agreement between Compute North and Customer, which order forms shall remain in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

**Compute North LLC**                                    **Customer**

By:_____          By:_____

Name: Tad Piper

Its: Chief Financial Officer

Name: Michael Ho

Its: CEO

**Previous Orders and Equipment List**

| Batch # | Equipment Type | Quantity | Facility |
|---|---|---|---|
| 001 | | | |
| | | | |
| | | | |
| | | | |

**Schedule 1 – Capital Equipment**

| Infrastructure Capital Equipment | ☒ Yes    ☐ No |
|---|---|
| Capital Equipment Fee | $7,500,000*<br><br>*Based upon estimated $250,000 per MW. In the event suitable alternatives amount to savings in the Infrastructure Capital Equipment listed in the table below, Customer will be billed the actual cost plus 7%. |
| Equipment Term | 5 Years |

| Containers, Switches and Transformers | |
|---|---|
| **Equipment Type** | **Quantity** |
| Containers | 17 |
| Transformers | 17 |
| Implementation and Electrical Installation | 17 |
| | |

**Capital Equipment Terms:**

The additional terms and conditions set forth in this section apply to any containers, electrical switch gear and transformers (collectively, "Capital Equipment") notwithstanding anything to the contrary in the Order Form and Master Agreement (collectively, the "Agreement").

Customer acknowledges and agrees that Compute North is procuring the Capital Equipment for and on behalf of Customer from one or more third-party suppliers and that Compute North is not responsible, and shall have no liability to Customer, for manufacturer delays, order cancellations, adjustments, variances or other fulfillment issues except as specifically set forth in this paragraph. If an order fulfillment issue arises, Compute North will make commercially reasonable efforts to work with Customer and the third-party supplier to resolve the issue and Compute North will refund to Customer any amounts refunded to it by the third-party supplier with respect thereto. If a third-party supplier cancels or otherwise fails to deliver Capital Equipment, Compute North's sole and exclusive liability to Customer shall be to refund the fees paid by Customer to Compute North for such Capital Equipment net of any amounts paid by Compute North with respect thereto that are not refunded by the third-party supplier.

The Capital Equipment Fee shall be due and payable as follows:
- 50% ($3,750,000) due 15 days after execution of this agreement
- 50% ($3,750,000) due on May 30, 2021

The Capital Equipment shall be Equipment subject to this Agreement upon its delivery to the Facility. Legal title to the Capital Equipment shall transfer to Customer only when the Capital Equipment Fee has been paid in full.  Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Capital Equipment Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof, which Compute North will pass through to Customer as applicable.

During the Initial Term of the agreement, Compute North shall be responsible for routine maintenance of the Capital Equipment including filtration systems, mechanical systems, electrical systems, and network equipment located on or within the Container.

Any additional work from what is stated in the previous clause beyond $2,000 per container per year  will be billed to Customer on a time and material basis at Compute North's then-current rates.

Customer acknowledges that the Capital Equipment is not covered by an insurance policy held by Compute North. Compute North shall identify options for and reasonably assist Customer with obtaining an insurance

policy that includes commercial general liability insurance for both bodily injury and property damage. This insurance shall remain active by the Customer throughout the Term of this Agreement.

If Customer does not supply Equipment or notice of Equipment shipments to fulfill the hosting agreement within 60 days of infrastructure completion, Compute North shall have the right, but not the obligation, to sell Services to other customers within such container to maximize its capacity until the end of the Equipment Term (and any renewal thereof) for such container. Customer shall be granted availability of capacity up to the contracted amount with ninety (90) days advance notice of confirmed upcoming Equipment delivery dates.

