## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § § | Case No. 22-90273 (MI) |
| Debtors. [1] | § § § | (Jointly Administered) |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE AS INVESTMENT BANKER EFFECTIVE AS OF OCTOBER 11, 2022 AND (II) GRANTING RELATED RELIEF

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The Official Committee of Unsecured Creditors of Computer North Holdings, Inc., *et al*.,

(the "Committee"), appointed in these above-captioned chapter 11 cases (the "Chapter 11 Cases")

before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

Court"), submits this application (the "Application"), pursuant to sections 105(a), 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules"), for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) authorizing the Committee to employ and retain Miller Buckfire & Co., LLC ("MB&Co.") and its affiliate Stifel, Nicolaus & Co., Inc. ("SN&Co." and together with MB&Co., "Miller Buckfire") as its investment banker, effective as of October 11, 2022, in accordance with the terms and conditions set forth in that certain Engagement Letter (defined herein); and (b) granting related relief. In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of John D'Amico in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Employment and Retention of Miller Buckfire as Investment Banker Effective as of October 11, 2022, and (II) Granting Related Relief* (the "D'Amico Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully states as follows:

## RELIEF REQUESTED

1.      By this Application, pursuant to sections 105(a), 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Committee seeks authority to retain and employ Miller Buckfire as its investment banker in connection with the Chapter 11 Cases and all related matters, effective as of October 11, 2022, in accordance with the terms, and subject to the conditions of that certain engagement letter, dated as of October 11, 2022, attached hereto as **Exhibit C** (including the indemnity, reimbursement, contribution and other provisions set forth in Exhibit A of the engagement letter (the "Indemnity Provisions" and, together

with the remainder of the engagement letter, the "<u>Engagement Letter</u>")). The Committee also seeks approval of the terms of Miller Buckfire's employment and retention including, without limitation, the proposed Fee Structure (defined below) and the Indemnity Provisions, subject to the standards set forth in section 328 of the Bankruptcy Code.

<u>**JURISDICTION, VENUE AND PREDICATES FOR RELIEF**</u>

2.     This Bankruptcy Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief requested by this Application are sections 105(a), 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

<u>**BACKGROUND**</u>

4.     On September 22, 2022 (the "<u>Petition Date</u>"), each of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") filed with the Bankruptcy Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. Joint administration of these Chapter 11 Cases was authorized by the Bankruptcy Court by entry of an order on September 23, 2022.[2]

5.     On October 6, 2022, the Office of the United States Trustee for the Southern District of Texas appointed the Committee pursuant to Bankruptcy Code section 1102(a),[3] and on

---

[2] *See Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [ECF No. 43].

[3] *See The United States Trustee's Corrected Notice of Appointment of Committee of Unsecured Creditors* [ECF No. 139].

October 11, 2022, the Committee selected Miller Buckfire as its investment banker in the Chapter 11 Cases. The members of the Committee are: (a) RK Mission Critical LLC; (b) Touzi Capital, LLC; (c) Sunbelt Solomon; (d) U.S. Data Mining Group, Inc. d/b/a U.S. Bitcoin Corp.; and (e) MP2 Energy LLC d/b/a Shell Energy Solutions.[4]

## MILLER BUCKFIRE'S QUALIFICATIONS

6.      In light of the size and complexity of these Chapter 11 Cases, the Committee requires a qualified and experienced investment banker with Miller Buckfire's resources, capabilities, and experience. Miller Buckfire is an investment banking and financial advisory firm focused on providing investment banking, financial advice, and transaction execution on behalf of its clients. Miller Buckfire's broad range of corporate advisory services includes general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatizations, special committee assignments, takeover defenses, and strategic partnerships/joint ventures. Furthermore, Miller Buckfire has dedicated professionals who provide restructuring services to its clients and the current managing directors, directors, vice presidents, and associates of Miller Buckfire have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings. Miller Buckfire and its principals have been involved as advisors to debtor, creditor, and equity constituencies and government agencies in many reorganization cases.

7.      Notably, Miller Buckfire has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin

---

[4] *See id.*

4

America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Furniture Brands International, Inc.; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics; Grupo TMM; hhgregg, Inc.; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Innkeepers USA Trust; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc., Lenox Group, Inc.; Lodgenet, Inc.; Loewen Group; Magna Entertainment Corp.; MagnaChip Semiconductor LLC; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Molycorp, Inc.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Neff Corp.; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; Simmons Bedding Company; The Spiegel Group; Stallion Oilfield Services Ltd.; SquareTwo Financial Services Corporation; Sunbeam Corporation; Standard Pacific Corp.; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; Ultrapetrol (Bahamas) Limited; Unitek GlobalServices, Inc.; U.S. Office Products; Vonage Corporation; and Women

First Healthcare.

8.    Accordingly, Miller Buckfire has developed significant relevant experience and expertise that will enable Miller Buckfire and its professionals to provide necessary investment banking services in these Chapter 11 Cases.

9.    The Committee submits this Application because of its need to retain an investment banker to assist it in the critical tasks associated with guiding the Committee through the Debtors' restructuring efforts. The Committee respectfully submits that the services of an investment banker are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' restructuring proceedings and to effectively fulfill its statutory duties.

10.    The Committee reviewed materials submitted by Miller Buckfire prior to selecting it as the Committee's investment banker. Such selection was based on the Committee's determination that Miller Buckfire is the best candidate for the services to be provided and that its proposed Fee Structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases. The Committee further selected Miller Buckfire to act as its investment banker in the Chapter 11 Cases because of Miller Buckfire's significant expertise in providing investment banking services to debtors and creditors in restructurings and distressed situations.

11.    Pursuant to section 1103(a) of the Bankruptcy Code, a committee may retain advisors to assist in the Chapter 11 Cases. *See* 11 U.S.C. § 1103(a). In the Debtors' Chapter 11 Cases, the Committee requires qualified professionals to render these essential investment banking services. As discussed above, Miller Buckfire has substantial expertise as an investment banker in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in these Chapter 11 Cases.

## SERVICES TO BE RENDERED

12.     Miller Buckfire has agreed to provide services to the Committee in accordance with the terms and conditions of the Engagement Letter. The terms of the Engagement Letter reflect the mutual agreement between the Committee and Miller Buckfire as to the substantial efforts that may be required of Miller Buckfire in this engagement. The Engagement Letter provides, in consideration for the compensation contemplated thereby, that Miller Buckfire will, to the extent reasonably requested by the Committee, render the following investment banking services:[5]

     a. familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors and advise and assist the Committee in structuring and effecting the financial aspects of certain transactions;

     b. receive, review and perform diligence on information provided on a confidential basis by the Debtors or the Committee;

     c. assist the Committee in negotiations regarding any sale, plan of reorganization or liquidation of any of the Debtors in the Bankruptcy Case or other Transaction;[6]

     d. represent and negotiate on the behalf of the Committee as it relates to any restructuring proposals advanced by the Committee, Debtors or any other parties or stakeholders; and

     e. participate in hearings before the Bankruptcy Court in connection with Miller Buckfire's other services, including related testimony, in coordination with the Committee's counsel.

## PROFESSIONAL COMPENSATION

13.     Miller Buckfire intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases, subject to the Bankruptcy Court's approval and in compliance with applicable provisions

---

[5] This Application summarizes the terms of the Engagement Letter. To the extent there is a conflict between the Application and the Engagement Letter, the Engagement Letter will govern.

[6] The term "Transaction" in this Application shall mean "Transaction" as defined in the Engagement Letter.

of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines established by the Executive Office of the United States Trustee (the "U.S. Trustee Guidelines"), and the Bankruptcy Court's orders (collectively, the "Fee Guidelines"), plus seek reimbursement of actual, necessary expenses and other charges that Miller Buckfire incurs.

14.    Investment bankers such as Miller Buckfire do not typically charge for their services on an hourly basis. Instead, they customarily charge periodic retainer fees plus additional fees that are contingent upon the occurrence of a specified type of transaction. The compensation arrangements that have been negotiated between Miller Buckfire and the Committee are highly beneficial to the Committee as they provide certainty and proper inducement for Miller Buckfire to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Committee is seeking to retain Miller Buckfire under section 328(a) of the Bankruptcy Code, the Committee believes that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

15.    Subject to the Bankruptcy Court's approval and, except as otherwise modified herein or by order of the Bankruptcy Court, the Committee seeks the following consideration for Miller Buckfire's services (the "Fee Structure") pursuant to, and as further explained in, the Engagement Letter, to be paid by the Debtors, in each case in accordance with this Court's orders:

        a.    **Monthly Fee**: $150,000.

        b.    **Deferred Fee**: $950,000, payable upon consummation of any Transaction.

16.    As part of the Fee Structure, and in addition to the Monthly Fee, the Deferred Fee, and any fees that may be payable to Miller Buckfire, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Miller Buckfire for all expenses (including fees and

expenses of counsel, if any), travel and lodging, data processing and communications charges, courier services, and other expenditures incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by the engagement set forth in the Engagement Letter (the "Expense Reimbursement"), subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived). No fee payable to any other person, by the Debtors, the Committee or any other person or entity, shall reduce or otherwise affect any fee payable pursuant to the Engagement Letter and the Order. This Fee Structure shall also incorporate the Indemnity Provisions, addressed in more detail below.

17.      In addition, Miller Buckfire will maintain records in support of any expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. It is not the general practice of financial advisory and investment banking firms, including Miller Buckfire, to keep detailed time records similar to those customarily kept by attorneys. Because Miller Buckfire does not ordinarily maintain contemporaneous time records in one-tenth (.10) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals, and because of the nature of the Fee Structure, the Committee seeks a waiver of the timekeeping requirements set forth in the Fee Guidelines to maintain records in the one-tenth (.10) of an hour requirement. Miller Buckfire will nonetheless maintain summary time records, in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. March 8, 2021*); In re Diamond Offshore Drilling, Inc.*, No. 20-32307 (DRJ) (Bankr. S.D. Tex. June 5, 2020); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 5,2018*); In re iHeartMedia, Inc.*, No. 18-

9

31274 (Bankr. S.D. Tex. May 30, 2018); *In re EXCO Res., Inc.*, No. 17-30155 (MI) (Bankr. S.D. Tex. Jan. 18, 2018); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017*); In re CJ Holding Co.*, No. 15-33590 (DRJ) (Bankr. S.D. Tex. Sept. 12, 2016); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re Luca Int'l Grp.,* No. 15-34221 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 25, 2015).

18.     Miller Buckfire has not shared or agreed to share any compensation to be paid by the Committee with any other person, other than principals and employees of Miller Buckfire, in accordance with section 504 of the Bankruptcy Code.

19.     The Committee and Miller Buckfire negotiated the Fee Structure to function as and be an interrelated, integrated unit, in correspondence with Miller Buckfire's services, which Miller Buckfire renders not in parts, but as a whole. It would be contrary to the intention of Miller Buckfire and the Committee for any isolated component of the entire Fee Structure to be treated as sufficient consideration for any isolated portion of Miller Buckfire's services. Instead, the Committee and Miller Buckfire intend that Miller Buckfire's services be considered and be compensated by the Fee Structure in its entirety.

