**<u>Exhibit A</u>**

**Revised Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS OF COMPUTE NORTH LLC TO CRUSOE ENERGY SYSTEMS, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

Upon the motion [Docket No. 91] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving and authorizing the sale (the "Sale") of certain assets owned by Compute North LLC (the "Seller") (the "Acquired Assets") free and clear of all liens, claims, and encumbrances to the Purchaser, pursuant to that certain asset purchase agreement (the "Asset Purchase Agreement") substantially in the form attached hereto as **Exhibit 1**, (ii) approving the Asset Purchase Agreement in its entirety and authorizing the parties thereto to implement and consummate the transactions, including the Sale, contemplated thereunder; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having entered an order on October 24, 2022 [Docket No. 256]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Asset Purchase Agreement, as applicable.

(the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and leases (the "Assumption and Assignment Procedures") and the dates, deadlines, and bidding procedures (the "Bidding Procedures") with respect to, and notice of, the proposed sale of the Acquired Assets (as defined in the Asset Purchase Agreement); and the Court having conducted a hearing on the Motion on November 16, 2022 (the "Sale Hearing"); and this Court having reviewed the Motion and considered the arguments of counsel and the matters addressed at the Sale Hearing, including the testimony of Drake Harvey and Ryan Hamilton; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      The findings and conclusions herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.  To the extent of any conflict, the oral rulings shall control.

B.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Motion is a core proceeding under 28 U.S.C.

§157(b)(2).  The Court may enter this Order, which constitutes a final order, consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and applicable Bankruptcy Local Rules.

C.      On October 24, 2022, this Court entered the Bidding Procedures Order, and thereby (a) approved the Bidding Procedures, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof, (b) authorized the Debtors to enter into Asset Purchase Agreements with Stalking Horse Bidders; and (c) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts (the "Cure Amounts") and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order. The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

D.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Acquired Assets.  The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures. The Debtors did not receive any Qualifying Bids by the Bid Deadline for the Acquired Assets other than the Asset Purchase Agreement, and therefore, on November 14, 2022, filed and served the Notice of Successful Bidder for Certain Container Assets [Docket No. 477]. In accordance with the Bidding

Procedures, the Debtors, in consultation with the Consultation Parties, determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures) for the Acquired Assets. The Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

E.   As evidenced by the certificates of service filed by the Debtors with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, (i) the Motion, (ii) the Sale Hearing, (iii) the entry of this Order, (iv) the Asset Purchase Agreement, and (v) the transactions contemplated under the Asset Purchase Agreement, including the Sale, has been provided to all parties entitled thereto. Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

F.   The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (i) have full organizational power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been duly and validly authorized by all necessary organizational action), (ii) have full organizational power and authority necessary to consummate the transactions (including the Sale) contemplated by the Asset Purchase Agreement, (iii) have taken all organizational actions necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions

contemplated thereunder (including the Sale), and (iv) require no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, to consummate such transactions.

G.     The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of the Debtors' business judgment, (i) to sell the Acquired Assets on the terms and conditions set forth in the Asset Purchase Agreement and (ii) to consummate all transactions contemplated by the Asset Purchase Agreement.  All such actions or transactions relating to the Sale and/or contemplated by the Asset Purchase Agreement are appropriate exercises of the Debtors' business judgment.  Approval of the Asset Purchase Agreement (including all transactions and actions contemplated thereunder) at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.     The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest best offer reasonably and practically obtainable for the Acquired Assets under the circumstances, and (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Assets.

I.     The Debtors may sell the Acquired Assets free and clear of any and all liens, claims, interests, rights of setoff, recoupment, netting and deductions, any successor or successor-in-interest liability theory, and other encumbrances of any kind or nature whatsoever (if any, and except for the Assumed Liabilities, the "Encumbrances"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the Sale, the Motion, the Asset Purchase Agreement, any transaction contemplated thereunder, are deemed to have fully consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of

Encumbrances on the Acquired Assets, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the Sale (after giving effect to any closing costs payable by the Debtors) solely attributable to the Acquired Assets in which such holder alleges an Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Assets prior to the Sale shall not attach to the proceeds of the Sale.

J.      The Purchaser is not, and shall not be considered or deemed, a successor to any of the Debtors or their respective estates, and there is no continuity of enterprise between the Purchaser and any Debtor.  The Purchaser (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

K.      The Purchaser would not have entered into the Asset Purchase Agreement, and would not consummate the Sale and the transactions contemplated thereunder, if the Sale was not, except as otherwise provided in the Asset Purchase Agreement, free and clear of any and all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement and with respect to the Assumed Liabilities), be liable for any of such Encumbrances.

L.      It is essential that the Sale occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

M.     The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m).  All of the applicable requirements of such sections have been complied with in respect of the Sale.

N.     The terms of the Asset Purchase Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.  Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, director, officer, or representative of the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale or any transactions contemplated thereunder, or this Order to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

O.     Neither the Purchaser nor any of its affiliates, members, managers, principals, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not otherwise affiliated with the Debtors.

P.     The Purchaser has proceeded in good-faith and without collusion in all respects in connection with the Sale and the Asset Purchase Agreement.  The negotiation and execution of the Asset Purchase Agreement and related documents were conducted in good-faith and constituted an arm's-length transaction, and the Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors.  The Purchaser is therefore a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Asset Purchase

Agreement and this Order.  The Purchaser has otherwise proceeded in good-faith in connection with these chapter 11 cases and this proceeding.

Q.      In the absence of a stay pending appeal, the Purchaser may close the Sale and the other transactions contemplated by the Asset Purchase Agreement at any time after entry of this Order.  Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Sale and the transactions contemplated in the Asset Purchase Agreement are approved as set forth herein and the Debtors are authorized to consummate the Sale and the transactions contemplated in the Asset Purchase Agreement.

2.      All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and the entry of this Order, whether filed or stated on the record before this Court, which have not been withdrawn with prejudice, waived, settled, or preserved at the Sale Hearing, and all reservations of rights included in such objections, are hereby overruled and denied on the merits and with prejudice.

3.      Notice of the Motion, the Sale, the Asset Purchase Agreement, all transactions contemplated thereunder, the Sale Hearing, and the entry of this Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.      In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Sale, including all of the terms and conditions related thereto as set forth in the Asset Purchase Agreement, is hereby authorized and approved in all respects. The Asset Purchase Agreement,

together with all annexes, exhibits, and amendments thereto, including all actions and transactions contemplated therein and all of the terms and conditions thereof, is hereby authorized and approved in its entirety.  The Debtors are hereby authorized and directed to enter into the Asset Purchase Agreement and to perform all of their obligations thereunder.  The failure to specifically include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement, and any related agreements, and any amendments thereto as may be made by the parties thereunder in accordance with the Asset Purchase Agreement, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.      The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code as to all aspects of the Sale and the transactions under and pursuant to the Asset Purchase Agreement and this Order.  The transfer of the Acquired Assets to the Purchaser, and the related transactions to be consummated in accordance with the Asset Purchase Agreement, constitute a good-faith transaction entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Acquired Assets to the Purchaser, unless such authorization is duly stayed pending such appeal.

6.      The terms of the Asset Purchase Agreement (including regarding the Sale and any and all other transactions contemplated thereunder) were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.  The consideration provided by the Purchaser for the Acquired Assets under

the Asset Purchase Agreement is fair and reasonable, and the Sale and any transactions under the Asset Purchase Agreement may not be avoided under section 363(n) of the Bankruptcy Code.

7.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Debtors are authorized to and shall transfer the Acquired Assets to the Purchaser at the Closing (as defined in the Asset Purchase Agreement), and the Sale shall be, free and clear of any and all liens, claims, encumbrances, and interests of any kind or nature whatsoever, with any and all such valid or asserted liens, claims, encumbrances, and interests, if any, upon the Closing, attaching solely to the proceeds of the Sale ultimately attributable to the Acquired Assets against which the holders thereof assert an interest, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such liens, claims, encumbrances, and interests encumbered all or any portion of the Acquired Assets immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Assets prior to the Sale shall not attach to the proceeds of the Sale.

8.      In particular, the asserted liens of RK Mission Critical LLC ("RKMC") against the two containers identified in the Asset Purchase Agreement with serial numbers 151962 (B) and 151951 (the "Encumbered Containers") shall not attach to the Encumbered Containers but shall instead attach, upon the Closing, solely to the proceeds of the Sale in the amount of $281,272.72 attributable to the Encumbered Containers, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such liens encumbered all or any portion of the Encumbered Containers immediately prior to the Closing, subject to any claims, defenses, and

objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.

9.      The Acquired Assets shall be transferred to the Purchaser upon and as of the Closing, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets.  The Debtors are further authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement; (b) close the Sale as contemplated by the Asset Purchase Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement and any actions or transactions contemplated thereunder, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement and such other ancillary documents.

10.     Upon the Closing Date, and except as otherwise provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Asset Purchase Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated,

including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, claims arising under the federal Worker Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the United States Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, environmental liabilities, workers' compensation "experience rating," unemployment tax "contribution rating" rule or regulation, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing.

