```
                  UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF TEXAS (HOUSTON)


                                       .
IN RE:                                 .  Case No. 22-90273
                                       .  Chapter 11
COMPUTE NORTH HOLDINGS, INC.,          .
                                       .  515 Rusk Street
                                       .  Houston, TX 77002
             Debtor.                   .
                                       .  Tuesday, November 16, 2022
. . . . . . . . . . . . . . . . . . .  .  9:15 a.m.
```

     TRANSCRIPT OF ORDER (A) APPROVING DE MINIMIS ASSET SALE
       PROCEDURES; (B) APPROVING CERTAIN BIDDING PROCEDURES,
 ASSUMPTION, ASSIGNMENT, AND REJECTION PROCEDURES, AND THE FORM
  AND MANNER OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO
     ENTER INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE
  BIDDERS; AND (D) SCHEDULING A HEARING ON THE APPROVAL OF THE
 SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES,
  AS WELL AS THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
                CONTRACTS AND UNEXPIRED LEASES [256]
                BEFORE THE HONORABLE MARVIN ISGUR
                UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| For Crusoe Energy Systems, LLC: | Locke Lord<br>By:  ELIZABETH GUFFY, ESQ.<br>JP Morgan Chase Tower<br>600 Travis, Suite 2800<br>Houston, TX 77002<br>(713) 226-1328 |
|---|---|

TELEPHONIC APPEARANCES CONTINUED.

| Audio Operator: | Courtroom ECRO Personnel |
|---|---|
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46048<br>(855) 873-2223<br>www.accesstranscripts.com |

     Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For the Debtors: | Paul Hastings LLP<br>By: MATTHEW MICHELI, ESQ.<br>71 South Wacker Drive, Suite 4500<br>Chicago, IL 60606<br>(312) 499-6118 |
| For Veribi LLC: | Hoffman & Saweris, P.C.<br>By: ALAN SAWERIS, ESQ.<br>2777 Allen Parkway, Suite 1000<br>Riviana Building<br>Houston, TX 77019<br>(713) 654-9990 |
| For the Official Committee of Unsecured Creditors: | McDermott, Will & Emery<br>By: KRISTIN K. GOING, ESQ.<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br>(212) 547-5429 |
| For the United States Trustee: | Office of the United States Trustee<br>By: JAYSON B. RUFF, ESQ.<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>(713) 718-4650 |
| For TZ Capital Holdings, LLC: | Haines and Boone LLP<br>By: DAVID TRAUSCH, ESQ.<br>1221 McKinney Street, Suite 4000<br>Houston, TX 77010<br>(713) 547-2248 |
| For RK Mission Critical LLC: | Berg Hill Greenleaf & Ruscitti LLP<br>By: PATRICK M. HAINES, ESQ.<br>1712 Pearl Street<br>Boulder, CO 80302<br>(303) 402-1600 |
| For U.S. Digital Mining Texas: | Stichter Riedel Blain & Postler, P.A.<br>By: SCOTT A. STICHTER, ESQ.<br>110 East Madison Street, #200<br>Tampa, FL 33602<br>(813) 229-0144 |

```
 1          (Proceedings commence at 9:15 a.m.)
 2              Compute North Holdings, 22-90273.  If we can go ahead
 3  and get those that wish to speak in the Compute North Holdings
 4  case to come forward or to press "five star" on your phone.
 5          MS. GUFFY:  Morning, Your Honor, Elizabeth Guffy for
 6  Crusoe Energy Systems, the proposed purchaser.
 7          THE COURT:  You -- I got your name, and that was
 8  about it, so --
 9          MS. GUFFY:  Well, I will try to speak more
10  forcefully.
11          THE COURT:  Thank you.
12          MS. GUFFY:  Having a little trouble with the seasonal
13  weather change.  So Elizabeth Guffy with Locke Lord.  We
14  represent Crusoe Energy Systems, the proposed purchaser of
15  certain containers.
16          THE COURT:  Thank you.
17          Mr. Micheli.
18          MR. MICHELI:  Good morning, Your Honor.  Matt Micheli
19  from Paul Hastings, counsel to Compute North Holdings, Inc. and
20  its affiliated debtors.
21          THE COURT:  Good morning.
22          From (410) 258-2284.
23          MS. GOING:  Good morning, Your Honor.  Kristin Going,
24  McDermott Will & Emery, counsel for the -- proposed counsel for
25  the Committee.
```

1            THE COURT:  Good morning.

2            From (303) 402-1600.

3            MR. HAINES:  Good morning, Your Honor.  Patrick
4   Haines of Berg Hill Greenleaf Ruscitti for Creditor RK Mission
5   Critical, LLC.

