**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket Nos. 91, 256 & 511** |

**DECLARATION OF RYAN HAMILTON**
**IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING**
**THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

I, Ryan Hamilton, make the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am a Senior Vice President at Jefferies LLC ("Jefferies"), a global investment banking firm with its principal offices at 520 Madison Avenue, 6th Floor, New York, New York 10022.

2.      I submit this declaration (this "Declaration") in support of (a) the motion [Docket No. 91] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, approval to sell all or substantially all or any subset of the Debtors' assets (collectively, the "Assets") free and clear of any liens, claims, and encumbrances, (b) the *Notice of Successful Bidder for Certain Assets* [Docket No. 511]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Foundry Notice of Successful Bidder") designating Foundry Digital LLC ("Foundry" or the "Foundry Purchaser"), based upon the Foundry Purchaser's bid set forth in that certain *Asset Purchase Agreement*, dated as of November 19, 2022, which is attached to the Foundry Notice of Successful Bidder as Exhibit A (the "Foundry Purchase Agreement"), as the Successful Bidder for the assets identified on Schedule 1.1 of the Foundry Purchase Agreement (the "Foundry Assets"), and (c) the proposed form of order filed contemporaneously herewith (the "Foundry Sale Order") approving the sale of the Foundry Assets to the Foundry Purchaser.

## QUALIFICATIONS

3.      I have advised companies in financial restructurings and distressed mergers and acquisitions, raised capital for troubled companies, and represented debtors and creditor constituencies in bankruptcy proceedings.  Before joining Jefferies in 2017, I was a vice president in the restructuring and finance group of Barclays Capital, Inc., which I joined in 2009. I have an MBA from the University of Chicago Booth School of Business, a JD from the University of Chicago Law School, and a BA from Emory University.

4.      On August 16, 2021, the Debtors engaged Jefferies as their investment banker under an engagement letter to explore mergers and acquisitions and capital markets financing alternatives.  On July 1, 2022, the scope of Jefferies engagement with the Debtors was expanded to include exploring restructuring alternatives.  As a result, I am familiar with the Debtors' corporate and capital structure, management, business operations, and potential investor universe.  In addition, in its capacity as the Debtors' investment banker, members of the Jefferies team and I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and in the development of the bidding procedures and the Debtors' marketing and sale process.

5.      As a professional retained by the Debtors in these chapter 11 cases, Jefferies is charging for services provided in this matter, but Jefferies is not being specifically compensated for this Declaration.  I am authorized to submit this Declaration on behalf of the Debtors.

6.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Jefferies team, the Debtors' management team, and the Debtors' other advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and my views based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

**THE MARKETING PROCESS AND PROPOSED SALES**

**A.      General Background**

7.      The Debtors are a leader in the data center space and develop, own, and manage data centers across the United States.  In addition to their operating and in development data center projects, the Debtors also have excess inventory and equipment that is available for sale, including modular data centers, pad mount transformers, and main power transformers.

8.      The Foundry Assets include, but are not limited to:  (a) all assets related to the Debtors' facilities located in (i) Big Spring, Texas, (ii) North Sioux City, South Dakota, and (iii) Minden, Nebraska; (b) all assets of Debtor CN Mining LLC; (c) all mining equipment of Compute North LLC, Compute North SD, LLC, Compute North Texas LLC, CN Mining LLC, and CN Minden LLC; (c) certain modular data center containers and padmount transformers; (d) all collateral under that certain *Equipment Finance and Security Agreement* by and between Foundry, as lender, and Compute North, LLC, as borrower, dated December 31, 2020 (the "Foundry Financing Agreement"), pursuant to which Foundry provided equipment financing for

3

certain digital currency mining equipment; and (e) the Debtors' intellectual property, including the MinerSentry software.

9.      The Debtors entered these chapter 11 cases with very limited liquidity and sought approval of a sale process that would maximize the value of the Debtors' Assets within the timeframe permitted by the Debtors' liquidity.  On October 24, 2022, Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, certain bidding procedures governing the proposed sale of the Debtors' Assets and certain procedures related to the assumption and assignment of executory contracts and unexpired leases, and the noticing of the same, in connection with a sale (the "Bidding Procedures").

**B.      The Marketing Process**

10.      At the direction of the Debtors, Jefferies began a formal marketing process in September 2022 with respect to a potential Sale of the Debtors' Assets.

11.      Since the commencement of these cases, Jefferies has continued to administer a postpetition marketing and sale process, including for the Foundry Assets, on behalf of the Debtors consistent with Bidding Procedures in an effort to maximize value for the Debtors' estates and creditors.  To date, the Debtors, with the assistance of Jefferies, solicited indications of interest from potential buyers, 75 of which executed non-disclosure agreements and were provided access to a dataroom containing confidential information regarding the Debtors and their business and Assets, including the Foundry Assets.  Accordingly, the Debtors and their professionals have afforded potential bidders an opportunity to submit bids to acquire the Assets, including the Foundry Assets.

