UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket Nos. 91, 256 & 511 |

**DECLARATION OF DRAKE HARVEY
IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING
THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

I, Drake Harvey, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the President of Compute North LLC and the other above-captioned debtors and debtors in possession (collectively, "Compute North" or the "Debtors").

2. I submit this declaration (this "Declaration") in support of (a) the motion [Docket No. 91] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, approval to sell all or substantially all or any subset of the Debtors' assets (collectively, the "Assets") free and clear of any liens, claims, and encumbrances, (b) the *Notice of Successful Bidder for Certain Assets* [Docket No. 511] (the "Foundry Notice of Successful Bidder") designating Foundry Digital LLC ("Foundry" or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the "Foundry Purchaser"), based upon the Foundry Purchaser's bid set forth in that certain *Asset Purchase Agreement*, dated as of November 19, 2022, which is attached to the Foundry Notice of Successful Bidder as Exhibit A (the "Foundry Purchase Agreement"), as the Successful Bidder for the assets identified on Schedule 1.1 of the Foundry Purchase Agreement (the "Foundry Assets" or "Purchased Assets"), and (c) the proposed form of order filed contemporaneously herewith (the "Foundry Sale Order") approving the sale of the Foundry Assets to the Foundry Purchaser.

## QUALIFICATIONS

3. I was appointed President of Compute North in September 2022, and prior to that appointment I served as Compute North's Chief Operating Officer. In my capacity as President of Compute North, I am generally familiar with Compute North's business, operations, assets, liabilities, day-to-day operations, and financial affairs and I have been actively involved in the Debtors' restructuring efforts, including the marketing and proposed sales of the Foundry Assets.

4. Prior to joining Compute North in April 2021, I held leadership positions in telecommunications, technology, and SaaS businesses, and also have experience leading startup companies. I hold a BS in Business Administration from the University of Delaware.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## BACKGROUND ON THE SALE PROCESS AND THE FOUNDRY ASSETS

6. The Debtors are a leader in the data center space and develop, own, and manage data centers across the United States. In addition to their operating and in-development data center

2

projects, the Debtors also have excess inventory and equipment that is available for sale, including modular data centers, pad mount transformers, and main power transformers.

7. The Foundry Assets include, but are not limited to: (a) all assets related to the Debtors' facilities located in (i) Big Spring, Texas, (ii) North Sioux City, South Dakota, and (iii) Minden, Nebraska; (b) all assets of Debtor CN Mining LLC; (c) all mining equipment of Compute North LLC, Compute North SD, LLC, Compute North Texas LLC, CN Mining LLC, and CN Minden LLC; (c) certain modular data center containers and padmount transformers; (d) all collateral under that certain *Equipment Finance and Security Agreement* by and between Foundry, as lender, and Compute North, LLC, as borrower, dated December 31, 2020 (the ("Foundry Financing Agreement"), pursuant to which Foundry provided equipment financing for certain digital currency mining equipment; and (e) the Debtors' intellectual property, including the MinerSentry software.

8. Prior to the Petition Date, the Debtors, with the assistance of their advisors, evaluated available alternatives in light of the Debtors' financial condition, including potential scenarios and transactions with respect to the Foundry Assets. Following the Petition Date, and in light of the Debtors' very limited available liquidity, the Debtors, with the assistance and advice of their advisors, determined that pursuing a sale of the Assets, including the Foundry Assets, presented the best available opportunity to maximize the value of the Debtors' estates for the benefit of all stakeholders. On October 24, 2022, Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, certain bidding procedures governing the proposed sale of the Debtors' Assets (the "Bidding Procedures"). The Foundry Assets, along with all of the Debtors' other Assets, were marketed for sale in accordance with the

Bidding Procedures Order and the Bidding Procedures, and the Debtors, with the assistance of their advisors, solicited bids from all interested parties.

## THE PROPOSED SALES

9.  I have reviewed with the Debtors' advisors the multiple bids across the Debtors' various pools of assets that were submitted by the Bid Deadline, including a bid from Foundry for all of the Foundry Assets consisting of $5,000,000 in cash, a credit bid of $8,969,845 plus additional obligations under the Foundry Financing Agreement, and the assumption of certain liabilities (the "Initial Foundry Bid").

