**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| COMPUTE NORTH HOLDINGS, INC., *et al.*[1] | ) | Case No. 22-90273 (mi) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (I) APPROVING THE SALE OF**
**THE PURCHASED ASSETS FREE AND CLEAR OF ALL CLAIMS,**
**LIENS, INTERESTS AND ENCUMBRANCES; (II) APPROVING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 91] (the "Motion") of the above-captioned debtors

and debtors in possession (collectively, the "Debtors") pursuant to sections 105(a), 363, 364, 365

and 503 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004,

6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") for entry of an order (this "Sale Order") (a) approving and authorizing the sale of the

Purchased Assets, pursuant to the Asset Purchase Agreement, attached as Exhibit 1 hereto (as

amended, modified or supplemented pursuant to the terms thereof, the "Asset Purchase

Agreement"),[2] free and clear of all claims, liens, interests and encumbrances (the "Sale

Transaction"), (b) authorizing the Seller's entry into and approving the Asset Purchase

Agreement, which, for purposes of this Sale Order, shall include all exhibits, schedules and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]   Capitalized terms that are used but not defined herein shall, unless otherwise indicated herein, have the meanings ascribed to such terms in the Asset Purchase Agreement.

ancillary documents related thereto, including the Ancillary Agreements, (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code and the assumption of Assumed Liabilities, each as more fully described in the Asset Purchase Agreement, (d) authorizing the Debtors to implement and consummate the transactions, including the Sale Transaction, contemplated in the Asset Purchase Agreement, and (e) granting other relief; and the Court having entered an order on October 24, 2022 [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and unexpired leases (the "Assumption and Assignment Procedures") and the dates, deadlines and bidding procedures (the "Bidding Procedures") with respect to, and notice of the proposed sale of the Purchased Assets; and the Debtors having determined that the highest and best offer for the Purchased Assets is the offer made by Purchaser[3] as set forth in the Asset Purchase Agreement; and the Court having conducted a hearing on November 22, 2022 (the "Sale Hearing") to approve the Sale Transaction; and the Court having reviewed and considered:  (i) the relief sought in the Motion and the arguments of counsel and the matters addressed at the Sale Hearing, including the *Declaration Of Drake Harvey In Support Of Entry Of An Order (I) Approving The Sale Of Certain Of The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts In Connection Therewith, And (III) Granting Related Relief* [Docket No. 521] and the *Declaration Of Ryan Hamilton In Support Of Entry Of An Order (I) Approving The Sale Of Certain Of The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts In Connection*

---

[3]    For purposes of this Sale Order, references to Purchaser shall include any Purchaser Designees that have been designated by the Purchaser to purchase all or any portion of the Purchased Assets and/or assume all or any portion of the Assigned Contracts and/or the Assumed Liabilities pursuant to the Asset Purchase Agreement.

*Therewith, And (III) Granting Related Relief* [Docket No. 520]; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the relief granted in this Sale Order, including the approval of the Sale Transaction, the Asset Purchase Agreement, and other transactions contemplated by the Asset Purchase Agreement; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given; and it appearing that no other or further notice need be provided; and the Court having found that the relief requested in the Motion and granted in this Sale Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:**[4]

A.     This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The Court may enter this Sale Order, which constitutes a final order, consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, 364, 365 and 503.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014 and applicable Bankruptcy Local Rules (as defined in the Motion).

B.     On October 24, 2022, this Court entered the Bidding Procedures Order, which, among other things, (i) approved the Bidding Procedures, the Assumption and

---

[4]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Assignment Procedures, the Rejection Procedures (as defined in the Motion), and the form and manner of notice thereof, (ii) authorized the Debtors to enter into one or more asset purchase agreements, and (iii) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order.  The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.  The Bidding Procedures were substantively and procedurally fair to all parties and potential purchasers and afforded notice and full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets.

C.     As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Purchased Assets.  The sale process was non-collusive and executed in good faith as a result of arms' length negotiations.  The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures.

D.     The Debtors did not receive any Qualifying Bids by the Bid Deadline (each as defined in the Bidding Procedures) for the Purchased Assets other than the Asset Purchase Agreement, and therefore, on November 19, 2022, filed and served the (i) Notice of Successful Bidder for Certain Assets [Docket No. 511] declaring the Purchaser as the Successful

Bidder (as defined in the Bidding Procedures) for the Purchased Assets, and (ii) Notice of Selected Target Contracts [Docket No. 510] identifying the Assigned Contracts the Seller proposes to assume and assign to the Purchaser, as assignee, in connection with the Sale Transaction.  In accordance with the Bidding Procedures, the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), determined that the bid submitted by the Purchaser and memorialized in the Asset Purchase Agreement is the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

   E. As evidenced by the affidavits or certificates of service filed by the Debtors with the Court, and based on the representations of counsel at the Sale Hearing, proper, timely, adequate and sufficient notice of, and a reasonable opportunity to object or otherwise be heard with respect to, the (i) Motion, (ii) Sale Hearing, (iii) entry of this Sale Order, (iv) Asset Purchase Agreement, and (v) transactions contemplated under the Asset Purchase Agreement, including the Sale Transaction, the assumption and assignment of the Assigned Contracts and the Cure Costs (as defined below) has been provided to all parties entitled thereto, including, without limitation, all counterparties to the Assigned Contracts.  Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

