**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR**
**ENTRY OF AN ORDER (I) CONDITIONALLY**
**APPROVING THE ADEQUACY OF THE DISCLOSURE**
**STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE**
**PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS'**
**JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS**
**AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN**
**DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 1:30 p.m. on November 29, 2022.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 29, 2022 at 1:30 p.m. in Courtroom 404, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); CN TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> is 954554.   **Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Isgur's home page.  The meeting code is "JudgeIsgur".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page.  Select the case and complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion").[2]

## **RELIEF REQUESTED**

1.     The Debtors seek entry of an order, substantially in the form attached hereto

as **Exhibit A** (the "Order"), granting the following relief and such other relief as is just and

proper:

> a.     ***Disclosure Statement.***  Conditionally approving the *Disclosure Statement for the Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No [•]], filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement") substantially in the form attached to the Order as Schedule 1 as containing "adequate information" pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code");
>
> b.     ***Solicitation and Voting Procedures.***   Approving procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Schedule 2;
>
> c.     ***Ballots.***  Approving the Class 3 Ballot, the Class 4 Ballot, the Class 7 Ballot and the Class 8 Ballot each of which include the opportunity to opt out of certain third-party releases (collectively, the "Ballots"), substantially in the forms attached to the Order as Schedules 3A, 3B, 3C and 3D, respectively;

---

2     Capitalized terms used but not yet defined herein have the meanings ascribed to such terms later in this Motion or in the Disclosure Statement or the Plan, as applicable.

d.    ***Non-Voting Status Notices.***   Approving: (i) the form of notice applicable to Holders of Claims and Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan;; and (ii) the form of notice applicable to Holders of Claims that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim, each of which include the opportunity to opt out of certain third-party releases (each, a "<u>Non-Voting Status Notice</u>"), substantially in the forms attached to the Order as <u>Schedule 4</u> and <u>Schedule 5</u>, respectively;

e.    ***Solicitation Packages.***   Finding that the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, comply with Rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>");

f.    ***Cover Letter.***   Approving the form of letter (the "<u>Cover Letter</u>") that the Debtors will send to Holders of Claims and Interests entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached to the Order as <u>Schedule 6</u>;

g.    ***Combined Hearing Notice.***   Approving the form and manner of notice of the combined hearing to consider the adequacy of the Disclosure Statement and Confirmation of the Plan (the "<u>Combined Hearing</u>," and the notice thereof, the "<u>Combined Hearing Notice</u>") pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached to the Order as <u>Schedule 7</u>;

h.    ***Plan Supplement Notice.***   Approving the notice related to the filing of the Plan Supplement (the "<u>Plan Supplement Notice</u>"), substantially in the form attached to the Order as <u>Schedule 8</u>; and

i.    ***Confirmation Timeline.***   Establishing the following dates and deadlines with respect to Confirmation, subject to modification as necessary (the "<u>Confirmation Timeline</u>"):

[*Remainder of the Page Intentionally Left Blank*]

| Event | Date | Description |
|---|---|---|
| Voting Record Date | November 29, 2022 | Date for determining (i) which Holders of Claims in the Voting Classes, as defined herein, are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim (the "Voting Record Date") |
| Solicitation Deadline | December 5, 2022 (or as soon as reasonably practicable thereafter) | Deadline for distributing Solicitation Packages, including the Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline") |
| Publication Deadline | December 5, 2022 (or as soon as reasonably practicable thereafter) | The outside date by which the Debtors will submit the Combined Hearing Notice for publication in a format modified for publication (the "Publication Notice") |
| Deadline to File Plan Supplement | December 28, 2022, at 4:00 p.m., prevailing Central Time | Date by which the Debtors shall file the Plan Supplement |
| Voting Deadline | January 4, 2023, at 4:00 p.m., prevailing Central Time | Deadline by which all Ballots must be properly executed, completed, and delivered so that they are actually received (the "Voting Deadline") by Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in these Chapter 11 Cases (the "Solicitation Agent") or the clerk of the Bankruptcy Court for the Southern District of Texas |

