**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket Nos. 91 & 256** |

**DECLARATION OF RYAN HAMILTON**
**IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING**
**THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

I, Ryan Hamilton, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am a Senior Vice President at Jefferies LLC ("Jefferies"), a global investment banking firm with its principal offices at 520 Madison Avenue, 6th Floor, New York, New York 10022.

2. I submit this declaration (this "Declaration") in support of (a) the motion [Docket No. 91] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, approval to sell all or substantially all or any subset of the Debtors' assets (collectively, the "Assets") free and clear of any liens, claims, and encumbrances, (b) the *Notice of Successful Bidder for JV Assets*, filed contemporaneously

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

herewith (the "JV Notice of Successful Bidder") designating U.S. Data Group, Inc. ("USBTC" or the "JV Purchaser"), based upon the JV Purchaser's bid set forth in that certain *Asset Purchase Agreement*, dated as of November 22, 2022, which is attached to the JV Notice of Successful Bidder as Exhibit A (the "JV Purchase Agreement"), as the Successful Bidder for the assets identified on Schedule 1.1 of the JV Purchase Agreement (the "JV Assets"), and (c) the proposed form of order, filed contemporaneously herewith (the "JV Sale Order") approving the sale of the JV Assets to the JV Purchaser.

## QUALIFICATIONS

3.      I have advised companies in financial restructurings and distressed mergers and acquisitions, raised capital for troubled companies, and represented debtors and creditor constituencies in bankruptcy proceedings. Before joining Jefferies in 2017, I was a vice president in the restructuring and finance group of Barclays Capital, Inc., which I joined in 2009. I have an MBA from the University of Chicago Booth School of Business, a JD from the University of Chicago Law School, and a BA from Emory University.

4.      On August 16, 2021, the Debtors engaged Jefferies as their investment banker under an engagement letter to explore mergers and acquisitions and capital markets financing alternatives. On July 1, 2022, the scope of Jefferies engagement with the Debtors was expanded to include exploring restructuring alternatives. As a result, I am familiar with the Debtors' corporate and capital structure, management, business operations, and potential investor universe. In addition, in its capacity as the Debtors' investment banker, members of the Jefferies team and I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and in the development of the bidding procedures and the Debtors' marketing and sale process.

5. As a professional retained by the Debtors in these chapter 11 cases, Jefferies is charging for services provided in this matter, but Jefferies is not being specifically compensated for this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Jefferies team, the Debtors' management team, and the Debtors' other advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and my views based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## THE MARKETING PROCESS AND PROPOSED SALES

**A.     General Background**

7. The Debtors are a leader in the data center space and develop, own, and manage data centers across the United States. In addition to their operating and in development data center projects, the Debtors also have excess inventory and equipment that is available for sale, including modular data centers, pad mount transformers, and main power transformers.

8. The JV Assets consist of (a) 100 percent of the membership interest in TZRC LLC, a Delaware limited liability company ("TZRC"), held by Compute North Member LLC, a Delaware limited liability company, which such membership interest represents 50 percent of all issued and outstanding membership interests in TZRC; and (b) that certain *Modular Data Center Property Management Agreement* dated as of March 8, 2022, entered into among TZRC, Compute North Member LLC and TZ Capital Holdings, LLC ("TZCH"), a Delaware limited liability company, as the same may be amended from time to time.

9. The Debtors entered these chapter 11 cases with very limited liquidity and sought approval of a sale process that would maximize the value of the Debtors' Assets within the timeframe permitted by the Debtors' liquidity. On October 24, 2022, Court entered an order [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, certain bidding procedures governing the proposed sale of the Debtors' Assets and certain procedures related to the assumption and assignment of executory contracts and unexpired leases, and the noticing of the same, in connection with a sale (the "Bidding Procedures").

**B.     The Marketing Process**

10. At the direction of the Debtors, Jefferies began a formal marketing process in September 2022 with respect to a potential Sale of the Debtors' Assets.

11. Since the commencement of these cases, Jefferies has continued to administer a postpetition marketing and sale process, including for the JV Assets, on behalf of the Debtors consistent with Bidding Procedures in an effort to maximize value for the Debtors' estates and creditors. To date, the Debtors, with the assistance of Jefferies, solicited indications of interest from potential buyers, 75 of which executed non-disclosure agreements and were provided access to a dataroom containing confidential information regarding the Debtors and their business and Assets, including the JV Assets. Accordingly, the Debtors and their professionals have afforded potential bidders an opportunity to submit bids to acquire the Assets, including the JV assets.

