**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE SALE OF**
**CERTAIN ASSETS OF COMPUTE NORTH MEMBER LLC TO**
**US DATA KING MOUNTAIN LLC FREE AND CLEAR OF CERTAIN LIENS,**
**CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION**
**THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 91] (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i)

approving and authorizing the sale (the "Sale") of certain assets owned by Compute North

Member LLC ("Compute North Member") (the "Acquired Assets") free and clear of certain

liens, claims, and encumbrances to US Data King Mountain LLC (the "Purchaser"), pursuant to

that certain asset purchase agreement (the "Asset Purchase Agreement") substantially in the form

attached hereto as **Exhibit 1**, (ii) approving the Asset Purchase Agreement in its entirety and

authorizing the parties thereto to implement and consummate the transactions, including the Sale,

contemplated thereunder; (iii) authorizing the Debtors to assume and assign certain executory

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, include:  Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC
(5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN
Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC
(3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute
North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute
North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The
Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie,
Minnesota 55344.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or
the Asset Purchase Agreement, as applicable.

contracts in connection therewith, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having entered an order on October 24, 2022 [Docket No. 256] (the "Bidding Procedures Order") approving, among other things, the procedures for assumption and assignment of certain executory contracts and leases (the "Assumption and Assignment Procedures") and the dates, deadlines, and bidding procedures (the "Bidding Procedures") with respect to, and notice of, the proposed sale of the Acquired Assets (as defined in the Asset Purchase Agreement); and the Court having conducted a hearing on the Motion on November 29, 2022 (the "Sale Hearing"); and this Court having reviewed the Motion and considered the arguments of counsel and the matters addressed at the Sale Hearing, including the Harvey Declaration and Hamilton Declaration; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.        The findings and conclusions herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.  To the extent of any conflict, the oral rulings shall control.

B.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  Venue of the Debtors' chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).  Determination of the Motion is a core proceeding under 28 U.S.C. §157(b)(2).  The Court may enter this Order, which constitutes a final order, consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and applicable Bankruptcy Local Rules.

C.      On October 24, 2022, this Court entered the Bidding Procedures Order, and thereby (a) approved the Bidding Procedures, the Assumption and Assignment Procedures, the Rejection Procedures, and the form and manner of notice thereof, (b) authorized the Debtors to enter into Asset Purchase Agreements with Stalking Horse Bidders; and (c) scheduled a hearing on the approval of the sale of the Debtors' assets free and clear of all encumbrances, as well as the assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order also established procedures for providing notice of proposed cure amounts (the "Cure Amounts") and relevant objection deadlines.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order. The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

D.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to submit bids to acquire the Acquired Assets.  The Purchaser has acted in

good faith and in compliance with the terms of the Bidding Procedures. The Debtors also received a Qualifying Bid for the Acquired Assets from Lake Parime Limited ("Lake Parime"). The Debtors held an Auction for the Acquired Assets on November 15, 2022 with Purchaser and Lake Parime.  In accordance with the Bidding Procedures at the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, determined that the final bid submitted by the Purchaser at the Auction and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures) for the Acquired Assets and the Debtors, in consultation with the Consultation Parties, designated the final bid received at the Auction from Lake Parime as the Back-Up Bid.  The Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

E.       As evidenced by the certificates of service filed by the Debtors with the Court, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, (i) the Motion, (ii) the Sale Hearing, (iii) the entry of this Order, (iv) the Asset Purchase Agreement, and (v) the transactions contemplated under the Asset Purchase Agreement, including the Sale, the assumption and assignment of the Assigned Contracts (as defined in the Asset Purchase Agreement), and the fixing of Cure Amounts in connection therewith, has been provided to all parties entitled thereto, including, without limitation, all counterparties to the Assigned Contracts.  Such notice constitutes good, sufficient, and appropriate notice of, and a reasonable opportunity to object to or be

heard regarding, the relief sought in the Motion, and no other or further notice is or shall be required.

F.      The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The Debtors (i) have full organizational power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby (and the sale to the Purchaser has been duly and validly authorized by all necessary organizational action), (ii) have full organizational power and authority necessary to consummate the transactions (including the Sale) contemplated by the Asset Purchase Agreement, (iii) have taken all organizational actions necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereunder (including the Sale), and (iv) require no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement and related transaction documents, to consummate such transactions.

