UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Re: Docket Nos. 531 & 627 |

**DECLARATION OF DRAKE HARVEY
IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO ASSUME AND ASSIGN
CERTAIN EXECUTORY CONTRACTS TO FOUNDRY DIGITAL LLC PURSUANT TO
SECTION 365 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

I, Drake Harvey, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the President of Compute North LLC and the other above-captioned debtors and debtors in possession (collectively, "Compute North" or the "Debtors").

2. I submit this declaration (this "Declaration") in support of (a) the motion [Docket No. 627] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, authorization to assume and assign certain executory contracts to Foundry Digital LLC and (b) the proposed form of order (the "Order").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## QUALIFICATIONS

3.  I was appointed President of Compute North in September 2022, and prior to that appointment I served as Compute North's Chief Operating Officer. In my capacity as President of Compute North, I am generally familiar with Compute North's business, operations, assets, liabilities, day-to-day operations, and financial affairs and I have been actively involved in the Debtors' restructuring efforts, including the marketing and sale process.

4.  Prior to joining Compute North in April 2021, I held leadership positions in telecommunications, technology, and SaaS businesses, and also have experience leading startup companies. I hold a BS in Business Administration from the University of Delaware.

5.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## BACKGROUND ON THE EXECUTORY CONTRACTS

5.  On February 3, 2022, Debtor Compute North LLC ("CN LLC") and Debtor CN Mining entered into a Master Agreement (the "Master Agreement"), a copy of which was attached to the motion as Exhibit B, as well as (i) Order Form Deal ID 7656512161 (the "Kearney Order Form"), a copy of which was attached to the motion as Exhibit C and (ii) Order Form Deal ID 8713872290 (the "Wolf Hollow Order Form" and together with the Master Agreement and the Kearney Order form, collectively, the "Master Agreement and Order Forms"), a copy of which was attached to the motion as Exhibit D. The Master Agreement provided for the colocation, managed and other services for CN Mining's cryptocurrency mining hardware. The Kearney Order Form provided for the order and deployment of CN Mining's cryptocurrency mining

hardware at a bitcoin mining facility located in Kearney, Nebraska (the "Kearney Facility") and the Wolf Hollow Order Form provided for the order and deployment of CN Mining's cryptocurrency mining hardware at a bitcoin mining facility located in Granbury, Texas (the "Wolf Hollow Facility").

6. On February 7, 2022, CN LLC partially assigned the Master Agreement and the Kearney Order Form, including 3,110 CN Mining miners, to Compute North NE05 LLC, a non-debtor and owner of the Kearney Facility, pursuant to that Partial Assignment and Assumption Agreement dated as of February 7, 2022, between Compute North LLC and Compute North NE05 LLC. The Partial Assignment and Assumption Agreement with Compute North NE05 LLC, insofar as it pertains to CN Mining, was attached to the motion as Exhibit E.

7. On April 27, 2022, CN LLC partially assigned the Master Agreement and the Wolf Hollow Order Form, including 542 CN Mining miners, to CN Wolf Hollow LLC, a non-debtor and owner of the Wolf Hollow Facility, pursuant to that Partial Assignment and Assumption Agreement dated as of April 27, 2022, between Compute North LLC and CN Wolf Hollow LLC. The Partial Assignment and Assumption Agreement with CN Wolf Hollow LLC, insofar as it pertains to CN Mining, was attached to the motion as Exhibit F.[3]

8. It is my understanding that as a result of the Customer Agreements, Compute North NE05 LLC is currently obligated to provide services to CN Mining under the Master Agreement on account of CN Mining's equipment located at the Kearney Facility. It is also my understanding that as a result of the Customer Agreements, CN Wolf Hollow LLC is currently obligated to provide services to CN Mining under the Master Agreement on account of CN Mining's equipment

---

[3] In the Motion, the agreements contained in Exhibits B through F are referred to collectively as the "Customer Agreements."

located at the Wolf Hollow Facility. Further, there are no amounts currently owed by CN Mining to either CN Wolf Hollow LLC or Compute North NE05 LLC under the Customer Agreements.

9. At the Bid Deadline, the Debtors received multiple bids across their various pools of assets, including a bid from Foundry Digital LLC for certain assets, including substantially all assets of CN Mining. Thereafter, the Debtors, in consultation with the Consultation Parties, declared Foundry Digital LLC ("Foundry" or the "Purchaser") as the Successful Bidder for the Purchased Assets. On November 19, 2022, certain of the Debtors entered into that Asset Purchase Agreement, by and between Foundry and CN LLC, Compute North SD, LLC, Compute North Texas LLC, CN Mining, and CN Minden LLC, dated November 19, 2022 (the "Asset Purchase Agreement").

10. On November 22, 2022, the Bankruptcy Court entered the *Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Sale Order") [Docket No. 531] approving the sale transactions set forth in the Asset Purchase Agreement in full and complete satisfaction of the requirements of Section 7.3(d) of the Asset Purchase Agreement.

