IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § § § § | Case No. 22-90273 (MI) |
| | § | (Jointly Administered) |
| Debtors.¹ | § § | Re: Docket No. 630 |

**JOINT MOTION OF DEBTORS AND MARATHON DIGITAL HOLDINGS, INC. FOR <u>EMERGENCY</u> APPROVAL OF STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS, MARATHON DIGITAL HOLDINGS, INC., GENERATE LENDING, LLC AND CERTAIN AFFILIATES AND MVP LOGISTICS, LLC, CONCERNING MARATHON'S MINERS**

> **EMERGENCY RELIEF HAS BEEN REQUESTED.  RELIEF IS REQUESTED NOT LATER THAN DECEMBER 16, 2022.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR".  CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Compute North LLC ("**Compute North**," together with its debtor affiliates in the above-captioned chapter 11 cases, the "**Debtors**") and Marathon Digital Holdings, Inc. ("**Marathon**"), respectfully represent as follows in support of this request:

### Relief Requested

1. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors and Marathon jointly request, on an emergency basis, approval of the Stipulation and Agreed Order (as defined below) by and among the Debtors, Marathon, Generate Lending, LLC ("**Generate Lending**"), GC Data Center Equity Holdings, LLC ("**GC Data Center**"), and MVP Logistics, LLC ("**MVP**"), a copy of which was filed on December 8, 2022, at Docket No. 630 and is annexed hereto as **Exhibit A**.

### Jurisdiction

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3. On September 22, 2022 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. Since prior to the Petition Date, the Debtors have been marketing their assets for sale. On October 31, 2022, GC Data Center and Debtor CN Pledgor entered into a Purchase and Sale Agreement (the "**PSA**"), whereby Debtor CN Pledgor sold 100% of its equity interests in CN Borrower to GC Data Center Equity Holdings, LLC, an affiliate of Generate Lending, LLC ("**Generate**"). On November 1, 2022, the Court entered the *Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free and Clear of All Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* (Docket No. 362) (the "**Generate Sale Order**"), which, among other things, approved Debtor CN Pledgor's entry into the PSA and sale of its equity interests in CN Borrower (the "**Generate Sale**"). The Generate Sale closed on November 2, 2022. Generate did not designate for assumption and assignment in connection with the Generate Sale any agreements between the Debtors and Marathon. *See Notice of No Contracts Designated for Assumption and Assignment in Connection with Approved Sale* (Docket No. 412).

5. On November 23, 2022, the Debtors filed their proposed *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* (Docket No. 576) (the "**Liquidating Plan**") and related Disclosure Statement (Docket No. 577). In the Liquidating Plan, the Debtors contemplate selling all their remaining assets and distributing the proceeds pursuant to the waterfall established in the Liquidating Plan. *See* Liquidating Plan at §§ 3, 4. The Liquidating Plan also contemplates that all executory contracts or leases not already assumed shall be rejected on the effective date of the plan. *See* Liquidating Plan § 5.1.

6. On November 29, 2022, the Court entered the *Order (I) Approving the Sale of Certain Assets of Compute North Member LLC to US Data King Mountain LLC Free and Clear*

*of Certain Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* (Docket No. 594), pursuant to which U.S. Data Group, Inc. ("**U.S. Data**") purchased the Debtors' 50 percent membership interest in the non-Debtor TZRC LLC (the "**King Mountain Sale**"). As part of the King Mountain Sale, U.S. Data did not acquire any contracts between the Debtors and Marathon.

7. On December 8, 2022, the Parties executed and filed the *Stipulation and Agreed Order by and Among the Debtors, Marathon Digital Holdings, Inc., Generate Lending, LLC and Certain Affiliates and MVP Logistics, LLC, Concerning Marathon's Miners* (Docket No. 630) (the "**Stipulation and Agreed Order**" or the "**Stipulation**").[2]

### Disputes Between the Debtors and Marathon

8. Marathon is one of Compute North's largest creditors, customers, and preferred equity investors. On November 23, 2022, Marathon filed a proof of claim, numbered 36 in the Claims Register maintained for the Debtors (the "**Marathon POC**"), asserting a claim in an amount of up to $42,398,216.55 for breaches arising from various hosting agreements; $21,266,580.63, plus fees and expenses arising from that certain Senior Promissory Note, dated as of July 1, 2022, by and between Marathon, as Lender, and Compute North LLC, as Borrower (the "**Marathon Note**"); $14,000,000 for breach of a letter of intent between the parties whereby Compute North LLC promised to expedite the process of installing and energizing Marathon's miners; and at least $1,700,000 and an additional $250,000 daily for lost revenue, profits and other damages claims. The Debtors assert they have not reconciled the Marathon POC and may dispute

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Stipulation.

