IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | (Jointly Administered) |
| **COMPUTE NORTH HOLDINGS, INC.,** | § | |
| *et al.*,[1] | § | Case No. 22-90273 (MI) |
| | § | |
| Debtors. | § | Emergency Hearing Requested for: |
| | § | December 20, 2022 |

**CORPUS CHRISTI ENERGY PARK, LLC's EMERGENCY MOTION TO COMPEL REJECTION BY DEBTOR CN CORPUS CHRISTI, LLC OF DESIGN-BUILD CONTRACT UNDER 11 U.S.C. § 365(d)(2)**

**Notice pursuant to L.B.R. 9013-1(b)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Notice pursuant to L.B.R. 9013-1(i)**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Movant CORPUS CHRISTI ENERGY PARK, LLC ("Movant" or "CCEP"), and files this *Emergency Motion to Compel Rejection of Design-Build Contract* (the "Motion") under section 365(d)(2) of Title 11 of the U.S. Code (the "Bankruptcy Code"), and in support thereof would respectfully show the Court as follows:

## I. INTRODUCTION

1.1     CCEP brings this Motion because it appears inevitable the design-build contract (the "DB Contract") between CCEP and Debtor CN CORPUS CHRISTI, LLC ("CNCC") will be rejected and further delay of that decision only imposes irreparable harm on CCEP. Debtors marketed the DB Contract during their auction process and, other than CCEP's own rejected bids, attracted no bidders. Meanwhile, Debtors themselves are financially unable to cure defaults or provide adequate assurance of future performance. By their own admission, Debtors' estate is a melting ice cream cone; it is rapidly burning cash, has few income producing assets remaining, and its auction did not generate sufficient liquidity such that it could avoid liquidation, much less provide adequate financial assurance to assume and assign the DB Contract. On the other hand, CCEP has significant sunk costs into the DB Contract construction project, which *must* be completed before summer 2023 if it is ever to be financially viable. Further delays jeopardize the project's transmission system interconnection capacity rights and could make it significantly more expensive to complete in a time crunch. The DB Contract appears scheduled for rejection per the Debtor's liquidating plan, but given that the project has been in suspension for six months, CCEP's the ability to preserve the interconnection rights, and thus recover value in the project, is in peril. Therefore, pursuant to 11 U.S.C. § 365(d)(2), CCEP requests an order from the Court compelling

Debtors to reject the DB Contract no later than December 20, 2022, should they be unable to assume the DB Contract by said date.[2]

## II. PARTIES

2.1     Movant CCEP is a Texas limited liability company with its principal office in Dallas County, Texas.

2.2     Debtor CNCC is a Delaware limited liability company and one of the Debtors in this jointly administered Chapter 11 case. CNCC is the counterparty to the contract that is the subject of this Motion.

## III. JURISDICTION

3.1     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O). Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein includes, without limitation, section 365(d)(2) of the Bankruptcy Code.

## IV. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

4.1     On March 16, 2022, CCEP and CNCC entered into the DB Contract pursuant to which CCEP agreed to design and construct for CNCC a 300-megawatt high voltage substation connecting to the ERCOT transmission grid, together with an office building, utility connections and certain other improvements, at a contract price of $25,713,494.00 (including agreed prepetition change orders) (the "Project"). The real property upon which the facility is being built is wholly owned by Bootstrap Energy LLC.

---

[2] CCEP has simultaneously filed a motion for relief from automatic stay under section 362 of the Bankruptcy Code asking the Court to lift the automatic stay immediately upon Debtors' rejection of the DB Contract.

4.2 The DB Contract included a "time is of the essence" clause and called for Substantial Completion (as defined in the DB Contract) by October 31, 2022. Due to payment defaults by CNCC, discussed below, the Project has been halted continuously since June 16.

4.3 On June 3, 2022, CNCC failed to timely pay for the parties' agreed and executed May 12, 2022 change order calling for an initial payment in the amount of $718,996.56. On June 16, CCEP exercised its right to issue a stop work notice for this breach which was not cured until August 30. On August 26, 2022, however, CNCC also defaulted on its obligation to pay CCEP $6,100,000 for completion of milestone #3. CCEP issued a stop work notice as to this default on September 2.

