

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | § | Case No. 22-90273 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | **Re Docket Nos. 576; 577; 578** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE
STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE
PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS'
JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN
DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby objects (the "Objection") to the Debtors' motion (the "Motion")[2] seeking,

among other things, conditional approval of the Debtors' *Disclosure Statement for the Joint*

*Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] *Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [ECF No. 578].

[ECF No. 577] (the "Disclosure Statement").[3]   In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtors have proposed a chapter 11 plan (the "Proposed Plan")[4] that cannot be confirmed as a matter of law, which is supported by a Disclosure Statement that fails to provide voting parties with critical information about the Proposed Plan.  The Court should therefore deny approval of the Motion until the defects in the Proposed Plan and Disclosure Statement are addressed.

2.      Instead of immediately determining whether the Disclosure Statement contains adequate information, the Debtors propose considering the adequacy of the Disclosure Statement and confirmation of the Proposed Plan together at the Combined Hearing.   But delaying consideration of the Disclosure Statement's adequacy until the Combined Hearing—when votes on the Proposed Plan will have already been cast—does nothing toward providing creditors with information they need *now* to cast their votes in an informed manner.  Further, inadequacies in the Disclosure Statement could lead to an expensive and duplicative re-solicitation process.  The far better procedure is to address the informational deficits now, *before* the estates incur the costs of soliciting votes based upon a flawed Disclosure Statement.

---

[3]      The Committee, through its counsel, has engaged in discussions with the Debtors regarding the issues raised in this Objection.  In connection therewith, the Debtors, through counsel, provided to the Committee a revised version of the Proposed Plan (defined below) on December 13, 2022.  It is the Committee's understanding, based on discussions with the Debtors following receipt of the revised version of the Proposed Plan (referred to herein as the "Revised Proposed Plan"), that the Debtors will be making further revisions to the Proposed Plan. Because, as of the filing of this Objection, (i) the Committee has not seen such further proposed revisions and (ii) the Debtors have not filed the Revised Proposed Plan, this Objection refers to the Proposed Plan filed at ECF No. 576 and the Disclosure Statement filed at ECF No. 577, except as otherwise noted.

[4]      *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [ECF No. 576]. Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or Proposed Plan, as applicable.

3.     In addition, the Disclosure Statement should not be approved because the Proposed Plan—on its face—cannot be confirmed in its current form.  Specifically, the Proposed Plan contains overly broad and unjustifiable releases and an exculpation provision that violates clear Fifth Circuit precedent.  As such, the Debtors should be required to amend the Proposed Plan to correct its infirmities prior to solicitation.

4.     Finally, if the Court is inclined to allow solicitation to move forward, notwithstanding the deficiencies in the Disclosure Statement and Proposed Plan identified below, the Committee requests that it be allowed to include a letter to unsecured creditors in the solicitation package.  The letter will explain the Committee's views regarding the Proposed Plan and summarize the issues discussed herein so that creditors can make an informed vote.

## OBJECTION

### I.     The Committee Is Entitled to Participate Meaningfully in Plan Formulation.

5.     The Committee requests that the Court deny the Motion and prevent solicitation from moving forward at this time.  The Committee has identified defects in the Disclosure Statement and Proposed Plan that render solicitation premature.  However, the Committee is compelled to object for a more fundamental reason.

6.     The provisions of the Bankruptcy Code "evince a Congressional intent for committees to play a robust and flexible role in representing the bankruptcy estate." *Official Comm. ex Rel. Cybergenics v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 566 (3d Cir. 2003).  Part of that "robust" role undoubtedly includes formulating the chapter 11 plan.  Indeed, one of the "powers and duties" that is explicitly afforded to committees by Congress is to "participate in the formulation of a plan."  11 U.S.C. § 1103(c)(3).  In this case, however, the Committee's statutory right to participate in plan formulation is being undermined by the break-neck speed at which the Debtors are proceeding.  In fact, the Debtors sent the Revised Proposed

3

Plan to the Committee less than three days prior to the Combined Hearing, giving the Committee merely two business days to analyze the Revised Proposed Plan, discuss the various issues internally and with the Debtors, and prepare the Objection. And, as noted above, despite indicating that further revisions are forthcoming, the Debtors have not yet provided revised drafts to the Committee as of the filing of this Objection.

