EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| **COMPUTE NORTH HOLDINGS, INC.,** | § | |
| ***et al.*,**[1] | § | **Case No. 22-90273 (MI)** |
| | § | |
| **Debtors.** | § | |

"I, Steve Quisenberry, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the Chief Executive Officer of Bootstrap Energy LLC ("Bootstrap") and the Authorized Representative of Corpus Christi Energy Park, LLC ("CCEP"), a wholly owned subsidiary of Bootstrap Energy LLC.

2. I submit this declaration in support of CCEP's Motion to Compel Rejection and Motion for Relief from Stay.

3. As CEO of Bootstrap since its formation in 2021, I have worked directly with our team to develop projects in electrical generation and load consumption. Prior to founding Bootstrap with my partner, I have served in various executive and leadership positions in wind generation & thermal generation product and service organizations, domestically and internationally. I hold a BS in Mechanical Engineering from Tulane University.

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my negotiation and performance of CCEP's project with the Debtors, my review of relevant documents, and my views based upon my experience and knowledge.

5. On March 16, 2022, CCEP and Debtor CN Corpus Christi, LLC ("CNCC") entered into the design-build contract (the "DB Contract") pursuant to which CCEP agreed to design and construct for CNCC a 300-megawatt high voltage substation connecting to the ERCOT transmission grid, together with an office building, utility connections and certain other improvements, at a contract price of $25,713,494.00 (including agreed prepetition change orders) (the "Project").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

6. Due to payment and other defaults by CNCC, discussed below, the Project has been halted continuously since June 16, 2022,

7. On May 12, 2022, the parties executed a Change Order for $1,463,494.60, with an initial payment due upon execution in the amount of $718,996.56.

8. On June 3, 2022, Debtor CNCC breached its obligation to timely pay the initial payment under such Change Order, and CCEP issued a breach notice.

9. On June 16, 2022, CCEP exercised its contractual right to issue a stop work notice to CNCC for this breach.

10. Although on June 22, 2022 Debtor CNCC expressed willingness in proceeding with the conveyance of the Project site to Debtor CNCC, Debtor CNCC intended that it was not prepared to make further payments to CCEP. In addition, as aforesaid, CCEP had issued a stop work notice on June 16.

11. The parties held multiple executive management calls and in-person meetings to confirm that Debtor CNCC would cure the payment default and continue with the project, including execution of the AEP Letter of Agreement. Upon multiple occasions, Debtor CNCC informed CCEP that it would not be making any further payments under the DB Contract, because Debtor CNCC did not find the AEP Letter of Agreement acceptable.

12. Yet Debtor CNCC has admitted in writing that (i) Debtor CNCC found the August 9, 2022 Letter of Agreement acceptable, and (ii) Debtor CNCC was purposely delaying execution of the Letter of Agreement because it did not have its Project capital in place. Debtor CNCC intentionally shared these writings with third parties, including for purposes of soliciting capital and potential bidders for its assets, which objectively confirms that Debtor CNCC did, in fact, find the Letter of Agreement acceptable.

13. On August 26, 2022, Debtor CNCC defaulted on its obligation to pay the CCEP $6,100,000 milestone payment for satisfaction of milestone #3, delivery of main power transformer to the Port of Corpus Christi.

14. On August 30, 2022, CNCC cured the first default from June 3, 2022, thereby averting termination by CCEP for an event of Owner Default.

15. On September 2, 2022, CCEP issued a new stop work notice to CNCC for its default of its August 26 payment obligation.

16. After the applicable notice period, on September 12, CCEP gave notice of its intent to terminate the DB Contract. CCEP took all contractual steps to perfect its right to terminate, needing only to wait until the close of business on September 22 before it could formally do so. On the afternoon of September 21, CNCC called CCEP asking if it would waive termination should the cure payment be received on September 23. However, CNCC filed for bankruptcy relief the following morning, September 22, (the "Petition Date"), only hours before the termination event.

17. As of the Petition Date, there were $14,906,026 in payments remaining under the DB Contract to reach final completion. The DB Contract also requires posting an additional

$14.25 million financial security with transmission provider AEP Texas before the Project can be operational.

