UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>COMPUTE NORTH HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-90273 (MI)<br>)<br>) (Jointly Administered)<br>) **Re: Docket Nos. 630, 643** |

### DECLARATION OF DRAKE HARVEY IN SUPPORT OF JOINT MOTION OF DEBTORS AND MARATHON DIGITAL HOLDINGS, INC. FOR <u>EMERGENCY</u> APPROVAL OF STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS, MARATHON DIGITAL HOLDINGS, INC., GENERATE LENDING, LLC AND CERTAIN AFFILIATES AND MVP LOGISTICS, LLC, CONCERNING MARATHON'S MINERS

I, Drake Harvey, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the President of Compute North LLC and the other above-captioned debtors and debtors in possession (collectively, "Compute North" or the "Debtors").

2. I submit this declaration (this "Declaration") in support of the motion [Docket No. 643] (the "Motion")[2] seeking approval of the Stipulation and Agreed Order (as defined below) by and among the Debtors, Marathon Digital Holdings, Inc. ("Marathon"), Generate Lending, LLC and certain affiliates (collectively, "Generate"), and MVP Logistics, LLC ("MVP") (collectively, the "Parties") concerning certain of Marathon's miners.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## QUALIFICATIONS

3. I was appointed President of Compute North in September 2022, and prior to that appointment I served as Compute North's Chief Operating Officer. In my capacity as President of Compute North, I am generally familiar with Compute North's business, operations, assets, liabilities, day-to-day operations, and financial affairs and I have been actively involved in the Debtors' restructuring efforts, including the marketing and sale process.

4. Prior to joining Compute North in April 2021, I held leadership positions in telecommunications, technology, and SaaS businesses, and also have experience leading startup companies. I hold a BS in Business Administration from the University of Delaware.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## BACKGROUND

6. Since prior to the Petition Date, the Debtors have been marketing their assets for sale. On October 31, 2022, GC Data Center Equity Holdings, LLC ("GC Data Center") and Debtor CN Pledgor entered into a Purchase and Sale Agreement (the "PSA"). Pursuant to the PSA, Debtor CN Pledgor sold 100 percent of its equity interests in CN Borrower to GC Data Center, an affiliate of Generate.

7. On November 1, 2022, the Court entered the *Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free and Clear of All Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* [Docket No. 362] (the "Generate Sale

Order"). The Generate Sale Order approved Debtor CN Pledgor's entry into the PSA and sale of its equity interests in CN Borrower (the "Generate Sale"). The Generate Sale closed on November 2, 2022. In connection with the Generate Sale, Generate did not designate any agreements between the Debtors and Marathon for assumption and assignment. *See Notice of No Contracts Designated for Assumption and Assignment in Connection with Approved Sale* [Docket No. 412].

8. On November 29, 2022, the Court entered the *Order (I) Approving the Sale of Certain Assets of Compute North Member LLC to US Data King Mountain LLC Free and Clear of All Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* [Docket No. 594], pursuant to which U.S. Data Group, Inc. ("U.S. Data") purchased the Debtors' 50 percent membership interest in the non-Debtor TZRC LLC (the "King Mountain Sale"). As part of the King Mountain Sale, U.S. Data did not acquire any contracts between the Debtors and Marathon.

9. On December 8, 2022, the Parties executed and filed the *Stipulation and Agreed Order by and Among the Debtors, Marathon Digital Holdings, Inc., Generate Lending, LLC and Certain Affiliates and MVP Logistics, LLC, Concerning Marathon's Miners* [Docket No. 630] (the "Stipulation and Agreed Order" or the "Stipulation").

10. On December 15, 2022, the Debtors filed their proposed *Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 665] (the "Liquidating Plan") and related Amended Disclosure Statement [Docket No. 666]. In the Liquidating Plan, the Debtors contemplate selling all their remaining assets and distributing the proceeds pursuant to the waterfall established in the Liquidating Plan. *See* Liquidating Plan at §§ 3, 4. The Liquidating Plan also contemplates that all executory contracts or leases not already assumed will be rejected on the effective date of the plan. *See* Liquidating Plan § 5.1.

**DISPUTES BETWEEN THE DEBTORS AND MARATHON**

11. Marathon is one of the Debtors' largest creditors, customers, and preferred equity investors. On November 23, 2022, Marathon filed a proof of claim, numbered 36 in the Claims Register maintained for the Debtors (the "Marathon POC"), asserting, among other claims, a claim of $21,266,580.63, plus fees and expenses arising under that certain Senior Promissory Note, dated as of July 1, 2022, by and between Marathon, as Lender, and Compute North LLC, as Borrower (the "Marathon Note"). The Debtors have not reconciled the Marathon POC and may dispute the amounts asserted therein.

