```
                  UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                     .
IN RE:                               .   Case No. 22-90273
                                     .   Chapter 11
COMPUTE NORTH HOLDINGS, INC.         .
and CN MINING, LLC,                  .   515 Rusk Avenue
                                     .   Houston, TX 77002
                Debtors.             .
                                     .   Tuesday, November 22, 2022
. . . . . . . . . . . . . . . .      .   2:02 p.m.
```

TRANSCRIPT OF ORDER (A) APPROVING DE MINIMIS ASSET SALE
PROCEDURES; APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION,
ASSIGNMENT, AND REJECTION PROCEDURES, AND THE FORM AND MANNER
OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO ENTER INTO
ASSET PURCHASE AGREEMENTS WITH STALKING HORSE BIDDERS; AND
(D) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, AS WELL AS
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES [256];
NOTICE OF SUCCESSFUL BIDDER FOR CERTAIN ASSETS [511]
**BEFORE THE HONORABLE MARVIN ISGUR**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:            Paul Hastings LLP
                           By:  JAMES T. GROGAN, ESQ.
                           600 Travis Street, Floor 58
                           Houston, TX 77002
                           (713) 860-7338

APPEARANCES CONTINUED.

Audio Operator:            Mayra Marquez, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

```
For Foundry Digital        Schulte Roth & Zabel LLP
LLC:                       By:  KRISTINE MANOUKIAN, ESQ.
                           919 Third Avenue
                           New York, NY 10022
                           (212) 756-2466


TELEPHONIC APPEARANCES:


For the Debtors:           Paul Hastings LLP
                           By:  MATTHEW MICHELI, ESQ.
                           71 S. Wacker Drive, Suite 4500
                           Chicago, IL 60606
                           (312) 499-6018


For Foundry Digital        Schulte Roth & Zabel LLP
LLC:                       By:  PETER J. AMEND, ESQ.
                           919 Third Avenue
                           New York, NY 10022
                           (212) 756-2736


                           Porter Hedges LLP
                           By:  JOHN HIGGINS, ESQ.
                           1000 Main Street, 36th Floor
                           Houston, TX 77002
                           (713) 226-6648


For Marathon Digital       Weil, Gotshal & Manges LLP
Holdings:                  By:  ALEXANDER COHEN, ESQ.
                           767 Fifth Avenue
                           New York, NY 10153
                           (212) 310-8020


For MP2 Energy Texas       Cokinos Young
LLC d/b/a Shell Energy     By:  MARIA BARTLETT, ESQ.
                           Four Houston Center
                           1221 Lamar, 16th Floor
                           Houston, TX 77010
                           (713) 535-5524


For Sunbelt Solomon        Mayer Brown LLP
Services, LLC:             By:  SUSAN ALKADRI, ESQ.
                           700 Louisiana Street,
                           Houston, TX 77002
                           (713) 238-3000
```

```
TELEPHONIC APPEARANCES (Continued):

For the Official          McDermott Will & Emery LLP
Committee of Unsecured    By: CHARLES GIBBS, ESQ.
Creditors:                2501 North Harwood Street
                          Suite 1900
                          Dallas, TX 75201-1664
                          (214) 295-8000


                          McDermott Will & Emery LLP
                          By:  KRISTIN GOING, ESQ.
                          One Vanderbilt Avenue
                          New York, NY 10017
                          (212) 547-5429

For Veribi LLC:           Hoffman & Saweris, P.C.
                          By:  ALAN SAWERIS, ESQ.
                          2777 Allen Parkway, #1000
                          Houston, TX 77019
                          (713) 654-9990

For the United States     Office of United States Trustee
Trustee:                  By:  JANA SMITH WHITWORTH, ESQ.
                          515 Rusk Street, Suite 3516
                          Houston, TX 77003
                          (713) 718-4650

For Block Metrics:        Sidley Austin LLP
                          By:  MAEGAN QUEJADA, ESQ.
                          1000 Louisiana Street, Suite 5900
                          Houston, TX 77002
                          (713) 495-4618

Also appearing:           DAN SWINHOE
                          DatacenterDynamics
```

1

1    (Proceedings commence at 2:00 p.m.)

2         THE COURT:  All right.  Good afternoon.  We're here

3    on the Compute North Holdings case, 22-90273.  Electronic

4    appearances should have been made.  If you wish to speak at any

5    point today, please press "five star" one time on your phone.

