```
                     UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                      .
IN RE:                                .  Case No. 22-90273
                                      .  Chapter 11
COMPUTE NORTH HOLDINGS, INC.          .
and CN MINING, LLC,                   .  515 Rusk Street
                                      .  Houston, Texas 77002
                    Debtors.          .
                                      .  Friday, December 9, 2022
. . . . . . . . . . . . . . . .       .  10:00 a.m.
```

   TRANSCRIPT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
    (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE
       STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE
  PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT
     CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
  NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES
    WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF [578];
  DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
   DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS TO
   FOUNDRY DIGITAL LLC PURSUANT TO SECTION 365 OF THE BANKRUPTCY
         CODE AND (II) GRANTING RELATED RELIEF [627]
            BEFORE THE HONORABLE MARVIN ISGUR
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Paul Hastings LLP
                       By:  JAMES T. GROGAN, III, ESQ.
                       600 Travis Street, 58th Floor
                       Houston, Texas 77002
                       (713) 860-7300

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:        Courtroom ECRO Personnel

Transcription Company: Access Transcripts, LLC
                       10110 Youngwood Lane
                       Fishers, IN 46048
                       (855) 873-2223
                       www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For the Official Committee of Unsecured Creditors: | McDermott Will & Emery LLP<br>By: CHARLES GIBBS, ESQ.<br>2501 North Harwood Street<br>Suite 1900<br>Dallas, TX 75201-1664<br>(214) 295-8000 |
| | McDermott Will & Emery LLP<br>By:  KRISTIN GOING, ESQ.<br>One Vanderbilt Avenue<br>New York, NY 10017<br>(212) 547-5429 |
| For Foundry Digital LLC: | Schulte Roth & Zabel LLP<br>By:  KRISTINE MANOUKIAN, ESQ.<br>919 Third Avenue<br>New York, New York 10022<br>(212) 446-4800 |
| For Generate Lending, LLC: | Kirkland & Ellis LLP<br>By:  ELIZABETH JONES, ESQ.<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 756-2000 |

1

1       (Proceedings commence at 10:00 a.m.)

2            THE COURT:  All right.  Good morning.  We're here in

3  the Compute North case.  It is 22-90273.

4            Appearances should have been made electronically.  If

5  you wish to speak this morning and you're in court, please come

6  on forward.  If you're on the phone, you can press "five star."

7            Mr. Grogan, tell me what we have.

8            MR. GROGAN:  Hi.  Good morning, Your Honor.

9            THE COURT:  Good morning.

10            MR. GROGAN:  James Grogan here from Paul Hastings.

11  We're here on one matter today the -- relates to the asset sale

12  that the Court approved initially.

13            THE COURT:  Let's go back to the other matter.  You

14  filed a notice a continuing a hearing.  They're my hearings.

15  You've got to file motions to continue hearings or get dates

16  from my case manager, something like that.  Because you

17  actually put this one on a date when I can't hear it anyway.

18  And so I'm not sure how you all are picking dates or when to

19  continue things to.

20            But in any event, do you want to continue your

21  solicitation procedures motion?

22            MR. GROGAN:  Your Honor, we do.  The issue, frankly,

23  and I apologize if we --

24            THE COURT:  No, it's okay.

25            MR. GROGAN:  -- mucked up the procedural niceties.

 1          THE COURT:  The only real reason why it mucks it up

 2  is you picked a date when I can't hear it.  You know, and that

 3  I can sort of live with it.

 4          MR. GROGAN:  I understand.  I -- so we were planning

 5  on going forward with the disclosure statement today.  The sale

 6  with Foundry has not closed yet.

 7          THE COURT:  Right.

 8          MR. GROGAN:  Which is a -- in this case, it is a

 9  meaningful amount of money.

10          THE COURT:  Right.

11          MR. GROGAN:  And it significantly impacts projections

12  that we need for the disclosure statement.  So what, you know,

13  I think we can get the Foundry sale closed with the relief that

14  we are seeking in the motion to assume and assign some customer

15  agreements that relate to CN Mining.

