IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------------- x

| | |
|---|---|
| In re:<br><br>**COMPUTE NORTH HOLDINGS, INC.**, et al.<br><br>Debtors. | **CHAPTER 11**<br>**CASE NO. 22-90273 (MI)**<br>**(JOINTLY ADMINISTERED)** |

----------------------------------------------------------------

### MOTION BY GH EFFECT, INC. (1) FOR RELIEF FROM THE AUTOMATIC STAY TO RECOVER EQUIPMENT, (2) TO TERMINATE AND COMPEL REJECTION OF CONTRACT AND (3) FOR OTHER RELIEF

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on January 20, 2023 at 9:00 a.m. in Courtroom 404, 4th floor, 515 Rusk Avenue, Houston, Texas 77002.**

GH Effect, Inc. ("GH Effect"), files this motion (the "Motion") for relief from the automatic stay under 11 U.S.C. § 362 to permit GH Effect to recover equipment owned by GH Effect, compel rejection of and modify the automatic stay to terminate the Master Agreement between GH Effect and Compute North, LLC, and for such other relief as may be just. In support of the Motion, GH Effect respectfully represents as follows:

### PRELIMINARY STATEMENT

1.       GH Effect is a counterparty to a Master Agreement (as defined herein) with one of the jointly administered Debtors, Compute North LLC ("**Compute North**"). Compute North has not assumed the Master Agreement and, upon information and belief, does not intend to assume

the Master Agreement. GH Effect's Equipment (as defined herein) is located in the Wolf Hollow Facility currently controlled by GC Data Center Equity Holdings, LLC ("**Generate Capital**"). Accordingly, GH Effect requests that this Court enter an order:

    a. Compelling the Compute North to reject the Master Agreement;

    b. Modifying the automatic stay to the extent necessary to permit GH Effect to terminate the Master Agreement according to its terms;

    c. Modifying the automatic stay to the extent necessary to permit GH Effect to retrieve the Equipment; and

    d. Granting such other and further relief as is just and proper.

## BACKGROUND

### A. The Bankruptcy Case

2. On September 22, 2022 (the "**Petition Date**"), Compute North Holdings, Inc. and eighteen affiliates, including Compute North (together, the "**Debtors**"), filed chapter 11 petitions with this Court. Since the Petition Date, the Debtors have continued to operate and manage their business as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

3. On October 13, 2022, the Court entered the Order (A) Approving de Minimis Asset Sale Procedures; (B) Approving Rejection Procedures and Certain Assumption and Assignment Procedures and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Further Hearing on the Approval of the Debtors' Proposed Bidding Procedures and Related Relief (the "**Initial Bid Procedures Order**," Docket No. 191).

4. On October 18, 2022, the Debtors filed the *Notice of Filing of Cure Schedule in Connection with Proposed Sale* dated October 18, 2022 (the "**First Cure Notice,**" Docket Entry No. 209). The First Cure Notice does not list GH Effect.

5. On October 24, 2022, the Court entered the Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances as well as the Assumption and Assignment of Certain Executory Contract and Unexpired Leases (the "**Final Bid Procedures Order**," Docket Entry No. 256). The Final Bid Procedures Order provides a November 1, 2022, deadline to file cure objections, and a November 7, 2022 deadline to object to adequate assurance of future performance.

6. GH Effect timely filed a cure objection on November 1, 2022 (the "**Cure Objection**," Docket Entry No. 371) and an adequate assurance objection on November 4, 2022 (the "**Adequate Assurance Objection**," Docket Entry No. 409), and demanded return of its Equipment in both objections.

7. GH Effect is aware that other similarly situated parties with similar contracts were served with a Notice of Entry of Initial Sale Procedures Order and Proposed Sale dated October 18, 2022. GH Effect has no record of having received a Notice of Entry of Initial Sale Procedures Order and Proposed Sale from the Debtors.

8. On October 28, 2022, the Debtors filed the Notice of Filing of Supplemental Cure Schedule in Connection with Proposed Sale (the "**Supplemental Cure Notice**," Docket Entry No. 334). The Supplemental Cure Notice does not list GH Effect.

9. On November 1, 2022, the Debtors filed the Notice of Filing of Cure Schedule in Connection with Proposed Sale (the "**Amended Cure Notice**," Docket Entry No. 357). The Amended Cure Notice does not list GH Effect.

