IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------------- x

In re:

**COMPUTE NORTH HOLDINGS, INC., et al.**

      Debtors.

----------------------------------------------------------------

**CHAPTER 11
CASE NO. 22-90273 (MI)
(JOINTLY ADMINISTERED)**

**MOTION BY ALDER OPPORTUNITY, LP, ALDER SPV I, LLC, AND ALDER BTC, LLC (1) FOR RELIEF FROM THE AUTOMATIC STAY TO RECOVER EQUIPMENT, (2) TO TERMINATE AND COMPEL REJECTION OF CONTRACTS AND (3) FOR OTHER RELIEF**

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on January 20, 2023 at 9:00 a.m. in Courtroom 404, 4th floor, 515 Rusk Avenue, Houston, Texas 77002.**

      Alder Opportunity, LP ("**Alder Opportunity**"); Alder SPV I, LLC ("**Alder SPV I**"); and Alder BTC Holdings, LLC ("**Alder BTC**," and with Alder Opportunity and Alder SPV I, the "**Alder Entities**"), file this motion (the "**Motion**") for relief from the automatic stay under 11 U.S.C. § 362 to permit the Alder Entities to recover equipment owned by the Alder Entities, compel rejection of and modify the automatic stay to terminate the Master Agreements between each of the Alder Entities and Compute North, LLC, and for such other relief as may be just. In support of the Motion, the Alder Entities respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Each of the Alder Entities is a counterparty to a Master Agreement (as defined herein) with one of the jointly administered Debtors, Compute North LLC ("**Compute North**"). Compute North has not assumed the Master Agreements and, upon information and belief, does not intend to assume the Master Agreements. The Alder Entities' Equipment (as defined herein) is located in the Wolf Hollow Facility currently controlled by GC Data Center Equity Holdings, LLC ("**Generate Capital**"). Accordingly, The Alder Entities requests that this Court enter an order:

   a. Compelling the Compute North to reject the Master Agreements;

   b. Modifying the automatic stay to the extent necessary to permit the Alder Entities to terminate the Master Agreements according to their terms;

   c. Modifying the automatic stay to the extent necessary to permit Alder Entities to retrieve the Equipment; and

   d. Granting such other and further relief as is just and proper.

## BACKGROUND

### A. The Bankruptcy Case

2. On September 22, 2022 (the "**Petition Date**"), Compute North Holdings, Inc. and eighteen affiliates, including Compute North (together, the "**Debtors**"), filed chapter 11 petitions with this Court. Since the Petition Date, the Debtors have continued to operate and manage their business as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

3. On October 13, 2022, the Court entered the Order (A) Approving de Minimis Asset Sale Procedures; (B) Approving Rejection Procedures and Certain Assumption and Assignment Procedures and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into

Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Further Hearing on the Approval of the Debtors' Proposed Bidding Procedures and Related Relief (the "**Initial Bid Procedures Order**," Docket No. 191).

4. On October 18, 2022, the Debtors filed the *Notice of Filing of Cure Schedule in Connection with Proposed Sale* dated October 18, 2022 (the "**First Cure Notice,**" Docket Entry No. 209). The First Cure Notice does not list the Alder Entities.

5. On October 24, 2022, the Court entered the Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances as well as the Assumption and Assignment of Certain Executory Contract and Unexpired Leases (the "**Final Bid Procedures Order**," Docket Entry No. 256). The Final Bid Procedures Order provides a November 1, 2022, deadline to file cure objections, and a November 7, 2022 deadline to object to adequate assurance of future performance.

6. The Alder Entities timely filed a cure objection on October 25, 2022 (Docket Entry No. 263) and an amended cure objection on November 1, 2022 (the "**Cure Objection**," Docket Entry No. 370) and an adequate assurance objection on November 4, 2022 (the "**Adequate Assurance Objection**," Docket Entry No. 397), and demanded return of their Equipment in both objections.

