**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 342** |

**OBJECTION OF DEBTORS TO ROHIT**
**SHIROLE'S MOTION FOR RELIEF UNDER 11 U.S.C. § 362(d)**
**FROM AUTOMATIC STAY TO CONTINUE LITIGATION AGAINST**
**CERTAIN DEBTORS AND WAIVER OF 30-DAY HEARING REQUIREMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this objection (the "Objection") in response to *Rohit Shirole's Motion for Relief Under 11 U.S.C. § 362(d) from Automatic Stay to Continue Litigation Against Certain Debtors and Waiver of 30-Day Hearing Requirement* [Docket No. 342] (the "Motion"),[2] filed by Rohit Shirole ("Shirole" or "Movant"). In support of the Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.     In the Motion, Movant seeks relief from the automatic stay under section 362 of title 11 of the United States Code (the "Bankruptcy Code") to proceed in the case styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274 (the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2]     Capitalized terms used but not defined in the Objection have the meanings ascribed to them in the Motion.

"Minnesota Action"), pending in the Fourth Judicial District for the State of Minnesota, Hennepin County (the "Minnesota State Court").

2.      Movant has not met, and cannot meet, its initial burden of showing cause for lifting the automatic stay.  Accordingly, for all the reasons set forth more fully below, the balance of the equities favor the Debtors and, thus, the Motion should be denied.

## BACKGROUND

### I.      Debtors' Chapter 11 Cases

3.      On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On October 6, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

### II.      Movant's Prepetition Action

5.      The Minnesota Action stems from a lawsuit that Movant brought in December 2021 under Minnesota law where Movant asserted claims against the Debtors, including discrimination, retaliation, wage loss, wrongful termination, breach of contract, and unjust enrichment, which Movant claims resulted from his prior employment by the Debtors.

6.     In March 2022, the Debtors answered the Minnesota Action complaint and filed counterclaims against Movant for breach of the duty of loyalty, tortious interference with contract, and unfair competition.  Movant filed a reply to the Debtors' counterclaims.

7.     In August 2022, the parties proceeded with mediation that was unsuccessful and the parties did not reach resolution.

8.     On the Petition Date and upon the filing of the Debtors' voluntary petitions for chapter 11 relief, section 362(a) of the Bankruptcy Code automatically stayed, among other things, the Minnesota Action.  Movant now seeks to lift the stay so that the Minnesota Action may proceed.

## OBJECTION

### I.     The Automatic Stay Is a Fundamental Debtor Protection Subject to Narrow Exceptions

9.     The automatic stay under Section 362 of the Bankruptcy Code applies to actions or proceedings against a debtor or against property of the estate.  11 U.S.C. § 362.  In particular, the automatic stay protects against, among other things:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

10.     Indeed, the automatic stay affords a debtor fundamental protections under the bankruptcy laws.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41, 5963.  The legislative history of section 362 indicates that Congress intended the scope of the automatic stay to be sweeping to effectuate its protective purposes on behalf of both debtors and creditors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id.*; *see also Midlantic Nat'l Bank v. N.J. Dept. of Envt'l Protection*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code . . . has been described as one of the fundamental debtor protections provided by the bankruptcy laws.") (internal quotations and citations omitted).  The automatic stay is designed to give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding the debtor from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring.  *See, e.g.*, *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (stating that the purpose of the automatic stay is "to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets").

## II.    Party Seeking Relief from Automatic Stay Has Burden to Show Cause

11.    Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not define "cause."  *See, e.g.*, *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because [section] 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis."); *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997) ("The Bankruptcy Act does not specify what constitutes cause to modify a stay, other than 'lack of adequate protection of an interest in property of such party in interest.'").

12.    Although the Fifth Circuit has not imposed a firm standard for determining whether cause exists to lift the automatic stay, courts in this Circuit have relied upon a set of twelve factors,

the so-called "*Sonnax* Factors," when making such assessment.[3]  *See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing, among other cases, *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)).  However, "[n]ot all factors may be relevant to each case."  *Xenon Anesthesia*, 510 B.R. at 112.  Further, "[i]f the movant fails to make an initial showing of cause, [] the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *Sonnax Indus., Inc.,* 907 F.2d at 1285; *see also In re Gramercy Court, Ltd.*, Nos. 07-80177-G3-11, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007).

