UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COMPUTE NORTH HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF RYAN MERSCH IN SUPPORT OF
DEBTORS' OBJECTION TO ROHIT SHIROLE'S MOTION FOR RELIEF FROM STAY**

I, Ryan Mersch, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1. I am a Senior Director of Portage Point Partners, LLC ("Portage Point"), the financial advisor to the Debtors in these chapter 11 cases.

2. I submit this Declaration (this "Declaration") in support of the Objection[2] filed by the above-captioned debtors and debtors in possession in these proceedings (collectively, the "Debtors") disputing Rohit Shirole's ("Shirole") request for relief from the automatic stay. I have read the Objection and I agree with and adopt the factual statements contained therein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

[2] "Objection" means that certain *Objection of Debtors to Rohit Shirole's Motion for Relief Under 11 U.S.C. § 362(d) from Automatic Stay to Continue Litigation Against Certain Debtors and Waiver of 30-Day Hearing Requirement* [Docket No. 764]. Capitalized terms used in this Declaration and not otherwise defined herein have the meanings given to such terms in the Objection.

3.  Portage Point is a restructuring and turnaround management firm whose professionals have a wealth of experience in providing financial advisory services in a variety of complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Portage Point's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. Portage Point has provided restructuring or crisis management services in numerous large cases, including but not limited to: *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 9, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 29, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. Oct. 22, 2020); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020); *In re Hornbeck Offshore Services*, LLC, No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems*, No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re The Financial Oversight and Management Board for Puerto Rico, as a representative of Puerto Rico Electric Power Authority*, No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017). I personally provided services in the following cases: *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 9, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 29, 2021); *In re Hornbeck Offshore Services*, LLC, No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems*, No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics*, No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.*, No. 19-

11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019).

4. I am a Senior Director at Portage Point, which I joined in 2017 and which has its principal place of business at 300 North LaSalle Drive, Suite 1420, Chicago, Illinois 60654. At Portage Point, I have worked directly with companies and their management teams to help stabilize financial and operational performance by developing and implementing comprehensive profitability, working capital and liquidity management plans. Prior to joining Portage Point, I was an Investment Banking Analyst in the Mergers & Acquisitions Group at Lazard where I focused on valuation services and strategic alternative assessments. I hold a B.S. in Finance from the Kelley School of Business at Indiana University and am a member of the Turnaround Management Association.

5. I have experience handling complex financial and other restructuring matters for a variety of companies (distressed or otherwise and both in and out of court) across a wide spectrum of industries. My areas of expertise include, among other things, (a) advising on financial and operational restructuring strategies, (b) sizing, structuring, raising, and executing all aspects of financing transactions, including distressed and debtor-in-possession financings, (c) facilitating sale processes both in and out of court for companies undergoing financial distress, (d) liquidity management and forecasting, contingency planning, financial modeling, developing and implementing performance improvement initiatives, and (e) complex in-court and out-of-court restructurings.

6. Since approximately July 5, 2022, Portage Point has provided services to the Debtors as financial advisor in connection with their restructuring efforts. In providing such pre- and post-petition professional services to the Debtors, Portage Point has become familiar with the

Debtors and their businesses, including the Debtors' business and financial affairs, capital structure, day-to-day operations, and books and records. Having worked closely with the Debtors' management and their other advisors, Portage Point has developed relevant experience and expertise regarding the Debtors that has assisted it in providing effective and efficient services to the Debtors, including in these chapter 11 cases.

7. As a professional retained by the Debtors in these chapter 11 cases, Portage Point is charging for services provided in this matter, but I am not being specifically compensated for providing this Declaration or testimony. I am authorized to submit this Declaration on behalf of the Debtors.

8. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with other members of the Portage Point team, the Debtors' management team and the Debtors' other advisors, my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and my views based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## Objection

9. I understand that Shirole used to work for Debtors but was terminated for cause. I further understand that, in December 2021, Shirole commenced a suit against the Debtors in the Fourth Judicial District for the State of Minnesota, Hennepin County (the "Minnesota Action")[3] asserting claims allegedly based on his prior employment by the Debtors, including discrimination, retaliation, wage loss, wrongful termination, breach of contract, and unjust enrichment.

---

[3] Case styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274.

10. I also understand that in March 2022, the Debtors filed certain counterclaims against Shirole for breach of the duty of loyalty, tortious interference with contract, and unfair competition.

11. I understand that in August 2022, the parties attempted mediation, but they were not able to reach a resolution.

12. On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I understand that on the Petition Date, the Bankruptcy Code's automatic stay provision went into effect, thereby staying the Minnesota Action.

13. On October 31, 2022, Shirole filed his Motion[4] seeking relief from the automatic stay to continue litigation in the Minnesota Action.

14. I believe that lifting the automatic stay and requiring the Debtors to devote substantial human and financial capital towards the Minnesota Action at this critical juncture of these Chapter 11 Cases would be highly prejudicial to the Debtors and the chapter 11 estates. The Debtors only have 14 employees currently on staff. With this limited human capital, the Debtors need to be focused on soliciting acceptances to their liquidating chapter 11 plan (the "Plan"), obtaining final approval of their disclosure statement, confirming the Plan, and completing an on-going sales process that involves a number of highly complex transactional documents and agreements that will benefit the Debtors' estate and maximize recoveries to the Debtors' creditors. With respect to asset sales, the Debtors are actively working on achieving the various conditions precedent to allow them to close the contemplated sale of their assets in Minden, Nebraska, to

---

[4] "Motion" means that certain *Motion for Relief from Stay to Continue Litigation Against Certain Debtors* [Docket No. 342].

