```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                       .
IN RE:                                 .   Case No. 22-90273
                                       .   Chapter 11
COMPUTE NORTH HOLDINGS INC.            .
and CN MINING, LLC,                    .   515 Rusk Street
                                       .   Houston, TX 77002
                 Debtors.              .
                                       .   Friday, December 16, 2022
. . . . . . . . . . . . . . . .        .   1:30 p.m.
```

TRANSCRIPT OF MOTION FOR RELIEF FROM STAY TO RECOVER EQUIPMENT,
        TERMINATE CONTRACT AND FOR OTHER RELIEF [506];
          DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
   (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE
     STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE
  PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT
  CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
 NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES
  WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF [578]
                BEFORE THE HONORABLE MARVIN ISGUR
                UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:            Courtroom ECRO Personnel

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For the Debtors: | Paul Hastings LLP<br>By:  JAMES T. GROGAN, III, ESQ.<br>600 Travis Street, 58th Floor<br>Houston, Texas 77002<br>(713) 860-7300 |
| | Paul Hastings LLP<br>By;  MATTHEW MICHELI, ESQ.<br>71 South Wacker Drive, Suite 4500<br>Chicago, IL 60606<br>(312) 499-6000 |
| For the Official<br>Committee of Unsecured<br>Creditors: | McDermott Will & Emery LLP<br>By: CHARLES GIBBS, ESQ.<br>2501 North Harwood Street,<br>Suite 1900<br>Dallas, TX 75201-1664<br>(214) 295-8000 |
| | McDermott Will & Emery LLP<br>By:  KRISTIN GOING, ESQ.<br>One Vanderbilt Avenue<br>New York, NY 10017<br>(212) 547-5429 |
| For Generate Lending,<br>LLC: | Kirkland & Ellis LLP<br>By:  ELIZABETH JONES, ESQ.<br>     CHRISTOPHER MARCUS, ESQ.<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 756-2000 |
| For Marathon Digital<br>Holdings: | Weil, Gotshal & Manges LLP<br>By:  ALEXANDER COHEN, ESQ.<br>     JESSICA LIOU, ESQ.<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8020 |
| For the United States<br>Trustee: | Office of United States Trustee<br>By:  JAYSON RUFF, ESQ.<br>515 Rusk Street, Suite 3516<br>Houston, TX 77003<br>(713) 718-4650 |

APPEARANCES (Continued):

| | |
|---|---|
| For MP2 Energy Texas LLC d/b/a Shell Energy | Cokinos Young<br>By:  MARIA BARTLETT, ESQ.<br>Four Houston Center<br>1221 Lamar, 16th Floor<br>Houston, TX 77010<br>(713) 535-5524 |
| For US Digital Mining Texas: | Stichter Riedel Blain & Postler, P.A.<br>By:  SCOTT A. STICHTER, ESQ.<br>110 E. Madison Street, Suite 200<br>Tampa, FL 33602<br>(813) 229-0144 |
| For RK Mission Critical LLC: | Berg Hill Greenleaf & Ruscitti LLP<br>By:  PATRICK M. HAINES, ESQ.<br>1712 Pearl Street<br>Boulder, CO 80302<br>(303) 402-1600 |

1

```
1          (Proceedings commence at 1:30 p.m.)

2               THE COURT:  Good afternoon.  Please have a seat.

3  All right.  On the 1:30 docket, we're here on the Compute North

4  Holdings case, 22-90273.  Electronic appearances have been

5  made.  Let's go ahead with the hearing.

6               Mr. Grogan.

7               MR. GROGAN:  Good afternoon, Your Honor.  James

8  Grogan here from Paul Hastings on behalf of Compute North and

9  the other debtors in the case.

10              THE COURT:  All right.  Go ahead.  Electronic

11 appearances have been made, Mr. Grogan.  Let's move ahead with

12 the hearing.

13              MR. GROGAN:  I'm sorry.  What?  I was going to --

14              THE COURT:  Just go ahead because we've got

15 electronic appearances, so --

16              MR. GROGAN:  Oh, okay.  Fantastic.  Thank you,

17 Your Honor.  So, Your Honor, we're here today on conditional

18 approval.  Well, actually, I -- you know, I think as a matter

19 of just efficiency, why don't we do -- we had an agreed order

20 on US Digital's motion for relief from stay.  I think

21 Mr. Micheli was going to handle that.  And then I can move,

22 once he's done presenting that agreed order --

23              THE COURT:  All right.

24              MR. GROGAN:  -- if I could move to the solicitation

25 procedures motion, which, you know, we're here just on
```

1   conditional approval of the disclosure statement.

