**<u>Exhibit F</u>**

# COMPUTE NORTH HOLDINGS, INC.
## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (this "<u>Agreement</u>"), is made this [__]th day of February, 2023 by and among (i) the Debtors in the jointly administered chapter 11 cases (the "<u>Chapter 11 Cases</u>") pending in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") under Case Number 22-90273 (MI),[1] (ii) the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>"), (iii) [Ryan Mersch] (the "<u>Litigation Trustee</u>"), and (iv) the undersigned members of the Plan Oversight Committee.  Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the [*Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates*, dated December 21, 2022] [Doc. 723] (including all exhibits and schedules thereto, as may be further modified, supplemented and amended from time to time in accordance with its terms, the "<u>Plan</u>").

## RECITALS

WHEREAS, on February ___, 2023, the Bankruptcy Court entered an order confirming the Plan [Doc. __] (the "<u>Confirmation Order</u>");

WHEREAS, the Litigation Trust is established pursuant to the Plan as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business except, to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan;

WHEREAS, the Litigation Trust is established for the purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries, and subject to the oversight of the Plan Oversight Committee; and

WHEREAS, subject to the terms and conditions of this Agreement, the Litigation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, with the Beneficiaries treated as the grantors and owners of the Litigation Trust.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Debtors, the Committee, and the Litigation Trustee, agree as follows:

---

[1]	The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); and Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

ARTICLE I

DEFINITIONS

Section 1.01   Definitions.

"*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502, 503 or 507 of the Bankruptcy Code, to the extent applicable.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to disallowance under section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

"*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid and recover a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

"*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Southern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28

U.S.C. § 2075, as applicable to these Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

"*Beneficiary*" means all holders, following the Effective Date, of Allowed and unpaid Claims and Interests in Classes 3, 4, 7 and 8, irrespective of whether such Claims and Interests become Allowed before or after the Effective Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

"*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

"*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

"*Class*" means a class of Claims or Interests as set forth in Section 3 of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

"*Confirmation Date*" means the date upon which the Bankruptcy Court entered the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Order*" has the meaning ascribed to it in the Recitals.

"*Disputed Claim*" means a Claim that has not been Allowed.

"*Distribution*" means a distribution of property pursuant to, and as defined in, the Plan, to take place as provided for under the Plan.  The term "*Distribute*" shall have a correlative meaning.

"*Distribution Agent*" means any Entity or Entities chosen by the Plan Administrator with respect to Distributions to Holders of Claims and Interests pursuant to Section 6 of the Plan.

"*Distribution Date*" means any date that is: (a) the Initial Distribution Date; (b) any Interim Distribution Date; or (c) the Final Distribution Date, as the context requires.

"*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Section 10 of the Plan have been satisfied or waived in accordance with Section 10 of the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

"*Exchange Act*" means the Securities and Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order..

"*General Unsecured Claim*" means any Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Claim; (d) a Parent GUC Claim, (e) an Other Priority Claim; (f) an Intercompany Claim; or (g) a Claim subordinated under section 510(b) of the Bankruptcy Code.  For the avoidance of doubt, "General Unsecured Claim" includes the amount of any Claim that is otherwise a Secured Claim to the extent the value of the collateral securing such Claim is less than the amount of such Claim, as determined in accordance with section 506(a) of the Bankruptcy Code.

"*Initial Distribution Date*" means, except as set forth in the Plan, the first Business Day at least 60 days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Plan Administrator, to make initial Distributions under the Plan.

"*Investment Company Act*" means the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

"*Litigation Trust*" means the trust created pursuant to this Agreement and Section 4.2.6 of the Plan to, among other things, accept, preserve, receive, collect, manage, liquidate, administer, prosecute, settle and protect, and/or distribute, as applicable, the Causes of Action, including the

-4-

Retained Causes of Action and the proceeds thereof (in coordination with the Plan Administrator and any professionals or service providers retained by the Plan Administrator, including a Distribution Agent) in accordance with this Agreement, the Plan Administrator Agreement and the Plan.

"*Litigation Trust Assets*" means the Causes of Action and Retained Causes of Action and any proceeds thereof.

"*Plan Oversight Committee*" means the committee appointed pursuant to Section 7.2 of the Plan and Article VI of this Agreement to oversee the activities of the Litigation Trust and the Litigation Trustee.

"*Net Recoveries*" means gross proceeds, if any, recovered in connection with any settlement, judgment or other resolution of a Retained Cause of Action, net of any legal fees and expenses incurred in connection with obtaining such settlement, judgment or other resolution, including any contingency fees.

"*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means September 22, 2022.

"*Retained Causes of Action*" means the Causes of Action identified in the Schedule of Retained Causes of Action.

"*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action of the Debtors included in the Plan Supplement.

"*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

"*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder

"*Trust Indenture Act*" means the Trust Indenture Act of 1939, as amended, and the rules and regulations promulgated thereunder.

Section 1.02   Interpretation.  The capitalized terms used herein shall have their respective meanings as set forth in Section 1.01 of this Article.  Terms not defined shall have their meanings given to them by the Bankruptcy Code, the Bankruptcy Rules, or the Plan, as applicable, unless the context requires otherwise.  It the event that terms are not defined in the foregoing authorities, the terms shall be given their ordinary dictionary meaning consistent with modern usage.  The use of the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Agreement as a whole and not to any particular article, section, subsection, or clause contained herein.  Words denoting the singular in number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings and table of contents

contained herein are for convenience only and shall not limit or otherwise modify the Agreement. All references to docket numbers of documents filed in these Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system.

ARTICLE II

ESTABLISHMENT OF THE LITIGATION TRUST

Section 2.01   Establishment of the Litigation Trust.  Pursuant to the terms and conditions of the Plan and the Confirmation Order, the Debtors, the Committee and the Litigation Trustee hereby establish the Litigation Trust on behalf of the Beneficiaries effective as of the Effective Date of the Plan.  The sole purpose of the Litigation Trust is to receive the Litigation Trust Assets and maximize the net present value of Distributions to the Beneficiaries, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Litigation Trust shall engage in activities only as reasonably necessary to, and consistent with, its sole purpose.

