# **EXHIBIT B-1**

## **Redline**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| COMPUTE NORTHMINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) Case No. 22-90273 (MI) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**SECOND AMENDED SCHEDULE OF RETAINED CAUSES OF ACTION**

Section 4.2.8 of the *Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Affiliated Debtors* (the "Plan"; capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Plan) provides that in accordance with section 1123(b) of the Bankruptcy Code, but subject to Section 9 of the Plan, any applicable Final Order, and any applicable Asset Purchase Agreement, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, specifically enumerated in this Amended Schedule of Retained Causes of Action. On the Effective Date, the Retained Causes of Action shall vest in the Litigation Trust. The Litigation Trust may pursue the Retained Causes of Action identified herein, as appropriate, in accordance with the best interests of the Holders of Claims and Interests.

The Litigation Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344300 North LaSalle, Suite 1420, Chicago, IL 60654.

including in Section 9 thereof, pursuant to a Final Order, Sale Order, Asset Purchase Agreement, or as assigned and transferred pursuant to any applicable Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Litigation Trust will not pursue any and all available Retained Causes of Action.

Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to this Amended Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor or the Litigation Trust, without the need for any objection or responsive pleading by the Reorganized Debtors, the Litigation Trust or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  The Litigation Trust may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on this Amended Schedule of Retained Causes of Action that remains unresolved by the Debtors, the Reorganized Debtors and/or the Litigation Trust, as applicable, and the objecting party for thirty days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Retained Causes of Action listed herein, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of, the Confirmation or Consummation. Notwithstanding anything contained herein or in the Plan or Confirmation Order to the contrary (including the releases described in Section 9 of the Plan), to the extent the Debtors have previously released certain claims and Causes of Action against a party, including pursuant to any Sale Order, any Asset Purchase Agreement, or any Final Order, nothing contained herein or in the Plan or the Confirmation Order, shall be construed to revive such released claims and Causes of Action against such party, or to impair or otherwise limit the releases provided thereunder.

The Reorganized Debtors reserve and shall retain the Retained Causes of Action, for the benefit of the Litigation Trust, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Litigation Trust, except as otherwise expressly provided in the Plan, including Section 9 thereof.  The Litigation Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Litigation Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to

or action, order, or approval of the Bankruptcy Court, subject to the terms of the Litigation Trust Agreement.

**Retention of Causes of Action as Defense**.  Notwithstanding anything herein to the contrary, the Debtors hereby retain any and all of their Claims and Causes of Action to assert in defense of any Claim asserted against the Debtors or their Estates by any party seeking affirmative recovery, including without limitation, all Claims of the Debtors for (i) breach of contract, (ii) breach of any express warranty, and (iii) breach of any implied warranty, including any implied warranty of fitness or merchantability.  The Debtors hereby reserve, and do not waive or release, any Claims or Causes of Action for purposes of defending any Claim or Cause of Action asserted against the Debtors.

**Specific Retained Causes of Action.**  The Debtors reserve all Causes of Action against the following Entities, irrespective of whether or not any such Entity has opted out of the Releases contained in Section 9.4 of the Plan in accordance with the terms thereof:

1.  **Atlas Technology Group LLC** – On September 2, 2021, Compute North LLC ("CN LLC") and Atlas Technology Group LLC ("Atlas") entered into that certain master agreement (the "Master Agreement"), under which CN LLC agreed to provide, subject to specified terms and conditions, "colocation" and other services for Atlas-owned Bitcoin mining equipment (the "Equipment") as specified in an order form attached thereto.  The Master Agreement was an exceptionally valuable agreement in which Atlas committed to pay CN LLC more than $130 million over the term of the Master Agreement.  The Debtors possess multiple Claims and Causes of Action against Atlas resulting from certain breaches of Atlas' obligations under the Master Agreement.  Atlas' breaches include, among others, failing to (i) deliver the Equipment as promised, and (ii) pay deposits and other amounts due and owing under the Master Agreement. Rather than comply with its obligations under the Master Agreement and rectify the breaches thereunder, on June 16, 2022, Atlas purported (ineffectually) to terminate the Master Agreement, claiming an excess of "Outage Days" despite having never notified CN LLC of a single Outage Day as required under the Master Agreement.  After Atlas failed to pay certain amounts within the contractual cure period under the Master Agreement, on July 11, 2022, CN LLC informed Atlas that it had duly terminated the Master Agreement and demanded payment in accordance with its express terms, including, as liquidated damages, all amounts due for the remainder of the applicable term of the Master Agreement.  The Debtors hereby reserve all rights, remedies, claims and causes of action against Atlas, including those arising from or relating to in any way the foregoing transactions and events.

