## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |
| MINING PROJECT WIND DOWN LLC (f/k/a COMPUTE NORTH LLC) and MINING PROJECT WIND DOWN PLEDGOR LLC (f/k/a CN PLEDGOR LLC), | Adv. Pro. No. _____ (MI) |
| Plaintiffs, | |
| v. | |
| ATLAS TECHNOLOGIES GROUP LLC, | |
| Defendant. | |

### ADVERSARY COMPLAINT FOR BREACH OF
### CONTRACT AND TURNOVER PURSUANT TO 11 U.S.C. § 542(b)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

Pursuant to Federal Rule of Bankruptcy Procedure 7001(1), Mining Project Wind Down LLC, formerly known as Compute North LLC and referred to herein as "Compute North,"[2] and Mining Project Wind Down Pledgor LLC, formerly known as CN Pledgor LLC (together with Compute North, "Plaintiffs"), debtors in the above-captioned cases, bring this adversary proceeding against Atlas Technology Group LLC ("Atlas"), alleging as follows:

### PARTIES

1. Compute North is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

2. Mining Project Wind Down Pledgor LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

3. Atlas is a Delaware limited liability company with its principal place of business in Austin, Texas.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and General Order 2012-6 of the United States District Court for the Southern District of Texas.

5. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and this Court can enter a final order consistent with Article III of the United States Constitution.

6. This Court is a proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409.

---

[2] Plaintiff is referred to herein as "Compute North" for ease of reference and to be consistent with its name in the agreements at issue.

## BACKGROUND FACTS

**A.    The Parties' Businesses**

7.     At all relevant times, Compute North's primary business was providing facilities, energy, and related services for cryptocurrency mining.

8.     Upon information and belief, Atlas is a wholly owned subsidiary of a China-based ASIC computing operator. In addition to other lines of business, Atlas mines Bitcoin at facilities in Asia, North America, and Northern Europe.

9.     Cryptocurrency mining is the process of verifying cryptocurrency transactions by solving complex mathematical problems using machines with extensive computing power. Miners are rewarded in cryptocurrency, which is how new coins are generated and put into circulation.

**B.    The Master Agreement**

10.    Effective September 2, 2021, Compute North and Atlas entered into a "Master Agreement" in which Compute North agreed to provide, subject to specified terms and conditions, "colocation" and other services for Atlas-owned Bitcoin mining equipment (the "Equipment") as specified in an attached "Order Form." Colocation services consist in providing a cryptocurrency mining facility, including rack space, electrical power, ambient air cooling, internet connectivity, and physical security for a customer's mining machines.

11.    Under the Master Agreement, Atlas was obligated to pay certain deposits and fees, including: (i) an "Initial Deposit" of $4,817,418.60 representing one month of "Monthly Service and Package Fees," due upon execution of the Order Form, and (ii) $9,706,836 in "Prepaid Fees" (i.e., prepaid Monthly Service and Package Fees) in twelve monthly "Incremental Prepayments" of $808,903.10, with the first "Incremental Prepayment" due on November 15, 2021.

12.    Atlas paid the Initial Deposit and the first two Incremental Prepayments, but the Incremental Prepayments were later refunded.

3

13. The Master Agreement called for Atlas' Equipment to be delivered in twelve monthly "batches" from January to December 2022.

14. In February 2022, Atlas delivered 560 mining machines to Compute North's "Wolf Hollow" facility, which was then under development in Granbury, Texas.

### C. The Change Order

15. On April 24, 2022, Compute North and Atlas executed a new Order Form (the "Change Order") that increased the Initial Deposit to $5,254,045.50, creating a new balance of $508,626.90 "due thirty (30) days prior to expected energization [of the Wolf Hollow facility]."

16. The Change Order also increased the total Prepaid Fees to $10,652,091 and the monthly Incremental Prepayment to $887,674.22, with the "Prepayment schedule [to] begin sixty (60) days prior to expected equipment go-live" and "due Prepaid Fees for each batch [of Equipment] [to] be paid thirty (30) days before batch shipment."

17. Like the initial Order Form, the Change Order called for the delivery of Equipment in monthly batches throughout 2022.

18. The Change Order did not specify a firm date by which Atlas' Equipment would be deployed. Rather, the Change Order provided that "Compute North [would] use commercially reasonable efforts to commence deployment of the Equipment at its Wolf Hollow data center facility on or before July 31, 2022."

