IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| MINING PROJECT WIND DOWN § | |
| HOLDINGS, INC. (f/k/a Compute North § | Case No. 22-90273 (MI) |
| Holdings, Inc.), *et al.*,[1] § | |
| § | (Jointly Administered) |
| Debtors. | |

**DECLARATION OF ROHIT SHIROLE IN SUPPORT OF HIS EMERGENCY MOTION FOR TEMPORARY ALLOWANCE OF CLAIM FOR PURPOSES OF VOTING PURSUANT TO FED. R. BANKR. P. 3018(a) AND OTHER RELIEF PURSUANT TO 11 U.S.C. § 105**

I, Rohit Shirole, hereby declare that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am an individual resident of Hennepin County, Minnesota, and was formerly employed by Debtors Mining Project Wind Down LLC (f/k/a Compute North LLC ("Compute North")) and Mining Project Wind Down Holdings Inc (f/k/a Compute North Holdings, Inc.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

("Holdings," and collectively with Compute North, "Defendants" or "Debtors")) as a Vice President of Strategy and Business Development.

2. On March 27, 2021, I entered into that certain 2021 Sales Commission Plan (the "Commission Plan") with the Debtors, pursuant to which, I was to be paid commissions on colocation services, logistics sales, customer funded capital expenditures, and colocated equipment sales. A true and correct copy of the Commission Plan is attached hereto as **Exhibit A**.

3. On or about December 1, 2020, I entered into that certain Restricted Stock Award Agreement (the "Stock Agreement") with the Debtors. A true and correct copy of the Restricted Stock Agreement is attached hereto as **Exhibit B**.

4. Throughout my employment with the Debtors, the Debtors regularly failed to make timely and full payments of commissions to me and failed to provide me commission statements for four consecutive months—namely, May, June, July, and August of 2021.

5. Further, the commission statements I received from the Debtors reflected inaccurate information, and my payments were sometimes off by tens of thousands of dollars.

6. I regularly raised issues with the decisions of the Debtors' management to "deprioritize" the company's customer contractual obligations in favor of the interests of the Debtors' (and the Debtors' officers') own digital currency mining interests.

7. I also raised issues with Management of the Debtors regarding perceived inaccuracies in financial reporting, and reported various inappropriate and improper comments regarding racial demographics with respect to determining future site locations to the Debtors' HR department.

8. After I reported such conduct, my employment was suspended by the Debtors.

9. On December 7, 2021, through counsel, I informally sent a copy of a civil complaint to the Debtors, indicating to the Debtors that I would pursue a lawsuit if my wrongful suspension was not lifted.

10. The day after the informal delivery of the initial complaint to the Debtors, on December 8, 2021, the Debtors terminated my employment.

11. On December 10, 2021, my counsel demanded payment of all compensation due to me after my termination pursuant to Minn.Stat. § 181.111 and § 181.45. Attached hereto as **Exhibit C** is a true and correct copy of the letter sent to counsel for the Debtors. No additional compensation demanded was forthcoming within the required timeline.

12. In addition, after I was told I would be terminated, my counsel demanded the truthful reason for my termination in writing. Attached hereto as **Exhibit D** is a true and correct copy of the e-mail sent to counsel for the Debtors. No response from the Debtors was received within 10 days of that demand as required by Minn.Stat. § 181.933, sub. 1.

13. On December 17, 2021, through counsel, I formally served a copy of the complaint (the "Complaint"), thereby commencing a lawsuit against Defendants in the Fourth Judicial District for the State of Minnesota, Hennepin County, styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274, alleging claims against the Defendants under Minnesota law for, *inter alia*, discrimination, retaliation, wage loss, wrongful termination, breach of contract, and unjust enrichment (the "Minnesota Action"). Attached hereto as **Exhibit E** is a true and correct copy of the Amended Complaint filed in the Minnesota Action.

14. On or about January 21, 2022, the Defendants answered the Amended Complaint and filed counterclaims against me for breach of the duty of loyalty, tortious interference with contract, and unfair competition. Attached hereto as **Exhibit F** is a true and correct copy of the Answer and Counterclaim filed in the Minnesota Action.

15. On February 23, 2022, I filed a reply to the Defendants' Counterclaims. Attached hereto as **Exhibit G** is a true and correct copy of my Reply to the Counterclaims filed in the Minnesota Action.

16. The Debtors and I proceeded with the Minnesota Action for months, including through mediation in August 2022.

17. As part of the Minnesota Action, prior to mediation, the Debtors provided certain information regarding commissions purportedly owed to me. A true and correct copy of that information and the email from Debtors' (prior) counsel to which it was appended is attached hereto as **Exhibit H**.

18. The information provided to me by the Debtors includes, upon information and belief, official business records of the Debtors, sent to me, through counsel, as early as December 6, 2021, demonstrating that the Debtors owed commissions to me in the minimum amount of $3,905,866.40. (*See* Exhibit H)

19. The amounts set forth in Exhibit H were significantly incorrect for multiple reasons, including the exclusion of CapEx Contribution sales, certain hardware sales, certain colocation sales, and inaccuracies regarding the Commission Plan.

