# EXHIBIT B

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

# RESTRICTED STOCK AWARD AGREEMENT

# COMPUTE NORTH HOLDINGS, INC.

**THIS AGREEMENT** is made effective as of this 1st day of December, 2020, by and between Compute North Holdings, Inc., a Delaware corporation (the "Company"), and Rohit Shirole ("Participant").

## W I T N E S S E T H:

**WHEREAS**, Participant is, on the date hereof, an employee of the Company or one of its Affiliates; and

**WHEREAS**, the Company wishes to grant a restricted stock award to Participant for shares of the Company's Common Stock; and

**WHEREAS**, the Board of Directors of the Company has authorized the grant of a restricted stock award to Participant;

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants herein contained, the parties hereto agree as follows:

1.   **Grant of Restricted Stock Award**.  The Company hereby grants to Participant on the date set forth above a restricted stock award (the "Award") for Forty-Eight Thousand Four Hundred Twelve (48,412) shares of Common Stock (the "Shares") on the terms and conditions set forth herein.  The Company shall cause to be issued one or more stock certificates (or, upon request and if permitted in the Company's discretion, an entry to be made in the books of the Company or its designated agent) representing such Shares in Participant's name, and may deliver such stock certificate to Participant or may hold each such certificate until such time as the risk of forfeiture and other transfer restrictions set forth in this Agreement have lapsed with respect to the Shares represented by the certificate.  The Company may also place a legend on such certificates describing the risks of forfeiture and other transfer restrictions set forth in this Agreement providing for the return from Participant, if applicable, and cancellation of such certificates if the Shares are forfeited as provided in Section 2 below.  Until such risks of forfeiture have lapsed or the Shares have been forfeited pursuant to Section 2 below, Participant shall be entitled to vote the Shares represented by such stock certificates and shall receive all dividends attributable to such Shares, but Participant shall not have any other rights as a stockholder with respect to such Shares.

2.   **Lapse of Risk of Forfeiture for Restricted Stock**.

a.   **General**.  Except as otherwise provided in this Section 2, the Shares subject to this Award shall remain forfeitable until the risks of forfeiture lapse according to the

PLF000184

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

| Vesting Date | Number of Shares for Which Risks of Forfeiture Lapse |
|---|---|
| December 1, 2020 | 24,206 shares |
| August 13, 2021 | 12,103 shares |
| August 13, 2022 | 12,103 shares |

  b. **Termination of Employment**.  If Participant ceases to be an employee of the Company or any of its Affiliates due to the involuntary termination by the Company with Cause or due to Participant's voluntary resignation, Participant shall immediately forfeit all Shares subject to this Award as to which the risks of forfeiture have not lapsed.  If Participant ceases to be an employee of the Company or any of its Affiliates due to involuntary termination by the Company without Cause, the risks of forfeiture shall immediately lapse with respect to all Shares subject to this Award.

  c. **Change of Control**.  Notwithstanding anything in this Section 2 to the contrary, in the event of a Change of Control of the Company, the risks of forfeiture shall immediately lapse with respect to all Shares subject to this Award on the effective date of such Change of Control.

 3. **General Provisions**.

  a. **Employment or Other Relationship**.  This Agreement shall not confer on Participant any right with respect to continuance of employment or other relationship by the Company or any of its Affiliates, nor will it interfere in any way with the right of the Company to terminate such employment or relationship.  Nothing in this Agreement shall be construed as creating an employment or service contract for any specified term between Participant and the Company or any Affiliate.

  b. **280G Limitations**.  Notwithstanding anything in this Agreement or in any other agreement, plan, contract or understanding entered into from time to time between Participant and the Company or any of its Subsidiaries to the contrary (except an agreement that expressly modifies or excludes the application of this Section 3(b)), the lapse of the risks of forfeiture of this Award shall not be accelerated in connection with a Change of Control to the extent that such acceleration, taking into account all other rights, payments and benefits to which Participant is entitled under any other plan or agreement, would constitute a "parachute payment" or an "excess parachute payment" for purposes of Code Sections 280G and 4999, or any successor provisions, and the regulations issued thereunder; provided, however, that the Administrator, in its sole discretion and in accordance with applicable law, may modify or exclude the application of this Section 3(b).

  c. **Securities Law Compliance**.  Participant shall not transfer or otherwise dispose of the Shares received pursuant to this Award until such time as the Company and its counsel shall have determined that such transfer or other disposition will not violate any state or federal securities laws.  Participant may be required by the Company, as a condition of the effectiveness of this Award, to give any written assurances that are necessary or desirable in the opinion of the Company and its counsel to ensure the issuance complies with applicable

PLF000185

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

securities laws, including that all Shares subject to this Award shall be held, until such time that such Shares are registered and freely tradable under applicable state and federal securities laws, for Participant's own account without a view to any further distribution thereof; that the certificates (or, if permitted, book entries) for such Shares shall bear an appropriate legend or notation to that effect; and that such Shares will be not transferred or disposed of except in compliance with applicable state and federal securities laws.

