EXHIBIT J



March 7, 2022

**Via FedEx and Email** (*roshirole@yahoo.com*)

Rohit Shirole
17510 County Road 101W
Wayzata, MN 55391-2862

**Re:** Election by Compute North Holdings, Inc.

Dear Mr. Shirole:

Reference is made to that certain Restricted Stock Award Agreement dated December 1, 2020 (the "RSA Agreement") by and among you and Compute North Holdings, Inc. ("Holdings"). Capitalized terms used in this letter and not otherwise defined herein shall have the same meanings as in the RSA Agreement.

This letter constitutes written notice that Compute North is electing under Section 3(m) of the RSA Agreement to require you to sell to Holdings 36,308 of your 36,309 nonrestricted Shares for their Fair Market Value on the date of your termination of employment with Holdings' Affiliate, Compute North LLC.

As a Holdings stockholder, you remain subject to the terms and conditions of its Second Amended and Restated Stockholders' Agreement, a copy of which is enclosed, including but not limited to the confidentiality and nonuse restrictions set forth in Section 2.1.

Thank you for your attention to this matter.

**COMPUTE NORTH HOLDINGS, INC.**

David Movius
General Counsel and Secretary

Enclosure

Copy:  Emeric Dwyer (*edwyer@chestnutcambronne.com*)
       Spencer Barron, Chief Administrative Officer

   

7575 Corporate Way, Eden Prairie, MN 55344   +1 952-279-0550   info@computenorth.com   www.computenorth.com

# SECOND AMENDED AND RESTATED

# STOCKHOLDERS' AGREEMENT

# OF

# COMPUTE NORTH HOLDINGS, INC.

Dated as of: February 7, 2022

## STOCKHOLDERS' AGREEMENT

THIS SECOND AMENDED AND RESTATED STOCKHOLDERS' AGREEMENT (this "Agreement") is made and entered into as of February 7, 2022 (the "Effective Date"), by and among Compute North Holdings, Inc., a Delaware corporation (the "Company") and the individuals listed on Schedule A (the "Stockholders").  Capitalized terms used but not defined herein shall have their meanings assigned to them in the Right of First Refusal and Co-Sale Agreement, dated February 2, 2022, between the Company and the Investors, as amended by Amendment No. 1 dated February 7, 2022 (as further amended, the "ROFR and Co-Sale Agreement").

The Company and the Stockholders each hereby agree as follows:

1. Lock-Up.

    1.1.  Notwithstanding anything to the contrary in this Agreement, except for transfers and offerings described in Sections 3.1 and 3.2 of the ROFR and Co-Sale Agreement, respectively (which transfers or offerings applicable to Key Holders shall apply to all Holders mutatis mutandis for purposes of Section 2.3 of the ROFR and Co-Sale Agreement), no Holder shall transfer any capital stock of the Company (whether now owned or hereinafter acquired) to any Person, prior to the first anniversary of the date of this Agreement, unless otherwise approved by the Investors holding 50% of the outstanding shares of Preferred Stock (or Common Stock issued or issuable upon conversion of the Preferred Stock), (it being understood that any such approval shall not constitute a waiver of any obligations under the other provisions of this Section 2, and any transfer of such stock after such first anniversary shall be made subject to compliance with the other provisions of this Section 1.1, unless expressly waived as otherwise set forth in this Agreement).

2. Miscellaneous.

    2.1.  Confidentiality. Any and all confidential information of the Company will remain confidential and the property of the Company and will not be disclosed by any Stockholder (or the Stockholder's employees, advisors or agents) or used for a Stockholder's own benefit or purpose, except (a) to the extent that a Stockholder must disclose such information to comply with applicable law or for fund reporting purposes, (b) that any Stockholder will be permitted to disclose such information to its members, shareholders or partners (or any of their members, shareholders or partners) or to any lender of the Company, (c) that information may be disclosed on a confidential basis in connection with a sale or transfer of shares of capital stock permitted hereunder, and (d) as necessary to comply with such Stockholder's obligations under this Agreement or to enforce, or defend against claims under, this Agreement or related to the relationships hereunder.  The information intended to be protected hereby will include, but not be limited to, financial information, customers, sales representatives and anything else having an economic or pecuniary benefit to the Company.  The obligations of the Stockholders under this Section 2.1 shall terminate upon a Sale of the Company and may be enforced by the Company or any Stockholder or Stockholders holding 100% of the shares of Class A Voting Common Stock then outstanding.  Confidential information under this Section 2.1 shall not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by

