# EXHIBIT K

| United States Bankruptcy Court for the Southern District of Texas | |
|---|---|
| **Name of Debtor:** Compute North Holdings, Inc. | **For Court Use Only** |
| **Case Number:** 22-90273 | Claim Number: 0000010160 |
| | File Date: 01/27/2023 15:02:34 |

# Proof of Claim (Official Form 410)

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.  With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.  18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.  That date is on the notice of bankruptcy** (Form 309) **that you received.**

04/22

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim): Rohit Shirole

Other names the creditor used with the debtor: Ro Shirole

**2. Has this claim been acquired from someone else?**   ☑ No  ☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name   Rohit Shirole | Name |
| Address   Rohit Shirole, c/o Bassford Remele, P.A. | Address |
| 100 South 5th Street, Suite 1500 | |
| City   Minneapolis | City |
| State   MN   ZIP Code 55402 | State   ZIP Code |
| Country (if International): | Country (if International): |
| Phone:   (612) 333-3000 | Phone: |
| Email:   Jklobucar@bassford.com | Email: |

**4. Does this claim amend one already filed?**

☐ No

☑ Yes.

Claim number on court claims register (if known) 0000010055

Filed on 11/11/2022 5:43:01 PM
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes.

Who made the earlier filing?

_____

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:

____ ____ ____ ____

**7. How much is the claim?**

$ 32,453,436.89      unliquidated

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples:  Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.  Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).  Limit disclosing information that is entitled to privacy, such as health care information.

Other Basis
_____

See Addendum and incorporated Exhibits

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other.  Describe:
_____

**Basis for perfection:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

**Annual Interest Rate** (when case was filed)   _____%
☐ Fixed  ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes.  **Amount necessary to cure any default as of the date of petition.**

$_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes.  Identify the property:

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☐ No

☑ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☑ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other.  Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.
*  Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$ 15,150.00

$_____

$_____

$_____

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes.  **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9):** $_____

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it.  FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Ro Shirole*                                                    01/27/2023 15:02:34

Signature                                                         Date

**Provide the name and contact information of the person completing and signing this claim:**

Name        Rohit Shirole

Address     c/o Bassford Remele, P.A.

            100 South 5th Street, Suite 1500

            attn: Jeffrey D. Klobucar

City        Minneapolis

State       MN                                        Zip   55402

Country (in international)   USA

Phone       612.333.3000

Email       jklobucar@bassford.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **COMPUTE NORTH HOLDINGS, INC.,** | § | |
| *et al.*,[1] | § | **Case No. 22-90273 (MI)** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

## ADDENDUM TO PROOF OF CLAIM OF ROHIT SHIROLE

Rohit Shirole ("Shirole") submits this Addendum (the "Addendum") in support of his claim (the "Claim") in the above-referenced matter.

### Description of Shirole's Claim

Shirole was formerly employed by Debtors Compute North LLC ("Compute North") and Compute North Holdings, Inc. ("Holdings," and collectively with Compute North, "Defendants" or "Debtors") as a Vice President of Strategy and Business Development. In December 2021, Shirole commenced a lawsuit against Defendants in the Fourth Judicial District for the State of Minnesota, Hennepin County, styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274 (the "Minnesota Action").  In the Minnesota Action, Shirole has asserted claims against the Defendants under Minnesota law for, *inter alia*, discrimination, retaliation, wage loss, wrongful termination, breach of contract, and unjust enrichment.  The Amended Complaint served and filed in the Minnesota Action is attached as Exhibit A to this Addendum, and the claims stated therein are incorporated herein by reference as further bases for Shirole's Claim.

Shirole has a claim against Defendants, jointly and severally, for not less than $23,973,724.53 as set forth on Exhibit B to this Addendum, in addition to all continuing costs and attorney fees incurred with respect to his enforcement of the claims noted herein and otherwise.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

Further, Shirole may have additional claims against Defendants, jointly and severally, including, without limitation, their respective or collective directors, officers, employees, and insurers, including, without limitation, for breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, civil theft, tortious interference with contract and/or prospective economic relations, and fraud, which claims are expressly preserved and not waived. Further, Shirole expressly reserves the right to amend this Claim upon discovery of additional bases for claims against any of the entities and/or individuals referenced herein.

ADDENDUM TO PROOF OF CLAIM OF ROHIT SHIROLE

# EXHIBIT A

STATE OF MINNESOTA                                      DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

---

Rohit Shirole,                                        Case Type:  Civil (Other)
                                                     Court File No. _____

                        Plaintiff,

vs.                                                 **AMENDED COMPLAINT**

Compute   North   Holdings,   Inc.   and
Compute North LLC

                        Defendant.

---

        Plaintiff Rohit Shirole ("Shirole") by and for his Complaint against Defendants

Compute North LLC and Compute North Holdings, Inc. (collectively "Defendants"), and

for damages and other legal and equitable relief from the Defendants' violations of law

states and alleges as follows:

### PARTIES AND VENUE

        1.      Shirole is an individual who resides in the County of Hennepin, Minnesota.

        2.      Shirole is a non-white person of South Asian descent.

        3.      Defendant Compute North LLC is a Delaware limited liability company

with a registered office address of 7575 Corporate Way, Eden Prairie, MN 55344.

1

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

4.      Defendant Compute North Holdings, Inc. is a Delaware corporation not registered to do business in the State of Minnesota and with a Delaware Secretary of State registered address of 1209 Orange Street, Wilmington, Delaware, 19801.

5.      Venue is proper in this court as the acts alleged here substantially occurred within Hennepin county, and Defendant Compute North LLC has a registered office in Hennepin County.

### FACTS

6.      Defendants are in the business of providing colocation services to digital currency mining companies.

7.      Colocation services means Defendants locate, develop, and provide physical locations for the computer equipment used in maintaining blockchain software for digital currency.

8.      Shirole was originally employed by Defendants as a Vice President of Sales and Corporate Development.

9.      During Shirole's tenure as Vice President of Sales and Corporate Development, Compute North was recognized as Minnesota's fastest growing company.

10.      Shirole was based out of Compute North's offices in Eden Prairie, Minnesota.

11.      Shirole was asked to sign a non-compete agreement as a condition of employment.

2

12.     Shirole objected to the terms of the presented non-compete and did not sign it.

13.     Defendants proceeded to employ Shirole without a non-compete agreement.

14.     Shirole's primary duties involved selling colocation services and colocated equipment.

15.     Shirole had regular contact with customers, clients, and partners.

16.     Shirole built a global network of contacts in the colocation and cryptocurrency industries.

17.     In November of 2019, Defendants again asked whether Shirole would sign a non-compete.

18.     Defendants proposed a non-compete agreement form.

19.     Shirole proposed changes to the form, including changing certain restrictive covenants and terms regarding compensation.

20.     Defendants rejected these changes.

21.     Shirole did not agree to non-compete agreement.

22.     Defendants continued to employ Shirole.

23.     As a Vice President of Sales and Corporate development, Shirole was compensated in part based on sales made.

3

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

24.     On or about March 27, 2021, Defendants changed Shirole's title to that of Vice President and Business Development.

25.     On March 27, 2021, Shirole and Defendants entered into a 2021 Sales Commission Plan (the "Commission Plan").

26.     Pursuant to the Commission Plan, Shirole was compensated by commissions on sales made for colocation services, logistics sales, customer funded capital expenditures and colocated equipment sales.

27.     Shirole performed his job duties well.

28.     Shirole made substantial an ongoing sales, increasing in volume and quality as time went on.

29.     Defendants regularly failed to make timely and full payments of commissions and failed to provide commission statements for four consecutive months.

30.     Shirole made numerous requests for the reasons such commission payments were not made but was not given a reason.

31.     Shirole regularly told Defendants that the commission payments were not properly calculated.

32.     Shirole reported that his commission payments were often inaccurate by amounts of $20,000 to $30,000.

33.     Shirole regularly asked for the commission calculations to be completed in timely fashion.

4

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

34.     Shirole also regularly raised the issues that Defendants "deprioritized" customers in favor of Defendant's own digital currency mining interests.

35.     Defendants would contract to provide more colocation storage capacity than they had available.

36.     Defendants would then choose either themselves or certain select customers to receive the available colocation storage capacity, while other customers would not receive contracted-for services.

37.     Defendants, however, would prepare financial statements as though such services were being provided and payment would be received for the same.

38.     Shirole raised concerns that this deprioritization practice was creating inaccurate forecasts.

39.     Shirole further raised concerns that underpaid commissions and inaccurate forecasts meant the Defendants were misrepresenting their financial status.

40.     Inaccurate financial status reports would be a violation of securities laws, particularly as Defendants were soliciting investors.

41.     On September 15, 2021, Shirole was told that commission calculations and payments were not a priority for the Defendants.

