**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) ) | Case No. 22-90273 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' EMERGENCY MOTION TO APPROVE SETTLEMENT
WITH MARATHON DIGITAL HOLDINGS, INC. PURSUANT TO
BANKRUPTCY RULE 9019**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. (PREVAILING CENTRAL TIME) ON FEBREUARY 9, 2023.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") approving the settlement with Marathon Digital Holdings, Inc. pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein is Bankruptcy Rule 9019.

## BACKGROUND

5. On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 26, 2022, the Bankruptcy Court entered the *Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), and (IV) Granting Related Relief* [Docket No. 86] (the "Bar Date Order").

7. The Bar Date Order effectively set November 23, 2022, at 5:00 p.m. (prevailing Central Time) as the deadline (the "Claims Bar Date") to file a request for allowance of all types of claims against the Debtors that arose or are deemed to have arisen before the Petition Date, except for claims specifically exempt from complying with the applicable Bar Dates (as defined in the Bar Date Order) as set forth in the Bar Date Order.

8. On November 23, 2022, Marathon timely filed Proof of Claim No. 36, in the Debtors' case (Case No. 22-90275) (the "Marathon POC"), which asserts a general unsecured claim in the amount of approximately: (i) $42,398,216.55 for claims arising under the Hosting Agreements (as defined in the Marathon POC); (ii) $21,266,580.63, plus fees and expenses for

3

claims arising under that certain *Senior Promissory Note*, dated as of July 1, 2022, by and between Marathon, as Lender, and Compute North LLC, as Borrower (the "Marathon Note"); (iii) $14,000,000 for claims arising from the breach of a letter of intent between Marathon and Compute North LLC (the "Marathon LOI"); and (iv) for at least $1,700,000, plus an additional $250,000 daily for lost revenue, profits and other damages claims against the Debtors (collectively, the "Marathon Claim").

9. Pursuant to a stipulation dated December 22, 2022 [Docket No. 708] (the "Marathon Note Stipulation"), Marathon's claims relating to the Marathon Note were previously allowed as a General Unsecured Claim in the amount of $20,266,580.63 ("Marathon Note Claim"). Pursuant to the Marathon Note Stipulation, Marathon reserved all its rights regarding all other claims asserted by Marathon and its affiliates in the Marathon POC against the Debtors.

10. On December 21, 2022, the Bankruptcy Court entered *the Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 715] (the "Solicitation Procedures Order").

11. Following entry of the Solicitation Procedures Order, the Debtors commenced soliciting acceptances of the *Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 723] (as amended, revised and supplemented from time to time, the "Chapter 11 Plan").[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Marathon POC or the Chapter 11 Plan, as applicable.

4

12. Marathon received a Class 3 ballot from the Debtors providing Marathon with a General Unsecured Claim in the amount of $1.00 for voting purposes. Marathon also received a Class 7 ballot from the Debtors providing Marathon with Preferred Equity Interests in the amount of 39,597 shares of Series C Preferred Stock for voting purposes.

13. Marathon disputed the amount of its claim as reflected in the Class 3 ballot for holders of General Unsecured Claims provided by the Debtors. The Debtors disputed certain amounts asserted by Marathon in the Marathon POC.

14. Although the Debtors did not dispute certain portions of the Marathon Claim, the Debtors did dispute Marathon's claims arising under the Hosting Agreements, on the grounds that a large portion of the funds underlying the claims remain on deposit with the purchasers of the Debtors' interests in the King Mountain facility and the Kearney and Wolf Hollow Facilities. The Debtors also challenged Marathon's entitlement to recover from the Debtors for lost revenue, profits and other damages claims against the Debtors. The Debtors further contested Marathon's entitlement to claim damages under the Marathon LOI, on the basis that the Debtors fulfilled their obligations under the LOI. Marathon disagrees with the Debtors' positions.

15. Marathon asserts that pursuant to its Hosting Agreements with the Debtors, Marathon deposited and prepaid the Debtors over $40 million to host and maintain Marathon's miners. Marathon further asserts that the Debtors have assigned the Hosting Agreements to third parties, but have failed to transfer all the related deposits to those third parties, and that to the extent the third parties fail to honor the terms of the assigned Hosting Agreements and fully credit Marathon's prepaid deposits, Marathon has a breach claim against the Debtors. In addition, Marathon contends that pursuant to the Marathon LOI, Marathon paid $14 million to the Debtors to ensure the Debtors would install and energize Marathon's miners on an expedited basis.

Marathon asserts that despite the payment, the Debtors failed to expedite miner installation and operation and, in many cases, failed to ever install the miners as promised, leaving them untouched and sitting in warehouses. Marathon asserts the Debtors' failure to perform under the Marathon LOI gives rise to additional breach claims in the amount of $14 million. Finally, Marathon asserts that the Debtors' failure to perform under the Hosting Agreements and LOI have resulted in substantial lost revenue, profits and other damages to Marathon, for which Marathon believes it is entitled to compensation. The Debtors disagree with Marathon's assertions.

