**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) ) Case No. 22-90273 (MI) ) |
| Debtors. | ) ) (Jointly Administered) ) |

**DECLARATION OF HAROLD COULBY, CHIEF
FINANCIAL OFFICER AND TREASURER OF THE DEBTORS, IN
SUPPORT OF <u>EMERGENCY</u> MOTION TO APPROVE SETTLEMENT WITH
MARATHON DIGITAL HOLDINGS, INC. PURSUANT TO BANKRUPTCY RULE 9019**

I, Harold Coulby, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am the Chief Financial Officer and Treasurer of Compute North Holdings, Inc. ("<u>Holdings</u>", and together with its above-captioned affiliates as debtors and debtors in possession, "<u>Compute North</u>" or the "<u>Debtors</u>"). I have extensive experience as a corporate executive in the energy sector. I have served as Treasurer of Compute North since May 9, 2022, and as Chief Financial Officer of Compute North since June 28, 2022. From January 2022 to May 2022, I was

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

Assistant Treasurer for Constellation Energy Group. From 2010 until I joined Holdings, I was also the Assistant Treasurer and Director Project Finance for Exelon. From 2008 to 2010, I served as Manager of Technical Accounting for UniStar Nuclear Energy.

2. I received my Bachelor of Science degrees in Accounting and Business Management from Mount St. Mary's University. I received my Masters of Business Administration from Loyola University Maryland.

3. In my capacity as Treasurer and CFO, I am generally familiar with Compute North's day-to-day operations, business and financial affairs, and books and records. I am over the age of 18 and authorized to submit this Declaration on behalf of Compute North.

4. I submit this declaration in support of the Debtors' Emergency Motion to Approve Settlement With Marathon Digital Holdings, Inc. Pursuant to Bankruptcy Rule 9019 (the "9019 Motion"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of Compute North's management team, board of directors, and advisors (including auditors and legal counsel), my review of relevant documents and information concerning Compute North's operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

## Background

5. On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 26, 2022, the Bankruptcy Court entered the Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), and (IV) Granting Related Relief [Docket No. 86] (the "Bar Date Order").

7. The Bar Date Order effectively set November 23, 2022, at 5:00 p.m. (prevailing Central Time) as the deadline (the "Claims Bar Date") to file a request for allowance of all types of claims against the Debtors that arose or are deemed to have arisen before the Petition Date, except for claims specifically exempt from complying with the applicable Bar Dates (as defined in the Bar Date Order) as set forth in the Bar Date Order.

## The Marathon Claim

8. On November 23, 2022, Marathon timely filed Proof of Claim No. 36, in the Debtors' case (Case No. 22-90275) (the "Marathon POC"), which asserts a general unsecured claim in the amount of approximately: (i) $42,398,216.55 for claims arising under the Hosting Agreements (as defined in the Marathon POC); (ii) $21,266,580.63, plus fees and expenses for claims arising under that certain Senior Promissory Note, dated as of July 1, 2022, by and between Marathon, as Lender, and Compute North LLC, as Borrower (the "Marathon Note"); (iii) $14,000,000 for claims arising from the breach of a letter of intent between Marathon and Compute North LLC (the "Marathon LOI"); and (iv) for at least $1,700,000, plus an additional $250,000 daily for lost revenue, profits and other damages claims against the Debtors (collectively, the "Marathon Claim").

9. Pursuant to a stipulation dated December 22, 2022 [Docket No. 708] (the "Marathon Note Stipulation"), Marathon's claims relating to the Marathon Note were previously allowed as a General Unsecured Claim in the amount of $20,266,580.63 ("Marathon Note Claim"). Pursuant to the Marathon Note Stipulation, Marathon reserved all its rights regarding all other claims asserted by Marathon and its affiliates in the Marathon POC against the Debtors.

10. On December 21, 2022, the Bankruptcy Court entered the Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief [Docket No. 715] (the "Solicitation Procedures Order").

11. Following entry of the Solicitation Procedures Order, the Debtors commenced soliciting acceptances of the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates [Docket No. 723] (as amended, revised and supplemented from time to time, the "Chapter 11 Plan").

