**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' EMERGENCY MOTION TO APPROVE SETTLEMENT**
**WITH RK MISSION CRITICAL LLC PURSUANT TO BANKRUPTCY**
**RULE 9019**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. (PREVAILING CENTRAL TIME) ON FEBRUARY 9, 2023.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") approving the settlement with RK Mission Critical LLC pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein is Bankruptcy Rule 9019.

## BACKGROUND

5. On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 26, 2022, the Bankruptcy Court entered the *Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), and (IV) Granting Related Relief* [Docket No. 86] (the "Bar Date Order").

7. The Bar Date Order effectively set November 23, 2022, at 5:00 p.m. (prevailing Central Time) as the deadline (the "Claims Bar Date") to file a request for allowance of all types of claims against the Debtors that arose or are deemed to have arisen before the Petition Date, except for claims specifically exempt from complying with the applicable Bar Dates (as defined in the Bar Date Order) as set forth in the Bar Date Order.

8. On November 20, 2022, RKMC timely filed Proof of Claim No. 27, in the Compute North LLC case (Case No. 22-90275) (the "RKMC Claim"),[2] which asserts a partially secured

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the RKMC Claim.

3

claim in the amount $64,480,618 for claims arising under various commercial agreements. Among the components asserted in the RKMC Claim are the following:

(a) Unpaid invoices for delivered goods -- $18,190,000

(b) Contractual value of goods refused -- $43,222,684

(c) 18% interest on unpaid invoices -- $1,156,427

(d) Attorney fees for bankruptcy work -- $49,611

(e) All additional costs directly traceable to breach -- $546,839

(f) All additional costs indirectly traceable to breach -- $1,314,957

**Total: $64,480,618.**

Of this amount, RKMC asserts that $19,346,527 is a secured claim and the balance of $45,134,091 is an unsecured claim.

9. Prior to the Petition Date, Mining Project Wind Down LLC (f/k/a Compute North LLC) ("CNLLC") was party to that certain teaming agreement, dated as of April 9, 2020 (collectively with the Standard Terms and Conditions of Sale, Revision November 2020 referenced in order forms thereunder (the "Terms"), as amended, supplemented, or otherwise modified from time to time, the "Teaming Agreement"), under which RKMC agreed to provide, and CNLLC agreed to accept, the assistance of RKMC in designing, developing and manufacturing modules for CNLLC's business.

10. On various occasions between May 26, 2021 and December 21, 2021, CNLLC executed purchase orders (the "Purchase Orders") to purchase certain containers from RKMC, which were governed by and subject to the Terms and by which CNLLC granted RKMC "a security interest in any Goods provided by RKMC and all attachments, replacements and proceeds thereof, to secure Buyer's performance hereunder and payment of the purchase price, interest on

any past due amounts as set forth in Section 2 and the costs of collection, including reasonable attorney's fees." At the time the purchased containers were actually delivered to CNLLC, pursuant to the Purchase Order, RKMC had not filed a UCC-1 financing statement to perfect its security interest in the containers. On or about July 26, 2022, RKMC filed a UCC-1 financing statement (the "July 26 Financing Statement") against CNLLC with the secretary of state of the State of Delaware.

11. The July 26 Financing Statement purported to perfect a security interest in "[a]ll goods sold by [RKMC] and delivered to [CNLLC] including, without limitation, all Goods sold by [RKMC] and delivered to Debtor hereafter, wherever located," including the purchased containers. On July 28, 2022, RKMC filed a UCC-3 statement (the "UCC-3", and collectively with the July 26 Financing Statement, the "Financing Statements") amending the collateral description contained in the July 26 Financing Statement to provide a specific list of containers that were to be subject to RKMC's security interest. The effect of the UCC-3 was to render unperfected RKMC's security interest in containers RKMC had delivered to CNLLC other than those listed in the UCC-3. The filing of the Financing Statements occurred less than ninety (90) days prior to the Petition Date.

12. The Debtors have possession of sixty-two (62) containers (the "Remaining Containers"), as to which RKMC asserts a perfected security interest, which the Debtors dispute. The Debtors assert that: (i) the filing of the Financing Statements and the purported perfection of RKMC's security interest as set forth therein, were transfers within the meaning of 11 U.S.C. §§ 101(54) and 547 (the "Transfers"); (ii) the Transfers of some or all containers that were to be subject to RKMC's security interest occurred more than thirty (30) days after the delivery of the purchased containers to CNLLC, and the Debtors assert that upon the commencement of these

Chapter 11 Cases, the Debtors' interests in the delivered containers became property of the Debtors' Estates; (iii) the Debtors possess colorable claims against RKMC to avoid the Transfers under 11 U.S.C. § 547(b), to preserve the Transfers and any purported security interest granted thereby, pursuant to 11 U.S.C. § 551, for the benefit of the Debtors' Estates, and to recover the amount of any deposits, payments or prepayments made by the Debtors to RKMC.

