**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| **MINING PROJECT WIND DOWN** | § | |
| **HOLDINGS, INC. (f/k/a Compute North** | § | **Case No. 22-90273 (MI)** |
| **Holdings, Inc.),** *et al.*,[1] | § | |
| | § | |
| **Debtors.** | § | |

**CORPUS CHRISTI ENERGY PARK, LLC's OBJECTION TO**
**(I) FINAL APPROVAL OF DEBTORS' DISCLOSURE STATEMENT AND**
**(II) CONFIRMTION OF DEBTORS' LIQUIDATING CHAPTER 11 PLAN**

**[Relates to Dkt. Nos. 715 and 723]**

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES unsecured creditor CORPUS CHRISTI ENERGY PARK, LLC ("CCEP"),

and files this *Objection* to Final Approval of Debtors' Disclosure Statement and Confirmation of

Debtors' Liquidating Chapter 11 Plan, and in support hereof respectfully shows the Court as

follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

## I. **INTRODUCTION**

Since the December 15, 2022 termination of CCEP's and Debtors' contract buyout negotiations, Debtors initiated a strategy of denying, or at least obstructing, CCEP and its related Bootstrap Energy, LLC from availing themselves of the rights and remedies afforded to them as creditors under the Bankruptcy Code.[2]   This Objection, however, addresses another part of Debtors' campaign of disenfranchisement against these creditors.   Immediately after CCEP filed its motion to compel rejection of its design-build contract with Debtor CN Corpus Christi, LLC ("CNCC"), Debtors filed a first amended liquidation plan and disclosure statement.  This new plan and disclosure statement plucked CCEP out of the general unsecured creditor class (Class 3) and placed it in a brand new, similarly situated but disparately treated class called the "CNCC [General Unsecured Creditor] Class" (Class 3A).  This new class appears to consist of only two claims— CCEP's $15 million rejection claim and another unrelated creditor's $78,665.00 claim. These two creditors have no voting rights and their claims are summarily extinguished with zero distributions. The Plan's discriminatory treatment of Class 3A violates the Bankruptcy Code and CCEP objects to both the (i) final approval of the Disclosure Statement and (ii) confirmation of the Plan.

## II. **RELEVANT PROCEDURAL BACKGROUND**

1.      On September 22, 2022 (the "Petition Date"), Debtors filed for bankruptcy relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code").

2.      On November 23, 2022, Debtors filed their original Joint Liquidating Chapter 11 Plan and Disclosure Statement [Dkt. Nos. 576 and 577] (the "Original Plan").

---

[2] The most recent example being Debtors' attempt to prevent Bootstrap from voting on the proposed reorganization plan by filing a last-minute claim objection, spuriously attesting the claim had been "satisfied in full." *See* Dkt. Nos. 815, 855, 856, 860, and 861.

3.      On December 13, 2022, CCEP filed its Motion to Compel Rejection of Design-Build Contract with Debtor CNCC [Dkt. No. 644] (the "Rejection Motion").

4.      On December 15, 2022, Debtors filed their First Amended Plan and Disclosure Statement [Dkt. Nos. 665 and 667] (as further amended, the "Retaliatory Plan" or "Amended Plan"). The Notice of Redlines of Amended Plan and Disclosure Statement [Dkt. No. 667] shows the freshly minted Class 3A disenfranchised CCEP two days after CCEP filed its Rejection Motion.

5.      The deadline to object to the Amended Disclosure Statement and Plan is February 1, 2023 at 4:00 p.m. The Court has set a hearing for confirmation of the Amended Plan for February 16, 2023 at 1:30 p.m.

### III.  FACTUAL BACKGROUND

6.      On March 16, 2022, CCEP and CNCC entered into a design-build contract (the "DB Contract") pursuant to which CCEP agreed to design and construct for CNCC a 300-megawatt high voltage substation connecting to the ERCOT transmission grid, together with an office building, utility connections and certain other improvements, at a contract price of $25,713,494.00 (including agreed prepetition change orders) (the "Project").

7.      On June 3, 2022, CNCC failed to timely pay CCEP for work performed under the parties' agreed and executed change order dated May 12, 2022, calling for payment in the amount of $718,996.56. CNCC's failure to pay caused CCEP to issue a stop work notice for such breach. On August 26, 2022, CNCC also defaulted on its obligation to pay CCEP $6,100,000.00 for completion of milestone #3 on the Project. CCEP issued a stop work notice as to this default on September 2 and subsequently took all contractual steps to execute its right to terminate, needing only to wait until the close of business on September 22 before it could formally do so.  On the

afternoon of September 21, CNCC called CCEP asking if it would waive termination should the cure payment be received on September 23.  Instead, the next day, September 22, Debtors filed bankruptcy.

