IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| MINING PROJECT WIND DOWN § | |
| HOLDINGS, INC. (f/k/a Compute North § | Case No. 22-90273 (MI) |
| Holdings, Inc.)., *et al.*, § | |
| § | (Jointly Administered) |
| Debtors.[1] § | Re: Docket Nos. 683, 715 & 889 |
| § | |

**DECIMAL DIGITAL CURRENCY I, LLC'S (I) OBJECTION TO (A) CONFIRMATION OF THE THIRD AMENDED JOINT LIQUIDATING CHAPTER 11 PLAN OF MINING PROJECT WIND DOWN HOLDINGS, INC. (F/K/A COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES AND (B) FINAL APPROVAL OF THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED JOINT LIQUIDATING CHAPTER 11 PLAN OF COMPUTE NORTH HOLDINGS, INC. AND ITS DEBTOR AFFILIATES AND (II) RESERVATION OF RIGHTS**

Decimal Digital Currency I, LLC ("Decimal"), by and through its undersigned counsel, respectfully submits this objection to (a) confirmation of the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [Docket No. 889] (the "Plan") and (b) final approval of the *Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

*North Holdings, Inc. and its Debtor Affiliates* [Docket No. 683] (the "<u>Disclosure Statement</u>").  In support hereof, Decimal respectfully states as follows:

### Preliminary Statement

1. To fund Plan distributions, the Debtors propose to sell certain cryptocurrency mining equipment that they purportedly own.  There is just one problem – the Debtors already sold that equipment to customers, including Decimal, and it is axiomatic that the Debtors cannot sell what they do not own.  The Plan and Disclosure Statement do not refer to the Debtors' Schedule A/B as evidence of ownership of the Acquired Hardware (as defined herein) because Schedules A/B do not support that finding.

2. The Debtors sold the mining equipment to Decimal, and the Debtors cannot use the Bankruptcy Code to appropriate or overwrite Decimal's property rights under nonbankruptcy law.  To hold otherwise and permit the Debtors to sell non-estate property to fund their Plan would fly in the face of well-established principles of both bankruptcy and nonbankruptcy law.  Neither the Bankruptcy Code nor applicable state law permits the Debtors to sell Decimal's property to fund the Plan, and to the extent confirmation of the Plan is premised on that notion confirmation should be denied.

### Background

3. Decimal is a hedged multicurrency crypto infrastructure and mining platform. Decimal and debtor Compute North LLC ("<u>Compute North</u>") are parties to (i) that certain Master Agreement, dated January 27, 2022 (the "<u>Master Agreement</u>"), pursuant to which Compute North shall provide colocation and other services (collectively, "<u>Colocation Services</u>") for Decimal's cryptocurrency mining hardware (the "<u>Mining Equipment</u>"), and (ii) that certain Equipment Order Agreement, dated November 5, 2021 (as further amended, modified, or supplemented from time

2

to time, the "EPA" and, together with the Master Agreement, the "Agreements"), pursuant to which Decimal purchased from Compute North certain Mining Equipment as described more fully in the EPA (the "Acquired Hardware"). Copies of the Agreements are attached hereto as Exhibit A. The Agreements provide that Compute North procure the Acquired Hardware for and on behalf of Decimal from third-party seller Bitmain Technologies Limited ("Bitmain").[2]

4. The Agreements identify, among other things, the type and quantity of Acquired Hardware that Compute North sold to Decimal. The Agreements also include an invoice schedule pursuant to which Decimal paid Compute North for the Acquired Hardware. The schedule included an initial deposit paid by Decimal followed by several monthly installment payments. *See* EPA, pg. 1.

5. The Agreements expressly provide that legal title to the Acquired Hardware shall transfer to the purchaser "when all amounts due for such Acquired Hardware have been paid in full." *See* EPA, pg. 2. As of the date hereof, Decimal has paid Compute North in full for its respective Acquired Hardware.[3] A schedule of relevant payment dates, amounts, and wire transfer reference numbers documenting Decimal's payments to the Debtors are attached hereto as Exhibit B.

6. Delivery of the Acquired Hardware to designated Compute North hosting facilities was scheduled to occur in six monthly batches, from July 2022 to December 2022. However, only

---

[2] Upon information and belief, Compute North has procured the relevant cryptocurrency mining hardware pursuant to a Non-Fixed Price Sales and Purchase Agreement between Bitmain and Compute North, dated November 17, 2021 (the "SPA"). The Debtors intend to assume the SPA, with a $0 cure, as evidenced by its inclusion on the Debtors' *Notice Regarding Executory Contracts and Unexpired Leases Being Assumed Under the Plan* [Dkt. No. 837].

