# EXHIBIT A



# MASTER AGREEMENT

This Master Agreement (the "**Agreement**"), dated January ‾27‾, 2022 (this "**Agreement**") is between Compute North LLC ("**Compute North**") and Decimal Digital Currency I, LLC ("**Customer**"). In consideration of the promises set forth below, the parties agree as follows:

1. **Services.** Compute North shall provide, and Customer shall pay for, the colocation, managed and other services (the "Services") for Customer's cryptocurrency mining hardware (the "Mining Equipment," and collectively with any Acquired Hardware, the "Equipment") identified on the order form attached hereto and incorporated herein as Exhibit A, as may be updated or supplemented in writing and duly signed by Customer and Compute North from time to time (the "Order Form"). Compute North shall provide the Services in a professional manner consistent with industry practice and standards, and as more fully described in, its customer handbook (the "Customer Handbook"), available at *www.computenorth.com/handbook-sla.pdf* and incorporated herein, as Compute North may reasonably update from time to time.

2. **Colocation Services.**

   2.1. <u>Colocation Facility</u>. Compute North will provide Services for Mining Equipment at the location specified the Order Form (the "Facility") during the Equipment Term specified on the Order Form in accordance with the Customer Handbook, as Compute North may reasonably update from time to time.

   2.2. <u>Acceptable Use Policy</u>. Customer's receipt of Services and its use of Mining Equipment pursuant to this Agreement is subject to Customer's compliance with Compute North's then-current Acceptable Use Policy, available at *www.computenorth.com/acceptable-use-policy* and incorporated herein, as Compute North may reasonably update from time to time

   2.3. <u>Customer Portal</u>. Compute North will provide Customer with access to its customer portal. Customer's access to and use of the customer portal is subject to, and Customer agrees to be bound by, Compute North's Terms of Use, available at *www.computenorth.com/terms-of-use/* and incorporated herein, as Compute North may reasonably update from time to time. All written notices required by Customer under this Agreement shall be submitted using the customer portal.

   2.4. <u>Transfer of Mining Equipment</u>. Customer shall promptly notify Compute North if it transfers legal title or grants to any third-party rights in or to any Equipment to a third party. All such transfers shall be subject to and shall preserve Compute North's security interest under Section 6. In the event of a transfer, Customer shall remain obligated to pay Compute North the Monthly Service Fees for the transferred Mining Equipment for the remainder of the Equipment Term applicable to such Mining Equipment unless such Mining Equipment is replaced by Customer with Mining Equipment of like kind, quality and quantity or until such Mining Equipment is placed into service under, and is subject to, a collocation agreement between the acquiring third party and Compute North, which shall require Compute North's reasonable approval (including satisfaction of Compute North's credit and know-your-customer requirements).

   2.5. <u>Transfer of Services</u>. Except as otherwise provided in Section 13.4 of this Agreement, Customer may not sublicense, assign, delegate or otherwise transfer its receipt of Services under this Agreement to a third party without Compute North's written consent (which will not be unreasonably withheld).

3. **Hardware Acquisition.** Compute North agrees to acquire and sell to Customer, and Customer agrees to buy from Compute North, such cryptocurrency mining hardware, if any, elected on the Order Form ("Acquired Hardware"). The initial deposit for the Acquired Hardware set forth on the Order Form (the "Hardware

62810/0001-42350890v2

Document Ref: 6NDAE-LGT3Z-2UMPI-TGQ5R



Deposit") shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form, with the remaining balance owed for the Acquired Hardware due and payable by the earlier of (a) the date on which Compute North notifies Customer that the Acquired Hardware has been shipped or (b) as stated on the Order Form. Legal title to the Acquired Equipment shall transfer to Customer when the full amount payable for the Acquired Hardware has been paid to Compute North. The Acquired Hardware shall be Mining Equipment subject to this Agreement upon its delivery to the Facility. Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof. Compute North agrees to cooperate and provide commercially reasonable assistance to Customer with respect to Customer's assertion of any such warranty claims against Bitmain with respect to the Acquired Hardware pursuant to the Bitmain Purchase Agreement.

4.    **Term and Termination.**

4.1.    <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all applicable Equipment Terms have expired or terminated.

4.2.    <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

4.3.    <u>Commencement of Mining Operations</u>. Each batch of Mining Equipment shall be installed by the later of September 1, 2022, and sixty (60) days after the delivery of such Mining Equipment to the Facility (in each instance, the "Batch Installation Deadline"). For any batch of Mining Equipment that is not installed by the applicable Batch Installation Deadline, Customer shall be entitled to a credit equal to $0.005 kWh per day for such Mining Equipment until it has been installed at the Facility.

4.4.    <u>Equipment Return</u>. Upon Customer's written request, and provided Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and return the corresponding Equipment to Customer as provided in Section 8.4 and the Order Form.

4.5.    <u>Termination for Cause</u>. Compute North may terminate this Agreement or any Order Form for cause immediately upon written notice to Customer if Customer: (a) fails to make any payment(s) due pursuant to this Agreement within twenty (20) days of after written notice from Compute North of the failure to make payment when due; (b) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and such matter is not cured within thirty (30) days after written notice from Compute North; or (c) voluntarily enters into bankruptcy, dissolution or insolvency or fails to have dismissed or discharged any involuntary bankruptcy proceeding within ninety (90) of the commencement thereof (each, a "Default").

4.6.    <u>Effect of Default</u>. In the event of a Default by Customer, Compute North may terminate this Agreement or any Order Form on written notice to Customer (the "Default Notice"), and Customer shall pay to Compute North not later than twenty (20) days after receipt of the Default Notice all amounts then owed thereunder and, as liquidated damages and not a penalty, all amounts due for the remainder of the applicable Equipment Term(s). If Customer fails to make any such payments within such twenty (20) day period, in addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of a quantity of Equipment sufficient to satisfy Customer's obligations hereunder based on the then fair market value of the

62810/0001-42350890v2



Mining Equipment and return to Customer (at Customer's expense) any remaining quantity of Equipment, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Equipment without any cost, obligation or liability of Compute North to Customer.

**5.      Fees and Payment.**

5.1.      <u>Initial Fees</u>. The one-time fee for setup, installation, and configuration of Mining Equipment (the "Initial Setup Fee") and Initial Deposit and any Hardware Deposit shall be due and payable as of the date on which Compute North and Customer have both executed an Order Form. The Initial Setup Fee is non-refundable and non-transferrable under any circumstance. The Initial Deposit and Hardware Deposit are non-transferrable under any circumstance and are not refundable except as expressly set forth herein and only to the extent that all of Customer's obligations under this Agreement have been fully satisfied.

5.2.      <u>Monthly Fees</u>. Customer shall pay to Compute North the Monthly Service Fees and Monthly Package Fees (collectively, the "Fees") as set forth on the Order Form. If there are any increases, changes in, or introductions or administration of, any taxes (other than any income taxes of Compute North), levies, tariffs, or governmental fees with respect to the Services, which are attributable to Customer, Compute North may pass through to Customer, and Customer shall pay, all such amounts in accordance herewith; provided, however, in the event of a material increase in the amount of taxes, levies, tariffs, fees or charges, Compute North and Customer shall confer in good faith for a period of fifteen (15) days to identify and evaluate potential alternatives.

5.3.      <u>Taxes</u>. All amounts payable by Customer under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties, and fees, including federal, state, and local taxes on manufacture, sales, gross income, receipts, occupation, and use, applicable to Customer and not based on Compute North's income that arises out of this Agreement. If any deduction, withholding, or payment for taxes is required in any jurisdiction on amounts payable to Compute North, Customer shall indemnify and make Compute North whole for the full amount thereof.

5.4.      <u>Payment Method</u>. Unless otherwise agreed in writing or unless the ACH system is not operable for a period of more than 24 hours prior to making a required payment (in which case the payment deadline shall be extended for a like period), all payments due and owing under this Agreement shall be made through automated clearing house ("ACH") transfers to Compute North from an account established by Customer at a United States bank designated by Customer (the "Payment Account"). Customer agrees to initiate ACH transfers from the Payment Account to Compute North in the amounts required under this Agreement as and when due. For as long as this Agreement remains effective, Customer shall be responsible for all costs, expenses or other fees and charges incurred by Compute North as a result of any returned ACH transfers resulting from insufficient sums being available in the Payment Account.

**6.      Security Interest.** Customer hereby grants and assigns to Compute North a continuing first-position security interest in, and lien on, the Equipment as collateral security for Customer's performance of its obligations under this Agreement when due. Compute North may, as it deems appropriate, file UCC-1 financing statements to evidence this security interest and Customer agrees to cooperate fully with Compute North to obtain and perfect this security interest as may be reasonably required. If Customer desires to finance certain Mining Equipment with a lender that requires a first priority lien, such financing shall be subject to Compute North's consent, which shall not be unreasonably withheld or delayed, and negotiation in good faith of an accommodation agreement with such lender.

