UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) Case No. 22-90273 (MI) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 889** |

**DECLARATION OF SCOTT TILLMAN,
INDEPENDENT DIRECTOR OF COMPUTE NORTH HOLDINGS, INC.,
IN SUPPORT OF THE DEBTORS' JOINT LIQUIDATING CHAPTER 11 PLAN**

I, Scott Tillman, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the manager of Pi Consulting, LLC, which provides, among other services, board representation for special situations. I am also the president and chief executive officer of Golden Northwest Aluminum Holding Corporation, which is developing the nation's largest project to integrate data centers with renewable energy and energy storage. In addition, I am the chief executive officer of Minerva Intelligence Inc., a Vancouver, Canada-based artificial intelligence company.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

2. I have over 20 years of distressed company and bankruptcy experience, including at Harbinger Capital, where I oversaw numerous bankruptcies in a principal capacity and chaired myriad *ad hoc* and official committees from 2003 through 2008. I subsequently served on the boards of several companies that went through the bankruptcy process, including Gawker Media Group. I have also overseen the prosecution of preference actions for a litigation trust and advised purchasers in asset sales under Section 363 of the Bankruptcy Code.

3. On August 8, 2022, I was appointed to Compute North Holding, Inc.'s board of directors, where I am a member of the committee of independent directors formed on July 20, 2022 (the "Independent Committee").

4. In that capacity, I respectfully submit this declaration in support of the *Third Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 889] (as amended from time to time, the "Plan") and, in particular, the "Debtor Release," as described in Section 9.3 of the Plan, insofar as it relates to the Debtors' officers and directors (the "D&O Release"). With the assistance of Debtors' counsel, I conducted an investigation to identify any potential causes of action worth pursuing that would come within the D&O Release.

I. **SCOPE OF INVESTIGATION**

5. It is my understanding that the Official Unsecured Creditors' Committee (the "UCC") initially expressed opposition to the D&O Release out of a concern that the Debtors may have valuable causes of action that would be released under the Plan.

6. I also understand the following:

   i. The D&O Release expressly carves out "any Causes of Action to the extent set forth on the Schedule of Retained Causes of Action" and any "claims or liabilities arising out of or relating to a Released Party's *actual fraud, willful*

2

   *misconduct, or gross negligence.*" *Supplemental Disclosure Regarding the Plan's Global Settlement* [Docket No. 715] at Ex. C.

 ii. The Debtors are all Delaware entities, and thus the fiduciary duties of their officers and directors are governed by Delaware law.

 iii. Under Delaware law, officers and directors owe two fiduciary duties—the duty of care and the duty of loyalty—and the standard of conduct is the same for both officers and directors.

 iv. A claim for breach of the duty of care requires a showing of "gross negligence," which, as noted above, is expressly carved out of the D&O Release. In other words, the Debtors' officers and directors are only being released from causes of action arising from simple negligence, which is not actionable as a breach of the duty of care in any event.

 v. In addition, Compute North Holdings, Inc.'s certificate of incorporation expressly exculpates the company's directors from all duty of care liability, as permitted under the Delaware General Corporation Law, and the affiliated Debtors are all LLCs that are "member managed" by Mining Project Wind Down LLC (f/k/a Compute North LLC.[2]

 vi. Under Delaware law, the duty of loyalty requires that the best interests of the corporation and the corporation's shareholders takes precedence over any

---

[2] Compute North Holdings, Inc.'s certificate of incorporation provides that "[t]o the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." The certificate of incorporation has included substantially the same language from the time it was originally filed in November 2020.

    interest held by an officer, director, or controlling shareholder that is not shared by the stockholders generally.

  vii. Any potential causes of action based on the "good faith" component of the duty of loyalty are not being released under the Plan given that "willful misconduct" is expressly carved out of the D&O Release, and under Delaware law, "bad faith" requires, at a minimum, willful misconduct.

  7. Accordingly, it was my view that the only causes of action that would be released under the Plan as originally proposed were causes of action arising from a non-willful (i.e., non-bad faith) breach of the duty of loyalty, and thus I focused my investigation on identifying any such potential causes of action. I note that Compute North believes it has causes of action against Rohit Shirole, Compute North's former vice president of business development, and that any such causes of action are captured in the Debtors' Schedule of Retained Causes of Action, thereby specifically carving them out of the D&O Release. *Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 683] at 53-54.

  8. I also investigated Compute North's payments to insider officers and directors in the one-year period before September 22, 2022 (the "Petition Date") to determine whether any of those payments are potentially avoidable under applicable provisions of the Bankruptcy Code.

