UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) Case No. 22-90273 (MI) |
| Debtors. | ) (Jointly Administered) |

**DECLARATION OF RYAN MERSCH IN SUPPORT OF
(I) FINAL APPROVAL OF DISCLOSURE STATEMENT,
(II) CONFIRMATION OF THIRD AMENDED JOINT LIQUIDATING
CHAPTER 11 PLAN OF MINING PROJECT WIND DOWN HOLDINGS, INC.
(F/K/A COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES
AND (III) THE DEBTORS' OMNIBUS REPLY TO OBJECTIONS THERETO**

I, Ryan Mersch, pursuant to 28 U.S.C. section 1746, under penalty of perjury declare as follows:

1. I am a Senior Director of Portage Point Partners, LLC ("Portage Point"), the financial advisor to the Debtors in these Chapter 11 Cases. As part of my employment and service,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

I have become familiar with the history, day-to-day operations, business, and financial affairs of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the *Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto*, filed contemporaneously herewith (the "Confirmation Memorandum"), and in support of confirmation of the *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 576] (the "Initial Plan"), as amended by the *Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 665] (the "First Amended Plan,"), the *Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 691] (the "Second Amended Plan"), and the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [Docket No. 889] (the "Third Amended Plan", and together with the Initial Plan, the First Amended Plan, the Second Amended Plan, and as may further be amended, modified, or supplemented from time to time, the "Plan"),[2] including the Global Settlement (as defined below) contemplated thereunder.

3. Except where specifically noted,[3] the statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from members of the Debtors'

---

[2] Capitalized terms used but not defined herein have the meanings set forth in the Plan or the Confirmation Memorandum, as applicable.
[3] Certain of the disclosures herein relate to matters within the personal knowledge of employees of the Debtors or other professionals at Portage Point and are based on information provided by such individuals.

2

management team or the Debtors' advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## QUALIFICATIONS

4. I am a Senior Director at Portage Point, which I joined in 2017 and which has its principal place of business at 300 North LaSalle Drive, Suite 1420, Chicago, Illinois 60654. At Portage Point, I have worked directly with companies and their management teams to help stabilize financial and operational performance by developing and implementing comprehensive profitability, working capital and liquidity management plans. Prior to joining Portage Point, I was an Investment Banking Analyst in the Mergers & Acquisitions Group at Lazard where I focused on valuation services and strategic alternative assessments. I hold a B.S. in Finance from the Kelley School of Business at Indiana University and am a member of the Turnaround Management Association.

5. I have experience handling complex financial and other restructuring matters for a variety of companies (distressed or otherwise and both in and out of court) across a wide spectrum of industries. My areas of expertise include, among other things, (a) advising on financial and operational restructuring strategies, (b) sizing, structuring, raising, and executing all aspects of financing transactions, including distressed and debtor-in-possession financings, (c) facilitating sale processes both in and out of court for companies undergoing financial distress, (d) liquidity management and forecasting, contingency planning, financial modeling, developing and implementing performance improvement initiatives, and (e) complex in-court and out-of-court restructurings.

## BACKGROUND

6. In my role as a Senior Director, I have become well acquainted with, and involved in various aspects of, the Debtors' operations, financial affairs, and systems, including the Plan,

3

the Global Settlement, and the Wind-Down Transactions contemplated therein. As a result of my knowledge and understanding of the Debtors' financial history and business operations, as well as my training and experience in the reorganization of distressed companies, I am qualified to testify regarding the statements made herein.

7. Portage Point is a restructuring and turnaround management firm whose professionals have a wealth of experience in providing financial advisory services in a variety of complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Portage Point's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. Portage Point has provided restructuring or crisis management services in numerous large cases, including but not limited to: *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 9, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC,* No. 21-10474 (MFW) (Bankr. D. Del. Mar. 29, 2021); *In re Bouchard Transportation, Co., Inc.,* No. 20-34682 (DRJ) (Bankr. S.D. Tex. Oct. 22, 2020); *In re APC Automotive Technologies Intermediate Holdings, LLC,* No. 20-11466 (CSS) (Bankr. D. Del. June 23, 2020); *In re Hornbeck Offshore Services, LLC,* No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems,* No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics,* No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.,* No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.,* No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019); *In re The Financial Oversight and Management Board for Puerto Rico, as a representative of Puerto Rico Electric Power Authority,* No. 17-4780 (LTS) (Bankr. D.P.R. July 3, 2017). I personally provided services in the following cases: *In re Alex and Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. June 9, 2021); *In re Alamo*

4

*Drafthouse Cinemas Holdings, LLC,* No. 21-10474 (MFW) (Bankr. D. Del. Mar. 29, 2021); *In re Hornbeck Offshore Services, LLC,* No. 20-32685 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re Dura Automotive Systems,* No. 19-12378 (KBO) (Bankr. D. Del. Oct. 17, 2019); *In re Melinta Therapeutics,* No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Loot Crate, Inc.,* No. 19-11791 (BLS) (Bankr. D. Del. Sept. 18, 2019); *In re Total Finance Investment Inc.*, No. 19-03734 (CAD) (Bankr. N.D. Ill. Mar. 14, 2019).

