IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § § § | Chapter 11 |
| **MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.),** *et al.*, [1] | § § § § § | Case No. 22-90273-MI |
| Debtors. | § § § | (Jointly Administered) |

### DEBTORS' OBJECTION TO CLAIM NO. 42 OF BITNILE, INC. FOR CONTRACT REJECTION DAMAGES

**This is an objection to your claim(s). This objection asks the Court to disallow the claim(s) that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claim may be disallowed without a hearing.**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty days from the date this motion was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**

**A hearing will be conducted on this matter on April 10, 2023 at 10:00 a.m. in Courtroom 404, 4th floor, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

**Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), and its above-captioned affiliates as debtors and debtors in possession (collectively, the "**Debtors**"), hereby file this *Objection to Claim No. 42 of BitNile, for Contract Rejection Damages* (the "**Objection**"), and in support thereof, the Debtors respectfully represent as follows:

## I.     Relief Requested

1. By this Objection, the Debtors seek entry of an order, substantially in the form attached hereto (the "**Order**") disallowing proof of claim number 42 filed by BitNile, Inc. in the amount of $21,067,505.05 (the "**Rejection Claim**"). The Debtors have analyzed the Claim in accordance with their duties as debtors in possession under section 1107(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and based on this review, the Debtors have determined that the Rejection Claim should be disallowed in its entirety.

2. In support of this Objection, the Debtors submit the *Declaration of Ryan Mersch in Support of the Debtors' Objection to Claim No. 42 of BitNile, Inc. for Contract Rejection Damages* (the "**Mersch Declaration**") attached hereto as **Exhibit A**.

## II.     Jurisdiction and Venue

3. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This Court can hear and determine this matter in accordance with 28 U.S.C. § 157 and the standing order of reference of bankruptcy cases and proceedings in this District. This matter is a core proceeding, and venue for this Objection is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Bankruptcy Code section 502, Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedures, and Local Bankruptcy Rule 3007-1.

### III. Background

5. On September 22, 2022 (the **"Petition Date"**) the Debtors filed their voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 bankruptcy cases (the **"Cases"**).

6. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. No trustee or examiner has been appointed in these Cases.

7. On October 6, 2022 the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**") in these Cases [Docket. No 139].

8. Additional factual background and information regarding the Debtors, including their business operations, their prepetition corporate and capital structure, the events leading to the commencement of these Cases are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer, and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "**First Day Declaration**").

9. On September 26, 2022, the Court entered its *Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for*

*Payment Under Section 503(b)(9), and (IV) Granting Related Relief* [Docket No. 86] ("**Bar Date Order**"). Among other things, the Bar Date Order set a deadline for all persons or entities (excluding governmental units) to file proofs of claim in the Debtors' cases on or before November 23 2022 (the "**Claims Bar Date**").

10. On October 28, 2022, the Debtors filed their schedules ("**Schedules**") in these Cases.

11. On November 16, 2022, claimant BitNile, Inc. ("**BitNile**") filed proof of claim number 10060 in the amount of $2,124,493.00 against the estate of debtor Compute North, LLC.

12. On November 23, 2022, the Debtors filed their *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 576] (as amended from time to time, the "**Plan**").

13. On January 19, 2023, the Debtors filed their *Objection to Claim No. 10060 of BitNile, Inc.* [Docket No. 846], alleging that there was no contractual basis or other basis for BitNile to recover its initial deposit from the Debtors or any related storage or shipping costs as part of its claim number 10060 and seeking disallowance in full of BitNile's claim number 10060.

14. On February 1, 2023, BitNile filed proof of claim number 42 in the amount of $21,067,505.05 on account of "[c]ontract rejection damages" and intending to supersede its prior claim number 10060. *See* Claim No. 42 at p. 1.

### IV. Claims Reconciliation Process

15. In order to maximize the return to holders of claims under the Plan, the Debtors, in accordance with their duties as debtors in possession, have, along with their professional advisors, been diligently reviewing the schedules and all proofs of claim filed against them in these Cases, along with the Debtors' books and records and supporting documentation, if any, provided by

claimants in support of their claims. Based on their review, and for the reasons set forth below, the Debtors have determined that the Rejection Claim was filed in an invalid amount and should be reduced to $1,006,004.

