IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re § § | | Chapter 11 |
| **MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.),** *et al.*, [1] § § § § § | | Case No. 22-90273-MI (Jointly Administered) |
| Debtors. § § | | Re: Docket No. 953 |

**DEBTORS' RESPONSE OPPOSED TO BITNILE, INC'S EMERGENCY MOTION UNDER BANKRUPTCY RULE 3018 FOR TEMPORARY ALLOWANCE OF CLASS 3 CLAIM FOR VOTING PURPOSES ONLY**

Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), and its above-captioned affiliates as debtors and debtors in possession (collectively, the "**Debtors**"), hereby file this *Response Opposed to BitNile Inc.'s Emergency Motion Under Bankruptcy Rule 3018 for Temporary Allowance of Class 3 Claim for Voting Purposes Only.* (the "**Response**"), and in support thereof, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

## I. Introduction

1. Through its 3018 Motion (defined herein), BitNile, Inc. ("**BitNile**") seeks temporary allowance of its claim for purposes of voting on the Debtor's Plan in BitNile's full alleged amount of over $21 million. As more fully set forth below, BitNile should not have its claim temporarily allowed for voting purpose in the full amount of $21 million. BitNile is not contractually entitled to any of the amounts it seeks under its claim. Such amounts are either expressly nonrefundable under the applicable contract, or they consequential damages that are not recoverable as contract rejection damages under the Bankruptcy Code and under applicable New York law that governs the contract between the BitNile and the Debtors. At most, BitNile's claim should be temporarily allowed for voting purposes in an amount not greater than what the parties contractually agreed would be the limit of the Debtors' liability under the contract – approximately $1,006,044.

## II. Background

2. On September 22, 2022 (the "**Petition Date**") the Debtors filed their voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 bankruptcy cases (the "**Cases**").

3. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. No trustee or examiner has been appointed in these Cases.

4. On October 6, 2022 the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**") in these Cases [Docket. No 139].

5. Additional factual background and information regarding the Debtors, including their business operations, their prepetition corporate and capital structure, the events leading to the

commencement of these Cases are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer, and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "**First Day Declaration**").

6. On November 16, 2022, BitNile filed proof of claim number 10060 in the amount of $2,124,493.00 against the estate of debtor Compute North, LLC.

7. On November 23, 2022, the Debtors filed their *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 576] (as amended from time to time, the "**Plan**").

8. On January 19, 2023, the Debtors filed their *Objection to Claim No. 10060 of BitNile, Inc.* [Docket No. 846], alleging that there was no contractual basis or other basis for BitNile to recover its initial deposit from the Debtors or any related storage or shipping costs as part of its claim number 10060 and seeking disallowance in full of BitNile's claim number 10060.

9. On February 1, 2023, BitNile filed proof of claim number 42 in the amount of $21,067,505.05 (the "**Claim**") on account of "[c]ontract rejection damages" and intending to supersede its prior claim number 10060. *See* Claim No. 42 at p. 1.

10. On February 10, 2023, BitNile filed its *Emergency Motion Under Bankruptcy Rule 3018 for Temporary Allowance of Class 3 Claim for Voting Purposes Only* [Docket No. 953] ("**3018 Motion**"), seeking temporary allowance of its Claim as a Class 3 claim in the full amount of $21,067,505.05 on an emergency basis for purposes of voting on the Debtors' Plan.

### III. Response

11. BitNile's Claim is largely based upon amounts that are not recoverable in accordance with the terms of the Master Agreement between BitNile and the Debtors. As such, it would not be reasonable or equitable to the Debtors' other creditors to permit BitNile to vote a

claim of over $21 million on the Debtors' Plan on account of a Claim that is grossly inflated in amount.[2]

12. BitNile's Claim, a copy of which is attached hereto as **Exhibit A**, is asserted in the total amount of $21,067,505.05, consisting of the following alleged amounts:

| Category | Amount |
|---|---|
| Initial Deposit | $2,012,088.00 |
| Storage Fees Incurred to date | $22,481.70 |
| Estimated Additional Storage Fees expected to be incurred through May 2023 | $20,000.00 |
| Initial moving fees to Wolf Hollow Facility | $90,405.00 |
| Estimated moving fees from Wolf Hollow Facility | $68,072.00 |
| Estimated packaging costs to ship mining equipment | $TBD |
| Lost profits from October 1, 2022 through May 2023 | $229,003.95 |
| Estimated cover damages (July 1, 2023 through September 30, 2027) | $18,625,454.40 |
| Total | $21,067,505.05 |

*See* Exhibit A at pp. 2-3.

