```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                        .
IN RE:                                  .  Case No. 22-90273
                                        .  Chapter 11
MINING PROJECT WIND DOWN                .
HOLDINGS INC. (F/K/A COMPUTE            .
NORTH HOLDINGS, INC.),                  .
et al.,                                 .
                                        .  515 Rusk Street
                                        .  Houston, TX 77002
                    Debtor.             .
                                        .  Tuesday, January 17, 2023
. . . . . . . . . . . . . . . .         .  11:30 a.m.


       TRANSCRIPT OF MOTION FOR RELIEF FROM STAY TO CONTINUE
     LITIGATION AGAINST CERTAIN DEBTORS. FEE AMOUNT $188 [342];
    EMERGENCY MOTION DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN
        ORDER AUTHORIZING (I) CHANGE OF CORPORATE NAMES AND
               (II) CHANGE OF CASE CAPTION [784]
      OBJECTION TO CLAIM NUMBER BY CLAIMANT ROHIT SHIROLE, ROHIT
               SHIROLE. (CLAIM NO. 10055) [816]
               BEFORE THE HONORABLE MARVIN ISGUR
               UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtor:
                        Paul Hastings LLP
                        By:  JAMES T. GROGAN, III, ESQ.
                             SCHLEA THOMAS, ESQ.
                        600 Travis Street, 58th Floor
                        Houston, TX 77002
                        (713) 860-7300

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:         Courtroom ECRO Personnel

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com


       Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1

```
TELEPHONIC APPEARANCES (Continued):


For the Official          McDermott, Will & Emery
Committee of Unsecured    By:  KRISTIN K. GOING, ESQ.
Creditors::               One Vanderbilt Avenue
                          New York, NY 10017-3852
                          (212) 547-5429


For Rohit Shirole:        Bassford Remele
                          By:  JEFFREY D. KLOBUCAR, ESQ.
                          Fifth Street Towers
                          100 South 5th Street, Suite 1500
                          Minneapolis, MN 66502-1254
                          (612) 376-1639


Also Present:             RYAN MERSCH
                          Portage Point Partners, LLC
```

1          (Proceedings commence at 11:30 a.m.)

2          THE COURT:  All right.  We just have one case in this

3   morning's 11:30 docket.  It is Compute North Holdings, Inc.

4   The case number is 22-90273.  Appearances have been made

5   electronically.  If you haven't yet made your electronic

6   appearance, please fill out the form when the hearing is over.

7   Anyone that wishes to speak at today's hearing, you can either

8   come forward if you're in court, or if you wish to speak on the

9   phone, please press five star.

10          Mr. Grogan, good morning.

11          MR. GROGAN:  Yeah, good morning, Your Honor.  James

12  Grogan from Paul Hastings on behalf of the debtors.  With me

13  here today is my colleague, Schlea Thomas.  Your Honor, the

14  first matter on is actually a motion filed by Rohit Shirole.

15  That'll be first on the docket, and then after that, Ms. Thomas

16  will present our emergency motion for change of corporate

17  names.

18          THE COURT:  Thank you.  Let me find Mr. Klobucar on

19  here.  Mr. Klobucar, is that you at 212-547-5429, or is that

20  someone else?

21          MS. GOING:  That's Kristin Going, Your Honor.

22          THE COURT:  Ms. Going, good morning.

23          MS. GOING:  Good morning.

24          THE COURT:  Mr. Klobucar, can I get you to press

25  five, star one time on your phone, please?  Well, hold on a

1   minute.  I'll find you.  It's not -- there we go.  Mr. -- is it

2   Klobucar?  Is that the right way to pronounce it, sir?

3           MR. KLOBUCAR:  That is correct, Your Honor.  Can you

4   hear me?  I'm using my headphones and I hope I'm audible.

