**<u>Exhibit B</u>**

**Redline**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MINING PROJECT WIND DOWN HOLDINGS, INC. | ) | Case No. 22-90273 (MI) |
| (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 938** |

**ORDER (A) APPROVING THE DEBTORS'
DISCLOSURE STATEMENT ON A FINAL BASIS AND
(B) CONFIRMING THE THIRD AMENDED JOINT LIQUIDATING
CHAPTER 11 PLAN OF MINING PROJECT WIND DOWN HOLDINGS, INC.
(F/K/A COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES**

The above-captioned debtors (collectively, the "Debtors") having:

a.     commenced, beginning on September 22, 2022 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

b.     filed, on September 22, 2022, the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration"), detailing the facts and circumstances of the Debtors' Chapter 11 Cases;

c.     filed, on November 23, 2022, the Plan and the Disclosure Statement (each as defined below);

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238).  The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

d.      filed, on November 23, 2022, the *Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 578] (the "Solicitation Procedures Motion");

e.      filed, on December 15, 2022, the *Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 665] (the "First Amended Plan");

f.      filed, on December 19, 2022, the *Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 691] (the "Second Amended Plan");

g.      filed, on December 21, 2022, the *Notice of Hearing to Consider (I) the Adequacy of the Debtors' Disclosure Statement, (II) Confirmation of the Plan and (III) Related Voting and Objection Procedures* [Docket No. 724] (the "Confirmation Hearing Notice"), consistent with the order granting the Solicitation Procedures Motion [Docket No. 715] (the "Solicitation Procedures Order"), which contained the date and time set for the hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

h.      caused, on December 26, 2022, the Confirmation Hearing Notice to be published in *The New York Times* (national edition), as evidenced by the *Affidavit of Publication* [Docket No. 756] (the "Publication Affidavit");

i.      distributed, on December 27, 2022, in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and the Opt-Out Form[2] (collectively, the "Solicitation Materials");

j.      distributed, on or about December 27, 2022:  (i) the *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 576] (as modified by the Amended Plan, the Second Amended Plan, and the Third Amended Plan (each as defined below) and as may be further modified, amended, or supplemented from time to time, the "Plan"), (ii) the *Disclosure Statement for the Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 577] (as modified by the *Disclosure Statement for the Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc.*

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [Docket No. 889] (the "Third Amended Plan"), the Disclosure Statement, or the Bankruptcy Code (each, as defined herein), as applicable. The rules of interpretation set forth in Section 1.2 of the Plan apply.

*and its Debtor Affiliates* [Docket No. 666] and the *Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 683]) (the "<u>Disclosure Statement</u>"), and (iii) ballots for voting on the Plan (the "<u>Ballot</u>") to holders of Claims entitled to vote on the Plan in accordance with the terms of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "<u>Local Rules</u>"), and the Procedures for Complex Cases in the Southern District of Texas (the "<u>Complex Case Procedures</u>");

k.    filed, on December 28, 2022, the *Affidavit of Service of Solicitation Documents* with respect to the Confirmation Hearing Notice (as well as the Solicitation Materials) [Docket No. 757] (the "<u>Confirmation Hearing Notice Affidavit</u>");

l.    filed, on January 13, 2023, the *Schedule of Retained Causes of Action* [Docket No. 818]

m.    filed, on January 18, 2023, the *Notice of Filing of Plan Supplement* [Docket No. 836] (the "<u>Initial Plan Supplement</u>," and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "<u>Plan</u>");

n.    filed, on January 19, 2023, the *Notice of Filing of Amendment to Plan Supplement* [Docket No. 843] (the "<u>First Amended Plan Supplement</u>"), replacing <u>Exhibit B</u> to the Plan Supplement with the Second Amended Schedule of Retained Causes of Action;

o.    filed, on January 25, 2023, the *Affidavit of Service* with respect to the Initial Plan Supplement [Docket No. 857] (the "<u>Initial Plan Supplement Affidavit</u>");

p.    filed, on January 26, 2023, the *Affidavit of Service* with respect to the Plan Supplement Amendment [Docket No. 867] (the "<u>First Amended Plan Supplement Affidavit</u>," and, together with the Publication Affidavit, Confirmation Hearing Notice Affidavit, and Initial Plan Supplement Affidavit, the "<u>Affidavits</u>");

q.    filed, on January 31, 2023, the Third Amended Plan;

r.    filed, on February 8, 2023, the *Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. 938] (the "<u>Confirmation Brief</u>");

s.    filed, on February 8, 2023, the *Declaration of Drake Harvey, President of the Debtors, in Support of (I) Final Approval of Disclosure Statement, (II) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its*

*Debtor Affiliates and (III) the Debtors' Omnibus Reply to Objections Thereto* [Docket No. 941] (the "<u>Harvey Declaration</u>");

t.    filed, on February 8, 2023, the *Declaration of Ryan Mersch in Support of (I) Final Approval of Disclosure Statement, (II) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates and (III) the Debtors' Omnibus Reply to Objections Thereto* [Docket No. 940] (the "<u>Mersch Declaration</u>");

u.    filed, on February 8, 2023, the *Declaration of Scott Tillman, Independent Director of Compute North Holdings, Inc., in Support of the Debtors' Joint Liquidating Chapter 11 Plan* [Docket No. 939] (the "<u>Tillman Declaration</u>," and together with the Harvey Declaration and the Mersch Declaration, the "<u>Declarations in Support of Confirmation</u>");

v.    filed, on February 8, 2023, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 936], which detailed the results of the Plan-voting process (the "<u>Voting Report</u>"); and

w.    operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.    entered, on December 21, 2022, the Solicitation Procedures Order;

b.    set February 1, 2023 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to final approval of the Disclosure Statement and confirmation of the Plan (the "<u>Plan and Disclosure Statement Objection Deadline</u>");

c.    set February 16, 2023 at 1:30 p.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing;

d.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations in Support of Confirmation, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

e.    held the Confirmation Hearing;

f.    heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

g.  considered all oral representations, testimony, documents, filings, and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan; and

h.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings and Conclusions.**

1.     The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.     The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§157 and 1334.  The Court has exclusive jurisdiction to determine whether the Disclosure

Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

      **C.**      **Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

      **D.**      **Commencement and Joint Administration of the Chapter 11 Cases.**

4.      Commencing on the Petition Date, the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [Docket No. 43], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 6, 2022, the United States Trustee appointed the official committee of unsecured creditors in these Chapter 11 Cases (the "Committee") [Docket No. 139].

      **E.**      **Judicial Notice.**

5.      To the extent necessary, the Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**F.      Objections.**

6.      All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to final approval of the Disclosure Statement and Confirmation of the Plan and all such unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation are hereby overruled as set forth and stated on the record at the Confirmation Hearing on the merits.

**G.      Bankruptcy Rule 3016.**

7.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**H.      Burden of Proof—Confirmation of the Plan.**

8.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**I.      Notice.**

9.      As evidenced by the Confirmation Hearing Notice Affidavit and the record in these Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the release, exculpation, and injunction provisions contained in the Plan, the Confirmation Hearing, the Plan and Disclosure Statement Objection Deadline, and any other applicable bar dates described in the Solicitation Procedures Order to all parties in interest in the Chapter 11 Cases.  Such notice was adequate and sufficient and in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3016, 3017, 3019, and 3020(b), the Bankruptcy Local rules, the Complex Case

Procedures, the Solicitation Procedures, and the Solicitation Procedures Order.  No other or further notice is or shall be required.

**J.      Disclosure Statement.**

10.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfies Bankruptcy Rule 3016(b).

**K.      Ballots.**

11.      The Classes of Claims entitled under the Plan to vote to accept or reject the Plan (the "Voting Classes") are set forth below:

| Class | Designation |
|-------|-------------|
| 3 | General Unsecured Claims |
| 4 | Parent GUC Claims |
| 7 | Preferred Equity Interests |
| 8 | Parent Equity Interests |

12.      The ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in the Voting Classes to vote to accept or reject the Plan.

**L.      Solicitation.**

13.      As described in the Voting Report, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Motion and approved in the Solicitation Procedures Orders (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and any other applicable rules, laws, and regulations.

14.     As described in the Voting Report, the Plan, the Disclosure Statement, and the applicable ballot (collectively, the "Solicitation Packages"),  and the Confirmation Hearing Notice were transmitted and served, including to all holders of Claims in the Impaired Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Orders, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient.  No further notice is required.

15.     As set forth in the Voting Report, the Solicitation Packages were initially distributed to holders of Claims in the Voting Classes that held a Claim as of December 14, 2022 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

16.     The period during which holders of Claims in the Voting Classes had to submit acceptances or rejections to the Plan was a reasonable and sufficient period of time for such holders to make an informed decision to accept or reject the Plan.

17.     Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Interests, as applicable, in the Unimpaired Classes (defined below), each of which is conclusively presumed to have accepted the Plan.  Holders of CNCC GUC Claims in Class 3A, Intercompany Claims in Class 5, and Intercompany Interests in Class 6 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.

**M.** **Voting.**

18.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

**N.** **Service of Opt-Out Form.**

19.     The Notice of Non-Voting Status included the Opt-Out Form and instructions for opting out of the Third-Party Release (as defined below) through the submission of the Opt-Out Form to the Claims and Noticing Agent for recording by the Plan and Disclosure Statement Objection Deadline.  The process described in the Solicitation Procedures Order, the Solicitation Procedures, and the Confirmation Hearing Notice Affidavit that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which serve the Notice of Non-Voting Status and to distribute the Opt-Out Forms was reasonably calculated to ensure that each of the Holders of Claims and Interests was informed of its ability to opt out of the Third-Party Release and the consequences for failing to timely do so.  Transmission and service of the Opt-Out Forms was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No other or further notice is or shall be required.

**O.** **Plan Supplement.**

20.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the

Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

**P.      Modifications to the Plan.**

21.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in the Plan and this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

22.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan except to the extent any such vote has been superseded or revoked pursuant to the Solicitation Procedures.

**Q.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

23.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### (i)    Proper Classification—Sections 1122 and 1123.

24.    The Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.  Section 3 of the Plan provides for the separate classification of Claims and Interests into nine Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)    Specified Unimpaired Classes—Section 1123(a)(2).

25.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Section III of the Plan specifies that Claims in Classes 1 and 2 (the "Unimpaired Classes") are Unimpaired under the Plan. Additionally, Section 2 of the Plan specifies that Administrative Expense Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3).

26.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Section 3 of the Plan specifies that Claims and Interests, as applicable, in Classes 3, 3A, 4, 5, 6, 7, and 8 (the "Impaired Classes") are Impaired under the Plan, and describes the treatment of such Classes.

### (iv)    No Discrimination—Section 1123(a)(4).

27.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each

respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v) Adequate Means for Plan Implementation—Section 1123(a)(5).

