United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 16, 2023

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MINING PROJECT WIND DOWN HOLDINGS, INC. | ) Case No. 22-90273 (MI) |
| (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 938** |

## ORDER (A) APPROVING THE DEBTORS'
## DISCLOSURE STATEMENT ON A FINAL BASIS AND
## (B) CONFIRMING THE THIRD AMENDED JOINT LIQUIDATING
## CHAPTER 11 PLAN OF MINING PROJECT WIND DOWN HOLDINGS, INC.
## (F/K/A COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES

The above-captioned debtors (collectively, the "Debtors") having:

    a.    commenced, beginning on September 22, 2022 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

    b.    filed, on September 22, 2022, the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration"), detailing the facts and circumstances of the Debtors' Chapter 11 Cases;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

c.  filed, on November 23, 2022, the Plan and the Disclosure Statement (each as defined below);

d.  filed, on November 23, 2022, the *Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 578] (the "Solicitation Procedures Motion");

e.  filed, on December 15, 2022, the *Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 665] (the "First Amended Plan");

f.  filed, on December 19, 2022, the *Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* [Docket No. 691] (the "Second Amended Plan");

g.  filed, on December 21, 2022, the *Notice of Hearing to Consider (I) the Adequacy of the Debtors' Disclosure Statement, (II) Confirmation of the Plan and (III) Related Voting and Objection Procedures* [Docket No. 724] (the "Confirmation Hearing Notice"), consistent with the order granting the Solicitation Procedures Motion [Docket No. 715] (the "Solicitation Procedures Order"), which contained the date and time set for the hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

h.  caused, on December 26, 2022, the Confirmation Hearing Notice to be published in *The New York Times* (national edition), as evidenced by the *Affidavit of Publication* [Docket No. 756] (the "Publication Affidavit");

i.  distributed, on December 27, 2022, in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and the Opt-Out Form[2] (collectively, the "Solicitation Materials");

j.  distributed, on or about December 27, 2022: (i) the *Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 576] (as modified by the Amended Plan, the Second Amended Plan, and the Third Amended Plan (each as defined below) and as may be further modified, amended,

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [Docket No. 889] (the "Third Amended Plan"), the Disclosure Statement, or the Bankruptcy Code (each, as defined herein), as applicable. The rules of interpretation set forth in Section 1.2 of the Plan apply.

or supplemented from time to time, the "Plan"), (ii) the *Disclosure Statement for the Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 577] (as modified by the *Disclosure Statement for the Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 666] and the *Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 683]) (the "Disclosure Statement"), and (iii) ballots for voting on the Plan (the "Ballot") to holders of Claims entitled to vote on the Plan in accordance with the terms of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures");

k.    filed, on December 28, 2022, the *Affidavit of Service of Solicitation Documents* with respect to the Confirmation Hearing Notice (as well as the Solicitation Materials) [Docket No. 757] (the "Confirmation Hearing Notice Affidavit");

l.    filed, on January 13, 2023, the *Schedule of Retained Causes of Action* [Docket No. 818]

m.    filed, on January 18, 2023, the *Notice of Filing of Plan Supplement* [Docket No. 836] (the "Initial Plan Supplement," and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

n.    filed, on January 19, 2023, the *Notice of Filing of Amendment to Plan Supplement* [Docket No. 843] (the "First Amended Plan Supplement"), replacing Exhibit B to the Plan Supplement with the Second Amended Schedule of Retained Causes of Action;

o.    filed, on January 25, 2023, the *Affidavit of Service* with respect to the Initial Plan Supplement [Docket No. 857] (the "Initial Plan Supplement Affidavit");

p.    filed, on January 26, 2023, the *Affidavit of Service* with respect to the Plan Supplement Amendment [Docket No. 867] (the "First Amended Plan Supplement Affidavit," and, together with the Publication Affidavit, Confirmation Hearing Notice Affidavit, and Initial Plan Supplement Affidavit, the "Affidavits");

q.    filed, on January 31, 2023, the Third Amended Plan;

r.    filed, on February 8, 2023, the *Debtors' (I) Memorandum of Law in Support of (A) Final Approval of Disclosure Statement and (B) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (II) Omnibus Reply to Objections Thereto* [Docket No. 938] (the "Confirmation Brief");

s.     filed, on February 8, 2023, the *Declaration of Drake Harvey, President of the Debtors, in Support of (I) Final Approval of Disclosure Statement, (II) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates and (III) the Debtors' Omnibus Reply to Objections Thereto* [Docket No. 941] (the "<u>Harvey Declaration</u>");

t.     filed, on February 8, 2023, the *Declaration of Ryan Mersch in Support of (I) Final Approval of Disclosure Statement, (II) Confirmation of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates and (III) the Debtors' Omnibus Reply to Objections Thereto* [Docket No. 940] (the "<u>Mersch Declaration</u>");

u.     filed, on February 8, 2023, the *Declaration of Scott Tillman, Independent Director of Compute North Holdings, Inc., in Support of the Debtors' Joint Liquidating Chapter 11 Plan* [Docket No. 939] (the "<u>Tillman Declaration</u>," and together with the Harvey Declaration and the Mersch Declaration, the "<u>Declarations in Support of Confirmation</u>");

v.     filed, on February 8, 2023, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates* [Docket No. 936], which detailed the results of the Plan-voting process (the "<u>Voting Report</u>"); and

w.     operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.     entered, on December 21, 2022, the Solicitation Procedures Order;

b.     set February 1, 2023 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to final approval of the Disclosure Statement and confirmation of the Plan (the "<u>Plan and Disclosure Statement Objection Deadline</u>");

c.     set February 16, 2023 at 1:30 p.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing;

d.     reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations in Support of Confirmation, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

e.      held the Confirmation Hearing;

f.      heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

g.      considered all oral representations, testimony, documents, filings, and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan; and

h.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§157 and 1334.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

**C.     Eligibility for Relief.**

3.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of the Chapter 11 Cases.**

4.     Commencing on the Petition Date, the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [Docket No. 43], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 6, 2022, the United States Trustee appointed the official committee of unsecured creditors in these Chapter 11 Cases (the "Committee") [Docket No. 139].

**E.     Judicial Notice.**

5.     To the extent necessary, the Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents

6

on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**F.      Objections.**

6.      All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to final approval of the Disclosure Statement and Confirmation of the Plan and all such unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation are hereby overruled as set forth and stated on the record at the Confirmation Hearing on the merits.

**G.      Bankruptcy Rule 3016.**

7.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**H.      Burden of Proof—Confirmation of the Plan.**

8.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**I.      Notice.**

9.      As evidenced by the Confirmation Hearing Notice Affidavit and the record in these Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the release, exculpation, and injunction provisions contained in the Plan, the Confirmation Hearing, the Plan and Disclosure Statement Objection Deadline, and any other applicable bar dates described in the Solicitation Procedures Order to all parties in interest in the Chapter 11 Cases.  Such notice was adequate and sufficient and in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules

2002(b), 3016, 3017, 3019, and 3020(b), the Bankruptcy Local rules, the Complex Case Procedures, the Solicitation Procedures, and the Solicitation Procedures Order. No other or further notice is or shall be required.

> **J.** **Disclosure Statement.**

10. The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfies Bankruptcy Rule 3016(b).

> **K.** **Ballots.**

11. The Classes of Claims entitled under the Plan to vote to accept or reject the Plan (the "Voting Classes") are set forth below:

| Class | Designation |
|---|---|
| 3 | General Unsecured Claims |
| 4 | Parent GUC Claims |
| 7 | Preferred Equity Interests |
| 8 | Parent Equity Interests |

12. The ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in the Voting Classes to vote to accept or reject the Plan.

> **L.** **Solicitation.**

13. As described in the Voting Report, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Motion and approved in the Solicitation Procedures Orders (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and any other applicable rules, laws, and regulations.

14.     As described in the Voting Report, the Plan, the Disclosure Statement, and the applicable ballot (collectively, the "Solicitation Packages"),  and the Confirmation Hearing Notice were transmitted and served, including to all holders of Claims in the Impaired Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Orders, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient.  No further notice is required.

15.     As set forth in the Voting Report, the Solicitation Packages were initially distributed to holders of Claims in the Voting Classes that held a Claim as of December 14, 2022 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

16.     The period during which holders of Claims in the Voting Classes had to submit acceptances or rejections to the Plan was a reasonable and sufficient period of time for such holders to make an informed decision to accept or reject the Plan.

17.     Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Interests, as applicable, in the Unimpaired Classes (defined below), each of which is conclusively presumed to have accepted the Plan.  Holders of CNCC GUC Claims in Class 3A, Intercompany Claims in Class 5, and Intercompany Interests in Class 6 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.

### M. Voting.

18.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

### N. Service of Opt-Out Form.

19.     The Notice of Non-Voting Status included the Opt-Out Form and instructions for opting out of the Third-Party Release (as defined below) through the submission of the Opt-Out Form to the Claims and Noticing Agent for recording by the Plan and Disclosure Statement Objection Deadline.  The process described in the Solicitation Procedures Order, the Solicitation Procedures, and the Confirmation Hearing Notice Affidavit that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which to serve the Notice of Non-Voting Status and to distribute the Opt-Out Forms was reasonably calculated to ensure that each of the Holders of Claims and Interests was informed of its ability to opt out of the Third-Party Release and the consequences for failing to timely do so.  Transmission and service of the Opt-Out Forms was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No other or further notice is or shall be required.

### O. Plan Supplement.

20.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement

before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

**P.      Modifications to the Plan.**

21.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in the Plan and this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

22.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan except to the extent any such vote has been superseded or revoked pursuant to the Solicitation Procedures.

**Q.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

23.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### (i)     Proper Classification—Sections 1122 and 1123.

24.     The Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.  Section 3 of the Plan provides for the separate classification of Claims and Interests into nine Classes.   Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests.   Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### (ii)     Specified Unimpaired Classes—Section 1123(a)(2).

25.     The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Section III of the Plan specifies that Claims in Classes 1 and 2 (the "Unimpaired Classes") are Unimpaired under the Plan. Additionally, Section 2 of the Plan specifies that Administrative Expense Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

### (iii)     Specified Treatment of Impaired Classes—Section 1123(a)(3).

26.     The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Section 3 of the Plan specifies that Claims and Interests, as applicable, in Classes 3, 3A, 4, 5, 6, 7, and 8 (the "Impaired Classes") are Impaired under the Plan, and describes the treatment of such Classes.

### (iv)     No Discrimination—Section 1123(a)(4).

27.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each

respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v) Adequate Means for Plan Implementation—Section 1123(a)(5).

28. The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Section 4 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the wind-down and dissolution of the Debtors; (b) the appointment of a Plan Administrator to administer and wind-down the Debtors' Estates; (c) the creation and establishment of a Litigation Trust, and the appointment of the Litigation Trustee; (d) the preservation of the Retained Causes of Action for the benefit of the Litigation Trust; (e) the issuance, execution, delivery, filing and recording of documents, and the taking of actions consistent with the Plan, as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan; (f) the authorization for the Debtors and/or Reorganized Debtors, as applicable, to take all corporate actions contemplated by the Plan; and (g) the cancellation of existing securities and agreements, and the surrender of existing securities.

### (vi) Voting Power of Equity Securities—Section 1123(a)(6).

29. The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. Under the Plan, and pursuant to the Wind-Down Transactions, certain of the Debtors will be merged into Compute North LLC, and the governing corporate documents of each surviving Debtor will be amended and restated to provide that each such entity is prohibited from issuing non-voting equity securities. As such, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

### (vii) Directors and Officers—Section 1123(a)(7).

30. The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Section 4.2.5 of the Plan, on the Effective Date, all managers, officers, directors, sole director or Governing Body of the Debtors shall be deemed to have resigned their respective positions, and shall be replaced by the Plan Administrator. The appointment of the Plan Administrator as the sole manager, sole director and sole officer of the Reorganized Debtors on the Effective Date is consistent with the interests of creditors, equity security holders and public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### (viii) Section 1123(b)—Discretionary Contents of the Plan.

31. The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

### a. Impairment / Unimpairment of Classes—Section 1123(b)(1).

32. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Section 3 of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

### b. Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

33. The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Section 5 of the Plan provides that on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed rejected by the applicable Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as

of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (2) is a D&O Policy or relates to the indemnification or advancement obligations of the Debtors, the Reorganized Debtors or the Plan Administrator; (3) is subject to a rejection notice or assumption notice Filed with the Bankruptcy Court; (4) is a contract assumed by the Debtors or to be assumed by the Debtors and assigned to another third party, as applicable, pursuant to an Asset Purchase Agreement; or (5) is an Asset Purchase Agreement.

34.     The Debtors' determinations regarding the assumption (or assumption and assignment) or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases. Entry of this Order by the Court shall constitute approval of such assumptions, assumptions and assignments, and/or rejections, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### c. Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens—Section 1123(b)(3).

35.     Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan as set forth therein, by or against any Released Party, or holders of Claims, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors other than Causes of Action preserved pursuant to the Plan for the benefit of the Reorganized Debtors, including as set forth in Section 4.2.8 of the Plan.

36. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

37. Section 9.3 of the Plan contains the following releases granted by the Debtors (the "Debtor Release"):

> **Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in**

**part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; (2) any Causes of Action to the extent set forth on the Schedule of Retained Causes of Action; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court**

38. The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release. Such releases are a necessary and integral element of the Plan. Also, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting

any claim or Cause of Action released pursuant to the Debtor Release. The Debtor Releases are hereby approved as set forth in the Plan.

39.    The Debtors have satisfied their burden with respect to the propriety of the Debtor Release. The Debtor Release appropriately offers protection to parties that provided consideration to the Debtors and that participated in the Debtors' restructuring process. The Released Parties made significant concessions and contributions to the Chapter 11 Cases, including by actively supporting the Plan and the Chapter 11 Cases. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.

40.    Section 9.4 of the Plan contains the following releases granted by the Releasing Parties (the "Third-Party Release"):

> **Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, each Releasing Party (other than the Debtors or the Reorganized Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors**

**(including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations of any party under any Sale Order and any Asset Purchase Agreement, or any document, instrument, or agreement executed to implement the transactions set forth in such Sale Order and/or Asset Purchase Agreement, as applicable; (2) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court.**

41. The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Third-Party Release is consensual with respect to the Releasing Parties and is necessary and integral to the Plan. Also, the Third-Party Release is: (a) given in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests; (d) fair,

equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  The Third-Party Release is hereby approved as set forth in the Plan.

