```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3                                  )  CASE NO: 22-90273-MI
                                    )
 4    MINING PROJECT WIND DOWN      )  Houston, Texas
      HOLDINGS INC. (f/k/a          )
 5    COMPUTE NORTH HOLDINGS, INC.),)  Thursday, February 16, 2023
                 Debtor.            )
 6                                  )  1:27 p.m. to 2:32 p.m.
      ------------------------------)

 7

 8                                TRIAL

 9             BEFORE THE HONORABLE MARVIN ISGUR
                 UNITED STATES BANKRUPTCY JUDGE

10

11    APPEARANCES:

12    For Debtor:              JAMES TILLMAN GROGAN, III
                               Paul Hastings LLP
13                             600 Travis Street, 58th Floor
                               Houston, TX 77002

14
                               RACHAEL L. SMILEY
15                             Ferguson Braswell Fraser Kubasta PC
                               2500 Dallas Parkway, Suite 600
16                             Plano, TX 75093

17    Official Committee of    CHUCK GIBBS
      Unsecured Creditors:     KRISTIN K. GOING
18                             McDermott Will and Emery
                               2501 North Harwood Street
19                             Suite 1900
                               Dallas, TX 75201
20
      For Corpus Christie      MARK ADAM CASTILLO
21    Energy Park, LLC:        Carrington Coleman Sloman &
                               Blumenthal, LLP
22                             901 Main Street, Suite 5500
                               Dallas, TX 75202
23
      For U.S. Trustee:        JAYSON RUFF
24                             U.S. Trustee
                               515 Rusk Street, Suite 3516
25                             Houston, TX 77002
```

```
 1    For MP2 Energy, LLC:       MARIA MULROONEY BARTLETT
                                 Cokinos Young
 2                               1221 Lamar Street, 16th Floor
                                 Houston, TX 77010
 3
      For Marathon:             ALEXANDER P. COHEN
 4                               Weil, Gotshal & Manges LLP
                                 767 Fifth Avenue
 5                               New York, NY 10153

 6    For Decimal Digital       MATTHEW W. SILVERMAN
      Currency:                  Pryor Cashman LLP
 7                               7 Times Square
                                 New York, NY 10036
 8
      ALSO PRESENT:             STEVE QUISENBERRY
 9
                                 MATT HELD
10
      Court Reporter:           UNKNOWN
11
      Courtroom Deputy:         UNKNOWN
12
      Transcribed by:           Veritext Legal Solutions
13                               330 Old Country Road, Suite 300
                                 Mineola, NY 11501
14                               Tel: 800-727-6396

15


16
      Proceedings recorded by electronic sound recording;
17    Transcript produced by transcription service.

18


19


20


21


22


23


24


25
```

1      <u>HOUSTON, TEXAS; THURSDAY, FEBRUARY 16, 2023; 1:27 PM</u>

2                        (Call to Order)

3           CLERK:  Please be seated.

4           THE COURT:  A couple of minutes early.  Sorry to

5      make you all wait.  All right.  We are here on the Mining

6      Project Wind Down Holdings case, 22-90273.  Appearances

7      should've been made electronically.  If you haven't yet made

8      your electronic appearance, please go ahead and do it on our

9      website.  If you wish to speak at today's hearing, if you

10     would please come forward to the podium and identify

11     yourself for today and press 5 star on the phone.  This

12     won't restrict you from speaking later, but it'll just help

13     keep it organized.  Mr. Grogan, good afternoon.

14          MR. GROGAN:  Good afternoon, Your Honor.  James

15     Grogan from Paul Hastings on behalf of the Debtors.

16          THE COURT:  Thank you.  Mr. Gibbs?  Sorry.  You're

17     not Mr. Gibbs.

18          MS. SMILEY:  Good afternoon, Your Honor.  Rachael

19     Smiley, Ferguson Braswell Fraser Kubasta also on behalf of

20     the Debtors Mining Project Wind Down Holdings.

21          THE COURT:  Thank you, Ms. Smiley.

22          MR. GIBBS:  Good afternoon, Your Honor.  Chuck

23     Gibbs with McDermott Will and Emery, counsel for the

24     Committee.  With me virtually are my partners Kristin Going

25     and Stacy Lutkus.  Ms. Going may address the Court on a

1   particular matter depending on how this rolls out.

2          THE COURT:  Thank you.

3          MR. CASTILLO:  Mark Castillo of Carrington Coleman

4   on behalf of Corpus Christie Energy Park, LLC.  Also present

5   in the courtroom is Mr. Steve Quisenberry and Mr. Matt Held,

6   the corporate representatives.  Good afternoon.

7          THE COURT:  Thank you, Mr. Castillo.

8          MR. RUFF:  Good afternoon, Your Honor.  Jayson

9   Ruff for the U.S. Trustee.

10          THE COURT:  Afternoon.

11          MS. BARTLETT:  Good afternoon, Your Honor.  Maria

12   Bartlett with Cokinos Young on behalf of MP2 Energy, LLC.

13          THE COURT:  Okay.  And on the phone, Ms. Gelling.

14   I'll get your line open.  Good morning.  Or good afternoon.

15          MS. GOING:  Good afternoon, Your Honor.  Kristin

16   Going.

17          THE COURT:  Mr. Cohen, good afternoon.

18          MR. COHEN:  Good afternoon, Your Honor.  This is

19   Alex Cohen from Weil, Gotshal and Manges on behalf of

20   Marathon Digital Holdings.

21          THE COURT:  Thank you.  Mr. Silverman.  Mr.

22   Silverman?

23          MR. SILVERMAN:  Good afternoon, Your Honor.  This

24   is Matthew Silverman, Pryor Cashman, on behalf of Decimal

25   Digital Currency.

1                THE COURT:  Thank you.  Mr. Grogan.

2                MR. GROGAN:  Yes.  Thank you, Your Honor.  It's

3     good to be here today.  Your Honor, I'd like to make a

4     couple of introductions before we get started.  We have our

5     witnesses available on the Go-To Meeting virtual site.

6     First, we have the Debtor's president and CEO Drake Harvey.

7     We also have our financial advisor Ryan Mersch.  We also

8     have Stephanie Kjontvedt from Epiq who served as

9     solicitation agent.  And I think that's spelled K-J-O-N-T-V-

10    E-D-T.  And then lastly we have a member of our board of

11    directors and our independent committee of directors Scott

12    Tilman, who also submitted a declaration.

13               Your Honor, we're here today which is hopefully

14    the conclusion of a difficult case, as I told you at the

15    first day hearing.  We entered the -- we entered Chapter 11

16    with very little cash, no DIP, no Stalking Horse, and no

17    sponsor for a plan.  It was a free-fall, and we were working

18    on a very tight liquidity timeline to get to a deal.  What

19    it ultimately turned into was a series of deals where, you

20    know, we closed, I think in the aggregate, 13 separate asset

21    sales, four that were major asset sales and nine minor

22    deminimis asset sales.

