# EXHIBIT B

| | |
|---|---|
| United States Bankruptcy Court for the Southern District of Texas | |
| **Name of Debtor:** Compute North LLC | **For Court Use Only** |
| **Case Number:** 22-90275 | Claim Number: 0000010060 |
| | File Date: 11/16/2022 15:43:27 |

# Proof of Claim (Official Form 410)

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

04/22

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim): BitNile, Inc.

Other names the creditor used with the debtor: _____

**2. Has this claim been acquired from someone else?**   ☑ No   ☐ Yes.   From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: BitNile, Inc. | Name: _____ |
| Address: 11411 Southern Highlands Pkwy, Suite 240 | Address: _____ |
| City: Las Vegas | City: _____ |
| State: NV    ZIP Code: 89141 | State: _____    ZIP Code: _____ |
| Country (if International): _____ | Country (if International): _____ |
| Phone: 714-887-6377 | Phone: _____ |
| Email: darren@bitnile.com | Email: _____ |

**4. Does this claim amend one already filed?**

☑ No

☐ Yes.

Claim number on court claims register (if known) _____

Filed on _____
      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes.

Who made the earlier filing? _____

Page 1 of 3

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:

____  ____  ____  ____

**7. How much is the claim?**

$ 2,124,493.00

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Contract/Executory Contract
_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $_____

Amount of the claim that is secured:  $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

Annual Interest Rate (when case was filed)  _____%
                                            ☐ Fixed  ☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of petition**.

$_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property:

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☒ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507 (a) (_____) that applies.

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☒ No

☐ Yes. **Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9)**: $_____

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Darren Magot*                                              11/16/2022 15:43:27
_____          _____
Signature                                                              Date

**Provide the name and contact information of the person completing and signing this claim:**

Name: Darren Magot

Address: 11411 Southern Highlands Pkwy, Suite 240

City: Las Vegas

State: NV     Zip: 89141

Country (in international): USA

Phone: 714-887-6377

Email: darren@bitnile.com

Page 3 of 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| COMPUTE NORTH HOLDINGS, INC., *et al.*, | Case No. 22-90273 (MI) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION, STATEMENT OF CURE AMOUNT,
AND RESERVATION OF RIGHTS OF BITNILE INC. REGARDING
THE SALE ORDER AND THE DEBTORS' NOTICE OF CURE SCHEDULE**

BitNile, Inc. ("BitNile"), a creditor and contract counterparty of the above-captioned debtors, hereby submits its Objection, Statement of Cure Amount, and Reservation of Rights (this "Objection") regarding the (a) *Order (I) Approving the Sale of Debtor CN Pledgor LLC's Equity Interests in CN Borrower LLC Free and Clear of all Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief*, dated November 1, 2022 [Docket. No. 362] (the "Sale Order") and (b) *Notice of Filing of Cure Schedule in Connection with Proposed Sale* [Docket No. 209] and supplements/amendments thereto (collectively, the "Assumption Notice"), and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Compute North Holdings, Inc. (4534); Compute North LLC (7185); CN Corpus Christi LLC (5551); CN Atoka LLC (4384); CN Big Spring LLC (4397); CN Colorado Bend LLC (4610); CN Developments LLC (2570); CN Equipment LLC (6885); CN King Mountain LLC (7190); CN Minden LLC (3722); CN Mining LLC (5223); CN Pledgor LLC (9871); Compute North Member LLC (8639); Compute North NC08 LLC (8069); Compute North NY09 LLC (5453); Compute North SD, LLC (1501); Compute North Texas LLC (1883); Compute North TX06 LLC (5921); and Compute North TX10 LLC (4238). The Debtors' service address for the purposes of these chapter 11 cases is 7575 Corporate Way, Eden Prairie, Minnesota 55344.

4868-9010-6941

**Background**

1. BitNile is a leading cryptocurrency miner. BitNile and debtor Compute North LLC ("Compute North") are parties to that certain Master Agreement, dated August 15, 2022 (the "Master Agreement"), pursuant to which Compute North was to provide colocation and other services for BitNile's cryptocurrency mining hardware (the "Mining Equipment"). BitNile's Mining Equipment—with a value in excess of $40 million—is its own property and is not property of the estate: the Debtors may neither use, sell nor lease the Mining Equipment under section 363 of the Bankruptcy Code, or otherwise.

2. Upon entry into the Master Agreement, BitNile and Compute North executed an Order Form (the "Order Form") pursuant to which (a) BitNile delivered approximately 6,572 miners to Compute North, to be located in the Wolf Hollow Facility in Granbury, Texas (the "Wolf Hollow Facility"), which facility is owned by non-debtor CN Borrower, LLC ("CN Borrower") and (b) Compute North was to install those miners and provide, among other things, electricity and network connectivity necessary to operate those miners.

3. On August 22, 2022, BitNile paid an initial deposit in the amount of $2,012,088.00 (the "Deposit") to Compute North. At the time the Deposit was made, BitNile was assured that its Mining Equipment would be ready for use and energized. As stated below, however, the Debtors made material misrepresentations to BitNile about their financial condition and their abilities to operate and energize the facility.

