# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BITNILE, INC., | 22 Civ. _____ |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| DAVID PERRILL, DRAKE HARVEY III, KYLE WENZEL, BRETT KITTILSTVED AND BREANNA BAKER, | **_JURY TRIAL DEMANDED_** |
| Defendants. | |

Plaintiff BitNile, Inc. ("Plaintiff" or "BitNile"), by its attorneys, Olshan Frome Wolosky LLP, alleges against Defendants David Perrill, Drake Harvey, Kyle Wenzel, Brett Kittilstved and Breanna Baker (collectively, "Defendants"), as follows:

**Introduction**

1. This action arises from Defendants' fraudulent misstatements and material omissions that induced Plaintiff to enter into a contract with Compute North LLC ("Compute North"), and transfer over $2 million to Compute North on the eve of Compute North's bankruptcy. Defendants' lies also induced Plaintiff to ship over $40 million worth of cryptocurrency equipment to a facility that was controlled by Compute North's creditor and not Compute North. Defendants knew that Compute North lacked the ability to provide services to Plaintiff, but repeatedly made false promises in order to obtain an advance payment of more than $2 million which was used to fund large "bonus" payments to Perrill, Harvey and Wenzel with each receiving $500,000 or more.

11880123-4

2.	Plaintiff BitNile is a leading cryptocurrency miner. BitNile specializes in emerging disruptive financial technologies and leverages its own sophisticated technology to mine cryptocurrency. To do so, BitNile enters into agreements with owners of locations capable of hosting and providing the energy required for BitNile's mining equipment.

3.	Defendants are current or former officers and employees of Compute North. Compute North is a wholly-owned subsidiary of Compute North Holdings, Inc. Compute North, directly and through intermediary entities, wholly owns dozens of entities, including CN Borrower LLC ("CN Borrower") and its subsidiary CN Wolf Hollow LLC. Compute North and its affiliated entities provide infrastructure and computing space for customers in the blockchain and cryptocurrency market. Compute North provides colocation and other services for cryptocurrency mining hardware for customers such as BitNile.

4.	Defendants each made affirmative misrepresentations, directly or indirectly, to BitNile in order to induce BitNile to enter into a Master Agreement dated August 15, 2022 (the "Master Agreement") and Order Form (the "Order Form") with Compute North, to pay a deposit of more than $2 million to Compute North (the "Deposit"), and to ship over $40 million worth of mining equipment (the "Mining Equipment") to a facility located in Granbury, Texas (the "Wolf Hollow Facility") nominally owned by CN Borrower. Defendants Perrill and Harvey, then CEO and COO of Compute North, along with Chief Commercial Officer Wenzel orchestrated the fraud and directed the other Defendants in their interactions with Plaintiff.

11880123-4

5. Notably, Defendants repeatedly represented to BitNile that Compute North would be able to host and support BitNile's mining equipment; to bring the equipment online no later than October 1, 2022 and to carry out the terms of the Master Agreement and Order Form. While making those representations, Defendants knew that Compute North had neither the intention nor the ability to honor any of these promises. Compute North and its affiliated entities had been notified of events of default on their loan obligations to Generate Lending LLC ("Generate") in July 2022. On August 12, 2022, three days before BitNile and Compute North entered into the Master Agreement, Generate took control of CN Borrower and the Wolf Hollow Facility. Thus, at the time it entered into the agreement, Defendants knew that Compute North had no ability to carry out its promises to BitNile, since that facility was controlled by Generate. More important, once Generate controlled the Wolf Hollow Facility, Compute North had no right to issue contracts for the facility. The Master Agreement was a worthless piece of paper.

6. But Defendants' deception did not end there. Instead, Defendants induced Plaintiff to ship mining equipment worth over $40 million to the Wolf Hollow Facility based on Defendants' knowingly false representations that Compute North would – and could – energize (or turn on) that equipment no later than October 1, 2022. To date, BitNile's equipment remains dormant at the Wolf Hollow Facility. BitNile has not received any services, electricity, or connectivity.

**The Parties, Jurisdiction and Venue**

7. Plaintiff BitNile is a leading cryptocurrency miner. BitNile is a Delaware corporation, with its principal place of business in Las Vegas, Nevada. BitNile

11880123-4

is a wholly-owned subsidiary of BitNile Holdings, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange as NILE.

8. Defendant David Perrill is, upon information and belief, a citizen of Minnesota, and was at all relevant times the Chief Executive Office of Compute North.

9. Defendant Drake Harvey III is, upon information and belief, a citizen of Minnesota, was at all relevant times, either the Chief Operating Officer or Chief Executive Officer of Compute North.

