**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)**

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC.<br>(f/k/a Compute North Holdings, Inc.), et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-90273 (MI)<br>Jointly Administered |

**ATLAS TECHNOLOGY GROUP LLC'S MOTIONS FOR (I) LEAVE TO AMEND ITS PROOF OF CLAIM AND (II) RELIEF FROM (A) THE AUTOMATIC STAY AND (B) THE INJUNCTIVE PROVISION OF SECTION 9.6 OF THE DEBTORS' PLAN**

**This is a motion, in part, for relief from the automatic stay. If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Represented parties should act through their attorney.**

Atlas Technology Group, LLC ("**Atlas**"), through its undersigned counsel, respectfully moves the Court (the "**Motion**") for (I) leave to amend its timely filed Proof of Claim (Claim No. 10079, the "**Original Claim**") pursuant to Fed. R. Bankr. P. 7015 and (II) relief from (A) the automatic stay pursuant to 11 U.S.C. § 362(d) and (B) any enforcement of the injunctive provisions under Section 9.6 of the Debtors' Third Amended Joint Liquidating Chapter 11 Plan (the "**Plan**"), for the reasons as set forth further below.

Through the Motion, Atlas seeks to file an Amended Proof of Claim (the "**Amended Claim**"), attached as <u>**Exhibit A**</u>. The Amended Claim (1) accounts for a partial compromise of its Original Claim that Atlas received through a settlement with Generate Capital, Inc. ("**Generate**"),

the post-petition purchaser of a non-debtor subsidiary, CN Wolf Hollow, LLC ("**Wolf Hollow**"), since the filing of the Original Claim, and (2) sets forth the monetary amount of Atlas' losses (and therefore, Atlas' corresponding indemnification claim) against Compute North; Atlas' losses were not clear nor fully calculable as of the date Atlas filed the Original Claim.

Additionally, Atlas seeks leave from the Court to assert its setoff, recoupment, or other defenses against Mining Project Wind Down LLC (f/k/a Compute North LLC ("**Compute North**")) and Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (collectively, the "**Adversary Plaintiffs**") in Adv. Pro. No. 23-03005 (the "**Adversary Proceeding**"), currently pending against Atlas.

## JURISDICTION

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (G), and venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409. This Court has the authority to grant the relief requested herein under 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 7001 and 7015.

## BACKGROUND FACTS

1. Atlas and Compute North were parties to a pre-petition Master Agreement, dated September 2, 2021 ("**Master Agreement**"), regarding Compute North's provision of cryptocurrency mining facilities to Atlas. (*See* Master Agreement at p. 1, filed as an exhibit to the Original Claim; also attached to this Motion with the Amended Claim as **Exhibit A**.)

2. The Original Claim asserts that Atlas paid an initial deposit of $5,066,666.91 (the "**Deposit**") to Compute North, as was required under the Master Agreement.

3. After payment of the Deposit, in April of 2022 the Master Agreement was assigned by Compute North to a wholly-owned subsidiary, Wolf Hollow. (*See* Amended Claim p. 23/26.)

4. As part of the assignment, Compute North promised to "indemnify and hold Atlas harmless from and against any claims, demands, actions, suites (sic), damages, liabilities, losses, costs, and expenses arising from CN Wolf Hollow's (or its successor's or assign's) (sic) breach of any such duties or obligations" (the "**Indemnification Provision**"). (*See* Master Agreement Amendment No. 1, ¶ 1.)

5. The Debtors filed their bankruptcy proceedings on September 22, 2022 (the "**Petition Date**").

6. On November 21, 2022, Atlas filed its Original Claim asserting certain known damages as of the Petition Date (namely, the Deposit) for which Atlas received no benefit.

7. Additionally, Atlas asserted unknown damages as of the Petition Date against Compute North pursuant to the Indemnification Provision within the Master Agreement and Amendment No. 1. (Original Claim at p. 4/26, ¶¶ 1, 4, 6.)

8. Atlas also expressly reserved its right to "amend and/or supplement [the Original] Claim, at any time, in any manner, and for any purpose including . . . supplementation to the amounts reflected herein, and to assert rights of setoff or recoupment in relation to amount, if any, determined to be owing by Atlas to the Debtor. (Original Claim at p. 5/26, ¶ 9.)

9. Wolf Hollow was sold to Generate during these bankruptcy proceedings. (Sale Order, filed at Docket No. 362 on November 1, 2022.) As part of the sale, Generate took possession of hundreds of bitcoin miners (essentially computer/servers owned by Atlas) that were located in the Wolf Hollow facility. Upon information and belief, Generate also acquired all (or a portion) of the Deposit that Atlas had previously paid to Compute North.

