United States Bankruptcy Court for the Southern District of Texas

**Compute North Holdings, Inc.** Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

To submit your form online please go to https://epiqworkflow.com/cases/CPN

| | |
|---|---|
| Name of Debtor: | Compute North LLC |
| Case Number: | 22-90275 |

☐ Check box if the address on the envelope sent to you by the court needs to be updated. Identify your replacement address in Part 1 (Section 3) below.

For Court Use Only

# Proof of Claim (Official Form 410)

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of claims under 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503. Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim):   Atlas Technology Group, LLC

Other names the creditor used with the debtor: _____

**2. Has this claim been acquired from someone else?**   ☒ No   ☐ Yes.   From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Atlas Technology Group, LLC c/o Efren Garcia
Name

1705 Guadalupe Street, Suite 400
Number        Street

Austin            TX            78701
City            State        ZIP Code

Country (if International): _____

Contact phone:  512-820-5701

Contact email:  efren.garcia@us.atlasweb3.io

Where should payments to the creditor be sent? (if different)

_____
Name

_____
Number        Street

_____
City            State        ZIP Code

Country (if International): _____

Contact phone: _____

Contact email: _____

**4. Does this claim amend one already filed?**

☐ No

☒ Yes.   Claim number on court claims register (if known)   10079

Filed on _____ 11/21/2022 _____
                MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No

☐ Yes.  Who made the earlier filing? _____

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:

____ ____ ____ ____

**7. How much is the claim?**

$   214,139,847.20   .

Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Breach of Master Agreement as set forth in Statement of Claim

9.  Is all or part of the claim secured?

☒ No

☐ Yes.   The claim is secured by a lien on property.

Nature of property:

☐ Real estate.  If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (official Form 410-A) with this Proof of Claim.

☐ Motor vehicle

☐ Other.  Describe: _____

_____

Basis for perfection: _____

_____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                        $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any
default as of the date of the petition:  $_____

Annual Interest Rate (when case was filed)_____%

                                ☐ Fixed  ☐ Variable

---

10.  Is this claim based on a lease?

☒ No

☐ Yes.  Amount necessary to cure any default as of the date of petition.

$_____

11.  Is this claim subject to a right of setoff?

☒ No

☐ Yes.  Identify the property:

_____

12.  Is all or part of the claim entitled to priority
    under 11 U.S.C. § 507(a)?

☒ No

☐ Yes. Check one:

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other.  Specify subsection of 11 U.S.C. § 507 (a)(   )
that applies.

*  Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority.  For example, in some categories, the law limits the amount entitled to priority.

Amount entitled to priority

$_____

$_____

$_____

$_____

$_____

$_____

---

13.  Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?

☒ No

☐ Yes.  Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9): $_____

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor.  Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     _____
                     MM / DD / YYYY          Signature  _____

Print the name of the person who is completing and signing this claim:

Name      _Justin_____  _Michael_____  _Mertz_____
          First name                Middle name                Last name

Title     _Attorney_____

Company   _Michael Best & Friedrich LLP_____
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   _790 N. Water Street_____
          Number          Street

          _Milwaukee_____  _WI____  _53202_____
          City                        State   ZIP Code

Contact Phone _414.225.4972_____          Email _jmmertz@michaelbest.com____

## AMENDED STATEMENT OF CLAIM

**A.      Basis for Claim**

1.      On September 22, 2022, ("Petition Date") Compute North, LLC, (the "Debtor"), filed for bankruptcy under Case No. 22-90273, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case"). Atlas filed its Proof of Claim on November 21, 2022 as Claim No. 10079, which is now amended as set forth herein.

2.      The Debtor, pursuant to that certain *Master Agreement* dated September 2, 2021 (the "Master Agreement"), entered into an agreement with Atlas Technology Group, LLC ("Atlas") regarding the Debtor's provision of cryptocurrency mining facilities to Atlas.

3.      Pursuant to ¶ 16 of the Master Agreement, the Debtor agreed to indemnify Atlas for all liability, claims, judgments, losses, costs, expenses or damages, including attorney's fees and legal expenses, resulting from any conduct of the Debtor or the Debtor's agents, representatives, employees, contractors and their employees and subcontractors and their employees, including any breach of the Master Agreement. Paragraph 17.4 incorporates ¶ 16 to all subsequent successors and assigns. A true and correct copy of the Master Agreement is attached to this Proof of Claim and incorporated herein by reference.

4.      Atlas, pursuant to that *Order Form* dated April 24, 2022, entered into by and between Atlas and Debtor (presumably assigned to Wolf Hollow (*see below*)), paid to Debtor a deposit and/or prepayment amounts as follows: $808,903.10 on or about December 20, 2021 and $4,817,418.60 totaling $5,626,321.70 for services to be provided under the Master Agreement; in February of 2022 the initial pre-payment of $808,903.10 was refunded; further, after deducting an outstanding billed amount owed by Atlas, the balance of the deposit owed to Atlas is $4,791,061.22 (the "Deposit")[1]. A true and correct copy of the Order Form is attached to this Proof of Claim and incorporated herein by reference.

5.      Pursuant to that certain *Master Agreement Amendment No. 1* (the "Amendment"), Atlas subsequently consented to Debtor's assignment of the Master Agreement to Debtor's wholly-owned indirect subsidiary, CN Wolf Hollow, LLC ("Wolf Hollow").[2]

6.      Under ¶ 1 of the Amendment, the Debtor further agreed to indemnify Atlas for any damages, liabilities, losses, costs and expenses arising from Wolf Hollow's breach of any such duties or obligations under the Master Agreement. A true and correct copy of the Amendment is attached to this Proof of Claim and incorporated herein by reference.

7.      Since receiving payment under the Order Form and taking delivery of 560 Atlas Miners (the "Miners"), Debtor (and Wolf Hollow) has materially failed to perform its obligations required by the Master Agreement, principally related but not limited to, timely constructing and energizing its facility and confirming compliance with requisite security protocols. Additionally,

---

[1] The original Proof of Claim incorrectly stated that the Deposit claim was for $5,066,666.91, but that did not account for the refund in February of 2022 or a later billed amount that occurred pre-petition.
[2] Wolf Hollow is not a debtor in these jointly administered chapter 11 proceedings.

since Atlas's termination of the Agreement[3] (and the Debtor's attempted cross-termination of same),[4] Debtor and Wolf Hollow refused Atlas access to the storage facility and refused to return deployed Atlas Mining Equipment. Under ¶ 2.4 of the Master Agreement, Atlas retains sole title of the Mining Equipment and no services provided by the counterparty will transfer or change such title.

