**<u>Exhibit E-1</u>**

## AMENDED PLAN ADMINISTRATOR AGREEMENT

This Amended Plan Administrator Agreement (the "Agreement") is made effective ~~February~~March [•], 2023 by and among (x) ~~Portage Point Partners~~Tribolet Advisors, LLC (the "Plan Administrator") and (y) Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), Mining Project Wind Down LLC (f/k/a Compute North LLC.), and their affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Texas, Case No. 22-90273 (the "Bankruptcy Court") and shall constitute the "Plan Administrator Agreement" under, as defined in, and for all purposes of the ~~Second~~Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and ~~Its~~its Debtor Affiliates  [Docket No. ~~723~~889] (as may be amended, modified, or supplemented from time to time, the "Plan").[1]  This Agreement sets forth the terms and conditions under which the Plan Administrator shall implement certain terms and conditions of the Plan, including making certain distributions thereunder, and effectuating the wind down, merger, dissolution and liquidation of those entities set forth on **Exhibit A** hereto and such other entities agreed to by the Debtors and the Plan Administrator in accordance with the terms of the Plan (the "Wind-Down Estates").

1. The Plan Administrator.

    **1.1**  **Appointment**.  Effective as of the Effective Date of the Plan (the "Effective Date"), the Plan Administrator is appointed to act as the Plan Administrator under the Plan for purposes of implementing the terms and conditions of the Plan with respect to (i) effectuating the transactions beneficial and necessary to wind down the Wind-Down Estates, including as set forth in the Wind-Down Transactions Memorandum, (ii) administration of, and distributions with respect to, the Claims asserted against the Debtors, and (iii) such other matters agreed to by the Debtors and the Plan Administrator in accordance with the terms of the Plan, including monetizing any remaining assets of the Debtors' Estates (collectively, the "Plan Administrator Responsibilities"), in each case, subject to the terms and conditions set forth in this Agreement, the Plan and the ~~[[~~*Order (A) Approving the Debtors' Disclosure Statement on a Final Basis and (B) Confirming the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates*]] Docket No. ~~___~~]1019 (the "Confirmation Order").  The Plan Administrator's appointment shall continue until the earlier of (a) the termination of this Agreement or (b) the Plan Administrator's resignation, death, Disability, dissolution or removal.  The Plan Administrator is hereby appointed to make all disbursements and distributions under the Plan, subject to the terms and conditions set forth in this Agreement, the Plan and the Confirmation Order.  The Wind-Down Estates shall be managed, administered and wound down by the Plan Administrator in accordance with the terms of the Plan, in consultation with the Plan Oversight Committee as set forth in this Agreement, and the Plan Administrator shall have

---

[1]  Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Plan.

full authority to administer the provisions of the Plan, solely with respect to the Plan Administrator Responsibilities and subject to the terms and conditions of this Agreement, the Plan and the Confirmation Order.  To the extent necessary and solely with respect to the Plan Administrator Responsibilities, the Plan Administrator shall be deemed to be a judicial substitute for the entities in the Wind-Down Estates, including the Debtor(s) that are part of the Wind-Down Estates, as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors or Wind-Down Estates is a party.  The Plan Administrator shall be deemed a "representative" of the Wind-Down Estates as contemplated by section 1123(b)(3)(B) of the Bankruptcy Code, and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.  In addition, the Plan Administrator designates Michael A. Tibolet to act as the sole director of Mining Project Wind Down Holdings, Inc.

1.2   **Fiduciary**.  The Plan Administrator shall act as a fiduciary to all beneficiaries of the Wind-Down Estates.

