IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,<br><br>Debtors.[1] | § Chapter 11<br>§<br>§ Case No. 22-90273 (MI)<br>§<br>§ (Jointly Administered)<br>§<br>§ Re: Docket No. 1062 |

### OBJECTION OF THE PLAN ADMINISTRATOR AND LITIGATION TRUSTEE TO ATLAS TECHNOLOGY GROUP LLC'S MOTIONS FOR (I) LEAVE TO AMEND ITS PROOF OF CLAIM AND (II) RELIEF FROM (A) THE AUTOMATIC STAY AND (B) THE INJUNCTIVE PROVISION OF SECTION 9.6 OF THE DEBTORS' PLAN

Tribolet Advisors, LLC ("Tribolet Advisors"), in its capacity as (i) plan administrator (the "Plan Administrator") of the confirmed *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* (the "Plan")[2] and (ii) litigation trustee (the "Litigation Trustee") for the litigation trust (the "Litigation Trust") established under the Plan, hereby objects (the

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

[2] ECF No. 889.

"Objection") to the motion (the "Motion")[3] filed by Atlas Technology Group, LLC ("Atlas") seeking leave to amend its filed Proof of Claim (Claim No. 10079, the "Original Claim"). In support of the Objection, the Plan Administrator and Litigation Trustee respectfully states as follows:

## BACKGROUND

### I.  General Case Background

1. The above-captioned debtors (the "Debtors" and, as of the effective date[4] of the Plan, the "Reorganized Debtors") commenced their chapter 11 cases on September 22, 2022 (the "Petition Date"). On December 21, 2022, the Debtors filed the solicitation version of their disclosure statement (the "Disclosure Statement")[5] and, on January 31, 2023, filed the current version of the Plan. In addition to contemplating the appointment of the Plan Administrator[6] and establishing the Litigation Trust,[7] the Plan, among other things, (i) provides for resolution of claims against and interests in the Debtors; and (ii) provides for cash distributions in accordance with the Plan. On February 16, 2023, the Court entered an order approving the Disclosure Statement and confirming the Plan (the "Confirmation Order").[8] The effective date of the Plan occurred on March 31, 2023.[9]

---

[3]  ECF No. 1062. Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Motion.

[4]  *See Notice of Occurrence of Effective Date of Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* [ECF No. 1082] (the "Notice of Effective Date").

[5]  ECF No. 723.

[6]  Plan § 1.1.79; Confirmation Order (defined below) ¶ 88.

[7]  Plan § 4.2.6; Confirmation Order (defined below) ¶ 53.

[8]  ECF No. 1019.

[9]  *See* Notice of Effective Date.

2

2. The Litigation Trust is governed by the *Mining Project Wind Down Holdings, Inc. Amended Litigation Trust Agreement* (the "Trust Agreement").[10] Pursuant to the Plan, Confirmation Order, and Trust Agreement, the Litigation Trust is tasked with, among other things: (1) pursuing certain claims and causes of action vested in the Litigation Trust (the "Litigation Trust Assets"); (2) reducing to cash or otherwise liquidating the Litigation Trust Assets; and (3) distributing any proceeds of the Litigation Trust Assets to holders of allowed claims in accordance with the Plan.[11]

3. The Plan Administrator is governed by the *Amended Plan Administrator Agreement* (the "Plan Administrator Agreement").[12] Pursuant to the Plan, Confirmation Order, and Plan Administrator Agreement, the Plan Administrator is tasked with, among other things: (1) serving as the sole manager, director, and officer of the Reorganized Debtors as of the Plan's effective date; (2) implementing the Plan and any applicable orders of the Court; and (3) reconciling and resolving claims asserted against the Reorganized Debtors' estates.[13]

4. The Trust Agreement provides that the Litigation Trustee will "consult and coordinate with the Plan Administrator concerning potential objections to claims asserted by any potential defendant in connection with the Litigation Trust Assets."[14] The Plan Administrator Agreement similarly provides that "any objection by the Plan Administrator to a Disputed Claim held by an Entity that is a potential defendant in connection with a Retained Cause of Action shall be in consultation with, and require the consent of, the Litigation Trustee."[15] Because Atlas

---

[10] Exhibit F to ECF No. 1079.
[11] Plan § 4.2.6; Confirmation Order ¶ 53; Trust Agreement § 2.03(a).
[12] Exhibit F to ECF No. 1079.
[13] Plan §§ 4.2.5; 7.3; Confirmation Order ¶¶ 53; 88; Plan Administrator Agreement § 1.3.
[14] Trust Agreement § 3.03(e).
[15] Plan Administrator Agreement § 1.3(f).

is a defendant in connection with a Litigation Trust Asset/Retained Cause of Action,[16] Tribolet Advisors brings the Objection in its capacity as both Litigation Trustee and Plan Administrator.

