1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                 HOUSTON DIVISION

4  IN RE:                         §    CASE NO. 22-90273-11
                                  §    HOUSTON, TEXAS
5  MINING PROJECT WIND DOWN,      §    MONDAY,
   HOLDINGS, INC.                 §    MAY 15, 2023
6                    DEBTOR.      §    9:02 A.M. TO 9:27 A.M.

7

                   **MOTION HEARING (VIA ZOOM)**
8
            BEFORE THE HONORABLE MARVIN ISGUR
9            UNITED STATES BANKRUPTCY JUDGE

10

11

12     APPEARANCES:                    SEE NEXT PAGE

13     ELECTRONIC RECORDING OFFICER: SIERRA THOMAS

14

15     **(Recorded via CourtSpeak; No log notes)**

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21     JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23         www.judicialtranscribers.com

24

     Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

2

1                         APPEARANCES (VIA ZOOM):

2


3    FOR MINING PROJECT WIND DOWN        MCDERMOTT WILL & EMERY, LLP
     HOLDINGS, INC. LITIGATION          Charles Gibbs, Esq.
4    TRUST and the PLAN ADMINISTRATOR:  Debbie Green, Esq.
                                        2501 N. Harwood St.
5                                       Suite 1900
                                        Dallas, TX  75201
6                                       214-295-8063

7
     FOR BITNILE, INC.                  OLSHAN FROME WOLOSKY, LLP
8                                       Kerrin Klein, Esq.
                                        1325 Avenue of the Americas
9                                       New York, NY  10019
                                        212-451-2239
10

11   FOR ATLAS TECHNOLOGY GROUP:        MICHAEL BEST FROELICH
                                        Justin Mertz, Esq.
12                                      790 N. Water St., Ste. 2500
                                        Milwaukee, WI  53202
13                                      414-225-4972

14
     FOR TRIBOLET ADVISORS LLC:         ASK, LLP
15                                      Nicholas Brown, Esq.
                                        2600 Eagan Woods Dr.
16                                      Suite 400
                                        St. Paul, MN  55121
17                                      651-289-3867

18

19

20   (Please also see Electronic Appearances.)

21

22

23

24

25

1           **HOUSTON, TEXAS; MONDAY, MAY 15, 2023; 9:02 A.M.**

2           THE COURT:  We are here in the Mining Project Wind

3  Down case.  It is 22-90273.  If you wish to speak at today's

4  hearing, if you would please press five star one time on

5  your phone.

6           Mr. Gibbs, good morning.

7           MR. GIBBS:  Good morning, Your Honor.  If you were

8  waiting on me, I apologize.  I had to dial back in.

9           THE COURT:  No.  That was my fault.  I

10  accidentally disconnected everyone.

11           So is -- if there's anyone else that wishes to

12  speak at this morning's hearing would you please press five

13  star one time on your phone?

14           MR. GIBBS:  Your Honor, good morning, if you're

15  ready?

16           THE COURT:  No, I've got some other people who do

17  want to speak.  From 212- --

18           MR. GIBBS:  Okay.

19           THE COURT:  -- 451-2239, who do we have on the

20  line?

21           MS. KLEIN:  Good morning, Your Honor.  This is

22  Kerrin Klein from Olshan, Frome, Wolosky, LLP, counsel for

23  BitNile, Inc.

24           THE COURT:  Thank you, Ms. Klein.  Good morning.

25           MS. KLEIN:  Good morning.

1          THE COURT:  From 414-271-6560.

2          MR. MERTZ:  Good morning, Your Honor, Justin Mertz

3  of Michael, Best, and Friedrich appearing on behalf of Atlas

4  Technology, LLC.

5          THE COURT:  Good morning, Mr. Mertz.

6          And from 434-326-6300 who do we have?

7          MR. BROWN:  Thank you, Your Honor.  This is Nick

8  Brown from the law firm ASK, LLP.  I'm appearing this

9  morning on behalf of Tribolet Advisors, LLC, who is the plan

10  administrator.

