IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
AUG 0 7 2023
Nathan Ochsner, Clerk of Court

In re:

MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), et al.,

Debtors.[1]

Chapter 11

Case No. 22-90273 (MI)

**RESPONSE TO DENY / REJECT THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029), AND THE PROPOSED ORDER 1199-2, ASSOCIATED TO OBJECTION 1199**

NELU MIHAI, PhD, former funding Vice President of Engineering at Compute North LLC / Debtors, in his capacity as Creditor ("Creditor") and Claimant of the Claim no. 10029 filed on October 24, 2022, in case 22-90273 (the "Bankruptcy Case", "Case no. 22-90273"), hereby files this Petition/ Response ("Response")

I. respectfully asking the Court, based on evident legal and factual grounds, in regards to the Claim 10029 and Proof of Claim 10029,

   I.1. to admit the Claim 10029 and to issue an order of allowance of the Claim 10029

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

I.2. to reject the "Objection" to Claim Asserted by Nelu Mihai (Claim No. 10029) (the "Objection" document 1199 filed on 07/07/2023), and to issue an order of rejection of the "Objection"

I.3. as well to reject "the Proposed Order" 1199-2 filed by the Plan Administrator

II. Subsidiarily, if the Court would reject our request above shown at I.1, we respectfully ask the Court <u>to admit the allowance of the Claim 10029</u> for severance compensation / unpaid wages related debts<u>, calculated to the amount of $150.000,04 for</u> <u>the period between the date of September 16, 2022 and the date when the last executive of Compute North LLC would have received wages payments or claimed amount of wages, paid by the Debtors of the Successor of the Debtors, trustee, Plan Administrator etc.</u>, based in the terms of the Separation Agreement Section 9.a.[2] (signed on 03/28/2022) and to rule admitting the requests mentioned above at I.2. and I.3.

III. Subsidiarily, if the Court would reject our request above shown at I. and II., we respectfully ask the Court <u>to admit the allowance of the Claim 10029</u> for severance compensation / unpaid wages related debts<u>, calculated to the amount of $150.000,04 for</u> <u>the period between the date of September 16, 2022 and the Date when the reorganization Plan was approved by Court or the Date when Plan Administrator was named by Court, or a Date established by the Court as a Date after 09/22/2023,</u> and to rule admitting the requests mentioned above at I.2. and I.3.

<u>and respectfully states as follows in support thereof:</u>

A. <u>The Response is filed legally,</u> in less than 30 days before the end of the day 08/07/2023, considering the date of service of the Objection as 07/07/2023.

---

[2] *"payments made on the same date(s) as base salary are paid to the Company's other executives" ..."If the Company or Parent fail to pay an installment on time, at the same date(s) as base date(s) as base salary are paid to the Company's other executives, , the Company will pay a penalty of 2% of the delayed installment per every delayed day"*

**B. 1. The real facts and the legal grounds to reject the Objection 1199 filed by the Plan Administrator and to issue a Court order admitting / approving the allowance of the Claim 10029** are the following:

a) The founders of Compute North LLC / Debtors used Nelu Mihai to receive significant advice for two years before hiring him. Realizing that no venture capitalists wanted to fund them, they hired Nelu Mihai to use his professional reputation, prior business success, and his contacts in Silicon Valley to fund Compute North LLC / Debtors. It is not a coincidence that Generate Capital is located in San Francisco (Nelu Mihai's home city), and they provided $320M of the $380M OVERALL FUNDING AMOUNT.

b) Many times, during negotiations between Compute North LLC / Debtors and Nelu Mihai, after agreeing to certain terms, later the Compute North LLA / Debtors did not recognize the agreed terms.

c) The Debtors kept different, parallel, and double records and books for Nelu Mihai, many of them being altered by Compute North LLC in favor of the Compute North LLC / Debtors, even if the written and agreed contracts had other content and terms. The Claim 10029 is about debts consisting in severance related unpayments, but confirmed accrued debts, which in fact are <u>compensation for losses resulting from termination of Nelu Mihai.</u>

d) The Compute North LLAC / Debtors defrauded Nelu Mihai of his number of shares, decided by both parties in the Hiring Agreement. The Debtors falsely declared that they made a mistake in the electronic records (different from the written hiring offer/agreement), and they asked Nelu Mihai to sign another hiring agreement during the separation of Nelu Mihai from the Compute North LLC / Debtors.

