IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), et al., <br><br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 22-90273 (MI) |

MOTION FOR INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(1)(A)(1): THE PROPUNDING PARTY IS IN THE SOLELY POSSESSION, CONTROL, CUSTODY OF WAGES AND SEPARATION AGREEMENT PAYMENT DOCUMENTS AND CALCULATIONS, EFI ETC., THE DEBTORS (INLCUDING INSPERITY PEO SERVICES L.P.) BEING THE ISSUERS OF SUCH DOCUMENTS/INFORMATION

1. The undersigned, Nelu Mihai, Creditor in the case 22-90273, pursuant to Rule 26(a)(1)(A)(1) I respectfully <u>redisclose that all the documents related to any payment, electronic fund transfer check (cashed or not cashed) for wages before and after the Separation Date (March 31, 2022) and/or severance amounts (according to the Separation Agreement signed on March 28, 2022) from the Debtors are in the solely possession, custody, or control of the issuers, the Debtors (including Insperity PEO Services L.P.), and also especially in the possession, custody, control of the propounding party, the Plan Administrator, Tribolet Advisors, LLC.</u> The address of Tribolet Advisors, LLC is in the case dockets.

2. As I stated during the August 14, 2023 hearing, when I objected to the Debtors' lawyer (Kara E. Casteel) request for producing documents/discoveries that, in fact, are issued by and *are under the Debtors' possession, custody and control*, the Court is respectfully informed again that the Debtors, as my employer, are the authors and issuers of any calculation and, consequently, of any electronic fund transfer voucher, payroll stub or payment document

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

called "check" related to my employment or Separation Agreement, as mandatory imposed by the California Labor Code 226(a)[2] and other provisions.

3. Per a contrario to the Plan Administrator's Declaration docket 1230 about a so-called payment of $20,894.59, I never received this exact amount of money.

4. Even more, I never received the so-called lump sum in the amount of "$7,258.23", as wrongly and misinforming declared the Plan Administrator in his Declaration docket 1230.

5. In addition, I never received a full amount of $7,258.23, net, as a payment related to the Chapter 9.a of the Separation Agreement (Consideration: Cash Severance of $300,000.00). The $7,258.23 is defined in Chapter 9.d of the Separation Agreement (Proof f Claim 10029) as being subject to tax withholdings and deductions[3]. This amount mentioned in Chapter 9.d. is not related to the claim 10029, as the Plan Administrator declares in his "REPLY IN SUPPORT OF PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029, docket 1230 filed on the Date of Hearing and not serviced to me during the 08/14/2023 hearing. In this docket Tribolet Advisors, LLC cites again only fragments from the accurate content of chapter 9.d of the Separation agreement, and this stratagem does not constitute equal treatment of the Creditors.

6. I have never received the amount of $149,999.96 as net severance payment, neither payments of $13,636.36 (the Debtors/Plan administrator wrongly declared under perjury that I received such amounts, ignoring the real figures with erroneous deductions, withholdings that made any severance payment much lower than stated by Debtors and the Plan Administrator in his declaration docket 1199-1 ("*The Debtors' books and records reflect that Claimant was entitled to receive 22 severance payments of $13,636.36 every two weeks… that <u>Claimant received 11 such payments</u> prior to the Petition Date*.") and docket 1230 (REPLY IN SUPPORT OF PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029). Every month after March 2022, the by-weekly severance payments were different from the previous ones, and for certain the few severance electronic fund transfers related to Chapter 9.a of the Severance Agreement (not 44 payments) were much lower than $9,550 or even $8,550 (much lower than $13,636.36). This information is in the records in possession of the Debtors/Plan Administrator. I do not have the payroll stubs or vouchers to produce what it the cause of such large variations, while the Plan Administrator erroneously declares "that I received $13,626.36 every two weeks".

---

[2] *(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee s wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer … and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at <u>least three years.</u>*

[3] "*Additional Consideration. As additional consideration under this Agreement, Executive (NN Claimant) shall be entitled to a payment in the amount of $7,258.23, payable a single lump sum on the same date the first cash severance payment installment is paid under subparagraph b, above, subject to applicable deductions and withholdings;*"

