# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| COMPUTE NORTH LLC, *et al*, | ) | Case No. 22-90273 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re:  Docket No. 91, 850 & 1023** |

**Bobs Limited Files this its Brief of Law**

**In Response to Debtor's Objection to Claim No. 14 (Doc 850) of Bobs Limited**

## INTRODUCTION

1.      This claim relates to consideration provided by Bobs Limited to Compute North LLC for purposes of obtaining 300 MinerVa MV7 100TH miners to mine cryptocurrency and specifically Bitcoin.

2.      Bobs Limited had entered into an agreement with Compute North LLC.  Compute North LLC unilaterally amended the agreement.  Consequently, either:  1- A new agreement was concluded; or   2- Compute North LLC committed civil fraud against Bobs Limited in this respect.

## FACTS

3.      Bobs Limited is a corporation registered under the laws of the Isle of Man.

4.      Tara International Enterprises Limited is a corporation registered under the laws of the British Virgin Islands.  It is a flow through corporation wholly owned by Bobs Limited.

5.      Bobs Limited is owned and operated by Matthew Vincent Reynolds Merchant.  He is the sole shareholder.  Bobs Limited and Tara International Enterprises Limit engage in the business of cryptocurrency mining and investment for own profit.

6.      Bobs Limited paid $1,547,985 to Compute North LLC to purchase 300 MinerVa MV7 100TH miners.  The payments were structured as:

     a.      payment of 80% of the initial contract price, viz. $1,032,000;

     b.      payment of the 20% remainder, viz. $258,000;

     c.      payment for expedited shipping, viz. $193,500;

    d.      payment of a break-fee, viz. $64,500.

7.    A miner is sophisticated hardware used to solve complex mathematical issues while participating in cryptocurrency transactions. Cryptocurrency is a medium of exchange for value through a computer network.

8.    Bobs Limited paid the $1,548,000 in three amounts. The vendor was, on at least two occasions if not three, guilty of fraud in connection with the sale of the 300 MinerVa MV7 100TH and as a result of the fraud, section 14 of the purchase contract has no application.

9.    Bobs Limited paid $186,821.23 to Tyler Young. Tyler Young was acting as an agent of the vendor, Compute North LL. But Tyler Young acted on its behalf, Bobs Limited would not have even known of the existence of the True North corporations and would not have entered into an agreement with Compute North LLC to purchase 300 MinerVa MV7 100TH, made the subsequent payments to that organization, paid Tyler Young, or paid Joseph Toth, another agent involved in the transaction, the sum of C$50,000.

10.    The vendor, Compute North LLC., acknowledged receipt of payment.

11.    In addition to suffering the loss of any and all amounts paid to the said parties, Bobs Limited suffered known and projected losses.

12.    The two amounts of losses from not being able to mine bitcoin are a known amount and a projected amount. These two amounts merit different legal considerations.

13.    Bobs Limited is additionally entitled to a claim for $641,025.20 for the Immersion Tank that it purchased to house and mine the 300 MinerVa MV7 100TH. Due to Compute North's breach, the Immersion Tank is of no value to Bobs Limited not having the 300 MinerVa MV7 100THs to mine.

14.    The significant investment equates with significant known and projected losses.

## ARGUMENT

15.    The anticipated issues for consideration by this Honorable Court are:

a.    The evidence of Bobs Limited, Matthew Merchant on behalf of Bobs Limited, is uncontradicted and ought to be accepted by the Court as uncontested;

b.    Compute North LLC, was not an agent, but the seller or vendor from which Bobs Limited purchased 300 MinerVa MV7 100TH miners;

c.    Compute North LLC and Bobs Limited entered into a written agreement which was replaced by an oral agreement between them for a price increased by 15% and the terms of that agreement were simply that the delivery of 300 MinerVa MV7 100TH miners would be effected quickly and Bobs Limited would pay $193,500 (15% more) in addition to the sums previously paid.  There were no terms to this agreement which was oral other than the purchase of 300 MinerVa MV7 100TH miners.  Compute North LLC and Bobs Limited entered into a second oral agreement between them for a price now increased by $64,500 (another 5%), and the terms of that oral agreement, like the oral agreement it replaced, were simply that the delivery of 300 MinerVa MV7 100TH miners would imminently be delivered and Bobs Limited would no longer engage Compute North LLC for hosting.

