IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | Case No. 22-90273 (MI) |
| | (Jointly Administered) |
| Debtors.[1] | |

**PLAN ADMINISTRATOR'S AMENDED OBJECTION TO
CLAIM NO. 14 OF BOBS LIMITED**

Tribolet Advisors LLC, in its capacity as Plan Administrator ("Plan Administrator") in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby files this *Amended Objection to Claim No. 14 of Bobs Limited* (the "Objection"), and respectfully states as follows in support thereof:

**CASE BACKGROUND AND PROCEDURAL HISTORY**

1. On September 22, 2022 (the "Petition Date"), each of the above-captioned debtors

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

(the "Debtors" and, as of the effective date of the Plan, the "Reorganized Debtors") commenced a chapter 11 case by filing a voluntary petition for relief in this Court under title 11 of the United States Code (the "Bankruptcy Code").

2. On November 8, 2022, Bobs Limited (the "Claimant") filed proof of claim number 14 (the "Proof of Claim"), asserting a general unsecured claim in the amount of $6,367,067 (the "Claim"). The Proof of Claim assets that Claimant is entitled to reimbursement of deposit money and other fees paid under a Master Agreement and Order Form dated February 19, 2021, in addition to a substantial amount for alleged loss of earnings, in connection with the Debtors' failure to deliver certain cryptocurrency mining equipment to Claimant.

3. On January 20, 2023, the Debtors objected to the Claim by filing the *Debtors' Objection to Claim No. 14 of Bobs Limited*.

4. On February 16, 2023, the Court entered an order confirming the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* (the "Confirmation Order" and "Plan", respectively).[2]

5. The effective date of the Plan (the "Effective Date") occurred on March 31, 2023.[3]

6. The Plan Administrator is governed by the Amended Plan Administrator Agreement (the "Plan Administrator Agreement").[4] Pursuant to the Plan, Confirmation Order, and Plan Administrator Agreement, the Plan Administrator is tasked with, among other things: (1) serving as the sole manager, director, and officer of the Reorganized Debtors as of the Effective Date; (2) implementing the Plan and any applicable orders of the Court; and (3) reconciling and

---

[2] Docket No. 1019.
[3] Docket No. 1082.
[4] Exhibit E to Docket No. 1079.

resolving claims asserted against the Reorganized Debtors' estates.[5]

7. The Plan Administrator, its counsel, professional advisors and consultants, including but not limited to Grant Thornton LLP ("Grant Thornton" and collectively, the "Reviewing Parties") are diligently reviewing the claims filed in the Bankruptcy Cases, including the Proof of Claim, the claims register, the Debtors' books and records, and the supporting documentation provided by the Claimant, if any.

8. On September 11, 2023, the Court commenced an evidentiary hearing on the objection to claim. At the hearing, the Court instructed the Plan Administrator to file an amended objection to claim that conforms with the evidence, with supporting declaration by the Plan Administrator, and directing Claimant to file a response within seven days of filing.[6]

9. The Plan Administrator objects to the Claim because Claimant is barred from recovering the purchase price for the ordered equipment as well as any consequential damages, including lost profits, under the express language of the Parties' contract.

10. In support of this Objection, the Plan Administrator submits the *Declaration of Michael Tribolet, Managing Member of Tribolet Advisors LLC, in Support of the Amended Objection to Claim No. 14 of Bobs Limited by Plan Administrator* (the "Tribolet Declaration"), attached hereto as **Exhibit A**.[7]

### JURISDICTION AND VENUE

11. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant

---

[5] Plan §§ 4.2.5, 7.3; Confirmation Order ¶¶ 53, 88; Plan Administrator Agreement § 1.3.

[6] *See* Courtroom Minutes at Docket No. 1264.

[7] Citations in this Objection to the Tribolet Declaration are made by reference to paragraph number or Exhibit number and follow the format "Tribolet Decl. at ¶ ___".

to 28 U.S.C. § 157(b). The Plan Administrator confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

A.  The Master Agreement and Order Form Between the Debtors and Claimant

12. In support of its Proof of Claim, the Claimant relies on a Master Agreement dated February 19, 2021 and accompanying Order Form.[8] According to the Master Agreement and Order Form, Claimant ordered approximately 300 Minerva mining units (the "Equipment") from the Debtors at an initial purchase price of $1,290,000.