The Equipment Term for the Capital Equipment shall automatically renew for successive one (1) year terms unless Compute North or Customer gives written notice to the other at least 90 days prior to the end of the then-current Equipment Term. If either party elects to not renew the Equipment Term for the Capital Equipment, Compute North shall have the option, upon written notice to Customer at least thirty (30) days prior to the expiration of the then-applicable Equipment Term, but not the obligation to acquire the Capital Equipment from Customer. Unless otherwise agreed to in writing by Compute North and Customer, Compute North's acquisition cost for Capital Equipment subject to this option shall be based on an amortization period of ten (10) years from the date of installation for the applicable Capital Equipment. If no agreement is entered into by both parties, Customer shall have 90 days to remove the Capital Equipment by a Compute North-approved vendor and with a plan to minimize any impact to other customers. If the Capital Equipment is not removed within ninety (90) days, legal title to the Capital Equipment shall transfer to Compute North.

**<u>Exhibit B</u>**

**Exhibit A – Order Form**

**Facility**: Future Facility (TBD) Per terms below.

**Equipment and Fees:**

| Batch # | 002 | | |
|---|---|---|---|
| Deal ID | 7249399356 | | |
| Order Type | ☒ New Order    ☐ Renewal    ☐ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | Real-Time Interruptible Power |
| 500 (January Batch) | Whatsminer M30S 86T | 38.0 W/TH | ☒ Yes    ☐ No |
| Hosting Services Fee | $0.056 / kWh (Anticipated Daily Hosting Service Fee $2,196.10.  Will be replaced with pricing below and terms in Batch # 003 when moved. | | |
| Total Monthly Package Fee (per unit) | Select @ $0.00 | | |
| Equipment Term | 5 Years, with understanding units will be migrated to be inclusive within deal ID 7249399356 (below) upon deployment go-live. | | |
| Reservation (Initial) Deposit | $131,765.76 | | |

| Batch # | 003 | | |
|---|---|---|---|
| Deal ID | 7249399356 | | |
| Order Type | ☒ New Order    ☐ Renewal    ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | Real-Time Interruptible Power |
| 8,130 (Deployment TBD) | Whatsminer M30S++ 112T or M30S or M30S+ | 31.0 W/TH | ☒ Yes    ☐ No |
| Power Fee | Pass through Power – estimated at $0.030 / kWh | | |
| Hosting Services Fee | $0.017 / kWh | | |
| Total Monthly Package Fee (per unit) | Select @ $0.00 | | |
| Equipment Term | 5 Years | | |
| Reservation (Initial) Deposit | $1,991,722.52 (2 months) | | |

| Batch # | 001 | | |
|---|---|---|---|
| Deal ID | 3963240256 | | |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | Real-Time Interruptible Power |
| 0 July Batch | Bitmain S19j 90T | 36.11 W/TH | ☒ Yes    ☐ No |
| 0 July Batch | Bitmain S19j Pro 100T | 30.5 W/TH | ☒ Yes    ☐ No |
| 0 August Batch | Bitmain S19j 90T | 36.11 W/TH | ☒ Yes    ☐ No |
| 0 August Batch | Bitmain S19j Pro 100T | 30.5 W/TH | ☒ Yes    ☐ No |
| 0 September Batch | Bitmain S19j 90T | 36.11 W/TH | ☒ Yes    ☐ No |

## Package Details:

| | Select | Premier |
|---|---|---|
| **Core Features** | | |
| Equipment | Customer Provided | Customer Provided |

| | | |
|---|---|---|
| Equipment Managed | Yes | Yes |
| Rack Space | X | X |
| 240V Power | X | X |
| Ambient Air Cooling | X | X |
| Redundant Internet Connectivity | X | X |
| Physical Security | X | X |
| **Technical Support** | | |
| Basic Remote Hands | X | X |
| Advanced Remote Hands | X | X |
| SLA Level | Hashrate Performance | Hashrate Performance |
| RMA Processing | X | X |
| **Premium Features** | | |
| Miner Configuration | X | X |
| Miner Monitoring | X | X |
| Alert Management and Proactive Response | X | X |
| Automated Rules-based Reboots | X | X |
| Stock Firmware Upgrades | X | X |
| Compute North Pool (U.S.-based pool) | | X |
| Pool to Hash Performance Monitoring, Audit, Reconciliation | | X |
| Discounted Pool Fee | | X |
| Performance Enhancing Firmware<br>•   Overclocking, Underclocking, Auto-tuning, Upgrades<br>•   Customer provided (subject to Compute North approval) or<br>•   Compute North provided (miner model limited) | | X |