20.     The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith. After discussions and arm's length negotiations, the Committee believes that the Fee Structure and the expense reimbursement provisions described above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by Miller Buckfire and other comparable firms in connection with the rendering of similar services under similar circumstances and are reasonable, market based and

10

merited by Miller Buckfire's restructuring expertise.

## INDEMNITY PROVISIONS

21.     The Engagement Letter provides that a material part of the consideration for Miller Buckfire to furnish its services under the Engagement Letter is the Debtors' agreement to the Indemnity Provisions which provide, without limitation, that the Debtors will indemnify, reimburse and provide contribution to Miller Buckfire and its affiliates, and any of Miller Buckfire's or their respective directors, officers, members, employees, agents, or controlling persons, as detailed in the Engagement Letter. Investment bankers seek indemnification and the other provisions set forth in the Indemnity Provisions for a variety of reasons. The performance of Miller Buckfire's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. Miller Buckfire intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors.

22.     The Committee respectfully submits that the Indemnity Provisions reflected in the Engagement Letter are a customary and reasonable term of consideration for investment bankers such as Miller Buckfire for proceedings both out of court and in chapter 11. Such provisions, viewed in conjunction with the other terms of Miller Buckfire's proposed retention, are reasonable and in the best interests of the Committee, the Debtors, their estates and other creditors, in light of the fact that the Committee requires Miller Buckfire's services. The Indemnity Provisions, as modified by the Proposed Order, include qualifications and limits on the indemnification and related provisions that are customary in chapter 11 cases. Accordingly, as part of the Application, the Committee requests that the Bankruptcy Court approve the Indemnity Provisions and the obligations contained therein, as modified by the Proposed Order.

23.     The Committee and Miller Buckfire believe that the proposed Indemnity Provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases. *See, e.g.*, *Sundance Energy, Inc.*, No. 21-30882 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2021); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 25, 2015); *In re Houston Reg'l Sports Network, L.P.*, No. 13-35998 (MI) (Bankr. S.D. Tex. Apr. 16, 2014); *In re Garrett Motion, Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Feb. 3, 2021); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. Aug. 13, 2020); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. July 14, 2020); *In re Dean & Deluca New York Inc.*, No. 20-10916 (MEW) (Bankr. S.D.N.Y. June 22, 2020); *In re LSC Commc'ns., Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Aegean Marine Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010).

## MILLER BUCKFIRE'S DISINTERESTEDNESS

24.     In connection with the proposed retention by the Committee in these Chapter 11 Cases, Miller Buckfire has received a list of parties in interest from the Debtors, along with the names of certain supplemental parties in interest suggested by counsel to the Committee attached to the D'Amico Declaration as Schedule 1 (the "Potential Parties in Interest").

25.     Miller Buckfire has informed the Committee that, except as set forth in the D'Amico Declaration, Miller Buckfire (collectively, the "Miller Buckfire Entities"): (a) have no

connection with the Debtors or the Potential Parties in Interest in any matter related to the Debtors; (b) do not hold or represent an interest adverse to the Debtors' estates in connection with these cases; and (c) believe that they are each a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. If any new material facts or relationships are discovered, Miller Buckfire will promptly inform the Bankruptcy Court as required by Bankruptcy Rule 2014(a).

26.     Based on the foregoing, the Committee believes that the employment of Miller Buckfire would be in the best interests of the Committee, and the Debtors' estates and creditors.

## BASIS FOR RELIEF REQUESTED

**I.     The Bankruptcy Code Permits the Employment and Retention of Miller Buckfire on Terms Substantially Similar to Those in the Engagement Letter**

27.     The Committee seeks approval of the Engagement Letter, including the Fee Structure and the Indemnity Provisions stated therein, pursuant to sections 105(a), 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(b) of the Bankruptcy Code requires that professionals may not "represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b). In addition, section 328(a) of the Bankruptcy Code provides, in relevant, part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.

28.     The Committee believes the Fee Structure is fair and reasonable and consistent with and typical of compensation arrangements entered into by Miller Buckfire and other comparable firms in connection with the rendering of similar services under similar circumstances. Miller

Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Committee during the term of Miller Buckfire's engagement, were all important factors in determining the Fee Structure. The Committee believes that the ultimate benefit of Miller Buckfire's services cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Indeed, the Committee and Miller Buckfire have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Miller Buckfire; and (b) the actual time and commitment required of Miller Buckfire and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month.

29.     As discussed, Miller Buckfire satisfies the disinterestedness standard in section 1103(b) of the Bankruptcy Code. In light of the foregoing and given the numerous issues that Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Miller Buckfire's services for engagements of this nature both in and out of the chapter 11 context, the Committee believes that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

## II.     Approval of This Engagement is Appropriate Pursuant to Section 328(a) of the Bankruptcy Code

30.     Section 328 of the Bankruptcy Code provides, in relevant part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this

title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the Bankruptcy Court to approve the terms of Miller Buckfire's engagement as set forth in the Engagement Letter, including the Fee Structure, and the terms of the Indemnity Provisions.

31.     As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."); *In re Ultra Petroleum Corp., et al.,* No. 16-32202 (MI) (Bankr. S.D. Tex. May 20, 2016).

32.     The Fee Structure appropriately reflects the nature of the services to be provided by Miller Buckfire and is consistent with the fee structures typically utilized by leading investment bankers that do not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Parker Drilling Company*, No. 18-36958 (Bankr. S.D. Tex. Jan. 15, 2019); *In re iHeartMedia, Inc.,* No. 18-31274 (Bankr. S.D. Tex. July 24, 2018); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re Luca Int'l Grp.,* No. 15-34221 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar.

15

25, 2015); *In re Stoneway Capital Ltd., Inc.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y. July 16, 2021); *In re Garrett Motion, Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Feb. 3, 2021); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commcn's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

33.     The Committee respectfully requests entry of an order authorizing Miller Buckfire to perform investment banking services for the Committee effective as of October 11, 2022. Immediately upon its selection by the Committee, Miller Buckfire commenced work on several matters and promptly devoted substantial resources to these Chapter 11 Cases pending submission and approval of this Application. Therefore, the Committee asserts that Miller Buckfire should be compensated for work performed prior to and after the entry of an order authorizing its retention.

34.     Based on the foregoing, the Committee submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Committee to retain and employ Miller Buckfire in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

### NOTICE

35.     Notice of this Application will be provided to:  (i) the Debtors; (ii) counsel to the Debtors, Paul Hastings LLP; (iii) the U.S. Trustee; (iv) the Office of the United States Attorney for the Southern District of Texas; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.

16

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Bankruptcy Court grant the relief requested in this Application, the Proposed Order, and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: November  7 , 2022                    Respectfully submitted,

                                             THE OFFICIAL COMMITTEE OF UNSECURED
                                             CREDITORS OF COMPUTE NORTH
                                             HOLDINGS, INC., *et al.*

                                             By: Asher Genoot
                                             President, U.S. Data Mining Group, Inc.
                                             d/b/a US Bitcoin Corp.

                                             Chair of the Official Committee of  Unsecured
                                             Creditors of Compute North Holdings, Inc., *et. al.*

# **EXHIBIT A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § | Case No. 22-90273 (MI) |
| | § | |
| Debtors. [1] | § | (Jointly Administered) |
| | § | |

**ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
MILLER BUCKFIRE AS INVESTMENT BANKER EFFECTIVE AS OF
OCTOBER 11, 2022, AND (II) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the Committee for entry of an order

(this "Order") pursuant to sections 105(a), 328(a) and 1103(a) of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern

District of Texas (the "Local Rules"), authorizing the employment and retention of Miller Buckfire

& Co., LLC ("MB&Co.") and its affiliate Stifel, Nicolaus & Co., Inc. ("SN&Co." and together

with MB&Co., "Miller Buckfire"), effective as of October 11, 2022, as the Committee's

investment banker, on the terms set forth in the Engagement Letter; and the Bankruptcy Court

having jurisdiction to consider the Application and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

1

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held, if necessary, to consider the relief requested in the Application (the "Hearing"); and upon consideration of the D'Amico Declaration, and the record of the Hearing, if any, and all of the proceedings had before the Bankruptcy Court; and the Bankruptcy Court having determined that the terms and conditions of Miller Buckfire's employment, including the Fee Structure set forth in the Engagement Letter, are reasonable as required by section 328(a) of the Bankruptcy Code; and the Bankruptcy Court having found and determined that Miller Buckfire and Miller Buckfire & Co., Limited, do not represent or hold any interest adverse to the Debtors' estates, and are each a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code and, as required by Bankruptcy Code section 328 that the relief sought in the Application is in the best interests of the Committee, the Debtors, their estates, their creditors, and all parties in interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is GRANTED as set forth herein. Any objections or reservations of rights filed in respect of the Application are overruled, with prejudice.

2.      Pursuant to sections 105(a), 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Committee is authorized to employ and retain Miller Buckfire as its investment banker in the Chapter 11 Cases effective as of October

2

11, 2022, for the purposes set forth and upon the terms of the Engagement Letter.

3.    The Engagement Letter, including, without limitation, the Fee Structure, inclusive of the Deferred Fee, the Monthly Fee, the Contingent Fee, and Expense Reimbursement (each as defined in the Engagement Letter) and the Indemnity Provisions (as defined in the Application), are approved pursuant to section 328(a) of the Bankruptcy Code.

4.    In accordance with the terms set forth in the Application and the Engagement Letter, as modified by this Order, the Debtors shall reimburse Miller Buckfire for all reasonable expenses incurred by Miller Buckfire and the reasonable fees and expenses of outside counsel, if any, retained by Miller Buckfire, without the need for such legal counsel to be retained as professionals in these Chapter 11 Cases. If Miller Buckfire seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter or the Indemnity Provisions, the invoices and supporting time records from such attorneys shall be included in Miller Buckfire's own interim and final fee applications, and such invoices and time records shall be subject to (a) the guidelines promulgated by the U.S. Trustee for compensation and reimbursement of expenses, and (b) approval by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code, *provided, however*, that Miller Buckfire shall not seek reimbursement from the Debtors' estates for any fees incurred in defending against any formal objection to Miller Buckfire's fee applications in these bankruptcy cases to the extent prohibited under applicable law and the decisions of this Bankruptcy Court.

5.    None of the fees payable to Miller Buckfire shall constitute a "bonus" or fee enhancement under applicable law.

6.      Miller Buckfire shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the U.S. Trustee, and any applicable orders of this Bankruptcy Court; provided that Miller Buckfire shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and Miller Buckfire's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; provided further that fees and expenses shall be subject to review and approval in any interim and final fee applications and shall be paid pursuant to an order of this Court approving an interim or final fee statement or application for the allowance of compensation and reimbursement of expenses filed by Miller Buckfire pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court. Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Miller Buckfire absent an order of this Court approving a fee application filed on notice to parties in interest in these Chapter 11 Cases under the procedures set forth in any order entered by the Court in these Chapter 11 Cases allowing for interim compensation. Notwithstanding the foregoing, Monthly Fees may be paid by the Debtors on a monthly basis as set forth in the Engagement Letter without the need to file monthly fee statements; *provided, however*, for the avoidance of doubt, Monthly Fees shall be subject to review and approval in any quarterly interim and final fee applications.