11.     All persons and entities holding liens or interests in the Acquired Assets arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Acquired Assets, such persons' or entities' liens or interests in and to the Acquired Assets.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record.

13.     If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, the Acquired Assets shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of liens or interests which the person or entity has or may assert with respect to the Acquired Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized to execute and file such statements, instruments,

releases, and other documents on behalf of such person or entity with respect to the Acquired Assets.

14.     This Order, whether or not filed, registered, or otherwise recorded (including by entry on this Court's docket), shall be effective as a conclusive determination of the transfer of title in the Acquired Assets to the Purchaser, and that all liens, claims, encumbrances, and interests of any kind or nature whatsoever existing as to all or a portion of the Acquired Assets have been unconditionally released, discharged, and terminated.  The Sale and this Order are and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

15.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim, or encumbrance, if any, on or against the Acquired Assets.

16.     All time periods set forth in this Order and the Asset Purchase Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit closing of the sale of the Acquired Assets.  This Order shall otherwise be effective immediately upon its entry.

18.     To the extent there is any inconsistency between the terms of the Asset Purchase Agreement, the Motion, and this Order, the terms of this Order shall govern.

19.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement, the Motion, and this Order.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization of the Debtors, or dismissing any Debtors' chapter 11 cases, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Order or the Asset Purchase Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' chapter 11 cases.  Any order granting

conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Order shall survive such conversion or dismissal.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Order and the terms and provisions of the Asset Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith).

26.     This Order and the Asset Purchase Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Acquired Assets, and, as applicable, any trustee that may be appointed in these chapter 11 cases or any superseding cases under chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order.

27.     For the avoidance of doubt, the Debtors have not sought authorization for, and this Order does not authorize, the sale of assets that are owned by non-Debtor third parties, and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

Houston, Texas
Dated:  _____, 2022

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

## **ASSET PURCHASE AGREEMENT**

[Execution Copy]

**ASSET PURCHASE AGREEMENT**

**BY AND BETWEEN**

**CRUSOE ENERGY SYSTEMS, LLC,**

**as Purchaser,**

**and**

**COMPUTE NORTH LLC,**

**as Seller**

**Dated as of November 14, 2022**

# TABLE OF CONTENTS

**Page**

ARTICLE I. PURCHASE AND SALE OF ASSETS; CONSIDERATION.................................1

Section 1.1    Purchase and Sale of Assets.............................................................1
Section 1.2    No Assumption of Liabilities...........................................................1

ARTICLE II. CONSIDERATION; DEPOSIT; CLOSING AND TERMINATION .....................2

Section 2.1    Consideration ..................................................................................2
Section 2.2    Deposit ............................................................................................2
Section 2.3    Payment of Purchase Price..............................................................2
Section 2.4    Closing .............................................................................................2
Section 2.5    Closing Deliveries by the Seller .....................................................2
Section 2.6    Closing Deliveries by the Purchaser ...............................................3
Section 2.7    Termination of Agreement...............................................................3
Section 2.8    Effect of Termination .....................................................................4

ARTICLE III. REPRESENTATIONS AND WARRANTIES OF THE SELLER ......................5

Section 3.1    Organization and Qualification.......................................................5
Section 3.2    Authority Relative to This Agreement.............................................5
Section 3.3    Conflicts; Consents and Approvals..................................................5
Section 3.4    Title and Condition of Purchased Assets .........................................6
Section 3.5    Brokers and Finders ........................................................................6
Section 3.6    ***NO OTHER REPRESENTATIONS***................................................6

ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF THE PURCHASER...............7

Section 4.1    Organization and Qualification.......................................................7
Section 4.2    Authority Relative to This Agreement.............................................7
Section 4.3    Conflicts; Consents and Approvals..................................................7
Section 4.4    Financial Capacity ..........................................................................8
Section 4.5    Brokers and Finders ........................................................................8
Section 4.6    Qualification ...................................................................................8
Section 4.7    Independent Investigation; Reliance By the Purchaser ....................8
Section 4.8    **RELIANCE/ACKNOWLEDGMENT** ...............................................8

ARTICLE V. COVENANTS AND AGREEMENTS .............................................................9

Section 5.1    Conduct of Seller ............................................................................9
Section 5.2    Taxes .............................................................................................10
Section 5.3    Insurance .......................................................................................10
Section 5.4    Confidentiality ..............................................................................10
Section 5.5    Publicity ........................................................................................11
Section 5.6    Further Assurances.........................................................................11

ARTICLE VI. CONDITIONS TO CLOSING ....................................................................12

Section 6.1    Conditions Precedent to the Obligations of the Purchaser and the Seller........12
Section 6.2    Conditions Precedent to the Obligations of the Seller ....................12

Section 6.3    Conditions Precedent to the Obligations of the Purchaser ..............................13

ARTICLE VII. ADDITIONAL DEFINITIONS ...........................................................13

Section 7.1    Certain Definitions ..............................................................................13
Section 7.2    Additional Defined Terms ...................................................................17

ARTICLE VIII. MISCELLANEOUS ...........................................................................17

Section 8.1    Payment of Expenses .........................................................................17
Section 8.2    Survival of Representations, Warranties and Covenants .................18
Section 8.3    Entire Agreement; Amendments and Waivers ...............................18
Section 8.4    Counterparts ....................................................................................18
Section 8.5    Governing Law ................................................................................19
Section 8.6    Jurisdiction, Waiver of Jury Trial ...................................................19
Section 8.7    Notices ............................................................................................20
Section 8.8    Binding Effect; Assignment ...........................................................21
Section 8.9    Severability ....................................................................................21
Section 8.10   Injunctive Relief .............................................................................21
Section 8.11   Third Party Beneficiaries ................................................................22
Section 8.12   Non-Recourse .................................................................................22
Section 8.13   Time of the Essence .......................................................................22
Section 8.14   Certain Interpretations ...................................................................22

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (as amended, supplemented, amended and restated or otherwise modified from time to time, this "Agreement"), dated as of November 14, 2022 (the "Execution Date"), by and between (a) Compute North LLC, a Delaware limited liability company (the "Seller"), and (b) Crusoe Energy Systems, LLC, a Delaware limited liability company (the "Purchaser").  Article VII contains definitions of certain terms used in this Agreement and also provides cross-references to certain terms defined elsewhere in this Agreement.

## RECITALS

WHEREAS, the Seller and certain of its Affiliates have filed voluntary cases (such cases, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"); and

WHEREAS, the Seller desires to sell, transfer, assign, convey and deliver to the Purchaser, and the Purchaser desires to purchase, acquire and accept from the Seller, all of the Seller's right, title and interest in and to the Purchased Assets in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, sections 105 and 363 of the Bankruptcy Code, all on the terms and subject to the conditions set forth in this Agreement and the Sale Order;

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

## ARTICLE I.

## PURCHASE AND SALE OF ASSETS; CONSIDERATION

Section 1.1   Purchase and Sale of Assets.  Pursuant to sections 105 and 363 of the Bankruptcy Code and on the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing, the Seller shall sell, transfer, assign, convey and deliver to the Purchaser, and the Purchaser shall purchase, acquire and accept from the Seller, free and clear of all Encumbrances (other than Permitted Encumbrances), all of the Seller's right, title and interest in, to and under all of the assets, properties, rights and interests expressly set forth on Schedule 1.1 attached hereto, as the same shall exist at the Closing (collectively, the "Purchased Assets"). Notwithstanding anything to the contrary in this Agreement or any of the Ancillary Agreements, in no event shall the Seller be deemed to sell, transfer, assign, convey or deliver to the Purchaser, and the Seller shall retain all right, title and interest to, in and under, any and all assets, properties, rights and interests of the Seller other than the Purchased Assets.

Section 1.2   No Assumption of Liabilities.  Except for the Transfer Taxes, the Purchaser shall not assume, or become liable for the payment or performance of, any Liabilities of or against the Seller of any kind or nature whatsoever.  For the avoidance of doubt, the Purchaser shall not be liable for any *ad valorem* Taxes that may have accrued as to the Purchased Assets that cover any period ending prior to the Closing Date.

**ARTICLE II.**

**CONSIDERATION; DEPOSIT; CLOSING AND TERMINATION**

Section 2.1    Consideration.  The aggregate consideration to be paid by the Purchaser to the Seller for the purchase of the Purchased Assets shall be cash in the amount of $1,547,000 (the "Purchase Price").  For the avoidance of doubt, the Purchase Price is the aggregate amount of consideration to be paid by the Purchaser to the Seller for the purchase of all of the Purchased Assets, but the parties hereto acknowledge and agree that the Purchase Price is divisible in equal amounts among each of the containers included in the Purchased Assets such that the Purchaser is paying approximately $140,636.36 per container.

Section 2.2    Deposit.  On October 28, 2022, the Purchaser made a deposit on the Purchase Price in an amount equal to $187,000 (the "Deposit").  The Deposit was made to Epiq Corporate Restructuring, LLC, acting as escrow agent (the "Escrow Agent"), pursuant to and in accordance with that certain Escrow Agreement of even date herewith by and among the Purchaser, the Seller, and the Escrow Agent (the "Escrow Agreement").