6            THE COURT:  Morning.

7            From (813) 229-0144.

8            MR. STICHTER:  Yes.  Scott Stichter, Stichter Riedel
9   Blain & Postler, appearing for U.S. Digital.

10           THE COURT:  Good morning.

11           MR. STICHTER:  Good morning.  Thank you.

12           THE COURT:  Mr. Micheli, I think it's your motion.

13           MR. MICHELI:  Thank you, Your Honor.  The only matter
14  on the agenda for today is an additional asset sale filed
15  pursuant to the procedures that were approved by the Court a
16  few weeks back, which appear at Docket Number 256.  In
17  accordance with those bidding procedures, Your Honor, and sale
18  procedures that we received approval for, on Monday, the
19  debtors filed a notice of successful bidder at Docket Number
20  477 for the sale of certain modular container data center
21  assets to Crusoe Energy Systems LLC.  That notice of successful
22  bidder included the executed asset purchase agreement with
23  Crusoe and provides for an aggregate purchase price of
24  $1,547,000 for the sale of those 11 containers.  That works
25  out, Your Honor, to be $140,636.36 per container.

1          These containers, as the Court may recall from our
2    first-day hearings, are the modular containers that the debtors
3    used to develop data center facilities and house cryptocurrency
4    miners.  These containers were widely marketed for sale, but
5    the debtors only received one bid with respect to these
6    particular containers, and that was from Crusoe Energy.
7          Your Honor, we will offer some proffered evidence
8    today, and that will show that the debtors believe it is the
9    highest and best bid available for these container assets and
10   the only actionable bid that was received.
11         We did receive an objection from RK Mission Critical
12   LLC, which we believe is resolved in our discussions with RK
13   and the addition of language in the order, which I will touch
14   on later.  The resolution there, Your Honor, RK asserts a lien
15   in two of the 11 containers.  The debtors dispute that line,
16   but the parties have agreed the language which clarifies that
17   the lien will attach to the proceeds of those two containers,
18   and the proceeds of those two containers work out to be
19   $281,272.72.
20         I would also like to make a clarifying statement on
21   the record, Your Honor.  We received an informal comment from a
22   party, Alder Opportunity LP and certain of its related
23   entities, who filed objections to the overall sale process,
24   Your Honor, and I did want to confirm for Alder and on the
25   record that the sale of these containers to Crusoe does not

```
 1   implicate Alder Opportunity LP, Alder SV -- excuse me, Alder
 2   SPV I, LLC, Alder BTC Holdings, LLC, GH Effect, Inc. and
 3   Digital Alchemy, LLC, and those parties reserve all of their
 4   rights with respect to any future sales that the debtors
 5   propose.
 6             I will note, Your Honor, we filed an original
 7   proposed form of order, which was at Docket Number 478.  And
 8   late last night, we filed a revised proposed sale order
 9   addressing the resolution with RK, which appears at Docket
10   Number 490.
11             Your Honor we do have evidence that we would like to
12   proffer, but I will pause and answer any questions that the
13   Court may have or allow others to speak.
14             THE COURT:  Mr. Micheli, thank you.  Given those
15   announcements, is there any party that has any objection to the
16   approval of the order filed at ECF 490-1?
17       (No audible response)
18             THE COURT:  All right.  I'll find there are no
19   outstanding objections.  So Mr. Micheli, what kind of proof did
20   you want to put on?
21             MR. MICHELI:  So we would proffer the testimony of
22   Mr. Drake Harvey, who is the president of Compute North, LLC,
23   and also we would proffer the testimony of Mr. Ryan Hamilton,
24   who is with Jefferies, the debtors' investment banker.  I would
25   propose to read that proffered testimony in, Your Honor, if
```