C.      **Foundry Purchase Agreement and Sale**

12.      After the foregoing marketing and sale process, the Debtors received multiple bids across their various pools of assets by the Bid Deadline for assets, including a bid from Foundry for all of the Foundry Assets, consisting of $5,000,000 in cash, a credit bid of $8,969,845 plus additional obligations under the Foundry Financing Agreement, and the assumption of certain liabilities (the "Initial Foundry Bid").  Except for the Initial Foundry Bid, the Debtors received no other bids for all of the Foundry Assets.  Significantly, out of all of the Foundry Assets included in the Initial Foundry Bid,[3] the Debtors received bids from other bidders for only three categories of the Foundry Assets—the MinerSentry software, the assets of CN Minden LLC and cryptocurrency miners owned by CN Mining LLC.  Specifically, one such bid offered a total purchase price of $363,450 for certain limited assets, of which $117,450 was allocated to the MinerSentry software.  The second such bid related primarily to the assets of a joint venture that the Debtors own, which are unrelated to the Purchased Assets, but also included the MinerSentry software without allocating a specific amount of the purchase price for MinerSentry.  The Debtors received another bid related to the assets of CN Minden LLC which overlapped with the Initial Foundry Bid but that overlapping bid was only in the amount of $500,000.  The Debtors also received a bid to purchase 495 miners owned by CN Mining LLC for $400,000.

13.      Following the Debtors' review of the bids submitted by the Bid Deadline, the Debtors and their advisors, in consultation with the Consultation Parties, negotiated with

---

[3]     In addition to the MinerSentry software, the Initial Foundry Bid also sought to purchase, among other things, certain of the Debtors' containers.  Other bids received by the Bid Deadline also sought to purchase a number of the Debtors' containers, but because the Initial Foundry Bid did not specify particular containers and the Debtors have sufficient containers available to sell to other bidders based on bids received, the Debtors do not believe that consummating the Foundry Sale will prohibit them from also pursuing other bids with respect to container sales.

Foundry to improve the terms of the Initial Foundry Bid.  In response, Foundry informed the

Debtors and their advisors that it would be willing to increase the cash purchase price offered in

the Initial Foundry Bid, which resulted in a cash purchase price in the amount of $5,170,000, of

which $4,000,000 in cash would be paid at the Closing (as defined in the Foundry Purchase

Agreement) with respect to the Foundry Assets (other than the Minden Purchased Assets (as

defined in the Foundry Purchase Agreement)) and $1,170,000 in cash would be paid at the

Minden Closing[4], if any, in each case, subject to the terms and conditions of the Foundry

Purchase Agreement.  Due to, among other things, the limited overlap with other bids, the

absence of any other bids (individually or collectively) that presented similar, or higher and

better, value to that set forth in the Foundry Purchase Agreement, the additional value that would

be realized by the Debtors and their estates based on the Foundry Purchase Agreement, and the

increased certainty of closing that the Foundry Purchase Agreement presents (as compared to

pursuing transactions with multiple purchasers for a subset of the Foundry Assets), the Debtors,

in consultation with the Consultation Parties, determined that (a) the Foundry Purchase

Agreement constitutes the highest and best offer for the Purchased Assets and (b) designating the

Foundry Purchase Agreement as the Successful Bid is a sound exercise of the Debtors' judgment

and is in the best interests, and maximizes the value, of the Debtors' estates.  Specifically, the

Debtors, in consultation with the Consultation Parties, concluded that the potential value that

could be obtained from subjecting the Debtors' MinerSentry asset, the assets of CN Minden LLC

and the cryptocurrency miner assets owned by CN Mining LLC to an auction was minimal, as

the only remaining actionable bid (other than Foundry's bid) for MinerSentry allocated only

$117,450 for such asset, the only actionable bid (other than Foundry's bid) for the assets of CN

---

[4]    "Minden Closing" has the meaning ascribed to that term in the Foundry Purchase Agreement.  The Minden
     Closing relates to the purchase of the Minden Purchased Assets and the assumption of the Minden Assumed
     Liabilities (as defined in the Foundry Purchase Agreement).