10. Except for the Initial Foundry Bid, the Debtors received no other bids for all of the Foundry Assets. Significantly, out of all of the Foundry Assets (which includes the Debtors' proprietary MinerSentry software) included in the Initial Foundry Bid,[3] the Debtors received bids from other bidders for only three categories of the Foundry Assets—the MinerSentry software, the assets of CN Minden LLC and cryptocurrency miners owned by CN Mining LLC. Specifically, one such bid offered a total purchase price of $363,450 for certain limited assets, of which $117,450 was allocated to the MinerSentry software. The second such bid related primarily to the assets of a joint venture that the Debtors own, which are unrelated to the Foundry Assets, but also included the MinerSentry software without allocating a specific amount of the purchase price for MinerSentry. The Debtors received another bid related to the assets of CN Minden LLC, which overlapped with the Initial Foundry Bid, but that overlapping bid was only in the amount of

---

[3] In addition to the MinerSentry software, the Initial Foundry Bid also sought to purchase, among other things, certain of the Debtors' modular data center containers. Other bids received by the Bid Deadline also sought to purchase a number of the Debtors' containers, but because the Initial Foundry Bid did not specify particular containers and the Debtors have sufficient containers available to sell to other bidders based on bids received, the Debtors do not believe that consummating the Foundry Sale will prohibit them from also pursuing other bids with respect to container sales.

$500,000. The Debtors also received a bid to purchase 495 miners owned by CN Mining LLC for $400,000.

11. Following the Debtors' review of the bids submitted by the Bid Deadline, the Debtors and their advisors, in consultation with the Consultation Parties, negotiated with Foundry to improve the terms of the Initial Foundry Bid. In response, Foundry informed the Debtors and their advisors that it would be willing to increase the cash portion of the purchase price offered in the Initial Foundry Bid, which resulted in a cash purchase price in the amount of $5,170,00, of which $4,000,000 in cash would be paid at the Closing (as defined in the Foundry Purchase Agreement) with respect to the Purchased Assets (other than the Minden Purchased Assets (as defined in the Foundry Purchase Agreement)) and $1,170,000 in cash would be paid at the Minden Closing[4], if any, in each case, subject to the terms and conditions of the Foundry Purchase Agreement. Due to, among other things, the limited overlap with other bids, the absence of any other bids (individually or collectively) that presented similar, or higher and better, value to that set forth in the Foundry Purchase Agreement, the additional value that would be realized by the Debtors and their estates based on the Foundry Purchase Agreement, and the increased certainty of closing that the Foundry Purchase Agreement presents (as compared to pursuing transactions with multiple purchasers for a subset of the Foundry Assets), the Debtors, in consultation with the Consultation Parties, determined that (a) the Foundry Purchase Agreement constitutes the highest and best offer for the Purchased Assets and (b) designating the Foundry Purchase Agreement as the Successful Bid is a sound exercise of the Debtors' business judgment and is in the best interests, and maximizes the value, of the Debtors' estates. Specifically, the Debtors, in consultation with

---

[4] "Minden Closing" has the meaning ascribed to that term in the Foundry Purchase Agreement. The Minden Closing relates to the purchase of the Minden Purchased Assets and the assumption of the Minden Assumed Liabilities (as defined in the Foundry Purchase Agreement).

the Consultation Parties, concluded that the potential value that could be obtained from subjecting the Debtors' MinerSentry asset, the assets of CN Minden LLC and the cryptocurrency miner assets owned by CN Mining LLC to an auction was minimal, as the only remaining actionable bid (other than Foundry's bid) for MinerSentry allocated only $117,450 for such asset, the only actionable bid (other than Foundry's bid) for the assets of CN Minden LLC was for $500,000, and the only actionable bid (other than Foundry's bid) for the cryptocurrency miners owned by CN Mining LLC was for $400,000, whereas the Foundry Sale would provide the estates with an immediate payment of $4,000,000 in cash, plus a potential additional payment of $1,170,000 in cash if the Minden Closing occurs, plus assumption of the Assumed Liabilities (as defined in the Foundry Purchase Agreement). Indeed, no other bidder offered to purchase all of the Foundry Assets or offered the consideration for such assets set forth in the Foundry Purchase Agreement. Further, the Debtors, in consultation with the Consultation Parties, determined that any additional incremental value that could have been obtained at an auction for MinerSentry, the assets of CN Minden LLC or the cryptocurrency miners owned by CN Mining LLC would have been greatly outweighed by the loss of value the Debtors' estates would have incurred if Foundry determined not to proceed with the Foundry Sale given that Foundry's offer was contingent on acquiring all of the Foundry Assets, including MinerSentry, the assets of CN Minden LLC and the cryptocurrency miners owned by CN Mining LLC. As a result, the Debtors, in consultation with the Consultation Parties, determined that the Foundry Purchase Agreement presented the highest and best offer for the Foundry Assets, and it was in the best interest of the Debtors and their estates to declare the Foundry Purchase Agreement as the Successful Bid for, and to not proceed with the Auction with respect to, the Foundry Assets.