   F. The Purchased Assets sought to be transferred and/or assigned, as applicable, by the Seller to the Purchaser pursuant to the Asset Purchase Agreement are property of, and title thereto is vested in, the Seller's estates within the meaning of Bankruptcy Code

section 541.  The Debtors:  (i) have the full power and authority to execute the Asset Purchase Agreement and all documents contemplated thereby, including the Ancillary Documents, and the sale to the Purchaser has been duly and validly authorized by all necessary corporate action; (ii) have the full power and authority necessary to consummate the transactions, including the Sale Transaction, contemplated by the Asset Purchase Agreement; and (iii) have taken all corporate actions necessary to authorize and approve the Asset Purchase Agreement, the Ancillary Agreements, the consummation of the transactions contemplated by the foregoing, including the Sale Transaction, and all other actions required to be performed by the Debtors to consummate the transactions contemplated under the Asset Purchase Agreement and the Ancillary Agreements.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required to consummate the transactions contemplated by the Asset Purchase Agreement, including the Sale Transaction.

G.     The Debtors have demonstrated good, sound  and sufficient business purpose and justifications, and it is a reasonable and appropriate exercise of the Debtors' business judgment, for the Court to authorize and approve the (i) Seller's entry into the Asset Purchase Agreement and the Ancillary Agreements, (ii) sale of the Purchased Assets, and the assumption and assignment of the Assigned Contracts, to the Purchaser on the terms and conditions set forth in the Asset Purchase Agreement, and (iii) consummation of the transactions contemplated by the Asset Purchase Agreement and the Ancillary Agreements.  All such actions and transactions, including the approval of the Asset Purchase Agreement and the Ancillary Agreements and the transactions and actions contemplated thereunder, the assumption and assignment of the Assigned Contracts, and the other relief granted herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.     The Purchaser holds an allowed secured claim, which consists of $8,969,845 in outstanding principal and accrued and unpaid interest, fees, costs, and expenses as of the Petition Date plus any other amounts and obligations under the Foundry Finance Agreement (the "Secured Obligations").  Pursuant to the Bidding Procedures Order, the Bidding Procedures and applicable law, including Bankruptcy Code section 363(k), and in accordance with the Asset Purchase Agreement, the Purchaser was authorized to credit bid all or a portion of the Secured Obligations.  Pursuant to the Asset Purchase Agreement, the Purchaser credit bid the full amount of the Secured Obligations as part of the Purchase Price for the Acquired Assets. The Credit Bid is a valid and proper offer pursuant to Bankruptcy Code section 363(b) and 363(k).

I.     The consideration provided by the Purchaser for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer received by the Debtors for the Purchased Assets, (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable laws, and (iv) may not be avoided under Bankruptcy Code section 363(n) or any other applicable law.  No other person or entity (or group of persons or entities) has offered to purchase the Purchased Assets for an amount that would provide greater economic value to the Debtors than the Purchaser.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The Court's approval of the Motion, the Sale Transaction, the Asset Purchase Agreement and the other transactions contemplated thereby is in the best interests of the Debtors, their estates and creditors and all other parties in interest.

J.     The releases provided for in this Sale Order are consensual, reasonable in scope, and necessary for the Purchaser to enter into the Asset Purchase Agreement.  The Purchaser would not have entered into the Asset Purchase Agreement, and would not consummate the Sale Transaction and the transactions contemplated thereunder, without the releases set forth in this Sale Order.  The Motion shall be deemed a motion to approve the good-faith compromise and settlement of all such claims, interests, and controversies pursuant to Bankruptcy Code section 363(b) and Bankruptcy Rule 9019, and the entry of this Sale Order shall constitute the Court's approval of such compromise and settlement under Bankruptcy Code section 363(b) and Bankruptcy Rule 9019, and a finding by the Court that such settlement and compromise is a valid exercise of the Debtors' business judgment, fair, equitable, reasonable, and in the best interests of the Debtors and their estates.

K.     The Purchaser would not have entered into the Asset Purchase Agreement, and would not consummate the Sale Transaction and the other transactions contemplated thereunder, if the sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Purchaser were not free and clear of any and all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such Encumbrances. Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser shall not be responsible for any Encumbrances or Liabilities, including, without limitation, in respect of the following:  (i) any agreement with any service provider, including any employment agreement, labor agreement or other agreement with any service provider; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between one or more of the Seller Parties and any Debtor or Affiliate of the Debtors; (iv) any "employee benefit plan" (as

such term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")), regardless of whether subject to ERISA, including, without limitation, any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, that any of the Debtors or any of their past or current Affiliates have sponsored, maintained or at any time contributed to or for which any of the Debtors or any of their past or current Affiliates have had any Liability or potential Liability; (v) any other employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, whether or not now known, suspected or claimed, including, without limitation, claims that might otherwise arise under or pursuant to any federal, state or local statute, rule, regulation or principle of contract law (whether oral or written, express or implied), tort law or common law, including, without limitation, (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination in Employment Act of 1967, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "COBRA"), (i) state or local discrimination laws, (j) state unemployment compensation laws, or (k) any other state or federal benefits or claims relating to any employment with, or providing service to, the Debtors or any of their predecessors; (vi) any liabilities arising under any environmental laws; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and/or (ix) any Excluded Liabilities.  There is no better available alternative for the Purchased Assets than the