| Event | Date | Description |
|-------|------|-------------|
| Plan and Disclosure Statement Objection Deadline | January 4, 2023, at 4:00 p.m., prevailing Central Time | Deadline by which objections to the Plan and/or adequacy of the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan and Disclosure Statement Objection Deadline") |
| Deadline to File Confirmation Brief and Reply to Objections | January 6, 2023 | Date by which the Debtors shall file their brief in support of Confirmation (the "Confirmation Brief Deadline") and by which responses to objections to the Plan and final approval of the Disclosure Statement must be filed with the Court (the "Plan and Disclosure Statement Objection Response Deadline") |
| Deadline to File Voting Report | January 6, 2023 | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court |
| Combined Hearing Date | [January 9], 2023, at [•]:00 [•].m., prevailing Central Time | Date and time for the hearing at which the Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing Date"). |

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105(a), 363, 1125, 1126, and

5

1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and rules 2002-1, 3016-1, 3016-2, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

## **BACKGROUND**

5.      On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On October 6, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 39].  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

7.      Prior to the Petition Date, the Debtors' business was focused on the development and management of sustainable, cost-efficient computer data centers that could be used by customers in the blockchain, cryptocurrency mining, and distributed computing space.  With operations across the United States, the Debtors brought a unique combination of data center, energy, and technology expertise to meet the growing demand for purpose-built infrastructure solutions for highly specialized computing needs.  In addition to the Debtors' development and ownership of data centers, the Debtors' operations also included cryptocurrency mining hosting services, Bitcoin mining, and cryptocurrency equipment sales.  The Debtors' core business segment was cryptocurrency mining hosting services and the Debtors provided a suite of services

to customers that ranged from offering rack space, energy, and broadband access to a full scale, hands on experience which provided customers with additional services including monitoring, troubleshooting, firmware management, miner configuration, and mining pools.

8.      Additional factual background and information regarding the Debtors, including their business operations, their prepetition corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the emergency need for the relief requested in this Motion, are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration").

## PLAN SUMMARY

9.      The Debtors commenced these Chapter 11 Cases to pursue an expedited sale process for the sale of some or all of their assets (as a going-concern or otherwise).  As these Chapter 11 Cases progressed and the Debtors began to receive bids for the purchase of certain assets, the Debtors determined that the reorganization of the business as a going concern was not likely.  The Debtors filed the Plan to complete the sale of any remaining assets and to provide for the appointment of the Plan Administrator to administer, liquidate and monetize the Debtors' Estates and complete the wind-down and liquidation of the Debtors' businesses.  Confirmation of the Plan will avoid the lengthy delay and significant cost of liquidation under chapter 7 of the Bankruptcy Code, which would be particularly value-destructive here given the Debtors are already winding down their estates as contemplated by the Plan.

10.      The Disclosure Statement provides adequate information in respect of the Plan, ensuring that Holders of Claims entitled to vote on the Plan receive information of a kind, and in sufficient detail, to make an informed judgment regarding acceptance or rejection of the Plan

(including the risks thereof).   And the proposed schedule and procedures to confirm and consummate the Plan move these Chapter 11 Cases forward expeditiously and efficaciously while respecting, to the fullest extent possible under the circumstances and limited liquidity available, the due process and other procedural safeguards mandated under the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules.

11.     The Plan contemplates providing 100 percent recoveries for Holders of Allowed Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.   The Plan provides for the following classification of Claims and Interests and distributions to be made to the Debtors' stakeholders:

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| 1 | Secured Claims | Except to the extent that a Holder of an Allowed Secured Claims agrees in writing to less *favorable* treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Secured Claim, each holder of an Allowed Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor: (i) payment in full in Cash; (ii) Reinstatement of such Claim; (iii) the Debtor's interest in the Collateral securing such Holder's Allowed Secured Claim; or (iii) such other treatment rendering such Claim Unimpaired. |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired. |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| 3 | General Unsecured Claims | On the Effective Date, each General Unsecured Claim shall be discharged and released, and each Holder of a General Unsecured Claim shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1 and Class 2, on account of such General Unsecured Claim, to be distributed by the Distribution Agent on the applicable Distribution Date in accordance with the Plan until all Allowed General Unsecured Claims in Class 3 are paid in full or the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed General Unsecured Claims shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate. |
| 4 | Parent GUC Claims | On the Effective Date, each Parent GUC Claim shall be discharged and released, and each Holder of a Parent GUC Claim shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, and Class 3, on account of such Parent GUC Claim, to be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed Parent GUC Claims shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate. |
| 5 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall be cancelled, released and extinguished, and each Holder of an Intercompany Claim shall not receive or retain any distribution, property, or other value on account of its Intercompany Claim. |
| 6 | Intercompany Interests | On the Effective Date, each Intercompany Interest shall be cancelled, released and extinguished, and each Holder of an Intercompany Interest shall not receive or retain any distribution, property, or other value on account of its Intercompany Interest. |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| 7 | Preferred Equity Interests | On the Effective Date, all Preferred Equity Interests shall be cancelled, released and extinguished, and each Holder of Preferred Equity Interests shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, and Class 4, on account of its Preferred Equity Interests, to be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed Preferred Equity Interests shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate. |
| 8 | Parent Equity Interests | On the Effective Date, all Parent Equity Interests shall be cancelled, released, and extinguished, and each Holder of Parent Equity Interests shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 7, on account of its Parent Equity Interests, to be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed Parent Equity Interests shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate. |

12.     In accordance with the foregoing description of the treatment of Holders of Claims and Interests, the Plan contemplates classifying Holders of Claims and Interests into certain Classes of Claims and Interests for all purposes, including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code.  The following chart represents the Classes of Claims and Interests and their status under the Plan:[3]

---

[3]     The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Parent GUC Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Preferred Equity Interests | Impaired | Entitled to Vote |
| Class 8 | Parent Equity Interests | Impaired | Entitled to Vote |

13.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Classes 3, 4, 7 and 8 (each, a "Voting Class" and collectively, the "Voting Classes").  The Debtors are ***not*** proposing to solicit votes from Holders of Claims and Interests in Classes 1, 2, 5 and 6 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").

**<u>BASIS FOR RELIEF</u>**

**I.      The Court Should Conditionally Approve the Disclosure Statement.**

14.     Conditional approval of the Disclosure Statement and authorization to solicit the

Plan and hold a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan on an expedited timeline is warranted under the extraordinary circumstances of these Chapter 11 Cases.

15.    To maximize the value of the Debtors' estates, it is imperative to implement fast-track procedures for confirming the Plan.  Given the lack of consensus regarding the funding of these Chapter 11 Cases or the continuance of the Debtors' operations, the only option for successfully liquidating the business in an orderly manner is through a fast-track confirmation process that minimizes costs and time associated with solicitation and confirmation and streamlines litigation.  Because the Plan, at baseline, is simply liquidating and distributing assets to secured creditors or unsecured creditors, as applicable, the Debtors' Plan is relatively simple and does not require extensive analysis to understand.  Accordingly, no parties will be prejudiced by the proposed expedited timeline for Plan confirmation.

**A.    The Standard for Conditional Approval of the Disclosure Statement.**

16.    Pursuant to section 1125 of the Bankruptcy Code, prior to or concurrently with the solicitation of votes on a proposed chapter 11 plan, the plan proponent must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the Holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

17.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest Holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security Holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan.").   Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.  *Century Glove, Inc.*, 860 F.2d at 100.

18.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records").  Determining what constitutes "adequate information" for the purpose of satisfying Bankruptcy Code section 1125 resides within the broad discretion of the court.  *See, e.g., Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history

of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'" (internal citations omitted)), *cert. denied*, 526 U.S. 1144 (1999); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court.").

19.     In making a determination as to whether a disclosure statement contains adequate information, courts typically look for disclosures related to topics such as:

    a.     the events which led to the filing of a bankruptcy petition;

    b.     a description of the available assets and their value;

    c.     the anticipated future of the company;

    d.     the source of information stated in the disclosure statement;

    e.     a disclaimer;

    f.     the present condition of the debtor while in Chapter 11;

    g.     the scheduled claims;

    h.     the estimated return to creditors under a Chapter 7 liquidation;

    i.     the future management of the debtor;

    j.     the Chapter 11 plan or a summary thereof;

    k.     the estimated administrative expenses, including attorneys' and accountants' fees;

    l.     the collectability of accounts receivable;

    m.     financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

n.      information relevant to the risks posed to creditors under the plan;

o.      the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

p.      litigation likely to arise in a non-bankruptcy context;

q.      tax attributes of the debtor; and

r.      the relationship of the debtor with the affiliates.