**C.     JV Purchase Agreement and Sale**

12. After the foregoing marketing and sale process, the Debtors received two Qualifying Bids by the Bid Deadline for the JV Assets, one from USBTC and the other from Lake Parime Limited ("Lake Parime"). Accordingly, an auction was held virtually on

November 15, 2022 pursuant to the Bidding Procedures. The Debtors, in consultation with the Consultation Parties, determined the bid submitted by USBTC would be the Baseline Bid for the JV Assets. Multiple rounds of overbids by both bidders followed, including breakout discussions between rounds in which the Debtors and Consultation Parties engaged with USBTC and Lake Parime regarding their respective bids. This process ultimately resulted in two final bids. The Debtors and their advisors weighed and discussed both final bids with the Consultation Parties to determine which constituted the highest and best actionable bid. At the conclusion of the Auction, the Debtors in consultation with the Consultation Parties, announced that the final bid submitted by USBTC was the highest and best actionable bid for the JV Assets. The Debtors, in consultation with the Consultation Parties, reached this determination, notwithstanding that Lake Parime's bid included a higher dollar amount for the JV Assets, based upon, among other factors, certain contingencies in Lake Parime's bid that created uncertainty regarding the ability to close a transaction promptly. Specifically, Lake Parime had not, at the time of placing its final bid, reached an agreement with TZCH, as the other investor in the JV project and the lender to Compute North Member LLC, with respect to the terms of the financing Lake Parime was proposing to assume in its bid. Accordingly, the Debtors, in consultation with the Consultation Parties, announced that USBTC's final bid was the Successful Bid and that Lake Parime's final bid was the Back-Up Bid.

13.     The resulting JV Purchase Agreement provides for, among other things, a cash purchase price of $3,000,000 to be paid to the Debtors on the closing date,[3] the assumption of certain liabilities, including the principal and interest amounts due and owing by Compute North Member LLC under that certain Senior Secured Promissory Note (as amended) issued by

---

[3]  The JV Purchase Agreement also provides for an additional $7 million of the cash purchase price to be paid to TZCH to repay the principal amount owing under the TZCH Senior Note (as defined in the JV Purchase Agreement), for a total cash purchase price of $10 million.

Compute North Member LLC in favor of TZCH, a full waiver of all unsecured claims held by the JV Purchaser, including any rejection damages, and $100,000 for transition services above and beyond all pass through costs.

14. Pursuant to the Bidding Procedures Order and the Bidding Procedures, on November 22, 2022, the Debtors filed the JV Notice of Successful Bidder, advising parties in interest that the Debtors, in consultation with the Consultation Parties, designate the JV Purchaser as the Successful Bidder for the JV Assets and will seek approval of the JV Sale Order approving the JV Purchase Agreement at a hearing to be held on November 22, 2022 at 2:00 p.m. (prevailing Central Time).

## THE JV ASSET PURCHASE AGREEMENT IS THE BEST AVAILABLE TRANSACTION WITH RESPECT TO THE JV ASSETS

15. Based on the foregoing marketing and sale process and my experience as an investment banker, I believe that the JV Purchase Agreement constitutes highest actionable bid received at the Debtors' Auction and the highest and best actionable offer for the JV Assets and should therefore provide the greatest possible recovery for the Debtors' estates. I also believe, based on the foregoing sale process, that the consideration provided by the JV Purchaser pursuant to the JV Purchase Agreement constitutes fair and reasonable consideration for the JV Assets.

16. I further believe that the releases provided for in the JV Order and JV Agreement are necessary to obtain the JV Purchaser's approval of the JV Purchase Agreement. It is my belief that the JV Purchaser would not have entered into the JV Purchase Agreement, and will not consummate the sale and the transactions contemplated thereunder, without the releases set forth therein and in the JV Sale Order.

**GOOD FAITH**

17. I believe that the Debtors, with the aid of their advisors, thoroughly marketed the Assets, including the JV Assets, under the circumstances, and conducted the related sale process in good faith pursuant to the Bidding Procedures and the Bidding Procedures Order. Based on my involvement in the foregoing sale process, I also believe that the terms of the JV Purchase Agreement (including all transactions contemplated therein) were negotiated, proposed, and entered into by the JV Purchaser, on the one hand, and the Debtors, on the other hand, without collusion, in good-faith, and from arm's-length bargaining positions.

18. Finally, I am not aware of any indication of fraud or collusion between any of the bidders that participated in the sale process, the Auction, or any similar conduct that would taint the sale process or the sale of the JV Assets to the JV Purchaser.

**CONCLUSION**

19. Given the above described marketing process, and the diligence conducted by the potential bidders, I believe that the JV Assets have been thoroughly marketed under the circumstances. Further, I believe that (a) the consideration being provided under the JV Asset Purchase Agreement for the JV Assets represents the greatest available recovery to the Debtors and their estates for such assets, and (b) the JV Asset Purchase Agreement represents the highest and otherwise best offer for the JV Assets.

[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 25, 2022
       New York, New York

Respectfully submitted,

*/s/ Ryan Hamilton*
Ryan Hamilton
Senior Vice President
Jefferies LLC