G.      The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a reasonable exercise of the Debtors' business judgment, (i) to sell the Acquired Assets on the terms and conditions set forth in the Asset Purchase Agreement, (ii) to assume and assign the Assigned Contracts to the Purchaser, and (iii) to consummate all transactions contemplated by the Asset Purchase Agreement.  All such actions or transactions relating to the Sale and/or contemplated by the Asset Purchase Agreement are appropriate exercises of the Debtors' business judgment.  Approval of the Asset Purchase Agreement (including all transactions and actions contemplated thereunder) and of the assumption and assignment of the Assigned Contracts at this time is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

H.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer reasonably and practically obtainable for the Acquired Assets under the circumstances, and (iii) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Assets.

I.    That certain *Limited Liability Company Agreement of TZRC LLC* dated as of November 24, 2021 (as amended, the "JV LLC Agreement") between Compute North Member and TZ Capital Holdings, LLC ("TZCH") and that certain *Modular Data Center Property Management Agreement* dated as of March 8, 2022 ( as amended, the "PMA") between Compute North Member, TZCH, and TZRC King Mountain LLC shall be assumed and assigned to the Purchaser and, immediately thereafter amended pursuant to that certain *Conditional Consent Agreement* dated as of November 15, 2022 between the Purchaser and TZCH (the "Conditional Consent Agreement").

J.    That certain *Secured Promissory Note* dated April 8, 2022, evidencing the Member Loan (as defined in the JV LLC Agreement) from TZCH to Compute North Member (as amended, the "TZCH Note") is being assumed by the Purchaser with the consent of TZCH pursuant to the terms and conditions of the Conditional Consent Agreement, and immediately thereafter amended pursuant to that certain Conditional Consent Agreement.  Notwithstanding anything to the contrary herein, all liens securing the TZCH Note (the "TZCH Liens") shall not be affected by this Order as against the Acquired Assets and shall remain and continue in full force and effect with respect to the Acquired Assets but, as of Closing, shall no longer be in effect with respect to the Debtors.

K.    The Debtors may sell the Acquired Assets free and clear of any and all liens, claims, interests, rights of setoff, recoupment, netting and deductions, any successor or

successor-in-interest liability theory, and other encumbrances of any kind or nature whatsoever, if any, except for the Assumed Liabilities and the TZCH Liens (the "Encumbrances"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances, if any, as well as any other persons or entities, who did not object, failed to timely object, or withdrew their objections, to the Sale, the Motion, the Asset Purchase Agreement, any transaction contemplated thereunder, and/or the assumption and assignment of the Assigned Contracts, are deemed to have fully consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Encumbrances on the Acquired Assets, if any, are adequately protected by such Encumbrances attaching to the net cash proceeds of the Sale (after giving effect to any closing costs payable by the Debtors) solely attributable to the Acquired Assets in which such holder alleges an Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto. For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Assets prior to the Sale shall not attach to the proceeds of the Sale.

L.     The Purchaser is not, and shall not be considered or deemed, a successor to any of the Debtors or their respective estates, and there is no continuity of enterprise between the Purchaser and any Debtor. The Purchaser (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

M.     The releases provided for in this Order are consensual, reasonable in scope, and necessary to obtain the Purchaser's approval of the Asset Purchase Agreement.  The Purchaser would not have entered into the Asset Purchase Agreement and would not contemplate the Sale and the transactions contemplated thereunder, without the releases set forth in this Order.  The Motion shall be deemed a motion to approve the good-faith compromise and settlement of all such claims, interests, and controversies pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and the entry of this Order shall constitute the Court's approval of such compromise and settlement under section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is a valid exercise of the Debtors' business judgment, fair, equitable, reasonable, and in the best interests of the Debtors and their estates.

N.     As a material condition to TZCH's consent to the Sale and the transactions contemplated therein, including the Purchaser's assumption of the TZCH Note and the assumption and assignment of the JV LLC Agreement and the PMA, the Debtors have agreed to withdraw with prejudice the *Debtors' Emergency Motion for Entry of an Order Pursuant to Sections 105(a), 362, and 542 of the Bankruptcy Code Enforcing the Automatic Stay, Compelling Turnover of Property of the Estate, and Sanctioning NextEra Energy and its Affiliates for Violation of the Automatic Stay* [Docket No. 165] (the "Stay Motion") at or before the Closing of the Sale; provided that TZCH agrees that at or before the Closing of the Sale any objections or responses filed by TZCH with respect to the Stay Motion will be withdrawn with prejudice.