11. Since entry of the Sale Order, the Debtors and Foundry have been working to close the transactions contemplated in the Asset Purchase Agreement. The Debtors anticipated the closing of the transactions contemplated under the Asset Purchase Agreement to occur on Wednesday, December 7, 2022. Pursuant to Section 7.3 of the Asset Purchase Agreement, Purchaser's obligation to close is subject to the satisfaction of certain conditions precedent listed therein. The Debtors have fully and completely satisfied each of these conditions precedent to Closing (as defined in the Asset Purchase Agreement).

12. In full and complete satisfaction of the requirements of Section 7.3(a) and Section 7.3(b) of the Asset Purchase Agreement, on December 2, 2022, the Debtors delivered to Purchaser a certificate (the "Closing Certificate") duly signed by an authorized person of the Debtors dated as of the anticipated closing date certifying that (a) (i) the representations and warranties of the Debtors contained in Article IV of the Asset Purchase Agreement that are qualified by a "materiality" limitation or qualification are true and correct in all respects as of the anticipated closing date as if made on and as of such date (other than for such representations and warranties that are made as of a specific date, which were true and correct in all respects only as of such specified date), and (ii) the representations and warranties of the Debtors contained in Article IV of the Asset Purchase Agreement that are not qualified by a "materiality" limitation or qualification are true and correct in all material respects as of the anticipated closing date as if made on and as of such date (other than for such representations and warranties that are made as of a specific date, which were true and correct in all material respects only as of such specified date) and (b) the Debtors have performed and complied in all material respects with all covenants, obligations and agreements required in the Asset Purchase Agreement to be performed or complied with by the Debtors on or prior to the Closing Date (as defined in the Asset Purchase Agreement).

13. On December 2, 2022, the Debtors also delivered to Purchaser the schedules required to be delivered pursuant to Section 6.17 of the Asset Purchase Agreement no later than three (3) Business Days (as defined in the Asset Purchase Agreement) prior to the Closing.

14. In full and complete satisfaction of the requirements of Section 7.3(c) and Section 3.2 of the Asset Purchase Agreement, on December 2, 2022, the Debtors delivered to Purchaser each of the following: (a) joint written instructions, duly executed by the Debtors, authorizing release of the Deposit (as defined in the Asset Purchase Agreement) to the Debtors; (b) a bill of

sale and assignment and assumption agreement, in the form attached to the Asset Purchase Agreement as Exhibit A, duly executed by the Debtors; (c) an intellectual property assignment agreement, in the form attached to the Asset Purchase Agreement as Exhibit B, duly executed by the Debtors; (d) Seller Disclosure Schedules (as defined in the Asset Purchase Agreement) in form and substance acceptable to Purchaser and attached to the Asset Purchase Agreement as Exhibit C; (e) a transition services agreement in form and substance satisfactory to the Purchaser and reasonably acceptable to the Debtors and substantially in the form attached to the Asset Purchase Agreement as Exhibit D, duly executed by Compute North LLC; (f) a duly executed non-foreign person affidavit of the Debtors dated as of the Closing Date, sworn under penalty of perjury, and in the form provided at Treasury Regulations § 1.1445-2(b)(2)(iv)(B); and (g) the Closing Certificate.

15. Pursuant to Section 4.11 of the Seller Disclosure Schedules, the Debtors provided a list of all Permits (as defined in the Asset Purchase Agreement) held by them and copies thereof, which are to be validly assigned to Purchaser effective as of the Closing in full and complete satisfaction of the requirements of Section 7.3(e).

16. In full and complete satisfaction of the requirements of Section 7.3(f) the Debtors have certified that, as of the Execution Date (as defined in the Asset Purchase Agreement) of the Asset Purchase Agreement, all Assigned Contracts (as defined in the Asset Purchase Agreement) set forth in Schedule 8.1(f) of the Asset Purchase Agreement (a) were fully and validly executed, binding, and in full force and effect, (b) were not subject to any objection, challenge, default or cure (other than any Cure Cost (as defined in the Asset Purchase Agreement) agreed upon by the Purchaser in its sole discretion), (c) did not require any consent, permit, authorization or notice, including from any non-Debtor or third party, for any assignment to the Purchaser and to the extent

any such consent, permit, authorization or notice is required or contemplated, all such consents, permits, authorizations and/or notices have been obtained and/or provided; and (d) would be validly assigned to the Purchaser effective as of the Closing.

17. Accordingly, the Debtors have fulfilled their obligations to close the transactions contemplated in the Asset Purchase Agreement and Foundry is now obligated to close.

18. Nevertheless, I have been informed that Foundry may not go forward with the Closing unless it receives additional comfort that CN Mining will have the benefit of services rendered to CN Mining under the Customer Agreements by Compute North NE05 LLC and CN Wolf Hollow LLC.

19. I understand that this is not required to move forward with the Closing but I believe it is prudent to attempt to give Foundry the comfort it has requested by seeking the relief set forth in the Motion to avoid any further delay in the Closing. Any further delay in the Closing will increase the risk that the Closing will not occur, which would cause significant damage to the Debtors and their estates.

## CONCLUSION

20. In conclusion, I believe that the Court should approve the Motion and grant the proposed assumption and assignment of the Customer Agreements by CN Mining to Foundry effective as of, but subject to, the occurrence of the Closing.

[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: December 8, 2022
       Eden Prairie, Minnesota

Respectfully submitted,

*/s/ Drake Harvey*
Drake Harvey
President
Compute North LLC