4

the amounts set forth therein, except with respect to the portion of the Marathon POC related to the Marathon Note. The Debtors and Marathon and its affiliates reserve all their respective rights regarding all claims, other than the portion of the Marathon POC related to the Marathon Note, asserted by Marathon and its affiliates against the Debtors in the Marathon POC.

9. Additional details regarding the disputes between the Debtors and Marathon are set forth in the Stipulation's recitals and Marathon's POC.

**Requested Relief Should be Granted on an Emergency Basis**

10. Bankruptcy Rule 9019(a) provides that on motion and after notice and a hearing, "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A bankruptcy court may approve a compromise or settlement as long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Refin. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court. *See U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984).

11. The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. *See Age Refin.*, 901 F.3d at 540. Courts consider the following: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *Id.*

12. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d

5

914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540 (citations omitted); *Foster Mortg. Corp.*, 68 F.3d at 918.

13. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *See Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

14. The Stipulation clearly meets these standards. Since the Petition Date, Marathon has repeatedly requested the Debtors provide access to and the return of the Uninstalled Miners. The Debtors, in turn, have asserted Marathon owes payment of certain outstanding invoices, which Marathon disputes. After approximately two months of arm's length negotiations, Marathon and the Debtors have successfully brokered a comprehensive agreement between and among Marathon, the Debtors, MVP, and Generate that resolves multiple disputes, including those between Marathon and the Debtors regarding the invoices and prompt return of Marathon's Uninstalled Miners.

15. Marathon asserts that this resolution comes with no time to spare, as Marathon, a publicly traded company subject to SEC regulation, is required before the end of the year to comply with certain reporting obligations. Marathon asserts that it must conduct an inventory of its miners in connection with preparing its audited financials and public disclosures. Marathon estimates that conducting such an inventory will take up to two weeks to complete and, with the rapidly approaching holiday season, Marathon believes the parties cannot risk further delaying Marathon's access to its equipment, otherwise, it may not be able to timely complete its inventory before year-end. As such, Marathon has calculated it will require access no later than mid-December to ensure

it has sufficient time to accurately account for the Uninstalled Miners as a part of its end-of-year auditing process.

16. Given Marathon's deadline, Marathon has maintained to the Debtors that, absent a near-term consensual resolution, Marathon would have no choice but to file motions with this Court seeking emergency relief to, among other things: lift the stay, to the extent it applies, to provide Marathon immediate access to and the return of its Uninstalled Miners; allow Marathon to setoff and recoup its claims against the Debtors against claims asserted by the Debtors against Marathon; have the Debtors provide adequate protection to Marathon; and compel the Debtors to immediately reject the Agreements.

17. Emergency approval of the Stipulation also benefits the Debtors. In addition to Marathon's miners, certain property of the Debtors' estates is being stored by MVP, and, as part of their ongoing sale process, the Debtors assert they require access to such property. Although the parties dispute financial responsibility for the MVP storage costs associated with Marathon's equipment, prompt resolution of MVP's claims and purported liens will benefit both the Debtors and Marathon in their efforts to retrieve equipment from storage. Marathon also asserts, and the Debtors dispute, that the failure to install and energize the Uninstalled Miners will result in claims by Marathon against the Debtors for damages. Marathon asserts that it loses significant revenue from the Debtors' failure to timely install and energize the Uninstalled Miners per the parties' agreements. Further, Marathon asserts that its inability to access the miners, relocate them to a facility, and enter into new agreements with a third-party hosting service provider to operate the miners prevents the parties from mitigating damages. Until the Stipulation is entered, Marathon asserts that it continues to incur opportunity costs while the Uninstalled Miners are burdened by (i) the Agreements (which the Debtors intend to reject during these cases or under their proposed

chapter 11 plan) and (ii) the liens asserted by the Debtors and by MVP. Although the Debtors may dispute these claims for damages, the Debtors have no interest in needlessly increasing claims against the estates and believe that prompt resolution of the disputes between the Debtors and Marathon will reduce the Debtors' exposure to potential additional claims by Marathon.

18. The Debtors and Marathon each dispute amounts allegedly owed the other, and the Debtors further dispute amounts MVP asserts it is owed. Further, to the extent that any portion of the Disputed Invoices are ultimately determined to be valid, Marathon would seek allowance of its claims against the Debtors and seek to setoff and/or recoup the allowed claims it holds against the Debtors against any allowed claims the Debtors hold against Marathon.