4.4 After applicable cure periods, CCEP gave notice of its intent to terminate the DB Contract. CCEP took all contractual steps to perfect its right to terminate, needing only to wait until the close of business on September 22 before it could formally do so. On the afternoon of September 21, CNCC called CCEP asking if it would waive termination should the cure payment be received on September 23. However, CNCC filed for bankruptcy relief the following morning, September 22, (the "Petition Date"), only hours before the termination event.

4.5 As of the Petition Date, there were $14,906,026 in payments remaining under the DB Contract to reach final completion. The DB Contract also requires posting an additional $14.25 million financial security with transmission provider AEP Texas before the Project can be operational.

4.6 On October 18, 2022, Debtors filed a notice with the Court providing, *inter alia*, that the design-build contract between CCEP and CNCC was one of Debtors' executory contracts subject to assumption and assignment pursuant to 11 U.S.C. § 365 as well as the Initial and, later, Final Sale Procedures Orders of the Court. *See* Dkt. No. 91 at pg. 28; *see also* Dkt. Nos. 209 and

256. CCEP placed bids on the DB Contract on October 26 and 27, both of which were rejected by Debtors.

4.7 At the October 31 meeting of creditors, however, Debtors confirmed there were no other bids on the DB Contract. Furthermore, based on Debtors' auction, their proposed liquidation plan, and statements during various hearings, it does not appear Debtors intend to or would be financially capable of assuming the DB Contract themselves. CNCC would have to pay an estimated $5,990,000.00 (not including accruing interest) just to cure its default. *See* CCEP's Objection to Debtors' Cure Schedule [Dkt. No. 355] at ¶ 6 (discussing CNCC's default amounts as well as anticipated remobilization costs). Even if Debtors could make that payment, there is no evidence of financial wherewithal to pay the full prepetition contract balance of almost $15 million, especially not over over the course of an estimated three months to complete construction.

4.8 Since the auction's conclusion, CCEP, Debtors, and the Official Committee for Unsecured Creditors ("UCC") engaged in lengthy negotiations for CCEP to buy out the DB Contract so it can immediately resume the Project. Those negotiations, however, reached an impasse and no other party has stepped forward with an interest in buying out the DB Contract.

## V. RELIEF REQUESTED

5.1 This is a contested matter per FRBP 6006(b). Movant seeks an emergency hearing on the Motion no later than December 20, 2022, where the DB Contract will be deemed rejected.

## VI. ARGUMENT AND AUTHORITIES

**A. Governing Standards for Compelling Assumption or Rejection of Executory Contracts.**

6.1 Although section 365(d)(2) of the Bankruptcy Code generally allows a debtor-in-possession to assume or reject an executory contract at any time prior to plan confirmation, a bankruptcy court may order the debtor-in-possession to assume or reject "within a specified time period" upon request of a party in interest. *See In re Texas Health Enterprises, Inc.*, 72 Fed.Appx.

122, 127-28 (5th Cir. 2003) (discussing procedure for deciding issue of assumption and rejection under 11 U.S.C. § 365). Whether to shorten this timeframe rests with the sound discretion of the bankruptcy court, its decision being governed by the "facts and circumstances" of the case. *In re Rebel Rents, Inc.*, 291 B.R. 520, 530 (Bankr.C.D.Cal. 2003) (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2nd Cir. 1982)).

6.2     The debtor's right to "reasonable time" is weighed against various factors including but not limited to, (a) the importance of the contract to the debtor's business and reorganization, (b) whether the debtor has been complying with postpetition obligations under the contract and, if not, whether continued delay of assumption or rejection would cause harm to the counterparty versus the debtor's ability to compensate the counterparty for those delay costs, and (c) how long the bankruptcy case has been pending, whether the exclusivity period is terminated, and whether confirmation of a plan is feasible. *See generally In re Rebel Rents, Inc.*, 291 B.R. 520, 529-30 (Bankr.C.D.Cal. 2003) (discussing various case holdings and factors relevant to requests for relief under 11 U.S.C. § 362(d)(2)).