7.      The Debtors and Committee have fundamental disagreements about the appropriate way to wind down the Debtors' estates. Some such disagreements—for example, whether the reorganized debtors or a liquidating trust should be responsible for the wind down—are driven by tax and other legal considerations that must be properly assessed. Rather than seriously engage on these issues, the Debtors have opted simply to ignore the Committee's concerns and force their Proposed Plan upon creditors. While that is the wrong approach in any case, it is especially indefensible in *this* case given that unsecured creditors are the only constituency with a real economic interest in what happens post-confirmation. Considering that it is creditor dollars that are on the line, the Committee's voice should be amplified during this process, not diminished.

8.      To be entirely clear—the Committee has *zero* interest in prolonging these cases unnecessarily. That said, the Committee is equally opposed to proceeding so quickly that its constituents are prejudiced. Solicitation is expensive, and those costs are being borne by unsecured creditors. Creditors are also the constituency that ultimately will be harmed if re-solicitation becomes necessary. While the Debtors may be perfectly willing to charge ahead and spend their creditors' money, the Committee must ensure that the estates' limited resources are not needlessly squandered. Accordingly, solicitation should wait until the Committee's concerns regarding the Proposed Plan and Disclosure Statement are addressed.

II.      **The Disclosure Statement Fails to Provide Adequate Information**.

9.      Bankruptcy Code section 1125 prohibits solicitation of votes on a chapter 11 plan prior to court approval of a written disclosure statement containing "adequate information."  *See* 11 U.S.C. § 1125(b).  Satisfying the "adequate information" standard requires providing sufficient information as is "reasonably practicable" to permit parties to make an "informed judgment" regarding how to vote.  *See In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (citing *In re Metrocraft*, 39 B.R. 567 (Bankr. N.D. Ga. 1984)).  Indeed, both creditors and courts rely on the disclosure statement for information to assist them in making an informed judgment about a plan.  *See In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).  As another court in this Circuit cogently explained, "[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.  Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"  *In re Little*, 126 B.R. 861, 867 (Bankr. N.D. Miss. 1991).

10.      Here, the Disclosure Statement fails to meet this standard because it does not provide parties with necessary information regarding the Proposed Plan's broad releases.  The Proposed Plan will release both claims belonging to the Debtors' estates and claims belonging to third parties.  *See* Proposed Plan §§ 9.3; 9.4 (together, the "Releases").  The Disclosure Statement, however, is devoid of any meaningful analysis of the claims and causes of action that the Proposed Plan will release.  Even something as basic as exactly who is granting and who is receiving a release is unknown (and unknowable) because the relevant definitions are so overly broad.[5]  It is

---

[5]      In the Revised Proposed Plan, "Releasing Parties" is defined to mean "(a) the Released Parties; (b) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures

impossible to discern, for example, the identities of former accountants and investment bankers of each of the Debtors, despite such parties falling within the capacious definitions of Released and Releasing Parties.

11.     Likewise, neither the Proposed Plan nor the Disclosure Statement identifies what contributions have been made by the Released Parties that justify granting the Release.  While containing predictable boilerplate language that the Releases are being given "in exchange for good and valuable consideration," the Disclosure Statement never explains what consideration was provided and whether that consideration is proportional to the value of the claims being released.

---

Order; (c) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order; and (e) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, interest holders, predecessors, successors, assigns, subsidiaries, and affiliates, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively." Revised Proposed Plan § 1.1.96.  Based on discussions with the Debtors, it is the Committee's understanding that the Debtors do not intend to revise the definition of Releasing Parties in any further revised version of the Revised Proposed Plan.

In the Revised Proposed Plan, "Released Parties" means "(a) each Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the Plan Administrator; (d) the Committee; (e) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan; (f) all Holders of Claims or Interests that abstain from voting on the Plan, who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan, and who do not object to the Plan; and (g) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (f), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, participants, successors, and assigns, subsidiaries, affiliates, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided, however, that* (i) any Holder of a Claim or Interest that opts out of the releases in accordance with the procedures set forth in the Solicitation Procedures Order shall not be a "Released Party"; (ii) any Holder of a Claim or Interest who timely Files an objection to the Plan in respect of the releases contained in Section 9.4 of the Plan, shall not be a "Released Party"; and (iii) any Entity or Affiliate of an Entity that is identified on the *Schedule of Retained Causes of Action* shall not be a "Released Party" under the Plan."  Revised Proposed Plan § 1.1.93.  Based on discussions with the Debtors, it is the Committee's understanding that the Debtors do not intend to revise the definition of Released Parties in any further revised version of the Revised Proposed Plan.