18. Debtor CNCC contends that its woes with respect to the Project are the result of delays on the part of CCEP. However, per the DB Contract the only obligations the performance of which is subject to the time is of the essence requirement are: (i) as to performance by Debtor CNCC, timely payment and timely execution of the Letter of Agreement and the post of security thereunder, and (ii) as to performance by CCEP, timely achievement of substantial completion of the Project.

19. As of the Petition Date, CCEP had met all of the obligations it could perform, given the non-performance by Debtor CNCC, and CCEP was ready to prosecute construction of the Project through substantial company, subject to Debtor CNCC curing its breaches for non-payment, and its execution of the Letter of Agreement and posting of security thereunder.

20. On October 18, 2022, Debtors filed a notice with the Court providing, inter alia, that the design-build contract between CCEP and CNCC was one of Debtors' executory contracts subject to assumption and assignment pursuant to 11 U.S.C. § 365 as well as the Initial and, later, Final Sale Procedures Orders of the Court. See Dkt. No. 91 at pg. 28; see also Dkt. Nos. 209 and 256. CCEP placed bids on the DB Contract on October 26 and 27, both of which were rejected by Debtors.

21. At the October 31, 2022 meeting of creditors, Debtors confirmed there were no other bids on the DB Contract. Furthermore, based on Debtors' auction, their proposed liquidation plan, and statements during various hearings, it does not appear Debtors intend to or would be financially capable of assuming the DB Contract themselves. CNCC would have to pay an estimated $5,990,000.00 (not including accruing interest) just to cure its default. See CCEP's Objection to Debtors' Cure Schedule [Dkt. No. 355] at ¶ 6 (discussing CNCC's default amounts as well as anticipated remobilization costs). Even if Debtors could make that payment, Debtors have provided no evidence of financial wherewithal to pay the full prepetition contract balance of almost $15 million, especially not over the course of an estimated three months to complete construction.

22. Since the auction's conclusion, CCEP, Debtors, and the Official Committee for Unsecured Creditors ("UCC") engaged in lengthy negotiations for CCEP to buy out the DB Contract so it can immediately resume the Project. Those negotiations, however, reached an impasse and no other party has stepped forward with an interest in buying out the DB Contract. CCEP will suffer irreparable harm if the DB Contract is not assumed or rejected immediately. The Court should compel Debtors' decision because the DB Contract is not part of Debtors' liquidation or reorganization plans and CCEP's ability to timely complete construction will be jeopardized if it cannot get a new client on the Project immediately.

23. The Project has been in a state of suspension since June 16, 2022 and in bankruptcy since September 22, 2022. Every day of suspension and delay causes an increased cost of storage, additional labor hours, interest on account payables and increased costs for completion.

24. In addition to monetary damages, every day of suspension causes harm across our supply chain for material purchased based on the contract with CNCC and continues to cause reputational harm to CCEP with our suppliers.

25. In addition to costs incurred, further delays jeopardize the 18 months of development work on this site as the Industrial District Agreements ("IDA") with the City of Corpus Christ and the electrical interconnect agreement with American Electric Power, each have time sensitive obligations associated with them. Should the inevitable rejection of the DB Contract be prolonged, CCEP would risk losing the IDA good standing and our AEP electrical interconnect. Losing either of these agreements would render the development work on this project site useless, and the market value of the otherwise fully developed site would be substantially nullified.

26. The only reason CCEP has waited this long to seek relief is because it believed it had an opportunity to save the project and bring value to the Debtors' estate. However, after weeks of negotiations with both Debtors and the UCC over dozens of emails and phone conferences, the parties have exhausted all efforts to reach agreeable buyout terms. Thus, CCEP is compelled to seek Court relief.

27. In conclusion, I believe that CCEP has acted in good faith to complete its scope of the Project. I believe CCEP has negotiated in good faith with the Debtors and UCC and unfortunately, we have reached an impasse. I believe, not granting the motion to reject and lift of stay on an emergency basis at this point will simply delay the inevitable and cause irreparable harm to CCEP due to the failures of CNCC."

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Texas on December 19, 2022

_____
Steve Quisenberry