12. Since the Debtors filed for bankruptcy, Marathon has asked the Debtors to provide access to and return the Uninstalled Miners. The Debtors have asserted that Marathon owes payment on certain outstanding invoices (i.e., the Disputed Invoices), which I understand Marathon disputes. After approximately two months of negotiations, the Debtors and Marathon have reached an agreement among Marathon, the Debtors, MVP, and Generate that resolves multiple disputes, including those between the Debtors and Marathon regarding the invoices and return of Marathon's Uninstalled Miners.

13. I believe approval of the Stipulation and Agreed Order is in the best interests of the Debtors, their estates, and all parties in interest in these chapter 11 cases. I understand that if these disputes were not resolved quickly, Marathon would have sought relief from this Court to allow Marathon to retrieve the Uninstalled Miners. I believe such a request and the litigation that would have followed likely would have cost the Debtors' estates significant time and resources to defend. Thus, although the Debtors dispute Marathon's claims for damages relating to the Uninstalled Miners, the Debtors are not interested in needlessly increasing claims against the estates through contested proceedings with Marathon.

14. I also understand that certain of the Parties dispute who is responsible for what amounts on account of storing certain equipment owned by the Debtors and certain equipment owned by Marathon. As noted above, I understand that Marathon disputes the Debtors' claims on account of the Disputed Invoices. In addition to Marathon's miners, however, MVP is storing certain property that belongs to the Debtors' estates. The Debtors need access to that equipment as part of their ongoing sale process. Although certain of the Parties dispute responsibility for storage costs and amount related thereto, quick resolution of MVP's claims and purported liens will benefit both the Debtors and Marathon in their efforts to retrieve their respective equipment from storage.

15. In exchange for the payments to be made under the Stipulation and Agreed Order, MVP has agreed to release its liens on and possession of Marathon's Uninstalled Miners and withdraw its proofs of claim against the Debtors. MVP has also agreed that the Debtors will have access to estate property stored at MVP's warehouse, which will assist in the Debtors' sale efforts.

16. I therefore believe that prompt resolution of the disputes between the Debtors and Marathon will reduce the Debtors' exposure to potential additional claims by Marathon, MVP, and other parties in interest that might also have equipment being stored in MVP's warehouses.

17. If not for the Stipulation and Agreed Order, I believe the Parties would have litigated these various issues, spending significant time and resources to prepare witnesses for contested evidentiary hearings on issues including the validity, amount and priority of the claims and liens asserted by the various parties against each other. Consensual resolution of these disputes spares all Parties from incurring potentially substantial legal fees and costs while facing the risk of uncertain outcomes.

18. I believe the Stipulation and Agreed Order also provides the Debtors with other measurable benefits. For instance, in exchange for a resolution of the Disputed Invoices, Marathon has agreed to pay all costs associated with picking up and packing the Uninstalled Miners—these costs account for over 50 percent of the amounts MVP would have invoiced the Debtors to release the Uninstalled Miners. In addition, Marathon has agreed to fix its valid, undisputed claims relating to the Marathon Note as a general unsecured claim and reduce the claim on account of the Marathon Note by at least $1 million (more, if you account for claims relating to fees and expenses arising under the Marathon Note). I am advised that fixing the value of that portion of the Marathon POC will save the Debtors' estates time and resources that would have been spent reconciling the amounts due on account of the Marathon Note but for the Stipulation and Agreed Order.

19. The Debtors also benefit from the certainty provided in the Stipulation and Agreed Order that they owe no further amounts to Generate.

20. I am advised that the facts and circumstances discussed herein necessitate expedited relief, as requested in the Motion. I understand that both Marathon and the Debtors will continue to accrue costs on a daily basis until the Stipulation and Agreed Order is approved. The Debtors will accrue storage costs from MVP as Marathon's and the Debtors' equipment sits in its warehouse, while I understand Marathon asserts that it continues to incur opportunity costs and other damages as the Uninstalled Miners collect dust rather than mine bitcoin. In addition, I am advised of Marathon's assertion that it needs access to its Uninstalled Miners to complete an inventory to comply with its public reporting obligations. With the holidays quickly approaching, I believe the relief requested in the Motion should be granted on an emergency basis.

## **CONCLUSION**

21.    In conclusion, I believe that based on these circumstances, the Court should approve the Motion and enter the Stipulation and Agreed Order on an emergency basis. Considering the costs that the Debtors and their estates, Marathon, and MVP incur on a daily basis until the Stipulation and Agreed Order is approved, I believe approval of the Stipulation and Agreed Order is fair, equitable, and in the best interests of the Debtors' estates.

[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: December 19, 2022
Eden Prairie, Minnesota

Respectfully submitted,

/s/ Drake Harvey
Drake Harvey
President
Compute North LLC