6    Tell me what we have, Counsel.

7         MR. GROGAN:  Good afternoon, Your Honor.  James

8    Grogan from Paul Hastings here on behalf of Compute North and

9    its debtor affiliates.  Your Honor, we're here today on a -- on

10   an asset sale, one of several that we've had in the case so

11   far.  The one today was -- is between the debtors and DCG

12   Foundry.  A proposed sale order was entered at Docket Number

13   525.  Notice of successful bidder for these assets was entered

14   at Docket Number 511.

15        THE COURT:  All right.  Ms. Whitworth.

16        MS. WHITWORTH:  Good afternoon, Judge Isgur.  The

17   United States Trustee does did not have any objections to the

18   proposed order.

19        THE COURT:  Thank you.  From area code (646)

20   415-3874.

21        MR. COHEN:  Good afternoon, Your Honor.  This is Alex

22   Cohen, Weil Gotshal, on behalf of Marathon Digital Holdings,

23   Incorporated.  We're a creditor and a customer in

24   (indiscernible) in these cases.  We saw the order was filed,

25   and I don't want to get ahead of the debtors' presentation in

1    case they've had a chance to review some of the language, but

2    we just had some reservations of rights language that we

3    proposed to be entered.  And we can address that now or at the

4    end of the hearing, whichever Your Honor prefers.

5              THE COURT:  Let's see where we go, and I won't forget

6    it.

7              Mr. Gibbs.

8              MR. COHEN:  Thank you.

9              MR. GIBBS:  Good afternoon, Your Honor.  Chuck Gibbs

10   with McDermott Wills & Emery, along with my partner, Kristin

11   Going, on behalf of the unsecured creditors in this committee.

12   We have reviewed the order and are generally fine with it, and

13   we'll make statements in support of the motion at the

14   appropriate time.

15             THE COURT:  Thank you.  From (713) 561-1844.

16             MS. ALKADRI:  Good afternoon, Your Honor.  Susan

17   Alkadri with Mayer Brown, here on behalf of Sunbelt Solomon

18   Services, LLC.  Your Honor, we filed a limited objection to

19   debtors' proposed sale earlier this month, Docket 413.  We've

20   been in communication with debtors regarding our objections,

21   and because we want to facilitate the sale process, we've

22   agreed with debtors to some carefully negotiated language in

23   Paragraph 32 of the proposed sale order.  And if anything comes

24   up, I will raise that at the appropriate time.  Thank you, Your

25   Honor.

1           THE COURT:  Thank you.  We did have an objection by

2    the Nebraska entities to the Minden transaction, and I know

3    that's now somewhat of a delayed transaction.  But what are we

4    doing in the order with respect to the executory contract issue

5    that's really being raised by the Nebraska entity?

6           MR. GROGAN:  Right.  Your Honor, I think we have

7    resolved that one.  Mr. Micheli can -- I think has the

8    paragraph where that resolution is reflected.  Mr. Micheli, you

9    want to take over?

10          THE COURT:  Let me get his line up.  From

11   (402) 679-5426.

12          MR. WHALEY:  Good morning, or good afternoon, Your

13   Honor.  Michael Whaley on behalf of the Nebraska Public Power

14   District.  And as counsel indicated, Mr. Micheli will be

15   advising the Court as to some agreements reached between the

16   parties with regard to the objections that we had filed.

17          THE COURT:  All right.  And that resolves your

18   objection then?

19          MR. WHALEY:  Your Honor, it should resolve our

20   objection.  We have some language that needs to be worked out

21   between the parties, which we're working on, but in principle,

22   yes, I believe we have our objections resolved.

23          THE COURT:  And Mr. Micheli, what is that deal?

24          MR. MICHELI:  Yes, Your Honor.  Thank you.  Matt

25   Micheli on behalf of the debtors.

1          So, Your Honor, as you indicated, NPPD did file two

2     objections.  The first objection was to the assumption and

3     assignment of the transmission facilities construction

4     agreement at NPPD's Minden substation, which is dated

5     February 17, 2022-- we'll refer to that as the "construction

6     agreement" -- and the agreement for EDR electrical service --

7     excuse me, electric service between Compute North NE05, LLC and

8     Southern Public Power District and Nebraska Public Power

9     District, which is dated October 1st, 2021, and I'll refer to

10    that as the "EDR agreement."  In addition to that objection,

11    Your Honor, NPPD also filed an objection yesterday to the

12    adequate assurance of future performance under the construction

13    agreement and EDR agreement.