16          Quite frankly, you know, the issue is the APA had a

17  bit of a hole in it where, although the mining equipment is

18  being sold to Foundry.  There was not a provision for the -- it

19  was not a requirement of the APA to assign the customer

20  agreements.  So this fixes that missing element, which came up,

21  basically, in the last two weeks since we --

22          THE COURT:  Right.

23          MR. GROGAN:  -- since we were here last time on

24  Foundry.  And then what we had requested for the disclosure

25  statement is to push that out to December 16th or a week from

```
 1   now.
 2              THE COURT: How long do you need for that hearing?
 3              MR. GROGAN:  For the disclosure statement?
 4              THE COURT:  The one that you're trying to push out to
 5   the 16th.
 6              MR. GROGAN:  Yes.  There -- so it's a preliminary
 7   hearing on the disclosure statement with solicitation
 8   procedures.  I don't think it will be more than an hour.
 9              THE COURT:  Okay.
10              MR. GROGAN:  You know, I -- we're working with the
11   committee.  I mean, Mr. Gibbs can --
12              THE COURT:  Right.
13              MR. GROGAN:  -- chime in, but I, you know, I mean,
14   there are some open issues.  You know --
15              THE COURT:  Well, let me see if there's any --
16              MR. GROGAN:  -- it's not a fully --
17              THE COURT:  Yeah.
18              MR. GROGAN:  -- you know, we're not all copacetic
19   yet.  But I --
20              THE COURT:  Let me see if there's any objection --
21              MR. GROGAN:  Yeah.
22              THE COURT:  -- to continuing it.  And if we do
23   continue it, the 16th is important.  I can do it at 1:30 on the
24   16th.  It's just the morning that's really jammed up.
25              MR. GROGAN:  I understand.
```

1          THE COURT:  So let me see if we have any objection to

2    a continuance and any objection to the 16th at 1:30.

3          Mr. Gibbs.

4          MR. GIBBS:  Your Honor.

5          THE COURT:  Yes, sir.  Good morning.

6          MR. GIBBS:  Good morning.  This is Chuck Gibbs with

7    McDermott Will & Emery, along with my partner Kristin Going.

8    We do not have an objection.  And actually, 1:30 works better

9    than 9 a.m., which is what I understood the scheduled time to

10   be.

11         THE COURT:  Great. Well, then we'll --

12         Does any party object to continuing the solicitation

13   procedures motion and conditional approval?  All right.  It's

14   continued out until the 16th at 1:30 in the afternoon.

15   Frankly, the easy way to do this is if somebody will just pick

16   up the phone and call Ms. Do.  She can move some things.  She

17   can at least give you dates --

18         MR. GROGAN:  Yes.

19         THE COURT:  -- when you can move them to, and it'll

20   be a lot easier.

21         Okay.  So let's go then to your emergency motion.  On

22   the emergency motion, which is being done without much notice.

23   Who are the parties that are being asked to accept performance?

24   And what notice do they have?  Because I thought they were --

25   you went -- you spelled all this out in it.  But I thought they

1  were all your insiders anyway.

2            MR. GROGAN:  It --

3            THE COURT:  And so I'm trying to figure out where we

4  are.

5            MR. GROGAN:  You're correct, Your Honor.

6            THE COURT:  Okay.

7            MR. GROGAN:  This -- so what -- so this mining

8  equipment that belongs to CN Mining --

9            THE COURT:  Right.

10           MR. GROGAN:  -- is located at the Kearny facility and

11 the Wolf Hollow facility.

12           THE COURT:  Okay.

13           MR. GROGAN:  And this was all done early 2022 when --

14 so Compute, you know, Compute North at that time controlled all

15 of this.  These were intercompany arrangements where the mining

16 equipment was then pushed down with the customer arrangement to

17 the Kearny facility and the Wolf Hollow facility.

18           They are -- Kearny and Wolf Hollow, which are now

19 owned by Generate Lending, would be the counterparties to the

20 customer contracts which have been in place -- in one instance,

21 it was February.  And in the other instance, it was April of

22 this year.  But we're not --

23           THE COURT:  So is --

24           MR. GROGAN:  -- seeking any amendments to the

25 prepetition arrangements.  It's just assume and assign as they

1    exist.

2            THE COURT:  But in the assumption and the assignment,

3    the counterparties have a right to assure adequate --

4            MR. GROGAN:  They --

5            THE COURT:  -- future performance.  Does that --

6            MR. GROGAN:  -- do.

7            THE COURT:  -- generate that, then there's that

8    concern or someone else?

9            MR. GROGAN:  Well, it -- technically, it would be --

10   on the one hand, it would be Compute North MEO5 which is the

11   Kearny operator.  And on the other, it would be CN Wolf Hollow,

12   LLC.

13           THE COURT:  And those are not debtors, right?

14           MR. GROGAN:  They are not.

15           THE COURT:  And do you -- does your client control

16   them or Generate Lending?