10. On November 1, 2022, the Court entered the Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interest in CN Borrower, LLC Free and Clear of All Liens Claims and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief (the "**CN Pledgor Sale Order**," Docket Entry No. 362) approving the sale of CN Pledgor LLC's Equity Interest in CN Borrower, LLC to GC Data Center Equity Holdings, LLC (the "CN Pledgor LLC Sale"). Upon information and belief GH Effect's Equipment may be located in the Wolf Hollow Facility that is owned by non-debtor CN Borrower, LLC, which is now controlled by Generate Capital.

11. On November 3, 2022, GH Effect and four similarly situated entities filed a limited objection to the sale of the Debtors' assets to the extent that the Debtors sought to sell their miners (Docket Entry No. 395).

12. On November 4, 2022, the Debtors filed a Notice of no Contracts Designated for Assumption and Assignment in Connection with Approved Sale (the "**Non-Designation Notice**," Docket Entry No. 412), which reflects that Generate Capital had designated no contracts for assumption and assignment in connection with the CN Pledgor LLC Sale.

13. On November 16, 2022, the Court entered the Order (I) Approving the Sale of Certain Assets of Compute North LLC to Crusoe Energy Systems, LLC Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief (Docket Entry No. 493). That sale did not implicate GH Effect's contracts or Equipment.

14. On November 22, 2022, the Court entered the Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief (Docket Entry No. 531). That sale did not implicate GH Effect's contracts or Equipment.

15. On November 29, 2022, the Court entered the Order (I) Approving the Sale of Certain Assets of Compute North Member LLC to US Data King Mountain LLC Free and Clear of Certain Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief (Docket Entry No. 594). The sale did not implicate GH Effect's contracts or Equipment.

16. Each of the sale orders contains a provision that the Debtors had not sought to sell assets owned by any third-party entity and the relevant sale order does not authorize the sale of assets owned by any third-party entity (the "**Sale Exclusion Language**").

17. GH Effect does not appear on Compute North's Schedules, but has filed a proof of claim in the Compute North case.

**B.     The Master Agreement**

18. GH Effect is the counterparty to a Master Agreement dated July 27, 2022, (the "**Master Agreement**") with Debtor Compute North, under which Compute North agreed to provide colocation and other managed services for GH Effect's 208 Bitmain cryptocurrency Antminers (the "**Equipment**"). A copy of the Master Agreement is attached hereto as *Exhibit A*.

19. GH Effect paid a $62,166.00 deposit (the "**Deposit**") relating to the Master Agreement, which represents the last two months of monthly service and package fees. Upon information and belief, Compute North remains in possession of the Deposit. Section 5.1 of the

Master Agreement provides that the Deposit is refundable "to the extent that all of [GH Effect's] obligations under [the Master Agreement] have been fully satisfied."

20. GH Effect estimates that it has lost revenues due to Compute North's failure to energize GH Effect's Equipment in a commercially reasonable manner on the quoted energization date of September 15, 2022. GH Effect estimates that its lost revenues equal the daily Bitcoin market price converted to US Dollars, less applicable Service Fees and Package Fees (each as defined under the Master Agreement), which amount of such lost revenue has not yet been precisely calculated.

21. In connection with entry into the Master Agreement, GH Effect delivered to Compute North the Equipment, as particularly detailed in GH Effect's Order Form (the "**Order Form**"), which Compute North was obligated to deploy under the Master Agreement. A copy of the Order Form is attached hereto as *Exhibit B*.

22. The total purchase price of GH Effect's Equipment that were delivered to the Wolf Hollow Facility was approximately $1.8 million.

23. GH Effect's Order Form under the Master Agreement provides a payment term of 60 months (the "**Equipment Term**").

24. The Order Form also provides that the facility where the Equipment would be deployed is "Wolf Hollow, TX USA (TX10 Data Center)" (the "**Wolf Hollow Facility**").

25. The Order Form reflects that the equipment Compute North would use to service the Master Agreement was "Customer Provided."

26. The Equipment is titled in GH Effect's name and is not property of Compute North's bankruptcy estate. The Equipment was delivered to the Wolf Hollow Facility on August 8, 2022. Attached hereto as *Exhibit C* is proof of delivery of the Equipment.

27. Section 4.1 of the Master Agreement describes the Effective Date and Term of the Master Agreement as follows:

> 4.1. <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all Equipment Terms for all Equipment under each Order Form have expired or terminated.