7. Alder BTC received the Notice of Entry of Initial Sale Procedures Order and Proposed Sale dated October 18, 2022 (the "**Served Cure Notice**") on October 18, 2022, which reflects a cure amount in the amount of $0.00 owing to Alder BTC Holdings, LLC's Master

Agreement. Alder Opportunity may have also been served with a cure notice similar to the Served Cure Notice that Alder BTC received.

8. On October 28, 2022, the Debtors filed the Notice of Filing of Supplemental Cure Schedule in Connection with Proposed Sale (the "**Supplemental Cure Notice**," Docket Entry No. 334). The Supplemental Cure Notice does not list the Alder Entities.

9. On November 1, 2022, the Debtors filed the Notice of Filing of Cure Schedule in Connection with Proposed Sale (the "**Amended Cure Notice**," Docket Entry No. 357). The Amended Cure Notice does not list the Alder Entities.

10. On November 1, 2022, the Court entered the Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interest in CN Borrower, LLC Free and Clear of All Liens Claims and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief (the "**CN Pledgor Sale Order**," Docket Entry No. 362) approving the sale of CN Pledgor LLC's Equity Interest in CN Borrower, LLC to GC Data Center Equity Holdings, LLC (the "CN Pledgor LLC Sale"). Upon information and belief the Alder Entities' Equipment is located in the Wolf Hollow Facility that is owned by non-debtor CN Borrower, LLC, which is now controlled by Generate Capital.

11. On November 3, 2022, the Alder Entities and two other similarly situated entities filed a limited objection to the sale of the Debtors' assets to the extent that the Debtors sought to sell their Equipment (Docket Entry No. 395).

12. On November 4, 2022, the Debtors filed a Notice of no Contracts Designated for Assumption and Assignment in Connection with Approved Sale (the "**Non-Designation Notice**," Docket Entry No. 412), which reflects that Generate Capital had designated no contracts for assumption and assignment in connection with the CN Pledgor LLC Sale.

13. On November 16, 2022, the Court entered the Order (I) Approving the Sale of Certain Assets of Compute North LLC to Crusoe Energy Systems, LLC Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief (Docket Entry No. 493). That sale did not implicate the Alder Entities' Master Agreements or Equipment.

14. On November 22, 2022, the Court entered the Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief (Docket Entry No. 531). That sale did not implicate the Alder Entities' Master Agreements or Equipment.

15. On November 29, 2022, the Court entered the Order (I) Approving the Sale of Certain Assets of Compute North Member LLC to US Data King Mountain LLC Free and Clear of Certain Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief (Docket Entry No. 594). That sale did not implicate the Alder Entities' Master Agreements or Equipment.

16. Each of the sale orders contained a provision that the Debtors had not sought to sell assets owned by any third-party entity and the relevant sale order does not authorize the sale of assets owned by any third-party entity (the "**Sale Exclusion Language**").

17. None of the Alder Entities appear on Compute North's Schedules, but each has filed a proof of claim in the Compute North case.

**B.** **The Master Agreements**

18. The Alder Entities are parties to the following master agreements (the "**Master Agreements,**" each a "**Master Agreement**") with Compute North:

    a. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder BTC, under which Compute North agreed to provide colocation and other managed

  services for Alder BTC's cryptocurrency mining hardware (attached hereto as ***Exhibit A***);

b. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder Opportunity, under which Compute North agreed to provide colocation and other managed services for Alder Opportunity's cryptocurrency mining hardware (attached hereto as ***Exhibit B***); and

c. Master Agreement dated 7/26/2022 between Debtor Compute North and Alder SPV I, under which Compute North agreed to provide colocation and other managed services for Alder SPV I's cryptocurrency mining hardware (attached hereto as ***Exhibit C***).