## III.    Movant Failed to Meet Its Burden to Demonstrate Cause Exists

13.    The Debtors submit that the Movant has failed to meet his burden to demonstrate that cause exists.

14.    The Movant seeks relief from the automatic stay under section 362 of the Bankruptcy Code in order to proceed with the Minnesota Action so that it may be re-opened and actively pursued to its conclusion.  The Movant alleges that lifting the stay would completely resolve the issues in the Minnesota Action and promote judicial economy.  The Movant also asserts

---

[3]    The *Sonnax* Factors are:
   (1)    whether relief would result in a partial or complete resolution of the issues;
   (2)    lack of any connection with or interference with the bankruptcy case;
   (3)    whether the other proceeding involves the debtor as a fiduciary;
   (4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
   (5)    whether the debtor's insurer has assumed full responsibility for defending it;
   (6)    whether the action primarily involves third parties;
   (7)    whether litigation in another forum would prejudice the interests of other creditors;
   (8)    whether the judgment claim arising from the other action is subject to equitable subordination;
   (9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
   (10)   the interests of judicial economy and the expeditious and economical resolution of litigation;
   (11)   whether the parties are ready for trial in the other proceeding; and
   (12)   impact of the stay on the parties and the balance of harms.
*In re Sonnax Indus., Inc.*, 907 F.2d at 1286.  As discussed below, the Debtors submit that the *Sonnax* Factors relevant here – factors 1, 2, 7, 10, 11, and 12 – support denial of the Motion, and that factors 3, 4, 5, 6, 8, and 9 are not relevant to the present dispute.

that the stay should be lifted because the Minnesota Action has substantially progressed toward trial.

15.     However, a review of the applicable *Sonnax* Factors to this case demonstrates that lifting the automatic stay is not warranted.

**A.     *Sonnax* Factor 1: Lifting the Stay Will Not Fully Resolve the Disputes Between Movant and the Debtors**

16.     The Movant argues that modifying the automatic stay will result in a complete resolution of the issues in the Minnesota Action, however, such resolution is not possible. Considering the parties are not yet ready for trial and mediation already failed, there are several steps preceding any resolution.  For instance, the Minnesota Action would still need to proceed to discovery, trial, judgment, and any appeals. Therefore, lifting the stay would not resolve anything apart from restarting the litigation.

17.     After the completion of trial and appeals in state court, the Movant would then have to return to the Bankruptcy Court to address bankruptcy-specific issues with regard to his claims. Significantly, a large component of Movant's claims relate to stock option awards that he claims he was deprived of as a result of the termination of his prepetition employment.  Regardless of the merits of these claims, the Bankruptcy Court would be required to then weigh in on whether such claims should be statutorily subordinated under section 510(b) of the Bankruptcy Code. In addition, because Movant's claims arise from the termination of an employment agreement, regardless of the merits of his allegations under state law, the Bankruptcy Court would need to address whether the amount of Movant's claims should be statutorily capped under section 502(b)(7) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(7).

18.     Therefore, even if the Movant succeeded on the Minnesota Action, he would "hold a general unsecured claim that is to be paid proportionally and in accordance with a confirmed

chapter 11 plan." *In re Residential Capital,* No. 12-12020 MG, 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012). Since the Movant would have to return to the Bankruptcy Court regardless, lifting the stay would not fully resolve these issues. Rather, significant issues would remain to be litigated in the Bankruptcy Court regarding subordination and statutory limitations on Movant's damage claims. Accordingly, the first *Sonnax* factor weighs heavily against lifting the stay.

19. Where the outcome is uncertain and granting the Movant relief from the stay would more likely expose the Debtors to protracted litigation than speedily resolve the lawsuit at issue, the *Sonnax* factors weigh against relief. *In re Motors Liquidation Co.,* No. 09-50026 REG, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010).

**B.**     ***Sonnax* Factor 2: Relief Will Interfere with Bankruptcy Case**

20. The Debtors are currently focusing their time, energy, and resources on soliciting acceptances to their liquidating chapter 11 plan (the "Plan"), obtaining final approval of the Debtors' disclosure statement, and confirming the Plan, as well as an on-going asset sales process, which involves a number of highly complex transactional documents and agreements that will benefit the Debtors' estate and maximize recoveries to the Debtors' creditors. Any distraction from these goals, particularly in this critical period, is unwarranted and contrary to the best interests of the Debtors' estates and creditors.