Foundry. It would be highly disruptive to these efforts if the few employees remaining with the Debtors were forced to divert their attention from achieving a successful reorganization so that a former employee who was terminated for cause can pursue litigation in state court. Therefore, I believe modifying the stay would distract the Debtors from these goals during a critical period and thereby prejudice the Debtors' estates as well as other creditors.

15. Since this is a liquidating chapter 11 case and the Debtors have now sold substantially all of their assets, the Debtors have a limited amount of cash available to fund the Chapter 11 Cases through plan confirmation.

16. There have been 196 proofs of claim filed in this case of which Shirole has filed two proofs of claim – Claim Number 10055 and Claim Number 10056 – each of which was filed in the amount of $23,973,724.53. The Debtors and, eventually, the Plan Administrator appointed under the Plan, will undertake a comprehensive claims administration process to reconcile these proofs of claim, file objections, and ultimately make distributions to creditors holding allowed claims.

17. Shirole's claims are not entitled to special treatment compared to the many other claimants seeking timely distributions from the estates. I believe forcing the Debtors to litigate Shirole's claims in state court at this critical juncture in the Chapter 11 Cases (on the precipice of plan confirmation) would be value-destructive and would interfere with the Debtors' ability to successfully conclude these Chapter 11 Cases on the timetable the Court has established for confirmation. The Debtors are working diligently towards a value-maximizing conclusion to these Chapter 11 Cases. Therefore, the burden of having to litigate in another jurisdiction would interfere with these efforts by diminishing the Debtors' limited resources.

18. I understand that the Minnesota Action is still in the early stages and nothing of substance has yet transpired. The parties are not yet ready for trial, have not commenced the discovery process in earnest, and there are several steps preceding any resolution. I understand that the Minnesota Action would still need to proceed through discovery, trial, judgment, and any appeals before there can be full resolution. Accordingly, I believe lifting the stay would not resolve anything apart from restarting the litigation.

19. Furthermore, even if the parties eventually reached resolution in the Minnesota Action, there are bankruptcy-specific issues that need to be addressed with regard to Shirole's claims. For instance, in reviewing the Shirole claims, it appears that a significant amount of claims asserted relate to stock option awards that he claims he was deprived of as a result of the termination of his prepetition employment. I understand from discussions with Debtors' counsel that, regardless of the merits of these claims, the Bankruptcy Court would have to determine whether these claims should be statutorily subordinated under section 510(b) of the Bankruptcy Code. Furthermore, since Shirole's claims arise from the termination of an employment agreement, the Bankruptcy Court would need to address whether the amount of his claims should be statutorily capped under section 502(b)(7) of the Bankruptcy Code. In addition, I understand that Shirole's claims would have to be allowed and treated according to the chapter 11 process just like all other general unsecured claims. Since Shirole would ultimately have to return to the Bankruptcy Court regardless, I believe lifting the stay would not fully resolve these disputes. Rather, I understand significant issues would remain to be litigated in the Bankruptcy Court regarding subordination and statutory limitations on Shirole's damage claims.

20. I also don't believe there is any urgency with respect to this matter that cannot be handled after confirmation of the plan or through the claims process, particularly when the hearing

on confirmation of the Plan has already been scheduled for February 2023. Furthermore, considering the Debtors' limited remaining resources, forcing the Debtors to defend against Shirole's claims in a Minnesota jury trial would not be economical for the Debtors' estates.

21. I believe that granting Shirole's requested relief would pose serious risks to the Debtors and other creditors. Forcing the Debtors to defend against the Minnesota Action in another forum would deplete estate assets, drain resources, and distract from confirmation efforts. The other creditors who have filed proofs of claim are counting on an equitable distribution of the Debtors' assets through an orderly bankruptcy claims administration process. Allowing piecemeal litigation of claims outside of the Bankruptcy Court will result in a diminution of assets available for such distributions in favor of a single creditor given preferential treatment.

## **CONCLUSION**

22. In conclusion, I believe that lifting the automatic stay and requiring the Debtors to devote substantial human and financial capital towards the Minnesota Action at this critical juncture of these Chapter 11 Cases is not warranted. The substantive resolution of the disputes related to the Minnesota Action is not nearly as urgent or time-sensitive as the Debtors' efforts to confirm a plan and begin the process of reconciling all proofs of claims so that pro rata distributions may begin. All available time, resources and funds should be devoted to confirming the chapter 11 plan rather than on non-urgent disputes which cannot, and do not need to, be resolved during the pendency of these Chapter 11 Cases. For these reasons, I believe Shirole is not entitled to relief from the automatic stay and his Motion should be denied

[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 4, 2023
      Chicago, Illinois

Respectfully submitted,

*/s/ Ryan Mersch*
Ryan Mersch
Senior Director
Portage Point Partners