2            THE COURT:  Thank you.

3            Mr. Micheli, good afternoon.

4            MR. MICHELI:  Good afternoon, Your Honor.  Matt

5   Micheli, Paul Hastings, on behalf of the debtors.  Actually,

6   Your Honor, this is a motion that was filed by US Digital for

7   relief from stay.  The parties, after initially continuing the

8   objection deadline to work towards a resolution, ultimately the

9   debtors filed an objection.  And then, in the time between

10  filing the objection and today, Your Honor, we have actually

11  managed to resolve all issues.

12           This morning, we filed a proposed form of order at

13  Docket Number 669, which is agreed to between US Digital's

14  counsel and the debtors.  We also have received signoff from

15  the Committee with respect to that order.  Your Honor, with

16  that, we would ask it be approved, but I'll turn it over to

17  Mr. Stichter, who originally had filed the motion on this

18  matter.

19           THE COURT:  All right.  Mr. Stichter, good afternoon.

20  Could I get you to press "five star" one time on your phone,

21  please.  I've got you.  Let me just get it activated.  Good

22  afternoon.

23           MR. STICHTER:  Good afternoon, Your Honor.  This is

24  Scott Stichter, appearing on behalf of US Digital.  We filed

25  our motion to seek relief from the stay to recover our mining

1    equipment.  The equipment is actually now located at the

2    Wolf Hollow facility, although the contract was not assigned to

3    the Wolf Hollow facility.  So we have an agreed form of order

4    that provides for the modification of the stay to retrieve our

5    equipment, rejection of the contract, a deadline to file

6    rejection damages; and then again, since it is at the Wolf

7    Hollow facility, it is subject to the rights of the owner of

8    the Wolf Hollow facility with respect to our ability to recover

9    the equipment.

10            THE COURT:  All right.  The proposed order looks

11   consistent with the type of relief that people were on fair

12   notice was being sought.  Accordingly, we can take it up today

13   without further notice.

14            Is there any party that objects to entry of the order

15   that was filed at 36 -- excuse me -- 669?

16       (No audible response)

17            THE COURT:  All right.  I'm going to sign the agreed

18   order.  This is fairly noticed out, no objections other than

19   from the debtor.  That's been resolved.  It will be docketed

20   this afternoon.

21            Mr. Laws, I'm going to send it to the work group.

22            All right.  Where do y'all want to go next?

23            MR. GROGAN:  Thank you, Your Honor.  James Grogan

24   again for the debtors.  Your Honor, the next item on the agenda

25   is the debtors' solicitation motion.  This motion was filed at

1   Docket Number 578 on November 23rd.  We have received one

2   objection to it as of yesterday from the Committee.

3           Before I get into the nuts and bolts of the Committee

4   objection, let me just give the Court a quick overview of what

5   we've done and there are some changes that we've implemented in

6   an effort to make the entire proposal more palatable, to the

7   Committee in particular, but also to address concerns raised by

8   the U.S. Trustee informally, as well as Generate.

9           So, Your Honor, as you're aware, the case since we

10  commenced it has been focused largely on asset sales.  We have

11  successfully closed several separate sales throughout the case.

12  We've raised from those sales proceeds of approximately

13  $15 million at this point.  This is a remarkable result for

14  this case, where we were literally on the verge of cash zero

15  when we filed the case, with a projected administrative

16  insolvency date at the beginning of November.

17          At this point, based on our current projections,

18  under our liquidation analysis, we believe that we will have

19  approximately 18- or $19 million net of all administrative

20  expenses and priority claims and secured claims to pay out to

21  the unsecured creditors.

22          This is a meaningful recovery.  Really, I mean, the

23  percentage recovery is going to depend largely on how

24  successful we are in addressing some claims.  I will note that,

25  once the bar date passed, the claims amount was about

1   466 million.  In our view, that is grossly inflated, product of

2   a lot of duplicate claims, some large claims filed by

3   recipients of stock awards and things like that, that we think

4   would be procedurally disallowable.

5       I think once you get rid of what I'll call the

6   "low-hanging fruit," we should be down to somewhere in the

7   vicinity of 135 million in claims.  At that point, we will, you

8   know, have to do a little more homework and start reconciling

9   invoices and things like that to start driving the number even

10   further down.