Section 2.02   Transfer and Title to Assets.  The Litigation Trustee shall hold the Litigation Trust Assets in the Litigation Trust for the benefit of the Beneficiaries, subject to the terms and conditions of the Plan, the Confirmation Order and this Agreement.  For all federal income tax purposes, all parties (including the Debtors, the Litigation Trustee, and the Beneficiaries) shall treat the transfer of the Litigation Trust Assets allocable to the Beneficiaries as of the Effective Date as a transfer to such holders of their proportionate interests in the Litigation Trust Assets followed by a transfer by such holders of such interests in the Litigation Trust Assets to the Litigation Trust in exchange for beneficial interests in the Litigation Trust.  Accordingly, the Beneficiaries shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets pursuant to the terms of the Plan.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

Section 2.03   Funding the Litigation Trust.

(a)   Litigation Trust Assets.  On the Effective Date, the Litigation Trust Assets and the Debtors' rights, title and interest to such Litigation Trust Assets shall vest in the Litigation Trust, to be administered by the Litigation Trustee in accordance with the Confirmation Order and the Plan including, without limitation, Section 4.2.6 therein, and this Agreement.  The Litigation Trust Assets shall be vested to the Litigation Trust free and clear of all Liens, Claims, charges or other encumbrances or interest in accordance with Article 4.2.3 of the Plan.  The Litigation Trust shall reduce to Cash or otherwise liquidate the Causes of Action and Retained Causes of Action and distribute the proceeds to Holders of Claims and Interests in accordance with the Plan and this Agreement.  The costs and expenses incurred by the Litigation Trust on and after the Effective Date shall be paid from the proceeds of the Causes of Action or Retained Causes of Action and in accordance with the Wind-Down Budget and this Agreement.  The Litigation Trust Assets and the Debtors' rights, title and interest to such Litigation Trust Assets may not be transferred or assigned by the Litigation Trust to any party.

-6-

(b)    Retained Causes of Action.  The Litigation Trust's rights to commence, prosecute, or settle Causes of Action or Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

Section 2.04   Valuation of Trust Assets.    The Litigation Trustee shall utilize and make available to the Beneficiaries when and as necessary to perform the Litigation Trustee's duties in Article VIII herein and from time to time, to the extent relevant, a good-faith valuation of the Litigation Trust Assets.  For purposes of any valuation of the Litigation Trust Assets as of the Effective Date, the Causes of Action and Retained Causes of Action shall be valued at [$100] in the aggregate, which valuation shall be used consistently by all parties (including the Litigation Trustee and the Beneficiaries) for all federal income tax purposes; provided, that, the Litigation Trustee may, in advance of the preparation of any tax reporting for 2022 provided to the Beneficiaries, update this valuation of the Causes of Action and Retained Causes of Action as of the Effective Date if the Litigation Trustee determines, in its sole discretion, such an update is necessary and in the best interest of the Beneficiaries.  As a result of the inherent difficulty of valuing litigation assets that include the Causes of Action and Retained Causes of Action, in determining the aggregate value of the Litigation Trust Assets, the foregoing valuation ascribes values (nominal or otherwise) to specific litigation assets that shall be inadmissible as evidence in such litigation and shall not be relied upon by third parties for purposes of determining the likelihood of success on the merits, damages, or otherwise.  Neither the Litigation Trust, the Litigation Trustee nor the Litigation Trustee's professionals shall incur any liability based on the accuracy, inaccuracy, or disclosure of any valuation performed or provided by the Litigation Trustee pursuant to this Section 2.04 to the Beneficiaries or any other party.

Section 2.05   Rights of Debtors.  The Debtors and the Reorganized Debtors, as applicable, shall have no claim to, right, or interest in, whether direct, residual, contingent or otherwise, the Litigation Trust Assets once such assets have been vested to the Litigation Trust in accordance with the terms and conditions of the Plan, the Confirmation Order and this Agreement.  In no event shall any part of the Litigation Trust Assets revert to or be distributed to any of the Debtors or any of the Reorganized Debtors, as applicable.

Section 2.06   Books and Records; Authorization.  The Litigation Trustee shall maintain books and records relating to the assets and income of the Litigation Trust, the payment of expenses and liabilities of, and claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be reasonably necessary to enable him or her to make full and proper accounting in respect thereof, and to comply with applicable provisions of law.  Members of the Plan Oversight Committee shall have the right, upon not less than twenty (20) days' prior written (with email being sufficient) notice delivered to the Litigation Trustee, to inspect such books and records during normal business hours reasonably acceptable to the Litigation Trustee, subject to entering into a confidentiality agreement satisfactory in form and substance to the Litigation Trustee.  Except as provided in Section 8.01 hereof, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to (i) the administration of the Litigation Trust, or (ii) as a condition for making any payment or Distribution out of the Litigation Trust Assets.

## ARTICLE III

## THE LITIGATION TRUSTEE

Section 3.01    Appointment.  Pursuant to the Plan and Confirmation Order, [Ryan Mersch] has been designated to serve as the initial Litigation Trustee, and he accepts such appointment and agrees to serve in such capacity as of the Effective Date.  The Litigation Trustee shall be deemed to be appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Section 3.02    Generally.  The Litigation Trustee's power and authority are exercisable solely consistent with, and in furtherance of, the purposes of the Litigation Trust.  The Litigation Trustee shall have the authority to bind the Litigation Trust, but shall for all purposes hereunder be acting in the capacity as Litigation Trustee, and not individually.  The Litigation Trustee shall owe a fiduciary duty to the Beneficiaries.