2.  **RK Mission Critical. LLC** – Prior to the Petition Date, CN LLC was party to that certain teaming agreement, dated as of April 20, 2020 (collectively with the Standard Terms and Conditions of Sale, Revision November 2020 referenced in order forms thereunder (the "Terms"), as amended, supplemented, or otherwise modified from time to time, the "Teaming Agreement"), under which RK Mission Critical LLC, a Colorado limited liability company ("RKMC"), agreed to provide, and CN LLC agreed to accept, the assistance of RKMC in designing, developing and manufacturing modules for CN LLC's business.  On December 21, 2021, CN LLC executed a purchase order (the "Purchase Order") to purchase certain containers from RKMC, which was governed by and subject to the Terms and by which CN LLC granted RKMC "a security interest in any Goods provided by RKMC and all attachments, replacements

3

and proceeds thereof, to secure Buyer's performance hereunder and payment of the purchase price, interest on any past-due amounts as set forth in Section 2 and the costs of collection, including reasonable attorney's fees." At the time the purchased containers were actually delivered to CN LLC, pursuant to the Purchase Order, RKMC had not filed a UCC-1 financing statement to perfect its security interest in the containers. On or about July 26, 2022, RKMC filed a UCC-1 financing statement (the "July 26 Financing Statement") against CN LLC with the secretary of state of the State of Delaware.

The July 26 Financing Statement purported to perfect a security interest in "[a]ll goods sold by [RKMC] and delivered to [CNN LLC] including, without limitation, all Goods sold by [RKMC] and delivered to Debtor hereafter, wherever located," including the purchased containers. On July 28, 2022, RKMC filed a UCC-3 statement (the "UCC-3", and collectively with the July 26 Financing Statement, the "Financing Statements") amending the collateral description contained in the July 26 Financing Statement to provide a specific list of containers that were to be subject to RKMC's security interest. The effect of the UCC-3 was to render unperfected RKMC's security interest in containers RKMC had delivered to CNN LLC other than those listed in the UCC-3. The filing of the Financing Statements occurred less than ninety (90) days prior to the Petition Date. The filing of the Financing Statements and the purported perfection of RKMC's security interest as set forth therein, were transfers within the meaning of 11 U.S.C. §§ 101(54) and 547 (the "Transfers"). The Transfers occurred more than thirty (30) days after the delivery of the purchased containers to CN LLC. Upon the commencement of these Chapter 11 Cases, the Debtors' interests in the delivered containers became property of the Debtors' Estates. As such, the Debtors possess colorable claims against RKMC to avoid the Transfers under 11 U.S.C. § 547(b), to preserve the Transfers and any purported security interest granted thereby, pursuant to 11 U.S.C. § 551, for the benefit of the Debtors' Estates, and to recover the amount of any deposits, payments or prepayments made by the Debtors to RKMC.

In addition, on April 6, 2022, RKMC issued a change order (the "Change Order") to furnish the Minden Facility with 266 fans equipped with nylon blade aero-acoustical low sound impellers (the "Specialty Fans") for a total aggregate price of $307,496.00. The Change Order was approved and executed by the Debtors on April 12, 2022. Also on April 12, 2022, RKMC provided the Debtors with an application for payment which detailed the net change of the original contract sum to account for the added costs associated with the construction and delivery of the Specialty Fans. On May 15, 2022, the Debtors paid for the Specialty Fans, as part of a larger payment to RKMC totaling $1,742,600.00. To date, the Debtors have not received possession of the Specialty Fans, at the Minden Facility or otherwise. The Specialty Fans constitute property of the Debtors' estates that the Debtors are entitled to use, sell, or lease under section 363 of the Bankruptcy Code. RKMC's failure to deliver the Specialty Fans to the Debtors constitutes a violation of Bankruptcy Code section 542. RKMC's refusal to turn over the Specialty Fans is also an improper attempt to setoff obligations in violation of Bankruptcy Code section 553.

The Debtors also possess a right of replevin with respect to the Specialty Fans pursuant to § 2-716 of the Uniform Commercial Code, as adopted in Colorado, as well as claims for breach of contract, unjust enrichment and conversion.

4

The Debtors hereby reserve all rights, remedies, claims and causes of action against RKMC, including those described above and any others arising from or relating to in any way the foregoing transactions and events, based on the applicable contracts or agreements, the Bankruptcy Code, the Uniform Commercial Code, and other applicable state and federal law.