19. As Compute North explained to Atlas during the Change Order negotiations:

[T]he project timelines we've been given from our EPC contractors reflect an expected energization of the first circuit at the site and subsequent containers for the last week of July 2022. With that said, we've been cautioned that this is an active construction site where timelines are fluid (ie 3-4 days of rain could change things), so we're not comfortable reflecting a firm date within the contract itself.

20. The Charge Order also provided for a specific monetary remedy if Compute North failed to deploy any Equipment by August 31: "The Hosting Service Rate for any Equipment that

4

is not deployed by August 31, 2022, shall be reduced to an amount that is equivalent to $0.057/kWh for three (3) months after such equipment has been deployed."

  **D.** **The Partial Assignment of the Master Agreement to Compute North's "Wolf Hollow" Operating Subsidiary**

  21. Effective April 27, 2022, Compute North entered into a Partial Assignment and Assumption Agreement (the "Assignment Agreement") with its subsidiary CN Wolf Hollow LLC ("CN Wolf Hollow"), the developer and operator of the Wolf Hollow facility, whereby it assigned to CN Wolf Hollow all of its right, title, and interest in and to, and all of its covenants and obligations under, its master agreements with Atlas and certain other customers insofar as such "Assigned Interests" and "Assigned Liabilities" related to the "Assigned Equipment" specified in the Assignment Agreement.

  22. The Assigned Equipment included approximately two thirds of the mining machines subject to the Master Agreement with Atlas, including the 560 machines delivered to the Wolf Hollow facility in February 2022.

  23. Atlas consented to the assignment in a duly executed "Amendment No. 1" to the Master Agreement.

  **E.** **Atlas' Failure to Deliver Equipment and Ineffectual Purported Termination of the Master Agreement**

  24. In May 2022, including in writing on May 23, Compute North informed Atlas that the first circuit at the Wolf Hollow facility was expected to "go live" no later than August 18, 2022, which date was later extended to August 24.

  25. Under the express terms of the Change Order, this made the "Month 1" Incremental Prepayment due on June 25, 2022 and the Initial Deposit balance and the "Month 2" Incremental Prepayment due on July 25, 2022.

26. On May 16 and again on May 18, 2022, Atlas' chief risk officer, Fan Gao, assured Compute North that Atlas would begin delivering Equipment on May 24, 2022.

27. In reliance on Ms. Gao's assurances, Compute North expended substantial time, effort, and money continuing to prepare the facility for the expected Equipment delivery, including engaging appropriate staffing and other resources.

28. Atlas failed to deliver any Equipment on May 24.

29. On June 16, 2022, Atlas sent Compute North a letter purporting to terminate the Master Agreement "pursuant to Section 5.5" and requesting "the return of its Initial Fees (including any and all prepayments) and [previously delivered] equipment under Sections 6.1 and 10.4 of the Agreement, respectively."

30. Section 5.5 of the Master Agreement provided that:

> Customer may terminate this Agreement upon written notice to Compute North if the number of Outage Days exceeds fourteen (14) in a calendar month. For purposes of this Section, 'Outage Day' means a calendar day during which the availability of power, internet connectivity, or both across the Equipment is less than ninety-five percent (95%) (excluding planned outages, the LRP Program, and force majeure) where Customer has notified Compute North in writing within two (2) days of the occurrence thereof.

31. Atlas, however, had not notified Compute North of a single "Outage Day."

32. Section 6.1 of the Master Agreement provided, in relevant part, that "[the] Initial Deposit . . . [is] non-transferrable under any circumstance and [is] refundable only to the extent that all of Customer's obligations under this Agreement have been fully satisfied except as expressly provided herein."

33. Atlas, however, had not fully satisfied its obligations under the Master Agreement. In fact, Atlas had failed to deliver Equipment and failed to timely pay the Initial Deposit balance and the Month 1 Incremental Prepayment.

34. Section 10.4 of the Master Agreement provided that "Compute North shall decommission and make the corresponding Equipment available to Customer for pickup at, or shipment from, the Facility within sixty (60) business days of Customer's written request," but only if "Customer has paid all amounts then due and owing under this Agreement."

35. As set forth above, Atlas had not paid all amounts then due and owing to Compute North.

36. On June 24, 2022, Compute North responded to Atlas' purported termination notice and several "termination follow up" letters, pointing out that "Atlas did not provide notice of any Outage Days during any calendar month, so it does not have any basis for invoking its termination rights under Section 5.5[,] [and that] Atlas' purported notice of termination therefore is of no effect and Atlas is not entitled to the return of any contracted Equipment or fees."