20. The mediation related to the Minnesota Action was ultimately unsuccessful and the parties did not reach resolution.

21. At the time of my termination, I owned 36,309 shares of stock in the Debtors.

22. During the course of my employment with the Debtors as a sales executive, I made substantial ongoing sales of more than $2 billion in revenue. (*See* Exhibit I (as defined herein)).

23. Under the Commission Plan, I understood that I was entitled to commissions with respect to sale of colocation services upon the occurrence of three conditions: (1) the client had executed the agreement and/or order form, (2) the client had paid the "down deposit.". and (3) the

equipment had been received and turned up (if applicable within 12 months of my termination. (*See* Exhibit A, p. 1)

24.  At the time of my termination, such criteria had been met with respect to numerous hosting clients whose accounts I managed—namely, the following (*See* Tab 1 of Exhibit I (as defined herein)):

- Altonomy db,
- Atlas Mining,
- Bit Digital,
- Compass Mining,
- Culver Ventures,
- GEM Mining,
- Gilley Enterprises,
- Haylo Group,
- Integrated Ventures,
- Konza Mining,
- Marathon DH,
- NFN8,
- Omnific Ventures,
- Optimal Founders,
- SupplyBit,
- Teracel,
- Touzi Capital,
- U.S. Bitcoin,
- Value Chain Venture,
- Wayfaring Corp.,
- White Rock Management, and
- Zero G Capital.

25.  The total amount of colocation/hosting commissions to which I was entitled as of the date of my termination is $9,197,345.93. (*See* Tab 1 of Exhibit I)[2]

---

[2] As of the date of the submission of this Declaration, through counsel, I requested additional information from the Debtors regarding sales and other records relevant to the determination of these commission amounts. Such information has not yet been provided by the Debtors despite multiple requests. I reserve the right to modify such determinations based on additional documents that may be provided to me.

26. Also under the Commission Plan, I understood that I was entitled to commissions with respect to equipment sales immediately after the equipment was received by the client and the client had paid. (*See* Exhibit A, p. 1)

27. With respect to equipment sales, I met the necessary criteria for earning commissions with respect to numerous sales in favor of the following customers (*See* Tab 2 of Exhibit I):[3]

- Compass Mining
- Culver Ventures
- GEM Mining
- Gilley Enterprises
- Haylo Group
- Konza Mining
- NFN8
- Omnific Ventures
- Optimal Founders
- VCV (Value Chain Ventures)
- Wayfaring Group
- Zero G Capital

28. The total amount of equipment sale commissions to which I was entitled as of the date of my termination is $1,673,622.00. (*See* Tab 2 of Exhibit I)

29. Also under the Commission Plan, I understood I was entitled to commissions on customer CapEx Contribution sales in the amount of 1%. (*See* Exhibit A, p. 4)

30. With respect to CapEx Contribution sales, I was entitled to commissions with respect to projects by U.S. Bitcoin and Marathon Digital Holdings (*See* Tab 3 of Exhibit I)[4]

31. The total amount of CapEx Contribution commissions to which I was entitled at the time of my termination was $449,000.00. (*See* Tab 3 of Exhibit I)

---

[3] *See* FN 2, *supra*

[4] *See* FN 2, *supra*

32. Accordingly, the total amount of commissions to which I was entitled at the time of my termination is **$11,319,967.93**. Attached hereto as **Exhibit I** is a true and correct copy of a breakdown of the commissions I earned on sales referenced in paragraphs 23-30 of this Declaration. Exhibit I was prepared by me with information available to me at the time of this Declaration.[5]

33. On March 7, 2021, approximately three months after my termination, the Debtors elected, pursuant to the Restricted Stock Agreement, to repurchase 36,308 of the 36,309 shares in the Debtors I owned. Attached hereto as **Exhibit J** is a true and correct copy of the letter I received from the Debtors in that respect.

34. Upon information and belief, at or near the time of this purported repurchase, the per share market price represented by the Debtors to potential investors was $254.00, which calculates to a value of $9,222,232.00 that should have been remitted to me for the repurchase of my 36,308 shares.

35. The Debtors took possession and control of such shares by removing them from my "Carta" equity management solutions account (the account in which my shares were held)—but never remitted any funds to me as consideration for the appropriated shares. I was therefore prohibited from selling my shares for fair market value at that time.

36. I have not received any amounts in exchange for the shares taken from me by the Debtors. I hold one remaining share.

37. My salary in the year prior to my termination was approximately $1,352,672.

38. I filed two proofs of claim in this matter [Claims 10055 and 10056] (the "Claims") related to my claims against the Debtors, both of which have now been amended to reflect the

---

[5] *See* FN 2, *supra*

most current information and calculations regarding commissions and other items of damage in my possession [Claims 10160 and 10161, respectively], in the total amount of $32,453,436.89, jointly and severally. True and correct copies of the Claims, as amended, are attached hereto as **Exhibit K** and **Exhibit L**, respectively.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Executed on January 27, 2023

By:   */s/ Rohit Shirole*
      Rohit Shirole