d. **Mergers, Recapitalizations, Stock Splits, Etc.** In the event of an increase or decrease in the number of shares of Common Stock of the Company resulting from a stock dividend, stock split, reverse split, combination or reclassification of such Common Stock, or any other increase or decrease in the number of issued shares of Common Stock effected without receipt of consideration by the Company, other than due to conversion of the convertible securities of the Company, the Company shall adjust the number of Shares covered by this Award (*i.e.*, Participant shall have such "anti-dilution" rights under this Agreement with respect to such events, but, subject to the Company's discretion, shall not have "preemptive" rights). Any additional shares that are credited to this Award pursuant to such adjustment shall be subject to the same restrictions as are applicable to the Shares with respect to which the adjustment relates.

e. **Shares Reserved**. The Company shall at all times during the term of this Award reserve and keep available such number of shares of Common Stock as will be sufficient to satisfy the requirements of this Agreement.

f. **Withholding Taxes**. To permit the Company to comply with all applicable federal and state income tax laws or regulations, the Company may take such action as it deems appropriate to ensure that, if necessary, all applicable federal and state payroll, income or other taxes attributable to this Award are withheld from any amounts payable by the Company to Participant. If the Company is unable to withhold such federal and state taxes, for whatever reason, Participant hereby agrees to pay to the Company an amount equal to the amount the Company would otherwise be required to withhold under federal or state law prior to the transfer of any certificates for the Shares subject to this Award. Subject to such rules as the Company may adopt, the Company may, in its sole discretion, permit Participant to satisfy such withholding tax obligations, in whole or in part, by delivering shares of the Company's Common Stock, including Shares received pursuant to this Award, having a Fair Market Value, as of the date the amount of tax to be withheld is determined under applicable tax law, equal to the statutory minimum amount required to be withheld for tax purposes. In no event may the Participant deliver shares of Common Stock having a Fair Market Value in excess of such statutory minimum required tax withholding. Participant's election to deliver shares of Common Stock for purposes of such withholding tax obligations shall be made on or before the date that triggers such obligations or, if later, the date that the amount of tax to be withheld is determined under applicable tax law, and shall be irrevocable as of such date if approved by the Administrator. Participant's request shall comply with such rules as the Company may adopt to assure compliance with Rule 16b-3, if applicable.

g. **Nontransferability**. No portion of this Award for which the risks of forfeiture have not lapsed may be assigned or transferred, in whole or in part, other than by will or by the laws of descent and distribution.

PLF000186

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

h. **Lockup Period Limitation**. Participant agrees that in the event the Company advises Participant that it plans an underwritten public offering of its Common Stock in compliance with the Securities Act of 1933, as amended, the Participant will execute any lock-up agreement the Company and the underwriter(s) deem necessary or appropriate, in their sole discretion, in connection with such public offering.

i. **Blue Sky Limitation**. Notwithstanding anything in this Agreement to the contrary, in the event the Company makes any public offering of its securities and determines, in its sole discretion, that it is necessary to reduce the number of restricted stock awards so as to comply with any state securities or Blue Sky law limitations with respect thereto, the Board of Directors of the Company shall remove the risks of forfeiture (in full or in part) to which this Award is subject, provided that the Company gives Participant 15 days' prior written notice of such removal. Notice shall be deemed given when delivered personally or when deposited in the United States mail, first class postage prepaid and addressed to Participant at the address of Participant on file with the Company.

j. **Affiliates**. Participant agrees that, if Participant is an "affiliate" of the Company or any Affiliate (as defined in applicable legal and accounting principles) at the time of a Change of Control, Participant will comply with all requirements of Rule 145 of the Securities Act of 1933, as amended, and the requirements of such other applicable legal or accounting principles, and will execute any documents necessary to ensure such compliance.

k. **Stock Legend**. The Administrator may require that the certificates (or, if permitted, book entries) for any Shares issued to Participant (or, in the case of death, Participant's successors) shall bear an appropriate legend or notation to reflect the restrictions of Section 3(c) and Sections 3(h) through 3(j) of this Agreement; provided, however, that failure to so endorse any of such certificates shall not render invalid or inapplicable Section 3(c) or Section 3(h) through 3(j).

m. **Shareholders Agreement**. Participant hereby agrees (a) that the Shares, and any other shares of capital stock or securities required by any Company Shareholder Agreement (including Buy-Sell Agreements) to be bound thereby, shall be bound by and subject to the terms of said Shareholder Agreement, and (b) adopts any Shareholder Agreement with the same force and effect as if Participant were originally a party thereto as a "Shareholder" (as defined in the Shareholder Agreement) for all purposes of said Shareholder Agreement. The Company may also, at its election, require the Participant (or any permitted transferee of the Participant) to sell to the Company all or any portions of the Participant's nonrestricted Shares for their Fair Market Value on date of the Recipient's termination of employment with the Company (or its Affiliate). The Company's call right shall be effective within 90 days of the Recipient's termination of employment and the closing for the purchase of such Shares shall be made within 45 days thereafter. The call and purchase of Shares hereunder are subject to any applicable provisions of the Bylaws, Articles of Incorporation and any Shareholder Agreement.