1

such Stockholder, (ii) was in the possession of or available to such Stockholder on a non-confidential basis before its disclosure to such Stockholder by the Company, any of its subsidiaries, any of their representatives or agents, (iii) becomes available to such Stockholder on a non-confidential basis from a source other than the Company, any of its subsidiaries or any of their representatives or agents, provided that such source is not bound by a confidentiality agreement with the Company or any of its subsidiaries or any of their representatives or agents or otherwise prohibited from transmitting the information to such Stockholder, or (iv) is independently developed by such Stockholder without reference to such confidential information.

2.2.    Successors and Assigns.  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. No party to this Agreement will, or will have the power to, assign or otherwise transfer its rights and obligations under this Agreement except to the extent related to a transfer of its shares of capital stock to the extent permitted by, and in compliance with, this Agreement.

2.3.    Governing Law.  This Agreement shall be governed by the internal law of the State of Delaware without application of principles regarding conflicts of laws.

2.4.    Counterparts.   This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. No party hereto will raise the use of a facsimile machine, electronic mail attachment in "pdf", other electronic signature or similar format to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or as an attachment to an electronic mail message as a defense to the formation of a contract and each such party forever waives any such defense.

2.5.    Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement and will in no way define, limit, extend, or describe the scope or intent of any provisions hereof. The language of this Agreement is the language chosen by the parties to express their understanding and agreement, and will not be construed strictly against any party. When used herein, the term "including," "includes" and similar forms of "include" shall mean "including without limitation."

2.6.    Notices.

(a)    All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) when personally delivered to the party to be notified, (b) when sent, if sent by electronic mail or facsimile to such party's email address, (c) or on the next business day, when sent by reputable overnight courier service to the Stockholder at the address set forth on Schedule A. All communications provided for herein

shall be sent to the respective parties at their address or email address as set forth on Schedule A hereto. A Stockholder may at any time or from time to time designate, by notice to the Company, another address in lieu of the address specified herein or in any previous designation pursuant to this sentence.  Any notice to the Company will be deemed given if received at the principal office of the Company.

(b) Each Stockholder consents to the delivery of any stockholder notice pursuant to the DGCL, as amended or superseded from time to time, by electronic transmission pursuant to Section 232 of the DGCL (or any successor thereto) at the electronic mail address or the facsimile number set forth below such Stockholders name on the Schedule A hereto, as updated from time to time by notice to the Company, or as on the books of the Company.  To the extent that any notice given by means of electronic transmission is returned or undeliverable for any reason, the foregoing consent shall be deemed to have been revoked until a new or corrected electronic mail address has been provided, and such attempted electronic notice shall be ineffective and deemed to not have been given.  Each Stockholder agrees to promptly notify the Company of any change in its electronic mail address, and that failure to do so shall not affect the foregoing.

2.7. Consent Required to Amend, Modify, Terminate or Waive.

(a) This Agreement may be amended or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument executed by (x) the holders of 100% of the then outstanding shares of Class A Voting Common Stock and (y) the holders of a majority of the shares of Common Stock issued or issuable upon conversion of the then outstanding shares of Preferred Stock held by the Investors (voting as a single separate class and on an as-converted basis).  In addition, any Stockholder may agree to waive any provision of this Agreement as it relates to such Stockholder by execution and delivery of a written waiver.  Notwithstanding the foregoing, Schedule A hereto may be amended, in order to reflect the addition of additional Stockholders without the consent of the other parties hereto.