42.     On October 29, 2021, Shirole raised with Drake Harvey, Defendants' Chief Operating Officer, that his commissions had not been properly calculated or paid.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

43.     Harvey stated that commissions would be paid in full by November 10, 2021.

44.     On October 30, 2021, in response to the conversation with Shirole, Harvey also stated that Shirole could not attend "outward facing" functions for the Defendants until he had signed a non-compete agreement.

45.     Harvey also stated he wanted to take Shirole off of a sales role and move him to a different position.

46.     These changes made little sense because of Shirole's success at sales and term of the Commission Plan.

47.     Harvey stated Shirole should not travel to a previously scheduled conference to Dubai unless he agreed to a non-compete.

48.     Shirole, however, had been directed to attend the conference by the CEO for the Defendants.

49.     Shirole reported to the CEO and not the COO.

50.     Defendants had advertised that Shirole was going to be present at the conference.

51.     Further, Shirole had made plans for a family vacation in Dubai following the conference.

52.     Shirole had expended substantial personal money for this family vacation.

6

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

53.     Shirole noted that he was being treated differently than other similarly situated white employees.

54.     Beginning around September 15, 2021, Shirole noted that Harvey and Kyle Wenzel, the Defendants' CCO, were trying to prevent him from making sales.

55.     Wentzel would promptly and without warning change meetings Shirole was going to participate in so that customers would meet with a white sales representative without Shirole being present.

56.      This caused customer confusion.

57.     Defendants began actively moving customers from Shirole to white sales representatives without justification.

58.     Defendants changed Shirole's job duties and sales position because they wanted white employees making sales.

59.     On November 3, 2021, Harvey sent Shirole a new noncompete form.

60.     The noncompete agreement proposed by Defendants on November 3, 2021 is overly broad, unsupported by any consideration, and contrary to Minnesota law.

61.     The noncompete represented an enormous overreach by the Defendants.

62.     The noncompete represented an unfair and untenable restraint on Shirole's livelihood and trade.

63.     Shirole objected to the terms of the noncompete.

7

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

64.     Shirole stated that he would agree to a noncompete in line with that discussed in previous years.

65.     Shirole provided a partially executed noncompete in line with the version he had previously provided.

66.     Based on the fact he had provided a partially executed noncompete and had been directed to attend by the Defendants' CEO, Shirole attended the conference.

67.     On November 3, 2021, Shirole attended a conference call with the CEO of the Defendants, Harvey, Wenzel, and representatives of Defendant's customer Marathon Digital Holdings.

68.     On that conference call, Harvey stated that Defendants were "pulling out" of planned location in Pitt County, North Carolina because of challenges surrounding the racial demographics of a site.

69.     Harvey stated that the site location was in an "economically down-trodden" area and the residents were "non-white."

70.     Harvey stated that these factors combined with an "activist individual" made the site less desirable.

71.     Harvey made it apparent that the racial demographics of the neighborhood were not desirable because the residents were primarily non-white.

72.     This statement shocked Shirole.

8

73.    Use of racial demographics in determining site location is contrary to the espoused values of the Defendants.

74.    Use of racial demographics to select such sites is also generally prohibited by governmental organizations Defendants work with to select such sites.

75.    Later in the day on November 3, 2021, Shirole was told he was going to report to Harvey.

76.    On November 4, 2021, Shirole reported Harvey's comments about racial demographics to Defendant's HR department in an in-person meeting followed by a written account of the incident.

77.    Shirole reported that such comments were inappropriate and improper.

78.    Shirole also reported that he was, as a non-white person, concerned about reporting to someone who expressed such views.

79.    Shirole then attended the conference in Dubai, as previously directed by the Defendant's CEO.

80.    The conference was sponsored by another entity with whom Shirole was a primary point of contact.

81.    During the conference, Shirole interacted with Defendants' CEO and CCO, including updating them on meetings and events he was participating in.

82.    Defendants' CEO and CCO responded positively to Shirole's presence and participation on the conference.

9

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

83.    At no point did Defendants' CEO or CCO tell Shirole he should not be at the conference.

84.    At no point did Defendants' CEO or CCO tell Shirole he should not meet with individuals or otherwise continue his job duties.

85.    On his return, Shirole was placed on suspension.

86.    Defendants did not offer Shirole a reason for his suspension.

87.    Defendants did not pay Shirole his full commissions, as promised.

88.    Instead, Defendants demanded Shirole sign a separation agreement.

89.    Defendants told Shirole that if he did not sign a separation agreement, they would fire him for cause.

90.    Defendants do not have a legitimate basis to fire Shirole for cause.

91.    Defendants claim they have cause to fire Shirole because he would not sign a non-compete agreement.

92.    This does not constitute termination for cause.

93.    Defendants cannot direct Shirole to sign a non-compete as part of his job duties.

94.    Defendants employed Shirole for years without a non-compete.

95.    Defendants further claim they have cause to fire Shirole because he attended the conference in Dubai.

96.     Shirole complied with the reasonable directions of the Defendants' CEO in attending the conference.

97.     Defendants' CEO and CCO knew and approved of Shirole's attendance and participation in the conference.

98.     This does not constitute cause for termination.

99.     The purported basis to terminate Shirole for cause is a pretext for Defendants' retaliatory animus.

100.    Defendants sought to terminate Shirole in retaliation for reporting various illegal and improper activities.

101.    Defendants further sought to terminate Shirole in retaliation for engaging in activities protected by law, including demanding payment of his commissions.

102.    Defendants further sought to terminate Shirole to deny him earned commissions.

103.    Defendants' proposed separation agreement included a release of all claims against the Defendants.

104.    Defendants' proposed separation agreement substantially reduced the amount of commissions Defendants were obligated to pay Shirole and extended the time by which they had to pay them.

105.    Defendants otherwise were obligated to pay more money faster under the Commission Plan.

11

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

106.   Defendants' proposed separation agreement also included payment for stock options and incentives that Defendants would otherwise be obligated to make.

107.   Defendants' proposed separation agreement also contained restrictive covenants which were unenforceable under Minnesota law.

108.   Defendants' proposed separation agreement is unreasonable, unenforceable, and contrary to Minnesota and federal law.

109.   Defendants' proposed separation agreement was an adhesion contract.

110.   Defendants' proposed separation agreement was designed to create a legal fiction to benefit Defendants at Shirole's expense.

111.   Defendants wanted to terminate Shirole for cause because they wanted more beneficial treatment under applicable compensation agreements.

112.   Defendants tried to use the threat of terminating Shirole for cause to coerce him to sign the separation agreement.

113.   Defendants repeatedly demanded Shirole sign the separation agreement in less time than that allowed by law for him to consider it, or they would terminate Shirole for cause.

114.   This constitutes unlawful coercion under Minnesota Statute § 609.27.

115.   Shirole refused to sign the separation agreement.

116.   Shirole instead alerted Defendants to the illegal nature of their acts.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

117.    In response, Defendants terminated Shirole for cause on or about December 8, 2021.

118.    Defendants have stated to their customers and others that they have terminated Shirole for cause.

119.    Defendants did not offer any basis for what constituted cause for Shirole's termination.

120.    Shirole's reputation among his coworkers, contacts, references, and his community have suffered as a result of Defendants' telling others Shirole was terminated for cause.

121.    Defendants do not have a legitimate basis to terminate Shirole for cause.

122.    Instead, Defendants terminated Shirole in retaliation for reporting illegal conduct and insisting on his legal rights.

123.    Defendants further terminated Shirole to avoid paying him lawful compensation that Defendants otherwise owed Shirole.

124.    Defendants owe Shirole at least $6.8 Million in commissions on sales of over $1.3 Billion pursuant to the Commission Plan.

125.    Shirole has substantial stock options and stock grants in the Defendants which the Defendants are seeking to unlawfully reclaim.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

## COUNT I
## DISCRIMINATION ON BASIS OF RACE
## IN VIOLATION OF MINN. STAT. § 363A.08

126. Shirole realleges and restates all preceding paragraphs of this Complaint.

127. Minnesota Statute § 363A.08 prohibits discrimination against an employee on the basis of their race.

128. Defendants favored white employees.

129. Defendants would pass up potential employees "because of their look."

130. This unwritten policy meant that Defendants would often preferentially hire white applicants.

131. Defendants employ primarily white employees.

132. Shirole is in a protected class on the basis of his race.

133. Defendants treated Shirole differently on the basis of his race.

134. Defendants disciplined Shirole differently for purported infractions than white employees.

135. Defendants discriminated against Shirole because he is non-white.

136. Defendants presented no legitimate reason for this discrimination.

137. Defendants stated motivation to terminate Shirole is pretext for discrimination.

138. As a direct and proximate result of the Defendants' racial discrimination, Shirole has suffered damages in an amount to be proven at trial but in excess of $50,000.