16. Marathon is one of the Debtors' largest creditors, customers, and preferred equity investors. Absent the settlement, Marathon would have voted to reject the Debtors' Chapter 11 Plan and opted out of the releases. With the settlement, the Debtors obtain the benefit of Marathon's support for the Chapter 11 Plan and its agreement to provide modified releases to third parties, as requested by the Debtors.

17. The parties engaged in additional extensive arm's-length, good faith negotiations concerning the other aspects of the Marathon Claim, the disputed Marathon ballots, Marathon's vote on the Chapter 11 Plan and the third party releases provided for under the Chapter 11 Plan, and have agreed to resolve their disputes, as set forth in the stipulation attached hereto as **Exhibit B** (the "Settlement Stipulation"). The Debtors believe that the Settlement Stipulation embodies a fair and reasonable compromise of their disputes with Marathon and is in the best interests of the Debtors and their Estates.

## BASIS FOR RELIEF REQUESTED

**A.  Settlements Are Favored in Bankruptcy and Debtors' Business Judgment Is Given Significant Deference.**

18. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice

6

shall be given to creditors, the United States trustee … and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

19. "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

20. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

21. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[3]

---

[3] Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Reorganized Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

22. Further, the Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason. Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1).

23. It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business, if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.C.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986*))*; *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding that the standard to assume a lease is the business judgment standard).

24. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309.

**B.     The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.**

25. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with due consideration

8

for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in *Jackson Brewing*); *see also Age Ref. Inc.*, 801 F.3d at 540 (same).

26. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *Foster Mortg. Corp.*, 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

**(a)** **The Reorganized Debtors Are Not Certain to Succeed in Litigating the Issues With Marathon.**

22. With respect to "the probability of success in litigating the claim subject to settlement," although the Debtors are confident in their position, they understand there is inherent risk in any litigation. The Settlement Stipulation provides the Debtors with a comprehensive resolution of the issues related to the Marathon Claim in an efficient and economical manner, and eliminates potential delay in the administration of the Debtors' estates. Thus, the Debtors believe, in their sound business judgment, that the Settlement Stipulation is a favorable outcome for the

9

Debtors and estates and provides certainty at a critical juncture, as the Reorganized Debtors emerge from their chapter 11 cases.

    **(b)    Litigation with Marathon Would Be Complex and Result in Delay and Distraction.**

    23.    With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," potential litigation with Marathon likely would be costly and time consuming. Indeed, if the Debtors were to litigate the disputes at issue, it would require significant time and expense, including costly discovery, to ascertain the underlying facts and resolve the merits of the Marathon Claim, at a time when the Debtors' management is focused on consummating assets sales and preparing for a confirmation hearing.

    **(c)    The Settlement Stipulation Is in the Best Interests of Creditors.**

    24.    The Settlement Stipulation is also in the best interest of creditors. As noted, the settlement avoids costly litigation where the results are somewhat uncertain, and provides certainty concerning the amount of the Marathon Claim. The Settlement Stipulation provides a global resolution of the disputes between the parties concerning the Marathon Claim, and ensures the Debtors are able to continue to operate their business without the distraction of litigating the merits of the Marathon Claim. The Settlement Stipulation, therefore, maximizes the value of the Debtors' estates for all parties by avoiding the expense of litigation and bringing resolution to the disputes between the Reorganized Debtors and Marathon concerning the Marathon Claim.

    25.    Finally, the Settlement Stipulation arises out of arms-length, good faith negotiations among the parties.

    27.    Based on the foregoing considerations, the Debtors respectfully submit that the Settlement Stipulation is a fair and reasonable compromise that is in the best interest of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court authorize the

Debtors to enter into and implement the terms of the Settlement Stipulation, as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## EMERGENCY CONSIDERATION

28. The Debtors request emergency consideration of this Motion pursuant to Rule 9013-1(b) and (i) of the Bankruptcy Local Rules for this district. The Debtors require relief on an emergency basis to permit the allowance of the Marathon Claim so that Marathon can vote the Marathon Claim in support of the Chapter 11 Plan sufficiently in advance of the confirmation hearing and without further delay.

## NOTICE

29. Notice of this Motion shall be provided via Court ECF notification upon all parties in these Cases who are entitled to receive such notification, and to each party on the Master Service List. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto approving the Settlement Stipulation and the settlements embodied therein, and granting such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: January 30, 2023<br>Houston, Texas | /s/  *James T. Grogan III* |

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg  (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:  lucdespins@paulhastings.com
           sayanbhattacharyya@paulhastings.com
           danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
Email:  mattmicheli@paulhastings.com
           michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge.

This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                          */s/ James T. Grogan III*
                                          James T. Grogan III

**Certificate of Service**

I certify that on January 30, 2023 a copy of the foregoing document was served electronically on the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                          */s/ James T. Grogan*
                                          James T. Grogan