12. I have been informed that Marathon received a Class 3 ballot from the Debtors providing Marathon with a General Unsecured Claim in the amount of $1.00 for voting purposes, and that Marathon also received a Class 7 ballot from the Debtors providing Marathon with Preferred Equity Interests in the amount of 39,597 shares of Series C Preferred Stock for voting purposes.

13. I have further been informed that Marathon disputed the amount of its claim as reflected in the Class 3 ballot for holders of General Unsecured Claims provided by the Debtors. The Debtors disputed certain amounts asserted by Marathon in the Marathon POC.

4

14. Although the Debtors did not dispute certain portions of the Marathon Claim, the Debtors did dispute Marathon's claims arising under the Hosting Agreements, on the grounds that a large portion of the funds underlying the claims remain on deposit with the purchasers of the Debtors' interests in the King Mountain facility and the Kearney and Wolf Hollow Facilities. The Debtors have also challenged Marathon's entitlement to recover from the Debtors for lost revenue, profits and other damages claims against the Debtors. The Debtors further contested Marathon's entitlement to claim damages under the Marathon LOI, on the basis that the Debtors fulfilled their obligations under the LOI. Marathon disagrees with the Debtors' positions.

15. Marathon has asserted that pursuant to its Hosting Agreements with the Debtors, Marathon deposited and prepaid the Debtors over $40 million to host and maintain Marathon's miners. Marathon has further asserted that the Debtors assigned the Hosting Agreements to third parties, but have failed to transfer all the related deposits to those third parties, and that to the extent the third parties fail to honor the terms of the assigned Hosting Agreements and fully credit Marathon's prepaid deposits, Marathon has a breach claim against the Debtors. In addition, Marathon has contended that pursuant to the Marathon LOI, Marathon paid $14 million to the Debtors to ensure the Debtors would install and energize Marathon's miners on an expedited basis, and that despite the payment, the Debtors failed to expedite miner installation and operation and, in many cases, failed to ever install the miners as promised, leaving them untouched and sitting in warehouses. Marathon has asserted that the Debtors' failure to perform under the Marathon LOI gives rise to additional breach claims in the amount of $14 million. Finally, Marathon has asserted that the Debtors' failure to perform under the Hosting Agreements and LOI have resulted in substantial lost revenue, profits and other damages to

Marathon, for which Marathon believes it is entitled to compensation. The Debtors disagree with Marathon's assertions.

## The Settlement Stipulation

16. The parties have engaged in extensive arm's-length, good faith negotiations concerning the various aspects of the Marathon Claim, the disputed Marathon ballots, Marathon's vote on the Chapter 11 Plan and the third party releases provided for under the Chapter 11 Plan, and have agreed to resolve their disputes, as set forth in the stipulation attached to the 9019 Motions as Exhibit B (the "Settlement Stipulation").

17. The Settlement Stipulation provides for allowance of the Marathon Claim for voting and distribution purposes in the amount of $40 million. Under the Settlement Stipulation, Marathon has agreed to vote to accept the Debtors' Chapter 11 Plan. I have been informed that absent the settlement, Marathon would have voted to reject the Debtors' Chapter 11 Plan and opted out of the releases. With the settlement, the Debtors obtain the benefit of Marathon's support for the Chapter 11 Plan and its agreement to provide modified releases to third parties, as requested by the Debtors, as set forth in the Settlement Stipulation.

18. I believe that the Settlement Stipulation provides the Debtors with a comprehensive resolution of the issues related to the Marathon Claim in an efficient and economical manner, and eliminates potential delay in the administration of the Debtors' estates. I believe that the Settlement Stipulation maximizes the value of the Debtors' estates for all parties by avoiding the expense of litigation and bringing resolution to the disputes concerning the Marathon Claim.

19. As Chief Financial Officer and Treasurer of the Debtors, I believe that the Settlement Stipulation embodies a fair and reasonable compromise of their disputes with Marathon and is in the best interests of the Debtors and their Estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2022
Eden Prairie, Minnesota

                                                */s/ Harold Coulby*
                                                Harold Coulby Chief Financial Officer