13. On April 6, 2022, RKMC issued a change order (the "Change Order") to upgrade containers scheduled for manufacture and delivery to the Minden Facility with 266 fans equipped with nylon blade aero-acoustical low sound impellers (the "Specialty Fans") for an upgrade price of $307,496.00. The Change Order was approved and executed by the Debtors on April 12, 2022. Also on April 12, 2022, RKMC provided the Debtors with an application for payment which detailed the net change of the original contract sum to account for the added costs associated with the procurement and installation of the Specialty Fans in containers to be delivered to the Minden Facility.

14. The Debtors have asserted, and RKMC disputes, that on May 15, 2022, the Debtors paid in full for the Specialty Fans, as part of a larger payment to RKMC totaling $1,742,600.00, and that to date, the Debtors have not received possession of the Specialty Fans, at the Minden Facility or otherwise, and that the Specialty Fans constitute property of the Debtors' estates that the Debtors are entitled to use, sell, or lease under section 363 of the Bankruptcy Code;

15. The Debtors have asserted, and RKMC disputes, that RKMC's failure to deliver the Specialty Fans to the Debtors constituted a violation of Bankruptcy Code section 542, that RKMC's refusal to turn over the Specialty Fans is an improper attempt to setoff obligations in violation of Bankruptcy Code section 553, and that the Debtors also possess a right of replevin

with respect to the Specialty Fans pursuant to § 2-716 of the Uniform Commercial Code, as adopted in Colorado, as well as claims for breach of contract, unjust enrichment and conversion.

16.     The Debtors listed these claims in the Second Amended Schedule of Retained Causes of Action, filed with the Bankruptcy Court on January 19, 2023, and reserved all rights, remedies, claims and causes of action against RKMC, including those described above and any others arising from or relating to in any way the foregoing transactions and events, based on the applicable contracts or agreements, the Bankruptcy Code, the Uniform Commercial Code, and other applicable state and federal law.

17.     RKMC denies liability for the claims and causes of action reserved by Debtors and intends to assert affirmative defenses and general denials to all such Debtor claims.

18.     Pursuant to the Order (I) Approving the Sale of Certain Assets of Compute North LLC to Crusoe Energy Systems, LLC Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief [Docket No. 493] (the "Crusoe Sale Order"), the Debtors sold two containers (the "Crusoe Containers"), in which RKMC asserted a security interest, to Crusoe Energy Systems, LLC. Pursuant to the Crusoe Sale Order, the Debtors and RKMC agreed that any valid security interest held RKMC in the Crusoe Containers would attach to the proceeds of the containers (the "Crusoe Proceeds").

19.     Pursuant to the Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [Docket No. 531] (the "Foundry Sale Order"), the Debtors sold nineteen containers (the "Foundry Containers"), in which RKMC asserted a security interest, to Foundry Digital LLC. Pursuant to the Foundry Sale Order, the Debtors and RKMC agreed that any valid security interest held RKMC

in the Foundry Containers would attach to the proceeds of the containers (the "Foundry Proceeds" and together with the Crusoe Proceeds Interest, the "Proceeds Interest").

20. The Debtors continued to dispute certain amounts asserted by RKMC in the RKMC Claim, as well as the extent, if any, to which RKMC has a security interest in any of the Remaining Containers, and have engaged in extensive, arms-length, good faith negotiations with RKMC is an effort to resolve the disputes and arrive at a mutually beneficial resolution. The Parties have agreed to resolve their disputes regarding the RKMC Claim, as set forth in the stipulation attached hereto as **Exhibit B** (the "Settlement Stipulation"). The Debtors believe that the Settlement Stipulation embodies a fair and reasonable compromise of their disputes with RKMC and is in the best interests of the Debtors and their Estates.

## SETTLEMENT STIPULATION – KEY TERMS

21. Under the Settlement Stipulation: (a) the RKMC Claim is allowed as an Allowed General Unsecured Claim in the total amount of $49,602,406 (the "Allowed Claim") for voting and distribution purposes; (b) RKMC waives and releases any liens or security interests it holds or may hold in the Remaining Containers owned by the Debtors' estates, and authorizes the Debtors to file UCC-3 termination statements with the appropriate governmental units to document such waiver and release; (c) RKMC releases the Proceeds Interest, including but not limited to all claims to any security interests or rights it may have in the Crusoe Proceeds and the Foundry Proceeds related to the sale of the Crusoe Containers and the Foundry Containers, in exchange for fifteen percent (15%) of sale proceeds from the Remaining Containers; (d) the Debtors will continue to market the Remaining Containers for sale and RKMC will receive fifteen percent (15%) of sale proceeds from the Remaining Containers upon the closing of any such sales.

22. The Parties acknowledge that this arrangement may result in recovery for RKMC that is slightly less than the full sale value of the ten (10) or more containers that CNLLC received from RKMC within the 30-day period ending July 26, 2022, which the Parties agree are not subject to avoidance, pursuant to 11 U.S.C. § 547(c)(3)(B).