8.      As of the Petition Date, there were $14,906,026.00 in payments that would come due under the DB Contract to reach final completion.  CCEP filed a proof of claim in this case for these and additional unliquidated damages. Claim No. 10057.

9.      CCEP worked for several weeks to reach an agreement to buy out their contract, through both the auction process and subsequent negotiations.  Only after this process reached an impasse did they file the Rejection Motion to preserve the remaining few months within which to attempt to complete the Project's construction with a new mining customer.

10.     Two days after CCEP filed the Rejection Motion, Debtors filed the Retaliatory Plan which, among other things, created a new sub-class of general unsecured creditors which appears comprised solely of the two claims against CNCC.  CCEP's claim constitutes over 99% of this creditor class according to a review of EPIQ's online claim database. *See* Claims 28 and 10057.

## IV.  ARGUMENTS AND AUTHORITIES

### A.  Objection to Confirmation of the Plan

11.     The Retaliatory Plan is not confirmable as it violates sections 1122(a), 1123(a)(4), and 1129(a)(1), (3), and (7)(A), and 1129(b)(1) and (b)(2)(B) of the Bankruptcy Code.  Debtors amended their Original Plan to carve out a handful of unsecured claims against CNCC and place them in their own class that cannot vote and will receive no distributions.  None of the other Debtors' creditors have been separately classified in this manner and there is no reasonable justification for singling out the CNCC creditors.  The only discernable motivation behind such treatment is retaliation for the failed buyout negotiations and for CCEP's Rejection Motion. The

Plan is not in good faith and is not fair and equitable to Class 3A. This discriminatory treatment also creates a gerrymandering of the voting classes to rig the vote in favor of confirmation.  For these reasons, which are discussed in detail below, the Court should deny confirmation of the Retaliatory Plan.

> i.      **The Retaliatory Plan is not in Good Faith.**

12.      A plan is only confirmable if the plan has been proposed in "good faith" and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). Good faith is to be determined by the totality of the circumstances, going beyond the plan proponent's proffered basis for its proposed classification scheme. *See Scotia Pacific Company, LLC v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*, 584 F.3d 229, 251 (5th Cir. 2009).

13.      The totality of circumstances indicates Debtors' plan is not in good faith, but rather the opposite. The timing of Debtors' separation of Class 3A from the Class 3 General Unsecured Creditors indicates that such separation was done in bad faith as retaliation for the failed buyout negotiations. Prior to CCEP's Rejection Motion, CCEP's claim was classified as a Class 3 General Unsecured Claim, which was entitled to distributions. *See* Notice of Redlines of Amended Plan and Disclosure Statement [Dkt. No. 667] at § 3.1 (showing the creation of Class 3A). Two days after CCEP filed its Rejection Motion, Debtors took away CCEP's ability to vote or recover any amount under the Plan.

14.      Debtors' separation of Class 3A from Class 3 is improper because it singles out one Debtor's creditors when the Amended Plan is, according to Debtors, consolidated. Amended Plan § 3.1. Debtors attempt to explain their actions by offering that the distinction between Class 3 and Class 3A is that Debtors do not expect to recover any distributable proceeds from CNCC or the Corpus Christi Project (as defined in the Amended Plan). *See* Disclosure Statement [Dkt. 715]

Exhibit B pg. 10 n. 16. Debtors' statement further indicates bad faith in their classification because Debtors actually *do* expect to recover proceeds from CNCC and the Corpus Christi Project through litigation. *See* Schedule of Retained Causes of Action [Dkt. No. 818], pg. 4, ¶ 4. Additional proceeds may be obtained from director and officer litigation, other retained causes of action, and preferential and fraudulent transfers that may even have led to Debtor's inability to satisfy their obligations to CCEP. The timing and lack of explanation for the classification indicate a bad-faith attempt by the Debtors to punish CCEP for its failed buyout.

     **ii.    The Retaliatory Plan Unfairly Discriminates against CCEP.**

    15.    A cramdown plan must treat each class of impaired, non-accepting claims fairly and equitably to be confirmed. 11 U.S.C. § 1129(b); *see In re Idearc, Inc.*, 423 B.R. 138, 169 (Bankr.N.D.Tex. 2009). The Debtors' Plan is patently unconfirmable due to the grossly disparate, discriminatory treatment of Class 3A.