[3] Moreover, Compute North holds certain cash credits in favor of Decimal (the "Cash Credits"). The Cash Credits stem from certain downward price adjustments made by Bitmain to the cost of the Acquired Hardware which resulted in overpayments by Decimal to Compute North. Decimal reserves all rights to the Cash Credits.

one batch of the Acquired Hardware was ever delivered to a Compute North hosting facility. As for the remaining batches, the Debtors have indicated that one batch is tied up in customs and that four batches have yet to ship from Bitmain.

7. Throughout these Chapter 11 Cases, Decimal has sought clarity from the Debtors concerning the status of the undelivered Acquired Hardware but were given little to no information, other than being told at various points that the Debtors were "formulating a plan." Neither the Disclosure Statement nor the Plan address how the Debtors intend to deal with the Acquired Hardware and the interests of Decimal therein.

8. Most recently, the Debtors, through informal discussions with Decimal, have suggested that they intend to re-sell the Acquired Hardware, or the rights thereto, to fund distributions under their Plan. However, any purported sale would conflict with Decimal's property rights in the Acquired Hardware.

## **Objection**

9. The requirements for confirming a chapter 11 plan are set for in section 1129(a) of the Bankruptcy Code. Among other things, a plan must comply with the applicable provisions of the Bankruptcy Code and must have been proposed in good faith. *See* 11 U.S.C. § 1129(a)(1) and (3).

10. A plan proponent has the burden of proving by a preponderance of evidence that each of the requirements of section 1129(a) of the Bankruptcy Code has been met. *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. (In re Briscoe Enters., Ltd.)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re MCorp Fin., Inc.*, 137 B.R. 219, 225 (Bankr. S.D. Tex. 1992).

11. As demonstrated below, the Debtors have failed to meet their burden of proving that the Plan satisfies all of the requirements of section 1129(a) because the Plan (i) was not

proposed in good faith with respect to the treatment of the property interests of Decimal in the Acquired Hardware, and (ii) does not comply with the applicable provisions of the Bankruptcy Code because the Plan does not provide adequate means for implementation in violation of section 1123(a)(5).

**The Plan Violates the Good Faith Requirement of Section 1129(a)(3)**

12. "Though the term 'good faith,' as used in section 1129(a)(3), is not defined in the Bankruptcy Code, the term is generally interpreted to mean that there exists 'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-25 (7th Cir. 1984) (quoting *In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982)) (citations omitted).

13. To determine whether a plan has been proposed in good faith, courts in this circuit will consider a plan of reorganization "'viewed in light of the totality of the circumstances surrounding confection' of the plan." *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984) (quoting *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983)). Part of that determination includes whether "there was fundamental fairness in dealing with the creditors." *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001).

14. The Debtors here have not dealt fairly with Decimal in the formulation of the Plan. The Plan and the Disclosure Statement are conspicuously silent as to the status of undelivered Acquired Hardware. Only through direct communication with the Debtors, and only after significant delay and obfuscation, has Decimal learned that the Debtors do not intend to deliver, or arrange for delivery of, the Acquired Hardware to Decimal.

15. To add insult to injury, notwithstanding the fact that Decimal has paid the Debtors in full for the Acquired Hardware, the Debtors have suggested that they plan to sell the Acquired

5

Hardware post-confirmation to fund the Plan. This purported course of action ignores the fact that legal title to the respective Acquired Hardware transferred to Decimal once all amounts due for the Acquired Hardware were paid in full. Therefore, any sale by the Debtors of the Acquired Hardware would violate Decimal's property rights in their Acquired Hardware, and any plan that contemplates such sale has not been proposed in good faith as required by section 1129(a)(3).

**The Plan Does Not Provide Adequate Means for Implementation**

16. Section 1129(a)(1) requires that any plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). "Applicable provisions" in this subsection has been interpreted "to mean provisions of Chapter 11 that concern the form and content of reorganization plans." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988). The Fifth Circuit has recognized that violations of the content provisions of section 1123(a) can form a basis for barring confirmation pursuant to section 1129(a)(1). *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.)*, 150 F.3d 503, 512 n.3 (5th Cir. 1998) (interpreting legislative history in presuming that section 1129(a)(1) may be used to raise objections under section 1123(a)).

17. Section 1123(a) of the Bankruptcy Code addresses provisions that must be included in a chapter 11 plan. Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and provides illustrative examples of such means. 11 U.S.C. § 1123(a)(5). Relevant here, section 1123(a)(5)(D) specifies that a debtor may fund plan distributions through the sale of property of the estate. *See In re ISC Bldg. Materials, Inc.*, No. 10-35732, 2011 Bankr. LEXIS 2036, at *9 (Bankr. S.D. Tex. Feb. 10, 2011) (finding that a plan provided adequate means for the plan's implementation through the sale of estate property).