**7.      Network and Access.**

62810/0001-42350890v2



7.1.     Network. Compute North will provide a minimum of 100 mbps of local network connectivity for all Mining Equipment on a single Ethernet segment. Customer may request VPN access its Mining Equipment. Customer is responsible for preventing unauthorized network access to the Equipment to the extent Compute North is operating in compliance with its Customer Handbook and Acceptable Use Policy. Customer authorizes Compute North to monitor Customer's network usage and traffic and to access, collect and use data relating to the Mining Equipment and Customer's use thereof in the course of providing Services to Customer (and for no other purpose).

7.2.     Access. Only persons specifically authorized by Compute North in writing may access the Facility. Compute North may deny or suspend Customer's access to the Equipment based on Compute North's then-current Security Policies and Procedures upon prior notice to Customer indicating cause for such denial or suspension of access rendered in good-faith. Without limiting the foregoing: all access into the Facility must be supervised by a Compute North representative; Customer shall provide two (2) day' written notice to Compute North prior to any maintenance or repair of the Equipment; Customer shall perform Equipment maintenance and repairs during normal business hours (Monday-Friday, 7 am to 6 pm Central Time); and, Customer may request immediate or after-hour access to the Facility to perform emergency maintenance. Compute North will make reasonable efforts accommodate Customer's after-hour or immediate emergency access requests. Customer shall be solely responsible for any damage or loss caused by anyone (other than Compute North or its agents) acting for or on its behalf while at the Facility.

7.3.     Third-Party Management. Customer shall notify Compute North if it engages a third party to provide services on its behalf with respect to the Equipment. Customer shall be fully responsible for all acts or omissions by any third-party service provider acting for or on its behalf.

7.4.     Hazardous Conditions. If any hazardous conditions arise on, from, or affect the Facility, whether caused by Customer or a third party agent of Customer, Compute North shall promptly notify Customer and may suspend Services under this Agreement without liability until the hazardous conditions have been reasonably resolved.

7.5.     Demand Response/Load Resource Participation Program. Customer acknowledges and understands that Compute North participates in various demand response/load resource participation programs ("LRP Programs") at its facilities. Customer understands and agrees that LRP Programs provide the local grid operator with the capability to shut off the power load serving Compute North customers in response to certain load situations. Customer agrees that the Fees reflect Compute North's participation in the LRP Programs and that Compute North shall have no liability to Customer for any actions or omissions due to or resulting from its participation in the LRP Programs.

**8.     Removals and Relocation of Mining Equipment.**

8.1.     Relocation. With the prior written consent of the Customer, Compute North may relocate Mining Equipment within the Facility or to another Compute North facility upon twenty (20) days' prior written notice to Customer at Compute North's expense.

8.2.     Interference. If Customer's Mining Equipment is causing or, in Compute North's reasonable determination, is likely to cause unacceptable environmental hazards or contamination or other material and adverse interference to the operation of the Facility, if after fifteen (15) days' prior written notice from Compute North, Customer has failed to remedy such environmental hazard or interference, Compute North may upon written notice require Customer to remove or relocate such Mining Equipment and Compute North may terminate the applicable Order Form with respect to the interfering Mining Equipment.

62810/0001-42350890v2



8.3. <u>Emergency</u>. In the event of an emergency, Compute North may rearrange, remove, or relocate Mining Equipment. Notwithstanding the foregoing, in the case of emergency, Compute North shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, or relocating Mining Equipment and shall exercise due care in undertaking such actions.

8.4. <u>Mining Equipment Return</u>. Provided that Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and make the Mining Equipment available to Customer for pickup at, or shipment from, the Facility within fifteen (15) business days of Customer's written request. Customer shall be responsible for all reasonable deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning its Mining Equipment. Compute North will notify Customer when its Mining Equipment is ready for pickup, and Customer shall arrange for pickup and removal of the Mining Equipment at its sole risk and expense. If Customer does not remove the Mining Equipment as provided herein, Compute North may charge Customer for storage beginning from the date that is fifteen (15) days from the date of notice that the Mining Equipment is ready for pickup. If Customer fails to pick up the Equipment within forty-five (45) days of receipt of the notice the Mining Equipment is ready for pickup, Compute North may sell or retain possession of the Mining Equipment to satisfy the obligations of Customer hereunder (and return to Customer, at Customer's expense, any amounts in excess of such amount, inclusive of storage fees). Other than in the case of a Force Majeure Event, any Mining Equipment that is not picked up and removed within sixty (60) days of such notice shall be deemed abandoned and legal title to such Mining Equipment shall transfer to Compute North. For avoidance of doubt, Acquired Hardware at the Facility constitutes Mining Equipment for purposes of this Section 8.4.

## 9. Customer Responsibilities.

9.1. <u>Compliance with Laws</u>. Customer's use of the Facility and the Equipment located at the Facility shall conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Customer is doing business, and the laws of the city, county, and state where the Facility is located. If a change in, or the interpretation, introduction, or administration of, any law results in a new or increased cost of compliance therewith, Compute North may pass through the increased cost that are attributable to Customer, terminate this Agreement or any Order Form, or modify the Services as necessary to account for such cost; provided, however, that Compute North shall confer in good faith with Customer to identify and evaluate potential alternatives.

9.2. <u>Licenses and permits</u>. Customer is responsible for obtaining any licenses, permits, consents, and approvals from any federal, state, or local government that may be necessary to install, possess, own, or operate the Equipment. Unless specifically set forth on the applicable Order Form, Customer is solely responsible for all requirements for renewable energy certificates, allowances, or other carbon offsets required by or otherwise necessary for Customer's compliance with any federal, state, local or other applicable law.

9.3. <u>Insurance</u>. Customer acknowledges that Compute North is not an insurer and Equipment is not covered by any insurance policy held by Compute North. Customer is solely responsible for obtaining insurance coverage for the Equipment. Customer shall have and maintain throughout the term of this Agreement commercial general liability insurance for both bodily injury and property damage.

9.4. <u>Equipment in Good Working Order</u>. Except with respect to Acquired Hardware, Customer shall be responsible for delivering the Equipment to the Facility in good working order and suitable for use in the Facility. Customer is responsible for all risk of loss or damage to the Equipment (other than the Acquired Hardware) prior to Compute North receiving the Equipment at the Facility. If

62810/0001-42350890v2



Customer requests Compute North's repair services, Customer shall be responsible for all costs associated with the troubleshooting and repair of Equipment received in non-working order, including parts and labor at Compute North's then-current rates. Compute North is not responsible in any way for installation delays or losses as a result of Equipment not in good working order upon arrival at Facility.

9.5.   Modification or Overclocking of Mining Equipment. Customer shall notify and obtain prior written approval from Compute North before any material modifications, alternations, firmware adjustments, over-clocking or other material changes are made to Mining Equipment ("Modified Equipment") that are intended to or might cause the Equipment's performance to deviate from the standard or factory specifications. Compute North shall not make any modifications to the Mining Equipment without the prior written consent of Customer.

10.   **Representations, Warranties, and Disclaimer**.

10.1.   Mutual. Customer and Computer North each represents and warrants that: it is properly constituted and organized; it is duly authorized to enter into and perform this Agreement; and, its execution, delivery, and performance of this Agreement will not violate the terms of any other agreement to which it is a party or obligation by which it is bound.

10.2.   By Customer. Customer represents and warrants that it owns and has good title to the Mining Equipment (and upon payment therefor, the Acquired Hardware) free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance. Customer further represents and warrants that neither it nor any of its subsidiaries nor, to Customer's knowledge, any director, officer, agent, employee, affiliate, or person acting on behalf of Customer or its subsidiaries: has violated or will violate any applicable anti-bribery or anti-corruption law, including the U.S. Foreign Corrupt Practices Act; has violated or will violate any applicable money laundering laws; or is or will become subject to any U.S. sanctions administered by the Office of Foreign Asset Control of the U.S. Treasury Department.

10.3.   By Compute North. Compute North represents and warrants that it will provide the Services at the Facility in a professional and workmanlike manner consistent with the terms and conditions of this Agreement. Except as expressly set forth herein, COMPUTE NORTH MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES, FACILITY AND ANY ACQUIRED HARDWARE AND CAPITAL EQUIPMENT ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. COMPUTE NORTH DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY AND OTHER SUCH CONDITIONS. COMPUTE NORTH MAKES NO WARRANTY, AND HEREBY DISCLAIMS ALL IMPLIED WARRANTIES, WITH RESPECT TO GOODS AND SERVICES SUBJECT TO THIS AGREEMENT, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF NONINFRINGEMENT AND (D) WARRANTY AGAINST INTERFERENCE. COMPUTE NORTH DOES NOT WARRANT THAT (A) THE SERVICE WILL BE FREE FROM INTERRUPTION; (B) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS EXPRESSLY SET FORTH HEREIN; OR (C) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL PROVIDE ANY FUNCTION NOT EXPRESSLY DESIGNATED AND SET FORTH HEREIN.