  9. My investigation included document review and witness interviews. With the assistance of counsel, I interviewed (in some cases more than once) the following current and former Compute North officers and directors:

| Name | Position |
|---|---|
| Harold Eugene (Barry) Coulby | Chief Financial Officer (June 28, 2022 – present); Treasurer (May 2022 – present) |

4

| | |
|---|---|
| Tad W. Piper | Former Chief Financial Officer & Chief Strategy Officer (May 12, 2020 – June 28, 2022) |
| Edward Drake Harvey III | President & Chief Executive Officer (September 2022 – present); former Chief Operating Officer (August 2021 – September 2022) |
| Jason Stokes | Chief Legal Officer (April 2022 – present) |
| Kyle David Wenzel | Former Chief Commercial Officer (October 2021 – November 2022) |
| Spencer William Barron | Former Chief Administrative Officer (November 2021 – October 2022) |
| PJ Lee | Co-Founder; Chairman (August 2017 – present); Director (November 2020 – present); 23.2% shareholder of Compute North Holdings, Inc. |
| Dave Perrill | Former Chief Executive Officer (January 1, 2020 – September 6, 2022); Director (November 2020 – present); 24.4% shareholder of Compute North Holdings, Inc. |
| Jose Lima | Director (November 2020 – present) |
| Eli Scher | Director (March 2021 – present) |

10. I attempted through counsel to schedule an interview with a representative of Sunbelt Solomon Services LLC in its capacity as a member of the UCC, but Sunbelt declined to participate in the investigation.

## II. FINDINGS

11. As a result of my investigation, I have concluded that the D&O Release set forth in the Plan is justified. In general, I determined that there were no colorable claims against any of the individuals identified on Schedule 1.1.89 of the Plan. I also investigated and gave significant consideration and deliberation to whether any claims existed against current directors or officers of the Debtors who are not identified on Schedule 1.1.89 of the Plan. I reviewed any circumstances and transactions that could potentially raise duty of loyalty issues in detail to ensure that they were fair and reasonable from the Debtors' perspective, that Debtors received the goods or services for which they contracted, that the goods and services were provided at market rates, and that the Debtors received fair consideration in connection with these transactions. In my judgment as an

independent director, none of these circumstances would be worth pursuing in litigation, even assuming that any such circumstances amounted to a viable cause of action.

12. During the course of the investigation, the Debtors and the UCC continued to discuss the D&O Release and issues related to the Investigation. I understand that the UCC's opposition to the Plan has been resolved by negotiated modifications to the D&O Release as set forth in the Plan.

13. Notwithstanding the fact that the Debtors do not believe there are potential causes of action worth pursuing that would fall within the D&O Release as it was originally proposed, I am aware that the Debtors engaged in extensive negotiations with the UCC in an effort to resolve the UCC's opposition to the releases as originally proposed, in order to facilitate confirmation of the Plan. These hard-fought negotiations ultimately led to a compromise, as embodied in the Plan, whereby (a) officers and directors who served the Debtors prior to the Petition Date do not receive releases, (b) officers and directors of the Debtors on and after the Petition Date that are listed on Schedule 1.1.89 of the Plan will receive releases under the Plan except for conduct determined by the Court to have resulted from actual fraud, willful misconduct or gross negligence, and (c) officers and directors of the Debtors on and after of the Petition Date who are <u>not</u> listed on Schedule 1.1.89 of the Plan remain subject to claims by the Litigation Trust, but only up to the limits of coverage available under the Debtors' D&O Liability Insurance Policies.

14. Following extensive deliberation, the Debtors' board and management concluded that the compromise and settlement with the UCC embodied in the modified Plan is fair to and in the best interests of the Debtors, their creditors, and all other stakeholders. This compromise and settlement with the UCC would avoid a contested confirmation fight with the UCC and the risk and delay associated therewith. The compromise and settlement with the UCC also avoids

potentially costly litigation with the UCC over the scope of the releases to be granted under the Plan.

15. Consistent with these considerations and determinations, on January 29, 2023, the Debtors' board of directors authorized the filing of an amended Plan embodying the compromise and settlement with the UCC.

## III. CONCLUSION

16. For the reasons set forth herein, I believe that the Plan's inclusion of the D&O Release, as modified by the compromise and settlement with the UCC, reflects a sound exercise of Debtors' business judgment and is in the best interest of the Debtors' creditors. As such, I believe that the Plan should be confirmed by the Bankruptcy Court.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Dated:  February 8, 2023<br>Portland, Oregon | Respectfully submitted,<br><br>*/s/ Scott Tillman*<br>Scott Tillman<br>Independent Director of Compute North Holdings, Inc. |