8. Since approximately July 5, 2022, Portage Point has provided services to the Debtors as financial advisor in connection with their restructuring efforts. In providing such pre- and post-petition professional services to the Debtors, Portage Point has become familiar with the Debtors and their businesses, including the Debtors' business and financial affairs, capital structure, day-to-day operations, and books and records. Having worked closely with the Debtors' management and their other advisors, Portage Point has developed relevant experience and expertise regarding the Debtors that has assisted it in providing effective and efficient services to the Debtors, including in these chapter 11 cases.

9. As a professional retained by the Debtors in these Chapter 11 Cases, Portage Point is charging for services provided in this matter, but I am not being specifically compensated for providing this Declaration or testimony. I am authorized to submit this Declaration on behalf of the Debtors.

## CONFIRMATION REQUIREMENTS

10. Based on my personal involvement and on discussions with the Debtors' other advisors and on information provided by the Debtors' counsel, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, that the Plan and the Global Settlement are the product of extensive, good faith, arm's-length negotiations among the Debtors and their various stakeholders, that the Plan is proposed in good faith, and that the Debtors, acting through their

5

officers, directors, and professionals, have conducted themselves in a manner that complies with applicable law in relation to the formulation and negotiation of the Plan. All parties diligently worked towards an outcome that maximizes the value of the Debtors' estates for the benefit of stakeholders.

11. I understand that the Plan is the product of vital settlements negotiated between the Debtors and key stakeholders, such as the Official Committee of Unsecured Creditors of the Debtors (the "Committee") and a number of key creditors. The Debtors reached a compromise with the Committee which resulted in the Committee fully supporting the Plan and recommending unsecured creditors entitled to vote on the Plan to vote to accept.[4] Furthermore, during the days leading up to the Voting Deadline, the Debtors reached settlements of the significant claims asserted by RK Mission Critical LLC and Marathon Digital Holdings, Inc., one of the Debtors' largest customers, creditors and equity holders. These settlements resolved more than $130 million of disputed Claims asserted by these parties, who have now agreed to support the Plan. In addition, the Debtors recently reached settlements with (i) US Digital Mining Texas LLC, (ii) Digital Alchemy LLC, (iii) GH Effect, Inc., (iv) Power Asset Recovery Corporation, (v) Alder BTC Holdings LLC, Alder Opportunity LP, and Alder SPV I LLC, (vi) NBTC Limited, (vii) MP2 Energy Texas LLC d/b/a Shell Energy Solutions, and (viii) TWC Financial LLC, with each of these parties also agreeing to support the Plan. These hard-fought and carefully negotiated settlements between the Debtors, the Committee, and key creditors underscore the fact that this fully consensual Plan embodies a global settlement (the "Global Settlement").

---

[4] *Notice of Committee Recommendation to Unsecured Creditors to Vote to Accept the Debtors' Chapter 11 Plan* [Docket No. 888] (the "Committee Statement in Support").

**I.       The Plan Satisfies the Best Interests Test (11 U.S.C. § 1129(a)(7)).**

12.     In order to determine whether the Plan meets the "best interests" test, certain of the professionals retained by the Debtors, including Portage Point, as the Debtors' financial advisor, and the Debtors' management prepared an analysis that estimates recoveries for members of each of the Classes deemed to reject the Plan (collectively, the "<u>Deemed Rejecting Classes</u>") in a hypothetical chapter 7 liquidation (the "<u>Liquidation Analysis</u>").  Portage Point, the Debtors' management and certain retained professionals also prepared an analysis estimating recoveries under the proposed Plan, then compared the recoveries in the Liquidation Analysis to the estimated recoveries under the Plan.  The projected recoveries for the Deemed Rejecting Classes under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.

13.     Accordingly, based on this Liquidation Analysis, and the assumptions included therein, I believe that the value of any distributions if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be no greater than the value of distributions under the Plan.  A chapter 7 proceeding would do nothing more than create additional costs and further delay associated with converting to a chapter 7 liquidation.  These additional costs would likely include a percentage fee based on disbursements, as well as additional professional fees associated with a chapter 7 trustee selecting advisors who are unfamiliar with the Debtors' business, creditors, and assets.  While information regarding the additional costs are speculative, the costs are likely higher and more burdensome for the Debtors' estates than the proposed Plan (which does not have such incremental costs).  Moreover, given the highly specialized nature of many of the Debtors' remaining assets, which include items such as bitcoin mining containers, it is unlikely that a chapter 7 trustee would be able to realize sale proceeds that come close to meeting or exceeding those that can be achieved under a Plan that proposes to liquidate the Debtors' assets in a value-maximizing manner.