16. The Debtors have previously filed their *First Omnibus Objection to Certain Proofs of Claim (Amended Claims, Duplicate Claims)* [Docket No. 814], and their *Second Omnibus Objection to Certain Proofs of Claim (Equity Interests, Satisfied Claims)* [Docket No. 815] seeking the disallowance of certain claims that have been identified as duplicates, that have been amended by other claims filed by the same claimant, and that are equity interests rather than claims, as well as filed objections to individual proofs of claim seeking disallowance, reclassification or subordination of such claims, as appropriate, for the reasons stated in the objections.

### V. Objection

17. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If such objection to a claim is made, then "the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b). The burden of proof is on the objecting party to produce sufficient evidence to overcome the *prima facie* effect of the claim. *See In re O'Conner*, 153 F.3d 258, 260 (5th Cir. 1998). If the objecting party succeeds, the burden shifts to the party asserting the claim, who must then establish the validity of the claim by a preponderance of the evidence. *Id.* The ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context. *See In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005).

18. Rule 3001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") provides that a "proof of claim executed and filed in accordance with these rules shall constitute

prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Bankruptcy Rule 3001 is designed to provide the debtor with "fair notice of the conduct, transaction and occurrences that form the basis of the claim." *In re Sandifer*, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004).

19. In order for a proof of claim to be sufficient to establish *prima facia* validity under Bankruptcy Rule 3001, it must: (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be based upon facts which would allow, as a matter of equity, to have the document accepted as a proof of claim. *See In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) (citing *First National Bank of Fayetteville, Arkansas v. Circle J Dairy, Inc. (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 299-300 (W.D. Ark. 1989) and *In re Scholz*, 57 B.R. 259 (Bankr. N.D. Ohio 1986)).

20. A proof of claim loses the presumption of prima facie validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that are essential to the claim's legal sufficiency. *See In re Fidelity Holding Co., Ltd*., 837 F.2d 696, 698 (5th Cir. 1988) (holding "[if] evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence'"). Once such an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence. *Id*. Despite this shifting burden during the claim objection process, "the ultimate burden of proof always lies with the claimant." *Id.*
FED R. BANKR. P. 3007(d).

21. BitNile's Rejection Claim, a copy of which is attached hereto as **Exhibit B**, is asserted in the total amount of $21,067,505.05, consisting of the following alleged amounts:

| Category | Amount |
|---|---|
| Initial Deposit | $2,012,088.00 |
| Storage Fees Incurred to date | $22,481.70 |
| Estimated Additional Storage Fees expected to be incurred through May 2023 | $20,000.00 |
| Initial moving fees to Wolf Hollow Facility | $90,405.00 |
| Estimated moving fees from Wolf Hollow Facility | $68,072.00 |
| Estimated packaging costs to ship mining equipment | $TBD |
| Lost profits from October 1, 2022 through May 2023 | $229,003.95 |
| Estimated cover damages (July 1, 2023 through September 30, 2027) | $18,625,454.40 |
| Total | $21,067,505.05 |

*See* Exhibit B at pp. 2-3.

22.  With respect to the initial deposit, the Master Agreement between BitNile and the Debtors (attached hereto as **Exhibit C**) expressly provides that deposits under the agreement are "non-transferrable under any circumstance and are not refundable" except under certain conditions not applicable to BitNile or its deposit. *See* Exhibit C at section 5.1. BitNile is not entitled to a refund of its deposit. As such, BitNile's Claim, to the extent it seeks a refund of its initial deposit, should be disallowed.

23.  With respect to the remainder of BitNile's Rejection Claim for costs related to storage fees (both incurred and estimated), moving fees (both incurred and estimated), estimated packaging fees, lost profits and estimated cover damages – all such claimed amounts are consequential damages that are not recoverable pursuant to the Master Agreement. Section 11.3 of the Master Agreement reads as follows:

> IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, **FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, RELIANCE, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF BUSINESS, OR COST OF COVER OF ANY KIND OR NATURE WHATSOEVER**, ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY THEREOF. NOTWITHSTANDING ANYTHING

> TO THE CONTRARY IN THIS AGREEMENT, COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE (INCLUDING ATTORNEYS' FEES), SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER FOR THE SERVICE MONTH DURING WHICH THE EVENT GIVING RISE TO THE CLAIM OCCURRED.

*See* Exhibit C a section 11.3 (emphasis added). The Master Agreement between BitNile and the Debtors is to be interpreted pursuant to New York law. *See* Exhibit C a section 13.7.

24. Under applicable New York law, consequential damages occur when "the non-breaching party 'suffers loss of profits on collateral business arrangements,' and seeks 'to recover lost profits from lost sales to third-parties that [were] not governed' by the contract." *In re ADI Liquidation Inc.*, 555 B.R. 423,432 (Bankr. D. Del. 2016) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) and *Compania Embotelladora del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009).