13. With respect to the initial deposit of $2,012,088, the Master Agreement between BitNile and the Debtors (attached hereto as **Exhibit B**) expressly provides that deposits under the agreement are "non-transferrable under any circumstance and are not refundable" except under certain conditions not applicable to BitNile or its deposit. *See* Exhibit B at section 5.1. As such, BitNile is not entitled to a refund of its deposit, and its Claim is not valid with respect to this amount.

14. With respect to the remainder of BitNile's Claim in the amount of approximately $19,055,417 for costs related to storage fees (both incurred and estimated), moving fees (both incurred and estimated), estimated packaging fees, lost profits and estimated cover damages – all such claimed amounts are <u>consequential damages</u> that are not recoverable pursuant to the Master

---

[2] Contemporaneously herewith, the Debtors have filed their *Objection to Claim No. 42 of BitNile Inc. for Contract Rejection Damages* [Docket No. 964] (the "**Claim Objection**") seeking allowance of BitNile's Claim in the reduced amount of $1,006,044.00.

Agreement. Section 11.3 of the Master Agreement reads as follows:

> IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, **FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, RELIANCE, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF BUSINESS, OR COST OF COVER OF ANY KIND OR NATURE WHATSOEVER**, ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY THEREOF. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE (INCLUDING ATTORNEYS' FEES), SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER FOR THE SERVICE MONTH DURING WHICH THE EVENT GIVING RISE TO THE CLAIM OCCURRED.

*See* Exhibit B a section 11.3 (emphasis added). The Master Agreement between BitNile and the Debtors is to be interpreted pursuant to New York law. *See* Exhibit B a section 13.7.

15. Under applicable New York law, consequential damages occur when "the non-breaching party 'suffers loss of profits on collateral business arrangements," and seeks 'to recover lost profits from lost sales to third-parties that [were] not governed' by the contract." *In re ADI Liquidation Inc.*, 555 B.R. 423,432 (Bankr. D. Del. 2016) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir.2007) and *Compania Embotelladora del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F.Supp.2d 314, 322 (S.D.N.Y.2009).

16. Unlike direct damages, which are the value of the performance promised, and "flow[ ] as a natural and probable consequence of the breach," consequential damages are "one step removed from the naked performance promised by the [debtor]. *Id.* (quoting *Schonfeld v. Hilliard,* 218 F.3d 164, 175 (2d Cir. 2000) and *Am. List Corp. v. U.S. News & World Report, Inc.,*

75 N.Y.2d 38, 44, 550 N.Y.S.2d 590, 549 N.E.2d 1161 (1989). In other words, direct damages emanate from what comprises the "contract price" as evidenced by the plain language of the contract, whereas consequential damages emanate from losses that were incurred a step beyond the business arrangements of the contract itself. *Id.*

17. Other than the initial deposit (which is not recoverable for the reasons stated above) the remainder costs and fees sought under BitNile's Claim are exactly these sorts of consequential damages: those that are one or more steps removed from the performance promised by the Debtors under the Master Agreement, and which were expressly disclaimed by both parties under the Master Agreement.

18. Under applicable New York law, BitNile expressly agreed with the Debtors that neither party would be liable to the other for any consequential, indirect, incidental or other damages that were not expressly related to the subject matter of the Master Agreement. Under these exact circumstances, such consequential damages (specifically including lost profits) have been held to be not recoverable by a creditor as part of a rejection damages claim. *See In re ADI Liquidation Inc.*, 555 B.R. at 440.

19. Accordingly, the Debtors propose that the Claim be estimated for voting purposes in an amount equal to what the parties agreed upon as liquidated damages[3] pursuant to the Master Agreement at sections 11.3 and 11.4, which is "a refund of any fees paid to Compute North for the service month during which the nonperformance occurred." *See* Exhibit C at section 11.4. This

---

[3] The Debtors acknowledge that the Bankruptcy Court in this District has previously held that when a contract is rejected by a debtor, the liquidated damages portion of that contract is also rejected, and may not be relied upon to estimate the value of a claim for temporary allowance. *In re TransAmerica Nat. Gas. Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987). However, that same Court also stated that, while not enforceable or controlling for estimation purposes, the liquidated damages provision of a rejected executory contract "does provide some guidance as to the intention of [the] parties at the time of their contract," and can be taken into account by the Court in estimating the creditor's claim, for example, for purposes of Rule 3018. *Id.* at 668.

amount would be equal to one month's worth of hosting fees under the Master Agreement, or half of the $2,012,088 initial deposit that is sought under the Rejection Claim – a total of $1,006,044.