5           THE COURT:  You're audible and clear, Mr. Klobucar.

6   Good morning.

7           MR. KLOBUCAR:  Wonderful.  Thank you.  Good morning,

8   Your Honor.

9           THE COURT:  Good morning.

10          MR. KLOBUCAR:  I'd like to note for the Court record

11  that my client, Mr. Shirole, is appearing here on the phone as

12  well just to listen in, as is my local counsel, Mike

13  Sutherland, from the Carrington Coleman firm in Dallas.

14          THE COURT:  Thank you.

15          MR. SUTHERLAND:  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          So, Mr. Klobucar, go ahead.

18          MR. KLOBUCAR:  Thank you, Your Honor.  As Mr. Grogan

19  noted, we're here this morning on the motion by Mr. Shirole for

20  relief from stay to continue his Minnesota State Court

21  litigation action in order to fully liquidate his claim.  I'll

22  give the Court a short background.

23          Mr. Shirole was a former officer and shareholder of

24  the debtors and was subject of a number of employment related

25  and other agreements with the debtors, including a commission

1   plan and a restricted stock agreement that are relevant to what

2   we're talking about here today.

3          At a minimum, as part of the commission agreement, my

4   client sold more than a billion dollars' worth of colocation

5   services and equipment for the debtors and earned substantial

6   commissions, before he was terminated by the debtors, by our

7   latest calculations of more than $11 million, which has been

8   withheld from him.

9          Rather than pay him, the debtors instead terminated

10  him purportedly for cause.  Mr. Shirole disputed that there was

11  any cause and has made demands under Minnesota law in a

12  Minnesota lawsuit for unpaid commission, which has yet to be

13  paid.  And notably, Your Honor, under Minnesota law, that

14  results in additional double damages that are automatic and

15  statutory, which brings his aspect of his claim to more than 20

16  million right off the bat.

17         Further, the debtor elected to and did, in fact,

18  repurchase his stock in the company, all but one share,

19  approximately four months after he was terminated and took

20  possession of those shares, but they never remitted him the

21  value of those shares, which are worth approximately

22  $14 million by my client's estimation.

23         And most importantly, Your Honor, Mr. Shirole has

24  alleged that the basis for this unfair and unlawful treatment

25  and wrongful termination, as well as any of the other items in

1  that complaint is racial animus.  So these are very serious

2  claims being raised by Mr. Shirole here in this case.

3        I do want to quickly clarify that Mr. Shirole is not

4  seeking to collect outside of the bankruptcy estate here,

5  except to the extent that there should be coverage applicable

6  to these claims.  He just seeks to continue his Minnesota

7  action to liquidate those claims against the debtors in front

8  of a Minnesota jury and otherwise proceed in his litigation.

9  So the debtors and the committee have obviously objected to the

10  motion on grounds that Mr. Shirole has failed to establish

11  cause.

12        Obviously, the Court's aware there's no definition of

13  cause and that's to be determined on a case-by-case basis.  The

14  fifth circuit hasn't adopted the Sonnax factors that are used

15  by the debtors and the committee, and used numerous methods to

16  determine cause, whether it's the Curtis factors on which we

17  relied, or the Johnson factors, or the Sonnax factors I think

18  is largely irrelevant because the Court can find whatever

19  factors it wants to support finding of cause here.

20        But for purposes of my response, Your Honor, I'll

21  address the Sonnax factors referenced by the debtors and the

22  committee, and I'll go on numerical order just to make it more

23  organized.

24        THE COURT:  Let me -- before we get into --

25        MR. KLOBUCAR:  I -- go ahead.

1          THE COURT:  I'm pretty familiar with the factors, of

2   course.  Tell me, as to the uninsured portion, because I didn't

3   understand what part of this might be insured in any event.  As

4   to the uninsured portion, what's the distribution rate out of

5   the case?  Because I thought it was a fairly low distribution

6   rate.

7          MR. KLOBUCAR:  Your Honor, I think you're right.

8   First of all, I think it's very uncertain as to whether or not

9   there is insurance coverage or not.  I requested in numerous

10  occasions from the debtor copies of policies, reservation of

11  rights letters, and information related to whether or not there

12  is anyone defending these claims on behalf of any insurer, and

13  I've thus far been stonewalled by the debtors.  I'm hoping that

14  that information will be provided, but I haven't yet received

15  it.