28.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Section 4 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the wind-down and dissolution of the Debtors; (b) the appointment of a Plan Administrator to administer and wind-down the Debtors' Estates; (c) the creation and establishment of a Litigation Trust, and the appointment of the Litigation Trustee; (d) the preservation of the Retained Causes of Action for the benefit of the Litigation Trust; (e) the issuance, execution, delivery, filing and recording of documents, and the taking of actions consistent with the Plan, as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan; (f) the authorization for the Debtors and/or Reorganized Debtors, as applicable, to take all corporate actions contemplated by the Plan; and (g) the cancellation of existing securities and agreements, and the surrender of existing securities.

### (vi) Voting Power of Equity Securities—Section 1123(a)(6).

29.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. Under the Plan, and pursuant to the Wind-Down Transactions, certain of the Debtors will be merged into Compute North LLC, and the governing corporate documents of each surviving Debtor will be amended and restated to provide that each such entity is prohibited from issuing non-voting equity securities.  As such, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

### (vii)   Directors and Officers—Section 1123(a)(7).

30.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Section 4.2.5 of the Plan, on the Effective Date, all managers, officers, directors, sole director or Governing Body of the Debtors shall be deemed to have resigned their respective positions, and shall be replaced by the Plan Administrator. The appointment of the Plan Administrator as the sole manager, sole director and sole officer of the Reorganized Debtors on the Effective Date is consistent with the interests of creditors, equity security holders and public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### (viii)   Section 1123(b)—Discretionary Contents of the Plan.

31.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

### a.   Impairment / Unimpairment of Classes—Section 1123(b)(1).

32.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Section 3 of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

### b.   Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

33.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Section 5 of the Plan provides that on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed rejected by the applicable Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court,

as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (2) is a D&O Policy or relates to the indemnification or advancement obligations of the Debtors, the Reorganized Debtors or the Plan Administrator; (3) is subject to a rejection notice or assumption notice Filed with the Bankruptcy Court; (4) is a contract assumed by the Debtors or to be assumed by the Debtors and assigned to another third party, as applicable, pursuant to an Asset Purchase Agreement; or (5) is an Asset Purchase Agreement.

34.     The Debtors' determinations regarding the assumption (or assumption and assignment) or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases. Entry of this Order by the Court shall constitute approval of such assumptions, assumptions and assignments, and/or rejections, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### c.  Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens—Section 1123(b)(3).

35.     Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan as set forth therein, by or against any Released Party, or holders of Claims, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors other than Causes of Action preserved

pursuant to the Plan for the benefit of the Reorganized Debtors, including as set forth in Section 4.2.8 of the Plan.

36.     The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.   The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

37.     Section 9.3 of the Plan contains the following releases granted by the Debtors (the "Debtor Release"):

> **Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of**

**the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; (2) any Causes of Action to the extent set forth on the Schedule of Retained Causes of Action; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court**

38.     The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such releases are a necessary and integral element of the Plan.  Also, the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and

Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.  The Debtor Releases are hereby approved as set forth in the Plan.

39.     The Debtors have satisfied their burden with respect to the propriety of the Debtor Release.   The Debtor Release appropriately offers protection to parties that provided consideration to the Debtors and that participated in the Debtors' restructuring process.  The Released Parties made significant concessions and contributions to the Chapter 11 Cases, including by actively supporting the Plan and the Chapter 11 Cases.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.

40.     Section 9.4 of the Plan contains the following releases granted by the Releasing Parties (the "Third-Party Release"):

> **Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, each Releasing Party (other than the Debtors or the Reorganized Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity**

18

would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations of any party under any Sale Order and any Asset Purchase Agreement, or any document, instrument, or agreement executed to implement the transactions set forth in such Sale Order and/or Asset Purchase Agreement, as applicable; (2) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court.

41.     The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Third-Party Release is consensual with respect to the Releasing Parties and is necessary and integral to the Plan.  Also, the Third-Party Release is:

(a) given in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  The Third-Party Release is hereby approved as set forth in the Plan.

42.     The Releasing Parties were provided proper and sufficient notice of these Chapter 11 Cases, the Plan, the Third-Party Release, and the Plan and Disclosure Statement Objection Deadline through the service of the Solicitation Materials and distribution of the Ballot.  No further notice is necessary.  The Plan and each of the Solicitation Materials included the Third-Party Release provision in conspicuous, boldface type, and the Notice of Non-Voting Status informed Holders of Claims or Interests in the Debtors that they would be deemed to have consented to the Third-Party Release if they did not (a) timely return the Opt-Out Form included in the Notice of Non-Voting Status by the Voting Deadline or (b) object to their inclusion as a Releasing Party by the Objection Deadline.  The Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

43.     The exculpation, described in Section 9.5 of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated

Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability to any Entity for any exculpated Claims, and each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the applicable laws.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

44.    The injunction provision set forth in Section 9.6 of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

45.    Section 4.2.8 of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Causes of Action not released or exculpated by the Debtors will be preserved and transferred to, and vest in, the Reorganized Debtors in accordance with section 1123(b) and 1141 of the Bankruptcy Code, as provided by the Plan.  The Plan is specific and unequivocal with respect to Causes of Action to be preserved and retained by the Debtors and complies with the standards set forth in *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Op., LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) and its progeny.  All parties in interest received adequate notice with respect to such Retained Causes of Action.  The provisions regarding Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective

Estates, and Holders of Claims and Interests.  For the avoidance of doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

### d.  Modification of Rights—Section 1123(b)(5).

46.     The Plan is consistent with 1123(b)(5) of the Bankruptcy Code.  Section 3 of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims or Interests.