42.     The Releasing Parties were provided proper and sufficient notice of these Chapter 11 Cases, the Plan, the Third-Party Release, and the Plan and Disclosure Statement Objection Deadline through the service of the Solicitation Materials and distribution of the Ballot.  No further notice is necessary.  The Plan and each of the Solicitation Materials included the Third-Party Release provision in conspicuous, boldface type, and the Notice of Non-Voting Status informed Holders of Claims or Interests in the Debtors that they would be deemed to have consented to the Third-Party Release if they did not (a) timely return the Opt-Out Form included in the Notice of Non-Voting Status by the Voting Deadline or (b) object to their inclusion as a Releasing Party by the Objection Deadline.  The Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

43.     The exculpation, described in Section 9.5 of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability to any Entity for any exculpated Claims, and each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any

such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the applicable laws. The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

44.     The injunction provision set forth in Section 9.6 of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

45.     Section 4.2.8 of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. Causes of Action not released or exculpated by the Debtors will be preserved and transferred to, and vest in, the Reorganized Debtors in accordance with section 1123(b) and 1141 of the Bankruptcy Code, as provided by the Plan. The Plan is specific and unequivocal with respect to Causes of Action to be preserved and retained by the Debtors and complies with the standards set forth in *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Op., LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) and its progeny. All parties in interest received adequate notice with respect to such Retained Causes of Action. The provisions regarding Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests. For the avoidance of doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

### d.  Modification of Rights—Section 1123(b)(5).

46.     The Plan is consistent with 1123(b)(5) of the Bankruptcy Code. Section 3 of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims or Interests.

### e. Additional Plan Provisions—Section 1123(b)(6).

47.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### (ix)     Cure of Defaults—Section 1123(d).

48.     The Plan complies with section 1123(d) of the Bankruptcy Code.  The Assumed Executory Contracts and Unexpired Leases Schedule, filed with the Plan Supplement at Exhibit A, provides for the satisfaction of any cure amounts associated with Executory Contracts to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  In accordance with Section 5 of the Plan and Section 365 of the Bankruptcy Code, the Debtors will satisfy any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan on the Effective Date or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

### R.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).

49.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Each Debtor:

     a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

     b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable nonbankruptcy law, rule and regulation, the Solicitation Procedures Orders, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

S.      **Plan Proposed in Good Faith—Section 1129(a)(3).**

50.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the Wind-Down Restructuring, and the process leading to Confirmation of the Plan, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, in good faith and for the legitimate purpose of winding down the Debtors and liquidating the Estates of each of the Debtors and distributing the Assets of each such Estate on a fair and equitable basis, thereby maximizing the returns available to Holders of Claims and Interests, as applicable.  All the transactions contemplated by the Plan—including the Liquidating Trust Agreement and the Plan Administrator Agreement—were negotiated and consummated at arm's length, in good faith and without collusion, fraud, or attempt to take grossly unfair advantage of any party, allowing creditors to receive greater and more expeditious distributions under the Plan than they would receive through a chapter 7 liquidation.  The Debtors proposed the Plan with legitimate purposes including (1) facilitating the sale of the Debtors' remaining Assets; (2) providing a prompt and efficient liquidation under chapter 11; and (3) maximizing the recovery to Holders of Claims and Interests under the circumstances.  All unresolved objections, statements, or informal objections, if any, related to the Plan, the Disclosure Statement, or Confirmation of the Plan are overruled on the merits.

51.      The Debtors and each of the constituents who negotiated the Plan, and each of their respective officers, directors, managers, members, employees, advisors, and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation

contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

### T.  Payment for Services or Costs and Expenses—Section 1129(a)(4).

52.  The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### U.  Directors, Officers, and Insiders—Section 1129(a)(5).

53.  The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  Pursuant to Section 1.1.79 of the Plan, the Debtors disclosed the identity of the Plan Administrator in the Plan Supplement, who shall serve as the sole manager, sole director, and sole officer of the Reorganized Debtors. The Plan Administrator is competent, has relevant and valuable business and industry experience, and will assist with the wind down of the Debtors' Estates.  Additionally, the Debtors filed the Litigation Trust Agreement as part of the Plan Supplement.  The Trustee of the Litigation Trust shall pursue any and all Claims and Causes of Action vested in the Litigation Trust, as appropriate, and, pursuant to Section 1.1.71 of the Plan, shall be the Plan Administrator.  In addition, as set forth in the Confirmation Brief and consistent with the Litigation Trust Agreement, on the Effective Date, the Plan Oversight Committee shall be formed consisting of Touzi Capital, LLC and Decimal Digital Currency I, LLC to oversee the implementation of the Plan by the Plan Administrator.  The specific rights and responsibilities of the Plan Oversight Committee are set forth in and governed by the Plan Administrator Agreement.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**V.      No Rate Changes—Section 1129(a)(6).**

54.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**W.      Best Interest of Creditors—Section 1129(a)(7).**

55.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that were proffered or adduced in the Declarations in Support of Confirmation or at, prior to, or in connection with the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**X.      Acceptance by Certain Classes—Section 1129(a)(8).**

56.      Classes 1 and 2 are each Classes of Unimpaired Claims under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes or Class 4, the Debtors seek Confirmation of the Plan under section 1129(b), solely with respect to such Classes (collectively, the "Rejecting Classes"), rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy

Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**Y.  Treatment of Claims Entitled to Priority under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

57.  The treatment of Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, under Section 2 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Z.  Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

58.  The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, Class 3 voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**AA.  Feasibility—Section 1129(a)(11).**

59.  The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The Plan provides for the distribution of the proceeds from the sale of substantially all of the Debtors' Assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Any assets remaining in the Debtors' Estates as of the Effective Date will vest in the Reorganized Debtors, for the administration, liquidation and distribution by the Plan Administrator, in accordance with the Plan Administrator Agreement. The Litigation Trust shall administer the Litigation Trust assets and make distributions of any and all proceeds to Holders of Claims and Interests in accordance with the Plan and the Litigation Trust Agreement. Since none of the requirements for carrying out the Plan are contingent upon future, uncertain events (as any future litigation is not considered a contingent, uncertain future event) and the Plan provides fixed

governance mechanisms for both the Plan Administrator Agreement and the Litigation Trust Agreement, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

60.     As demonstrated by the evidence in the record, including the Declarations in Support of Confirmation, Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors, or any successor to the Reorganized Debtors under the Plan, except as provided under the Plan. Furthermore, the evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations in Support of Confirmation filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

61.     Additionally, the Debtors have the support of the Committee. The Debtors provided ample opportunity for the various parties to these Chapter 11 Cases to evaluate the feasibility of the Plan throughout these proceedings and during the negotiation of the current Plan. Accordingly, the Plan satisfies the feasibility requirements of section 1129(a)(11).

**BB.     Payment of Fees—Section 1129(a)(12).**

62.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 13.3 of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

**CC.** **Non-Applicability of Certain Sections—Sections 1129(a)(13), (14), (15), and (16).**

63.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors do not provide retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), do not owe domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.** **"Cram Down" Requirements—Section 1129(b).**

64.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect to the Rejecting Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that no holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all holders of Claims or Interests in the Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the Rejecting Classes because similarly situated holders will receive substantially similar treatment on account of their Claims or Interests in such class.  Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE.** **Only One Plan—Section 1129(c).**

65.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

28

**FF.  Principal Purpose of the Plan—Section 1129(d).**

66.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  Moreover, no governmental unit or any other party has requested that the Bankruptcy Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**GG.  Good Faith Solicitation—Section 1125(e).**

67.     The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**HH.  Satisfaction of Confirmation Requirements.**

68.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II.  Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

69.     Each of the conditions precedent to the Effective Date, as set forth in Section 10.1 of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Section 10.2 of the Plan.

**JJ.  Implementation.**

70.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

**KK.    Disclosure of Facts.**

71.     The Debtors have disclosed all material facts regarding the Plan and the transactions contemplated therein.

**LL.    Good Faith.**

72.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to wind-down the Debtors' businesses.  The Released Parties have made a substantial contribution to the Debtors' reorganization.

**MM.    Objections.**

73.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

74.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

75.     **Disclosure Statement**.  The information provided in the Disclosure Statement is adequate and the Disclosure Statement is approved in all respects on a final basis.

76. **Solicitation**. To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

77. **Notice of Confirmation Hearing**. The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

78. **Confirmation of the Plan**. The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement and amendments thereto, are incorporated by reference into and are an integral part of this Confirmation Order.

79. **Objections**. All objections, responses, statements, reservation of rights, and comments in opposition, if any, to final approval of the Disclosure Statement or Confirmation of the Plan that have not been withdrawn, waived, settled, resolved prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing or in this Confirmation Order are hereby overruled and denied on the merits, with prejudice. All objections to the entry of this Confirmation Order or to the relief granted herein that were not timely filed and served prior to the Plan and Disclosure Statement Objection Deadline are deemed waived and forever barred.

80. **Plan Modifications**. On December 19, 2022, the Debtors filed the Second Amended Plan [Docket No. 691] and a redline [Docket No. 692] showing the changes against the Initial Plan and the First Amended Plan. As noted above, on December 27, 2022, the Debtors, through their counsel, distributed the Solicitation Package to those Holders of Claims and Interests entitled to vote on the Plan (the "Solicited Plan"). On January 31, 2023, the Debtors filed the Third Amended Plan [Docket No. 889] and a redline [Docket No. 890] showing the changes between

the Solicited Plan and the Third Amended Plan. This Order includes certain modifications to the Plan to address formal and informal objections raised by various parties. The Plan Modifications do not materially and adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

81. **Plan Classification Controlling**. The terms of the Plan shall solely govern classification of Claims and Interests for purposes of the distributions to be made thereunder. The classification set forth on the ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for the purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

82. **Deemed Acceptance of Plan**. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as

modified by the Plan Modifications. No holder of a Claim or Interest shall be permitted to change its vote to accept the Plan as a consequence of the Plan Modifications.

83. **No Action Required**. Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Partnership Act, Delaware Limited Liability Company Act, or any other comparable state law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

84. **Binding Effect**. Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

85. **Procedures for Resolving Claims**. The procedures for resolving contingent, unliquidated, and disputed Claims contained in Section 8 of the Plan shall be, and hereby are, approved in their entirety.

86. **Certificate of Incorporation; By-Laws.** As set forth in the Wind-Down Transactions Memorandum, the Debtors contemplate: (a) the merger of the Merging Debtor

Subsidiaries[3] into Mining Project Wind Down LLC (f/k/a Compute North LLC) ("CN LLC"); (b) amending and restating the certificate of incorporation and by-laws for Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) ("Holdings") to include provisions prohibiting Holdings from issuing non-voting equity securities to the extent required by Bankruptcy Code § 1123(a)(6); (c) amending and restating the certificate of formation of each of CN LLC, Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) to include provisions prohibiting these entities from issuing non-voting equity securities to the extent required by Bankruptcy Code § 1123(a)(6); (d) Holdings issuing one share of stock to the Plan Administrator; and (e) CN LLC, Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) each issuing member interests to the Plan Administrator, who shall be the sole member of each of these entities. The Debtors will prepare and execute an Agreement of Merger among CN LLC and the Merging Debtor Subsidiaries, and each of these entities shall execute appropriate consents authorizing the merger. On the Effective Date of the Plan, the Debtors will file the executed Certificate of Merger with the Delaware Secretary, and all of the Merging Debtor Subsidiaries will merge with and into CN LLC, with CN LLC being the surviving entity of such merger.

---

[3]    As used herein, "Merging Debtor Subsidiaries" means: Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC). For the avoidance of doubt, Debtors Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) and Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) are not Merging Debtor Subsidiaries.

87.     **Corporate Action**.     On the Effective Date, all actions and transactions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code. On and after the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors or managers of the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

88.     **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**.  On and after the Effective Date, the Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other Governing Body, subject to the provisions of the Plan and the Plan Administrator Agreement. In addition, on the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, or Governing Body of the Reorganized Debtors shall cease and all such persons shall be deemed to have resigned, solely in their capacities as such.  On the Effective Date, the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, as applicable, and shall succeed to the powers of the Reorganized Debtors' managers, directors, officers, and other Governing Bodies without any further action required on the part of any such Reorganized Debtor, the equity holders of the Debtors, the officers,

35

directors, managers, or Governing Body, as applicable, of the Reorganized Debtors, or the members of any Reorganized Debtor. From and after the Effective Date, and subject to the Plan Administrator Agreement and the Litigation Trust Agreement, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors.

89. **Additional Transactions Authorized under the Plan**. On or after the Effective Date, the Reorganized Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan.

90. **Provisions Governing Distributions**. The distribution provisions of Section 6 of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

91. **Comprehensive Settlement of Claims and Controversies.** Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of this Confirmation Order constitutes the Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are in the best interests of (a) the Debtors, the Reorganized Debtors, the Estates, and their respective property and (b) Claim and Interest holders, and are fair, equitable, and reasonable.

92. **Assumption or Rejection of Contracts and Leases**. On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, <u>unless</u> such Executory Contract or Unexpired Lease: (1) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (2) is a D&O Policy or relates to the indemnification and advancement obligations of the Debtors, the Reorganized Debtors or the Plan Administrator; (3) is subject to a rejection notice or assumption notice Filed with the Bankruptcy Court; (4) is a contract assumed by the Debtors or to be assumed by the Debtors and assigned to another third party, as applicable, pursuant to an Asset Purchase Agreement; or (5) is an Asset Purchase Agreement. Each Executory Contract and Unexpired Lease assumed pursuant to Section 5 of the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption.

93. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

94. Except as set forth in the Plan Supplement and in paragraph 118 below, there are no anticipated cure obligations with respect to any Executory Contract or Unexpired Lease to which the Debtors are a party. Unless otherwise determined by the Bankruptcy Court pursuant to

a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Executory Contract or Unexpired Lease assumed pursuant to the Plan. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or cure amount will be deemed to have assented to such assumption, assumption and assignment, or cure amount.