23               Your Honor, through these sales, we have

24    eliminated and satisfied virtually all of our secured debt.

25    We've entered the case with approximately $250 million of

1    secured debt primarily -- a majority of which was at either

2    the Generate capital secured facilities or King Mountain,

3    which was secured by the loan to an affiliate of NextEra.

4    The asset sales have taken all of that secured debt, as well

5    as some -- almost $10 million of equipment financing from

6    Foundry off of the balance sheet.  And also, as a result of

7    the case, we have reached key settlements with all of our

8    largest Creditors and constituents.

9          Key settlements include the settlement with RK

10   Mission Critical.  RK, as the Court may recall, had a $20

11   million secured claim, which was disputed as a preferential

12   transfer.  The total amount of the debt was $60 million

13   according to the proof of claim they filed.  As a result of

14   that settlement, there is no secured claim remaining on any

15   of the residual assets in the estates.  They -- you know, we

16   did agree to share 15 percent of the future proceeds of the

17   containers, but that again provides significant value to the

18   unsecured Creditors who are really the only remaining

19   fulcrum security at issue here.

20         We also settled with Marathon.  We settled with a

21   number of smaller Creditors in the run-up to the plan, and

22   Ms. Smiley's going to go through those stipulations when I

23   conclude my opening.  We also -- and this -- you know, I

24   can't underestimate the importance of this.  We settled any

25   disputes with the Official Committee of Unsecured Creditors.

 1    So -- and that goes to plan structure, the releases.  We

 2    formed a litigation trust at their request.  We -- the plan

 3    now is really a two-leg structure where there's going to be

 4    the reorganized Debtors we call them who will maintain

 5    ownership of the residual assets, which consist of some

 6    transformers, containers, and you know, different pieces of

 7    equipment that were supposed to be allocated to projects

 8    we've now sold.  And then all the litigation claims will be

 9    contributed to the litigation trust.

10         All of these transactions required a significant

11    amount of work from our management team.  I want to thank

12    them.  They worked tirelessly over the past four months to

13    get 13 asset sales negotiated, documented, and closed.  It

14    was a very difficult process, and the management team is to

15    be commended for all the hours that they spent documenting

16    these items, and creating all the schedules of assets and

17    claims and contracts and everything else that went into the

18    closing of those deals.

19         Your Honor, I'd also like to thank Mr. Gibbs and

20    the Committee for being a valuable collaborator in this

21    process.  And Mr. D'Amico from Miller Buckfire I think

22    worked very hard alongside our investment bankers from

23    Jeffries to market and achieve the best values we could for

24    the assets that we have sold.  And I'd also like to

25    highlight the hard work that Jeffries did to make this case

1    possible.  The Jeffries team did an amazing job bringing in

2    all the buyers that we were able to procure and getting

3    these sales over the finish line.

4            Your Honor, I think with that, we are now at the

5    point where we can present the Court with a fully consensual

6    plan.  We have an accepting impaired class, Class 3 General

7    Unsecured Claims.  They accepted the plan by approximately

8    93 percent in amount and greater than 70 percent in number.

9    We did not get an accepting vote from our parent unsecured

10   Creditors who are in -- most likely out of the money, but

11   you know, as we'll present later on, I think from a

12   technical perspective, the plan is fully compliant with

13   1129(b).

14           And they get the treatment that they're entitled

15   to, which is the -- either payment in full and the equity

16   will get -- payment in full and the equity will get the

17   residue, or they'll get whatever flows up from Class 3 and

18   equity will receive nothing.  So we've also resolved all

19   pending objections to the plan.  We had three.  The Court's

20   already disposed of the Rohit Shirole objection.  We have

21   two remaining, Corpus Christi Energy Park and Decimal

22   Digital.  Counsel for both of them is in the courtroom

23   today.  And those -- both of those objections are resolved

24   through additions to the confirmation order.

25           THE COURT:  What are those resolutions?  Because

1    --

2            MR. GROGAN:  Certainly.

3            THE COURT:  -- nobody was going to like what I was

4    getting ready to do, so I'm glad that you all worked out

5    something that you wouldn't have to suffer through my

6    solutions.

7            MR. GROGAN:  Well, thank you, Your Honor.  So for

8    Decimal Digital we have entered into a transaction where we

9    are conveying the -- they're calling it mining equipment

10   that they had ordered.  And the money that they'll pay will

11   cover all the costs of the estate to actually get the mining

12   equipment out of U.S. Customs and delivered to a warehouse

13   where they will be able to pick it up.

14           And then with respect to Corpus Christi Energy

15   Park, we have reached a resolution.  There's a new paragraph

16   in the form of confirmation order, which essentially

17   provides that they will -- if -- you know, there's really

18   three possibilities in the proposed litigation between the

19   litigation trust and Corpus Christi Energy Park.  One

20   possibility would be that the Court rules that Corpus

21   Christi Energy Park or maybe -- I'll them CCEP for short was

22   in breach of the contract and owes the Debtors money.

23           If that's the case, they have no right to a

24   distribution under the plan.  If, on the other hand, it

25   turns out that we were the ones who were in material breach

1    and we owe Corpus Christi Energy Park money, and there's no

2    preference or other Chapter 5 liability, then Corpus Christi

3    Energy Park would have a right to have a claim of up to $5

4    million, which would be in Class 3.  They would still have

5    to prove the amount of the damages, but it would be capped

6    -- their Class 3 treatment would be capped at five million.

7            If the Court ultimately determines that we were in

8    breach, we owe them money, and there is some Chapter 5

9    action that the Court rules in our favor on, whether it's a

10   preference, fraudulent transfer, turnover, or anything else,

11   then we would have the benefit of Section 502(d), which

12   would prevent them from recovering anything on their claim

13   up to five million unless they pay the damages.  So -- and

14   they could receive a recovery of -- on a claim of up to five

15   million as long as they pay the Chapter 5 action.

16           THE COURT:  So if there's a Chapter 5 for $3

17   million, you're going to give them $2 million.

18           MR. GROGAN:  If -- so if --

19           THE COURT:  Do they get a $5 million claim or 5

20   million in distributions?  What do they get?

21           MR. GROGAN:  If they have -- let's say they have a

22   claim for $2 million for breach of contract and we have an

23   avoidance action that's worth three million --

24           THE COURT:  Right.

25           MR. GROGAN:  -- they have to pay us three million

1    in order to get the allowed breach of contract claim for two

2    million.