4. According to the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, In Support of the Chapter 11 Petitions and First Day Pleadings* (the "Coulby Declaration) [Docket No 22], and unbeknownst to BitNile, just three days prior to execution of the Master Agreement (that is, August 12, 2022), the Debtors' lender and purchaser herein, Generate Lending LLC ("Generate"), exercised a voting proxy and appointed its own

2

managers to form a new board and take control of CN Borrower and the Wolf Hollow Facility and also exercised its rights under a deposit account control agreement and restricted use of a bank account containing $23.6 million. *Coulby Declaration* ¶¶ 60–62. None of this was disclosed to BitNile by the Debtors.

5. BitNile believes it was defrauded in connection with the execution of the Master Agreement and the inducement to make the Deposit. Indeed, just weeks after the Deposit was made, this chapter 11 case was commenced and BitNile was never able to energize the Mining Equipment located at the Wolf Hollow Facility. Further, it appears as if the Deposit is currently unaccounted for by the Debtors, and BitNile has yet to be advised where the Deposit is being held or whether it has been appropriately reserved for its designated purpose.

6. To date, Compute North has failed to perform its obligations under the Master Agreement and the Order Form. The Mining Equipment has not been energized or "powered on" notwithstanding assurances from Compute North to the contrary. As a result, BitNile has suffered, and continues to suffer, mounting daily damages due to its inability to utilize its Mining Equipment at the Wolf Hollow Facility.

7. On September 22, 2022, the Debtors, including Compute North, each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in this Court.

**A.     The Expedited Sale Process**

8. The sale process in this case has occurred in an expedited fashion.

9. On October 24, 2022, the Court entered its *Order (A) Approving De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption, Assignment, and Rejection Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and (D) Scheduling a*

3

*Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free and Clear of all Encumbrances as well as the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 256] (the "Sale Procedures Order").

10. Under the Sale Procedures Order, bids were due three days later, on October 27, 2022, and an auction was to occur four days later, on October 28, 2022. No bids were received other than from Generate, and the Sale Order was entered on November 1, 2022.

11. The Sale Procedures Order also approved certain assumption and assignment procedures with respect to those executory contracts and unexpired leases that the Debtors proposed to assume and assign.

**B.  BitNile Receives No Notice**

12. BitNile did not receive any of the pleadings relating to the sale, the possible assignment of its Master Agreement, or a copy of the Assumption Notice (as defined in the Sale Procedures Order).

13. Based on documents provided to BitNile's counsel on November 1, 2022, but only after inquiry was made, it appears that BitNile never received notice because the Debtors were using an incorrect address. This despite the fact that BitNile's address is set forth in the Master Agreement.

14. Moreover, BitNile's name was curiously redacted from Court filings, and was thus not searchable on the Court's docket or the claims agent's website.

15. Upon receipt of the Assumption Notice on November 1, 2022, BitNile observed that the Master Agreement was listed as an executory contract that might be assumed and assigned. The Debtors have incorrectly listed "$0.00" as the Cure Amount for the Master Agreement.

4

**Objection and Statement of Lease Cure Amount**

16. Where there has been a default in an executory contract, a debtor may not assume the contract unless, at the time of assumption of such contract, the debtor:

> (A) cures, or provides adequate assurance that the debtor will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the debtor will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract.

*See* 11 U.S.C. § 365(b)(1).

17. Assumption of the Master Agreement requires compliance with all contract terms, and amounts determined to be owed under such assumed contracts are not discharged. *See Century Indem. Co. v. Nat'l Gypsum Co. Settlement Tr. (In re Nat'l Gypsum Co.)*, 208 F.3d 498 (5th Cir. 2000). "If [a] debtor has defaulted under the contract . . . the debtor may not assume the contract unless the debtor, *inter alia,* cures the default or provides adequate assurance that it will do so." *Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 F. App'x 462, 465 (5th Cir. 2011).

18. The obligation to cure under section 365 extends to monetary and non-monetary defaults alike. To cure a *monetary* default under section 365, a debtor must pay all amounts due under the contract. *See In re Nat'l Gypsum Co.*, 208 F.3d at 506. To determine the appropriate means of curing a *non-monetary* default, courts examine the provisions of the contract to define "the nature of a default and the cure it requires." *Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (citing *In re Shangra-La, Inc.*, 167 F.3d 843, 848–49 (4th Cir. 1999)); *see Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 F. App'x 462, 465–66 (5th Cir. 2011).

19. Here, pursuant to the Master Agreement and Order Form, Compute North was to provide colocation services, energy for the Mining Equipment and other services in exchange for BitNile's payment of the Deposit and the monthly fees set forth in the Master Agreement. However, Compute North has failed to energize BitNile's Mining Equipment at the Wolf Hollow Facility and is, therefore, in default under the Master Agreement.

20. As a result of Compute North's default, BitNile has been denied the use of its Mining Equipment, and has been unable to deploy and monetize the Mining Equipment in the ordinary course of its business. BitNile has thus lost and is continuing to lose/will continue to lose revenue due to Compute North's failure to perform its obligations under the Master Agreement and Order Form.