10. Defendant Kyle Wenzel is, upon information and belief, a citizen of Minnesota and at all relevant times was Chief Commercial Officer at Compute North.

11. Messrs. Perrill, Harvey and Wenzel are hereafter referred to as the "Control Defendants."

12. Defendant Brett Kittilstved is, upon information and belief, a citizen of Minnesota and is and/or was at all relevant times Director of Sales at Compute North.

13. Defendant Breanna Baker is, upon information and belief, a citizen of Minnesota and was at all relevant times Enterprise Account Execute at Compute North.

14. Defendants are or were executives or employees of Compute North, which had its principal office in Minnesota. Defendants are citizens of the State of Minnesota and many of the acts giving rise to the claims asserted in this matter occurred in Minnesota or representations were made by Minnesota Defendants in Minnesota. The Court therefore has both general and specific personal jurisdiction over all of the Defendants, consistent with state law and federal Due Process.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action in which the matter in controversy

4

exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

16. Because this Court has personal jurisdiction over Defendants and many of the events giving rise to the allegations and claims in this case arose out of events transpiring in the State of Minnesota and this district, venue is also proper, pursuant to 28 USC §1391(a).

17. Pursuant to Fed.R.Civ.P. 38, Plaintiff demands a jury trial.

## SUMMARY OF THE CASE

### A. Generate Takes Control of Compute North's Wolf Hollow Facility

18. CN Borrower is a wholly owned subsidiary of CN Pledgor LLC, which in turn is wholly owned by Compute North. CN Borrower owns the Wolf Hollow Facility located in Granbury, Texas.

19. In February 2022, Generate agreed to lend up to $300 million in project financing to pay for development costs at certain of Compute North's facilities, including the Wolf Hollow Facility.

20. In July 2022, Generate asserted a number of events of default against Compute North and its wholly owned subsidiaries. When Compute North failed to cure the defaults, Generate took control of key Compute North assets, including the Wolf Hollow Facility. On information and belief, each of the Defendants were aware, no later than July 2022, that these defaults meant that Compute North was at risk of losing control of CN Borrower and the Wolf Hollow Facility.

21. Unbeknownst to BitNile, just three days prior to execution of the Master Agreement (that is, on August 12, 2022), Generate exercised a voting proxy and appointed its own managers to form a new board and take control of CN Borrower and the

5

Wolf Hollow Facility. Generate also exercised its rights under a deposit account control agreement and restricted use of a bank account containing $23.6 million. On information and belief, each of the Defendants were aware on or about August 12, 2022 that Generate took control of CN Borrower and the Wolf Hollow Facility. Defendants Perrill, Harvey and Wenzel instructed the Compute North sales team to continue to collect deposits and sign contracts, even though they knew Compute North had no ability to perform.

B. **Defendants' Repeated Misrepresentations and Omissions to BitNile**

22. At the direction of the Control Defendants, the other Defendants made repeated misrepresentations to, and omitted material information from, BitNile in order to induce BitNile to enter into an agreement with Compute North, transfer over $2 million to Compute North, and deliver over $40 million worth of mining equipment to the Wolf Hollow Facility.

23. Defendants Kittilstved and Baker portrayed Compute North as a thriving business that was growing through the buildout of new sites. Based on their assurances that business was flourishing, Compute North appeared an ideal candidate for a long term agreement. They also touted the Wolf Hollow Facility as a premier state of the art facility that was near completion. They described the Wolf Hollow Facility as a "Tier 0 data center," a term coined by Compute North. Compute North's promotional materials described a "Tier 0 facility" as follows:

> [A]n innovative concept pioneered by Compute North that represents the next generation of data centers. The objective is to provide organizations with an alternative to the more expensive, more traditional solutions available today – an alternative that is lower-cost and faster-to-scale.

24. At no point did Defendants' reveal that Compute North had defaulted on its loans and that its facilities and funds were being seized by creditors.

6

11880123-4

25. As a result of Defendants' misrepresentations and failure to disclose Compute North's defaults and Generate's control of CN Borrower and the Wolf Hollow Facility, on August 15, 2022, BitNile entered into the Master Agreement and Order Form with Compute North. Defendant Kyle Wenzel signed the Master Agreement and Order Form on behalf of Compute North. Defendants Perrill and Harvey approved its terms, even though they knew that they were in effect stealing from BitNile.