10. On January 29, 2023, the Adversary Plaintiffs filed the Adversary Proceeding against Atlas, seeking nearly $150 million in damages against Atlas for a purported breach of the

Master Agreement. (Adv. Pro. Docket No. 1.)  No Answer has been filed yet, but Atlas disputes the allegations and will file an Answer on or before April 15, 2023. (Adv. Pro. Docket No. 6.)

11. From the time Compute North filed bankruptcy until this past month, Atlas has consistently tried to revitalize its business relationship with the Debtor, and then with Generate after it acquired Wolf Hollow.

12. Indeed, Atlas' interest has been to "energize" its bitcoin miners at the Wolf Hollow facility, which would have mitigated much of Atlas' damages against the Debtor's estates.

13. However, after being unable to restructure mutually agreeable terms of a new hosting agreement on a post-Petition basis, Generate and Atlas entered into a written settlement on February 20, 2023, whereby Generate agreed to pay $3,044,234 to Atlas in exchange for a release against Generate for claims relating to the Deposit (the "**Partial Deposit Settlement**").

14. In fact, Atlas received the Partial Deposit Settlement today, March 15, 2023. Accordingly, a portion of Atlas' Deposit Claim (within its Original Claim) has now been resolved.

15. The Partial Deposit Settlement did not waive any of Atlas' indemnification claims against Compute North.  However, it is now clear that Atlas has mitigated its damages to the fullest extent possible *vis-à-vis* its negotiations with Generate, as the successor to Wolf Hollow.

16. Although Compute North and Atlas generally dispute many of the details surrounding the Master Agreement, including the performance and breaches thereof, such disputes will be litigated within the Adversary Proceeding and remain issues for another day.

17. At this time, however, Atlas is taking the procedural steps necessary to file its Amended Claim in light of these various post-Petition events, and to protect its setoff/recoupment rights within the Adversary Proceeding.

18.     For the additional reasons set forth below, Atlas respectfully requests that the Court grant its Motion.

## ARGUMENT

### I. Justice Requires that Atlas Be Able to Amend its Proof of Claim.

19.     This Court should grant Atlas leave, pursuant to Rule 7015, to amend its claim because there has been a change in circumstances since Atlas filed the Original Claim. When a claim is challenged as part of an adversary proceeding, Rule 7015 will typically govern amendments to pleadings as well as a previously filed proof of claim. *See Ne. Office & Commercial Props. v. Smith Valve Corp. (In re Ne. Office & Commercial Props.)*, 178 B.R. 915, 921 (Bankr. D. Mass. 1995). Rule 7015 provides that "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2).

20.     This Court has explained that "leave to amend a timely filed proof of claim 'shall freely be given when justice so requires.'" *See In re Northstar Offshore Grp., LLC*, No. 16-34028, 2018 Bankr. LEXIS 2801, at *7 (Bankr. S.D. Tex. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992); *Perry v. One Sugar Lakes Prof'l Ctr. Partners, L.P. (In re Perry)*, 411 B.R. 368, 374 (Bankr. S.D. Tex. 2009) (the original claim must provide "adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable").

21.     This is in line with a two-pronged test implemented by other courts: (1) whether the proposed amendment is a true amendment to a timely-filed proof of claim or "an attempt to file an entirely new claim," and (2) whether, under "all of the facts of the particular case, . . . it would be equitable to allow the amendment." *See e.g., In re Enron Corp.*, 419 F.3d 115 (2d Cir.

5

2005); *Applied Sci. Int'l, LLC v. Torres (In re Steel Network, Inc.)*, Nos. 09-81230, 09-81231, 10-9019, 2010 Bankr. LEXIS 2533, at *6 (Bankr. M.D.N.C. 2010) (citing *In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (S.D.N.Y. 1983)); *In re Tri-State Ethanol Co., LLC*, 2009 Bankr. LEXIS 2017, 2009 WL 1079776 (Bankr. D.S.D. 2009); *In re Hawaiian Airlines, Inc.*, 386 B.R. 251 (D. Hawaii 2008); *In re Asia Global Crossing, Ltd.*, 324 B.R. 503 (Bankr. S.D.N.Y. 2005); *In re Brown*, 159 B.R. 710 (Bankr. D.N.J. 1993); *In re Coover*, 2006 Bankr. LEXIS 2401, 2006 WL 4491439 (Bankr. D. Kan. 2006).