8.      The Debtor is obligated to Atlas for all amounts owed to and losses suffered by Atlas, either as counter-party to the Master Agreement or via its indemnification obligations set forth in the Amendment.

9.      Atlas paid the Deposit of $4,791,061.22 to receive services and equipment under the terms of the Master Agreement and the Order Form. Atlas never received corresponding benefits as a result of these payments, resulting in financial losses and damages to Atlas chargeable under the Master Agreement or under applicable law related to the pre-payments made. Since the filing of the original Proof of Claim, Atlas has negotiated for the return of a portion of the Deposit ($3,044,234.00) to settle matters with Generate, which was the purchaser of Wolf Hollow, a non-debtor subsidiary of CN Pledgor, LLC.  Accordingly, the balance of the Deposit claimed against Atlas is now **$1,746,827.22.**

10.      Additionally, Atlas consented to the assignment of the Master Agreement to Wolf Hollow, <u>provided that</u> the Debtor give Atlas a financial indemnification for any losses that may arise due to Wolf Hollow's breach of any duties and obligations owed to Atlas under the Master Agreement.  Wolf Hollow failed to perform those duties and obligations and (despite ongoing negotiations on a post-petition basis with Wolf Hollow, and its successor Generate) continues to fail to perform; as such, Atlas has now sustained significant financial losses.

11.      Pursuant to ¶ 1 of the Amendment, Atlas is entitled to financial indemnification from and against any losses sustained due to Wolf Hollow's breaches.  The total amount of such claims is no less than **$212,383,020.00**.  Additional calculations and information regarding this amount are attached to this Amended Proof of Claim.

12.      Accordingly, the total amount of Atlas' Amended Proof of Claim is **$214,139,847.20.**

B.      **Reservation of Rights**

13.      Atlas reserves all of its rights arising pursuant to applicable law to assert additional claims for any and all of its rights against the Debtors and their estates.

14.      Atlas expressly reserves the right to hereafter amend and/or supplement this Proof of Claim, at any time, in any manner, and for any purpose including, but not limited to, the fixing of or supplementation to the amounts reflected herein, and to assert rights of setoff or recoupment

---

[3] On June 16, 2022, Atlas sent a termination letter to Debtor based on failure to perform services under the Master Agreement. A true and correct copy letter is attached hereto and incorporated herein by reference.

[4] Wolf Hollow sent a letter to Atlas on July 11, 2022 indicating its intent to terminate the Master Agreement. In addition to the preceding performance breaches, termination of the contract constitutes a material breach of the Master Agreement. A true and correct copy letter is attached hereto and incorporated herein by reference.

in relation to amounts, if any, determined to be owing by Atlas to the Debtor or its affiliates. Atlas is now aware of such potential offset amounts.

15.     Atlas expressly reserves the right to assert that any or all of the amounts included in this Proof of Claim are entitled to administrative expense priority and to include any or all of such amounts in any requests for allowance and payment of an administrative claim that Atlas may file in the Debtors' Bankruptcy Cases. By including amounts in this Proof of Claim, Atlas expressly does not waive the right to seek administrative expense priority for any or all such amounts.

16.     Atlas's filing of this Proof of Claim is not, and shall not be deemed or construed as, (a) a consent by Atlas to the jurisdiction of the Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case or contested matter against or otherwise involving Atlas; (b) a waiver or release of Atlas's right to trial by jury in the Bankruptcy Court or any other court in any proceeding involving any of the matters set forth herein or related hereto; (c) consent by Atlas to a jury trial in the Bankruptcy Court or any other court in any other proceeding involving any of the matters set forth herein or related hereto; (d) a waiver or release of Atlas's right to have any non-core proceedings determined by the United States District Court under de novo review; (e) a waiver of Atlas's right to seek withdrawal of the United States District Court's referral of the Bankruptcy Cases and/or any proceedings related to the Bankruptcy Cases to the Bankruptcy Court; and (f) an election of remedies.

17.     This Statement of Claim is expressly incorporated by reference into and thereby made a part of, Atlas's Proof of Claim(s) against the Debtor.

DocuSign Envelope ID: 7274E6E3-26B3-4933-A4BE-AF4EFD70934E



# MASTER AGREEMENT

This Master Agreement (the "**Agreement**"), dated September 2, 2021, is between Compute North LLC ("**Compute North**") and Atlas Technology Group LLC ("**Customer**"). In consideration of the promises set forth below, the parties agree as follows:

1.  **Services.** Subject to the terms and conditions of this Agreement, Compute North shall provide, and Customer shall pay for, the colocation, managed and other services (the "**Services**") for Customer's equipment (the "**Equipment**") identified on the order form attached hereto as Exhibit A, as may be updated in writing and duly signed by Customer and Compute North from time to time (the "**Order Form**"). Compute North shall provide the Services consistent with, and as more fully described in, its customer handbook (the "**Customer Handbook**"), available at *www.computenorth.com/handbook-sla.pdf* and incorporated herein, as Compute North may update from time to time in is sole discretion.

2.  **Colocation Services.**

    2.1.  Colocation Facility. Compute North will provide cryptocurrency mining facility, including rack space, electrical power, ambient air cooling, internet connectivity and physical security ("**Colocation Services**") for the Equipment at the Compute North facility specified the Order Form (the "**Facility**") in accordance with the Customer Handbook.

    2.2.  Acceptable Use Policy. Customer's receipt of Colocation Services and its use of Equipment under this Agreement is subject to Customer's compliance with Compute North's then-current Acceptable Use Policy, available at *www.computenorth.com/acceptable-use-policy* and incorporated herein, as Compute North may update from time to time in its sole discretion.

    2.3.  Customer Portal. Compute North will provide Customer with access to its customer portal (the "**Customer Portal**"). Customer's access to and use of the Customer Portal is subject to, and Customer agrees to be bound by, Compute North's Terms of Use, available at *www.computenorth.com/terms-of-use/* and incorporated herein, as Compute North may update from time to time in its sole discretion. All written notices required by Customer under this Agreement shall be submitted using the Customer Portal.