1.3   **Duties, Powers and Rights**.  The Plan Administrator shall provide post-Effective Date administration, wind down, dissolution and liquidation services related to the Plan Administrator Responsibilities that are necessary, required, desirable or advisable to effectuate the terms and conditions of the Plan and the wind down of the Wind-Down Estates, in consultation with the Plan Oversight Committee as set forth in this Agreement.  Subject to the oversight and direction of the Plan Oversight Committee for those matters set forth in Section 4.2 of this Agreement, the Plan Administrator shall have all duties, powers and rights set forth herein, in the Plan and in the Confirmation Order, including, but not limited to, the following services related to the Wind-Down Estates:

(a)   oversee the accounts of the Wind-Down Estates and the wind down and dissolution of the Wind-Down Estates, including effectuating the transactions described in the Wind-Down Transactions Memorandum;

(b)   administer the Wind-Down Estates' Chapter 11 Cases and all actions related to the closing of the Wind-Down Estates' Chapter 11 Cases;

(c)   consult with the Plan Oversight Committee approximately every fourteen (14) days concerning matters related to the Wind-Down Estates;

(d)   pay expenses incurred in carrying out its powers and duties;

(e)   subject to the terms and conditions set forth in this Agreement, the Plan and the Confirmation Order, make, or coordinate with the

<ul style="list-style:none">
<li>applicable Disbursing Agent to make, distributions under the Plan, take all steps to execute all instruments and documents necessary to make such distributions and comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority;</li>

<li>(f) administer, reconcile, object to, compromise, resolve, settle or litigate to resolution all Claims asserted against the Debtors, subject to the terms and conditions set forth in this Agreement, the Plan and the Confirmation Order; *provided however* that any objection by the Plan Administrator to a Disputed Claim held by an Entity that is a potential defendant in connection with a Retained Cause of Action shall be in consultation with, and require the consent of, the Litigation Trustee (and such consent shall not be unreasonably withheld, conditioned or delayed);</li>

<li>(g) administer, pursue, prosecute, litigate, compromise, settle, dismiss or otherwise take action in furtherance of resolving each Retained Cause of Action, subject to the terms and conditions set forth in the Litigation Trust Agreement including, for the avoidance of doubt, Section 6.02 thereof, the Plan and the Confirmation Order;</li>

<li>(h) pay any fees due to the United States Trustee pursuant to section 1930(a)(6) of the Bankruptcy Code;</li>

<li>(i) employ, retain or replace professionals to represent it with respect to its powers and duties, including to effectuate the Plan as it relates to the Plan Administrator Responsibilities and the wind down of the Wind-Down Estates, each in accordance with Section 1.5 of this Agreement;</li>

<li>(j) oversee all tax compliance matters, such as the filing of tax returns, paying taxes and pursuing tax refunds as necessary for all tax years, including 2022 and thereafter;</li>

<li>(k) make all necessary filings in accordance with any applicable law, statute or regulation;</li>

<li>(l) prepare and file quarterly reports and other filings with the Bankruptcy Court for the post-Effective Date time period;</li>

<li>(m) dissolve, liquidate, consolidate, or merge any of the Debtors, or take any other action deemed necessary to effect dissolution of the Wind-Down Estates under the applicable laws of their respective states of incorporation or formation (as applicable);</li>
</ul>

(n) represent the interests of the Wind-Down Estates in any litigation, including any governmental litigation(s) and/or investigations against or involving the Wind-Down Estates;

(o) open and maintain bank accounts on behalf of or in the name of Mining Project Wind-Down Holdings, Inc. and maintain the Debtors' existing bank accounts;

(p) ~~(o)~~ maintain the books and records of the Wind-Down Estates, pending the closing of the Chapter 11 Cases and the dissolution of the Debtors, and to abandon and/or destroy such books and records following the closing of the Chapter 11 Cases; and

(q) ~~(p)~~ take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan as it relates to the Plan Administrator Responsibilities, all in accordance with the terms and conditions of this Agreement, the Plan and the Confirmation Order.