### II. The Atlas Agreement and Dispute

5. Prior to the Petition Date, Atlas and Compute North LLC ("CN LLC") entered into that certain *Master Agreement*, dated September 2, 2021 (the "Master Agreement").[17] Under the Master Agreement, CN LLC agreed to provide, subject to specified terms and conditions, "colocation" and other services for Atlas-owned Bitcoin mining equipment. The Master Agreement is governed by Minnesota law.[18] In April 2022, the Master Agreement was assigned by CN LLC to its wholly owned, indirect subsidiary CN Wolf Hollow LLC ("CN Wolf Hollow"). In connection with the assignment, the parties executed *Master Agreement Amendment No. 1* (the "Amendment"),[19] pursuant to which Atlas consented to the assignment. The Amendment requires CN LLC to indemnify Atlas for claims arising out of CN Wolf Hollow's breach of its duties or obligations (the "Indemnification Clause").[20]

6. After the agreement was signed, the parties' relationship deteriorated, and both sides now assert that they hold claims against the other. That dispute is the subject of the adversary proceeding styled *Mining Project Wind Down LLC (f/k/a Compute North LLC) and Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) v. Atlas Technologies Group LLC*, Adv. Pro. No. 23-03005 (MI) (Bankr. S.D. Tex.) (the "Atlas Adversary Proceeding").

---

[16] The Schedule of Retained Causes of Action filed by the Reorganized Debtors [ECF No. 818] includes all claims and causes of action against Atlas.

[17] A copy of the Master Agreement was filed as an exhibit to the Motion and is available at ECF No. 1062-1.

[18] Master Agreement § 17.6.

[19] A copy of the Amendment also was filed as an exhibit to the Motion and is available at ECF No. 1062-1.

[20] Amendment ¶ 1.

Although the Court is not presently deciding the merits of the parties' contract claims,[21] certain provisions of the Master Agreement and Amendment bear directly on the resolution of the Motion.

       7.      Most significantly, the Master Agreement provides:

> COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER THIS [MASTER] AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM [ATLAS] IN THE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE EVENT GIVING RISE TO THE CLAIM.[22]

(the "Damages Clause"). The Master Agreement further provides that "[Atlas's] sole remedy for Compute North's non-performance of its obligations under this [Master] Agreement shall be a refund of any fees paid to Compute North for the then-current service month"[23] (the "Exclusive Remedy Clause" and, together with the Damages Clause, the "Limitation of Liability"). These two provisions remained unaltered following the Amendment, as the Amendment expressly provides that the "Master Agreement shall remain unmodified and in full force and effect except as modified and amended by the terms of this Amendment" and the "Amendment shall be governed by and construed in accordance with the terms and conditions of the Master Agreement."[24]

---

[21] The Litigation Trustee opposes Atlas's claims and believes that the estates' claims against Atlas are significant and valuable. The ultimate resolution of those issues is not required to dispose of the Motion. As the Motion acknowledges, "[a]lthough Compute North and Atlas generally dispute many of the details surrounding the Master Agreement, including the performance and breaches thereof, such disputes will be litigated within the [Atlas] Adversary Proceeding and remain issues for another day." Motion ¶ 16.

[22] Master Agreement § 15.2.

[23] *Id.* § 15.3.

[24] Amendment §§ 3–4.

8.      On November 21, 2022, Atlas filed the Original Claim in the amount of $5,066,666.91.[25] On March 15, 2023, Atlas filed the Motion seeking permission to file an amended claim (the "Amended Claim")[26] in the amount of $214,139,847.20, which is described in the *Amended Statement of Claim* (the "Claim Supplement") attached to the Amended Claim. The total amount of the Amended Claim is comprised of $1,746,827.22 for a deposit allegedly paid by Atlas to CN LLC and $212,383,020.00 in purported indemnification obligations (the "Indemnification Claim").[27] For the reasons discussed below, the Court should deny the Motion and refuse to allow Atlas to file the Amended Claim.