11          THE COURT:  Thank you, Mr. Brown.

12          So I would like to start in reverse order of the

13  docket if we could, and that is with the stipulation and

14  agreed order.  The reason why I --

15          MR. BROWN:  Thank you, Your Honor.  I will be --

16          THE COURT:  The reason --

17          MR. BROWN:  I will be appearing on that matter.

18          THE COURT:  Thank you.  The reason that I did not

19  sign it was I was concerned about confusion within the Order

20  where paragraph 3 says that the distributions on the

21  stipulated claim come out of the allowed administrative and

22  priority claims reserve, but the stipulated and claims

23  include a $34,850 general unsecured claim.

24          So I read it as paying hundred cents on the dollar

25  on the thirty-four eight fifty unsecured claim, which seemed

1  odd to me, and I wanted to understand what's going on.

2          MR. BROWN:  Your Honor, Nick Brown on behalf of

3  the plan administrator.  Thank you for that question.

4          You know, the intention with this paragraph is for

5  the priority portion, 15,150, to be paid from that reserve

6  funds which are reserved for administrative and priority

7  claims.

8          But I don't believe it is the intention for

9  whatever prorated distribution general unsecured claims

10 might receive in this case.  It's not the intention for that

11 part of this claim to be paid from that reserve money.

12         And I understand now in re-reading this that it

13 could be interpreted that way.  I'm happy to offer a revised

14 version that clarifies what we're trying to accomplish here.

15         THE COURT:  That's fine.  I'm going to just

16 authorize an amended stipulation and agreed order to be

17 filed.  We'll see if Mr. Coulby wants to sign off on that.

18 He may have thought he was getting paid in full.

19         That's not -- I didn't think that was the intent

20 of the stipulation, but I thought that was what the language

21 actually said.

22         So I'll just ask you to get that done in the next

23 14 days; and, if not, let's go ahead and set the matter for

24 hearing because it looks like there's not an agreement.

25         Does that work for you?

6

1    MR. BROWN:  Thank you -- it does, Your Honor.  I

2 don't anticipate it being a problem.  But we will certainly

3 let you know if there is one.

4    THE COURT:  Thank you.  And now let's go to the

5 ECF 1062, the BitNile matter.  I understand that -- I'm

6 sorry, I've got the wrong one.  Let's go to the BitNile

7 matter.  I understand from the Agenda that you all want a

8 continuance on this; is that right?

9    MR. BROWN:  Your Honor, Nick Brown on behalf of

10 the plan administrator.  This matter is an objection to

11 claim.  And the intention, I believe, is for the -- this --

12 today's hearing to be an initial hearing and status

13 conference, and that we set -- ultimately set a second

14 hearing for a final determination and then adjudication of

15 the objection claim.

16    But we wanted to take advantage of this initial

17 hearing to inform the Court of where the parties are and to

18 talk about perhaps entering into a scheduling order.

19    THE COURT:  I think we need -- I was going to say

20 I don't think we can proceed without a scheduling order on

21 something this complicated.

22    Ms. Klein.

23    MS. KLEIN:  Yes, Your Honor.  I just wanted to

24 also inform the Court there is a pending litigation in the

25 United States District Court for the District of Minnesota

1  against certain former officers and employees of Compute

2  North.  BitNile brought those claims.  It also opted out --

3  filed to opt out in the bankruptcy action.

4            Those claims, there are some overlapping issues.

5            There's a pending motion to dismiss in that

6  action, which is scheduled to be heard in June, on

7  June 16th, which -- and, you know, we conferred last week

8  with counsel for the plan administrator with respect to the

9  impact of that action on the schedule here, and also to ask

10 questions of the plan administrator that might be relevant

11 to a scheduling order, in particular whether those

12 individuals would appear pursuant -- in this action if they

13 were, you know, voluntarily, whether the Debtor has control

14 over the documents relating to those individuals or not.