e) The misrepresentation, late payments, and alteration of the records were evident both before and after the Bankruptcy Notice was filed on 09/22/2022.

f) The $340 M investment brought in by Generate Capital and National Grid Partners was invested in a business plan and product strategy elaborated by Nelu Mihai, which was supposed to transform Compute North LLC / Debtors into an AI-focused company with intelligent connections to the energy national grid, and by reducing dramatically the contribution of the bitcoin mining to the Compute North LLC / Debtor revenue. These two investors invested in Compute North LLC / Debtor solely attracted by this vision of

investing mainly in AI. The investors asked Nelu Mihai to provide them with a plan for converting all the data centers into AI and regular IT data centers in case of a crash in crypto markets. These investors did not believe in a business plan based only on Bitcoin mining. After closing the funding round, Compute North LLC has decided to invest and invested all the received funds solely in bitcoin mining equipment (proof in the financial records of Compute North LLC / Debtor. Clearly, this decision, in contradiction with the business plan presented to investors, created tremendous dissatisfaction for these two major venture capital investors. This significant deviation triggered the collapse of the Compute North LLC / Debtor company.

g) Generate Capital questioned this different use of funds/money, questioned the ability of the executive team (the CEO and CFO left; it is not clear if they left or they were forced / advised to suddenly leave in June / July 2022) and Generate Capital stopped making available the funds for Compute North LLC.

h) The prior overspending put Compute North / Debtors in the inability to pay the debt. Underscored: Compute North / Debtors did not go bankrupt because of the downturn of the bitcoin market: the Debtors had enough money ($380M) to survive for two–three more years.

i) To prove the overspending is just enough to look at Dave Perill's Claim no. 10002 filed on 09/30/2022, asking for **$300.000** for travel & **entertainment**, based on a separation agreement signed on September 6, 2022, a long time after he departed the company and just several days before Compute North / Debtors declared bankruptcy on September 22, 2022. Is this normal in a business clearly going then thru difficult financial times? It seems that the Plan Administrator did not make an objection to the claim number 10002 (filed on September 30, 2022, a couple of days after 09/22/2022 when the Debtors filed the Notice) of Dave Perrill, even if the Claim is for **travel and entertainment** (as stipulated in the addendum to the claim 10002, the Separation Agreement signed on September 6, 2022, after the Notice for Bankruptcy Chapter 11 was filed)

j) The Debtors untruthfully declared in their bankruptcy documents, case 22-90273 ("Financial Status Disclosure Statements of Compute North LLC / Debtors", filed before Reorganization Plan confirmation and before the Court named the Plan Administrator, exhibits in dockets of 22-90273 case) that they paid Nelu Mihai's accrued but unpaid

wages of $150.000,04 a day before filing the bankruptcy notice dated 09/22/2022. Certainly, this financial status misrepresentation (included in Bankruptcy Court case 22-90273 documents) was done with the intention to give the Court the false impression that the Debtors paid on time the wages, without delays, at the Notice Date (09/22/2022). <u>In fact, this misrepresentation is a "**Confirmation**" and proof that the **Compute North LLC / Debtors assumed all debts for the Creditor Nelu Mihai**, including the debts claimed in Claim 10029 (proof in the Debtors Disclosure Financial Statement of the accrued unpaid debts (severance wages / compensations and penalties)), debts agreed in the Severance Agreement **(signed on 03/28/2022), including the debts claimed by Nelu Mihai in Claim 10029.**</u>

k) In addition, before February – March 2022, Compute North LLC / Debtors several times did not pay the employees, especially Nelu Mihai, on time.

l) As an example, for Nelu Mihai, besides not making the wage payments on time, the Compute North LLA / Debtors delayed the deposit into Nelu Mihai's 401(k) account (the part of the wage that was supposed to go into the 401(k) plan) to the 401(k) plan administrator, for almost two months. This was not legally right.

m) The precedence of delays in wage payments, the alteration of the databases records of shares offered to Nelu Mihai when he joined the Compute North LLC / Debtors as an employed executive, the delays of transferring the 401(k) contributions into Nelu Mihai's 401(k) account kept by the 401(k) plan administrator, the alteration of the achievements of Nelu Mihai, made in order not to pay him with a bonus in the winter of 2021 while Nelu Mihai's teams and the other executives were paid with bonuses and other serious aspects and events attracted objectively the terms of the separation contract between Nelu Mihai and the Debtors to stipulate penalties on unpaid wages, based on the prior experience with the Compute North LLC / Debtors.