7. I have never received, during my employment with the Debtors and after separation, any hard copy of any payroll stub or voucher for any wages or severance payments related to Chapter 9.a and 9.d of the Separation Agreement (attachment to Claim 10029 and Proof of Claim 10029). All such electronic records and hard copies were and are in possession, custody and control of Debtors (including the payroll company Insperity PEO Services L.P.) and implicit of the Plan Administrator - Tribolet Advisors, LLC.
8. More than that, I respectfully disclose that, since starting to work for the Debtors, I opted to have only Direct Deposits into a bank account, thru Electronic Fund Transfers, and, therefore, the Plan Administrator has solely possession, control, custody of the documents that strangely are requested by the same Plan Administrator, Debtors and the Debtors' lawyer (Casteel, Kara) from me (in docket 1237 *Notice of First Set of Requests for Production Propounded by Plaintiff served upon Defendant, Nelu Mihai. Filed by Mining Project Wind Down Holdings, Inc. Litigation Trust*).
9. In addition, I respectfully disclose to the Court that there is an entity used by Debtors, to execute the procedures related to the wage and severance payments as wages, entity that is mentioned on Chapter 3, in last paragraph of page 2 of the Separation Agreement signed on March 28, 2021, between me and the Debtors (Compute North LLC). It is called Insperity PEO Services, L.P.
10. In a very unusual manner, the Debtors cut my access to the Insperity PEO Services L.P. account, when the separation took place, in March 2022; therefore, there is no way for me to produce the documents/discoveries requested by Tribolet Advisors, LLC and Debtors in docket 1237, as unfairly requested in the docket 1237 (*Notice of First Set of Requests for Production Propounded by Plaintiff served upon Defendant, Nelu Mihai. Filed by Mining Project Wind Down Holdings, Inc. Litigation Trust*).
11. I respectfully ask the Court to order the Plan Administrator, Tribolet Advisors, LLC, to produce the documents mentioned in the Docket 1237 (*Notice of First Set of Requests for Production Propounded by Plaintiff served upon Defendant, Nelu Mihai. Filed by Mining Project Wind Down Holdings, Inc. Litigation Trust*), documents being in exclusive possession, custody, or control of the Debtors and eventually Insperity PEO Services L.P.
12. Pursuant to *California Labor Code 226*, incident in this case (I have always been a California resident while employed by Debtors and after that), I respectfully demonstrate to the Court that is relevant to the case to order the Plan Administrator to provide me copies of all payroll stubs, vouchers, all the calculations etc. for the wages and severance payments under Chapter 9.a and 9.d. between March 1st, 2022 and September 22, 2022.
13. The discoverable information in the possession, control or custody of Tribolet Advisors, LLC and Debtors is related to (the subjects of that information): wages calculations, severance payments significance (what category: 9.a, 9.d, as stated in the Separation Agreement), if any federal taxes were withheld and in which amount; if any state (which state) taxes were withheld and in which amount; Medicare deductions; social security deductions; pension contributions; FSA (Flexible Spending Account) deductions etc.; if any amount of wages/severance payments were wrongly reduced by any withholdings; the amounts and legality of any eventual withholdings and deductions, dates when a particular check was cashed, including the $150,000 falsely stated by Debtors in the Financial Disclosures as being paid to me one day before declaring Bankruptcy, and where (place, bank etc.) and by whom it was cashed; if the payments were for "*unpaid vacation, expense reimbursements, wages, and other benefits due to the Executive under any Debtors'-provided plans, policies, or arrangements as of my termination date* (the "Accrued Obligations") as in the Separation Agreement; if the amount $7,258.23 for "additional consideration Chapter 9.d. of the

      Severance Agreement was paid (how, by direct deposit or by check; when) on time and what deductions and withholding were subtracted and their legality etc. This information is of major importance for the Court, as well "*to support claims or defenses" (Rule 26(a)(1)(A)(1)).*

14. I mention that I need to receive such employment information, based my legal rights as a Claimant/Creditor (Claim 10029) who also was an executive, former Debtors' employee, with specific merit in obtaining funding for the Debtors.

15. In addition, during the August 14, 2023, hearing, even if I was not represented by a counselor, I renounced only the request to Debtors and Plan Administrator of producing copies of some emails related to the falsified information about my number of shares shown in the employment contract/offer. I have not renounced my rights as a former employee, as an executive with the essential contribution to the $385M funding, and as a Creditor to ask the Plan Administrator and Debtors to produce the documents related to my employment and to any unpaid amount in relation to Chapter 9 of the Separation Agreement (claim 10029). The production of numerous errors, deformations of the real figures, contractual terms, payments amounts was continued by the Debtors and Plan Administrator. The Plan Administrator recognized that I was not paid with an amount mentioned in one of my Replies to Objection 1199, but he did it only as a foot note, with small, minuscule fonts. Why? Why I receive a non priority treatment, compared with the other executives, <u>responsible for declaring bankruptcy six months after obtaining $385M in funding,</u> and who already have been awarded money for their claims related to severance, wages, travel and <u>entertainment</u> etc.?

16. In addition, I respectfully remind the Court that I am after medical surgery, and, as both former employee (CTO) and Creditor, pursuant to *Rule 26(a)(1)(A)(1) and Rule 34(b)* Federal *Rules of Civil Procedure ("F.R.Civ.P.")* and *Rule 7034 of Federal Rules of Bankruptcy Procedure,* as well as per California employment legislation (*California Labor Code 226(b) and (c) etc.*)), I am entitled to receive the information related to my employment from the Debtors and the Plan Administrator, Tribolet Advisors, LLC, the only ones having possession, control, or custody and access to such information, unfairly requested from me.

      Respectfully,

      Nelu Mihai

      201 Harrison Street #210, San Francisco, CA 94105

      nelumihai@prodigy.net