d.    In the alternative, the limitation of liability of Compute North LLC renders the written agreement akin to an agreement without consideration, thereby voiding the written agreement.

e.    In the further alternative if cause of action of fraud by Compute North LLC is found, it would render section 14 of the written agreement unenforceable;

f.    In the further alternative on a public policy basis, section 14 of the written agreement should be held to be unenforceable;

g.      Bobs Limited was introduced to, and dealt with, Compute North LLC through the agent of Compute North LLC, Tyler Young;

h.      Bobs Limited through Tara International Enterprises Ltd. provided consideration for the construction of cooling technology, and subsequently suffered losses;

i.      The losses suffered by Bobs Limited from the subsequent and unforeseen circumstances of Compute North LLC's failure to deliver pursuant to the oral contract between the parties are known and calculable;

***Issue (a): The evidence of Bobs Limited, Matthew Merchant on behalf of Bobs Limited, is uncontradicted and ought to be accepted by the Court as uncontested***

16.      Facing an acknowledgment by his client of the payments of $1,290,000, and $193,500, and $64,500, the Defendant's counsel made a tactical decision not to question the representative of Bobs Limited.

17.      Before this Honourable Court is the uncontradicted evidence of Matthew Merchant, a practicing member of the Law Society of Alberta, and documentary evidence entirely consistent with the testimony of Matthew Merchant.

18.      Uncontradicted evidence is distinguishable from uncontested evidence.

19.      Where there is no other evidence in the record that causes the Court to disbelieve the uncontroverted evidence, the Court will accept it as uncontested. *Vide Olson v. Hoffman*, No. 26779, 175 Minn. 287, 221 N.W. 10 (1928) p. 11.[1]

20.      Uncontested evidence, as a matter of law, is presumptively true.  Absent other exceptions or improbability – as in this case – the uncontradicted evidence ought to guide the Court's decision.  *Quock Ting v United States*, No. 638, 140 U.S. 417 (1891).[2]

[1] "…Such testimony can be rejected only when doubt is cast upon its truthfulness by contradictory or discrediting facts and circumstances…"

21.    Matthew Merchant's evidence is "clear, unequivocal, uncontradicted, and unimpeached". *Texas Co. v. Hood*, No. 11792 (161 F.2d 618 (5th Cir. 1947)) p. 619.  See also *Olson v. Hoffman*, No. 26779, 175 Minn. 287, 221 N.W. 10 (1928) p. 11[3] and may not be rejected.

22.    His uncontested evidence is admissible and relevant, and ought to be accepted by this Honourable Court. *In re Pettit*, No. 06-22-00043-CV (Tex. App. Mar. 2, 2023) p, 2. *In re: Nina White-Robinson*, No. 14–10525 (Tex. App. Feb. 6, 2015).[4]

**Issue (b): Compute North LLC was not an agent, but the seller or vendor from which Bobs Limited purchased 300 MinerVa MV7 100TH miners**

23.    The questions posed in writing by Compute North LLC's counsel imply an intention to argue that it was only a broker for the purchase of the 300 MinerVa MV7 100THs.  Such a proposition is untenable.

24.    Through further information and questioning, it is now evident that Compute North LLC intended to purchase the 300 MinerVa MV7 100THs either from a True North corporation or directly from MinerVa Semiconductor Corp., a Chinese-based company that also operates from Calgary, Alberta.

25.    For clarity, a True North corporation, in these submissions, refers to True North Data Solutions Ltd. in Alberta, True North Data Solutions (U.S.) Inc. in Delaware, TNDS US Corp. in Delaware, TNDS US Corp. in Texas, West Texas Digital Mining LLC in Delaware, West Texas Digital Mining LLC in Texas, WTDM OZB LLC in Delaware, WTDM OZB LLC in Texas, Oversight Holdings Corporation in Delaware, or Oversight Holdings, Inc. in Texas (operating

---

[2] "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by anyone, should control the decision of the court; but that rule admits of many exceptions..."