13. According to the Debtors' bank statements and bank register, a total of $1,289,935 was paid toward the Claimant's initial purchase price under the Master Agreement and Order Form. Specifically, the Debtors received approximately 80% of the initial purchase price in February 2021 in the form of four payments in the combined amount of $1,031,950. An additional payment of $257,985 was received in April 2021.[9]

B. The Equipment Purchase Agreement Between the Debtors and True North Data Solutions (U.S.), Inc.

14. On or about February 19, 2021, the Debtors entered into an Equipment Purchase Agreement (the "True North Purchase Agreement") with a third party supplier, True North Data Solutions (U.S.), Inc. ("True North"), placing an order for approximately 600 units of Minerva mining equipment.[10]

---

[8]  *See* attachment to Proof of Claim; Exhibit 1 to Tribolet Decl.
[9]  Tribolet Decl. at ¶¶ 6, 7.
[10] Tribolet Decl. a ¶ 8.

15. The Debtors intended to use a portion of the equipment (300 miners) they ordered from True North to fulfill Claimant's order for the Equipment under the Master Agreement and Order Form.[11]

16. The Debtors paid True North in full in accordance with the True North Purchase Agreement, including a subsequent price increase.

17. The initial purchase price for the 600 miners ordered from True North was $2,460,000. The True North Purchase Agreement provided for payment of 80% of the purchase price ($1,968,000) at the time of signing with the remaining 20% balance ($492,000) due prior to shipment.[12]

18. The Debtors paid 80% of the purchase price under the True North Purchase Agreement in February 2021.[13]

19. In May 2021, True North informed the Debtors that it was retroactively applying a 15% price increase for the mining equipment. The price increase resulted in an additional $369,000 owed by the Debtors for the equipment ordered under the True North Purchase Agreement.[14]

20. As a result of the price increase, True North issued a revised invoice to the Debtors. The invoice reflected the Debtors' outstanding balance due to True North under the True North Purchase Agreement, after crediting the $1,968,000 deposit amount, in the sum of $861,000, which

---

[11] Tribolet Decl. at ¶ 9.
[12] Tribolet Decl. at ¶ 10.
[13] Tribolet Decl. at ¶ 11.
[14] Tribolet Decl. at ¶ 12.

balance was comprised of the remaining original 20% balance of $492,000, plus the 15% increase of $369,000.[15]

21. The Debtors paid True North this $861,000 outstanding balance in the form of (i) a $820,000 deposit applied from a cancelled order that True North had been obligated to refund to the Debtors and (ii) $41,000 paid to True North in November 2021.[16]

C. Claimant's Obligation to Pay the 15% Price Increase

22. The Debtors passed True North's 15% price increase onto their customers, including Claimant. However, the Debtors' books and records are unclear as to whether Claimant paid this portion of the purchase price for the Equipment. While the Debtors' bank statements and bank register confirm that the Debtors received a payment on or about June 8, 2021 for $193,500 (representing 15% of the $1,290,000 initial purchase price), later internal emails raise the prospect that the Debtors booked this payment incorrectly and that the payment was actually received from a different customer.[17]

D. Claimant Instructs True North and the Debtors to Deliver Equipment to True North

23. According to the True North Purchase Agreement, the Equipment was originally intended to be delivered to the Debtors' facility in Kearney, Nebraska, where the Debtors could provide colocation and hosting services for the Equipment in accordance with the Master Agreement. In August 2021, Claimant instructed that the Equipment should be delivered to a non-debtor address in Calgary, Alberta, rather than a Debtor facility.[18]

---

[15] Tribolet Decl. at ¶ 13.

[16] Tribolet Decl. at ¶ 14; Exhibit 3 to Tribolet Decl.

[17] Tribolet Decl. at ¶¶ 16-18.

[18] Tribolet Decl. at ¶ 19.

24. Claimant's Order Form provides for a 5% hardware facilitation fee in the event that Claimant does not enter into a hosting agreement with the Debtors. In connection with its election to re-route the Equipment to a non-debtor facility, Claimant paid the 5% hardware facilitation fee in the sum of $64,500 on August 24, 2021.[19]

25. In November 2021, Claimant sent an email to True North and the Debtors confirming "the transition of the 300 Minervas to True North":[20]

> I confirm and acknowledge and agree to the transition of the 300 Minervas to True North. I confirm that we want the 300 Minerva's which we ordered through Compute North to be sent directly to True North in Alberta from Minerva in China. They should not go to the USA at all but rather should go to True North in Alberta directly from Minerva.

26. In an email dated January 12, 2022, True North's president, Peter Allard, confirmed with Claimant that, as a result of their transition, "[True North] will now be directly responsible for" the Equipment. A copy of the January 12, 2022 email is attached hereto as **Exhibit B**.