**Payment, Order and Billing Terms:**

- Compute North agrees as part of this order to swap production slots of RK Mission Critical ("RK") containers with US Bitcoin for 21 containers.  Compute North will transfer delivery to US Bitcoin of 4 containers per week starting the week of February 14, 2022, until 21 containers are delivered.  US Bitcoin will transfer its production slot with RK to Compute North for 21 containers.  The schedule is currently slated for 3 containers per week set to start the second week of April 2022 for the order US Bitcoin placed with RK on December 27, 2021.  Payment amounts and terms to RK remain the same as contracted, with the delivery schedule being the only transfer.

- Estimated RK Production Slots:

| Week of Feb 14, 2022 | Week of Feb 21, 2022 | Week of Feb 28, 2022 | Week of March 7, 2022 | Week of March 14, 2022 | March 14, 2022 |
|---|---|---|---|---|---|
| 4 Containers | 4 Containers | 4 Containers | 4 Containers | 4 Containers | Remaining |

- **Monthly Fees:**

  - Execution of this agreement satisfies and completes the terms mentioned within Buffalo NY contract (Compute North_Order Form_US Bitcoin - 7-30-21 - 5753489032_002) and cancels other pervious Exhibits and Orders.

  - Compute North will have until May 31, 2022 to identify an expected deployment timeline and site, with the understanding that US Bitcoin Corporation will be allocated based on current deployment schedules.   If Compute North is unable to identify the site that has an average/annualized Power Fee of no more than $0.03/kWh by May 31, 2022, either party can terminate this agreement at no penalty.  All deposits would be refunded at this point in time.

Document Ref: WVSNU-M42XM-DYF77-OBEDM

- If Compute North is unable to deliver the site with an average/annualized Power Fee of no more than $0.03/kWh by October 31, 2022, either party can terminate this agreement at no penalty.  All deposits will be refunded at this point in time.

- The Monthly Service Fees, which include the Power Fees, Hosting Service Fees, and Monthly Package Fees, are payable on a monthly basis. Customer shall pay the Monthly Package Fees and seventy percent (70%) of the Anticipated Power and Monthly Hosting Fees monthly in advance. Customer shall pay the balance of the actual Monthly Service Fees monthly in arrears, which are calculated as follows:

  Hosting Service Fees are based on actual hashrate performance of the Equipment per miner type, calculated as follows:

  > Actual Monthly Hosting = Anticipated Daily Hosting x Days in Month x (100% - actual hashrate performance percentage by model type x Infrastructure and staffing adjustment factor of 60%)

  Power Fees are payable as based on actual power rate net of all discounts and credits, calculated as follows:

  > Actual Monthly Power Fees = Anticipated Daily Power Fee x Days in Month x (100% - ((Actual Power Rate – Anticipated Power Rate) / Actual Power Rate)

- The Anticipated Daily Power Fee and the Anticipated Daily Hosting Service Fee initially reflect the stated specifications for the Equipment and are subject to periodic adjustment by Compute North in its reasonable discretion based on actual performance and power consumption.

- A deposit equal to two months (60 days) is due to reserve capacity within the Facility. Customer, or assignee, will deposit two (2) months (60 days) of Anticipated Daily Hosting Fee, the Anticipated Daily Power Fee, and Managed Services Fees (the "Initial Deposit"). One month is due upon site identification and another month is due sixty (60) days prior to estimated energizing of Equipment. Equipment installation will not begin until the Initial Deposit is received. Hosting Deposit Schedule:

  **Deal ID – 7249399356**
  - $131,765.76 due in its entirety upon Order Form execution.

  **Deal ID – 7249399356**
  - $995,861.26 (1 month) due upon site identification.
  - $995,861.25 (1 month) due 60 days prior to estimated energizing of equipment

- All invoices are due upon receipt of invoices submitted by Compute North. Late payments will incur interest at the lesser of 1.5% per month (18% annum) or the maximum amount allowed under applicable law.