7.      Notwithstanding anything to the contrary in this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee retains all rights to object to Miller Buckfire's interim and final fee applications (including expense reimbursement) on all

4

grounds, including the reasonableness standard provided for in section 330 of the Bankruptcy Code. This Order and the record relating to this Bankruptcy Court's consideration of the Application shall not prejudice the rights of the U.S. Trustee to challenge the reasonableness of Miller Buckfire's fees under section 330 of the Bankruptcy Code. Accordingly, nothing in this Order or the record relating to this Bankruptcy Court's consideration of the Application shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee with respect to the reasonableness of Miller Buckfire's fees. Further, nothing in the Engagement Letter shall affect or modify the standard of review applicable to an objection by the U.S. Trustee under this paragraph.

8.    The Indemnity Provisions set forth in the Engagement Letter are approved, subject during the pendency of these Chapter 11 Cases to the following:

a.    All requests for payment of indemnity, contribution, or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Bankruptcy Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Bankruptcy Court, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided that in no event shall any person be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have resulted from the bad faith, actual fraud, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct on the part of that or any other Indemnified Persons;

b.    In no event shall any Indemnified Person be indemnified or receive contribution or other payment under the Indemnity Provisions to the extent the Debtors or a representative of the estates asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's bad-faith, actual fraud, self-dealing or breach of fiduciary duty (if any), gross negligence, or willful misconduct;

c.    In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Indemnity Provisions, the invoices and supporting time records from such attorneys shall be annexed to Miller Buckfire's own fee applications, both interim and

5

final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code; and

9.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Bankruptcy Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Miller Buckfire and its professionals shall be excused from: (a) the requirement to maintain or provide detailed time records for services rendered postpetition in accordance with the Fee Guidelines, and (b) providing or conforming to any schedule of hourly rates. Instead, notwithstanding that Miller Buckfire does not charge for its services on an hourly basis, Miller Buckfire will be entitled to maintain time records (in summary format) of its services rendered for the Committee in half-hour (0.50) increments, not one tenth (0.10) of an hour increments, setting forth, in summary format, a description of the services rendered and the professionals rendering such services, and will present such records together with its fee applications filed with this Bankruptcy Court.

10.     The Debtors are authorized to, and shall, pay Miller Buckfire's compensation and reimburse Miller Buckfire for its costs and expenses as provided in the Engagement Letter and shall provide indemnification, contribution and reimbursement as provided in the Engagement Letter, in accordance with the fee application process approved by this Bankruptcy Court.

11.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Miller Buckfire uses the services of independent contractors, subcontractors or employees of affiliates or subsidiaries (collectively, the "Contractors") in these Chapter 11 Cases and Miller Buckfire seeks to pass through, and requests to be reimbursed for, the fees and/or costs of the Contractors to the Debtors, Miller Buckfire shall (a) pass through the

6

fees of such Contractors to the Debtors at the same rate that Miller Buckfire pays the Contractors, (b) seek reimbursement for actual costs of the Contractors only, and (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Bankruptcy Court such disclosures as required by applicable law.

12.     Notwithstanding anything to the contrary in the Application or the Engagement Letter, to the extent the Committee wishes to expand the scope of Miller Buckfire's services beyond those services set forth in the Application or the Engagement Letter, the Committee shall be required to seek further approval from this Bankruptcy Court.

13.     The Committee will coordinate with Miller Buckfire and the Committee's other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.     The Committee and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

16.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, the D'Amico Declaration, and this Order, the terms of this Order shall govern.

17.     Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    This Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order and the Fee Structure and the Indemnity Provisions.

Dated: _____, 2022
          Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

8

# **EXHIBIT B**

**D'Amico Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § | Case No. 22-90273 (MI) |
| | § | |
| Debtors. [1] | § | (Jointly Administered) |
| | § | |

**DECLARATION OF JOHN D'AMICO IN SUPPORT OF APPLICATION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILLER
BUCKFIRE AS INVESTMENT BANKER EFFECTIVE
AS OF OCTOBER 11, 2022, AND (II) GRANTING RELATED RELIEF**

I, John D'Amico, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true

and correct to the best of my knowledge, information, and belief:

1.     I am a Managing Director of the firm of Miller Buckfire & Co., LLC ("MB&Co."),

which has its principal offices at 787 Seventh Avenue, New York, New York, and its affiliate

Stifel, Nicolaus & Co., Inc. ("SN&Co." and together with MB&Co., "Miller Buckfire"), which

has its principal offices at 501 North Broadway, St. Louis, Missouri. I am authorized to execute

this declaration on behalf of Miller Buckfire. Unless otherwise stated in this declaration, I have

personal knowledge of the facts set forth herein.[2]

2.     This declaration (the "Declaration") is being submitted in connection with the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Miller Buckfire and are based on information provided by them.

proposed retention of Miller Buckfire as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Compute North Holdings, Inc., *et al*. (the "Debtors") to perform services as set forth in the application seeking to retain Miller Buckfire (the "Application").[3] Miller Buckfire was retained by the Committee as of October 11, 2022.

3.     MB&Co. is an investment bank that provides strategic and financial advisory services in large-scale corporate restructuring transactions.  MB&Co. is an indirect, wholly-owned subsidiary of Stifel Financial Corp. ("Stifel Financial" and together with its approximately 100 subsidiaries, the "Stifel Group") and has no subsidiaries or other controlled affiliates.  SN&Co. is a direct, wholly-owned subsidiary of Stifel Financial whose subsidiaries and controlled affiliates have no operations or employees beyond insurance and holding licenses related to the executive tax advice business at SN&Co.  The only common parent of MB&Co. and SN&Co. is Stifel Financial.  Stifel Financial is a publicly-traded financial holding company listed on the New York Stock Exchange (ticker symbol: SF), headquartered in St. Louis, Missouri.

4.     Stifel Financial completed its acquisition of MB&Co. in 2012 to add restructuring expertise to SN&Co.'s investment banking branch.  Among other reasons, MB&Co. remains a separate subsidiary to help preserve the value of MB&Co.'s restructuring reputation in the market.

5.     MB&Co. and SN&Co. are affiliated broker-dealers.  Generally, MB&Co. bankers are restructuring specialists and SN&Co. bankers are industry-specific and other specialists.  In this case, the SN&Co. professionals involved have cryptocurrency and data mining experience. These professionals are continuing to work together with the MB&Co. professionals as a coordinated team for the Debtor, providing both restructuring and industry experience under a

---

[3]     Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

single fee structure.

6.      The Debtor has been advised that MB&Co., SN&Co. or both have been retained to provide investment banking and other services in connection with the restructuring of the following companies, among others, in jurisdictions around the country: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Furniture Brands International, Inc.; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics; Grupo TMM; hhgregg, Inc.; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Innkeepers USA Trust; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc., Lenox Group, Inc.; Lodgenet, Inc.; Loewen Group; Magna Entertainment Corp.; MagnaChip Semiconductor LLC; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Molycorp, Inc.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Neff Corp.; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group,

Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; Simmons Bedding Company; The Spiegel Group; Stallion Oilfield Services Ltd.; SquareTwo Financial Services Corporation; Sunbeam Corporation; Standard Pacific Corp.; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; Ultrapetrol (Bahamas) Limited; Unitek GlobalServices, Inc.; U.S. Office Products; Vonage Corporation; and Women First Healthcare.

7.      In connection with its proposed retention by the Committee in these Chapter 11 Cases, Miller Buckfire (both MB&Co. and SN&Co.) undertook to determine whether it had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtor. Miller Buckfire obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases and additional names provided by counsel to the Committee (the "Original Potential Parties in Interest"), and a supplemental list of parties in interest in these Chapter 11 Cases (the "Supplemental Potential Parties in Interest" and collectively with the Original Potential Parties in Interest, the "Potential Parties in Interest"), which parties are listed on Schedule 1, annexed hereto.[4]

8.      In order to determine whether MB&Co., SN&Co., or their affiliates had any conflicts or other relationships that might cause them not to be disinterested or to hold or represent an interest adverse to the Debtor (except in connection with their services to the Committee), MB&Co. and SN&Co. took the following actions (collectively, the "Connections Check"): (a) a

---

[4] The list of the Potential Parties in Interest is being filed in redacted form pursuant to the *Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), and (IV) Granting Related Relief* [ECF No. 86].

4

direct query to all deal team bankers at both MB&Co. and SN&Co., plus all other bankers at MB&Co. and all other retail-specialist bankers at SN&Co. and (b) a review by Stifel Financial's global "control room" of the Potential Parties in Interest against Stifel Financial's corporate databases and data sources, including client, vendor, trading and transaction records. The Stifel Financial control room check is intended to produce a complete set of connections results for the Stifel Group and covers all of the Stifel Group entities (not only MB&Co. and SN&Co.).

9.      To the best of my knowledge and belief, based on the results of the Connections Check, MB&Co. and SN&Co. have not represented any Potential Parties in Interest in connection with matters relating to the Debtor, its estate, assets, or businesses within the three years prior to the date hereof and will not represent other entities which are creditors of, or have other relationships to, the Debtor in matters relating to this Chapter 11 Case, except as set forth herein and in Schedule 2 attached hereto.

10.     To the best of my knowledge, no individual assignment described in Schedule 2 accounts for more than 1% of Miller Buckfire's gross revenue during the twelve month period prior to the date hereof.

11.     Miller Buckfire provides financial advice and investment banking services to an array of clients in the areas of restructuring and distressed debt.  As a result, Miller Buckfire has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to this Chapter 11 Case, either individually or as part of representation of an ad hoc or official committee of creditors or interest holders.  To the best of my knowledge, based on the Connections Check, none of these representations are adverse to the Debtor's interests.