Section 2.3    Payment of Purchase Price.  On the Closing Date, the Purchaser shall pay, or cause to be paid, the Purchase Price *less* the Deposit (the "Cash Purchase Price") to the Seller by wire transfer of immediately available funds to the account or accounts of the Seller in accordance with written instructions delivered by the Seller to the Purchaser prior to the Closing Date, and the Purchaser and the Seller shall jointly instruct the Escrow Agent in writing (the "Joint Written Instructions") to release the Deposit to the Seller pursuant to the Escrow Agreement (it being understood and agreed that either party hereto shall be permitted to deliver the Joint Written Instructions to the Escrow Agent after such party receives an executed counterpart of the Joint Written Instructions from the other party hereto).

Section 2.4    Closing.  Upon the terms and subject to the conditions contained in this Agreement, the closing of the sale of the Purchased Assets contemplated by this Agreement (the "Closing") shall take place remotely via the exchange of electronic documents and signatures by electronic mail at 10:00 a.m. (New York Time) on a date that is no later than the second (2nd) Business Day following the date on which all of the conditions set forth in Article VI are satisfied or, to the extent permitted by applicable Law, waived in writing by the party entitled to waive the applicable condition (other than conditions that by their nature are to be satisfied at the Closing), or at such other place, date and/or time as the Purchaser and the Seller may mutually agree in writing.  The date on which the Closing actually occurs is referred to in this Agreement as the "Closing Date."

Section 2.5    Closing Deliveries by the Seller.  At or prior to the Closing, the Seller shall deliver, or cause to be delivered, to the Purchaser:

(a)    a bill of sale, in a form reasonably acceptable to and agreed by the Purchaser and the Seller (the "Bill of Sale"), duly executed by the Seller;

(b)    the Joint Written Instructions, duly executed by the Seller;

      (c)     the certificates required to be delivered pursuant to <u>Section 6.3(a)</u> and <u>Section 6.3(b)</u>; and

      (d)     a counterpart of each of the other Seller Ancillary Agreements required by this Agreement to be executed and delivered by the Seller at or prior to the Closing, duly executed by the Seller.

Section 2.6     <u>Closing Deliveries by the Purchaser</u>.  At or prior to the Closing, the Purchaser shall deliver, or shall cause to be delivered, to the Seller:

      (a)     the Cash Purchase Price;

      (b)     the Joint Written Instructions, duly executed by the Purchaser;

      (c)     the certificates required to be delivered pursuant to <u>Section 6.2(a)</u> and <u>Section 6.2(b)</u>; and

      (d)     a counterpart of each of the other Purchaser Ancillary Agreements required by this Agreement to be executed and delivered by the Purchaser at or prior to the Closing, duly executed by the Purchaser.

Section 2.7     <u>Termination of Agreement</u>.

This Agreement may be terminated at any time prior to the Closing as follows:

      (a)     by the mutual written consent of the Seller and the Purchaser at any time prior to the Closing;

      (b)     by the written notice of the Purchaser to the Seller, or by the written notice of the Seller to the Purchaser, in either case, if the Closing shall not have been consummated on or prior to December 2, 2022 (the "<u>Outside Date</u>"); <u>provided</u>, that the right to terminate this Agreement under this <u>Section 2.7(b)</u> shall not be available to the Purchaser or the Seller, as applicable, if the Purchaser or the Seller, as applicable, is then in material breach or violation of any of its representations, warranties, covenants or agreements set forth this Agreement;

      (c)     by the written notice of the Purchaser to the Seller, or by the written notice of the Seller to the Purchaser, in either case, if any Governmental Body, including the Bankruptcy Court, shall have enacted, issued, promulgated, enforced or entered any Law (including any Order) that permanently enjoins, restrains, prevents, makes illegal or otherwise prohibits the consummation of the transactions contemplated by this Agreement (any such Law, a "<u>Legal Restraint</u>") and such Legal Restraint has become final and nonappealable; <u>provided</u>, that the right to terminate this Agreement under this <u>Section 2.7(c)</u> shall not be available to the Purchaser or the Seller, as applicable, if the Purchaser or the Seller, as applicable, is then in material breach or violation of this Agreement and such breach or violation is the cause of the Legal Restraint; and

      (d)     by written notice of the Seller to the Purchaser, if all of the conditions set forth in <u>Sections 6.1</u> and <u>6.3</u> have been satisfied (other than conditions that by their nature are to

be satisfied at the Closing) or waived and the Purchaser fails to consummate the Closing on or prior to the date on which the Closing is required to have occurred pursuant to Section 2.4.

Section 2.8    Effect of Termination.

(a)    In the event of the valid termination of this Agreement pursuant to Section 2.7, this Agreement shall terminate and become null and void and of no further force or effect, the transactions contemplated by this Agreement shall be abandoned without further action of the parties hereto and there shall be no Liability hereunder on the part of the Seller or any of the other Seller Parties, or the Purchaser or any of the other Purchaser Parties; provided, that (i) the provisions of Section 2.7, this Section 2.8 and Article VIII, and any defined terms used in any such Section or Article, shall remain in full force and effect and shall survive the termination of this Agreement; and (ii) no such termination shall relieve any party hereto from liability for any material breach of this Agreement that occurred prior to such termination (including, without limitation, the Purchaser's failure to consummate the Closing upon satisfaction (or deemed satisfaction) or waiver of the conditions to Closing set forth in Sections 6.1 and 6.3 (other than those conditions which are to be satisfied only on the Closing Date)); provided, further that upon such termination, each of the provisions of the Confidentiality Agreement shall survive and remain in full force and effect for the longer of (A) the remainder of the term of survival applicable to such provision as set forth in the Confidentiality Agreement and (B) one (1) year following the date of such termination.  Any termination of this Agreement pursuant to Section 2.7 shall be effective on the date that written notice of such termination is given by the terminating party to the other party hereto in accordance with Section 8.7; provided, that in the case of any termination of this Agreement pursuant to Section 2.7(a), the date of termination shall be the date of termination set forth in the writing signed by the Purchaser and the Seller.

(b)    If the Seller terminates this Agreement pursuant to Section 2.7(d), then the Seller shall be entitled to disbursement of the Deposit from the Escrow Account as liquidated damages.  Nothing in this Section 2.8 or elsewhere in this Agreement shall be deemed to impair the right of any party hereto to bring any action or actions for specific performance, injunctive and/or other equitable relief (including the right of any party hereto to compel specific performance by another party hereto of its obligations under this Agreement) pursuant to Section 8.10 prior to the valid termination of this Agreement.

(c)    In the event of a termination of this Agreement pursuant to any provision of Section 2.7 (other than Section 2.7(d)), the Purchaser shall be entitled to disbursement of the Deposit.

(d)    In the event that this Agreement is terminated pursuant to Section 2.7 and the Seller or the Purchaser is entitled to receive the Deposit, then the Seller and the Purchaser shall deliver to the Escrow Agent a letter instructing the Escrow Agent to pay to the Seller or the Purchaser, as applicable, the Deposit from the Escrow Account and the distribution of the Deposit by the Escrow Agent shall be subject to the terms of the Escrow Agreement.

## ARTICLE III.

## REPRESENTATIONS AND WARRANTIES OF THE SELLER

Except as set forth in the Seller Disclosure Schedules, the Seller hereby makes the representations and warranties in this Article III to the Purchaser as of the Execution Date and as of the Closing Date (except with respect to representations and warranties made as of a particular date, which shall be deemed to be made only as of such date).

Section 3.1    Organization and Qualification.  The Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of its jurisdiction of organization.

Section 3.2    Authority Relative to This Agreement.  Subject to entry of the Sale Order by the Bankruptcy Court, the Seller has all requisite limited liability company power and authority to (a) execute and deliver this Agreement, (b) execute and deliver each of the Seller Ancillary Agreements, (c) perform its obligations hereunder and under each of the Seller Ancillary Agreements, and (d) consummate the transactions contemplated hereby and by each of the Seller Ancillary Agreements.  Subject to entry of the Sale Order by the Bankruptcy Court, the execution and delivery by the Seller of this Agreement and each of the Seller Ancillary Agreements, the performance by the Seller of its obligations hereunder and thereunder, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly authorized by all requisite action on the part of the Seller.  Subject to entry of the Sale Order by the Bankruptcy Court, (i) this Agreement has been, and at or prior to the Closing each of the Seller Ancillary Agreements will be, duly and validly executed and delivered by the Seller and (ii) assuming the due authorization, execution and delivery by the other parties hereto and to the Seller Ancillary Agreements, this Agreement constitutes, and each of the Seller Ancillary Agreements when so executed and delivered by the Seller will constitute, legal, valid and binding obligations of the Seller, enforceable against the Seller in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium and similar laws affecting creditors' rights and remedies generally, and subject to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at Law or in equity) (the "Bankruptcy Exceptions").

Section 3.3    Conflicts; Consents and Approvals.