1  that pleases the Court.
2          THE COURT:  Is there any objection to two proffers?
3     (No audible response)
4          THE COURT:  All right, go ahead, please, Mr. Micheli.
5          MR. MICHELI:  Starting with Mr. Harvey, Your Honor,
6  Mr. Harvey would testify that he is the president of Compute
7  North LLC and its debtor affiliates.  Mr. Harvey would testify
8  that he's generally familiar with the court's -- excuse me,
9  with Compute North's business operations, assets, liabilities,
10 day-to-day operations, and financial affairs, and he's been
11 actively involved in the debtors' restructuring efforts,
12 including the marketing and proposed sale of the purchase
13 containers.
14         Mr. Harvey would testify that the debtors are a
15 leader in the data center space and develop, own, and manage
16 data centers across the United States.  In addition to the
17 operation of those data centers, the debtors also have excess
18 inventory and equipment that they have made available for sale,
19 include modular data centers -- excuse me, modular containers
20 for data center housing.
21         Mr. Harvey would testify that the purchase containers
22 up for sale today consist of the 11 specific modular data
23 center containers set forth in the APA.
24         Mr. Harvey would testify that the debtors, in
25 conjunction with their advisors, considered the debtors'

1  financial condition and very limited liquidity and determined
2  that pursuing a sale of the debtors' assets, including the
3  purchase containers, presented the best available opportunity
4  to maximize value of the debtors' estates for the benefit of
5  all stakeholders.
6         Mr. Harvey would testify that the purchase containers
7  were marketed for sale in accordance with the sale process and
8  bidding procedures order that were entered by the Court, and
9  the debtors solicited bids from all interested parties with
10 respect to the purchase containers.
11        Mr. Harvey would testify that no other bids for the
12 purchase containers was received by the deadline except for the
13 bid submitted by Crusoe, as set forth in the asset purchase
14 agreement.  Mr. Harvey is not aware of any other prospective
15 purchaser who has indicated a desire to acquire the purchase
16 containers on more advantageous financial terms than those
17 offered by the purchaser pursuant to the asset purchase
18 agreement.
19        Mr. Harvey would testify that the asset purchase
20 agreement provides for the payment of a cash purchase price of
21 $1,547,000 upon the closing of the sale.  This payment will
22 provide needed liquidity for the debtors' estates, which will
23 benefit stakeholders and allow the debtors to continue the sale
24 process.
25        Mr. Harvey would testify that he believes the debtors

 1  have demonstrated good, sufficient, and sound business purposes
 2  and justifications for the sale of the purchase containers to
 3  the purchaser because such sale is necessary to preserve and
 4  maximize value of the debtors' estates.  He believes that the
 5  consideration provided by the purchaser pursuant to the asset
 6  purchase agreement constitutes fair and reasonable
 7  consideration for the purchase containers.  He also believes
 8  that the asset purchase agreement represents the highest and
 9  best offer for the purchase containers because it reflects the
10  only actual bid received for such assets throughout the sale
11  process.
12          Mr. Harvey would testify that he believes that the
13  approval of the asset purchase agreement, including all
14  transaction and actions contemplated thereunder, at this time
15  is in the best interest of the debtors, their estates, their
16  creditors, and other parties in interest.  He believes that the
17  terms of the asset purchase agreement were negotiated,
18  proposed, and entered into by the purchaser and the debtors
19  without collusion, in good faith, and from an arm's-length
20  bargaining position.
21          Mr. Harvey would testify that believes that the
22  debtors hold title to the purchase containers, and based upon
23  the advice of the debtors' advisors, he believes that the
24  purchase containers constitute property of the estates and that
25  title thereto is vested in the debtors' estates within the