Minden LLC was for $500,000, and the only actionable bid (other than Foundry's bid) for the cryptocurrency miners owned by CN Mining LLC was for $400,000, whereas the Foundry Purchase Agreement would provide the estates with an immediate payment of $4,000,000 in cash, plus a potential additional payment of $1,170,000 in cash if the Minden Closing occurs, plus assumption of the Assumed Liabilities (as defined in the Foundry Purchase Agreement). Indeed, no other bidder offered to purchase all of the Foundry Assets or offered the consideration for such assets set forth in the Foundry Purchase Agreement. Further, the Debtors, in consultation with the Consultation Parties, determined that any additional incremental value that could have been obtained at an auction for MinerSentry, the assets of CN Minden LLC or the cryptocurrency miners owned by CN Mining LLC would have been greatly outweighed by the loss of value the Debtors' estates would have incurred if Foundry determined not to proceed with the Foundry Purchase Agreement given that Foundry's offer was contingent on acquiring all of the Foundry Assets, including MinerSentry, CN Minden LLC assets and the cryptocurrency miners owned by CN Mining LLC. As a result, the Debtors, in consultation with the Consultation Parties, determined that the Foundry Purchase Agreement presented the highest and best offer for the Foundry Assets, and it was in the best interest of the Debtors and their estates to declare the Foundry Purchase Agreement as the Successful Bid for, and to not proceed with the Auction with respect to, the Foundry Assets.

14.     Pursuant to the Bidding Procedures Order and the Bidding Procedures, on November 19, 2022, the Debtors filed the Foundry Notice of Successful Bidder, advising parties in interest that the Debtors, in consultation with the Consultation Parties, designate the Foundry Purchaser as the Successful Bidder for the Foundry Assets and will seek approval of the Foundry

Sale Order approving the Foundry Purchase Agreement at a hearing to be held on November 22, 2022 at 2:00 p.m. (prevailing Central Time).

## THE FOUNDRY PURCHASE AGREEMENT IS THE BEST AVAILABLE TRANSACTION WITH RESPECT TO THE FOUNDRY ASSETS

15.     Based on the foregoing marketing and sale process and my experience as an investment banker, I believe that the Foundry Purchase Agreement constitutes the highest and best offer for the Foundry Assets and should therefore provide the greatest possible recovery for the Debtors' estates.  I also believe, based on the foregoing sale process, that the consideration provided by the Foundry Purchaser pursuant to the Foundry Purchase Agreement constitutes fair and reasonable consideration for the Foundry Assets.  I also believe that the Foundry Purchase Agreement represents the highest and best offer for all of the Foundry Assets because it provides the highest consideration for the Foundry Assets, reduces uncertainty of closing associated with pursuing multiple sales to multiple buyers, and no other potential buyer presented an offer on terms more favorable than those in the Foundry Purchase Agreement.  As noted above, for among other reasons, proceeding to an auction on the MinerSentry software, the assets of CN Minden LLC, and the cryptocurrency miners owned by CN Mining LLC would not be value maximizing or in the best interest of the Debtors' estates because any incremental value that could have been gained from such an auction would not outweigh the value to the Debtors' estates from the sale of the numerous other assets included in the Foundry Purchase Agreement—assets for which the Debtors received no other bids and that would not be sold absent the inclusion of all of the Foundry Assets in the Foundry Purchase Agreement.

16.     I further believe that the releases provided for in the Foundry Sale Order are necessary to obtain the Foundry Purchaser's approval of the Foundry Purchase Agreement.  It is my belief that the Foundry Purchaser would not have entered into the Foundry Purchase

8

Agreement, and will not consummate the sale and the transactions contemplated thereunder, without the releases set forth therein and in the Foundry Sale Order.

## **GOOD FAITH**

17.     I believe that the Debtors, with the aid of their advisors, thoroughly marketed the Assets, including the Foundry Assets, under the circumstances, and conducted the related sale process in good faith pursuant to the Bidding Procedures and the Bidding Procedures Order. Based on my involvement in the foregoing sale process, I also believe that the terms of the Foundry Purchase Agreement (including all transactions contemplated therein) were negotiated, proposed, and entered into by the Foundry Purchaser, on the one hand, and the Debtors, on the other hand, without collusion, in good-faith, and from arm's-length bargaining positions.

18.     Finally, I am not aware of any indication of fraud or collusion between any of the bidders that participated in the sale process, or any similar conduct that would taint the sale process or the sale of the Foundry Assets to the Foundry Purchaser.

## **CONCLUSION**

19.     Given the above described marketing process, and the diligence conducted by the potential bidders, I believe that the Foundry Assets have been thoroughly marketed under the circumstances.  Further, I believe that (a) the consideration being provided under the Foundry Purchase Agreement for the Foundry Assets represents the greatest available recovery to the Debtors and their estates for such assets, and (b) the Foundry Purchase Agreement represents the highest and otherwise best offer for the Foundry Assets.

*[Remainder of Page Intentionally Left Blank]*

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 22, 2022
      New York, New York

                                   Respectfully submitted,

                                   */s/ Ryan Hamilton*
                                   Ryan Hamilton
                                   Senior Vice President
                                   Jefferies LLC