12. As such, the Debtors, in consultation with the Consultation Parties, designated the Foundry Purchaser as the Successful Bidder for the Foundry Assets. I am not aware of any other prospective purchaser who has indicated a desire to acquire the Foundry Assets on more advantageous terms than those offered by the Foundry Purchaser pursuant to the Foundry Purchase Agreement. Nevertheless, should the Debtors receive a competing offer for the Foundry Assets that exceeds the aggregate consideration provided under the Foundry Purchase Agreement prior to the entry of the Sale Order, the Debtors will consider such competing offer in accordance with their fiduciary duties.

13. The Debtors are satisfied that the Foundry Purchase Agreement presents the highest and best value that the Debtors can reasonably expect to receive for the Foundry Assets, in particular because it provides the highest consideration for the Foundry Assets, reduces uncertainty of closing associated with pursuing multiple sales to multiple buyers, and no other potential buyer presented an offer on terms more favorable than those in the Foundry Purchase Agreement. As noted above, for among other reasons, proceeding to an auction on the MinerSentry software, the assets of CN Minden LLC and the cryptocurrency miners owned by CN Mining LLC would not be value maximizing or in the best interest of the Debtors' estates because any incremental value that could have been gained from such an auction with respect to the purchase price for MinerSentry, the assets of CN Minden LLC and the cryptocurrency miners owned by CN Mining LLC would not outweigh the value to the estates from the sale of the numerous other assets included in the Foundry Purchase Agreement—assets for which the Debtors received no other bids and that would not be sold absent the inclusion of all of the Foundry Assets in the Foundry Sale.

14. I believe the Foundry Purchase Agreement (including all transactions contemplated therein) is the product of good faith, arm's-length negotiations between sophisticated, well-

represented parties, and the Foundry Purchase Agreement is the highest and best offer for the Foundry Assets and constitutes a fair and reasonable purchase price.

15. I believe that the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale of the Foundry Assets to the Foundry Purchaser because such sale is necessary to preserve and maximize the value of the Debtors' estates for the benefit of creditors. I believe the Foundry Sale is the best available option to maximize the value of the Foundry Assets to the Debtors' estates for the reasons set forth above, and the Debtors, in consultation with the Consultation Parties, believe that the total consideration provided under the Foundry Purchase Agreement is far greater than any other offer that the Debtors received for any of the Foundry Assets or had they held an auction with respect to MinerSentry, CN Minden LLC assets and the cryptocurrency miners owned by CN Mining LLC.

16. I believe that approval of the Foundry Purchase Agreement (including all transactions and actions contemplated thereunder) is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Further, I believe that the terms of the Foundry Purchase Agreement were negotiated, proposed, and entered into by the Foundry Purchaser and the Debtors without collusion, in good-faith, and from arm's-length bargaining positions.

17. Based upon the advice of the Debtors' advisors, I believe that the Foundry Assets constitute property of the Debtors' estates and that title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (a) have full corporate power and authority to execute the Foundry Purchase Agreement and all other documents contemplated thereby (and the sale to the Foundry Purchaser has been, or will be, duly and validly authorized by all necessary corporate action), (b) have full corporate power and authority necessary to consummate the transactions contemplated by the Foundry Purchase Agreement,

(c) have taken, or will take, all corporate actions necessary to authorize and approve the Foundry Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereunder, and (d) require no consents or approvals, other than those expressly provided for in the Foundry Purchase Agreement, to consummate such transactions.

18. I believe that the Foundry Purchaser would not have entered into the Foundry Purchase Agreement, and would not consummate the sale and the transactions contemplated thereunder, if the sale of the Foundry Assets is not, except as otherwise provided in the Foundry Purchase Agreement, free and clear of all Encumbrances (as defined in the Foundry Purchase Agreement), or if the Foundry Purchaser would, or in the future could (except and only to the extent expressly provided in the Foundry Purchase Agreement, including with respect to the Assumed Liabilities, be liable for any such Encumbrances.

19. I further believe that the releases provided for in the Foundry Sale Order are consensual, reasonable in scope, and necessary to obtain the Foundry Purchaser's approval of the Foundry Purchase Agreement. It is my belief that the Foundry Purchaser would not have entered into the Foundry Purchase Agreement, and will not consummate the sale and the transactions contemplated thereunder, without the releases set forth therein and in the Foundry Sale Order.

## CONCLUSION

20. In conclusion, I believe that the sales of the Foundry Assets to the Foundry Purchaser are in the best interest of the Debtors' estates and, based upon the advice of the Debtors' advisors, satisfy all of the applicable requirements of the Bankruptcy Code and should be approved.

[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 22, 2022
Eden Prairie, Minnesota

Respectfully submitted,

*/s/ Drake Harvey*
Drake Harvey
President
Compute North LLC