sale to the Purchaser.  The Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

L.     The Debtors may sell the Purchased Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the sale of the Purchased Assets, the Motion, the Asset Purchase Agreement, any transaction contemplated thereunder, and/or the assumption and assignment of the Assigned Contracts, are deemed to have fully consented to the relief sought in the Motion, the relief granted herein and the transactions contemplated by the Asset Purchase Agreement pursuant to Bankruptcy Code section 363(f)(2).  All holders of Encumbrances, if any, who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).  All holders of Encumbrances on Purchased Assets, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the sale (after giving effect to any closing costs payable by the Debtors) attributable to the Purchased Assets in which such holder alleges an Encumbrance, in the same order of priority and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

M.     The Purchaser and the other Purchaser Parties shall not, and shall not be considered or deemed to:  (i) be the successor of, or successor employer (as described under COBRA and applicable regulations thereunder) to, any Debtor or any of the Seller Parties or any

of their past or current Affiliates including, without limitation, for purposes of COBRA or other federal, state or local labor law, or with respect to any collective bargaining agreements and any Seller Benefit Plan, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal, state or local laws, (ii) have, *de facto*, or otherwise, merged or consolidated with or into any Debtor or any of the Seller Parties, (iii) be a mere continuation or substantial continuation, or holding themselves out to be a mere continuation, of any Debtor, any of the Seller Parties or their respective enterprise(s), (iv) have a common identity of incorporators, directors, or equity holders with any Debtor or any of the Seller Parties, or (v) be liable for any acts or omissions of any Debtor or any of the Seller Parties in the conduct of their respective businesses or operations, or arising under or related to the Purchased Assets except as expressly included in the Assumed Liabilities.  Without limiting the generality of the foregoing, the Purchaser and the other Purchaser Parties shall not be liable for any Encumbrance or Liability (other than Assumed Liabilities and Permitted Encumbrances) against any of the Debtors or the other Seller Parties, or any of their respective predecessors, successors, assigns or Affiliates, and the Purchaser and the other Purchaser Parties shall have no successor or vicarious liability of any kind or character whatsoever, whether known or unknown, whether now existing or hereafter arising, whether asserted or unasserted, or whether fixed or contingent, with respect to any of the Debtors' and/or the other Seller Parties' businesses or operations, the Purchased Assets or any Liabilities of any of the Debtors and/or the other Seller Parties.  The Purchaser would not have acquired the Purchased Assets but for the foregoing protections, including against potential claims based upon "successor liability" theories.

N.      The Asset Purchase Agreement was proposed, negotiated, entered into, and is undertaken, by the Debtors and the Purchaser at arm's-length, without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  The Purchaser's bid was subject to a marketing process conducted by the Debtors.  All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale Transaction have been disclosed.

O.      Neither the Purchaser nor any of its parent, subsidiaries, affiliates, members, managers, principals, shareholders, officers, directors, representatives or any of its or their respective successors or assigns is an "insider" of any of the Debtors or any of their Affiliates, as that term is defined by Bankruptcy Code section 101(31), and is not otherwise affiliated with any of the Debtors or any of their Affiliates.  The Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction, and no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors or any of their Affiliates.  Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, member, manager, principal, shareholder, officer, director or representative of the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale Transaction or any other transaction contemplated thereunder or this Sale Order to be avoided or challenged, or for costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law.

P.      The Purchaser has proceeded in good-faith and without collusion in all respects in connection with the Sale Transaction and the Asset Purchase Agreement.  The negotiation and execution of the Asset Purchase Agreement and the related documents were conducted in good-faith and constitute an arm's-length transaction. The Asset Purchase

Agreement, which constitutes reasonably equivalent value and fair consideration for the Purchased Assets, was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors.  Neither the Debtors nor the Purchaser has entered into the Asset Purchase Agreement or is consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

   Q. As a result of the foregoing, the Purchaser is a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Bankruptcy Code section 363(m), including in the event this Sale Order or any portion thereof is reversed or modified on appeal.  The Purchaser has otherwise proceeded in good-faith in all respects in connection with these chapter 11 cases and this proceeding.

   R. Entry into the Asset Purchase Agreement and the transactions contemplated thereby, including the Sale Transaction, constitutes a valid and sound exercise of the Debtors' business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.  The Debtors have articulated good and sufficient business reasons justifying the sale of the Purchased Assets to the Purchaser.  Additionally:  (i) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Asset Purchase Agreement and the consummation of the transactions contemplated thereby, including the Sale Transaction, will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale Transaction is not consummated promptly; and (iv) the Asset Purchase Agreement and the sale of the Purchased Assets to the Purchaser will provide greater value to the Debtors' estates than would be provided by any other available alternative.

S.      Good and sufficient reasons, and sound business purposes, for approval of the Asset Purchase Agreement and the transactions contemplated thereby, including the Sale Transaction, have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose for the Sale Transaction and the other transactions contemplated by the Asset Purchase Agreement pursuant to Bankruptcy Code section 363(b), in that, among other things, the consummation of the Sale Transaction within the time constraints set forth in the Asset Purchase Agreement is necessary and appropriate to maximize the value of the Debtors' estates.  To maximize the value of the Debtors' estates, it is essential that the sale occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale Transaction.