*In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr.N.D.Ga.1984)); *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *c.f. In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr.S.D.Tex.2009) (stating that the disclosure statement at bar had "met the *Metrocraft* standard").  Disclosure regarding all topics is not necessary in every case.  *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.      The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

20.     The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan and complies in all aspects with section 1125 of the Bankruptcy Code. Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

a.      ***Overview of the Plan***. An overview of the transactions contemplated by the Plan and the treatment of the Claims and Interests thereunder, as described in detail in <u>Articles I</u> and <u>VI</u> of the Disclosure Statement;

b.      ***Solicitation and Voting Procedures and Requirements.***  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, which are described in <u>Article II</u> of the Disclosure Statement;

    c.    ***The Debtors' Corporate History, Structure, and Business Overview.*** An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure, as described in detail in <u>Article III</u> of the Disclosure Statement;

    d.    ***Events Leading to the Chapter 11 Filings.*** An overview of the events leading to the commencement of the Debtors' chapter 11 cases, including the prepetition restructuring and marketing efforts in response to deteriorating economic conditions, as described in detail in <u>Article IV</u> of the Disclosure Statement;

    e.    ***Material Development and Events of These Chapter 11 Cases***. A summary of the motions filed on the Petition Date as well as some significant events of these Chapter 11 Cases, as described in detail in <u>Article V</u> of the Disclosure Statement.

    f.    ***Confirmation of the Plan.*** Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, which are described in <u>Article VII</u> of the Disclosure Statement;

    g.    ***Risk Factors.*** Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, which are described in <u>Article VIII</u> of the Disclosure Statement;

    h.    ***Certain United States Federal Income Tax Consequences of the Plan.*** A description of certain U.S. federal income tax law consequences of the Plan, which are described in <u>Article IX</u> of the Disclosure Statement; and

    i.    ***Recommendation.*** A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan, stated in <u>Article X</u> of the Disclosure Statement.

21.    Based on the foregoing, the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan. Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and should be approved.

**C.**    **The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

22.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

23.     Article VI.M(3)(b) of the Disclosure Statement describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Moreover, Article VI.M(2) of the Disclosure Statement describe in detail entities subject to or providing a release under the Plan, and the Claims and Causes of Action so released, and Article VI.M(3)(a) of the Disclosure Statement describes in detail the entities entitled to exculpation under the Plan. Each of the foregoing sections is set forth, conspicuously in bold typeface.  Such information is also included in the proposed forms of ballots for the Voting Classes and the notices sent to the Non-Voting Classes.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

## II.     The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Materials, and the Timeline for Soliciting Votes on the Plan.

### A.     The Standard for Approval of Voting and Tabulation Procedures.

24.     Section 1126(c) of the Bankruptcy Code provides that: A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan. 11 U.S.C. § 1126(c). Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor

or equity security Holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which procedures include specific voting and tabulation requirements and processes, as follows (the "Voting and Tabulation Procedures").

**B.      Completion of Ballots.**

25.      To facilitate the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Voting and Tabulation Procedures provide that the Debtors not count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim that is not entitled to vote on the Plan, unsigned, or not clearly marked. Further, the Debtors, unless otherwise ordered of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

**C.      General Ballot Tabulation and Voting Procedures.**

26.      The proposed Voting and Tabulation Procedures set forth specific criteria with respect to the general tabulation of Ballots and voting procedures applicable to Holders of Claims. The proposed Voting and Tabulation Procedures will facilitate the Plan confirmation process. The procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Debtors submit that the Voting and Tabulation Procedures are in the best interests of their estates, Holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

**D.      The Court Should Approve the Forms of the Ballots.**

27.     The Bankruptcy Rules provide that creditors entitled to vote on a plan must be sent a form of ballot conforming to the appropriate Official Form, and that such creditors' acceptance or rejection must conform to the appropriate Official Form.  See Fed. R. Bankr.  P. 3017(d), 3018(c).  In accordance with Bankruptcy Rule 3018(c), all votes to accept or reject the Plan must be cast by using an appropriate Ballot.  Although based on Official Form B314, the Ballots were modified to (a) address the particular circumstances of these Chapter 11 Cases and (b) include  certain  additional  information  that  is  relevant  and  appropriate  for  Claims  in  the Voting Classes, and (c) include a form for opting out of releases in the Plan (the "Opt-Out Form").  The proposed Ballots for each Voting Class are annexed as Schedules 3A, 3B, 3C and 3D to the Order.  The Debtors respectfully submit that the forms of the Ballots complies with Bankruptcy Rules 3017(d) and 3018(c) and, therefore, should be approved.

**E.      The Court Should Approve the Form and Distribution of the Solicitation Packages and Cover Letter to Parties Entitled to Vote on the Plan.**

28.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr.  P. 3017(d).

29.     In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before  the  Solicitation  Deadline,  the  Debtors  will  cause  the  Solicitation  Packages  to  be distributed electronically or by U.S. first-class mail to those Holders of Claims in the Voting Classes.  Each Solicitation Package will include the following materials:

a.    a Ballot that includes an Opt-Out Form, together with detailed voting instructions and a pre-addressed, postage-prepaid return envelope (as applicable);

b.    the Cover Letter, including instructions to obtain access, free of charge, to the Plan, the Disclosure Statement and the Order (without exhibits, except the Solicitation and Voting Procedures) via https://dm.epiq11.com/computenorthholdings and urging the Holders of Claims in the Voting Classes to vote to accept the Plan;

c.    the Combined Hearing Notice; and

d.    such other materials as the Court may direct

30.    Due to the voluminous nature of certain documents, the Debtors request authorization to distribute the Plan and Disclosure Statement and the Order (without exhibits, except for the Solicitation and Voting Procedures) to Holders of Claims entitled to vote on the Plan by providing instructions as part of the Solicitation Package for accessing these documents through the Debtors' restructuring website (https://dm.epiq11.com/computenorthholdings), and, if a Holder requests a hard copy or flash drive from the Solicitation Agent, a hard copy or flash drive within three (3) business days of receipt of such request.  **<u>Only</u>** the Ballot(s), the Cover Letter, and the Combined Hearing Notice will be provided in paper format.  Given the length of the Plan, the Disclosure Statement, and the proposed Order, distribution in this manner will translate into significant monetary savings for the Debtors' estates and allow the Solicitation Packages to be sent on the earliest possible date.

31.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from voters via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Solicitation Agent ("<u>E-Ballot</u>").  Parties entitled to vote through E-Ballot may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot.  Instructions for electronic, online transmission of Ballots are set forth on the

forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

32.     The Debtors will provide (a) complete Solicitation Packages (excluding the Ballots) to the Office of the United States Trustee for the Southern District of Texas and (b) the Order (in electronic format) and the Combined Hearing Notice to all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Bankruptcy Local Rules (the "2002 List") as of the Voting Record Date.

33.     Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).  The Debtors will not mail Solicitation Packages or other solicitation materials to Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

34.     The Debtors respectfully request that the Solicitation Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims, (c) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to Plan and Disclosure Statement, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors and equity holders regarding the Plan.

**F.** **The Court Should Approve Procedures for the Resolution of Disputed Claims for Voting Purposes.**

35.     The Debtors have established Solicitation and Voting Procedures, which includes procedures for the treatment of Claims in a Voting Class subject to pending objections.  Such procedures contemplate furnishing the Holder of such Claim, who is subject to an objection other than a "reduce and allow" objection that is filed with the Court not less than ten days before the Voting Deadline, with a disputed claim notice and deeming the Holder not entitled to vote to accept or reject the Plan on account of such Claim until the occurrence of a Resolution Event (as such terms are defined in the Solicitation and Voting Procedures).  If the Holder of a Claim in a Voting Class is the subject of a pending objection filed with the Court by the Debtor on a "reduce and allow" basis, such Holder of a Claim shall be entitled to vote such Claim in the reduced amount contained in such objection.  If a Claim or Interest in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court fewer than ten days before the Voting Record Date, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of this Court, unless the Court orders otherwise.  The Debtors respectfully request this Court authorize the procedures for the resolution of disputed Claims as such procedures are customary and should be approved.

**G.** **The Court Should Approve the Notice of Combined Hearing.**

36.     Section 105(d)(2)(B)(vi) of the Bankruptcy Code expressly authorizes a court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." See 11 U.S.C. § 105(d)(2)(B)(vi); see also *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr.

S.D. Tex. 2009) (holding that section 105(d) of the Bankruptcy Code authorizes the court to hold combined hearings for disclosure statements and plans). Bankruptcy Local Rule 3016-2 and Section P of the *Procedures for Complex Cases in the Southern District of Texas, Effective August 1, 2021* (the "Complex Case Procedures") authorizes a plan proponent to file a motion for conditional approval of a disclosure statement that requests a joint hearing to consider final approval of the disclosure statement and confirmation of a plan.

37.     Here, an expeditious confirmation process is appropriate under the circumstances of this Chapter 11 Case. The Debtors are proposing a liquidating Plan to wind down its business and operations. The Combined Hearing will save estate resources and maximize distributions for creditors.

38.     The Debtors will serve the Combined Hearing Notice on all known Holders of Claims and Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than the Solicitation Deadline, which will provide all parties in interest with notice of the Plan and Disclosure Statement Objection Deadline and the Combined Hearing. The Combined Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Plan, the Disclosure Statement, the Order and all other materials in the Solicitation Package (excluding the Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan and Disclosure Statement Objection Deadline; and (e) notice of the Combined Hearing Date and information related thereto; and (f) instructions for attending an electronic hearing.

39.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R.

Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Debtors will publish the Publication Notice within three (3) business days after entry of the Order (or as soon as reasonably practical after) on one occasion in the national edition of *The New York Times*. The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan and Disclosure Statement Objection Deadline, and the Combined Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service and publication of the Combined Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

### H.  The Court Should Approve the Form of Notices to Non-Voting Classes.

40.    As discussed above, the Non-Voting Classes are ***not*** entitled to vote on the Plan. As a result, they will ***not*** receive Solicitation Packages and, instead, the Debtors propose that such parties receive a Non-Voting Status Notice. Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in Non-Voting Classes:

   a.    ***Unimpaired Claims—Conclusively Presumed to Accept.*** Holders of Claims in Class 1 and Class 2 are not impaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan. As such, Holders of such Claims will receive a notice, which includes the opportunity to opt out of certain third-party releases, substantially in the form attached to the Order as <u>Schedule 4</u>, in lieu of a Solicitation Package.

   b.    Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their claim. As such, Holders of such Claims will receive a notice, which includes the opportunity to opt out of certain third-party releases, substantially in the form attached to the Order as <u>Schedule 5</u> (which notice shall be served together with such objection).

41.    The Debtors will not provide the Holders of Class 5 Intercompany Claims or

Class 6 Intercompany Interests (collectively, the "Cancelled Claims") with a Solicitation Package or any other type of notice in connection with solicitation. Cancelled Claims will be cancelled with no distribution made on account thereof. Thus, Holders of Cancelled Claims will not be entitled to vote to accept or reject the Plan. Nevertheless, in light of the fact that the Cancelled Claims are all held by the Debtors or affiliates of the Debtors, the Debtors are requesting a waiver from any requirement to serve such Holders of Intercompany Claims and Intercompany Interests.

42. Each of the Non-Voting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Plan, the Disclosure Statement, the Order and all other materials in the Solicitation Package (excluding the Ballots) from the Solicitation Agent free of charge and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article IX of the Plan; (c) notice of the Plan and Disclosure Statement Objection Deadline; (d) notice of the Combined Hearing Date; and (e) information related thereto.

43. The Debtors believe that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims and Interests in the Non-Voting Classes.

44. The Debtors further request that they not be required to mail Solicitation Packages or other solicitation materials to: (a) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom the Combined Hearing Notice was sent but was subsequently returned as undeliverable.

I.       **The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

45.      Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Similarly, Bankruptcy Rule 3017(c) provides that before approving a disclosure statement, the Court must fix a time within which holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

46.      The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish November 29, 2022 as the Voting Record Date and January 4, 2023 as the Voting Deadline. Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim *only if*: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

47.     The Debtors request that, after the Debtors' distribution of Solicitation Packages to Holders of Claims entitled to vote on the Plan by the Solicitation Deadline, the Court require that all Holders of Claims entitled to vote on the Plan complete, execute, and return their customized Ballots so that they are ***actually received*** by the Solicitation Agent on or before the Voting Deadline.

48.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan a reasonable amount of time, given the circumstances, to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.  Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Classes and the form of, and the Debtors' proposed procedures for distributing, Non-Voting Status Notices to the Holders of Claims and Interests in the Non-Voting Classes.

## III.     The Court Should Approve the Procedures for Confirming the Plan and Approving the Disclosure Statement on a Final Basis.

49.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.  Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan.  Fed. R. Bankr.  P. 3017(c).  In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish [January 9], 2023, at [•]:00 [•].m. prevailing Central Time as the Combined Hearing Date.  The Debtors further request that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a

notice of adjournment filed with the Court and served on the 2002 List.

50.     Rule 2002(b) provides that there should be "not less than 28 days' notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement…" Fed. R. Bankr. P. 2002(b). In this instance, the Debtors are asking for a notice period of twenty-five (25)[4] days. The Court has discretion to reduce the time prescribed by Rule 2002(b). Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1).

51.     Cause exists here to shorten the period prescribed by Rule 2002(b). Given the lack of sufficient liquidity to continue funding these Chapter 11 Cases, it is imperative that the Debtors confirm the Plan and exit bankruptcy as quickly as possible. If the Debtors were required to provide the full notice period pursuant to Rule 2002(b), their current plan for exiting these cases would not be feasible and value for stakeholders would be reduced.

52.     The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Combined Hearing Notice will require that objections to final approval of the Disclosure Statement, confirmation of the Plan, or requests for modifications to the Plan, if any, must:

    a.     be in writing;

    b.     conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any
           orders of the Court;

---

[4]     Assuming Solicitation Packages are served by December 5, 2022.

       c.      state, with particularity, (i) the name of the objector, (ii) the nature and amount of the Claims held or asserted by the objector against the Debtors' estates or properties, (iii) the legal and factual basis for the objection, and the specific grounds therefor, and, if practicable, (iv) a proposed modification to the Plan (or related materials) that would resolve such objection; and

       d.      be filed with the Court and served on the Debtors and certain other parties so that they are received on or before the Plan and Disclosure Statement Objection Deadline.

53.     The Debtors also request that they (and other parties in support of the Plan) be permitted to file a reply to any objections to Confirmation of the Plan by January 6, 2023.

54.     Finally, the Debtors request that the Court establish January 6, 2023 as the Confirmation Brief Deadline.

55.     The Debtors believe that the deadlines will afford the Court, the Debtors, and other parties in interest reasonable time, under the present extenuating circumstances, to consider any objections and proposed modifications prior to the Combined Hearing.

## NON-SUBSTANTIVE MODIFICATIONS

56.     The Debtors request authorization to make non-substantive changes to the Plan and Disclosure Statement, Combined Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Voting and Tabulation Procedures, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Plan and Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

## NOTICE

57.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured

claims against the Debtors (on a consolidated basis); (c) the Debtors secured and unsecured prepetition lenders (i) Generate Lending, LLC, (ii) Mercuria Energy America, LLC, (iii) Marathon Digital Holdings, Inc. (iv) TZ Capital Holdings, LLC, and (v) Foundry Digital LLC; (d) any party known by the Debtors to have asserted a lien on any of the Assets; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In view of the nature of the relief requested, the Debtors respectfully submit that no other or further notice need be provided.

## <u>NO PRIOR REQUEST</u>

58.     No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 23, 2022
Houston, Texas

/s/  James T. Grogan III

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg  (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
           sayanbhattacharyya@paulhastings.com
           danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
           michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

## **Certificate of Service**

I certify that on November 23, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ James T. Grogan III*
James T. Grogan III