O.     The Purchaser would not have entered into the Asset Purchase Agreement, and would not consummate the Sale and the transactions contemplated thereunder, if the Sale and the assumption and assignment of the Assigned Contracts were not, except as otherwise provided

herein and in the Asset Purchase Agreement, free and clear of any and all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement and with respect to the Assumed Liabilities and the TZCH Liens), be liable for any of such Encumbrances.

P.      Subject to further order of this Court and the reservations as included herein, the Assigned Contracts identified in the Asset Purchase Agreement are valid and binding, in full force and effect, and enforceable in accordance with their terms, and are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code, subject to resolution of any pending Cure Disputes, as applicable.

Q.      Subject to further order of this Court and the reservations as included herein, the Purchaser has provided, or will provide following resolution of any applicable Cure Dispute, adequate assurance, within the meaning of Section 365(b)(1) of the Bankruptcy Code.  The undisputed Cure Amount shall be paid in accordance with the terms of any order entered by the Court approving the assumption and assignment of such Assigned Contract or as otherwise agreed among the parties, following resolution of any cure dispute.

R.      To the extent that any non-Debtor party to any Assigned Contract objects or asserts or claims some greater amount is owed to it under such Assigned Contract other than the Cure Amount stated with respect to the relevant Assigned Contract, such objection, assertion, and/or claim is expressly overruled, unless it has been properly preserved by timely objection for future resolution pursuant to the Assumption and Assignment Procedures.

S.      The Assumption and Assignment Procedures, as set forth and defined in the Bidding Procedures Order, are reasonable and provide all parties with appropriate notice and ability to object.  Each of the non-Debtor parties to the Assigned Contracts (i) has had a fair and

reasonable opportunity to object to the Assumption Notice served on October 18, 2022 [Docket No. 209], and the supplements to the Assumption Notice served on October 28, 2022 [Docket No. 334] and on November 11, 2022 [Docket No. 469], and (ii) will have a fair and reasonable opportunity to object to the Notice of Successful Bidder detailing the Assigned Contracts to be assumed and assigned and served on November 25, 2022 [Docket No. ____], subject to the applicable objection deadline provided in the Bidding Procedures Order.

T.      It is essential that the Sale occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

U.      The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b). and 365(f).  All of the applicable requirements of such sections have been complied with in respect of the Sale.

V.      The terms of the Asset Purchase Agreement were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, the Purchaser, nor any parent, subsidiary, affiliate, director, officer, or representative of the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale or any transactions contemplated thereunder, or this Order to be avoided or otherwise challenged under section 363(n) of the Bankruptcy Code.

W.     Neither the Purchaser nor any of its affiliates, members, managers, principals, officers, directors, shareholders, or any of its or their respective successors or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not otherwise affiliated with the Debtors.

X.     The Purchaser has proceeded in good faith and without collusion in all respects in connection with the Sale and the Asset Purchase Agreement.  The negotiation and execution of the Asset Purchase Agreement and related documents were conducted in good faith and constituted an arm's-length transaction, and the Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors.  The Purchaser is therefore a "good-faith purchaser" and entitled to all of the rights, benefits, privileges, and protections provided to a good-faith purchaser under Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Asset Purchase Agreement and this Order.  The Purchaser has otherwise proceeded in good faith in connection with these chapter 11 cases and this proceeding.

Y.     In the absence of a stay pending appeal, the Purchaser may close the Sale and the other transactions contemplated by the Asset Purchase Agreement at any time after entry of this Order.  Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE, IT IS HEREBY ORDERED THAT**:

1.     The Motion is GRANTED, and the Sale and the transactions contemplated in the Asset Purchase Agreement are approved as set forth herein and the Debtors are authorized to consummate the Sale and the transactions contemplated in the Asset Purchase Agreement.

2.      All objections, if any, and any and all joinders thereto, to the relief requested in the Motion and the entry of this Order, whether filed or stated on the record before this Court, which have not been withdrawn with prejudice, waived, settled, or preserved at the Sale Hearing, and all reservations of rights included in such objections (except for pending Cure Disputes or as provided for herein), are hereby overruled and denied on the merits and with prejudice.