19. Absent the Stipulation, the Parties would have litigated these myriad issues and would have devoted potentially significant time and resources to preparing witnesses for contested evidentiary hearings regarding issues such as the validity, amount and priority of the claims asserted by various parties against each other. Consensual resolution of these disputes avoids the need for all the parties to incur potentially substantial legal fees and costs while facing the risk of uncertain outcomes.

20. The Stipulation also provides other measurable benefits to the Debtors. In exchange for a resolution of the Disputed Invoices, Marathon has agreed to pay for the full cost of picking up and packing the Uninstalled Miners, which accounts for over 50% of the amounts MVP would have invoiced the Debtors to release the Uninstalled Miners, and to reduce and fix as a general unsecured claim its valid, undisputed claims relating to the Marathon Note. The face amount of the agreed claim discount is at least $1 million, before accounting for fees accrued under the Marathon Note, and greater than $1 million once the accrued fees are accounted for. Furthermore, because Marathon has agreed to pay MVP the amounts it asserts are required to

obtain release of the Uninstalled Miners, MVP has agreed to release its liens on and possession of not only Marathon's Uninstalled Miners but also other property the Debtors have stored at MVP's warehouse. Lastly, the Debtors benefit from the certainty provided in the Stipulation that it owes no further amounts to Generate.

21. Accordingly, the circumstances warrant approval of the Stipulation on an emergency basis. For the reasons set forth above, including the costs that the Debtors and their estates, Marathon and MVP incur on a daily basis until the Stipulation is approved, approval of the Stipulation is fair, equitable and in the best interest of the Debtors' estates. The Debtors and Marathon respectfully request emergency approval of the Stipulation by no later than December 16, 2022.

## Notice

22. Notice will be provided pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).

## No Previous Request

23. No previous request for the relief sought herein has been made by the Debtors or Marathon to this or any other court.

[*Remainder of page intentionally left blank*]

Date:   December 13, 2022
       Houston, Texas

                                    Respectfully submitted,

| | |
|---|---|
| */s/ James T. Grogan III* | */s/ Jessica Liou* |
| PAUL HASTINGS LLP | WEIL, GOTSHAL & MANGES LLP |
| James T. Grogan III (24027354) | Alfredo R. Pérez (15776275) |
| 600 Travis Street, 58th Floor | 700 Louisiana Street, Suite 1700 |
| Houston, Texas 77002 | Houston, Texas 77002 |
| Telephone: (713) 860-7300 | Telephone: (713) 546-5000 |
| Facsimile: (713) 353-3100 | Facsimile: (713) 224-9511 |
| Email: jamesgrogan@paulhastings.com | Email: Alfredo.Perez@weil.com |
| | |
| -and- | -and- |
| | |
| PAUL HASTINGS LLP | WEIL, GOTSHAL & MANGES LLP |
| Luc Despins (admitted *pro hac vice*) | Gary T. Holtzer (admitted *pro hac vice*) |
| Sayan Bhattacharyya (admitted *pro hac vice*) | Jessica Liou (admitted *pro hac vice*) |
| Daniel Ginsberg (admitted *pro hac vice*) | Alexander P. Cohen (admitted *pro hac vice*) |
| 200 Park Avenue | 767 Fifth Avenue |
| New York, New York 10166 | New York, New York 10153 |
| Telephone: (212) 318-6000 | Telephone: (212) 310-8000 |
| Facsimile: (212) 319-4090 | Facsimile: (212) 310-8007 |
| Email: lucdespins@paulhastings.com | Emails: Gary.Holtzer@weil.com |
|       sayanbhattacharyya@paulhastings.com |        Jessica.Liou@weil.com |
|       danielginsberg@paulhastings.com |        Alexander.Cohen@weil.com |
| | |
| -and- | *Counsel for Marathon Digital Holdings, Inc.* |
| | |
| Matthew Micheli (admitted *pro hac vice*) | |
| Michael Jones (admitted *pro hac vice*) | |
| 71 South Wacker Drive, Suite 4500 | |
| Chicago, Illinois 60606 | |
| Telephone: (312) 499-6000 | |
| Facsimile: (312) 499-6100 | |
| Email: mattmicheli@paulhastings.com | |
|       michaeljones@paulhastings.com | |
| | |
| *Counsel to the Debtors and Debtors in Possession* | |

**Certificate of Service**

I hereby certify that on December 13, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                  /s/ *Jessica Liou*
                                                           Jessica Liou