6.3     Also relevant to the analysis is whether there is any likelihood the debtor can satisfy the prerequisites for assumption. *See Texas Health Enterprises, Inc.*, 72 Fed.Appx. at 127-28 (affirming bankruptcy court's rejection of executory contract where debtor produced no new evidence that would prove its ability to assume contract since previous hearing where debtor's motion for assumption was denied). To assume the DB Contract, Debtors must provide sufficient evidence of their capability and willingness to "promptly cure" all defaults, compensate CCEP for its "actual pecuniary loss resulting from such default," and provide "adequate assurance of future performance" on the DB Contract. 11 U.S.C. § 365(b)(1).

> **B.     The DB Contract is not necessary for Debtors' reorganization.**

6.4     The DB Contract is not necessary for Debtors' reorganization.  In evaluating whether an asset is considered "necessary for reorganization"—whether in this context or, more commonly, in deciding section 362 lift stay motions—the issue typically turns on whether that asset's preservation will make a debtor's successful reorganization more feasible. *See Rebel Rents*, 291 B.R. at 530; *see also In re Landrum*, No. 08-30632-H3-13, 2008 WL 2325627, at *2 (Bankr. S.D. Tex. June 3, 2008) (lift stay motion was denied in part as subject vehicle's usage for employment and income made it necessity for reorganization).

6.5     Debtors have filed a liquidating plan and ultimately will be rejecting the DB Contract.  As such, the DB Contract does not serve Debtors' reorganization or proposed liquidation plan.  Notwithstanding the liquidating plan, before the contract can ever generate revenue, it will require $15 million of expenditures, posting an additional $14.25 million financial security with transmission provider AEP Texas, and a build out of the rest of the mining facility, all of which is well out of Debtors' financial reach.  Furthermore, there were no bidders for the contract other than CCEP's own rejected bids, meaning it has no use in Debtors' liquidation plans.

> **C.     Debtors have had sufficient time to realize that rejection of the DB Contract is a foregone conclusion.**

6.6     Debtors have had sufficient time to consider whether to assume or reject the DB Contract.  Debtors retained numerous, well-resourced firms to structure and guide their reorganization which began with an asset auction, conducted at a breakneck pace, which put the DB Contract up for sale.  At the conclusion of the auction, no bidders had come forward for the DB Contract aside from CCEP's own rejected bids.

6.7     Debtors are thus left to decide whether to reject the DB Contract or to assume and perform it themselves.  This is not a decision Debtors are seriously deliberating.  Debtors are in the process of liquidating the Compute North organization for the benefit of creditors and,

consequently, all remaining, unassumed executory contracts, such as this one, will be rejected. Regardless, and ignoring momentarily the issue of whether there is a default to be cured, Debtors would have to show cash flow or other liquid assets sufficient to satisfy a payment schedule for a total of $14.9 million to finish construction, in addition to other financial obligations such as posting security to the transmission provider, AEP Texas. Debtors do not have the financial wherewithal to do this and that is highly unlikely to change.

> **D.     CCEP will suffer irreparable harm if the DB Contract is not rejected immediately.**

6.8     The Court should compel Debtors' decision because the DB Contract is not part of its liquidation or reorganization plans and CCEP's ability to timely complete construction will be jeopardized if it cannot get a new client on the Project immediately. Where a debtor's further delay in contemplating whether to assume or reject would put the counterparty at risk of continuing harm, equity demands compelling the contract's rejection. *See Matter of East Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193, 199 (Bankr.E.D.N.Y. 1982) (where "equity [did] not allow the debtor until confirmation to make the § 365(a) decision," court granted relief from automatic stay contingent upon debtor's failure to assume or reject within two weeks from date of order). In *In re Borbidge*, where a debtor's executory contract was "perilously close to termination" prior to the petition date—as was the case with CNCC—the bankruptcy court found conditional relief from the automatic stay was appropriate to compel the debtor's decision to assume, reject, or in lieu thereof, to provide adequate protection in the form of postpetition payments to the creditor. *In re Borbidge*, 66 B.R. 998, 1004-05 (Bankr.E.D.Pa. 1986).