12.     The Disclosure Statement further fails to explain why or how the Debtors determined that the Releases are in the best interests of their estates.  The Committee is not aware of any meaningful investigation by the Debtors into claims against the Released Parties, and the Disclosure Statement makes no mention of any such investigation.  Even assuming that each and every one of the Released Parties provided valuable consideration in exchange for a release, without an investigation into the value of the claims being released, no party can determine whether the consideration that was provided is proportional to the value that will be lost as a result of the release.  Without this and other information, creditors clearly cannot make an informed decision regarding the appropriateness of the Releases contained in the Proposed Plan.

13.     As the Court knows, litigation claims are often one of the most significant assets that unsecured creditors can look toward to improve their recoveries.  The Bankruptcy Code's disclosure requirements "protect creditors from a debtor who may be trying to hide assets." *Westland Oil dev. Corp v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D. Tex. 1993).  Indeed, "creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional." *Id*.  "A claim with potential is a potential asset." *Id.*  Accordingly, any claims that are being released under the Proposed Plan, as "potential assets," must undoubtedly be described in the Disclosure Statement.  *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) ("A description of available assets and their value is a vital element of necessary disclosure.").

14.     Moreover, the Disclosure Statement's representation that the Releases are being provided "in exchange for good and valuable consideration" is inaccurate and misleading. "[I]ncluding false information [in a disclosure statement] is a more serious matter than a mere lack of information." *In re Brotby*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003).  This particular disclosure

is inaccurate in that, for many if not most of the Released Parties, it is highly doubtful that their releases are being provided for *any* consideration, let alone "good and valuable consideration." Until the Debtors carry their burden of demonstrating that the Released Parties have in fact contributed value in exchange for a release, it must be assumed that the Releases are nothing more than a giveaway of value that should go to creditors.

15.     Before countless potential claims against a myriad of parties can be released under the Proposed Plan, the Disclosure Statement must be revised to include detailed and specific information regarding the claims being released to enable creditors to evaluate the Releases properly.  This information should include, at a minimum: (i) each Released Party's relationship to the Debtors, including identifying any transactions between the Released Parties and the Debtors; (ii) the specific claims against the Released Parties considered and investigated by the Debtors; (iii) the legal and factual bases supporting the valuation of the claims; (iv) the specific form and value of the purported consideration each of the Released Parties is providing in exchange for a release; and (v) the legal and the factual bases supporting the Debtors' determination that the releases are in the best interests of the Debtors' estates, are a necessary component of the Proposed Plan, and are otherwise appropriate under applicable law.

16.     With respect to any investigation of the claims that the Debtors have performed (whether completed, currently underway, or forthcoming), such investigation must be described. The Disclosure Statement does not provide sufficient information to allow creditors to evaluate the Proposed Plan because their views regarding the Releases will undoubtedly be shaped by the outcome of any investigation.  To the extent such investigation remains ongoing, the Disclosure Statement should disclose who is conducting the investigation, how they can be considered independent of and not controlled by the Released Parties, when the investigation will conclude,

and how and when the conclusions of the investigation will be communicated to voting parties so that they have full information before casting their ballots.  Further, because it appears that the Debtors have agreed to provide the Releases prior to any investigation being conducted, the Debtors also should be required to establish and disclose to voting parties that the Debtors agreed to the Releases ***prior*** to investigating possible claims, as well as all bases the Debtors claim justify the investigation as more than an ex post artifice for their proposal.

17.     In sum, these missing items of critical information, combined with the Debtors' apparent agreement to the Releases prior to having any information necessary to justify or support them, make it impossible for creditors to assess whether greater recoveries could be available to them if the claims are pursued and the Debtors' proposed Releases are denied as not being in the best interests of the Debtors' estates.  Until the Disclosure Statement is amended to provide necessary information regarding the Releases, the Disclosure Statement does not satisfy the adequate information standard.  *See, e.g.*, *In re Lower Bucks Hosp.*, 488 B.R. 303, 321 (E.D. Pa. 2013) (affirming that a disclosure statement failed the "adequate information" standard where it did not include a sufficiently detailed assessment of "the merits or value of the potential claims" against the non-debtor released parties, did not explain to stakeholders "whether the benefits of the proposed plan [outweighed] what they would give up by agreeing to the third party release," did not explain what the released parties were giving to the estates in exchange for the releases, and did not explain why the releases were necessary); *Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008) (explaining a disclosure statement should include "specifics" justifying releases and settlements, including "reasons" for resolution and "merits of the potential litigation").