14          Your Honor, we can report that the debtors, the

15    purchaser, and NPPD have reached an agreement in principle,

16    subject to documentation that would resolve NPPD's objection

17    and allow for the EDR agreement and the construction agreement

18    to be assumed by the debtors and assigned to the purchasers.

19    The parties intend to work in good faith to memorialize this

20    resolution through a combination of certain amendments to the

21    EDR agreement and a stipulation among the parties, which the

22    debtors intend to submit to the Court for approval prior to the

23    Minden closing.  And that term is defined in the Foundry asset

24    purchase agreement.  That would be the outside date for

25    resolution of that matter.

1          And, Your Honor, while the parties are working on

2    documentation of their understanding and the agreement, the

3    debtors, NPPD, and the purchaser reserve all of their rights on

4    the record as it relates to NPPD's objections, the EDR

5    agreement and the construction agreement, including the

6    debtor's right to assume and assign such agreements to the

7    purchaser.

8          Your Honor, based upon those statements, EDR --

9    excuse me, NPPD, for purposes of today's hearing, will not be

10   pursuing its objection.

11        THE COURT:  Thank you, Mr. Micheli.  I've looked for

12   Exhibit 8.1(f) to the draft form of order, but it didn't have

13   its exhibits with it.  What am I doing in this order that would

14   potentially authorize the assumption and assignment of those

15   contracts that are going to be worked out with the further

16   order?  In other words, I couldn't tell what I was --

17        MR. MICHELI:  So Your Honor --

18        THE COURT:  -- doing in the order because I couldn't

19   find the schedule, so --

20        MR. MICHELI:  The parties have agreed that until we

21   either reach this resolution -- so if the parties reach

22   resolution, Your Honor, then we would present the stipulation

23   to the Court and that stipulation would address the resolution

24   reached.  And at that point in time, the agreements,

25   construction agreement and the EDR agreement, would be assumed

1   and assigned to the purchaser.  If the parties are unable to

2   document this resolution and reach an agreement, my expectation

3   is, Your Honor, that the debtors would seek a further hearing

4   before the Court to address the issue of the -- excuse me, the

5   objections raised in NPPD's objection with respect to the

6   executory nature of those contracts and would again, seek a

7   ruling from this Court or further -- a further order from this

8   Court making the determination that the debtors can, in fact,

9   assume and assign those agreements.

10          THE COURT:  Yeah.  And all that's fine with me.  I

11  just don't see where the order does that, and that's what I'm

12  trying to clarify with you.  And if we just need to add a

13  sentence or two to the order to say that, you know, that's

14  fine.  But I may just be missing in the order where it says

15  that.  And part of that is because I can't read 8.1(f).

16          MR. GROGAN:  Your Honor, I think the agreement with

17  NPPD on this point was that you would so order the record.  So

18  we would be reading the resolution into the record with their

19  consent.

20          THE COURT:  In other words, you won't close either

21  without a further order.

22          MR. GROGAN:  it's not going to be reflected in the

23  order per se.  It'll -- it is a "on the record" agreement.

24          THE COURT:  If that's okay with everyone else here,

25  then I will do that.  Let me hear if there's any objection to

1    that.

2         (No audible response)

3              THE COURT:  All right.  I'm ordering that the sale of

4    the Minden facility may not close without the written consent

5    of the Nebraska public entity that has filed an objection or

6    further order of the Court.  And we'll make a docket entry to

7    that effect.  Thank you for clarifying that.

8              MR. GROGAN:  Yep.

9              THE COURT:  I just wanted to be sure what -- how we

10   were getting --

11             MR. GROGAN:  Thank you, Your Honor.

12             THE COURT:  -- crossing that bridge.

13             MR. GROGAN:  Yes.

14             THE COURT:  Does that work for Foundry?  Let me just

15   hear from Foundry.

16             MS. MANOUKIAN:  Your Honor, Kristine Manoukian from

17   Schulte Roth & Zabel on behalf of Foundry Digital LLC, the

18   purchaser for the Foundry assets.  Just a minor clarification

19   on this point.  The expectation is that the Minden assets or

20   purchased assets as they're defined in the asset purchase

21   agreement are part of the purchased assets.  And at the option

22   of Foundry, Foundry would be able to acquire those assets.  Now

23   as it relates to -- and that this order would authorize that

24   transaction.  However, as it relates to the NPPD agreements at

25   issue that NPPD has raised objections with, those agreements,

1   because there is some dispute as to whether or not the debtors

2   are able to assume and assign those agreements at this time,

3   that is what's going -- that is what's being preserved pending,

4   you know, resolution among the parties of appropriate language

5   that will reflect that.