17           MR. GROGAN:  Generate now.  Those were part of the

18   Generate transaction.  But --

19           THE COURT:  So they'll really need to find out if

20   Generate objects to the adequacy of future performance?  It

21   seemed to me it was a very limited universe that might --

22           MR. GROGAN:  It is.

23           THE COURT:  -- be objecting to future performance.

24   But any --

25           MR. GROGAN:  That is correct.  And --

1          THE COURT:  So what's been their position about this?

2   Generate's position?

3          MR. GROGAN:  I have not heard from them at all on

4   this.  In fact, I mean, you know, this issue, you know, was

5   contemplated in the APA that we did on the 22nd.

6          THE COURT:  Right.

7          MR. GROGAN:  You know, they knew that we were selling

8   all these miners, and I have not heard.  So Jeff Gleit of

9   ArentFox represents Kearny and Wolf Hollow.  Of course,

10  Kirkland and Ellis represents Generate.  But I had not heard

11  from either party in connection with any of the Foundry sale

12  transactions.

13         THE COURT:  So can I get someone from that side of

14  the transaction to please press "five star" one time so that I

15  can understand where we are on this?

16         Concerned they're not here.

17         MR. GROGAN:  I will say we did email service.

18         THE COURT:  Yeah, but this occurring --

19         MR. GROGAN:  Yeah.

20         THE COURT:  -- since yesterday.  And -- but let's

21  just take a moment, get in touch with them, and ask them to

22  dial in.  Because I need to find -- I don't know how on one

23  day's notice, without them here, I can really find that there

24  is adequate assurance of future performance.

25         Mr. Gibbs, does the committee have any problem with

1   what's going on?

2          And does any other party have any problem with what's

3   going on in terms of this proposal to try and close the

4   transaction by making this accommodation?

5          MR. GIBBS:  The committee doesn't -- excuse me, Your

6   Honor.  Again, for the record Chuck Gibbs, with McDermott Will

7   & Emery for the committee.  The committee doesn't have a

8   problem with the relief requested.  I won't speak to the

9   process issue.  We haven't been part of that.  We were made

10  aware of this proposed additional relief they thought was

11  necessary.

12         We understood and were frankly under the belief that

13  the rights under these contracts had also passed to Foundry

14  pursuant to the agreement the board approved several weeks ago.

15  So we, frankly, weren't sure it was necessary, but we were fine

16  with it.

17         THE COURT:  Is there any party that objects to the

18  relief?  Okay.  Look.  I'm viewing this as an accommodation to

19  try and push your sale through where it sounds like you're even

20  sure that's going to push the sale through.  But you've to do

21  this to pull --

22         MR. GROGAN:  This --

23         THE COURT:  -- all the stops out.  And I'm okay with

24  that.

25         MR. GROGAN:  Yeah.

 1            THE COURT:  Nobody's objecting to it, but I've got to

 2   have those parties there so.  Let me just step down and if you

 3   will get them to dial in.  Will that --

 4            MR. GROGAN:  Okay.

 5            THE COURT:  -- work?

 6            MR. GROGAN:  I can try.

 7            THE COURT:  Okay.  I'll just come back at 10:20.

 8            MR. GROGAN:  Okay.

 9            THE COURT:  And hopefully, they'll be on the phone at

10   that point.  I don't want to make people wait for her.

11            We'll be right back.  See you at 10:20.  Thank you.

12            MR. GROGAN:  Thank you, Your Honor.

13            THE COURT:  Oh, wait.  I've got somebody here.  Hold

14   on.

15            Yes.  From (917) 573-9509, who do we have?

16            MS. MANOUKIAN:  Yes, Your Honor.  Kristine Manoukian

17   from Schulte Roth & Zabel representing Foundry Digital, LLC,

18   the purchaser here with respect to these assets.  I did want to

19   just point out, Your Honor, that the master agreement that this

20   relates to between CN Mining and Compute North LLC that was

21   assigned to the two entities that Mr. Grogan noted was on the

22   assumption and assignment notice that the debtor had provided

23   prior to the hearing on the approval of our sale and an

24   opportunity to request and obtain adequate assurance was

25   similarly, you know, offered as part of that.  So we have not

1   heard any requests to provide for adequate assurance

2   information.  Certainly, we're prepared to do so.  But that was

3   -- I did want to note that for Your Honor, that there was

4   notice as it relates to that.

5            THE COURT:  Then I'm a little even more confused

6   about why we're here today, so if this was already on the

7   assumption and assignment list, that was going to go to you,

8   and we've already approved it.  Why are we back?

9            MR. GROGAN:  The APA itself does not list these

10  agreements.  So that the notice that Ms. Manoukian is speaking

11  of was a bidding procedures notice that we put out to the world

12  at the beginning of the process.  At that time, we, you know,

13  these contracts could have gone to anybody.