28. Section 4.2 of each Master Agreement outlines how and when the Equipment Terms commences and ends as follows:

> 4.2. <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for each piece of Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

29. Compute North assured GH Effect prepetition that the Equipment would be deployed and operating by September 15, 2022.

30. GH Effect received no notification from the Debtors in accordance with Section 4.2 of the Master Agreement that the Equipment had been received and turned on by Compute North. Accordingly, the Equipment Term under the Master Agreement never commenced.

**31. Further, because Generate Capital now controls the Wolf Hollow Facility, upon information and belief, GH Effect's Equipment, which is subject to the Master Agreement with Debtor Compute North (and, therefore, subject to the automatic stay), may be located in the Wolf Hollow Facility, controlled by non-debtor Generate Capital.**

32. GH Effect has been in discussions with U.S. Bitcoin Corp., an entity that has been engaged by Generate Capital to manage hosting operations at the Wolf Hollow Facility as Generate Capital's new strategic operating partner. GH Effect has been informed by U.S. Bitcoin Corp. that the Master Agreement was not assigned to a site by Compute North prepetition and, accordingly, the rights under the Master Agreement were not assigned to Generate Capital.

33. Section 5.2 of the Master Agreement provides that GH Effect "shall pay to Compute North the Monthly Service Fees and the Monthly Package Fees (collectively the 'Fees') as set forth on the Order Form." The Order Form provides that the Fees "will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North."

34. Section 8.3 of the Master Agreement provides that "provided that Customer has paid all amount due and owing under [the Master Agreement] . . . [the Debtor Counterparty] shall decommission and make the [Equipment] available to Customer for pick up at, or shipment from, the Facility within thirty (30) of Customer's written request. Customer shall be responsible for all deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning the [Equipment]."

35. Because of the circumstances of these bankruptcy cases, GH Effect has been unable to use its Equipment to mine Bitcoin and has derived no benefit from the Master Agreement or the Deposit.

36. GH Effect has paid all amounts currently due and owing under the Master Agreement. In accordance with Section 8.3 of the Master Agreement, GH Effect is entitled to terminate the Agreement by providing Compute North thirty (30) days' notice of its intent to exercise its right to recover its Equipment. GH Effect provided such notice in its Cure Objection on November 1, 2022, and again in its Adequate Assurance Objection on November 4, 2022.

37. Section 11.4 of the Master Agreement provides that GH Effect's remedy for nonperformance under the Master Agreement is "a refund of any fees paid to Compute North for the service month under which the nonperformance occurred." Because Compute North never

performed under the Master Agreement, GH Effect is entitled to a refund of the Deposit, which was paid as security for GH Effect's performance under the Master Agreement.

## Argument and Authority

### A.     Applicably Authority

38.     Section 362(d)(1) permits relief from the automatic stay "for cause." "Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis." *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). "Whether cause exists is a fact-intensive inquiry that must be determined on a case-by-case basis." *In re Mosher,* 578 B.R. 765, 772 (Bankr. S.D.Tex. 2017). Each case must be viewed on its own fact and must balance the interests of the estate and the creditor. *Id*. The Fifth Circuit "has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity." *See In re Mirant Corp.*, 440 F.3d 238, 251-52 (5th Cir. 2006) (in the context of a stay violation for postpetition termination of a contract pursuant to an *ipso facto* clause). The bankruptcy court's authority to modify the automatic stay is also broad. *Id*. Importantly, the debtor retains an interest in an executory contract that has not been rejected. *See, e.g., In re Mirant Corp.*, 440 F.3d at 525.

39.     Section 365(d)(2) generally permits a debtor to assume or reject an executory contrary "at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." It is within the bankruptcy court's discretion to determine what constitutes a reasonable time within which to assume or reject a contract, based upon the facts of the case. *In re Adelphia Communications Corp*., 291 B.R. 283, 292 (Bankr.

S.D.N.Y. 2003). Factors courts consider in making such a determination are (i) the nature of the interests at stake; (ii) the balance of harm to the litigants; (iii) the "good to be achieved;" (iv) the safeguards afforded the litigants; (v) whether the action to be taken is so contrary to the Bankruptcy Code that it may be described as arbitrary; (vi) the debtor's failure or ability to satisfy its postpetition obligations under the contract; (vii) the damage the non-debtor will suffer beyond what can be compensated through the bankruptcy process; (viii) the importance of the contract to the debtor's reorganization; (ix) whether the debtor has had sufficient time to appraise the value of the contract/asset; (x) whether exclusivity has been terminate; and (xi) to permit an effective reorganization of the debtor. *Id*. at 292-93.