19. The Alder Entities paid cumulatively $236,834.40 in deposits (the "**Deposits,**" each a "**Deposit**") relating to the Master Agreements and as set forth on the Order Forms, which represents the last two months of monthly service and package fees, as follows:

a. $38,925.60 paid by Alder BTC;

b. $44,981.40 paid by Alder Opportunity; and

c. $152,924.40 paid by Alder SPV I.

20. Alder BTC's Order Form is attached hereto as ***Exhibit D***. Alder Opportunity's Order Form is attached hereto as ***Exhibit E***. Alder SPV I's Order Form is attached hereto as ***Exhibit F***.

21. Upon information and belief, Compute North remains in possession of the Deposits. Section 5.1 of the Master Agreement provides that the Deposit is refundable "to the extent that all of [the Alder Entities'] obligations under [the Master Agreement] have been fully satisfied."

22. The Alder Entities' estimated lost revenue due to Compute North's failure to energize the Alder Entities' hosted Equipment in a commercially reasonable manner on the quoted energization date of September 15, 2022, less applicable Service Fees and Package Fees (each as defined under the Master Agreements) is as follows:

    a. Alder BTC – $40,386.71;

    b. Alder Opportunity – $41,110.77;

    c. Alder SPV I – $322,706.78.

23.    In connection with entry into the Master Agreements, each of the Alder Entities delivered to Compute North the Equipment, as particularly detailed in Alder Entities' Order Forms, which Compute North was obligated to deploy under the Master Agreements.

24.    Each of the Alder Entities Order Forms under the Master Agreements provides a payment term of 60 months (the "**Equipment Term**").

25.    The Order Forms also provide that the facility where the Alder Entities' Equipment would be deployed is "Wolf Hollow, TX USA (TX10 Data Center)" (the "**Wolf Hollow Facility**").

26.    The Order Forms reflect that the equipment Compute North would use to service the Master Agreements was "Customer Provided."

27.    The Equipment is titled in the Alder Entities' name and is not property of Compute North's bankruptcy estate. The Equipment was delivered to the Wolf Hollow Facility on August 8, 2022. Attached hereto as *Exhibit G* is proof of shipping and delivery of the Equipment.

28.    The purchase cost of the Equipment of each of the Alder Entities is as follows:

    a. Alder BTC – $1,050,000.00;

    b. Alder Opportunity – $1,000,000.00; and

    c. Alder SPV I – $4,506,400.00.

29.    Section 4.1 of the Master Agreement describes the Effective Date and Term of each Master Agreement as follows:

> 4.1.    <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all Equipment Terms for all Equipment under each Order Form have expired or terminated.

30. Section 4.2 of each Master Agreement outlines how and when the Equipment Terms commences and ends as follows:

> 4.2. <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for each piece of Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

31. Compute North assured the Alder Entities prepetition that the Equipment would be deployed and operating by September 15, 2022.

32. The Alder Entities received no notification from the Debtors in accordance with Section 4.2 of the Master Agreements that the Equipment had been turned on by Compute North. Accordingly, the Equipment Term under the Master Agreements never commenced.

33. **Further, because Generate Capital now controls the Wolf Hollow Facility, upon information and belief, the Alder Entities' Equipment, which is subject to the Master Agreements with Debtor Compute North (and, therefore, subject to the automatic stay), is located in the Wolf Hollow Facility, controlled by non-debtor Generate Capital.**

34. The Alder Entities have been in discussions with U.S. Bitcoin Corp., an entity that has been engaged by Generate Capital to manage hosting operations at the Wolf Hollow Facility as Generate Capital's new strategic operating partner. The Alder Entities have been informed by U.S. Bitcoin Corp. that the Master Agreements were not assigned to the Wolf Hollow Facility by Compute North prepetition and, accordingly, the rights under the Master Agreements were not assigned to Generate Capital.

35. Section 5.2 of each Master Agreement provides that each of the Alder Entities "shall pay to Compute North the Monthly Service Fees and the Monthly Package Fees (collectively the 'Fees') as set forth on the Order Form." Each of the Alder Entities' Order Forms provide that

the Fees "will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North."