21. Additionally, because this is a liquidating chapter 11 case and the Debtors have now sold substantially all of their assets, the Debtors have only a handful of employees remaining on payroll and have a finite amount of cash available to fund the Chapter 11 Cases through plan confirmation. Furthermore, 196 proofs of claim have been filed by claimants in this case. Movant has filed two proofs of claim – Claim Number 10055 and Claim Number 10056 – each of which

was filed in the amount of $23,973,724.53. The Debtors and, eventually, the Plan Administrator appointed under the Debtors' chapter 11 plan, will undertake a comprehensive claims administration process to reconcile these proofs of claim, file objections, and ultimately make distributions to creditors holding allowed claims. Movant has not demonstrated why his claims require special treatment when compared to the many other claimants who are seeking timely distributions from the estates. Indeed, forcing the Debtors to litigate Movant's claims in state court at this critical juncture in the Chapter 11 Cases (on the precipice of plan confirmation) will be value destructive and will interfere with the Debtors' ability to successfully conclude these Chapter 11 Cases on the timetable the Court has established for confirmation. The Debtors are working diligently towards a value-maximizing conclusion to these Chapter 11 Cases. The burden of having to litigate in another jurisdiction would interfere with these efforts by diminishing the Debtors' limited resources.

22.     On similar facts where a prepetition plaintiff sought relief from the automatic stay to pursue her damages claims against a debtor, the bankruptcy court considered the possibility of interference and determined:

> Lifting the stay to allow [Movant] to proceed with her damages claims in another forum could open the floodgates for other movants who also seek stay relief; many creditors assert similar claims in state and federal courts across the country. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize, forcing the Debtors to utilize time and resources that would otherwise be spent resolving these chapter 11 cases. Accordingly, the second *Sonnax* factor strongly weighs in favor of keeping the stay in place; lifting the stay will interfere with the Debtors' chapter 11 cases.

*In re Residential Capital, LLC,* No. 12-12020 MG, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012).

23.     In addition, courts have held that "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another

8

forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief." *In re Curtis,* 40 B.R. 795, 806 (Bankr. D. Utah 1984); *see In re U.S. Brass Corp.,* 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994), *modified,* 176 B.R. 11 (Bankr. E.D. Tex. 1994). For the foregoing reasons, modifying the stay would more than slightly interfere with the administration of the Debtors Chapter 11 Cases. Therefore, such relief should be precluded.

        **B.**    *Sonnax* **Factor 7: Relief Would Prejudice Other Creditors**

    24.      In addition to interfering with the Debtors' Chapter 11 Cases, lifting the automatic stay at this juncture would prejudice not just the Debtors, but other creditors as well. *See In re SquareTwo Fin. Servs. Corp.*, Case No. 17-10659 (JLG), at *14 (Bankr. S.D.N.Y. Sep. 11, 2017) (noting that "in applying [*Sonnax*] Factor #7, the Court will consider the interests of both other creditors and the Reorganized Debtors"). Requiring the Debtors to defend against the Movant's claims in another forum would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court." *Public Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir.1992).

    25.      Furthermore, modifying the automatic stay to allow Movant's claims to continue in Minnesota would cause the Debtors to expend substantial resources that would deplete the Debtors' estates, reducing distributions to, and thus prejudicing, the rights of other unsecured creditors. Granting the Motion would thereby undermine a central purpose of the automatic stay "to protect the equitable distribution among similarly situated creditors by preventing a race to the courthouse, in which a single self-interested creditor may unilaterally collect on a debtor or estate's assets to the detriment of other creditors." *In re JCP Properties, Ltd.,* 540 B.R. 596, 613 (Bankr.

S.D. Tex. 2015) (citing, among other cases, *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d at

1182).[4]  Accordingly, the interests of other creditors militate in favor of denying the Motion.

C.     ***Sonnax* Factor 11: The Parties Are Not Ready for Trial in the Other Proceeding**

26.     The parties are not ready for trial in the Minnesota Action and nothing of substance

has yet transpired. While the parties participated in an unsuccessful mediation and exchanged

initial discovery requests, neither side had commenced the discovery process in earnest before the

Petition Date. Indeed, in his Motion, the Movant concedes that, "the parties are not yet on the

precipice of trial."[5]  Therefore, by the Movant's own admission, the eleventh *Sonnax* factor weighs

against relief.

D.     ***Sonnax* Factor 10: Relief Will Not Promote Judicial Economy**

27.     Movant's primary argument in support of lifting the automatic stay is promoting

judicial economy through an "expeditious and economical determination of the litigation."[6]

However, there is simply no urgency with respect to this matter that cannot be handled after

confirmation of the plan or through the claims process, particularly when the hearing on

confirmation of the Plan has already been scheduled for February 2023.