11      Our scheduled claims, just for reference, were about

12   27 million.  So, you know, the realistic delta here is

13   somewhere between 135 and 27, depending on how you account for

14   different items.

15      But, in any event, you know, we're looking at a

16   minimum we think just below 10 percent recovery.  And if we're

17   successful in bringing the claims down, it could be as high as

18   64 percent recovery to the unsecured creditors.

19      Your Honor, the plan also structurally is just

20   presented as a global peace accord.  We're offering releases to

21   all of the creditors who are willing to give a release.  So

22   this is a -- it's a plan premised on mutual releases.  I know

23   the Committee takes issue with that.  They basically want to

24   strip all the releases out, preserve all preference actions,

25   all fraudulent transfer actions, et cetera, against, you know,

1  all stakeholders.

2            We disagree with that.  I mean, we can -- you know, I

3  view that as a confirmation issue, ultimately, but --

4            THE COURT:  I think it's a confirmation issue as to

5  whether that should be approved, but I think it's a disclosure

6  statement issue as to whether you have disclosed the claims

7  that you're going to be releasing.  Have you done that?

8            MR. GROGAN:  Well, I think we have.  I mean, if you

9  look at the disclosure statement --

10            THE COURT:  Where?  Where?

11            MR. GROGAN:  -- there are six pages of disclosures in

12  there.

13            THE COURT:  Yeah, but none of them say what your

14  claims are against the people you're releasing.  You said read

15  this page, this page, and I read them all.

16            MR. GROGAN:  Yeah.

17            THE COURT:  None of them say here are the claims we

18  have, we're going to release those, and here's why.  The only

19  thing you say about "here's why" is you want peace in the

20  world.  But I think that -- I wouldn't vote for peace in the

21  world until I knew what war meant, right?  I mean, if war means

22  that you're going to double the collections, then we should say

23  that.  I don't see where that analysis is undertaken.

24            MR. GROGAN:  So, you know, Your Honor, I am planning

25  to submit extensive evidence on that.

1          THE COURT:  It has to be in the DS.

2          MR. GROGAN:  I'm sorry.  What?

3          THE COURT:  Has to be in the disclosure statement.

4    That's what the disclosure statement is about.  People need to

5    know whether to vote for the plan or not.

6          MR. GROGAN:  Well --

7          THE COURT:  How do I know whether to vote for it if I

8    don't know the value of the claims that you have?

9          MR. GROGAN:  The value -- well, the value of the

10   claims, I mean, we're proposing to --

11         THE COURT:  Under your plan, the value is zero

12   because you're --

13         MR. GROGAN:  Yeah.

14         THE COURT:  -- releasing them all.

15         MR. GROGAN:  Yeah.

16         THE COURT:  But are you releasing a $20 million

17   preference claim?  I mean, I don't know what you're releasing,

18   and a voter should have the right to know what it is that

19   you're releasing to see --

20         MR. GROGAN:  Well --

21         THE COURT:  -- if they agree with your view that

22   peace is better than non-peace.

23         MR. GROGAN:  Your Honor, I mean, there are retained

24   causes of action.  So what we were planning to do, and this

25   will be filed before the voting deadline, is prepare -- we will

1  have a list of retained causes of action, a schedule that goes

2  into the plan supplement, that will identify the causes of

3  action that we believe are valuable and worth pursuing.

4          THE COURT:  You need to identify the ones you're

5  releasing and --

6          MR. GROGAN:  Well, the ones we're releasing, I would

7  submit, are the ones that aren't worth pursuing.

8          THE COURT:  Well, then, you need to identify them and

9  say why they're not worth pursuing.  I don't see where that's

10  done.

11         The concern I've got is the way traditional approval

12  works is, if I get down to the final hearing and your

13  disclosure wasn't adequate, I have to deny confirmation, right?

14  This isn't a minor matter if we do a conditional approval and

15  mess it up.

16         MR. GROGAN:  Yeah.

17         THE COURT:  So I'm sympathetic to the fact that he

18  filed his objection late.  He may have a reason why he didn't,

19  but not even getting into that.  But -- I don't care how late

20  it is.  You don't want to go to confirmation where somebody

21  could argue that the disclosure wasn't adequate.

22         I've also got to tell you that yesterday in the Talen

23  case -- I don't know if you heard what was going on in Talen.

24         MR. GROGAN:  I did.  I heard about the -- on

25  exculpation?