Section 3.03    Scope of Authority.  Subject to the oversight and direction of the Plan Oversight Committee, and the specific approval of the Plan Oversight Committee for those matters set forth in Section 6.02 of this Agreement, and the provisions of the Plan, the Confirmation Order and this Agreement, the Litigation Trustee shall hold the authority to:

(a)    perform all actions and execute all agreements, instruments and other documents necessary to implement the Plan as it pertains to the Litigation Trust and the Litigation Trust Assets;

(b)    establish, maintain and administer appropriate accounts on account of the Litigation Trust and any appropriate reserves in the name of the Litigation Trust (which may be done by book entry) on account of the fees, costs and expenses associated with the investigation and prosecution of the Causes of Action and Retained Causes of Action, and costs associated with the administration of the Litigation Trust, including such matters as the Litigation Trustee deems reasonably necessary or appropriate, subject in each case to the Wind-Down Budget;

(c)    accept, preserve, receive, collect, manage, liquidate, administer, prosecute, settle and protect, and/or distribute, as applicable, the Causes of Action and Retained Causes of Action and the proceeds thereof (directly or through his or her professionals, or by coordination with the Plan Administrator and any professionals or service providers retained by the Plan Administrator, including a Distribution Agent);

(d)    consult and coordinate with the Plan Administrator concerning potential objections to claims asserted by any potential defendant in connection with the Litigation Trust Assets;

(e)    deliver the proceeds of any Causes of Action or Retained Causes of Action to the Plan Administrator for distribution in accordance with the Plan;

(f)    pursue, investigate, institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Causes of Action and Retained Causes of Action in any court or other tribunal without any further order of the Bankruptcy Court;

-8-

(g)      without limiting the generality of the rights and powers set forth in this Section 3.03 and subject to all applicable rules, regulations, procedures, defenses and objections, take discovery in connection with the investigation and prosecution of the Causes of Action and Retained Causes of Action, whether through depositions, oral examinations, document requests, interrogatories and/or other discovery devices provided for under applicable law, and exercise any and all investigatory powers provided for under Rule 2004 of the Bankruptcy Rules to the extent authorized to do so by order of the Bankruptcy Court or other court of competent jurisdiction;

(h)      retain, compensate and employ professionals to represent the Litigation Trust on customary terms reasonably acceptable to the Litigation Trustee without any requirement of approval by the Bankruptcy Court;

(i)      subject to Section 8.01(e)(i) of this Agreement, file all tax returns with respect to the Litigation Trust consistent with being a grantor trust under applicable federal income tax law and paying taxes properly payable by the Litigation Trust, if any, and making Distributions to Beneficiaries net of any such taxes;

(j)      purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs deemed necessary or advisable by the Litigation Trustee, including, without limitation, to insure the acts and omissions of the Litigation Trustee, and if appropriate, the Plan Oversight Committee, subject to the Wind-Down Budget;

(k)      make any and all necessary filings in accordance with applicable law, statute, or regulation;

(l)      in reliance upon the Claims Register maintained in the Chapter 11 Cases (which the Litigation Trustee shall have the absolute right to rely on as accurate), maintain appropriate books and records, including a register evidencing the beneficial interest in the Litigation Trust held by each of the Beneficiaries;

(m)      respond to inquiries by the Beneficiaries;

(n)      dissolve the Litigation Trust in accordance with the terms of this Agreement; and

(o)      exercise such other powers as may be vested in or assumed by the Litigation Trust or the Litigation Trustee pursuant to the Plan, the Confirmation Order and this Agreement, or as may be necessary, proper, and appropriate to carry out the provisions of the Plan.

Section 3.04  Limitations.

(a)      The Litigation Trustee shall not be, and is not, authorized to engage in any trade or business with respect to the Litigation Trust Assets, and shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  All actions taken by the Litigation Trustee shall be consistent with the expeditious but orderly liquidation of the Litigation Trust Assets as is required by applicable law and consistent with the treatment of the Litigation Trust as a liquidating trust under Treasury Regulation section 301.7701-4(d).

(b)     In all circumstances, the Litigation Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall consult with and, if required, obtain the approval of the Plan Oversight Committee, in each case, as the same is provided for pursuant to the terms of this Agreement.

(c)     The Litigation Trustee shall liquidate and convert to Cash the Litigation Trust Assets in an expeditious but orderly manner, facilitate timely Distributions, and not unduly prolong the duration of the Litigation Trust.

(d)     The Litigation Trustee may not seek to have the Bankruptcy Court expand its role beyond that set forth in the Plan, the Confirmation Order and this Agreement, unless he or she has the unanimous consent of the Plan Oversight Committee and the expansion is necessary to satisfy a need of the Litigation Trust.

Section 3.05   Discretion.  Subject to the express provisions of this Agreement, the Plan and the Confirmation Order, the Litigation Trustee shall, with the approval of the Plan Oversight Committee pursuant to Section 6.02 of this Agreement, have discretion to pursue, or not pursue, the Causes of Action and Retained Causes of Action as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Litigation Trust.  Subject to the express provisions of this Agreement, the Litigation Trustee may incur any reasonable and necessary expenses to be paid from the Litigation Trust Assets pursuant to the terms of the Confirmation Order and the Plan, and consistent with the Wind-Down Budget, in liquidating and converting the Litigation Trust Assets to Cash.  Neither the Litigation Trustee nor any successors or assigns shall fund, or be obligated to fund (whether directly or indirectly), the costs of pursuing any of the Causes of Action or Retained Causes of Action.  No person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Litigation Trustee in connection with the protection, conservation, or disposition of the Litigation Trust Assets.

Section 3.06   Prosecution of Litigation Trust Causes of Action.  After the Effective Date, only the Litigation Trustee, with the approval of the Plan Oversight Committee, shall have authority to maintain, prosecute, settle, dismiss, abandon, or otherwise dispose of the Causes of Action and Retained Causes of Action.  The Litigation Trustee, with the approval of the Plan Oversight Committee, may enter into and consummate settlements and compromises of the Causes of Action and Retained Causes of Action without notice to, or approval by, the Bankruptcy Court.

Section 3.07   Retention of Professionals.  Subject to the approval of the Plan Oversight Committee, the Litigation Trustee may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Chapter 11 Cases) to assist in its duties as Litigation Trustee (including the prosecution of the Causes of Action or Retained Causes of Action) on such terms as the Litigation Trustee deems appropriate (including, without limitation, on a fee or a contingency basis) without Bankruptcy Court approval.

Section 3.08   Other Activities.  The Person or entity serving as the Litigation Trustee, other than in his or her capacity as such, shall be entitled to perform services for and be employed by third parties.

Section 3.09   <u>Liability of Litigation Trustee and its Agents</u>.   Except as otherwise specifically provided herein, neither the Litigation Trustee, nor the employees, professionals, agents, and representatives of the Litigation Trust or the Litigation Trustee (all of the foregoing, the "<u>Covered Persons</u>"), shall be held personally liable for any claim asserted against any of them or the Litigation Trust.   Without limiting the generality of the foregoing, none of the Covered Persons shall be liable with respect to any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by a Final Order to be due to their own fraud, gross negligence, or willful misconduct.   All Persons dealing with the Litigation Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee in carrying out the terms of this Agreement, the Plan or Confirmation Order, and, subject to the preceding sentence, none of the Covered Persons shall have any personal obligation to satisfy any such liability.   Nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Litigation Trustee of any of the liabilities, obligations or duties of the Debtors or Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Litigation Trustee to assume or accept any such liability, obligation or duty.