3. **Rohit Shirole** – Rohit Shirole ("Shirole") was formerly employed by CN LLC and Holdings as a Vice President of Strategy and Business Development. On December 8, 2021, Shirole's employment was terminated for cause. Shortly thereafter, Shirole commenced a lawsuit against CN LLC and Holdings in the Fourth Judicial District for the State of Minnesota, Hennepin County, styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274 (the "Minnesota Action") asserting various claims arising out of his employment. On March 4, 2022, CN LLC and Holdings filed their answer to Shirole's complaint in the Minnesota Action, asserting various counterclaims, including (i) breach of the duty of loyalty, (ii) tortious interference with contract, and (iii) unfair competition. The parties proceeded through the Minnesota Action as well as through mediation in the months leading up to the Petition Date. However, the mediation was unsuccessful and the parties did not reach a resolution. The Minnesota Action was stayed upon the commencement of the Chapter 11 Cases. The Debtors hereby reserve all rights, remedies, claims and causes of action against Shirole, including those arising from or relating to in any way the Minnesota Action and the foregoing transactions and events.

4. **Bootstrap Energy, LLC, Corpus Christi Energy Park, LLC and their respective affiliates, shareholders, employees, officers, directors, agents, representatives and advisors** – The Debtors are party to various commercial arrangements with Bootstrap Energy, LLC, Corpus Christi Energy Park, LLC and their respective affiliates, shareholders, employees, officers, directors, agents, representatives and advisors (collectively, "Bootstrap"), including that certain commercial agreement, dated March 16, 2022 (the "Bootstrap Agreement"). The Debtors believe they have numerous claims and Causes of Action against Bootstrap, including claims and Causes of Action arising under chapter 5 of the Bankruptcy Code (including claims for turnover, fraudulent transfers under federal and state law, and preferential transfers), claims and Causes of action for breach of contract, equitable relief, negligence, conversion and other intentional torts, breach of express and implied warranties, statutory and common law claims and Causes of Action, and other claims or Causes of Action arising from or related to, in any way, the Debtors' commercial dealings with Bootstrap, all of which the Debtors hereby reserve and retain. For example, Debtor Compute North LLC paid approximately $682,000 to Bootstrap within the 90 days prior to the Petition Date under duress because Bootstrap had threatened to terminate an agreement with the Debtors if it did not receive payment. In the Debtors' view, this payment was preferential and can be avoided under sections 547 and 550 of the Bankruptcy Code. The Debtors also possess multiple claims and Causes of Action against Bootstrap resulting from certain breaches of Bootstrap's obligations under the Bootstrap Agreement. Bootstrap's breaches include, among others, failing to (i) provide a satisfactory Letter of Agreement with AEP Texas that would, within 60 days of the execution of the Bootstrap Agreement, provide the Debtors with 300 megawatts of interconnection capacity by October 31, 2022 (the "AEP Letter Agreement"), and (ii) honor its obligation to transfer fee title to the Project Site (as defined in the Bootstrap Agreement) by June 6, 2022. Pursuant to the Bootstrap Agreement, the Debtors made a payment to Bootstrap of $11,530,000.00 in reliance upon Bootstrap's representations and covenants that it would obtain a satisfactory AEP Letter Agreement by May 15, 2022 and a deed

transfer of the Project Site by June 6, 2022.  The Debtors hereby reserve all rights, remedies, claims and causes of action against Bootstrap, including those arising from or relating to in any way the foregoing transactions and events.

**Potential Preference Claims**.  In addition to the foregoing, and not in limitation thereof, the Debtors reserve all Causes of Action against the Entities listed on **Schedule 1** attached hereto, which the Debtors have identified as receiving payments on account of antecedent debt within 90 days prior to the Petition Date.

**Causes of Action Related to Taxing Authorities**.  The Debtors expressly reserve all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or the Reorganized Debtors, regardless of whether such Entity is specifically identified herein, including any payment in respect of a tax refund or any payment in respect of an Employee Retention Tax Credit under the CARES Act.  Without limiting the generality of the foregoing, the Debtors' expressly reserve all Causes of Action against the Entities identified in **Schedule 2** attached hereto.

**Causes of Action Related to Minden Project**.  The Debtors expressly reserve any and all Causes of Action against any governmental entities based upon, in whole or in part, any discussions, negotiations, governmental approval process, and transactions relating to the data center project owned by CN Minden LLC, including any Causes of Action against the State of Nebraska, Southern Public Power District, a public corporation and political subdivision of the State of Nebraska, and Nebraska Public Power District, a public corporation and political subdivision of the State of Nebraska, and all related political subdivisions.