37. The letter further noted that "[b]ecause grounds do not exist for Atlas to terminate the Master Agreement, Atlas remains obligated to pay the balance of the Initial Deposit and the Prepaid Fees to which it agreed in the change order it executed on April 24, 2022."

38. Invoices for those amounts were enclosed with the letter.

39. The letter also addressed Atlas' failure to deliver Equipment in accordance with its contractual obligations:

> Atlas contractually agreed to deliver its contracted Equipment to the Facility. Contrary to your prior assertion that the Master Agreement does not say 'when' delivery must occur, Atlas agreed in the April 24 Change Order (and before that, in the September 2, 2021 Order Form) to deliver its Equipment in monthly batches from January to December 2022. Following Atlas' failure to commence delivery of its Equipment as promised, Atlas' Chief Risk Officer Fan Gao represented on May 16, 2022, and again on May 18, 2022, that Atlas would commence delivery of its miners on May 24, 2002. When Atlas failed to do so, [Compute North's chief legal officer, Jason Stokes] demanded on June 7, 2022, that Atlas commence delivery by June 22, 2022, which Atlas still has not done.

40. Finally, the letter "constitute[d] written notice under Section 5.3 of the Master Agreement that Atlas' failure to deliver its Equipment to the Facility constitutes a Default under the Master Agreement that Atlas must remedy within 10 days of the date hereof."

41. Section 5.3 of the Master Agreement provided that:

> Compute North may terminate this Agreement for cause immediately upon written notice to Customer if Customer fails for ten (10) days to make any payment(s) due pursuant to this Agreement, and either party may terminate this agreement for cause immediately upon written notice to the other party if the other party: (a) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and any such matter is not cured within ten (10) days after written notice from the other party; or (b) enters into bankruptcy, dissolution, financial failure or insolvency (each, a "Default").

### F. Atlas' Failure to Pay Amounts Due and Owing and Compute North's Termination of the Master Agreement

42. On June 27, 2022, Compute North sent a letter informing Atlas that, because it had not timely paid the invoice due on June 25, it would be in default under Section 5.3 of the Master Agreement if Compute North did not receive full payment of that invoice within the contractual cure period—i.e., by July 5, 2022.

43. On July 11, 2022, after Atlas had failed to cure its nonpayment of the Month 1 Prepayment Fee, Compute North sent Atlas a letter terminating the Master Agreement and demanding payment in accordance with the agreement's terms. The letter stated that:

> Atlas had until July 5, 2022, to rectify its nonpayment of Invoice No. AR-INV01411. Atlas did not, so all amounts due for the remainder of the applicable term of the Master Agreement were immediately due and payable as of July 6, 2022, pursuant to Section 5.4 of the Master Agreement. Payment in full of those now past-due amounts is hereby demanded, and invoices for both the remaining Prepaid Fees and for the Monthly Service Fees and Package Fees are enclosed for Atlas' convenience.

44. Section 5.4 of the Master Agreement provided that:

> In the event of a Default by Customer and such Default is not rectified within ten (10) days as provided in Section 5.3, Compute North shall have the right, but not the obligation, to terminate this Agreement on written notice to Customer, and

Customer shall pay immediately to Compute North all amounts then owed under this Agreement and, as liquidated damages and not a penalty, all amounts due for the remainder of the applicable term of the Agreement. If Customer fails to make any such payments within ten (10) days thereafter, in addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of such Equipment having a market value sufficient to satisfy all amounts then due under this Agreement, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Equipment without any cost, obligation or liability of Compute North to Customer.

45. The letter "further constitute[d] written notice under Sections 5.3 and 5.4 that Compute North is hereby terminating the Master Agreement, effective immediately," and reminded Atlas that "[n]otwithstanding Compute North's termination of the Master Agreement, Atlas remain[ed] obligated to pay all amounts due prior to termination, including but not limited to the amounts evidenced by the enclosed invoices and the invoices enclosed with [Compute North's] June 24, 2022 letter."

46. Invoices for the additional amounts due in accordance with Section 5.4 were enclosed with the letter.

47. Previously, on June 29 and July 6, 2022, Compute North sent Atlas invoices for Service and Package Fees and other fees for the 560 mining machines deployed at the Wolf Hollow facility.