n. **Scope of Agreement**. This Agreement shall bind and inure to the benefit of the Company and its successors and assigns and of Participant and any successors of Participant. This Award is expressly subject to all terms and conditions contained in this

PLF000187

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

Agreement, and Participant's failure to execute this Agreement shall not relieve Participant from complying with such terms and conditions.

    o.    **Choice of Law**. The law of the state of Delaware shall govern all questions concerning the construction, validity, and interpretation of this Agreement, without regard to that state's conflict of laws rules.

    p.    **Severability**. In the event that any provision of this Agreement shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of this Agreement, and this Agreement shall be construed and enforced as if the illegal or invalid provision had not been included.

4.    **Definitions**. For purposes of this Agreement, the following terms shall have the meanings set forth below:

    a.    "Affiliates" means a parent or subsidiary organization of the Company within the meaning of Code Section 424(e) and Code Section 424(f).

    b.    "Cause" means (i) the commission by Participant of a felony or any other act or omission by Participant involving dishonesty, embezzlement, misappropriation, fraud or moral turpitude; (ii) misconduct by Participant in the performance of his duties under any employment or other agreement between Participant and the Company or any of its Affiliates; (iii) the failure of Participant to follow the reasonable directives of the Board of Directors of the Company and the officers of the Company to whom Participant reports; (iv) the breach by Participant of any of his obligations under any employment or other agreement between Participant and the Company or any of its Affiliates; (v) the unauthorized dissemination of confidential information by Participant; (vi) the Participant's violation of Company policies, including but not limited to its code of conduct, its nondiscrimination policies, its non-harassment policies, or any other policies in the Company's employee handbook; or (vii) misconduct by Participant which causes harm or prejudice to the Company or any of its Affiliates or to their reputation.

    c.    "Change of Control" means:

    (i)    The purchase or other acquisition by any one person, or more than one person acting as a group, of stock of the Company that, together with stock held by such person or group, constitutes more than fifty percent (50%) of the total combined value or total combined voting power of all classes of stock issued by the Company; provided, however, that if any one person or more than one person acting as a group is considered to own more than 50% of the total combined value or total combined voting power of such stock, the acquisition of additional stock by the same person or persons shall not be considered a Change of Control;

    (ii)    A merger or consolidation to which the Company is a party if the individuals and entities who were shareholders of the Company immediately prior to the effective date of such merger or consolidation have, immediately following

5

PLF000188

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

the effective date of such merger or consolidation, beneficial ownership (as defined in Rule 13d-3 under the Securities Exchange Act of 1934) of less than fifty percent (50%) of the total combined voting power of all classes of securities issued by the surviving entity for the election of directors of the surviving entity; or

(iii) The purchase or other acquisition by any one person, or more than one person acting as a group, of substantially all of the total gross value of the assets of the Company during the twelve (12) month period ending on the date of the most recent purchase or other acquisition by such person or persons. For purposes of this Section 4(c)(iii), "gross value" means the value of the assets of the Company or the value of the assets being disposed of, as the case may be, determined without regard to any liabilities associated with such assets.

To the extent required, the determination of whether a Change of Control has occurred shall be made in accordance with Code Section 409A and the regulations, notices and other guidance of general applicability issued thereunder.

d. "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

e. "Fair Market Value" of the Company's Common Stock means (i) if such Stock is listed on the New York Stock Exchange, NASDAQ or other established stock exchange, the price of such Stock at the close of the regular trading session of such market or exchange on such date, as reported by <u>The Wall Street Journal</u> or a comparable reporting service, or, if no sale of such Stock shall have occurred on such date, on the next preceding date on which there was a sale of Stock; (ii) if such Stock is not so listed on the New York Stock Exchange, NASDAQ or other established stock exchange, the average of the closing "bid" and "asked" prices quoted by the OTC Bulletin Board, the National Quotation Bureau, or any comparable reporting service on such date or, if there are no quoted "bid" and "asked" prices on such date, on the next preceding date for which there are such quotes; or (iii) if such Stock is not publicly traded as of such date, the per share value as determined by the Board of Directors in its sole discretion by applying principles of valuation with respect to the Company's Common Stock.

*[Signature Page to Follow]*

PLF000189

DocuSign Envelope ID: 94C49E2E-DF56-4C6E-A38E-82EA1F901826

ACCORDINGLY, the parties hereto have caused this Agreement to be executed on the day and year first above written.

**COMPUTE NORTH HOLDINGS, INC.**

By: *Marshall Johnson*
———243B9EDC03644E0———
Marshall Johnson
President

*Rohit Shirole*
———31C084B8926E43E...———
Rohit Shirole, Participant