(b) The Company shall give prompt written notice of any amendment, modification, termination or waiver hereunder to any party that did not consent in writing thereto within 30 days of such amendment, modification, termination or waiver. Any amendment, modification, termination or waiver effected in accordance with this Section 2.7 shall be binding on the Company and all Stockholders, whether or not the Company or any such Stockholder entered into, consented to, or approved such amendment, modification, termination or waiver.

2.8. Severability.  The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

2.9. Entire Agreement.  This Agreement, and the Exhibits and Schedules hereto, is intended by the parties as a final expression and understanding of the parties hereto with respect to the subject matter contained herein.  To the extent that this Agreement conflicts with any other understanding or agreement between the parties with respect to the subject matter herein, the terms of this Agreement shall control.

2.10. Stock Splits, Stock Dividends, etc. In the event of any issuance of shares of the Company's voting securities hereafter to any of the Stockholders (including, without limitation, in connection with any stock split, stock dividend, recapitalization, reorganization, or the like), such shares shall become subject to this Agreement.

2.11. Further Assurances. At any time or from time to time after the date hereof, the parties agree to cooperate with each other, and at the request of any other party, to execute and deliver any further instruments or documents and to take all such further action as the other party may reasonably request in order to evidence or effectuate the consummation of the transactions contemplated hereby and to otherwise carry out the intent of the parties hereunder.

2.12. Third Party Beneficiaries. Except as otherwise expressly provided herein, nothing expressed or referred to in this Agreement will be construed to give any Person other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement; provided, however, that notwithstanding the foregoing the Investors shall be intended third-party beneficiaries of, and may enforce, this Agreement.

2.13. Legal Representation. The Stockholders acknowledge that the Company has retained Rooney Nimmo PC (the "Law Firm") in connection with the operation of the Company, including making, holding and disposing of investments, and except as otherwise agreed to by the applicable Stockholder in writing in each of their sole discretion, the Law Firm is not representing and will not represent the other Stockholders in connection with the offering of capital stock, the management and operation of the Company, or any dispute which may arise between the Stockholders on one hand and the Company on the other (the "Company Legal Matters"). Except as otherwise agreed to by the applicable Stockholder in writing in each of their sole discretion, each Stockholder will if it wishes to retain counsel on a Company Legal Matter, retain its own independent counsel with respect thereto and will pay all fees and expenses of such independent counsel and consents that the Law Firm may represent the Company in connection with any and all Company Legal Matters (including any dispute between the Stockholders) and waives any present or future conflict of interest with the Law Firm regarding representing the Company with respect to Company Legal Matters.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the parties have executed this Stockholders' Agreement as of the date first written above.

**<u>COMPANY</u>**

COMPUTE NORTH HOLDINGS, INC.

*Dave Perrill*
_____
Name: Dave Perrill
Its:   CEO

[*Signature page to Stockholders' Agreement*]

**STOCKHOLDERS:**

PERRILL TECHNOLOGY LLC

_____

By: Dave Perrill
Its: Chief Executive Officer

COERANBROOKE, LLC

_____

By: Peter J. Lee
Its: Managing Partner

JAMES W. PERRILL TRUST

_____

By: Amy Perrill
Its: Trustee

_____

John C. Perrill, Individually

_____

Nathan Hubert, Individually

LEE FAMILY INVESTMENTS, LLC

_____

By: Allan Matthys
Its: Treasurer

_____

Marshall Johnson, Individually

*[Signature Page to Stockholders Agreement of Compute North Holdings, Inc.]*

**STOCKHOLDERS:**

_____
Name:  Rohit Shirole

*[Signature Page to Stockholders Agreement of Compute North Holdings, Inc.]*

**SCHEDULE A**

**STOCKHOLDERS**

| Name and Address of Stockholder |
|---|
| Perrill Technology LLC<br>7575 Corporate Way, Eden Prairie, MN 55344<br>dave.perrill@perrillco.com |
| Coeranbrooke, LLC<br>1171 Wayzata Blvd., E #92, Wayzata, MN 55391<br>pj.lee@computenorth.com |
| James W. Perrill Trust<br>18705 24th Ave. No., Plymouth, MN 55447<br>aperrill@perrill.com |
| John C. Perrill<br>1666 Isabella Parkway, Chaska, MN 55318<br>John.Perrill.sr@wandcorp.com] |
| Nathan Hubert<br>1972 Schoolmaster Drive, Chaska, MN 55318<br>nate.hubert@computenorth.com |