14

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

139.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

140.    Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

141.    Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

**COUNT II**
**REPRISAL/RETALIATION PROHIBITED BY**
**MINN. STAT. § 363A.15**

142.    Shirole realleges and restates all preceding paragraphs of this Complaint.

143.    Shirole engaged in protected activities by reporting racially charged remarks by Harvey.

144.    Defendants, and Harvey in particular, retaliated against Shirole by taking materially adverse employment action, namely suspending him, attempting to unlawfully coerce him into a separation agreement which released claims against the Defendants, and terminating his employment.

145.    Defendant's retaliation is causally connected with Shirole's protected activities, occurring promptly after of Shirole's reports of inappropriate and unlawful behavior.

146.    Defendants' retaliatory actions are prohibited by law.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

147.    Defendants' retaliatory actions are contrary to Defendant's own policies.

148.    Shirole has been damaged by Defendants' discrimination in an amount to be proven at trial but in excess of $50,000.

149.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

150.    Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

151.    Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

**COUNT III**
**FAILURE TO PAY WAGES PROMPTLY**
**MINN. STAT. CHAP. 181**

152.    Shirole realleges and restates all preceding paragraphs of this Complaint.

153.    Defendants have an obligation to pay Shirole commissions earned in a prompt and timely fashion, pursuant to Minn. Stat. §§ 181.101, 181.13, and 181.145.

154.    Defendants have failed to timely pay Shirole all commissions earned, even after demand.

155.    Shirole has been damaged by Defendants' failure to timely pay wages in an amount to be proven at trial but in excess of $50,000.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

156.     Shirole is also entitled to an award of penalties and attorneys' fees pursuant to Minn. Stat. § 181.171, subd. 3.

## <u>COUNT IV</u>
## WRONGFUL TERMINATION

157.     Shirole realleges and restates all preceding paragraphs of this Complaint.

158.     Defendants have terminated Shirole for an illegal reason, namely for engaging in protected activities.

159.     Defendants did not follow their own policies when terminating Shirole.

160.     Defendants' effective termination of Shirole's employment was wrongful.

161.     Defendants' effective termination of Shirole's employment was illegal.

162.     Shirole has been damaged by Defendants' wrongful termination in an amount to be proven at trial but in excess of $50,000.

163.     Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

164.     Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

165.     Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

17

## COUNT V
### MINN. STAT. § 181.932
### RETALIATION IN VIOLATION
### OF THE MINNESOTA WHISTLEBLOWER ACT

166.    Shirole realleges and restates all preceding paragraphs of this Complaint.

167.    Shirole engaged in protected activity under Minnesota statutes by reporting unlawful behavior.

168.    Shirole reported that Harvey was making racial comments and statements which were offensive to non-white employees.

169.    Shirole reported that his commissions were not accurately calculated or timely paid.

170.    Shirole reported that the forecasting of Defendants may not be accurate, in violation of statements Defendants were making to investors.

171.    Shirole is entitled to an award of actual damages and civil penalties in an amount to be proven at trial, but in excess of $50,000.

172.    Shirole is also entitled to an award of attorneys' fees under Minn. Stat. § 181.935.

## COUNT VI
### BREACH OF CONTRACT

173.    Shirole realleges and restates all preceding paragraphs of this Complaint.

174.    Shirole and Defendants were parties to valid contracts, the end result of bargain for exchange.

18

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

175.   Defendants breached those contracts by terminating Shirole for cause, where no cause existed.

176.   Defendants further breached those contracts by failing to pay Shirole all commissions and wages owed to him.

177.   Defendants further breached those contracts by failing to provide Shirole all stock options and stock grants to which he was entitled.

178.   Shirole has been damaged by Defendants' breach of contract in an amount to be proven at trial but in excess of $50,000.

**COUNT VII**
**UNJUST ENRICHMENT**

179.   Shirole realleges and restates all preceding paragraphs of this Complaint.

180.   Defendants have been unjustly enriched at Shirole's expense.

181.   Shirole has been damaged by Defendants' unjust enrichment in an amount to be proven at trial but in excess of $50,000.

19

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rohit Shirole requests a **JURY TRIAL** on his claims and asks that

judgment be entered as follows:

A.  Awarding Shirole actual damages, compensatory damages in the amount of

three times his actual damages, civil penalties, and damages for his mental

anguish and suffering.

B.  Awarding Shirole punitive damages against Defendants under the Minnesota

Human Rights Act;

C.  Awarding Shirole judgment against Defendants in an amount to be proven at

trial but in excess of $50,000;

D.  Awarding Shirole his costs and disbursements;

E.  Awarding Shirole his attorneys' fees; and

F.  All other relief that this Court deems just and equitable.

CHESTNUT CAMBRONNE PA

Dated:  January 17, 2022                By /s/ Emeric J. Dwyer
                                        Emeric J. Dwyer (#0389471)
                                        Jesse D. Berglund (#389079)
                                        100 Washington Avenue S, Suite 1700
                                        Minneapolis, Minnesota 55401
                                        Telephone No. (612) 339-7300
                                        edwyer@chestnutcambronne.com
                                        jberglund@chestnutcambronne.com

                                        *Attorneys for Plaintiff Rohit Shirole*

20

Case 22-90273   Document 875-11   Filed in TXSB on 01/27/23   Page 28 of 66

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

## ACKNOWLEDGMENT

Plaintiff, through its undersigned attorney, hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes Section 549.211 to the party against whom the allegations in this pleading are asserted.

Dated:  January 17, 2022              /s/ Emeric J. Dwyer
                                      Emeric J. Dwyer

EXHIBIT B

# ITEMIZATION

- $60,000 – lost wages and benefits for the time he was unemployed;
- $275,000 – lost compensation representing the difference in his compensation by Debtor and his new employer;
- $492,000 – lost previous commissions and penalties regarding same;
- $6,800,000 – lost future commissions;
- $1,370,000 – lost equipment commissions;
- $57,000 – unpaid and unreimbursed business expenses;
- $60,000 – lost digital mining equipment not returned by Defendants;
- $55,000 – lost consequential revenue resulting from failure to return mining equipment;
- $14,650,000 – value of equity interests lost as a result of company conduct;
- $125,000 – potential punitive and statutory damages; and
- $29,724.53 – attorney fees.

- **Total Claim - $23,973,724.53**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **MINING PROJECT WIND DOWN** | § | |
| **HOLDINGS, INC. (f/k/a Compute North** | § | **Case No. 22-90273 (MI)** |
| **Holdings, Inc.), *et al.*,**[1] | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

## ADDENDUM TO *AMENDED* PROOF OF CLAIM OF ROHIT SHIROLE

Rohit Shirole ("Shirole") submits this Addendum (the "Addendum") in support of his amended claim (the "Amended Claim") in the above-referenced matter.

### Description of Shirole's Amended Claim

Shirole was formerly employed by Debtors Mining Project Wind Down LLC (f/k/a Compute North LLC ("Compute North")) and Mining Project Wind Down Holdings Inc (f/k/a Compute North Holdings, Inc. ("Holdings," and collectively with Compute North, "Defendants" or "Debtors")) as a Vice President of Strategy and Business Development. In December 2021, subsequent to his termination, Shirole commenced a lawsuit against Defendants in the Fourth Judicial District for the State of Minnesota, Hennepin County, styled *Rohit Shirole v. Compute North Holdings, Inc. and Compute North LLC*, Case No. 22-CV-22-2274 (the "Minnesota Action"). In the Minnesota Action, Shirole has asserted claims against the Defendants, jointly and severally, under Minnesota law for, *inter alia*, discrimination, retaliation, wage loss, wrongful termination, breach of contract,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

and unjust enrichment.  The Amended Complaint served and filed in the Minnesota Action is attached as Exhibit A to this Addendum, and the claims stated therein are incorporated herein by reference as further bases for Shirole's Amended Claim.

Shirole has a claim against Defendants, jointly and severally, for not less than $**$32,453,436.89** as set forth on Exhibit B to this Addendum, in addition to all continuing costs and attorney fees incurred with respect to his enforcement of the claims noted herein and otherwise. In addition, Shirole asserts that there are additional statutory and other damages that may be awarded against Defendants at the conclusion of any evidentiary proceeding regarding his claims, including, without limitation, treble damages and other forms of relief available under Minnesota law.

The detail for the commissions identified in Exhibit B has been compiled and submitted herewith as Group Exhibit C (Tabs 1, 2, and 3)

Further, Shirole may have additional claims against Defendants, jointly and severally, including, without limitation, their respective or collective directors, officers, employees, and insurers, including, without limitation, for breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, civil theft, tortious interference with contract and/or prospective economic relations, and fraud, which claims are expressly preserved and not waived.