23. Pursuant to the Settlement Stipulation, RKMC agrees to vote the Allowed Claim to accept the Plan, will not opt out of the releases set forth in the Plan, and will not object to the Plan.

24. The Settlement Stipulation also contains provisions addressing and resolving the disputes concerning the Specialty Fans, and provides that upon the Effective Date of the Plan, the adversary complaint filed by the Debtors against RKMC, bearing Adversary No.: 23−03006, will be dismissed with prejudice. In reliance on this stipulation, RKMC will not file an answer to the adversary complaint and Debtors will not pursue default judgment against RKMC in the event that the deadline for an answer passes prior to the Effective Date of the Plan.

25. Last, the Settlement Stipulation contains mutual releases, to become effective on the Effective Date of the Plan, applicable to any and all claims, causes of action, damages or other liabilities arising from or related to the transactions subject of the Settlement Stipulation, *provided* that the Parties' respective rights and obligations under the Settlement Stipulation shall remain unaffected by such releases, the confirmation of the Plan or the occurrence of the Effective Date, and nothing therein shall affect the rights of the Parties under the Settlement Stipulation nor RKMC's rights to distributions under the Plan on account of the Allowed Claim.

**BASIS FOR RELIEF REQUESTED**

**A.   Settlements Are Favored in Bankruptcy and Debtors' Business Judgment Is Given Significant Deference.**

26. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice

>shall be given to creditors, the United States trustee … and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

27. "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

28. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

29. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[3]

---

[3] Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Reorganized Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

30. Further, the Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason. Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1).

31. It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business, if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.C.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986*)); Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding that the standard to assume a lease is the business judgment standard).

32. "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309.

**B.     The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.**

33. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with due consideration

11

for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in *Jackson Brewing*); *see also Age Ref. Inc.*, 801 F.3d at 540 (same).

34. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *Foster Mortg. Corp.*, 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

**(a)   The Reorganized Debtors Are Not Certain to Succeed in Litigating the Issues With RKMC.**

35. With respect to "the probability of success in litigating the claim subject to settlement," although the Debtors are confident in their position, they understand there is inherent risk in any litigation. The Settlement Stipulation provides the Debtors with a comprehensive resolution of the issues related to the RKMC Claim in an efficient and economical manner, and eliminates potential delay in the administration of the Debtors' estates. Thus, the Debtors believe, in their sound business judgment, that the Settlement Stipulation is a favorable outcome for the

Debtors and estates and provides certainty at a critical juncture, as the Debtors seek confirmation of their Chapter 11 Plan.

  **(b) Litigation with RKMC Would Be Complex and Result in Delay and Distraction.**

36. With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," potential litigation with RKMC likely would be costly and time consuming. Indeed, if the Debtors were to litigate the disputes at issue, it would require significant time and expense, including costly discovery, to ascertain the underlying facts and resolve the merits of the RKMC Claim, at a time when the Debtors' management is focused on consummating assets sales and preparing for a confirmation hearing.

  **(c) The Settlement Stipulation Is in the Best Interests of Creditors.**

37. The Settlement Stipulation is also in the best interest of creditors. As noted, the settlement avoids costly litigation where the results are somewhat uncertain, and provides certainty concerning the amount of the RKMC Claim. The Settlement Stipulation provides a global resolution of the disputes between the parties concerning the RKMC Claim, and ensures the Debtors are able to continue to operate their business without the distraction of litigating the merits of the RKMC Claim. The Settlement Stipulation, therefore, maximizes the value of the Debtors' estates for all parties by avoiding the expense of litigation and bringing resolution to the disputes between the Reorganized Debtors and RKMC concerning the RKMC Claim.

38. Finally, the Settlement Stipulation arises out of arms-length, good faith negotiations among the parties.

39. Based on the foregoing considerations, the Debtors respectfully submit that the Settlement Stipulation is a fair and reasonable compromise that is in the best interest of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court authorize the

Debtors to enter into and implement the terms of the Settlement Stipulation, as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## EMERGENCY CONSIDERATION

40. The Debtors request emergency consideration of this Motion pursuant to Rule 9013-1(b) and (i) of the Bankruptcy Local Rules for this district. The Debtors require relief on an emergency basis to permit the allowance of the RKMC Claim so that RKMC can vote the RKMC Claim in support of the Chapter 11 Plan sufficiently in advance of the confirmation hearing and without further delay.

## NOTICE

41. Notice of this Motion shall be provided via Court ECF notification upon all parties in these Cases who are entitled to receive such notification, and to each party on the Master Service List. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto approving the Settlement Stipulation and the settlements embodied therein, and granting such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 31, 2023
      Houston, Texas

*/s/ James T. Grogan III*
**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
      sayanbhattacharyya@paulhastings.com
      danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
      michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ James T. Grogan*
James T. Grogan

## **CERTIFICATE OF SERVICE**

     I certify that on January 31, 2023 a copy of the foregoing document was served electronically on the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ James T. Grogan*
James T. Grogan