    16.    In *In re Sentry Operating Co. of Texas, Inc.*, a debtor's plan proposed to pay unsecured creditors in Class 4 an estimated 1% of their claim value whilst unsecured creditors in Class 3 were to receive 100%. *Id.*, 264 B.R. 850, 862 (Bankr.S.D.Tex. 2001). The Court discussed potential justifications for such disparate treatment—e.g., if Class 4 had no state law claims outside of bankruptcy, the 1% payout would still be more than they would be entitled to collect outside of bankruptcy—but ultimately ruled there was "no [] justification for gross discrimination between the percentage payouts" to two classes of unsecured creditors. *Id.*, 264 B.R. 850, 864 (Bankr.S.D.Tex. 2001).

    17.    Similarly, there are no distinctions between Class 3 and 3A to justify the grossly disparate treatment proposed by the Retaliatory Plan. Class 3 is solely comprised of General Unsecured Claims. *See* Plan [Dkt. 691] at §§ 1.1.56 (defining General Unsecured Claim) and 3.2.3

(defining Class 3 as General Unsecured Claims).  CCEP's claim for breach of contract damages meets the Plan's definition of a General Unsecured Claim. *See* Proof of Claim No. 10057; *see also* Agreed Order on Rejection Motion [Dkt. No. 709]; *compare with* Plan, § 1.1.56.  Debtors' Original Plan properly designated CCEP's claim as a General Unsecured Claim in Class 3. *See* Original Plan, § 1.1.54 (defining "General Unsecured Claim") and §3.2.3 ("Class 3 consists of all General Unsecured Claims").  Nothing has occurred that would alter the nature of CCEP's claim versus other unsecured creditors. CCEP would have the potential for recovery under state law that it does in this Court just like other unsecured creditors do, and the creditors in Class 3 have presumably not provided any additional contribution or value to the reorganization that would offset a higher payout than what Class 3A will receive. *See Sentry Operating Co.*, 264 B.R. at 864 (discussing potential justifications for disparate treatment in different situations where "a lower recovery for a dissenting class is consistent with the results that would obtain outside of bankruptcy, or that a greater recovery [is] offset by contributions from that class to the reorganization.") (quoting Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 AM.BANKR.L.J. 227 (1998)).

18.    Debtors have consolidated—in their words, "solely for the purpose of describing treatment under the Plan, confirmation of the Plan and making distributions…"—combining all their assets and claims under the Plan. Amended Plan, § 3.1.  Yet, Debtors improperly carved out a unique class solely for unsecured claims against Debtor CNCC. Debtors deny distributions to such class based solely on the bold allegation that they do not anticipate cash proceeds from dealings with CNCC or the Corpus Christi Project, yet Debtors *do* expect to recover damages related to contracts between CCEP and CNCC. *See* Schedule of Retained Causes of Action [Dkt. No. 818], pg. 4, ¶ 4 (in which Debtors state they intend to pursue legal action against CCEP

pursuant to its contracts with CNCC and expect to recover damages).  Additional proceeds may

be obtained from director and officer litigation, other retained causes of action, and preferential

and fraudulent transfers that may have even led to Debtors' inability to satisfy their obligations to

CCEP. Debtors are trying to eat their cake and have it too: consolidating as needed but telling the

Class 3A creditors they can only look to CNCC for distributions but still receive nothing no matter

what happens.

> **iii.    The Retaliatory Plan is not Fair and Equitable to Class 3A.**

19.     A plan that is not fair and equitable cannot be confirmed. 11 U.S.C. § 1129(b)(1).

As the Fifth Circuit noted in *In re D&F Construction,* "technical compliance with all the

requirements in § 1129(b)(2) does not assure that the plan is 'fair and equitable.'  … Section

1129(b)(2) merely states that 'the condition that a plan be fair and equitable includes the following

requirements ….'" *Federal Sav. & Loan Ins. Corp. v. D&F Construction, Inc. (In re D&F

Construction)*, 865 F.2d 673, 675 (5th Cir. 1989)(emphasis original). That is, Debtors' Plan *must*

satisfy the requirements of § 1129(b)(2) to even have a shot at being fair and equitable. Yet,

Debtors cannot satisfy such requirements, making it certain that the Retaliatory Plan is not fair and

equitable.

20.     With regard to a class of unsecured claims, a plan is fair and equitable (provided

that there is no other treatment that is unfair or inequitable) if (i) the plan provides that each holder

of a claim retains property of value equal to the amount of such claim; or (ii) the holder of any

claim that is junior to the claims will not receive property under the plan. 11 U.S.C. §

1129(b)(2)(B). The Retaliatory Plan does neither for Class 3A.