18. The Plan fails to provide adequate means for the Plan's implementation. The Plan is effectively a "pot plan," meaning that the Debtors will use cash, including the proceeds of asset

sales and speculative proceeds from certain retained causes of action, to fund Plan distributions.

19. The Disclosure Statement includes a section outlining the sources and uses of cash for Plan distributions. *See* Disclosure Statement, Art. VI.D. The estimated sources of Plan distributions includes a line item for "post-confirmation equipment sales."[4] The Disclosure Statement does not describe the equipment that the Debtors intend to sell post-confirmation to fund distributions, but to the extent the equipment includes the Acquired Hardware, such sales are an impermissible appropriation of property owned by Decimal.

20. References in section 1123(a)(5)(D) to funding plan distributions using the sale of property is qualified by that property being property of the estate. *See Irving Tanning Co. v. Me. Superintendent of Ins.*, 496 B.R. 644, 664 (B.A.P. 1st Cir. 2013) (finding that section 1123(a)(5)'s "repeated use of 'property of the estate' suggests that insofar as the proposed means might involve disposition of property, the property in question is limited to property of the estate and does not extend to property of another").

21. At bottom, the Debtors cannot sell what they do not own. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Title to the Acquired Hardware transferred to Decimal upon payment in full, and the Debtors cannot seek to fund distributions under the Plan by re-selling the very same equipment now owned by Decimal. To find otherwise would be "a grant of power to appropriate the property rights of third parties . . . so bold and remarkable . . . that one cannot imagine Congress having inserted it without a clear and specific indication of such intent." *Irving Tanning Co.*, 496 B.R. at 664.

---

[4] In fact, "post-confirmation equipment sales" comprises approximately 28% of the cash that the Debtors estimate will be used to fund Plan distributions. *See* Disclosure Statement, Art. VI.D.

**Proposed Language to be Added to the Confirmation Order**

22.     Without waiving its arguments that confirmation should be denied, the following language preserving Decimal's rights in the Acquired Hardware should be added to any order confirming the Plan:

> Notwithstanding anything to the contrary in this Order, the rights of Decimal in the Acquired Hardware (as that term is defined in the relevant agreements among the Debtors and Decimal Digital Currency I, LLC) shall be expressly preserved.
>
> Nothing in this Order, the Plan, or any other document related to confirmation of the Plan shall (i) be deemed to vest title to any equipment owned by Decimal, including but not limited to, the Acquired Hardware, in the Debtors or the Reorganized Debtors, or their successors and assigns, nor (ii) authorize the sale, assignment, or transfer of any equipment owned by Decimal, including but not limited to, the Acquired Hardware, wherever located.
>
> The Debtors or the Reorganized Debtors, and their successors and assigns, as applicable, shall not be authorized to sell, assign, transfer, or otherwise dispose of the Acquired Hardware without further order of the Bankruptcy Court.

23.     Decimal reserves all rights to further supplement its objections to any proposed order confirming the Plan.

**Reservation of Rights**

24.     Decimal reserves the right to amend or supplement this objection as necessary to, among other things, (i) seek discovery with respect to this objection, (ii) introduce evidence supporting this objection at any hearing to consider same, and (iii) seek any alternative or incremental relief.  Decimal also fully reserves all of its rights to make any objections to confirmation of the Plan at the hearing with respect thereto, whether or not explicitly referred to in this objection.

Dated: February 1, 2023

Respectfully submitted,

| | |
|---|---|
| ANDREWS MYERS P.C. | PRYOR CASHMAN LLP |
| */s/T. Josh Judd* | Seth H. Lieberman (admitted *pro hac vice*) |
| T. JOSH JUDD | SBN: 4317145 |
| SBN: 24036866 | Matthew W. Silverman (admitted *pro hac vice*) |
| 1885 Saint James Place, 15th Floor | SBN: 5198783 |
| Houston, TX 77056 | 7 Times Square, 40th Floor |
| Tel: 713-850-4200 | New York, NY 10036-6596 |
| Fax: 713-850-4211 | Tel: 212-421-4100 |
| jjudd@andrewsmyers.com | Fax: 212-326-0806 |
| | slieberman@pryorcashman.com |
| | msilverman@pryorcashman.com |
| **LOCAL COUNSEL FOR DECIMAL DIGITAL CURRENCY I, LLC** | **COUNSEL FOR DECIMAL DIGITAL CURRENCY I, LLC** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of February 2023, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system on the Debtors, the Office of the United States Trustee, and all other parties requesting notice.

                                      */s/T. Josh Judd*
                                      T. Josh Judd