11.   **Limitation of Liability.**

62810/0001-42350890v2



11.1.   Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control, including force majeure events such as weather, network failures, pool operator failures, denial of service attacks, network and power grid outages, hacking or malicious attacks on networks or exchanges, or Acts of God. Customer further acknowledges that cryptocurrency price movements, difficulty, and legal and regulatory risks could have a material adverse impact on the value of cryptocurrencies, cryptocurrency mining, the Equipment, and the Services. Customer assumes responsibility for all such risks, and Compute North hereby disclaims all liability for any losses that may arise as a result thereof

11.2.   EXCEPT AS OTHERWISE SPECIFICALLY  PROVIDED HEREIN OR IN COMPUTE NORTH'S HANDBOOK, NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES; (C) ANY LOST REVENUE OR PROFITS TO CUSTOMER DURING NETWORK OR POWER OUTAGES OR CURTAILMENT, EQUIPMENT FAILURES, OR OTHER FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD-PARTY EQUIPMENT.

11.3.   IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, RELIANCE, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF BUSINESS, OR COST OF COVER OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY THEREOF. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE (INCLUDING ATTORNEYS' FEES), SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER FOR THE SERVICE MONTH DURING WHICH THE EVENT GIVING RISE TO THE CLAIM OCCURRED.

11.4.   Remedy. Except in the case of gross negligence or willful misconduct, Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the service month during which the nonperformance occurred. Unless applicable law requires a longer period, any action against Compute North in connection with this Agreement must be commenced within one (1) year after the cause of the action has accrued.

12.   **Indemnification.** Customer shall indemnify, hold harmless and defend Compute North, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Equipment or Customer's use thereof, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Customer. Customer shall not enter into any settlement or resolution with a third party under this section without Compute North's written consent, which shall not be unreasonably withheld.

62810/0001-42350890v2



Compute North shall indemnify, hold harmless and defend Customer, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the provision of Services hereunder, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Compute North, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Compute North. Compute North shall not enter into any settlement or resolution with a third party under this section without Customer's written consent, which shall not be unreasonably withheld.

**13.    Miscellaneous.**

13.1.    <u>Lease Agreement</u>. Compute North may lease certain premises in the Facility from the Facility's owner pursuant to a lease agreement.  Customer is not a party to or a beneficiary under such lease, if any, and has no rights thereunder Whether owned or leased by Compute North, Customer acknowledges and agrees that it does not have, has not been granted, and will not own or hold any real property interest in the Facility, that it is a licensee and not a tenant, and that it does not have any of the rights, privileges, or remedies that a tenant or lessee would have under a real property lease or occupancy agreement.

13.2.    <u>Entire Agreement</u>. This Agreement, including the Order Form and any documents referenced herein, constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding, including any prior master or colocation agreement, between them relating thereto. In the event of a conflict between the terms and conditions of this Master Agreement and an Order Form, the specific terms and conditions of the Order Form shall take precedence. Customer acknowledges and agrees that it has not, and will not, rely upon any representations, understandings, or other agreements not specifically set forth in this Agreement. This Agreement shall not be superseded, terminated, modified, or amended except by express written agreement of the parties that specifically identifies this Agreement.

13.3.    <u>Waiver, Severability</u>. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

13.4.    <u>Assignment</u>. (a) Except as part of or in connection with a Change of Control, or a reorganization solely among Customer and its Affiliates, Customer shall not assign or otherwise transfer any of its rights, or delegate or otherwise transfer any of its obligations or performance under this Agreement, without Compute North's written consent, which consent shall not be unreasonably withheld. "Change of Control" means (i) a sale by Customer of all or substantially all of its assets that are the subject of this Agreement to an unaffiliated person or entity, (ii) a merger, reorganization, conversion or other transaction in which more than fifty percent (50%) of the voting control of Customer is held by persons or entities who did not hold voting control of such party, whether directly or indirectly, immediately prior to such transaction (excluding any reorganization solely among Customer and any entities that directly or indirectly controls, is controlled by, or is under common control with Customer (each, an "Affiliate"), or (iii) a sale by the equity holders of Customer that results in more than fifty percent (50%) of the voting control of such party being held by persons or entities who did not hold voting control of Customer, whether directly or indirectly, immediately prior to such sale (excluding any reorganization solely among Customer and its Affiliates). Customer shall notify Compute North in writing within ten (10) days of any assignment or transfer under this Section 13.4. Compute North may at any time assign, transfer, delegate, or subcontract any or all of its rights or obligations under this Agreement with Customer's written

62810/0001-42350890v2



consent. Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

13.5.    (b)        Notwithstanding the foregoing, without the prior consent of Compute North but subject to prior notice and fulfillment of Compute North's know-your-customer and anti-money laundering requirements to Compute North's reasonable satisfaction which shall not be unduly withheld or delayed, Customer shall be permitted to assign its rights, duties and obligations under this Agreement to an affiliated company that is under common control or to a joint venture company in which the Customer or an affiliate of the Customer is a member, partner  or shareholder For the avoidance of doubt, the prior written consent of Compute North shall not be required for the assignment and assumption of the Customer's rights and obligations under this Agreement to the joint venture member, partner or shareholder or affiliate thereof of the joint venture company in which the Customer will be a member, partner or shareholder or the subsequent assignment of this Agreement and assumption of the obligations under this Agreement to such joint venture company. Force Majeure. Notwithstanding anything to the contrary contained herein, neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God or acts of public enemies.

13.6.    Governing Law; Arbitration. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Minnesota, without giving effect to principals of conflicts of laws. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled exclusively conducted by a single independent arbitrator in the State of Minnesota in accordance with the American Arbitration Association's then-current Commercial Arbitration Rules. Judgment may be entered on the arbitrator's award in any court having jurisdiction. All documents and proceedings shall be in English. The parties may participate in the arbitration via synchronous videoconferencing or similar technology and no party shall need to physically and personally appear. In addition to any other recovery, the arbitrator may award the prevailing party its reasonable attorneys' fees and costs. An action by a party to enforce any provision of this Agreement shall not relieve the other party from any of its obligations under this Agreement, and no failure to enforce any provision of this Agreement shall constitute a waiver of any future default or breach of that or any other provision.

13.7.    Relationship of the Parties. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, Compute North shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.

13.8.    Third-Party Beneficiaries. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

13.9.    Publicity. Neither party may use the name, trademark, logo, acronym, or other designation of the other party in connection with any press release, advertising, publicity materials or otherwise without the prior written consent of the other party except in disclosure that may be required by any law, regulation or governmental body.

62810/0001-42350890v2



13.10.   Construction; Interpretation. Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "any" and "all" each means "any and all" and shall not be construed as terms of limitation; and, a reference to a thing (including any right or intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

13.11.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document. The parties may sign and transmit an electronic signature of this Agreement (whether by facsimile, pdf, email, or other electronic means), which signature shall be binding on the party whose name is contained therein.

IN WITNESS WHEREOF, the parties have executed this Agreement in a manner appropriate to each and with the authority to do so as of the date set forth below.

**Compute North LLC**

By: _Kyle Wenzel_____

Name: Kyle Wenzel_____

Its: CCO_____

**Decimal Digital Currency I, LLC**

By: _Henry Robinson_____

Name: Henry Robinson_____

Its: CEO_____

62810/0001-42350890v2

# Signature Certificate

Reference number: 6NDAE-LGT3Z-2UMPI-TGQ5R

| Signer | Timestamp | Signature |
|--------|-----------|-----------|

**Henry Robinson**
Email: henry@decimalgroup.io

| | | |
|---|---|---|
| Sent: | 27 Jan 2022 22:44:12 UTC | |
| Viewed: | 27 Jan 2022 22:48:17 UTC | |
| Signed: | 27 Jan 2022 22:49:35 UTC | |

*Henry Robinson*

IP address: 96.242.79.229
Location: Maplewood, United States

**Kyle Wenzel**
Email: kyle.wenzel@computenorth.com

| | | |
|---|---|---|
| Sent: | 27 Jan 2022 22:44:12 UTC | |
| Viewed: | 27 Jan 2022 23:28:32 UTC | |
| Signed: | 27 Jan 2022 23:29:38 UTC | |

*Kyle Wenzel*

IP address: 65.158.161.156
Location: Minneapolis, United States

Document completed by all parties on:
27 Jan 2022 23:29:38 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.