14. As a result, I believe that the Plan satisfies the "best interests" test as set forth in section 1129(a)(7) of the Bankruptcy Code.

## II. The Plan Is Feasible (11 U.S.C. § 1129(a)(11)).

15. It is my understanding, based on conversations with the Debtors' counsel, that section 1129(a)(11) of the Bankruptcy Code permits a plan to be confirmed only if it is feasible, i.e., if the Debtors will be able to make all payments required under the plan and the Debtors' reorganization is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan. Here, a liquidation of all assets of the Debtors is proposed in the Plan. The Plan provides for the distribution of the proceeds from the sale of all of the Debtors' assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Any assets remaining in the Debtors' Estates as of the Effective Date will vest in the Reorganized Debtors or the Litigation Trust, as the case may be, for the administration, liquidation and distribution by the Plan Administrator, in accordance with the Plan and the Plan Administrator Agreement. Since none of the requirements for carrying out the Plan are contingent upon future, uncertain events, and the Plan provides fixed governance mechanisms for both the Plan Administrator Agreement and the Litigation Trust Agreement, I believe the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## **OBJECTIONS**

16. I understand that on February 1, 2023, Corpus Christi Energy Park, LLC ("CCEP"), filed an objection (the "Bootstrap Objection") and that the Bootstrap Objection focuses on the fact that the Plan separately classifies claims asserted against Debtor Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) ("CNCC") in Class 3A.

17. I understand that section 1122 of the Bankruptcy Code requires that claims within a class must be substantially similar. CCEP's claims are not substantially similar to the claims in Class 3 because they are asserted against a Debtor with no assets to distribute. As a result of the actions taken by CCEP during these Chapter 11 Cases, there are no proceeds from the assets of CNCC to distribute. Therefore, I believe the Plan satisfies the Bankruptcy Code classification requirements, and likewise, does not discriminate unfairly because it provides CCEP exactly what it is entitled to: no recovery from the Debtor that is liable on the claim because that Debtor has no assets to distribute.

18. Moreover, CCEP's argument that the Plan runs afoul of Bankruptcy Code section 1129(a)(7) (by providing creditors in that class less than they would receive under chapter 7) is incorrect. As noted, there are no assets to distribute to Holders of Claims in Class 3A, whether under the Plan or in a chapter 7 liquidation. The zero recovery Class 3A creditors receive under the Plan is the same zero recovery they would receive under chapter 7.

19. Lastly, I believe CCEP's argument that the Disclosure Statement does not contain "adequate information" is misplaced. The Disclosure Statement clearly explains that there are no anticipated cash proceeds from the Corpus Christi Project, and that therefore, creditors in Class 3A are not entitled to any recovery. Regarding the consolidation of the various Debtor entities, the Disclosure Statement states that the Wind-Down Transactions will be as described in the Wind-Down Transactions Memorandum. The Disclosure Statement accurately reflects the Plan and the treatment of Claims and Interests against the Debtors' Estates, therefore, I understand no further disclosure regarding the Corpus Christi Project is required to satisfy Bankruptcy Code section 1125.

20. For these reasons, I believe the Bootstrap Objection should be overruled.

21. I understand that on February 1, 2023, Decimal Digital Currency I, LLC also filed an objection to the Plan (the "Decimal Objection"),[5] arguing that the proceeds from the sale of certain mining equipment in which Decimal asserts an ownership interest is a basis for sources of Plan funding. That statement is incorrect. Decimal had placed an order with the Debtors for mining equipment prior to the Petition Date. The Debtors source mining equipment that they offer for resale from a supplier in Asia. Any equipment available for resale to Decimal has been in production or in transit during these Chapter 11 Cases and given the fact that it has not even cleared US Customs as of the date of this Declaration it was never included in the Debtors' liquidation analysis as a source of distributable value.

22. For these reasons, I believe that the Decimal Objection should be overruled.

[*Remainder of Page Intentionally Left Blank*]

---

[5] *Decimal Digital Currency I, LLC's (I) Objection to (A) Confirmation of the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (B) Final Approval of the Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates and (II) Reservation of Rights* [Docket No. 899].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge information, and belief.

Dated: February 8, 2023
      Chicago, Illinois

Respectfully submitted,

*/s/ Ryan Mersch*
Ryan Mersch
Senior Director
Portage Point Partners