25. Unlike direct damages, which are the value of the performance promised, and "flow[ ] as a natural and probable consequence of the breach," consequential damages are "one step removed from the naked performance promised by the [debtor]. *Id.* (quoting *Schonfeld v. Hilliard,* 218 F.3d 164, 175 (2d Cir. 2000) and *Am. List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38, 44, 550 N.Y.S.2d 590, 549 N.E.2d 1161 (1989). In other words, direct damages emanate from what comprises the "contract price" as evidenced by the plain language of the contract, whereas consequential damages emanate from losses that were incurred a step beyond the business arrangements of the contract itself. *Id.*

26. Other than the initial deposit (which is not recoverable for the reasons stated above) the remainder costs and fees sought under the Rejection Claim are exactly these sorts of

consequential damages: those that are one or more steps removed from the performance promised by the Debtor under the Master Agreement, and which were expressly disclaimed by both parties under the Master Agreement.

27. Under applicable New York law, BitNile expressly agreed with the Debtors that neither party would be liable to the other for any consequential, indirect, incidental or other damages that were not expressly related to the subject matter of the Master Agreement. Under these exact circumstances, such consequential damages (specifically including lost profits) have been held to be not recoverable by a creditor as part of a rejection damages claim. *See In re ADI Liquidation Inc.*, 555 B.R. at 440.

28. The Debtors propose that the Rejection Claim be reduced to an amount equal to what the parties agreed upon as liquidated damages[2] pursuant to the Master Agreement at sections 11.3 and 11.4, which is "a refund of any fees paid to Compute North for the service month during which the nonperformance occurred." *See* Exhibit C at section 11.4. This amount would be equal to one month's worth of hosting fees under the Master Agreement, or half of the $2,012,088 initial deposit that is sought under the Rejection Claim – a total of $1,006,044.

29. None of amounts sought under BitNitle's Rejection Claim is recoverable by BitNile as rejection damages or otherwise; however, the Debtors submit that a reduction of BitNile's claim to $1,006,044 represents the lost benefit of BitNile's bargain that it agreed to under the Master Agreement, and its Rejection Claim should be accordingly reduced to this amount.

## VI. Reservation of Rights

---

[2] The Debtors acknowledge that the Bankruptcy Court in this District has previously held that when a contract is rejected by a debtor, the liquidated damages portion of that contract is also rejected, and may not be relied upon to estimate the value of a claim for temporary allowance. *In re TransAmerica Nat. Gas. Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987). However, that same Court also stated that, while not enforceable or controlling for estimation purposes, the liquidated damages provision of a rejected executory contract "does provide some guidance as to the intention of [the] parties at the time of their contract," and can be taken into account by the Court in estimating the creditor's claim, for example, for purposes of Rule 3018. Id. at 668.

30. This Objection is not limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Rejection Claim on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against the Debtors; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; or (e) a waiver of the Debtors' rights under the Plan, the Bankruptcy Code or any other applicable law.

## VII. Notice

31. Notice of this Objection shall be provided: (a) via Court ECF notification upon all parties in these Cases who are entitled to receive such notification; and (b) via first-class US Mail upon the claimant at the address of the party designated to receive notice on the proof of claim form in accordance with Bankruptcy Rule 3007. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Objection is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto: (i) sustaining the Objection to BitNile's Rejection Claim; (ii) reducing BitNile's Rejection Claim to $1,006,044; and (iii) awarding the Debtors such other and further relief as may be just and proper.

Respectfully submitted: February 13, 2023

                                          **FERGUSON BRASWELL**
                                          **FRASER KUBASTA PC**

                                          By: /s/ *Rachael L. Smiley*

        Rachael L. Smiley (State Bar No. 24066158)
        2500 Dallas Parkway, Suite 600
        Plano, TX 75093
        Phone: 972-378-9111
        Fax:    972-378-9115
        rsmiley@fbfk.law

**EFFICIENCY COUNSEL**
**FOR DEBTORS**

-and-

**PAUL HASTINGS LLP**

By: */s/ James T. Grogan III*
James T. Grogan III (TX Bar No. 24027354)
Schlea Thomas (admitted *pro hac vice*)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com
       schleathomas@paulhastings.com

**COUNSEL TO DEBTORS AND**
**DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

I certify that on February 13, 2023 a copy of the foregoing document was served electronically on the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                */s/ Rachael L. Smiley*
                Rachael L. Smiley