20. The Bankruptcy Court has "broad authority to determine whether to allow or disallow a claim for purposes of voting" under Bankruptcy Rule 3018. *In re Mangia Pizza Investments, LP*, 480 B.R. 669, 679 (Bankr. W.D. Tex. 2013). Various courts have developed factors to consider when determining whether to temporarily allow a claim for purposes of voting on a proposed plan. *Id.* Among the factors considered are (1) whether the objection to the claim at issue appears to be frivolous or without basis, (2) the effective power which the holder of the disputed claim may have to scuttle the reorganization proceeding, which is almost near completion, and (3) given the facts of that case, that the debtor was willing to preserve funds to pay the disputed claim under the terms of the plan in the event the claim was ultimately allowed. *Id. (*citing *In re Harmony Holdings, LLC,* 395 B.R. 350, 354 (Bankr. D.S.C. 2008).

21. The Claim Objection filed by the Debtors is not frivolous or without merit; quite the opposite, it provides a legal basis underscoring why BitNile cannot recover everything it seeks on account of its Claim. The Master Agreement contains detailed provisions regarding damages limitations that represent what the parties mutually agreed to. Accordingly, the Debtors propose that the Claim should be temporarily allowed for voting purposes in the amount of $1,006,044 ("**Proposed Temporary Allowed Amount**"). The Proposed Temporary Allowed Amount consists of one-half of the Initial Deposit of $2,012,088 sought under the Claim, and reflects one-month's worth of hosting fees, or the amount that BitNile would have been entitled as contractually-agreed upon damages pursuant to sections 11.3 and 11.4 of the Mater Agreement. *See* Exhibit B at section 11.3 and 11.4.[4] The Debtors submit that the Proposed Temporary Allowed

---

[4] The Debtors acknowledge that the Bankruptcy Court in this District has previously held that when a contract is rejected by a debtor, the liquidated damages portion of that contract is also rejected, and may not be relied upon to

Amount represents what the Debtors and BitNile intended to be the appropriate amount to compensate BitNile for the benefit of its bargain under the Master Agreement in the event of a breach, and is therefore the proper amount for the temporary allowance of its Claim under Rule 3018, if such Claim is to be temporarily allowed in any amount.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order: (i) temporarily allowing BitNile's Claim for voting purposes only in an amount not greater than $1,006,044; and (ii) awarding the Debtors such other and further relief as may be just and proper.

Respectfully submitted:  February 13, 2023

> **FERGUSON BRASWELL**
> **FRASER KUBASTA PC**
>
> By:  /s/ *Rachael L. Smiley*
> Rachael L. Smiley (State Bar No. 24066158)
> 2500 Dallas Parkway, Suite 600
> Plano, TX 75093
> Phone: 972-378-9111
> Fax:     972-378-9115
> rsmiley@fbfk.law
>
> **EFFICIENCY COUNSEL**
> **FOR DEBTORS**
>
> -and-
>
> **PAUL HASTINGS LLP**
>
> By:  /s/ *James T. Grogan III*
> James T. Grogan III (TX Bar No. 24027354)
> Schlea Thomas (admitted *pro hac vice*)
> 600 Travis Street, 58th Floor
> Houston, Texas 77002
> Telephone: (713) 860-7300
> Facsimile: (713) 353-3100
> Email: jamesgrogan@paulhastings.com

---

estimate the value of a claim for temporary allowance. *In re TransAmerica Nat. Gas. Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987).  However, that same Court also stated that, while not enforceable or controlling for estimation purposes, the liquidated damages provision of a rejected executory contract "does provide some guidance as to the intention of [the] parties at the time of their contract," and can be taken into account by the Court in estimating the creditor's claim for purposes of Rule 3018.  *Id*. at 668.

schleathomas@paulhastings.com

**COUNSEL TO DEBTORS AND
DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

I certify that on February 13, 2023 a copy of the foregoing document was served electronically on the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Rachael L. Smiley*
Rachael L. Smiley