16         I would note that the committee, in its objection to

17  my motion, also indicates it has no idea whether there's

18  coverage, but I think, if I recall correctly from the

19  liquidation analysis and the disclosure statements, the

20  proposed distribution to unsecureds is between 4 and 30

21  percent, so there's quite a range here.  But with client's

22  claim numbers, that's still a substantial recovery depending on

23  what the insurance would cover, if there is any at all.

24         THE COURT:  So it seems to be generally the type of

25  claim that wouldn't be insured, but I don't want you to proceed

1  in the dark here.  What insurance policies do you want in order

2  to know what you've got?

3          MR. KLOBUCAR:  Your Honor, I've actually requested a

4  number of them.  I don't have the list with me, but I have sent

5  and had email communications with Mr. Grogan, as well as

6  Ms. Going in that respect, and I believe I've articulated

7  exactly which policies and other letters I'd like to see.  I

8  can certainly put that on the record for the Court, but I'd

9  have to go find it.

10         THE COURT:  Well, let me ask you, if it's Ms. Going,

11 has he requested insurance policies, and have they been

12 provided?

13         MS. GOING:  Your Honor, we are not in possession of

14 any insurance policies.  He did -- Mr. Klobucar asked the

15 committee if the committee was aware of any insurance, and we

16 told him, excuse me, that we were aware of and had seen D&O

17 policies, but --

18         THE COURT:  If he requested policies, have you given

19 him a written response that either says, here are the policies,

20 or, the policies that you requested don't exist?  I mean,

21 you've got to -- I don't care whether you're in possession of

22 them or not.  Somebody's in possession of them.  So they either

23 exist or they don't exist.  Have he -- has he gotten a written

24 response about that?

25         MR. KLOBUCAR:  Your Honor, this is Mr. Klobucar.  If

1    I might quickly interject.  I did request them from the

2    debtors.  Ms. Going, for the committee, did inform me that she

3    wasn't in possession of them, but I have made that request to

4    the debtor.

5              THE COURT:  I'm sorry.  I'm sorry.  Then who from the

6    debtor would know?  There we go.  I was thinking you were here

7    for the debtor, Ms. Goings (sic).  I apologize.

8              MR. GROGAN:  No worries, Your Honor.  James Grogan

9    for the debtor.

10             Your Honor, I believe we have provided the one that

11   we thought could possibly be applicable here, which was an

12   employment practices policy.  The D&O policy would not be

13   something that would cover --

14             THE COURT:  Well, has he requested the D&O policy?

15             MR. GROGAN:  I think he did, but actually --

16             THE COURT:  Well, why didn't you give it to him?

17             MR. GROGAN:  And I think we might have.  I think

18   early in the case, though, maybe it was on a professionalized

19   basis only, but I think I actually gave him the D&O policy.

20             THE COURT:  Well, I want to be sure that if he's

21   requested a policy, that he gets the policy.

22             MR. GROGAN:  I understand.  We -- but I think he's in

23   possession of the employment practices policy, which is really

24   the --

25             THE COURT:  But any policy he has requested he gets

1  to review to see if he thinks they're coverage.  You don't get

2  to review it and then not give it to him.  So did -- let's get

3  the list of what he's requested and either tell him they exist

4  and here they are or they don't exist.  I mean, maybe he's

5  requested something that doesn't exist.

6            Mr. Klobucar, have you gotten the employment

7  practices --

8            MR. KLOBUCAR:  Your Honor --

9            THE COURT:  -- policy at this point?

10            MR. KLOBUCAR:  I'm sorry, Your Honor.  I didn't mean

11  to cause too much consternation, but we did request a number of

12  policies, and I will look those up for you right now so that I

13  have the list.  I received a copy of an expired D&O policy that

14  was inapplicable, and then followed up with a request to the

15  debtors for EPL policies, excess policies, commercial policies,

16  theft policies, and other policies scheduled by the debtors as

17  being available.  And I also asked for an updated D&O policy to

18  make sure that there weren't changes in the endorsements and

19  other things, as well as reservation of rights letters and

20  other indications as to whether coverage had been tendered and

21  whether there were defense costs obviously which pertained to

22  whether or not my process in Minnesota would, in fact, impinge

23  upon and interfere with this particular case.