### e.  Additional Plan Provisions—Section 1123(b)(6).

47.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### (ix)     Cure of Defaults—Section 1123(d).

48.     The Plan complies with section 1123(d) of the Bankruptcy Code.  The Assumed Executory Contracts and Unexpired Leases Schedule, filed with the Plan Supplement at Exhibit A, provides for the satisfaction of any cure amounts associated with Executory Contracts to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  In accordance with Section 5 of the Plan and Section 365 of the Bankruptcy Code, the Debtors will satisfy any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan on the Effective Date or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

### R.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).

49.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Each Debtor:

a. is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

b. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable nonbankruptcy law, rule and regulation, the Solicitation Procedures Orders, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**S.    Plan Proposed in Good Faith—Section 1129(a)(3).**

50.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the Wind-Down Restructuring, and the process leading to Confirmation of the Plan, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, in good faith and for the legitimate purpose of winding down the Debtors and liquidating the Estates of each of the Debtors and distributing the Assets of each such Estate on a fair and equitable basis, thereby maximizing the returns available to Holders of Claims and Interests, as applicable.   All the transactions contemplated by the Plan—including the Liquidating Trust Agreement and the Plan Administrator Agreement—were negotiated and consummated at arm's length, in good faith and without collusion, fraud, or attempt to take grossly unfair advantage of any party, allowing creditors to receive greater and more expeditious distributions under the Plan than they would receive through a chapter 7 liquidation.   The Debtors proposed the Plan with legitimate purposes including (1) facilitating the sale of the Debtors' remaining Assets; (2) providing a prompt and efficient liquidation under chapter 11; and (3) maximizing the recovery to Holders of Claims and Interests under the circumstances.  All

23

unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation of the Plan are overruled on the merits.

51. The Debtors and each of the constituents who negotiated the Plan, and each of their respective officers, directors, managers, members, employees, advisors, and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

**T. Payment for Services or Costs and Expenses—Section 1129(a)(4).**

52. The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**U. Directors, Officers, and Insiders—Section 1129(a)(5).**

53. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Pursuant to Section 1.1.79 of the Plan, the Debtors disclosed the identity of the Plan Administrator in the Plan Supplement, who shall serve as the sole manager, sole director, and sole officer of the Reorganized Debtors. The Plan Administrator is competent, has relevant and valuable business and industry experience, and will assist with the wind down of the Debtors' Estates. Additionally, the Debtors filed the Litigation Trust Agreement as part of the Plan Supplement. The Trustee of the Litigation Trust shall pursue any and all Claims and Causes of Action vested in the Litigation Trust, as appropriate, and, pursuant to Section 1.1.71 of the

Plan, shall be the Plan Administrator.  In addition, as set forth in the Confirmation Brief and consistent with the Litigation Trust Agreement, on the Effective Date, the Plan Oversight Committee shall be formed consisting of Touzi Capital, LLC and Decimal Digital Currency I, LLC to oversee the implementation of the Plan by the Plan Administrator.  The specific rights and responsibilities of the Plan Oversight Committee are set forth in and governed by the Plan Administrator Agreement.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

### V.  No Rate Changes—Section 1129(a)(6).

54.  Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

### W.  Best Interest of Creditors—Section 1129(a)(7).

55.  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that were proffered or adduced in the Declarations in Support of Confirmation or at, prior to, or in connection with the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### X.  Acceptance by Certain Classes—Section 1129(a)(8).

56.  Classes 1 and 2 are each Classes of Unimpaired Claims under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes or Class 4, the Debtors seek Confirmation of the Plan under section 1129(b), solely with respect to such Classes (collectively, the "Rejecting Classes"), rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

### Y.  Treatment of Claims Entitled to Priority under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

57.  The treatment of Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, under Section 2 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

### Z.  Acceptance by at Least One Impaired Class—Section 1129(a)(10).

58.  The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, Class 3 voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

### AA.  Feasibility—Section 1129(a)(11).

59.  The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the distribution of the proceeds from the sale of substantially all of

the Debtors' Assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Any assets remaining in the Debtors' Estates as of the Effective Date will vest in the Reorganized Debtors, for the administration, liquidation and distribution by the Plan Administrator, in accordance with the Plan Administrator Agreement. The Litigation Trust shall administer the Litigation Trust assets and make distributions of any and all proceeds to Holders of Claims and Interests in accordance with the Plan and the Litigation Trust Agreement. Since none of the requirements for carrying out the Plan are contingent upon future, uncertain events (as any future litigation is not considered a contingent, uncertain future event) and the Plan provides fixed governance mechanisms for both the Plan Administrator Agreement and the Litigation Trust Agreement, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

60. As demonstrated by the evidence in the record, including the Declarations in Support of Confirmation, Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors, or any successor to the Reorganized Debtors under the Plan, except as provided under the Plan. Furthermore, the evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations in Support of Confirmation filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

61. Additionally, the Debtors have the support of the Committee. The Debtors provided ample opportunity for the various parties to these Chapter 11 Cases to evaluate the

feasibility of the Plan throughout these proceedings and during the negotiation of the current Plan. Accordingly, the Plan satisfies the feasibility requirements of section 1129(a)(11).

**BB.    Payment of Fees—Section 1129(a)(12).**

62.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 13.3 of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

**CC.    Non-Applicability of Certain Sections—Sections 1129(a)(13), (14), (15), and (16).**

63.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors do not provide retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), do not owe domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    "Cram Down" Requirements—Section 1129(b).**

64.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect to the Rejecting Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that no holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all holders of Claims or Interests in the Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the Rejecting Classes because

similarly situated holders will receive substantially similar treatment on account of their Claims or Interests in such class.  Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### EE.   Only One Plan—Section 1129(c).