95.    Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtors and their Estates, and (ii) the requirements of section 365(b)(l) of the Bankruptcy Code are deemed satisfied, and (iii) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

96.    All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

97.    Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments,

supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

98.     **Survival of Indemnification, Advancement and Exculpation Obligations**.  The obligations of the Debtors to indemnify and exculpate any officers of the Debtors that are officers of the Reorganized Debtors, and to advance defense costs, immediately following the occurrence of the Effective Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any such officers based upon any act or omission related to service with, for, or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, this paragraph affects only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity, advancement or exculpation owed to or for the benefit of officers of the Debtors that are officers of the Reorganized Debtors immediately following the occurrence of the Effective Date, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors.

99.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section 10 of the Plan.

100.     **Final Fee Applications**.     All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503,

and/or 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Cases) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account. The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

101. **Release, Exculpation, Discharge, and Injunction Provisions**. The release, exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and authorized as set forth on the record of the Confirmation Hearing, and such provisions are effective and binding on all Persons and Entities to the extent provided therein.

102. **Compliance with Tax Requirements**. In connection with the Plan and all distributions thereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtors believes are reasonable and appropriate. The Debtors or the Reorganized Debtors, as applicable, reserves the right to

allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

103.    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code:  (a) the issuance, transfer or exchange of equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.  This Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

104.    **Insurance Policies and Agreements**.  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the

best interest of the Debtors and their Estates. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

105. **Documents, Mortgages, and Instruments**. Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

106. **Continued Effect of Stays and Injunction**. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

107. **Nonseverability of Plan Provisions upon Confirmation**. Each provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided in paragraph 108 below; and (c) nonseverable and mutually dependent.

108. **Amendment or Modification of the Plan**. Subject to section 1127 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan. Any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

109. **Governing Law**. Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with the Plan, and subject further to Section 13.1 of the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

110. **Applicable Nonbankruptcy Law**. The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

111. **Governmental Approvals Not Required**. Except as set forth in paragraph 114 below, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

112. **Notice to Debtors, Reorganized Debtors, or Post Effective Date Committee.** All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors with respect to these Chapter 11 Cases, the Plan, or this Confirmation Order to be effective shall be in writing and addressed as follows:

| To the Debtors | With a Copy to |
|---|---|

| Mining Project Wind Down Holdings, Inc.<br>300 North LaSalle, Suite 1420<br>Chicago, Illinois 60654 | PAUL HASTINGS LLP<br>600 Travis Street, 58th Floor<br>Houston, Texas 77002<br>Attn: James T. Grogan III, Esq.<br><br>-and-<br><br>PAUL HASTINGS LLP<br>71 S. Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Attn: Matthew J. Micheli, Esq.<br>Michael Jones, Esq. |
|---|---|
| **To the Reorganized Debtors** ||
| Mining Project Wind Down Holdings, Inc.<br>300 North LaSalle, Suite 1420<br>Chicago, Illinois 60654 ||

113. **Opt-Out Parties**. Notwithstanding anything to the contrary in this Confirmation Order, the Third-Party Release set forth in Section 9.4 of the Plan and any other provisions of the Plan invoking or effectuating the Third-Party Release set forth in Section 9.4 of the Plan, shall not apply to any holder of a Claim or Interest that (i) timely elected to opt out of the Third-Party Release by properly completing and returning an opt-out election form, or (ii) timely objected to the Third-Party Release and such objection was not resolved as of the entry of this Confirmation Order.

114. **Governmental Units.** Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to a "Governmental Unit" (as defined in section 101(27) of the Bankruptcy Code) that is not a "Claim" (as defined in section 101(5) of the Bankruptcy Code); (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date; or (d) any liability to a Governmental

Unit on the part of any non-debtor, except to the extent that such non-debtor is exculpated for acting in its fiduciary capacity to the Debtors' estates as explicitly provided for in the Bankruptcy Code. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; *provided* that the Bankruptcy Court retains jurisdiction to determine whether police or regulatory liabilities asserted by any Governmental Unit or other entity are discharged or otherwise barred by this Confirmation Order. Notwithstanding any provision of the Plan or this Order, (x) the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, and (y) the Debtors', Reorganized Debtors', and/or their successors' and assigns' defenses thereto, shall be preserved and are unaffected. Nothing in this Confirmation Order or the Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan to adjudicate any defense asserted under this Confirmation Order or the Plan.

115. **Allowed Claims**. For the avoidance of doubt, a Claim shall be deemed "Allowed" under the Plan if (a) the holder of such Claim has timely and properly filed a proof of Claim pursuant to the Claims Bar Date Order (except as otherwise explicitly specified in the Plan, this Confirmation Order, or any Final Order) and neither the Debtors nor the Plan Administrator, as applicable, have objected to such Claim by the Claims Objection Bar Date, (b) such Claim is listed on the Debtors' schedules of assets and liabilities (as amended or modified) and is not described thereon as "disputed," "contingent," or "unliquidated," or (c) such Claim is otherwise allowed pursuant to an order of this Court or settled in accordance with the Plan.

116. **Foundry**. Notwithstanding anything to the contrary contained in the Plan (including Section 9), the Plan Supplement, the Confirmation Order or any related document,

instrument, agreement or order, (a) nothing in the Plan (including Section 9), the Plan Supplement, the Confirmation Order or any related document, instrument, agreement or order shall, or shall be deemed to, terminate, release, waive, discharge, enjoin, cancel, modify or affect (i) the Asset Purchase Agreement, dated as of November 19, 2022, by and between Compute North LLC, Compute North SD, LLC, Compute North Texas LLC, CN Mining LLC, CN Minden LLC, and Foundry Digital LLC ("Foundry") (as amended, supplemented, or modified, the "Foundry APA"), the *Order (I) Approving the Sale of the Purchased Assets Free and Clear of All Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 531] (the "Foundry Sale Order"), the *Order (I) Authorizing Debtors to Assume and Assign Executory Contracts to Foundry Digital LLC Pursuant to Section 365 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 634] (the "Foundry Assumption Order"), or any document, instrument, agreement or order entered into or entered in connection therewith, each of which shall survive and remain in full force, (ii) any rights, title, interests, remedies, benefits, defenses, claims and/or Causes of Action of Foundry, the Purchaser, any Purchaser Designee, and/or any of their respective affiliates, Representatives, successors and assigns under or related to the Foundry APA, the Foundry Sale Order, the Foundry Assumption Order or any related document, instrument, agreement or order (including the right to enforce any of the foregoing in compliance therewith), (iii) any of the Purchased Assets (including any Assigned Contracts, the Purchaser's or Purchaser Designee's rights thereunder, or any claims or Causes of Action of the Debtors constituting Purchased Assets), and/or (iv) any obligations, agreements, covenants, representations, warranties, liabilities of, and/or waivers by, any of the Seller, the Debtors, the Reorganized Debtors, and their respective successors, assigns and representatives under the Foundry APA, the Foundry Sale

Order, the Foundry Assumption Order and/or any document, instrument, agreement or order entered into or entered (or that may be entered into or entered) in connection with the transactions contemplated under the Foundry APA; and (b) the contracts, documents, agreements and/or instruments relating to Minden, Nebraska included in the Amended Schedule 8.1(f) of the Foundry APA, and/or any other contract, agreement, document and/or instrument constituting a Minden Purchased Asset, (i) shall be assumed, assigned or acquired only in accordance with the Foundry APA, the Foundry Sale Order, the Foundry Assumption Order and/or another agreement, contract, document, instrument and/or order entered into in furtherance of the transactions contemplated under the Foundry APA, and (ii) if not assumed, assigned or acquired in accordance with clause (b)(i) of this paragraph, shall be, or shall be deemed, rejected effective as of the Effective Date pursuant to this Confirmation Order only if the Minden Closing does not occur and the Minden Outside Date has passed.[4]

117.    **Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to the Claims of Howard County, Texas, and the taxing entities for which it collects (the "Texas Taxing Authorities") (the "Texas Taxing Authority Claims"), (a) to the extent the Texas Property Tax Code provides for interest and/or penalties with respect to any portion of the Texas Taxing Authority Claims, such interest and/or penalties shall be included in the Texas Taxing Authority Claims, (b) the liens securing the Texas Taxing Authority Claims shall be retained until the applicable Texas Taxing Authority Claims are paid in full, and (c) the Debtors or the Reorganized Debtors, as applicable, shall pay Allowed Texas Taxing Authority Claims on the later of (i) the date the Texas Taxing Authority Claims become

---

[4]    Capitalized terms used but not otherwise defined in this paragraph 116 shall have the meanings ascribed to such terms in the Foundry APA.

due pursuant to the Texas Property Tax Code and in the ordinary course of business (subject to any applicable extensions, grace periods, or similar rights under the Texas Property Tax Code) and (ii) the Effective Date (or as soon as reasonably practicable thereafter). All Post-Petition taxes due to the Texas Taxing Authorities shall be paid in the ordinary course of business without the necessity of the filing of Administrative Claims for such taxes. All rights and defenses of the Debtors and the Reorganized Debtors under non-bankruptcy law are reserved and preserved with respect to such Texas Taxing Authority Claims."

118.   **BMO Harris Bank N.A.**  Notwithstanding anything to the contrary in the Plan (as amended), Plan Supplement and Assumption Schedule or the Confirmation Order, the following Executory Contracts: Treasury Services Addendum, dated January 19, 2022 between BMO Harris Bank N.A. and Compute North LLC; and Treasury Services Agreement, dated February 1, 2022 between BMO Harris Bank N.A. and Compute North Holdings Inc., are assumed through this Order with a total cure amount of $5,000 which shall be paid on the Effective Date or as soon as reasonably practicable thereafter to BMO Harris Bank N.A. c/o Chapman and Cutler LLP, Attn: James P. Sullivan, 320 South Canal Street, Chicago, Illinois 60606.

119.   **Marathon Settlement.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, including the Releases set forth in Section 9.4 of the Plan, nothing in the Plan or this Confirmation Order will release any entity's obligations to Marathon Digital Holdings, Inc. ("Marathon") or Marathon's claims against such entity arising from any contract, instrument, document, or agreement with Marathon that has been assigned by the Debtors (in whole or in part, whether before or after the Petition Date).  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall affect, alter, or supersede any rights or obligations of any party (or any party's successor or assign) set forth in the (i) *Stipulation and Agreed Order by and Among the*

*Debtors, Marathon Digital Holdings, Inc., Generate Lending, LLC and Certain Affiliates and MVP Logistics, LLC, Concerning Marathon's Miners* [Docket No. 708] or (ii) *Order Approving Settlement with Marathon Digital Holdings, Inc. Pursuant to Bankruptcy Rule 9019* [Docket No. 947].

120. **Decimal Objection**. On February 1, 2023, Decimal Digital Currency I, LLC filed an objection to the Plan (the "Decimal Objection").[5] The Decimal Objection has been resolved in accordance with the Term Sheet attached hereto as **Exhibit B**. The Term Sheet is hereby approved and the Debtors and Decimal are authorized to take all actions necessary to effectuate the transactions set forth in the Term Sheet. The Decimal Objection is withdrawn with prejudice.

121. **Bootstrap Objection.** The Objection to the Plan filed by Corpus Christi Energy Park, LLC ("CCEP")[6] is resolved on the following terms. If the litigation proposed to be brought against CCEP by the Litigation Trust results in a judgment requiring CCEP to pay the Litigation Trust solely on account of a cause of action arising under Chapter 5 of the Bankruptcy Code, then CCEP shall be deemed to hold a Class 3 General Unsecured Claim in an amount to be determined by the Court, provided that CCEP has paid the amount, or turned over any property, for which CCEP is liable under Chapter 5 of the Bankruptcy Code, and provided further that the Allowed Class 3 amount of such General Unsecured Claim for distribution purposes shall not exceed $5 million. If the litigation proposed to be brought against CCEP by the Litigation Trust results in a judgment, in whole or in part, that requires CCEP to pay the Litigation Trust on account of a cause

---

[5] *Decimal Digital Currency I, LLC's (I) Objection to (A) Confirmation of the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (B) Final Approval of the Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates and (II) Reservation of Rights* [Docket No. 899].

[6] *Corpus Christi Energy Park, LLC's Objection to (I) Final Approval of Debtors' Disclosure Statement and (II) Confirmation of Debtors' Liquidating Chapter 11 Plan* [Docket No. 897].

of action against CCEP for breach of contract, then CCEP's Claims against Mining Project Wind Down Corpus Christi LLC ("CNCC") will remain classified in Class 3A under the Plan for all purposes.  If the Court finds that CCEP is not liable to the Litigation Trust, CCEP shall be deemed to hold a Class 3 General Unsecured Claim in an amount to be determined by the Court, provided that the Allowed Class 3 amount of such General Unsecured Claim for distribution purposes shall not exceed $5 million. The foregoing agreement does not determine, impair, or prejudice any potential offset rights that may be asserted and does not prejudice any subsequent settlement the parties may reach in the future.

122.    **Notice of Confirmation and Effective Date**.  The Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit C** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known holders of Claims and Interests and the Bankruptcy Rule 2002 service list within three Business Days after the date of the entry of this Confirmation Order.  On, or as soon as reasonably practicable after, the Effective Date, the Reorganized Debtors shall file with the Court a notice of the occurrence of the Effective Date.  Notwithstanding the above, no notice of the Confirmation or Effective Date or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The above referenced notices are adequate under the circumstances of these chapter 11 cases and no other or further notice is necessary.

123.    **Effect of Non-Consummation**.  If consummation of the Plan does not occur, then the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan

or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

124. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

125. **Waiver of Stay**. For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

126. **References to and Omissions of Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

127. **Headings**. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

128. **Effect of Conflict**. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

129. **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan shall have no force and effect unless the Bankruptcy Court has entered this Confirmation Order. The filing of the Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors or any other Person with respect to Claims against and Interests in the Debtors.

130. **Final Order**. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

131. **Retention of Jurisdiction**. The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

132. **Conditions to Confirmation Pursuant to Plan**. Confirmation and consummation of the Plan is subject to the terms and condition set forth in Section 10 of the Plan, including, without limitation, conditions to the Effective Date, all of which is incorporated herein by reference.