3              THE COURT:  It's an allowed claim of two million,

4    not case, which is --

5              MR. GROGAN:  Exactly.

6              THE COURT:  Okay.

7              MR. GROGAN:  This is plan treatment, not actual --

8              THE COURT:  Okay.

9              MR. GROGAN:  -- cash, yeah.  All we're doing is

10   allowing them to shift that claim into Class 3 under certain

11   conditions.

12             THE COURT:  Mr. Castillo, is that the deal?

13             MR. CASTILLO:  Yes, Your Honor.  I've reviewed the

14   language from the confirmation order last night.  There was

15   another confirmation order this morning I haven't seen yet,

16   but it should be the same paragraph.

17             MR. GROGAN:  It didn't change that -- it was

18   purely to change the notice of entry of confirmation.

19             THE COURT:  Okay.

20             MR. CASTILLO:  And it's accurately described

21   (indiscernible).

22             THE COURT:  I don't have a problem with that deal.

23             MR. GROGAN:  Thank you, Your Honor.  So Your

24   Honor, I guess at this point I could hand it off to anybody

25   else who wants to make an opening statement, or I could move

1   to introducing our exhibits and declarations, and then hand

2   it off to Ms. Smiley.

3           THE COURT:  Does anyone else wish to make any sort

4   of opening comment?

5           MAN 1:  We'll reserve it.

6           THE COURT:  Okay.  Thank you.  (Indiscernible).  I

7   was going to spend my afternoon with you, and I'm not going

8   to anymore.

9           MR. GROGAN:  Trying to make your life easy.  All

10  right, Your Honor.  So with that, I would like to introduce

11  into evidence the Debtor's exhibits.  We had one that

12  changed.  So we filed our witness and exhibit list at --

13  sorry, give me a second here.  Reading the docket number on

14  that, it's...

15          MS. SMILEY:  First submitted it was 988, but

16  (indiscernible).

17          MR. GROGAN:  The one I have didn't have it.

18          MS. SMILEY:  (Indiscernible).

19          MR. GROGAN:  Okay.  So the -- it's -- witness and

20  exhibit list is 988.

21          THE COURT:  Okay.

22          MR. GROGAN:  And then the one change to that, the

23  Exhibit 1, which is the voting declaration from Ms.

24  Kjontvedt was refiled to take into account the BitNile

25  agreement, which --

1          THE COURT:  Right.

2          MR. GROGAN:  -- allows them to vote to reject for

3    a little over $1 million.  That was filed at Document Number

4    1007.  So with that one change -- so it changed Docket

5    Number -- so 936 has been replaced by Docket 1007.  And

6    other than that, I would move to admit Exhibits 1 through

7    19, Debtor's Exhibits 1 through 19, which includes not only

8    the voting declaration, but also the declarations of Mr.

9    Tilman, Mr. Mersch, and Mr. Harvey.

10          THE COURT:  Tell me again the new number for 936..

11          MR. GROGAN:  The new number is Document Number

12    1007, 1007.

13          THE COURT:  Is there any objection to the

14    admissions of Exhibits 1 through Exhibit -- I don't think I

15    have the corporate org chart -- through Exhibit 18 --

16          MR. GROGAN:  The corporate org chart --

17          THE COURT:  -- substituting 1007.  We'll come to

18    19 in a minute.

19          MR. GROGAN:  Yep.

20          THE COURT:  Substituting 1007 for 936 as Exhibit

21    1.  Any objection to any of those?  All right.  1 through 18

22    are admitted with that substitution.  And then on 19, what

23    do you want to do?

24          (Debtor's Exhibits 1 through 18 admitted into

25    evidence)

1              MR. GROGAN:  It was supposed to be filed with the

2     witness and exhibit list.

3              MS. SMILEY:  At the back of 998.

4              MR. GROGAN:  Yeah, so it's at the very end of --

5              THE COURT:  All right.  It is there.

6              MR. GROGAN:  -- Docket 998.

7              THE COURT:  It is there.  And any objection to 19?

8     19 is admitted as well.

9              (Debtor's Exhibit 19 admitted into evidence)

10              MR. GROGAN:  Thank you, Your Honor.  So Your

11     Honor, I think with that, I'm going to hand it off to Ms.

12     Smiley.  She will present the BitNile order and other claim

13     stipulations.

14              THE COURT:  Thank you.

15              MS. SMILEY:  Good afternoon, Your Honor.  Again

16     for the record, Rachael Smiley on behalf of the Debtors.

17     The next item on the agenda are the stipulations and agreed

18     orders that the Debtors entered into with a number of its

19     Claimants, their Claimants.  The Debtors have filed eight

20     stipulations and agreed orders that they are seeking the

21     Court's approval of with the following counter-parties at

22     the following docket numbers.  Each of these agreeing that

23     the counterparty shall have one allowed Class 3 general

24     unsecured claim against the Debtor's estates in exchange for

25     agreeing to vote their Claimant support of confirming the

1    Debtor's plan.

2          These are found at Exhibits 9 through 16 on the

3    Debtor's witness and exhibit list, and they are as follows.

4    At Docket 873, a stipulation with U.S. Digital Mining Texas,

5    LLC in the amount of $1,401,544.  At Docket 891, a

6    stipulation with Digital Alchemy, LLC in the amount of

7    $141,622.  At Docket 892, a stipulation with GH Effect, Inc.

8    in the amount of $62,166.  At Docket 893, with Power Asset

9    Recovery Corporation, a stipulation in the amount of

10   $897,500.  At Docket 901, a stipulation with three entities.

11   They are Alder BTC Holding in the amount of $38,925.60.  The

12   second is Alder Opportunity, LP in the amount of $44,981.40.

13   And the third is Alder SPV I, LLC in the amount of

14   $152,924.40.  Next would be at Docket 92 with NBTC Limited,

15   a stipulation in the amount of one million --

16          THE COURT:  I'm sorry.  Which docket number?

17          MS. SMILEY:  That is 902.

18          THE COURT:  902.  Thank you.

19          MS. SMILEY:  NBTC Limited is the counterparty in

20   the amount of $1,383,024.  Next at Docket 903, a stipulation

21   with MP2 Energy Texas, LLC, which does business as Shell

22   Energy Solutions in the amount of $2,462,782.24.  And

23   finally, at Docket 904, a stipulation with TWC Financial,

24   LLC in the amount of $386,353.36.  The Debtors would submit

25   that each of these eight stipulations assisted in achieving

1    confirmation of the Debtor's plan and assisted in resolving

2    certain claims that the Debtors either had objected to or

3    would object to.  And therefore, they are in the best

4    interests of the Debtor's Creditors and the Debtor's

5    estates.