21. Therefore, any cure amount associated with the assumption of the Master Agreement must include the pecuniary loss suffered by BitNile through the date of assumption. Anything less fails to ensure that upon assumption of the Master Agreement, BitNile will have received the full benefit of its bargain. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (quoting *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)).

A. **Cure Amount**

22. The below chart summarizes the Deposit and cure amount due and owing to BitNile:

| Item | Amount | Notes |
|---|---|---|
| Deposit Paid | $2,012,088.00 | |
| Lost Revenue | $660,000.00 | From October 1st through November 3, 2022 (per diem rate of $20,000 continuing through and including the date of cure payment; losses fluctuate based on price of Bitcoin and similar factors) |
| Storage Fees | $22,481.70 | |
| Shipping Costs | $90,405.00 | |
| **Total** | **2,784,974.70** | |

4868-9010-6941

B.   **Protection of the Deposit and Setoff and Recoupment Rights**

23.   In the event that Compute North assumes and assigns the Master Agreement to Generate, not only must the cure amount be paid, but the Deposit that BitNile paid must be honored and preserved by Generate and applied against future monthly fees consistent with the terms of the Master Agreement. *See Bennu Oil & Gas, LLC v. Bluewater Indus., L.P. (In re ATP Oil & Gas Corp.)*, 517 B.R. 756, 759 (Bankr. S.D. Tex. 2014) (finding that a "debtor may not pick and choose those portions that it wishes" to assume or reject). Likewise, upon assumption and assignment, BitNile is entitled to its continued legal rights of setoff or recoupment for its Deposit and other items under the Master Agreement. *See* 11 U.S.C. § 553; *see also Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 379 B.R. 425, 435 n. 55 (S.D.N.Y. 2007) ("[I]t is a fundamental rule of the law of contract that the assignee stands in the shoes of the assignor, possessing the same rights and remaining subject to the same defenses as the assignor.").

C.   **No Adequate Assurance of Future Performance**

24.   Pursuant to Bankruptcy Code section 365(b), the Debtors and Generate must establish and provide adequate assurance of Generate's ability to not only pay the above cure amount but also to perform in the future. In determining whether there is adequate assurance of future performance, courts must look to "factual conditions, including consideration of whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." *Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.)*, 304 F.3d 410, 439-439 (5th Cir. 2002).

25.   Among other things, the Master Agreement requires Generate to perform the Master Agreement's most basic terms, which include but are not limited to:

7

> (i) provide Services for Mining Equipment <u>at a facility with electricity</u> and network connectivity (Master Agreement at 2.1)(emphasis added);
>
> (ii) provide BitNile with access to its customer portal (Master Agreement at 2.2); and
>
> (iii) provide a minimum of 100 mbps of local connectivity for all Mining Equipment on a single Ethernet segment. (Master Agreement at 7.1).

26. To date, BitNile has not received any information or assurances, let alone assurances that are "adequate," evidencing (a) Generate's ability to operate the business and "energize" BitNile's 6,572 machines at the Wolf Hollow Facility, (b) Generate's ability to perform under the Master Agreement or the Order Form, or (c) sufficient financial wherewithal regarding the operation of the business and making required future payments. Sufficient time will be needed to review such information once received.

## **Reservation of Rights**

27. BitNile hereby reserves all rights under the Master Agreement, the Order Form, and applicable law, including the right of set off or recoupment as against any assignee. BitNile expressly reserves all rights to amend, modify, or supplement this Objection, and to object to alleged evidence of adequate assurance of future performance by Generate, once provided.

WHEREFORE, BitNile respectfully requests that the Court (i) condition assumption of the Master Agreement on the immediate payment in full of all amounts necessary to cure the Debtors' default under the Master Agreement, including any losses suffered by BitNile as a result of the Debtors' default, (ii) require compliance with all obligations under the Master Agreement and Order Form, (iii) require that Generate honor the Deposit paid to the Debtors in connection with the Master Agreement and that any and all rights of setoff and recoupment are preserved by BitNile, and (iv) grant BitNile such other relief as may be just and proper.

4868-9010-6941

Houston, Texas
November 3, 2022

      */s/ Jason S. Brookner*
      **GRAY REED**
      Jason S. Brookner (TX Bar No. 24033684)
      Amber M. Carson (TX Bar No. 24075610)
      1300 Post Oak Boulevard, Suite 2000
      Houston, Texas 77056
      Telephone: (713) 986-7127
      Facsimile: (713) 986-5966
      Email:   jbrookner@grayreed.com
              acarson@grayreed.com

      - and -

      **OLSHAN FROM WOLOSKY, LLP**
      Adam H. Friedman (*pro hac vice* pending)
      1325 Avenue of the Americas
      New York, NY 10019
      Telephone: (212) 451-2216
      Facsimile: (713) 451-2222
      Email:   afriedman@olshanlaw.com

      **COUNSEL TO BITNILE INC.**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on the 3rd day of November 2022, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system and via electronic mail on the Objection Notice Parties (as defined in the Sale Procedures Order).

      */s/ Jason S. Brookner*
      Jason S. Brookner

9