26. Pursuant to the Master Agreement, Compute North agreed, *inter alia*, to:

    a. provide services for Mining Equipment at a facility with electricity and network connectivity (Section 2.1);

    b. provide BitNile access to its customer portal (Section 2.3);

    c. provide "a minimum of 100 mbps of local connectivity for all Mining Equipment on a single Ethernet segment" (Section 7.1); and

    d. grant BitNile access to the facility and the Mining Equipment upon and upon two days written notice (Section 7.2).

27. Upon entry into the Master Agreement, BitNile and Compute North executed the Order Form pursuant to which (a) BitNile would deliver approximately 6,500 miners to Compute North for the Wolf Hollow Facility in Granbury, Texas, which facility is owned by CN Borrower and (b) Compute North would install those miners and provide, among other things, electricity and network connectivity necessary to operate those miners

28. Defendants represented to BitNile that Wolf Hollow miners would be installed on a first come first serve basis. Accordingly, at Defendants' urging, on August 22, 2022, BitNile paid the initial Deposit in the amount of more than $2 million to

7

11880123-4

Compute North. In late August 2022, BitNile began to ship the Mining Equipment – more than 6,500 miners worth in excess of $40 million – to a warehouse to be delivered to the Wolf Hollow facility. The process of gathering, packing, and shipping the Mining Equipment ran through mid-September 2022.

29. BitNile entered into the Master Agreement and Order Form, paid the Deposit, and shipped the Mining Equipment to the Wolf Hollow Facility based on Defendants' representations that the Mining Equipment would be ready for use and energized no later than October 1, 2022. For example:

    a. On August 3, 2022, Defendant Breanna Baker emailed Darren Magot of BitNile, copying Defendant Brett Kittilstved, stating that "We can accommodate 10 or 20MW of capacity at our Granbury, T[X] facility for a September energization."

    b. On August 10, 2022, Defendant Baker again emailed Darren Magot, copying Defendant Kittilstved, stating that "we are in a position to host the 20MW" and that the power "is formally available."

    c. On August 11, 2022, Defendant Kittilstved again confirmed via email that Compute North could "make 20 MW work (~6,450 S19j Pros) if this equipment is all immediately available to send."

    d. On August 15, 2022, in Section 10.1 of the Master Agreement, Defendant Wenzel represented that Compute North: "is duly authorized to enter into and perform this Agreement; and, its execution, delivery, and performance of this Agreement will not violate the terms

8

11880123-4

of any other agreement to which it is a party or obligation by which it is bound."

e.  On August 15, 2022, Defendants Larson, Baker, Kittilstved and Mjolsnes engaged in email correspondence with BitNile concerning BitNile's announcement of the transaction with Compute North. Among other items, Defendants approved edits to a press release stating that "We believe that the Agreement will enable us to install roughly 6,500 S19j pro miners in the third quarter of this year."

30. On information and belief, Defendants knew that each of the foregoing representations was false.

31. The Wolf Hollow Facility was also a critical element in the fraudulent scheme. It was a state of the art facility with a unique location touted by Defendants as a "Tier 0 data center." Plaintiff would not have proceeded with the Master Agreement for any other facility.

32. On information and belief, Defendants learned in July 2022 that Generate had declared an event of default that could cause Compute North to lose control of CN Borrower and the Wolf Hollow Facility. On information and belief, Defendants learned on or about August 12, 2022 that Generate had taken control of CN Borrower and the Wolf Hollow Facility, and that neither Defendants nor Compute North had the authority to enter in the Master Agreement and Order Form, or to promise to energize BitNile's Mining Equipment at the Wolf Hollow facility.

33. Shortly after BitNile paid the Deposit, Defendants informed BitNile that there would be a delay at the Wolf Hollow site. On August 29, 2022, Defendant Baker

9

sent an email representing to BitNile that Compute North "anticipated th[e] final step" at the Wolf Hollow Facility would be "completed by early to mid-September" as a result of "extreme heat conditions in the region currently stressing the grid." On information and belief, Baker knew that this was false, and that Compute North was then unable to energize BitNile's Mining Equipment, irrespective of Texas heat conditions.

34. While Defendants and Compute North continued to delay, Defendants Perrill, Harvey and Wenzel drained Compute North's cash, awarding themselves "bonuses" of $613,000, $500,000 and $500,000, respectively. Plaintiff's cash advance funded these payments, along with cash advances extracted from victims of Defendants' fraud.

35. On September 22, 2022, Compute North and a number of its affiliates filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. *See In re: Compute North Holdings, Inc., et al.*, Case No. 22-90273 (MI) (Bankr. S.D. Tex.).

36. On September 23, 2022, Defendant Baker notified BitNile of Compute North's bankruptcy filing, stating that Compute North would "continue to operate our sites and net new projects . . . Wolf Hollow continues to energize with no impact to the project." On information and belief, Baker knew that this was false. The other Defendants authorized this deception in order to conceal their fraudulent scheme.