22. Taking each prong, this Court should grant Atlas leave to file the Amended Claim. As the Fifth Circuit has observed, "[a]mendments to timely creditor proofs of claim have been liberally permitted to cure a defect in the claim as originally filed [and] to describe the claim with greater particularity." *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991). Additionally, "[a]mendments merely increasing the damage claim relate back" under Fed. R. Civ. P. 15(c). *Ne. Office & Commercial Props.*, 178 B.R. at 922. Like the Amended Claim here, an amendment may provide for an increased damage claim. When there is a "basis in the proof of claim for the new [claim]" the amendment should be allowed. *Steel Network*, 2010 Bankr. LEXIS 2533, at *9. *See Northstar Offshore Grp.*, 2018 Bankr. LEXIS 2801, at *7.

23. First, Atlas' Amended Claim accounts for the Partial Deposit Settlement, which it has negotiated on a post-petition basis with Wolf Hollow's successor in interest, Generate. Atlas made good-faith efforts to mitigate its damages against Compute North, compromised its Deposit Claim, and seeks to file the Amended Claim now that the Partial Deposit Settlement was paid.

24. Second, it has also become clear that Atlas will no longer enjoy any future hosting relationship at the Wolf Hollow facility—certainly not with any of the Debtors (or their subsidiaries) now that the facility has been sold—and also not with Generate now that all

6

negotiations between Atlas and Generate have concluded. Now that Atlas knows the fate of the hosting arrangement that was anticipated under the Master Agreement, Atlas can describe its claim against Compute North more fully and with particularity.

25. Compute North is obligated to indemnify Atlas for any breach of the Master Agreement caused by Wolf Hollow and its assignee, Generate. Where it was unable to do so before, Atlas has now calculated the full scope of those damages, as stated within the Amended Claim. As such, Atlas asserts that the Court should grant leave for it to file the Amended Claim.

## II. To the Extent Necessary, Atlas is Entitled to Relief from the Automatic Stay and Section 9.6 of the Plan.

26. Atlas also seeks certain related relief from the Court to allow it to effectively defend itself against the Adversary Plaintiffs' claims. To the extent that relief from the automatic stay and relief from the injunction in § 9.6 of the Plan are required, Atlas requests that the Court grant such relief.

### A. Atlas Should be Allowed to Assert its Rights of Setoff or Recoupment.

27. Atlas asserts that its right to seek the amounts set forth in its Amended Claim are likely a right of recoupment, which is not generally subject to the automatic stay and should ordinarily be allowed despite the restrictions of the claims allowance process. *See Matter of Kosadnar*, 157 F.3d 1011, 1016 (5th Cir. 1998) ("Post-petition recoupment does not violate the automatic stay imposed by the bankruptcy court."); *In re Northstar Offshore Grp., LLC*, No. 16-34028, 2018 WL 4445082, at *3 (Bankr. S.D. Tex. Sept. 14, 2018) ("[C]ourts have viewed recoupment as an equitable remedy that is unbound by the restrictions on setoff that arise from the claims allowance process.")

28. A creditor's claim for recoupment "is essentially a defense to the debtor's claim against the creditor." *U.S. Abatement Corp.*, 79 F.3d at 398. The theory of recoupment allows a

creditor to reduce liability on a debtor's claim by asserting a claim against the debtor which arose out of the same transaction. *Northstar*, 2018 WL 4445082, at *3 citing *Matter of U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir. 1996). "When all claims arise out of one contract between the parties, application of the recoupment doctrine is appropriate." *Kosadnar*, 157 F.3d at 1015. Likewise, a single "transaction" giving rise to a right of recoupment may consist of multiple contractual relationships that are logically related to one another. *See, e.g., Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402 (9th Cir. 1996) (Finding that indemnification agreement and underlying contract are same transaction for purposes of right of recoupment in bankruptcy).

29. Here, the Adversary Parties seek damages from Atlas for its purported breach of the Master Agreement. (Adv. Pro. Docket No. 1.) The amounts sought by Atlas through its Amended Claim arise out of the same transaction: namely, Wolf Hollow's breach of the Master Agreement, for which Compute North agreed to indemnify Atlas. Thus, the claims by Atlas are a right of recoupment that likely should not implicate the automatic stay. *Kosadnar*, 157 F.3d 1011.

**B. Relief from the Automatic Stay.**

30. Despite the general rules stated above, to the extent that Atlas's right to defend against the Adversary Parties' claim is equivalent to a setoff or recoupment of any kind, Atlas seeks relief from § 362 out of an abundance of caution, and asserts that there is sufficient cause to grant it relief from the automatic stay, should such relief be necessary.

31. In determining whether to allow relief from the automatic stay pursuant to 11 U.S.C. § 362, bankruptcy courts will consider the following factors: "1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4)

whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm." *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) citing *Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir.1990).