    2.4.  Transfer of Equipment. Customer has the legal title of its Equipment, and Services provided by Compute North shall not cause any transfer or change of such title except as expressly provided herein. Customer shall provide prompt written notice to Compute North if it transfers legal title of any Equipment to an entity, firm, or corporation that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Customer (the "Customer Affiliates") or any other third party. In the event of such a transfer, Customer shall remain obligated to pay Compute North the Monthly Service Fees for the transferred Equipment for the remainder of the term applicable to such Equipment (the "**Equipment Term**") unless and until such Equipment is placed into service under, and is subject to, a collocation agreement between the acquiring third party and Compute North, which shall be at Compute North's sole discretion.

    2.5.  Transfer of Services. Other than to any other party within the Customer Affiliates, Customer may not sublicense, assign, delegate or otherwise transfer its receipt of Colocation Services under this Agreement to any third party without Compute North's express written consent, which Compute North may withhold in its sole discretion.



3.    **Managed Services.**

    3.1.    <u>Managed Services</u>. Compute North will provide managed services for the Equipment as elected on the Order Form ("**Managed Services**"). Compute North will provide Managed Services in a professional and workmanlike manner consistent with the Customer Handbook. If Customer does not elect Managed Services, Customer shall be solely responsible for configuring and maintaining the Equipment remotely via VPN.

    3.2.    <u>Third-Party Management</u>. Customer shall notify Compute North if it engages a third party to provide services on its behalf with respect to the Equipment. Customer shall be fully responsible and liable to Compute North under this Agreement for any acts or omissions by any third-party service provider acting for or on its behalf.

4.    **Hardware Acquisition.** Compute North agrees to sell to Customer, and Customer agrees to buy from Compute North, such cryptocurrency mining hardware, if any, elected on the Order Form ("**Acquired Hardware**"). Except as otherwise stated on the Order Form, an initial deposit equal to fifty percent (50%) of the fee set forth on the Order Form (the "**Hardware Deposit**") shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form, with the remaining amount due and payable by the earlier of (a) the date on which Compute North notifies Customer that the Acquired Hardware has been shipped or (b) thirty (30) days after the initial deposit. Legal title to the Acquired Equipment only shall transfer to Customer when the fee for the Acquired Hardware is paid in full. The Acquired Hardware shall be Mining Equipment subject to this Agreement upon its delivery to the Facility. Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof.

5.    **Term and Termination.**

    5.1.    <u>Term</u>. This Agreement shall be effective as of the date on which it has been executed by both Compute North and Customer (the "**Effective Date**"), and shall remain in effect for the remainder of any Equipment Term set forth on the Order Form. The Equipment Term for the Equipment shall commence as of the date Compute North notifies Customer in writing that such Equipment has been received and turned on by Compute North.

    5.2.    <u>Equipment Return</u>. Upon Customer's written request, and provided Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and return the corresponding Equipment to Customer upon the expiration of an Equipment Term as provided in Section 10.4.

    5.3.    <u>Termination for Cause</u>. Compute North may terminate this Agreement for cause immediately upon written notice to Customer if Customer fails for ten (10) days to make any payment(s) due pursuant to this Agreement, and either party may terminate this agreement for cause immediately upon written notice to the other party if the other party: (a) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and any such matter is not cured within ten (10) days after written notice from the other party; or (b) enters into bankruptcy, dissolution, financial failure or insolvency (each, a "**Default**").

    5.4.    <u>Effect of Default</u>. In the event of a Default by Customer and such Default is not rectified within ten (10) days as provided in Section 5.3, Compute North shall have the right, but not the obligation, to terminate this Agreement on written notice to Customer, and Customer shall pay immediately to Compute North all amounts then owed under this Agreement and, as



liquidated damages and not a penalty, all amounts due for the remainder of the applicable term of the Agreement. If Customer fails to make any such payments within ten (10) days thereafter, in addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of such Equipment having a market value sufficient to satisfy all amounts then due under this Agreement, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Equipment without any cost, obligation or liability of Compute North to Customer.

5.5.    Termination by Customer. Customer may terminate this Agreement upon written notice to Compute North if the number of Outage Days exceeds fourteen (14) in a calendar month. For purposes of this Section, "Outage Day" means a calendar day during which the availability of power, internet connectivity, or both across the Equipment is less than ninety-five percent (95%) (excluding planned outages, the LRP Program, and force majeure) where Customer has notified Compute North in writing within two (2) days of the occurrence thereof.

**6.    Fees and Payment.**

6.1.    Initial Fees. The Initial Setup Fees and Initial Deposit set forth on the Order Form and any Hardware Deposit shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form. The Initial Setup Fees, Initial Deposit and Hardware Deposit are non-transferrable under any circumstance and are refundable only to the extent that all of Customer's obligations under this Agreement have been fully satisfied except as expressly provided herein.

6.2.    Monthly Fees. On the first day of every month during the Term of this Agreement, Customer shall pay Compute North the Monthly Service Fees and Monthly Package Fees (collectively, the "**Fees**") set forth on the Order Form. Compute North reserves the right to adjust the Monthly Service Fees to reflect the actual performance and efficiency of the Equipment, as reasonably determined by Compute North.

6.3.    Taxes. All amounts payable by Customer under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties and fees, including federal, state and local taxes on manufacture, sales, gross income, receipts, occupation and use, not based on Compute North's income that arise out of this Agreement.

6.4.    Payment Method. All payments due and owing under this Agreement shall be made through automated clearing house ("**ACH**") transfers by Compute North from an account established by Customer at a United States bank designated by Customer (the "**Payment Account**"). Customer hereby agrees to execute and deliver to Compute North or its ACH payment agent an authorization agreement authorizing Compute North to initiate ACH transfers from the Payment Account to Compute North in the amounts required or permitted under this Agreement. For as long as this Agreement remains effective, Customer shall be responsible for all costs, expenses or other fees and charges incurred by Compute North as a result of any failed or returned ACH transfers, whether resulting from insufficient sums being available in the Payment Account or otherwise. Any other payment method must be pre-authorized by Compute North and will be subject to a fee.

6.5.    Service Credits. All requests for service credits will be governed by the then-current Compute North credit policy published at *www.computenorth.com/credit-request*. All requests for service credits must be submitted to Compute North online via this link.

**7.    Security Interest.** Customer hereby grants a security interest in the Equipment and Acquired Hardware in favor of Compute North to secure the obligations of Customer under this Agreement in the event of



a Default by Customer under Section 5.4 of this Agreement. Compute North may, at such time as it determines appropriate, file a UCC 1 Financing Statement in such places as it determines to evidence the security interest granted by Customer to Compute North under this Agreement. Customer represents and warrants that it has not granted a security interest in the Equipment or Acquired Hardware in favor of a third party priority over the security interest granted to Compute North herein.