**1.4 Compensation and Staffing**.

1.4.1 The Plan Administrator will be compensated at the standard hourly billing rates in effect for its personnel, based on the position held by such personnel, which hourly rates are subject to periodic adjustments by the Plan Administrator to reflect economic and other conditions. The Plan Administrator's hourly rate currently in effect is $~~695~~650 per hour for ~~Ryan Mersch. The~~Michael A. Tribolet. The Plan Administrator shall be compensated, prior to the Effective Date, from the Wind-Down Estates, for up to fifty-six (56) hours of services under this Agreement in preparation for the Effective Date, in an amount not to exceed $36,400. The Plan Administrator shall be compensated, after the Effective Date, from the Wind-Down Estates, pursuant to this Section 1.4, in accordance with the wind-down budget attached hereto as **Exhibit B** (the "Budget"). To the extent there are fees and expenses incurred by the Plan Administrator and its retained professionals in excess of the amounts set forth in the Budget, the Plan Administrator shall be paid from the Wind-Down Estates, subject to the consent of the Plan Oversight Committee or judicial resolution pursuant to Section 1.4.2.

1.4.2 The Plan Administrator will bill for its fees and out-of-pocket expenses no less frequently than on a monthly basis by producing an invoice summarizing the number of hours worked and expenses incurred, with a copy contemporaneously sent to the Plan Oversight Committee. Upon delivery of such invoice, the Plan Oversight Committee shall have fourteen (14) days to give notice of an objection to the invoice. For an objection to be valid, it shall be in writing, set forth in reasonable detail the specific fees or expenses objected to and the basis for the objection,

and be delivered to the Plan Administrator. The uncontested portion of each invoice shall be deemed authorized and the Plan Administrator shall be paid in accordance with Section 1.4.1 in full the amount of such fees and expenses within twenty (20) days of delivery of the invoice. Once an objection has been resolved, the resolved portion of each invoice shall be deemed authorized and the Plan Administrator shall be paid in accordance with Section 1.4.1 in full the amount of such fees and expenses within ten (10) days of resolution. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted for resolution to the Bankruptcy Court via motion by the Plan Administrator.

**1.5    Retention of Counsel and Agents.**

The Plan Administrator shall hire counsel to advise it in connection with its duties, powers and rights under this Agreement and may hire such additional attorneys, accountants and other professionals as may be required or appropriate in connection with its duties herein, and pay reasonable compensation to such advisors. The Plan Administrator shall be entitled, subject to Section 4.2 of this Agreement, to retain professionals ~~in its sole discretion~~, including any professionals employed by the Debtors or the Committee in the Chapter 11 Cases. The provision of services by a professional to the Debtors or the Committee shall not disqualify such professional from employment by the Plan Administrator.

1.5.1   Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable fees, costs and expenses incurred. All professionals shall bill for their fees and out-of-pocket expenses no less frequently than on a monthly basis by providing an invoice summarizing the number of hours worked and expenses incurred to the Plan Administrator, with a copy to the Plan Oversight Committee. Upon delivery of such invoice, the Plan Administrator and the Plan Oversight Committee shall have fourteen (14) days to give notice of an objection to the invoice. For an objection to be valid, it shall be in writing, set forth in reasonable detail the specific fees or expenses objected to and the basis for the objection, and be sent to the applicable professional. The uncontested portion of each invoice shall be deemed authorized and the applicable professional shall be paid in accordance with Section 1.4.1 in full the amount of such fees and expenses within twenty (20) days of delivery of the invoice. Once an objection has been resolved, the resolved portion of each invoice shall be deemed authorized and the applicable professional shall be paid in accordance with Section 1.4.1 in full the amount of such fees and expenses within ten (10) days of resolution. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted for resolution to the Bankruptcy Court via motion by the Plan Administrator of the Plan Oversight Committee.

    **1.6**    **Privileges and Defenses**. Solely with respect to the Wind-Down Estates and solely with respect to documents or communications (whether written or oral) retained by the Wind-Down Estates, on the Effective Date, subject to the terms, conditions and limitations of the Plan and Confirmation Order, all of the Wind-Down Estates' privileges and work product, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), shall be maintained by the Plan Administrator. The Plan Administrator in its sole discretion will have exclusive authority to waive or not waive the Wind-Down Estates' privileges. The Plan Administrator will seek to preserve and protect all applicable privileges and work product. The Plan Administrator's receipt of such information shall not waive any privileges and such privileges are fully preserved. The Plan Administrator shall remain in control of all of their respective privileges (subject to the provisions of the Plan), and the Plan Administrator ~~retain~~retains the right to waive its privilege prospectively. Any privileged information or materials shared by the Plan Administrator with the Plan Oversight Committee in furtherance of the interests of the Wind Down Estates or the Litigation Trust shall remain privileged and shall be protected by as applicable, the attorney-client privilege, the work-product doctrine, the common interest privilege, and any other applicable privileges, legal protections or immunities available under applicable law.