## OBJECTION

9.      The Motion should be denied because (1) Atlas has not demonstrated compelling reasons for allowing the amendment; (2) the proposed amendment would be futile; and (3) other equitable considerations support denial.

### I.      Atlas Has Not Demonstrated Compelling Reasons to Allow the Amendment.

10.     The Motion notes correctly that courts *generally* are liberal in allowing amendments to filed proofs of claims. This liberal standard, however, tightens once the bar date has passed (as it has here).[28] *See, e.g.*, *In re Fairmont Gen. Hosp., Inc.*, 569 B.R. 421, 428 (Bankr. N.D.W. Va. 2017) ("***Before the passage of the claims bar date***, courts ***generally*** allow

---

[25] The objection to the Original Claim is set forth in Count Three of the *Adversary Complaint for Breach of Contract and Turnover Pursuant to 11 U.S.C. § 542(b)* filed at ECF No. 1 in the Atlas Adversary Proceeding.

[26] The Amended Claim also was filed as an exhibit to the Motion and is available at ECF No. 1062-1.

[27] Claim Supplement ¶¶ 9–11.

[28] The general claims bar date in these chapter 11 cases was 5:00 p.m. (prevailing Central Time) on November 23, 2022. *See Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix, (B) File a Consolidated List of 30 Largest Unsecured Creditors, and (C) Redact Certain Individual and Customer Confidential Information, (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information, (III) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), and (IV) Granting Related Relief* [ECF No. 86]; *see also Proof of Publication* [ECF No. 396].

6

amendments of proofs of claim in accordance with Rule 7015 of the Federal Rule of Bankruptcy Procedure" (citing *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993))) (emphasis added). As Judge Easterbrook explained:

> Leave to amend should be freely granted early in a case, but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much.

*Holstein*, 987 F.2d at 1270 (further explaining that "[s]ome enlargement later by amendment may be appropriate" and "judges may decide to allow, or forbid, such changes in the exercise of reasoned discretion") (citations omitted).

11. A second critical "milestone" is plan confirmation. *Id*. Some courts have found that the *res judicata* effect of a confirmed plan precluded post-confirmation claim amendments. *See, e.g.*, *In re New River Shipyard, Inc.*, 355 B.R. 894, 912 (Bankr. S.D. Fla. 2006) ("[Creditor] had every opportunity to amend its claim and litigate its entitlement to the new consequential damages it seeks at or before the confirmation hearing. It did not do so, and its attempt to amend its claim two months after confirmation is barred by *res judicata*."). In some circuits, courts cannot permit claim amendments post-confirmation, even if the proposed amendment relates back to a timely claim. *See In re Waterscape Resort LLC*, 520 B.R. 424, 434 (Bankr. S.D.N.Y. 2014) (citing *Farber v. Wards Co.*, 825 F.2d 684, 689 (2d Cir. 1987)).

12. "Even in those circuits where post-confirmation amendments are not foreclosed as a matter of law, the creditor must demonstrate a 'compelling reason' to amend the claim given the discharge, the *res judicata* effect of the plan, the disruption to the orderly process of adjudication and the interests of finality." *Waterscape Resort*, 520 B.R. at 434 (citing *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056–57 (11th Cir. 2011) and *Holstein*, 987 F.2d at

1270–71)) (additional citation omitted); *see also In re Dortch*, 2009 WL 6764538, at *1 (Bankr. N.D. Tex Dec. 1, 2009) (after confirmation, "a showing of compelling circumstances in addition to the normal prerequisites to allowing amendment is required"); *Winn-Dixie Stores*, 639 F.3d at 1056–57 (holding that "post-confirmation amendment [of a creditor's claim]—while not prohibited—is not favored, and only the most compelling circumstances justify it"); *In re G-I Holdings, Inc.*, 514 B.R. 720, 760 (Bankr. D.N.J. 2014), *aff'd*, 654 F. App'x 571 (3d Cir. 2016) (explaining that "changes [to a claim] after the milestone of confirmation of the plan should be allowed only for compelling reasons.") (quotes omitted); *In re Lee Way Holding Co.*, 178 B.R. 976, 981 (Bankr. S.D. Ohio 1995) (same).