15 And those things would impact schedule as well.

16            We had asked the counsel for the administrator

17 those questions during our meet-and-confer.  We also asked

18 whether counsel for the administrator would be willing to

19 confer about those issues, discovery issues, and the like

20 following the District of Minnesota's hearing on the motion

21 to dismiss which could narrow the issues in that action,

22 though we don't think it should, and accordingly come back

23 to this Court for a further status conference perhaps a

24 couple months after that hearing, around September or so.

25            And so that would be our proposal.

1              THE COURT:  Why would we wait two months?

2              MS. KLEIN:  What's that, Your Honor?  I'm sorry, I

3  didn't hear.

4              THE COURT:  Why wouldn't we come back much sooner

5  than two months after the Minnesota court rules?

6              MS. KLEIN:  Well after the Minnesota court rules,

7  yes.  I meant after the hearing.  I anticipate since the

8  hearing is June 16th it might take some time for the Court

9  to issue a decision given the summer, not sure what the

10  timing would be on that.  So our proposal would be to come

11  back sometime around September.

12             THE COURT:  Mr. Brown, what are your thoughts

13  about timing for coming back?

14             MR. BROWN:  Thank you, Your Honor.

15             We have a little bit of a disagreement on how best

16  to go forward on this claim objection.  So, yes, it's true

17  there is a pending action in Minnesota against the directors

18  and officers and that is involving claims of fraud.

19             Now, the claim objection that -- the claim in the

20  bankruptcy case also necessarily entails the question of

21  whether the contract was incurred by fraudulent means.  So

22  we see the issue of fraud to be basically identical in both

23  the claim objection litigation as well as the D&O

24  litigation.

25             So we see it very -- we have a problem with two

1  different actions going forward in front of two different

2  courts on the same issues at the same time.  The directors

3  and officers in the Minnesota case have asked that court to

4  either dismiss or stay that matter while this Court enters

5  its claim objection, which we think is the best way to

6  proceed.

7          But whether the Minnesota court stays or dismisses

8  its action or not, I don't see any reason why we should

9  delay at all putting a scheduling order on the docket and

10 proceeding in this case so that we can determine the issues

11 and resolve this claim objection.

12          THE COURT:  When is the June hearing in Minnesota?

13          MS. KLEIN:  It's June 16th, Your Honor.

14     (Pause in the proceedings.)

15          THE COURT:  So I'm not going to step in front of

16 the District Court in Minnesota.  But I am also not going to

17 issue a ruling that anticipates that the District Court will

18 rule rather than defer to us.  I believe that should be that

19 District Judge's choice.  If he wants to defer to us and let

20 us rule first on the fraud issue, that's fine with me.

21          If -- and I don't -- if she wants -- I don't know

22 if it's a she or a he.  If the District Judge in Minnesota

23 wants to rule on the fraud issue so that it will then be

24 probably collateral estoppel down here, that's fine with me.

25 So I'm going to leave it up to the District Judge in

10

1  Minnesota.

2          I want to just come back for a status conference

3  on June 22nd.  We'll do that at 4:00 o'clock in the

4  afternoon, and we will see what occurred in Minnesota.  If

5  the judge wants more time, then just tell me that.  It'll be

6  a short hearing.  If the judge has decided to defer to us,

7  then we'll set you all down for a trial date.  But I can't

8  make that decision today.

9          I'm not going to try and step ahead of that judge

10 or to sit behind that judge.  I'm going to try and let that

11 judge decide how to proceed and then I'm going to follow

12 what that judge decides to do.

13         So are you all available on June 22nd at

14 4:00 o'clock?

15         MS. KLEIN:  I am, Your Honor.

16         MR. BROWN:  Yes, Your Honor.

17         THE COURT:  We'll see you all then.  Thank you.

18         MS. KLEIN:  Thank you.

19         MR. BROWN:  Thank you very much.

20         THE COURT:  All right.  Now let's go to the motion

21 for leave to file the amended claim.