n) How can a company be trusted when it tries to change the performance of Nelu Mihai? Or, it tries to deny the existing contract for stock options issued to Nelu Mihai and does not invest the funds received from Generate Capital and National Grid Partners as it was presented in the investment deck used to close the round? The penalties are justified, Nelu Mihai is entitled to receive payment for them, based on and considering also the

contract's specific context and the major role of Nelu Mihai in funding Compute North / Debtors.

1. The Claim of Nelu Mihai is for wage penalties. Nelu Mihai's claim no 10029 is for priority debts structurally built on accrued but unpaid wages.

2. The Objection should be rejected, being evident that Nelu Mihai is entitled to receive the allowance for his claim n. 10029 and be credited/awarded according to this Claim and Court decision, considering the certitude that the breaching of the Separation Agreement fully justifies the wage penalties **before the date when Debtors filed for bankruptcy (09/22/2022)**. In the plan presented to the Court, the Debtors falsely declared that they paid the total accrued wages/installments, committing the **breaching of the Separation Agreement, before filing for bankruptcy**. (as per Separation Agreement terms: *"If the Company or Parent fail to pay an installment on time, at the same date(s) as base salary are paid to the Company's other executives, the Company will pay a penalty of 2% of the delayed installment per every delayed day"*). The rate of 2% would have been avoided if, instead of paying for travel and entertainment Compute North LLC would have paid Nelu Mihai his accrued wages in time, as the Company did with other executives.

3. More than that, the Objection should be rejected, and the also it should be rejected the "Proposed Order" 1199-2 filed by the Plan Administrator, at least because <u>not paying these penalties is not fair and it is not legal.</u>

4. The Claim of Nelu Mihai is for wage penalties. Nelu Mihai's claim no 10029 is for priority debts structurally built on accrued but unpaid wages.

5. The Objection should be rejected, being evident that Nelu Mihai is entitled to receive the allowance for his claim n. 10029 and be credited/awarded according to this Claim and Court decision, considering the certitude that the breaching of the Separation Agreement fully justifies the wage penalties **before the date when Debtors filed for bankruptcy (09/22/2022)**. In the plan presented to the Court, the Debtors falsely declared that they paid the total accrued wages/installments, committing the **breaching of the Separation Agreement, before filing for bankruptcy**. (as per Separation Agreement terms: *"If the Company or Parent fail to pay an installment on time, at the same date(s) as base salary are paid to the Company's other executives, the Company will pay a penalty of 2% of the delayed installment per every delayed day"*). The rate of 2% would have been avoided if,

instead of paying for travel and entertainment Compute North LLC would have paid Nelu Mihai his accrued wages in time, as the Company did with other executives.

6. More than that, the Objection should be rejected, and the also it should be rejected the "Proposed Order" 1199-2 filed by the Plan Administrator, at least because <u>not paying these penalties is not fair and it is not legal.</u> Without the contribution of Nelu Mihai, Compute North / Debtors would not have received the funding of over $340M and many of the other creditors' claims that the Plan administration agreed to pay, without filing Objections would not have been possible without the efforts of Nelu Mihai to close the funding round. Is not unfair to allow the payments of the claims (as claim 10105, 10002 etc.) ones) filed by the executives, responsible for the Compute North LLC bankruptcy?

7. The Court is respectfully asked to order allowance for claim 10029 and should reject the Plan Administrator's Objection filed on 07.07.2023 and totally reject, deny, and ignore the Plan Administration's proposed Order.

8. The attorney representing the Plan Administrator cited some "precedents" in the Objection (document 1199) referred to in this Response. All these precedents are entirely different from Nelu Mihai's case for Claim no. 10029, and do not contain any resemblance of parts, circumstances, or legal grounds with Claim 10029 and Nelu Mihai's situation. The similarity and identity of the circumstances of the precedents with Nelu Mihai's case can be analyzed only by the Court. The Court should not accept the inappropriate, discriminative (in the sense of reducing his rights stipulated in the Severance Agreement), unfairly used in the Objection 1199 by the Plan Administrator, against Nelu Mihai claims 10029.