[3] "...But these general rules are subject to another well-established rule, namely, that clear, positive, direct, and undisputed testimony, not improbable or contradictory, given by an unimpeached witness, cannot be rejected or disregarded by either court or jury, unless the evidence discloses facts and circumstances which furnish a reasonable ground for so doing…"

[4] "...We review only for abuse of discretion, and we hold that the bankruptcy court did not abuse its discretion. There was ample, uncontested evidence that the Sanctions Orders were in effect and that Garrett knew of them and did not pay them…"

from Vancouver, British Columbia).  In the Debtor's representative's interrogatories, it seemed only to be aware of True North Data Solutions (U.S.) Inc.

26.     It remains unknown to Bobs Limited what the respective functions of such corporations are or have been.  It remains unknown to Bobs Limited what the distribution of functions among the True North corporations.  With respect to any facts established on the record, it remains unknown to Bobs Limited which True North corporations performed certain functions at the behest of Peter Allard.

27.     The questions as answered, on the record, by Peter Allard – who is associated with the True North corporations in various yet material ways – did not establish a chain of purchase and sale or reselling.  No-one from Bobs Limited has at any time been privy to the details of a chain of purchase or supply.  Bobs Limited was not even aware of the existence of the True North Corporations until after it had entered into the first oral agreement with Compute North LLC. Regardless, the source of supply for Compute North LLC was irrelevant to Bobs Limited and is irrelevant to the obligation of delivery of Compute North LLC under its written agreement with Bobs Limited and under its replacement oral agreements with Bobs Limited.

28.     Compute North LLC, has not adduced evidence or satisfied the onus of establishing a chain of purchase for purposes of, in turn establishing agency, nor could such evidence be adduced because no such evidence exists.  There was no agency.  Bobs Limited was buying from Compute North LLC.

29.     It is now evident that a True North corporation – but Compute North LLC's counsel failed to enquire as to which one, and therefore such details remain undisclosed – was a North American distributor for MinerVa Semiconductor Corp.  But Bobs Limited knew nothing of this at the time of the written or oral replacement agreements.  And there was never an agreement that Bobs Limited was purchasing from known or unknown principle.

30.     The answers of Peter Allard indicate that he was unaware of the amount of money received by a True North corporation to sell or arrange the sale of 300 MinerVa MV7 100THs to Compute North LLC.

31.     It remains unknown whether a True North corporation received $1,290,000 or less.

32.     However, it appears apparent that the (alternatively) fraudulent 15% addition, in an amount of $193,500 and the later fraudulent 5% addition in an amount of $64,500 break fee, were not paid in whole or in part to whichever True North corporation received payment from Compute North LLC in connection with the purchase by Bobs Limited from Compute North LLC.

33.     Counsel appears to advance that Compute North LLC was merely a broker between Bobs Limited and a yet unidentified True North corporation.   The proposition is without any evidentiary support and contrary to the evidence of Bobs Limited.

34.     When Bobs Limited initially engaged in initial negotiations with Compute North LLC through the agent of Compute North LLC and then directly, it was unaware of the existence of any of the True North corporations. Cryptocurrency miners are usually hosted by companies who manage the mining operation for owners of the miners.   As this Court is aware or may take judicial notice of: Compute North was one of the largest operators of crypto-mining data centers. It was only later that Bobs Limited elected to change the hosting of the 300 MinerVa MV7 100THs from Compute North to a True North corporation.

35.     The amount of $64,500 paid to Compute North LLC was a fee paid for entering into an agreement that the 300 MinerVa MV7 100THs would not be mined by the Compute North LLC. It was a *bona fide* fee for the termination of a hosting arrangement.

***Issue (c): Compute North LLC and Bobs Limited entered into a written agreement which was replaced by an oral agreement between them for a price increased by 15% and the terms of that agreement were simply that the delivery of 300 MinerVa MV7 100TH miners would be***

*effected quickly and Bobs Limited would pay $193,500 (15% more) in addition to the sums previously paid. There were no terms to this agreement which was oral other than the purchase of 300 MinerVa MV7 100ᵀᴴ miners. Compute North LLC and Bobs Limited entered into a second oral agreement between them for a price now increased by $64,500 (another 5%), and the terms of that oral agreement, like the oral agreement it replaced, were simply that the delivery of 300 MinerVa MV7 100TH miners would imminently be delivered and Bobs Limited would no longer engage Compute North LLC for hosting. The Hosting Agreement with Compute North LLC was terminated.*

36.    The written agreement between Bobs Limited and Compute North LLC was superseded and replaced by a new agreement when Compute North LLC unilaterally changed an essential element, viz. the amount payable by Bobs Limited to Compute North LLC and requested more payment for the same products.