E. <u>True North Failed to Obtain the Equipment for Delivery to Claimant</u>

27. Despite Claimant's instruction that True North should arrange for delivery of the Equipment directly to True North's facility, Mr. Allard testified at his deposition that True North was unable to fulfill this obligation. A copy of True North's deposition transcript is attached hereto as **Exhibit C**. According to Mr. Allard, True North placed an order for equipment with the manufacturer, Minerva Semiconductor Corporation, but the manufacturer has failed to deliver the Equipment due to various delays.[21] A copy of True North's purchase agreement with the manufacturer is attached hereto as **Exhibit D**. True North has since undertaken legal proceedings

---

[19] Tribolet Decl. at ¶ 19.

[20] Tribolet Decl. at ¶ 20.

[21] True North Dep. pp. 20:24 – 23:18.

7

in Canada against the manufacturer regarding the manufacturer's failure to deliver equipment.[22]

## ARGUMENT

A. <u>Statutory Basis and Burden of Proof</u>

28. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b) provides that a court "shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that – (1) such claim is unenforceable against the debtor and the property of the debtor . . . ." 11 U.S.C. § 502(b)(1).

29. Bankruptcy Rule 3001(f) states that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). However, a proof of claim loses the presumption of *prima facie* validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that is essential to the claim's legal sufficiency. *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). When such an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of evidence. *Id.* "The ultimate burden of proof always lies with the claimant." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)).

B. <u>Claimant is Contractually Precluded from Recovering the Purchase Price of the Equipment</u>

30. Claimant is not entitled to a claim against the bankruptcy estate for the amount it paid for the Equipment because Claimant waived any such recovery under its contract with the Debtors.

---

[22] True North Dep. pp. 22:22 – 23:11; 26:5 – 27:7.

31. The Order Form expressly states that Compute North "is not responsible and shall have no liability to Customer for . . . manufacturing delays . . . [or] adjustments . . . .." The Order Form goes on to state "If a third-party supplier cancels or otherwise fails to deliver Acquired Equipment, Compute North's sole and exclusive liability to Customer shall be to refund the fees paid by Customer to Compute North for such Acquired Equipment **net of any amounts paid by Compute North** with respect thereto that are not refunded by the third-party supplier." (Emphasis added).[23]

32. In this case, the Debtors ordered and paid True North for the Equipment in full but True North failed to deliver the Equipment. The Debtors even paid the 15% price increase charged by the manufacturer, although it is not clear that Claimant paid this portion of the purchase price to the Debtors. Because Claimant agreed under its contract to limit the Debtors' liability when a third-party supplier fails to deliver the Equipment – the precise situation here -- to the purchase price "net of any amounts paid by Compute North with respect thereto," there is simply no legal basis for Claimant to recover fees it paid to the Debtors for the undelivered Equipment. To the extent Claimant is entitled to any claim, such claim is limited to no more than $68,935, which is the difference between the amount of Claimant's purchase price ($1,483,435 if the $193,500 payment is included) less the Debtors' cost for Equipment ($1,414,500, representing half of the $2,829,000 purchase price paid to True North).

33. Even if Claimant had not agreed under the Order Form to relieve the Debtors from liability where a third party supplier fails to deliver the Equipment, the Master Agreement bars Claimant from recovering the 80% deposit it paid for the Equipment. Specifically, section 6.1 of the Master Agreement instructs that "The Initial Setup Fees and Initial Deposit set forth on the

---

[23] Exhibit 1 to Tribolet Decl.

Order Form and any Hardware Deposit . . . are non-refundable and non-transferrable under any circumstance." Here, the amount of Claimant's deposit was $1,031,950. The Debtors did exactly what they were supposed to do with the deposit money by immediately paying these funds to their supplier, True North, to purchase equipment.[24] Claimant is barred under the Master Agreement from recouping its deposit.

### C. Claimant is Contractually Barred from Recovering Consequential Damages, Including Lost Profits, under the Limitation of Liability Clause

34. The Proof of Claim estimates that Claimant suffered a loss of earnings in the amount of $4,603,282 based on the amount of net revenue it would have generated if it had received the Equipment in June 2021 and operated the Equipment for five years. Claimant additional seeks reimbursement for $224,805 in fees paid to "a representative agent who facilitated the sale." However, consequential damages such as lost profits are expressly barred under the Master Agreement. Section 14 of the Master Agreement contains a limitation of liability clause (the "Limitation of Liability Clause") which states in pertinent part:

> 14.1. Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control. This includes, but is not limited to force majeure, weather, network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or Acts of God. COMPUTE NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.
>
> 14.2. IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING,

---

[24] Tribolet Decl. at ¶ 9; Exhibit 3 to Tribolet Decl.

WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS, INCLUDING, BUT NOT LIMITED TO, THOSE THAT MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF COMPUTE NORTH PURSUANT TO THIS AGREEMENT. COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER IN THE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE EVENT GIVING RISE TO THE CLAIM.

14.3. Remedy. Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the then-current service month. Unless applicable law requires a longer period, any action against Compute North in connection with this Agreement must be commenced within one (1) year after the cause of the action has accrued.

35. Section 16.5 of the Master Agreement also protects the parties from liability for unforeseeable circumstances beyond their control, including liability "for delay, failure in performance, loss or damage due to any of the following fore majeure conditions: . . . . inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing."

36. Based on the plain and unambiguous contractual language limiting liability, Claimant is barred from recovering consequential damages such as lost profits, as well as incidental and other indirect damages.

D. The Master Agreement and Order Form are Enforceable Arms-Length Commercial Agreements and the Debtors' Failure to Deliver Equipment to Claimant was Not Due to Intentional Misconduct.

37. Claimant suggests that the Limitation of Liability Clause should not be enforced as unconscionable. Section 16.6 of the Master Agreement provides that Minnesota law governs interpretation of the Master Agreement. Under Minnesota law, consequential damages exclusions

11

in contracts are both valid and enforceable. *Transport Corp. of America, Inc. v. International Business Machines Corporation, Inc.*, 30 F.3d 953, 960 (8th Cir. 1994) ("An exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law."); *Far East Aluminum Works Co. Ltd. v. Viracon, Inc.*, 27 F.4th 1361, 1366 (8th Cir. 2022) (citing *Int'l Fin. Servs., Inc. v. Franz*, 534 N.W.2d 261, 268-69 (Minn. 1995)) ("When 'two merchants of relatively equal bargaining power' agree to 'allocate the risk of loss' in a contract, it is not the court's job to shift the risk elsewhere."); *Spectro Alloys Corp. v. Fire Brick Engineers Co., Inc.*, 52 F. Supp. 3d 918, 932 (D. Minn. 2014) (enforcing a consequential damages clause to exclude damages for lost profits under contract whose predominant purpose was for services).

38. The Debtors and Claimant are two commercial parties who entered into the Master Agreement and Order Form in an arms-length business transaction. Claimant desired to invest in mining equipment with the prospect of generating revenue from mining cryptocurrency. The Debtors agreed to acquire and provide hosting services for the equipment. The Parties agreed to allocate their risk in accordance with a written contract, including by limiting exposure in the event of delays caused by third parties and by excluding consequential damages as a basis for damages. Claimant cannot seek damages against the Debtors that were expressly waived as part of their agreement.

39. In addition, there is no evidence that the Debtors' failure to fulfill Claimant's order for equipment was the product of bad faith. To the contrary, the Debtors immediately ordered from their supplier the equipment intended to fulfill Claimant's order. Upon receiving Claimant's deposit, the Debtors immediately forwarded funds to their supplier to purchase the equipment. After learning that the supplier was charging an additional 15% for the equipment, the Debtors

paid the price increase although it is unclear if Claimant paid the additional fee to the Debtors. When Claimant elected to have the equipment delivered directly to a True North facility rather than a facility of the Debtors, the Debtors agreed and only charged Claimant the 5% hardware facilitation fee provided for in their contract. In short, the Debtors did what they were obligated to do by ordering and paying for Claimant's equipment consistent with their agreement with Claimant. The failure of True North and/or the manufacturer to deliver equipment to Claimant was beyond their control and not the result of any intentional misconduct on the part of the Debtors.

### E. Claimant's Contention that the Master Agreement and Order Form Were Superseded by Later Oral Contracts Contradicts its Proof of Claim and Minnesota Law

40. In a brief filed with this Court on the same day as the hearing, Claimant asserts that the Master Agreement and Order Form were replaced by later oral contracts providing for price increases and that the Master Agreement and Order Form (including their clauses limiting liability) were superseded or are otherwise "irrelevant". However, nowhere in the Proof of Claim does Claimant make mention of oral contracts or otherwise raise the prospect of an alternative agreement between the parties. In fact, the only agreement referenced in the Proof of Claim is the Master Agreement and Order Form, copies of which are attached to the Proof of Claim and relied upon by Claimant. Putting aside the tenuous nature of its legal argument, Claimant cannot base its Claim on purported oral contracts that were never referenced in, and wholly contradict, its Proof of Claim.