- All rates and fees are quoted in United States Dollars. Customer is not eligible for service credits under Section 6.5 of the Master Agreement or otherwise. Pricing is subject to monthly automated ACH payments or daily BTC fees. Other payment methods may be subject to a service fee.

- Customer, and/or assignee understands that power may be curtailed up to 5% of the time on an annual basis.

**Real-Time Interruptible Power:**

Document Ref: WVSNU-M42XM-DYF77-OBEDM

Real-time interruptible power may not be available for all Equipment. When real-time interruptible power is available, Customer consents to Compute North installing, configuring and maintaining software (including firmware) on the applicable Equipment and using such software to provide real-time interruptible power services subject to this Agreement. Customer acknowledges and agrees that its use of such software is subject to Compute North's agreement with the licensor(s) thereof.

**Equipment Term:**

The Equipment Term for all Equipment subject to the Agreement shall automatically renew for successive one (1) year terms unless Compute North or Customer gives written notice to the other at least 180 days prior to the end of the then-current Equipment Term.

**Capital Equipment Terms:**

Additional terms and conditions governing Customer's participation in Compute North's capital equipment program are set forth in Schedule 1 to this Order Form.

**Compute North Pool:**

At Customer's request, Compute North will enroll and configure Customer in Compute North's Bitcoin mining pool, which operates on a Full-Pay-Per-Share (FPPS) basis. Customer's use of Compute North's mining pool is subject to, and constitutes Customer's acceptance of, the then-current terms of service posted at *https://mining.luxor.tech/legal/tos*, as may be updated from time to time. Compute North shall be entitled to a fee equal to equal to 1% of Customer's mining reward from its participation in Compute North's pool. Customer acknowledges and agrees that Compute North is providing Customer with access to its mining pool for Customer's convenience on an as-is basis and that Compute North does not make any warranties or guarantees, whether express or implied, regarding the availability or performance thereof.

**Firmware:**

Customer acknowledges and agrees that its use of alternate or non-standard firmware may be subject to third-party fees or other charges, which shall be Customer's sole responsibility. Customer acknowledges and agrees that Compute North's consent to Customer's use of alternate or non-standard firmware and its provision of services relating thereto is for Customer's convenience on an as-is basis, that Customer's use of alternate or non-standard firmware is at Customer's sole risk, that Customer's use of alternate or non-standard firmware may affect the Equipment's power consumption and may require corresponding adjustments to the Monthly Service Fees for such Equipment, and that Compute North does not make any warranties or guarantees, whether express or implied, with respect thereto.

**Order Type:**

☒ **For orders designated as "Renewal" or "Change Order":** This Order Form replaces all then-existing order forms under the applicable Agreement between Compute North and Customer for the identified Equipment, with all other order forms remaining in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

☒ **For orders designated as "New":** This Addendum is and shall be in addition to all then-existing order forms under the applicable Agreement between Compute North and Customer, which order forms shall remain in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

**Compute North LLC**                                    **Customer**

By: _Kyle Wenzel_____          By: _Joel Block, CFO_____

Name: _____Kyle Wenzel_____

Its: _____CCO_____

Name: _____Joel Block_____

Its: _____CFO_____

Document Ref: WVSNU-M42XM-DYF77-OBEDM

**Previous Orders and Equipment List**

| Batch # | Equipment Type | Quantity | Facility |
|---|---|---|---|
| **001** | Bitmain S19j 90T | ~~3000~~ **0** July Batch | Savoy, TX USA (TX06 Data Center) |
| **001** | Bitmain S19j Pro 100T | ~~2630~~ **0** July Batch | Savoy, TX USA (TX06 Data Center) |
| **001** | Bitmain S19j 90T | ~~1000~~ **0** August Batch | Savoy, TX USA (TX06 Data Center) |
| **001** | Bitmain S19j Pro 100T | ~~1000~~ **0** August Batch | Savoy, TX USA (TX06 Data Center) |
| **001** | Bitmain S19j 90T | ~~1000~~ **0** September Batch | Savoy, TX USA (TX06 Data Center) |

**Schedule 1 – Capital Equipment**

| Infrastructure Capital Equipment | ☒ Yes   ☐ No |
|---|---|
| Capital Equipment Fee | $8,500,000*<br><br>*Based upon estimated $500,000 per mining unit (inclusive of container, pad mount transformer, and implementation and electrical installation.<br><br>In the event suitable alternatives amount to savings in the Infrastructure Capital Equipment listed in the table below, Customer will be billed the actual cost plus 7%. |
| Equipment Term | 5 Years |

| Containers, Switches and Transformers | |
|---|---|
| **Equipment Type** | **Quantity** |
| Containers | 17 |
| Transformers | 17 |
| Implementation and Electrical Installation | 17 |

**Capital Equipment Terms:**

The additional terms and conditions set forth in this section apply to any containers, electrical switch gear and transformers (collectively, "Capital Equipment") notwithstanding anything to the contrary in the Order Form and Master Agreement (collectively, the "Agreement").

Customer acknowledges and agrees that Compute North is procuring the Capital Equipment for and on behalf of Customer from one or more third-party suppliers and that Compute North is not responsible, and shall have no liability to Customer, for manufacturer delays, order cancellations, adjustments, variances or other fulfillment issues except as specifically set forth in this paragraph. If an order fulfillment issue arises, Compute North will make commercially reasonable efforts to work with Customer and the third-party supplier to resolve the issue and Compute North will refund to Customer any amounts refunded to it by the third-party supplier with respect thereto. If a third-party supplier cancels or otherwise fails to deliver Capital Equipment, Compute North's sole and exclusive liability to Customer shall be to refund the fees paid by Customer to Compute North for such Capital Equipment net of any amounts paid by Compute North with respect thereto that are not refunded by the third-party supplier.

The Capital Equipment Fee shall be due and payable as follows:
- 50% ($4,250,000) due upon execution of this Order Form
- 50% ($4,250,000) due  60 days prior to estimated energizing of equipment.

The Capital Equipment shall be Equipment subject to this Agreement upon its delivery to the Facility. Legal title to the Capital Equipment shall transfer to Customer only when the Capital Equipment Fee has been paid in full. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Capital Equipment Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof.

During the Initial Term of the agreement, Compute North shall be responsible for routine maintenance of the Capital Equipment including filtration systems, mechanical systems, electrical systems, and network equipment located on or within the Container. Any additional work from what is stated in the previous clause beyond $2,000 per container per year will be billed to Customer on a time and material basis at Compute North's then-current rates.

Customer acknowledges that the Capital Equipment is not covered by an insurance policy held by Compute North. Compute North shall identify options for and reasonably assist Customer with obtaining an insurance policy that includes commercial general liability insurance for both bodily injury and property damage. This insurance shall remain active by the Customer throughout the Term of this Agreement.

If Customer does not supply Equipment or notice of Equipment shipments to fulfill the hosting agreement within 60 days of infrastructure completion, Compute North shall have the right, but not the obligation, to sell Services to other customers within such container to maximize its capacity until the end of the Equipment Term (and any renewal thereof) for such container. Customer shall be granted availability of capacity up to the contracted amount with ninety (90) days advance notice of confirmed upcoming Equipment delivery dates.

The Equipment Term for the Capital Equipment shall automatically renew for successive one (1) year terms unless Compute North or Customer gives written notice to the other at least 180 days prior to the end of the then-current Equipment Term. If either party elects to not renew the Equipment Term for the Capital Equipment, Compute North shall have the option, upon written notice to Customer at least thirty (30) days prior to the expiration of the then-applicable Equipment Term, but not the obligation to acquire the Capital Equipment from Customer. Unless otherwise agreed to in writing by Compute North and Customer, Compute North's acquisition cost for Capital Equipment subject to this option shall be based on a depreciation period of ten (10) years from the date of installation for the applicable Capital Equipment. If no agreement is entered into by both parties, Customer shall have 90 days to remove the Capital Equipment by a Compute North-approved vendor and with a plan to minimize any impact to other customers. If the Capital Equipment is not removed within ninety (90) days, legal title to the Capital Equipment shall transfer to Compute North.

Document Ref: WVSNU-M42XM-DYF77-OBEDM

# Signature Certificate

Reference number: WVSNU-M42XM-DYF77-OBEDM

| Signer | Timestamp | Signature |
|---|---|---|

**Asher Genoot**
Email: asher@usbtccorp.com

Shared via link

| | | |
|---|---|---|
| Sent: | 20 Jan 2022 17:53:52 UTC | |
| Viewed: | 20 Jan 2022 23:22:28 UTC | IP address: 72.219.106.86 |
| Signed: | 20 Jan 2022 23:31:12 UTC | Location: Newport Beach, United States |

*Joel Block, CFO*

**Kyle Wenzel**
Email: kyle.wenzel@computenorth.com

Shared via link

| | | |
|---|---|---|
| Sent: | 20 Jan 2022 17:53:52 UTC | |
| Viewed: | 21 Jan 2022 14:13:17 UTC | IP address: 174.20.70.218 |
| Signed: | 21 Jan 2022 14:13:51 UTC | Location: Saint Paul, United States |

*Kyle Wenzel*

Document completed by all parties on:
21 Jan 2022 14:13:51 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



**<u>Exhibit C</u>**



June 7, 2022

U.S. Data Mining Group, Inc., dba US Bitcoin Corp
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Re: Termination of Master Agreement

Reference is made to (i) that certain Master Agreement dated as of February 5, 2021, between
U.S. Data Mining Group, Inc., dba US Bitcoin Corp ("Customer") and Compute North LLC
"Compute North" as amended by the Exhibit A Order Form dated as of January 21, 2022
(together with all applicable Schedules thereto, including any further amended, restated,
supplemented, or otherwise modified documents, the "Master Agreement").

As previously discussed between Joel Block (CFO at U.S. Data Mining Group, Inc., dba US
Bitcoin Corp) and Brett Kittilstved (Director of Sales at Compute North), and given that
Compute North could not identify a site as detailed below from the terms and conditions of
Exhibit A of the Master Agreement, Customer formerly requests termination of the Master
Agreement and return of all deposits in the amount of $3,750,000 made by Customer within five
(5) business days.

> Compute North will have until May 31, 2022 to identify an expected deployment timeline
> and site, with the understanding that US Bitcoin Corporation will be allocated based on
> current deployment schedules. If Compute North is unable to identify the site that has an
> average/annualized Power Fee of no more than $0.03/kWh by May 31, 2022, either party
> can terminate this agreement at no penalty. All deposits would be refunded at this point in
> time.

Kindly acknowledge your agreement to the foregoing by signing and returning a copy of
this letter agreement in the space provided below. Thank you for your assistance in this regard.

Very truly yours,
**U.S. DATA MINING GROUP, INC.**
**D.B.A US BITCOIN CORP**
**("CUSTOMER")**

DocuSigned by:

By: *Joel Block, CFO*
22597C0E94F042A...

Name: Joel Block
Title: Chief Financial Officer

DocuSign Envelope ID: 335CBCE5-4EBC-45E6-A0D9-28E30E0F9C8C



Acknowledged and Agreed:
**COMPUTE NORTH LLC**
**("COMPUTE NORTH")**


By:
Name: Brett Kittilstved
Title: Director of Sales