12.     To the best of my knowledge, neither Miller Buckfire nor I, nor any other employee of Miller Buckfire that will work on the Debtor's engagement, has any connection with or holds

any interest adverse to the Debtor, its estate or the Potential Parties in Interest, except (i) as set forth in Schedule 2 and (ii) as otherwise set forth below:

    a. As mentioned above, MB&Co. is an indirect subsidiary and SN&Co. is a direct subsidiary of Stifel Financial. Stifel's other subsidiaries include Keefe, Bruyette & Woods, Inc. ("KBW"), a leading broker dealer and investment banking firm focused on banking, insurance, broker dealers and other financial services companies, and Stifel Bancorp, Inc. ("Stifel Bank"), a retail and commercial bank. As mentioned above, for purposes of this Declaration, the "Stifel Group" refers to Stifel Financial and its subsidiaries, including MB&Co., SN&Co., KBW and Stifel Bank. The Stifel Group conducts the following principal activities: (i) private client services, including securities transaction and financial planning services; (ii) institutional equity and fixed income sales, trading and research, and municipal finance; (iii) investment banking services, including mergers and acquisitions, public offerings, and private placements; and (iv) retail and commercial banking, including personal and commercial lending programs. None of MB&Co., SN&Co., KBW or Stifel Bank has a common parent other than Stifel Financial.

    b. Within the Stifel Group, MB&Co. and SN&Co. are separate from the professionals and staff of the Stifel Group's equity research operations, its sales and trading operations, its retail brokerage business and Stifel Bank. The policies of MB&Co., SN&Co. and the Stifel Group are reasonably designed to prevent the misuse and improper sharing of information through the use of information barriers such as watch lists, restricted lists and internal policies on confidentiality of client information, as further described in subparagraph (c) below ("Information Barriers") and are subject to federal regulatory oversight. The purpose of these Information Barriers is to: (i) protect confidentiality of information; (ii) prevent members of different business units of the Stifel Group from coming into contact with information that is confidential to other business units of the Stifel Group other than on a need to know basis; and (iii) assist with the prevention and management of conflicts of interest.

    c. MB&Co.'s offices are on the same floor as KBW's and Stifel Bank's investment bankers in our principal New York office. The SN&Co. bankers working on this Chapter 11 Case are located on a floor that only houses the SN&Co. investment banking business and does not have any shared space with (i) any of the other Investment Arm Entities (as defined below), (ii) any of the non-investment banking divisions of SN&Co., or (iii) any other entity within the Stifel Group. (Additional exceptions are certain employees of control groups – compliance, IT, legal and senior management supervision – which sit "above the wall" and administer and monitor the business divisions' compliance with the Information Barriers and other control policies). In addition, each Stifel Group investment banking division, including the investment banking division of SN&Co. and the

entirety of MB&Co., are kept separate from other divisions and businesses of Stifel Group. The electronic records of these divisions are not accessible by any other division of the Stifel Group, except where there are joint engagements, as here, in which case only the divisions of the combined deal team (here, MB&Co.'s and SN&Co.'s investment banking divisions) have access to the deal's electronic files. (Additional exceptions are certain employees of control groups — compliance, IT, legal and senior management supervision — which sit "above the wall" and administer and monitor the business divisions' compliance with the Information Barriers and other control policies). Stifel Group's various business and divisions, including its investment banking divisions, operate on a need-to-know basis with respect to confidential client information. Employees are required to affirm their adherence to the firm's compliance procedures on an annual basis.

d.  MB&Co. and SN&Co. have not and will not directly or indirectly share any non-public information generated by, received from, or relating to the Debtor or this Chapter 11 Case with any employees of the Stifel Group not part of the team providing services to the Debtor except in accordance with the policies described above. MB&Co. and SN&Co. will immediately inform the Debtor and the U.S. Trustee, in writing, if it discovers that any of its Information Barriers or policies has been breached in connection with this Chapter 11 Case.   Miller Buckfire may share information with (i) regulatory authorities and (ii) the legal and compliance units and other internal control functions within the Stifel Group that need to know such information for purposes of carrying out their control functions.

e.  As part of its diverse businesses, MB&Co., SN&Co. and other Stifel Group affiliates appear in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of whom may represent claimants and Potential Parties in Interest in this Chapter 11 Case. Furthermore, members of the Stifel Group have in the past been, and may in the future be, represented by attorneys and law firms, some of whom may be involved in these proceedings. In addition, members of the Stifel Group have in the past worked, and likely will in the future be working, with or opposite other professionals involved in this Chapter 11 Case in matters unrelated to this Chapter 11 Case.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, information and belief, in so far as I have been able to ascertain after reasonable inquiry, none of these relationships constitute interests adverse to the Debtor's estate.

f.  MB&Co., SN&Co. and the other advisory practices within the Stifel Group provide advice and investment banking services to an array of clients on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings, placement agency, capital raising, underwriting and other strategic  transactions. As a result, MB&Co., SN&Co. and the other advisory practices within the Stifel Group each have

represented and may in the future represent certain Potential Parties in Interest in matters unrelated to this Chapter 11 Case, either individually or as part of a committee of creditors or interest holders. To the best of my knowledge, information and belief, in so far as I have been able to ascertain after reasonable inquiry, none of these representations constitute interests adverse to the Debtor's estate.

g.  As part of the Stifel Group's capital raising and underwriting activities, affiliates of MB&Co. and SN&Co. within the Stifel Group have participated, and will participate in the future in, placement and underwriting syndicates with affiliates of many of the financial institutions identified as Potential Parties in Interest, on behalf of companies and municipalities raising financing some of which may be creditors or other Potential Parties in Interest.  In addition, as part of such underwriting activities, certain financial institutions and institutional investors that are Potential Parties in Interest, may have purchased securities in such underwritings and private placements in the ordinary course of business. To the best of my knowledge, information and belief, in so far as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

h.  Stifel Nicolaus investment banking has an active REIT (real estate investment trust) practice and, as such, may receive revenues from commercial landlords that are Potential Parties in Interest, but such connections are unrelated to the Debtor or this Chapter 11 Case. These REIT-related activities are separated by Information Barriers from the team providing services to the Debtor in this Chapter 11 Case. To the best of my knowledge, information and belief, in so far as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

i.  The Stifel Group is a large, diversified financial services firm with broad activities covering sales and trading in equities, convertible securities, corporate bonds, loans and other instruments in addition to investment banking and financial advisory businesses. With more than one million customer accounts, it is very likely that some of the Stifel Group's clients and counterparties may hold a claim or otherwise be a party in interest in this Chapter 11 Case. Further, as a significant market maker in equity securities as well as a trader of corporate bonds, convertible securities, loans and other instruments, including those of creditors, equity holders or other Potential Parties in Interest in this Chapter 11 Case, members of the Stifel Group regularly enter into transactions in securities, loans and other instruments with other registered broker-dealers and other counterparties as a part of their daily activities. Some of these counterparties may be creditors, equity holders or other Potential Parties in Interest in this Chapter 11 Case. As noted above, there are Information Barriers and compliance procedures in place reasonably designed to ensure that no confidential or non-public information concerning the Debtor has or will be available to employees of the Stifel Group except employees of MB&Co. and SN&Co.

providing services to the Debtor. In addition, (i) the relevant Stifel Group entities are registered with and subject to periodic examinations by the SEC, FINRA or the CFTC, and (ii) most of the assets in these customer accounts are beneficially owned by parties other than current and former MB&Co. and SN&Co. owners, employees and their family members.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

j.    As part of its regular sales and trading operations, the Stifel Group may trade securities, loans or other instruments, including on behalf of creditors, equity holders and other Potential Parties in Interest in this Chapter 11 Case, and affiliates of the Stifel Group (including its employees). Miller Buckfire understands that as part of these trading operations that the Stifel Group may in the future hold debt and other instruments of the Debtor, creditors, equity holders and other Potential Parties in Interest in this Chapter 11 Case. There is an Information Barrier in place between MB&Co., SN&Co. and the Stifel Group's investment banking departments, on the one hand, and the Stifel Group's sales and trading businesses, on the other, and MB&Co., SN&Co. and the Stifel Group have in place compliance procedures reasonably designed to ensure that no confidential or non-public information concerning the Debtor has or will be available to employees of the Stifel Group's sales and trading businesses. In addition, (i) the relevant Stifel Group entities are registered with, and subject to periodic examinations by, the SEC, FINRA or the CFTC, and (ii) most of such assets are beneficially owned by entities other than current and former MB&Co. and SN&Co. owners, employees, and their family members.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

k.    In addition to the precautions described in the preceding paragraphs, MB&Co. and SN&Co. restricted trading by, through, or on behalf of MB&Co., SN&Co. or their respective employees in the securities of the Debtor in the weeks preceding commencement of this Chapter 11 Case and will continue to maintain this restriction during the pendency of this Chapter 11 Case.

l.    As part of its regular securities business, the Stifel Group publishes trade research on hundreds of issuers of equity securities and other instruments, including companies or other entities that may be creditors or other parties in interest in this Chapter 11 Case. There is an Information Barrier in place between MB&Co., SN&Co. and the Stifel Group's investment banking department, on the one hand, and the Stifel Group's research business, on the other, and MB&Co., SN&Co. and the Stifel Group have in place compliance procedures reasonably designed to ensure that no confidential or non-public information concerning the Debtor has or will be available to employees of the Stifel Group's research businesses.  Stifel Group clients who pay for this research (generally institutional investors) are third parties,

9

not affiliates, and pay for research on numerous entities, not only the Debtor. Although the publication restriction noted above was not effective until October 11, 2022, Stifel Group has not published research on the Debtor. To the best of my knowledge, information, and belief insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

m.  The Stifel Group operates a private client services business, providing securities brokerage and financial planning services ("Stifel's Wealth Management Business"). Clients of Stifel's Wealth Management Business may be creditors, equity holders or other Potential Parties in Interest in this Chapter 11 Case. Some of these client accounts may now or in the future hold debt or equity securities of the Debtor or other Potential Parties in Interest in this Chapter 11 Case. There is an Information Barrier in place between MB&Co., SN&Co. and the Stifel Group's investment banking operations, on the one hand, and Stifel's Wealth Management Business, on the other, and MB&Co., SN&Co. and the Stifel Group have in place compliance procedures reasonably designed to ensure that no confidential or non-public information concerning the Debtor has or will be available to employees of Stifel's Wealth Management Business. In addition, (i) the relevant Stifel Group entities are registered with, and subject to periodic examinations by the SEC, FINRA or the CFTC, and (ii) most of the assets in these client accounts are beneficially owned by parties other than current and former MB&Co. and SN&Co. owners, employees and their family members. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

n.  The Stifel Group operates an asset management business ("Stifel's Asset Management Business") providing asset management services to individuals and institutions through its affiliates, including Equity Compass, Missouri Valley Partners, Thomas Weisel Global Partners, Timberline Asset Management LLC and Washington Crossing Advisors. Clients of Stifel's Asset Management Business or investors in the funds managed by Stifel's Asset Management Business may be creditors, equity holders or other Potential Parties in Interest in this Chapter 11 Case. The funds and accounts managed by Stifel's Asset Management Business may now or in the future hold debt or equity securities of the Debtor or other Potential Parties in Interest in this Chapter 11 Case. Stifel's Asset Management Business may trade securities or other instruments with Potential Parties in Interest in this Chapter 11 Case. There is an Information Barrier in place between MB&Co., SN&Co. and the Stifel Group's investment banking operations, on the one hand, and Stifel's Asset Management Business, on the other, and MB&Co., SN&Co. and the Stifel Group have in place compliance procedures reasonably designed to ensure that no confidential or non-public information concerning the Debtor has or will be available to employees of Stifel's Asset Management Business. In addition, (i) the relevant Stifel Group entities are registered with, and subject to periodic

10

examinations by the SEC, FINRA or the CFTC, and (ii) most of the assets in these client accounts are beneficially owned by parties other than current and former MB&Co. and SN&Co. owners, employees and their family members. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

o.  Furthermore, the following Stifel Group registered investment advisors ("RIAs") and exempt reporting advisors ("ERAs") provide asset management services: SN&Co., Century Securities Associates, Inc. ("Century"), EquityCompass Investment Management, LLC, Intyce, LLC, 1919 Investment Counsel, LLC, Thomas Weisel Global Partners, Washington Crossing Advisers, LLC, Ziegler Capital Management, LLC. (There are two other such entities in the Stifel Group: Missouri Valley Partners, which is a dormant entity, and Timberline Asset Management LLC, which currently holds only cash and cash equivalents.)

p.  Each of these entities, other than SN&Co. and Century, are managed separately. All of these entities, including SN&Co. and Century, manage their investment advisory divisions separately from the Stifel Group's investment banking businesses and divisions, including MB&Co. and the investment banking division of SN&Co. As noted above the Information Barriers described above separate the wealth management businesses and entities from the Stifel Group's investment banking operations, including those at MB&Co. and SN&Co. In addition, (i) other than the ERAs, the relevant Stifel Group entities are registered with, and subject to periodic examinations by, the SEC, FINRA or the CFTC, and (ii) most of the assets in these customer accounts are beneficially owned by parties other than current and former MB&Co. and SN&Co. owners, employees and their family members.

q.  The Stifel Group affiliated entities that make and hold investments for and on behalf of the Stifel Group itself (such investments, "Stifel Group Investments") are: Stifel Financial, SN&Co., Stifel Venture Corp., Thomas Weisel Partners Group, Inc., Thomas Weisel Capital Management LLC, Thomas Weisel Growth Partners LLC, Thomas Weisel India Opportunity LLC, Stifel Nicolaus Europe Limited, KBW, KBW Asset Management, Inc., KBW Ventures, Inc., SBT Ventures, Inc. These entities are referred to herein as the "Investment Arm Entities". There are no Stifel Group Investments in the Debtor or any Potential Party in Interest, whether or not held at the Investment Arm Entities or other third-party entities.

r.  In addition, other than as described in Schedule 2, none of the investments held by the Investment Arm Entities on behalf of clients and other non-Stifel Group entities are interests in the Debtor. All investments – Stifel Group Investments and investments of clients and other non-Stifel Group entities – are managed and have investment decisions made separately from the deal team providing services to the Debtor, which deal team is separated from decisions relating to these investments by the Information Barriers described above. In addition, all investments held at SN&Co. – Stifel Group

11

Investments and investments of clients and other non-Stifel Group entities – are managed separately from the investment banking division of SN&Co. and from MB&Co.

s.   The Investment Arm Entities listed above do not include Stifel Group entities that hold only client investments or broker-dealer trading inventory. Nor does it include entities holding investments solely in cash, cash equivalents, government debt, Stifel Group's own debt and equity securities, corporate real estate or aviation equipment (such as aircraft and engines).

t.   Investment decisions made by the Investment Arm Entities are made by employees of the respective Investment Arm Entity (who, in the case of SN&Co., are not part of the investment banking division of SN&Co. and are separated from that investment banking division and from MB&Co. by Information Barriers) or by senior management at Stifel Financial. No member of the deal team, nor any other employee of MB&Co. or the investment banking division of SN&Co., is a member of the boards of directors of MB&Co., SN&Co., KBW, Stifel Financial or any other Investment Arm Entity. None of the MB&Co. or SN&Co. professionals to be employed by the Debtor in this Chapter 11 Case is a member of any joint board or committee with an investment decision-making role with any Investment Arm Entity. None of the MB&Co. or SN&Co. professionals to be employed by the Debtor in this Chapter 11 Case have any control or discretion over any of the investments made by any Investment Arm Entity.

u.   Certain professionals employed by the Stifel Group, including MB&Co. and SN&Co., may have mortgages, consumer loans, investment, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are creditors, equity holders or other parties-in-interest in this Chapter 11 Case or with funds sponsored by or affiliated with such parties. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these activities constitute interests adverse to the Debtor's estate.

v.   Certain professionals employed by the Stifel Group, including MB&Co. and SN&Co., may hold debt or equity securities issued by creditors, equity holders or other parties-in-interest in this Chapter 11 Case. To the best of my knowledge, information and belief, based on the Connections Check, (i) none of these professionals' holdings would be considered material from the perspective of the issuers of such securities, and (ii) except as described in more detail in Schedule 2 hereto, no professional employed by MB&Co. and SN&Co. holds a material interest in debt or equity securities issued by the Debtor.

w.   Certain professionals presently employed by the Stifel Group, including MB&Co. and SN&Co., were formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, the creditors, equity holders or other parties-in-interest in this Chapter 11 Case. While employed by other firms, certain professionals presently employed by Miller Buckfire

12

may have represented creditors, equity holders or other parties-in-interest in this Chapter 11 Case in connection with matters unrelated to the Debtor and the Chapter 11 Case. Miller Buckfire does not believe that any of these activities constitute interests adverse to the Debtor's estate.

13. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of MB&Co., SN&Co. or any Stifel Group affiliate has been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this Chapter 11 Case. MB&Co., SN&Co. and Stifel Group affiliates will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtor or interested parties in this Chapter 11 Case; provided that such services do not relate to, or have any direct connection with, this Chapter 11 Case or the Debtor.

14. I am not related or connected to and, based on the Connections Check, no other professional of MB&Co. or SN&Co. who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of Texas, any of the District Judges for the Southern District of Texas who handle bankruptcy cases, or any employee in the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").

15. Accordingly, except as otherwise set forth herein, insofar as I have been able to ascertain, none of MB&Co., SN&Co., I, nor any employee of Miller Buckfire who will work on this engagement holds or represents any interest adverse to the Debtor or its estate, and each of MB&Co. and SN&Co. is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14), as modified by § 1107(b) of the Bankruptcy Code, in that MB&Co., SN&Co. and their respective professionals and employees who will work on the engagement:

a. are not creditors, equity security holders, or insiders of the Debtor;
b. were not, within two years before the date of filing of the Debtor's chapter 11 petitions, a director, officer, or employee of the Debtor; and

13

c.   do not have an interest materially adverse to the interest of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor, or for any other reason, except as permitted in connection with its services to the Committee.

If Miller Buckfire discovers additional information that requires disclosure, Miller Buckfire will file a supplemental declaration with the Court as required by Bankruptcy Rule 2014.

26.   The foregoing constitutes the statement of Miller Buckfire pursuant to Bankruptcy Rule 2014(a).

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 10, 2022
        New York, New York

John D'Amico
Managing Director
Miller, Buckfire & Co., LLC

## **SCHEDULE 1**

### **Potential Parties in Interest**

**Debtors**
CN Atoka LLC
CN Big Spring LLC
CN Colorado Bend LLC
CN Corpus Christi LLC
CN Developments LLC
CN Equipment LLC
CN King Mountain LLC
CN Minden LLC
CN Mining LLC
CN Pledgor LLC
Compute North Holdings, Inc.
Compute North Member LLC
Compute North NC08 LLC
Compute North NY09 LLC
Compute North SD LLC
Compute North Texas LLC
Compute North TX06 LLC
Compute North TX10 LLC
Compute North, LLC


**Banks**
BMO Harris Bank, N.A.
Fidelity Bank Plc.

**Current and Former Directors & Officers**
Harold Coulby
Brian Falik
Drake Harvey
Bobby Kandaswamy
PJ Lee
Jose Lima
Dave Movius
Dave Perrill
Eli Scher
Shounok Sinha
Stephen Stenbeck
Carl Stjernfeldt
Jason Stokes
Kyle Wenzel

**Customers**
[Redacted]

**Debt Service**
Generate Capital, PBC
Post Road Administration

**Electricity Provider**
Constellation
Exelon Generation
Midamerican Energy Company
MP2 Energy Texas LLC
Nebraska Public Power District

**Employees and Contractors**
Sean Aschoff
Mark Beckendorf
Robert Bisanz
Matthew Boisjolie
Matthias Bolda
John Bouchard
Nathan Buckley
Arthur Calloway
Christopher Chew
Joey Colyer
Brendon Coughtry
Nick Crain
Gregory S. Cribb
Einar A. Cristiani
Jack D'Angelo
Tim Dahl
Eyal Dayan
Mark Decker
Carlos Domenech
Deana Dorosheko
Cindy Doyle
Brad Ellis
Jean Esquier
Giovanni Esteves
Mohammed Fadlallah
Thomas Ferry
Ken Flory
David Galeano
Israel Garcia
Patrick Geisler

Igor Gonta
Patrick Govier
Danny Grace
Michael Grace
James Griffith
Chris Grumet
Alexander Guddat
Richard Hagen
Jonathan Hakim
Brian Hakk
Irving Hansen
Richard Harvey
Brian Haw
James Haynes
Jeff Hene
Jesse Hensley
Jiri Holba
Andrei Isari
Guy C. Jackson
Barry Jeffries
Marshall Johnson
Alexandre Julio
Jordan Kanfer
Khashayar Kashani
Sandeep Katoch
Thomas Kieffer
Michael Kindel
Joseph C. Kiser
Benjamin Kolpa
Ron Konezny
Robert L. Kramer
Darius Kuzmicz
Liz Labelle
Thomas P. LaBelle
Toby LaBelle
Ronda Laplaca
Bradley Lew
Phillip Li
David Lockard
Nelu Mihai
Benjamin Morgan
David Robert Morgan
Thomas Moser
Roman Nabatov
Max Niederluecke

Rooney Nimmo
Jack Perrill
John Perrill
Richard Pieters
Kayla Piper
Nicola Piper
Brian Pryor
Johnathon Ritucci
Tad Piper TTEE for the Tad W. Piper Revocable Trust
Torben Rytt
Anthony Scaparra
Taylor Shakespeare
Nathan Sprague
Ben Stoos
Philip Tooke
Armen Tovmasyen
Eric Tracy
Amar Tsolmon
Jean Marcel Viljoen
Jan Vyhlidka
Ralph Weber
John Winslow
Brent Wong
Satyen Yadav
Perrill

**Insurance**
AFCO
AON Risk Services
Arrowhead General Insurance Agency, Inc.
CNA Insurance
Hylant

**IT**
Flexential Corp.
Sage Intacct
Workiva Inc.

**Lenders**
Generate Lending, LLC
Marathon Digital Holdings, Inc.
Mercuria Energy America, LLC
NextEra Energy Resources, LLC
TZ Capital Holdings, LLC

**Lessor**
7575 Management LLC

**Non-Debtor Affiliates**
CN Borrower LLC
CN Wolf Hollow LLC
Compute North NE05 LLC
Marathon Compute North 1 LLC
Marathon Compute North 2 LLC
TZRC Horse Hollow LLC
TZRC King Mountain LLC
TZRC LLC
TZRC Mining LLC

**Ordinary Course Professionals**
Ernst & Young LLP
Finn Dixon
Growth Operators Advisory Services LLC
Hello Temp Inc.
Jackson Lewis P.C.
Jackson Walker LLP
Kutak Rock LLP
McDonald Hopkins
Meridian Compensation Partners LLC
Nordmark Energy Consulting, LLC
Norton Rose Fulbright US LLP
RSM US LLP
SALO, LLC
Sira Corbetta Lopez de Letona
Smith Anderson Blount Dorsett Mitchell & Jernigan LLP
Mahesh Tripunitara
Westwood Professional Services

**Other**
Authentic Brand LLC
Bootstrap Energy LLC
Bradley Arant Boult Cummings
Corporate Performance Strategies Inc.
DNV Energy USA Inc.
Dennis Fehr
Gartner Inc.
James B. Rogers, as trustee of the Max G. Aronson Trust U/A DTD 11/01/2006
James B. Rogers, as trustee of the Robert I. Aronson Trust U/A DTD 07/29/2003
James B. Rogers, as trustee of the Samuel L. Aronson Trust U/A DTD 12/08/2000
Jefferies LLC

MVP Logistics LLC
NBTC
Nebraska Public Safety Task Force
Northern Tool & Equipment
Nowlit Solutions Corp.
OverWatch Enterprises LLC
PandaDoc, Inc.
Pansing Hogan Ernst & Bachman
Paul Hastings
Portage Point Partners LLC
ProLift Rigging Company LLC
Quartz Energy Partners
Ramp Credit Card
SGS North America Inc.
StarTex Software LLC
Stephen Aronson Rev Living Trust U/A/D 07/15/2015
Texas Blockchain Council
The Gene Allen Trust
United Management - Rent Payment
Uptick Tech
URS Compliance
WW Grainger Inc.

**Payroll & Benefits**
Insperity

**Professionals**
Ballard Spahr LLP
CT Corporation System
Foley & Lardner LLP
Fredrikson & Byron, PA
Kirkland & Ellis LLP
Koho Consulting
Milbank

**Shareholders**
Addison L Piper TTEE for the Addison L Piper Revocable Trust
ADK Holdings LLC
Callanish Capital Partners LP
Coeranbrooke LLC
Creekside Investments 1 LLC
Daniel R Aronson & Martha G Aronson TRUSTEES for the Daniel R. Aronson Revocable Trust
Digital Currency Group Inc.
Elliot B Evers TTEE for the Elliot Evers 2010 Revocable Trust
Endurance Search Partners LLC

Fredric Goldberg Rev Trust U/A/D 05/15/2019
H2 Renewables LLC
Katherine E. Bispala TTEE for the Katherine E. Bispala Spousal Limited Access TR u/a/d
    Millennium Trust Co LLC Custodian FBO Michael Thomas Zenk IRA XXXX65634
Muinzer Ventures LLC
Perrill Technology LLC
REIC Gamma (AM/DB) Holdings LLC
Reviva Inc.
SM & MS Partners
The Goldman Sachs Trust Company of Delaware, as Trustee of the DP GST Exempt Family
Trust U/A/D 8/1/
Vedado Capital LLC
Vitali Compute LLC

**Large Trade Creditors**
7575 Management LLC
Bitmain
Bootstrap Energy LLC
CH Robinson Company Inc.
Circuit Breaker Guys, LLC
City of Big Spring, TX
Commonwealth Electric Company of the Midwest
CorTalent
Echo Search Group
Egauge Systems LLC
Ernst & Young LLP
Flexential Corp.
Foundry Digital LLC
Freudenberg Filtration Technologies
Gartner Inc.
Growth Operators Advisory Services LLC
HubSpot
Koch Filter Corporation
Koho Consulting
M A Mortenson Co.
Madel PA
Marathon Digital Holdings, Inc.
Maxim Crane Works
Meritus Recruiting Group LLC
Midamerican Energy Company
MP2 Energy Texas LLC
MVP Logistics LLC
NBTC
Norton Rose Fulbright US LLP
Opkalla Inc.

OverWatch Enterprises LLC
Overwatch Surveillance LLC
Rand Worldwide Subsidiary Inc.
Recruiters of Minnesota
RK Mission Critical
Russell A. Farrow US Inc.
Spectrum Search Partners
Starostka Group Unlimited
Sunbelt Solomon Services, LLC
Transfluid Services - Stark
Uline
Urban Solution Group
US Bitcoin Corp.
Westwood Professional Services

**U.S. Trustee Personnel, Judges, and Court Contacts**
Albert Alonzo
Alicia Barcomb, Trial Attorney
Jacqueline Boykin, Legal Data Technician
Alethea Caluza, Paralegal Specialist
Ana Castro
Jeannie Chavez
Tracey Conrad
LinhThu Do
Hector Duran, Trial Attorney
Kevin M. Epstein, US Trustee
Ivette Gerhard, Secretary
Brian Henault, Bankruptcy Analyst
Judge Marvin Isgur
Luci Johnson-Davis, Paralegal Specialist
Chief Judge David R. Jones
Omar E. Jones, Auditor
Tyler Laws
Judge Christopher Lopez
Zilde Martinez, Courtroom Deputy
Linda Motton, Paralegal Specialist
Ha Nguyen, Trial Attorney
Judge Jeffrey P. Norman
Nathan Ochsner (Clerk of the Court)
Glenn Otto, Bankruptcy Analyst
John Patouhas
Kimberly Picota
Vriana Portillo
Mario Rios
Yasmine Rivera, Auditor

Judge Eduardo V. Rodriguez
Jayson B. Ruff, Trial Attorney
Rosario Saldana, Case Manager
Millie Aponte Sall, Assistant U.S. Trustee
Patricia Schmidt, Legal Assistant
Christy Simmons, Bankruptcy Analyst
Gwen Smith, Legal Assistant
Stephen Statham, Trial Attorney
Christopher R. Travis, Trial Attorney
Clarissa Waxton, Bankruptcy Analyst
Jana Whitworth, Trial Attorney

**Utilities**
AT&T Mobility
Bosselman
Circuit Breaker Guys, LLC
City of Big Spring
City of Big Spring Water Dept.
City of Big Spring, TX
Constellation New Energy
Edison Energy LLC
Fibercomm
Gexa Energy
King Mountain Upton Wind, LLC
Mercuria Energy America, LLC
Nebraska Link Holdings
Oncor Electric Delivery Company
Republic Services
Shell Energy
Solid Waste Agency Landfill
Texas-New Mexico Power Company
United Cooperative Services
Waste Management of Carol Stream, IL

**Vendors / Service Providers**
308 Construction LLC
AlphaGraphics Bloomington
Alternative Business Furniture
American Tower
Anthony Ostlund Louwagie Dressen & Boylan P.A
A-Team Heating and Cooling
Authority Electric & A/C
Aviat US Inc.
Aviation Charter Inc.
Baldwin Design Consultants, PA

Basin 2 Way
Basin Abstract & Title
berganKDV
BG Ventures
BHI Holdings LLC
Big Bend Telecom
Bill.com
Bitmain
BMO
Bosselman Energy
C&S Crane and Rigging LLC
Cage Engineering Inc.
CH Robinson Company Inc.
Citizen Partners
City of Greenville, North Carolina
City of Kearney, Nebraska
Classic Industrial Services Inc.
CliftonLarsonAllen
Coffman Engineers Inc.
Comfy Bowl, Inc.
Commonwealth Electric Company of the Midwest
Complete Underground, LLC
Corpus Christi Rimz
CorTalent
CRG Corporation
CSC
Culligan of Kearney
Deluxe
DHL Express USA Inc.
Double Radius Inc.
Douglas Electrical Services LLC
Dunn Engineering, LLC
Dwight Lane Investments
Eakes Office Solutions
Ebay
Echo Search Group
Economic Development Council of Buffalo County
ECS Southeast LLP
Egauge Systems LLC
Electric Power Engineers, LLC
Energage LLC
EnginSoft USA
Equipment Management Services LLC
Everington Consulting, Inc.
Fastenal

FedEx
Ferguson Electric Construction
FiberComm, LLC
Fidelity Bank
Finley Investigations & Security Inc.
Fireblocks Inc.
Freudenberg Filtration Technologies
G & G Golden Inc.
Granbury Chamber
GrassRoots
GreenFox Marketing Solutions
Greenville Utilities
Ground Penetrating Radar Systems
Hays Companies, Inc.
HDR Engineering, Inc.
Heartland Pneumatic
Hire Right
HM TECH LLC
HubSpot
Infrastructure Masons
Integrated Security Solutions, LLC
Steven Jackman
Jobplex
JSW Services
Kaige Kubota LLC
Kearney Power Sports
KGI Wireless Inc.
Kuncan Electronics Co Ltd.
Land Management Group
LexisNexis Risk Solutions FL Inc.
Long Lines Broadband
M A Mortenson Co.
Mackinnon Bruce International
Maddox Industrial Transformer
Madel PA
Marlatt Machine & Welding LLC
Maxim Crane Works
McCamey County Hospital District
Meritus Recruiting Group LLC
Metro Alarm & Lock
Midas Green Technologies
Midland Lock and Safe
Mid-State Engineering & Testing, Inc.
Midway Chrysler Jeep Inc.
Milco Environmental Services

Miller & Associates Consulting Engineers, P.C.
MiningDisrupt
Mowrey, Ryen
NAI United Management, LLC
Nebraska Crane
Nebraska Department of Revenue
Nebraska Link Holdings, LLC dba OPTK Networks
Nebraska Title Company
NextLink Internet
Office Furniture Liquidations
Ogletree Deakins Nash Smoak & Stewart
Overhead Door Company of Permian Basin
PA Department of State
Pegasus Energy LLC
Pennzoil-Quaker State Company
Phillips Fabrication, Inc.
Power Asset Recovery Corporation
Power Search and Consulting LLC
Print Crypto Inc.
Prosek LLC
PW Rentals, LLC/Roland Whitney
R. O. Youker, Inc.
Rand Worldwide Subsidiary Inc.
Recruiters of Minnesota
Redman's Shoes
Republic Services
Ricoh USA Inc.
RK Mission Critical
Roebuck Staffing Company LLC
Roth Staffing Companies LP
Russell A Farrow US Inc.
Satellite Shelters Inc.
Sayler Screenprinting
Shenzhen 10Gtek International Co Ltd.
Shenzhen Aimeijin Electronics Co, Ltd.
Shenzhen Guangyu Technology Co.
SHI International Corp.
Shoppas Material Handling, Ltd.
SignPro
Sirius Computer Solutions Inc.
Solid Waste Agency Landfill
Source Incorporated of Missouri
Spark Public Relations
Spectrum Search Partners
Spyglass Home Inspections

Starostka Group Unlimited
State of Connecticut
State of Delaware
Sunbelt Rentals
Sunbelt Solomon Services, LLC
Superior Cranes, Inc.
Tech Strategy Leaders LLC
TerraSano Services LLC
Texan Restrooms LLC
TForce Worldwide Inc.
The Lockmobile LLC
The Wells Partnership Company
Thompson Electric Company
Thomson Reuters - West
TNT Crane & Rigging
Transfluid Services - Stark
Trond
True North Data Solutions Inc.
Uline
Ulteig Engineer's Inc.
United Cooperative Services
UPS Supply Chain Solutions, Inc.
Upton County
Urban Solution Group
US Compliance
USA Communications
Valdes Engineering Company
Valley Forklift
Verizon
Versatile Industries V
VTH Advisors, LLC
WAND Corporation
Waste Management
West Texas Commercial Cleaning, LLC
Wharton County Permit & Inspection Dept.
Williams Scotsman Inc.
World Wide Technology LLC
Zhejiang Quinntek Co Ltd.

**SCHEDULE 2**

**Engagements with Potential Parties in Interest**

| Potential Party in Interest | Connection Entity | Nature of Connection |
|---|---|---|
| AFCO | AFCO | Stifel Group securities sales and trading client in unrelated capacity |
| AON Risk Services | AON UK Limited<br><br>AON Risk Services | Client in unrelated investment banking matter<br><br>Potential counterparty in unrelated investment banking mandates |
| Ballard Spahr | Ballard Spahr | Stifel Group service professional services provider in unrelated matters |
| BMO Harris Bank, N.A. | BMO Harris Bank, N.A. | Stifel Group securities sales and trading client in unrelated capacity<br><br>Potential counterparty in unrelated investment banking mandate |
| Ernst & Young U.S. LLP | Ernst & Young U.S. LLP | Ernst & Young is Stifel Group's independent auditor.  In 2021, Stifel Group paid Ernst & Young nearly $5 million in professional services fees.  None of Ernst & Young's services are related to the Debtor or its Chapter 11 Case.<br><br>Stifel Group broker dealer client in unrelated capacity |
| Fidelity Bank Plc. | Fidelity Bank Plc. | Stifel Group securities sales and trading client in unrelated capacity<br><br>Potential counterparty in unrelated investment banking mandate |
| Fredrickson Byron | Fredrickson Byron | Stifel Group service professional services provider in unrelated matters |
| Generate Capital, PBC | Generate Capital, PBC | Potential counterparty in unrelated investment banking mandate |
| Kirkland & Ellis | Kirkland & Ellis | Stifel Group service professional services provider in unrelated matters |
| Kutak Rock | Kutak Rock | Stifel Group service professional services provider in unrelated matters |
| McDermott Will & Emery | McDermott Will & Emery | Stifel Group service professional services provider in unrelated matters |

| Potential Party in Interest | Connection Entity | Nature of Connection |
|---|---|---|
| McDonald Hopkins | McDonald Hopkins | Stifel Group service professional services provider in unrelated matters |
| NextEra Energy Resources, LLC | NextEra Energy Resources, LLC | Stifel was a selling group member in NextEra's IPO<br><br>Potential counterparty in unrelated investment banking mandates |
| Norton Rose Fulbright | Norton Rose Fulbright | Stifel Group service professional services provider in unrelated matters |
| Taxing authorities | Taxing authorities | Stifel Group is a taxpayer |
| The Goldman Sachs Trust Company of Delaware, as Trustee of the DP GST Exempt Family Trust U/A/D 8/1/ | Various GS entities | Potential counterparty in unrelated investment banking mandates |

# EXHIBIT C

**Engagement Letter**

Miller Buckfire & Co., LLC
787 7th Avenue, 5th Floor
New York, New York 10019
www.millerbuckfire.com



As of October 11, 2022

The Official Committee of Unsecured Creditors
of Compute North Holdings, Inc., *et al.*

Dear Ladies and Gentlemen:

This letter (the "*Agreement*") confirms the terms and conditions of the agreement by which the Official Committee of Unsecured Creditors (the "*Committee*") in the Chapter 11 cases of Compute North Holdings, Inc., *et al.* (collectively, the "*Debtors*") filed under title 11 of the United States Code (the "*Bankruptcy Code*") (Bankr.Texas Case Nos. 22-90273, *et al.*) (collectively, the "*Bankruptcy Case*"), in the United States Bankruptcy Court for the Southern District of Texas (the "*Bankruptcy Court*") has engaged Miller Buckfire & Co., LLC and Stifel Nicolaus Canada Inc. (together, "*Miller Buckfire*") as its exclusive financial advisor and investment banker for the purposes set forth in Section 1 hereof.  If appropriate in connection with performing its services for the Committee hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

Section 1.      Services.  Miller Buckfire will perform the following services, in each case as requested by the Committee and to the extent Miller Buckfire deems necessary, appropriate, feasible and consistent with its role as investment banker to the Committee:

a.      familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors and advise and assist the Committee in structuring and effecting the financial aspects of the transactions defined below;

b.      receive, review and perform diligence on information provided on a confidential basis by the Debtors or the Committee;

c.      assist the Committee in negotiations regarding any sale, plan of reorganization or liquidation of any of the Debtors in the Bankruptcy Case (a "Plan") or other Transaction;

d.      represent and negotiate on the behalf of the Committee as it relates to any restructuring proposals advanced by the Committee, Debtors or any other parties or stakeholders; and

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

e.  participate in hearings before the Bankruptcy Court in connection with Miller Buckfire's other services, including related testimony, in coordination with the Committee's counsel.

f.  "*Transaction*" means any Bankruptcy Court approved sale or other transfer of at least a majority of the assets of the company, recapitalization or restructuring (including an exchange, conversion, cancellation, forgiveness, retirement, and any material modification to related terms, conditions or covenants, whether by amendment or otherwise) of the Debtors' indebtedness, obligations or liabilities (including preferred stock, debt securities, unfunded pension and retiree medical liabilities, partnership interests, lease obligations, trade credit facilities and other contract and tort obligations), whether or not pursuant to a repurchase or exchange transaction or solicitation of consents, waivers, acceptances or authorizations, or any sale of some or all of the assets or equity interests of the Company, or a Plan (including, without limitation, a "pre-packaged" or "pre-arranged" plan), or a liquidation. A Transaction is deemed to occur on the earlier of confirmation or other approval by the Bankruptcy Court or closing, as applicable.

Section 2.    Fees and Expenses.    In consideration of Miller Buckfire's services under this Agreement, Miller Buckfire shall be paid by the Debtors in cash on the terms and at the times set forth below, subject to the Bankruptcy Court and applicable orders, rules and guidelines:

a.  "*Monthly Fee*": $150,000, due in advance on the first day of each month during the term of this Agreement.

b.  "*Deferred Fee*": $950,000 due upon a Transaction

c.  *Expense Reimbursement.* The Company shall reimburse Miller Buckfire's reasonable, out-of-pocket expenses incurred in connection with this Agreement, including Miller Buckfire's performance hereunder and any costs of enforcement. These expenses include the reasonable fees and expenses of Miller Buckfire's counsel, including in connection with defending retention and fee applications (without the requirement that such counsel be approved by the Bankruptcy Court), its consultants and other advisors, and also include travel and lodging expenses, data processing and communication charges, research and courier services. Obligations under this section are independent from and do not limit the obligations under the Indemnification Provisions.

d.  *No Committee Economic Obligation to Miller Buckfire; All Economic Obligations Subject to the Bankruptcy Court.* For the avoidance of doubt, each of the Committee and its members and its and their professionals are not and will not be responsible for payment of any fee to Miller Buckfire described herein, for reimbursement of expenses to Miller Buckfire, or for any other obligation owed to Miller Buckfire hereunder (including, without limitation, any obligation of indemnity or contribution) absent an express written agreement to the contrary. Miller Buckfire shall seek payment of fees in accordance with the fee application procedures established by the Bankruptcy Court and all invoices will be paid by the Debtors, in accordance with the order approving Miller Buckfire's retention, the Bankruptcy Code, Bankruptcy Rules and applicable orders of the Bankruptcy Court.

Section 3.    Term and Termination. This Agreement may be terminated by either party at any time by 21 days' advance written notice to the other party. If this agreement is terminated other

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

than by Miller Buckfire, Miller Buckfire's fees and reimbursable expenses accrued through the date of termination on or before such date shall be due. Miller Buckfire shall also be due any fee described in Section 2 that arises from any transaction of a kind defined in Section 1 that occurs prior to the second anniversary of termination. This Section 3 and Section 4.a, b, d, f, g and i shall survive termination of this Agreement. Termination of this Agreement shall not affect or impair the continuing obligations under the Indemnification Provisions.

Section 4.     Additional Provisions.

a.     *Further Services.*

    i.     Except as set forth in this Section 4.a, services to be provided under this Agreement are limited to those set forth in Section 1.

    ii.     The Committee agrees that Miller Buckfire and its affiliates have made no expressed or implied commitment, by this Agreement or otherwise, to underwrite, place or purchase any financing or securities, or to act in any other capacity in connection therewith, which commitment shall be set forth in a separate underwriting, placement agency or other appropriate agreement or amendment hereto.

b.     *Indemnification.* The Debtors will indemnify and exculpate Miller Buckfire and certain related persons in accordance with the indemnification and exculpation provisions (the "*Indemnification Provisions*") attached to this Agreement, which are integral to it and incorporated by reference.

c.     *Bankruptcy Case.*

    i.     Each provision of this Agreement is subject to approval by the Bankruptcy Court and all applicable orders, rules and guidelines, and is subject to the fiduciary obligations of the Committee.

    ii.     The Committee shall apply promptly to the Bankruptcy Court for approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Miller Buckfire's retention upon the terms of this Agreement, including all of Section 2, not subject to the standard of review under section 330 of the Bankruptcy Code, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. Absent such approval pursuant to a final order acceptable to Miller Buckfire in every respect, Miller Buckfire shall have no obligation to provide any services under this Agreement following commencement of a Bankruptcy Case. The Committee shall supply Miller Buckfire and its counsel with a draft of such retention application and the related proposed order sufficiently in advance to enable Miller Buckfire and its counsel to review and comment thereon.

    iii.     In any Bankruptcy Case, the Committee agrees that Miller Buckfire's post-petition compensation pursuant to this Agreement shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall further be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in connection with any financing or sale or similar orders entered by the Bankruptcy Court (which carve-outs shall be adequate to enable the

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

Debtors to pay Miller Buckfire's fees and expenses, fully and promptly, without detriment to any other similarly-situated administrative claims). The Committee shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order or similar order in the Bankruptcy Case permits the use of cash collateral, financing or sale proceeds for the full and prompt payment of all of Miller Buckfire's fees and expenses, including transaction fees, and has the agreements of the lenders (or parties whose cash collateral is being used) that Miller Buckfire's fees and expenses shall be paid at the times, on the terms, and from the sources set forth in this Agreement. If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Miller Buckfire shall then have no obligation to provide further services under this Agreement.

iv.     Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from time to time, creating "peak load" issues for Miller Buckfire. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under each applicable legal standard.

d.     *Limited Engagement.*

i.     By its services or otherwise, Miller Buckfire assumes no responsibility for the Committee's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any transaction, including those defined in Section 1. The Committee agrees that Miller Buckfire shall have no obligation and no responsibility to provide accounting, audit, "crisis management," or business consultant services and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, nor to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Committee confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

ii.     Miller Buckfire has been retained under this Agreement as an independent contractor with no fiduciary or agency relationship to the Committee or to any other party. Miller Buckfire has no authority to bind, represent or otherwise act as agent,

4

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

executor, administrator, trustee, lawyer or guardian for the Committee, nor does Miller Buckfire have the authority to manage money or property of the Debtors or Committee. Miller Buckfire's advice and services, however rendered, are intended solely for the benefit and use of the Committee in considering the matters to which this Agreement relates. Except as expressly contemplated by this Agreement, the Committee agrees not to use, reproduce, disseminate, quote or refer to any such advice and services at any time in any way, unless Miller Buckfire consents in advance in writing.

e.   *Miller Buckfire's Affiliates.* The Committee understands that Miller Buckfire is a subsidiary of Stifel Financial Corp. and that Stifel Financial Corp. and its affiliates (collectively, "*Stifel*") comprise a full service securities firm and a commercial bank engaged in securities trading and brokerage activities, as well as providing investment banking, asset management, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of corporations and individuals. In the ordinary course of Stifel's trading, brokerage, asset management, and financing activities, Stifel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its own account or the accounts of customers, in debt or equity securities or senior loans of the Debtors or the members of the Committee. Stifel recognizes its responsibility for compliance with federal securities laws in connection with such activities. In addition, Stifel may have and may in future have investment and commercial banking, trust and other relationships with parties other than the Debtors or the members of the Committee, which parties may have interests with respect to the Debtors or the members of the Committee. Furthermore Stifel may have fiduciary or other relationships whereby Stifel may exercise voting power over securities of various persons, which securities may from time to time include securities of the Debtors or the members of the Committee. The Committee acknowledges that Stifel may exercise such powers and otherwise perform its functions in connection with such fiduciary or other relationships without regard to its or Miller Buckfire's relationship to the Debtors, Committee or the members of the Committee hereunder. Stifel will not provide any confidential information to any of its representatives whose job is to engage in securities transactions without appropriately restricting and monitoring any such representative's securities transaction activity in compliance with Stifel's internal policies and applicable securities laws.

f.   *Advertisements.* Miller Buckfire may place advertisements in financial and other newspapers and journals at its own expense describing its services to the Committee hereunder.

g.   *Jurisdiction, Choice of Law and Waiver of Trial by Jury.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES PERTAINING TO THIS AGREEMENT SHALL BE BROUGHT EITHER IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN NEW YORK COUNTY OR THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY WAIVES ANY OBJECTION BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND CONSENTS TO THE GRANTING OF SUCH LEGAL AND EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. EACH PARTY CONSENTS TO SERVICE OF PROCESS, IN ACCORDANCE WITH NEW YORK LAW, BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS, SUCH SERVICE TO BECOME EFFECTIVE 10 DAYS AFTER SUCH MAILING. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED.

h.    *Counterparts, Entire Agreement, Severability and Rules of Construction.* This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. This Agreement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. Words and phrases used in this Agreement shall be construed in accordance with section 102(1)-(7) and (9) of the Bankruptcy Code.

i.    *Binding Effect, Beneficiaries.* This Agreement shall be binding upon Miller Buckfire and the Debtors and their respective successors and assigns (including, in the case of the Debtors, any successor to all or a portion of the assets or businesses of the Company under a Plan). If the Debtors are comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed to be given by all of them and, as such, shall be binding on the Debtors. This Agreement is not intended to confer any rights upon any shareholder, creditor (other than the Committee and the class of creditors it represents), owner or partner of the Debtors, or any other person or entity not a party hereto other than those referenced in the Indemnification Provisions.

j.    *Amendments.* No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

*The remainder of this page is intentionally blank.*

6

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

We are pleased to accept this engagement and look forward to working with the Committee. Please confirm that this Agreement is in accordance with your understanding by signing and returning a copy to us.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____

Name: John D'Amico

Title: Managing Director


Accepted and Agreed to:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
of COMPUTE NORTH HOLDINGS, INC., *et al.*

_____

Asher Genoot
President, U.S. Data Mining Group, Inc. d/b/a US Bitcoin Corp.

Chair of the Official Committee of Unsecured Creditors of Compute North Holdings, Inc., *et al.*

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

We are pleased to accept this engagement and look forward to working with the Committee.  Please confirm that this Agreement is in accordance with your understanding by signing and returning a copy to us.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By:

_____

Name:

Title:


Accepted and Agreed to:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
of COMPUTE NORTH HOLDINGS, INC., *et al.*

_____
Asher Genoot
President, U.S. Data Mining Group, Inc. d/b/a US Bitcoin Corp.

Chair of the Official Committee of Unsecured Creditors of Compute North Holdings, Inc., *et al.*

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire as investment banker to the Committee, subject to the approval of the Bankruptcy Court, the Debtors agree to hold harmless Miller Buckfire and its affiliates, their respective past and present directors, officers, shareholders, partners, members, managers, agents, representatives, employees and controlling persons (collectively, the "*Indemnified Persons*"), to the fullest extent lawful, from and against all losses, claims, damages, liabilities and reasonable and documented out-of-pocket expenses incurred by them, joint or several, which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Committee or the Debtors in connection with this Agreement or (ii) actions or alleged actions taken or omitted to be taken by an Indemnified Person in connection with this Agreement with the Committee's or the Debtors' written consent or (B) are otherwise related to or arise out of this Agreement, Miller Buckfire's engagement under this Agreement or any transaction, or any actions taken or omitted to be taken by an Indemnified Person, the Committee or the Debtors in connection with this Agreement. The Debtors will not be responsible, however, for any losses, claims, damages, liabilities or expenses (i) which are finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of the person seeking indemnification hereunder or (ii) to the extent related to an action, claim, suit, investigation or proceeding (an "*Action*") that is brought by an Indemnified Person (or their respective affiliates and related parties) against one or more other Indemnified Persons (or their respective affiliates and related parties) (clauses (i) and (ii), "*Excluded Claims*"). If an Indemnified Person is not entitled to reimbursement and/or indemnification with respect to an Excluded Claim pursuant to the previous sentence, Miller Buckfire or such Indemnified Person will promptly repay to the Debtors (i) any indemnification payments made by the Debtors under this agreement with respect to such Excluded Claim and (ii) any expenses previously reimbursed by the Debtors under this Agreement related to such Excluded Claim.

After receipt by an Indemnified Person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Person will notify the Committee and the Debtors in writing of such complaint or of the commencement of such action or proceeding (such notice, the "*Indemnification Notice*"), but failure to so notify will relieve the Debtors from any liability which the Debtors may have hereunder only if, and solely to the extent that, such failure results in the forfeiture by the Debtors of rights and defenses, and will not in any event relieve the Debtors from any other obligation or liability that the Debtors may have to any Indemnified Person apart from these Indemnification Provisions. Upon the Debtors' and the Committee's receipt of an Indemnification Notice, the Debtors shall have the right to assume the defense of such action or proceeding. In the event, however, such Indemnified Person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Person and the Debtors, and such Indemnified Person reasonably concludes that there may be legal defenses available to it or other Indemnified Persons that are different from or in addition to those available to the Debtors, or if the Debtors fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Person may employ separate counsel to represent or defend it in any such action or proceeding and the Debtors will pay all reasonable, documented fees and out-of-pocket disbursements of such counsel. However, the Debtors will not be required to pay the fees or disbursements of more than one separate counsel (in addition to one local counsel) for all Indemnified Persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Debtors assumes, the Indemnified Person will have the right to participate in such litigation and to retain its own counsel at such Indemnified Person's own expense. The Debtors further agree that it will not, without the prior written consent of Miller Buckfire (such consent not to be unreasonably withheld, delayed or conditioned), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other Indemnified Person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each Indemnified Person hereunder from all liability arising out

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

of such claim, action, suit or proceeding.  The Debtors shall not be liable for any settlement of any Action effected without the Debtors' prior written consent (which consent shall not be unreasonably conditioned, withheld or delayed).

The Debtors agree that if any indemnification sought by an Indemnified Person pursuant to these Indemnification Provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these Indemnification Provisions, then (whether or not Miller Buckfire is the Indemnified Person), the Debtors and Miller Buckfire will contribute to the losses, claims, damages, liabilities and reasonable, documented, out-of-pocket expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Debtors, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement described in this Agreement, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Debtors, on the one hand, and Miller Buckfire, on the other hand, in connection therewith, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all Indemnified Persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire pursuant to Miller Buckfire's engagement described in this Agreement.  It is hereby agreed that for purposes of this paragraph, the relative benefits to the Debtors, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Debtors, claims holders or contract parties, as the case may be, pursuant to the Transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee(s) paid or proposed to be paid to Miller Buckfire in connection with such engagement.

The Debtors further agree that, except with respect to Excluded Claims, it will promptly reimburse Miller Buckfire and any other Indemnified Person hereunder for all reasonable, documented out-of-pocket expenses (including reasonable fees and out-of-pocket disbursements of counsel) as they are incurred by Miller Buckfire or such other Indemnified Person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other Indemnified Person is a party) and in enforcing these Indemnification Provisions.  However, if an Indemnified Person is not entitled to reimbursement with respect to an Excluded Claim as described in the second sentence of the first paragraph of these Indemnification Provisions, Miller Buckfire or such Indemnified Person will promptly repay to the Debtors any expenses previously reimbursed by the Debtors under this Agreement related to such Excluded Claim.

Solely for purposes of enforcing these Indemnification Provisions, the Debtors hereby consent to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these Indemnification Provisions is brought against Miller Buckfire or any other Indemnified Person.

These Indemnification Provisions shall apply to the related engagement described in this Agreement, activities relating to such engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

The Debtors further agree that neither Miller Buckfire nor any other Indemnified Person shall have any liability to the Debtors, or any person asserting claims on behalf of the Debtors, for or in connection with this Agreement, Miller Buckfire's engagement under this Agreement or any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Person, the Committee or the Debtors in connection therewith, except for losses, claims, damages, liabilities or reasonable, documented,

The Official Committee of Unsecured Creditors in *In re Compute North Holdings, Inc.,* et al.
As of October 11, 2022

out-of-pocket expenses incurred by the Debtors which are finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of such Indemnified Person.

The Debtors' indemnity, contribution, reimbursement and other obligations under these Indemnification Provisions (i) shall apply to any services provided by Miller Buckfire in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any liability that the Debtors may otherwise have, at common law or otherwise, to any Indemnified Person, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person or any person controlling any of them, (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement, and (v) shall be binding on the Debtors' fsuccessors and assigns.

* * *

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 10, 2022, I caused a copy of the foregoing document to be served by (i) the Electronic Case Filing System ("ECF") for the United States Bankruptcy Court for the Southern District of Texas on all parties in this case who have consented to service via ECF, and (ii) First Class U.S. Mail on the party listed below.

*/s/ Charles R. Gibbs*
Charles R. Gibbs

U.S. Attorney's Office
Southern District of Texas
Attn: Richard A. Kincheloe
1000 Louisiana, Ste. 2300
Houston, Texas 77002