(a)    Subject to the entry of the Sale Order by the Bankruptcy Court, none of the execution and delivery by the Seller of this Agreement or any of the Seller Ancillary Agreements, the consummation by the Seller of the transactions contemplated hereby or thereby, or the performance by the Seller of any of its obligations hereunder or thereunder will (i) conflict with or violate the Organizational Documents of the Seller, (ii) violate any Law applicable to the Seller or by which any Purchased Asset is bound or affected, or (iii) result in the imposition or creation of any Encumbrance (other than any Permitted Encumbrance) on any of the Purchased Assets other than, in the case of clauses (ii), and (iii), for any such conflicts, violations or Encumbrances that would not, individually or in the aggregate, reasonably be expected to materially and adversely affect the Purchased Assets, taken as a whole.

(b)      Assuming the accuracy of the representations and warranties of the Purchaser in <u>Section 4.3(b)</u>, no approval, Order or Permit from, consent by, or registration, declaration, notification or filing with, any Governmental Body is required on the part of the Seller in connection with the execution and delivery by the Seller of this Agreement or any of the Seller Ancillary Agreements, the performance by the Seller of any of its obligations hereunder or thereunder, or the consummation by the Seller of the transactions contemplated hereby or thereby, except for (i) the entry of the Sale Order by the Bankruptcy Court, and (ii) such other approvals, Orders, Permits, consents, registrations, declarations, notifications or filings, the failure of which to obtain, give or make would not, individually or in the aggregate, reasonably be expected to materially and adversely affect the Purchased Assets, taken as a whole.

Section 3.4      <u>Title and Condition of Purchased Assets</u>.  The Seller has good and valid title to, free and clear of any Encumbrances (except for Permitted Encumbrances), all of the Purchased Assets.  Upon the entry of the Sale Order by the Bankruptcy Court, the Seller will have the power and right to sell, assign, transfer, convey and deliver to the Purchaser good and valid title to, free and clear of any Encumbrances (except for Permitted Encumbrances), all of the Purchased Assets. The Purchased Assets are in reasonably good operating condition and repair for the purposes for which such Purchased Assets are used in the business of the Seller (normal wear and tear excepted).

Section 3.5      <u>Brokers and Finders</u>.  The Seller has not engaged any investment banker, broker, finder, consultant or intermediary who is entitled to any investment banking, brokerage, finder's or similar fee or commission in connection with this Agreement or any of the transactions contemplated hereby for which the Purchaser is or will become liable.

Section 3.6      ***NO OTHER REPRESENTATIONS***.  **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY THE SELLER IN THIS <u>ARTICLE III</u>, NEITHER THE SELLER, ANY AFFILIATES OF THE SELLER NOR ANY OTHER PERSON MAKES ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO THE SELLER, THE PURCHASED ASSETS, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY OF THE ANCILLARY AGREEMENTS, AND THE SELLER HEREBY EXPRESSLY DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES, WHETHER IMPLIED OR MADE BY THE SELLER, ANY AFFILIATE OF THE SELLER, OR ANY OF THEIR RESPECTIVE OFFICERS, MANAGERS, DIRECTORS, STOCKHOLDERS, MEMBERS, PARTNERS, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES.  EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY THE SELLER IN THIS <u>ARTICLE III</u>, THE SELLER EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, PROJECTION, FORECAST, STATEMENT OR INFORMATION MADE, COMMUNICATED OR FURNISHED (ORALLY OR IN WRITING) TO THE PURCHASER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES (INCLUDING ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN OR MAY BE PROVIDED TO THE PURCHASER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES BY ANY MANAGER, OFFICER, DIRECTOR, STOCKHOLDER, MEMBER, PARTNER, EMPLOYEE,**

**AGENT, CONSULTANT OR REPRESENTATIVE OF THE SELLER OR ANY OF ITS AFFILIATES).**

**ARTICLE IV.**

**REPRESENTATIONS AND WARRANTIES OF THE PURCHASER**

The Purchaser hereby makes the representations and warranties in this <u>Article IV</u> to the Seller as of the Execution Date and as of the Closing Date (except with respect to representations and warranties made as of a particular date, which shall be deemed to be made only as of such date).

Section 4.1    <u>Organization and Qualification</u>.    The Purchaser is a limited liability company, duly organized, validly existing and in good standing under the Laws of its jurisdiction of organization.

Section 4.2    <u>Authority Relative to This Agreement</u>.    The Purchaser has the requisite limited liability company power and authority to (a) execute and deliver this Agreement, (b) execute and deliver each of the Purchaser Ancillary Agreements, (c) perform its obligations hereunder and under each of the Purchaser Ancillary Agreements, and (d) consummate the transactions contemplated hereby and by each of the Purchaser Ancillary Agreements. The execution and delivery by the Purchaser of this Agreement and each of the Purchaser Ancillary Agreements, the performance by the Purchaser of its obligations hereunder and thereunder, and the consummation by the Purchaser of the transactions contemplated hereby and thereby, have been duly authorized by all requisite action on behalf of the Purchaser. This Agreement has been, and at or prior to the Closing each of the Purchaser Ancillary Agreements will be, duly and validly executed and delivered by the Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each of the Purchaser Ancillary Agreements when so executed and delivered will constitute, legal, valid and binding obligations of the Purchaser, enforceable against the Purchaser in accordance with their respective terms, subject to the Bankruptcy Exceptions.

Section 4.3    <u>Conflicts; Consents and Approvals</u>.

(a)    None of the execution and delivery by the Purchaser of this Agreement or any of the Purchaser Ancillary Agreements, the consummation by the Purchaser of the transactions contemplated hereby or thereby, or the performance by the Purchaser of any of its obligations hereunder or thereunder will (i) conflict with or violate the Organizational Documents of the Purchaser, (ii) assuming that all approvals, orders, Permits, consents, registrations, declarations, notifications and filings described in <u>Section 4.3(b)</u> have been made, given or obtained, as applicable, violate any Law applicable to the Purchaser or by which any of its properties or assets are bound or (iii) result in the imposition or creation of any Encumbrance on any property or asset of the Purchaser, other than, in the case of <u>clauses (ii)</u> and <u>(iii)</u>, such conflicts, violations or Encumbrances that would not, individually or in the aggregate, reasonably be expected to materially and adversely affect the Purchaser's ability to consummate the transactions contemplated by this Agreement.

(b)      No approval, Order or Permit from, consent by, or registration, declaration, notification or filing with, any Governmental Body is required on the part of the Purchaser in connection with the execution and delivery by the Purchaser of this Agreement or the Purchaser Ancillary Agreements, the performance by the Purchaser of any of its obligations hereunder or thereunder, or the consummation by the Purchaser of the transactions contemplated hereby or thereby, except for (i) the entry of the Sale Order by the Bankruptcy Court, and (ii) such approvals, Orders, Permits, consents, registrations, declarations, notifications or filings the failure of which to obtain, give or make would not, individually or in the aggregate, reasonably be expected to materially and adversely affect the Purchaser's ability to consummate the transactions contemplated by this Agreement.

Section 4.4      <u>Financial Capacity</u>.  The Purchaser (a) has, and at the Closing will have, sufficient internal funds (without giving effect to any unfunded financing regardless of whether any such financing is committed) to consummate the transactions contemplated by this Agreement and the Ancillary Agreements, (b) has, and at the Closing will have, the resources and capabilities (financial or otherwise) to perform its obligations hereunder and under the Purchaser Ancillary Agreements, and (c) has not incurred any obligation, commitment, restriction or Liability of any kind that would impair or adversely affect such funds, resources and capabilities.

Section 4.5      <u>Brokers and Finders</u>.   The Purchaser has not engaged any investment banker, broker, finder, consultant or intermediary who is entitled to any investment banking, brokerage, finder's or similar fee or commission in connection with this Agreement or the transactions contemplated hereby for which the Seller or any of its Affiliates or Representatives will become liable.

Section 4.6      <u>Qualification</u>.  To the knowledge of the Purchaser, there exist no facts or circumstances that would cause, or be reasonably expected to cause, the Purchaser and/or its Affiliates not to qualify as "good faith" purchasers under Section 363(m) of the Bankruptcy Code.

Section 4.7      <u>Independent Investigation; Reliance By the Purchaser</u>.  The Purchaser (directly or through its Affiliates or Representatives) is an informed and sophisticated purchaser, and has engaged expert advisors that are experienced in the evaluation and acquisition of assets and liabilities such as the Purchased Assets, as contemplated hereunder.  The Purchaser (directly or through its Affiliates or Representatives) has undertaken such investigation as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement and each of the Purchaser Ancillary Agreements, and the consummation of the transactions contemplated hereby or thereby.  The Purchaser confirms that the Seller has provided the Purchaser with the opportunity to ask questions of the officers and employees of the Seller and its Affiliates and to acquire additional information about the Purchased Assets.

Section 4.8      **RELIANCE/ACKNOWLEDGMENT.      NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT OR ANY OF THE ANCILLARY AGREEMENTS TO THE CONTRARY, THE PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY THE SELLER IN <u>ARTICLE III</u> OF THIS AGREEMENT: (I) NONE OF THE SELLER, ANY AFFILIATES OF THE SELLER OR ANY OTHER**

**PERSON IS MAKING ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, WITH RESPECT TO THE SELLER, THE PURCHASED ASSETS, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY OF THE ANCILLARY AGREEMENTS, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO THE CONDITION, MERCHANTABILITY, USAGE, SUITABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PURCHASED ASSETS, OR ANY PART THEREOF; (II) THE PURCHASER HAS NOT EXECUTED OR AUTHORIZED THE EXECUTION OF THIS AGREEMENT OR ANY OF THE ANCILLARY AGREEMENTS OR ENTERED INTO THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY IN RELIANCE UPON, AND HEREBY SPECIFICALLY DISCLAIMS RELIANCE UPON, ANY PROMISE, STATEMENT, PROJECTION, FORECAST, REPRESENTATION OR WARRANTY WHATSOEVER MADE OR OMITTED TO BE MADE TO THE PURCHASER OR ANY OF ITS AFFILIATES, ADVISORS, OFFICERS, EMPLOYEES, AGENTS OR REPRESENTATIVES, INCLUDING ANY SUCH PROMISE, STATEMENT, PROJECTION, FORECAST, REPRESENTATION OR WARRANTY AS TO THE CONDITION, VALUE, QUALITY OR PROSPECTS OF THE PURCHASED ASSETS, OR ANY PART THEREOF; (III) THE PURCHASED ASSETS ARE BEING TRANSFERRED "AS IS", "WHERE IS" AND "WITH ALL FAULTS"; AND (IV) NONE OF THE SELLER, ANY AFFILIATES OF THE SELLER OR ANY OTHER PERSON HAS MADE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, AS TO THE ACCURACY OR COMPLETENESS OF ANY PROJECTION, FORECAST, STATEMENT OR INFORMATION MADE, COMMUNICATED OR FURNISHED (ORALLY OR IN WRITING) TO THE PURCHASER OR ANY OF ITS AFFILIATES, ADVISORS, OFFICERS, EMPLOYEES, AGENTS OR REPRESENTATIVES IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING ANY OF THE FOREGOING MADE IN RESPONSE TO ANY DUE DILIGENCE REQUEST LIST OR MADE DURING ANY DUE DILIGENCE TELEPHONIC OR IN-PERSON MEETINGS), AND NONE OF THE SELLER, ANY AFFILIATES OF THE SELLER OR ANY OTHER PERSON WILL HAVE OR BE SUBJECT TO ANY LIABILITY TO THE PURCHASER OR ANY OTHER PERSON RESULTING FROM THE DISTRIBUTION TO THE PURCHASER OR ANY OF ITS AFFILIATES, ADVISORS, OFFICERS, EMPLOYEES, AGENTS OR REPRESENTATIVES OF, OR ANY SUCH PERSON'S USE OF OR RELIANCE ON, ANY SUCH PROJECTION, FORECAST, STATEMENT OR INFORMATION OR ANY ERRORS THEREIN OR OMISSIONS THEREFROM.**

ARTICLE V.

COVENANTS AND AGREEMENTS

Section 5.1    <u>Conduct of Seller</u>.   During the period from the Execution Date and continuing until the earlier of the termination of this Agreement in accordance with <u>Section 2.7</u> and the Closing Date, except (a) as required by the Bankruptcy Court, the Bankruptcy Code or other applicable Law, or (b) with the prior written consent of the Purchaser, the Seller shall (i) use commercially reasonable efforts to (A) operate and/or maintain the Purchased Assets in the ordinary course of business and in compliance with applicable Laws in all material respects, and

9

(B) maintain and keep the Purchased Assets in reasonably good operating condition and repair for the purposes for which such Purchased Assets are used in the business of the Seller (subject to normal wear and tear), (ii) not voluntarily permit any of the Purchased Assets to become subject to any Encumbrance, except for Permitted Encumbrances, and (iii) not sell, assign, license, transfer, convey, lease, surrender, relinquish, terminate or otherwise dispose of any of the Purchased Assets.

Section 5.2    Taxes.  Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use, recording or other similar Taxes that arise from the sale of the Purchased Assets under this Agreement or the transactions contemplated herein (all of the foregoing, the "Transfer Taxes"), as well as any related Tax Return preparation and filing costs, shall be borne and timely paid by the Purchaser.  Each Tax Return with respect to such Transfer Taxes will be prepared and timely filed by the Purchaser.  In the event that any such Tax Return requires execution by the Seller, the Seller shall promptly execute such Tax Return after receipt thereof from the Purchaser and deliver it to the Purchaser so long as such Tax Return was prepared in compliance with applicable Law.

Section 5.3    Insurance.  The Purchaser hereby acknowledges and agrees that, effective upon the Closing, all policies of, and binders evidencing, any form or type of insurance that are owned or maintained by the Seller or any of its Affiliates that cover or relate to the Seller or any of its assets, liabilities, employees, businesses or operations (such policies and binders, the "Seller Insurance Coverage") may be terminated or modified by the Seller or any of its Affiliates to exclude coverage of the Purchased Assets, and neither the Seller nor any of its Affiliates will be purchasing or otherwise acquiring any "tail" policy or other additional or substitute coverage for the foregoing.  Any refund, rebate, credit or other amount paid, distributed or returned by any insurance provider or other Person in respect of, or relating to, the Seller's or any of its Affiliates' termination or modification of any Seller Insurance Coverage shall be the property of the Seller or such Affiliate.

Section 5.4    Confidentiality.

(a)    The Purchaser shall, and the Purchaser shall cause its Representatives (as such term is defined in the Confidentiality Agreement) to, treat all nonpublic information obtained in connection with this Agreement and the transactions contemplated hereby as confidential in accordance with the terms of the Confidentiality Agreement.

(b)    Except as contemplated by Section 5.5, the Seller and the Purchaser will not, and the Seller and the Purchaser will cause their respective Affiliates and Representatives not to, disclose to any Person any information with respect to the legal, financial or other terms or conditions of this Agreement or any Ancillary Agreement or any of the transactions contemplated hereby and thereby.  The foregoing does not restrict the right of any party hereto or any of its Affiliates or Representatives to disclose such information (i) to its Affiliates and Representatives, (ii) as required by any Law or requested by any Governmental Body (including the Bankruptcy Court), (iii) as is necessary and proper in conjunction with the filing of any Tax Return with any Governmental Body, (iv) as is reasonably necessary in connection with the enforcement, exercise or assertion of any right, remedy or defense relating to this Agreement or any Ancillary Agreement or the transactions contemplated hereby or thereby, and (v) in the case of the Seller and its

10

Affiliates and Representatives, as may be necessary in connection with the Chapter 11 Cases (including disclosure in any notice or filing that the Seller is required to provide or make pursuant to the Bankruptcy Code or Order of the Bankruptcy Court) and/or the administration of the Seller's and/or its Affiliates' chapter 11 estates.  Each party will advise its Affiliates and Representatives with respect to the confidentiality obligations under this <u>Section 5.4(b)</u> and will be responsible for any breach or violation of such obligations by any such Persons.

Section 5.5    <u>Publicity</u>.  Unless otherwise required by or reasonably necessary to comply with applicable Law or Bankruptcy Court requirements, and except for disclosure of matters that become a matter of public record as a result of the Chapter 11 Cases and any filings or notices made with the Bankruptcy Court related thereto, each of the Seller and the Purchaser agree that it (a) shall communicate and consult with each other prior to making any public disclosure or statements with respect to this Agreement or the transactions contemplated hereby and (b) shall not issue, and it shall cause its respective Affiliates and Representatives not to issue, any public release or public announcement concerning this Agreement or the transactions contemplated hereby without the prior written consent of the other party.  Nothing in this Agreement shall restrict or prohibit the Seller or its Affiliates from communicating with their respective employees, customers, suppliers or other business relations.

Section 5.6    <u>Further Assurances</u>.

(a)    Subject to the terms and conditions of this Agreement and applicable Law, at all times prior to the earlier of the Closing and the termination of this Agreement in accordance with <u>Section 2.7</u>, the Seller and the Purchaser shall use their respective reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable Law to ensure that the conditions precedent to the other party's obligations hereunder to consummate the transactions contemplated hereby set forth in <u>Article VI</u> are satisfied and to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as soon as practicable, but in any event on or prior to the Outside Date, including using its reasonable best efforts to obtain all necessary waivers, consents, approvals and Orders (including entry of the Sale Order by the Bankruptcy Court) and effecting all necessary registrations and filings to consummate and make effective the transactions contemplated hereby.

(b)    Subject to the terms and conditions of this Agreement, neither the Seller nor the Purchaser shall take any action or refrain from taking any action the effect of which would be to delay or impede the ability of the Seller or the Purchaser to consummate the transactions contemplated by this Agreement (including taking any action or refraining from taking any action the effect of which is intended or would reasonably be expected to result in any of the conditions to any party's obligations to consummate the transactions contemplated hereby set forth in <u>Article VI</u> to not be satisfied) unless taking such action or refraining from taking such action is required by applicable Law.

(c)    The Purchaser shall use its best efforts to remove the Purchased Assets from the current location of the Purchased Assets in Granbury, Texas (the "<u>Specified Location</u>") no later than thirty (30) days following the Closing Date.  The Seller shall not be responsible or otherwise liable for any fees, costs or expenses relating to or arising from holding or maintaining any of the

11

Purchased Assets following the Closing (such fees, costs or expenses, the "Storage Fees"), and the Seller shall not be responsible or otherwise liable for any consequences or effects resulting from a failure to pay or incur any such fees, costs or expenses; *provided, however*, that (i) the Seller shall not charge or assess any Storage Fees against the Purchaser other than such Storage Fees charged to the Seller by a third party and (ii) the Seller shall not enter into an agreement with any third party as to Storage Charges without the consent of the Purchaser, which consent shall not be unreasonably withheld.  All risk of loss to the Purchased Assets shall pass to the Purchaser at the Closing and, following the Closing, the Seller shall have no Liability for any damage, destruction or other loss to the Purchased Assets (including any such damage, destruction or other loss caused by theft, vandalism, natural disasters, weather events, or other acts of God), except if such damage, destruction or other loss was directly caused by the willful and intentional acts of the Seller. Following the Closing, the Seller shall have no obligation to provide any security or protection for, or otherwise have any responsibility for the safe-keeping or custody of, any of the Purchased Assets.  At the request of the Purchaser following the Closing, the Seller shall request that the owner of the Specified Location allow the Purchaser to have reasonable access to the Specified Location for the purpose of removing the Purchased Assets from the Specified Location.  The Seller shall not be responsible for any costs incurred in connection with removing the Purchased Assets from the Specified Location, including transportation and shipment costs.  The Purchaser shall indemnify, defend and hold harmless the Seller Parties from and against any and all Liabilities incurred or suffered by any of the Seller Parties arising out of or resulting from the removal by the Purchaser or any of the other Purchaser Parties of any of the Purchased Assets from the Specified Location.

**ARTICLE VI.**

**CONDITIONS TO CLOSING**

Section 6.1    Conditions Precedent to the Obligations of the Purchaser and the Seller. The respective obligations of the Seller and the Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction or, to the extent permitted by applicable Law, joint written waiver by the Purchaser and the Seller, of each of the following conditions:

(a)    no Law (including any Order) (whether temporary, preliminary or permanent) that enjoins, restrains, prevents, makes illegal or otherwise prohibits the consummation of the transactions contemplated hereby shall be in effect; and

(b)    the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall not be subject to any stay.

Section 6.2    Conditions Precedent to the Obligations of the Seller.  The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction of each of the following conditions (any or all of which may be waived in writing by the Seller, in whole or in part, to the extent permitted by applicable Law):

(a)    the representations and warranties of the Purchaser contained in Article IV shall be true and correct in all material respects (without giving effect to any limitation or

qualification as to materiality set forth therein) as of the Closing Date as if made on and as of the Closing Date (other than for such representations and warranties that are made as of a specific date, which shall be so true and correct in all material respects only as of such specified date), and the Seller shall have received a certificate duly signed by an authorized person of the Purchaser, dated the Closing Date, certifying the foregoing;

(b)     the Purchaser shall have performed and complied in all material respects with all covenants, obligations and agreements required by this Agreement to be performed or complied with by the Purchaser on or prior to the Closing Date, and the Seller shall have received a certificate duly signed by an authorized person of the Purchaser, dated the Closing Date, certifying the foregoing;  and

(c)     the Purchaser shall have delivered, or caused to be delivered, to the Seller (or at the direction of the Seller) all of the items set forth in Section 2.6.

Section 6.3     Conditions Precedent to the Obligations of the Purchaser.  The obligations of the Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction of each of the following conditions (any or all of which may be waived in writing by the Purchaser in whole or in part to the extent permitted by applicable Law):

(a)     (i) the representations and warranties of the Seller contained in Article III that are qualified by a "materiality" limitation or qualification shall be true and correct in all respects as of the Closing Date as if made on and as of the Closing Date (other than for such representations and warranties that are made as of a specific date, which shall be so true and correct in all respects only as of such specified date), and (ii) the representations and warranties of the Seller contained in Article III that are not qualified by a "materiality" limitation or qualification shall be true and correct in all material respects as of the Closing Date as if made on and as of the Closing Date (other than for such representations and warranties that are made as of a specific date, which shall be so true and correct in all material respects only as of such specified date), and the Purchaser shall have received a certificate duly signed by an authorized person of the Seller, dated the Closing Date, certifying the foregoing;

(b)     the Seller shall have performed and complied in all material respects with all covenants, obligations and agreements required in this Agreement to be performed or complied with by the Seller on or prior to the Closing Date, and the Purchaser shall have received a certificate duly signed by an authorized person of the Seller, dated the Closing Date, certifying the forgoing;  and

(c)     the Purchaser shall have received all of the items set forth in Section 2.5.

## ARTICLE VII.

## ADDITIONAL DEFINITIONS

Section 7.1     Certain Definitions.  As used herein:

(a)     "Affiliate" means, with respect to any Person, any other Person that (either directly or indirectly) controls, is controlled by, or is under common control with the specified

Person, and shall also include (i) any Related Fund of such Person and (ii) in the case of a specified Person who is an individual, any Family Member or Personal Representative of such Person. The term "control" (including, with its correlative meanings, "controlling," "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of a Person (whether through ownership of securities, by Contract or otherwise).

(b)    "Ancillary Agreements" means, collectively, the Purchaser Ancillary Agreements and the Seller Ancillary Agreements.

(c)    "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City, New York are authorized or required by Law to be closed.

(d)    "Confidentiality Agreement" means the Confidentiality Agreement, dated as of October 5, 2022, by and between Compute North Holdings, Inc. and the Purchaser, as amended, supplemented or otherwise modified from time to time.

(e)    "Contract" means any contract, indenture, note, bond, lease, license, commitment or other legally enforceable agreement, instrument or arrangement.

(f)    "Encumbrance" means any encumbrance, charge, restrictive covenant or condition, easement, encroachment, servitude, pledge, security interest, mortgage, lease, deed of trust, option, right of use, first offer or refusal, hypothecation or lien (statutory or otherwise) or similar restriction, whether imposed by Contract or Law.

(g)    "Family Member" means, with respect to any individual, (i) any Related Person of such individual or (ii) any trust, limited partnership, limited liability company or other entity, the sole owners or beneficiaries of which are such individual and/or one or more of such individual's Related Persons.

(h)    "Governmental Body" means any applicable federal, state, provincial, local, municipal, or foreign government or any agency, bureau, board, commission, court, department, political subdivision, regulatory or administrative authority, tribunal or other instrumentality thereof.

(i)    "Laws" means all (i) federal, state, provincial, local, municipal, foreign or other laws, statutes, legislations, constitutions, common law, resolutions, rules, edicts, codes, regulations, restrictions, ordinances, proclamations, treaties, conventions and requirements of, or issued, promulgated, enforced or entered by, any Governmental Body, and (ii) Orders.

(j)    "Liability" means, as to any Person, any claim, debt, adverse claim, lien, liability, duty, responsibility, obligation, commitment, assessment, cost, expense (including reasonable attorneys' fees and reasonable costs of investigation and defense), loss, damage, expenditure, charge, fee, penalty, fine, contribution or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, ascertained or ascertainable, fixed, absolute or contingent, matured or unmatured, direct or indirect, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, vested or unvested,

due or to become due, vested or unvested, executory, determined, determinable, in contract, tort, strict liability, or otherwise, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed.

(k)     "Order" means any order, writ, judgment, injunction, decree, ruling, directive, determination or award made, issued or entered by any Governmental Body, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Chapter 11 Cases (including the Sale Order).

(l)     "Organizational Documents" means, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership or articles of organization, and including any certificates of designation for preferred stock or other forms of preferred equity) or which relate to the internal governance of such Person (such as by-laws, a partnership agreement or an operating, limited liability company or members agreement).

(m)     "Permits" means all permits, approvals, concessions, grants, franchises, licenses, clearances, registrations, variances, certifications, exemptions, endorsements, waivers and other authorizations issued by any Governmental Body.

(n)     "Permitted Encumbrances" means (i) Encumbrances for utilities or Taxes that are not yet due and payable or the validity or amount of which are being contested in good faith by appropriate proceedings or the payment or enforcement of which is stayed under the Bankruptcy Code or pursuant to an Order of the Bankruptcy Court, (ii) easements, rights of way, restrictive covenants, encroachments and other similar Encumbrances against any of the Purchased Assets that do not, individually or in the aggregate, adversely affect the operation of the applicable Purchased Asset in any material respect, (iii) applicable zoning Laws, building codes, land use restrictions and other similar restrictions imposed by Law (but not restrictions arising from a violation of any such Law), (iv) any Encumbrances created by this Agreement or any of the Ancillary Agreements or created by the actions of the Purchaser or its Affiliates, (v) any Encumbrances that are removed or released by operation of the Sale Order, (v) mechanics', carriers', workers', repairers', landlords' and similar Encumbrances arising or incurred in the ordinary course of business for amounts that are not yet due and payable or the validity or amount of which are being contested in good faith by appropriate proceedings or the payment or enforcement of which is stayed under the Bankruptcy Code or pursuant to an Order of the Bankruptcy Court, and (vi) other Encumbrances that do not would not, individually or in the aggregate, reasonably be expected to materially and adversely affect the Purchased Assets, taken as a whole.

(o)     "Person" means an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body or other entity or group.

(p)     "Personal Representative" means the legal representative (including a guardian, executor, administrator or conservator) of a deceased or incompetent Person that is an individual.

(q)      "Purchaser Ancillary Agreements" means, collectively, the Bill of Sale and each other certificate, agreement or document (other than this Agreement) that the Purchaser is required to execute and/or deliver pursuant to the terms of this Agreement.

(r)      "Purchaser Parties" means, collectively, (i) the Purchaser, (ii) each of the current or former Affiliates of the Purchaser, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

(s)      "Related Fund" means, with respect to any Person, any fund, account or investment vehicle that is controlled, advised or managed by (i) such Person, (ii) an Affiliate of such Person or (iii) the same investment manager, advisor or subadvisor that controls, advises or manages such Person or an Affiliate of such investment manager, advisor or subadvisor.

(t)      "Related Person" means, with respect to any individual, any of such individual's parents, spouse, siblings, children and grandchildren (by blood, adoption or marriage).

(u)      "Representatives" means, with respect to the Seller or the Purchaser (as the case may be), the officers, directors, managers, employees, auditors, counsel, professionals, advisors, accountants, agents, contractors and other representatives of (i) the Seller or the Purchaser (as applicable) or (ii) any of the Affiliates of the Seller or the Purchaser (as applicable).

(v)      "Sale Order" means an Order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Seller and the Purchaser, which shall, among other things, approve the sale of the Purchased Assets by the Seller to the Purchaser pursuant to this Agreement.

(w)      "Seller Ancillary Agreements" means, collectively, the Bill of Sale and each other certificate, agreement or document (other than this Agreement) that the Seller is required to execute and/or deliver pursuant to the terms of this Agreement.

(x)      "Seller Parties" means, collectively, (i) the Seller, (ii) each of the current or former Affiliates of the Seller, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

(y)      "Tax" and "Taxes" means any foreign or U.S. federal, state, county, or local income, transfer, sales, use, excise, franchise, profits, real and personal property, gross receipt, value added, stamp, license, capital gains, capital stock, production, business and occupation, disability, employment, payroll, severance, withholding or other taxes, assessments, charges, duties, fees, levies or other governmental charges of any kind whatsoever (whether payable directly or by withholding and whether or not requiring the filing of a Tax Return), including all interest, additions, surcharges, fees or penalties related thereto.

(z)      "Tax Return" means any return, report, information return, declaration, claim for refund or other information or document (including any schedule or related or supporting

16

information) filed or provided, or required to be filed or provided, with or to any Governmental Body with respect to Taxes (including in connection with the determination, assessment or collection of Taxes or the administration of any Law with respect to Taxes), including amendments thereto.

Section 7.2    <u>Additional Defined Terms</u>.  The following terms have the meanings set forth in the Sections set forth below:

| **Defined Term** | **Location** |
|---|---|
| Agreement | Preamble |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Bankruptcy Exceptions | 3.2 |
| Bill of Sale | 2.5(a) |
| Cash Purchase Price | 2.3 |
| Chapter 11 Cases | Recitals |
| Closing | 2.4 |
| Closing Date | 2.4 |
| Costs and Expenses | 5.6(c) |
| Deposit | 2.2 |
| e-mail | 8.7 |
| Escrow Agent | 2.2 |
| Escrow Agreement | 2.2 |
| Execution Date | Preamble |
| Joint Written Instructions | 2.3 |
| Legal Restraint | 2.7(c) |
| Outside Date | 2.7(b) |
| Post-Closing Covenants | 8.2 |
| Purchase Price | 2.1 |
| Purchased Assets | 1.1 |
| Purchaser | Preamble |
| Seller | Preamble |
| Seller Insurance Coverage | 5.3 |
| Specified Locations | 5.6(c) |
| Storage Fees | 5.6(c) |
| Transfer Taxes | 5.2 |

**ARTICLE VIII.**

**MISCELLANEOUS**

Section 8.1    <u>Payment of Expenses</u>.  Except as otherwise provided in this Agreement and whether or not the transactions contemplated hereby are consummated, each party hereto will bear its own costs and expenses (including investment advisory and legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby; <u>provided</u>, that all Transfer Taxes (as well as the costs and expenses incurred in connection with the preparation and filing of all Tax Returns with respect thereto) shall be borne solely by the Purchaser.

Section 8.2    Survival of Representations, Warranties and Covenants.    None of the representations, warranties, covenants or agreements in this Agreement and/or any of the Ancillary Agreements, or in any document, schedule, certificate, agreement or instrument delivered pursuant to or in connection with this Agreement and/or any of the Ancillary Agreements, including any rights arising out of any breach or violation of any such representations, warranties, covenants or other agreements, will survive the Closing, and all such representations, warranties, covenants and other agreements shall terminate and expire upon the occurrence of the Closing; provided, that each of the covenants and agreements set forth in this Agreement and/or any of the Ancillary Agreements which by their express terms are to be performed or complied with subsequent to the Closing Date (collectively, the "Post-Closing Covenants") and rights arising out of any breach or violation of any such Post-Closing Covenants shall survive the Closing in accordance with their terms.    In furtherance of the foregoing, each of the Seller and the Purchaser hereby waives, to the fullest extent permitted under applicable Law, any and all rights, claims, remedies and causes of action it may have against the other party hereto (including any rights, claims, remedies and causes of action arising under or based upon any federal, state, local or foreign statute, ordinance, rule, regulation or other Law) for any breach of any representation, warranty, covenant or obligation set forth in this Agreement and/or any of the Ancillary Agreements, or in any document, schedule, certificate, agreement or instrument delivered pursuant to or in connection with this Agreement and/or any of the Ancillary Agreements, except with respect to the Post-Closing Covenants.    At and at all times after the Closing, in no event shall the Purchaser, on the one hand, or the Seller, on the other hand, have any recourse against (i) the Seller or any of the Seller Parties, or (ii) the Purchaser or any of the Purchaser Parties, respectively, in each such case, with respect to any representation, warranty, covenant or agreement made by the Seller or the Purchaser, as applicable, in this Agreement or any of the Ancillary Agreements, except with respect to claims against the Seller or the Purchaser, as applicable, for breaches of Post-Closing Covenants.

Section 8.3    Entire Agreement; Amendments and Waivers.    This Agreement (including the schedules and exhibits hereto) and the Ancillary Agreements constitute the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings between the parties hereto with respect thereto.    Any provision of this Agreement may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by each of the Purchaser and the Seller, or in the case of a waiver, by the party against whom the waiver is to be effective.    The waiver by any party hereto of any provision of this Agreement or any breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision of this Agreement or of any other or subsequent breach of any provision of this Agreement.    No failure on the part of any party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder or otherwise shall operate as a waiver thereof nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Section 8.4    Counterparts.    For the convenience of the parties hereto, this Agreement and the Ancillary Agreements, and any amendments hereto or thereto, may be executed and delivered in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement, and to the extent signed and delivered by means of electronic signature (including signature via DocuSign or similar services), a photographic, photostatic, facsimile, portable document format (.pdf), or similar

reproduction of such signed writing using a facsimile machine or electronic mail shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto or to any Ancillary Agreement shall raise the use of electronic signature, a facsimile machine or electronic mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic mail as a defense to the formation or enforceability of a contract and each such party forever waives any such defense.

Section 8.5    Governing Law.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

Section 8.6    Jurisdiction, Waiver of Jury Trial.

(a)    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ANY AND ALL ACTIONS, CLAIMS, SUITS OR PROCEEDINGS, WHETHER IN LAW OR EQUITY, ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY AND EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT (OR ANY COURT EXERCISING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT) IN RESPECT OF ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING AND AGREES THAT IT WILL NOT BRING ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING IN ANY OTHER COURT; PROVIDED, HOWEVER, THAT IF THE CHAPTER 11 CASES ARE DISMISSED OR IF THE BANKRUPTCY COURT IS UNABLE TO HEAR ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING, THE DELAWARE COURT OF CHANCERY AND ANY STATE APPELLATE COURT THEREFROM WITHIN THE STATE OF DELAWARE (UNLESS THE DELAWARE COURT OF CHANCERY SHALL DECLINE TO ACCEPT JURISDICTION OVER A PARTICULAR MATTER, IN WHICH CASE, IN ANY DELAWARE STATE OR FEDERAL COURT WITHIN THE STATE OF DELAWARE) WILL HAVE SOLE JURISDICTION OVER ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, AND AGREES NOT TO ASSERT AS A DEFENSE, COUNTERCLAIM OR OTHERWISE, IN ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING, (A) ANY CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE NAMED COURTS FOR ANY REASON OTHER THAN THE FAILURE TO SERVE PROCESS IN ACCORDANCE WITH SECTION 8.7, (B) ANY CLAIM THAT IT OR ITS PROPERTY IS EXEMPT OR IMMUNE FROM JURISDICTION OF ANY SUCH COURT OR FROM ANY LEGAL PROCESS COMMENCED IN ANY SUCH COURT (WHETHER THROUGH SERVICE OF NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF JUDGMENT, EXECUTION OF JUDGMENT OR OTHERWISE) AND (C) TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT (I) THE ACTION, CLAIM, SUIT OR PROCEEDING IN SUCH COURT IS BROUGHT IN AN INCONVENIENT FORUM, (II) THE VENUE OF SUCH ACTION, CLAIM, SUIT OR PROCEEDING IS IMPROPER OR (III) THIS AGREEMENT OR ANY OTHER AGREEMENT

OR INSTRUMENT CONTEMPLATED HEREBY OR ENTERED INTO IN CONNECTION HEREWITH, OR THE SUBJECT MATTER HEREOF OR THEREOF, MAY NOT BE ENFORCED IN OR BY ANY SUCH COURT.  EACH PARTY HERETO AGREES THAT NOTICE OR THE SERVICE OF PROCESS IN ANY ACTION, CLAIM, SUIT OR PROCEEDING ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY, SHALL BE PROPERLY SERVED OR DELIVERED IF DELIVERED IN THE MANNER CONTEMPLATED BY SECTION 8.7.

(b)    EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

Section 8.7    Notices.  Except as otherwise expressly provided in this Agreement, all notices, requests, demands, consents, document deliveries and other communications under this Agreement shall be in writing and shall be deemed to have been duly given, provided, made or received (a) when sent by electronic mail ("e-mail"), (b) when delivered personally, (c) one (1) Business Day after deposit with an overnight courier service, or (d) three (3) Business Days after the date of mailing by certified or registered mail, return receipt requested, with postage prepaid, in any such case to the parties hereto at the following addresses or e-mail addresses (or at such other address or e-mail address for a party hereto as shall be specified by like notice to the other party hereto):

If to the Seller:

c/o Compute North Holdings, Inc.
7575 Corporate Way
Eden Prairie, MN 55344
Attn: Barry Coulby; Jason Stokes
Email: barry.coulby@computenorth.com; jason.stokes@computenorth.com; legal@computenorth.com

with a copy (which shall not constitute effective notice) to:

Paul Hastings LLP
200 Park Avenue
New York, NY 10166
Attn: Matthew Schwartz; Sayan Bhattacharyya
Email: mattschwartz@paulhastings.com; sayanbhattacharyya@paulhastings.com

If to the Purchaser:

> Crusoe Energy Systems LLC
> 1641 California Street, Suite 400
> Denver, CO 80202
> Attn:  Jamey Seely, General Counsel
> Email:  jseely@crusoeenergy.com

with a copy (which shall not constitute effective notice) to:

> Locke Lord LLP
> JPMorgan Chase Tower
> 600 Travis, Suite 2800
> Houston, TX 77002
>
> Attn: Elizabeth Guffy
> Email:  eguffy@lockelord.com

Section 8.8       Binding Effect; Assignment.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns, including, in the case of the Seller, any trustee or estate representative appointed in the Chapter 11 Cases.  No assignment of this Agreement or any rights, interests or obligations hereunder may be made by any party hereto (by operation of Law or otherwise) without the prior written consent of the other party hereto, and any attempted assignment without the required consents shall be void.

Section 8.9       Severability.  If any term, condition or other provision of this Agreement is held to be invalid, illegal or incapable of being enforced under any applicable Law in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of any other provision of this Agreement in such jurisdiction or affect the validity, legality or enforceability of any provision in any other jurisdiction and all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is not affected in a manner adverse to any party hereto.  Upon such determination that any term, condition or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to eliminate such invalidity, illegality or incapability of enforcement and to effect the original intent of the parties hereto as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

Section 8.10      Injunctive Relief.  The parties hereto acknowledge and agree that (a) irreparable damage would occur in the event that any of the provisions of this Agreement are not performed in accordance with their specific terms or are otherwise breached or threatened to be breached, and (b) an award of money damages would not be adequate to compensate the non-breaching party.  Accordingly, each of the parties hereto shall be entitled, in addition to any other rights and remedies existing in its favor at law or in equity, to equitable relief, an injunction or injunctions or Orders for specific performance to prevent breaches or threatened breaches of the provisions of this Agreement and to enforce its rights hereunder, without the necessity of proving the inadequacy of money damages as a remedy.  The right to equitable relief, including specific

performance and injunctive relief, shall exist in addition to and notwithstanding, and shall not be limited by, any other provision of this Agreement.  Each of the parties hereto hereby irrevocably waives any defense that a remedy at law is adequate and any requirement to obtain, furnish or post any bond, security or other instrument in connection with or as a condition to any actions instituted for injunctive relief, specific performance or other equitable remedies.  Each of the parties hereto hereby agrees not to assert that specific performance, injunctive and other equitable remedies are unenforceable, violate public policy, invalid, contrary to Law or inequitable for any reason.  The right of specific performance, injunctive and other equitable remedies is an integral part of the transactions contemplated by this Agreement and without that right, none of the parties hereto would have entered into this Agreement.

Section 8.11   <u>Third Party Beneficiaries</u>.  This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, shall give or be construed to give to any Person, other than the parties hereto and such permitted assigns, any legal or equitable benefit, claim, cause of action, remedy or right of any kind hereunder, except that each of the Seller Parties and the Purchaser Parties shall be a third party beneficiary of <u>Sections 2.8(a)</u>, <u>8.2</u> and <u>8.12</u>.

Section 8.12   <u>Non-Recourse</u>.  Except as expressly contemplated by this Agreement, no Purchaser Party (other than the Purchaser) and no Seller Party (other than the Seller) shall have any Liability under this Agreement or the Ancillary Agreements for any claim based on, in respect of, or by reason of, the transactions contemplated hereby or thereby.

Section 8.13   <u>Time of the Essence</u>.  Time is of the essence in the performance of each of the obligations of the parties hereto and with respect to all covenants and conditions to be satisfied by the parties in this Agreement and all documents, acknowledgments and instruments delivered in connection herewith.

Section 8.14   <u>Certain Interpretations</u>.

(a)   Unless otherwise expressly provided herein, for purposes of this Agreement, the following rules of interpretation shall apply:

(i)   All references in this Agreement to Articles, Sections, clauses, Schedules and Exhibits shall be deemed to refer to Articles, Sections, clauses, Schedules and Exhibits of or to this Agreement.

(ii)   All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(iii)   The table of contents and Article, Section and paragraph captions herein are for convenience of reference only, and shall not be deemed to limit or otherwise affect the meaning or interpretation of any of the provisions hereof.

(iv)    The words "include," "includes" and "including" and words of similar import, when used herein shall be deemed in each case to be followed by the words "without limitation" (regardless of whether such words or similar words actually appear).

(v)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is not a Business Day, the period in question shall end on the next succeeding Business Day. Any reference to "days" means calendar days unless Business Days are expressly specified.

(vi)    Any reference in this Agreement to "$" or "dollars" shall mean U.S. dollars.

(vii)    Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

(viii)    The words "herein," "hereinafter," "hereof" and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole and not merely to a subdivision or particular provision in which such words appear unless the context otherwise requires.

(ix)    The word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other thing extends, and such phrase shall not mean simply "if."

(x)    The word "will" shall be construed to have the same meaning and effect as the word "shall."

(xi)    The term "or" is disjunctive and not exclusive.

(xii)    The phrases "delivered" or "made available" and words of similar import, when used in this Agreement in reference to information or materials delivered or made available to the Purchaser, shall include information or materials that have been made available by the Seller in any "data room" (virtual or otherwise) to which the Purchaser has access (whether or not the Purchaser accesses such information or materials).

(b)    The parties hereto agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any Law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

(c)    Prior drafts of this Agreement or the fact that any clauses have been added, deleted or otherwise modified from any prior drafts of this Agreement shall not be construed in favor of or against any party on account of its participation in the negotiations and/or drafting of such prior drafts or be used as an aid of construction or otherwise constitute evidence of the intent of the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of such prior drafts.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

<u>**SELLER**</u>**:**

**COMPUTE NORTH LLC**

By: _____

Name:  Drake Harvey

Title:  President

[Signature Page to Asset Purchase Agreement]

**PURCHASER:**

**CRUSOE ENERGY SYSTEMS, LLC**

By:
Name: Jamey Seely
Title: General Counsel & Secretary

**Schedule 1.1**

**Description of Purchased Assets**

"Purchased Assets" means:

|     | Containers    | Address                                         | Unit No.[1]  |
| --- | ------------- | ----------------------------------------------- | ------------ |
| 1.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151962 (B)   |
| 2.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151729 (A)   |
| 3.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151729 (B)   |
| 4.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151725       |
| 5.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151749       |
| 6.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151880       |
| 7.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151893       |
| 8.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151892       |
| 9.  | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151946       |
| 10. | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151947       |
| 11. | CN2 Container | 1801 Mitchell Bend Highway, Granbury TX, 76048  | 151951       |

---

[1] Designations of "(A)" or "(B)" in certain Unit Nos. are included for the Seller's own record-keeping purposes and are not part of the actual Unit Nos. for the applicable containers.