1  meaning of Section 541 of the Bankruptcy Code.  The debtors
2  have full corporate power authority to execute the asset
3  purchase agreement and all other documents contemplated
4  thereby.  The debtors have full corporate power and authority
5  necessary to consummate the transactions contemplated by the
6  asset purchase agreement.  The debtors have taken or will take
7  all corporate actions necessary to authorize and approve the
8  asset purchase agreement and the consummation of the debtors'
9  transactions thereunder.  And the debtors require no additional
10 consents or approvals other than those expressly provided for
11 in the asset purchase agreement.
12         Mr. Harvey would testify that he believes that the
13 purchaser would not have entered into the asset purchase
14 agreement and would not have consummated the sale transactions
15 if the purchase containers were not, except as otherwise
16 provided in the asset purchase agreement and sale order, free
17 and clear of all encumbrances or if the purchaser
18 (indiscernible) in the future could be held liable for (audio
19 interference).
20         And finally, Mr. Harvey would testify that he
21 believes the sale of the purchase containers to the purchaser
22 is in the best interest of the debtors' estates and, based upon
23 the advice of debtors' advisors, satisfies all the applicable
24 requirements of the Bankruptcy Code and should be approved.
25         Your Honor, that concludes Mr. Harvey's proffered

1  testimony.

2           THE COURT: Thank you. Does anybody have any

3  questions for Mr. Harvey? Ms. Guffy, is that testimony

4  satisfactory to the purchaser?

5           MS. GUFFY: It is, Your Honor. And just in case

6  anybody gets a transcript of this, my clients name is Crusoe,

7  C-R-U-S-O-E, not Caruso, just so we've got that straight.

8           THE COURT: Thank you.

9           All right. And then for Mr. Hamilton's proffer,

10 Mr. Micheli.

11          MR. MICHELI: Yes, Your Honor.

12          So Mr. Hamilton would testify that he is the senior

13 vice president at Jefferies, LLC, and Jefferies, LLC is the

14 investment banker for the debtors retained in these cases.

15          Mr. Hamilton would testify that he is experienced

16 advising companies in financial restructuring and distressed

17 mergers and acquisitions, raising capital for troubled

18 companies, and representing debtors and creditor constituencies

19 in bankruptcy proceedings.

20          Mr. Hamilton would testify that ht's generally

21 familiar with the operations and financial performance of the

22 debtors, as Jefferies was first engaged by the debtors in

23 August of 2021, and he has been working closely with the

24 debtors since July of 2022.

25          Mr. Hamilton would testify that as a result of his

1  experience and familiarity with the debtors' operations and
2  financial performance, he understands the debtors' corporate
3  and capital structure, management, business operations, and
4  potential investor universe.  He's also been directly involved
5  in the matters leading up to the debtors' Chapter 11 filing and
6  the development of the bidding procedures and the debtors'
7  marketing and sale process.
8          Mr. Hamilton would testify that the debtors are a
9  leader in the data center space and develop, own, and manage
10 data centers across the United States.  In addition, the
11 debtors have -- also have excess inventory and equipment that
12 has been made available for sale, including the modular data
13 centers and certain other pad-mount transformers and main power
14 transformers.
15         Mr. Hamilton would testify that the purchase
16 containers consist of the 11 specific modular data center
17 containers that are set forth in the asset purchase agreement.
18         Mr. Hamilton would testify that the debtors entered
19 these cases with very limited liquidity and sought approval of
20 the sale process that would maximize the value of the debtors'
21 assets in the compressed timeline available to them.
22         Mr. Hamilton would testify that the purchase
23 containers were marketed for sale in accordance with the
24 bidding procedures order and the bidding procedures ordered by
25 this Court.  The debtors and their professionals afforded all

```
 1   potential bidders an opportunity to submit bids to acquire the
 2   assets, included these purchase containers.
 3           Mr. Hamilton would testify that no other bid for the
 4   purchase containers was received by the bid deadline except for
 5   the bids submitted by the purchaser as set forth in the asset
 6   purchase agreement, and the asset purchase agreement provides
 7   for, among other things, a cash purchase price of $1,547,000 to
 8   be paid to the debtors at closing.
 9           Mr. Hamilton would testify that based on his
10   experience as an investment banker, he believes that the asset
11   purchase agreement constitutes the highest and best offer for
12   the purchase containers and will thereby provide the greatest
13   possible recovery for the debtors' estates.  He also believes,
14   based on the foregoing sale process, that the consideration
15   provided by the purchaser pursuant to the asset purchase
16   agreement constitutes fair and reasonable consideration for the
17   purchase containers given the circumstances.
18           Mr. Hamilton would testify that he believes the asset
19   purchase agreement represents the highest and best offer for
20   the purchase containers because it reflects the highest and
21   only actionable bid received for such assets throughout the
22   sale process.
23           Mr. Hamilton would testify he believes that the
24   debtors, with the aid of their advisors, thoroughly marketed
25   the assets, including the purchase containers, under the
```

 1  circumstances and conducted the related sale process in good
 2  faith pursuant to the bidding procedures and the bidding
 3  procedures order.  HE believes that the terms of the asset
 4  purchase agreement were negotiated, proposed, and entered into
 5  by the purchaser and the debtors without collusion, in good
 6  faith, and from an arm's-length bargaining position.
 7          Mr. Hamilton would testify that he is not aware of
 8  any indication of fraud or collusion between any of the
 9  biddings that participated in the sale process or any similar
10  conduct that would taint the sale process or the sale of the
11  purchase containers to the purchaser.
12          Mr. Hamilton would testify that given the fact the
13  debtors received only one qualifying bid for the purchase
14  containers, he believes consideration being given under the
15  asset purchase agreement represents the highest and otherwise
16  best office -- offer for the purchase containers.
17          That concludes Mr. Hamilton's proffer, Your Honor.
18  Thank you.
19          THE COURT:  Thank you, Mr. Micheli.
20          Does any party have any questions for Mr. Hamilton?
21          Having concluded the evidentiary record, Ms. Going,
22  what is the Committee's position?
23          MS. GOING:  Thank you, Your Honor.  The Committee
24  conducted diligence around this sale, and specifically we
25  confirmed that no party has a lien or asserted any interest on

1  nine of the containers.  And thus, we're pleased that the
2  proceeds of the sale of nine of the containers will be
3  unencumbered assets of the estate.  And furthermore, that the
4  two containers that are being sold are being sold subject to
5  the rights of RK Mission Critical, we are satisfied that the
6  sale represents a highest and best value to the estate.  We're
7  pleased that it is bringing funds into the estate and further
8  that there are no additional expenses that will be incurred
9  upon the closing of these containers, that Crusoe will be
10 picking up the containers
11         THE COURT:  Thank you.  Does any party have any
12 objection to the form of order that was proposed at 490-1?
13      (No audible response)
14         THE COURT:  All right, I've signed the order, and I
15 will send it to docketing.
16         Before we leave this case, I think we've continued
17 part of your hearings until next week.  Is that right, Mr.
18 Micheli?
19         MR. MICHELI:  We have, Your Honor.  We reached out to
20 chambers and requested an additional sale hearing date for
21 Tuesday, November 22nd at 2 p.m., and the debtors expect that
22 hopefully later today, we'll be filing an additional sale for
23 consideration by the Court.  The debtors also conducted an
24 auction yesterday with respect to certain assets and expect
25 also to be filing a notice of successful bidder with respect to

1  those assets that we would request be considered at that
2  hearing on November 22nd, Your Honor.
3          THE COURT:  Go ahead and self-calendar it for then,
4  if you would, please.
5          MR. MICHELI:  Thank you, Your Honor.
6          THE COURT:  Thank you.
7          All right.  We're going to then go ahead and adjourn
8  the hearing in the Compute North case and go to our 9:15
9  hearing.  I know that we're running a little bit late this
10 morning, but we'll just take our time and take them one at a
11 time.
12         (Proceedings concluded at 9:32 a.m.)
13                          * * * * *
14                   **C E R T I F I C A T I O N**
15
16         I, Alicia Jarrett, court-approved transcriber, hereby
17 certify that the foregoing is a correct transcript from the
18 official electronic sound recording of the proceedings in the
19 above-entitled matter.
20
21
22 *[signature: Alicia F. Jarrett]*
23 _____
24 ALICIA JARRETT, AAERT NO. 428    DATE: November 14, 2022
25 ACCESS TRANSCRIPTS, LLC