T.      The consummation of the sale and the other transactions contemplated under the Asset Purchase Agreement is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f).  All of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

U.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Assigned Contracts to the Purchaser is in the best interests of the Debtors, their estates and creditors and all parties in interest.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption and assignment of the Assigned Contracts is reasonable and enhances the value of the Debtors' estates.

V.      The Assumption and Assignment Procedures (as set forth and defined in the Bidding Procedures Order) are reasonable and provided all parties with appropriate notice and ability to object.  Each of the non-Debtor parties to an Assigned Contract has received notice of, and had a fair and reasonable opportunity to object to, the assumption and assignment of the Assigned Contracts to the Purchaser.

W.      The cure amounts, if any, agreed upon by the Purchaser or judicially resolved (the "Cure Costs") are deemed to be the entire cure obligation due and owing under the Assigned Contracts under Bankruptcy Code section 365(b).  To the extent that any non-Debtor counterparty to an Assigned Contract has failed to timely file an objection to the cure amount set forth in the Cure Notice[5], such cure amount shall be deemed to be the entire cure obligation due and owing under the applicable Assigned Contract.  To the extent that any non-Debtor counterparty to an Assigned Contract has timely objected and asserted that a greater amount is owed to it under an Assigned Contract other than the cure amount set forth in the Cure Notice, such an objection is expressly overruled, unless it has been properly preserved by a timely filed objection for future resolution.

X.      Each provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assigned Contracts has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365.

Y.      Upon the payment of the Cure Cost, if any, to the relevant counterparty to an Assigned Contract, there will be no outstanding default under each such Assigned Contract.

---

[5]   "Cure Notice" shall mean the Notice of Filing of Cure Schedule in Connection with Proposed Sale [Docket No. 209], Notice of Filing of Supplemental Cure Schedule in Connection with Proposed Sale [Docket No. 334], Notice of Filing of Amended Cure Schedule in Connection with Proposed Sale [Docket No. 357], Notice of Filing of Second Supplemental Cure Schedule in Connection with Proposed Sale [Docket No. 469], and any other cure notice filed in these chapter 11 cases acceptable to the Purchaser.

Z.      The Purchaser has demonstrated adequate assurance of future performance of all Assigned Contracts within the meaning of Bankruptcy Code section 365.

AA.     Upon the payment of the relevant Cure Costs, if any, and the assignment to the Purchaser, each Assigned Contract shall be deemed valid and binding, in full force and effect, enforceable in accordance with its terms, and is the property of the Debtors' estates pursuant to Bankruptcy Code section 541(a), and all defaults thereunder, if any, shall be deemed cured pursuant to this Sale Order.

BB.     An injunction against creditors and third parties pursuing claims against, and liens, interests and encumbrances on, the Purchased Assets is necessary to induce the Purchaser to close the Sale Transaction, and the issuance of such injunctive relief is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

CC.     The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a plan of reorganization or liquidation for any of the Debtors.

DD.     This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, and the Sale Transaction and the other transactions contemplated in the Asset Purchase Agreement are approved, as set forth herein.

2.      All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and granted in this Sale Order, whether filed or stated on the record before this Court, to the extent not resolved, waived, withdrawn or previously overruled, and all reservations of rights included therein, are hereby overruled and denied on the merits and with prejudice.

3.      Notice of the Motion, the Sale Transaction, the Asset Purchase Agreement, all other transactions contemplated thereunder, the Sale hearing, and the entry of this Sale Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.      Pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503, and Bankruptcy Rule 6004, the Sale Transaction, including all of the terms and conditions related thereto as set forth in the Asset Purchase Agreement, is hereby authorized and approved in all respects. The Debtors are authorized and directed to enter into and perform under the Asset Purchase Agreement and the Ancillary Agreements.  The Asset Purchase Agreement, together with all annexes, exhibits, and amendments thereto and the Ancillary Agreements, and all actions and transactions contemplated therein, and all of the terms and conditions thereof, are hereby authorized and approved in their entirety.  The failure to specifically include, or make a reference to, any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement, and any related agreements, and any amendments thereto in accordance with the terms thereof, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.      Pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503, the Debtors are hereby authorized and directed to take any and all actions necessary or appropriate to:  (i) consummate the Sale Transaction, the other transactions contemplated by the Asset Purchase Agreement, and the closing of the sale in accordance with the Asset Purchase Agreement and this Sale Order; (ii) assume and assign the Assigned Contracts to the Purchaser in accordance with the Asset Purchase Agreement; and (iii) perform, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the transactions contemplated thereby.  The Debtors and each other party to the Ancillary Agreements are hereby authorized and directed to perform their respective covenants and undertakings as provided in the Asset Purchase Agreement and the Ancillary Agreements prior to and after the Closing Date without further order of the Court.  The Purchaser and the Debtors shall have no obligation to close the Sale Transaction except as is contemplated and provided for in the Asset Purchase Agreement.

6.      Pursuant to Bankruptcy Code section 365(f), notwithstanding any provision of any Assigned Contract or applicable non-bankruptcy law that prohibits, restricts or conditions the assignment of an Assigned Contract, the Debtors are authorized to assume the Assigned Contracts and to assign the Assigned Contracts to the Purchaser, which assignment shall be in accordance with and on the terms set forth in the Asset Purchase Agreement.  There shall be no accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

7.      The releases provided in paragraphs 10 and 11 of this Sale Order are hereby authorized and approved in all respects.

8.     Upon the Closing:  (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of all of the Debtors' rights, title and interest in the Purchased Assets to the Purchaser free and clear of all Encumbrances and Liabilities (other than Permitted Encumbrances and Assumed Liabilities); and (b) except as otherwise expressly provided in the Asset Purchase Agreement, all Encumbrances and Liabilities (other than Permitted Encumbrances and Assumed Liabilities) shall not be enforceable as against the Purchaser or the Purchased Assets.  Unless otherwise expressly included in the Assumed Liabilities and Permitted Encumbrances, the Purchaser shall not be responsible for any Liabilities or Encumbrances, including in respect of the following:  (i) any agreement with any service provider, including any employment agreement, labor agreement or other agreement with any service provider; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between one or more of the Seller Parties and any Debtor; (iv) any "employee benefit plan" (as such term is defined in ERISA), regardless of whether subject to ERISA, including, without limitation, any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, that any of the Debtors or any of their past or current Affiliates have sponsored, maintained or at any time contributed to or for which any of the Debtors or any of their past or current Affiliates have had any Liability or potential Liability; (v) any other employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, whether or not now known, suspected or claimed, including, without limitation, claims that might otherwise arise under or pursuant to any federal, state or local statute, rule, regulation or principle of contract law (whether oral or written, express or implied), tort law or common

law, including, without limitation, (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of

the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Age Discrimination in Employment Act of 1967, as amended, (g) the

Americans with Disabilities Act of 1990, (h) COBRA, (i) state or local discrimination laws, (j)

state unemployment compensation laws, or (k) any other state or federal benefits or claims

relating to any employment with, or providing service to, the Debtors or any of their

predecessors; (vi) any environmental laws; (vii) any bulk sales or similar laws; (viii) any tax

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as

amended; and/or (ix) any Excluded Liabilities.  A certified copy of this Sale Order may be filed

with the appropriate clerk and/or recorder to act to cancel any such Encumbrance of record.

   9. The transfer to the Purchaser of the Debtors' rights, title and interest in the

Purchased Assets pursuant to the Asset Purchase Agreement shall be, and hereby is deemed to

be, a legal, valid and effective transfer of the Debtors' rights, title and interest in the Purchased

Assets, and vests with or will vest in the Purchaser all rights, title and interest of the Debtors in

the Purchased Assets, free and clear of all Encumbrances of any kind or nature whatsoever (other

than the Permitted Encumbrances and the Assumed Liabilities), with any such valid or asserted

Encumbrances, if any, attaching solely to the proceeds of the sale with the same validity, extent

and priority that such Encumbrance encumbered all or any portion of the Purchased Assets

immediately prior to the Closing, subject to the provisions of the Asset Purchase Agreement, and

any rights, claims and defenses of the Debtors and other parties in interest.

   10. For good and valuable consideration provided by the Purchaser, the

adequacy of which is hereby confirmed, on and after the Closing, each of the Debtors (in their

own right, on behalf of their estates and their current and former Affiliates, and each such entity's

and its current and former Affiliates' current and former officers, members, managers, directors, principals, stockholders, direct and indirect owners, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, attorneys, partners, representatives, predecessors, successors and assigns (collectively, the "Debtor Releasing Parties")) hereby unconditionally and irrevocably releases, waives, acquits, absolves, forever discharges and covenants not to sue the Purchaser, the Purchaser's current and former Affiliates, and the Purchaser's current and former Affiliates' directors, officers, managers, members, equityholders, principals, stockholders, direct and indirect owners, employees, agents, independent contractors, attorneys, representatives, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners, predecessors, successors, and assigns (collectively, the "Purchaser Released Parties"), and their respective property and assets, from any and all acts and omissions of the Purchaser Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Debtor Releasing Parties now have, may claim to have or may come to have against the Purchaser Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (i) any and all so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (iii) any and all

claims and causes of action based on or relating to or in any manner arising from in whole or in part, any Purchaser Released Party's efforts related to the Asset Purchase Agreement, the Ancillary Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, the Foundry Finance Agreement, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the Asset Purchase Agreement, the Ancillary Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, the Foundry Finance Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Asset Purchase Agreement, the Ancillary Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, or the Foundry Finance Agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, and (iv) any and all offsets, defenses, claims, counterclaims, rights of set off, deduction or recoupment, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to Bankruptcy Code section 105, chapter 5, or Bankruptcy Code section 724(a) or under other similar provisions of applicable state, federal, or foreign laws, including, without limitation, any right to assert any disgorgement or recovery; _provided_ that nothing in this paragraph shall release any Purchaser Released Party from any acts, omissions, rights, interests, claims, causes of action, defenses, counterclaims, challenges, demands, objections, controversies, rights of setoff, recoupment or deduction, obligations or liabilities under or related to (a) this Sale Order, (b) the Asset Purchase

Agreement, (c) the Ancillary Agreements, (d) the Transition Services Agreement, (e) any other documents related to the Sale Transaction, (f) the Colocation Agreement, dated December 4, 2019, by and between Compute North LLC and Foundry Digital LLC (f/k/a DCG Foundry LLC), (g) the Master Agreement, dated October 29, 2020, by and between Compute North LLC and Foundry Digital LLC and any related order forms, (h) the Partial Assignment and Assumption Agreement, dated February 7, 2022, by and between Compute North LLC and Compute North NE05 LLC and any related order forms, (i) the Property Management Agreement (Wolf Hollow/Granbury, TX), dated April 28, 2022, by and between CN Wolf Hollow LLC and Compute North LLC, (j) the Property Management Agreement (Kearney Project/Kearney, NE), dated February 7, 2022, by and between Compute North LLC and Compute North NE05 LLC, (k) the Master Services Agreement, dated February 3, 2022, by and between CN Mining LLC and Compute North NE05 LLC and any related order forms, (l) the Non-Disclosure and Confidentiality Agreement, dated November 1, 2019, by and between Compute North [*sic*] and DCG Foundry, LLC (k/n/as Foundry Digital LLC), (m) the Mutual Confidentiality and Nondisclosure Agreement, dated November 5, 2021, by and between Compute North LLC and Foundry Digital LLC, (n) the Master Agreement, dated February 3, 2022, by and between Compute North LLC and CN Mining LLC and any related order forms, (o) the Partial Assignment and Assumption Agreement, dated April 27, 2022, by and between Compute North LLC and CN Wolf Hollow LLC and any related order forms, and (p) any amendments, supplements or modifications related to the agreements or documents set forth in the foregoing clauses (a)-(o).  This paragraph is in addition to, and shall not limit, any other release, covenant not to sue or waiver by the Debtor Releasing Parties in favor of the Purchaser Released Parties.

11.     On and after the Closing, the Purchaser (in its own right, and on behalf of its current and former Affiliates, and the Purchaser's and its current and former Affiliates' current and former officers, members, managers, directors, principals, stockholders, direct and indirect owners, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, attorneys, partners, representatives, predecessors, successors and assigns, in each case, solely in each such party's capacity as such (collectively, the "Purchaser Releasing Parties")) hereby unconditionally and irrevocably releases, waives, acquits, absolves, forever discharges and covenants not to sue the Debtors, the Debtors' current and former directors, officers, managers, members, equityholders, principals, employees, agents, attorneys, representatives, and financial advisors (collectively, the "Debtor Released Parties"), and their respective property and assets, from any and all acts and omissions of the Debtor Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Purchaser or its successors or assigns, whether individually or collectively), which the Purchaser Releasing Parties now have, may claim to have or may come to have against the Debtor Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (i) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, (ii) any and all claims and causes of action based on or relating to or in any manner arising from in whole or in part, any Debtor Released Party's efforts related to the Asset Purchase Agreement, the Ancillary

Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, or the Foundry Finance Agreement, the formulation, preparation, dissemination, negotiation, modification, amendment, entry into, or filing of the Asset Purchase Agreement, the Ancillary Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, or the Foundry Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Asset Purchase Agreement, the Ancillary Agreements, the Transition Services Agreement, any other documents related to the Sale Transaction, or the Foundry Agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the foregoing taking place on or before the Closing, and (iii) any and all offsets, defenses, claims, counterclaims, rights of set off, deduction or recoupment, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to Bankruptcy Code section 105, chapter 5, or Bankruptcy Code section 724(a) or under other similar provisions of applicable state, federal, or foreign laws, including, without limitation, any right to assert any disgorgement or recovery; provided that nothing in this paragraph shall release (x) any Debtor Released Party from any acts, omissions, rights, interests, claims, causes of action, defenses, counterclaims, challenges, demands, objections, controversies, rights of setoff, recoupment or deduction, obligations or liabilities under or related to (a) this Sale Order, (b) the Asset Purchase Agreement, (c) the Ancillary Agreements, (d) the Transition Services Agreement, (e) any other documents related to the Sale Transaction, (f) the Colocation Agreement, dated December 4, 2019, by and between

Compute North LLC and Foundry Digital LLC (f/k/a DCG Foundry LLC), (g) the Master Agreement, dated October 29, 2020, by and between Compute North LLC and Foundry Digital LLC and any related order forms, (h) the Partial Assignment and Assumption Agreement, dated February 7, 2022, by and between Compute North LLC and Compute North NE05 LLC and any related order forms, (i) the Property Management Agreement (Wolf Hollow/Granbury, TX), dated April 28, 2022, by and between CN Wolf Hollow LLC and Compute North LLC, (j) the Property Management Agreement (Kearney Project/Kearney, NE), dated February 7, 2022, by and between Compute North LLC and Compute North NE05 LLC, (k) the Master Services Agreement, dated February 3, 2022, by and between CN Mining LLC and Compute North NE05 LLC and any related order forms, (l) the Non-Disclosure and Confidentiality Agreement, dated November 1, 2019, by and between Compute North [*sic*] and DCG Foundry, LLC (k/n/as Foundry Digital LLC), (m) the Mutual Confidentiality and Nondisclosure Agreement, dated November 5, 2021, by and between Compute North LLC and Foundry Digital LLC, (n) the Master Agreement, dated February 3, 2022, by and between Compute North LLC and CN Mining LLC and any related order forms, (o) the Partial Assignment and Assumption Agreement, dated April 27, 2022, by and between Compute North LLC and CN Wolf Hollow LLC and any related order forms, and (p) any amendments, supplements or modifications to the agreements or documents set forth in the foregoing clauses (a)-(o), and/or (y) CN Borrower LLC, CN Wolf Hollow LLC, Compute North NE05 LLC, TZRC LLC, TZRC Mining LLC, TZRC King Mountain LLC and/or TZRC Horse Hollow LLC.  This paragraph is in addition to, and shall not limit, any other release, covenant not to sue or waiver by the Purchaser Releasing Parties in favor of the Debtor Released Parties.

12.     Except as expressly provided in the Asset Purchase Agreement or by this Sale Order, all persons and entities holding Encumbrances of any kind or nature whatsoever against or in the Debtors (or the Debtors' interests in the Purchased Assets), whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, arising under or out of, in connection with, or in any way relating to, the Purchased Assets or the sale of the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims, liens, interests and encumbrances against (x) the Purchaser or its Affiliates, successors, assigns, equity holders, employees or professionals, or (y) the Purchased Assets, or the Debtors' interests in the Purchased Assets.   Following the Closing, no holder of an Encumbrance (other than the Permitted Encumbrances and the Assumed Liabilities) against the Debtors shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to such Encumbrance.   All persons are hereby enjoined from taking action that would interfere with or adversely affect the Debtors' ability to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement, the Ancillary Agreements and this Sale Order.

13.     Upon assumption of the Assigned Contracts by the Debtors and assignment of same to the Purchaser, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of the Asset Purchase Agreement and this Sale Order.   Upon the assignment of an Assigned Contract to the Purchaser in accordance with the terms of the Asset Purchase Agreement, the Purchaser shall

succeed to the Debtors' rights and interests in such Assigned Contract from and after the date of such assignment and shall have all rights thereunder.

14.     Upon the payment of the Cure Costs (if any) with respect to an Assigned Contract, (i) all defaults (whether monetary or otherwise) under such Assigned Contract through and including the Closing shall be deemed cured and satisfied, (ii) no other amounts will be due and owing by the Debtors, their estates or the Purchaser under such Assigned Contract with respect to any amounts arising or accruing during, or attributable or related to, the period prior to and through and including the Closing, and (iii) all persons and entities shall be forever barred and estopped from asserting any claim related to such Assigned Contract against the Debtors, their estates, the Purchaser, or the property of any of the foregoing that any additional amounts are due or defaults exist under such Assigned Contract that arose or accrued, or relate to or are attributable to the period, prior to and through the Closing.

15.     The Asset Purchase Agreement has been entered into by the Purchaser in good faith and the Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m).  The Purchaser is entitled to all of the protections afforded by Bankruptcy Code section 363(m). The transfer of the Purchased Assets to the Purchaser, and the related transactions to be consummated in accordance with the Asset Purchase Agreement, constitute a good-faith transaction entitled to the protections afforded by Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to the Purchaser (including the assumption and assignment by the Debtors of any of the Assigned Contracts).

16.     The Asset Purchase Agreement was negotiated, proposed, and entered into

without collusion, in good-faith and at arm's-length.  The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement, including the portion of the consideration that consists of the Credit Bid, is fair and reasonable, constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable law, and the Sale Transaction and the other transactions contemplated under the Asset Purchase Agreement may not be avoided, or costs or damages imposed or awarded, under Bankruptcy Code section 363(n), any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

17.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' rights, title and interest in the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Asset Purchase Agreement, free and clear of all Liabilities and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).

18.     Upon the Closing, except as specifically included in Assumed Liabilities, the Purchaser and the other Purchaser Parties shall not and shall not be deemed to:  (i) be the successor of, or successor employer to, the Debtors or any of the other Seller Parties, including, without limitation, with respect to any collective bargaining agreements and any Seller Benefit Plans, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws (including any unemployment compensation or tax laws, and any other similar federal or state laws); (ii) have, *de facto*, or otherwise, merged or consolidated with or into any of the Debtors or any of the other Seller Parties; (iii) be a mere continuation or substantial continuation of any of the Debtors or any of the other Seller Parties or the

enterprise(s) of any of the foregoing; or (iv) be liable for any acts or omissions of any of the Debtors or any of the other Seller Parties in the conduct of the businesses or operations of any of the foregoing, or arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the Purchaser shall have no successor or vicarious liability of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, fixed or contingent, asserted or unasserted, legal or equitable, liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their Affiliates, claims arising under the federal Worker Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, with respect to the Debtors' businesses or operations, the Purchased Assets or any Liabilities of any Seller Party arising prior to the Closing Date.

19.     This Sale Order, whether or not filed, registered or otherwise recorded (including by entry on this Court's docket):  (i) is and shall be effective as a conclusive determination that, other than Permitted Encumbrances and Assumed Liabilities, all Encumbrances of any kind or nature whatsoever existing as to all or a portion of the Purchased Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; and (ii) is and shall be binding upon, and authorizes and directs, all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local

officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets, to accept for filing any and all of documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. Other than Permitted Encumbrances, all recorded Encumbrances against the Purchased Assets shall be deemed stricken.

20.     If any person or entity which has filed statements or other documents or agreements evidencing liens on, interests in, encumbrances on, or claims against, the Purchased Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, interests or encumbrances (other than Permitted Encumbrances) which the person or entity has or may assert with respect to the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

21.     To the extent applicable, any holder of a claim, lien, interest or encumbrance with respect to a Purchased Asset is adequately protected under Bankruptcy Code section 363(e) by having such claim, lien, interest or encumbrance attach solely to the proceeds of the Sale Transaction.

22.     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not

31

charge the Debtors or the Purchaser for, any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

23.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

24.     Each and every federal, state and local governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Asset Purchase Agreement.

25.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction.

26.     The Asset Purchase Agreement, the Ancillary Agreements, the Sale Transaction and the other transactions contemplated under the Asset Purchase Agreement shall not be subject to rejection or avoidance.

27.     No obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment is due to any person in connection with the Asset Purchase Agreement, the other transaction documents or the transactions contemplated hereby or thereby for which the Purchaser is or will become liable.

28.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

29.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted under this Sale Order.

30.     The provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization or liquidation of the Debtors, or dismissing any of the Debtors' chapter 11 cases, and the terms and provisions of this Sale Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Sale Order or the Asset Purchase Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization or liquidation in any of the Debtors' chapter 11 cases.  Any order granting conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Sale Order shall survive such conversion or dismissal, the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, this Sale Order shall remain binding on all parties in interest

31.     This Sale Order and the Asset Purchase Agreement shall be binding, in all respects, upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Purchased Assets and, as applicable, any trustee, "responsible person", plan administrator, or other fiduciary that may be appointed in these chapter 11 cases or in any superseding cases under

chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Sale Order.

32.     Sunbelt Solomon Services, LLC ("Solomon") asserts it has title to the nine (9) transformers with serial numbers YT-22-10994, YT-22-10995, YT-22-10996, YT-22-10997, YT-22-10998, YT-22-10999, YT-22-11000, YT-22-11001 and YT-22-11002 identified in the Asset Purchase Agreement (the "Transformers"), and the Debtors dispute Solomon's contentions and assert that the Debtors have title to the Transformers and the Transformers are property of the Debtors' estates (the "Dispute").  Unless otherwise consensually resolved, the Dispute will be submitted to the Court for determination subsequent to the Sale Hearing on a date to be agreed upon among the parties, and the Debtors, Solomon and the Purchaser reserve all of their respective rights, arguments, claims and defenses in regards to the Dispute; provided, however, that notwithstanding Solomon's contentions, the Dispute and anything else contained herein, the Debtors and Solomon agree that whatever rights the Court determines that Solomon ultimately possesses in the Transformers, if any, immediately prior to the Closing shall be extinguished as to the Transformers as of the Closing and attach solely and exclusively to the Reserved Transformer Proceeds (as defined below).  Notwithstanding anything to the contrary herein, (a) the Transformers shall constitute Purchased Assets, (b) as of the Closing, the Transformers shall be conveyed to, and title to the Transformers shall automatically transfer to and vest in, the Purchaser free and clear of any and all Encumbrances, including any liens, claims, encumbrances, interests and rights of Solomon and/or the Debtors, and (c) as of the Closing, any remedies available to Solomon shall be limited to and attach solely and exclusively to the specified proceeds from the sale of the Transformers (and not, for the avoidance of doubt, to any

of the Transformers) in the amount of $482,550 (the "Reserved Transformer Proceeds"), with the same interest, nature, validity, priority, extent, perfection, force and effect, if any, that existed in favor of Solomon as of the Petition Date.

33.     The asserted liens of RK Mission Critical LLC against the "CN2 Containers" listed on Schedule 1.1 of the Asset Purchase Agreement (the "Containers") shall not attach to the Containers (and such Containers shall constitute Purchased Assets, and shall be transferred to, and title to such Containers shall vest in, the Purchaser as of the Closing, free and clear of any and all Encumbrances), but shall instead attach, following the Closing, solely and exclusively to the proceeds of the sale of such Containers, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such liens encumbered all or any portion of the Containers immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.

34.     The Debtors have not sought authorization for, and this Sale Order does not authorize, the sale of assets that are owned by Marathon Digital Holdings, Inc. ("Marathon"), including, without limitation, the sale, assignment, or transfer of any equipment owned by Marathon, and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

35.     34. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Sale Order and the terms of the Asset Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and each agreement executed in connection therewith).

36.     35. To the extent this Sale Order is inconsistent with any order or pleading filed in these chapter 11 cases related to the Motion, the terms of this Sale Order shall govern.

To the extent there is any inconsistency between the terms of the Asset Purchase Agreement, the Motion, and this Sale Order, the terms of this Sale Order shall govern.

37. ~~36.~~ The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

38. ~~37.~~ All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39. ~~38.~~ This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, without limitation, Bankruptcy Rule 6004(h), the terms of this Sale Order shall be immediately effective and enforceable upon its entry.

40. ~~39.~~ The provisions of this order are nonseverable and mutually dependent.

Dated:  Houston, Texas
        November __, 2022

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

ASSET PURCHASE AGREEMENT