3.      Notice of the Motion, the Sale, the Asset Purchase Agreement, all transactions contemplated thereunder, the Sale Hearing, and the entry of this Order was sufficient and appropriate under the circumstances, complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no additional or other notice need be provided.

4.      In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Sale, including all of the terms and conditions related thereto as set forth in the Asset Purchase Agreement, is hereby authorized and approved in all respects. The Asset Purchase Agreement, together with all annexes, exhibits, and amendments thereto, including all actions and transactions contemplated therein and all of the terms and conditions thereof, is hereby authorized and approved in its entirety.  The Debtors are hereby authorized and directed to enter into the Asset Purchase Agreement and to perform all of their obligations thereunder.  The failure to specifically include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement, and any related agreements, and any amendments thereto as may be made by the parties thereunder in accordance with the Asset Purchase Agreement, be authorized and approved in their entirety and incorporated by reference as if fully set forth herein.

5.      Subject to further order of this Court and the reservations as included herein, the Debtors are authorized to assume the Assigned Contracts and to assign them to the Purchaser without limiting any Counterparty's rights under timely and unresolved Cure Disputes.  Unless otherwise agreed with the Purchaser, no employment or benefits agreements will be assumed and assigned to the Purchaser.

6.      The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code as to all aspects of the Sale and the transactions under and pursuant to the Asset Purchase Agreement and this Order.  The transfer of the Acquired Assets to the Purchaser, and the related transactions to be consummated in accordance with the Asset Purchase Agreement, constitute a good-faith transaction entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Acquired Assets to the Purchaser (including the assumption and assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.

7.      The terms of the Asset Purchase Agreement (including regarding the Sale and any and all other transactions contemplated thereunder) were negotiated, proposed, and entered into by the Purchaser and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.  The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable, and the Sale and any transactions under the Asset Purchase Agreement may not be avoided under section 363(n) of the Bankruptcy Code.

8.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Debtors are authorized to and shall transfer the Acquired Assets to the Purchaser at the Closing (as defined in the Asset Purchase Agreement), and the Sale shall be, free and clear of any and all Encumbrances, with any and all such valid or asserted Encumbrances, if any, upon the Closing, attaching solely to the proceeds of the Sale ultimately attributable to the Acquired Assets against which the holders thereof assert an Encumbrance, with the same nature, validity, priority, extent, perfection, force, and effect, if any, that such Encumbrances encumbered all or any portion of the Acquired Assets immediately prior to the Closing, subject to any claims, defenses, and objections that the Debtors, their estates, or any other party in interest may possess with respect thereto.  For the avoidance of doubt, any Encumbrances held by the Purchaser on the Acquired Assets prior to the Sale shall not attach to the proceeds of the Sale.

9.     The Acquired Assets shall be transferred to the Purchaser upon and as of the Closing, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets.  The Debtors are further authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement; (b) close the Sale as contemplated by the Asset Purchase Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement and any actions or transactions contemplated thereunder, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or

appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement and such other ancillary documents.

10.     On or before the Closing of the Sale, the Debtors shall withdraw the Stay Motion against TZCH with prejudice and TZCH shall withdraw any objection or response to the Stay Motion with prejudice, and in all events, the Stay Motion and any objections or responses filed by TZCH with respect thereto will be deemed withdrawn with prejudice upon the Closing of the Sale.

11.     Upon Closing, the Guaranty Agreement, by and between TZCH and Compute North Holdings, Inc. shall be terminated and of no further force and effect and any and all claims (whether or not filed or scheduled) related to the obligations under the Guaranty Agreement shall be deemed withdrawn or expunged.

12.     Subject to further order of this Court and the reservations as included herein, the assumption of the Assigned Contracts and the assignment thereof to the Purchaser is approved, subject to resolution of any pending, timely Cure Disputes.  The Debtors are authorized and directed to assign the Assigned Contracts in connection with the Sale under the Asset Purchase Agreement, with such assignment, in each case, being effective as of the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes.  The Purchaser has or will provide adequate assurance, within the meaning of Section 365(b)(1) of the Bankruptcy Code with respect to the Assigned Contracts.  All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for such assumption by the relevant Debtor and assignment to the Purchaser of each Assigned Contract have been satisfied and, upon the later of (x) Closing and (y) resolution of any pending, timely Cure Disputes, as applicable, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract, and each Assigned Contract shall

remain valid and binding, and in full force and effect, for the benefit of the Purchaser in accordance with its terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Cure Amount set forth in an Assumption Notice, or as otherwise agreed by the non-Debtor parties to the Assigned Contracts or by order of the Court, constitutes all of the Cure Amount that is required to be paid under section 365(b)(1) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts.  Pursuant to section 365(k) of the Bankruptcy Code, other than as provided for in the Asset Purchase Agreement, upon the assignment of the Assigned Contracts to the Purchaser, neither the Debtors nor the Purchaser shall have any further liability or obligations with respect thereto.

13.     Upon the Closing Date, and except as otherwise provided herein, in the Asset Purchase Agreement, or in the  Conditional Consent Agreement, the Purchaser shall not be liable for any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein, in the Asset Purchase Agreement, or in the  Conditional Consent Agreement, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, claims arising under the federal Worker

Adjustment and Retraining Notification (WARN) Act or any state equivalent thereof, claims of the United States Securities and Exchange Commission ("SEC") or any other entity arising from or in connection with any pending SEC investigation of one or more of the Debtors, environmental liabilities, workers' compensation "experience rating," unemployment tax "contribution rating" rule or regulation, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing.

14.     Except as otherwise set forth herein, in the Asset Purchase Agreement or in the Conditional Consent Agreement, all persons and entities holding liens or interests in the Acquired Assets arising under, out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Acquired Assets, such persons' or entities' liens or interests in and to the Acquired Assets.  For the avoidance of doubt, nothing in this paragraph or any other provision of this Order shall impair or affect the TZCH Liens as against the Acquired Assets or TZCH's rights under the Conditional Consent Agreement and the agreements related thereto.

15.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances of record.

16.     If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on, or interests in, the Acquired Assets shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of Encumbrances which the

person or entity has or may assert with respect to the Acquired Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets.

17. This Order, whether or not filed, registered, or otherwise recorded (including by entry on this Court's docket), shall be effective as a conclusive determination of the transfer of title in the Acquired Assets to the Purchaser, and that all Encumbrances existing as to all or a portion of the Acquired Assets have been unconditionally released, discharged, and terminated. The Sale and this Order are and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

18. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the

rights of any party holding a lien, claim, or encumbrance, if any, on or against the Acquired Assets.

19.     The Back-Up Bid constitutes an irrevocable offer and is binding on Lake Parime until two (2) business days after the closing of the Sale to the Purchaser.

20.     All time periods set forth in this Order and the Asset Purchase Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

21.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit closing of the sale of the Acquired Assets.  This Order shall otherwise be effective immediately upon its entry.

22.     To the extent there is any inconsistency between the terms of the Asset Purchase Agreement, the Motion, and this Order, the terms of this Order shall govern.

23.     For good and valuable consideration on behalf of the Purchaser, the adequacy of which is hereby confirmed, on and after the Closing, each of the Debtors (in their own right, on behalf of their estates and their current and former direct and indirect subsidiaries, and each such entity's and the Debtors' current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Debtor Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Purchaser, the Purchaser's current and former direct and indirect subsidiaries, affiliates, and equity holders (regardless of whether such interests are held directly or indirectly), including, without limitation, U.S. Data Mining Group,

Inc. (d/b/a US Bitcoin Corp.), U.S. Data Group, Inc., and U.S. Data Energy Group, Inc., and each such entity's and the Purchaser's current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including general and limited partners), representatives, predecessors, attorneys, and successors and assigns (collectively, the "Purchaser Released Parties") and their respective property and assets from any and all acts and omissions of the Purchaser Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Debtor Releasing Parties now have, may claim to have or may come to have against the Purchaser Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code; (c) any and all claims and causes of action based on or relating to or in any manner arising from, in whole or in part, any Purchaser Released Party's efforts related to the Asset Purchase Agreement; and (d) any and all offsets, defenses, claims, counterclaims, set-off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment,

subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under similar provisions of applicable state, federal, or foreign laws, including, without limitation, any right to assert any disgorgement or recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Purchaser Released Party from any claims, obligations, or liabilities arising after Closing under the Sale Order.

24.     On and after the Closing, the Purchaser (in its own right, on behalf of any current and former direct and indirect subsidiaries and affiliates, and its current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly) principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, partners (including general and limited partners), representatives, predecessors, and successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacity as such) (collectively, the "Purchaser Releasing Parties") hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the Debtors, the Debtors' current and former direct and indirect subsidiaries, affiliates, and equity holders (regardless of whether such interests are held directly or indirectly), and each such entity's and the Debtors' current and former officers, members, managers, directors, principals, employees, agents, independent contractors, managed accounts or funds, management companies, fund advisors, investment advisors, financial advisors, attorneys, partners (including general and limited partners), representatives, predecessors, and successors and assigns (collectively, the "Debtor Released Parties") and their respective property and assets from any and all acts and

omissions of the Debtor Released Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Purchaser, or the Purchaser's successors or assigns, whether individually or collectively), which the Purchaser Releasing Parties now have, may claim to have or may come to have against the Debtor Released Parties through the Closing, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code; (c) any and all claims and causes of action based on or relating to or in any manner arising from, in whole or in part, any Debtor Released Party's efforts related to the Asset Purchase Agreement; and (d) any and all offsets, defenses, claims, counterclaims, set-off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under similar provisions of applicable state, federal, or foreign laws, including, without limitation, any right to assert any disgorgement or recovery, and further waives and releases any defense, right of counterclaim, right of setoff, or deduction; provided that this paragraph shall not release any Debtor Released Party from any claims, obligations, or liabilities arising after Closing under the Sale Order.

25.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

28.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement, the Motion, and this Order.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion including, without limitation, the withdrawal with prejudice of the Stay Motion.

30.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting these chapter 11 cases to chapter 7 cases, confirming or consummating any plan(s) of reorganization of the Debtors, or dismissing any Debtors' chapter 11 cases, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code.  The obligations of the Debtors under this Order or the Asset Purchase Agreement, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' chapter 11 cases.  Any order granting conversion or dismissal of any of the Debtors' chapter 11 cases shall specifically provide that this Order shall survive such conversion or dismissal.

31.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement and implementation of this Order

23

and the terms and provisions of the Asset Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith).

32.     This Order and the Asset Purchase Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, their successors and assigns, all creditors of and holders of equity interests in the Debtors, any holders of liens against or on all or any portion of the Acquired Assets, and, as applicable, any trustee that may be appointed in these chapter 11 cases or any superseding cases under chapter 7 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order.

33.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Asset Purchase Agreement, or any other document related to the Sale, to the extent that any agreement between one or more of the Debtors and Marathon Digital Holdings, Inc. and/or any of its affiliates (together, "Marathon") constitutes an "Assigned Contract" or otherwise will be transferred or assigned to the Purchaser or a third party designated by Purchaser pursuant to this Order, the Assumption Notice, the Bidding Procedures Order, the Asset Purchase Agreement, or any other document related to the Sale, Marathon's right to assert setoff, recoupment, and common law or statutory rights under similar doctrines, whether arising out of state law or bankruptcy law, shall be expressly preserved and the rights of all parties in interest, including the Debtors and the Purchaser, to respond or object to such setoff, recoupment, and common law or statutory rights under similar doctrines are also expressly preserved.

34.     Notwithstanding anything to the contrary in this Order, the Assumption Notice, the Bidding Procedures Order, the Asset Purchase Agreement, or any other document related to the Sale, Marathon's rights are preserved to further object to the assumption or assumption and assignment of any of Marathon's agreements with the Debtors to Purchaser or a third party designated by Purchaser on any basis, including (without limitation) the failure to provide adequate assurance of prompt cure, compensation for pecuniary loss, or future performance, and the rights of all parties in interest, including the Debtors and the Purchaser, to respond to any such objection are also expressly preserved.

35.     33. For the avoidance of doubt, the Debtors have not sought authorization for, and this Order does not authorize, the sale of assets that are owned by non-Debtor third parties and any such relief shall be subject to further order of the Court upon notice and an opportunity to object.

Houston, Texas
Dated: _____, 2022

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

**ASSET PURCHASE AGREEMENT**