6.9     Equity demands similar relief in this case. Debtors' delay in rejecting the DB Contract risks catastrophic harm to CCEP and the market value of CCEP's Project in general. CCEP does not anticipate it will be able to retain its transmission system capacity rights—which remain tentative pending full execution, by CCEP's customer, of the interconnect agreement with

AEP Texas including timely posting of its required $14.25 million financial security—or to find a successor mining customer that would place value on bringing the Project facility online beyond spring of 2023.  The Project therefore must be contracted and funded promptly. CCEP is under enormous pressure to complete this Project within the next few months to guarantee the facility's electrical provider will deliver connection facilities on time and with sufficient megawattage to operate prior to summer.  CCEP understands it is not feasible to bring such a power-demanding facility online in the summer (e.g. from June 1 to September 30) when procedural restraints imposed by ERCOT generally preclude the construction and energization of substantial new loads during the peak demand season.  It is partly for this reason that numerous new cryptocurrency mining facilities in Texas were delayed or prevented from energizing during summer of 2022.

   6.109 Continued delay, given the Project's time constraints, poses additional risks of injury to CCEP such as increased remobilization and construction costs.  As of the Petition Date, CCEP estimated its remobilization costs were approximately $216,000.00.  By November, however, CCEP estimates the cost to remobilize the Project for completion before summer 2023 had more than doubled.  These costs come in the form of locating new subcontractors to replace prior ones, expediting the start of their work, and paying a premium for labor and materials to be delivered on short notice.  Nevertheless, CCEP may be able to locate a potential new client whose funding would allow CCEP to finish or modify the Project, but CCEP cannot do so while the Project is tied up in bankruptcy.  If no new partners materialize, CCEP will need sufficient time to organize a new source of funding to finish the Project, albeit likely at substantially diminished value due to the aforementioned timing concerns.  CCEP therefore needs to act with sufficient speed to secure this new partnership and resume construction immediately so it can secure the resources to timely preserve the Project's grid connection capacity rights, construct interconnect

facilities, and finish the Project prior to June 1st. The DB Contract simply cannot sit in limbo awaiting inevitable rejection at plan confirmation.

## VII. REQUEST FOR EMERGENCY HEARING

7.1 CCEP requests an emergency hearing on the Motion no later than December 20, 2022, due to the exigent circumstances and requests that the hearing be held simultaneously with CCEP's motion for relief from the automatic stay. CCEP has certified this Motion in accordance with LBR 9013-1(i).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, CCEP respectfully requests and prays that this Court enter an order for emergency hearing in accordance with the above request and, following said hearing, deem the DB Contract rejected under 11 U.S.C. § 365 as requested herein, and for all other and further relief to which CCEP may be justly entitled.

Dated: December 13, 2022        Respectfully submitted,

By: /s/Robert C. Rowe
Mark A. Castillo
  Texas State Bar No. 24027795
Robert C. Rowe
  Texas State Bar No. 24086253
**CARRINGTON, COLEMAN, SLOMAN**
  **& BLUMENTHAL, L.L.P.**
901 Main St., Suite 5500
Dallas, TX  75202
Telephone:    214-855-3000
Facsimile:    214- 580-2641
Email: markcastillo@ccsb.com
            rrowe@ccsb.com

*Bankruptcy Counsel for*
*Corpus Christi Energy Park, LLC*

## CERTIFICATION UNDER LBR 9013-1(i)

My name is Steve Quisenberry. My address is 3838 Oak Lawn Avenue, Suite 1000, Dallas, Texas 75219. I am the Chief Executive Officer of Bootstrap Energy, LLC, the Managing Member of the Movant, CCEP. I certify all facts stated in this Motion are within my personal knowledge, true and correct.

This statement is given under penalty of perjury under the laws of the State of Texas and the United States of America on December 13, 2022.

/s/ Steve Quisenberry
Steve Quisenberry

## CERTIFICATE OF CONFERENCE

Counsel for CCEP has conferred with counsel for Debtors via numerous emails and telephone calls on the following dates and times: November 7, 9, and 11, 2022 and multiple dates thereafter in December. Counsel for Debtors has confirmed their opposition to this Motion.

Certified on December 13, 2022.

*/s/Mark A. Castillo*
Mark A. Castillo

## CERTIFICATE OF SERVICE

The undersigned certifies that, pursuant to Fed. R. Bankr. P. 6006, a true and correct copy of this Motion was properly served upon the following parties and/or their counsel of record: Debtors, including CNCC, the counterparty to the DB Contract; the Official Committee of Unsecured Creditors; all parties requesting ECF notice; and the U.S. Trustee.

Certified on December 13, 2022.

*/s/Robert C. Rowe*
Robert C. Rowe