18.     If the Debtors insist upon confirming their Proposed Plan on such a hurried timeline, then, at a minimum, the Plan should be amended to completely remove (or severely limit) the broad Releases.  That way, a plan administrator or another post-confirmation representative will have an opportunity to fully investigate and evaluate potential claims on an appropriate timeline.  Simply agreeing to release claims, before any real investigation into those claims has occurred, is plainly unacceptable.

19.     Finally, the Disclosure Statement does not provide a liquidation analysis, which is a core component of any creditor's decision to accept or reject a plan.  *See Divine Ripe*, 554 B.R. at 401 (disclosure statement should include "the estimated return to creditors under a Chapter 7 liquidation" (quoting *Metrocraft*, 39 B.R. at 568)).  Consequently, there is currently no way to determine whether a chapter 7 liquidation would result in more favorable treatment to unsecured creditors than the recoveries and treatment projected under the Proposed Plan.[6]  The Disclosure Statement must provide a liquidation analysis that sets forth the projected assets, the projected disposition of those assets in a chapter 7 case, and then juxtapose those against the Proposed Plan's treatment of their claims so that creditors can gauge for themselves whether the Proposed Plan is a better alternative than conversion.

20.     Furthermore, at this stage, it is doubtful that any liquidation analysis would accurately reflect creditors' recoveries because the Debtors are still in the midst of the contract rejection process.  The Debtors have indicated that they intend to reject their remaining customer contracts in the very near term.  But, until they do so, the claims pool, which could be significantly enlarged by rejection damages claims, remains uncertain.  Once again, the superior approach is to

---

[6]   The Committee submits that, given the difference in tax treatment between litigation claims that vest in a reorganized debtor versus litigation claims that vest in a chapter 7 estate, chapter 7 liquidation may result in more favorable recoveries to unsecured creditors than the recoveries projected under the Proposed Plan.

wait until this information is available, provide the information to voting parties in the Disclosure Statement, and then allow parties to vote based upon that complete (or at least more complete) information.

### III.   The Disclosure Statement Describes a Patently Unconfirmable Plan.

21.   Courts routinely hold that a disclosure statement describing a patently unconfirmable plan may not be approved, regardless of the amount of disclosure it contains. *See, e.g.*, *In re David Sanders*, Case No. 14-02271, 2015 WL 7568469 at *5 (Bankr. S.D. Miss. Nov. 23, 2015) (finding "it is well-settled that a bankruptcy court may disapprove a disclosure statement, even if it contains adequate information, if there is a defect that renders a proposed plan 'inherently or patently unconfirmable'" (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012))); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996).   Accordingly, "if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *Am. Capital Equip.*, 688 F.3d at 154.   A plan is "patently unconfirmable" when its "defects cannot be cured by creditor voting." *Id*. at 148.

22.   The Proposed Plan's exculpation provision renders it patently unconfirmable.   The Fifth Circuit very recently reaffirmed its prior precedent holding that "any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties." *Nexpoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437 (5th Cir. 2022) (striking all other exculpated parties from the plan).   In direct contravention of this clear mandate, the Proposed Plan

provides for the exculpation of a long list of "Related Parties"[7] that includes various "agents," "employees," "consultants," "other professionals and advisors," among others. Proposed Plan § 1.1.49 (defining "Exculpated Parties" to include "each of the Related Parties"). Because this obvious defect cannot be remedied by creditor voting, the Proposed Plan is plainly unconfirmable and the Disclosure Statement should not be approved.

23.     Further, the previously identified problems with the Releases also render the Proposed Plan patently unconfirmable. The Proposed Plan provides that entry of the confirmation order constitutes the Court's approval of the Releases pursuant to Bankruptcy Rule 9019. *See* Proposed Plan §§ 9.3; 9.4. "The standards for approving settlements under Rule 9019 or as part of a plan are the same." *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018). In either case, "[i]t is undeniable that a compromise must be based on valuable consideration." *See In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980). Because there is no indication that the compromises embodied in the Releases are supported by "valuable consideration" (or ***any*** consideration, for that matter), they cannot be approved as a matter of law. *See, e.g.*, *In re Howard*, 533 B.R. 532, 557 (Bankr. S.D. Miss. 2015) (holding that the compromise could not be approved because "it would not be fair and equitable and in the best interest of the estate" where there was an "absence of consideration in exchange for the Trustee's release of all possible claims against Conquest"); *In re Cincinnati Microwave, Inc.*, 210 B.R. 130, 132 (Bankr. S.D. Ohio 1997) ("The reason for denying approval" of the Settlement Agreement was that the "debtor would receive no consideration for its proposed contribution to the Settlement

---

[7]     In the Revised Proposed Plan, "Related Party" is defined to mean "each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors." Revised Proposed Plan § 1.1.94.

Agreement.").  The Releases, like the exculpation provision, therefore render the Proposed Plan inherently unconfirmable.

24.     The Committee recognizes that the Debtors are only seeking **conditional** approval of the Disclosure Statement and that the Disclosure Statement will be subject to final approval at a later date.  However, there is no reason to conditionally approve the Disclosure Statement (and thereby impose significant solicitation expenses on the estates) only to ultimately deny approval of the Disclosure Statement on a final basis.  *See, e.g.*, *In re Source Enterprises, Inc.*, No. 06-11707 (AJG), 2008 WL 850229, at *6 (Bankr. S.D.N.Y. Mar. 27, 2008) (where after "determin[ing] that its prior, **conditional** approval of the amended disclosure statement was unwarranted because relevant information regarding valuation, third party releases and the treatment of unsecured creditors had not been provided[,]" the court "denied the Debtors' motion for its final approval" and "instructed the Debtors to make further amendments to the disclosure statement and, once approved, **re-solicit votes thereon**") (emphasis added).  Rather than risk the expense and delay that re-solicitation would necessarily entail, the superior procedure is to address the issues with the Disclosure Statement and Proposed Plan **now** in advance of solicitation.

## IV.     <u>The Solicitation Materials Should Include a Letter from the Committee</u>.

25.     If the Court determines that solicitation of the Proposed Plan is appropriate at this time (despite the issues discussed above), the Committee also requests that it be permitted to include a letter (the "<u>Committee Letter</u>"), substantially in the form attached hereto as <u>Exhibit A</u>, in the Debtors' solicitation materials.  The Committee Letter would contain a recommendation that voting parties vote to reject the Proposed Plan and a more fulsome (and plain English) explanation of the Releases (which the Committee objects to in their current form).  Courts have frequently authorized committees to include such letters in solicitation materials.  *See, e.g.*, *In re Cengage*

*Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Nov. 25, 2013) (approving inclusion of letter from official committee of unsecured creditors urging creditors to vote against plan in solicitation package); *In re Capital Bancorp Ltd.*, No. 12-59409 (Bankr. E.D. Mich. June 27, 2013) (same); *In re Motor Coach Indus., Inc.*, No. 08-12136 (Bankr. D. Del. 2008) (allowing creditors' committee to include in solicitation package a letter outlining the committee's issues with the proposed plan).  Therefore, the Committee respectfully requests that the Court authorize and direct the Debtors to include the Committee Letter in the solicitation materials so that it is visible to and easily accessible to voting parties.  In addition, inasmuch as the Committee hopes to engage in further discussions with the Debtors regarding the Proposed Plan and, as such, the Committee's views on the Proposed Plan may change prior to the Voting Deadline, the Committee respectfully requests that the Court authorize and direct the Debtors to post a copy of the Committee Letter and any update(s) thereto on its website at https://dm.epiq11.com/case/computenorthholdings.info.

## RESERVATION OF RIGHTS

26.    The Committee continues to review the Disclosure Statement and Proposed Plan and to conduct diligence regarding all matters pertaining to them.  The Committee reserves the right to amend, modify, or supplement the Objection for any reason and raise additional objections at any hearing (and at any subsequent hearing), including serving additional discovery and requesting and conducting depositions.  The Committee also reserves all of its rights to object to approval of the Disclosure Statement, confirmation of the Proposed Plan, and approval of any transaction on any grounds.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, for the reasons stated above, the Court should deny the Motion or condition its approval on the Debtors amending the Disclosure Statement and Proposed Plan to correct the problems identified in the Objection.

Dated: December 15, 2022

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: crgibbs@mwe.com

*- and -*

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Stacy A. Lutkus admitted (*pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-5404
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
Email: kgoing@mwe.com
        dazman@mwe.com
        salutkus@mwe.com
        nrowles@mwe.com

*Counsel to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 15, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>*/s/ Charles R. Gibbs*</u>
Charles R. Gibbs