6           And so at that point in time, once that resolution

7   has been reached, those agreements could be assumed and

8   assigned.  So it's really just as it relates to the assumption

9   and assignment of those agreements that we're sort of punting.

10  But as it relates to the remaining Minden assets, no other

11  party has raised issues with respect to that.  So we would be

12  seeking authorization on that transaction, as well.

13          THE COURT:  So just to be sure, if you choose, you

14  may close on the Minden assets, but without further court order

15  or the written agreement of the Nebraska entity, you may not

16  assume the two contracts that are at issue, right?

17          MS. MANOUKIAN:  That's correct, Your Honor.

18          THE COURT:  You would take the assets without

19  those --

20          MS. MANOUKIAN:  That's the understanding we've

21  reached with NPPD.

22          THE COURT:  You would take the assets without those

23  assumed contracts --

24          MS. MANOUKIAN:  That's correct, Your Honor.

25          THE COURT:  -- if that's the way you like.

1              MS. MANOUKIAN:  Yes.  And that -- it's at our option,

2    certainly, to do that, if we choose to.

3              THE COURT:  So let me just be sure that's okay with

4    NPPD.

5              MR. WHALEY:  Your Honor, Mike Whaley again on behalf

6    of NPPD, and that is acceptable to us.  We understand that,

7    again, those issues need to be worked out which we anticipate

8    they will.

9              THE COURT:  I do, too.  I just -- I need to know

10   exactly what this is going to be.  So they can go ahead and buy

11   all of the Nebraska assets if they want to.  They just can't

12   assume and assign your contracts without your agreement or a

13   further court order.

14             MR. WHALEY:  Correct, Your Honor.

15             THE COURT:  Okay.  Thank you.

16             MS. MANOUKIAN:  Thank you, Your Honor.

17             THE COURT:  Thank you.  And then why don't we go and

18   take Mr. Cohen's issue and see what that is?  Mr. Cohen?

19             MR. COHEN:  Hi, Your Honor.  Alexander Cohen again,

20   for the record, for Marathon Digital.  So the sale order was

21   filed pretty quickly before the hearing, and we had a quick

22   chance to review, but it seems that a couple of the schedules

23   are missing from the asset purchase agreement that was filed,

24   including the schedule of purchased assets.  Our concern is

25   that the notice that defines purchased assets defined it

1  broadly to include all the mining equipment owned by several of

2  the debtors, including Compute North LLC, Compute North Mining,

3  Compute North Texas.  And we want to make sure that, to the

4  extent that the debtors are selling equipment, that they're

5  only selling equipment that's theirs and not owned by a third

6  party but held by the debtors.  I think we had a similar issue

7  in the Generate sale.

8          THE COURT:  Right.

9          MR. COHEN:  And we had some language that we (audio

10  interference), and so we would just propose that similar

11  language be dropped into this sale order, just so everyone has

12  the comfort that no assets are being sold without third-party

13  permission.

14          THE COURT:  Mr. Micheli?

15          MR. MICHELI:  Yes, Your Honor.  I think the starting

16  place is that, you know, we made clear in the procedures order,

17  which appears at Docket 256, I think it's noted twice in the

18  procedures order itself and once in the bidding procedures that

19  the debtors are not authorized, nor are they seeking

20  authorization, to sell assets that belong to customers.  The

21  debtors -- it's not property of the estate, and the debtors did

22  not seek authority to do that.

23          And so I, you know, from the debtors' perspective,

24  Your Honor, we haven't requested that, nor do we believe that

25  pursuant to the sale agreement, we are selling any property

1  that belongs to any of the customers.

2          THE COURT:  And what if something that a customer

3  thinks belongs to it turns out to appear on your schedule of

4  assets so that there is a dispute?  Which controls, the

5  schedule of assets or ownership?

6          MR. MICHELI:  I would say the schedule of assets,

7  Your Honor, because we're not seeking to, you know, as

8  indicated, we're not seeking to actually sell them anything

9  that is owned or held by a customer.

10          THE COURT:  Then it seems to me that Mr. Cohen ought

11  to -- have to -- he definitely needs to look at the schedule of

12  assets to be sure that nothing his client claims is there, if

13  you're telling me that schedule, in effect, declares who owns

14  what property is owned, is there.  Or we can simply say you can

15  only sell what you own and disregard what might be listed.  But

16  if you're going to tell me it's whatever is listed, is your

17  position as to what you own, I don't know how they can get

18  comfortable that that's correct without seeing it.

19          MR. MICHELI:  Understood, Your Honor.  And I can -- I

20  think that we will be able to share that schedule with the --

21  with Marathon, but I'd like to confirm that with the purchaser,

22  as well.

23          MR. GROGAN:  Can we can we take five minutes and talk

24  to Foundry and --

25          THE COURT:  Sure.  I'm happy with any resolution.  I

1   just want a resolution that I can enforce.

2        MR. GROGAN:  Okay.  Yeah, I understand completely.  I

3   -- the order has to be acceptable to the purchaser.

4        THE COURT:  Right.

5        MR. GROGAN:  So if we're going to add something in

6   here.

7        THE COURT:  I also think I need an order that has its

8   attachments, right, if I'm going to be approving it?  I don't

9   think I do.

10        MR. GROGAN:  The --

11        THE COURT:  The order refers to attachments that

12   aren't there.

13        MR. GROGAN:  I think the APA that -- you're referring

14   to the schedules on the APA or the order itself?

15        THE COURT:  I thought that it said "attached hereto,"

16   but let me look in the proposed order.  It says, for example,

17   on Page 36, "Assigned contracts means all executory contracts

18   and unexpired leases that are expressly set forth on Schedule

19   8.1(f), attached hereto."  And I think we do the same thing

20   with the assets.

21        So I think I've got to have a fully conformed

22   version, or we can change this to say it's whatever's listed on

23   the asset purchase agreement.  But I don't think I want an

24   order that's incomplete.

25        MR. GROGAN:  Oh, I understand.  That's --

```
1              THE COURT:  Tell me, what does the purchaser want?
2              MR. GROGAN:  That's something we can clean that up.
3              THE COURT:  Go ahead.
4              MR. MICHELI:  We can clean that up, Your Honor.
5              THE COURT:  Thank you.
6              MS. MANOUKIAN:  Your Honor, Kristine Manoukian again
7   from Schulte Roth & Zabel on behalf of Foundry.  We don't have
8   I don't believe -- I'll need to confirm with my client, but I
9   don't believe we have an issue attaching Schedule 1.1, which is
10  the purchase asset schedule, or Schedule 8.1(f), which is the
11  assigned contract schedule, which, by the way, for -- Your
12  Honor, just for your benefit, that contract -- the contracts
13  listed on Schedule 8.1(f) are exactly the same contracts that
14  the debtors noticed, I believe, over the weekend, the selected
15  target contract under that notice -- I can't remember what
16  exact docket number it is.  But it was, I believe Docket 510,
17  if I recall correctly.  And so that -- that's -- that mimics
18  actually that schedule.  But if Your Honor wishes, we don't
19  have an objection to attaching those two schedules.
20             THE COURT:  It's -- I really don't have much of a
21  preference other than I don't want to sign something that says
22  I'm assigning what's on the attached and then there is no
23  attached.
24             MS. MANOUKIAN:  Understood, Your Honor.
25             THE COURT:  So I don't care which way you want to
```

```
 1  write it.
 2          MS. MANOUKIAN:  Sure.
 3          THE COURT:  But don't have me say something --
 4          MS. MANOUKIAN:  We'll take a look at the order and
 5  see how we can clean it up.
 6          THE COURT:  Yeah.  Okay.
 7          MS. MANOUKIAN:  No problem.
 8          THE COURT:  How do you all want to get this done?
 9  Because that means we're not going to -- it's clear you all
10  are going to get it done.  I just don't know if you want to try
11  and get this done during this hearing.  Do you want to submit
12  the order after the hearing and get it signed tomorrow?  What
13  are we trying to do?
14          MS. MANOUKIAN:  Yeah.  Your Honor, it would be our
15  preference to get this done at the hearing so if we can take
16  five, ten-minute break.
17          THE COURT:  And then just have somebody file the
18  new --
19          MS. MANOUKIAN:  I don't imagine it would --
20          THE COURT:  If somebody will file a new order that
21  works.
22          MS. MANOUKIAN:  That's fine with me, Mr. Micheli.
23          MR. MICHELI:  Yes, we can do that.  I just need to
24  coordinate the correct form of order.  Happy to do that.
25          THE COURT:  Mr. Cohen, are you okay with this
```

1    solution?

2              MR. COHEN:  I'm trying to -- apologies if I'm slow on

3    the uptake.  I just want to make sure that I understand it.

4              Are you guys providing me with a schedule of assets

5    or are we adding essentially a paragraph saying you're not

6    selling third-party assets?  If you provide the schedule, we're

7    going to need some time to run it by the client to confirm that

8    none of the equipment that's on there belongs to them.  It

9    might be more efficient to just include the paragraph that just

10   -- the plain reservations of right language that we used in the

11   Generate sale order.  I'm happy to circulate that if that's

12   easier.

13             THE COURT:  Okay.  Well, I'll let you all talk

14   through it and work out something that hopefully everybody can

15   live with.  And if you can't, we'll deal with it if you can't,

16   in a few minutes.

17             MS. MANOUKIAN:  That sounds great.  Thank you, Your

18   Honor.

19             THE COURT:  How much time do you all want?  You said

20   ten minutes.   Is it really ten minutes?

21             MR. MICHELI:  Thank you, Your Honor.

22             MS. MANOUKIAN:  I think ten minutes should be

23   sufficient.

24             THE COURT:  Okay.  We'll come back at 2:30.

25             MS. MANOUKIAN:  Thank you.

```
1              THE COURT:  Thank you.

2              MR. MICHELI:  All right.  Thank you.

3         (Recess taken at 2:21 p.m.)

4         (Proceedings resumed at 2:32 p.m.)

5              THE COURT:  Please be seated.  All right.  Let's go

6    back on the record in the Compute North case.

7              Mr. Cohen?

8              MR. COHEN:  Thank you, Your Honor.  We discussed with

9    the debtors, and they're going to drop some proposed language

10   into the order that -- similar to what we used in the Generate

11   sale order, and I think with that, we are resolved with our

12   issues.

13             THE COURT:  I appreciate that, Mr. Cohen.  Thank you.

14             MR. COHEN:  Thank you, Your Honor.

15             THE COURT:  The good news is I don't see Mr. Micheli,

16   which means he's off working.

17             MR. GROGAN:  I am not sure what happened to him.

18             THE COURT:  He's off working.  Never complain.

19             MR. GROGAN:  I might be able to take it from here,

20   but no assurances.

21             THE COURT:  He's -- I saw him back, and then he hung

22   up again.

23        (Pause)

24             THE COURT:  Mr. Micheli, welcome back.

25             MR. MICHELI:  My apologies, Your Honor.  I was -- I
```

1  could hear you guys.  For some reason you couldn't see me, so I
2  had to log off and log back on.
3          THE COURT:  We were only complimenting you, so it was
4  okay.  You didn't miss much.
5          MR. MICHELI:  Appreciate that.  So I assume -- I did
6  hear Mr. Cohen speaking, and he represented that we're
7  comfortable with the form of language that was proposed?
8          THE COURT:  Correct.  And so I just need to get --
9          MR. MICHELI:  Okay.
10          THE COURT:  -- the revised language as well as the
11  schedules filed in an order.  And I think we're okay.
12          Mr. Gibbs, I think you had something you wanted to
13  add though?
14          MR. GIBBS: Good afternoon, Your Honor.  I was just
15  opening my line, when it was appropriate to speak, after the
16  presentation of evidence.
17          THE COURT:  Well, why don't you do it now while we
18  get -- I'm sure Mr. Micheli needs a few minutes to assemble all
19  this and let's take that time with you.
20          MR. GIBBS:  Okay.  Your Honor, just very briefly, on
21  behalf of the unsecured creditors committee.  The committee is
22  supportive of this motion and ask Your Honor to approve the
23  order.
24          We were integrally involved in the nine-hour auction
25  that occurred last week.  We, as a consultation party, were

1    provided access to information regarding the bidders.  We've

2    consulted frequently with the debtors' representatives and

3    advisors and believe that this sale is in the best interests of

4    the estates.

5           I would note for the Court that the proposed order

6    that is now being slightly amended, I believe it's in

7    Paragraphs 10 and 11, have what I'll call carve outs from the

8    releases -- the scope of the releases regarding certain

9    agreements.  We're fine with that.

10          But I'll point out to the Court that there's still

11   one day left before the expiration of the bar date or before

12   the application of the bar date.  So to the extent that

13   additional claims come in from this buyer that we are unaware

14   of that might pertain to these agreements, we just want the

15   Court to know we're reserving our right to come back to the

16   Court if -- since we don't know with perfect clarity the scope

17   of the potential claims.  If one comes in after this sale is

18   approved, and before the bar date, the end of the day tomorrow,

19   then we may have an issue with -- that would merit coming back

20   to the Court.  But as it stands now, we are fine with the order

21   and we are supportive of the sale.

22          THE COURT:  Thank you, sir.

23          Mr. Micheli, what kind of timeframe do you need to

24   get this finished up so that everyone can take a look at the

25   final matter and I'll put it up on the screen, sign off on it?

1           MR. MICHELI:  I can, Your Honor, provide the updated

2    order here in a couple of minutes.  And then I just wanted to

3    confirm with purchaser's counsel that we are signed off on

4    attaching the asset purchase agreement with -- and I just

5    wanted to confirm because I think I missed this part, which

6    schedules we're including.

7           MR. GROGAN:  So, Your Honor, I actually -- I'm not

8    sure there is anything else to attach here other than the APA

9    itself.  We were not attaching the schedules to the APA, which

10   do include some confidential business information that I don't

11   think the purchaser wants in the public domain.

12          THE COURT:  I may be missing the point.  Tell me

13   again.

14          MR. GROGAN:  So we -- all we're asking you to approve

15   is the APA itself, the contract, not -- the schedules to the

16   contract would not be attached and are not attached to what we

17   filed.

18          THE COURT:  The order says, and again, this isn't

19   anything I care about other than I don't want an order that

20   says something that I know not to be accurate.  The order says

21   that Schedule 8.1(f) is attached to the order, is the list of

22   executory contracts.

23          MR. GROGAN:  We -- so we had a hard time finding

24   that.

25          THE COURT:  Okay.  Well, here's what I'm looking at.

1   Let me find it.

2            UNIDENTIFIED:  Your Honor, I think we're looking at

3   Docket 525-1.

4            THE COURT:  That's what I've got up.  Let's do this

5   again.  I've got 525-1.  Hold on.

6       (Pause)

7            MR. MICHELI:  Your Honor, we have a redline.  Would

8   you like us to file that in the docket?

9            THE COURT:  Well, hold on.  I want to figure out --

10  I'm having a little trouble with my computer.  But what I'm

11  trying to figure out is why y'all aren't seeing the provision

12  that I'm seeing.

13           MR. GROGAN:  So this may be what you saw but this is

14  in the --

15           THE COURT:  Oh, and this is part of the asset

16  purchase agreement?

17           MR. GROGAN:  It's in the agreement itself.  Yes, Your

18  Honor.

19           THE COURT:  Got it.  Got it, got it, got it.  Okay.

20  Sorry.  I misread the section.

21           MR. GROGAN:  It's okay.

22           THE COURT:  Okay.  So I agree that is not there but

23  what I feared was there is not there.  All right.  So we're --

24  you're going to upload then a redlined version with the

25  language you've agreed to?

1          MR. GROGAN:  Correct.  With (cross-talk).

2          MR. MICHELI:  Yes, we'll get a redline filed with the

3    compiled -- with the asset purchase agreement attached to the

4    changed version of the order and a redline reflecting the

5    change.

6          THE COURT:  Great.

7          MR. GROGAN:  Your Honor, we don't have to do it this

8    second, but I do have a couple of declarations to admit into

9    evidence.

10         THE COURT:  Sure.  Go ahead.

11         MR. GROGAN:  Okay.

12         THE COURT:  Now's a good time.

13         MR. GROGAN:  Your Honor, the debtors move to

14   introduce the declaration of Ryan Hamilton, which was filed at

15   Document Number 520, into evidence in support of the asset

16   sale.

17         THE COURT:  Is there any objection to the declaration

18   of Ryan Hamilton?

19       (No audible response)

20         THE COURT:  All right, 520 is admitted.

21       (ECF Number 520 admitted into evidence)

22         MR. GROGAN:  Your Honor, we also move to introduce

23   the declaration of Drake Harvey, which was filed at Document

24   Number 521, into evidence.

25         THE COURT:  Any objection to the admission of the

1  Harvey declaration?

2       (No audible response)

3            THE COURT:  It is admitted.  Thank you.

4       (ECF Number 521 admitted into evidence)

5            MR. GROGAN:  Thank you, Your Honor.

6       (Pause)

7            THE COURT:  Okay.  So the revised order has been --

8  no that is.  There's simply an affidavit, coincidentally got

9  filed by --

10           MR. MICHELI:  Your Honor, we're working to get that

11  filed now.  Give me one moment.

12           THE COURT:  No.  Epiq happened to file an affidavit

13  while we were sitting here waiting, showing service of the

14  prior order.

15      (Pause)

16           MR. MICHELI:  Your Honor, this is Matt Micheli.

17  Apologies for the delay.  Those -- the document should be filed

18  here in the next couple of minutes.

19           THE COURT:  All right.

20           MR. MICHELI:  Appreciate your patience.

21           THE COURT:  Just tell me when you're ready.

22      (Pause)

23           MR. MICHELI:  Your Honor, I understand it's been

24  filed and will appear at ECF 529.  So I haven't received the

25  official notice yet.

1           THE COURT:  All right.

2      (Pause)

3           THE COURT:  I have it.  Let me open the redline.

4           All right.  Are there objections?  I've got

5  Ms. Quejada that wants to speak.  Ms. Quejada, go ahead.

6           MS. QUEJADA:  Yes, Your Honor.  Maegan Quejada for

7  Block Metrics.  We have also emailed with the debtors ahead of

8  time, because our client also has some mining equipment in the

9  debtors' possession, so the language doesn't work for us

10 because it only specifies Marathon.  If it was something more

11 like the Generate order where it just says non-debtor third

12 parties, that would work better if it's possible.  Or just

13 include our client.

14          THE COURT:  Mr. Micheli?

15          MR. MICHELI:  Yes, in my correspondence with counsel

16 for Block Metrics, we indicated -- I made a representation as I

17 indicated to the Court, which is also represented here, but I

18 didn't -- I'm just hearing from that they're asking for similar

19 language.  My understanding was our previous representations

20 were sufficient.

21          MS. QUEJADA:  Yes, Your Honor.  The issue is the

22 correct -- the statement on the record that says that the

23 schedule would control over any ownership which would be a

24 little bit different.

25          THE COURT:  So it's pretty easy to know that I'm not

```
1   going to authorize the sale of assets not owned by the debtor.

2   And I think I can just fix this order.  Let me get that done

3   and see if we have any objection to it.  Hold on a minute.

4            MS. QUEJADA:  Thank you, Your Honor.

5            MS. MANOUKIAN:  Your Honor, Kristine Manoukian from

6   Schulte Roth on behalf of Foundry, if I may.

7            THE COURT:  All right.

8            MS. MANOUKIAN:  We don't -- this is the first time

9   I'm hearing of this objection.  But we don't have an issue

10  revising the --  I think it's Paragraph 35 at this point but

11  the language that contains Marathon to also include their

12  client.

13           THE COURT:  I'm just going to include that I'm not --

14  I do not intend to authorize the sale of any assets not owned

15  by the debtors.  So I'm just going to include that.  I mean,

16  that's pretty easy.

17           MS. MANOUKIAN:  Understood, Your Honor.

18           THE COURT:  Y'all can't expect me to just authorize

19  the sale of something they don't own, so --

20           MS. MANOUKIAN:  Understood, Your Honor.

21           THE COURT:  -- let me just get this fixed.  This won't

22  take long.  I'm having a little trouble getting it downloaded

23  for what I need so hold on one second.  This may take just a

24  second.

25       (Pause)
```

1          THE COURT:  Any objection by anyone to any portion of

2  the order including the changes that I just made to Paragraph

3  34?

4      (No audible response)

5          THE COURT:  All right.  The order's been signed.

6  It'll be docketed this afternoon.  Everybody have a good

7  Thanksgiving.

8          MR. MICHELI:  Thank you, Your Honor.

9          THE COURT:  Thank you for coming in next year.

10          MR. GROGAN:  Thank you, Your Honor.

11          THE COURT:  Thank you all.

12          MS. WHALEY:  Thank you, Your Honor..

13          MR. COHEN:  Thank you.

14          MS. ALKADRI:  Thank you, Your Honor.

15      (Proceedings concluded at 3:12 p.m.)

16                      *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                        **C E R T I F I C A T I O N**

2

3            I, Alicia Jarrett, court-approved transcriber, hereby

4     certify that the foregoing is a correct transcript from the

5     official electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8

9

10    _____

11    ALICIA JARRETT, AAERT NO. 428        DATE: December 21, 2022

12    ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25