14           THE COURT:  Right.

15           MR. GROGAN:  Once we got to the Foundry sale, you

16  know, that became a little more clear that the CN Mining piece

17  of this was going to Foundry.  We never got any objections from

18  Generate or from the Wolf Hollow --

19           THE COURT:  Why wasn't that original notice and order

20  adequate?

21           MR. GROGAN:  Well, so all it was was a notice that

22  these were executory contracts that were available to be

23  assumed and assigned --

24           THE COURT:  Got it.

25           MR. GROGAN:  -- to any buyer.  It was not a firm

1   commitment to assume and assign to anybody in particular.

2            THE COURT:  Well, I got it that it --

3            MR. GROGAN:  Yeah.

4            THE COURT:  -- may be that you don't need to be here

5   today because it's already occurred, Ms. Manoukian.  At which

6   point, you all can close with that level of confidence.  But if

7   you need an order to make it sure that you can do it, then I've

8   got to the counterparties' notice of that.  I doubt it's going

9   to draw an objection, but this just got filed yesterday.

10           So let's get them on the phone.  And, you know, at

11  some point today, we'll get them on the phone, hopefully in the

12  next few minutes.  They're probably pretty easy to get in touch

13  with.

14           So I'll come back at, now, 10:23.  Thank you.

15           MR. GROGAN:  Thank you, Your Honor.

16      (Recess taken at 10:13 a.m.)

17      (Proceedings resumed at 10:24 a.m.)

18           THE COURT:  All right.  So where are we?

19           MR. GROGAN:  Okay.  So it was an interesting ten

20  minutes.  So we -- I think first, the good news is, we did

21  manage to get a hold of Kirkland.  And Elizabeth Jones, from

22  Kirkland, is now, I think, on the Court's system.

23           THE COURT:  All right.  Ms. Jones, if you would press

24  "five star" one time on your line, please.  I see you and let

25  me get your line active.  Hold on one second.

1              Oh.  That was Ms. Manoukian.  Your line is still

2  live.

3              Let me see who else I got.  There's Ms. Jones.  Hold

4  on.

5              Ms. Jones, good morning.

6              MS. JONES:  Good morning, Your Honor.  Elizabeth

7  Jones of Kirkland & Ellis on behalf of Generate Lending.

8              THE COURT:  Good morning.

9              So let me go back a moment and let Mr. Grogan sort of

10  give me an update as to where we are and where we need to go.

11             MR. GROGAN:  Okay.  A couple of things, apparently,

12  there was a -- you know, I had said we had put out a notice at

13  the beginning of the process about the contracts that were

14  available, cure amounts, et cetera.

15             THE COURT:  Right.

16             MR. GROGAN:  Ms. Manoukian reminded me that there was

17  a subsequent notice that was filed at, I think, Docket Number

18  510, which was -- actually identified the service agreement

19  with Kearny and Wolf Hollow as a target contract for this

20  particular transaction with an opportunity for people to object

21  to cure and adequate assurance of future performance.

22             You know, I'll let the Court pull that up if you want

23  to take a look at it, but -- I think it was 510.  Ms. Manoukian

24  can --

25             THE COURT:  Notice of selected target contracts.

1   Okay.

2           MR. GROGAN:  So I think our position is that there

3   was notice.  I think the issue we're trying to solve for here

4   is that Foundry wants -- does not want to go into the closing

5   with this as an open issue, essentially.  So with that, I will

6   pause and let Ms. Jones address her issues.

7           THE COURT:  Ms. Jones, go ahead, please.

8           MS. JONES:   Thank you.  Elizabeth Jones, again,

9   Kirkland & Ellis on behalf of Generate Lending.  Your Honor, I

10  don't think that our intent here is anything else.  This is

11  just -- oh, there's background noise, this is just the first

12  that we have heard of it.  And no one has reached out to us

13  about it other than through the notice.

14          And so we're running down -- it looks like there may

15  be some cure costs, but we're trying to pinpoint the date to

16  the point if it is before or after the notice went out if it's

17  recent.  But our main concern here was just that we were a

18  little surprised that, you know, other than this, there really

19  hasn't been any reach out on the business side or communication

20  or really understanding fully of the intent here.

21          So we're continuing to work with the company and

22  really nail that down.  And I, you know, our goal here again is

23  not to hold it up.  But just to make sure that everyone's on

24  the same page.

25          THE COURT:  That's fine.

1          When is the closing anticipated, Ms. Manoukian and

2  Mr. Grogan?

3          MR. GROGAN:  We'd like to close this afternoon.  I

4  don't know if that's -- you know, Monday at the latest.

5          THE COURT:  Ms. Jones, how much time do you think you

6  need to run it down?

7          MS. JONES:  It's currently being run down right now.

8  I can push them (indiscernible) hopefully, we can get that

9  over, you know, to them and not hold up the closing to later

10  than Monday.  Maybe by today, but I honestly can't give you a

11  solid timeline right now.  I can speak with the company and

12  push them as fast as we can go.

13          THE COURT:  May I ask one more question?  And I'm not

14  trying to get you to do something you're not prepared to do.

15  Is the only issue whether there is a cure claim?  And if the

16  cure claim then gets paid, is there then no issue?  Or is there

17  also an issue about adequate assurance of future performance?

18          MS. JONES:  I will have to confirm.  My understanding

19  is that it essentially both but really more just in the sense

20  of, you know, if there's a cure cost now, then we just want to

21  make sure we're paid and things are paid going forward.  They

22  don't think in the bankruptcy sense adequate assurance really,

23  it's more of a we're okay moving forward as long as everyone's

24  on the same page of having it be paid.  And having it be paid

25  going forward.

1          But I will -- I'll have to confirm with the sort of

2    caveat included in that statement.  I think that it -- just we

3    really want to make sure that payment is made now and going

4    forward.  But it's not an adequate assurance issue under the

5    Bankruptcy Code.

6          THE COURT:  All right.  So if we come back at 1:30,

7    can I impose on you to have a rough estimate of what the cure

8    claim might not exceed?  In other words, I don't know if we're

9    talking $100,000 or $3 million in terms of what the cure claim

10   might be.

11          And if you don't have that, you don't have that.  But

12   if it's a relatively low number, I suspect we can find a way to

13   get a closing to occur and to accommodate a relatively low

14   number.  If it's a higher number, we may not be able to.

15          So does anyone have any problem coming back at 1:30

16   and --

17          MR. GROGAN:  No, Your Honor.

18          THE COURT:  -- just figure out where we are?  And I

19   can come back -- just so that you all can plan your lives -- on

20   the 12th.  We can -- we'll find time on the 12th.  I'm not sure

21   when, but we'll get in on the 12th if that's what we need to

22   do.  Hopefully, we'll get it worked out this afternoon.

23          MR. GROGAN:  That would be great.  Thank you, Your

24   Honor.

25          THE COURT:  Ms. Manoukian and Ms. Jones, does that

1   work for the two of you all?

2          MS. JONES:  Your Honor, yes.  That's fine, Your

3   Honor.

4          MS. MANOUKIAN:  Your Honor, Kristine --

5          MS. JONES:  Apologies.

6          MS. MANOUKIAN:  Your Honor, Kristine Manoukian from

7   Schulte coming back -- adjourning until a little bit later to

8   sort this out.  That works.  And coming back on Monday, that

9   works.  There is one thing I did want to point out, Your Honor.

10  The proposed form of order that was filed that we were okay

11  with, there was a finding in there that says that you know, all

12  the conditions other than the conditions that have to be

13  satisfied at closing have been satisfied under the asset

14  purchase agreement.

15         If there is a cure amount, Your Honor, we cannot

16  agree to that finding being in that order because there is a

17  representation in the adequate purchase agreement that wasn't

18  provided with the good faith estimates of cure amounts at all

19  times or has been disclosed to us by the debtors as part of

20  that process.  Or that there is a zero cure under this

21  agreement.  All the notices that we've been seeing filed on the

22  docket have also shown zero cure.

23         This is the first time we're hearing that there's any

24  sort of a cure payment that's due.  And so if there is a cure

25  amount due beyond zero, then that representation cannot be

1    true, which would make the condition -- at least two of the

2    conditions to the (indiscernible) not being satisfied.  So I do

3    want to make that clear that that's -- that's just where we

4    are.

5              THE COURT:  That's fine.  Let's wait and see what

6    happens.

7              MR. GROGAN:  Yeah.

8              THE COURT:  And like I say, if it's a small number,

9    it can perhaps be made truth before the closing.  So let's just

10   see where we are at 1:30 if you all are both available at that

11   point.

12             MR. GROGAN:  Thank you, Your Honor.

13             THE COURT:  Okay.  We'll recess this hearing until

14   1:30.  I do have a 10:30 hearing I'm going to call.  And we

15   will see you all at 1:30.  Thank you.

16             MR. GROGAN:  Thank you.

17        (Recess taken at 10:33 a.m.)

18        (Proceedings resumed at 1:32 p.m.)

19             THE COURT:  Please be seated.

20             All right.  Let's go back on the record on Compute

21   North.  It is 22-90273.

22             Mr. Grogan, good afternoon.

23             MR. GROGAN:  Good afternoon, Your Honor.  James

24   Grogan from Paul Hastings here on behalf of Compute North and

25   its debtor-affiliates.

1          THE COURT:  Thank you.  Where -- what is our status,

2    Mr. Grogan?

3          MR. GROGAN:  Yeah.  Thank you, Your Honor.  Your

4    Honor, we made good progress during the break.  So first, I

5    want to thank Ms. Jones for actually working very hard for the

6    last couple of hours to, you know, do some diligence on her

7    part at the last minute.  You know the upshot -- and, you know,

8    others will jump in and tell me if I'm getting anything wrong.

9    But the upshot is that we are, in fact, in any payment default.

10          There are current charges that are continuing to

11   accrue, notably for December.  Ms. Jones has provided both me

12   and counsel for Foundry with a prebill for December.  The total

13   for both Kearny and Wolf Hollow facility usage by CN Mining is

14   $434,709.45.  That is 70 percent of the expected total bill for

15   December.

16          The way that this billing works is there is a prebill

17   issued at the beginning of the month.  And then, after the end

18   of the month in January, there is a true-up where Generate will

19   go back and look at actual usage by the mining equipment.  And

20   then issue a final bill with the actual charges for purposes of

21   just getting this order entered, getting Foundry in a position

22   where it's able to close.  We, the debtors, are going to pay at

23   or prior to closing the $434,709.45 on the prebill.

24          Once the actuals come in, Ms. Jones has told me that

25   she will provide both the estate and Foundry with a

1  reconciliation for the total amount owed.  At which point, you

2  know, under our asset purchase agreement, we have an allocation

3  methodology.  And, you know, based upon the fact that this 70

4  percent that will be paid early in the month.  I'm expecting

5  Foundry will owe some additional money.  But, you know, that's

6  for a later day.  And we'll actually get the actual sometime in

7  January.

8          THE COURT:  All right.  So does that mean -- and I

9  guess, I've got both Ms. Manoukian and Ms. Jones's lines open.

10         Ms. Jones, do you have any objection to our signing

11  the order that was filed at 632?

12         MS. JONES:  Good afternoon, Your Honor.  Elizabeth

13  Jones of Kirkland & Ellis on behalf of Generate Lending.  No

14  issue, Your Honor, but we would like to add a provision that

15  clarifies that within seven days of entry of the sale order,

16  the bills are paid, the invoices go out on the net seven

17  payment terms.  So we're happy to restart that net seven from

18  the entry of the sale order instead of December 1.

19         But that's our requirement for the order is just to

20  clarify that those will be paid within seven days.  It can be

21  paid either from the debtors or from Foundry.  We'll let them

22  deal with the reconciliation process.

23         THE COURT:  Ms. Manoukian, does that work for you

24  all?

25         MS. MANOUKIAN:  Your Honor, I don't necessarily have

1   an issue with adding qualifying language that the debtor will

2   be responsible to pay.  But I do think that the order does

3   require some work.  And I'd like to have the opportunity to,

4   first of all, discuss this issue and these invoices with my

5   client that we just received five minutes before the hearing.

6          And second of all, I'd like to be able to work with

7   Mr. Grogan and Ms. Jones on the language because now that this

8   issue has been raised, and up to this point and walking into

9   this hearing with an understanding that there were no amounts

10  due and owing whatsoever through the closing date, we need some

11  clarifying language that makes it crystal clear that pursuant

12  to our asset purchase agreement, we're not responsible for any

13  amounts accruing or owning, even if they're invoiced, you know,

14  post-closing through and including the date and the time, and

15  then that that's fully the responsibility of the debtors.

16         And that, obviously, once we take assignment of the

17  agreement to the extent there are amounts that are arising post

18  that assignment, you know, that's our obligation.  But anything

19  arising through that date of assignment is not a liability that

20  we've assumed under APA.  So I would like language that makes

21  that very clear.

22         So if Your Honor would allow, I would prefer that,

23  you know, we take a break, adjourn a little bit.  Or, subject

24  to everyone's reservation of rights, work on the appropriate

25  language in the order and submit that for your consideration

1  after the hearing.

2          THE COURT:  All right.  I'm happy to take a break.

3          MR. GROGAN:  Your Honor --

4          THE COURT:  I'm happy to take a break.  I'm also

5  happy since you're going to now close on Monday to come in at

6  9:30 Monday morning and sign an order then.  You all tell me

7  what works best.

8          Mr. Grogan.

9          MR. GROGAN:  Yeah, Your Honor.

10          MS. MANOUKIAN:  That'd be my preference

11  (indiscernible).

12          MR. GROGAN:  The debtors have zero interest in

13  amending the asset purchase agreement or the existing sale

14  order in conjunction with this effort to get to closing with

15  Foundry.  So you know, I am willing to do everything humanly

16  possible to a point, but I am not -- the APA already has baked

17  in an allocation provision.  We're not going to revisit that.

18          THE COURT:  What about the -- does there -- the --

19  Ms. Jones's client is requesting an amendment to the order

20  clarifying who is responsible for what, when.  What is your

21  position on that?

22          MR. GROGAN:  So we will pay the $434,709.45 on or

23  before the closing date.

24          THE COURT:  Yes?

25          MR. GROGAN:  Or work within that, you know, I think

1  the outside date under the invoice is seven days.  So if there

2  is no closing, you know, we will pay it.

3           THE COURT:  Ms. Jones.

4           MS. JONES:  Yes, Your Honor.  Elizabeth Jones of

5  Kirkland & Ellis on behalf of Generate.  We're fine if, within

6  this order of assuming and assigning contracts, it just

7  clarifies that within seven days of entry of this assumption

8  order, you know, the debtors will pay (indiscernible).  That

9  works for Generate.

10          MS. MANOUKIAN:  And, Your Honor, Ms. Manoukian,

11  speaking to (indiscernible) Kristine Manoukian from Schulte

12  Roth & Zabel.

13          THE COURT:  Sure.  What do you want to say?

14          MS. MANOUKIAN:  I'm -- sure.  I'm not suggesting that

15  we amend the purchase agreement or the sale order.  Those

16  documents have been negotiated and agreed to by my client.  And

17  we're fine with that.  There is no sort of methodology or

18  allocation as Mr. Grogan is suggesting.  There's simply

19  language in the asset purchase agreement that says what

20  liabilities I'm -- my client's assuming and what liabilities my

21  client's not assuming.

22          This has been sprung upon us five minutes before this

23  hearing that now there's a substantial amount outstanding under

24  this contract that we had -- that had been disclosed to us by

25  the debtor that nothing was outstanding under this agreement.

1   And so I'm concerned that this issue, now that it is alive and

2   well, is not properly addressed in this order at the moment.

3   And we would like language that makes it clear as to what the

4   debtors are responsible for and what we're responsible for.

5   Nothing here is, you know that I'm proposing is suggesting to

6   rewrite or amend the asset purchase agreement.

7              THE COURT:  All right.  I'm going to put some

8   language on this.  I'm going to see what objections I draw.  So

9   you all keep an eye on your screen.

10             Who is that paid to, Mr. Grogan?

11             MR. GROGAN:  I think it's Generate Lending, LLC but

12  give me one second.  Oh.  Actually, Your Honor, it is paid to -

13  - I guess we have two different payees, GC Data Center --

14             THE COURT:  Hold on.

15             MR. GROGAN:  -- Granbury.

16             THE COURT:  Just a minute.  GC?

17             MR. GROGAN:  Yes, Your Honor.

18             THE COURT:  Okay.  Granbury.

19             MR. GROGAN:  Comma, and then Granbury is U-R-Y, LLC.

20  And the other one is GC Data Center Kearney, K-E-A-R-N-E-Y,

21  LLC.

22             THE COURT:  Does that work for everybody?  I'm not

23  trying to step on anybody's toes.  But I think we're going to

24  spend so much trying to get something done if we don't just do

25  it.

1          Mr. Gibbs, go ahead, please.

2          MR. GIBBS:  Your Honor.

3          MS. JONES:  Your Honor, Elizabeth Jones.

4          MR. GIBBS:  Yes, Your Honor, I was hoping to get

5   clarification or confirmation that there is no amount owed for

6   November.  But as I understand it was presented -- been

7   presented are prebills for 70 percent of an estimated December

8   charge.  And for purposes of assumption and assignment, I would

9   hope that the record's clear there isn't another bill that

10  would be presented and alleged to be due and owing for periods

11  prior to December 1.

12         THE COURT:  The only amounts I'm authorizing will be

13  the prebill, not any bills that are due for November.  So

14  hopefully, that clarifies it.

15         MR. GIBBS:  (Indiscernible).

16         THE COURT:  Ms. Jones.

17         MR. GIBBS:  As that's our --

18         THE COURT:  Yeah.

19         Ms. Jones, Ms. Manoukian, does that work for you all?

20         MS. MANOUKIAN:  Your Honor, that clarification works.

21  And this language works -- it's Kristine Manoukian.  I would

22  like, if possible, to add language that makes it clear, which

23  is entirely consistent with the APA, that the debtors are

24  solely responsible for any liabilities accruing through the

25  date of assignment of these customer agreements.

1          THE COURT:  The first sentence of my order does that.

2          I'll overrule that objection.

3          Any other objections?

4          MS. JONES:  And, Your Honor, Elizabeth Jones of

5     Kirkland & Ellis, again, not an objection, I just -- could you

6     please clarify what date you mean by closing?  I don't see that

7     necessarily as a defined term.  I just want to understand if

8     that -- what date that's intended to refer to.

9          THE COURT:  The closing to --

10          MS. MANOUKIAN:  I think, Your Honor, if you

11     capitalize that as it's defined under the APA.  I think it just

12     needs the capital C as the font.  I think somewhere in the

13     motion it is defined in the asset purchase agreement.

14          THE COURT:  All right.  Any other objections?  All

15     right.  I'm glad you were able to work this out over lunch.

16     And I'm glad that I could contribute some language and earn my

17     money today.

18          MR. GIBBS:  Your Honor.

19          THE COURT:  Yes, sir.  Go ahead.

20          MR. GIBBS:  One last thing before you -- can we get a

21     closing date set out.  It's been our understanding that this

22     was the last hold-up, and it seems to be resolved to the

23     satisfaction of both Generate and the purchaser.  And so we're

24     kind of in limbo and in need of the closing in order to move

25     forward with the plan confirmation and disclosure statement

1  approval.

2          THE COURT:  Mr. Grogan, when do you anticipate the

3  closing?

4          MR. GROGAN:  Your Honor, we -- we're ready to close

5  immediately.  It really depends on when Foundry can wire us the

6  purchase price, which I, you know, I think that I have heard

7  may be, impossible today, in which case it would be Monday.

8          But, Ms. Manoukian, is it possible to do this today?

9          THE COURT:  Does that respond --

10         MS. MANOUKIAN:  Your Honor, I just don't --

11         THE COURT:  -- does that respond to your question --

12         MS. MANOUKIAN:  (Indiscernible).

13         THE COURT:  -- Mr. Gibbs?

14         MR. GIBBS:  It does, except the person responding is

15  not the person with the checkbook.  So I was really more

16  interested in finding out the position of the buyer.

17         THE COURT:  All right.  Ms. Manoukian.

18         MS. MANKOUKIAN:  Your Honor, I -- realistically

19  speaking, it's three o'clock Eastern already.  I just don't

20  think it's possible to do it today.  I think we should work

21  towards trying to close this transaction on Monday.

22         THE COURT:  Mr. Gibbs.

23         MS. MANOUKIAN:  (Indiscernible) --

24         MR. GIBBS:  (Indiscernible) Your Honor --

25         MS. MANOUKIAN:  -- to the debtor.

1          MR. GIBBS:  We would ask Your Honor to consider

2    putting a not later than date in this order if you would be so

3    inclined.

4          MS. MANOUKIAN:  Your Honor, I have an issue with that

5    only because the APA speaks for itself and what conditions have

6    to be met at or in advance of closing.  And so I -- if we're

7    taking a position that we're not trying to amend the asset

8    purchase agreement here.  I don't think it's appropriate to

9    start, you know, fixing a deadline that could conceivably

10   interfere with various provisions in the asset purchase

11   agreement that have been carefully and thoroughly negotiated.

12         THE COURT:  All right.  I'm not --

13         MS. MANOUKIAN:  No one's trying here to back out of

14   what needs to be done.  But, you know, I'm not comfortable with

15   that kind of language.

16         THE COURT:  I will not put it in here.  On December

17   the 12th at 4:30 in the afternoon, we are going to have a

18   hearing to resolve anything that has come up that has precluded

19   the closing from occurring on Monday.  So if there is an issue,

20   bring your witnesses, and we're going to resolve it if there's

21   a dispute.  Both sides.

22         MR. GROGAN:  Thank you, Your Honor.

23         THE COURT:  Thank you.

24         I'm going to send this order to docketing.  We'll

25   schedule a hearing Monday at 4:30 to resolve any disputes.  I

1  would appreciate it if the closing occurs prior to that time

2  that a notice gets filed so that we can cancel the hearing.

3  All right.  You all have a good weekend.

4          MR. GROGAN:  We will do, sir.

5          THE COURT:  Thank you.

6          MR. GIBBS:  Thank you, Your Honor.

7          MR. GROGAN:  Thank you, Judge.

8          MS. MANOUKIAN:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10     (Proceedings concluded at 1:50 p.m.)

11                    * * * * *

12

13

14

15            C E R T I F I C A T I O N

16

17          I, Alicia Jarrett, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428     DATE: December 21, 2022

25  ACCESS TRANSCRIPTS, LLC