**B.     The Court should compel the Debtors to reject the Master Agreement and lift the automatic stay to permit termination of the Master Agreement.**

40.     The balance of factors weighs in favor of compelling the Debtors to reject the Master Agreement and permitting termination of the Master Agreement. Because the Debtors no longer have control of the Wolf Hollow Facility, the Master Agreement and the Equipment subject thereto are not necessary for the Debtors' reorganization. This conclusion is supported by the facts that (a) the Equipment is now located in a facility controlled by non-debtor Generate Capital; (b) the Sale Exclusion Language in each of the sale orders demonstrates that the Debtors are aware that they hold assets owned by third parties and have thus far not sought to sell the third-party-owned equipment; and (c) by the filing of the Non-Designation Notice, Compute North appears to have no intention to assume and assign the Master Agreement.

41.     The Debtors have been afforded sufficient time to evaluate the value of the Master Agreement to its reorganization efforts in connection with the CN Pledgor LLC Sale. The CN Pledgor LLC Sale and the Non-Designation Notice are evidence that Debtors do not intend to assume or assign the Master Agreement to Generate Capital. Further, GH Effect has not received

any communication from Compute North or the Debtors that suggests that Compute North will ever deploy the Equipment or assume the Master Agreement. To the contrary, the only communications GH Effect has had regarding the Equipment have been with U.S. Bitcoin Corp., Generate Capital's strategic operating partner.

42. Moreover, because the Equipment is located in a facility that is no longer within the Debtors' control, it is impossible for Compute North to meet its obligations under the Master Agreement to energize the Equipment to mine Bitcoin.

43. Conversely, while delay of rejection of the Master Agreement has little effect on the Debtors' reorganization, it poses great financial harm to GH Effect. The Equipment is the property of GH Effect and has significant value to GH Effect. To the extent that GH Effect may wish to enter into a new contract with Generate Capital/U.S. Bitcoin Corp. or some other entity for the operation and deployment of the Equipment, GH Effect is hamstrung by the Master Agreement because the Master Agreement gives Compute North the contractual authority to operate and deploy the Equipment.

44. Because the Master Agreement has been neither assumed nor rejected by Compute North, Compute North retains an interest in the Master Agreement. *See, e.g., In re Mirant Corp.*, 440 F.3d at 525.

45. Rather than wait for automatic rejection under the Plan, when confirmed, the Court should compel the Debtors to reject the Master Agreement and, to the extent necessary, grant relief from the automatic stay to GH Effect to terminate the Master Agreement in accordance with Section 8.3 and 4.1 of the Master Agreement.

**C.    The Court should also modify the automatic stay to permit GH Effect to retrieve the Equipment.**

46.    The Court should also modify the automatic stay to permit GH Effect to retrieve the Equipment.

47.    Section 8.3 of the Master Agreement provides a mechanism for GH Effect to retrieve its equipment.  However, GH Effect requires relief from the automatic stay to retrieve its Equipment in accordance with Section 8.3 of the Master Agreement.  This is true even though the Equipment is located a facility now controlled by non-debtor Generate Capital/U.S. Bitcoin Corp.

48.    There is no uncertainty or ambiguity regarding the ownership of the Equipment. The Equipment is the property of GH Effect.  Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a).  Compute North holds neither legal nor equitable title in the Equipment.  Compute North holds the Equipment for the benefit of its customer, GH Effect, who provided the Equipment to Compute North for the purpose of Compute North deploying the Equipment to mine Bitcoin on GH Effect's behalf at the Wolf Hollow Facility, a facility that Compute North no longer controls. The Equipment, therefore, like the Master Agreement, cannot be necessary for an effective reorganization.

49.    While GH Effect has given notice under Section 8.3 of the Master Agreement to retrieve its Equipment, GH Effect may not retrieve its Equipment from the Wolf Hollow Facility without relief from the automatic stay because Compute North retains an interest in the as-yet unrejected Master Agreement.  Accordingly, the Court should modify the automatic stay to permit GH Effect to retrieve its Equipment in accordance with Section 8.3 of the Master Agreement.

**D.     GH Effect reserves the right to assert that the Deposit is held in trust by Compute North.**

50.     GH Effect reserves the right to assert that the Deposit is held in trust by Compute North. The Deposit was paid in good faith to secure GH Effect's performance under the Master Agreement. Compute North has not performed under the Master Agreement in any respect while GH Effect has fully complied with its obligations under the Master Agreement.

51.     The Master Agreement was entered into approximately three months before the bankruptcy filing. To the extent that Compute North or individuals at Compute North may have known that a bankruptcy was imminent while negotiating the Master Agreement with GH Effect, GH Effect reserves the right to assert that Compute North fraudulently induced[1] GH Effect to enter into the Master Agreement and that, therefore, the Deposit is held in constructive trust for GH Effect and should be repaid in full.[2]

WHEREFORE, Movant respectfully requests that this Court (i) grant this Motion in full and in all respects; (ii) compel rejection of the Master Agreement; (iii) modifying the automatic stay to permit GH Effect to terminate the Master agreement; (iv) modify the automatic stay to permit GH Effect to retrieve the Equipment; and (v) grant such other and further relief is just and proper.

---

[1] "Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations. These are separate causes of action, but they share the same elements, which are: (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury. *** However, to state a claim of fraudulent inducement, the plaintiff must also prove the existence of a contract. *** Rule 9(b) requires that fraud be pled with particularity, meaning that the plaintiff must plausibly plead facts establishing the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F.Supp. 633, 660-61 (W.D. Tex. 2019).

[2] *In re Quality Holstein Leasing*, 752 F.2d 1009, 1013 (5th Cir. 1985) (in the context of examining a constructive trust, holding that "[a]s a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own."). In order to impose a constructive trust, the plaintiff must identify a *res* to which the constructive trust attaches. "The question of whether a constructive trust, which cannot be traced to specific assets, will attach to general funds held [by the debtor-in-possession] is a matter of federal law. Under federal law, the plaintiffs must be able to trace their funds to an identifiable trust in the hands of the [debtor-in-possession]." *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir. 1980).

Dated: December 22, 2022.	POLSINELLI PC


By: */s/ Meredyth A. Kippes*
Meredyth A. Kippes (SBN 24007882)
2950 N. Harwood Street, Suite 2100
Dallas, Texas  75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
mkippes@polsinelli.com
*Counsel for GH Effect*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that she conferred with counsel for the Debtors, Matt Micheli, on December 21, 2022 regarding the relief requested in this Motion.  The Debtors and the Alder Entities have not yet reach agreement on the relief requested, but will continue discussions to attempt to resolve the Motion.

*/s/ Meredyth A. Kippes*
Meredyth A. Kippes

## CERTIFICATE OF SERVICE

I certify that on December 22, 2022, a true copy of the foregoing was served on those parties who consent to service by the Court's ECF notification system and by the method and on the parties listed below as indicated.

/s/Meredyth A. Kippes
Meredyth A. Kippes

**Counsel for the Debtors:**
Paul Hastings LLP
600 Travis Street
58th Floor
Houston, Texas 77002
Attn: James T. Grogan III
(jamesgrogan@paulhastings.com)

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn: Luc Despins
(lucdespins@paulhastings.com)
Sayan Bhattacharyya
(sayanbhattacharyya@paulhastings.com)
Daniel Ginsberg
(danielginsberg@paulhastings.com)

Paul Hastings, LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Attn: Matthew Micheli
(mattmicheli@paulhastings.com)
Michael Jones
(michaeljones@paulhastings.com)

**Counsel for the Official Committee of Unsecured Creditors:**
McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attn: Charles R. Gibbs (crgibbs@mwe.com)

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
Attn: Kristin K Going (kgoing@mwe.com)
Darren Azman (dazman@mwe.com)
Stacy A. Lutkus (salutkus@mwe.com)
Natalie Rowles (nrowles@mwe.com)

**Counsel for the United States Trustee:**
Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attn: Jayson B. Ruff
(Jayson.B.Ruff@usdoj.gov)
Jana Whitworth
(Jana.Whitworth@usdoj.gov)

**Counsel for Generate Capital:**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Aaron Metviner
(aaron.metviner@kirkland.com)
Elizabeth Helen Jones
(elizabeth.jones@kirkland.com)