36. Section 8.3 of each Master Agreement provides that "provided that Customer has paid all amount due and owing under [the Master Agreement] . . . [the Debtor Counterparty] shall decommission and make the [Equipment] available to Customer for pick up at, or shipment from, the Facility within thirty (30) of Customer's written request. Customer shall be responsible for all deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning the [Equipment]."

37. Because of the circumstances of these bankruptcy cases, the Alder Entities have been unable to use their Equipment to mine Bitcoin and have derived no benefit from the Master Agreements or the Deposits.

38. Each of the Alder Entities have paid all amounts currently due and owing under the Master Agreements. In accordance with Section 8.3 of each Master Agreement, each of the Alder Entities is entitled to terminate its Master Agreement by providing Compute North thirty (30) days' notice of its intent to exercise its right to recover its Equipment. The Alder Entities provided such notice in their Cure Objection on October 25, 2022 and November 1, 2022, and again in their Adequate Assurance Objection on November 4, 2022.

39. Section 11.4 of each Master Agreement provides that the Alder Entities' remedy for nonperformance under the Master Agreement is "a refund of any fees paid to Compute North for the service month under which the nonperformance occurred." Because Compute North never performed under the Master Agreements, the Alder Entities are entitled to a refund of the Deposits, which was paid as security for the Alder Entities' performance under the Master Agreements.

**Argument and Authority**

A.  **Applicably Authority**

40. Section 362(d)(1) permits relief from the automatic stay "for cause." "Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis." *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). "Whether cause exists is a fact-intensive inquiry that must be determined on a case-by-case basis." *In re Mosher,* 578 B.R. 765, 772 (Bankr. S.D.Tex. 2017). Each case must be viewed on its own fact and must balance the interests of the estate and the creditor. *Id*. The Fifth Circuit "has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity." *See In re Mirant Corp.*, 440 F.3d 238, 251-52 (5th Cir. 2006) (in the context of a stay violation for postpetition termination of a contract pursuant to an *ipso facto* clause). The bankruptcy court's authority to modify the automatic stay is also broad. *Id*. Importantly, the debtor retains an interest in an executory contract that has not been rejected. *See, e.g., In re Mirant Corp.*, 440 F.3d at 525.

41. Section 365(d)(2) generally permits a debtor to assume or reject an executory contrary "at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." It is within the bankruptcy court's discretion to determine what constitutes a reasonable time within which to assume or reject a contract, based upon the facts of the case. *In re Adelphia Communications Corp*., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003). Factors courts consider in making such a determination are (i) the nature of the interests at stake; (ii) the balance of harm to the litigants; (iii) the "good to be achieved;" (iv) the

safeguards afforded the litigants; (v) whether the action to be taken is so contrary to the Bankruptcy Code that it may be described as arbitrary; (vi) the debtor's failure or ability to satisfy its postpetition obligations under the contract; (vii) the damage the non-debtor will suffer beyond what can be compensated through the bankruptcy process; (viii) the importance of the contract to the debtor's reorganization; (ix) whether the debtor has had sufficient time to appraise the value of the contract/asset; (x) whether exclusivity has been terminate; and (xi) to permit an effective reorganization of the debtor. *Id*. at 292-93.

**B.     The Court should compel the Debtors to reject the Master Agreements and lift the automatic stay to permit termination of the Master Agreements.**

42.     The balance of factors weighs in favor of compelling the Debtors to reject the Master Agreements and permitting termination of the Master Agreements. Because the Debtors no longer have control of the Wolf Hollow Facility, the Master Agreements and the Equipment subject thereto are not necessary for the Debtors' reorganization. This conclusion is supported by the facts that (a) the Equipment is now located in a facility controlled by non-debtor Generate Capital; (b) the Sale Exclusion Language in each of the sale orders demonstrates that the Debtors are aware that they hold assets owned by third parties and have thus far not sought to sell the third-party-owned equipment; and (c) by the filing of the Non-Designation Notice, Compute North appears to have no intention to assume and assign the Master Agreements.

43.     The Debtors have been afforded sufficient time to evaluate the value of the Master Agreements to their reorganization efforts in connection with the CN Pledgor LLC Sale. The CN Pledgor LLC Sale and the Non-Designation Notice are evidence that Debtors do not intend to assume or assign the Master Agreements to Generate Capital. Further, the Alder Entities have not received any communication from Compute North or the Debtors that suggests that Compute North will ever deploy the Equipment or assume the Master Agreements. To the contrary, the only

communications the Alder Entities have had regarding the Equipment have been with U.S. Bitcoin Corp., Generate Capital's strategic operating partner.

44. Moreover, because the Equipment is located in a facility that is no longer within the Debtors' control, it is impossible for Compute North to meet its obligations under the Master Agreements to energize the Equipment to mine Bitcoin.

45. Conversely, while delay of rejection of the Master Agreements has little effect on the Debtors' reorganization, it poses great financial harm to the Alder Entities. The Equipment is the property of the Alder Entities and has significant value to the Alder Entities. To the extent that the Alder Entities may wish to enter into a new contract with Generate Capital/U.S. Bitcoin Corp. or some other entity for the operation and deployment of the Equipment, the Alder Entities are hamstrung by the Master Agreements because the Master Agreements give Compute North the contractual authority to operate and deploy the Equipment.

46. Because the Master Agreements have been neither assumed nor rejected by Compute North, Compute North retains an interest in the Master Agreements. *See, e.g., In re Mirant Corp.*, 440 F.3d at 525.

47. Rather than wait for automatic rejection under the Plan, when confirmed, the Court should compel the Debtors to reject the Master Agreements and, to the extent necessary, grant relief from the automatic stay to the Alder Entities to terminate the Master Agreements in accordance with Section 8.3 and 4.1 of the Master Agreements.

## C. The Court should also modify the automatic stay to permit the Alder Entities to retrieve the Equipment.

48. The Court should also modify the automatic stay to permit the Alder Entities to retrieve the Equipment.

49. Section 8.3 of the Master Agreement provides a mechanism for the Alder Entities to retrieve its equipment. However, the Alder Entities require relief from the automatic stay to retrieve their Equipment in accordance with Section 8.3 of the Master Agreement. This is true even though the Equipment is located a facility now controlled by non-debtor Generate Capital/U.S. Bitcoin Corp.

50. There is no uncertainty or ambiguity regarding the ownership of the Equipment. The Equipment is the property of the Alder Entities. Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a). Compute North holds neither legal nor equitable title in the Equipment. Compute North holds the Equipment for the benefit of its customer, The Alder Entities, who provided the Equipment to Compute North for the purpose of Compute North deploying the Equipment to mine Bitcoin on the Alder Entities' behalf at the Wolf Hollow Facility, a facility that Compute North no longer controls. The Equipment, therefore, like the Master Agreements, cannot be necessary for an effective reorganization.

51. While the Alder Entities have given notice under Section 8.3 of the Master Agreements to retrieve their Equipment, the Alder Entities may not retrieve their Equipment from the Wolf Hollow Facility without relief from the automatic stay because Compute North retains an interest in the as-yet unrejected Master Agreements. Accordingly, the Court should modify the automatic stay to permit the Alder Entities to retrieve their Equipment in accordance with Section 8.3 of the Master Agreements.

**D.** **The Alder Entities reserve the right to assert that the Deposits are held in trust by Compute North.**

52. The Alder Entities reserve the right to assert that the Deposit is held in trust by Compute North. The Deposits were paid in good faith to secure the Alder Entities' performance

under the Master Agreements. Compute North has not performed under the Master Agreements in any respect while the Alder Entities have fully complied with their obligations under the Master Agreements.

53. The Master Agreements were entered into approximately three months before the bankruptcy filing. To the extent that Compute North or individuals at Compute North may have known that a bankruptcy was imminent while negotiating the Master Agreements with the Alder Entities, the Alder Entities reserve the right to assert that Compute North fraudulently induced[1] the Alder Entities to enter into the Master Agreements and that, therefore, the Deposits are held in constructive trust for the Alder Entities and should be repaid in full.[2]

WHEREFORE, Movant respectfully requests that this Court (i) grant this Motion in full and in all respects; (ii) modify the automatic stay to permit the Alder Entities to retrieve the Equipment; (iii) modify the automatic stay to permit the Alder Entities to terminate the Master Agreements; and (iv) grant such other and further relief is just and proper.

---

[1] "Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations. These are separate causes of action, but they share the same elements, which are: (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury. *** However, to state a claim of fraudulent inducement, the plaintiff must also prove the existence of a contract. *** Rule 9(b) requires that fraud be pled with particularity, meaning that the plaintiff must plausibly plead facts establishing the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F.Supp. 633, 660-61 (W.D. Tex. 2019).

[2] *In re Quality Holstein Leasing*, 752 F.2d 1009, 1013 (5th Cir. 1985) (in the context of examining a constructive trust, holding that "[a]s a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own."). In order to impose a constructive trust, the plaintiff must identify a *res* to which the constructive trust attaches. "The question of whether a constructive trust, which cannot be traced to specific assets, will attach to general funds held [by the debtor-in-possession] is a matter of federal law. Under federal law, the plaintiffs must be able to trace their funds to an identifiable trust in the hands of the [debtor-in-possession]." *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir. 1980).

Dated: December 22, 2022.	POLSINELLI PC

By: */s/ Meredyth A. Kippes*
Meredyth A. Kippes (SBN 24007882)
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
mkippes@polsinelli.com
*Counsel for the Alder Entities*

### **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that she conferred with counsel for the Debtors, Matt Micheli, on December 21, 2022 regarding the relief requested in this Motion. The Debtors and the Alder Entities have not yet reach agreement on the relief requested, but will continue discussions to attempt to resolve the Motion.

*/s/ Meredyth A. Kippes*
Meredyth A. Kippes

# CERTIFICATE OF SERVICE

I certify that on December 22, 2022, a true copy of the foregoing was served on those parties who consent to service by the Court's ECF notification system and by the method and on the parties listed below as indicated.

*/s/Meredyth A. Kippes*
Meredyth A. Kippes

**Counsel for the Debtors:**
Paul Hastings LLP
600 Travis Street
58th Floor
Houston, Texas 77002
Attn: James T. Grogan III
(jamesgrogan@paulhastings.com)

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn: Luc Despins
(lucdespins@paulhastings.com)
Sayan Bhattacharyya
(sayanbhattacharyya@paulhastings.com)
Daniel Ginsberg
(danielginsberg@paulhastings.com)

Paul Hastings, LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Attn: Matthew Micheli
(mattmicheli@paulhastings.com)
Michael Jones
(michaeljones@paulhastings.com)

**Counsel for the Official Committee of Unsecured Creditors:**
McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attn: Charles R. Gibbs (crgibbs@mwe.com)

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
Attn: Kristin K Going (kgoing@mwe.com)
Darren Azman (dazman@mwe.com)
Stacy A. Lutkus (salutkus@mwe.com)
Natalie Rowles (nrowles@mwe.com)

**Counsel for the United States Trustee:**
Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attn: Jayson B. Ruff
(Jayson.B.Ruff@usdoj.gov)
Jana Whitworth
(Jana.Whitworth@usdoj.gov)

**Counsel for Generate Capital:**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Aaron Metviner
(aaron.metviner@kirkland.com)
Elizabeth Helen Jones
(elizabeth.jones@kirkland.com)