28.     In addition, forcing the Debtors to defend against the Movant's claims in a

Minnesota jury trial is not economical for the Debtors' estates.  *See, e.g., In re Telegroup, Inc.,*

237 B.R. 87, 95–96 (Bankr. D. N.J. 1999) (finding that the burden on the debtors to litigate in the

movant's chosen forum outweighed the benefit to the movant); *In re Lapeyre,* Case No. 99–1312,

---

[4] In *JCP Properties*, the court granted stay relief against property of the estate not for "cause" under Bankruptcy Code section 362(d)(1), but instead pursuant to Bankruptcy Code section 362(d)(2), based on the debtors' lack of equity in the property and the absence of necessity of the property for an effective reorganization.  540 B.R. at 617-19.  *JCP Properties* thus does not support granting stay relief to Movant.
[5] Motion at page 12.
[6] Motion at page 10.

1999 WL 486888, at * 6 (E.D. La. July 8, 1999) (finding that the movant's desire for a jury trial was not a compelling factor and that the bankruptcy court would avoid unnecessary expense and delay).

29.     Under similar circumstances where a creditor sought stay relief to pursue litigation in another forum, the bankruptcy court found that "[t]he interests of judicial economy favor proceeding through the claims estimation process in bankruptcy court rather than litigation in [the other forum]." *In re Choice ATM Enterprises, Inc.,* No. 14-44982-DML, 2015 WL 1014617 at *5 (Bankr. N.D. Tex. Mar. 4, 2015).  The court based this determination on the fact that "[t]he Bankruptcy Code and Rules implement a speedy, efficient and economical method for the determination and allowance of claims." *Id.*

30.     This tenth *Sonnax* factor weighs against relief where allowing the Movant "to proceed with his classic pre-petition action would open the floodgates to . . . other litigants with garden variety claims against the [] estate." *In re Motors Liquidation Co.,* 2010 WL 4630327 at *5 (internal quotations omitted).  If the Court grants relief to the Movant, other litigants could race to the courthouse for similar treatment, thereby ushering "in the very state of affairs the automatic stay was enacted to prevent.  The automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *Id.* (internal quotations and citations omitted).  Therefore, both Bankruptcy Code policy and judicial economy support denying the Movant's Motion.

**E.     *Sonnax* Factor 12: Balance of Harms Weighs in Favor of Maintaining the Automatic Stay**

31.     The balance of the harms ultimately weighs against modifying the automatic stay. "Claims for damages against the Debtors are the usual grist for the bankruptcy claims allowance

process and absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims." *In re Residential Capital,* 2012 WL 3249641 at *4.  There are no "unusual circumstances" that would support deviating from the normal claims allowance process here.  In fact, the *Sonnax* factors and basic tenets of Bankruptcy Code policy converge in favor of maintaining the automatic stay.

32.     Granting the Movant's requested relief would pose serious risks to the Debtors as well as other creditors.  Forcing the Debtors to defend against the Minnesota Action in another forum would deplete estate assets, drain resources, and distract from confirmation efforts.  The other creditors who have filed proofs of claim are counting on an equitable distribution of the Debtors' assets through an orderly bankruptcy claims administration process.  Allowing piecemeal litigation of claims outside of the Bankruptcy Court will result in a diminution of assets available for such distributions in favor of a single creditor given preferential treatment.  *See In re Roman Catholic Church of Archdiocese of New Orleans,* No. 20-10846, 2021 WL 454220 at *6 (Bankr. E.D. La. Feb. 8, 2021) (the Court denied the lift-stay motions seeking to proceed with litigation against the Debtor, finding "that the 'balance of harms' did not justify the Debtor's expenditure of resources to the detriment of its own reorganization efforts for the sole benefit of one creditor's recovery over others similarly situated." Therefore, the equities favor maintaining the automatic stay.

## **RESERVATION OF RIGHTS**

33.     The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this Objection.

## <u>CONCLUSION</u>

34.     Lifting the automatic stay and requiring the Debtors to devote substantial human and financial capital towards the Minnesota Action at this critical juncture of these Chapter 11 Cases is not warranted.  The substantive resolution of the disputes related to the Minnesota Action is not nearly as urgent or time-sensitive as the Debtors' efforts to confirm a plan and begin the process of reconciling all proofs of claims so that pro rata distributions may begin.  All available time, resources and funds should be devoted to confirming the chapter 11 plan rather than on non-urgent disputes which cannot, and do not need to, be resolved during the pendency of these Chapter 11 Cases.

35.     For the foregoing reasons, cause does not exist to establish that Movant is entitled to relief from the automatic stay and the Motion should be denied.


[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion and grant such other and further relief as the Court deems appropriate under the circumstances.

Dated:  December 30, 2022
Houston, Texas

/s/  *James T. Grogan III*

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg  (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
            sayanbhattacharyya@paulhastings.com
            danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
            michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

14

**<u>Certificate of Service</u>**

  I certify that on December 30, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

             *_/s/ James T. Grogan III_*
             James T. Grogan III