1          THE COURT:  Yeah.  I think that should work here, as

2    well.

3          MR. GROGAN:  I was planning on using a similar

4    approach actually, at least in the confirmation order.  But as

5    far as -- we actually did get comments from the U.S. Trustee's

6    Office, which we adopted.  So I have added a self-limiting

7    element here, which --

8          THE COURT:  I really don't like that.  Look, the

9    Fifth Circuit has now told us what the limits are.

10         MR. GROGAN:  Yeah.

11         THE COURT:  And to say, okay, we're going to give it

12   to all these people; but, by the way, 14 of them don't count

13   because we're only doing this to the maximum extent permitted

14   by law.  Let's say what we're doing, so that people can read it

15   and tell.

16         And I can give you another hearing quickly, once you

17   tell me these two -- I think those are the only two issues that

18   I'm going to raise.  If you'll tell me when you want to come

19   back, we can come back next week and get this done.

20         MR. GROGAN:  Okay.  Yeah, could you give me over the

21   weekend to add additional disclosure on the --

22         THE COURT:  Absolutely.

23         MR. GROGAN:  And then we'll come back on Tuesday, if

24   that works?

25         THE COURT:  I'll look at Tuesday, but that probably

1    works.

2            Mr. Gibbs, you can tell I've read your objection, but

3    do you have any problem with allowing him to explain what he's

4    releasing and then fixing the exculpation?  I'm not sure if

5    you're aware of what we did in Talen or not.

6            MR. GIBBS:  (Indiscernible) and we had a concern

7    about the proposed fix to the -- that we considered

8    unconfirmable --

9            THE COURT:  Why don't you come on up, because I'm

10   having trouble hearing you.

11           MR. GIBBS:  Sorry.  I don't know if by responding to

12   your question you're wanting me to dispose or dispense with

13   anything else we wanted to raise to the Court, but I have no

14   problem with giving --

15           THE COURT:  No.  You can.  But I want to know

16   whether, as to those two matters, does that cause you any

17   heartburn to let him identify what he's releasing and then not

18   have the broad exculpation but to include an 1125 provision?

19           MR. GIBBS:  I have no problem with giving him the

20   opportunity to try to fix what you've recognized, as did we, as

21   critical infirmities in their motion and their proposed

22   disclosure statement.

23           THE COURT:  What else do you have problems with?

24           MR. GIBBS:  It's principally that, but I also need

25   to, I think, respond to a couple things.  One, they -- and

1   Your Honor picked up on one.  They filed a response to our

2   objection a few minutes ago and indicated that they believed

3   our objection was untimely, and quoted to a local rule with

4   respect to responses to requests for conditional approval of

5   disclosure statements.

6          Your Honor, the motion that we're here on is an

7   emergency motion filed by the debtor.  And the first page of

8   that pleading says that any party objecting to the relief needs

9   to file a response prior to the commencement of the hearing.

10  So we followed exactly what they said in the first page of

11  their pleading.  We don't believe our objection is untimely at

12  all, procedurally.

13          THE COURT:  Fair enough.

14          MR. GIBBS:  The other thing that, frankly, I don't

15  need to raise to the Court, because it's, I think, it's

16  offensive.  In their response, they basically tainted all the

17  Committee members, or at least three of them, and by inference

18  the professionals advising the Committee.

19          The Committee took the position upon recommendation

20  of their counsel to oppose the conditional approval of the

21  disclosure statement.  And I just want to remind the Court as

22  to what's happened in this case.  We were here on every single

23  sales motion.  We supported every single sales motion, all done

24  on expedited basis, and I think the Court commented and

25  commended us on more than one occasion --

```
 1              THE COURT:  That's correct.
 2              MR. GIBBS:  -- for taking a commercial approach in
 3   this case.  We have never opposed anything that the debtor has
 4   done.
 5              With good reason, we have opposed for the first time
 6   in this case the relief that they've requested, because
 7   currently they're asking for approval of a disclosure statement
 8   to be sent to creditors soliciting their vote with, as the
 9   Court just pointed out, no explanation of the value of the
10   claims being dismissed, released, no explanation of any
11   investigation that they may have done.
12              And because we raised that, we felt compelled, if the
13   Court was going to go forward and approve this, that we needed
14   to be able to voice our opposition in a submission to the
15   creditors.
16              And the reply we got today I think is unfair and
17   inappropriate and it's offensive, because it takes -- it
18   questions the integrity of the hardworking Committee members
19   and said that their opposition should be in some way not
20   considered by the Court, or taken with a grain of salt.  And I
21   just think it's --
22              THE COURT:  I considered it, so --
23              MR. GIBBS:  I'm sorry?
24              THE COURT:  I said I considered it.  I think you can
25   tell I considered what you wrote.
```

1          Unless I hear an objection or someone else that wants

2    to raise something -- I guess I should ask the U.S. Trustee

3    whether you have a problem with narrow exculpation in

4    accordance with <u>Highland Capital</u>, but including, like we did

5    yesterday from <u>Talen</u>, the 1125(e) language verbatim; and that

6    could extend broadly, to the extent people act in good faith

7    and we'll have to have that proof, but it won't be an

8    exculpation.  It will be an 1125(e) order.

9          MR. RUFF:  Your Honor, I don't have authority to do

10   exactly what we did in <u>Talen</u>.  That was the facts and

11   circumstances of that case.  But I think something along those

12   lines.  And to be clear, we did provide comments to -- with

13   solicitation in mind only.  We still reserve all rights to

14   actually make further comments and objections to the plan

15   itself.

16         THE COURT:  I know, and sort of everyone does, which

17   is why I like --

18         MR. RUFF:  Yeah.

19         THE COURT:  -- getting these sort of cleared up, up

20   front, because I really don't want to be at a confirmation

21   hearing where I have to deny confirmation because there was

22   something material missing.

23         MR. RUFF:  Your Honor, we'd be more than happy to

24   work with them, as well, on the language.  If we can get

25   agreement on the language, and similar along the lines what was

1    done in Talen, then that would go a long ways.

2         THE COURT:  Okay.  I'm not saying we always need to

3    do Talen every time --

4         MR. RUFF:  Right.

5         THE COURT:  -- but it seems to me that when I have a

6    debtor that wants broad exculpation, I don't think I can do

7    that.  But using 1125(e), which was not my idea, right, it was

8    somebody else's idea yesterday, of using that with a gatekeeper

9    function protects people that have acted in good faith but may

10   be in a slightly narrower range than a full exculpation.  But

11   the Fifth Circuit has never given any indication that -- and

12   nor would they, that 1125(e) doesn't apply in bankruptcy cases.

13        MR. RUFF:  We have, of course, no issue parroting the

14   code --

15        THE COURT:  That's all I'm talking about, yeah.

16        MR. RUFF:  -- into any sort of solution.  And just

17   with respect to the exculpation, I do feel like we're sort of

18   treading a little bit of new ground here in light of the

19   Highland decision, so --

20        THE COURT:  I think we are.  I think we are.  I was

21   just so pleased that somebody came up with the idea yesterday.

22   And I guess I pushed it, but it wasn't my idea, right?

23        MR. RUFF:  Yeah, it was --

24        THE COURT:  It was a good idea.

25        MR. RUFF:  Always -- I'm always happy to be around

1  other people who are smarter than myself to come up with such

2  solutions and be creative, Your Honor, so --

3          THE COURT:  Well, that's the way I felt about it

4  yesterday, as well.

5          So, Mr. Grogan, you're coming in on the 20th at two

6  o'clock.  Should we just continue this to that hearing so

7  you're only coming over once?

8          MR. GROGAN:  I think that would be perfect.  That

9  will give us a chance.  We'll work on additional disclosures

10  and drill down on what we think is actually being released.

11  And which, you know, to -- I just want to prepare everybody.

12  It's not just debtor side employees or directors and officers.

13  We're also, you know, offering to release preference actions

14  against creditors, potential fraudulent transfer, you know.

15  But we'll cover the gamut and --

16          THE COURT:  Yeah.  We just need to see what it is

17  that's being released, I think.

18          MR. GROGAN:  Right.

19          THE COURT:  And with respect to the exculpation, if

20  you -- were you actually listening yesterday?  Because a lot of

21  this was oral, and I want to go back over it, if I could, just

22  for a minute.

23          MR. GROGAN:  That would be wonderful.  I actually

24  learned about it through Reorg Research, so I may not have

25  gotten the full picture.

1            THE COURT:  Well, they're usually better --

2            MR. GROGAN:  But they usually do a pretty good job.

3            THE COURT:  -- better at remembering than I am, but

4    here's the deal.  I don't think, under <u>Highland Capital</u>, that

5    we can give exculpations broadly across the range of officers

6    and directors and lenders and professionals in a case.  I think

7    all that we can give would be limited exculpations, and they

8    defined what those are.

9            But one of the teams yesterday said, well, under

10   1125(e), we are protected, so long as we act in good faith,

11   from things like solicitation of securities and plan formation.

12   And what I said was I don't want to interpret 1125(e) at this

13   point because who knows what the particular matter that will

14   come before us is, and whether it fits under 1125(e) or not.

15   Unless somebody can define one, we aren't going to know.  But I

16   don't have any problem literally quoting 1125(e) and saying

17   that applies broadly across a broad range of people, because

18   that's what the code itself says.  So we incorporate that into

19   the plan and the confirmation order.

20           And it took -- it may have been their idea, but it

21   then took some cajoling by me to get them to do it.  But in the

22   end, they did do it and adopted their own idea.  And it seems

23   to me the right way to go.  It's consistent with Fifth Circuit

24   law and also protects people that are acting in good faith in

25   the manner that Congress dictated.  And I think, so long as we

1   use the precise language from 1125(e), that should not draw any

2   real problem.

3            MR. GROGAN:  Right.

4            THE COURT:  And the U.S. Trustee -- and I

5   complimented them for this yesterday -- didn't object.  They

6   said no, that seems like a reasonable solution yesterday.  And

7   he's right.  I mean, every case is different.  It certainly may

8   not be a reasonable solution in this case, and I'm not trying

9   to lock him into it here.  But the concept was reasonable to

10  them, and they're frankly the ones that would appeal that kind

11  of a thing.

12           So if they think this is legal, the way that I do,

13  given the argument that got made to me, seems to be a good

14  solution that fits squarely within what Highland Capital

15  requires.

16           But the hard part is don't call it part of your

17  exculpation because it isn't.

18           MR. GROGAN:  Right.

19           THE COURT:  And quote the language precisely.  And

20  people just need to live with that.  That's what's authorized,

21  and that's the limit I think of Highland Capital.  Maybe you

22  can come up with some other provision that none of us have

23  really been thinking about, but it seemed to work pretty well

24  in that case.

25           MR. GROGAN:  Yeah.  For what it's worth, and we'll

1  spend some time studying the issue and your ruling in <u>Talen</u>,

2  but for what it's worth, I read <u>Highland Capital</u> to permit some

3  exculpation so long as parties are acting in a fiduciary

4  capacity during the case, but it's --

5        THE COURT:  It's hard to say whether -- is anyone

6  acting in a fiduciary capacity or only a narrow range of people

7  acting in a fiduciary capacity.  And I don't think we need to

8  cross that bridge.

9        MR. GROGAN:  Yeah.  Okay.

10       THE COURT:  So the audio of the hearing is already up

11  on the <u>Talen</u> docket sheet, if you want to download it and

12  listen to it.

13       MR. GROGAN:  Okay.  Thank you, Your Honor.

14       THE COURT:  And you know, my experience -- I don't

15  subscribe to Reorg Research, but usually they do get things

16  right, so my guess is that you probably already read more than

17  I've told you.

18       Okay.  Anything else that we can do today?  Anyone on

19  the phone have any problems with this?

20    (No audible response)

21       THE COURT:  Okay.  We're going to go ahead and recess

22  until two o'clock.  A revised disclosure statement will be

23  filed not later than five o'clock p.m. on the 19th.  Is that

24  fair?

25       MR. GROGAN:  Is that Monday?

```
1              THE COURT:  That's Monday.

2              MR. GROGAN:  We can hit that.

3              THE COURT:  Yeah.  Five o'clock on the 19th.

4    Mr. Gibbs has to stay awake all night to read for the afternoon

5    on the 20th.

6              MR. GIBBS:  Eleven nights in a row.

7              THE COURT:  All right.  Thank you all.  We'll recess

8    until two o'clock.

9              MR. GROGAN:  Thank you, Your Honor.

10             MR. GIBBS:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12        (Proceedings concluded at 1:53 p.m.)

13                            * * * * *

14

15                 C E R T I F I C A T I O N

16

17        I, Michelle Costantino, court-approved transcriber,

18   hereby certify that the foregoing is a correct transcript from

19   the electronic sound recording provided for transcription and

20   prepared to the best of my ability.

21

22

23   _____         DATE:  January 18, 2023

24   MICHELLE COSTANTINO, AAERT NO. 589

25   ACCESS TRANSCRIPTS, LLC
```

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)