Section 3.10   <u>Non-Liability for Acts of Others</u>.   Except as expressly provided in this Agreement, the Plan or the Confirmation Order, neither the Litigation Trust nor the Litigation Trustee shall assume any of the liabilities, obligations or duties of the Debtors or the Beneficiaries. The Litigation Trustee may accept and rely upon any accounting made by or on behalf of the Debtors and any statement or representation made by the Debtors or its agents and professionals as to the assets comprising the Litigation Trust Assets, the Disputed Claims or as to any other fact bearing upon the creation of the Litigation Trust, so long as it has a good faith basis to do so.   Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the assets comprising the Litigation Trust Assets, the Disputed Claims or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.   The Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue.   The Litigation Trustee or successor Litigation Trustee shall not be liable for any act or omission of any predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission. The Litigation Trustee or the members of the Plan Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance upon the advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.   Notwithstanding such authority, neither the Litigation Trustee nor the members of the Plan Oversight Committee shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or the members and/or their designees, unless such determination is based on fraud, willful misconduct, or gross negligence.

Section 3.11   <u>Reliance by Litigation Trustee</u>. The Litigation Trustee may absolutely and unconditionally rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed

by it to be genuine and to have been signed or presented by the proper party or parties.  The Litigation Trustee may absolutely and unconditionally presume that any other parties purporting to give any notice of instructions in writing has been duly authorized to do so, and may rely on such notice.  The Litigation Trustee may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by him or her and may rely, in good-faith, on the advice thereof, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof.

Section 3.12   Parties Dealing With the Litigation Trustee.  In the absence of actual knowledge to the contrary, any person dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Litigation Trust Assets.  There is no obligation on any Person dealing with the Litigation Trustee to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

Section 3.13   Compensation of the Litigation Trustee and Professionals.

(a)   Litigation Trustee.   The Litigation Trustee shall be entitled to reimbursement of all actual, reasonable out-of-pocket costs and expenses.  The Litigation Trustee shall deliver his or her invoices or fee statement to the Plan Oversight Committee for approval before payment shall be allowed from the Litigation Trust Assets in accordance with Article 5.4.3 of the Plan on account of reasonable out-of-pocket costs and expenses,.  The Plan Oversight Committee shall have ten (10) days from the delivery of any Litigation Trustee invoice or fee statement to give notice (with email being sufficient) of any objection to payment.  In the event no objection is timely raised, the Litigation Trustee may pay the invoice or fee statement, or any portion thereof, that is not subject to objection.  For an objection from the Plan Oversight Committee to be valid, it shall be in writing and set forth in detail the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution.

(b)   Professionals.  Any professionals retained by the Litigation Trustee may be paid out of the Litigation Trust Assets pursuant to the following procedures; *provided*, *however*, any contingency fees of retained counsel shall only be funded out of the proceeds of any Causes of Action or Retained Causes of Action for which the contingency fees are earned.  Professionals hired by the Litigation Trustee shall deliver their invoices or fee statements to the Litigation Trustee and Plan Oversight Committee for approval before payment from the Litigation Trust Assets shall be allowed in accordance with Section 4.2.6 of the Plan. The Litigation Trustee and Plan Oversight Committee shall have ten (10) days from the delivery of any invoice or fee statement to give notice (with email being sufficient) of an objection to the fee statement to the professional seeking compensation or reimbursement.  In the event no objections are timely raised, the Litigation Trustee may pay the fees and expenses, or that portion of the fees and expenses, that is not subject to an objection, from the Litigation Trust Assets.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution.

Section 3.14   <u>Exculpation; Indemnification</u>.  All of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the Beneficiaries, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions to act that are determined by a Final Order to have arisen out of fraud, gross negligence, or willful misconduct.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments and/or Distributions in accordance with this Agreement or the Plan, or for implementing any other provision of the Plan.  To the fullest extent permitted by applicable law, the Litigation Trust shall: (i) indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving fraud, willful misconduct, or gross negligence and (ii) the Covered Persons shall be entitled to obtain advances from the Litigation Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  Any action taken, or omitted to be taken, with the express approval of the Bankruptcy Court or the Plan Oversight Committee will conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct, <u>provided, however,</u> that the Litigation Trustee shall not be obligated to comply with a direction of the Plan Oversight Committee, whether or not express, which would result in a change of the Distribution or any other material provisions of the Plan.  The foregoing exculpation and indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified and shall inure to the benefit of the Covered Persons' heirs and assigns.

Section 3.15   <u>Termination</u>.  The duties, responsibilities and powers of the Litigation Trustee shall terminate on the date the Litigation Trust is dissolved pursuant to <u>Article IX</u> of this Agreement, under applicable law, or by an order of the Bankruptcy Court; <u>provided</u>, that <u>Sections 3.11</u> and <u>3.12</u> above shall survive such termination and dissolution.

Section 3.16   <u>Resignation</u>.  The Litigation Trustee may resign by giving not less than ninety (90) days prior written notice (with email being sufficient) to the Plan Oversight Committee.

Section 3.17   <u>Removal of Litigation Trustee</u>.

(a)   The Plan Oversight Committee may seek to remove the Litigation Trustee for cause by filing a motion (the "<u>Removal Motion</u>") with the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Litigation Trustee, filed with the Bankruptcy Court. For purposes of this Agreement, "cause" means:

(i)   The arrest or conviction (or plea of guilty or nolo contendere) of the Litigation Trustee for any felony, or other crime involving dishonesty or moral turpitude;

(ii)   A finding by the Plan Oversight Committee that the Litigation Trustee engaged in willful misconduct, or was grossly negligent, in the performance of its duties;

(iii)     A determination, in good faith, by the Plan Oversight Committee, that the Litigation Trustee is not acting in the best interest of the Beneficiaries; or

(iv)     A determination, in good faith, by the Plan Oversight Committee, that the Litigation Trustee has a material and direct conflict of interest, not previously disclosed or specifically waived in advance by the Reorganized Debtors.

(b)     If there is a dispute between the Litigation Trustee and the Plan Oversight Committee regarding whether cause exists for removal, and such dispute is not consensually resolved within thirty (30) days following the filing of the Removal Motion, such dispute will be resolved by the Bankruptcy Court.  For the avoidance of doubt, during the pendency of any dispute before the Bankruptcy Court regarding removal of the Litigation Trustee and any appeals therefrom, the Litigation Trustee shall (i) continue to discharge the rights, obligations and duties of the Litigation Trustee set forth in the Plan and this Agreement and (ii) continue to receive payment of reasonable fees and expenses accrued prior to removal, subject to the terms of this Agreement.

(c)     In the event the Bankruptcy Court enters a final order, not subject to appeal, determining that cause exists to remove the Litigation Trustee, the Plan Oversight Committee may nominate and seek approval of the appointment of a successor Litigation Trustee by filing a motion with the Bankruptcy Court on not less than seven (7) days' notice, with such appointment to become effective upon entry of an order by the Bankruptcy Court approving the appointment.

Section 3.18   No Bond.  The Litigation Trustee shall not be required to post any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court and, in the event the Litigation Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any such bond or surety shall be paid from the Litigation Trust Assets pursuant to the terms of the Plan.

ARTICLE IV

BENEFICIARIES

Section 4.01   Rights of Beneficiaries.  Each Beneficiary shall take and hold its beneficial interest in the Litigation Trust subject to all of the terms and provisions of this Agreement, the Confirmation Order, and the Plan.  A Beneficiary shall have no title or right to, or possession, management, or control of, the Litigation Trust Assets except as expressly provided herein.  The interest of a Beneficiary in the Litigation Trust is in all respects personal property, and the death, insolvency, or incapacity of an individual Beneficiary shall not terminate or affect the validity of this Agreement.  No surviving spouse, heir, or devisee of any deceased Beneficiary shall have any right of dower, homestead, inheritance, partition, or any other right, statutory or otherwise, in the Litigation Trust Assets, and their sole interest shall be the rights and benefits given to the Beneficiaries under this Agreement.

Section 4.02   Identification of Beneficiaries.  In order to determine the actual names, addresses, and tax identification numbers of the Beneficiaries, the Litigation Trustee shall be entitled to conclusively rely on the names, addresses, and tax identification numbers set forth on

the Claims Register as of the Distribution Record Date pursuant to Sections 6.4 and 6.6 of the Plan. Each Beneficiary shall furnish, in writing, its name, address, and tax identification number as assigned by the IRS and completed IRS Form W-9 or, if applicable, IRS Form W-8 to the Litigation Trustee within ninety (90) days of a written request from the Litigation Trustee. The Litigation Trustee shall make two (2) such requests. Failure of a Beneficiary to respond to the Litigation Trustee's second request for such tax information within 90 days of the second request shall result in the Beneficiary forfeiting their Litigation Trust interest and rights to any Distribution, and such forfeited amounts shall revest in the Litigation Trust and be distributed to the remaining Beneficiaries on the next Distribution Date.

Section 4.03   Limit on Transfers. The interests of the Beneficiaries in the Litigation Trust shall be uncertificated, and are reflected only on the records of the Plan Administrator and the Distribution Agent. Such interests are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Beneficiary) or (b) by operation of law. Neither the Litigation Trust nor the Litigation Trustee shall incur any liability from relying on the Claims Register (or information regarding reserves) to determine the interests of the Beneficiaries in the Litigation Trust.

Section 4.04   Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to an Allowed Claim, the Litigation Trustee shall be entitled, in its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Litigation Trustee shall (i) make no payment or Distribution with respect to the Allowed Claims represented by the claims or demands involved, or any part thereof, and (ii) refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Litigation Trustee shall not be or become liable to any party for his or her refusal to comply with any of such conflicting claims or demands. The Litigation Trustee shall be entitled to refuse to comply with conflicting claims or demands until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (b) the conflict has been resolved by a written agreement among all of such parties and the Litigation Trustee and/or Plan Administrator, which agreement shall include a complete release of the Litigation Trust and the Litigation Trustee with respect to the subject matter of the dispute.

ARTICLE V

DISTRIBUTIONS

Section 5.01   Transfer of Proceeds to Plan Administrator. The Litigation Trustee shall transfer to the Plan Administrator any proceeds of Causes of Action or Retained Causes of Action, net of any expenses associated therewith and subject to Section 9.02 and Section 9.03 hereof, as soon as reasonably practicable following receipt thereof, to permit the further Distribution of such proceeds by the Distribution Agent on each Distribution Date in accordance with the Plan and the Plan Administrator Agreement.

Section 5.02   Distributions Pursuant to Plan. Distributions by the Plan Administrator shall be governed by the Plan and the Plan Administrator Agreement.

-15-

ARTICLE VI

PLAN OVERSIGHT COMMITTEE

Section 6.01    Plan Oversight Committee.  The Plan Oversight Committee shall be bound by the terms of this Agreement.  In performing the duties under this Agreement, each member of the Plan Oversight Committee shall have a fiduciary duty to act in the best interests of the Beneficiaries as a whole. The Plan Oversight Committee shall at all times be comprised of no fewer than two (2) members and the initial members of the Plan Oversight Committee shall be (i) _____; and (ii) _____.  The Plan Oversight Committee may appoint one or more additional members to serve on the Plan Oversight Committee by unanimous vote of the existing members.  The Plan Oversight Committee shall (i) have the authority and responsibility to oversee and review the activities of the Litigation Trustee; and (ii) have the authority to seek to remove the Litigation Trustee for "cause", in accordance with Section 3.17 of this Agreement.  The Litigation Trustee shall consult with, and provide information to, the Plan Oversight Committee upon request.   Notwithstanding anything in this Article VI, the Plan Oversight Committee shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

Section 6.02    Matters  Requiring  Approval  of  Plan  Oversight  Committee. Notwithstanding anything herein to the contrary, the Litigation Trustee shall obtain the approval of the Plan Oversight Committee prior to taking any action regarding any of the following matters: (a) the selection, retention, or termination of any professional person or entity, including agreement on terms of compensation; (b) the commencement of any litigation in connection with any Causes of Action or Retained Cause of Action; (c) discovery, litigation, settlement, waiver, compromise or other resolution of any Cause of Action or Retained Cause of Action; and (d) any matter that reasonably could be expected to have a material effect on the amount of Distributions to be made by the Litigation Trust.  If there is a dispute between the Litigation Trustee and the Plan Oversight Committee regarding any matter for which approval is required and such dispute is not consensually resolved within fourteen (14) days, the parties shall seek an order from the Bankruptcy Court resolving such dispute.  The Litigation Trustee may amend this Agreement pursuant to Section 10.01 hereof with the consent of a majority of the members of the Plan Oversight Committee.

Section 6.03    Manner of Acting.

(a)    A majority of the total number of members of the Plan Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Plan Oversight Committee.  The affirmative vote of a majority of the members of the Plan Oversight Committee present at a meeting at which a quorum is present shall be the act of the Plan Oversight Committee, except as otherwise required by law or as provided in this Agreement.  Any or all of the members of the Plan Oversight Committee may participate in a regular or special meeting by, or conduct the meeting, with the Litigation Trustee or otherwise, through the use of, telephone, video conference or similar communications by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Plan Oversight Committee (and the Litigation Trustee) participating in a meeting

by this means is deemed to be present in person at the meeting. The Plan Oversight Committee may also act or vote by email communication.

(b)     Any member of the Plan Oversight Committee who is present at a meeting of the Plan Oversight Committee when action is taken is deemed to have assented to the action taken unless: (i) such member of the Plan Oversight Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding the meeting or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written or email notice of his/her dissent or abstention from the action taken to the Plan Oversight Committee before its adjournment.

Section 6.04   Plan Oversight Committee's Action Without a Meeting.   Any action required or permitted to be taken by the Plan Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents (which may include e-mail consents) describing the action taken, signed by the members of the Plan Oversight Committee, and filed with the minutes or proceedings of the Plan Oversight Committee; provided, however, if the foregoing is impracticable under the circumstances, such action required or permitted to be taken by the Plan Oversight Committee at a meeting may be taken after reasonable advance negative notice. Negative notice shall have been given when the members of the Plan Oversight Committee (except to the extent it has been previously determined that a particular member has a conflict of interest with respect to the particular vote) receive a memorandum, email, or phone call from the Litigation Trustee informing them of the proposed action or inaction and requesting that the member contact the Litigation Trustee by a specified time, which shall be as far in advance as reasonably practicable, if the member does not support the action and if the Litigation Trustee does not receive a response or objection from the member by the specified time, that member shall be deemed to have voted in favor of the action.

Section 6.05   Tenure, Removal, and Replacement of the Members of the Plan Oversight Committee.   The authority of the members of the Plan Oversight Committee will be effective as of the Effective Date, and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with Section 9.01 hereof. The service of the members of the Plan Oversight Committee will be subject to the following terms and conditions:

(a)     The members of the Plan Oversight Committee will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below;

(b)     A member of the Plan Oversight Committee may resign at any time by providing a written notice (with email being sufficient) of resignation to the remaining members of the Plan Oversight Committee. Such resignation will be effective when a successor is appointed as provided herein;

(c)     Any member of the Plan Oversight Committee may be removed by the unanimous vote of the other members of the Plan Oversight Committee and the Litigation Trustee, and in the event of a vacancy (whether by removal, death, or resignation), a new member shall be appointed by the unanimous vote of the remaining members of the Plan Oversight Committee and the Litigation Trustee. The appointment of a successor member of the Plan Oversight Committee

will be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which will include the name, address, and telephone number of the successor member of the Plan Oversight Committee; and

(d)     Immediately upon appointment of a successor member of the Plan Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Plan Oversight Committee hereunder shall be vested in, and be undertaken by, the successor member of the Plan Oversight Committee without any further act, and the successor member of the Plan Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Plan Oversight Committee.

Section 6.06   Out-of-Pocket Expenses.  Each member of the Plan Oversight Committee shall serve without compensation but shall be entitled to reimbursement by the Litigation Trust for actual out-of-pocket expenses incurred in his/her capacity as a member of the Plan Oversight Committee.

Section 6.07   Liability of Oversight Committee Members.   Except as otherwise specifically provided herein, the members of the Plan Oversight Committee shall not be held personally liable for any claim asserted against any such member, the Litigation Trust, or any of the Covered Persons, except to the extent that the action taken or omitted to be taken is determined by a Final Order to be due to their own respective intentional breach of this Agreement, fraud, gross negligence, or willful misconduct. Without limiting the generality of the foregoing, the members of the Plan Oversight Committee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken is determined by a Final Order to be due to their own respective intentional breach of this Agreement, fraud, gross negligence, or willful misconduct.

Section 6.08   Exculpation; Indemnification.   The members of the Plan Oversight Committee shall be, and hereby are, exculpated by all Persons, including the Beneficiaries and other parties in interest in the Chapter 11 Cases, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by this Agreement, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or applicable law, except for actions or omissions to act that are determined by a Final Order to be due to their own respective intentional breach of this Agreement, fraud, gross negligence, or willful misconduct.  No Person shall be permitted to pursue any claim or cause of action against the members of the Plan Oversight Committee for making or authorizing payments in accordance with this Agreement and the Plan or for implementing the provisions of the Plan.  To the fullest extent permitted by applicable law, the Litigation Trust shall: (i) indemnify, defend, and hold harmless the members of the Plan Oversight Committee from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that they may incur or to which they may become subject in connection with their actions or inactions in their capacities as such, except for actions or inactions involving fraud, willful misconduct, or gross negligence; and (ii) the members of the Plan Oversight Committee shall be entitled to obtain advances from the Litigation Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  Any action taken or omitted to be taken with the express approval of the Bankruptcy Court will

conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.  The foregoing indemnity shall survive the termination of such Plan Oversight Committee members from the capacity for which they are indemnified.

Section 6.09    Recusal.  A Plan Oversight Committee member shall be recused from the Plan Oversight Committee's deliberations and votes on any matters as to which such member has a conflicting interest.  If a Plan Oversight Committee member does not recuse itself from any such matter, that member may be recused from such matter by the unanimous vote of the remaining members of the Plan Oversight Committee that are not recused from the matter.  In such event, such recused member of the Plan Oversight Committee can challenge such decision of the non-recused members with the Bankruptcy Court, as applicable, and the Bankruptcy Court shall have jurisdiction to adjudicate such matter.

ARTICLE VII

SUCCESSOR LITIGATION TRUSTEES

Section 7.01    Acceptance of Appointment by Successor Litigation Trustee.  In the event a Litigation Trustee dies, is terminated, or resigns for any reason prior to the dissolution of the Litigation Trust, the Plan Oversight Committee shall promptly designate a successor trustee by an acknowledged written instrument delivered to the successor Litigation Trustee.  In the event the Litigation Trustee is no longer in place, and the Plan Oversight Committee fails to timely appoint a successor Litigation Trustee, the Bankruptcy Court shall do so on application of any Beneficiary. Any successor Litigation Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Litigation Trust records and with the Bankruptcy Court.  Thereupon, such successor Litigation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of his predecessor in the Litigation Trust with like effect as if originally named herein; provided, however, that a removed or resigning Litigation Trustee shall, nevertheless, when reasonably requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee all the rights, powers, and trusts of such predecessor Litigation Trustee(s).

ARTICLE VIII

REPORTING AND TAX MATTERS

Section 8.01    Tax and Other Reports.

(a)    The Litigation Trustee shall not less than annually, and no later than the time required by applicable law (taking into account any permitted extensions), send to each Beneficiary, a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit of the portion of the Litigation Trust that is treated as a grantor trust, and shall instruct such Beneficiary to report such items on their federal income tax returns.  As soon as practicable after the end of the relevant report preparation period, the Litigation Trustee shall cause any information reported pursuant to this Section 8.01(a) to be mailed to the Beneficiaries. The Litigation Trustee may maintain an internet-based website (with access granted to the

-19-

Beneficiaries) containing all reports the Litigation Trustee is required to deliver to such Beneficiaries under this Article VIII and identifying the name and address for correspondence with the Litigation Trustee.  In performing its duties under this Section 8.01, the Litigation Trustee may coordinate with the Plan Administrator and any professionals or service providers retained by the Plan Administrator to assist with its duties.

(b)      It is intended that the interests of the Beneficiaries in the Litigation Trust shall not constitute "securities."  To the extent the interests in the Litigation Trust are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.

(c)      United States Federal Income Tax Grantor Trust Status.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee) and subject to Section 8.01(e)(i) of this Agreement, the Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(d)      Allocations of Litigation Trust Taxable Income.  Subject to the provisions of Section 8.01(a) hereof, allocations of Litigation Trust taxable income among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust.  Taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets.

(e)      Required Tax Payments.  The Litigation Trustee shall be responsible for payments, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.

(f)      Compliance; Expedited Determination of Taxes.  The Litigation Trustee shall comply with any withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority in connection with the Causes of Action and Retained Causes of Action and any distribution of the proceeds thereof.  All amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to the respective Beneficiaries for all purposes of this Agreement.  The Litigation Trustee shall be authorized to collect such tax information from the Beneficiaries and other payees (including, without limitation, social security numbers or other tax identification numbers) as he or she in his or her sole discretion deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  The Litigation Trustee may refuse to make a Distribution to any Beneficiary or other payee that fails to furnish such information in a timely fashion, until such information is delivered in accordance with Section

-20-

4.02 hereof; provided, however, that upon the Beneficiary's or other payee's timely delivery of such information in accordance with but subject to Section 4.02 hereof, the Litigation Trustee shall make such Distribution to which the Beneficiary or other payee is entitled, without any interest and income thereon.  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(g)     Bankruptcy Court Reporting.  Following the Effective Date, the Litigation Trustee, on behalf of the Litigation Trust, shall file with the Bankruptcy Court, no later than 45 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of the Litigation Trust Assets, Distributions made by it, and other matters relating to the implementation of the Litigation Trust and the Plan.

## ARTICLE IX

## DISSOLUTION OF LITIGATION TRUST

Section 9.01   Dissolution of Litigation Trust.  The Litigation Trust shall be dissolved, in accordance with Section 9.02 hereof, no later than the third anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Litigation Trustee, the Plan Oversight Committee, or any party in interest, within the three-month period prior to the third anniversary (or at least three months prior to the end of any extension period), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.

Section 9.02   Dissolution Events.  The Litigation Trustee shall be discharged and the Litigation Trust shall be dissolved at such time as (a) the Litigation Trustee and the Plan Oversight Committee determine that the administration of the Litigation Trust is not likely to yield sufficient additional proceeds to justify further pursuit of the Causes of Action or Retained Causes of Action, and (b) the net proceeds of all Causes of Action and Retained Causes of Action have been transferred to the Plan Administrator.  If at any time the Litigation Trustee determines, in reliance upon such professionals as the Litigation Trustee may retain, that the expense of administering the Litigation Trust is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee may reserve any amounts necessary to dissolve the Litigation Trust, (ii) transfer any balance to the Plan Administrator for distribution in accordance with the Plan, and (iii) dissolve the Litigation Trust.

Section 9.03   Post-Dissolution.  Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been created by the Litigation Trustee for a period of six months and thereafter may in their sole discretion, destroy all of such records and documents as the Litigation Trustee deems appropriate (unless such records and documents are necessary to fulfill any of the Litigation Trustee's residual obligations, if any pursuant to this Agreement).  The Litigation Trustee may allocate and reserve (or pre-pay) sufficient funds to cover the costs of storage and destruction of such records.  The Litigation

Trustee may seek and obtain Bankruptcy Court approval to destroy records at or about the time of dissolution.

## ARTICLE X

## AMENDMENT AND WAIVER

Section 10.01  Amendment; Waiver.  The Litigation Trustee, with the consent of a majority of the members of the Plan Oversight Committee (which consent shall not be unreasonably withheld, delayed or conditioned), may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; provided, however, that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Beneficiaries or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act; and (iv) make the Litigation Trust a reporting entity and, in such event, to comply with or seek relief from any requirements in connection with satisfying the registration or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act.  Any substantive provision of this Agreement may be amended or waived by the Litigation Trustee with the consent of a majority of the members of the Plan Oversight Committee (which consent shall not be unreasonably withheld, delayed or conditioned), with the approval of the Bankruptcy Court (upon notice and an opportunity for a hearing); provided, however, that no change may be made to this Agreement that would (a) adversely affect (i) the Distributions to any of the Beneficiaries or (ii) the U.S. Federal income tax status of the Litigation Trust as a "liquidating trust" or (b) expand, add to, or modify the original stated purpose of the Litigation Trust (as described in the Plan and in this Agreement). Notwithstanding this Section 10.01, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01   Intention of Parties to Establish Grantor Trust.  Subject to Section 8.01(e)(i) herein, this Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust with respect to the Beneficiaries.

Section 11.02 Causes of Action and Retained Causes of Action and Preservation of Privilege.  Upon the Effective Date, all of the Debtors' privileges and work product, including but not limited to, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) related to the Causes of Action or Retained Causes

of Action that vest in the Litigation Trust, shall be vested in the Litigation Trust, which will have exclusive authority to waive or not to waive the Debtors' privileges in its sole discretion.  .

Section 11.03 <u>Cooperation and Supply of Information and Documentation</u>.   The Litigation Trust shall have access to the Debtors' books and records for the purpose of investigating and pursuing the Causes of Action and Retained Causes of Action.  Upon request by the Litigation Trustee, the Debtors and/or the Plan Administrator shall supply all reasonably available information, books, records, and documentation within their possession, custody, or control to the Litigation Trustee as may be required to effectuate the terms of this Agreement.  All confidential information concerning the Debtors that is given to the Litigation Trustee and specifically designated as confidential will be used solely in the course of performance of the services outlined in this Agreement, the Plan, and the Confirmation Order.

Section 11.04 <u>Prevailing Party</u>.  If the Litigation Trust is the prevailing party in a dispute with a third party regarding the provisions of this Agreement or the enforcement thereof, the Litigation Trust shall be entitled to collect from the nonprevailing party any and all costs, expenses, and fees, including attorneys' fees, incurred in connection with such dispute or enforcement action.

Section 11.05 <u>Laws as to Construction.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.

Section 11.06 <u>Severability</u>.  If any provision of this Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 11.07 <u>Notices</u>.  Any notice or other communication hereunder shall be in writing (with email being sufficient to the extent consistent with this Agreement) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box, or transmitted by facsimile or electronic mail (email), or sent by nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at such address as set forth below or such other address as may be provided to the other parties in writing. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) on the date of the transmission confirmation, or (d) three business days after service by first class mail.

If to the Litigation Trustee, to:

**Ryan Mersch**
PORTAGE POINT PARTNERS, LLC
300 North LaSalle, Suite 1420
Chicago, IL  60654

Telephone: (312) 781-7520
Email: rmersch@pppllc.com

With a copy to:

[add name and contact details]


If to Members of the Plan Oversight Committee, then to each of:

**1.  [first member**]
Address
address
Attn: _____
Phone: _____
Email: _____

-and-

2.  **[second member**]
Address
address
Attn: _____
Phone: _____
Email: _____


      Section 11.08 <u>Notices if to a Beneficiary</u>.  Any notice or other communication hereunder shall be in writing (with email being sufficient to the extent consistent with this Agreement) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's Proof of Claim or if no Proof of Claim is filed, the address listed on the Schedules or as listed in any other notice filed with the Bankruptcy Court and the Litigation Trust or such other means reasonably calculated to apprise the Beneficiary.

      Section 11.09 <u>Headings</u>.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

      Section 11.10 <u>Plan</u>.  The terms of this Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order.  Accordingly, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan and the Confirmation Order, on the other hand, the provisions of the Plan and the Confirmation Order, as applicable, shall govern and control.

Section 11.11 <u>Entire Agreement</u>.  This Agreement (and any exhibits and annexes attached hereto) contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

Section 11.12 <u>Actions Taken on Other Than Business Day</u>.  In the event that any payment or act hereunder or under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 11.13 <u>Counterparts</u>.  This Agreement may be executed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.  A counterpart delivered by facsimile, electronic mail or similar electronic means shall have the same binding legal effect as an original signature.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged the Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as the date written above.

| | |
|---|---|
| /s/ | /s/ |
| [Ryan Mersch] | James T. Grogan III |
| **PORTAGE POINT PARTNERS, LLC** | Texas State Bar No. 24027354) |
| 300 North LaSalle, Suite 1420 | **PAUL HASTINGS LLP** |
| Chicago, IL  60654 | 600 Travis Street, 58th Floor |
| Telephone: (312) 781-7520 | Houston, Texas 77002 |
| Email: rmersch@pppllc.com | Telephone: (713) 860-7300 |
| | Facsimile: (713) 353-3100 |
| *Litigation Trustee* | Email: jamesgrogan@paulhastings.com |
| | |
| | *-and-* |
| | |
| /s/ | Luc Despins (admitted *pro hac vice*) |
| Charles R. Gibbs | Sayan Bhattacharyya (admitted *pro hac vice*) |
| Texas State Bar No. 7846300 | Daniel Ginsberg (admitted *pro hac vice*) |
| **MCDERMOTT WILL & EMERY LLP** | 200 Park Avenue |
| 2501 North Harwood Street, Suite 1900 | New York, New York 10166 |
| Dallas, TX 75201-1664 | Telephone: (212) 318-6000 |
| Telephone: (214) 295-8000 | Facsimile: (212) 319-4090 |
| Facsimile: (972) 232-3098 | Email: lucdespins@paulhastings.com |
| Email: crgibbs@mwe.com | sayanbhattacharyya@paulhastings.com |
| | danielginsberg@paulhastings.com |
| *-and-* | |
| | |
| Kristin K. Going (admitted *pro hac vice*) | Matthew Micheli (admitted pro hac vice) |
| Darren Azman (admitted *pro hac vice*) | Michael Jones (admitted pro hac vice) |

Stacy A. Lutkus admitted (*pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-5404
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
Email: kgoing@mwe.com
dazman@mwe.com
salutkus@mwe.com
nrowles@mwe.com

*Counsel for the Official*
*Committee of Unsecured Creditors*

71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
michaeljones@paulhastings.com

*Counsel to the Debtors*
*and Debtors in Possession*

/s/ _____
 [insert name of first member,
organization,
address]
Telephone:
Email:

*Member, Plan Oversight Committee*

 /s/ _____
[insert name of second member,
organization,
address]
Telephone:
Email:

*Member, Plan Oversight Committee*