**Insurance Companies**.  The Debtors expressly reserve any and all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Post-Effective Date Debtor is a party or pursuant to which any Debtor or Post-Effective Date Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified herein, including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

As set forth in Section 5.4 of the Plan, each of the Debtors' insurance policies that is executory, including D&O Insurance, and any agreements, documents, or instruments relating thereto, shall be assumed by the Debtors on behalf of the applicable Debtor and vest in the applicable Reorganized Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless (a) such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or a request to reject such insurance policy is pending on the Effective Date, or (b) such insurance policy was previously assumed and assigned to a Purchaser under an Asset Purchase Agreement. Coverage for defense and indemnity under any of the D&O Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.  The Debtors' expressly reserve all Causes of Action against any party that provided insurance coverage to the Debtors for claims arising under or related to any applicable policy.

**Vendor/Supplier Claims.**  The Debtors expressly reserve any and all Causes of Action against the Entities listed on **Schedule 3** hereto for the return of any amounts previously paid by the Debtors to such Entities, whether as a deposit, prepayment or otherwise, and for which the Debtors have not received the contracted for goods, services or other consideration owed to the Debtors, or the return of a deposit, based on the applicable contract or agreement, the Bankruptcy Code, the Uniform Commercial Code, and other applicable state and federal law.

**Postpetition Transactions**.  The Debtors expressly reserve any and all Causes of Action based in whole or in part upon any postpetition transaction to which one or more of the Debtors is party, including the right to enforce compliance with any contract or agreement relating to a postpetition transaction in accordance with its terms.  For the avoidance of doubt, the postpetition transactions for which the Debtors reserve any and all Causes of Action include the transactions identified on **Schedule 4** hereto.

*[Remainder of Page Intentionally Left Blank]*

Respectfully submitted,

Dated:  January ~~17~~19, 2022
Houston, Texas

/s/  *James T. Grogan III*
_____

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg  (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
        sayanbhattacharyya@paulhastings.com
        danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
        michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

**Schedule 1**

**(90-Day Payments)**

| Creditor | Payments in the 90 Days Prepetition (US Dollars) |
|---|---|
| Sunbelt Solomon Services, LLC | $ 3,349,966 |
| Aon (Bermuda) | 1,836,765 |
| Compute North NE05 LLC | 1,713,558 |
| Bitmain | 1,088,128 |
| Compute North Texas LLC-TX03 | 1,002,857 |
| OverWatch Enterprises LLC | 762,811 |
| Ramp Business Corporation | 708,117 |
| New York Department of Taxation and Finance | 700,000 |
| Bootstrap Energy LLC | 682,097 |
| Midamerican Energy Company | 516,307 |
| Solomon Transformers | 459,990 |
| AFCO | 436,825 |
| Russell A Farrow US Inc. | 406,336 |
| Norton Rose Fulbright US LLP | 378,862 |
| MVP Logistics LLC | 338,352 |
| Charles Schwab Trust Bank | 311,672 |
| Authority Electric & A/C | 275,813 |
| CH Robinson Company Inc | 270,942 |
| Compute North Wolf Hollow LLC-TX10 | 229,202 |
| American Express | 228,866 |
| RSM US LLP | 122,021 |
| CNA INSURANCE | 102,931 |
| Overwatch Surveillance LLC | 102,492 |
| Ranger Guard & Investigations | 98,461 |
| Hello Temp, Inc. | 97,714 |
| Valdes Engineering Company | 80,488 |
| Foley & Lardner LLP | 79,595 |
| Prosek LLC | 63,018 |
| cQuant | 60,000 |
| South Dakota State Treasurer | 57,887 |
| Sirius Computer Solutions Inc. | 57,642 |
| Maxim Crane Works | 57,371 |
| Commonwealth Electric Company of the Midwest | 52,941 |
| Echo Search Group | 52,000 |
| Koch Filter Corporation | 51,163 |
| Chamber of Digital Commerce | 50,000 |
| PA Consulting Group Inc. | 50,000 |
| Sira Corbetta Lopez de Letona | 49,712 |
| Madel PA | 49,030 |
| Coffman Engineers Inc. | 46,250 |
| City of Big Spring, TX | 46,118 |
| Recruiters of Minnesota | 40,000 |
| GrassRoots | 37,225 |

| | |
|---|---|
| Meritus Recruiting Group LLC | 36,000 |
| Tech Strategy Leaders LLC | 33,765 |
| Congqing | 33,183 |
| Axle Logistics | 32,550 |
| CorTalent | 31,669 |
| Shenzen | 29,597 |
| Freudenberg Filtration Technologies | 27,690 |
| DNV Energy USA Inc. | 26,000 |
| AON Risk Services | 25,300 |
| Roth Staffing Companies, LLP | 24,872 |
| The Gene Allen Trust | 24,000 |
| Uline | 20,842 |
| Roebuck Staffing Company LLC | 18,959 |
| Sunbelt Rentals | 16,027 |
| Circuit Breaker Guys, LLC | 15,550 |
| Grainger | 15,140 |
| Miller & Associates Consulting Engineers, P.C. | 15,025 |
| Backyard Fun Factory | 12,743 |
| Thomson Reuters - West | 12,708 |
| Corporate Performance Strategies Inc. | 12,500 |
| DSV Air & Sea Inc. | 12,285 |
| SGS North America Inc. | 10,679 |
| Superior Cranes, Inc. | 9,438 |
| State of Delaware | 9,075 |
| OTC Global Holdings LP | 8,100 |
| StarTex Software LLC | 7,860 |
| | |

**Schedule 2**

**(Taxing Authorities)**

Buffalo County Treasurer, Kearney, Nebraska

Howard County Tax Office, Big Spring, Texas

Minnesota Department of Revenue

Nebraska Department of Revenue

New York Department of Taxation and Finance

North Carolina Department of Revenue

South Carolina Department of Revenue

South Dakota State Treasurer

State of Connecticut Department of Revenue Services

Texas Comptroller of Public Accounts

U.S. Department of Treasury, Internal Revenue Service

**Schedule 3**

**(Vendor/Supplier Claims)**

Bitmain Technologies Limited

City of Big Spring

KR Sioux City 2017 LLC

Power Asset Recovery Corporation

Solomon Transformers

Sunbelt Solomon Services, LLC

The Gene Allen Trust

**Schedule 4**

**(Postpetition Transactions)**

The postpetition transactions for which the Debtors preserve all Causes of Action include, without limitation, the following:

1. <u>Generate Sale</u> – Sale transaction with GC Data Center Equity Holdings, LLC, as Purchaser, as approved by the *Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free and Clear of All liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief*, entered on November 1, 2022 [Docket No. 362].

2. <u>Crusoe Sale</u> – Asset sale to Crusoe Energy Systems, LLC pursuant to the *Order (I) Approving the Sale of Certain Assets of Compute North LLC to Crusoe Energy Systems, LLC Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief*, entered on November 16, 2022 [Docket No. 493].

3. <u>Foundry Sale</u> –  Asset sale to Foundry Digital LLC pursuant to the *Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, entered on November 22, 2022 [Docket No. 531].

4. <u>U.S. Data Group, Inc. Sale</u> – Asset sale to pursuant *to Order (I) Approving the Sale of Certain Assets of Compute North Member LLC to US Data King Mountain LLC Free and Clear of Certain Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief*, entered on November 29, 2022 [Docket No. 594].

5. <u>Other Sales</u> – Any other asset sale undertaken pursuant to the *Order (a) Approving De Minimis Asset Sale Procedures; (b) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (c) Authorizing the Debtors to Enter Into Asset Purchase Agreements with Stalking Horse Bidders; and (d) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of All Encumbrances As Well As the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases*, entered on October 24, 2022 [Docket No. 256], including without limitation:

    a.  De minimis asset sale to TechFactory, LLC pursuant to the *Order Authorizing the Sale of De Minimis Assets to TechFactory, LLC Outside the Ordinary Course of Business Free and Clear of All Liens, Claims, Interests, and Encumbrances (TechFactory, LLC)*, entered on December 20, 2022 [Docket No. 697].

    b.  De minimis asset sale to The Max Henry Group LLC, dba Quantum Technology as set forth in the *Notice of Entry of De Minimis Asset Sale Order and Proposed De Minimis Asset Sale*, filed on December 21, 2022 [Docket No. 720].

    c.  De minimis asset sale to 7575 Management LLC pursuant to the *Order Authorizing the Sale of De Minimis Assets to 7575 Management LLC Outside the Ordinary Course of Business Free and Clear of All Liens, Claims, Interests, and Encumbrances (7575 Management LLC)*, entered on January 10, 2023 [Docket No. 789].