48. As reflected in the above-referenced invoices, Atlas owes the following amounts to Compute North and CN Wolf Hollow, collectively:

| Description | Amount |
|---|---:|
| | |
| Initial Deposit balance | $508,626.90 |
| Service and Package Fees and other fees for the 560 deployed mining machines | $79,351.00 |
| Months 1-2 Incremental Prepayments | $1,775,348.44 |
| Months 3-12 Incremental Prepayments | $8,876,742.20 |
| Accelerated Service and Package Fees | $136,549,534.38 |
| | |
| **Total** | **$147,789,602.92** |

49. Atlas has not paid any of these amounts. Nevertheless, upon information and belief, Atlas has retaken possession of the 560 mining machines it delivered to Compute North's Wolf Hollow facility.

50. CN Wolf Hollow has assigned to plaintiff Mining Project Wind Down Pledgor LLC all of its right, title, and interest in, to, and under all claims, causes of action, and rights of recovery against Atlas.

## COUNT ONE
### (Breach of Contract)

51. Paragraphs 1 – 50 are incorporated by reference.

52. The Master Agreement was a validly formed contract.

53. The Master Agreement was validly amended by the Change Order.

54. Compute North and CN Wolf Hollow fulfilled their obligations under the Master Agreement.

55. Atlas breached the Master Agreement as set forth above.

56. Compute North and CN Wolf Hollow were damaged as a result of Atlas' breaches.

## COUNT TWO
### (Turnover Pursuant to 11 U.S.C. § 542(b))

57. Paragraphs 1 – 56 are incorporated by reference.

58. The amounts due and owing from Atlas under the Master Agreement constitute a matured debt that is property of Plaintiffs' estates.

59. Accordingly, Plaintiffs are entitled to a turnover order pursuant to 11 U.S.C. § 542(b) requiring Atlas to pay such debt, except to the extent such debt may be offset pursuant to 11 U.S.C. § 533.

## COUNT THREE
### (Claim Objection)
### (11 U.S.C. § 502; Fed. R. Bankr. P. 3007)

60. Paragraphs 1 – 59 are incorporated by reference.

61. On November 21, 2022, Atlas filed a proof of claim number 10079 (the "Claim") in Compute North's bankruptcy case, asserting a claim "in the amount of $5,066,666.91, any interest and fees chargeable under the Master Agreement or under applicable law, and return of (or, as required, the value of) [its] Miners."

62. The purported basis for Atlas' Claim is that "Atlas has paid in the form of deposits and prepayments $5,066,666.91 to receive services and equipment under the terms of the Master Agreement and the Order Form" and that "Atlas has not received corresponding benefits as a result of these payments, resulting in a financial loss and damages to Atlas."

63. Atlas' Claim does not state a valid right to payment by Compute North's estate because, as set forth above, Atlas is not entitled to the return of either its deposits or its prepayments pursuant to the Master Service Agreement, and, upon information and belief, any Equipment delivered to Compute North's Wolf Hollow facility has already been returned.

64. As also set forth above, Compute North is entitled to breach of contract damages from Atlas in an amount far exceeding the amount of Atlas' Claim.

65. Atlas' Claim does not assert a valid right to payment for which Compute North is liable in any amount. Accordingly, Compute North hereby objects to Atlas' Claim, which should be disallowed in its entirety, or, alternatively, reduced to zero via setoff or recoupment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in their favor and the following relief:

11

a. As to Count One, damages in an amount not less than $147,789,602.92, plus contractual and prejudgment interest;

b. As to Count Two, a turnover order pursuant to 11 U.S.C. § 542(b) requiring Atlas to pay its $147,789,602.92 debt to Plaintiffs, with contractual and prejudgment interest;

c. As to Count Three, an order sustaining Compute North's objection to Atlas' Claim and disallowing and expunging Atlas' Claim in its entirety or otherwise reducing it to zero;

d. Recovery of Plaintiffs' attorney's fees and other fees and costs incurred in connection with this adversary proceeding; and

e. Such other and further relief as the Court deems just and proper.

Dated: January 19, 2023

/s/ *James T. Grogan III*
**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

*Counsel to Debtor-Plaintiffs Mining Project Wind Down LLC (f/k/a Compute North LLC) and Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC)*

-and-

**FERGUSON BRASWELL**
**FRASER KUBASTA PC**

By: /s/ *Rachael L. Smiley*
Rachael L. Smiley (TX Bar No. 24066158)
Tory A. Cronin (TX Bar No. 24055362)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:    972-378-9115
Email:  rsmiley@fbfk.law
            tcronin@fbfk.law

*Proposed Efficiency Counsel for Debtor-Plaintiffs Mining Project Wind Down LLC (f//k/a Compute North LLC) and Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC)*

LEGAL_US_E # 166331546.5