| |
|---|
| Lee Family Investments, LLC<br>5401 Smetana Drive, Minnetonka, MN 55343<br>dlee@engproducts.com |
| Marshall Johnson<br>1282 Medina Road, Medina, MN 55356<br>Marshall.johnson@computenorth.com |
| Callanish Capital (Jeb Morrison)<br>13911 Ridgedale Drive, Suite 475, Minnetonka, MN 55305<br>jeb@callanishcap.com |
| AKD Holdings (David Kidd)<br>3749 Landings Drive, Excelsior, MN 55331<br>david@adkgc.com |
| Brian Pryor<br>555 13th Street, Boulder, CO 80302<br>brian@pryor.club |
| Mark Decker<br>4809 Sunnyslope Road, Edina, MN 55424<br>mdecker@iret.com |
| Tad Piper<br>270 Bushaway Road, Wayzata, MN 55391<br>tad@twpstrategic.com |
| Digital Currency Group, Inc.<br>250 Park Avenue South, 5th Floor, New York, NY 10003<br>simi@dcg.co |

| |
|---|
| Vitali Compute, LLC<br>PO Box 1160, 22 Oakwood Drive, Kennebunkport, ME 04046<br>louis@marinertower.com |
| Addison Piper Revocable Trust<br>1745 Hunter Drive, Medina, MN 55391<br>addisonpiper@gmail.com |
| Muinzer Ventures, LLC<br>220 South Street, Suite 201, West Lafayette, IN 47906<br>marc@muinzer.com |
| H2 Renewables, LLC<br>828 East Blvd, Charlotte, NC 28203<br>joshua.grizzle@gmail.com |
| Guy C. Jackson<br>10040 Happy Valley Road, Unit 2037, Scottsdale, AZ 85255<br>guyjackson@earthlink.net |
| Jonathan Hakim<br>2225 23rd Street, Unit 218, San Francisco, CA 94107-3267<br>jonathan@ecmmedical.com |
| David Robert Morgan<br>P.O. Box 664, Liberty Lake, WA 99019-0664<br>ssdmorgan@gmail.com |
| Elliot Evers 2010 Revocable Trust<br>219 Edgewood Avenue, San Francisco, CA 94117<br>EEvers@HL.com |
| Callanish Capital Partners LP<br>13911 Ridgedale Drive, Suite 475, Minnetonka, MN 55305 |

| |
|---|
| jeb@callanishcap.com |
| REIC Gamma (AM/DB) Holdings LLC<br>40 West 57th Street, 29th Floor, New York, NY 10019<br>ra@silverpeak.com |
| Fredric Goldberg Rev Trust U/A/D 05/15/2019<br>6012 Tingale Avenue, Edina, MN 55436<br>fredgoldberg@msn.com |
| Torben Rytt<br>2417 Irving Avenue S., Minneapolis, MN 55405<br>torben@rytt.dk |
| Katherine E. Bispala Spousal Limited Access TR u/a/d 12/19/12<br>4101 Linden Hills Blvd., Minneapolis, MN 55410<br>bispala@gmail.com |
| SM & MS Partners<br>29 West 30th Street, 10th Floor, New York, NY 10001<br>murilex98@gmail.com |
| Stephen Aronson Rev. Living Trust U/A/D 07/15/2015<br>615 Westfield Avenue, Westfield, NJ 07090<br>stevearonson@me.com |
| Robert L. Kramer<br>9003 S. Minnehaha Circle, St. Louis Park, MN 55426<br>robert@resipm.com |

| |
|---|
| Daniel Aronson Trust<br>2021 Humboldt Avenue S., Minneapolis, MN 55405<br>dra@epiqpartnersllc.com |
| Benjamin Kolpa<br>7625 East Mercer Way, Mercer Island, WA 98040<br>benjamin.j.kolpa@gmail.com |
| Joseph C. Kiser<br>227 Walker Ave., N., Wayzata, MN 55391<br>jc@arcticcapital.com |
| Gregory S. Cribb<br>1320 Cozy Oak Ave., Cary, NC 27519<br>greg.cribb@bestol-group.com |
| Irving Hansen<br>4915 Highland Road, Minnetonka, MN 55345<br>ray@bisonbuilders.com |
| Robert Bisanz<br>5 Crocus Hill, St. Paul, MN 55102<br>rsbisanz@gmail.com |
| Creekside Investments I, LLC<br>2725 Rocky Mountain Ave., Suite 200, Loveland, CO 80538<br>Troy.McWhinney@mcwhinney.com |
| Vedado Capital LLC<br>806 Oak Valley Drive, Houston, TX 77024<br>carlosabello6@gmail.com |
| Reviva Inc.<br>5130 Main Street NE, Fridley, MN 55421 |

5

| |
|---|
| jstahl@reviva.com |
| Endurance Search Partners, LLC<br>11760 US Highway 1, Suite W506,<br>North Palm Beach, FL 33408<br>ldunn@endurancesearchpartners.com |
| James Griffith<br>7027 Donlea Lane, Eden Prairie, MN 55346<br>griffith_jim@yahoo.com |
| Ron Konezny<br>20710 Linwood Road, Excelsior, MN 55331<br>ron.konezny@digi.com |
| Jose Lima |
| Kristyan Mjolsnes |
| Amanda Piff |
| Rohit Shirole |
| Jean Esquier<br>370 Amity Road, Bethany, CT 06524<br>jean.esquier@computenorth.com |
| Tom Kieffer |

6

| |
|---|
| 26350 N. 106th Way, Scottsdale, AZ 85255<br>tom@kieffer.com |
| Toby LaBelle<br>2500 Woodhaven Drive, Orono, MN 55356<br>tlabelle@northlandcapitalmarkets.com |

# EXHIBIT A

## ADOPTION AGREEMENT

This Adoption Agreement ("<u>Adoption Agreement</u>") is executed on _____, 20__, by the undersigned (the "<u>Holder</u>") pursuant to the terms of that certain Stockholders' Agreement dated as of [____], 2020 (the "<u>Agreement</u>"), by and among Compute North Holdings, Inc., a Delaware corporation (the "<u>Company</u>") and certain of its Stockholders, as such Agreement may be amended or amended and restated hereafter. Capitalized terms used but not defined in this Adoption Agreement shall have the respective meanings ascribed to such terms in the Agreement. By the execution of this Adoption Agreement, the Holder agrees as follows.

1.1  <u>Acknowledgement</u>.  Holder acknowledges that Holder is acquiring certain shares of the capital stock of the Company (the "<u>Stock</u>") [ or options, warrants or other rights to purchase such Stock (the "<u>Options</u>")], for one of the following reasons (Check the correct box):

☐   as a transferee of shares from a party in such party's capacity as a "Stockholder" bound by the Agreement, and after such transfer, Holder shall be considered a "Stockholder" for all purposes of the Agreement.

☐   as a new Stockholder in accordance with <u>Section 7.3</u> of the Agreement, in which case Holder will be a "Stockholder" for all purposes of the Agreement.

1.2  <u>Agreement</u>.  Holder hereby (a) agrees that the Stock, and any other shares of capital stock or securities required by the Agreement to be bound thereby, shall be bound by and subject to the terms of the Agreement and (b) adopts the Agreement with the same force and effect as if Holder were originally a party thereto.

1.3  <u>Notice</u>.  Any notice required or permitted by the Agreement shall be given to Holder at the address or facsimile number listed below Holder's signature hereto.

**HOLDER:** _____

ACCEPTED AND AGREED:

**COMPUTE NORTH HOLDINGS, INC.**

By: _____
Name:
Title:

By: _____
Name:  Tad Piper
Title:  Chief Financial Officer

Address: _____

_____

Facsimile Number: _____