Shirole expressly reserves all rights, including, without limitation, the right to amend this Amended Claim upon discovery of additional bases for claims against any of the entities and/or individuals referenced herein, including, without limitation, additional damages awarded by any court of competent jurisdiction, and his right to a jury trial.

ADDENDUM TO AMENDED PROOF OF CLAIM OF ROHIT SHIROLE

EXHIBIT A

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

STATE OF MINNESOTA                                  DISTRICT COURT

COUNTY OF HENNEPIN                       FOURTH JUDICIAL DISTRICT

---

Rohit Shirole,                                           Case Type:  Civil (Other)
                                                    Court File No. _____
                        Plaintiff,

vs.                                               **AMENDED COMPLAINT**

Compute   North   Holdings,   Inc.   and
Compute North LLC

                        Defendant.

---

Plaintiff Rohit Shirole ("Shirole") by and for his Complaint against Defendants

Compute North LLC and Compute North Holdings, Inc. (collectively "Defendants"), and

for damages and other legal and equitable relief from the Defendants' violations of law

states and alleges as follows:

### PARTIES AND VENUE

1.      Shirole is an individual who resides in the County of Hennepin, Minnesota.

2.      Shirole is a non-white person of South Asian descent.

3.      Defendant Compute North LLC is a Delaware limited liability company

with a registered office address of 7575 Corporate Way, Eden Prairie, MN 55344.

4.      Defendant Compute North Holdings, Inc. is a Delaware corporation not registered to do business in the State of Minnesota and with a Delaware Secretary of State registered address of 1209 Orange Street, Wilmington, Delaware, 19801.

5.      Venue is proper in this court as the acts alleged here substantially occurred within Hennepin county, and Defendant Compute North LLC has a registered office in Hennepin County.

## FACTS

6.      Defendants are in the business of providing colocation services to digital currency mining companies.

7.      Colocation services means Defendants locate, develop, and provide physical locations for the computer equipment used in maintaining blockchain software for digital currency.

8.      Shirole was originally employed by Defendants as a Vice President of Sales and Corporate Development.

9.      During Shirole's tenure as Vice President of Sales and Corporate Development, Compute North was recognized as Minnesota's fastest growing company.

10.      Shirole was based out of Compute North's offices in Eden Prairie, Minnesota.

11.      Shirole was asked to sign a non-compete agreement as a condition of employment.

2

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

12.     Shirole objected to the terms of the presented non-compete and did not sign it.

13.     Defendants proceeded to employ Shirole without a non-compete agreement.

14.     Shirole's primary duties involved selling colocation services and colocated equipment.

15.     Shirole had regular contact with customers, clients, and partners.

16.     Shirole built a global network of contacts in the colocation and cryptocurrency industries.

17.     In November of 2019, Defendants again asked whether Shirole would sign a non-compete.

18.     Defendants proposed a non-compete agreement form.

19.     Shirole proposed changes to the form, including changing certain restrictive covenants and terms regarding compensation.

20.     Defendants rejected these changes.

21.     Shirole did not agree to non-compete agreement.

22.     Defendants continued to employ Shirole.

23.     As a Vice President of Sales and Corporate development, Shirole was compensated in part based on sales made.

3

24.     On or about March 27, 2021, Defendants changed Shirole's title to that of Vice President and Business Development.

25.     On March 27, 2021, Shirole and Defendants entered into a 2021 Sales Commission Plan (the "Commission Plan").

26.     Pursuant to the Commission Plan, Shirole was compensated by commissions on sales made for colocation services, logistics sales, customer funded capital expenditures and colocated equipment sales.

27.     Shirole performed his job duties well.

28.     Shirole made substantial an ongoing sales, increasing in volume and quality as time went on.

29.     Defendants regularly failed to make timely and full payments of commissions and failed to provide commission statements for four consecutive months.

30.     Shirole made numerous requests for the reasons such commission payments were not made but was not given a reason.

31.     Shirole regularly told Defendants that the commission payments were not properly calculated.

32.     Shirole reported that his commission payments were often inaccurate by amounts of $20,000 to $30,000.

33.     Shirole regularly asked for the commission calculations to be completed in timely fashion.

4

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

34.    Shirole also regularly raised the issues that Defendants "deprioritized" customers in favor of Defendant's own digital currency mining interests.

35.    Defendants would contract to provide more colocation storage capacity than they had available.

36.    Defendants would then choose either themselves or certain select customers to receive the available colocation storage capacity, while other customers would not receive contracted-for services.

37.    Defendants, however, would prepare financial statements as though such services were being provided and payment would be received for the same.

38.    Shirole raised concerns that this deprioritization practice was creating inaccurate forecasts.

39.    Shirole further raised concerns that underpaid commissions and inaccurate forecasts meant the Defendants were misrepresenting their financial status.

40.    Inaccurate financial status reports would be a violation of securities laws, particularly as Defendants were soliciting investors.

41.    On September 15, 2021, Shirole was told that commission calculations and payments were not a priority for the Defendants.

42.    On October 29, 2021, Shirole raised with Drake Harvey, Defendants' Chief Operating Officer, that his commissions had not been properly calculated or paid.

5

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

43.     Harvey stated that commissions would be paid in full by November 10, 2021.

44.     On October 30, 2021, in response to the conversation with Shirole, Harvey also stated that Shirole could not attend "outward facing" functions for the Defendants until he had signed a non-compete agreement.

45.     Harvey also stated he wanted to take Shirole off of a sales role and move him to a different position.

46.     These changes made little sense because of Shirole's success at sales and term of the Commission Plan.

47.     Harvey stated Shirole should not travel to a previously scheduled conference to Dubai unless he agreed to a non-compete.

48.     Shirole, however, had been directed to attend the conference by the CEO for the Defendants.

49.     Shirole reported to the CEO and not the COO.

50.     Defendants had advertised that Shirole was going to be present at the conference.

51.     Further, Shirole had made plans for a family vacation in Dubai following the conference.

52.     Shirole had expended substantial personal money for this family vacation.

6

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

53.     Shirole noted that he was being treated differently than other similarly situated white employees.

54.     Beginning around September 15, 2021, Shirole noted that Harvey and Kyle Wenzel, the Defendants' CCO, were trying to prevent him from making sales.

55.     Wentzel would promptly and without warning change meetings Shirole was going to participate in so that customers would meet with a white sales representative without Shirole being present.

56.      This caused customer confusion.

57.     Defendants began actively moving customers from Shirole to white sales representatives without justification.

58.     Defendants changed Shirole's job duties and sales position because they wanted white employees making sales.

59.     On November 3, 2021, Harvey sent Shirole a new noncompete form.

60.     The noncompete agreement proposed by Defendants on November 3, 2021 is overly broad, unsupported by any consideration, and contrary to Minnesota law.

61.     The noncompete represented an enormous overreach by the Defendants.

62.     The noncompete represented an unfair and untenable restraint on Shirole's livelihood and trade.

63.     Shirole objected to the terms of the noncompete.

7

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

64.     Shirole stated that he would agree to a noncompete in line with that discussed in previous years.

65.     Shirole provided a partially executed noncompete in line with the version he had previously provided.

66.     Based on the fact he had provided a partially executed noncompete and had been directed to attend by the Defendants' CEO, Shirole attended the conference.

67.     On November 3, 2021, Shirole attended a conference call with the CEO of the Defendants, Harvey, Wenzel, and representatives of Defendant's customer Marathon Digital Holdings.

68.     On that conference call, Harvey stated that Defendants were "pulling out" of planned location in Pitt County, North Carolina because of challenges surrounding the racial demographics of a site.

69.     Harvey stated that the site location was in an "economically down-trodden" area and the residents were "non-white."

70.     Harvey stated that these factors combined with an "activist individual" made the site less desirable.

71.     Harvey made it apparent that the racial demographics of the neighborhood were not desirable because the residents were primarily non-white.

72.     This statement shocked Shirole.

8

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

73.     Use of racial demographics in determining site location is contrary to the espoused values of the Defendants.

74.     Use of racial demographics to select such sites is also generally prohibited by governmental organizations Defendants work with to select such sites.

75.     Later in the day on November 3, 2021, Shirole was told he was going to report to Harvey.

76.     On November 4, 2021, Shirole reported Harvey's comments about racial demographics to Defendant's HR department in an in-person meeting followed by a written account of the incident.

77.     Shirole reported that such comments were inappropriate and improper.

78.     Shirole also reported that he was, as a non-white person, concerned about reporting to someone who expressed such views.

79.     Shirole then attended the conference in Dubai, as previously directed by the Defendant's CEO.

80.     The conference was sponsored by another entity with whom Shirole was a primary point of contact.

81.     During the conference, Shirole interacted with Defendants' CEO and CCO, including updating them on meetings and events he was participating in.

82.     Defendants' CEO and CCO responded positively to Shirole's presence and participation on the conference.

9

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

83.     At no point did Defendants' CEO or CCO tell Shirole he should not be at the conference.

84.     At no point did Defendants' CEO or CCO tell Shirole he should not meet with individuals or otherwise continue his job duties.

85.     On his return, Shirole was placed on suspension.

86.     Defendants did not offer Shirole a reason for his suspension.

87.     Defendants did not pay Shirole his full commissions, as promised.

88.     Instead, Defendants demanded Shirole sign a separation agreement.

89.     Defendants told Shirole that if he did not sign a separation agreement, they would fire him for cause.

90.     Defendants do not have a legitimate basis to fire Shirole for cause.

91.     Defendants claim they have cause to fire Shirole because he would not sign a non-compete agreement.

92.     This does not constitute termination for cause.

93.     Defendants cannot direct Shirole to sign a non-compete as part of his job duties.

94.     Defendants employed Shirole for years without a non-compete.

95.     Defendants further claim they have cause to fire Shirole because he attended the conference in Dubai.

10

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

96.     Shirole complied with the reasonable directions of the Defendants' CEO in attending the conference.

97.     Defendants' CEO and CCO knew and approved of Shirole's attendance and participation in the conference.

98.     This does not constitute cause for termination.

99.     The purported basis to terminate Shirole for cause is a pretext for Defendants' retaliatory animus.

100.     Defendants sought to terminate Shirole in retaliation for reporting various illegal and improper activities.

101.     Defendants further sought to terminate Shirole in retaliation for engaging in activities protected by law, including demanding payment of his commissions.

102.     Defendants further sought to terminate Shirole to deny him earned commissions.

103.     Defendants' proposed separation agreement included a release of all claims against the Defendants.

104.     Defendants' proposed separation agreement substantially reduced the amount of commissions Defendants were obligated to pay Shirole and extended the time by which they had to pay them.

105.     Defendants otherwise were obligated to pay more money faster under the Commission Plan.

106.    Defendants' proposed separation agreement also included payment for stock options and incentives that Defendants would otherwise be obligated to make.

107.    Defendants' proposed separation agreement also contained restrictive covenants which were unenforceable under Minnesota law.

108.    Defendants' proposed separation agreement is unreasonable, unenforceable, and contrary to Minnesota and federal law.

109.    Defendants' proposed separation agreement was an adhesion contract.

110.    Defendants' proposed separation agreement was designed to create a legal fiction to benefit Defendants at Shirole's expense.

111.    Defendants wanted to terminate Shirole for cause because they wanted more beneficial treatment under applicable compensation agreements.

112.    Defendants tried to use the threat of terminating Shirole for cause to coerce him to sign the separation agreement.

113.    Defendants repeatedly demanded Shirole sign the separation agreement in less time than that allowed by law for him to consider it, or they would terminate Shirole for cause.

114.    This constitutes unlawful coercion under Minnesota Statute § 609.27.

115.    Shirole refused to sign the separation agreement.

116.    Shirole instead alerted Defendants to the illegal nature of their acts.

117.    In response, Defendants terminated Shirole for cause on or about December 8, 2021.

118.    Defendants have stated to their customers and others that they have terminated Shirole for cause.

119.    Defendants did not offer any basis for what constituted cause for Shirole's termination.

120.    Shirole's reputation among his coworkers, contacts, references, and his community have suffered as a result of Defendants' telling others Shirole was terminated for cause.

121.    Defendants do not have a legitimate basis to terminate Shirole for cause.

122.    Instead, Defendants terminated Shirole in retaliation for reporting illegal conduct and insisting on his legal rights.

123.    Defendants further terminated Shirole to avoid paying him lawful compensation that Defendants otherwise owed Shirole.

124.    Defendants owe Shirole at least $6.8 Million in commissions on sales of over $1.3 Billion pursuant to the Commission Plan.

125.    Shirole has substantial stock options and stock grants in the Defendants which the Defendants are seeking to unlawfully reclaim.

## COUNT I
## DISCRIMINATION ON BASIS OF RACE
## IN VIOLATION OF MINN. STAT. § 363A.08

126.     Shirole realleges and restates all preceding paragraphs of this Complaint.

127.     Minnesota Statute § 363A.08 prohibits discrimination against an employee

on the basis of their race.

128.     Defendants favored white employees.

129.     Defendants would pass up potential employees "because of their look."

130.     This unwritten policy meant that Defendants would often preferentially

hire white applicants.

131.     Defendants employ primarily white employees.

132.     Shirole is in a protected class on the basis of his race.

133.     Defendants treated Shirole differently on the basis of his race.

134.     Defendants disciplined Shirole differently for purported infractions than

white employees.

135.     Defendants discriminated against Shirole because he is non-white.

136.     Defendants presented no legitimate reason for this discrimination.

137.     Defendants stated motivation to terminate Shirole is pretext for

discrimination.

138.     As a direct and proximate result of the Defendants' racial discrimination,

Shirole has suffered damages in an amount to be proven at trial but in excess of $50,000.

14

139.     Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

140.     Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

141.     Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

## <u>COUNT II</u>
### REPRISAL/RETALIATION PROHIBITED BY MINN. STAT. § 363A.15

142.     Shirole realleges and restates all preceding paragraphs of this Complaint.

143.     Shirole engaged in protected activities by reporting racially charged remarks by Harvey.

144.     Defendants, and Harvey in particular, retaliated against Shirole by taking materially adverse employment action, namely suspending him, attempting to unlawfully coerce him into a separation agreement which released claims against the Defendants, and terminating his employment.

145.     Defendant's retaliation is causally connected with Shirole's protected activities, occurring promptly after of Shirole's reports of inappropriate and unlawful behavior.

146.     Defendants' retaliatory actions are prohibited by law.

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

147.     Defendants' retaliatory actions are contrary to Defendant's own policies.

148.     Shirole has been damaged by Defendants' discrimination in an amount to be proven at trial but in excess of $50,000.

149.     Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

150.     Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

151.     Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

**COUNT III**
**FAILURE TO PAY WAGES PROMPTLY**
**MINN. STAT. CHAP. 181**

152.     Shirole realleges and restates all preceding paragraphs of this Complaint.

153.     Defendants have an obligation to pay Shirole commissions earned in a prompt and timely fashion, pursuant to Minn. Stat. §§ 181.101, 181.13, and 181.145.

154.     Defendants have failed to timely pay Shirole all commissions earned, even after demand.

155.     Shirole has been damaged by Defendants' failure to timely pay wages in an amount to be proven at trial but in excess of $50,000.

156.     Shirole is also entitled to an award of penalties and attorneys' fees pursuant to Minn. Stat. § 181.171, subd. 3.

## <u>COUNT IV</u>
## WRONGFUL TERMINATION

157.     Shirole realleges and restates all preceding paragraphs of this Complaint.

158.     Defendants have terminated Shirole for an illegal reason, namely for engaging in protected activities.

159.     Defendants did not follow their own policies when terminating Shirole.

160.     Defendants' effective termination of Shirole's employment was wrongful.

161.     Defendants' effective termination of Shirole's employment was illegal.

162.     Shirole has been damaged by Defendants' wrongful termination in an amount to be proven at trial but in excess of $50,000.

163.     Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

164.     Shirole is also entitled to an award of punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

165.     Shirole is also entitled to an award of attorneys' fees pursuant to Minn. Stat.§ 363A.33.

17

### COUNT V
### MINN. STAT. § 181.932
### RETALIATION IN VIOLATION
### OF THE MINNESOTA WHISTLEBLOWER ACT

166.    Shirole realleges and restates all preceding paragraphs of this Complaint.

167.    Shirole engaged in protected activity under Minnesota statutes by reporting unlawful behavior.

168.    Shirole reported that Harvey was making racial comments and statements which were offensive to non-white employees.

169.    Shirole reported that his commissions were not accurately calculated or timely paid.

170.    Shirole reported that the forecasting of Defendants may not be accurate, in violation of statements Defendants were making to investors.

171.    Shirole is entitled to an award of actual damages and civil penalties in an amount to be proven at trial, but in excess of $50,000.

172.    Shirole is also entitled to an award of attorneys' fees under Minn. Stat. § 181.935.

### COUNT VI
### BREACH OF CONTRACT

173.    Shirole realleges and restates all preceding paragraphs of this Complaint.

174.    Shirole and Defendants were parties to valid contracts, the end result of bargain for exchange.

18

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

175.   Defendants breached those contracts by terminating Shirole for cause, where no cause existed.

176.   Defendants further breached those contracts by failing to pay Shirole all commissions and wages owed to him.

177.   Defendants further breached those contracts by failing to provide Shirole all stock options and stock grants to which he was entitled.

178.   Shirole has been damaged by Defendants' breach of contract in an amount to be proven at trial but in excess of $50,000.

<u>**COUNT VII**</u>
**UNJUST ENRICHMENT**

179.   Shirole realleges and restates all preceding paragraphs of this Complaint.

180.   Defendants have been unjustly enriched at Shirole's expense.

181.   Shirole has been damaged by Defendants' unjust enrichment in an amount to be proven at trial but in excess of $50,000.

19

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rohit Shirole requests a **JURY TRIAL** on his claims and asks that

judgment be entered as follows:

A. Awarding Shirole actual damages, compensatory damages in the amount of

three times his actual damages, civil penalties, and damages for his mental

anguish and suffering.

B. Awarding Shirole punitive damages against Defendants under the Minnesota

Human Rights Act;

C. Awarding Shirole judgment against Defendants in an amount to be proven at

trial but in excess of $50,000;

D. Awarding Shirole his costs and disbursements;

E. Awarding Shirole his attorneys' fees; and

F. All other relief that this Court deems just and equitable.

CHESTNUT CAMBRONNE PA

Dated:  January 17, 2022            By /s/ Emeric J. Dwyer
                                   Emeric J. Dwyer (#0389471)
                                   Jesse D. Berglund (#389079)
                                   100 Washington Avenue S, Suite 1700
                                   Minneapolis, Minnesota 55401
                                   Telephone No. (612) 339-7300
                                   edwyer@chestnutcambronne.com
                                   jberglund@chestnutcambronne.com

                                   *Attorneys for Plaintiff Rohit Shirole*

20

# ACKNOWLEDGMENT

Plaintiff, through its undersigned attorney, hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes Section 549.211 to the party against whom the allegations in this pleading are asserted.

Dated:  January 17, 2022          /s/ Emeric J. Dwyer
                                  Emeric J. Dwyer

EXHIBIT B

**ITEMIZATION**

- $60,000 – Lost wages and benefits for the time he was unemployed;
- $275,000 – Lost compensation representing the difference in his compensation by Debtor and his new employer;
- $11,319,967.93 – Lost commissions (colocation sales, equipment sales, capex sales)(*See* Group Exhibit C);
- $11,319,967.93 –  Double damages for failure to remit owed commissions within 15 days of termination pursuant to Minn.Stat. § 181.145;
- $57,000 – Estimated unpaid and unreimbursed business expenses;
- $60,000 – Estimated value of lost digital mining equipment not returned by Defendants;
- $55,000 – Estimated lost consequential revenue resulting from failure to return mining equipment;
- $9,222,232 – Value to have been paid for repurchase of shares in the Debtors ($254 per share, 36,308 shares);
- $84,269.03 – Attorney fees incurred resulting from non-payment of amounts owed by Debtors.

- **Total Claim - $32,453,436.89**

GROUP EXHIBIT C

TAB 1

Tab 1

| Company | Deal Status | Batch Date | Qty | MW | kWH Rate | Mthly Rec Rev | Term (Mo) | Site | Deploy Date | Commission Margin | Commission Rate | Contract Value | Commission Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Altonomy db | Closed-Won | 1/1/2023 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 1/1/2023 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Altonomy db | Closed-Won | 5/1/2022 | 1800 | 5.832 | $ 0.049 | $ 208,610.64 | 60 | WH | 5/31/2022 | $ 0.010 | 0.065 | $ 12,516,638.40 | $ 33,207.41 |
| Altonomy db | Closed-Won | 6/1/2022 | 1800 | 5.832 | $ 0.049 | $ 208,610.64 | 60 | WH | 6/1/2022 | $ 0.010 | 0.065 | $ 12,516,638.40 | $ 33,207.41 |
| Altonomy db | Closed-Won | 7/1/2022 | 1800 | 5.832 | $ 0.049 | $ 208,610.64 | 60 | WH | 7/1/2022 | $ 0.010 | 0.065 | $ 12,516,638.40 | $ 33,207.41 |
| Altonomy db | Closed-Won | 8/1/2022 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 8/1/2022 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Altonomy db | Closed-Won | 9/1/2022 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 9/1/2022 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Altonomy db | Closed-Won | 10/1/2022 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 10/1/2022 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Altonomy db | Closed-Won | 11/1/2022 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 11/1/2022 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Altonomy db | Closed-Won | 12/1/2022 | 2700 | 8.748 | $ 0.049 | $ 312,915.96 | 60 | WH | 12/1/2022 | $ 0.010 | 0.065 | $ 18,774,957.60 | $ 49,811.11 |
| Atlas Mining | Closed-Won | 1/1/2023 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 1/1/2023 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 2/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 2/28/2023 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 3/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 3/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 4/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 4/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 5/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 5/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 6/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 6/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 7/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 7/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 8/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 8/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 9/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 9/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 10/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 10/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 11/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 11/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Atlas Mining | Closed-Won | 12/1/2022 | 3000 | 10.32 | $ 0.054 | $ 406,814.40 | 36 | WH | 12/1/2022 | $ 0.015 | 0.05 | $ 14,645,318.40 | $ 67,802.40 |
| Bit Digital | Closed-Won | 10/1/2021 | 10,000 | 30 | $.036+PS | | 36 | NE | | $PROFITSHARE | | | $428,571.48 |
| Compass Mining | Closed-Won | 1/1/2023 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 1/1/2023 | $ 0.020 | 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 2/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 2/1/2022 | $ 0.020 | 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 2/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 2/1/2022 | $ 0.020 | 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 3/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 3/30/2022 | $ 0.020 | 0.075 | $ 1,602,204.00 | $ 8,146.80 |
| Compass Mining | Closed-Won | 2/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 3/30/2022 | $ 0.020 | 0.075 | $ 1,602,204.00 | $ 8,146.80 |
| Compass Mining | Closed-Won | 3/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 3/1/2022 | $ 0.020 | 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 3/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 3/1/2022 | $ 0.020 | 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 4/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 4/1/2022 | $ 0.020 | 0.075 | $ 1,602,204.00 | $ 8,146.80 |
| Compass Mining | Closed-Won | 4/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 4/1/2022 | $ 0.020 | 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 4/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 4/1/2022 | $ 0.020 | 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 4/1/2022 | 6500 | 20.15 | $ 0.059 | $ 867,860.50 | 60 | WH | 4/1/2022 | $ 0.020 | 0.075 | $ 52,071,630.00 | $ 264,771.00 |
| Compass Mining | Closed-Won | 4/1/2022 | 6500 | 20.15 | $ 0.059 | $ 867,860.50 | 60 | WH | 4/1/2022 | $ 0.020 | 0.075 | $ 52,071,630.00 | $ 264,771.00 |
| Compass Mining | Closed-Won | 5/1/2022 | 3200 | 9.92 | $ 0.059 | $ 427,254.40 | 60 | WH | 5/31/2022 | $ 0.020 | 0.075 | $ 25,635,264.00 | $ 130,348.80 |
| Compass Mining | Closed-Won | 4/1/2022 | 3200 | 9.92 | $ 0.059 | $ 427,254.40 | 60 | WH | 5/31/2022 | $ 0.020 | 0.075 | $ 25,635,264.00 | $ 130,348.80 |
| Compass Mining | Closed-Won | 5/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 5/1/2022 | $ 0.020 | 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 6/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 6/30/2022 | $ 0.020 | 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 6/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 6/30/2022 | $ 0.020 | 0.075 | $ 1,602,204.00 | $ 8,146.80 |
| Compass Mining | Closed-Won | 5/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 6/30/2022 | $ 0.020 | 0.075 | $ 1,602,204.00 | $ 8,146.80 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Compass Mining | Closed-Won | 6/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 6/30/2022 | $ 0.020 | $ 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 5/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 6/30/2022 | $ 0.020 | $ 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 6/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 6/30/2022 | $ 0.020 | $ 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 7/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 7/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 7/1/2022 | 200 | 0.62 | $ 0.059 | $ 26,703.40 | 60 | WH | 7/1/2022 | $ 0.020 | $ 0.075 | $ 1,602,204.00 | $ 8,146.80 |
| Compass Mining | Closed-Won | 7/1/2022 | 300 | 0.93 | $ 0.059 | $ 40,055.10 | 60 | WH | 7/1/2022 | $ 0.020 | $ 0.075 | $ 2,403,306.00 | $ 12,220.20 |
| Compass Mining | Closed-Won | 7/1/2022 | 550 | 1.705 | $ 0.059 | $ 73,434.35 | 60 | WH | 7/1/2022 | $ 0.020 | $ 0.075 | $ 4,406,061.00 | $ 22,403.70 |
| Compass Mining | Closed-Won | 8/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 8/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 9/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 9/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 10/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 10/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 11/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 11/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Compass Mining | Closed-Won | 12/1/2022 | 1667 | 5.1677 | $ 0.059 | $ 222,572.84 | 60 | WH | 12/1/2022 | $ 0.020 | $ 0.075 | $ 13,354,370.40 | $ 67,903.58 |
| Culver Ventures | Closed-Won | 2/1/2022 | 40 | 0.124 | $ 0.059 | $ 5,340.68 | 36 | WR | 2/28/2022 | $ 0.027 | $ 0.06 | $ 192,264.48 | $ 1,759.71 |
| Culver Ventures | Closed-Won | 3/1/2022 | 40 | 0.124 | $ 0.059 | $ 5,340.68 | 36 | WR | 3/1/2022 | $ 0.027 | $ 0.06 | $ 192,264.48 | $ 1,759.71 |
| Culver Ventures | Closed-Won | 4/1/2022 | 40 | 0.124 | $ 0.059 | $ 5,340.68 | 36 | WR | 4/1/2022 | $ 0.027 | $ 0.06 | $ 192,264.48 | $ 1,759.71 |
| Culver Ventures | Closed-Won | 5/1/2022 | 10 | 0.031 | $ 0.059 | $ 1,335.17 | 36 | WR | 5/31/2022 | $ 0.027 | $ 0.06 | $ 48,066.12 | $ 439.93 |
| Culver Ventures | Closed-Won | 6/1/2022 | 10 | 0.031 | $ 0.059 | $ 1,335.17 | 36 | WR | 6/1/2022 | $ 0.027 | $ 0.06 | $ 48,066.12 | $ 439.93 |
| Culver Ventures | Closed-Won | 7/1/2022 | 10 | 0.031 | $ 0.059 | $ 1,335.17 | 36 | WR | 7/1/2022 | $ 0.027 | $ 0.06 | $ 48,066.12 | $ 439.93 |
| GEM Mining | Closed-Won | 1/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 1/31/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 12/1/2021 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 1/31/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 2/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 2/28/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 3/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 3/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 4/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 4/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 5/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 5/31/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 6/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 6/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 7/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 7/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 8/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 8/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 9/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 9/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 10/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 10/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| GEM Mining | Closed-Won | 11/1/2022 | 500 | 1.62 | $ 0.059 | $ 69,773.40 | 36 | KM | 11/1/2022 | $ 0.019 | $ 0.06 | $ 2,511,842.40 | $ 16,177.97 |
| Gilley Enterprises | Closed-Won | 5/1/2021 | 15 | 0.0502 | $ 0.057 | $ 2,088.82 | 36 | WH | 5/1/2021 | $ 0.018 | $ 0.06 | $ 75,197.52 | $ 474.93 |
| Haylo Group | Closed-Won | 2/1/2022 | 10 | 0.031 | $ 0.054 | $ 1,222.02 | 36 | KM | 2/1/2022 | $ 0.022 | $ 0.06 | $ 43,992.72 | $ 358.46 |
| Haylo Group | Closed-Won | 3/1/2022 | 10 | 0.031 | $ 0.054 | $ 1,222.02 | 36 | KM | 3/1/2022 | $ 0.022 | $ 0.06 | $ 43,992.72 | $ 358.46 |
| Haylo Group | Closed-Won | 4/1/2022 | 10 | 0.031 | $ 0.054 | $ 1,222.02 | 36 | KM | 4/1/2022 | $ 0.022 | $ 0.06 | $ 43,992.72 | $ 358.46 |
| Haylo Group | Closed-Won | 5/1/2022 | 77 | 0.2387 | $ 0.054 | $ 9,409.55 | 36 | KM | 5/31/2022 | $ 0.022 | $ 0.06 | $ 338,743.80 | $ 2,760.14 |
| Haylo Group | Closed-Won | 6/1/2022 | 77 | 0.2387 | $ 0.054 | $ 9,409.55 | 36 | KM | 6/1/2022 | $ 0.022 | $ 0.06 | $ 338,743.80 | $ 2,760.14 |
| Haylo Group | Closed-Won | 7/1/2022 | 77 | 0.2387 | $ 0.054 | $ 9,409.55 | 36 | KM | 7/1/2022 | $ 0.022 | $ 0.06 | $ 338,743.80 | $ 2,760.14 |
| Integrated Ventures | Closed-Won | 8/30/2021 | 405 | 1.33392 | $ 0.049 | $ 47,714.32 | 36 | NE | 12/31/2021 | $ 0.009 | $ 0.05 | $ 1,717,715.52 | $ 5,258.31 |
| Konza Mining | Closed-Won | 12/1/2021 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 1/31/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 11/1/2021 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 1/31/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 2/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 2/28/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 1/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 2/28/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 3/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 3/1/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 4/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 4/1/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 5/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 5/31/2022 | $ 0.027 | $ 0.07 | $ 544,749.60 | $ 4,362.61 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Konza Mining | Closed-Won | 6/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 6/1/2022 | $ 0.027 | 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 7/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 7/1/2022 | $ 0.027 | 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 8/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 8/1/2022 | $ 0.027 | 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 9/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 12/31/2022 | $ 0.027 | 0.07 | $ 544,749.60 | $ 4,362.61 |
| Konza Mining | Closed-Won | 10/1/2022 | 85 | 0.2635 | $ 0.059 | $ 11,348.95 | 48 | KM | 12/31/2022 | $ 0.027 | 0.07 | $ 544,749.60 | $ 4,362.61 |
| Marathon DH | Closed-Won | 2/1/2022 | 15200 | 47.12 | $ 0.057 | $ 1,960,663.20 | 60 | KM | 2/1/2022 | $ 0.015 | 0.065 | $ 117,639,792.00 | $ 402,451.92 |
| Marathon DH | Closed-Won | 1/1/2022 | 24500 | 76.72 | $ 0.057 | $ 3,192,319.20 | 60 | KM | 2/28/2022 | $ 0.015 | 0.065 | $ 191,539,152.00 | $ 655,265.52 |
| Marathon DH | Closed-Won | 12/1/2021 | 14700 | 46.34 | $ 0.057 | $ 1,928,207.40 | 60 | KM | 2/28/2022 | $ 0.015 | 0.065 | $ 115,692,444.00 | $ 395,789.94 |
| Marathon DH | Closed-Won | 11/1/2021 | 10500 | 32.83 | $ 0.057 | $ 1,366,056.30 | 60 | KM | 2/28/2022 | $ 0.015 | 0.065 | $ 81,963,378.00 | $ 280,401.03 |
| Marathon DH | Closed-Won | 2/1/2022 | 15200 | 47.12 | $ 0.057 | $ 1,960,663.20 | 60 | KM | 3/30/2022 | $ 0.015 | 0.065 | $ 117,639,792.00 | $ 402,451.92 |
| Marathon DH | Closed-Won | 1/1/2022 | 24500 | 76.72 | $ 0.057 | $ 3,192,319.20 | 60 | KM | 3/30/2022 | $ 0.015 | 0.065 | $ 191,539,152.00 | $ 655,265.52 |
| Marathon DH | Closed-Won | 1/1/2022 | 24500 | 76.72 | $ 0.057 | $ 3,192,319.20 | 60 | KM | 3/30/2022 | $ 0.015 | 0.065 | $ 191,539,152.00 | $ 655,265.52 |
| Marathon DH | Closed-Won | 11/1/2021 | 10500 | 32.83 | $ 0.060 | $ 1,437,954.00 | 60 | WH | 12/31/2021 | $ 0.021 | 0.075 | $ 86,277,240.00 | $ 452,955.51 |
| Marathon DH | Closed-Won | 10/1/2021 | 8100 | 25.6455 | $ 0.060 | $ 1,123,272.90 | 60 | WH | 12/31/2021 | $ 0.021 | 0.075 | $ 67,396,374.00 | $ 353,830.96 |
| Marathon DH | Closed-Won | 10/1/2021 | 8100 | 25.6455 | $ 0.060 | $ 1,123,272.90 | 60 | WH | 12/31/2021 | $ 0.021 | 0.075 | $ 67,396,374.00 | $ 353,830.96 |
| NFN8 | Closed-Won | 11/1/2021 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 1/31/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 10/1/2021 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 1/31/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 9/1/2021 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 1/31/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 2/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 2/28/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 1/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 2/28/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 12/1/2021 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 2/28/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 3/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 3/1/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 4/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 4/1/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 5/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 5/31/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 6/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 6/1/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 7/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 7/1/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 8/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 8/1/2022 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| NFN8 | Closed-Won | 8/1/2022 | 50 | 0.155 | $ 0.056 | $ 6,336.40 | 36 | KM | 12/31/2021 | $ 0.024 | 0.06 | $ 228,110.40 | $ 1,955.23 |
| Omnific Ventures | Closed-Won | 2/1/2022 | 20 | 0.062 | $ 0.054 | $ 2,444.04 | 36 | KM | 2/28/2022 | $ 0.022 | 0.06 | $ 87,985.44 | $ 716.92 |
| Omnific Ventures | Closed-Won | 3/1/2022 | 20 | 0.062 | $ 0.054 | $ 2,444.04 | 36 | KM | 3/1/2022 | $ 0.022 | 0.06 | $ 87,985.44 | $ 716.92 |
| Omnific Ventures | Closed-Won | 4/1/2022 | 20 | 0.062 | $ 0.054 | $ 2,444.04 | 36 | KM | 5/31/2022 | $ 0.022 | 0.06 | $ 87,985.44 | $ 716.92 |
| Optimal Founders | Closed-Won | 1/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 1/31/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 12/1/2021 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 1/31/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 2/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 2/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 3/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 3/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 4/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 4/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 5/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 5/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 6/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 6/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 7/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 7/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 8/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 8/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 9/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 9/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 10/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 10/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| Optimal Founders | Closed-Won | 11/1/2022 | 65 | 0.18 | $ 0.049 | $ 6,438.60 | 36 | NE | 11/1/2022 | $ 0.007 | 0.05 | $ 231,789.60 | $ 551.88 |
| SupplyBit | Closed-Won | 8/15/2022 | 600 | 1.995 | $ 0.057 | $ 83,011.95 | 36 | NE | 1/31/2022 | $ 0.015 | 0.05 | $ 2,988,430.20 | $ 13,107.15 |
| SupplyBit | Closed-Won | 9/15/2021 | 600 | 1.995 | $ 0.057 | $ 83,011.95 | 36 | NE | 3/30/2022 | $ 0.015 | 0.05 | $ 2,988,430.20 | $ 13,107.15 |
| SupplyBit | Closed-Won | 8/15/2021 | 600 | 1.995 | $ 0.057 | $ 83,011.95 | 36 | NE | 3/30/2022 | $ 0.015 | 0.05 | $ 2,988,430.20 | $ 13,107.15 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Teracel | Closed-Won | 4/1/2022 | 500 | 1.55 | $ | 0.062 | $ | 70,153.00 | 36 | NE | 4/1/2022 | $ 0.020 | 0.06 | $ | 2,525,508.00 | $ | 9,597.60 |
| Touzi Capital | Closed-Won | 3/1/2022 | 6500 | 20 | $ | 0.059 | $ | 861,400.00 | 60 | WH | 3/1/2022 | $ 0.020 | 0.075 | $ | 51,684,000.00 | $ | 262,800.00 |
| US Bitcoin | Closed-Won | 8/1/2021 | 8630 | 30 | PWR Pass | | $ | 1,248,300.00 | 60 | WH | 11/1/2021 | $ 0.028 | 0.075 | $ | 74,898,000.00 | $ | 551,880.00 |
| Value Chain Venture | Closed-Won | 7/1/2021 | 100 | 0.34 | $ | 0.061 | $ | 15,140.20 | 24 | NE | 1/31/2022 | $ 0.019 | 0.05 | $ | 363,364.80 | $ | 2,829.48 |
| Value Chain Venture | Closed-Won | 9/1/2021 | 200 | 0.68 | $ | 0.061 | $ | 30,280.40 | 36 | NE | 1/31/2022 | $ 0.019 | 0.06 | $ | 1,090,094.40 | $ | 6,790.75 |
| Wayfaring Corp | Closed-Won | 1/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 1/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 12/1/2021 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 1/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 11/1/2021 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 1/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 2/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 2/28/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 3/1/2022 | 92 | 0.2852 | $ | 0.054 | $ | 11,242.58 | 60 | NE | 3/30/2022 | $ 0.012 | 0.065 | $ | 674,555.04 | $ | 1,948.71 |
| Wayfaring Corp | Closed-Won | 2/1/2022 | 92 | 0.2852 | $ | 0.054 | $ | 11,242.58 | 60 | NE | 3/30/2022 | $ 0.012 | 0.065 | $ | 674,555.04 | $ | 1,948.71 |
| Wayfaring Corp | Closed-Won | 3/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 3/1/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 4/1/2022 | 92 | 0.2852 | $ | 0.054 | $ | 11,242.58 | 60 | NE | 4/1/2022 | $ 0.012 | 0.065 | $ | 674,555.04 | $ | 1,948.71 |
| Wayfaring Corp | Closed-Won | 4/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 4/1/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 5/1/2022 | 75 | 0.2325 | $ | 0.054 | $ | 9,165.15 | 60 | NE | 5/31/2022 | $ 0.012 | 0.065 | $ | 549,909.00 | $ | 1,588.63 |
| Wayfaring Corp | Closed-Won | 5/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 5/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 6/1/2022 | 75 | 0.2325 | $ | 0.054 | $ | 9,165.15 | 60 | NE | 6/1/2022 | $ 0.012 | 0.065 | $ | 549,909.00 | $ | 1,588.63 |
| Wayfaring Corp | Closed-Won | 6/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 6/1/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 7/1/2022 | 75 | 0.2325 | $ | 0.054 | $ | 9,165.15 | 60 | NE | 7/1/2022 | $ 0.012 | 0.065 | $ | 549,909.00 | $ | 1,588.63 |
| Wayfaring Corp | Closed-Won | 7/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 7/1/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 8/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 8/1/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 10/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 12/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| Wayfaring Corp | Closed-Won | 9/1/2022 | 60 | 0.186 | $ | 0.049 | $ | 6,653.22 | 36 | WH | 12/31/2022 | $ 0.010 | 0.05 | $ | 239,515.92 | $ | 814.68 |
| White Rock Mgmt | Closed-Won | 4/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 4/1/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| White Rock Mgmt | Closed-Won | 5/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 5/31/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| White Rock Mgmt | Closed-Won | 6/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 6/1/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| White Rock Mgmt | Closed-Won | 7/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 7/1/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| White Rock Mgmt | Closed-Won | 8/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 8/1/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| White Rock Mgmt | Closed-Won | 9/1/2022 | 1000 | 3.24 | $ | 0.053 | $ | 125,355.60 | 60 | WH | 9/1/2022 | $ 0.014 | 0.065 | $ | 7,521,336.00 | $ | 25,827.98 |
| Zero G Capital | Closed-Won | 10/1/2021 | 300 | 0.95 | $ | 0.054 | $ | 37,449.00 | 60 | WH | 1/1/2022 | $ 0.015 | 0.065 | $ | 2,246,940.00 | $ | 8,113.95 |

|  |  |
|---|---|
| **Total Hosting Commissions Owed** | **$ 9,197,345.93** |
| Total Hardware Commissions Owed (Tab 2) | $ 1,673,622.00 |
| Total CapEx Contribution Commissions Owed (Tab 3) | $ 449,000.00 |
| **Total Commissions Owed** | **$ 11,319,967.93** |

TAB 2

**Hosted Equipment Sales**

| Vendor | Monthly Qty | # of Months Remaining | # Miners | Customers | Approx Margin/Miner | Total Gross Margin | |
|---|---|---|---|---|---|---|---|
| True North | 300 | 1 | 300 | Merchant Mining | $200 | $60,000 | |
| True North | 350 | 1 | 350 | Zero G | $200 | $70,000 | |
| Lake Parime | 100 | 1 | 100 | VCV | $200 | $20,000 | |
| Bitmain | 275 | 9 | 2475 | Multiple* | $290 | $717,750 | |
| Bitmain | 200 | 1 | 200 | Multiple* | $225 | $45,000 | |
| Bitmain | 500 | 12 | 6000 | GEM | $525 | $3,150,000 | |
| Bitmain | 712 | 6 | 4272 | Multiple* | $255 | $1,089,360 | |
| Bitmain | 500 | 6 | 3000 | Compass Mining | $255 | $765,000 | |
| Bitmain | 120 | 6 | 720 | Blockmetrix | $420 | $302,400 | |
| Bitmain | 118 | 6 | 708 | Multiple* Optimal | $420 | $148,680 | *split 50% |
| | 65 | 12 | 780 | Founders/Anchorage | $2,564 | $1,999,920 | |

| | Total Gross Margin | $8,368,110 |
|---|---|---|
| | 20% Commission | $1,673,622 |

\* "Multiple" includes, without limitation: Compass Mining, Culver Ventures, Gilley Enterprises, Haylo Group, Konza Mining, NFN8, Omnific Ventures, Wayfaring Group

TAB 3

Tab 3

US Bitcoin

Over $10.4M for CapEx Contribution.  Project completed in November 2021
Commissionable at 1%
                    $104,000

MarathonDigital Holdings

Over $34.5M in CapEx Contribution received in November and December 2021
Commissionable at 1%
                    $345,000

Total CapEx Commissions: $449,000.00