21.     Class 3A is a class of unsecured and impaired creditors that have no voting rights

and no right to distributions under the Plan. *See* Plan [Dkt. No.691] § 3.2.3.3 (explaining the

treatment of Class 3A). Yet, Classes 7 and 8, which consist of claims for equity interests in the various Debtors, will receive distributions. *See* Plan [Dkt. No. 691] §§ 3.2.8.2, 3.2.9.2 (explaining that Class 7 and Class 8 are entitled to distributions). Because the Plan provides for Class 3A claims to receive nothing under the Plan, thereby causing Class 3A to not retain any property under the Plan, and holders of junior claims, such as Class 7 and Class 8 claims, are eligible to receive distributions, the Plan fails to satisfy the requirement of § 1129(b)(2)(B).

### iv.    The Retaliatory Plan Gerrymanders the Voting Process.

22.    A proposed reorganization plan that gerrymanders the classification of creditors and interests is not confirmable. *See* 11 U.S.C. § 1123(a)(1) (requiring a plan to designate classes of claims per section 1122) and § 1122(a) ("[A] plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."). In other words, per the Fifth Circuit's commandment, "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1999). If substantially similar claims are to be classed differently, the classification must be undertaken "for reasons independent of the debtor's motivation" to secure an affirmative vote by an impaired class. *Id.* This is not an insubstantial burden as there are few permissible justifications for classing similar claims differently. *See In re Pacific Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2009) ("[I]n many bankruptcies, the proffered reasons will be insufficient to warrant separate classification") (quotation omitted).

23.    The timing of Debtors' decision to reclassify CCEP's claim is suspect. It was only after (*immediately* after, to be sure) CCEP moved to compel rejection of the DB Contract that Debtors amended their plan to create Class 3A. This amendment cut CCEP out of any plan

distributions and neutralized its otherwise not-insignificant voting power.  The Retaliatory Plan estimates the General Unsecured Claims (Class 3) to be between $27 and $195 million. Disclosure Statement [Dkt. No. 683], pg. 89, ¶ 15.  The liquidated portion of CCEP's claim is for $14.9 million. *See* Claim No. 10057.  As such, if it were included in Class 3, CCEP's claim may constitute *at least* 7% and as much as 55% of the total class value.  This is an appreciable percentage of class value in the hands of a creditor with whom the Debtors have had fraught, if not antagonistic, pre- and postpetition dealings.

24.     One can only conclude the motivation underlying the reclassification of CCEP's claim was to punish CCEP for the aborted buyout negotiations by removing any potential for distributions and placing it in a class where it cannot affect the confirmation vote.  The Fifth Circuit has found this is not justification for classifying a claim differently. *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 174-75 (5th Cir. 2011) (affirming bankruptcy court's ruling that debtor gerrymandered voting classes by putting antagonistic creditor's claim into separate class).

**v.     CNCC's No-Distribution Plan is Not Confirmable.**

25.     A plan can only be confirmed if each holder of a claim of each impaired class of claims (i) has accepted the plan or (ii) will receive or retain property greater than or equal to what such holder would receive under chapter 7. 11 U.S.C. § 1129(a)(7)(A).

26.     The Plan cannot be confirmed because an impaired class of claims, Class 3A, does not approve the Plan, and the amount Class 3A claims would receive under the Plan is less than the amount the holders would receive under chapter 7, thus failing to satisfy the requirements of § 1129(a)(7). Class 3A claims are deemed to reject the Plan. *See* Plan [Dkt. No. 691] § 3.2.4.3. Therefore, the first requirement of § 1129(a)(7) is not satisfied.  Under chapter 7, all timely filed

general unsecured claims are grouped together and have equal rights to distributions. 11 U.S.C. § 726(a)(2). Class 3A claims would therefore be treated as all other unsecured creditors and receive distributions. *See* Plan [Dkt. 691] § 3.2.3 (stating that each General Unsecured Claim is entitled to its "Pro Rata Share of the Wind-Down Distributable Cash").  Also, under chapter 7, Class 3A claims would receive distributions *before* Classes 7 and 8. The Plan provides that Class 3A claims will receive less than the amount they would receive under chapter 7 and cannot be confirmed.

      **vi.**     **CNCC's Plan Fails to Carry a Single Impaired Class for Confirmation.**

27.     Finally, a debtor's plan is only confirmable if at least one class of claims that is impaired under the plan has accepted such plan. *See* 11 U.S.C. § 1129(a)(10). *In re Trib. Co.*, 464 B.R. 126 (Bankr. D. Del.), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020), and *aff'd in part sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), and *aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020) (holding requirement of § 1129(a)(10) must be satisfied by *each* debtor in the joint plan). All Class 3A claims are impaired and deemed to not accept the Retaliatory Plan. If the Class 3A claims are the only impaired class of claims brought against CNCC, the Retaliatory Plan fails to meet the statutory requirements for confirmation with respect to CNCC.

      **B. Objection to Final Approval of the Disclosure Statement**

28.     The Disclosure Statement cannot be approved because it violates section 1125(b) of the Bankruptcy Code. Debtors do not offer "adequate information" as to the classification of claims against CNCC which merely states Class 3A claims are grouped together because they are "related to the partially developed Corpus Christi Project." *See* Disclosure Statement [Dkt. 715] Exhibit B pg. 10 n. 16.  Debtors' reasoning for creating Class 3A hinges on the fact that all such

claims are related to the Corpus Christi Project (as defined in the Amended Plan) and "there is no anticipated cash proceeds" from such project. *See* Disclosure Statement [Dkt. 715] Exhibit B pg. 10 n. 16. Yet, Debtors state they intend to pursue legal action against CCEP pursuant to its contracts with CNCC, ostensibly meaning Debtors *do* anticipate litigation proceeds related to the Corpus Christi Project. *See* Schedule of Retained Causes of Action [Dkt. No. 818], pg. 4, ¶ 4. There also could be proceeds from director and officer litigation, other retained causes of action, and preferential and fraudulent transfers that may have even led to Debtors' inability to satisfy their obligations to CCEP. Failure to provide correct and complete information to creditors regarding the reasoning for the separation of the Class 3A claims from the Class 3 claims and the level of expectation of potential proceeds and costs of litigation  leaves the creditors without critical information to determine whether their rights are properly addressed in the Amended Plan. Accordingly, final approval of the Disclosure Statement should be denied.

29.     The Disclosure Statement also does not offer adequate information with regards to the consolidation of Debtors. Debtors' Amended Plan provides that the Debtors are grouped together "for the purpose of … making distributions in accordance with the Plan". *See* Solicitation Version of the Plan [Dkt. No. 723-1], § 3.1, ¶ 2. Despite the fact that the Debtors are to be grouped together, the Plan then states that "all Debtors shall continue to exist as a separate legal Person". *Id.* The inconsistencies continue throughout the Plan which later states all Debtors will be merged into Compute North LLC with the exception of Compute North Holdings, Inc. which will continue as its own separate entity. *See* Solicitation Version of the Plan [Dkt. No. 723-1], § 7.3, ¶ 6.  Such inconsistencies are not explained in the Disclosure Statement which leaves creditors wondering if, how, and which Debtors are consolidating and for what purposes. The consolidation of the Debtors is material information that creditors may use when determining whether their claims and rights

have been adequately addressed in the Plan and in how to vote on same. Without an explanation of the Debtors' consolidation status, creditors are unable to make an informed decision regarding the Plan. Therefore, the Court should deny final approval of the Disclosure Statement.

## V.  **PRAYER**

WHEREFORE, PREMISES CONSIDERED, CCEP respectfully requests and prays the Court allow CCEP to vote on the confirmation of the Amended Plan as a Class 3 creditor, and CCEP respectfully requests and prays the Court deny final approval of the Disclosure Statement and confirmation of the Amended Plan as long as it treats unsecured creditors differently in sub class 3A for the reasons stated above and for all further relief to which CCEP may be justly entitled.

Dated: February 1, 2023            Respectfully submitted,

By:  */s/ Mark A. Castillo*_____
    Mark A. Castillo
     Texas State Bar No. 24027795
     Southern Dist. Admin. No. 31520
    Robert C. Rowe
     Texas State Bar No. 24086253
     Southern Dist. Admin. No. 3782278
    **CARRINGTON, COLEMAN, SLOMAN**
    **& BLUMENTHAL, L.L.P.**
    901 Main St., Suite 5500
    Dallas, TX  75202
    Telephone:    214-855-3000
    Facsimile:    214- 580-2641
    Email: markcastillo@ccsb.com
            rrowe@ccsb.com

    ***Bankruptcy Counsel for***
    ***Corpus Christi Energy Park, LLC***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on February 1, 2023, a true and correct copy of this document was properly served upon the following parties and/or their counsel of record via email or the Court ECF system: the Debtors, the Official Committee of Unsecured Creditors, all parties requesting notice, and the U.S. Trustee.

Certified on February 1, 2023

*/s/ Robert C. Rowe*_____
Robert C. Rowe