## Exhibit A – Order Form

**Customer:** Decimal Digital Currency

**Facility:** Future Facility TBD

**Equipment and Fees:**

| Batch # | 001 |
|---|---|
| Deal ID | 7695240818 |
| Order Type | New Order |

| Equipment | | |
|---|---|---|
| **Quantity** | **Model** | **Unit Efficiency (W/TH)** |
| 50 miners - July, 2022 Batch (August Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| 50 miners - August, 2022 Batch (September Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| 50 miners - September, 2022 Batch (October Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| 50 miners - October, 2022 Batch (November Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| 50 miners - November, 2022 Batch (December Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| 50 miners - December, 2022 Batch (January Delivery) | Bitmain S19 XP (140TH) | 21.5 |
| **Hosting Services Rate (USD)** | Anticipated Daily Rate: $1,300.32 (equivalent to $0.06 / kWh) | |
| **Total Monthly Package Fee (per unit)** | Premier @ $3.50 | |
| **Equipment Term** | 60 Months | |
| **Initial Setup Fee** | $0 | |

**Package Details:**

| | Basic | Select | Premier |
|---|---|---|---|
| **Core Features** | | | |
| Equipment | Customer Provided | Customer Provided | Customer Provided |
| Equipment Managed | No | Yes | Yes |
| Rack Space | X | X | X |
| 240V Power | X | X | X |
| Ambient Air Cooling | X | X | X |
| Redundant Internet Connectivity | X | X | X |
| Physical Security | X | X | X |
| **Technical Support** | | | |
| Basic Remote Hands | X | X | X |
| Advanced Remote Hands | | X | X |
| SLA Level | Network & Power | Hashrate Performance | Hashrate Performance |
| VPN Access | X | | |
| RMA Processing | | X | X |
| **Premium Features** | | | |
| Miner Configuration | | X | X |
| Miner Monitoring | | X | X |
| Alert Management and Proactive Response | | X | X |
| Automated Rules-based Reboots | | X | X |

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



| | | | |
|---|---|---|---|
| Stock Firmware Upgrades | | X | X |
| Compute North Pool (U.S.-based pool) | | | X |
| Pool to Hash Performance Monitoring, Audit, Reconciliation | | | X |
| Discounted Pool Fee | | | X |



| Performance Enhancing Firmware <br> • Overclocking, Underclocking, Auto-tuning, Upgrades <br> • Customer provided (subject to Compute North approval) or <br> • Compute North provided (miner model limited) | | | X |
|---|---|---|---|

**Payment and Billing Terms:**
- Initial Setup Fee: Initial Setup Fee is due upon execution of this Order Form.
- Monthly Fees:
  - Last two months of Monthly Service and Package Fees are due upon execution of this Order Form (the "Initial Deposit"). Equipment installation will not begin until received.

| Initial Deposit | |
|---|---|
| Service Fees: ($1,300.32/day x 30 days/mo. x 2 mos.) | $78,019.20 |
| Package Fees: (300 miners x $3.50/miner x 2 mos.) | $2,100.00 |
| **Total Initial Deposit** | $80,119.20 |

- The Monthly Service Fee is payable based on the actual hashrate performance of the Equipment per miner type per location as a percentage of the anticipated monthly hashrate per miner type. Customer shall pay a minimum service fee monthly in advance equal to seventy percent (70%) of the Expected Monthly Service Fee (the "Minimum Service Fee") based on the Anticipated Daily Rate. The Minimum Service Fee is nonrefundable.
- The actual Monthly Service Fee is determined using the Hashrate Performance Adjustment:
  - Hashrate Performance Adjustment = Expected Monthly Service Fees x (100% - Actual hashrate performance percentage by model type)
  
  Any Monthly Service Fee owed in excess of the Minimum Service Fee net of the Hashrate Performance Adjustment will be invoiced monthly in arrears. Customer is not eligible for service credits.
- Monthly Service Fees and Monthly Package Fees will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North. Late payments will incur interest at the lesser of 1.5% per month (18% annum) or the maximum amount allowed under applicable law.
- Pricing is subject to monthly automated ACH payments. Other payment methods may be subject to a service fee.

| Billing Example - Minimum Service Fee | |
|---|---|
| Anticipated Daily Rate (One miner) | $4.00 |
| Period (Days in the Month) | 30 |
| Number of Units | 10 |
| Expected Total Monthly Service Fees | $1200.00 |
| | x 70% |
| **Monthly Minimum Service Fee** | **$840.00** |

| Billing Example: 96% hashrate performance | |
|---|---|
| Expected Total Monthly Service Fees | $1200.0 |
| Hashrate Performance Adjustment (-4%) | -48.00 |
| Total Monthly Service Fee | $1152.00 |
| Minimum Service Fee (Prepaid) | -$840.00 |
| **Balance Due** | **$312.00** |

| Billing Example: 105% hashrate performance | |
|---|---|
| Expected Total Monthly Service Fees | $1200.00 |
| Hashrate Performance Adjustment (5%) | 60.00 |
| Total Monthly Service Fee | $1260.00 |
| Minimum Service Fee (Prepaid) | -$840.00 |
| **Balance Due** | **$420.00** |

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



**Deployment Priority:**

Customer's deployment priority is established as of the date on which Compute North receives the Initial Deposit. Once established, Compute North will use commercially reasonable efforts to deploy the Equipment consistent with Customer's deployment priority subject to the following acknowledged risk factors: land and site acquisition, regulatory affairs, power purchase agreement (PPA), infrastructure equipment availability (medium voltage cables, containers, etc.), and long lead time equipment procurement (substation, transformer, etc.).

**Invoice Detail:**

| Contact Name | Decimal Digital Currency I LLC |
|---|---|
| Email | henry@decimalgroup.io, roshan@decimalgroup.io |
| Phone | 862-520-8745 |
| Billing Street | 153 Valley Street Suite 26 |
| Billing City/State/Zip/Country | South Orange, NJ, 07079 |

**Compute North Pool:**

At Customer's request, Compute North will enroll and configure Customer in Compute North's Bitcoin mining pool, which operates on a Full-Pay-Per-Share (FPPS) basis. Customer's use of Compute North's mining pool is subject to, and constitutes Customer's acceptance of, the then-current terms of service posted at https://mining.luxor.tech/legal/tos, as may be updated from time to time. Compute North shall be entitled to a fee equal to 1% of Customer's mining reward from its participation in Compute North's pool. Customer acknowledges and agrees that Compute North is providing Customer with access to its mining pool for Customer's convenience on an as-is basis and that Compute North does not make any warranties or guarantees, whether express or implied, regarding the availability or performance thereof.

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



**Firmware:**

Customer acknowledges and agrees that its use of alternate or non-standard firmware may be subject to third-party fees or other charges, which shall be Customer's sole responsibility. Customer acknowledges and agrees that Compute North's consent to Customer's use of alternate or non-standard firmware and its provision of services relating thereto is for Customer's convenience on an as-is basis, that Customer's use of alternate or non-standard firmware is at Customer's sole risk, and that Compute North does not make any warranties or guarantees, whether express or implied, with respect thereto.

**Order Type:**

☐  **For orders designated as "Renewal" or "Change Order"**: This Order Form replaces all then- existing order forms under the applicable Agreement between Compute North and Customer for the identified Equipment, with all other order forms remaining in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

☑  **For orders designated as "New"**: This Addendum is and shall be in addition to all then-existing order forms under the applicable Agreement between Compute North and Customer, which order forms shall remain in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

Compute North LLC

By:  *Kyle Wenzel*

Name:   Kyle Wenzel

Its:   CCO

Customer: Decimal Digital Currency

By:  *Henry Robinson*

Name:   Henry Robinson

Its:   CEO

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



**Previous Orders and Equipment List**

| Batch # | Equipment Type | Quantity | Facility |
|---------|----------------|----------|----------|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |



**MASTER AGREEMENT**

This Master Agreement (the "**Agreement**"), dated _____ Feb ... (this "**Agreement**") is between Compute North LLC ("**Compute North**") and Decimal Digital Currency I, LLC ("**Customer**"). In consideration of the promises set forth below, the parties agree as follows:

1. **Services.** Compute North shall provide, and Customer shall pay for, the colocation, managed and other services (the "Services") for Customer's cryptocurrency mining hardware (the "Mining Equipment," and collectively with any Acquired Hardware, the "Equipment") identified on the order form attached hereto and incorporated herein as Exhibit A, as may be updated or supplemented in writing and duly signed by Customer and Compute North from time to time (the "Order Form"). Compute North shall provide the Services in a professional manner consistent with industry practice and standards, and as more fully described in, its customer handbook (the "Customer Handbook"), available at *www.computenorth.com/handbook-sla.pdf* and incorporated herein, as Compute North may reasonably update from time to time.

2. **Colocation Services.**

   2.1. <u>Colocation Facility</u>. Compute North will provide Services for Mining Equipment at the location specified the Order Form (the "Facility") during the Equipment Term specified on the Order Form in accordance with the Customer Handbook, as Compute North may reasonably update from time to time.

   2.2. <u>Acceptable Use Policy</u>. Customer's receipt of Services and its use of Mining Equipment pursuant to this Agreement is subject to Customer's compliance with Compute North's then-current Acceptable Use Policy, available at *www.computenorth.com/acceptable-use-policy* and incorporated herein, as Compute North may reasonably update from time to time

   2.3. <u>Customer Portal</u>. Compute North will provide Customer with access to its customer portal. Customer's access to and use of the customer portal is subject to, and Customer agrees to be bound by, Compute North's Terms of Use, available at *www.computenorth.com/terms-of-use/* and incorporated herein, as Compute North may reasonably update from time to time. All written notices required by Customer under this Agreement shall be submitted using the customer portal.

   2.4. <u>Transfer of Mining Equipment</u>. Customer shall promptly notify Compute North if it transfers legal title or grants to any third-party rights in or to any Equipment to a third party. All such transfers shall be subject to and shall preserve Compute North's security interest under Section 6. In the event of a transfer, Customer shall remain obligated to pay Compute North the Monthly Service Fees for the transferred Mining Equipment for the remainder of the Equipment Term applicable to such Mining Equipment unless such Mining Equipment is replaced by Customer with Mining Equipment of like kind, quality and quantity or until such Mining Equipment is placed into service under, and is subject to, a collocation agreement between the acquiring third party and Compute North, which shall require Compute North's

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



reasonable approval (including satisfaction of Compute North's credit and know-your-customer requirements).

2.5. <u>Transfer of Services</u>. Except as otherwise provided in Section 13.4 of this Agreement, Customer may not sublicense, assign, delegate or otherwise transfer its receipt of Services under this Agreement to a third party without Compute North's written consent (which will not be unreasonably withheld).

3. **Hardware Acquisition.** Compute North agrees to acquire and sell to Customer, and Customer agrees to buy from Compute North, such cryptocurrency mining hardware, if any, elected on the Order Form ("Acquired Hardware"). The initial deposit for the Acquired Hardware set forth on the Order Form (the "Hardware Deposit") shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form, with the remaining balance owed for the Acquired Hardware due and payable by the earlier of (a) the date on which Compute North notifies Customer that the Acquired Hardware has been shipped or (b) as stated on the Order Form. Legal title to the Acquired Equipment shall transfer to Customer when the full amount payable for the Acquired Hardware has been paid to Compute North. The Acquired Hardware shall be Mining Equipment subject to this Agreement upon its delivery to the Facility. Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof. Compute North agrees to cooperate and provide commercially reasonable assistance to Customer with respect to Customer's assertion of any such warranty claims with respect to the Acquired Hardware.

4. **Term and Termination.**

4.1. <u>Term of Agreement</u>. This Agreement shall be effective as of the date on which it has been executed by Compute North and Customer (the "Effective Date") and, unless otherwise terminated, shall continue until all applicable Equipment Terms have expired or terminated.

4.2. <u>Equipment Term</u>. The Equipment Term set forth on an Order Form for Equipment shall commence as of the date Compute North notifies Customer in writing that the Mining Equipment has been received and turned on by Compute North. Unless an Order Form provides otherwise, the Equipment Term shall renew for successive one (1) month periods unless one party notifies the other in writing at least thirty (30) days prior to the conclusion of the then-current Equipment Term.

4.3. <u>Commencement of Mining Operations</u>. Each batch of Mining Equipment shall be installed by the later of September 1, 2022, and sixty (60) days after the delivery of such Mining Equipment to the Facility (in each instance, the "Batch Installation Deadline"). For any batch of Mining Equipment that is not installed by the applicable Batch Installation Deadline, Customer shall be entitled to a credit equal to $0.005 kWh per day for such Mining Equipment until it has been installed at the Facility.

4.4. <u>Equipment Return</u>. Upon Customer's written request, and provided Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



return the corresponding Equipment to Customer as provided in Section 8.4 and the Order Form.

4.5. <u>Termination for Cause</u>. Compute North may terminate this Agreement or any Order Form for cause immediately upon written notice to Customer if Customer: (a) fails to make any payment(s) due pursuant to this Agreement within twenty (20) days of after written notice from Compute North of the failure to make payment when due; (b) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and such matter is not cured within thirty (30) days after written notice from Compute North; or (c) voluntarily enters into bankruptcy, dissolution or insolvency or fails to have dismissed or discharged any involuntary bankruptcy proceeding within ninety (90) of the commencement thereof (each, a "Default").

4.6. <u>Effect of Default</u>. In the event of a Default by Customer, Compute North may terminate this Agreement or any Order Form on written notice to Customer (the "Default Notice"), and Customer shall pay to Compute North not later than twenty (20) days after receipt of the Default Notice all amounts then owed thereunder and, as liquidated damages and not a penalty, all amounts due for the remainder of the applicable Equipment Term(s). If Customer fails to make any such payments within such twenty (20) day period, in addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of a quantity of Equipment sufficient to satisfy Customer's obligations hereunder based on the then fair market value of the Mining Equipment and return to Customer (at Customer's expense) any remaining quantity of Equipment, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Equipment without any cost, obligation or liability of Compute North to Customer.

5. **Fees and Payment.**

5.1. <u>Initial Fees</u>. The one-time fee for setup, installation, and configuration of Mining Equipment (the "Initial Setup Fee") and Initial Deposit and any Hardware Deposit shall be due and payable as of the date on which Compute North and Customer have both executed an Order Form. The Initial Setup Fee is non-refundable and non-transferrable under any circumstance. The Initial Deposit and Hardware Deposit are non-transferrable under any circumstance and are not refundable except as expressly set forth herein and only to the extent that all of Customer's obligations under this Agreement have been fully satisfied.

5.2. <u>Monthly Fees</u>. Customer shall pay to Compute North the Monthly Service Fees and Monthly Package Fees (collectively, the "Fees") as set forth on the Order Form. If there are any increases, changes in, or introductions or administration of, any taxes (other than any income taxes of Compute North), levies, tariffs, or governmental fees with respect to the Services, which are attributable to Customer, Compute North may pass through to Customer, and Customer shall pay, all such amounts in accordance herewith; provided, however, in the event of a material increase in the amount of taxes, levies, tariffs, fees or charges, Compute North and Customer shall confer in good faith for a period of fifteen (15) days to identify and evaluate potential alternatives.



5.3. <u>Taxes</u>. All amounts payable by Customer under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties, and fees, including federal, state, and local taxes on manufacture, sales, gross income, receipts, occupation, and use, applicable to Customer and not based on Compute North's income that arises out of this Agreement. If any deduction, withholding, or payment for taxes is required in any jurisdiction on amounts payable to Compute North, Customer shall indemnify and make Compute North whole for the full amount thereof.

5.4. <u>Payment Method</u>. Unless otherwise agreed in writing or unless the ACH system is not operable for a period of more than 24 hours prior to making a required payment (in which case the payment deadline shall be extended for a like period), all payments due and owing under this Agreement shall be made through automated clearing house ("ACH") transfers to Compute North from an account established by Customer at a United States bank designated by Customer (the "Payment Account"). Customer agrees to initiate ACH transfers from the Payment Account to Compute North in the amounts required under this Agreement as and when due. For as long as this Agreement remains effective, Customer shall be responsible for all costs, expenses or other fees and charges incurred by Compute North as a result of any returned ACH transfers resulting from insufficient sums being available in the Payment Account.

6. **Security Interest.** Customer hereby grants and assigns to Compute North a continuing first-position security interest in, and lien on, the Equipment as collateral security for Customer's performance of its obligations under this Agreement when due. Compute North may, as it deems appropriate, file UCC-1 financing statements to evidence this security interest and Customer agrees to cooperate fully with Compute North to obtain and perfect this security interest as may be reasonably required. If Customer desires to finance certain Mining Equipment with a lender that requires a first priority lien, such financing shall be subject to Compute North's consent, which shall not be unreasonably withheld or delayed, and negotiation in good faith of an accommodation agreement with such lender.

7. **Network and Access.**

7.1. <u>Network</u>. Compute North will provide a minimum of 100 mbps of local network connectivity for all Mining Equipment on a single Ethernet segment. Customer may request VPN access its Mining Equipment. Customer is responsible for preventing unauthorized network access to the Equipment to the extent Compute North is operating in compliance with its Customer Handbook and Acceptable Use Policy. Customer authorizes Compute North to monitor Customer's network usage and traffic and to access, collect and use data relating to the Mining Equipment and Customer's use thereof in the course of providing Services to Customer (and for no other purpose).

7.2. <u>Access</u>. Only persons specifically authorized by Compute North in writing may access the Facility. Compute North may deny or suspend Customer's access to the Equipment based on Compute North's then-current Security Policies and Procedures upon prior notice to Customer indicating cause for such denial or suspension of access rendered in good-faith. Without limiting the foregoing: all access into the Facility must be supervised by a Compute

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



North representative; Customer shall provide two (2) day' written notice to Compute North prior to any maintenance or repair of the Equipment; Customer shall perform Equipment maintenance and repairs during normal business hours (Monday-Friday, 7 am to 6 pm Central Time); and, Customer may request immediate or after-hour access to the Facility to perform emergency maintenance. Compute North will make reasonable efforts accommodate Customer's after-hour or immediate emergency access requests. Customer shall be solely responsible for any damage or loss caused by anyone (other than Compute North or its agents) acting for or on its behalf while at the Facility.

7.3. <u>Third-Party Management</u>. Customer shall notify Compute North if it engages a third party to provide services on its behalf with respect to the Equipment. Customer shall be fully responsible for all acts or omissions by any third-party service provider acting for or on its behalf.

7.4. <u>Hazardous Conditions</u>. If any hazardous conditions arise on, from, or affect the Facility, whether caused by Customer or a third party agent of Customer, Compute North shall promptly notify Customer and may suspend Services under this Agreement without liability until the hazardous conditions have been reasonably resolved.

7.5. <u>Demand Response/Load Resource Participation Program</u>. Customer acknowledges and understands that Compute North participates in various demand response/load resource participation programs ("LRP Programs") at its facilities. Customer understands and agrees that LRP Programs provide the local grid operator with the capability to shut off the power load serving Compute North customers in response to certain load situations. Customer agrees that the Fees reflect Compute North's participation in the LRP Programs and that Compute North shall have no liability to Customer for any actions or omissions due to or resulting from its participation in the LRP Programs.

8. **Removals and Relocation of Mining Equipment.**

8.1. <u>Relocation</u>. With the prior written consent of the Customer, Compute North may relocate Mining Equipment within the Facility or to another Compute North facility upon twenty (20) days' prior written notice to Customer at Compute North's expense.

8.2. <u>Interference</u>. If Customer's Mining Equipment is causing or, in Compute North's reasonable determination, is likely to cause unacceptable environmental hazards or contamination or other material and adverse interference to the operation of the Facility, if after fifteen (15) days' prior written notice from Compute North, Customer has failed to remedy such environmental  hazard or interference, Compute North  may upon written notice require Customer to remove or relocate such Mining Equipment and Compute North may terminate the applicable Order Form with respect to the interfering Mining Equipment.

8.3. <u>Emergency</u>. In the event of an emergency, Compute North may rearrange, remove, or relocate Mining Equipment. Notwithstanding the foregoing, in the case of emergency, Compute North shall provide Customer, to the extent practicable, reasonable notice prior to

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



rearranging, removing, or relocating Mining Equipment and shall exercise due care in undertaking such actions.

8.4. <u>Mining Equipment Return</u>. Provided that Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and make the Mining Equipment available to Customer for pickup at, or shipment from, the Facility within fifteen (15) business days of Customer's written request. Customer shall be responsible for all reasonable deinstallation, packing, storage, transportation, delivery, and other costs associated with removing and returning its Mining Equipment. Compute North will notify Customer when its Mining Equipment is ready for pickup, and Customer shall arrange for pickup and removal of the Mining Equipment at its sole risk and expense. If Customer does not remove the Mining Equipment as provided herein, Compute North may charge Customer for storage beginning from the date that is fifteen (15) days from the date of notice that the Mining Equipment is ready for pickup. If Customer fails to pick up the Equipment within forty-five (45) days of receipt of the notice the Mining Equipment is ready for pickup, Compute North may sell or retain possession of the Mining Equipment to satisfy the obligations of Customer hereunder (and return to Customer, at Customer's expense, any amounts in excess of such amount, inclusive of storage fees). Other than in the case of a Force Majeure Event, any Mining Equipment that is not picked up and removed within sixty (60) days of such notice shall be deemed abandoned and legal title to such Mining Equipment shall transfer to Compute North. For avoidance of doubt, Acquired Hardware at the Facility constitutes Mining Equipment for purposes of this Section 8.4.

9. **Customer Responsibilities.**

9.1. <u>Compliance with Laws</u>. Customer's use of the Facility and the Equipment located at the Facility shall conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Customer is doing business, and the laws of the city, county, and state where the Facility is located. If a change in, or the interpretation, introduction, or administration of, any law results in a new or increased cost of compliance therewith, Compute North may pass through the increased cost that are attributable to Customer, terminate this Agreement or any Order Form, or modify the Services as necessary to account for such cost; provided, however, that Compute North shall confer in good faith with Customer to identify and evaluate potential alternatives.

9.2. <u>Licenses and permits</u>. Customer is responsible for obtaining any licenses, permits, consents, and approvals from any federal, state, or local government that may be necessary to install, possess, own, or operate the Equipment. Unless specifically set forth on the applicable Order Form, Customer is solely responsible for all requirements for renewable energy certificates, allowances, or other carbon offsets required by or otherwise necessary for Customer's compliance with any federal, state, local or other applicable law.

9.3. <u>Insurance</u>. Customer acknowledges that Compute North is not an insurer and Equipment is not covered by any insurance policy held by Compute North. Customer is solely responsible for obtaining insurance coverage for the Equipment. Customer shall have and maintain

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



throughout the term of this Agreement commercial general liability insurance for both bodily injury and property damage.

9.4. <u>Equipment in Good Working Order</u>. Except with respect to Acquired Hardware, Customer shall be responsible for delivering the Equipment to the Facility in good working order and suitable for use in the Facility. Customer is responsible for all risk of loss or damage to the Equipment (other than the Acquired Hardware) prior to Compute North receiving the Equipment at the Facility. If Customer requests Compute North's repair services, Customer shall be responsible for all costs associated with the troubleshooting and repair of Equipment received in non-working order, including parts and labor at Compute North's then-current rates. Compute North is not responsible in any way for installation delays or losses as a result of Equipment not in good working order upon arrival at Facility.

9.5. <u>Modification or Overclocking of Mining Equipment</u>. Customer shall notify and obtain prior written approval from Compute North before any material modifications, alternations, firmware adjustments, over-clocking or other material changes are made to Mining Equipment ("Modified Equipment") that are intended to or might cause the Equipment's performance to deviate from the standard or factory specifications. Compute North shall not make any modifications to the Mining Equipment without the prior written consent of Customer.

10. **Representations, Warranties, and Disclaimer**.

10.1. <u>Mutual</u>. Customer and Computer North each represents and warrants that: it is properly constituted and organized; it is duly authorized to enter into and perform this Agreement; and, its execution, delivery, and performance of this Agreement will not violate the terms of any other agreement to which it is a party or obligation by which it is bound.

10.2. <u>By Customer</u>. Customer represents and warrants that it owns and has good title to the Mining Equipment (and upon payment therefor, the Acquired Hardware) free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance. Customer further represents and warrants that neither it nor any of its subsidiaries nor, to Customer's knowledge, any director, officer, agent, employee, affiliate, or person acting on behalf of Customer or its subsidiaries: has violated or will violate any applicable anti-bribery or anti-corruption law, including the U.S. Foreign Corrupt Practices Act; has violated or will violate any applicable money laundering laws; or is or will become subject to any U.S. sanctions administered by the Office of Foreign Asset Control of the U.S. Treasury Department.

10.3. <u>By Compute North</u>. Compute North represents and warrants that it will provide the Services at the Facility in a professional and workmanlike manner consistent with the terms and conditions of this Agreement. Except as expressly set forth herein, COMPUTE NORTH MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES, FACILITY AND ANY ACQUIRED HARDWARE AND CAPITAL EQUIPMENT ARE PROVIDED ON AN "AS IS" AND "AS



AVAILABLE" BASIS. COMPUTE NORTH DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY AND OTHER SUCH CONDITIONS. COMPUTE NORTH MAKES NO WARRANTY, AND HEREBY DISCLAIMS ALL IMPLIED WARRANTIES, WITH RESPECT TO GOODS AND SERVICES SUBJECT TO THIS AGREEMENT, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF NONINFRINGEMENT AND (D) WARRANTY AGAINST INTERFERENCE. COMPUTE NORTH DOES NOT WARRANT THAT (A) THE SERVICE WILL BE FREE FROM INTERRUPTION; (B) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS EXPRESSLY SET FORTH HEREIN; OR (C) THE SERVICE, CAPITAL EQUIPMENT OR ACQUIRED HARDWARE WILL PROVIDE ANY FUNCTION NOT EXPRESSLY DESIGNATED AND SET FORTH HEREIN.

11. **Limitation of Liability.**

11.1. Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control, including force majeure events such as weather, network failures, pool operator failures, denial of service attacks, network and power grid outages, hacking or malicious attacks on networks or exchanges, or Acts of God. Customer further acknowledges that cryptocurrency price movements, difficulty, and legal and regulatory risks could have a material adverse impact on the value of cryptocurrencies, cryptocurrency mining, the Equipment, and the Services. Customer assumes responsibility for all such risks, and Compute North hereby disclaims all liability for any losses that may arise as a result thereof

11.2. EXCEPT AS OTHERWISE SPECIFICALLY  PROVIDED HEREIN OR IN COMPUTE NORTH'S HANDBOOK, NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES; (C) ANY LOST REVENUE OR PROFITS TO CUSTOMER DURING NETWORK OR POWER OUTAGES OR CURTAILMENT, EQUIPMENT FAILURES, OR OTHER FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD-PARTY EQUIPMENT.

11.3. IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, RELIANCE, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF BUSINESS, OR COST OF COVER OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS



AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY THEREOF. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE (INCLUDING ATTORNEYS' FEES), SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER FOR THE SERVICE MONTH DURING WHICH THE EVENT GIVING RISE TO THE CLAIM OCCURRED.

11.4. <u>Remedy</u>. Except in the case of gross negligence or willful misconduct, Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the service month during which the nonperformance occurred. Unless applicable law requires a longer period, any action against Compute North in connection with this Agreement must be commenced within one (1) year after the cause of the action has accrued.

12. **Indemnification.** Customer shall indemnify, hold harmless and defend Compute North, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Equipment or Customer's use thereof, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Customer. Customer shall not enter into any settlement or resolution with a third party under this section without Compute North's written consent, which shall not be unreasonably withheld.

Compute North shall indemnify, hold harmless and defend Customer, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the provision of Services hereunder, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Compute North, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Compute North. Compute North shall not enter into any settlement or resolution with a third party under this section without Customer's written consent, which shall not be unreasonably withheld.

1. **Miscellaneous.**

   1.1. <u>Lease Agreement</u>. Compute North may lease certain premises in the Facility from the Facility's owner pursuant to a lease agreement.  Customer is not a party to or a beneficiary under such lease, if any, and has no rights thereunder Whether owned or leased by Compute North, Customer acknowledges and agrees that it does not have, has not been granted, and will not own or hold any real property interest in the Facility, that it is a licensee and not a tenant, and that it does not have any of the rights, privileges, or remedies that a tenant or lessee would have under a real property lease or occupancy agreement.

   1.2. <u>Entire Agreement</u>. This Agreement, including the Order Form and any documents referenced herein, constitutes the parties' entire understanding regarding its subject and supersedes all



prior or contemporaneous communications, agreements and understanding, including any prior master or colocation agreement, between them relating thereto. In the event of a conflict between the terms and conditions of this Master Agreement and an Order Form, the specific terms and conditions of the Order Form shall take precedence. Customer acknowledges and agrees that it has not, and will not, rely upon any representations, understandings, or other agreements not specifically set forth in this Agreement. This Agreement shall not be superseded, terminated, modified, or amended except by express written agreement of the parties that specifically identifies this Agreement.

1.3. <u>Waiver, Severability</u>. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

1.4. <u>Assignment</u>. (a) Except as part of or in connection with a Change of Control, or a reorganization solely among Customer and its Affiliates, Customer shall not assign or otherwise transfer any of its rights, or delegate or otherwise transfer any of its obligations or performance under this Agreement, without Compute North's written consent, which consent shall not be unreasonably withheld. "Change of Control" means (i) a sale by Customer of all or substantially all of its assets that are the subject of this Agreement to an unaffiliated person or entity, (ii) a merger, reorganization, conversion or other transaction in which more than fifty percent (50%) of the voting control of Customer is held by persons or entities who did not hold voting control of such party, whether directly or indirectly, immediately prior to such transaction (excluding any reorganization solely among Customer and any entities that directly or indirectly controls, is controlled by, or is under common control with Customer (each, an "Affiliate"), or (iii) a sale by the equity holders of Customer that results in more than fifty percent (50%) of the voting control of such party being held by persons or entities who did not hold voting control of Customer, whether directly or indirectly, immediately prior to such sale (excluding any reorganization solely among Customer and its Affiliates). Customer shall notify Compute North in writing within ten (10) days of any assignment or transfer under this Section 13.4. Compute North may at any time assign, transfer, delegate, or subcontract any or all of its rights or obligations under this Agreement with Customer's written consent. Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

1.5. (b)     Notwithstanding the foregoing, without the prior consent of Compute North but subject to prior notice and fulfillment of Compute North's know-your-customer and anti-money laundering requirements to Compute North's reasonable satisfaction which shall not be unduly withheld or delayed, Customer shall be permitted to assign its rights, duties and obligations under this Agreement to an affiliated company that is under common control or to a joint venture company in which the Customer or an affiliate of the Customer is a member, partner  or shareholder For the avoidance of doubt, the prior written consent of Compute North shall not be required for the assignment and assumption of the Customer's rights and

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



obligations under this Agreement to the joint venture member, partner or shareholder or affiliate thereof of the joint venture company in which the Customer will be a member, partner or shareholder or the subsequent assignment of this Agreement and assumption of the obligations under this Agreement to such joint venture company. <u>Force Majeure</u>. Notwithstanding anything to the contrary contained herein, neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God or acts of public enemies.

1.6. <u>Governing Law; Arbitration</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Minnesota, without giving effect to principals of conflicts of laws. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled exclusively conducted by a single independent arbitrator in the State of Minnesota in accordance with the American Arbitration Association's then-current Commercial Arbitration Rules. Judgment may be entered on the arbitrator's award in any court having jurisdiction. All documents and proceedings shall be in English. The parties may participate in the arbitration via synchronous videoconferencing or similar technology and no party shall need to physically and personally appear. In addition to any other recovery, the arbitrator may award the prevailing party its reasonable attorneys' fees and costs. An action by a party to enforce any provision of this Agreement shall not relieve the other party from any of its obligations under this Agreement, and no failure to enforce any provision of this Agreement shall constitute a waiver of any future default or breach of that or any other provision.

1.7. <u>Relationship of the Parties</u>. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, Compute North shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.

1.8. <u>Third-Party Beneficiaries</u>. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

1.9. <u>Publicity</u>. Neither party may use the name, trademark, logo, acronym, or other designation of the other party in connection with any press release, advertising, publicity materials or otherwise without the prior written consent of the other party except in disclosure that may be required by any law, regulation or governmental body.

Document Ref: KTGAM-BGDWK-92DC4-YXSAS



1.10. <u>Construction; Interpretation</u>. Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "any" and "all" each means "any and all" and shall not be construed as terms of limitation; and, a reference to a thing (including any right or intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

1.11. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document. The parties may sign and transmit an electronic signature of this Agreement (whether by facsimile, pdf, email, or other electronic means), which signature shall be binding on the party whose name is contained therein.

IN WITNESS WHEREOF, the parties have executed this Agreement in a manner appropriate to each and with the authority to do so as of the date set forth below.

**Compute North LLC**

By: _____*Kyle Wenzel*_____

Name: _____Kyle Wenzel_____

Its: _____CCO_____

**Decimal Digital Currency I, LLC**

By: _____*Henry Robinson*_____

Name: _____Henry Robinson_____

Its: _____CEO_____

Document Ref: KTGAM-BGDWK-92DC4-YXSAS

# Signature Certificate

Reference number: KTGAM-BGDWK-92DC4-YXSAS

| Signer | Timestamp | Signature |
|---|---|---|
| **Henry Robinson**<br>Email: henry@decimalgroup.io | | |

Sent:     01 Feb 2022 18:54:00 UTC
Viewed:   01 Feb 2022 18:58:38 UTC
Signed:   01 Feb 2022 19:03:53 UTC

*Henry Robinson*

IP address: 96.242.79.229
Location: Maplewood, United States

**Kyle Wenzel**
Email: kyle.wenzel@computenorth.com

Sent:     01 Feb 2022 18:54:00 UTC
Viewed:   01 Feb 2022 20:11:08 UTC
Signed:   01 Feb 2022 20:11:43 UTC

*Kyle Wenzel*

IP address: 65.158.161.156
Location: Eden Prairie, United States

Document completed by all parties on:
01 Feb 2022 20:11:43 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



**Compute North**
**Change Order 2 to Equipment Order Agreement**
**For:**

**Customer:**      Decimal Digital Currency I, LLC – Batch 1
**Order Number:** 5341419539_001

**Shipping Address:**      TBD Compute North Hosting Facility

| Equipment Type | Quantity | | Taxes/Tariffs/ Shipping (Est.) | Total Unit Price (Est.) |
|---|---|---|---|---|
| Bitmain S19XP 140T – July, 2022 Batch | 50 | $11,480 | $260/miner | $587,000 |
| Bitmain S19XP 140T – Aug, 2022 Batch | 50 | $11,480 | $260/miner | $587,000 |
| Bitmain S19XP 140T – Sept, 2022 Batch | 50 | $11,480 | $260/miner | $587,000 |
| Bitmain S19XP 140T – Oct, 2022 Batch | 50 | $10,780 | $260/miner | $552,000 |
| Bitmain S19XP 140T – Nov, 2022 Batch | 50 | $10,780 | $260/miner | $552,000 |
| Bitmain S19XP 140T – Dec, 2022 Batch | 50 | $10,780 | $260/miner | $552,000 |

| Hardware Payment/invoice Schedule | Amount |
|---|---|
| **35% Initial Deposit** | **$1,168,650.00** |
| 1/15/2022 | $   200,900.00 |
| 2/15/2022 | $   200,900.00 |
| 3/15/2022 | $   200,900.00 |
| 4/15/2022 | $   188,650.00 |
| 5/15/2022 | $   360,850.00 |
| 6/15/2022 | $   360,850.00 |
| 7/15/2022 | $   172,200.00 |
| 8/15/2022 | $   161,700.00 |
| 9/15/2022 | $   161,700.00 |
| 10/15/2022 | $   161,700.00 |
| **Total** | **$3,339,000.00** |

Pg. 1

Compute North LLC ("Compute North") agrees to acquire and sell to Customer, and Customer agrees to buy from Compute North, the cryptocurrency mining hardware identified above (the "Acquired Hardware"). Consistent with the payment schedule set forth below, a deposit equal to twenty five percent (25%) of the estimated total amount due, exclusive of taxes, tariffs and shipping, for the Acquired Hardware shall be due and payable by 5pm Central Time on November 15, 2021. Legal title to the Acquired Hardware only shall transfer to Customer when all amounts due **for such Acquired Hardware** have been paid in full. Compute North may terminate this Agreement upon written notice to Customer if Customer fails to pay when due any amounts owed hereunder. Deposit payments are due based on the outlined below:

Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware, that all implied warranties are waived, and the only warranties for the Acquired Hardware are the warranties, if any, offered or made by the manufacturers thereof. Compute North will host the equipment at a Compute North hosting facility upon delivery.

Customer acknowledges and agrees that Compute North is procuring the Acquired Hardware for and on behalf of Customer from Bitmain and that Compute North is not responsible, and shall have no liability to Customer, for manufacturer or shipping delays, order cancellations, adjustments, variances, or other fulfillment issues except as specifically set forth in this paragraph. If an order fulfillment issue arises, Compute North will make commercially reasonable efforts to work with Customer and Bitmain to resolve the issue and Compute North will refund to Customer any amounts refunded to it by Bitmain with respect thereto. If Bitmain cancels or otherwise fails to deliver Acquired Equipment, Compute North's sole and exclusive liability to Customer shall be to refund the fees paid by Customer to Compute North for such Acquired Equipment net of any amounts paid by Compute North with respect thereto that are not refunded by Bitmain.

Each party may at any time assign, transfer, delegate, or subcontract any or all of its rights or obligations under this Agreement upon giving written notice to the other party, and this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

All amounts payable under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties, and fees, including federal, state, and local taxes on manufacture, sales, gross income, receipts, occupation, and use not based on Compute North's income that arise out of this Agreement. If any deduction, withholding, or payment is required in any jurisdiction on amounts payable to Compute North, Customer shall indemnify and make Compute North whole for the full amount thereof.

This Agreement shall be effective as of the date on which it has been executed by both parties and shall continue until the earlier of the date on which it has been performed in full or it has been terminated as set provided herein. This Agreement constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding, including any prior master or colocation agreement, between them relating thereto. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control.

This Agreement shall be governed by and interpreted in accordance with the Laws of the State of Minnesota, excluding any conflicts of law rule or principle which might refer such construction to the laws of another state or country. Any dispute, claim, counterclaim, or controversy of any kind arising under or relating to this Agreement is and shall continue to be subject to the exclusive jurisdiction of the courts of the State of Minnesota or of the federal courts sitting in the State of Minnesota, and the parties submit to the jurisdiction of such courts in respect of any such action or proceeding brought in such courts. The parties waive, to the fullest extent permitted by Law, any objection that they may now or hereafter have to the laying of venue of any such action or proceeding in such courts and any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum. EACH PARTY HERETO

HEREBY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document. The parties may sign and transmit an electronic signature of this Agreement (whether by facsimile, pdf, email, or other electronic means), which signature shall be binding on the party whose name is contained therein.

**Compute North LLC**

By: _Kyle Wenzel_

Name: Kyle Wenzel

Its: CCO

Date: Dec 03, 2021

By: _Henry Robinson_

Name: Henry Robinson

Its: CEO

Date: Dec 03, 2021

# Signature Certificate

Document Ref.: ERW8R-BAIN8-HBPJN-NAMKF

Document signed by:



### Henry Robinson

Verified E-mail:
henry@decimalgroup.io

IP: 166.216.158.174   Date: 03 Dec 2021 14:21:03 UTC

*Henry Robinson*



### Kyle Wenzel

Verified E-mail:
kyle.wenzel@computenorth.com

IP: 174.20.70.218   Date: 03 Dec 2021 14:31:58 UTC

*Kyle Wenzel*

Document completed by all parties on:
03 Dec 2021 14:31:58 UTC
Page 1 of 1



Signed with PandaDoc.com

PandaDoc is a document workflow and certified eSignature
solution trusted by 25,000+ companies worldwide.



**Compute North**
**Equipment Order Agreement**

**Customer:**     Decimal Group

**Shipping Address:**     TBD Compute North Hosting Facility

| Equipment Type | Quantity | Unit Price (Est.) | Taxes/Tariffs/ Shipping (Est.) | Total Unit Price (Est.) |
|---|---|---|---|---|
| Bitmain S19XP 150T – July, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |
| Bitmain S19XP 150T – Aug, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |
| Bitmain S19XP 150T – Sept, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |
| Bitmain S19XP 150T – Oct, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |
| Bitmain S19XP 150T – Nov, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |
| Bitmain S19XP 150T – Dec, 2022 Batch | 50 | $11,700 | $260/miner | $598,000 |

Compute North LLC ("Compute North") agrees to acquire and sell to Customer, and Customer agrees to buy from Compute North, the cryptocurrency mining hardware identified above (the "Acquired Hardware"). Consistent with the payment schedule set forth below, a deposit equal to twenty five percent (25%) of the estimated total amount due, exclusive of taxes, tariffs and shipping, for the Acquired Hardware shall be due and payable by 2 p.m. Central Time on November 8, 2021. Legal title to the Acquired Hardware only shall transfer to Customer when all amounts due **for such Acquired Hardware** have been paid in full. Compute North may terminate this Agreement upon written notice to Customer if Customer fails to pay when due any amounts owed hereunder. Deposit payments are due based on the outlined below:

| Hardware Payment/invoice Schedule | | Amount |
|---|---|---|
| **25% Due by 11/8/2021** | | **$897,000.00** |
| 1/15/2022 | $ | 209,300.00 |
| 2/15/2022 | $ | 209,300.00 |
| 3/15/2022 | $ | 209,300.00 |
| 4/15/2022 | $ | 209,300.00 |
| 5/15/2022 | $ | 448,500.00 |
| 6/15/2022 | $ | 448,500.00 |
| 7/15/2022 | $ | 239,200.00 |
| 8/15/2022 | $ | 239,200.00 |
| 9/15/2022 | $ | 239,200.00 |
| 10/15/2022 | $ | 239,200.00 |
| **Total** | | **$3,588,000.00** |

Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware, that all implied warranties are waived, and the only warranties for the Acquired Hardware are the warranties, if any, offered or made by the manufacturers thereof. Compute North will host the equipment at a Compute North hosting facility upon delivery.

Customer acknowledges and agrees that Compute North is procuring the Acquired Hardware for and on behalf of Customer from Bitmain and that Compute North is not responsible, and shall have no liability to

Customer, for manufacturer or shipping delays, order cancellations, adjustments, variances, or other fulfillment issues except as specifically set forth in this paragraph. If an order fulfillment issue arises, Compute North will make commercially reasonable efforts to work with Customer and Bitmain to resolve the issue and Compute North will refund to Customer any amounts refunded to it by Bitmain with respect thereto. If Bitmain cancels or otherwise fails to deliver Acquired Equipment, Compute North's sole and exclusive liability to Customer shall be to refund the fees paid by Customer to Compute North for such Acquired Equipment net of any amounts paid by Compute North with respect thereto that are not refunded by Bitmain.

Each party may at any time assign, transfer, delegate, or subcontract any or all of its rights or obligations under this Agreement upon giving written notice to the other party, and this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

All amounts payable under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties, and fees, including federal, state, and local taxes on manufacture, sales, gross income, receipts, occupation, and use not based on Compute North's income that arise out of this Agreement. If any deduction, withholding, or payment is required in any jurisdiction on amounts payable to Compute North, Customer shall indemnify and make Compute North whole for the full amount thereof.

This Agreement shall be effective as of the date on which it has been executed by both parties and shall continue until the earlier of the date on which it has been performed in full or it has been terminated as set provided herein. This Agreement constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding, including any prior master or colocation agreement, between them relating thereto. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control.

This Agreement shall be governed by and interpreted in accordance with the Laws of the State of Minnesota, excluding any conflicts of law rule or principle which might refer such construction to the laws of another state or country. Any dispute, claim, counterclaim, or controversy of any kind arising under or relating to this Agreement is and shall continue to be subject to the exclusive jurisdiction of the courts of the State of Minnesota or of the federal courts sitting in the State of Minnesota, and the parties submit to the jurisdiction of such courts in respect of any such action or proceeding brought in such courts. The parties waive, to the fullest extent permitted by Law, any objection that they may now or hereafter have to the laying of venue of any such action or proceeding in such courts and any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum. EACH PARTY HERETO HEREBY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document. The parties may sign and transmit an electronic signature of this Agreement (whether by facsimile, pdf, email, or other electronic means), which signature shall be binding on the party whose name is contained therein.

**Compute North LLC**

By: _Kyle Wenzel_

Name: Kyle Wenzel

Its: CCO

Date: Nov 05, 2021

By: _Henry Robinson_

Name: Henry Robinson

Its: CEO

Date: Nov 05, 2021

Document Ref: WLUUJ-AKE6C-TZ6DH-REQGD

# Signature Certificate

Document Ref.: WLUUJ-AKE6C-TZ6DH-REQGD

Document signed by:



### Henry Robinson

Verified E-mail:
henry@decimalgroup.io



| IP: 96.242.79.229 | Date: 06 Nov 2021 00:48:40 UTC |
| --- | --- |



### Kyle Wenzel

Verified E-mail:
kyle.wenzel@computenorth.com

*Kyle Wenzel*

| IP: 174.20.70.218 | Date: 06 Nov 2021 02:51:26 UTC |
| --- | --- |

Document completed by all parties on:
06 Nov 2021 02:51:26 UTC
Page 1 of 1

Signed with PandaDoc.com

PandaDoc is a document workflow and certified eSignature solution trusted by 25,000+ companies worldwide.