24            I have not yet received a response to that request

25  and have not received either an updated D&O or the EPL policy

1  to which Mr. Grogan is now referring.

2          THE COURT:  Roughly how long ago did you request

3  that?  And I don't want an exact date.  Was it more than a

4  month ago?

5          MR. KLOBUCAR:  It was not, Your Honor.  I believe

6  that my formal request for those other policies was about a

7  week ago.  It may, in fact, have actually been on the 10th,

8  Your Honor.

9          THE COURT:  Okay.  When do you expect your plan to be

10 confirmed, Mr. Grogan?

11          MR. GROGAN:  February 13, I think, is the date.

12          THE COURT:  And how do you then expect this claim to

13 get liquidated?

14          MR. GROGAN:  So, Your Honor, we filed an objection to

15 the claim at docket number 816.  In our view, the majority of

16 the proof of claim damages, Mr. Klobucar's numbers have shifted

17 from the claim, but the claim was filed in the amount of

18 $23 million, 14 million of which was the stock options or stock

19 awards which we referenced.  We objected to those on the basis

20 of Section 510(b) that they're subordinated securities claims.

21 We also filed an objection seeking to enforce the 502(b)(7) cap

22 on damages by an employee arising from termination of

23 employment, and so that would -- I think that will -- that

24 simple claims process, which should be fairly expedited, would

25 resolve the vast majority of the amounts at issue.

1          THE COURT:  This 502 or the subordination for

2   securities, purchase and sale of securities, if there's

3   insurance would it limit insurance?

4          MR. GROGAN:  It would, I think.  I -- you know, I may

5   be speaking out of turn, but I don't think the insurance

6   company is going to pay anything that's not owed.

7          THE COURT:  Well, they're owed.  They're simply not

8   allowed against the estate, and I don't know what that means

9   about insurance.  Let's --

10          MR. GROGAN:  I guess, you know, the other thing I

11   would add is we don't have the money to pay a Minnesota lawyer

12   to take on this matter right now.  I mean, this is -- it's

13   going to harm the other creditors in the case, and there's

14   really no reason to give Mr. Shirole special treatment.

15          THE COURT:  What I'd like to figure out is whether

16   there's insurance.  I would like to schedule a hearing much

17   sooner than March on your objection to claim and set that

18   simultaneously with a continued hearing on the motion for

19   relief from the stay so that I can have a better understanding

20   of what's going on.  Usually -- and I've never actually, to my

21   memory, had to confront this, if there's a limit within the

22   bankruptcy code, it doesn't limit an insurer's obligation to

23   pay the state law claim.  And -- but it may under these, and so

24   I -- but I don't know.  I don't want to guess about that and I

25   don't know it sitting right here.  And I assume that

 1  Mr. Klobucar may have arguments -- I don't need to hear them

 2  right now -- that the one-year limitation under 502(b) wouldn't

 3  apply to your client or whatever.

 4          What do you-all think if I give you a date in roughly

 5  30 days from now to come back either on a status for an

 6  evidentiary hearing on the objection to claim and the motion

 7  for relief from the stay once people can research these issues

 8  again?

 9          Or, Mr. Klobucar, if you want to proceed today, I'm

10  going to let you proceed today.  You've waited a while for the

11  hearing.  But I'm telling you where I am sort of coming out

12  that I think I need information I'm probably not going to end

13  up getting at today's hearing.  Tell me what you'd like to do.

14          MR. KLOBUCAR:  Your Honor, thank you, and I

15  appreciate the Court's thoughts in this regard.  First of all,

16  you know, I just want to note on the record that the thing

17  that -- you know, my client, who I think is a victim of no only

18  "discriminary" conduct on the basis of race, but also what

19  results really in a conversion that he be obtaining

20  preferential treatment by moving forward here is no less than

21  kind of adding insult to injury here, so I want to put that on

22  the record.

23          But let me tell you, Judge, first of all, I think

24  under the claims dispute process, if I want to temporarily vote

25  my claim, I need to file an emergency motion right now, which I

1 plan to do this week, and seek a hearing with you, Your Honor,

2 that will finally resolve whether I can temporarily vote my

3 claim for or against the plan by next Friday.  And now I'm not

4 going to probably obtain enough discovery to fully prove and

5 demonstrate my claims and take enough testimony to demonstrate

6 the extent of those claims by next Friday, but I certainly

7 would be amenable to any process the Court's suggests in that

8 respect, including treating this as a contested motion under

9 9014 so that the adversary discovery rules apply.

10         In addition, with respect to the claim objection

11 itself, which I think is separate from the temporary voting

12 issue, we would -- we will plan on responding within the

13 necessary 30 days to that claim objection because we do believe

14 if these commissions were owed as of the date of termination,

15 which they were, they fall outside of that 502(b)(7) cap, and

16 the debtors know that.  The debtors could have objected to our

17 claim in a de minimis amount, especially because they know what

18 the limitations could be, having all the data and obviously not

19 having provided it to us yet.

20         But we also have similar discovery requests we've

21 already made, but we would need to have all the information

22 we've requested prior to the time we come in for any

23 evidentiary hearing.  So I would think the claim objection

24 process could be done on an evidentiary basis within 45 days to

25 60 days from now, Your Honor.

1            THE COURT:  Well, let's back up, because you've

2    raised the estimation question.  That sounds important to get

3    that done before his confirmation hearing, frankly more

4    important maybe than the other issues.  Did we already reserve

5    time for that, or do I need to do that now in terms of claimed

6    estimation?

7            MR. GROGAN:  I don't think we have a specific date

8    for estimation hearings.  Yeah, this is --

9            THE COURT:  You said your confirmation is on --

10           MR. GROGAN:  -- the first time that's come up.

11           THE COURT:  Yeah.  You said your confirmation's

12   February 13th.

13           MR. GROGAN:  I think it's -- let me grab me --

14           MR. KLOBUCAR:  15th, Your Honor.

15           THE COURT:  15th?

16           MR. KLOBUCAR:  February 15th, Your Honor, is the

17   confirmation.  I'm almost positive it's 1:30 on the 15th,

18   Your Honor.

19           THE COURT:  Okay.  I'm looking right now.

20           MS. THOMAS:  16th.

21           MR. GROGAN:  16th.

22           MS. THOMAS:  Yes.

23           MR. KLOBUCAR:  But I think the voting procedures

24   order indicates that prior -- three days prior to the date by

25   which my vote would be tendered, which is February 1st, that I

1  need a final resolution event to have occurred, which I assume,

2  Your Honor, includes you determining whether or not my claim

3  can be temporarily allowed for voting purposes.  So I think

4  that's the 27th, on that Friday, ten days from now would be the

5  best I can do in that respect.  And I have not yet reserved a

6  date for that, nor have I filed my emergency motion yet, but I

7  do plan to do so, Your Honor.

8          THE COURT:  It seems to me that I could allow you to

9  go ahead and vote subject to the outcome of the hearing that

10 you're talking about right now, and try and give you-all enough

11 time to work through these matters.

12         I think confirmation's on the 16th.

13         MR. GROGAN:  Yes.  That's correct.

14         MR. KLOBUCAR:  That's correct, Your Honor.

15         MR. GROGAN:  Apologies for the mistake earlier.

16         MR. KLOBUCAR:  Your Honor, if I might clarify too,

17 and I apologize.  If I might clarify, I appreciate that I would

18 be allowed to vote, but I think the question of the amount of

19 the vote is important.  I'm not sure how to establish that

20 other than by estimation on the 27th.

21         THE COURT:  No.  What I'm saying is go ahead and vote

22 your whole -- I'm going to -- I can issue an order today that

23 lets you vote your whole claim, notwithstanding the procedures,

24 but the count -- the amount that would be tabulated would be an

25 amount of our estimate that would occur at a subsequent date.

1  I think that would fully protect you.

2        MR. KLOBUCAR:  Understood, Your Honor.

3        THE COURT:  So I've got time a week before the

4  confirmation hearing, which ought to allow you time to absorb

5  the effect of the estimation.  So I could do an evidentiary

6  hearing on February 9th on the estimation and set a status

7  conference on the claim objection for a hearing on that.

8        MR. GROGAN:  And what time would it be on the 9th?

9        MR. KLOBUCAR:  That would work fine for me,

10  Your Honor.  I'm sorry.

11        THE COURT:  All right.  Why don't we start at

12  nine o'clock?  Does that -- I've got plenty of time that day,

13  so --

14        MS. GOING:  Okay.

15        MR. GROGAN:  Yes.  That works for me.

16        THE COURT:  Okay.  A virtual hearing is fine.

17  Mr. Klobucar, you're welcome to come down here whenever you

18  want.

19        MR. KLOBUCAR:  Well, I do like a good plane ride,

20  Your Honor, so I may well do that.  You said 9 a.m. on

21  Thursday, the 9th, Your Honor?

22        THE COURT:  Correct.  That would be the hearing, and

23  you can self-calendar it on your estimation motion.  Let me see

24  if I can craft something as an oral entry both sides can agree

25  to, which is that notwithstanding any other procedures adopted

1   for a claim to which an objection has been lodged,

2   Mr. Klobucar's client may vote by the voting deadline his

3   entire claim, but for tabulation purposes, the amount of the

4   claim that will be counted will be the amount that we estimate

5   at the February 9th hearing.  Any objection to that by either

6   party as a docket entry that will control this?

7            MR. GROGAN:  No, Your Honor.

8            MR. KLOBUCAR:  Your Honor, this is Mr. Klobucar.

9   First, I would like to point out to the Court something that's

10  a little strange, and I want to make sure Mr. Grogan and I

11  address this so that it's fairly before the Court.  I have no

12  problem with the language.  My client did file two claims

13  because his claims are joint and several against two of the

14  debtor entities, and because the plan does not include a

15  substantive consolidation aspect, to my knowledge, I wanted to

16  make sure the claims were both filed.  I don't intend of the

17  claims to be duplicative, and Mr. Grogan has objected on that

18  basis.  We are only claiming right now one claim currently in

19  the amount of 22 million, which will likely be amended to be

20  more in the area of 35 million.  But I want to make sure for

21  the Court -- or ask the Court if I should be voting as to both

22  claims, or whether they can somehow be consolidated by -- and

23  maybe I can stipulate with Mr. Grogan in that regard.

24            THE COURT:  Yeah.  Look, why don't you vote both for

25  now and we'll figure this out on the 9th when we figure what we

1   got.  Will that work?

2           MR. KLOBUCAR:  That sounds fine, Your Honor.  That

3   makes sense.

4           THE COURT:  Okay.  Witness and exhibit lists for the

5   estimation hearing are governed by the local rules.  I'm going

6   to require them to be timely filed.  You might look,

7   Mr. Klobucar, but I believe that will be three days before the

8   hearing.  But it's in the local rules, so you'll be able to see

9   it there.

10          Witnesses may appear virtually or in person.  Lawyers

11  may appear virtually and in person -- or in person, and they

12  don't need to be together under the procedure that we're going

13  to file for the estimation proceeding.

14          At the estimation proceeding on the 9th, we'll have a

15  status conference on the objection to claim that was filed to

16  try and get that scheduled, and a status conference on the

17  motion for relief to try and figure out when we'll have a final

18  hearing on that as well, except I told Mr. Klobucar he could

19  proceed today if he wants to, and I don't think he's responded

20  yet to that.

21          If you want to proceed on your motion for relief

22  today I'll let you, but I think it's prudent to wait.  But I

23  don't want to get in the way of a hearing that you've been

24  promised.

25          MR. KLOBUCAR:  Your Honor, I will exercise my

1  discretion to adopt your suggestion to the prudent thing and

2  follow your lead, so that's fine, Your Honor.

3          THE COURT:  I appreciate that.

4          What else do we need to do then on this particular

5  claim?

6          MR. GROGAN:  I don't have anything else on it.

7          THE COURT:  All right.  Is Klobucar and Klobuchar the

8  same --

9          MR. KLOBUCAR:  I don't either, Your Honor.  Thank

10  you.

11          THE COURT:  Is that the way that she spells her name,

12  or does she spell it differently?

13          MR. KLOBUCAR:  Well, Your Honor, so the name itself

14  is a Serbo-Croatian name that's pronounced Klobuchar and

15  spelled like mine, and I've discussed it with her a number of

16  times, but apparently she's unwilling to change her brand in

17  favor of mine.

18          THE COURT:  Oh, so she does spell it differently.  I

19  thought it was a different spelling, so I wasn't sure.

20          MR. KLOBUCAR:  Yeah, she has an H, Your Honor,

21  C-H-A-R.  I do not, so --

22          THE COURT:  Got it.  Okay.

23          Well, we will see you one way or the other in a month

24  or so.  Thank you.  Thank you for dialing in.

25          MR. KLOBUCAR:  Thank you, Your Honor.

1          THE COURT:  And now we're going to move to the second

2    part of today's hearing, which is to rename the debtors.

3          MR. GROGAN:  Thank you, Your Honor.  Ms. Thomas will

4    take it from here.

5          THE COURT:  Thank you.

6          Ms. Thomas, good morning.

7          MS. THOMAS:  Your Honor, Schlea Thomas from Paul

8    Hastings for the debtors.

9          The next matter on the agenda today is an emergency

10   motion we filed on January 6th seeking entry of an order

11   authorizing the debtors to take any and all corporate actions

12   necessary to change their corporate names, and pursuant to the

13   debtors' business judgment, and ordering the continued joint

14   administration of the debtors' Chapter 11 cases under an

15   updated case caption.  The motion was filed at

16   docket number 784, and a proposed order was attached as

17   Exhibit A.  An affidavit of service for the motion can be found

18   at docket number 800.  And the debtors seek this relief

19   pursuant to a sale of assets to Foundry Digital LLC.

20          On November 19, 2022, the debtors entered into an

21   asset purchase agreement with Foundry.  On November 22nd, the

22   Court entered an order at docket number 531 approving the

23   Foundry APA and the Foundry sale.  The Foundry sale then closed

24   on December 12, 2022, and Section 6.8 of the Foundry APA

25   requires the debtors to change their current corporate names

1   and to cause the names in the caption of these Chapter 11 cases

2   to be changed to the new names of each debtor promptly after

3   December 31, 2022.

4          Accordingly, the debtors have filed or are in the

5   process of filing the necessary paperwork with the secretaries

6   of state in the debtors' respective states of incorporation to

7   accomplish the required name changes from a corporate

8   perspective.  The changes to each of the debtors' respective

9   corporate names is listed on a chart in the motion.

10          Once the names have changed under corporate law, we

11   intend to file a notice with this Court to amend the case

12   caption accordingly.  No objections to this relief have been

13   filed.  The debtors respectfully submit that the relief

14   requested is necessary and appropriate as the debtors have

15   substantially sold -- sold substantially all of their assets

16   and have agreed, pursuant to the Foundry APA, to change their

17   current corporate names.

18          THE COURT:  So I really didn't have much problem with

19   what you wanted to do, with one exception that may not be a

20   problem at all for you.  I'll take the first one.  Compute

21   North Holdings, Inc. you want to change to Mining Project Wind

22   Down Holdings Inc.

23          MS. THOMAS:  Yes, sir.

24          THE COURT:  On the Court's caption, do you have any

25   problem if the name is Mining Project Wind Down Holdings Inc.,

```
 1  and then it says (f/k/a Compute North Holdings, Inc.) so that
 2  we can still link what's already occurred without having to
 3  constantly reference a table?  So the caption would be what you
 4  want, but there would be a reference to the formerly known as.
 5          MR. GROGAN:  Your Honor, if I can interject, I think
 6  Foundry would take issue with that.  They -- the terms of our
 7  deal with them were that we would stop using Compute North or
 8  CN or any historic references to the current names.
 9          THE COURT:  How are we going to keep track of things?
10  I mean, it's -- I really am worried about just me getting
11  confused, much less a litigant that walks in and all these
12  things have basically the same first four words, and then the
13  later words don't make any logical reference back to the
14  original name.
15          MR. GROGAN:  Your Honor, obviously, I mean, you're
16  the judge.  I -- you know, I think if you --
17          THE COURT:  I've never done --
18          MR. GROGAN:  -- want to order --
19          THE COURT:  I may be the judge, but I've never done
20  this before.
21          MR. GROGAN:  I'm just telling you that, you know, if
22  you do it, I think, you know, you can do what you want.
23  I -- the terms of the APA, though, were that we would stop
24  referring any -- in the -- we would stop mentioning Compute
25  North in the case.
```

1          THE COURT:  So I'm happy if you stop mentioning it.

2          MR. GROGAN:  Yeah.

3          THE COURT:  You can stop mentioning it today if you

4   want to.  But, for example, here is -- and hopefully Foundry's

5   on the phone and they're going to pitch in if this is causing

6   them a problem.  Because I understand why Foundry would want it

7   changed.  So what I'm thinking of is maybe right after where it

8   says, "Eden Prairie, Minnesota 55344," we'll insert another

9   line and it can say, "This debtor was originally filed under

10  the name of Computer North Holdings, Inc."  So it's not part of

11  the name, but it's a reference so they know what we're doing.

12         MR. GROGAN:  And -- fair enough.  And, you know,

13  obviously there are a lot of pleadings on the docket already,

14  almost a thousand that, you know, we're not going to go

15  retroactively change, but --

16         THE COURT:  Right.  Is there anybody from Foundry on

17  the phone?  If so, would you please press five star?

18         So look, I don't want to get in the middle of the

19  benefit of the bargain that you might have made.  What I'm

20  going to do is tentatively ask that you upload a revised form

21  of order that does what I just described.  If Foundry thinks

22  that's a breach of the deal, let's come back and revisit what

23  we can do with them on the phone.

24         MR. GROGAN:  Okay.

25         THE COURT:  So upload an order that does it the way

1    I'm suggesting.  No one is objecting.  If we're getting in

2    Foundry's face, which is not my goal, let's come back in for

3    another hearing.  I'll get you in pretty quickly.  Does that

4    work for you?

5             MR. GROGAN:  Absolutely.

6             THE COURT:  Okay.  Get me an order uploaded and we'll

7    deal with it and/or request (indiscernible) another hearing

8    after you talk to Foundry, okay?

9             What else do we need to do today?

10            MR. GROGAN:  That's all, Your Honor.  Thank you so

11   much.

12            THE COURT:  Thank you.

13            MS. GOING:  Thank you.

14            THE COURT:  We'll see you in about a month.

15            All right.  We are in recess.

16       (Proceedings concluded 12:00 p.m.)

17                              *  *  *  *  *

18

19

20

21

22

23

24

1                             **C E R T I F I C A T I O N**

2

3              I, Alicia Jarrett, court-approved transcriber, hereby

4      certify that the foregoing is a correct transcript from the

5      official electronic sound recording of the proceedings in the

6      above-entitled matter.

7

8

9

10     _____

11     ALICIA JARRETT, AAERT NO. 428      DATE: February 15, 2023

12     ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25