65.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

### FF.   Principal Purpose of the Plan—Section 1129(d).

66.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  Moreover, no governmental unit or any other party has requested that the Bankruptcy Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### GG.   Good Faith Solicitation—Section 1125(e).

67.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

### HH.   Satisfaction of Confirmation Requirements.

68.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

II.     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

69.     Each of the conditions precedent to the Effective Date, as set forth in Section 10.1 of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Section 10.2 of the Plan.

JJ.     **Implementation.**

70.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

KK.     **Disclosure of Facts.**

71.     The Debtors have disclosed all material facts regarding the Plan and the transactions contemplated therein.

LL.     **Good Faith.**

72.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to wind-down the Debtors' businesses.  The Released Parties have made a substantial contribution to the Debtors' reorganization.

MM.     **Objections.**

73.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

**ORDER**

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

74.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

75.     **Disclosure Statement**.  The information provided in the Disclosure Statement is adequate and the Disclosure Statement is approved in all respects on a final basis.

76.     **Solicitation**.  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

77.     **Notice of Confirmation Hearing**.  The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

78.     **Confirmation of the Plan**.  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement and amendments thereto, are incorporated by reference into and are an integral part of this Confirmation Order.

79.     **Objections**.  All objections, responses, statements, reservation of rights, and comments in opposition, if any, to final approval of the Disclosure Statement or Confirmation of the Plan that have not been withdrawn, waived, settled, resolved prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing or in this Confirmation

Order are hereby overruled and denied on the merits, with prejudice.  All objections to the entry of this Confirmation Order or to the relief granted herein that were not timely filed and served prior to the Plan and Disclosure Statement Objection Deadline are deemed waived and forever barred.

80.      **Plan Modifications**.   On December 19, 2022, the Debtors filed the Second Amended Plan [Docket No. 691] and a redline [Docket No. 692] showing the changes against the Initial Plan and the First Amended Plan. As noted above, on December 27, 2022, the Debtors, through their counsel, distributed the Solicitation Package to those Holders of Claims and Interests entitled to vote on the Plan (the "Solicited Plan"). On January 31, 2023, the Debtors filed the Third Amended Plan [Docket No. 889] and a redline [Docket No. 890] showing the changes between the Solicited Plan and the Third Amended Plan.  This Order includes certain modifications to the Plan to address formal and informal objections raised by various parties. The Plan Modifications do not materially and adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.   Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

81.      **Plan Classification Controlling**.   The terms of the Plan shall solely govern classification of Claims and Interests for purposes of the distributions to be made thereunder.

The classification set forth on the ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for the purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

82.     **Deemed Acceptance of Plan**.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim or Interest shall be permitted to change its vote to accept the Plan as a consequence of the Plan Modifications.

83.     **No Action Required**.  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Partnership Act, Delaware Limited Liability Company Act, or any other comparable state law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

84.     **Binding Effect**.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of

Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

85.     **Procedures for Resolving Claims**.    The procedures for resolving contingent, unliquidated, and disputed Claims contained in Section 8 of the Plan shall be, and hereby are, approved in their entirety.

86.     **Certificate of Incorporation; By-Laws.**    As set forth in the Wind-Down Transactions Memorandum, the Debtors contemplate: (a) the merger of the Merging Debtor Subsidiaries[3] into Mining Project Wind Down LLC (f/k/a Compute North LLC) ("CN LLC"); (b) amending and restating the certificate of incorporation and by-laws for Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) ("Holdings") to include provisions prohibiting Holdings from issuing non-voting equity securities to the extent required by Bankruptcy Code § 1123(a)(6); (c) amending and restating the certificate of formation of each of CN LLC, Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) to include provisions prohibiting these entities from issuing non-voting equity securities to the extent required by Bankruptcy Code § 1123(a)(6); (d) Holdings issuing one share of stock to the Plan

---

[3]    As used herein, "Merging Debtor Subsidiaries" means:  Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC).  For the avoidance of doubt, Debtors Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) and Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) are not Merging Debtor Subsidiaries.

Administrator; and (e) CN LLC, Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) each issuing member interests to the Plan Administrator, who shall be the sole member of each of these entities.  The Debtors will prepare and execute an Agreement of Merger among CN LLC and the Merging Debtor Subsidiaries, and each of these entities shall execute appropriate consents authorizing the merger.  On the Effective Date of the Plan, the Debtors will file the executed Certificate of Merger with the Delaware Secretary, and all of the Merging Debtor Subsidiaries will merge with and into CN LLC, with CN LLC being the surviving entity of such merger.

87.     **Corporate Action**.  On the Effective Date, all actions and transactions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code.  On and after the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors or managers of the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

88.     **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**.  On and after the Effective Date, the Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or

other Governing Body, subject to the provisions of the Plan and the Plan Administrator Agreement.  In addition, on the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, or Governing Body of the Reorganized Debtors shall cease and all such persons shall be deemed to have resigned, solely in their capacities as such.  On the Effective Date, the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, as applicable, and shall succeed to the powers of the Reorganized Debtors' managers, directors, officers, and other Governing Bodies without any further action required on the part of any such Reorganized Debtor, the equity holders of the Debtors, the officers, directors, managers, or Governing Body, as applicable, of the Reorganized Debtors, or the members of any Reorganized Debtor.  From and after the Effective Date, and subject to the Plan Administrator Agreement and the Litigation Trust Agreement, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors.

89.    **Additional Transactions Authorized under the Plan**.  On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan.

90.    **Provisions Governing Distributions**.  The distribution provisions of Section 6 of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

91.    **Comprehensive Settlement of Claims and Controversies.**  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided

under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of this Confirmation Order constitutes the Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are in the best interests of (a) the Debtors, the Reorganized Debtors, the Estates, and their respective property and (b) Claim and Interest holders, and are fair, equitable, and reasonable.

92.     **Assumption or Rejection of Contracts and Leases**.  On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (2) is a D&O Policy or relates to the indemnification and advancement obligations of the Debtors, the Reorganized Debtors or the Plan Administrator; (3) is subject to a rejection notice or assumption notice Filed with the Bankruptcy Court; (4) is a contract assumed by the Debtors or to be assumed by the Debtors and assigned to another third party, as applicable, pursuant to an Asset Purchase Agreement; or (5) is an Asset Purchase Agreement.  Each Executory Contract and Unexpired Lease assumed pursuant to Section 5 of the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption.

93.     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

94.     Except as set forth in the Plan Supplement and in paragraph 118 below, there are no anticipated cure obligations with respect to any Executory Contract or Unexpired Lease to which the Debtors are a party. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Executory Contract or Unexpired Lease assumed pursuant to the Plan.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or cure amount will be deemed to have assented to such assumption, assumption and assignment, or cure amount.

95.     Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtors and their Estates, and (ii) the requirements of section 365(b)(l) of the Bankruptcy Code are deemed satisfied, and (iii) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

96.     All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

97.     Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

98.     **Survival of Indemnification, Advancement and Exculpation Obligations**.  The obligations of the Debtors to indemnify and exculpate any officers of the Debtors that are officers of the Reorganized Debtors, and to advance defense costs, immediately following the occurrence of the Effective Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any such officers based upon any act or omission related to service with, for, or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, this paragraph affects only the

obligations of the Debtors and Reorganized Debtors with respect to any indemnity, advancement or exculpation owed to or for the benefit of officers of the Debtors that are officers of the Reorganized Debtors immediately following the occurrence of the Effective Date, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors.

99.    **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section 10 of the Plan.

100.    **Final Fee Applications**.    All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503, and/or 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Cases) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.  The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

101.     **Release, Exculpation, Discharge, and Injunction Provisions**.   The release, exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and authorized as set forth on the record of the Confirmation Hearing, and such provisions are effective and binding on all Persons and Entities to the extent provided therein.

102.     **Compliance with Tax Requirements**.   In connection with the Plan and all distributions thereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.   The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors believes are reasonable and appropriate.   The Debtors or the Reorganized Debtors, as applicable, reserves the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

103.     **Exemption from Transfer Taxes**.   Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer or exchange of equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax,

41

stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States. This Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

104. **Insurance Policies and Agreements**. Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date. To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their Estates. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

105. **Documents, Mortgages, and Instruments**. Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

106.    **Continued Effect of Stays and Injunction**.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

107.    **Nonseverability of Plan Provisions upon Confirmation**.  Each provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided in paragraph 110 below; and (c) nonseverable and mutually dependent.

108.    **Amendment or Modification of the Plan**.  Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan.  Any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

109.    **Governing Law**.  Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with the Plan, and subject further to Section 13.1 of the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

110.     **Applicable Nonbankruptcy Law**.  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

111.     **Governmental Approvals Not Required**.  Except as set forth in paragraph 119 below, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

112.     **Notice to Debtors, Reorganized Debtors, or Post Effective Date Committee.** All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors with respect to these Chapter 11 Cases, the Plan, or this Confirmation Order to be effective shall be in writing and addressed as follows:

| To the Debtors | With a Copy to |
|---|---|

| | |
|---|---|
| Mining Project Wind Down Holdings, Inc.<br>300 North LaSalle, Suite 1420<br>Chicago, Illinois 60654 | PAUL HASTINGS LLP<br>600 Travis Street, 58th Floor<br><br>Houston, Texas 77002<br><br>Attn:  James T. Grogan III, Esq.<br><br><br>-and-<br><br><br>PAUL HASTINGS LLP<br><br>71 S. Wacker Drive, Suite 4500<br><br>Chicago, Illinois 60606<br><br>Attn:  Matthew J. Micheli, Esq.<br><br>Michael Jones, Esq. |
| **To the Reorganized Debtors** | |
| Mining Project Wind Down Holdings, Inc.<br>300 North LaSalle, Suite 1420<br>Chicago, Illinois 60654 | |

113.    **Opt-Out Parties**.  Notwithstanding anything to the contrary in this Confirmation Order, the Third-Party Release set forth in Section 9.4 of the Plan and any other provisions of the Plan invoking or effectuating the Third-Party Release set forth in Section 9.4 of the Plan, shall not apply to any holder of a Claim or Interest that (i) timely elected to opt out of the Third-Party Release by properly completing and returning an opt-out election form, or (ii) timely objected to the Third-Party Release and such objection was not resolved as of the entry of this Confirmation Order.

114.   **Governmental Units.**  Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to a "Governmental Unit" (as defined in section 101(27) of the Bankruptcy Code) that is not a "Claim" (as defined in section 101(5) of the Bankruptcy Code); (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date; or (d) any liability to a Governmental Unit on the part of any non-debtor, except to the extent that such non-debtor is exculpated for acting in its fiduciary capacity to the Debtors' estates as explicitly provided for in the Bankruptcy Code.  Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; *provided* that the Bankruptcy Court retains jurisdiction to determine whether police or regulatory liabilities asserted by any Governmental Unit or other entity are discharged or otherwise barred by this Confirmation Order.  Notwithstanding any provision of the Plan or this Order, (x) the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, and (y) the Debtors', Reorganized Debtors', and/or their successors' and assigns' defenses thereto, shall be preserved and are unaffected.  Nothing in this Confirmation Order or the Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan to adjudicate any defense asserted under this Confirmation Order or the Plan.

115.   **Allowed Claims**.   For the avoidance of doubt, a Claim shall be deemed "Allowed" under the Plan if (a) the holder of such Claim has timely and properly filed a proof of Claim pursuant to the Claims Bar Date Order (except as otherwise explicitly specified in the Plan, this Confirmation Order, or any Final Order) and neither the Debtors nor the Plan

Administrator, as applicable, have objected to such Claim by the Claims Objection Bar Date, ~~or~~ (b) such Claim is listed on the Debtors' schedules of assets and liabilities (as amended or modified) and is not described thereon as "disputed," "contingent," or "unliquidated~~.~~," or (c) such Claim is otherwise allowed pursuant to an order of this Court or settled in accordance with the Plan.

116.   **Foundry**.   Notwithstanding anything to the contrary contained in the Plan (including Section 9), the Plan Supplement, the Confirmation Order or any related document, instrument, agreement or order, (a) nothing in the Plan (including Section 9), the Plan Supplement, the Confirmation Order or any related document, instrument, agreement or order shall, or shall be deemed to, terminate, release, waive, discharge, enjoin, cancel, modify or affect (i) the Asset Purchase Agreement, dated as of November 19, 2022, by and between Compute North LLC, Compute North SD, LLC, Compute North Texas LLC, CN Mining LLC, CN Minden LLC, and Foundry Digital LLC ("<u>Foundry</u>") (as amended, supplemented, or modified, the "<u>Foundry APA</u>"), the *Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 531] (the "<u>Foundry Sale Order</u>"), the *Order (I) Authorizing Debtors to Assume and Assign Executory Contracts to Foundry Digital LLC Pursuant to Section 365 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 634] (the "<u>Foundry Assumption Order</u>"), or any document, instrument, agreement or order entered into or entered in connection therewith, each of which shall survive and remain in full force, (ii) any rights, title, interests, remedies, benefits, defenses, claims and/or Causes of Action of Foundry, the Purchaser, any Purchaser Designee, and/or any of their respective affiliates, Representatives, successors and assigns under or related

to the Foundry APA, the Foundry Sale Order, the Foundry Assumption Order or any related document, instrument, agreement or order (including the right to enforce any of the foregoing in compliance therewith), (iii) any of the Purchased Assets (including any Assigned Contracts, the Purchaser's or Purchaser Designee's rights thereunder, or any claims or Causes of Action of the Debtors constituting Purchased Assets), and/or (iv) any obligations, agreements, covenants, representations, warranties, liabilities of, and/or waivers by, any of the Seller, the Debtors, the Reorganized Debtors, and their respective successors, assigns and representatives under the Foundry APA, the Foundry Sale Order, the Foundry Assumption Order and/or any document, instrument, agreement or order entered into or entered (or that may be entered into or entered) in connection with the transactions contemplated under the Foundry APA; and (b) the contracts, documents, agreements and/or instruments relating to Minden, Nebraska included in the Amended Schedule 8.1(f) of the Foundry APA, and/or any other contract, agreement, document and/or instrument constituting a Minden Purchased Asset, (i) shall be assumed, assigned or acquired only in accordance with the Foundry APA, the Foundry Sale Order, the Foundry Assumption Order and/or another agreement, contract, document, instrument and/or order entered into in furtherance of the transactions contemplated under the Foundry APA, and (ii) if not assumed, assigned or acquired in accordance with clause (b)(i) of this paragraph, shall be, or shall be deemed, rejected effective as of the Effective Date pursuant to this Confirmation Order only if the Minden Closing does not occur and the Minden Outside Date has passed.[4]

117. **Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to the Claims of Howard County, Texas, and the taxing entities for which it collects (the "Texas Taxing Authorities") (the "Texas Taxing Authority

---

[4]   Capitalized terms used but not otherwise defined in this paragraph 116 shall have the meanings ascribed to such terms in the Foundry APA.

Claims"), (a) to the extent the Texas Property Tax Code provides for interest and/or penalties with respect to any portion of the Texas Taxing Authority Claims, such interest and/or penalties shall be included in the Texas Taxing Authority Claims, (b) the liens securing the Texas Taxing Authority Claims shall be retained until the applicable Texas Taxing Authority Claims are paid in full, and (c) the Debtors or the Reorganized Debtors, as applicable, shall pay Allowed Texas Taxing Authority Claims on the later of (i) the date the Texas Taxing Authority Claims become due pursuant to the Texas Property Tax Code and in the ordinary course of business (subject to any applicable extensions, grace periods, or similar rights under the Texas Property Tax Code) and (ii) the Effective Date (or as soon as reasonably practicable thereafter). All Post-Petition taxes due to the Texas Taxing Authorities shall be paid in the ordinary course of business without the necessity of the filing of Administrative Claims for such taxes.  All rights and defenses of the Debtors and the Reorganized Debtors under non-bankruptcy law are reserved and preserved with respect to such Texas Taxing Authority Claims."

118.   **BMO Harris Bank N.A.**  Notwithstanding anything to the contrary in the Plan (as amended), Plan Supplement and Assumption Schedule or the Confirmation Order, the following Executory Contracts: Treasury Services Addendum, dated January 19, 2022 between BMO Harris Bank N.A. and Compute North LLC; and Treasury Services Agreement, dated February 1, 2022 between BMO Harris Bank N.A. and Compute North Holdings Inc., are assumed through this Order with a total cure amount of $5,000 which shall be paid on the Effective Date or as soon as reasonably practicable thereafter to BMO Harris Bank N.A. c/o Chapman and Cutler LLP, Attn: James P. Sullivan, 320 South Canal Street, Chicago, Illinois 60606.

119.    **Marathon Settlement.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, including the Releases set forth in Section 9.4 of the Plan, nothing in the Plan or this Confirmation Order will release any entity's obligations to Marathon Digital Holdings, Inc. ("Marathon") or Marathon's claims against such entity arising from any contract, instrument, document, or agreement with Marathon that has been assigned by the Debtors (in whole or in part, whether before or after the Petition Date).  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall affect, alter, or supersede any rights or obligations of any party (or any party's successor or assign) set forth in the (i) *Stipulation and Agreed Order by and Among the Debtors, Marathon Digital Holdings, Inc., Generate Lending, LLC and Certain Affiliates and MVP Logistics, LLC, Concerning Marathon's Miners* [Docket No. 708] or (ii) *Order Approving Settlement with Marathon Digital Holdings, Inc. Pursuant to Bankruptcy Rule 9019* [Docket No. 947].

120.    **Decimal Objection.**  On February 1, 2023, Decimal Digital Currency I, LLC filed an objection to the Plan (the "Decimal Objection").[5]  The Decimal Objection has been resolved in accordance with the Term Sheet attached hereto as **Exhibit B**.  The Term Sheet is hereby approved and the Debtors and Decimal are authorized to take all actions necessary to effectuate the transactions set forth in the Term Sheet.  The Decimal Objection is withdrawn with prejudice.

121.    **Bootstrap Objection.**  The Objection to the Plan filed by Corpus Christi Energy Park, LLC ("CCEP")[6] is resolved on the following terms.  If the litigation proposed to be brought against CCEP by the Litigation Trust results in a judgment requiring CCEP to pay the Litigation

---

[5]   *Decimal Digital Currency I, LLC's (I) Objection to (A) Confirmation of the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (B) Final Approval of the Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates and (II) Reservation of Rights* [Docket No. 899].

[6]   *Corpus Christi Energy Park, LLC's Objection to (I) Final Approval of Debtors' Disclosure Statement and (II) Confirmation of Debtors' Liquidating Chapter 11 Plan* [Docket No. 897].

Trust solely on account of a cause of action arising under Chapter 5 of the Bankruptcy Code, then CCEP shall be deemed to hold a Class 3 General Unsecured Claim in an amount to be determined by the Court, provided that CCEP has paid the amount, or turned over any property, for which CCEP is liable under Chapter 5 of the Bankruptcy Code, and provided further that the Allowed Class 3 amount of such General Unsecured Claim for distribution purposes shall not exceed $5 million.   If the litigation proposed to be brought against CCEP by the Litigation Trust results in a judgment, in whole or in part, that requires CCEP to pay the Litigation Trust on account of a cause of action against CCEP for breach of contract, then CCEP's Claims against Mining Project Wind Down Corpus Christi LLC ("CNCC") will remain classified in Class 3A under the Plan for all purposes.  If the Court finds that CCEP is not liable to the Litigation Trust, CCEP shall be deemed to hold a Class 3 General Unsecured Claim in an amount to be determined by the Court, provided that the Allowed Class 3 amount of such General Unsecured Claim for distribution purposes shall not exceed $5 million. The foregoing agreement does not determine, impair, or prejudice any potential offset rights that may be asserted and does not prejudice any subsequent settlement the parties may reach in the future.

122.   121.**Notice of Confirmation and Effective Date**.  The Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit C** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known holders of Claims and Interests and the Bankruptcy Rule 2002 service list within three Business Days after the date of the entry of this Confirmation Order.   On, or as soon as reasonably practicable after, the Effective Date, the Reorganized Debtors shall file with the Court a notice of the occurrence of the Effective Date.  Notwithstanding the above, no notice of the Confirmation or Effective Date or service of any kind shall be required to be mailed or made

upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.   The above referenced notices are adequate under the circumstances of these chapter 11 cases and no other or further notice is necessary.

123.   ~~122.~~ **Effect of Non-Consummation**.  If consummation of the Plan does not occur, then the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

124.   ~~123.~~ **Substantial Consummation**.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

125.   ~~124.~~ **Waiver of Stay**.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

126.   ~~125.~~ **References to and Omissions of Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being

the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

127. 126. **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

128. 127. **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

129. 128. **Reservation of Rights**.  Except as expressly set forth in the Plan, the Plan shall have no force and effect unless the Bankruptcy Court has entered this Confirmation Order. The filing of the Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors or any other Person with respect to Claims against and Interests in the Debtors.

130. 129. **Final Order**.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

131.   ~~130.~~ **Retention of Jurisdiction**.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

132.   ~~131.~~ **Conditions to Confirmation Pursuant to Plan**.   Confirmation and consummation of the Plan is subject to the terms and condition set forth in Section 10 of the Plan, including, without limitation, conditions to the Effective Date, all of which is incorporated herein by reference.

Dated: _____, 2023
      Houston, Texas

                                    _____
                                    THE HONORABLE MARVIN ISGUR
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Plan**

**Exhibit B**

**Decimal Term Sheet**

**<u>Exhibit C</u>**

~~Notice of~~ **Confirmation Order <u>Notice</u>**