 Signed: February 16, 2023

Marvin Isgur<br/>
United States Bankruptcy Judge

**Exhibit A**

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a | ) | Case No. 22-90273 (MI) |
| Compute North Holdings, Inc.), *et al.*,[1] | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

**THIRD AMENDED JOINT LIQUIDATING CHAPTER 11 PLAN OF**
**MINING PROJECT WIND DOWN HOLDINGS, INC. (F/K/A**
**COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES**

---

PAUL HASTINGS LLP
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email:   lucdespins@paulhastings.com
         sayanbhattacharyya@paulhastings.com
         danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email:   mattmicheli@paulhastings.com
         michaeljones@paulhastings.com

*Counsel to the Debtors*
*and Debtors in Possession*


Dated: January 31, 2023

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, IL 60654.

# **TABLE OF CONTENTS**

**Page**

SECTION 1. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ...................................................................................................................1

    *1.1    Defined Terms.* ............................................................................................................1

    *1.2    Rules of Interpretation.* ...........................................................................................11

    *1.3    Computation of Time.* ..............................................................................................12

    *1.4    Governing Law.* .......................................................................................................12

    *1.5    Reference to Monetary Figures.* ..............................................................................13

    *1.6    Reference to the Debtors or the Reorganized Debtors* ...........................................13

    *1.7    Controlling Document.* ............................................................................................13

SECTION 2. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS .............................................................................................................................13

    *2.1    Administrative Claims.* ............................................................................................13

    *2.2    Professional Fee Claims.* ........................................................................................14

    *2.3    Priority Tax Claims.* ................................................................................................15

SECTION 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .....................15

    *3.1    Classification of Claims and Interests.* ..................................................................15

    *3.2    Treatment of Claims and Interests.* ........................................................................16

    *3.3    Special Provision Governing Unimpaired Claims.* ................................................18

    *3.4    Elimination of Vacant Classes.* ..............................................................................18

    *3.5    Voting Classes, Presumed Acceptance by Non-Voting Classes.* ............................19

    *3.6    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.* .................19

    *3.7    Controversy Concerning Impairment* ....................................................................19

    *3.8    Subordinated Claims* ..............................................................................................19

SECTION 4. MEANS FOR IMPLEMENTATION OF THE PLAN ..................................................19

    *4.1    *General Settlement of Claims and Interests. ..........................................................19

    *4.2    *Wind-Down Restructuring. ......................................................................................20

    *4.3    Tax Matters.* .............................................................................................................23

    *4.4    Cancellation of Existing Securities and Agreements* .............................................23

    *4.5    Corporate Action.* ...................................................................................................23

    *4.6    Indemnification Obligations.* ..................................................................................23

    *4.7    Section 1146 Exemption.* .........................................................................................24

    *4.8    Director and Officer Liability Insurance.* ..............................................................24

SECTION 5. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............24

    *5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases* ...........24

    *5.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases* .............25

    *5.3    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases* ..........................................................................................................................25

| | | |
|---|---|---|
| 5.4 | Insurance Policies, including D&O Insurance. | 25 |
| 5.5 | Reservation of Rights. | 25 |
| 5.6 | Nonoccurrence of Effective Date. | 26 |
| 5.7 | Contracts and Leases Entered Into After the Petition Date. | 26 |

SECTION 6. PROVISIONS GOVERNING DISTRIBUTIONS .................................................. 26

| | | |
|---|---|---|
| 6.1 | Timing of Distributions. | 26 |
| 6.2 | Distribution Agent. | 26 |
| 6.3 | Rights and Powers of the Distribution Agent. | 26 |
| 6.4 | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 27 |
| 6.5 | Manner of Payment. | 28 |
| 6.6 | Compliance with Tax Requirements | 28 |
| 6.7 | Allocations. | 28 |
| 6.8 | Foreign Currency Exchange Rate. | 28 |
| 6.9 | Setoffs and Recoupment. | 28 |
| 6.10 | Claims Paid or Payable by Third Parties. | 29 |

SECTION 7. THE PLAN ADMINISTRATOR AND THE LITIGATION TRUST ....................... 29

| | | |
|---|---|---|
| 7.1 | The Plan Administrator. | 29 |
| 7.2 | The Litigation Trust. | 29 |
| 7.3 | Wind-Down. | 30 |
| 7.4 | Tax Returns. | 31 |
| 7.5 | Dissolution of the Reorganized Debtors. | 31 |

SECTION 8. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .................................................................................................................. 31

| | | |
|---|---|---|
| 8.1 | Allowance of Claims. | 31 |
| 8.2 | Claims Administration Responsibilities. | 31 |
| 8.3 | Disputed Claims Process. | 32 |
| 8.4 | Estimation of Claims and Interests | 32 |
| 8.5 | Adjustment to Claims or Interests without Objection. | 32 |
| 8.6 | Disallowance of Claims or Interests. | 32 |
| 8.7 | No Distributions Pending Allowance. | 33 |
| 8.8 | Distributions After Allowance. | 33 |
| 8.9 | No Postpetition Interest on Claims. | 33 |

SECTION 9. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .............. 33

| | | |
|---|---|---|
| 9.1 | Effect of Confirmation. | 33 |
| 9.2 | **Release of Liens**. | 33 |
| 9.3 | **Releases by the Debtors**. | 34 |
| 9.4 | **Releases by the Releasing Parties**. | 35 |
| 9.5 | **Exculpation**. | 36 |
| 9.6 | **Injunction**. | 36 |

9.7      Protections Against Discriminatory Treatment. ...................................................37

9.8      Document Retention. ...........................................................................................37

9.9      Reimbursement or Contribution. .........................................................................37

SECTION 10.  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...................37

10.1     Conditions Precedent to the Effective Date. ......................................................37

10.2     Waiver of Conditions. .........................................................................................38

10.3     Effect of Failure of Conditions ..........................................................................38

10.4     Substantial Consummation ..................................................................................38

SECTION 11.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...............38

11.1     Modification and Amendments ...........................................................................38

11.2     Effect of Confirmation on Modifications ...........................................................39

11.3     Revocation or Withdrawal of Plan. ....................................................................39

SECTION 12.  RETENTION OF JURISDICTION .............................................................................39

SECTION 13.  MISCELLANEOUS PROVISIONS .............................................................................41

13.1     Immediate Binding Effect. ..................................................................................41

13.2     Additional Documents. ........................................................................................41

13.3     Payment of Statutory Fees. .................................................................................41

13.4     Statutory Committee and Cessation of Fee and Expense Payment. ....................41

13.5     Reservation of Rights. .........................................................................................41

13.6     Successors and Assigns. ......................................................................................42

13.7     Notices. ................................................................................................................42

13.8     Term of Injunctions or Stays. .............................................................................42

13.9     Entire Agreement. ...............................................................................................42

13.10    Plan Supplement. ................................................................................................42

13.11    Nonseverability of Plan Provisions ....................................................................43

13.12    Votes Solicited in Good Faith. ...........................................................................43

13.13    Closing of Chapter 11 Cases. .............................................................................43

13.14    Waiver or Estoppel. ............................................................................................43

13.15    Creditor Default ..................................................................................................43

**INTRODUCTION**

Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), propose this joint liquidating chapter 11 plan for the resolution of the outstanding claims against, and equity interests in, the Debtors. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Wind-Down Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**SECTION 1.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

1.1     *Defined Terms*.

As used in this Plan, capitalized terms have the meanings set forth below.

1.1.1     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 327, 328, 330, 365, 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through and including the Effective Date; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (d) any U.S. Trustee Fees.

1.1.2     "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

1.1.3     "*Administrative and Priority Claims Reserve*" means a reserve established by the Plan Administrator on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent that such claims have not been paid in full on or before the Effective Date.

1.1.4     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the referenced Entity was a debtor in a case under the Bankruptcy Code.

1.1.5     "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502, 503 or 507 of the Bankruptcy Code, to the extent

applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to disallowance under section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

1.1.6   "*Asset Purchase Agreement*" means a definitive purchase agreement for an Asset Sale, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

1.1.7   "*Asset Sale*" means a sale of the Estates' assets pursuant to section 363 of the Bankruptcy Code or the Plan.

1.1.8   "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which (a) shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, and which, if applicable, shall be in form and substance acceptable to relevant Purchaser(s) pursuant to an Asset Purchase Agreement or (b) was assumed in accordance with any Asset Purchase Agreement approved by a Sale Order.

1.1.9   "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

1.1.10   "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended, and as applicable to the Chapter 11 Cases.

1.1.11   "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

1.1.12   "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

1.1.13   "*Bar Date Order*" means the Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), and (IV) Granting Related Relief [Docket No. 86].

1.1.14   "*Bar Date(s)*" means the applicable date(s) designated by the Bankruptcy Court (or pursuant to the Bankruptcy Rules) as the last date for filing Proofs of Claims or Interests in the Chapter 11 Cases of the respective Debtors, including the Claims Bar Date, the Governmental Unit Bar Date, and the Administrative Claims Bar Date.

1.1.15   "*Business Day*" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.1.16   "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

1.1.17   "*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-

contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

1.1.18    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

1.1.19    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

1.1.20    "*Claims and Noticing Agent*" means Epiq Corporate Restructuring LLC, the claims, noticing, and solicitation agent retained or to be retained by the Debtors in the Chapter 11 Cases.

1.1.21    "*Claims Bar Date*" means the date established by Final Order of the Bankruptcy Court, including, without limitation, the Bar Date Order, by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

1.1.22    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

1.1.23    "*Class*" means a class of Claims or Interests as set forth in Section 3 of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

1.1.24    "*CN Member*" means Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC).

1.1.25    "*CNCC GUC Claim*" means any Claim against Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Claim; (d) an Other Priority Claim; (e) an Intercompany Claim; or (f) a Claim subordinated under section 510(b) of the Bankruptcy Code. For the avoidance of doubt, "CNCC GUC Claim" includes the amount of any Claim that is otherwise a Secured Claim to the extent the value of the collateral securing such Claim is less than the amount of such Claim, as determined in accordance with section 506(a) of the Bankruptcy Code.

1.1.26    "*Collateral*" means any property or interest in property of the Debtors' Estates subject to a Lien, charge, right of setoff, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.27    "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code pursuant to that certain Notice of Appointment of Creditors' Committee Filed by the U.S. Trustee on October 6, 2022 [Docket No. 139].

1.1.28    "*Combined Hearing*" means the hearing held by the Bankruptcy Court to consider final approval of the Disclosure Statement and Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128

and 1129 of the Bankruptcy Code, which will commence on February 16, 2023, at 1:30 p.m., prevailing Central Time, as such hearing may be continued from time to time.

1.1.29   "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.30   "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

1.1.31   "*Confirmation Hearing*" means the Combined Hearing, as it relates to Confirmation of the Plan.

1.1.32   "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors.

1.1.33   "*Consummation*" means the occurrence of the Effective Date under the Plan.

1.1.34   "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.1.35   "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan or assumed and assigned under an Asset Purchase Agreement pursuant to section 365 of the Bankruptcy Code, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan or assumed and assigned to a Purchaser in connection with an Asset Sale; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Assigned Contracts, including the assignee's financial wherewithal and willingness to perform under such executory contract or unexpired lease.

1.1.36   "*Cure/Assumption Objection Deadline*" means the date that is 14 days after Filing of the Assumed Executory Contracts and Unexpired Leases Schedule and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedule with such modification and (b) the date of the scheduled Confirmation Hearing or Sale Hearing, as applicable; *provided further that* the forgoing shall not apply to any Executory Contract or Unexpired Lease that has been assumed and assigned pursuant to a Final Order of the Bankruptcy Court.

1.1.37   "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

1.1.38   "*Debtor Release*" means the release set forth in Section 9.3 of the Plan.

1.1.39   "*Disclosure Statement*" means the related disclosure statement with respect to this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as may be amended, supplemented, or

modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.1.40 "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; and (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which an objection or request for estimation has been Filed.

1.1.41 "*Distribution Agent*" means the Plan Administrator or the Entity or Entities selected by the Plan Administrator, as applicable, to make or facilitate distributions pursuant to the Plan.

1.1.42 "*Distribution Date*" means any date that is: (a) the Initial Distribution Date; (b) any Interim Distribution Date; or (c) the Final Distribution Date, as the context requires.

1.1.43 "*Distribution Reserve Accounts*" means the respective accounts holding each of the reserves established pursuant to this Plan, and such other reserve accounts as may be established by the Plan Administrator, including the Administrative and Priority Claims Reserve, the Plan Administration Operating Reserve, and the Secured Claims Reserve.

1.1.44 "*Distribution Record Date*" means the record date for purposes of determining which holders of Allowed Claims are eligible to receive distributions under the Plan on account of Allowed Claims, which date shall be on or as soon as is reasonably practicable after the Effective Date.

1.1.45 "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Section 10 of the Plan have been satisfied or waived in accordance with Section 10 of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

1.1.46 "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.47 "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by such Debtor after the Petition Date and before the Effective Date.

1.1.48 "*Excess Sale Proceeds*" means, in the event of an Asset Sale, an amount equal to (a) the aggregate net cash proceeds of such Asset Sale *less* (b) the aggregate amount required (i) to pay in full in Cash all Allowed Claims that are senior to General Unsecured Claims in priority of payment under the Bankruptcy Code or applicable nonbankruptcy law and (ii) to fund the Wind-Down Budget.

1.1.49 "*Excluded Customer Equipment*" means any customer-owned bitcoin mining equipment, wherever located, in which the Debtors hold a lien or security interest, the disposition of which has not been addressed by an order of the Bankruptcy Court prior to the Confirmation Date, which equipment is addressed under Section 4.2.3 of this Plan.

1.1.50 "*Exculpated Parties*" each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) the Committee and each of its members.

1.1.51 "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.52 "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

1.1.53    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

1.1.54    "*Final Distribution Date*" means the date on which a distribution is made by the Distribution Agent after the Reorganized Debtors' assets have been completely reduced to Cash, abandoned or otherwise disposed of, and the Reorganized Debtors have resolved all Disputed Claims and paid all Allowed Administrative Claims and Allowed Priority Claims.

1.1.55    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

1.1.56    "*General Unsecured Claim*" means any Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Claim; (d) a Parent GUC Claim, (e) an Other Priority Claim; (f) an Intercompany Claim; or (g) a Claim subordinated under section 510(b) of the Bankruptcy Code. For the avoidance of doubt, "General Unsecured Claim" includes the amount of any Claim that is otherwise a Secured Claim to the extent the value of the collateral securing such Claim is less than the amount of such Claim, as determined in accordance with section 506(a) of the Bankruptcy Code.

1.1.57    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

1.1.58    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.1.59    "*Governmental Unit Bar Date*" means the date by which Proofs of Claim must be Filed with respect to Claims held by Governmental Units.

1.1.60    "*Holdings*" means Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.).

1.1.61    "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

1.1.62    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.1.63    "*Initial Distribution Date*" means, except as set forth in this Plan, the first Business Day at least 60 days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Plan Administrator, to make initial Distributions under this Plan.

1.1.64    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

1.1.65    "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

1.1.66    "*Interests*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, and including all common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, and any other equity, ownership, beneficial or profits interests in any of the Debtors,

whether or not transferable, and options, warrants, rights, or other securities, agreements or interests to acquire or subscribe for, or which are exercisable, convertible or exchangeable into or for the shares (or any class thereof) of, common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, or other equity, ownership, beneficial or profits interests in or of any Debtor, contractual or otherwise, including equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers or contractors of the Debtors (in each case whether or not arising under or in connection with any employment agreement).

1.1.67   "*Interim Distribution Date*" means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Plan Administrator determines that an interim distribution made to Holders of Allowed Claims in light of, among other things, resolutions of Disputed Claims and the administrative costs of such a Distribution.

1.1.68   "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, and as applicable to the Chapter 11 Cases.

1.1.69   "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

1.1.70   "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.71   "*Litigation Trust*" means the grantor trust created pursuant to Section 4.2.6 of the Plan to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Claims and Causes of Action set forth in the Schedule of Retained Causes of Action, in accordance with the terms of the Litigation Trust Agreement.  The Plan Administrator will also serve as trustee of the Litigation Trust.

1.1.72   "*Litigation Trust Agreement*" means the agreement governing the Litigation Trust.  The Litigation Trust Agreement will be included in the Plan Supplement.

1.1.73   "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.74   "*Parent Equity Interests*" means the outstanding Class A Voting Common Stock and the Class B Voting Common Stock, issued by Holdings, including any warrants, options or similar grants to acquire such interests, as well as any Claim subordinated under section 510(b) of the Bankruptcy Code that arises from rescission of a purchase or sale of, or for damages arising from the purchase or sale of, an equity interest in Holdings.

1.1.75   "*Parent GUC Claim*" means any Claim against Holdings that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Claim; (d) an Other Priority Claim; (e) an Intercompany Claim; or (f) a Claim subordinated under section 510(b) of the Bankruptcy Code.  For the avoidance of doubt, "Parent GUC Claim" includes the amount of any Claim against Holdings that is otherwise a Secured Claim to the extent the value of the collateral securing such Claim is less than the amount of such Claim, as determined in accordance with section 506(a) of the Bankruptcy Code.

1.1.76   "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.1.77   "*Petition Date*" means September 22, 2022.

1.1.78   "*Plan*" means this third amended joint chapter 11 plan of liquidation, the Plan Supplement, and all exhibits and schedules annexed hereto or referenced herein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.1.79   "*Plan Administrator*" means the Person selected by the Debtors to administer the Plan Administrator Assets and effectuate the Wind-Down Restructuring and serve as trustee of the Litigation Trust.  All costs, liabilities,

and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets or the Litigation Trust assets, as applicable, subject to and in accordance with the Wind-Down Budget. The identity of the Plan Administrator and compensation payable to the Plan Administrator under the Plan will be disclosed in the Plan Supplement.

    1.1.80    "*Plan Administrator Agreement*" means, that certain agreement entered into no later than the Effective Date setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation, all of which shall be consistent with the applicable provisions of the Plan. The Plan Administrator Agreement will be included in the Plan Supplement.

    1.1.81    "*Plan Administrator Assets*" means, on the Effective Date, all assets of the Estates vested in the Reorganized Debtors to be administered by Plan Administrator, and, thereafter, all assets held from time to time by Reorganized Debtors to be administered by Plan Administrator.

    1.1.82    "*Plan Administrator Operating Reserve*" means the reserve in the initial amount as determined by the Debtors established on the Effective Date and which is deemed necessary by the Plan Administrator to satisfy its anticipated fees, costs and expenses in accordance with the Wind-Down Budget.

    1.1.83    "*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

    1.1.84    "*Plan Oversight Committee*" means a committee formed on the Effective Date consisting of at least two members to be selected by the Committee to oversee the implementation of the Plan by the Plan Administrator following the Effective Date, whose specific rights and responsibilities are set forth in Section 4.2 of the Plan Administrator Agreement. The members of the Plan Oversight Committee will be identified in the Plan Supplement.

    1.1.85    "*Plan Sale*" means any Asset Sale(s) consummated pursuant to the Plan.

    1.1.86    "*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the Assumed Executory Contracts and Unexpired Leases Schedule; (b) the Schedule of Retained Causes of Action; (c) the Wind-Down Transaction Memorandum; (d) the Plan Administrator Agreement; and (e) the Litigation Trust Agreement, in each case prepared in consultation with the Committee. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement, following consultation with the Committee, up to the Effective Date as set forth in this Plan.

    1.1.87    "*Preferred Equity Interests*" means the Series C Convertible Preferred Stock and the Series C-1 Convertible Preferred Stock issued by Holdings, which is senior in right to distribution over the Parent Equity Interests, including any warrants, options or similar grants to acquire such interests.

    1.1.88    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

    1.1.89    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

    1.1.90    "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.1.91 "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Section 2.2 of this Plan.

1.1.92 "*Professional Fee Claim*" any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

1.1.93 "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

1.1.94 "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Governmental Unit Bar Date, or the Administrative Claims Bar Date, as applicable.

1.1.95 "*Purchaser*" means the purchaser or purchasers under an Asset Purchase Agreement, together any successors to and permitted assigns of such purchaser(s).

1.1.96 "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

1.1.97 "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

1.1.98 "*Released Parties*" means (a) each Debtor and its retained financial advisors, attorneys, accountants, investment bankers, and other professionals; (b) the officers and directors of the Debtors on or after the Petition Date as listed on Schedule 1.1.98 to the Plan; (c) the Plan Administrator; (d) the Committee and each of its members, solely in their capacity as such; (e) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order; (f) all Holders of Claims or Interests that abstain from voting on the Plan, who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan, and who do not object to the Plan; and (g) with respect to each of the foregoing clauses (c) through (f), such Entity's current and former Affiliates, subsidiaries, advisors, principals, partners, manager, members, employees, officers, directors, representatives, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives and professionals, in each case to the extent a claim or Cause of Action arises from actions taken or omissions by any such person in its capacity as a related person of one of the parties listed in clauses (c) through (f) and is released as against such party; *provided, however*, that with respect to each of the individuals that served as an officer or director of the Debtors as of the Petition Date not listed on Schedule 1.1.98 (each, an "Other D&O"), each Other D&O shall be a Released Party solely to the extent such party's legal obligations for any wrongful acts exceed the applicable combined limits (taking into account covered defense costs) of the Debtors' available insurance policies that cover, among others, current or former directors, members, trustees, managers, and officers liability issued at any time to or providing coverage to the Debtors and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage (such policies, the "D&O Policies"), subject to the following: any recovery by or on behalf of the Litigation Trust (and the beneficiaries thereof) on account of any cause of action (other than with respect to claims for gross negligence, willful misconduct or fraud) against any Other D&O, in each case by way of settlement or judgment, shall be limited to the applicable D&O Policies' available combined limits, after payment from such D&O Policies of any covered costs and expenses

incurred by the covered parties in connection with the defense of such cause of action; *provided further* any rights under applicable law of current directors and officers of the Debtors to indemnification and advancement of costs shall be preserved; *provided, further*, that (i) any Holder of a Claim or Interest who opts out of the releases in accordance with the procedures set forth in the Solicitation Procedures Order shall not be a "Released Party" under the Plan; (ii) any Holder of a Claim or Interest who timely Files an objection to the Plan in respect of the releases contained in Section 9.4 of the Plan, shall not be a "Released Party" under the Plan; (iii) any of the Debtors' current and former officers, directors and managers not specifically identified in clauses (b)-(g) above shall not be a "Released Party" under the Plan; and (iv) any Entity or Affiliate of an Entity that is identified on the Schedule of Retained Causes of Action shall not be a "Released Party" under the Plan. For the avoidance of doubt, no party listed on the Schedule of Retained Causes of Action nor any of the Debtors' current and former officers, directors and managers not specifically identified in clauses (b)-(g) above shall receive a release pursuant to clauses (e) or (f) above.

1.1.99    "*Releasing Parties*" means (a) the Released Parties; (b) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order; (c) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (d) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order; and (e) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, interest holders, predecessors, successors, assigns, subsidiaries, and affiliates, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

1.1.100    "*Reorganized Debtors*" means each of the Debtors on and after the Effective Date of the Plan.

1.1.101    "*Retained Causes of Action*" means with respect to any Entity identified on the Schedule of Retained Causes of Action, all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Estate may hold against such Entity, including, without limitation, any claims and causes of action for failure to pay for products or services provided or rendered by any of the Debtors, claims and causes of action arising under contracts with the Debtors, claims and causes of action seeking the recovery of any of the Debtors' accounts receivable or other receivables or rights to payment created or arising in connection with any of the Debtors' businesses, including overpayments and tax refunds, claims and causes of action arising under chapter 5 of the Bankruptcy Code, and claims and causes of action for torts committed against the Debtors; provided that the Retained Causes of Action shall not include all Causes of Action settled, released, or exculpated under the Plan.

1.1.102    "*Sale Hearing*" means a hearing to approve an Asset Sale, which hearing may be the Confirmation Hearing.

1.1.103    "*Sale Order*" means, with respect to an Asset Sale consummated pursuant to section 363 of the Bankruptcy Code, the Final Order of the Bankruptcy Court approving such Asset Sale pursuant to the applicable Asset Purchase Agreement.

1.1.104    "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action of the Debtors included in the Plan Supplement.

1.1.105    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

1.1.106    "*Secured Claim*" means a Claim that is: (a) secured by a valid, perfected, and enforceable Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the

Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

1.1.107 "*Secured Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with any proceeds of the sale of assets securing the Secured Claims, less the costs of the Plan Administrator that are chargeable against such proceeds under section 506(c) of the Bankruptcy Code.

1.1.108 "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

1.1.109 "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

1.1.110 "*Solicitation Procedures Order*" means the order entered by the Bankruptcy Court conditionally approving the adequacy of the Disclosure Statement, approving the solicitation and notice procedures with respect to confirmation of the Plan, approving the form of ballot and notices in connection therewith, scheduling certain dates with respect thereto, and granting related relief [Docket No. 715].

1.1.111 "*Third-Party Release*" means the release set forth in Section 9.4 of the Plan.

1.1.112 "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.113 "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.1.114 "*Unsecured Claim*" means any Claim that is not a Secured Claim.

1.1.115 "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

1.1.116 "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.1.117 "*Wind-Down Budget*" means a budget for the reasonable activities and expenses to be incurred in winding down and liquidating and dissolving the Debtors' Estates, as set forth in the Plan Supplement.

1.1.118 "*Wind-Down Distributable Cash*" means: (a) Cash on hand as of the Effective Date; (b) Cash or non-Cash consideration, as monetized, received by or on behalf of the Debtors after the Effective Date; (c) any Excess Sale Proceeds;  and (d) the net proceeds of any Retained Causes of Action recovered by the Litigation Trust, minus (e) (1) Cash held in the Distribution Reserve Accounts; (2) U.S. Trustee Fees, and (3) the Professional Fee Escrow Account.

1.1.119 "*Wind-Down Restructuring*" means the wind down, liquidation and dissolution of the Debtors' Estates following the Effective Date as set forth in Section 4.2 of this Plan.

1.1.120 "*Wind-Down Transactions Memorandum*" means the summary of transaction steps to complete the Wind-Down Restructuring, which shall be (a) included in the Plan Supplement; and (b) consistent with the Plan.

1.1.121 "*Wind-Down Transactions*" means the transactions implementing a Wind-Down Restructuring as set forth in the Wind-Down Transaction Memorandum.

*1.2     Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender

shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references to "Sections" are references to Sections hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws.

1.3     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.4     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof that would require the application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated or formed under New York law shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

*1.5     Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*1.6     Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*1.7     Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, including the Plan Supplement, the Confirmation Order shall control.

**SECTION 2.
ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Section 3 hereof.

*2.1     Administrative Claims.*

Subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Plan Administrator agree to less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Reorganized Debtors shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due) with a Cash distribution from the Administrative and Priority Claims Reserve by the Plan Administrator; (3) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Plan Administrator, as applicable; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided that* any Administrative Claim that has been assumed by any non-Debtor Entity in connection with an Asset Sale shall not be an obligation of the Debtors under the Plan.

2.1.1     Administrative Claims Bar Date

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Section 2, unless previously Filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. **Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, their respective Estates, or the Plan Administrator, and such Administrative Claims shall be deemed compromised, settled, and released as of the**

**Effective Date.** Objections to such requests must be Filed and served on the requesting party by the latter of (a) 30 days after the Effective Date, or (b) 30 days after the date on which such Administrative Claim is Filed.

2.1.2      Administrative and Priority Claims Reserve

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall fund the Administrative and Priority Claims Reserve in Cash. Any Cash remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Claims and Allowed Priority Claims shall be available for distribution in accordance with the Plan.

*2.2      Professional Fee Claims.*

2.2.1      <u>Final Fee Applications and Payment of Professional Claims</u>.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

2.2.2      <u>Professional Fee Escrow Account</u>.

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

2.2.3      <u>Professional Fee Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

2.2.4      <u>Post-Confirmation Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3     *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**SECTION 3.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

3.1     *Classification of Claims and Interests.*

Except for the Claims addressed in Section 2 hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal Person, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Persons, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Persons after the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 3A | CNCC GUC Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 4 | Parent GUC Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Preferred Equity Interests | Impaired | Entitled to Vote |
| Class 8 | Parent Equity Interests | Impaired | Entitled to Vote |

3.2     *Treatment of Claims and Interests*.

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and such Holder.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Claim or Interest becomes an Allowed Claim or an Allowed Interest, as applicable, or as soon as reasonably practicable thereafter.

    3.2.1     Class 1 – Secured Claims

        3.2.1.1     *Classification*: Class 1 consists of all Secured Claims.

        3.2.1.2     *Treatment*: Except to the extent that a Holder of an Allowed Secured Claims agrees in writing to less *favorable* treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Secured Claim, each holder of an Allowed Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor: (i) payment in full in Cash; (ii) Reinstatement of such Claim; (iii) the Debtor's interest in the Collateral securing such Holder's Allowed Secured Claim; or (iii) such other treatment rendering such Claim Unimpaired.

        3.2.1.3     *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

    3.2.2     Class 2 – Other Priority Claims

        3.2.2.1     *Classification*: Class 2 consists of all Other Priority Claims.

        3.2.2.2     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

        3.2.2.3     *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

    3.2.3     Class 3 – General Unsecured Claims

        3.2.3.1     *Classification*: Class 3 consists of all General Unsecured Claims.

        3.2.3.2     *Treatment*: On the Effective Date, each General Unsecured Claim shall be discharged and released, and each Holder of an allowed General Unsecured Claim shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1 and Class 2, on account of such General Unsecured Claim. Distributions of Wind-Down Distributable Cash shall be distributed by the Distribution Agent on the applicable Distribution Date in accordance with the Plan until all Allowed General Unsecured Claims in Class 3 are paid in full (taking into account any distributions made by the Litigation Trust on account of Allowed General Unsecured Claims) or the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed General Unsecured Claims shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate.

3.2.3.3 *Voting*: Class 3 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

### 3.2.4 Class 3A – CNCC GUC Claims

3.2.4.1 *Classification*: Class 3A consists of all CNCC GUC Claims.

3.2.4.2 *Treatment*: On the Effective Date, each CNCC GUC Claim shall be cancelled, released and extinguished, and each Holder of a CNCC GUC Claim shall not receive or retain any distribution, property, or other value on account of its CNCC GUC Claim.

3.2.4.3 *Voting*: Class 3A is Impaired under the Plan. Class 3A is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of CNCC GUC Claims are not entitled to vote to accept or reject the Plan.

### 3.2.5 Class 4 – Parent GUC Claims

3.2.5.1 *Classification*: Class 4 consists of all Parent GUC Claims.

3.2.5.2 *Treatment*: On the Effective Date, each Parent GUC Claim shall be discharged and released, and each Holder of an Allowed Parent GUC Claim shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, and Class 3, on account of such Parent GUC Claim.  Distributions of Wind-Down Distributable Cash shall be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until all Allowed Parent GUC Claims in Class 4 are paid in full (taking into account any distributions made by the Litigation Trust on account of Parent GUC Claims) or the Wind-Down Distributable Cash is exhausted; *provided, however*, that all Distributions to Holders of Allowed Parent GUC Claims shall be subject to the Plan Administrator first paying in full (x) all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate and (y) all Holders of General Unsecured Claims.

3.2.5.3 *Voting*: Class 4 is Impaired under the Plan.  Holders of Parent GUC Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

### 3.2.6 Class 5 – Intercompany Claims

3.2.6.1 *Classification*: Class 5 consists of all Intercompany Claims.

3.2.6.2 *Treatment*: On the Effective Date, each Intercompany Claim shall be cancelled, released and extinguished, and each Holder of an Intercompany Claim shall not receive or retain any distribution, property, or other value on account of its Intercompany Claim.

3.2.6.3 *Voting*: Class 5 is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

### 3.2.7 Class 6 – Intercompany Interests

3.2.7.1 *Classification*: Class 6 consists of all Intercompany Interests.

3.2.7.2 *Treatment*: On the Effective Date, each Intercompany Interest shall be cancelled, released and extinguished, and each Holder of an Intercompany Interest shall not receive or retain any distribution, property, or other value on account of its Intercompany Interest.

17

3.2.7.3  *Voting*: Class 6 is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

### 3.2.8  Class 7 – Preferred Equity Interests

3.2.8.1  *Classification*: Class 7 consists of all <u>Preferred Equity Interests</u>.

3.2.8.2  *Treatment*: On the Effective Date, all Preferred Equity Interests shall be cancelled, released and extinguished, and each Holder of Allowed Preferred Equity Interests shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, and Class 4, on account of such Preferred Equity Interests.  Distributions of Wind-Down Distributable Cash shall be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until all Allowed Preferred Equity Interests in Class 7 are paid in full (taking into account any distributions made by the Litigation Trust on account of Preferred Equity Interests) or the Wind-Down Distributable Cash is exhausted; *provided, however,* that all Distributions to Holders of Allowed Preferred Equity Interests shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate.

3.2.8.3  *Voting*: Class 7 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the *Bankruptcy* Code.  Holders of Existing Parent Interests are not entitled to vote to accept or reject the Plan.

### 3.2.9  Class 8 – Parent Equity Interests

3.2.9.1  *Classification*: Class 8 consists of all Parent Equity Interests.

3.2.9.2  *Treatment*: On the Effective Date, all Parent Equity Interests shall be cancelled, released, and extinguished, and each Holder of Allowed Parent Equity Interests shall be entitled to receive its Pro Rata Share of the Wind-Down Distributable Cash, if any, remaining after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4, and Class 7, on account of its Parent Equity Interests.  Distribution of the Wind-Down Distributable Cash shall be distributed on the applicable Distribution Date by the Distribution Agent in accordance with the Plan until all Allowed Parent Equity Interests in Class 8 are paid in full (taking into account any distributions made by the Litigation Trust on account of Parent Equity Interests) or the Wind-Down Distributable Cash is exhausted; *provided, however,* that all Distributions to Holders of Allowed Parent Equity Interests shall be subject to the Plan Administrator first paying in full all operating expenses of the Reorganized Debtors and/or reserving in the Plan Administrator Operating Reserve for such operating expenses as is reasonable and appropriate.

3.2.9.3  *Voting*: Class 8 is Impaired under the Plan.  Holders of Parent Equity Interests are entitled to vote to accept or reject the Plan and shall receive Ballots.

### 3.3  *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing herein shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

### 3.4  *Elimination of Vacant Classes*.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan

and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

3.5     *Voting Classes, Presumed Acceptance by Non-Voting Classes*.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

3.6     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more Classes of Impaired Claims.  The Debtors may seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Section 11 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

3.7     *Controversy Concerning Impairment*.

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

3.8     *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

## SECTION 4.
## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     General Settlement of Claims and Interests.

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  For the avoidance of doubt, such settlement and compromise shall not include or affect any Causes of Action listed in the Schedule of Retained Causes of Action.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies released, settled, compromised, discharged or otherwise resolved pursuant to the Plan, pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.  Subject to Section 6 hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*4.2*    Wind-Down Restructuring.

The provisions set forth in this Section 4 shall govern implementation of the Plan.

4.2.1    Wind-Down Transactions

On or before the Effective Date, to the extent not inconsistent with any Sale Order and any Asset Purchase Agreement, the Debtors or Reorganized Debtors, as applicable, shall take all applicable actions set forth in the Wind-Down Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the Wind-Down Restructuring, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down Restructuring that are consistent with and pursuant to the terms and conditions of the Plan and Wind-Down Transactions Memorandum, which transactions may include, as applicable: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and Wind-Down Transaction Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and Wind-Down Transaction Memorandum and having other terms to which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other certificates or documentation pursuant to applicable law; and (4) all other actions that the applicable Debtors determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Wind-Down Restructuring, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

4.2.2    Sources of Consideration for Plan Distributions

The Debtors shall fund distributions under the Plan with Wind-Down Distributable Cash.

4.2.3    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, the Confirmation Order, the Sale Order, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, but after consummation of any Asset Sale, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the assets of the Debtors other than any interest of the Debtors in the Excluded Customer Equipment shall vest in the Reorganized Debtors for the purpose of winding down the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. On the Effective Date, (a) the Plan Administrator shall be appointed and shall be authorized to administer, liquidate, monetize and distribute the Wind-Down Distributable Cash, in accordance with the Plan Administrator Agreement, and (b) any interest of the Debtors in the Excluded Customer Equipment, including any liens or security interests held by the Debtors in Excluded Customer Equipment, is deemed abandoned to the owner or operator of the real property where such equipment is located.

4.2.4    Reorganized Debtors

On and after the Effective Date, the Reorganized Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided

hereunder, (d) funding distributions in accordance with the Wind-Down Budget, (e) assisting the Litigation Trust in enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Plan, the Confirmation Order, any Asset Purchase Agreement, and any Sale Order, and (h) administering the Plan in an efficacious manner.

The Reorganized Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

### 4.2.5    Plan Administrator

On and after the Effective Date, the Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other Governing Body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or Governing Body of the Reorganized Debtors shall cease and all such persons shall be deemed to have resigned, solely in their capacities as such. On the Effective Date the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, and shall succeed to the powers of the Reorganized Debtors' managers, directors, officers, and other Governing Bodies without any further action required on the part of any such Reorganized Debtor, the equity holders of the Debtors, the officers, directors, managers, or Governing Body, as applicable, of the Reorganized Debtors, or the members of any Reorganized Debtor. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors. The foregoing shall not limit the authority of the Reorganized Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Reorganized Debtors and the Purchaser. The Plan Administrator shall use commercially reasonable efforts to operate in a manner consistent with the Wind-Down Budget.

### 4.2.6    Litigation Trust

On or before the Effective Date, (i) the Litigation Trust shall be created and established by the execution and delivery of the Litigation Trust Agreement and any other necessary action, and (ii) all Causes of Action shall be transferred to and vest in the Litigation Trust, free of all Claims, Liens and interests. The Litigation Trust shall reduce to Cash or otherwise liquidate the Causes of Action and distribute the proceeds to Holders of Claims and Interests in accordance with the Plan and the Litigation Trust Agreement. The costs and expenses incurred by the Litigation Trust on and after the Effective Date shall be paid from the proceeds of Causes of Action and in accordance with the Wind-Down Budget. Upon entry of the Final Decree, the Litigation Trust shall be dissolved without further action by the Plan Administrator.

### 4.2.7    Dissolution of the Debtors

Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than thirty (30) days following the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, manager, and Governing Body, as applicable, of the Reorganized Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of each Debtor under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred

during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule.

       4.2.8    <u>Preservation of Causes of Action</u>.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Section 9 hereof, any applicable Final Order, and any applicable Asset Purchase Agreement, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action. On the Effective Date, the Causes of Action shall vest in the Litigation Trust, and the Litigation Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Section 9 hereof, pursuant to a Final Order, Sale Order, Asset Purchase Agreement, or as assigned and transferred pursuant to any applicable Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Litigation Trust may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Holders of Claims and Interests. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Causes of Action against it as any indication that the Litigation Trust will not pursue any and all available Causes of Action. Except as specifically released under the Plan or pursuant to a Final Order, Sale Order, Asset Purchase Agreement, or as assigned or transferred pursuant to any applicable Asset Purchase Agreement, the Debtors and the Reorganized Debtors expressly reserve the right of the Litigation Trust to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Section 9 hereof, pursuant to a Final Order, or as assigned and transferred under any applicable Asset Purchase Agreement.** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Notwithstanding anything contained herein to the contrary (including the releases described in Section 9), to the extent the Debtors have previously released certain claims and Causes of Action against a party, including pursuant to any Sale Order, any Asset Purchase Agreement, or any Final Order, nothing in the Plan shall be construed to revive such released claims and Causes of Action against such party, or to impair or otherwise limit the releases provided thereunder.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors, for the benefit of the Litigation Trust, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Litigation Trust, except as otherwise expressly provided in the Plan, including Section 9 hereof. The Litigation Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Litigation Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

       4.2.9    <u>Effectuating Documents; Further Transactions</u>.

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Reorganized Debtors, the Plan Administrator, the Litigation Trust and the respective officers, members and managers (as applicable) thereof are, authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan,

without the need for any approvals, authorizations, actions, notices, or consents, except for those expressly required pursuant to the Plan.

*4.3    Tax Matters.*

The terms of the Plan, the Asset Sales (as applicable) and the Wind-Down Transactions shall be structured to minimize, to the extent practicable, the aggregate tax impact of the Wind-Down Transactions on the Debtors and the Reorganized Debtors, taking into account both the cash tax impact of the Wind-Down Transactions on the Debtors in the tax year of the Wind-Down Transactions and Asset Sales (as applicable) and the tax liability of the Reorganized Debtors in subsequent tax years.

*4.4    Cancellation of Existing Securities and Agreements.*

On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in this Plan and the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing or governing Claims or Interests (other than those Claims Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order or hereunder.

*4.5    Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Wind-Down Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Wind-Down Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate or organizational structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals contemplated by this Section 4.5 shall be effective notwithstanding any requirements under nonbankruptcy Law.

*4.6    Indemnification Obligations.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any Claim based on the

Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code.

4.7     *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Reorganized Debtor or to another Person) of property under the Plan (including in connection with a Plan Sale) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Wind-Down Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer in, furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including in connection with a Plan Sale), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

4.8     *Director and Officer Liability Insurance.*

After the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

## SECTION 5.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein or the Confirmation Order, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (2) is a D&O Policy or relates to the indemnification obligations of the Debtors, the Reorganized Debtors or the Plan Administrator; (3); is subject to a rejection notice or assumption notice Filed with the Bankruptcy Court; (4) is a contract assumed by the Debtors or to be assumed by the Debtors and assigned to another third party, as applicable, pursuant to an Asset Purchase Agreement; or (5) is an Asset Purchase Agreement. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

5.2     *Claims Based on Rejection of Executory Contracts or Unexpired Leases*.

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, **must be Filed with the Bankruptcy Court within thirty days** after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified and treated for all purposes as general unsecured claims against the applicable Debtor counterparty.

5.3     *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with an Asset Sale, or by Final Order or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such rejected Executory Contracts or Unexpired Leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

5.4     *Insurance Policies, including D&O Insurance*.

5.4.1     Each of the Debtors' insurance policies that is executory, including D&O Insurance, and any agreements, documents, or instruments relating thereto, shall be assumed by the Debtors on behalf of the applicable Debtor and vest in the applicable Reorganized Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless (a) such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or a request to reject such insurance policy is pending on the Effective Date, or (b) such insurance policy was previously assumed and assigned to a Purchase under an Asset Purchase Agreement. Coverage for defense and indemnity under any of the D&O Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies. Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.5     *Reservation of Rights*.

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or

unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

5.6     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

5.7     *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## SECTION 6.
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     *Timing of Distributions.*

In the event that any payment, distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Any requirement under the Plan that the Reorganized Debtor or Disbursing Agent make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date..

6.2     *Distribution Agent.*

All distributions under the Plan shall be made by the Distribution Agent.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

6.3     *Rights and Powers of the Distribution Agent.*

6.3.1     Powers of the Distribution Agent.

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

6.3.2     Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Distribution Agent, in each case directly related to distributions under the Plan, shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.  In the event that the Reorganized Debtors object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Reorganized Debtors and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Reorganized Debtors and a Distribution Agent are unable to resolve any

differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.4     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    6.4.1     Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    6.4.2     Delivery of Distributions in General.

Subject to Bankruptcy Rule 9010, all Distributions under the Plan to holders of Allowed Claims shall be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such Holder that provides an address for such Holder different from the address reflected on the Schedules.

    6.4.3     Minimum Distributions.

Neither the Reorganized Debtors nor the Distribution Agent shall have any obligation to make a distribution of Wind-Down Distributable Cash that consists of less than $50. Notwithstanding anything contained herein to the contrary, if, on any Distribution Date there remains $10,000 or less available for distribution to holders of Allowed General Unsecured Claims, in lieu of making any further Distributions to the holders of such Claims, the Reorganized Debtor may distribute such Cash to the charity of the Reorganized Debtor's choice.

    6.4.4     Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Distribution Agent is notified in writing of the then-current address of such Holder, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days from the date of issuance thereof. All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property or Interest in property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code

    6.4.5     Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Section 4.4 hereof shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument

shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights.

6.5     *Manner of Payment*.

All distributions of Cash to the holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Reorganized Debtor.

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.6     *Compliance with Tax Requirements*.

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Distribution Agent an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.

6.7     *Allocations*.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

6.8     *Foreign Currency Exchange Rate*.

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

6.9     *Setoffs and Recoupment*.

Except as expressly provided in this Plan, including pursuant to Section 9 hereof, each Reorganized Debtor may, pursuant to sections 553 and 558 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any holder of a Claim be entitled to recoup

28

such Claim against any claim, right, or Causes of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

6.10    *Claims Paid or Payable by Third Parties*.

      6.10.1    <u>Claims Paid by Third Parties</u>.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

      6.10.2    <u>Claims Payable by Third Parties</u>.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      6.10.3    <u>Applicability of Insurance Policies</u>.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### SECTION 7.
### THE PLAN ADMINISTRATOR AND THE LITIGATION TRUST

7.1    <u>*The Plan Administrator*</u>.

The Plan Administrator shall be appointed effective as of the Effective Date.  The rights, powers, privileges, obligations, and compensation of the Plan Administrator shall be set forth in the Plan Administrator Agreement, which shall be filed as part of the Plan Supplement.

7.2    *The Litigation Trust*.

On or before the Effective Date, (i) the Litigation Trust shall be created and established by the execution and delivery of the Litigation Trust Agreement and any other necessary action, and (ii) all Retained Causes of Action shall be transferred to and vest in the Litigation Trust, free of all Claims, Liens and interests.  The rights, powers, privileges, obligations, and compensation of the Litigation Trust shall be set forth in the Litigation Trust Agreement, which shall be filed as part of the Plan Supplement.

*7.3*    *Wind-Down*.

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court consistent with the Plan Administrator Agreement and the Wind-Down Budget, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates. Under the Plan Administrator Agreement, the Plan Administrator shall be obligated to consult with the Plan Oversight Committee approximately every thirty (30) days concerning matters related to the Wind-Down Estates and obtain approval of the Plan Oversight Committee as set forth in section 4.2 of the Plan Administrator Agreement. The Plan Administrator shall have the rights, authority and duties set forth in the Plan Administrator Agreement.

On and after the Effective Date, in accordance with the Litigation Trust Agreement, the Litigation Trust shall be responsible for the administration, pursuit, prosecution, litigation, settlement, dismissal or other action taken or contemplated to be taken with regard to the Retained Causes of Action, and shall have the authority to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action in furtherance of resolving each Retained Cause of Action, subject to the terms and conditions set forth in the Litigation Trust Agreement, the Plan and the Confirmation Order.

The Plan Administrator, with the approval of the Plan Oversight Committee, shall have the authority to hire counsel to advise it in connection with its duties, powers and rights under the Plan Administrator Agreement and may hire such additional attorneys, accountants and other professionals as may be required or appropriate in connection with its duties therein, and pay reasonable compensation to such advisors, without further approval of the Bankruptcy Court. The Plan Administrator shall be entitled to retain professionals, with the approval of the Plan Oversight Committee, including any professionals employed by the Debtors or the Committee in the Chapter 11 Cases. The provision of services by a professional to the Debtors or the Committee shall not disqualify such professional from employment by the Plan Administrator.

The Litigation Trust, with the approval of the Plan Oversight Committee, shall have the authority to hire counsel to advise it in connection with its duties, powers and rights under the Litigation Trust Agreement and may hire such additional attorneys, accountants and other professionals as may be required or appropriate in connection with its duties therein, and pay reasonable compensation to such advisors, without further approval of the Bankruptcy Court. The Litigation Trust shall be entitled to retain professionals, with the approval of the Plan Oversight Committee, including any professionals employed by the Debtors or the Committee in the Chapter 11 Cases. The provision of services by a professional to the Debtors or the Committee shall not disqualify such professional from employment by the Litigation Trust. The Plan Oversight Committee shall have the right, subject to the consent of the Plan Administrator to select counsel to represent the Litigation Trust and to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action in furtherance of resolving each Retained Cause of Action.

Any professionals retained by the Plan Administrator or the Litigation Trust shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable fees, costs and expenses incurred, without further order of the Bankruptcy Court. To the extent there are fees and expenses incurred by the Plan Administrator, the Litigation Trust of their respective retained professionals in excess of the amounts set forth in the Wind-Down Budget, such fees may be paid from the Wind-Down Estates, subject to the consent of the Plan Oversight Committee (which shall not be unreasonably withheld, delayed or conditioned). If any dispute arises between the Plan Administrator and the Plan Oversight Committee over matters where consent of the Plan Oversight Committee is required, the Plan Administrator will present the disputed matter to the Bankruptcy Court for resolution after notice and a hearing and will not act on the disputed matter absent further order of the Bankruptcy Court.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtors and the Reorganized Debtors, as applicable, to comply with, and abide by, the terms of any Asset Purchase Agreement Sale Order and any other documents contemplated thereby; (2) to the extent applicable, file certificates of merger or equivalent documents, together with all other necessary corporate and company documents, to effect the merger and consolidation of the Debtors *other than* Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC), Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC)) and Holdings into Mining Project Wind Down LLC (f/k/a Compute North LLC), under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions in accordance with the Wind-Down Budget as the Plan Administrator may

determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of merger or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders, board of directors or managers, or Governing Body of any Reorganized Debtor. From and after the Effective Date, except with respect to the Reorganized Debtors as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding the Debtors' entry into the Wind-Down Transactions, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

The Debtors shall include a Wind-Down Budget in the Plan Supplement.

7.4     *Tax Returns*.

From and after the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors reflecting all tax consequences relating to the activities of the Reorganized Debtors as attributable to and for the account of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

7.5     *Dissolution of the Reorganized Debtors*.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Reorganized Debtors shall be deemed to be dissolved without any further action by the Reorganized Debtors, including the filing of any documents with the secretary of state for the state in which any of the Reorganized Debtors is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Reorganized Debtors and withdraw the Reorganized Debtors from registration in all applicable states.

**SECTION 8.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

8.1     *Allowance of Claims*.

Subject to the rights of the Plan Oversight Committee, the Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed. Upon such determination, the Debtors or Reorganized Debtors, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Section 3 (including, for the avoidance of doubt, Reinstatement), to mark such Proofs of Claims as satisfied. The Debtors may determine to Reinstate a claim that would be an Unimpaired Claim under the Plan, even if no timely Proof of Claim is filed therefor.

8.2     *Claims Administration Responsibilities*.

Subject to the rights of the Plan Oversight Committee, the Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority to (1) File, withdraw, or litigate to judgment any objections to Claims, (2) settle or compromise any such objections to Claims without further notice to or action, order, or approval of the

Bankruptcy Court, and (3) administer and adjust the Claims Register to reflect such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court. Except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Claim or Interest (including any Disputed Claim or Interest), including the Causes of Action retained pursuant to Section 4.2.7 of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (a) on or before the date that is one hundred and eighty days following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of a Claim or (b) such later date as ordered by the Bankruptcy Court.

8.3     *Disputed Claims Process.*

If the Debtors or Reorganized Debtors, as applicable, dispute any Claim that is not Allowed as of the Effective Date pursuant to Section 8.1 of the Plan or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Debtors or Reorganized Debtors, as applicable, shall File an objection with, and the dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

8.4     *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

8.5     *Adjustment to Claims or Interests without Objection.*

Pursuant to the consent of the Plan Oversight Committee, any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.6     *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, and subject to the terms hereof, including Section 9, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without**

any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

8.7     *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

8.8     *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the holder of such Claim or Interest the distributions (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

8.9     *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim

**SECTION 9.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

9.1     *Effect of Confirmation.*

Consistent with section 1141(d)(3) of the Bankruptcy Code, the Plan does not grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan or any contract, instrument or other agreement or document created pursuant to the Plan, the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release, effective as of the Effective Date, of such Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the holder of such a Claim or Interest has accepted the Plan.  On the  Effective Date, all persons and Entities shall be precluded from asserting against the Reorganized Debtors or the Litigation Trust, or any of their respective assets or properties, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date, except as otherwise provided in the Plan.

9.2     **Release of Liens.**

33

Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder, and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such holder's behalf.

On the Effective Date, concurrently with the consummation of an Wind-Down Restructuring that is consummated under the Plan and except as set forth in any Asset Purchase Agreement, the assets sold in such Wind-Down Restructuring shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, interests or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Order (which may be the Confirmation Order), the Plan and any Asset Purchase Agreement, as applicable.

9.3     *Releases by the Debtors*.

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and

Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; (2) any Causes of Action to the extent set forth on the Schedule of Retained Causes of Action; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

9.4    *Releases by the Releasing Parties*.

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, each Releasing Party (other than the Debtors or the Reorganized Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out of court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Disclosure Statement, the pursuit of Confirmation and Consummation, the pursuit of Asset Sales, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations of any party under any Sale Order and any Asset Purchase Agreement, or any document, instrument, or agreement executed to implement the transactions set forth in such Sale Order and/or Asset Purchase Agreement, as applicable; (2) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Wind-Down Transaction, or

any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; or (3) claims or liabilities arising out of or relating to a Released Party's actual fraud, willful misconduct, or gross negligence as determined by a final order of the Bankruptcy Court.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

9.5     *Exculpation*.

Effective as of the Effective Date, to the extent permitted by applicable law, and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Disclosure Statement, the Plan (including the Plan Supplement), or any Wind-Down Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

9.6     *Injunction*.

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against

any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.  In addition, the Related Parties of any Exculpated Parties shall not incur liability for any cause of action or claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan ((a) and (b), collectively, the "**Solicitation Actions**").  No entity or person may commence or pursue a claim or cause of action of any kind against any Related Party of an Exculpated Party that arose or arises from, in whole or in part, any Solicitation Actions, without this Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim for actual fraud, gross negligence, or willful misconduct against any such Related Party of an Exculpated Party and such party is not protected pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such claim or cause of action against such Related Party of an Exculpated Party.

9.7     *Protections Against Discriminatory Treatment*.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

9.8     *Document Retention*.

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

9.9     *Reimbursement or Contribution*.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## SECTION 10.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

10.1    *Conditions Precedent to the Effective Date*.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived:

10.1.1    the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and such order shall have become a Final Order;

37

10.1.2     the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Wind-Down Transactions) all Wind-Down Expenses incurred or estimated to be incurred, through the Effective Date;

10.1.3     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

10.1.4     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

10.1.5     all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

10.1.6     no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan; and

10.1.7     the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Wind-Down Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) if applicable, any Sale Order; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Wind-Down Transactions).

*10.2     Waiver of Conditions.*

Except as otherwise specified in this Plan, any one or more of the conditions to Consummation (or any component thereof) set forth in this Section 10 may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; *provided however* that the Debtors may not waive the requirements of Section 10.1.5 without the prior written consent of the Committee.

*10.3     Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

*10.4     Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## SECTION 11.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*11.1     Modification and Amendments.*

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify the Plan, following consultation with the Committee, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to (1) those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the

Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors expressly reserve their right to revoke or withdraw, or to alter, amend, or modify the Plan, following consultation with the Committee, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*11.2    Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*11.3    Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## SECTION 12.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

12.1.1    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

12.1.2    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

12.1.3    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

12.1.4    ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

12.1.5    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date, including any Causes of Action retained by the Debtors under the Schedule of Retained Causes of Action;

12.1.6    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

12.1.7    enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

12.1.8    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

12.1.9    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.1.10   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.1.11   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Section 9 hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.1.12   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Section 6.10 hereof;

12.1.13   enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.1.14   determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

12.1.15   enter a final decree closing the Chapter 11 Cases;

12.1.16   adjudicate any and all disputes arising from or relating to distributions under the Plan;

12.1.17   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

12.1.18   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

12.1.19   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

12.1.20   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12.1.21   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Section 9 hereof;

12.1.22   enforce all orders previously entered by the Bankruptcy Court; and

12.1.23   hear any other matter not inconsistent with the Bankruptcy Code.

# SECTION 13.
# MISCELLANEOUS PROVISIONS

*13.1    Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such holders of Claims or Interests (a) are Impaired or Unimpaired, (b) have, or are deemed to have accepted the Plan, or (c) failed to vote to accept or reject the Plan),

All Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*13.2    Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*13.3    Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Distribution Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

*13.4    Statutory Committee and Cessation of Fee and Expense Payment.*

On the Confirmation Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided however*, that the Committee shall continue in existence and have standing and a right to be heard after the Effective Date for the limited purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims, and (ii) any appeal of the Confirmation Order or other appeal to which the Committee is a party, and the Reorganized Debtors shall be responsible solely for fees and expenses incurred by the members or advisors to the Committee with respect to the these limited matters.  Except as set forth in the foregoing sentence, the Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Confirmation Date.

*13.5    Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

13.6     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

13.7     *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) 300 North LaSalle, Suite 1420, Chicago, IL 60654. Attention: Drake Harvey | Paul Hastings LLP 600 Travis Street, Fifty-Eighth Floor Houston, TX 77002 | Attention: James Grogan |
| **United States Trustee** | **Counsel to the Creditors' Committee** |
| Office of The United States Trustee 515 Rusk Street, Suite 3516 Houston, TX 77002 Attn: Jason B. Ruff | McDermott Will & Emery LLP 2501 North Harwood Street, Suite 1900 Dallas, Texas 75201 Attn: Charles R. Gibbs |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities stating that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

13.8     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

13.9     *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.10     *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/case/computenorthholdings/ or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is

inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### 13.11    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

### 13.12    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

### 13.13    *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided,* as of the Effective Date, the Plan Administrator, on behalf of any of the Reorganized Debtors, may submit separate orders to the Bankruptcy Court under certification of counsel closing each of the closing cases and changing the caption of the Chapter 11 Cases accordingly, *provided further* that matters concerning Claims may be heard and adjudicated in a remaining case regardless of whether the applicable Claim is against a Debtor in a closing case.  Nothing in this Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last remaining case, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

### 13.14    *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

### 13.15    *Creditor Default*

An act or omission by a holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan.  Upon such an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to recover from the defaulting

creditor reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default. Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors in an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

Dated: January 31, 2023
MINING PROJECT WIND DOWN HOLDINGS,
INC. (F/K/A COMPUTE NORTH HOLDINGS, INC.)
on behalf of itself and all other Debtors


 /s/ Drake Harvey
Drake Harvey
President

**Schedule 1.1.98**

| Name | Title |
|---|---|
| Ahsan Faiz | Vice President, EPC |
| Anna Picchetti | Vice President, Product |
| Brett Sorenson | Vice President/General Manager, Asset Optimization |
| David Movius | Vice President, Legal Affairs |
| Drake Harvey | CEO & President |
| Eli Scher | Director |
| Harold Coulby | CFO |
| Jack D'Angelo | Vice President, Corporate Development |
| Jason Stokes | Chief Legal Officer, General Counsel & Secretary |
| Jeff Jackson | Vice President, Site Development |
| Jose Lima | Director |
| Kristyan Mjolsnes | Vice President, Marketing |
| Kyle Wenzel | Chief Commercial Officer |
| Mark Bader | Vice President, Corporate Controller |
| Nate Hubert | Vice President, Operations |
| Scott Tillman | Director |
| Wade Hoffman | Vice President, Management Information Systems |

**Exhibit B**

**Decimal Term Sheet**

DocuSign Envelope ID: 427DC895-5ABB-42EB-8584-4DB5DD417B67

## SALE AND SETTLEMENT TERM SHEET

This term sheet (the "Term Sheet") dated February 10, 2023, sets forth the terms of a proposed sale and settlement (the "Sale and Settlement") related to the Miners (as defined below) and consensual resolution of various claims between Compute North Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), on the one hand, and Decimal Digital Currency I, LLC and certain of its affiliates (collectively, "Customer" and, together with the Debtors, the "Parties") on the other hand. The transactions contemplated in this Term Sheet are subject in all respects to execution and Bankruptcy Court approval of the Term Sheet.

THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE.

| SALE AND SETTLEMENT TERMS | |
|---|---|
| **General** | The terms of the sale and settlement between Customer and the Debtors shall include the following:<br><br>• Agreements for the disposition of the remaining equipment contracted for between Customer and the Debtors (the "Miners");<br><br>• Waiver of all claims, filed, scheduled or which may be filed in the future, of Customer against the Debtors; and<br><br>• Release by the Debtors of any Chapter 5 avoidance actions against Customer. |
| **Delivery of Miners** | The Debtors will work with Customer to facilitate delivery to Customer of the Miners. See Schedule 1 for details regarding Miner count, location and logistics. |
| **Payment Related to Release of the Miners** | Customer shall pay the Debtors $53,857 (the "Funding Amount"), as detailed on Schedule 1. Upon receipt of the Funding Amount, the Debtors shall release the Miners to Customer, and all rights, title and interest in the Miners shall fully and irrevocably vest in Customer free and clear of all liens, claims, and encumbrances.<br><br>Customer shall be responsible to pay for all go-forward obligations to third parties related to shipping and logistics (including costs for MVP Logistics LLC), taxes and tariffs, brokerage fees, customs bond and any other related expenses for Customer's specific Miners. For the avoidance of doubt, the Debtors will not pay for any costs or obligations associated therewith. Customer will pay such obligations directly to the applicable provider.<br><br>The Debtors agree to assist Customer in facilitating shipping and logistics related to the Miners. |

DocuSign Envelope ID: 427DC895-5ABB-42EB-8584-4DB5DD417B67

| | With respect to any costs that are attributable to miners that include Customer's Miners and miners of other customers, such costs will be paid by all customers on a pro rata basis. |
|---|---|
| **Bitmain Credits** | Customer agrees that the Debtors will retain any and all "credits" with Bitmain that may have been generated as a result of the original order of the Miners. |
| **Allowed Claim** | Customer shall (i) be entitled to an allowed general unsecured claim in Class 3 for Customer's share of the Bitmain Credits in the amount of $444,550; (ii) be entitled to an allowed general unsecured claim in Class 3 for Customer's claims which are unrelated to the Miners in the amount of $53,412.60; and (iii) agree to waive all other claims, filed, scheduled or which may be filed in the future, of Customer against the Debtors, including administrative and general unsecured claims, related to the Miners. |
| **Plan Vote** | Customer shall cast its ballot in the allowed amount of its claims set forth herein in support of confirming the Plan on or before the Voting Deadline, which deadline may be extended by the Debtors in their discretion. Customer agrees that it will neither oppose the Plan nor opt out of the releases set forth in Section 9 of the Plan. |
| **Waiver of Avoidance Actions** | The Debtors shall agree to waive any Chapter 5 avoidance actions or other claims they may possess against Customer. |
| **Mutual Releases** | The Debtors and Customer shall include customary mutual releases in any definitive documentation memorializing this Term Sheet. |
| **Approval and Effective Date** | The Debtors will file a motion ("Motion") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") seeking approval of the Sale and Settlement set forth in this Term Sheet, subject to higher and better offers, in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Parties agree that this Term Sheet will be effective as of the date the Bankruptcy Court enters an order approving the Motion (the "Effective Date"). Pending the Effective Date of this Term Sheet, each of the Parties agrees to be bound by this Term Sheet and waives any right to object to approval of it by the Bankruptcy Court. In the event that the Plan is not confirmed, it will be null and void and have no force or effect whatsoever except as may be otherwise agreed in writing by the Parties. |
| **Withdrawal of Objection** | On the Effective Date, Customer will withdraw, with prejudice, the Decimal Digital Currency I, LLC's (I) Objection to (A) Confirmation of the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates and (B) Final Approval of the Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and its Debtor Affiliates and (II) Reservation of Rights [Docket No. 899]. |

DocuSign Envelope ID: 427DC895-5ABB-42EB-8584-4DB5DD417B67

**IN WITNESS WHEREOF**, the parties hereto have caused this Term Sheet to be executed by their respective duly authorized officers as of the date first above written.

**SELLER:**

**COMPUTE NORTH, LLC**

By: *Drake Harvey*
Drake Harvey (Feb 10, 2023 09:31 EST)
Name:   Drake Harvey
Title:    President

**PURCHASER:**

**Decimal Digital Currency I, LLC**

By:
AA04935C07A3439...
Name:   Henry Robinson
Title:    CEO

DocuSign Envelope ID: 427DC895-5ABB-42EB-8584-4DB5DD417B67

## **Schedule 1**

| Model | Orgin | Destination | AWB | Shipped Date | ETA at Port | ETA at MVP | Logistics | Status | TH/s | Units | Hashrate | Paid to Debtor | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | Overhead | Shipping Cost | Total |
| Bitmain S19 XP 141TH/s | MAL | MVP - Houston | AEQPG2301006 | 1/24/2023 | 1/30/2023 | 2/13/2023 | Central | in route | 141 | 4 | 564 | $ 440 | $ 351 | $ 791 |
| Bitmain S19 XP 134TH/s | MAL | MVP - Houston | AEQPG2301006 | 1/24/2023 | 1/30/2023 | 2/13/2023 | Central | in route | 134 | 48 | 6,432 | 5,018 | 4,209 | 9,227 |
| Bitmain S19 XP 141TH/s | IDN | MVP - Houston | AASIN2301196 | 1/23/2023 | 1/29/2023 | 2/12/2023 | CTS | in route | 141 | 114 | 16,074 | 12,540 | 12,352 | 24,892 |
| Bitmain S19 XP 134TH/s | IDN | MVP - Houston | AASIN2301196 | 1/23/2023 | 1/29/2023 | 2/12/2023 | CTS | in route | 134 | 89 | 11,926 | 9,304 | 9,643 | 18,947 |
| Total | | | | | | | | | 550 | 255 | 34,996 | $ 27,302 | $ 26,555 | $ 53,857 |

# Decimal - Compute North - Bitmain Machines - Decimal (signed)

Final Audit Report                                                      2023-02-10

| | |
|---|---|
| Created: | 2023-02-10 |
| By: | Rachael Smiley (rsmiley@fbfk.law) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA8spRmBGaVVyR7_RWRNyLJEreL50Q6JY3 |

## "Decimal - Compute North - Bitmain Machines - Decimal (signed )" History

Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)
2023-02-10 - 0:55:15 AM GMT- IP address: 76.187.194.109

Document created by Rachael Smiley (rsmiley@fbfk.law)
2023-02-10 - 2:24:14 AM GMT- IP address: 76.187.194.109

Document emailed to drake.harvey@computeholding.com for signature
2023-02-10 - 2:25:00 AM GMT

Email viewed by drake.harvey@computeholding.com
2023-02-10 - 2:31:01 PM GMT- IP address: 104.47.57.254

Signer drake.harvey@computeholding.com entered name at signing as Drake Harvey
2023-02-10 - 2:31:20 PM GMT- IP address: 96.231.230.238

Document e-signed by Drake Harvey (drake.harvey@computeholding.com)
Signature Date: 2023-02-10 - 2:31:22 PM GMT - Time Source: server- IP address: 96.231.230.238

Agreement completed.
2023-02-10 - 2:31:22 PM GMT

**Adobe Acrobat Sign**

**<u>Exhibit C</u>**

**Notice of Confirmation Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MINING PROJECT WIND DOWN HOLDINGS, INC. | ) Case No. 22-90273 (MI) |
| (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | ) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket Nos. 889, 938** |

## NOTICE OF ENTRY OF
## ORDER (A) APPROVING THE DEBTORS'
## DISCLOSURE STATEMENT ON A FINAL BASIS AND
## (B) CONFIRMING THE THIRD AMENDED JOINT LIQUIDATING
## CHAPTER 11 PLAN OF MINING PROJECT WIND DOWN HOLDINGS, INC.
## (F/K/A COMPUTE NORTH HOLDINGS, INC.) AND ITS DEBTOR AFFILIATES

**TO CREDITORS, EQUITY HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on February 16, 2023, the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered an order [Docket No. ___] (the "Confirmation Order") confirming the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

*Holdings, Inc.(f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* [Docket No. 889] (as amended, modified, or supplemented, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Section 9.1 of the Plan, and consistent with section 1141(d)(3) of the Bankruptcy Code, the Plan does not grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan or any contract, instrument or other agreement or document created pursuant to the Plan, the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release, effective as of the Effective Date, of such Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the holder of such a Claim or Interest has accepted the Plan. On the Effective Date, all persons and Entities shall be precluded from asserting against the Reorganized Debtors or the Litigation Trust, or any of their respective assets or properties, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date, except as otherwise provided in the Plan.

**PLEASE TAKE FURTHER NOTICE that except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to**

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms by the Plan.

perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, upon the occurrence of the Effective Date, the Plan and its provisions are binding on the Debtor, the Reorganized Debtor, any holder of a Claim or Interest, and such Holder's successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided in Section 2 of the Plan, unless previously Filed, requests for payment of Administrative Claims must be (i) Filed on or before the Administrative Claims Bar Date which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date, and (ii) served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and this notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, their respective Estates, or the Plan Administrator, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the latter of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the date on which such Administrative Claim is Filed.

**PLEASE TAKE FURTHER NOTICE** that unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified and treated for all purposes as general unsecured claims against the applicable Debtor counterparty.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order (including the Plan attached as an exhibit thereto) as well as copies of all documents filed in this chapter 11 case are available free of charge (a) by visiting the case website maintained by Debtors' notice and claims agent, Epiq Corporate Restructuring, LLC, available at https://dm.epiq11.com/computenorthholdings or (b) by writing to Epiq Corporate Restructuring, LLC, Re: Compute North Holdings, Inc., 10300 SW Allen Blvd., Beaverton, OR 97005.  You may also obtain copies of any pleadings by visiting pacer.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that, to the extent you wish to receive notice of pleadings filed in this chapter 11 case after the Effective Date, you must request notice pursuant to Bankruptcy Rule 2002.

*[Remainder of Page Intentionally Left Blank]*

Dated: February _, 2023
Houston, Texas

**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
        sayanbhattacharyya@paulhastings.com
        danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
        michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*