6              A notice of hearing on all eight of these

7    stipulations was filed at Docket 909, and it was served on

8    all counterparties to the stipulations as evidenced by the

9    Certificate of Service at Docket Number 942.  Your Honor,

10   there are a few minor issues for clarification with respect

11   to some of these individual stipulations that the Debtors

12   would like to clarify for the record at the request of the

13   Committee.

14             So the first of those is with respect to Docket

15   873 with U.S. Digital Mining Texas.  The stipulation in

16   third "whereas" paragraph recites that there was -- there

17   were two proofs of claim filed by U.S. Digital Mining.  It

18   recites on at 10111 in the amount of $4,408,837.80.  There

19   was also an amended claim filed by this Claimant at Claim

20   Number 10156 in the amount of $5,995,000 -- excuse me,

21   $5,995,957.60.  That was filed on January 13th against

22   Compute North, LLC.  That was ultimately superseded by this

23   stipulation.  It was not reflected in here, but obviously

24   there were two claims.

25             One amended the other, so we just wanted to recite

1    for the record that obviously through the stipulation U.S.

2    Digital Mining is only getting on Class 3 allowed claim.

3    And so that is in the amount of $1,401,544, and U.S. Digital

4    does not have any other allowed claims against the Debtor.

5         THE COURT:  Just let me take a look at that now

6    that I've got it open.  So tell me what the clarification

7    does because I'm not --

8         MS. SMILEY:  It's the -- on that page, page 2,

9    it's the first full "whereas" paragraph at the top, Your

10   Honor.

11        THE COURT:  Right.

12        MS. SMILEY:  So there is simply another amended

13   claim that is not recited there.  This Claimant U.S. Digital

14   Mining did amend their claim at Claim Number 10156 --

15        THE COURT:  Okay.

16        MS. SMILEY:  -- in the amount of $5,995,957.60.

17   It isn't recited there, but the language of the stipulation,

18   just to clarify for the record, both of those claims, but

19   the amended and the original claim filed are superseded by

20   the agreed stipulated claim amount of $1,401,544.

21        THE COURT:  So I mean, I guess I'm not seeing the

22   ambiguity.  I want to be sure I'm not misunderstanding the

23   second sentence of (indiscernible) Paragraph 2 says this is

24   all they get.  It's one claim, 1,401,544.  I don't mind the

25   clarification just as long as I'm not misunderstanding it.

```
1              MS. SMILEY:  Your Honor is not misunderstanding.
2    The Committee asked us to clarify that to be sure, but --
3              THE COURT:  I'm perfectly happy with all that.
4              MS. SMILEY:  -- it says what it means.
5              THE COURT:  I'm happy with all that as long as I'm
6    not confused, and so --
7              MR. GROGAN:  Your Honor, can you hear me from this
8    mic, or should I --
9              THE COURT:  I can hear you from there.
10             MR. GROGAN:  A clarification was requested because
11   the stipulation only refers to one particular claim and it
12   doesn't mention specifically the second one.  We wanted to
13   make sure that the stipulation resolved both.  To the extent
14   the Court feels it's necessary to instruct Epiq to expend
15   the other (indiscernible) that, we just wanted to make sure
16   the record was clear.  There still wasn't an unresolved
17   claim with that Creditor.
18             THE COURT:  And I -- and just so that you know, if
19   there are 15 other claims that aren't recited, I think that
20   the second sentence of Paragraph 2 says they get one and
21   only one claim.  And so I think it's -- I don't have any
22   problem with clarification, but I do think it says that.
23   And I don't want, in case on any of these others, there's an
24   accidental omission of some claim.  This -- these
25   stipulations result in one claim, and that is the universe
```

1    of claims that are awarded to those people, and that's all

2    I'm trying to say.

3            MR. GROGAN:  Understood, Your Honor, but I think

4    you're going to hear from Ms. Smiley about two or three

5    others where we had a similar situation.

6            THE COURT:  And I'm okay with all of those.  I

7    just want to be sure.  And I'll carry this statement forward

8    to those others.  I think these orders are largely

9    identical.  I think they limit people to a single claim.  Do

10   I have an evidentiary basis, do you think, in the record for

11   approving these already?  Or do I need one?

12           MS. SMILEY:  As in do you have sufficient witness

13   testimony underscoring --

14           THE COURT:  In the declarations.

15           MS. SMILEY:  -- the fact that this is a --

16           THE COURT:  You think the declarations cover this?

17           MS. SMILEY:  I would think Mr. Mersch's

18   declaration in support of confirmation would cover that,

19   Your Honor, but Mr. Mersch is available if Your Honor has

20   questions or if we need to put on some evidence to

21   underscore these.

22           THE COURT:  So I man, I think I understand what

23   you're doing.  I don't have a problem with what you're

24   doing.  I want to know what evidence you want to rely on for

25   it.  And if you think Mr. Mersch's declaration is adequate,

1   should we look at it and you can show me where it says that

2   this is a fair -- these stipulations largely result in a

3   compromise of sorts, right?

4           MS. SMILEY:  I'm not sure if there is a specific

5   reference to these stipulations in Mr. Mersch's declaration,

6   but I'd be happy to ask him that in line with the rest of

7   the testimony.

8           THE COURT:  Well, what record's your record?  What

9   record do you want in there to support these stipulations?

10          MS. SMILEY:  I believe a statement from Mr. Mersch

11  that he negotiated these in good faith and believes that

12  they represent a fair compromise in order to get the plan

13  confirmed and to resolve claim objections would probably do

14  the trick.

15          THE COURT:  All right.  Mr. Mersch, would you go

16  ahead and turn on your camera, please, and press 5 start one

17  time on your line?  Mr. Mersch, do you want to press --

18  there we go.  Thank you.  Good afternoon, Mr. Mersch.

19          MR. MERSCH:  Hi.

20          THE COURT:  Do you swear to tell the truth, the

21  whole truth, and nothing but the truth?

22          THE WITNESS:  I do.

23          THE COURT:  Go ahead, Ms. Smiley.

24          MS. SMILEY:  Thank you, Your Honor.

25                  DIRECT EXAMINATION OF RYAN MERSCH

1   BY MS. SMILEY:

2   Q    Mr. Mersch, could you state your name for the record?

3   A    Ryan Mersch, financial advisor to the Debtor.

4   Q    Thank you, Mr. Mersch.  Did you submit a declaration in

5   this case in support of confirmation of the Debtor's Third

6   Amended Plan of Reorganization?

7   A    I did.

8   Q    And in your work to assist in finding confirmation for

9   that plan, did you work to negotiate certain stipulations

10  and agreed orders with the Debtors that are found at

11  Exhibits 9 through 16 in evidence today?

12  A    I did.

13  Q    Do you believe that the stipulations and agreed orders

14  that you negotiated with those counterparties found at those

15  exhibits represent fair compromises that the Debtor made?

16  A    Yes, I do.

17  Q    Do you believe that procuring votes in exchange for an

18  allowed claim allowed the Debtor's plan to achieve

19  confirmation more easily than it might have otherwise?

20  A    No, I do not believe that the stipulations were used in

21  order to achieve votes.  I think these are fair compromises

22  negotiated in good faith.

23  Q    And do you believe that the compromises in good faith

24  in both the size of the claims and the number of allowed

25  claims are beneficial to the Debtor's estates that were

1    agreed to in the stipulations?

2    A    I do.

3    Q    I should've been more clear.  The compromise that the

4    Debtor --

5    A     Yes, I do.

6    Q    -- agreed to.

7    A    Yes, I do.

8              MS. SMILEY:  Okay.  I will pass the witness, Your

9    Honor.

10             THE COURT:  Are there any other questions for Mr.

11   Mersch?  What's the Committee's position on all the

12   stipulations?  Do you support them all?  Under Educator's

13   Trust, we have to take into account the reasonable view of

14   Creditors.  What is the view of Creditors with respect to

15   all these stipulations?

16             MR. GROGAN:  If I could just address quickly, Your

17   Honor, the Committee is supportive of the Court's order

18   approving these stipulations.  We obviously were supportive

19   of those amongst the eight that reflect the material

20   reduction in the amount being agreed to under the

21   stipulation versus what was originally filed.  We also have

22   satisfied ourself that the stipulations, which agree to a

23   claim in the amount asserted by the Claimant, are

24   appropriate because they match the Debtor's books and

25   records.  So we do think for the reasons you heard from Mr.

1    Mersch, and also I think it's in Paragraph 11 of his

2    declaration, that an ample evidentiary record has been made,

3    the Committee has investigated and are supportive of it.

4            THE COURT:  Thank you.  All right.  I am, with

5    that testimony and the statement of support from the

6    Committee and the clarifying comment, signing 873, and 873

7    will be sent to docket.  What I'm going to do is so that I'm

8    keeping organized here, I'm going to just take them one at a

9    time.  And on ones that you need to make clarifying comments

10   as you've promised to the Committee, I'm fine with that.

11   The next one I show is 891 I believe.  I'm going to carry

12   forward Mr. Mersch's testimony on -- wait a minute.

13           Looks like I clicked the wrong thing.  Hold on.

14   Give me just a minute.  I may have made a mistake here.  I

15   did.  All right.  I have 891 open.  Go ahead.  Do you have

16   any clarifications on that?

17           MS. SMILEY:  Your Honor, there were no clarifying

18   comments to Docket Number 891.

19           THE COURT:  All right.  With the statements from

20   Mr. Mersch and the support of the Committee and my review of

21   the stipulations, I am signing 891.  The next one I have is

22   892.

23           MS. SMILEY:  Your Honor, for the record on Docket

24   892, the Debtors would note that in the first "whereas"

25   paragraph on Page 2, this Claimant, GH Effect, did file a

1    duplicate claim at Claim Number 10068 in the exact same

2    amount $62,166.  It was filed on November 21st against

3    Compute North LLC.  This is an instance where most likely

4    the Claimant filed a claim against the Clerk's Office

5    register as well as the claims agent register just out of an

6    abundance of caution.  We did not recite that second claim

7    there, but obviously the Court's statements and the language

8    carries over, and it's intended there be only one allowed

9    Class 3 claim.

10          THE COURT:  Any objections to this?

11          MR. GIBBS:  No.

12          THE COURT:  Okay.  92 has been signed with that

13   clarifying statement on the record.  It's been sent to

14   docketing.  Next, I have 893.

15          MS. SMILEY:  There are no clarifying comments on

16   the record, Your Honor, to Docket Number 893.

17          THE COURT:  893 has been signed.  Mr.

18   (Indiscernible), I'm sending 893 to the work group.  It

19   wouldn't go through normally.  If there's a problem, let me

20   know.  Next, I have is 901, I believe.  Is that correct?

21          MS. SMILEY:  Yes, Your Honor.  And there is a very

22   small Scrivener's error on Docket 901 that we want to call

23   to attention, and we can correct that.  Either Your Honor

24   can correct it, or we can submit a revised version.

25          THE COURT:  No, I'll fix it.  Let me get it open

1    here.

2              MS. SMILEY:  Sure.

3              THE COURT:  Put it on the screen.  All right.

4    What do we have in 901?

5              MS. SMILEY:  On Page 2, there is a chart under the

6    second "whereas" paragraph.  The third column claim numbers,

7    the second from the bottom where it says 1069, that should

8    be 10069.

9              THE COURT:  Okay.

10             MS. SMILEY:  And that is all.

11             THE COURT:  All right.  I've signed 901.  901 had

12   gone to docketing.  Next, I have 902.

13             MS. SMILEY:  Your Honor, there are no clarifying

14   comments with respect to Docket Number 902.

15             THE COURT:  Mr. (Indiscernible), this is also

16   going to the work group on 902.  It's been signed and sent.

17   I then have 903.

18             MS. SMILEY:  Your Honor, there are no clarifying

19   comments with Docket 903.

20             THE COURT:  Thank you.  903 has been signed and

21   sent to docketing.  And I believe the final one is 904.  Is

22   that correct?

23             MS. SMILEY:  That's correct, Your Honor.  There is

24   a clarifying comment with respect to Docket 904.  This is

25   with Counter Party TWC Financial, LLC.  In the first

1    "whereas" paragraph on Page 2, the stipulation refers to two

2    claim numbers and only one claim amount of $11,763,939.24.

3    This $11 million claim was an amended version, and it

4    superseded an earlier version, which was filed at Claim

5    Number 10084 in the amount of $7,795,335.36.  So, we would

6    submit that obviously the $11 million claim superseded the

7    $7 million claim, and both are superseded by this

8    stipulation in the amount of $386,353.36.

9            There was also a claim that is recited by number

10   but not amount in that "whereas" paragraph claim at 10110,

11   but it is in the amount of $15.03.  Obviously that claim is

12   also superseded by the stipulation and agreed order at the

13   stipulated amount.

14           THE COURT:  All right.  I signed that.  Mr.

15   (Indiscernible), I sent it to your work group.  Thank you,

16   Ms. Smiley.

17           MS. SMILEY:  Thank you, Your Honor.

18           THE COURT:  Is there anything else we need to

19   cover?

20           MS. SMILEY:  Just to be sure, I think Mr. Grogan

21   announced this earlier, but on the agenda, there was

22   BitNile's emergency motion under Rule 3018 for the temporary

23   allowance of their claim for voting purposes, and an agreed

24   order has been submitted for that motion.  That's submitted

25   at Docket Number 1006 agreeing to the temporary allowance of

1    BitNile's claim in the amount of $1,006,044 for voting

2    purposes only.

3              THE COURT:  I thought I signed that.  Did it not

4    come through?

5              MS. SMILEY:  You may have, Your Honor.  I may have

6    missed it on the docket.  I hadn't had a chance to check

7    getting ready for the hearing, so very likely you have.

8              THE COURT:  All right.

9              MS. SMILEY:  I just wanted to make sure that it

10   wasn't open on the agenda.

11             THE COURT:  If I didn't, it going to come through

12   shortly.  I thought that I had signed that.  This is for

13   BitNile, right?

14             MS. SMILEY:  Yes, sir.

15             THE COURT:  I don't see the signed version on

16   there.  I had seen the order.  Let me go ahead and just do

17   it just to be sure.  All right.  I signed the BitNile order.

18   Thank you.

19             MS. SMILEY:  Thank you, Your Honor.  With that, I

20   will cede the podium to Mr. Grogan.

21             THE COURT:  Thank you.  Mr. Grogan?

22             MR. GROGAN:  Your Honor, I think Mr. Gibbs wanted

23   to make his statements next.

24             THE COURT:  Mr. Gibbs?

25             MR. GIBBS:  Good afternoon again, Your Honor.

1    Chuck Gibbs of McDermott Will and Emery on behalf of the

2    Committee.  I want the record to reflect and the Court to

3    know that the Committee is fully supportive of confirmation

4    of this plan.  We filed a statement in support of this plan.

5    It's at Docket Number 935.

6           THE COURT:  I had a chance to read that.  Thank

7    you for filing it.

8           MR. GIBBS:  And similar to the comments that Mr.

9    Grogan made, the Committee would like to thank the Debtor,

10   its management, its advisors, and counsel for the hard work

11   they put into and the good faith that -- with which they

12   approached all of the negotiations with the Committee.  This

13   is a heavily negotiated plan, and it resulted in a

14   compromise that the Committee is fully supportive of.  It

15   is, I think, a plan that is significantly better than the

16   one that was initially filed, and it's a reflective -- the

17   results are reflective of hard work by all parties involved.

18          Committee was laser-focused throughout this plan

19   process on two primary goals.  One was to ensure the

20   potential claims are not prematurely released under the

21   plan, and the second was to ensure that any unreleased

22   claims can be properly investigated and pursued post-

23   confirmation.  We think we achieved the first goal by

24   significantly narrowing the scope of the release provisions

25   in the plan, and the second we think we achieved through the

1   creation of the litigation trust that you heard about, which

2   will be overseen by Creditors themselves via the Oversight

3   Committee.

4          I want the record to reflect the specific terms of

5   the deal that we did make with respect to the releases that

6   are proposed under the plan.  Section 1.1.98, I think it's

7   the last page of the plan, third amended plan, 50 of 50 I

8   believe it is, it lists all of the directors and officers

9   that are receiving full releases under the plan.  These are

10  the folks, Your Honor, that had been working throughout this

11  bankruptcy case and are likely to continue to be working in

12  -- to help the litigation trust and the plan administrator

13  in resolving the remaining open issues in the case.  The

14  Committee was supportive of the proposed releases granted to

15  those identified folks.

16         The other officers and directors that are not on

17  that list that were serving at the time of the filing of the

18  case will be getting release to the extent of any liability

19  over and above existing insurance coverage.  Former officers

20  and directors that were not serving at the time of the

21  bankruptcy are not being released under this plan.  Claim

22  holders who opt out of the releases don't get a release.

23  Parties listed on the retained causes of action don't get a

24  release, and any claim holders who object to the release

25  provisions don't get a release.  That is the deal that we

1    ultimately resolved and reached with the Debtor, and it was

2    fully supported by the Committee.

3          Your Honor, just so that the Court knows, you

4    haven't had a chance to peruse the plan, the Claim Oversight

5    Committee that's created under the plan will be made up of

6    Committee members 2Z Capital and Creditor Digital Decimal.

7    And that Oversight Committee will have an expanded role.

8    Specifically the Plan Administrator needs to get the

9    approval of the Plan Oversight Committee before taking any

10   action to litigate or settle or resolve any claims in excess

11   of $100,000.

12         The need to get Plan Oversight Committee approval

13   for the retention of professionals or any other matter that

14   might have a material impact on the recovery to the

15   Creditors.  We think the plan as modified clearly is the

16   best outcome for our constituents the unsecured Creditors.

17   We are fully supportive of it.  We'd ask Your Honor to

18   approve it today.

19         We had filed prior objections to the adequacy of

20   the disclosure statement.  I think the Court can safely deem

21   those are withdrawn.  It won't hurt my feelings if you

22   overrule my objections, but we are supportive of

23   confirmation of this plan.

24         THE COURT:  Thank you.  One of the things that you

25   brought up right in the beginning of the talk you just made

1   is something I want to address specifically because of the

2   concerns that were raised about whether the Debtor had

3   proposed this plan in good faith.

4            MR. GIBBS:  Mm-hmm.

5            THE COURT:  Those were primarily raised by Mr.

6   Castillo's client.

7            MR. GIBBS:  Mm-hmm.

8            THE COURT:  And they caused me great pause and

9   concern when I read the allegations and I read the answers

10   to the allegations as well.  I want to say you never know

11   how the ultimate evidence comes in.  But as I think you know

12   me well enough, I walk out sort of thinking this is how the

13   evidence will come in and how to rule.  In the end, I

14   decided that the plan was, in fact, proposed in good faith,

15   and that I didn't think that the changes that were made were

16   done in a bad faith or gerrymandering way so that I thought

17   the Debtor was going to be entitled to a good faith finding.

18            On the other hand, I didn't think I could confirm

19   that Corpus Christi plan.  And how I was going to deal with

20   that I don't know that I need to go into because it doesn't

21   matter a whole lot.  The parties have reached a compromise

22   that I'm perfectly happy with, and it resolves totally my

23   concerns about whether I could approve the Corpus Christi

24   plan.  But there is going to be a messy problem that people

25   were going to have to work with.  It wasn't going to really

1   help anybody very much, but I felt like from a technical

2   point of view it just does not go to the one plan one class.

3   Or I should say debtor by debtor classification.  It went to

4   motivation of how that plan would have a legitimate

5   bankruptcy purpose for Corpus Christi only.  With all that

6   said, I want to tell you that I worried about the good-

7   faith-bad-faith.  I'm happy that you brought it up.

8         MR. GIBBS:  Mm-hmm.

9         THE COURT:  On what the evidence is that is before

10   me in the record, this case was filed in good faith, but I

11   also don't want Mr. Grogan to think that he was going to

12   have a cakewalk today just because of that because he

13   wasn't.  He was going to have an unpleasant day on Corpus

14   Christi potentially, but it wasn't going to do Mr.

15   Castillo's client a whole lot of good probably in the end.

16         So, I think it's a prudent and smart compromise

17   that the parties worked out.  But I just thought it was

18   important given that there were I thought serious issues on

19   the good-faith-bad-faith that I needed to think through

20   hard.  I spent a lot of hours worrying about them.  My law

21   clerk will tell you he and I have had very long

22   conversations about them, and I appreciate that they were

23   raised because they -- those issues should be raised, and we

24   should have to worry about them.

25         I appreciate to think we're resolved, but I want

1    specific findings on the record that this was done in good

2    faith, and so I'm making those.  Thank you for your

3    comments.

4            MR. GIBBS:  Thank you, Judge.

5            THE COURT:  Mr. Grogan?

6            MR. GROGAN:  Thank you, Your Honor.  Your Honor,

7    while we were -- while I was sitting down, Mr. McKelly

8    pointed out that I may have made a mistake earlier with the

9    --

10            THE COURT:  Thank God for Mr. McKelly.  If he

11   wasn't there, you would've gotten away with it, right?

12            MR. GROGAN:  So, I had prudently excluded Ms.

13   Kjontvedt's original declaration.  So, at this point I would

14   like --

15            THE COURT:  Hold on just a second.

16            MR. GROGAN:  Sorry.

17            THE COURT:  I'm sorry.  Sorry.  I had COVID about

18   two months ago, and this is a residual, and it takes just a

19   second.

20            MR. GROGAN:  You know, I've been sick for like two

21   or three weeks with whatever's going around.  It's terrible.

22            THE COURT:  I just needed that little break.  You

23   can go right ahead.  Let me a get a cough drop in.

24            MR. GROGAN:  Anyway, the --

25            THE COURT:  What was your mistake?  I'm always

1    happy to hear of your mistakes.

2         MR. GROGAN:  -- yeah, my mistake was including Ms.

3    Kjontvedt's original declaration, which did go into

4    additional detail about the process of solicitation.  And

5    the second one was really supplementary to that, not in full

6    replacement of it.  So, at this point, I would like to move

7    into evidence our Exhibit 1, which was the first declaration

8    filed by Ms. Kjontvedt.

9         THE COURT:  996 then?

10        MR. GROGAN:  Yes.  I think that's -- actually, is

11   that right?

12        MS. SMILEY:  936.

13        MR. GROGAN:  936, yeah.

14        THE COURT:  936.  Any objection to the admission

15   of 936?  All right.  It's admitted.  Thank you.

16        (Debtors' Exhibit 1 admitted into evidence)

17        MR. GROGAN:  Thank you, Your Honor.  So, Your

18   Honor, I think the evidence that's in the record at this

19   point supports -- fully supports confirmation of the plan.

20   We've met the requirements of Section 1129(a).  We also,

21   with respect to Class 4, the parent claims, meet the

22   requirements in my view of 1129(b) with respect to rejecting

23   class of unsecured claims.

24        This is a pure waterfall plan where value flows

25   up.  And if the Class 3 claims are paid in full, value would

1   then flow to Class 3.  But unless -- until and unless those

2   -- I'm sorry, value would flow up to Class 4.  And unless

3   and until those claims are paid in full, equity would not

4   receive anything.  But if it terms out all unsecured claims

5   are paid in full, equity sits in the residual spot that it

6   belongs in.  Your Honor, unless you have any questions for

7   the Debtors or me at this point, I would like to request

8   that the Court confirm the plan.

9          THE COURT:  So is the order that contains the deal

10  the one that's found at 1001-1?

11         MR. GROGAN:  Yes, Your Honor.  So, our proposed

12  confirmation order is, yeah, Docket 1001, and it includes

13  all attachments.  It includes the language resolving the two

14  plan objections, Decimal Digital and Corpus Christi Energy

15  Park.  Also includes a form of notice of entry of

16  confirmation order.

17         THE COURT:  So, I haven't heard from the U.S.

18  Trustee.  It was my belief that some of the provisions that

19  you all normally have a problem with looked resolved, but I

20  wanted to be sure that the U.S. Trustee is satisfied with

21  where we are on everything.

22         MR. RUFF:  Your Honor, I appreciate the

23  opportunity to talk.  You know, I just want to hats off to

24  the Committee.  They sort of stole my thunder on a lot of

25  the issues that we normally would raise.  But no opposition

1    to confirmation today, Your Honor.  Your Honor has correctly

2    noticed that the issues that we normally would have, have

3    all been resolved.  Even most prior to the plan even being

4    solicited out for votes.

5         THE COURT:  Thank you.  So do you want to take me

6    to these new provisions that I haven't -- I have not see

7    anything filed since yesterday morning, so if there's --

8         MR. GROGAN:  No, that's the --

9         THE COURT:  I haven't the proposed confirmation

10   order since yesterday morning.

11        MR. GROGAN:  Okay.  That's fine.  If you want to

12   --

13        THE COURT:  I see obviously a lot of things have

14   gotten filed since then.

15        MR. GROGAN:  If you want to open it up, I think

16   the Corpus Christi Energy Park language is toward the

17   bottom.

18        MS. SMILEY:  Paragraph 121.

19        MR. GROGAN:  Paragraph?

20        MS. SMILEY:  121.

21        MR. GROGAN:  Paragraph 121.  I would note the last

22   sentence does specifically note that this resolution is not

23   going to be prejudicial to any future settlement

24   negotiations that the litigation trust and Corpus Christi

25   Energy Park may want to enter into.

1           THE COURT:  I'm not sure I'm following some of

2     this.  I just want to run through it more slowly.

3           MR. GROGAN:  No problem.

4           THE COURT:  Okay.  I understand that, and I think

5     that's what got announced.  There was also one with --

6           MR. GROGAN:  Decimal, yes.  That is 120.  It's --

7     I skipped ahead one paragraph.  And then there is a --

8     there's a related term sheet which explains the terms of the

9     asset transaction.

10          THE COURT:  Okay.

11          MR. GROGAN:  And I believe counsel to Decimal is

12    on the line as well.

13          THE COURT:  So, under allowed claim where it says

14    customer shall be entitled to allow a general unsecured

15    claim in Class 3 for customer share of the Bitcoin credits

16    in the amount of 445,550, and then it sorts of repeats that

17    at 35412, it seems to me that's giving reasons why this is

18    occurring.  But what we're going to have is customer gets an

19    allowed general unsecured claim of $459,000.  It doesn't

20    matter where it came from.  That's the total of the claim.

21    I'm sorry, $499,000.

22          MR. GROGAN:  Correct.

23          THE COURT:  Is that about right?

24          MR. GROGAN:  Correct.

25          THE COURT:  Okay.  So if for some reason the

1   Bitmain credits are worthless, they still get 444,550 claim.

2            MR. GROGAN:  That's correct, Your Honor.

3            THE COURT:  Okay.

4            MR. GROGAN:  Although we do plan to try to

5   monetize the credits.

6            THE COURT:  I got it, but that's not their

7   problem.  That's your problem.

8            MR. GROGAN:  Yeah, exactly.  All they get is a

9   claim.  We get the credits.

10            THE COURT:  So approval and effective date, I

11   think I'm approving it as part of the plan.

12            MR. GROGAN:  Yes.

13            THE COURT:  And if we make a docket entry that the

14   plan constitutes the motion that is contemplated by Exhibit

15   B to the confirmation order, do we then need a separate

16   motion, or do we just do it right now?

17            MR. GROGAN:  Your Honor, I think we -- the plan

18   actually provides that it is a 9019 motion.

19            THE COURT:  So let me just get, if we could,

20   Digital's attorney to confirm that we don't need to do a

21   separate motion.  This -- we are approving it today.

22            MR. SILVERMAN:  Thank you, Your Honor.  Matthew

23   Silverman on behalf of Decimal Digital Currency.  That's our

24   understanding as well.  We're comfortable having it approved

25   as part of the confirmation order.

1          THE COURT:  Thank you.  All right.  Anything else

2     that got changed that I need to look at?

3          MR. GROGAN:  No, Your Honor.  That's everything.

4     Oh, actually, I take that back.  We did -- there was a

5     little bit of a cleanup in a footnote where we had used the

6     old entity names.

7          THE COURT:  Okay.

8          MR. GROGAN:  Am I forgetting it?  Yeah, Footnote 4

9     I think, yeah, but that was just purely, you know, cleanup.

10         THE COURT:  All right.  Let me hear any party that

11    objects to entry of the form of order filed at 1001-1.  Mr.

12    Gibbs?

13         MR. GIBBS:  I was already rising before you

14    called, but I don't have any objection to the entry of the

15    order, but I do have one comment to make.

16         THE COURT:  Why don't you go ahead with your

17    comment?

18         MR. GIBBS:  Somewhat inexplicably in my comments I

19    neglected to mention something that needed to be mentioned

20    for the record.  I wanted to thank our Committee members for

21    their, I think, extraordinary efforts.  They -- their

22    commitment to their job, their adherence to their fiduciary

23    obligations, their diligence was really noteworthy.  And

24    since my partners and I aren't going to be their lawyers

25    much longer, I wanted to make sure that the record reflected

1    our appreciation to have them as a client.

2         THE COURT:  I very much appreciate that comment.

3    You know, the system depends on the goodwill od Creditors to

4    try and get to a good result.  And so I'm glad that these

5    Creditors volunteered their time to serve on the Committee

6    and we were able to get this done.  Any other party have any

7    comment or objection they want to make?  Otherwise, I'm

8    confirming the plan for the reasons that have been set forth

9    today.  I think this was found in good faith.  It's a tough

10   situation, and I agree wholeheartedly with Mr. Grogan's

11   comments about he was on his back and managed to stay

12   afloat.  Barely sometimes.

13        MR. GROGAN:  Live to fight another day was our

14   mantra throughout this case.

15        THE COURT:  All right.  The plan is confirmed.

16   Let me get this into docket -- this is going to be entered

17   this afternoon.  Do we need to set up any follow-on

18   hearings, or just those can all come in the ordinary course?

19        MR. GROGAN:  Your Honor, I know we have one

20   pending adversary proceeding, which will -- you know, in the

21   near term, I think, require some attention with Alice

22   Technologies Group I think is the Defendant's name.  Ms.

23   Smiley is --

24        MS. SMILEY:  Your Honor, there's a status

25   conference with Your Honor on March 9th with respect to that

 1   adversary.

 2            THE COURT:  So, you don't need anymore settings

 3   right now.  There's nothing I can do to accommodate anything

 4   like that.

 5            MS. SMILEY:  Not at the time.  I've conferred with

 6   counsel, and we're going to keep the status conference if

 7   it's all right with the Court and work on an agreed

 8   scheduling order at that time.

 9            THE COURT:  Thank you.

10            MR. GROGAN:  And I think we have hearings

11   scheduled for some pending claim objections too, right?

12            MS. SMILEY:  Yeah.  This is with respect to -- I

13   can come up to the (indiscernible).

14            MR. GROGAN:  Yeah.

15            MS. SMILEY:  With respect to BitNile, originally

16   we had filed an objection to BitNile's original claim.

17   BitNile then amended their claim, and we have filed an

18   objection to what is now their rejection damages claim.

19   There was a hearing set for -- I believe it was March 5th.

20   Originally it was on Your Honor's self-calendar docket for

21   claim objections.  We set the second claim objection for

22   April 10th, so we have conferred with BitNile's counsel.

23   And we agree that we obviously do not need the March date

24   any longer.  So if there's a hearing on BitNile's second

25   claim, the rejection claim, we would have that on April 10th

1    as it's been noticed.

2              THE COURT:  So, I have one setting for you right

3    now on April the 10th?

4              MS. SMILEY:  Yes, Your Honor.

5              THE COURT:  And it is on ECF 964.  And that is the

6    BitNile claim objection.  So good.  Sounds like it's --

7              MS. SMILEY:  Thank you, Your Honor.

8              THE COURT:  Does anyone else have anything we need

9    to do?  Any Creditor have any hearings that they require?

10   Okay.  Well, thank you all for all the hard work.

11   Congratulations to you all that got it done, all of you.

12   Glad to see the team is all working together.  We'll go

13   ahead and recess for the afternoon.  Thank you.

14             MR. GROGAN:  Thank you, Your Honor.

15        (Proceedings adjourned at 2:32 p.m.)

16

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4  transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8  Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  February 22, 2023
```