37. On September 28, 2022, Defendant Baker represented to BitNile that the Mining Equipment was all delivered to the Wolf Hollow Facility and that various portions would be executed between the end of that week and mid-October 2022. On

10

information and belief, Baker again knew that this representation was false. These assurances were also intended to conceal Defendants' earlier fraud and made at the direction of the other Defendants.

38. Generate has recently taken the position that it is not bound by the Master Agreement. BitNile's Mining Equipment has not been energized. To energize the equipment, Generate is now demanding new terms, including a new deposit and new pricing. As a result, BitNile has suffered, and continues to suffer, millions of dollars in damages.

**FIRST CLAIM FOR RELIEF**
**(Fraud)**

39. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40. As set forth above, Defendants made false representations of present fact to BitNile concerning the Wolf Hollow Facility; Compute North's ability to energize BitNile's Mining Equipment; Compute North's business; and/or directed other employees of Compute North to make those misrepresentations, with the intention to induce BitNile to act in reliance thereon.

41. On information and belief, Defendants knew that each of their representations were false or, alternatively, lacked knowledge regarding whether the representations were true or false.

42. BitNile acted in reliance on Defendants' false representations. Without those false representations, BitNile would not have entered into the Master Agreement and Order Form, paid the Deposit to Compute North, or shipped over $40 million in Mining Equipment for the Wolf Hollow Facility.

11

11880123-4

43. As a result of Defendants' fraud, BitNile has been damaged in an amount to be determined at trial, but estimated to exceed $50,000.00. BitNile also seeks its costs and fees (including attorney's fees).

## SECOND CLAIM FOR RELIEF
### (Fraudulent Concealment / Fraudulent Nondisclosure)

44. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45. As set forth above, Defendants failed to disclose to BitNile that Compute North defaulted on its obligations to Generate, that Generate took control of CN Borrower and the Wolf Hollow Facility, and that Compute North would be unable to energize BitNile's Mining Equipment or stay in business. That omissions rendered Defendants' statements to BitNile misleading, and Defendants had special knowledge of those material facts and a duty to disclose them to BitNile.

46. Defendants intended for BitNile to rely on its omissions.

47. BitNile acted in reliance on Defendants' omissions. Without those omissions, BitNile would not have entered into the Master Agreement and Order Form, paid the Deposit to Compute North, or shipped over $40 million in Mining Equipment for the Wolf Hollow Facility.

48. As a result of Defendants' fraud, BitNile has been damaged in an amount to be determined at trial, but estimated to exceed $50,000.00. BitNile also seeks its expenses, costs and fees (including attorney's fees).

## THIRD CLAIM FOR RELIEF
### (Civil Conspiracy)

49. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

12

11880123-4

50. Each of the Defendants agreed to conspire to defraud BitNile.

51. In furtherance of that conspiracy, each of the Defendants made fraudulent false statements to or omitted material facts from BitNile, in order to induce BitNile to enter into the Master Agreement and Order Form, pay the Deposit to Compute North, and ship over $40 million in Mining Equipment for the Wolf Hollow Facility.

52. As a result of Defendants' conspiracy, BitNile has been damaged in an amount to be determined at trial, but estimated to exceed $50,00.00. BitNile also seeks its expenses, costs and fees (including attorney's fees).

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants as follows:

(i) Awarding money damages, in favor of Plaintiff and against Defendants in an amount to be proven at trial, but currently estimated to exceed $50,000.00, plus costs, fees (including attorney's fees) and interest thereon; and

(ii) Granting such other or further relief as the Court may deem just and proper in the circumstances.

| | |
|---|---|
| Dated: November 14, 2022. | ***Taylor Fricton, PLLC*** |
| | By: */s/ D. Clay Taylor* |
| | D. Clay Taylor (#204857) |
| | 7300 Metro Blvd., Suite 350 |
| | Edina, MN 55439 |
| | Phone: 612.904.7376 |
| | Email: clay@replawyer.com |
| | *Attorney for Plaintiff* |
| In Association With: | |
| Of Counsel | |
| | |
| OLSHAN FROME WOLOSKY LLP | |
| Thomas Fleming (*pro hac vice* motion forthcoming) | |
| Kerrin Klein (*pro hac vice* motion forthcoming) | |
| 1325 Avenue of the Americas | |
| New York, New York 10019 | |
| 212-451-2300 | |
| | |
| *Attorneys for Plaintiff* | |

14

11880123-4