32. Atlas seeks relief to assert a defense within the Adversary Proceeding based upon new information that it did not previously possess. The most salient factor in determining whether to grant the requested relief is the impact of the stay on the parties and the balance of harm.

33. Here, the Adversary Plaintiffs seek nearly $150 million in damages against Atlas in the Adversary Proceeding, which was not filed until January 29, 2023. At that time, Atlas was engaged in negotiations with Generate to resolve a portion of its Original Claim. Those negotiations culminated on February 20, 2023 with the Partial Deposit Settlement, which Atlas has now received as of today. It was not until after negotiations with Generate that Atlas knew it would no longer be involved in mining activities such that it could fully assess the damages caused to it by Wolf Hollow's breach of the Master Agreement.

34. Interested parties have been on notice through Atlas' Original Claim that Atlas alleged indemnification claims against Compute North, and the Debtor cannot now claim surprise or prejudice from same. To the contrary, if the Court were to deny Atlas's requested relief, Atlas

would be significantly prejudiced because it would be precluded from effectively defending against the Adversary Claim when it could not have timely asserted the facts known to it now.

### C. Relief from Section 9.6 of the Plan

35.  Section 9.6 of the Plan enjoins Atlas from "asserting any right of setoff, subrogation, or recoupment of any kind" unless it files a motion requesting the right to perform such setoff. (*See* Plan at Docket No. 362, § 9.6.)  Regardless of whether Atlas holds a right of recoupment or setoff, Atlas understands this section as requiring leave from the Court to assert such a defense in the Adversary Proceeding.  For the same reasons as above, there is also good cause for the Court to grant Atlas relief from the injunction provisions within § 9.6 of the Plan.

36.  Denying Atlas relief from § 9.6 will severely prejudice Atlas' ability to defend against the Adversary Parties' claim. Under the circumstances present in this case, the Court should freely provide Atlas relief from the stay and injunctive Plan provisions, to give Atlas the reasonable tools necessary to protect its rights within the Adversary Proceeding.

### CONCLUSION

Atlas respectfully requests that the Court: (1) grant Atlas leave to amend its Original Claim in the form as set forth in the attached Amended Claim, (2) modify the stay, to the extent necessary, to allow Atlas to raise setoff/recoupment defenses in the Adversary Proceeding, (3) allow relief from the injunction in § 9.6 of the Plan to raise either setoff or recoupment as part of the Adversary Proceeding, and (4) order any other relief that may be just and equitable under the circumstances.

Dated: March 15, 2023.                                    **MICHAEL BEST & FRIEDRICH LLP**

                                                          By: */s/ Justin M. Mertz*
                                                              Justin M. Mertz, WI Bar No. 1056938
                                                              790 North Water Street, Suite 2500
                                                              Milwaukee, WI 53202-3509
                                                              Phone: (414) 271-6560

                 Fax: (414) 277-0656
                 jmmertz@michaelbest.com

              *Attorneys for Atlas Technology Group, LLC*

## CERTIFICATE OF SERVICE

I certify that on March 15, 2023, a true copy of the foregoing was served on those parties who consent to service by the Court's ECF notification system and by the method and on the parties listed below as indicated.

   */s/Justin M. Mertz*
   Justin M. Mertz

Counsel for the Debtors:
Paul Hastings LLP
600 Travis Street 58th Floor
Houston, Texas 77002
Attn: James T. Grogan III
(jamesgrogan@paulhastings.com)

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn: Luc Despins
(lucdespins@paulhastings.com)
Sayan Bhattacharyya
(sayanbhattacharyya@paulhastings.com)
Daniel Ginsberg
(danielginsberg@paulhastings.com)

Paul Hastings, LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Attn: Matthew Micheli
(mattmicheli@paulhastings.com)
Michael Jones
(michaeljones@paulhastings.com)

Counsel for the Official Committee of Unsecured Creditors:
McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Attn: Charles R. Gibbs
(crgibbs@mwe.com)

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
Attn: Kristin K Going
(kgoing@mwe.com)
Darren Azman
(dazman@mwe.com)
Stacy A. Lutkus
(salutkus@mwe.com)
Natalie Rowles
(nrowles@mwe.com)

Counsel for the United States Trustee:
Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attn: Jayson B. Ruff
(Jayson.B.Ruff@usdoj.gov)
Jana Whitworth
(Jana.Whitworth@usdoj.gov)

Counsel for Generate Capital:
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Aaron Metviner
(aaron.metviner@kirkland.com)
Elizabeth Helen Jones
(elizabeth.jones@kirkland.com)