**8.      Network and Access.**

8.1.    <u>Network</u>. Compute North will provide a minimum of 100 mbps of local network connectivity to each piece of Equipment on a single Ethernet segment. Customer may elect to use Compute North's standard firewall and Dynamic Host Configuration Protocol ("**DHCP**") services by notifying Compute North in writing. Customer is solely responsible for all network and device security with respect to the Equipment, including providing an appropriate firewall and managing passwords. Customer acknowledges and agrees that Compute North may monitor Customer's network usage and traffic and Customer hereby authorizes Compute North to access, collect and use data relating to the Equipment and Customer's use thereof. Compute North shall be responsible for any damage or loss caused by Compute North's fault in connection with its access, collection and use of such data.

8.2.    <u>Access</u>. Only those persons specifically authorized by Compute North in writing may access the Facility. Compute North may reasonably deny or suspend Customer's access to the Equipment based on Compute North's then-current Security Policies and Procedures, which include, but are not limited to:

8.2.1.   All access into the Facility must be supervised by a Compute North representative;

8.2.2.   Customer shall provide one (1) day' written notice to Compute North prior to any maintenance or repair of the Equipment;

8.2.3.   Customer shall perform Equipment maintenance and repairs during normal business hours (Monday-Friday, 7AM – 6PM Central Time);

8.2.4.   Customer may request immediate or after-hour access to the Facility to perform emergency maintenance. Compute North will make every reasonable attempt to accommodate Customer's after-hour emergency access requests.

Customer shall be solely responsible for any damage or loss caused by anyone acting for or on its behalf while at the Facility.

8.3.    <u>Hazardous Conditions</u>. If, any hazardous conditions arise on, from, or affecting the Facility, whether caused by Customer or a third party, Compute North is hereby authorized to suspend service under this Agreement without subjecting Compute North to any liability.

8.4.    <u>Demand Response/Load Resource Participation Program</u>. Customer acknowledges and understands that Compute North participates in various Demand Response/Load Resource Participation Programs ("**LRP Program**") at its facilities. As set forth in the Customer Handbook, the LRP Program provides the local grid operator with the capability to shut off the power load serving Compute North customers in response to emergency load situations. Customer agrees that the Fees reflect Compute North's participation in the LRP Program and that Compute North shall have no liability to Customer for any actions or omissions due to or resulting from its participation in the LRP Program.

**9.      Pause and Reactivation.**

DocuSign Envelope ID: 7274E6E3-26B2-4033-A4BF-AE4EED70934E



9.1. <u>Equipment Pause</u>. At Compute North's sole discretion, and provided that Customer has paid all amounts then due and owing under this Agreement, Compute North may permit Customer may pause and suspend Services for specified Equipment ("**Paused Equipment**"). The pause shall remain in effect until the earlier of (i) the six (6) month anniversary of the date upon which Services were paused and suspended and (ii) the date upon which Customer gives written notice to Compute North that it intends to resume use of the Paused Equipment. If Customer does not resume use of the Paused Equipment by the six (6) month anniversary of the date upon which Services were paused, Customer agrees that legal title to the Equipment shall transfer to Compute North and this Agreement shall be deemed terminated with respect to such Equipment.

9.2. <u>Reconfiguration</u>. While Services are paused, Compute North may reconfigure and use the Paused Equipment for and on its own behalf. Such use may include revoking Customer's access to the Paused Equipment and reconfiguring the Paused Equipment so that all profits accrue to Compute North's benefit without owing any compensation, payment or other consideration to Customer. Compute North also may remove and store at Customer's risk and expense all or a portion of the Equipment and provide the space previously occupied thereby to a third party without any cost, obligation or liability to Customer. Customer acknowledges and agrees it is and shall remain solely liable for the Paused Equipment at all times during which service is paused and suspended and that Compute North shall not have any liability to Customer for its use of the Paused Equipment or for any loss, deletion or corruption of Customer's data or files on the Paused Equipment.

9.3. <u>Fees During Pause</u>. Upon reconfiguration of the Paused Equipment by Compute North, Customer shall not owe Fees with respect thereto. Customer otherwise shall remain liable to Compute North for all amounts due and payable with respect to the Paused Equipment, and the Equipment Term for such Paused Equipment shall be extended by a like period.

9.4. <u>Reactivation</u>. Within five (5) business days of receiving written notice from Customer, Compute North shall reconfigure the identified Paused Equipment for Customer's use. Customer shall pay Compute North its then-current Setup Fee for each device reconfigured for Customer's use, which shall be due and payable to Compute North with its next monthly invoice following reconfiguration.

10. **Removals and Relocation of Equipment.**

10.1. <u>Relocation</u>. Compute North may reasonably require Customer to relocate the Equipment within the facility or to another Compute North facility upon twenty (20) days' prior written notice to Customer, provided that the site of relocation shall afford comparable environmental conditions for the Equipment and comparable accessibility to the Equipment. Notwithstanding the foregoing, Compute North shall not arbitrarily or capriciously require Customer to relocate the Equipment. If the Equipment is relocated according to this Section, the reasonable costs of relocating the Equipment and improving the Facility to which the Equipment will be relocated shall be borne by Compute North.

10.2. <u>Interference</u>. If the Equipment is being operated in containers not owned by Customer and such Equipment causes unacceptable interference to existing or prospective Compute North customers or their Equipment in Compute North's commercially-reasonable opinion, Compute North may require Customer to remove or relocate the Equipment at Customer's sole expense. If Customer is unable to cure such interference by relocating the Equipment, Compute North may terminate this Agreement without further obligation to Customer under this Agreement.



10.3. <u>Emergency</u>. In the event of an emergency, as determined in Compute North's reasonable discretion, Compute North may rearrange, remove, or relocate the Equipment without any liability to Compute North. Notwithstanding the foregoing, in the case of emergency, Compute North shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, or relocating the Equipment.

10.4. <u>Equipment Return</u>. Provided that Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and make the corresponding Equipment available to Customer for pickup at, or shipment from, the Facility within sixty (60) business days of Customer's written request. Compute North shall work to uninstall and prepare for pickup all Equipment of Customer at the facility based on a mutually-agreeable schedule for deinstallation. Customer shall arrange for pickup within thirty (30) days of Compute North notifying Customer that the Equipment is or will be ready for pickup. Customer shall be responsible for all reasonable, documented pickup, delivery, transportation and deinstallation costs associated with removing the Equipment. If Customer does not remove the Equipment as provided herein, Customer agrees that Compute North may charge Customer for storage of such Equipment from the date of notice that the Equipment is ready for pickup. Customer shall remain liable to Compute North for all amounts due for the remainder of the applicable Equipment Term for such Equipment, if any.

## 11. Customer Responsibilities.

11.1. <u>Compliance with Laws</u>. Customer's use of the Facility and the Equipment located at the Facility must at all times conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Customer is doing business, and the laws of the city, county and state where the Facility is located.

11.2. <u>Licenses and Permits</u>. Customer shall be responsible for obtaining any licenses, permits, consents, and approvals from any federal, state or local government that may be necessary to install, possess, own, or operate the Equipment.

11.3. <u>Insurance</u>. Customer acknowledges that Compute North is not an insurer and Equipment is not covered by any insurance policy held by Compute North. Customer is solely responsible for obtaining insurance coverage for the Equipment. Customer shall have commercial general liability insurance for both bodily injury and property damage. This insurance shall be maintained by Customer throughout the Term of this Agreement.

11.4. <u>Equipment in Good Working Order</u>. Except with respect to Acquired Hardware, Customer shall be responsible for delivering the Equipment to the Facility in good working order and suitable for use in the Facility. Customer shall be responsible for any and all costs associated with the troubleshooting and repair of Equipment received in non-working order, including parts and labor at Compute North's then-current rates. Compute North is not responsible in any way for installation delays or loss of profits as a result of Equipment deemed not to be in good working order upon arrival at Facility.

11.5. <u>Modification or Overclocking of Equipment</u>. Customer shall notify and obtain prior written approval from Compute North before any material modifications, alternations, firmware adjustments, over- or under-clocking, or other changes are made to Equipment ("**Modified Equipment**") that is intended to or might cause the Equipment's performance to deviate from the standard or factory specifications. If Compute North determines that any Equipment has been materially altered or modified without Compute North's prior written approval ("**Non-Compliant Equipment**"), it shall be an event of Default. In addition to any other right or remedy it might have, a Default pursuant to this Section shall subject Customer to a Non-

DocuSign Envelope ID: 7274E6E3-26B2-4033-A4BF-AE4EED70931E



Compliant Equipment fee equal to twenty-five percent (25%) of the monthly Fees for such Equipment for each month Equipment was non-compliant.

11.6.     Representations. Customer represents and warrants that (i) it is properly constituted and organized, (ii) it is duly authorized to enter into and perform this Agreement, and (iii) the execution and delivery of this Agreement and its performance of its duties hereunder will not violate the terms of any other agreement to which it is a party or by which it is bound.

**12.     Compute North Responsibilities.**

12.1.     Compliance with Laws. Compute North's Services will at all times conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Compute North is doing business, and the laws of the city, county and state where the Facility is located.

12.2.     Licenses and Permits. Compute North has obtained, if required, all of the appropriate governmental and regulatory licenses, registrations and approvals as may be necessary to provide the Services described herein.

12.3.     Facility in Good Working Order. Compute North shall be responsible for ensuring the Facility in good working order and suitable for use as set forth in this Agreement.

12.4.     Representations. Compute North represents and warrants that (i) it is properly constituted and organized, (ii) it is duly authorized to enter into and perform this Agreement, and (iii) the execution and delivery of this Agreement and its performance of its duties hereunder will not violate the terms of any other agreement to which it is a party or by which it is bound.

**13.     Common Carrier.** Compute North and Customer agree that Compute North is acting solely as a common carrier in its capacity of providing the Service hereunder and is not a publisher of any material or information. Furthermore, Compute North has no right or ability to censor materials or information traversed through Compute North's networks.

**14.     Warranty and Disclaimer.** COMPUTE NORTH MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICES OR THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES, THE FACILITY AND ANY ACQUIRED HARDWARE ARE PROVIDED "AS IS." COMPUTE NORTH DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY AND OTHER CONDITIONS. COMPUTE NORTH MAKES NO WARRANTY WHATSOEVER, AND HEREBY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, WITH RESPECT TO GOODS AND SERVICES SUBJECT TO THIS AGREEMENT, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF NONINFRINGEMENT AND (D) WARRANTY AGAINST INTERFERENCE.. COMPUTE NORTH DOES NOT WARRANT THAT (A) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM INTERRUPTION; (B) THE SERVICE OR ACQUIRED HARDWARE WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS EXPRESSLY SET FORTH HEREIN; OR (B) THE SERVICE OR ACQUIRED HARDWARE WILL PROVIDE ANY FUNCTION NOT EXPRESSLY DESIGNATED AND SET FORTH HEREIN.

**15.     Limitation of Liability.**

15.1.     Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control. This



includes, but is not limited to force majeure, weather, network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or Acts of God. COMPUTE NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.

15.2.   IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS, INCLUDING, BUT NOT LIMITED TO, THOSE THAT MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF COMPUTE NORTH PURSUANT TO THIS AGREEMENT. COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER IN THE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE EVENT GIVING RISE TO THE CLAIM.

15.3.   <u>Remedy</u>. Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the then-current service month. Unless applicable law requires a longer period, any action by one party against the other party in connection with this Agreement must be commenced within one (1) year after the cause of the action has accrued.

16.   **Indemnification.** Customer shall indemnify, hold harmless and defend Compute North, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Equipment or Customer's use thereof, or any injuries or damages sustained by a third party due to any direct or indirect act, omission, negligence or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Customer. Compute North shall indemnify, hold harmless and defend the Customer, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Services provided by Compute North to third parties at the Facility, or any injuries or damages sustained by a third party due to any direct or indirect act, omission, negligence or misconduct of Compute North, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Compute North. Neither Compute North nor the Customer shall not enter into any settlement or resolution with a third party under this section without the other Party's prior written consent, which shall not be unreasonably withheld.

17.   **Miscellaneous.**



17.1. <u>Lease Agreement</u>. Compute North may lease certain premises in the Facility from the Facility's owner ("**Leaser**") pursuant to a lease agreement (**"Lease"**). Customer is not a party to or a beneficiary under such Lease, if any, and has no rights thereunder; however, Customer shall be required to adhere to any and all rules of operation established by Leaser for the Facility. Whether owned or leased by Compute North, Customer acknowledges and agrees that it does not have, has not been granted, and will not own or hold any real property interest in the Facility, that it is a licensee and not a tenant, and that it does not have any of the rights, privileges or remedies that a tenant or lessee would have under a real property lease or occupancy agreement.

17.2. <u>Entire Agreement</u>. This Agreement, including the Order Form and any documents referenced herein, constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding between them relating thereto. Each party acknowledges and agrees that it has not, and will not, rely upon any representations, understandings, or other agreements not specifically set forth in this Agreement. This Agreement shall not be superseded, terminated, modified or amended except by express written agreement of the parties that specifically identifies this Agreement.

17.3. <u>Waiver, Severability</u>. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

17.4. <u>Assignment</u>. Except as part of or in connection with a Change of Control or a reorganization solely among Customer and its Affiliates, a party shall not assign or otherwise transfer any of its rights, or delegate or otherwise transfer any of its obligations or performance under this Agreement, in each case whether voluntarily, involuntarily, by operation of law, or otherwise, without the other party's prior written consent, which shall not be unreasonably withheld. "**Change of Control**" means (i) a sale by Customer of all or substantially all of its assets that are the subject of this Agreement to an unaffiliated person or entity, (ii) a merger, reorganization, conversion or other transaction in which more than fifty percent (50%) of the voting control of Customer is held by persons or entities who did not hold voting control of such party, whether directly or indirectly, immediately prior to such transaction (excluding any reorganization solely among Customer and any entities that directly or indirectly controls, is controlled by, or is under common control with Customer (each, an "**Affiliate**"), or (iii) a sale by the equity holders of Customer that results in more than fifty percent (50%) of the voting control of such party being held by persons or entities who did not hold voting control of Customer, whether directly or indirectly, immediately prior to such sale (excluding any reorganization solely among Customer and its Affiliates). Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

17.5. <u>Force Majeure</u>. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing. This also includes planned service and maintenance needs.

17.6. <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Minnesota, without giving effect to principals of conflicts of laws. Any action arising out of or relating to this Agreement shall be brought only in the state or federal

DocuSign Envelope ID: 7274E6E3-26B2-4033-A4BF-AE4EED70931E



courts located in the State of Minnesota, and Recipient consent to the exclusive jurisdiction and venue of such courts. An action by a party to enforce any provision of this Agreement shall not relieve the other party from any of its obligations under this Agreement, and no failure to enforce any provision of this Agreement shall constitute a waiver of any future default or breach of that or any other provision.

17.7.  Relationship of the Parties. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, Compute North shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.

17.8.  Third-Party Beneficiaries. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

17.9.  Construction; Interpretation. Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "any" and "all" shall not be construed as terms of limitation; and, a reference to a thing (including any right or other intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

17.10.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document.

IN WITNESS WHEREOF, the parties have executed this Agreement in a manner appropriate to each and with the authority to do so as of the date set forth below.

| **Compute North LLC** | **Atlas Technology Group LLC** |
|---|---|
| By: | By: |
| Name: Dave Perrill | Name: Jie Yuan |
| Its: CEO | Its: Chairman |

DocuSign Envelope ID: 0A076655-A949-4C37-A392-C40B87754DC1



# Exhibit A - Order Form

**Customer**:        **Atlas Technology Group LLC ("Customer" or "Atlas")**

**Facility:**         **Wolf Hollow and Corpus Christi**

## Equipment and Fees:

| Batch # | 001 through 012 | | |
|---|---|---|---|
| Deal ID | 5112260462ch | | |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | | Unit Efficiency (W/TH) |
| 550 (January batch – Wolf Hollow Phase 0) | Bitmain Antminer S19j Pro (104TH) | | 29.5 |
| 10 (January batch – Wolf Hollow Phase 0) | Bitmain Antminer S19j Pro (100TH) | | 31 |
| 6,640 (600/month Feb – Dec 2022) | Whatsminer M30S (90TH) | | 38.5 |
| 14,400 (1,200/month Jan – Dec 2022) | Whatsminer M30S+ (100TH) | | 34 |
| 14,400 (1,200/month Jan – Dec 2022) | Whatsminer M30S++ (112TH) | | 31 |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $175,134.85 (equivalent to $0.059 / kWh) | | |
| Total Monthly Package Fee (per unit) | Premier @ $2.00 | | |
| Term | 3 Years | | |
| Initial Setup Fee | Waived | | |

## Package Details:

| | Basic | Select | Premier |
|---|---|---|---|
| **Core Features** | | | |
| Equipment | Customer Provided | Customer Provided | Customer Provided |
| Equipment Managed | No | Yes | Yes |
| Rack Space | X | X | X |
| 240V Power | X | X | X |
| Ambient Air Cooling | X | X | X |
| Redundant Internet Connectivity | X | X | X |
| Physical Security | X | X | X |
| **Technical Support** | | | |
| Basic Remote Hands | X | X | X |
| Advanced Remote Hands | | X | X |
| SLA Level | Network & Power | Hashrate Performance | Hashrate Performance |
| VPN Access | X | | |
| RMA Processing | | X | X |
| **Premium Features** | | | |
| Miner Configuration | | X | X |
| Miner Monitoring | | X | X |
| Alert Management and Proactive Response | | X | X |
| Automated Rules-based Reboots | | X | X |
| Stock Firmware Upgrades | | X | X |
| Compute North Pool (U.S.-based pool) | | | X |



| | | |
|---|---|---|
| Pool to Hash Performance Monitoring, Audit, Reconciliation | | X |
| Discounted Pool Fee | | X |
| Performance Enhancing Firmware<br>• Overclocking, Underclocking, Auto-tuning, Upgrades<br>• Customer provided (subject to Compute North approval) or<br>• Compute North provided (miner model limited) | | X |

## Payment and Billing Terms:

- **Initial Setup Fee:** waived.
- **Initial Deposit:**
  A deposit for the last one (1) month of Monthly Service and Package Fees is due upon execution of this Order Form (the "Initial Deposit"), as follows: Remaining deposit due thirty (30) days prior to expected energization.

| Initial Deposit | |
|---|---|
| Service Fees: ($175,134.85 /day x 30 days/mo. x 1 mos.) | $5,254,045.50 |
| Package Fees: (36,000 miners x $2/miner x 1 mos.) | + $72,000.00 |
| Initial Deposit (Change Order) | $5,326,045.50 |
| - Previous Deposit Received | - $4,817,418.60 |
| **Remaining Initial Deposit Due** | **$508,626.90** |

  Equipment installation will not begin until received.

## Monthly Service and Package Fees

- Customer shall prepay two (2) months of Expected Monthly Service Fees and Package Fees on a rolling basis (the "Prepaid Fees"). The Prepaid Fees for each batch shall be paid thirty (30) days before batch shipment. Equipment will not be installed if Compute North has notreceived the corresponding initial Prepaid Fees.
- Prepayment schedule will begin sixty (60) days prior to expected equipment go-live.
- The Prepaid Fees shall be remitted by Customer as follows:

| Prepayment Due | Incremental Prepayment | Rolling Prepayment† | Batch Qty. | Batch No. |
|---|---|---|---|---|
| Month 1 | $ 887,674.22 | $ 887,674 | 3,000 | 001 |
| Month 2 | $ 887,674.22 | $ 1,775,348 | 3,000 | 002 |
| Month 3 | $ 887,674.22 | $ 2,663,023 | 3,000 | 003 |
| Month 4 | $ 887,674.22 | $ 3,550,697 | 3,000 | 004 |
| Month 5 | $ 887,674.22 | $ 4,438,371 | 3,000 | 005 |
| Month 6 | $ 887,674.22 | $ 5,326,045 | 3,000 | 006 |
| Month 7 | $ 887,674.22 | $ 6,213,720 | 3,000 | 007 |
| Month 8 | $ 887,674.22 | $ 7,101,394 | 3,000 | 008 |
| Month 9 | $ 887,674.22 | $ 7,989,068 | 3,000 | 009 |
| Month 10 | $ 887,674.22 | $ 8,876,742 | 3,000 | 010 |
| Month 11 | $ 887,674.22 | $ 9,764,416 | 3,000 | 011 |
| Month 12 | $ 887,674.22 | $ 10,652,091 | 3,000 | 012 |
| **Subsequent** | | **$ 10,652,091** | **36,000** | |

†Based on 100% performance

DocuSign Envelope ID: 0A076655-A949-4C37-A392-C40B87754DCA



- The Monthly Service Fee is payable based on the actual hashrate performance of the Equipment per miner type per location as a percentage of the anticipated monthly hashrate per miner type. Customer shall pay a non-refundable minimum service fee monthly in advance equal to seventy percent (70%) of the Expected Monthly Service Fee (the "Minimum Service Fee") based on the Anticipated Daily Rate, as prorated based on installed and active equipment that is in good working order.
- The Monthly Service Fee is determined as follows:

  > Monthly Service Fee = Expected Monthly Service Fees x Actual hashrate performance percentage by model type

- Compute North will deduct the from the Prepaid Fees an amount equal to Package Fees and the greater of the Monthly Service Fee and the Minimum Service Fee on a monthly basis and invoice Customer a like amount to replenish the Prepaid Fees. Invoices are due after ten (10) days from the date of receipt. Late payments will incur interest at the lesser of 1.5% per month (18% annum) or the maximum amount allowed under applicable law ("Late Payment Rate").
- For the final three (3) months of the Equipment Term, Compute North will apply the Prepaid Fees and the Initial Deposit in equal shares and invoice or credit Customer monthly for the difference, if any, from the total amount due.
- Pricing is subject to monthly automated ACH payments. Other payment methods may be subject to a service fee. Customer is not eligible for service credits under Section 6.5 of the Master Agreement or otherwise.
- Atlas may in good faith dispute charges and invoices, including withholding the portion of any payment which Atlas disputes in good faith while promptly paying all undisputed amounts. The parties will work together in good faith to resolve any disputes regarding charges within sixty (60) days of the original due date. If the parties determine that an amount due has been underpaid other than as a result of an invoicing error by Compute North, Atlas shall promptly pay such amount plus interest accruing at the Late Payment Rate from the original date due. If the parties determine that an amount due has been overpaid due to an invoicing error by Compute North, Compute North shall promptly refund such amount plus interest accruing at the Late Payment Rate from the date on which it received payment from Atlas.
- For the colocation of March and April up-front and March performance invoices, Invoice# CON296, INV10560 and INV10447, should be charged based on the anticipated daily rate: $160,292.91 (equivalent to $0.054* / kWh). The total amount for these three invoices is $118,438.21."

**Legal Notices**

A required copy of any and all notices, including for defaults, shall be sent to Mr. Efren Garcia, General Counsel, via email to efren.garcia@atlasweb3.io, with copies to legal@cth.group, mason.cheng@atlasweb3.io and legal@atlasweb3.io.

**Deployment Priority:**

Customer's deployment priority is established as of the date on which Compute North receives the Initial Deposit which was paid in September 2021 and Customer's deployment priority has not changed due to this change order. Once established, Compute North will use commercially reasonable efforts to deploy the Equipment consistent with Customer's deployment priority subject to the following acknowledged risk factors: land and site acquisition, regulatory affairs, power purchase agreement (PPA), infrastructure equipment availability (medium voltage cables, containers, etc.), and long lead time equipment procurement (substation, transformer, etc.). Additionally:

- Compute North will use commercially reasonable efforts to commence deployment of the



DocuSign Envelope ID: 0A076655-A949-4C37-A392-C40B87F54DC4

Equipment at its Wolf Hollow data center facility on or before July 31, 2022.Compute North will allocate to Customer at least thirty percent (30%) of the initial capacity of the initial circuit energized at its Wolf Hollow data center facility.

- The Hosting Service Rate for any Equipment that is not deployed by August 31, 2022, shall be reduced to an amount that is equivalent to $0.057/kWh for three (3) months after such equipment has been deployed.
- Compute North will provide Customer with priority deployment opportunities at its future renewable datacenter sites to the extent not otherwise inconsistent with existing customer deployment priorities.

| Contact Name | Mason Cheng |
|---|---|
| Email | mason.cheng@atlasweb3.io |
| Phone | +86 1-381-893-1477 |
| Billing Street | 310 Comal St Floor 2 |
| Billing City/State/Zip/Country | Austin, TX |

**Compute North Pool:**

At Customer's request, Compute North will enroll and configure Customer in Compute North's Bitcoin mining pool, which operates on a Full-Pay-Per-Share (FPPS) basis. Customer's use of Compute North's mining pool is subject to, and constitutes Customer's acceptance of, the then-current terms of service posted at https://mining.luxor.tech/legal/tos, as may be updated from time to time. Compute North shall be entitled to a fee equal to 1% of Customer's mining reward from its participation in Compute North's pool. Customer acknowledges and agrees that Compute North is providing Customer with access to its mining pool for Customer's convenience on an as-is basis and that Compute North does not make any warranties or guarantees, whether express or implied, regarding the availability or performance thereof.

**Firmware:**

Customer acknowledges and agrees that its use of alternate or non-standard firmware may be subject to third-party fees or other charges, which shall be Customer's sole responsibility. Customer acknowledges and agrees that Compute North's consent to Customer's use of alternate or non-standard firmware and its provision of services relating thereto is for Customer's convenience on an as-is basis, that Customer's use of alternate or non-standard firmware is at Customer's sole risk, and that Compute North does not make any warranties or guarantees, whether express or implied, with respect thereto.

**Order Type:**

☒ **For orders designated as "Renewal" or "Change Order":** This Order Form replaces all then-existing order forms under the applicable Agreement between Compute North and Customer for the identified Equipment, with all other order forms remaining in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

☐ **For orders designated as "New":** This Addendum is and shall be in addition to all then-existing order

DocuSign Envelope ID: 0A076655-A949-4C37-A392-C40B87754DC4



forms under the applicable Agreement between Compute North and Customer, which order forms shall remain in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

**Compute North LLC**

By: _____
08798548FB2E45D...

Name: Kyle Wenzel

Its: Chief
Commercial
Officer

4/23/2022

**Customer: Atlas Technology Group LLC**

By: _____
5168CDFB466F4FF...

Name: Raymond Yuan

Its: Founder & CEO

4/24/2022



**Previous Orders and Equipment List**

| Batch # | Equipment Type | Quantity | Facility |
|---------|----------------|----------|----------|
| **001-012** | Bitmain Antminer S19j Pro (104TH) | 550 | Wolf Hollow – Deployed |
| **001-012** | Bitmain Antminer S19j Pro (100TH) | 10 | Wolf Hollow – Deployed |
| **001-012** | Whatsminer M30S (90TH) | ~~7,200~~ 6,640 | Wolf Hollow or Corpus Christi |
| **001-012** | Whatsminer M30S+ (100TH) | 14,000 | Wolf Hollow or Corpus Christi |
| **001-012** | Whatsminer M30S++ (112TH) | 14,000 | Wolf Hollow or Corpus Christi |

DocuSign Envelope ID: 2869A429-735F-426B-8789-A64768056D35



**Master Agreement Amendment No. 1**

This Master Agreement Amendment No. 1 (the "Amendment"), dated as of April [•], 2022, is to that certain Master Agreement between Compute North LLC ("Compute north") and Atlas Technology Group LLC ("Atlas") dated September 2, 2021 (collectively with its associated Order Form, the "Master Agreement"). Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Master Agreement.

WHEREAS, Compute North, through its wholly owned, indirect subsidiary CN Wolf Hollow LLC ("CN Wolf Hollow"), is developing a distributed computing data center in Granbury Texas (the "Wolf Hollow Project") to provide Services for of its certain customers;

WHEREAS, to secure and collateralize project financing for its development of the Wolf Hollow Project, Compute North is partially assigning and delegating its rights and obligations under certain of its customer agreements to CN Wolf Hollow; and,

WHEREAS, Atlas has agreed to consent to the assignment of the Master Agreement to CN Wolf Hollow, and the parties have agreed to certain amendments to the Master Agreement, as set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Compute North and Atlas agree as follows:

1. **Consent to Assignment.** Atlas hereby consents to Compute North assigning the Master Agreement, as amended, to CN Wolf Hollow and, subject to Atlas' prior written consent that shall not be unreasonably withheld, its successors and assigns, and CN Wolf Hollow, on behalf of itself and its successors and assigns, hereby assumes and agrees to perform all of Compute North's duties and obligations thereunder. Compute North will indemnify and hold Atlas harmless from and against any claims, demands, actions, suites, damages, liabilities, losses, costs, and expenses arising from CN Wolf Hollow's (or its successor's or assign's) breach of any such duties or obligations.

2. **Financing Accommodation.** Upon the receipt of a written request from Compute North, Atlas shall execute, or arrange for the delivery of, such estoppels and other documents, in each case, as may be (A) reasonably necessary in order for Compute North or its affiliates to consummate the financing, (B) customarily provided in connection with financing of a similar nature, and (C) reasonably acceptable to Atlas. Without limitation of the foregoing, Compute North may notify Atlas of one or more of its or its affiliate's lenders or financing parties that are financing the Facility (the "Lenders"), and following such notice, Atlas shall provide written notice of any default or breach by Compute North to such Lenders, and such Lenders or their designee shall have the right, but not the obligation, to perform any act



required to be performed by Compute North under the Agreement to prevent or cure a default or breach as if done by Compute North.

3. **Scope of Amendment.** The Master Agreement shall remain unmodified and in full force and effect except as modified and amended by the terms of this Amendment.

4. **Miscellaneous.** This Amendment shall be governed by and construed in accordance with the terms and conditions of the Master Agreement and may be executed in any number of counterparts, including counterpart signature pages or counterpart facsimile or electronic signature pages, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

In witness whereof, Compute North and Atlas have caused this Amendment to be duly executed as of the date first written above.

**Compute North LLC**                                **Atlas Technology Group LLC**

By: _____              By: _____

Name: Kyle Wenzel                                    Name: Raymond Yuan
_____                    _____

Its: Chief Commercial Officer                    Its: Founder & CEO
_____                    _____



June 16, 2022

Via Electronic Mail

Jason Stokes
Chief Legal Officer, General Counsel, and Corporate Secretary
7575 Corporate Way
Eden Prairie, MN 55344

**Re:     Termination Letter**

Dear Mr. Stokes,

Pursuant to Section 5.5 of that specific Master Agreement by and between Compute North LLC ("**Compute North**") and Atlas Technology Group LLC ("**Atlas**") dated September 2, 2021 (the "**Agreement**"), Atlas hereby exercises its option to terminate the Agreement. Accordingly, Atlas formally requests the return of its Initial Fees (including any and all prepayments) and equipment under Sections 6.1 and 10.4 of the Agreement, respectively.

Atlas looks forward to an orderly transition.

Warmest Regards,

*Efren Garcia*
AF465A65953D4C5...

Efrén Garcia
General Counsel
Atlas Technology