2.    <u>Liability of Plan Administrator</u>.

    **2.1**    **Standard of Care; Exculpation**. Neither the Plan Administrator nor any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator shall be liable to any beneficiary under the Plan, or any other Person, for losses, claims, damages, liabilities or expenses in connection with the affairs or property of the Wind-Down Estates, arising from or relating to the acts or omissions of the Plan Administrator under this Agreement or the Plan; *provided, however*, that the foregoing limitation shall not apply as to any losses, claims, damages, liabilities or expenses suffered or incurred by any beneficiary that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of such Person or Entity. Until there is such a final judgment, the indemnities provided in Section 2.2 below will apply. Every act done, power exercised or obligation assumed by the Plan Administrator, or any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator, pursuant to the provisions of this Agreement, shall be held to be done, exercised or assumed, as the case may be, by the Plan Administrator, or any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator acting for and on behalf of the Plan Administrator and not otherwise; *provided, further, however*, that none of the foregoing Entities or Persons shall be deemed to be responsible for any other such Entities' or Persons' actions or inactions outside of the scope of the authority provided by the Plan Administrator. Except as provided in the proviso of the first

sentence of this Section 2.1, every beneficiary, Person, firm, corporation or other Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator, and any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator, shall have recourse only to the Wind-Down Estates for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Plan Administrator, and any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator, shall not be individually liable therefor.  For the avoidance of doubt, except as provided in the proviso of the first sentence of this Section 2.1, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract or otherwise, of the Debtors.

**2.2** **Indemnification**.

2.2.1 Except as otherwise set forth in the Plan or Confirmation Order, the Plan Administrator and any employee, agent or representative of the Plan Administrator (collectively, the "Indemnified Parties"), shall be defended, held harmless and indemnified from time to time by the Wind-Down Estates against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based on or arising out of (directly or indirectly) the Plan Administrator's acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan or the Confirmation Order; *provided*, *however*, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to be a liability for which recourse is not limited pursuant to Section 2.1 of this Agreement.  Satisfaction of any obligation arising pursuant to the terms of this Section 2.2 may be advanced prior to the conclusion of such matter and such right to payment and shall be prior and superior to any other rights to receive distributions from the Wind-Down Estates.

2.2.2 The Plan Administrator is permitted to pay, and shall pay from the Wind-Down Estates, expenses reasonably incurred by any Indemnified Party in defending, participating in or settling any claim, action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Agreement or the duties, acts or omissions of the Plan Administrator, upon submission of invoices therefor, whether in advance

of the final disposition of such action, proceeding or investigation or otherwise.

    2.3    **No Liability for Acts of Successor/Predecessor Plan Administrators**. Upon the appointment of a successor Plan Administrator and the delivery of the Wind-Down Estates to the successor Plan Administrator, the predecessor Plan Administrator and any director, officer, member, affiliate, employee, employer, professional, agent or representative of the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Administrator). A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator.

    2.4    **Reliance by Plan Administrator on Documents or Advice of Counsel**. Except as otherwise provided in this Agreement, the Plan Administrator, and any director, officer, member, affiliate, employee, employer, professional, agent or representative of the Plan Administrator may rely upon, and shall be protected from liability for acting on, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Plan Administrator to be genuine and to have been presented by an authorized party.

    2.5    **Insurance**. The Plan Administrator may obtain commercially reasonable liability or other appropriate insurance to be paid out of the Wind-Down Estates with respect to the indemnification obligations set forth herein (the "Insurance Coverages").

    2.6    **Survival**. The provisions of this Section 2 shall survive the termination of this Agreement and the resignation, death, dissolution, removal, liquidation or replacement of the Plan Administrator.

3.    Closing of Chapter 11 Cases; Termination.

    3.1    **Service of Plan Administrator**. The Plan Administrator shall serve until (a) the termination of this Agreement, (b) the Plan Administrator is removed for cause pursuant to Section 3.2 of this Agreement, or (c) the Plan Administrator resigns or is otherwise discharged in accordance with Section 3.3 of this Agreement.

    3.2    **Removal of the Plan Administrator for Cause**.

        3.2.1    The Plan Oversight Committee may seek to remove the Plan Administrator for cause by filing a motion (the "Removal Motion") with

the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Plan Administrator, filed with the Bankruptcy Court. For purposes of this Agreement, "cause" means:

(a) The arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or other crime involving dishonesty or moral turpitude;

(b) A finding by the Plan Oversight Committee that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of its duties;

(c) A determination, in good faith, by the Plan Oversight Committee, that the Plan Administrator is not acting in the best interest of the Beneficiaries or

(d) A determination, in good faith, by the Plan Oversight Committee, that the Plan Administrator has a material and direct conflict of interest, not previously disclosed or specifically waived in advance by the Reorganized Debtors.

3.2.2 If there is a dispute between the Plan Administrator and the Plan Oversight Committee regarding whether cause exists for removal, and such dispute is not consensually resolved within thirty (30) days following the filing of the Removal Motion, such dispute will be resolved by the Bankruptcy Court. For the avoidance of doubt, during the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall (i) continue to discharge the rights, obligations and duties of the Plan Administrator set forth in the Plan and this Agreement and (ii) continue to receive payment of reasonable fees and expenses accrued prior to removal, subject to the terms of this Agreement.

3.2.3 In the event the Bankruptcy Court enters a final order, not subject to appeal, determining that cause exists to remove the Plan Administrator, the Plan Oversight Committee may nominate and seek approval of the appointment of a successor Plan Administrator by filing a motion with the Bankruptcy Court on not less than seven (7) days' notice, with such appointment to become effective upon entry of an order by the Bankruptcy Court approving the appointment.

3.3 **Replacement of the Plan Administrator**.

3.3.1 The Plan Administrator may resign at any time upon thirty (30) days' prior written notice delivered to the Plan Oversight Committee and filed with the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, unless: (a) the Insurance Coverages terminate for any

reason other than the Plan Administrator's unreasonable refusal to renew such Insurance Coverages; or (b) the Plan Administrator determines in its reasonable judgment that the Wind-Down Estates lack sufficient assets and financial resources to permit the Plan Administrator to complete the duties and powers assigned to the Plan Administrator under the Plan, the Confirmation Order and/or this Agreement, in which case such resignation may become effective without appointment of a successor Plan Administrator.

3.3.2  In the event of the resignation, death or Disability of ~~Ryan Mersch~~Michael A. Tribolet or dissolution or removal of the Plan Administrator, the Plan Oversight Committee may nominate and seek approval of the appointment of a successor Plan Administrator by filing a motion with the Bankruptcy Court on not less than seven (7) days' notice, with such appointment to become effective upon entry of an order by the Bankruptcy Court approving the appointment.

3.3.3  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors or arising under the Plan shall be terminated; *provided*, *however*, that the original Plan Administrator's right to indemnification shall survive termination. For the purposes hereof, "Disability" shall mean incapacity resulting in the inability to perform services for two consecutive months or in the aggregate of seventy-five (75) days during any twelve-month period.

3.3.4  For the avoidance of doubt, between resignation and the appointment of a successor Plan Administrator, the Plan Administrator shall (i) continue to discharge the rights, obligations and duties of the Plan Administrator set forth in the Plan and this Agreement and (ii) continue to receive payment of reasonable fees and expenses accrued prior to removal, subject to the terms of this Agreement.

**3.4**  **Termination**.  When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases for each of the Wind-Down Estates in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Wind-Down Estates entitled under the payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by Final Order; (b) all assets have been liquidated and converted into Cash (other than those assets abandoned by the Wind-Down Estates in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan; and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of the Wind-Down Estates individually, prior to the

requirements above being met with respect to all of the Wind-Down Estates' Chapter 11 Cases, and may seek to close the Chapter 11 Cases in the event the Wind-Down Estates lack sufficient funding for further administration. Subject to further order of the Court, this Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Wind-Down Estates' Chapter 11 Cases with respect to each Debtor.

4. <u>Plan Oversight Committee</u>.

   4.1 **Appointment and Governance**. The Plan Oversight Committee shall be bound by the terms of this Agreement and the Litigation Trust Agreement. In performing the duties under this Agreement, each member of the Plan Oversight Committee shall have a fiduciary duty to act in the best interests of the Beneficiaries as a whole. The Plan Oversight Committee shall at all times be comprised of no fewer than two (2) members and the initial members of the Plan Oversight Committee shall be: (i) Decimal Digital Currency I, LLC; and (ii) Touzi Capital, LLC. The Plan Oversight Committee shall (i) have the authority and responsibility to oversee and review the activities of the Plan Administrator as set forth herein; (ii) have the authority and responsibility to oversee and review the activities of the Litigation Trustee as set forth in the Litigation Trust Agreement, the terms and conditions of which, as applicable to the Plan Oversight Committee, are incorporated herein by reference; and (iii) have the authority to seek to remove the Plan Administrator for "cause", in accordance with Section 3.2 of this Agreement. The Plan Administrator shall consult with, and provide information to, the Plan Oversight Committee as set forth herein and upon reasonable request.

   4.2 **Matters Requiring Approval of Plan Oversight Committee.** Notwithstanding anything herein to the contrary, the Plan Administrator shall obtain the approval of the Plan Oversight Committee (which may be provided by email) prior to taking any action regarding any of the following matters: (a) the administration, reconciliation, objection to, compromise, resolution, settlement or litigation to resolution of any Claim asserted against the Debtors where the asserted Claim at issue is equal to or greater than $100,000; (b) the selection, retention, or termination of any professional person or entity; and (c) any matter that reasonably could be expected to have a material effect on the amount of distributions by the Wind-Down Estates. If there is a dispute between the Plan Administrator and the Plan Oversight Committee regarding any matter for which approval is required and such dispute is not consensually resolved within fourteen (14) days, the parties shall seek an order from the Bankruptcy Court resolving such dispute. For the avoidance of doubt, the Plan Oversight Committee agrees that the Plan Administrator may retain, compensate and employ each of McDermott Will & Emery LLP and ASK LLP on customary terms reasonably acceptable to the Plan Administrator to represent it with respect to its powers and duties set forth herein.

5. <u>Miscellaneous</u>.

    5.1    **Effectiveness**.  This Agreement shall become effective upon the Effective Date.

    5.2    **Agreement Continuance**.  The death or Disability of ~~Ryan Mersch~~<u>Michael A. Tribolet</u> or the dissolution, resignation or removal of the Plan Administrator shall not terminate this Agreement or revoke any existing agency created by the Plan Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Plan Administrator, and the successor Plan Administrator agrees that the provisions of this Agreement shall be binding and inure to the benefit of the successor Plan Administrator, and all its successor or assigns.

    5.3    **Confidentiality**.  All confidential information concerning the Debtors that is given to the Plan Administrator <u>or the Plan Oversight Committee will be maintained by such parties as confidential and</u> will be used solely in the course of performance of the services <u>and duties</u> outlined in this Agreement.  <u>The Plan Administrator, any successor Plan Administrator and each member of the Plan Oversight Committee (each a "Covered Person") shall, during the period that they serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any of the Debtors, the Reorganized Debtors or the Wind Down Estates of which it has become aware in its capacity as a Covered Person (the "Information"), except to the extent disclosure is reasonably necessary to the performance of such Covered Person's duties and responsibilities under this Agreement or is required by applicable law, order, regulation or legal process.  In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Reorganized Debtors (as applicable), the Plan Administrator and the Plan Oversight Committee reasonably promptly (unless prohibited by law) so that the Reorganized Debtors (as applicable), the Plan Administrator and/or the Plan Oversight Committee, as applicable, may try to seek a protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section.  In the event that (i) no such protective order or other remedy is obtained and such Covered Person is nonetheless legally compelled to disclose the Information, or (ii) the Reorganized Debtors (as applicable), the Plan Administrator and/or the Plan Oversight Committee, as applicable, waives compliance with this Section, the Covered Person will furnish only that portion of the Information that the Covered Person, advised by counsel, is legally required to furnish and will give the Reorganized Debtors (as applicable), the Plan Administrator and the Plan Oversight Committee written notice (unless prohibited by law) of the Information to be disclosed and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.</u>

5.4 **Waiver**.  No failure by the Plan Administrator to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

5.5 **Cumulative Rights and Remedies**.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

5.6 **Relationship to the Plan**.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  The Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and the Confirmation Order, whether or not such action is specified in this Agreement.

5.7 **Governing Law; Jurisdiction**.

   5.7.1 *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the construction and implementation of the Agreement.

   5.7.2 *Jurisdiction*.  The Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, the Chapter 11 Cases or the Agreement pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

5.8 **Notices**.  All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

*If to the Plan Administrator*:

~~Portage Point Partners~~Tribolet Advisors, LLC
Attn:  ~~Ryan Mersch~~Michael A. Tribolet
~~300 North LaSalle, Suite 1420~~

~~Chicago, IL 60654~~

~~(847) 987-6332 (m)~~

~~rmersch@pppllc.com~~2305A Elmen Street

-13-

>Houston, TX  77019
>(713) 502-5000
>
>michael.a.tribolet@triboletadvisors.com
>
>*If to the Plan Oversight Committee*:
>~~[TBD]~~
>
>~~Email:~~
>Decimal Digital Currency I, LLC
>153 Valley Street Suite 26
>South Orange, NJ 07079
>Henry Robinson, CEO & Founder
>henry@decimalgroup.io
>
>Touzi Capital, LLC
>340 S. Lemon Ave #8284
>Walnut, CA 91789
>Dongliang (Doug) Jiang, Head of Crypto Mining
>doug@touzicapital.com

**5.9**   **Severability**.  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court (or any other court of competent jurisdiction) to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**5.10**   **Counterparts**.   This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.  A counterpart delivered by facsimile, electronic mail or similar electronic means shall have the same binding legal effect as an original signature.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective the date first above written.

                                THE DEBTORS:

                                ~~Compute North~~Mining Project Wind Down Holdings, Inc., on behalf of itself and its affiliated debtors and debtors-in-possession

                                By:_____
                                Name:
                                Title:

THE PLAN ADMINISTRATOR:

~~Portage Point Partners~~Tribolet Advisors, LLC

By: _____
Name: ~~Ryan Mersch~~Michael A. Tribolet
Title: ~~Senior Director~~Managing Member

-16-

-17-

PLAN OVERSIGHT COMMITTEE:

[TBD]Decimal Digital Currency I, LLC

By:_____

Name:  Henry Robinson
Title: CEO and Founder

PLAN OVERSIGHT COMMITTEE:

[TBD]Touzi Capital, LLC

By:_____
Name: Dongliang Jiang
Title: Head of Crypto Mining

**Exhibit A**

Wind-Down Estates

- Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.)
- Mining Project Wind Down LLC (f/k/a Compute North LLC)
- Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC)
- Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC)
- Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC)
- Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC)
- Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC)
- Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC)
- Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC)
- Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC)
- Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC)
- ~~CN Pledgor LLC~~
- Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC)
- Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC)
- Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC)
- Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC)
- Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC)
- Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC)
- Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC)
- Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC)

**Exhibit B**

**Wind-Down Budget**