13. The Fifth Circuit likely would follow these other courts and require "compelling reasons" for allowing post-confirmation amendments. In *In re Kolstad*, 928 F.2d 171 (5th Cir. 1991), for example, the bankruptcy court had permitted the IRS to amend its claim. Despite affirming under a lax "abuse of discretion" standard, the Fifth Circuit went out of its way to note that it was "troubled that [the] IRS delayed filing its amended claim until virtually the eve of the confirmation hearing, leading the debtor to propose a plan based on the lower amount of federal tax indebtedness." *Id.* at 176. The court's consternation regarding allowance of an amendment on "the eve of the confirmation hearing" certainly indicates how the court would view an amendment ***after*** confirmation. Even if the Amended Claim is not barred by confirmation of the Plan, Atlas has not demonstrated any "compelling reason" for allowing it to amend its claim post-confirmation—let alone where the Amended Claim is ***more than 40 times larger*** than the Original Claim.

14. The United States Bankruptcy Court for the District of Delaware faced a similar situation in *Exide*, where the South Coast Air Quality Management District sought to assert

8

claims "more than double the amount in the Original Proof of Claim—from $38 million to $80 million, plus unliquidated amounts." 601 B.R. 271, 294 (Bankr. D. Del. 2019). Noting that "courts have determined '*res judicata* precludes post-confirmation amendments absent some compelling reason,'" *id.* at 294 (quoting *CBS Outdoor Inc. v. NextMedia Group Inc. (In re NextMedia Group Inc.)*, 2011 WL 4711997, *3 (D. Del. Oct. 6, 2011)), the Delaware court found that "the record before [it] [did] not establish any compelling reason [to] allow such drastic amendment after the confirmation and effective date of the Plan." *Id*. "There [was] nothing to indicate that Exide or its creditors had any reason to believe that the District's claim would increase by more than $40 million dollars after the bar date, much less after Plan confirmation and the effective date." *Id.* (citing *In re Stavriotis*, 977 F.2d 1202, 1203 (7th Cir. 1992) (deciding, in part, that a bankruptcy court did not abuse its discretion by refusing to allow the IRS to amend its proof of claim, after the bar date, to increase the debtor's liability from $11,132.93 to $2,435,078.39).

15. Here, Atlas seeks to amend its Original Claim to assert nearly $210 million in additional damages. To put that in perspective, the Disclosure Statement—upon which voting parties relied when evaluating the Plan—estimated that the pool of Class 3 – General Unsecured Claims was $27 million to $195 million.[29] The Amended Claim, by itself, is almost $20 million more than the maximum estimate of the ***total*** claims pool. As one would expect, the supplement to the Original Claim included customary boilerplate language reserving Atlas's right to amend or supplement is proof of claim. ***However***, nothing in the Original Claim (or the record in these cases more generally) indicates that the Debtors, their creditors, the Court, or any other party

---

[29] See the Liquidation Analysis attached as Exhibit B to the Disclosure Statement.

could possibly have anticipated that the Original Claim would balloon from $5 million to more than $200 million following confirmation of the Plan.

16. "To every thing there is a season, and the season for stating the amount of a debt [was] before the confirmation of [the Plan]." *Holstein*, 987 F.2d at 1271. Because there is no compelling reason to allow such a drastic amendment post-confirmation, the Motion should be denied.

## II. Allowing the Amendment Would Be Futile.

17. Ignoring the fact that the Plan has already been confirmed, the Motion should still be denied. As this Court explained, when deciding whether to allow an amendment under Rule 15, "the Court must also consider whether granting the requested relief is equitable." *In re iHeartMedia, Inc.*, No. 18-31274, 2019 WL 1590546, at *3 (Bankr. S.D. Tex. Apr. 12, 2019). "The equitable determination considers: (i) undue delay, (ii) bad faith or dilatory motive by the movant, (iii) repeated failure to cure deficiencies in previous amendments, (iv) undue prejudice to the opposing party, and (iv) **the futility of the amendment**." *Id*. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). "This Court may deny [the creditor's] request for leave to amend if it finds that any one of these factors is present." *In re DePugh*, 409 B.R. 84, 100 (Bankr. S.D. Tex. 2009) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)) (considering only the "futility" factor when a different factor was considered by the district court). In this case, permitting Atlas to file the Amended Claim would be futile.

18. *First*, the amendment is futile because courts must disallow a claim where "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Here, the Amended Claim is not enforceable under the clear and unambiguous terms of the Master Agreement.

19. Atlas confirms that amounts paid to CN LLC totaled $5,626,321.70, of which $808,903.10 was already refunded and $3,044,234.00 was returned as part of the Generate settlement.[30] "Accordingly, the balance of the Deposit claimed against Atlas is now **$1,746,827.22.**"[31] The Damages Clause provides that CN LLC's total cumulative liability under the Master Agreement is limited to direct damages not to exceed amounts actually received by CN LLC from Atlas. The Exclusive Remedy Clause further provides that Atlas's sole remedy for CN LLC's non-performance of its obligations under the Master Agreement is a refund of any fees paid to CN LLC for the then-current service month. This Limitation of Liability is enforceable under Minnesota law.[32]

20. Courts must interpret a contract "as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000); *see also In re Linn Energy, LLC*, 576 B.R. 532, 539 (Bankr. S.D. Tex. 2017), *aff'd*, 927 F.3d 350 (5th Cir. 2019) (discussing "the well-settled judicial

---

[30] Claim Supplement § 9.

[31] *Id*. (emphasis in original).

[32] The Minnesota Court of Appeals has addressed equivalent language providing: "NOVA's liability to [Weston] * * * for damages * * * will be limited to an amount not to exceed NOVA's charges for the Services." *Nova Consulting Group, Inc. v. Weston, Inc.*, No. C1-01-1592, 2002 WL 418205, at *2 (Minn. Ct. App. Mar. 19, 2002) (alterations in original). The court applied a two-pronged test: "(1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision), ***and*** (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service)." *Id*. at *5 (quoting *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982)) (emphasis in original). Because "Weston ha[d] not established that any disparity of bargaining power existed" and "Nova's service [was] not a public or essential service," the court found "no public policy violation and conclude[d] that the clause [was] enforceable." *Id*. at *5–6 (citing *Arrowhead Elec. Coop. v. LTV Steel Mining Co.*, 568 N.W.2d 875, 878–79 (Minn. App. 1997) (liability limitation should be enforced because "public policy requires that freedom of contract shall remain inviolate, except only in cases which contravene public right or public welfare" (quotations omitted)); *see also Johanns v. Minnesota Mobile Storage, Inc.*, 720 N.W.2d 5 (Minn. Ct. App. 2006) (finding clause limiting lessor's damages to $5,000 was enforceable).

maxim that 'a contract should be interpreted in a way that reconciles all of its provisions'" (quoting *Maven Techs., LLC v. Vasile*, 147 A.D.3d 1377, 1378 (N.Y. App. Div. 2017))).

21. The Indemnification Clause and Limitation of Liability are entirely congruous—the Indemnification Clause creates indemnity obligations while the Limitation of Liability expressly caps those obligations. The only way Atlas can claim it is owed $214,139,847.20 is by purposefully ignoring the Limitation of Liability in the Master Agreement. The Court, however, must give effect to every contractual provision. Granting the Motion and allowing the Amended Claim to be filed, only to subsequently disallow it as being unenforceable, would be a fruitless exercise and waste of resources. Thus, the amendment should be denied.

22. **Second**, "[a]s to futility, an amended proof of claim is futile if it doesn't comply with applicable law." *PHH Mortg. Corp. v. Johnson*, 563 F. Supp. 3d 627, 631 (S.D. Tex. 2021).

> A proof of claim must at a minimum follow Federal Rule of Bankruptcy Procedure 3001(a), which provides that a proof of claim must "conform substantially to the appropriate Official Form." Official Form 10 in turn requires that a proof of claim consist of "(1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) ***supporting documents***." *See In re Armstrong*, 320 B.R. 97, 103–04 (Bankr. N.D. Tex. 2005). The burden is on the creditor to provide a sufficient proof of claim ***and supporting evidence***. *See In re North Bay General Hospital*, 404 B.R. 443, 464 (Bankr. S.D. Tex. 2009) (citations omitted). And the supporting documents must also ***substantiate the amount of the debt claimed***. *See In re DePugh*, 409 B.R. 84, 107–08 (Bankr. S.D. Tex. 2009); *In re Armstrong*, 320 B.R. at 105–06.

*Id*. (emphasis added). The Amended Claim's "supporting" documents fail to substantiate the amount of the debt claimed—instead, they directly contradict it. The only supporting documentation provided by Atlas besides the Master Agreement and Amendment (which, again, unambiguously cap Atlas's damages) are certain order forms and the termination letter. None of these documents support the outlandish assertion that Atlas is entitled to over $200 million in damages. The Amended Claim is therefore futile in that respect as well.

**III.     Other Equitable Considerations Support Denial.**

23.     Courts determining whether an amendment is equitable also consider undue delay, bad faith, and prejudice to other parties. *See iHeartMedia*, 2019 WL 1590546, at *3. These factors further highlight why the requested relief is inequitable and should be denied.

24.     ***First***, with respect to Atlas's delay, the Motion asserts Atlas's losses were not "***fully calculable*** as of the date Atlas filed the Original Claim" on November 21, 2022.[33] Regardless of whether that statement is true, it does not mean that it was impossible for a portion (perhaps a substantial portion) of the Indemnification Claim to have been determined (or at least estimated) at that time. Presumably, some portion of Atlas's $212 million in alleged losses predate November 21. Further, even if the losses were not fully calculable in November, that does not mean they could not be at least partially determined or estimated three months later in February ***before*** the Plan was confirmed. Instead, Atlas remained silent and waited until after parties had voted on, and the Court had confirmed, the Plan based upon a Disclosure Statement that severely underestimated the Debtors' liabilities.

25.     ***Second***, with respect to bad faith, the Motion cannot be divorced from its context. On January 19, 2023, after the Original Claim was filed, the Debtors commenced the Atlas Adversary Proceeding seeking damages of almost $150 million. In response, Atlas now hopes to assert an Amended Claim that is ***40 times larger*** than its Original Claim, which it can use to offset its damages. The circumstances make clear that the Motion is little more than a ploy to create leverage in the Atlas Adversary Proceeding, which is hardly indicative of good faith.

26.     ***Finally***, with respect to prejudice, creditors will unquestionably suffer prejudice if Atlas is permitted to essentially double the size of the unsecured claims pool post-confirmation.

---

[33]     Motion at 2 (emphasis added).

13

In addition, permitting an untimely amendment so that Atlas can pursue a baseless Indemnification Claim that is contrary to the agreements it signed will further prejudice the estates.  What is more, Atlas's failure to support the Indemnification Claim also prejudices creditors.  "In a bankruptcy case, the question of undue prejudice with respect to allowing untimely amendments to proofs of claim should also take into account whether the Debtor was forced to incur unnecessary expenses due to a creditor's initial failure to comply with Bankruptcy Rule 3001.  Indeed, the very purpose of Bankruptcy Rule 3001 is to avoid such unnecessary expenses."  *DePugh*, 409 B.R. at 106 (citing *Armstrong*, 320 B.R. at 104 ("The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense.")).  By failing to provide ***any evidence whatsoever*** in support of the highly suspect Indemnification Claim, the Plan Administrator and Litigation Trustee is left guessing what grounds (if any) support these dubious amounts.  Thus, Atlas's failure to support its claim further prejudices other parties.

**IV.    The Remaining Relief Is Moot.**

27.    The automatic stay (or a chapter 11 plan's injunction, by analogy) should not be altered to enable a futile act.  *See, e.g.*, *In re GGC, LLC*, 329 B.R. 36, 38 (Bankr. W.D. Pa. 2005) ("stay relief should not be granted to accomplish a futile act").  Because there is no compelling reason to allow Atlas to amend its Original Claim, and because allowing it to do so would be highly inequitable to other parties, the remaining requested relief should be denied as moot.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

For the reasons stated, the Court should deny the Motion and grant such other and further relief as the Court may deem just and proper.

Dated: April 19, 2023

Respectfully submitted,

**McDermott Will & Emery LLP**

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone:   (214) 295-8000
Facsimile:   (972) 232-3098
Email:   crgibbs@mwe.com

*- and -*

Kristin K. Going (admitted pro hac vice)
Darren Azman (admitted pro hac vice)
Stacy A. Lutkus (admitted pro hac vice)
Natalie Rowles (admitted pro hac vice)
One Vanderbilt Avenue
New York, NY 10017-5404
Telephone:   (212) 547-5400
Facsimile:   (212) 547-5444
Email:   kgoing@mwe.com
            dazman@mwe.com
            salutkus@mwe.com
            nrowles@mwe.com

*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator*

## **CERTIFICATE OF SERVICE**

      I certify that on April 19, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles R. Gibbs*
Charles R. Gibbs