22         MR. GIBBS:  Your Honor, I know we're objecting to

23 that motion.  I just wanted to make sure that the Record

24 reflects it's Chuck Gibbs with McDermott Will, and Emery,

25 counsel to the Mining Project Wind Down Holdings Trust and

1  Michael Tribolet, excuse me, the plan administrator, along

2  with my partner Debbie Green --

3          THE COURT:  Thank you.

4          MR. GIBBS:  -- appearing on behalf of the plan

5  administrator.

6          THE COURT:  I don't think I have Ms. Green's line

7  open and I want to be sure she has the opportunity to speak.

8          Ms. Green, if you would press five, star one time,

9  please?

10          Mr. Mertz, I think it's your motion.

11          MR. MERTZ:  Yes, Your Honor.  Justin Mertz for the

12  Movant, Atlas Technology Group, LLC.  If I may, Your Honor,

13  I just have a few comments for the Court at the onset of

14  this hearing.

15          So up for the motion is a motion for leave to file

16  the amended proof of claim, as well as Atlas's motion for

17  relief from the injunctive provisions under Section 9.6 of

18  the plan.  And I'll just address both briefly for Your Honor

19  and then be happy to answer any questions that you may have.

20          So my client, Atlas Technology and Compute North,

21  were parties to a hosting agreement for some of these

22  bitcoin minors.  Compute North was essentially supposed to

23  host hundreds of servers that were owned by Atlas

24  Technology.  The servers were supposed to be stored and

25  energized at the Debtor's Wolf Hollow location, which was

1  essentially owed by a Compute North subsidiary.

2          Both of the parties allege that the other one

3  breached the hosting agreement on a prepetition basis.  That

4  dispute is for another day and is essentially playing out as

5  part of it in adversary proceeding that was brought by a

6  debtor entity against Atlas.

7          At the beginning of this case, Atlas filed its

8  original proof of claim by the bar date seeking recovery of

9  approximately $5 million.  That amount was tied to a

10 prepetition deposit that Atlas paid pursuant to that hosting

11 agreement.

12         The proof of claim included assertions that Atlas

13 was also entitled for indemnification from Compute North for

14 future breaches under the hosting agreement by the Wolf

15 Hollow entity.  The proof of claim asserted a right to amend

16 for such indemnification claims once they became known.

17         Post-petition, Atlas continued to negotiate with

18 Compute North to essentially resurrect and reestablish that

19 hosting agreement that the parties were operating under on a

20 prepetition basis.  Those negotiations didn't go anywhere.

21 And eventually, as Your Honor is aware, the Wolf Hollow

22 facility was sold, along with a number of other assets to a

23 third party called Generate.

24         Post-sale, Atlas continued to negotiate with

25 Generate pursuant to the terms of -- you know, attempting to

1  resurrect that hosting agreement.  Those efforts ultimately

2  failed.  And instead Atlas negotiated essentially a walkaway

3  agreement with Generate, the buyer.  And as part of that

4  agreement Generate was going to return the majority of that

5  $5 million deposit that had previously been paid.

6          That agreement between Atlas and Generate was

7  executed on February 20th, 2023, which is post-confirmation.

8  And Generate made the payments making the deal effective on

9  March 15th of 2023, also post-confirmation but pre-effective

10 date of the plan.

11         Atlas then filed its motion to amend the proof of

12 claim immediately on the same day, March 15th, 2023, now

13 that it knew that the Generate agreement had been finalized.

14         So based on the timeline of negotiations on a

15 post-petition basis, Atlas filed its motion to amend its

16 proof of claim and respectfully requested it be granted

17 leave to file that amended proof of claim to fully assert

18 its indemnification claim against the estate.

19         THE COURT:  So, Mr. Mertz, the part of the

20 objection that I'm actually most interested in and that I

21 think is going to require evidence, and I'm inclined to set

22 us down for an evidentiary hearing, is the futility

23 objection.

24         I need, I believe, evidence from all parties on

25 two issues.  One is whether the cap applies to the claims

1   and, two, which is part of that issue, is whether the claims

2   are recoupment claims or are setoff claims; always a

3   complicated question.

4           I start the hearing by believing -- I may be

5   persuaded otherwise through briefing -- that recoupment

6   claims are not barred by anything, either the cap or the

7   discharge, but that setoff claims are.  And so it will

8   matter to me a lot whether these are caps or setoffs.

9           If the cap applies and it's a setoff, then most of

10  the claim, perhaps not all of it, is futile.  And I don't

11  know how I decide that without an evidentiary hearing.

12          So let me hear from Ms. Green and Mr. Gibbs

13  whether they believe an evidentiary hearing is required for

14  me to decide their futility argument, which I think is by

15  far the most important of the arguments that are here today.

16          Ms. Green, Mr. Gibbs, I don't know who wants to

17  take the lead on that.  And then we'll hear from Mr. Mertz.

18          MS. GREEN:  I will, Your Honor.

19          THE COURT:  Thank you.

20          MS. GREEN:  Your Honor, can you hear me?

21          THE COURT:  I can hear you fine, Ms. Green.  Good

22  morning.

23          MS. GREEN:  Good morning, Your Honor, thank you.

24          Your Honor, we do not believe that the futility

25  argument actually requires an evidentiary hearing, and here

15

1   is why.  And that's the argument actually Atlas made is that

2   the -- it couldn't be futile because there's -- this goes to

3   the merits.  We think that's wrong.

4           While it's true that futility speaks to whether a

5   proposed amendment failed under the (indiscernible), Atlas's

6   proposed amendment is facially implausible on its face.

7           Courts are not opposed to dismissing a breach of

8   contract action, Your Honor, where a particular limitation

9   of liability provision renders the claims effective.

10           So, for example, if a limitation of liability

11   provision requires proof of damages and a plaintiff seeks

12   damages, the court will find that the (glitch in the audio)

13   for punitive damages failed to state a claim.

14           Likewise, to the extent the damages above an

15   amount under the contract limitation of liability clause,

16   the court will find that the claim failed to state a claim.

17   And that's because --

18           THE COURT:  Doesn't that depend in part on whether

19   this is setoff or recoupment?

20           MS. GREEN:  Your Honor, I think we'd actually

21   prefer to do some briefing on this issue.

22           THE COURT:  I'm sorry, I just didn't hear you,

23   Ms. Green.

24           MS. GREEN:  Your Honor, I think some briefing on

25   this issue (glitch in the audio) to the Court.

1          THE COURT:  I think it would be.  And I believe

2  that the question of recoupment and setoff will be factually

3  based, not legally based.  I could be wrong about that.

4          Mr. Mertz, what's your view?

5          MR. MERTZ:  Well, Your Honor, I guess from my

6  perspective, you know, we didn't take a deep dive into

7  recoupment versus setoff primarily because we're sort of

8  getting into the weeds of actually assessing the claim.  So

9  I sort of viewed the motion that's in front of Your Honor as

10 more of a procedural matter to say, look, --

11         THE COURT:  I don't think that the futility issue

12 is procedural.  I think it's very substantive.  And I'm not

13 going to make the Debtor spend millions of dollars defending

14 a futile claim, so it matters to me.  They've raised it as a

15 defense and I'm going to hear the defense.

16         If you want me to hear it without an evidentiary

17 record, sounds like Ms. Green may want me to hear it without

18 an evidentiary record, maybe so.  But I think that's hard

19 for both of you all to ask me to do that.  But I'm not --

20         MR. MERTZ:  I don't --

21         THE COURT:  -- ruling on procedure on this.

22         MR. MERTZ:  Understood, Your Honor.  I guess my

23 take was just that that -- as part of the adversary

24 proceeding, the plan administrator has objected to the

25 original proof of claim.  So that issue is being highlighted

1  and will be adjudicated pursuant to that adversary

2  proceeding.

3         THE COURT:  So I need to know whether you have a

4  several hundred million dollar setoff or $700 million --

5  several hundred million dollar recoupment claim, and I need

6  to combine that with the bar.

7         How long will it take you all to be ready for an

8  evidentiary hearing on whether I should grant this relief?

9  I'll let you present whatever evidence you want.  You all

10  are welcome, both sides, to present none, and I'll decide it

11  on whatever I've got in front of me.  We'll figure out who's

12  got the burden and, you know, proceed from there if no one

13  wants to put on any evidence.

14         And I would like to get briefing on setoff versus

15  recoupment that can lay that out for me before the

16  evidentiary hearing.  So if you all can propose a briefing

17  and evidentiary hearing schedule maybe over the next 60 days

18  that fits with what your needs are, would that work?

19         MS. GREEN:  Yes, Your Honor.

20         MR. MERTZ:  Yes, Your Honor.  That's fine.

21         THE COURT:  All right.  Do you all want to brief

22  in 30 days from now so we'll set a June 15th briefing

23  deadline?

24         MS. GREEN:  That works for me, Your Honor.

25         MR. MERTZ:  That's okay, Your Honor.

1            MR. GIBBS:   (Glitch in the audio)for both parties,

2    Your Honor.

3            THE COURT:   And how about a June 29th response

4    deadline?

5            MR. MERTZ:   That works, Your Honor.

6            THE COURT:   And then let's look at -- we have

7    another objection to claim hearing in the same case on

8    July 12th at 1:30.  Why don't we just set you all July 12th

9    at 1:30 for your evidentiary hearing?  That way Mr. Tribolet

10   only needs to come back once.  Will that work for everybody?

11           MS. GREEN:   Excuse me, Your Honor, clarification

12   on the deadline.  Today is May 5th (sic).  And so the

13   initial June 15th deadline, does it apply to both sides or

14   is it --

15           THE COURT:   Both sides with replies --

16           MS. GREEN:   Okay.

17           THE COURT:   -- by the 29th.

18           MS. GREEN:   Understood.  Thank you, Your Honor.

19           THE COURT:   Thank you.

20           Are you all available for a July 12th evidentiary

21   hearing?

22           MR. MERTZ:   I assume you want that in person, Your

23   Honor, or is that another hybrid --

24           THE COURT:   No.  Every hearing we have is

25   potentially hybrid.  It's totally up to you.  You can come

19

1  in person --

2           MR. MERTZ:  Okay, Your Honor.

3           THE COURT:  -- or you can be here remotely.  You

4  can have your witness here and you can be remote,

5  vice-versa.  Until September we're not going to change that

6  policy.  We'll change it only slightly in September, which

7  is the live witness requirement comes back.  But that's

8  waivable, of course.  But, no, you can do anything hybrid

9  that you want.

10          You all available on that day?

11          MR. MERTZ:  Yes, Your Honor.

12          MS. GREEN:  That works.

13          THE COURT:  Okay.  Great.  Well we will see you

14 all then.  Is there anything else that we can accomplish

15 today?

16          MR. MERTZ:  No, Your Honor.

17          MS. GREEN:  Not right now, thank you.

18          THE COURT:  Okay.  Thank you all for dialing in.

19 And I apologize that I disconnected you all before I started

20 the hearing.  Please --

21      (Proceeding adjourned at 9:27 a.m.)

22

23

24

25                       *  *  *  *  *


                    JUDICIAL TRANSCRIBERS OF TEXAS, LLC

20

1           *I certify that the foregoing is a correct*

2    *transcript to the best of my ability due to the condition of*

3    *the electronic sound recording of the ZOOM/video/telephonic*

4    *proceedings in the above-entitled matter.*

5    */S/ MARY D. HENRY*

6    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

8    *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9    *JTT TRANSCRIPT #67251*

10   *DATE FILED:  MAY 25, 2023*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25