9. We strongly object to using those precedents unsuitable for the current Claim and case.

10. To our knowledge, no law in the bankruptcy law supports the Objection of the Plan Administration to the Claim no. 10029 of Nelu Mihai.

11. Everything in the Declaration and Objection is based on belief, but the question is: does the Plan Administrator knows the real reason for the Compute North LLC bankruptcy and failure, the vital contribution of Nelu Mihai to attract and finalize the funding round? The Declaration 1199-1 unfairly represents the Claim of Nelu Mihai no.10029 as being without any evidence ("if any'). At the same time, the Court dockets contain the declaration of the CFO about zero dollars accrued wages of Nelu Mihai, before the

Notice date (09/22/2022). In contrast, the records and books of Compute North LLC and Insperity (the company keeping the payroll records) contain an evident amount of unpaid wages and priority debts of the Debtors, as specified in claim 10029.

The judicial reality is that any existing law does not support the Objection of the Plan Administrator, which is evident even more from the content of this Objection.

12. The contribution of Nelu Mihai to Compute North LLC / Debtor is $340M in funding, and it would be unfair not to reject the Objection of the Plan Administrator. An eventual acceptance of the Objection would nullify the written separation agreement signed between Nelu Mihai and Compute North LLC / Debtors and affiliates. Would it be lawful?

13. Practically, the separation agreement stipulates that Nelu Mihai will be <u>treated as an employee</u>, with duties of giving consultancy to the founders of Compute Norths LLC, as a consultant executive, for the duration of this separation agreement. Paragraph 9 states that the two monthly payments should be done "*on the same date(s) as base salary is paid to the Company's other executives.*" These wages penalties are, in fact, extensions of wages, and they are recognized debts (in the plan of the debtors), being **priority** debts.

14. The Plan Administrator likes to launch figures without showing any calculus. In fact, the amount of the Claim 10029 of Nelu Mihai is **0.057% of the money he attracted in Compute North LLC / Debtors from investors from Silicon Valley.**

15. We respectfully remind the Court that in the plan accompanying the bankruptcy Compute North LLC misrepresented the accrued wages by erasing all the accrued but not paid wages (of $150.000,04) from the documents presented to the Court, and by presenting the amount of accrued wages as "paid wages on the day before filing for bankruptcy"). This misrepresentation and alteration of the financial records before declaring bankruptcy also constitute a breach of the Separation Agreement and material disparaging action, as stipulated by Section 16 of the Separation Agreement. "*Parties understand and agree that this mutual non-disparagement term is a material term of the Agreement and that any violation of this term would constitute a material breach of the Agreemen*t"). The alteration was discussed in Court with the Compute North LLC CFO, who declared that, to his knowledge, all the financial records (so including this alteration) were correct. When Nelu Mihai informed the Court that the financial records / books do not show with

certitude that the full amount of $300,000 of wages was not paid in full before filing the petition for bankruptcy, the Debtors said that "it was an error'. Respectfully ask the Court to observe and retain that the Debtors altered the records, even those presented in Court, and this one is not a singular attempt to defraud Nelu Mihai.

16. This action damaged Nelu Mihai and his family and continues to produce damage as this false information is still available on the Internet.

17. Has the Plan Administrator examined all the Bitcoin wallets owned by Compute North LLC / Debtors and some executives of Compute North LLC / Debtors in conjunction with the business of Compute North LLC? Have all the Bitcoin wallets been identified and evaluated in the bankruptcy process? These wallets may contain significant amounts of money. It should be underscored that discovering these wallets requires substantial technical support if they were not declared truthfully.

18. In addition, these bankruptcy processes created tremendous damage for Nelu Mihai and his family. The wife of Nelu Mihai suffered two major surgeries when Nelu Mihai was having hours and hours of meetings with venture capitalists to convince them to invest in Compute North LLC. The Claimant and his wife relied exclusively on the compensation and benefits stipulated in the legitimate Severance Agreement above mentioned, in order to pay, in addition to their daily living expenses and support for their families, the medical and medical objectively enforced expenses. Thus, the Claimant Nelu Mihai and his wife were, are and would be more exposed to significant financial hardship if the Court would not reject the Plan Administrator Objection and would not issue order to allow the Claim 10029, in order to minimize any additional and continued personal hardship the Claimant and his wife would suffer if the Debtors obligations described herein, obligations already not satisfied before September 16, 2022. The Debtors and the Plan Administrator are obliged to respect the legitimacy of the Separation Agreement and the major contribution of Nelu Mihai to the funding and profitable business activity of the Company / Debtors. This financial hardship for the Claimant and his wife, induced by the Debtors, were both prepetition date as well as postpetition. We respectfully ask for the understanding of the Court of the special circumstances of the Claim 10029 and seek the Court's decision to confer allowance to the Claim 10029 by ordering / imposing to the Plan Administrator to pay the prepetition and postpetition Claim amounts related thereto.

IV. Subsidiarily, if the Court would reject our request above shown at I.1, we respectfully ask the Court <u>to admit the allowance of the Claim 10029</u> for severance compensation / unpaid wages related debts<u>, calculated to the amount of $150.000,04 for the period between the date of September 16, 2022</u> (when the 11th payment of the 22 entitled payments was send to Nelu Mihai, Claimant)<u> and the date when the last executive of Compute North LLC would have received wages payments or claimed amount of wages, paid by the Debtors of the Successor of the Debtors, trustee, Plan Administrator etc.</u>, based in the terms of the Separation Agreement Section 9.a. (signed on 03/28/2022) and to rule admitting the requests mentioned above at I.2. and I.3.

V. Subsidiarily, if the Court would reject our request above shown at I. and II., we respectfully ask the Court <u>to admit the allowance of the Claim 10029</u> for severance compensation / unpaid wages related debts<u>, calculated to the amount of $150.000,04 for the period between the date of September 16, 2022 and the Date when the reorganization Plan was approved by Court or the Date when Plan Administrator was named by Court, or a Date established by the Court as a Date after 09/22/2023,</u> and to rule admitting the requests mentioned above at I.2. and I.3.

19. The Plan Administrator has no rights to dispute the legality and content of the legal Separation Agreement above mentioned. The Plan Administrator transforms the process of admitting the allowance for Claim 10029 into a denial to a legal contract signed and agreed by Claimant, Nelu Mihai, and Compute North LLC / Debtors, on free will and without any pressure.

20. The other secured and unsecured Creditors did not bring $340M as an investment in the Company (Compute North LLC / Debtors).[3]

C. **RESERVATION OF RIGHTS**

21. The Claimant expressly reserves the right to amend, modify, and supplement this Response to Objection, and the right to respond to any assertion regarding the Claim and

---

[3] The amount of the Claim 10029 of Nelu Mihai is **0.057% of the money he attracted in Compute North LLC / Debtors from venture capitalists from Silicon Valley.**

Objection. The Claimant further reserves all rights to present any evidence at a designated hearing for this proceeding to support his Claim. The Claimant reserves the right to contest any other Objections asserted by the Plan Administrator on any other grounds. Nothing herein shall constitute an admission of any assertions for admitting the Objection coming from the Plan Administrator.

### D. CONCLUSION

22. The Claimant, Nelu Mihai, respectfully requests that the Claim 10029 and Proof of Claim 10029 be allowed in their entirety,

    or allowed for the amount calculated applying the rate, as stipulated in Section 9.a of the Separation Agreement above signed on March 22, 2022 between the Claimant Nelu Mihai and the Debtors, to $150,000.04 for the period between 9/16/2022 and <u>the date when the last executive of Compute North LLC would have received wages payments or claimed amount of wages, paid by the Debtors of the Successor of the Debtors, trustee, Plan Administrator etc.</u>,

    or allowed for the amount calculated applying the rate, , as stipulated in Section 9.a of the Separation Agreement above signed on March 22, 2022 between the Claimant Nelu Mihai and the Debtors, to $150,000.04 for the period between 9/16/2022 and <u>the Date when the reorganization Plan was approved by Court or the Date when Plan Administrator was named by Court, or a Date established by the Court as a Date after 09/22/2023</u>;

    and that the Court grant such orders for Claim 10029 allowance, by rejecting the Objection 1199 to this Claim and the Proposed Order 1199-2.

Respectfully submitted,

Dated: August 4, 2023

NELU MIHAI, PhD

*[signature]*

NELU MIHAI.
201 Harrison Street Apt. 210
San Francisco CA 94105
Telephone: (408) 410-3896
Email: nelumihai@prodigy.net