37.    Specifically, increased performance by Bobs Limited was pursuant to a new oral agreement in that:

    a.    Compute North LLC made a new offer to Bobs Limited;

    b.    Bobs Limited accepted such new offer in strict compliance with the terms of the new offer;

    c.    Bobs Limited provided consideration to Compute North LLC;

    d.    There was consensus ad idem between Bobs Limited and Compute North LLC (even though, as later determined, Compute North LLC had acted dishonestly towards Bobs Limited);

    e.    It was the intent of Bobs Limited and Compute North LLC that the new agreement be mutually binding. That oral agreement between Bobs Limited and Compute North LLC was superseded and replaced once again by a new agreement when

Compute North LLC unilaterally required an additional 15% and the amount payable by Bobs Limited was increased.

*Baylor Univ. v. Sonnichsen*, No. 04-0851, 221 S.W.3d (Tex. 2007) p. 635;[5]   *Arshad v. Am. Express Bank, FSB*, No. 14-17-00676-CV, 580 S.W.3d (Tex. App. 2019) p. 804;[6] *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, No. 14–10–00604–CV, 393 S.W.3d (Tex. App. 2012) p. 449.[7]

38.    That oral agreement between Bobs Limited and Compute North LLC was superseded and replaced once again by a new agreement when Compute North LLC unilaterally required an additional 5% and the amount payable by Bobs Limited was increased.

39.    That new agreements were concluded, rather than the amendment of the previous offer, is *inter alia* evident from the absence of consideration for the amendments, but rather further consideration for the same products.  *Pointe W. Ctr.*, No. 01–14–00779–CV, 476 S.W.3d (Tex. App. 2015) p.152.[8]  Therefore, the written agreement is not relevant.

---

[5] "Contracts require mutual assent to be enforceable. See *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind. See *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist] 2000, no pet.) (citing *Hallmark v. Hand*, 885 S.W.2d 471, 476 (Tex.App.-El Paso 1994, writ denied), for the proposition that one of the elements generally required to create an enforceable contract is "[e]xecution and delivery of the contract with an intent that it become mutual and binding on both parties")."

[6] "To prove the existence of a valid contract, a plaintiff must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to the those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)."

[7] "To create an enforceable contract, there must be (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. See *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex.App.-Houston [14th Dist.] 2010, pet. denied). "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. See *Potcinske v. McDonald Property Investments, Ltd.*, 245 S.W.3d 526, 530 (Tex.App.-Houston [1st Dist.] 2007, no pet.) Mutual assent concerning material, essential terms is a prerequisite to formation of a binding contract. See *id*."

[8] "A contract modification must satisfy all the essential elements of a contract. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex.1986). There must be both a meeting of the minds and new consideration to support the modification. *Id*."

40.     Fundamentally, Compute North LLC breached the new agreement with Bobs Limited by way of non-performance despite significant consideration by Bobs Limited.   The elements of breach of contract are evident from the evidence:

      a.      A valid and enforceable contract existed between the parties;

      b.      Bobs Limited performed under the contract;

      c.      Compute North LLC failed to perform under the contract; and

      d.      Bobs Limited's damages resulted from the breach.

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.,* No. 18-0186 574 S.W.3d (Tex. 2019) p. 890;[9] *S & S Emergency Training Solutions, Inc. v. Elliot,* No. 17-0628, 564 S.W.3d (Tex. 2018) p. 847;[10] *E-Learning, LLC v. AT&T Corp.,* No. 04–16–00291–CV517, S.W.3d 849, 858 (Tex. App. 2017).[11]

***Issue (d): In the alternative, the limitation of liability of Compute North LLC renders the written agreement akin to an agreement without consideration, thereby voiding the written agreement.***

41.     Compute North LLC's advances that pursuant to section 14.3, Compute North LLC may never be required to repay any of the money it has received, pay for any of the damage it has caused or deliver the miners.   This position is so egregious that the essence of their submission is that section 14 of the written agreement relieves them of any liability no matter what they do.

---

[9] "Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach."

[10] "See *USAA Tex. Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 501 n.21 (Tex. 2018) (a breach of contract action requires proof of four elements: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) "the plaintiff sustained damages as a result of the breach")."

[11] "To prevail on its breach of contract claim, BDG had to prove (1) the existence of a valid, enforceable contract between the parties; (2) that BDG performed or tendered performance on that contract; (3) that AT & T breached the contract; and (4) that BDG sustained damages as a result of the breach. See *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.,* 468 S.W.3d 557, 573 (Tex. App.–San Antonio 2014, pet. denied); *Richter v. Wagner Oil Co.,* 90 S.W.3d 890, 898 (Tex. App.–San Antonio 2002, no pet.)."

However, the consequence of such an interpretation would be that the written agreement was executed on the condition that the doctrine of consideration did not apply with respect to Compute North LLC towards Bobs Limited. That interpretation would be that Compute North LLC had no binding obligations whatsoever. If it breaches the agreement, it is not obligated for consequential damages or even damages from the loss of the $1,548,000 paid to it. This attempted interpretation would mean that Bobs Limited received nothing in consideration of the agreement.

42.     The doctrine of consideration remains a central part of contract law. *Fed. Sign v. Tex. S. Univ.*, No. 94-1317, 951 S.W.2d (Tex. 1997).[12]  It is included in the Second Restatement of Contracts. It is included in *Tex. Bus. & Com. Code* § 2.205.[13]  Therefore, the written agreement was at all material times lacking, void, and unenforceable as a "firm offer". *Vide Tex. Bus. & Com. Code* § 3.303.[14]

43.     A contract with consideration consists of the benefits and detriments agreed to. *Roark v. Stallworth Oil & Gas, Inc.*, No. D-0333, 813 S.W.2d 492, 496 (Tex.1991).[15]   Without consideration, it does not fail as to its elements, but is a contractual failure *per se*.

---

[12] "A contract must be based upon a valid consideration, in other words, mutuality of obligation. See *Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970); Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 458 (1943); *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101, 1105 (1923). Consideration is a bargained for exchange of promises. *Roark v. Stallworth  Oil Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Consideration consists of benefits and detriments to the contracting parties. *Roark*, 813 S.W.2d at 496. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. *Roark,* 813 S.W.2d at 496. A contract that lacks consideration, lacks mutuality of obligation and is unenforceable. See *Texas Farm Bureau*, 253 S.W. 1101 at 1105."

[13] "FIRM OFFERS.  An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time, but in no event may such period of irrevocability exceed three months;  but any such term of assurance on a form supplied by the offeree must be separately signed by the offeror."

[14] "(b) "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in Subsection (a), the instrument is also issued for consideration."

[15] "Consideration is a present exchange bargained for in return for a promise. *Connell v. Provident Life Accident Ins. Co.*, 148 Tex. 311, 314-15, 224 S.W.2d 194, 196 (1949). It consists of either a benefit to the promisor or a detriment to the promisee. See, e.g., *Tripp Village Joint Venture v. MBank Lincoln Centre*, 774 S.W.2d 746, 749 (Tex.App. — Dallas 1989, writ denied). The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment. See *Broadnax v. Ledbetter*, 100 Tex. 375, 378, 99 S.W. 1111, 1112 (1907)."

44.     To enforce section 14 is to enforce a contract, which has not only been superseded, but that lacks mutuality, enforceability [*Fed. Sign*, No. 94-1317, 951 S.W.2d (Tex. 1997) p. 409],[16] and induced Bobs Limited to entertain obligations without a binding expectation of receiving a return.   Lack of consideration is an appropriate defence.   *Doncaster v. Hernaiz*, No. 04-04-00324-CV, 161 S.W.3d (Tex. App. 2005).[17]

45.     The evidence supports the rebuttal of the doctrine of consideration.   *Edlund v. Bounds*, No. 05-90-00085-CV, 842 S.W.2d 719, 724 (Tex. App. 1992).   Compute North LLC contracting out of its willingness to perform is a material mark on the validity of the written agreement, although we contend it had been superseded.

***Issue (e): In the further alternative if cause of action of fraud by Compute North LLC is found, it would render section 14 of the written agreement unenforceable***

46.     Section 14 of the written agreement between Bobs Limited and Compute North LLC stipulates a limitation of liability of the latter.   Even if this section is somehow found to be actionable and not replaced by the two oral contracts, pursuant to section 14.3, Compute North LLC is liable to Bobs Limited for a return of the consideration paid to it.   Any reasonable reading of that section, if it were enforceable, still requires return of the consideration paid to it for which it did not effect a delivery.   However, from the interrogatories, it appears the Defendant's counsel intends to argue that this section means there is no liability even to repay sums acknowledged by Compute North LLC.

47.     Should this Honorable Court not find that a new contract[s] was concluded, then, in the alternative, Bobs Limited relies on the cause of action or wrong of fraudulent misrepresentation/civil fraud.

---

[16] "…Consideration consists of benefits and detriments to the contracting parties. *Roark*, 813 S.W.2d at 496…"
[17] "…Laches, lack of consideration, and estoppel are all affirmative defenses to a suit on a note. TEX.R. CIV. P. 94…"

48.     Compute North LLC made a material misrepresentation to Bobs Limited.  *Bates Energy Oil & Gas* p. 660.[18]

49.     Therefore, the agreement is voidable at the instance of Bobs Limited, which has exercised that right so as to receive relief accordingly.  *Duick v Toyota Motor Sales*, No. B224839 p. 5.[19]

50.     Alternatively, the agreement is *void ab initio* in circumstances of fraud in inception. *Duick* p. 5.[20]

51.     In addition to the submissions under the afore-mentioned issue in this brief of law, the dealings by Bobs Limited with Compute North LLC were with Ro Shirole.

52.     It was at all material times the understanding of Bobs Limited, and held out by Compute North LLC to be the case, that Ro Shirole was acting on behalf of Compute North LLCwith the appropriate authority to do so.

---

[18] "Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations. These are separate causes of action, but they share the same elements, which are: (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury. *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017). However, to state a claim of fraudulent inducement, the plaintiff must also prove the existence of a contract. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)."

[19] "Fraud in the inducement, by contrast, occurs when _ "'the promisor knows what he is signing but his consent is inducedby fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. In order to escape from its obligations the aggrieved party must rescind....¹' [Citation.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 [hereafter *Rosenthal*].) —[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law.  If the entire contract is *void ab initio* because of fraud, the parties have not agreed to arbitrate any controversy ...." (*Id.*at p. 416.)"

[20] "Fraud in the inception will render a contract "wholly void, despite the parties' apparent assent to it, when, ─without negligence on his part, a signer attaches his signature to a paper assuming it to be a paper of a different character.¹' [Citations.]" (*Rosenthal, supra*, 14 Cal.4th at p. 420.)  Thus, "[i]f a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has a reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent."  (Rest.2d Contracts, §163; see also *Rosenthal, supra*, 14 Cal.4th at pp. 420, 423–424, 428–429 [quoting with approval and applying the Restatement doctrine]; *Jones v. Adams Financial Services* (1999) 71 Cal.App.4th 831, 837–838; *Larian v. Larian* (2004) 123 Cal.App.4th 751, 762–763; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §301, pp. 328–329.)".

53.     The Court will see from the email correspondence in the evidence, and as has been heard through the evidence of Matthew Merchant, of the repeated fraudulent promises of imminent delivery:

    a.      Compute North LLC made (a) factual and material representation(s) to Bobs Limited;

    b.      Compute North LLC made the representation(s) to Bobs Limited:

        i.      with knowledge of its/their falsity; or

        ii.      recklessly as (a) positive assertions without knowledge of its/their truth;

    c.      Compute North LLC intended for Bobs Limited to act on the representation(s) or to induce Bobs Limited's reliance on the representation(s);

    d.      Bobs Limited reasonably and justifiably relied on the representation(s); and

    e.      Bobs Limited suffered damages or injury as a result.

*Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, No. 17-0666, 573 S.W.3d (Tex. 2019) p. 228;[21] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, NO. 17-0578, 572 S.W.3d (Tex. 2019) p. 219-220;[22]   *Anderson v. Durant*, NO. 16–0842, 550 S.W.3d (Tex. 2018) p. 614;[23]

---

[21] "Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. Id. In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. See *id.*"

[22] "Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, No. 17-0332, 590 S.W.3d (Tex. 2019) p. 496-497;[24] *Mercedes-Benz USA, LLC v. Carduco, Inc.*, No. 16-0644, 583 S.W.3d (Tex. 2019).[25] *Vide Bates Energy Oil & Gas v. Complete Oilfield Servs.*, SA-17-CV-808-XR, 361 F. Supp. 3d 633 (W.D. Tex. 2019) p. 649 fn. 4.[26]

**Issue (f):  *In the further alternative on a public policy basis, section 14 of the written agreement should be held to be unenforceable***

54.      This is not an issue of case authority but societal fairness.

---

the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. See *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (explaining that there must be a duty to disclose); *Wise v. SR Dall, LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (listing the elements for fraud by non-disclosure (citing *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ) )."

[23] "Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury. Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof."

[24] "To establish fraud, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) "the defendant intended to induce the plaintiff to act upon the representation;" and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *Orca Assets G.P., L.L.C.*, 546 S.W.3d at 653 (citing *Ernst & Young, L.L.P v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001) ); see also *Anderson v. Durant* , 550 S.W.3d 605, 614 (Tex. 2018) (citations omitted). A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision. See *Italian Cowboy Partners*, 341 S.W.3d at 337 (citations omitted). The representation may be material even if it was not the only factor inducing the plaintiffs to make the decision or enter into the transaction, but the plaintiff must have relied on the misrepresentation. See *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727–28 (Tex. App.—Waco 1998, pet. denied) (citations omitted). A representation is false if it consists of words or other conduct that suggest to the plaintiff that a fact is true when it is not. See *Custom Leasing, Inc. v. Tex. Bank & Tr. Co.* , 516 S.W.2d 138, 142 (Tex. 1974) (citation omitted). To establish the fourth element, "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Orca Assets*, 546 S.W.3d at 653 (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ). Only the fourth element is at issue in this appeal.

[25] "The elements of a claim for fraudulent inducement are "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Id*. The contracts here are Carduco's Dealer Agreement with MEUSA and its agreement to purchase the assets of Rene Cardenas's Autoplex dealership."

[26] "Under Texas law, the elements of common-law fraud are (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury. *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017)."

55.     If somehow the proposition of Compute North LLC could be read into section 14.3, that because of that section, the vendor having received the money could, for any reason, not deliver 300 MinerVa MV7 100THs, or anything, and not even be liable for the funds directly paid to it, this kind of clause and contract is perverse and contrary to hundreds of years of principles related to contractual law.

56.     That is not what the parties can have intended but if such an interpretation were granted, then the clause should be struck as contrary to public policy.  Such clauses by category should be held unenforceable.

***Issue (g): Bobs Limited was introduced to, and dealt with, Compute North LLC through the agent of Compute North LLC, Tyler Young***

57.     Tyler Young did at all material times act as an agent on behalf of Compute North LLC`. Tyler Young introduced Bobs Limited to Compute North and many aspects of the dealings occurred through Tyler Young.

58.     Tyler Young represented to Matthew Merchant, and such disclosure was to Matthew Merchant in his capacity on behalf of Bobs Limited, that he spoke for and represented Compute North.  To the knowledge of Bobs Limited, Tyler Young was not acting for an undisclosed principal so as to render him liable.  *Contra Howell v. Smith*, N. 315, 134 S.E.2d 381 (1964).[27] To the knowledge of Bobs Limited, Tyler Young had authority on behalf of Compute North, whatever the nature of such authority may have been, which in turn is unknown to Bobs Limited. *Wiggins v. Barrett & Associates*, No. 37187, 669 P.2d 1132 (1983).[28]

---

[27] "An agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowledge of the agency and of the principal's identity…"

[28] "Actual authority to act for another may be either express or implied. Express authority, of course, is just what it says. It is that authority which the principal confers upon the agent in express terms. The express authority given to an agent to do a certain thing carries with it the implied authority to do such other things as are reasonably necessary for carrying out the given task. See, e.g., *Beeson et al. v. Hegstad et al.*, 199 Or. 325, 330, 261 P.2d 381 (1953)… Apparent authority is to be distinguished from implied authority. Implied authority is such as the principal actually intends his agent to have, although that intention is to be discerned only from the nature of the task or from the acts and conduct of the principal from which the grant of power may be inferred even though not expressed. If implied authority exists there is no need to consider whether the principal has held out the agent as having certain authority. The principal will be bound to a third person by the act of the agent within his implied authority even if the third person was unaware at the time of the act that the agent's authority was only implied."

59.     But for Tyler Young acting as an agent for Compute North LLC, the necessary and sufficient introduction to Compute North LLC would not have occurred, and consequently the said sale would not have occurred so as to cause Bobs Limited to pay to Compute North $1,548,000 for the 300 MinerVa MV7 100THs.

***Issue (h): Bobs Limited through Tara International Enterprises Ltd. provided consideration for the construction of cooling technology, and subsequently suffered losses***

60.     Tara International Enterprises Ltd. is a wholly owned flow through subsidiary of Bobs Limited.

61.     Bobs Limited has suffered a loss in the amount $641,025.20 mentioned above, with respect to the purchase of an immersion tank for purposes of cooling and thereby overclocking the 300 MinerVa MV7 100TH miners.

62.     The immersion tank was at all times designed, constructed, and intended for purposes of hosting the said 300 MinerVa MV7 100THs.

63.     The evidence regarding the loss in this respect is undisputed and indisputable.

***Issue (i): The losses suffered by Bobs Limited from the subsequent and unforeseen circumstances of Compute North LLC's failure to deliver pursuant to the oral contract between the parties are known and calculable***

64.     Determining profit from cryptocurrency mining, and particularly Bitcoin mining, is quantifiably provable with a high degree of certainty.  The degree of mining difficulty, and all the parameters to determine the Bitcoin that would have been mined, are published within the industry.

65.     Therefore, based on the evidence adduced by Bobs Limited, this Honorable Court will be able to confirm and thereby justify the losses suffered by Bobs Limited.

66.     Bobs Limited suffered losses, as indicated above, being the difference between the expenses incurred and the total amount of losses suffered that are the subject of the total damages claim.

67.     Bobs limited will continue to suffer losses from the wrongdoing of Compute North LLC based on its lack of performance and the circumstances of its unlawful conduct.

68.     Both these amounts ought to be a part of the judgment in favour of Bobs Limited. Though there may be a qualitative difference, in bankruptcy considerations, between known losses and projected losses.

69.     The evidence shows known losses of $2,883,374 until September 1st, 2023 and projected losses of $155,325.43 since September 1st, 2023.

### SUMMARY & CONCLUSION

70.     The $6,500,000 losses of Bobs Limited are as follows:

| | |
|---|---|
| $1,290,000 | 300 MinerVa MV7 100TH Purchase |
| $ 193,500 | 300 MinerVa MV7 100TH Fraudulent up charges (15% more) |
| $ 64,500 | 300 MinerVa MV7 100TH Fraudulent charge to mine elsewhere |
| $ 186,821 | Tyler Young – agent fee to arrange purchase |
| $ 37,984 | Joseph Toth – agent fee $50,000 CAD |
| $ 641,025 | Purchase price of the Immersion Tank made without value |
| $2,883,374 | Known losses to September 1, 2023 |
| $ 155,325 | Projected losses beyond September 1, 2023 |
| $5,452,529 | |

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**, this 11th day of September, 2023.

HooverSlovacek LLP

Per: _____
Steven Leyh
Counsel for the Applicant
Bobs Limited

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**, this 11th day of September, 2023.

Merchant Law Group LLP

Per: _____
E.F. Anthony Merchant, KC
Counsel for the Applicant
Bobs Limited

## CERTIFICATE OF SERVICE

I certify that on September 11, 2023, a copy of the foregoing document was served electronically on the Electronic Case Filing System of the U.S. Bankruptcy Court for the Southern District of Texas.

*/s/ Steven A. Leyh*
Steven A. Leyh