41. In addition, the Master Agreement restricts the ability of the parties to supersede it "except by express written agreement of the parties that specifically identifies this Agreement."[25]

---

[25] Master Agreement, § 16.2.

Section 336.2-209(2) (2022) of the Minnesota Statutes confirms that such clauses are enforceable.[26]

42. Even if an oral modification were authorized under the Master Agreement, Claimant's perceived "oral contract" for the sale of Equipment would be unenforceable under UCC Article 2 of the Minnesota Statutes. Section 336.2-201 of the Minnesota Statutes provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." Minn. Stat. § 336.2-201. In this case, the Master Agreement and Order Form comprise the parties' written agreement for the sale of the Equipment, which cannot be invalidated by an oral contract for sale of goods.

43. In any event, Claimant has not shown by clear and convincing evidence that the parties agreed to waive all other terms in the Master Agreement and Order Form as part of any modified agreement. "A modification of a contract is a change in one or more respects, which introduces new elements into the details of the contract . . . but leaves the general purpose and effect undisturbed." *Sokol & Associates, Inc. v. Techsonic Industries, Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). "The well-established rule in Minnesota is that a party asserting the parol modification of a written contract has the burden of proving the modification by clear and convincing evidence."

---

[26] 336.2-209 MODIFICATION, RESCISSION AND WAIVER.

. . .

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this article (section 336.2-201) must be satisfied if the contract as modified is within its provisions.

. . .

14

*Id.* "Allegations of modifications inconsistent with the written terms of a contract are subject to 'rigorous examination.'" *Id.* at 610-11 (citing *Bolander v. Bolander*, 703 N.W.2d 529, 541-42 (Minn. Ct. App. 2005)). Here, there is no evidence to substantiate Claimant's theory that a modification to the purchase price rendered the parties' written agreement void, nor that such modification would invalidate each unmodified term in the written agreement.

## RESERVATION OF RIGHTS

44. This Objection is limited to the grounds stated herein. The Plan Administrator expressly reserves the right to amend, modify, and supplement this Objection, and the right to respond to any assertion regarding the Claim. The Plan Administrator further reserves all rights to present any evidence at a designated hearing for this proceeding to support its Objection and to disprove any future assertions that may be brought by Claimant. The Plan Administrator reserves the right to contest the Proof of Claim and any other claims asserted by Claimant on any other grounds. Nothing herein shall constitute an admission as to the amount, priority, or validity of any claims asserted by Claimant.

## CONCLUSION

45. The Plan Administrator respectfully requests that the Claim be disallowed in its entirety, or in the alternative, that the Claim be modified to reflect a general unsecured claim in the Mining Project Wind Down LLC (f/k/a Compute North, LLC) bankruptcy case in the amount of no more than $68,935.00, and that the Court grant such other and further relief as is appropriate under the circumstances.

September 18, 2023    Respectfully submitted,

    */s/ Nicholas C. Brown*
    Kara E. Casteel (admitted *pro hac vice*)
    Jennifer A. Christian (admitted *pro hac vice*)

Nicholas C. Brown (admitted *pro hac vice*)
**ASK LLP**
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 289-3846
Facsimile: (651) 406-9676
E-mail: kcasteel@askllp.com
jchristian@askllp.com
nbrown@askllp.com

*Counsel to the Plan Administrator*

**Certificate of Service**

I certify that on September 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Nicholas C. Brown*
Nicholas C. Brown

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90273 (MI)<br><br>(Jointly Administered) |

### ORDER SUSTAINING THE PLAN ADMINISTRATOR'S AMENDED OBJECTION TO CLAIM NO. 14 OF BOBS LIMITED
**(Related Docket No. ___)**

Upon the amended objection (the "Objection")[2] of Tribolet Advisors LLC, as Plan Administrator ("Plan Administrator") in the above-captioned bankruptcy cases, seeking entry of an order (this "Order") sustaining the *Plan Administrator's Amended Objection to Claim No. 14 of Bobs Limited,* as more fully set forth in the Objection; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Objection.

venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Plan Administrator's notice of the Objection and opportunity for a hearing thereon were appropriate and no other notice need be provided; and this Court having reviewed the Objection and determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and upon the Tribolet Declaration; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor; it is HEREBY ORDERED THAT:

1. Proof of claim number 14 filed by Bobs Limited is disallowed in its entirety.

2. Epiq Corporate Restructuring, LLC, as Claims, Noticing, Solicitation, and Administrative Agent, is authorized and directed to update the claims register maintained in these chapter 11 cases to reflect the relief granted in this Order.

3. The Plan Administrator is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Objection.

4. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2023

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE