Peter Allard
July 27, 2023
                                                    Exhibit D

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS


In Re:

MINING PROJECT WIND DOWN HOLDINGS

INC., f/k/a Compute North Holdings,

Inc.,

            Debtor.                    Case No. 22-90273

                                       Chapter 11

_____


        The Video Conference Deposition of PETER ALLARD,

        Appearing remotely from Austin, Texas,

        Commencing at 11:03 a.m. (CDT),

        Thursday, July 27, 2023,

        Before Carol L. Gavigan, CSR-2494, RPR.

Peter Allard
Exhibit D
July 27, 2023

```
 1   APPEARANCES:

 2

 3   NICHOLAS BROWN (via video conference)

 4   ASK, LLP

 5   2600 Eagan Woods Drive

 6   Suite 400

 7   St. Paul, Minnesota 55121

 8   (651) 289-3867

 9   nbrown@askllp.com

10       Appearing on behalf of Bankruptcy Plan Administrator.

11

12   STEVEN A. LEYH (via video conference)

13   Hoover Slovacek, LLP

14   5051 Westheimer

15   Suite 1200

16   Houston, Texas 77056

17   (713) 977-8686

18   leyh@hooverslovacek.com

19       Appearing on behalf of Bob's Limited.

20

21   ALSO APPEARING:

22   Tony Merchant (via video conference)

23

24

25
```

```
 1                TABLE OF CONTENTS

 2

 3   WITNESS                              PAGE

 4   PETER ALLARD

 5

 6   EXAMINATION

 7   BY MR. BROWN:                          5

 8   EXAMINATION

 9   BY MR. LEYH:                          29

10   RE-EXAMINATION

11   BY MR. BROWN:                         35

12

13                    EXHIBITS

14

15   EXHIBIT                              PAGE

16    (Exhibits attached to transcript.)

17

18   DEPOSITION EXHIBIT 1                  36

19   DEPOSITION EXHIBIT 2                  36

20

21

22

23

24

25
```

Peter Allard
July 27, 2023                                          Exhibit D

```
1   Austin, Texas

2   Thursday, July 27, 2023

3   11:03 a.m. (CDT)

4

5              REPORTER:  The attorneys participating in

6       this deposition acknowledge that I am not physically

7       present in the deposition room and that I will be

8       reporting this deposition remotely.  They further

9       acknowledge that, in lieu of an oath administered in

10      person, the witness will verbally declare his

11      testimony in this matter is under penalty of perjury.

12      The parties and their counsel consent to this

13      arrangement and waive any objections to this manner of

14      reporting.

15              Counsel, please indicate your agreement

16      by stating your name and your agreement on the record.

17              MR. LEYH:  Steven A. Leyh, counsel for

18      Bobs Limited, so agreed.

19              MR. BROWN:  Nick Brown, counsel for the

20      Plan Administrator, we agree.

21                   PETER ALLARD,

22      was thereupon called as a witness herein, and after

23      having first been duly sworn to testify to the truth,

24      the whole truth and nothing but the truth, was

25      examined and testified as follows:
```

Peter Allard
July 27, 2023                                          Exhibit D

```
 1                        EXAMINATION

 2   BY MR. BROWN:

 3   Q.   Good morning, Mr. Allard.  My name is Nick Brown.  I

 4        represent the Plan Administrator in the Compute North

 5        Holdings Bankruptcy cases, which are currently pending

 6        in the Southern District of Texas Bankruptcy Court.

 7        Thank you for being here today.

 8                  Could you please state your full name, for

 9        the record?

10   A.   Peter Allard.

11   Q.   Mr. Allard, have you ever had a deposition done

12        before?

13   A.   I have been through one in the past, yes.

14   Q.   Okay.  Then you should be familiar with how this

15        works.  I'll go over just a couple just reminders.

16        This might be your first remote deposition, so it's a

17        little bit different.  If you have any problems with

18        hearing me, let me know.  My connection should be

19        pretty good, but -- and, likewise, if I have a problem

20        hearing you, I'll let you know and we'll work it out.

21                  If you need me to repeat a question, just

22        feel free to ask me.  If you don't understand a

23        question, same thing.  It's important, because this

24        whole deposition will be transcribed, that we don't

25        talk over each other.  So I'll do my best to wait for
```

Peter Allard
July 27, 2023

```
 1       you to finish speaking before I follow up, and I'd

 2       appreciate the same courtesy when I'm asking

 3       questions, if you would just wait until I'm finished

 4       before responding.

 5                    And you are here on your own without --

 6       without an attorney; is that right?

 7   A.  That is correct.

 8   Q.  Okay.  And you are here on behalf of True North Data

 9       Solutions US; is that right?

10   A.  Yes, that is correct.

11   Q.  Did you receive a copy of the Subpoena requiring

12       True North's appearance at this deposition?

13   A.  Yes, I did.

14   Q.  All right.  I'm going to go ahead and try to drop a

15       copy of that Subpoena into the chat box.  That's how

16       we're going to present Exhibits today.  I'll label it

17       Exhibit 1.

18                    While we're waiting for that to upload,

19       Mr. Allard, just one other question, it's a standard

20       question, but is there any reason that you're aware of

21       that you cannot participate in this deposition today?

22       For example, are you on any medication that might

23       prevent you from understanding or answering my

24       questions?

25   A.  No, I am not.
```

```
 1   Q.   Okay.  What I've done is I've dropped Exhibit Number 1

 2        into the chat box.  Can you access that and open it?

 3   A.   It's downloading.

 4                   Okay, I have a copy open.

 5   Q.   Does this look like what you received?

 6   A.   At a glance, yes, it does.

 7   Q.   Okay, great.

 8                   MR. BROWN:  And just for the court

 9        reporter's convenience, this document does have the

10        case caption on it.  This is the Bankruptcy case that

11        we are appearing for today.

12   BY MR. BROWN:

13   Q.   Mr. Allard, what is your relationship to True North

14        Data Solutions, US, Inc.?

15   A.   I am the president of True North Data Solutions.

16   Q.   Is there an affiliate True North Company in Canada?

17   A.   Yes, there is.

18   Q.   What is the name of that company?

19   A.   True North Data Solutions, LTD?

20   Q.   What is your position with that company?

21   A.   President.

22   Q.   Okay.  So for -- for right now, at least, I'm going to

23        refer to True North, and I'll be talking about the US

24        entity, and in the course of our discussion today, if

25        it turns out that they -- that the Canada company is
```

Peter Allard
July 27, 2023

```
 1        more relevant, then we can decide another way of
 2        referring to them.  But for now when I refer to
 3        True North, I'll be referring to the US company.  Do
 4        you understand?
 5   A.   Yes, I do.
 6   Q.   All right.  How long has True North been in operation?
 7   A.   Approximately one year.  Just over one year.
 8   Q.   What year was it incorporated?
 9   A.   It was either late 2021, or early 2022.
10   Q.   What is -- excuse me, what does True North do?
11   A.   The entity in question specifically manages the
12        purchase and sale of computer servers.
13   Q.   What type of computer servers?
14   A.   What type of computer servers --
15   Q.   Did you say service or servers?
16   A.   Servers, hardware, computer hardware.
17   Q.   So is True North like a broker?
18   A.   That's a fair understanding, yes.
19   Q.   Does True North actually purchase or -- purchase
20        servers for itself or sell its own servers?
21   A.   It does purchase both for its own use, as well as for
22        resale.
23   Q.   Where is True North located?
24   A.   True North is located in Austin, Texas.
25   Q.   What is the business address?
```

Peter Allard
July 27, 2023

```
 1    A.    206 Chesapeake Bay Lane, Austin, Texas, Zip Code

 2          78717.

 3    Q.    How many employees are there?

 4    A.    Just myself.

 5    Q.    So you refer to the Canadian company as -- the name is

 6          True North Data Solutions, LTD.  If it's okay with you

 7          I'll refer to that as True North Canada.  Would that

 8          be okay?

 9    A.    Yes, it is.

10    Q.    What is the relationship, if any, between True North

11          and True North Canada?

12    A.    True North is a subsidiary of True North Canada.

13    Q.    Does True North Canada do largely the same thing that

14          you were just describing that True North does?

15    A.    Its -- its business model is slightly different.  It

16          does more data-centered development projects,

17          development and operations.

18    Q.    Are you familiar with Compute North?

19    A.    Yes, I am.

20    Q.    What -- could you give me sort of a general

21          understanding about your familiarity, what is your

22          familiarity with that company?

23    A.    My understanding, they were a data-centered developer

24          who offered colocation services within the Bitcoin

25          mining industry.
```

Peter Allard
July 27, 2023

1    Q.   Does True North deal in the Bitcoin mining industry?

2    A.   True North does sell hardware, which some are Bitcoin

3         mining servers, yes.

4    Q.   What about True North Canada?

5    A.   It does host for Bitcoin miners as well.

6    Q.   Could you explain a little bit more of what that

7         means, when you say hosting for Bitcoin miners?

8    A.   Yes.  True North Canada, as a data-centered developer

9         and operator, will enter into colocation hosting

10        agreements with individuals who have servers that

11        they're seeking to get operational.  They will engage

12        inside of that hosting agreement.

13   Q.   What sort of services does True North Canada provide

14        in connection with its colocation hosting services?

15        For example, does it provide electricity?

16   A.   Provide electricity and boots on the ground

17        operations, physical maintenance of the equipment.

18   Q.   Is that -- is it your understanding that those types

19        of colocation hosting services are similar to what

20        Compute North was providing?

21   A.   I've never seen a hosting agreement from Compute

22        North.  I couldn't answer that.

23   Q.   Has True North or True North Canada had any direct

24        business dealings with Compute North?

25   A.   Yes.  The sale of some servers from True North to

Peter Allard
July 27, 2023

1        Compute North.

2    Q.   From True North to who?  I'm sorry.

3    A.   To Compute North.

4    Q.   Was that a single transaction, or was that something

5         that happened on a number of occasions?

6    A.   If I recall correctly, I believe there were two

7         separate transactions.

8    Q.   Was True North the broker in that transaction?

9    A.   Yes, they were.

10   Q.   Do you know who was -- or what company was actually

11        providing the servers?

12   A.   The manufacturer of that equipment in question is a

13        company called Minerva Semiconductor Corporation.

14   Q.   Do you know where they are located?

15   A.   Their last known address, to my knowledge, is in

16        Calgary, Alberta.

17   Q.   Do you have more specific information about their

18        address?

19   A.   I do not know.

20   Q.   Do you remember who you were dealing with, if anyone,

21        at the Minerva Semiconductor Corporation?

22   A.   Yes.  The CEO gentleman's name is Mark Mott.

23   Q.   Are you familiar with Bobs Limited?

24   A.   To my knowledge, that's the entity that Merchants had

25        used to acquire equipment from Compute North.

Peter Allard
July 27, 2023

1   Q.   Have you had any dealings with Bobs Limited?  I'm

2        sorry, when I say you, I'm referring to True North or

3        True North Canada?

4   A.   Yeah.  I was thinking about that the other day, and to

5        my knowledge, we have always engaged Merchants through

6        some other entities that I don't believe there's any

7        direct engagement between Bobs and True North or

8        True North Canada.

9   Q.   Are you aware of whether Bobs Limited was involved in

10       any of the two -- in either of the two transactions

11       that True North had with Compute North?

12  A.   Yeah, from what I understand, Bobs Limited had

13       purchased a number of machines which Compute North had

14       purchased from True North as the broker for Minerva.

15  Q.   And what -- how did you become aware of that?

16  A.   A mutual industry contact between the Merchants and I

17       out of Canada originally made a referral introduction

18       to Merchants that they were looking for some hosting

19       services for some equipment that previously had been

20       allocated to a Compute North facility, as well as they

21       were interested in some information or updates about

22       their equipment purchase via Compute North with

23       True North in relation to the Minerva equipment.

24  Q.   Did you make contact with Bobs Limited?

25  A.   Yeah, I think the gentleman in question that provided

Peter Allard
July 27, 2023                                         Exhibit D

```
 1          the referral set up an initial call for the parties to

 2          discuss options.

 3    Q.    Do you remember who was on that call?

 4    A.    I can't recall the name of the gentleman off the top

 5          of my head that provided the introduction.  I would

 6          have been on that call.  He would have been on that

 7          call.  And one of either possibly both Matthew

 8          Merchant and/or Tony Merchant.

 9    Q.    Tell me a little bit more about who Matthew Merchant

10          and Tony Merchant are.

11    A.    Aside from being a couple of pretty interesting

12          standup gentlemen that I'd like to have a future in

13          business with, my understanding of them is we engaged

14          through them through an entity by the name of

15          Terra International for some hosting services, as well

16          as some liquid immersion infrastructure.  And then by

17          way of Compute North and the Minerva equipment in

18          question is being considered inside of the hosting

19          space, and that has been carved out for the Merchants.

20          So of Tony and Matthew, I know them to be a father/son

21          team that have taken different roles inside of our

22          relationship at different points throughout.

23    Q.    What role does Matthew Merchant primarily play?

24    A.    That has never been clearly established, but my

25          understanding is he's looking after more of the
```

Peter Allard
July 27, 2023

1        day-to-day operations.

2   Q.   What about Tony Merchant?

3   A.   I think Tony has historically come into the picture

4        when we're, you know, looking to resolve any issues,

5        whether that's for equipment, review of any agreements

6        that we've been entered into, yeah.

7   Q.   Is Tony Merchant an attorney, to your knowledge?

8   A.   To my knowledge, yes, he is.

9   Q.   Is Tony Merchant an officer or member of Bobs Limited

10       or one of the other -- or Terra International, for

11       example, to your knowledge?

12  A.   To my knowledge, I do not know that, no.

13  Q.   Just a minute ago you were describing I think either

14       Terra International or Bobs Limited, their involvement

15       in connection with Compute North and some Minerva

16       equipment that was being considered inside of hosting

17       space; is that right?

18  A.   Yes, that's accurate.

19  Q.   Okay.  So is that Minerva equipment, is that Minerva

20       equipment that you're referring to equipment that was

21       being purchased or had been purchased by Bobs Limited

22       or Terra International?

23  A.   That equipment, to my knowledge, was purchased

24       directly from Compute North on behalf of Bobs Limited.

25  Q.   Being purchased from -- I'm sorry, I need to make sure

Peter Allard
July 27, 2023

```
 1          I understand the different roles here.  So Minerva is

 2          the manufacturer, correct?

 3    A.    Correct.

 4    Q.    And who is acquiring the equipment from Minerva?

 5    A.    True North.

 6    Q.    As a broker?

 7    A.    Correct.

 8    Q.    To be -- to be provided to Compute North; is that

 9          right?

10    A.    Yes, that is correct.

11    Q.    On behalf of Bobs Limited; is that right?

12    A.    To my knowledge, yes, but we have no visibility beyond

13          our engagement with Compute North.

14    Q.    To your knowledge, where was this particular Minerva

15          equipment to be delivered?

16    A.    Could you repeat the question, please?

17    Q.    Where was this Minerva equipment that you've been

18          talking about, where was it to be delivered?  So it's

19          -- it's acquired by True North, as broker, to be

20          provided to Compute North on behalf of Bobs Limited.

21          Where was it supposed to be delivered?

22    A.    To my knowledge, it was supposed to be delivered

23          originally to a Compute North facility.  I don't have

24          the exact address available at this time.

25    Q.    You said originally.  Did -- did the arrangement for
```

Peter Allard
July 27, 2023

```
 1        location of delivery ever change, to your knowledge?

 2   A.   Yes.  I believe you guys have cited the e-mail

 3        communication where that change had occurred to go

 4        from a Compute North facility to a True North

 5        facility.

 6   Q.   Do you recall that e-mail correspondence?  Like

 7        outside of looking at the attachment to the Subpoena,

 8        do you recall that e-mail correspondence?

 9   A.   Yes, I do.

10   Q.   Okay.  Let's pull that up.  I'm going to put that in

11        the chat box and label it Exhibit 2.  Please let me

12        know once you're able to open it up.

13   A.   Yes, I see that.

14   Q.   First of all, I noticed that the signature block for

15        you on behalf of True North is the -- is True North

16        Canada.  So was it True North Canada, or True North US

17        that was involved in this particular transaction with

18        Bobs Limited and Compute North?

19   A.   I would have to go back and reference the agreement,

20        but, to my knowledge, it was the True North US entity.

21   Q.   Is it your common practice to use the True North

22        Canada signature block on all of your e-mails

23        regardless of whether you're communicating on behalf

24        of True North Canada or True North US?

25   A.   Yes, it is.
```

Peter Allard
July 27, 2023

1    Q.    Now, if you scroll to the bottom, I guess it's page 2,
2          that's the earliest communication on this Exhibit.
3          This is your e-mail to someone at Compute North and
4          someone with an e-mail address matthew@get.love.  Who
5          is matthew@get.love?
6    A.    I lost the page here, but to my knowledge,
7          matthew@get.love is Matthew Merchant.
8    Q.    Are you able to access this Exhibit, or not?
9    A.    I saw it a minute ago.  I'd have to re-download it if
10         you need me to look at something that's specific.
11   Q.    Okay, I think it would be helpful for you to look at
12         it, because I'm going to ask you some detailed
13         questions about it.
14   A.    Could you repeat the question, please?
15   Q.    Yeah, just wanted to make sure, do you have this
16         e-mail Exhibit in front of you now?
17   A.    Yes, I do.
18   Q.    Okay, thanks.
19               So, again, I was focusing on the first
20         e-mail in this string, which is the one on page 2 of
21         this Exhibit.  And you'll notice it's your e-mail to
22         someone at Compute North and Matthew Merchant.  Was --
23         do you know if Matthew Merchant was -- I'm sorry, let
24         me start over.
25               In this particular e-mail, what company, to

Peter Allard
July 27, 2023                          Exhibit D

```
 1            your knowledge, was Matthew Merchant representing?
 2     A.     I've got no recollection of which entity at that time
 3            he would have been representing, other than the -- you
 4            know, the family's interest would be the closest
 5            information I could share with you.
 6     Q.     Okay.  So if I'm understanding, you mentioned Bobs
 7            Limited as well as a company named Terra International
 8            as two companies where Matthew Merchant has an
 9            interest.  Is that right, to your knowledge?
10     A.     Without defining interest, he has been part of
11            communications for both of those entities, yes.
12     Q.     Are there other entities where, to your knowledge,
13            Matthew Merchant has some sort of -- or I guess I
14            should say has been communicating on behalf of other
15            companies besides the two that we just mentioned?
16     A.     Nothing that I'm aware of at this time, no.
17     Q.     Have you ever heard of a company named Merchant
18            Mining?
19     A.     It's not ringing any bells, no.
20     Q.     All right.  Back to this e-mail.  You're referencing
21            300 Minerva MV7 units.  Do you see that?
22     A.     Yes, I do.
23     Q.     Are those the Minerva equipment that you were
24            describing that True North had acquired from the
25            manufacturer as a broker to be provided to
```

Peter Allard
July 27, 2023

```
 1         Compute North on behalf of Bobs Limited?
 2    A.   When the agreement with True North and Compute North
 3         was struck for the purchase of equipment, at that time
 4         we had no further details of what Compute North was
 5         doing with that equipment.  But, yes, everything else
 6         you said is accurate.
 7    Q.   So -- okay, so at the time of the agreement with
 8         Compute North, True North did not know what Compute
 9         North was going to do with these miners; is that what
10         you're saying?
11    A.   Yes, exactly.
12    Q.   And is it also accurate that subsequent to entering
13         into the agreement with Compute North, True North
14         discovered that Compute North's intention was to
15         provide these units to Bobs Limited?
16    A.   Yes, that's accurate.
17    Q.   Do you have a copy of the agreement between True North
18         and Compute North?
19    A.   Yes, we would have that in our files somewheres.
20    Q.   Who were you communicating with at Compute North in
21         connection with this agreement to provide 300 Minerva
22         units to Compute North?
23    A.   A gentleman by the name of Ro Shirole.
24    Q.   You're the primary person at True North that was
25         handling this particular transaction for True North?
```

Peter Allard
July 27, 2023

1    A.    Yes, I was.

2    Q.    How many conversations or e-mails would you say you

3          had with Mr. Shirole regarding this particular

4          transaction?

5    A.    I can't recall that information at this time, but a

6          number of them.

7    Q.    Phone calls as well?

8    A.    Yeah, phone calls, e-mails, it would have been both.

9    Q.    Would True North still have copies of those e-mails?

10   A.    It's likely, if they haven't been wiped out of the

11         cache, that they could be made available, yes.

12   Q.    Okay.  So the arrangement was that Compute North was

13         to purchase these units from True North.  Do you

14         recall the purchase price -- or, excuse me, let me

15         back up.

16               I should say the arrangement was, as I

17         understand it, Compute North was to purchase these

18         300 units from True North, as broker, who was

19         acquiring them from Minerva; is that right?

20   A.    Yes, that's -- that's accurate.

21   Q.    Do you remember what the Compute North purchase price

22         was for these 300 units?

23   A.    Not without referencing the agreement, no.

24   Q.    Do you recall if Minerva shipped these 300 units?

25   A.    To my knowledge, they have not shipped those units.

Peter Allard
July 27, 2023                                    Exhibit D

```
1    Q.   What are you basing that knowledge on?

2    A.   The Minerva has a number of units that have been

3         unshipped to True North.  I'm unaware if Minerva would

4         have shipped Compute North any equipment directly.

5    Q.   I was making a note and didn't hear that last part.

6         Could you repeat that last statement?

7    A.   Minerva has a number of units that are currently

8         outstanding to be delivered to True North.  I am

9         unaware if Minerva has shipped Compute North any

10        equipment directly.

11   Q.   How do you know that Minerva has a number of units

12        that are outstanding to be shipped to Compute North?

13   A.   Well, Minerva has no direct obligation to Compute

14        North, they have an obligation to True North, so our

15        accounting tells us that they have not delivered all

16        the equipment that has been purchased from them.

17   Q.   Would that include the 300 units that we're talking

18        about right now?

19   A.   Yes, it does.

20   Q.   Did Compute North pay True North for these units?

21   A.   I would have to double-check the records, but, to my

22        knowledge, they -- they paid at least the initial

23        deposit, which I believe was 85 percent, and they may

24        have paid the remaining balance of 15 percent,

25        however, I'd have to go and confirm that.
```

Peter Allard
July 27, 2023

1   Q.   And has -- I would assume then the next step would be

2       for True North to pay Minerva if it hasn't already.

3       So let me ask, has True North paid Minerva for these

4       units?

5   A.   Yes, we have.

6   Q.   Okay.  Has True North paid the full purchase price to

7       Minerva?

8   A.   Again, we would have to double-check the accounting to

9       answer that question, but at minimum the deposit that

10      would have been received would have been passed

11      forward.  If the full balance was received, it also

12      would have been passed forward.

13   Q.   Is it your -- so then what is your understanding about

14      the holdup here?  Because, really, I think with this

15      litigation that you've kind of been brought into here

16      in this deposition is about is what's happened to

17      these miners and why haven't they been delivered to

18      Bobs Limited or to Compute North.  We're kind of a

19      little bit in the dark here.  So what is your

20      understanding about the holdup, and what else can you

21      tell us about why these units haven't been shipped?

22   A.   Yeah, so the current state of that unfulfilled

23      purchase order between True North and Minerva is

24      currently with our legal counsel, who submitted a

25      statement of claim against Minerva for the undelivered

Peter Allard
July 27, 2023

| | | |
|---|---|---|
| 1 | | equipment to True North.  And the last communication |
| 2 | | that we had from Minerva, they were citing that there |
| 3 | | were manufacturing delays and other issues that were |
| 4 | | preventing them from delivering the equipment. |
| 5 | Q. | And I think you said, but just to confirm, it is -- |
| 6 | | True North is having legal counsel communicate with |
| 7 | | Minerva on this issue at this time?  Is that right? |
| 8 | A. | Yes, that is correct. |
| 9 | Q. | So you are not directly communicating with Minerva; is |
| 10 | | that right? |
| 11 | A. | No, I am not. |
| 12 | Q. | Is True North conducting any transactions with Minerva |
| 13 | | at this time outside of this Compute North deal? |
| 14 | A. | No.  We've ceased all further business dealings with |
| 15 | | Minerva. |
| 16 | Q. | Is that because of the -- this particular incident, or |
| 17 | | are there other reasons? |
| 18 | A. | This particular incident of undelivered equipment. |
| 19 | Q. | Going back to the e-mail Exhibit Number 2, do you |
| 20 | | still have that up? |
| 21 | A. | Let me pull it up. |
| 22 | | Okay. |
| 23 | Q. | Is it your understanding -- so, sorry, on page 2 you |
| 24 | | asked both Compute North and Matthew Merchant to |
| 25 | | acknowledge and agree that the units will be provided |

Peter Allard
July 27, 2023

1      to a True North facility; is that right?

2  A.   Yes, that's correct.

3  Q.   And do you -- what's your understanding about why the

4      parties agreed to sort of reroute or I guess modify

5      their arrangement to have these units be delivered to

6      True North?

7  A.   To my knowledge, Compute North did not have the

8      capacity to get that equipment in question online at

9      that time.

10 Q.   So True North was -- I guess had agreed then to

11      provide the colocation services; is that right?

12 A.   That's correct, we were to provide some temporary

13      hosting services for the equipment.

14 Q.   You said temporary.  Were you anticipating that

15      eventually the units would be redirected to Compute

16      North, or were they to remain at True North?

17 A.   It was unknown at that time, so it was to be a

18      month-to-month hosting arrangement.

19 Q.   Obviously, the units were never delivered, so there

20      was never any colocation hosting services provided by

21      True North; is that right?

22 A.   That is correct, for those units.

23 Q.   Did True North ever receive any payments from Bobs

24      Limited related to this particular equipment?

25 A.   Not to my knowledge, no.

```
 1   Q.   Did True North ever receive any hosting service fees

 2        in connection with this equipment?

 3   A.   Not to my knowledge, no.

 4   Q.   The e-mail Exhibit here, I see confirmation from

 5        Mr. Merchant that he agrees with this arrangement.  I

 6        don't see the response from Compute North.  Do you

 7        recall if Compute North made a similar response

 8        agreeing that the units would be held at a True North

 9        data facility?

10   A.   Yes, that -- that would have been agreed to at some

11        point prior to True North accepting those hosting

12        services as it came up.

13   Q.   So there are fees associated with delivering these

14        units, I assume some sort of shipping fee.  Is that

15        typically part of the -- the transaction fees here is

16        paying for delivery?

17   A.   Yes, if we were to -- to reference the equipment

18        purchase agreement in question, it would have language

19        in there of who would be responsible for

20        transportation fees.

21   Q.   Do you know at this time who was responsible for those

22        transportation fees?

23   A.   I would have to reference the agreement, but, no, I

24        can't recall specifically at this time.

25   Q.   Do you know if any transportation fees have been paid
```

Peter Allard
July 27, 2023

```
 1        to Minerva?

 2   A.   Again, I would have to reference the agreement to see

 3        who was responsible for those fees, but, no, I can't

 4        recall that information at this time.

 5   Q.   Now, going back to earlier what you were saying that

 6        True North has its attorneys involved in communicating

 7        with Minerva.  So is it your understanding that

 8        True North is doing what it can to motivate Minerva to

 9        deliver these units on -- as quickly as possible?

10   A.   Yes, to -- to our knowledge, we're exhausting all

11        possible avenues to affect Minerva to deliver the

12        equipment.

13   Q.   Has a formal lawsuit been filed against Minerva?

14   A.   Yes, there has.

15   Q.   Do you know when that was filed?

16   A.   I want to say late last year.

17   Q.   Do you know in what jurisdiction it was filed?

18   A.   It was -- the suit against Minerva would have been

19        filed in Alberta, Canada.

20   Q.   Are you aware if Minerva disputes True North's

21        contention that they are obligated to deliver these

22        300 units?

23   A.   I would have to reference the -- with counsel on that

24        one, but to my knowledge, no.

25   Q.   Are you aware if Minerva disputes receiving any
```

Peter Allard
July 27, 2023

```
 1         payments in connection with these units?

 2    A.   To my knowledge, they have not disputed receipt of

 3         payments that have been made.

 4    Q.   At this time, are -- do you know what, if any, amounts

 5         of money True North might owe Minerva for these units?

 6    A.   I would have to reference with the finance team there,

 7         but not off the top of my head, no.

 8    Q.   Let's go back to the first Exhibit just briefly.  I

 9         want to point -- or turn your attention to pages 4 and

10         5 -- okay, so pages 4 and 5 of this document,

11         beginning with the title Exhibit to Subpoena, do you

12         see that?

13    A.   Page 2, page 3, page 4 -- Exhibit to Subpoena, yes.

14    Q.   So this Exhibit, did you get a chance to read these

15         pages?

16    A.   I would have at least skimmed through them, yes.

17    Q.   Yep.  So the -- the intent behind this -- these pages

18         basically is to inform True North the subject matter

19         of this deposition, but if you read closely, you'll

20         also find that it's not -- not only is it telling you

21         what we'd like to talk about at the deposition, but

22         it's also requesting documents related to these

23         topics.  And I know you said, at least on a couple

24         occasions, that you believe True North has documents

25         that, frankly, could be helpful for us in our own
```

Peter Allard
July 27, 2023                                    Exhibit D

```
 1          case.  For example, the agreement between Compute

 2          North and True North, e-mails that True North had with

 3          Compute North, any e-mails that True North had with

 4          Bobs Limited in connection with this specific

 5          transaction, and perhaps, most importantly, would be

 6          documentation showing -- so the agreement that

 7          True North would have had with Minerva and

 8          documentation showing what payments were made to

 9          Minerva.  All of those things are relevant and are

10          appropriately produced in connection with this

11          Subpoena.  Do you believe you'll be able to produce

12          that, those documents to us, or to me specifically

13          sometime shortly after this deposition?

14   A.     Yes, we can undertake to produce those documents.

15   Q.     Okay.  Maybe what I'll do then is maybe today or

16          tomorrow I'll send you a more specific list, and I can

17          copy Bobs Limited counsel about what exactly we're

18          looking for, and I'll send it to you, and I'm happy to

19          deal with you directly, or if you wish, I can -- you

20          can refer me to your attorney, either way is fine.

21   A.     Okay, that sounds good.

22                  MR. BROWN:  Okay, I don't have anymore

23          questions, so at this time I'll turn it over to the

24          attorney for Bobs Limited, who may have some

25          questions.
```

Peter Allard
July 27, 2023                    Exhibit D

```
 1                       EXAMINATION

 2   BY MR. LEYH:

 3   Q.   Good morning.  Steve Leyh, on behalf of Bobs Limited.

 4             Mr. Allard, a few questions also, I think

 5        you may have answered most of the questions I had.

 6        But when Mr. Brown was talking to you about whether or

 7        not Minerva had shipped the units to True North, you

 8        said Minerva had not delivered all equipment to

 9        True North.  Has Minerva delivered any of these

10        machines to True North?

11   A.   Yes, they have delivered a portion of our total order

12        with them.

13   Q.   How many have they delivered?

14   A.   Oh, I would have to reference our documents to give

15        you a specific number.

16   Q.   Okay, well, ballpark?

17   A.   I'm sorry, I don't have that information off the top

18        of my head.

19   Q.   Okay.  Where are the machines that were delivered?

20   A.   Equipment that would have been delivered from Minerva

21        would have been delivered to the corresponding clients

22        who purchased it, and those are at various locations

23        at this point.

24   Q.   Okay, let me try again.

25             Are we talking about the 300 Minerva 100TH
```

Peter Allard
July 27, 2023

```
 1        machines that were ordered by Compute North, or some

 2        other machines?

 3   A.   Yes, so some other machines.  You were asking a

 4        question of how many machines in total have been

 5        delivered.

 6   Q.   No, I'm sorry, let me try again.

 7                  Okay, I want to focus on Compute North

 8        ordered these Minerva 100TH machines, 300 of them,

 9        right?

10   A.   Yes.

11   Q.   And your entity was the broker that was supposed to

12        deal with Minerva, right?

13   A.   Correct.

14   Q.   Okay.  So those specific machines ordered through you,

15        as the broker, by Compute North, have any of those

16        been delivered?

17   A.   No, they have not been.

18   Q.   Okay.  I'm going down the list here.

19                  Okay, so then did True North receive any

20        Minerva T100TH -- excuse me -- 100TH machines from

21        February 2021 to September 2022, were any of those

22        machines identified as being for or on behalf of

23        Compute North or Bobs Limited?

24   A.   No, they were not.  And just real quick, guys, I just

25        got a notification that my battery was running low
```

Peter Allard
July 27, 2023

```
 1        here, so I'm just going to try to find a power cable

 2        here quick.  Is it okay if I turn my video off?

 3   Q.   Sure, let's take a break.

 4                      (Off the record at 12:54 p.m.)

 5                      (Back on the record at 12:56 p.m.)

 6   BY MR. LEYH:

 7   Q.   Is True North the exclusive North American distributor

 8        for these Minerva machines?

 9   A.   No, we are not.

10   Q.   Who else is a distributor?

11   A.   I don't have access to that information.

12   Q.   Okay, and I believe you told Mr. Brown that True North

13        had received payments from Compute North for these

14        machines; is that correct?  Partial payment?

15   A.   Yeah, at minimum we would have received the initial

16        deposit.  It's also possible that we've received a

17        final payment as well.  I would just have to

18        cross-reference that.

19   Q.   But you might -- you -- you might actually owe money

20        to Minerva, right, still?

21   A.   No.  Any funds received for equipment from True North

22        clients is passed through to Minerva.

23   Q.   I would assume there were some sort of communication

24        between True North and Minerva in regard to the

25        delivery or nondelivery of these machines; is that
```

Peter Allard
July 27, 2023

```
 1       right?
 2   A.  Yes, that's correct.
 3   Q.  Okay.  Those would -- might be e-mails, text messages?
 4   A.  Verbal communications, e-mails, texts, yes, a
 5       combination of all of the above.
 6   Q.  Okay.  As to the e-mails or text messages, can you
 7       provide those to Mr. Brown in response to his
 8       Subpoena?
 9   A.  Yes, we can undertake to provide that information.
10   Q.  Just going down the list here.  I believe you told
11       Mr. Brown that in regard to the responsibility for
12       purchase or shipping of these machines that we would
13       need to look at the contract between Compute North and
14       Bobs; is that right?
15   A.  Yes, that's accurate.
16   Q.  Okay.  Is there another agreement in regards to the
17       shipping between True North and Minerva?
18   A.  Yes.  Every purchase order that comes in from a client
19       to True North is captured inside of a purchase and
20       sale agreement.  True North then has a purchase and
21       sale agreement with Minerva, so, yes, there would be a
22       corresponding agreement on the other side of 300 units
23       for Compute North.
24   Q.  Can you get those agreements for Mr. Brown in response
25       to his Subpoena, please?
```

Peter Allard
July 27, 2023

1    A.   Yes, we can undertake to do that.

2    Q.   I think I wrote down how to say his name here.  After

3         the e-mail that's Exhibit Number 2, did you talk to

4         Ro Shirole about this transaction?

5    A.   It's -- it's very likely, but I don't recall any

6         particular conversations.

7    Q.   Okay.  Do you know where Ro Shirole is now?

8    A.   I do not know.

9    Q.   If you wanted to find him, which of the former people

10        at Compute North would you talk to?

11   A.   I would go back to my e-mails and find out who our

12        last point of contact would be on this matter.  The

13        name of whomever that individual is, I don't have at

14        this time, but that's where I'd go look for it.

15   Q.   Okay.  Well, once again, in response to Mr. Brown's

16        Subpoena, could you please do that, provide those

17        e-mails?

18   A.   Okay.

19   Q.   Is there any dispute between True North and Minerva in

20        regard to whether these 300 Minerva 100TH machines

21        were actually ordered?

22   A.   No.

23   Q.   I'm sorry?  I couldn't understand you.

24   A.   No, there is not.

25   Q.   Is there an assumption agreement or some other

Peter Allard
July 27, 2023

```
 1        contract where True North has assumed Compute North's

 2        obligation to deliver these machines to Bobs Limited?

 3   A.   No, there is not.

 4   Q.   When you say that True North is in Austin, Texas, does

 5        it have other facilities in the United States?

 6   A.   The entity in question, no, it does not.

 7   Q.   Okay.  Well, that makes me wonder what other entity

 8        might be involved.  Does it have subsidiaries?

 9   A.   I'm sorry, you're going to have to rephrase the

10        question, I'm not sure what you're asking.

11   Q.   Okay.  When I tried to figure out where True North

12        was, I looked on the internet, and I found a reference

13        to a facility in West Texas somewhere that I can't

14        remember the name of now.  Is there such a facility

15        out there?

16   A.   True North, under different entity names, does have a

17        facility in West Texas.  To my knowledge, we're

18        referencing the US company right now that has the

19        purchase and sale contract with Compute North, though.

20   Q.   And where is that facility?

21   A.   In West Texas?

22   Q.   Close to a town?

23   A.   The nearest downtown is Coyanosa.

24   Q.   Let me check my list here, I think we may be done.

25             MR. LEYH:  I'll pass the witness.
```

Peter Allard                      Exhibit D
July 27, 2023

```
 1                      MR. BROWN:  Okay, so, Mr. Merchant, do you
 2          have any questions?
 3                      MR. MERCHANT:  No, I don't.  Nice to see
 4          you, Peter.
 5   A.     Yeah, likewise, Tony.
 6                      MR. BROWN:  Okay, just one quick -- one
 7          more Redirect or question for myself.
 8                              RE-EXAMINATION
 9   BY MR. BROWN:
10   Q.     Mr. Allard, did True North receive a broker's fee in
11          connection with this transaction?
12   A.     I would have to reference the purchase agreement to
13          see if there was any markup on the equipment.
14   Q.     That's how True North would get a -- would want to
15          participate in this transaction, though, right, would
16          be to receive some sort of fee?
17   A.     We've got a number of solutions to monetize that.
18          Markups is one of the common ones that we use,
19          correct.
20   Q.     Are you aware if True North is owed any money from
21          Compute North in connection with this transaction?
22   A.     The only thing that will cross-reference and validate
23          could potentially be the final payment of 15 percent.
24                      MR. BROWN:  Okay, thank you.  Okay, great,
25          no more questions from me.
```

Peter Allard
July 27, 2023

```
 1              MR. LEYH:  Nothing further at this time.

 2              MR. BROWN:  Yes, I would like a -- I don't

 3     need an Etran, just a simple pdf copy of the

 4     transcript would be great.

 5              MR. LEYH:  The same.

 6              MARKED FOR IDENTIFICATION:

 7              DEPOSITION EXHIBITS 1 and 2

 8              following the deposition.

 9              (The deposition was concluded at

10         12:07 p.m. (CDT).  Signature of the witness was

11         not requested by counsel for the respective

12         parties hereto.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Peter Allard
July 27, 2023

Exhibit D

```
1                    CERTIFICATE OF NOTARY

2    STATE OF MICHIGAN )

3                     ) SS

4    COUNTY OF KENT    )

5

6              I, CAROL L. GAVIGAN, certify that this

7         deposition was taken before me on the date

8         hereinbefore set forth; that the foregoing questions

9         and answers were recorded by me stenographically and

10        reduced to computer transcription; that this is a

11        true, full and correct transcript of my stenographic

12        notes so taken; and that I am not related to, nor of

13        counsel to, either party nor interested in the event

14        of this cause.

15

16

17

18

19

20

21

22        CAROL L. GAVIGAN, CSR-2494, RPR

23        Notary Public,

24        Kent County, Michigan.

25        My Commission expires: April 10, 2027
```

Peter Allard
July 27, 2023

---

**Exhibits**

---

EX 0001 Peter
Allard 072723
  3:18 6:17 7:1
EX 0002 Peter
Allard 072723
  3:19 16:11
  23:19 33:3

---

**1**

---

**1**  6:17 7:1
**100TH**  29:25
  30:8,20
**11:03**  4:3
**12:54**  31:4
**12:56**  31:5
**15**  21:24

---

**2**

---

**2**  16:11 17:1,
  20 23:19,23
  27:13
**2021**  8:9
  30:21
**2022**  8:9
  30:21
**2023**  4:2
**206**  9:1
**27**  4:2

---

**3**

---

**3**  27:13
**300**  18:21
  19:21 20:18,
  22,24 21:17
  26:22 29:25
  30:8

---

**4**

---

**4**  27:9,10,13

---

**5**

---

**5**  27:10

---

**7**

---

**78717**  9:2

---

**8**

---

**85**  21:23

---

**A**

---

**a.m.**  4:3
**able**  16:12
  17:8 28:11
**accepting**
  25:11
**access**  7:2
  17:8 31:11
**accounting**
  21:15 22:8
**accurate**
  14:18 19:6,
  12,16 20:20
**acknowledge**
  4:6,9 23:25
**acquire**  11:25
**acquired**
  15:19 18:24
**acquiring**
  15:4 20:19
**address**  8:25
  11:15,18
  15:24 17:4
**administered**
  4:9
**Administrator**
  4:20 5:4
**affect**  26:11
**affiliate**
  7:16
**ago**  14:13
  17:9
**agree**  4:20
  23:25

**agreed**  4:18
  24:4,10 25:10
**agreeing**  25:8
**agreement**
  4:15,16
  10:12,21
  16:19 19:2,7,
  13,17,21
  20:23 25:18,
  23 26:2 28:1,
  6
**agreements**
  10:10 14:5
**agrees**  25:5
**ahead**  6:14
**Alberta**  11:16
  26:19
**Allard**  4:21
  5:3,10,11
  6:19 7:13
  29:4
**allocated**
  12:20
**American**  31:7
**amounts**  27:4
**and/or**  13:8
**answer**  10:22
  22:9
**answered**  29:5
**answering**
  6:23
**anticipating**
  24:14
**anymore**  28:22
**anyone**  11:20
**appearance**
  6:12
**appearing**
  7:11
**appreciate**
  6:2
**appropriately**
  28:10
**Approximately**
  8:7
**arrangement**
  4:13 15:25
  20:12,16
  24:5,18 25:5

**asked**  23:24
**asking**  6:2
  30:3
**associated**
  25:13
**assume**  22:1
  25:14 31:23
**attachment**
  16:7
**attention**
  27:9
**attorney**  6:6
  14:7 28:20,24
**attorneys**  4:5
  26:6
**Austin**  4:1
  8:24 9:1
**available**
  15:24 20:11
**avenues**  26:11
**aware**  6:20
  12:9,15 18:16
  26:20,25

---

**B**

---

**back**  16:19
  18:20 20:15
  23:19 26:5
  27:8 31:5
**balance**  21:24
  22:11
**ballpark**
  29:16
**Bankruptcy**
  5:5,6 7:10
**basically**
  27:18
**basing**  21:1
**battery**  30:25
**Bay**  9:1
**beginning**
  27:11
**behalf**  6:8
  14:24 15:11,
  20 16:15,23
  18:14 19:1
  29:3 30:22
**behind**  27:17

Peter Allard
July 27, 2023

**believe**  11:6
    12:6 16:2
    21:23 27:24
    28:11 31:12
**bells**  18:19
**besides**  18:15
**best**  5:25
**bit**  5:17 10:6
    13:9 22:19
**Bitcoin**  9:24
    10:1,2,5,7
**block**  16:14,
    22
**Bobs**  4:18
    11:23 12:1,7,
    9,12,24 14:9,
    14,21,24
    15:11,20
    16:18 18:6
    19:1,15 22:18
    24:23 28:4,
    17,24 29:3
    30:23
**boots**  10:16
**bottom**  17:1
**box**  6:15 7:2
    16:11
**break**  31:3
**briefly**  27:8
**broker**  8:17
    11:8 12:14
    15:6,19 18:25
    20:18 30:11,
    15
**brought**  22:15
**Brown**  4:19
    5:2,3 7:8,12
    28:22 29:6
    31:12
**business**  8:25
    9:15 10:24
    13:13 23:14

**C**

**cable**  31:1
**cache**  20:11
**Calgary**  11:16
**call**  13:1,3,
    6,7

**called**  4:22
    11:13
**calls**  20:7,8
**Canada**  7:16,
    25 9:7,11,12,
    13 10:4,8,13,
    23 12:3,8,17
    16:16,22,24
    26:19
**Canadian**  9:5
**capacity**  24:8
**caption**  7:10
**carved**  13:19
**case**  7:10
    28:1
**cases**  5:5
**CDT**  4:3
**ceased**  23:14
**CEO**  11:22
**chance**  27:14
**change**  16:1,3
**chat**  6:15 7:2
    16:11
**Chesapeake**
    9:1
**cited**  16:2
**citing**  23:2
**claim**  22:25
**clearly**  13:24
**clients**  29:21
    31:22
**closely**  27:19
**closest**  18:4
**Code**  9:1
**colocation**
    9:24 10:9,14,
    19 24:11,20
**come**  14:3
**common**  16:21
**communicate**
    23:6
**communicating**
    16:23 18:14
    19:20 23:9
    26:6
**communication**
    16:3 17:2
    23:1 31:23

**communications**
    18:11
**companies**
    18:8,15
**company**  7:16,
    18,20,25 8:3
    9:5,22 11:10,
    13 17:25
    18:7,17
**Compute**  5:4
    9:18 10:20,
    21,24 11:1,3,
    25 12:11,13,
    20,22 13:17
    14:15,24
    15:8,13,20,23
    16:4,18 17:3,
    22 19:1,2,4,
    8,13,14,18,
    20,22 20:12,
    17,21 21:4,9,
    12,13,20
    22:18 23:13,
    24 24:7,15
    25:6,7 28:1,3
    30:1,7,15,23
    31:13
**computer**
    8:12,13,14,16
**conducting**
    23:12
**confirm**  21:25
    23:5
**confirmation**
    25:4
**connection**
    5:18 10:14
    14:15 19:21
    25:2 27:1
    28:4,10
**consent**  4:12
**considered**
    13:18 14:16
**contact**
    12:16,24
**contention**
    26:21
**convenience**
    7:9
**conversations**
    20:2

**copies**  20:9
**copy**  6:11,15
    7:4 19:17
    28:17
**Corporation**
    11:13,21
**correct**  6:7,
    10 15:2,3,7,
    10 23:8 24:2,
    12,22 30:13
    31:14
**correctly**
    11:6
**correspondence**
    16:6,8
**corresponding**
    29:21
**counsel**  4:12,
    15,17,19
    22:24 23:6
    26:23 28:17
**couple**  5:15
    13:11 27:23
**course**  7:24
**court**  5:6 7:8
**courtesy**  6:2
**cross-
reference**
    31:18
**current**  22:22

**D**

**dark**  22:19
**data**  6:8
    7:14,15,19
    9:6 25:9
**data-centered**
    9:16,23 10:8
**day**  12:4
**day-to-day**
    14:1
**deal**  10:1
    23:13 28:19
    30:12
**dealing**  11:20
**dealings**
    10:24 12:1
    23:14

Peter Allard
July 27, 2023

decide  8:1
declare  4:10
defining
  18:10
delays  23:3
deliver  26:9,
  11,21
delivered
  15:15,18,21,
  22 21:8,15
  22:17 24:5,19
  29:8,9,11,13,
  19,20,21
  30:5,16
delivering
  23:4 25:13
delivery  16:1
  25:16 31:25
deposit  21:23
  22:9 31:16
deposition
  4:6,7,8 5:11,
  16,24 6:12,21
  22:16 27:19,
  21 28:13
describing
  9:14 14:13
  18:24
detailed
  17:12
details  19:4
developer
  9:23 10:8
development
  9:16,17
different
  5:17 9:15
  13:21,22 15:1
direct  10:23
  12:7 21:13
directly
  14:24 21:4,10
  23:9 28:19
discovered
  19:14
discuss  13:2
discussion
  7:24
disputed  27:2

disputes
  26:20,25
distributor
  31:7,10
District  5:6
document  7:9
  27:10
documentation
  28:6,8
documents
  27:22,24
  28:12,14
  29:14
doing  19:5
  26:8
double-check
  21:21 22:8
downloading
  7:3
drop  6:14
dropped  7:1
duly  4:23

_____

          E

e-mail  16:2,
  6,8 17:3,4,
  16,20,21,25
  18:20 23:19
  25:4
e-mails  16:22
  20:2,8,9
  28:2,3
earlier  26:5
earliest  17:2
early  8:9
either  8:9
  12:10 13:7
  14:13 28:20
electricity
  10:15,16
employees  9:3
engage  10:11
engaged  12:5
  13:13
engagement
  12:7 15:13
enter  10:9
entered  14:6

entering
  19:12
entities  12:6
  18:11,12
entity  7:24
  8:11 11:24
  13:14 16:20
  18:2 30:11
equipment
  10:17 11:12,
  25 12:19,22,
  23 13:17
  14:5,16,19,
  20,23 15:4,
  15,17 18:23
  19:3,5 21:4,
  10,16 23:1,4,
  18 24:8,13,24
  25:2,17 26:12
  29:8,20 31:21
established
  13:24
eventually
  24:15
exact  15:24
exactly  19:11
  28:17
EXAMINATION
  5:1 29:1
examined  4:25
exclusive
  31:7
excuse  8:10
  20:14 30:20
exhausting
  26:10
Exhibit  6:17
  7:1 16:11
  17:2,8,16,21
  23:19 25:4
  27:8,11,13,14
Exhibits  6:16
explain  10:6

_____

          F

facility
  12:20 15:23
  16:4,5 24:1
  25:9

fair  8:18
familiar  5:14
  9:18 11:23
familiarity
  9:21,22
family's  18:4
father/son
  13:20
February
  30:21
fee  25:14
feel  5:22
fees  25:1,13,
  15,20,22,25
  26:3
filed  26:13,
  15,17,19
files  19:19
final  31:17
finance  27:6
find  27:20
  31:1
fine  28:20
finish  6:1
finished  6:3
first  4:23
  5:16 16:14
  17:19 27:8
focus  30:7
focusing
  17:19
follow  6:1
follows  4:25
formal  26:13
forward
  22:11,12
frankly  27:25
free  5:22
front  17:16
full  5:8
  22:6,11
funds  31:21
future  13:12

_____

          G

general  9:20
gentleman
  12:25 13:4

Peter Allard
July 27, 2023

19:23
gentleman's
  11:22
gentlemen
  13:12
give  9:20
  29:14
glance  7:6
going  6:14,16
  7:22 16:10
  17:12 19:9
  23:19 26:5
  30:18 31:1
good  5:3,19
  28:21 29:3
great  7:7
ground  10:16
guess  17:1
  18:13 24:4,10
guys  16:2
  30:24

**H**

handling
  19:25
happened  11:5
  22:16
happy  28:18
hardware  8:16
  10:2
head  13:5
  27:7 29:18
hear  21:5
heard  18:17
hearing  5:18,
  20
held  25:8
helpful  17:11
  27:25
historically
  14:3
Holdings  5:5
holdup  22:14,
  20
host  10:5
hosting  10:7,
  9,12,14,19,21
  12:18 13:15,
  18 14:16

24:13,18,20
  25:1,11

**I**

identified
  30:22
immersion
  13:16
important
  5:23
importantly
  28:5
incident
  23:16,18
include  21:17
incorporated
  8:8
indicate  4:15
individuals
  10:10
industry  9:25
  10:1 12:16
inform  27:18
information
  11:17 12:21
  18:5 20:5
  26:4 29:17
  31:11
infrastructure
  13:16
initial  13:1
  21:22 31:15
inside  10:12
  13:18,21
  14:16
intent  27:17
intention
  19:14
interest
  18:4,9,10
interested
  12:21
interesting
  13:11
International
  13:15 14:10,
  14,22 18:7
introduction
  12:17 13:5

involved  12:9
  16:17 26:6
involvement
  14:14
issue  23:7
issues  14:4
  23:3

**J**

July  4:2
jurisdiction
  26:17

**K**

kind  22:15,18
know  5:18,20
  11:10,14,19
  13:20 14:4,12
  16:12 17:23
  18:4 19:8
  21:11 25:21,
  25 26:15,17
  27:4,23
knowledge
  11:15,24 12:5
  14:7,8,11,12,
  23 15:12,14,
  22 16:1,20
  17:6 18:1,9,
  12 20:25
  21:1,22 24:7,
  25 25:3
  26:10,24 27:2
known  11:15

**L**

label  6:16
  16:11
Lane  9:1
language
  25:18
largely  9:13
late  8:9
  26:16
lawsuit  26:13
legal  22:24
  23:6

Leyh  4:17
  29:2,3 31:6
lieu  4:9
likewise  5:19
Limited  4:18
  11:23 12:1,9,
  12,24 14:9,
  14,21,24
  15:11,20
  16:18 18:7
  19:1,15 22:18
  24:24 28:4,
  17,24 29:3
  30:23
liquid  13:16
list  28:16
  30:18
litigation
  22:15
little  5:17
  10:6 13:9
  22:19
located  8:23,
  24 11:14
location  16:1
locations
  29:22
long  8:6
look  7:5
  17:10,11
looking  12:18
  13:25 14:4
  16:7 28:18
lost  17:6
low  30:25

**M**

machines
  12:13 29:10,
  19 30:1,2,3,
  4,8,14,20,22
  31:8,14,25
made  12:17
  20:11 25:7
  27:3 28:8
maintenance
  10:17
make  12:24
  14:25 17:15

making  21:5
manages  8:11
manner  4:13
manufacturer
  11:12 15:2
  18:25
manufacturing
  23:3
Mark  11:22
matter  4:11
  27:18
Matthew  13:7,
  9,20,23 17:7,
  22,23 18:1,8,
  13 23:24
matthew@get.
love  17:5,7
matthew@get.
love.  17:4
means  10:7
medication
  6:22
member  14:9
mentioned
  18:6,15
Merchant
  13:8,9,10,23
  14:2,7,9
  17:7,22,23
  18:1,8,13,17
  23:24 25:5
Merchants
  11:24 12:5,
  16,18 13:19
miners  10:5,7
  19:9 22:17
Minerva
  11:13,21
  12:14,23
  13:17 14:15,
  19 15:1,4,14,
  17 18:21,23
  19:21 20:19,
  24 21:2,3,7,
  9,11,13 22:2,
  3,7,23,25
  23:2,7,9,12,
  15 26:1,7,8,
  11,13,18,20,
  25 27:5 28:7,
  9 29:7,8,9,

20,25 30:8,
  12,20 31:8,
  20,22,24
minimum  22:9
  31:15
mining  9:25
  10:1,3 18:18
minute  14:13
  17:9
model  9:15
modify  24:4
money  27:5
  31:19
month-to-month
  24:18
morning  5:3
  29:3
motivate  26:8
Mott  11:22
mutual  12:16
MV7  18:21

_____

N

name  4:16
  5:3,8 7:18
  9:5 11:22
  13:4,14 19:23
named  18:7,17
need  5:21
  14:25 17:10
never  10:21
  13:24 24:19,
  20
Nick  4:19 5:3
nondelivery
  31:25
North  5:4 6:8
  7:13,15,16,
  19,23 8:3,6,
  10,17,19,23,
  24 9:6,7,10,
  11,12,13,14,
  18 10:1,2,4,
  8,13,20,22,
  23,24,25
  11:1,2,3,8,25
  12:2,3,7,8,
  11,13,14,20,
  22,23 13:17

14:15,24
  15:5,8,13,19,
  20,23 16:4,
  15,16,18,20,
  21,24 17:3,22
  18:24 19:1,2,
  4,8,9,13,17,
  18,20,22,24,
  25 20:9,12,
  13,17,18,21
  21:3,4,8,9,
  12,14,20
  22:2,3,6,18,
  23 23:1,6,12,
  13,24 24:1,6,
  7,10,16,21,23
  25:1,6,7,8,11
  26:6,8 27:5,
  18,24 28:2,3,
  7 29:7,9,10
  30:1,7,15,19,
  23 31:7,12,
  13,21,24
North's  6:12
  19:14 26:20
note  21:5
notice  17:21
noticed  16:14
notification
  30:25
number  7:1
  11:5 12:13
  20:6 21:2,7,
  11 23:19
  29:15

_____

O

oath  4:9
objections
  4:13
obligated
  26:21
obligation
  21:13,14
Obviously
  24:19
occasions
  11:5 27:24
occurred  16:3

offered  9:24
officer  14:9
okay  5:14 6:8
  7:1,4,7,22
  9:6,8 14:19
  16:10 17:11,
  18 18:6 19:7
  20:12 22:6
  23:22 27:10
  28:15,21,22
  29:16,19,24
  30:7,14,18,19
  31:2,12
once  16:12
one  5:13 6:19
  8:7 13:7
  14:10 17:20
  26:24
online  24:8
open  7:2,4
  16:12
operation  8:6
operational
  10:11
operations
  9:17 10:17
  14:1
operator  10:9
options  13:2
order  22:23
  29:11
ordered  30:1,
  8,14
originally
  12:17 15:23,
  25
outside  16:7
  23:13
outstanding
  21:8,12
owe  27:5
  31:19

_____

P

p.m.  31:4,5
page  17:1,6,
  20 23:23
  27:13

Peter Allard
July 27, 2023

pages  27:9,
 10,15,17
paid  21:22,24
 22:3,6 25:25
part  18:10
 21:5 25:15
Partial  31:14
participate
 6:21
participating
 4:5
particular
 15:14 16:17
 17:25 19:25
 20:3 23:16,18
 24:24
parties  4:12
 13:1 24:4
passed  22:10,
 12 31:22
past  5:13
pay  21:20
 22:2
paying  25:16
payment
 31:14,17
payments
 24:23 27:1,3
 28:8 31:13
penalty  4:11
pending  5:5
percent
 21:23,24
perjury  4:11
person  4:10
 19:24
Peter  4:21
 5:10
phone  20:7,8
physical
 10:17
physically
 4:6
picture  14:3
Plan  4:20 5:4
play  13:23
please  4:15
 5:8 15:16
 16:11 17:14

point  25:11
 27:9 29:23
points  13:22
portion  29:11
position  7:20
possible
 26:9,11 31:16
possibly  13:7
power  31:1
practice
 16:21
present  4:7
 6:16
president
 7:15,21
pretty  5:19
 13:11
prevent  6:23
preventing
 23:4
previously
 12:19
price  20:14,
 21 22:6
primarily
 13:23
primary  19:24
prior  25:11
problem  5:19
problems  5:17
produce
 28:11,14
produced
 28:10
projects  9:16
provide
 10:13,15,16
 19:15,21
 24:11,12
provided
 12:25 13:5
 15:8,20 18:25
 23:25 24:20
providing
 10:20 11:11
pull  16:10
 23:21
purchase
 8:12,19,21
 12:22 19:3

 20:13,14,17,
 21 22:6,23
 25:18
purchased
 12:13,14
 14:21,23,25
 21:16 29:22
put  16:10

_____

Q

question
 5:21,23 6:19,
 20 8:11 11:12
 12:25 13:18
 15:16 17:14
 22:9 24:8
 25:18 30:4
questions
 6:3,24 17:13
 28:23,25
 29:4,5
quick  30:24
 31:2
quickly  26:9

_____

R

re-download
 17:9
read  27:14,19
real  30:24
reason  6:20
reasons  23:17
recall  11:6
 13:4 16:6,8
 20:5,14,24
 25:7,24 26:4
receipt  27:2
receive  6:11
 24:23 25:1
 30:19
received  7:5
 22:10,11
 31:13,15,16,
 21
receiving
 26:25
recollection
 18:2

record  4:16
 5:9 31:4,5
records  21:21
redirected
 24:15
refer  7:23
 8:2 9:5,7
 28:20
reference
 16:19 25:17,
 23 26:2,23
 27:6 29:14
referencing
 18:20 20:23
referral
 12:17 13:1
referring
 8:2,3 12:2
 14:20
regard  31:24
regarding
 20:3
related  24:24
 27:22
relation
 12:23
relationship
 7:13 9:10
 13:22
relevant  8:1
 28:9
remain  24:16
remaining
 21:24
remember
 11:20 13:3
 20:21
reminders
 5:15
remote  5:16
remotely  4:8
repeat  5:21
 15:16 17:14
 21:6
REPORTER  4:5
reporter's
 7:9
reporting
 4:8,14

Peter Allard
July 27, 2023

represent  5:4
representing
  18:1,3
requesting
  27:22
requiring
  6:11
reroute  24:4
resale  8:22
resolve  14:4
responding
  6:4
response
  25:6,7
responsible
  25:19,21 26:3
review  14:5
right  6:6,9,
  14 7:22 8:6
  14:17 15:9,11
  18:9,20 20:19
  21:18 23:7,10
  24:1,11,21
  30:9,12 31:20
ringing  18:19
Ro  19:23
role  13:23
roles  13:21
  15:1
room  4:7
running  30:25

—————————

S

sale  8:12
  10:25
saying  19:10
  26:5
scroll  17:1
see  16:13
  18:21 25:4,6
  26:2 27:12
seeking  10:11
sell  8:20
  10:2
Semiconductor
  11:13,21
send  28:16,18
separate  11:7

September
  30:21
servers  8:12,
  13,14,15,16,
  20 10:3,10,25
  11:11
service  8:15
  25:1
services  9:24
  10:13,14,19
  12:19 13:15
  24:11,13,20
  25:12
set  13:1
share  18:5
shipped
  20:24,25
  21:4,9,12
  22:21 29:7
shipping
  25:14
Shirole  19:23
  20:3
shortly  28:13
showing  28:6,
  8
signature
  16:14,22
similar  10:19
  25:7
single  11:4
skimmed  27:16
slightly  9:15
Solutions  6:9
  7:14,15,19
  9:6
somewheres
  19:19
sort  9:20
  10:13 18:13
  24:4 25:14
  31:23
sounds  28:21
Southern  5:6
space  13:19
  14:17
speaking  6:1
specific
  11:17 17:10
  28:4,16 29:15

30:14
specifically
  8:11 25:24
  28:12
standard  6:19
standup  13:12
start  17:24
state  5:8
  22:22
statement
  21:6 22:25
stating  4:16
step  22:1
Steve  29:3
Steven  4:17
string  17:20
struck  19:3
subject  27:18
submitted
  22:24
Subpoena
  6:11,15 16:7
  27:11,13
  28:11
subsequent
  19:12
subsidiary
  9:12
suit  26:18
supposed
  15:21,22
  30:11
sure  14:25
  17:15 31:3
sworn  4:23

—————————

T

T100th  30:20
take  31:3
taken  13:21
talk  5:25
  27:21
talking  7:23
  15:18 21:17
  29:6,25
team  13:21
  27:6

tell  13:9
  22:21
telling  27:20
tells  21:15
temporary
  24:12,14
Terra  13:15
  14:10,14,22
  18:7
testified
  4:25
testify  4:23
testimony
  4:11
Texas  4:1 5:6
  8:24 9:1
Thank  5:7
thanks  17:18
thing  5:23
  9:13
things  28:9
think  12:25
  14:3,13 17:11
  22:14 23:5
  29:4
thinking  12:4
Thursday  4:2
time  15:24
  18:2,16 19:3,
  7 20:5 23:7,
  13 24:9,17
  25:21,24 26:4
  27:4 28:23
title  27:11
today  5:7
  6:16,21 7:11,
  24 28:15
told  31:12
tomorrow
  28:16
Tony  13:8,10,
  20 14:2,3,7,9
top  13:4 27:7
  29:17
topics  27:23
total  29:11
  30:4
transaction
  11:4,8 16:17
  19:25 20:4

—————————

Peter Allard
July 27, 2023

25:15 28:5

**transactions**
11:7 12:10
23:12

**transcribed**
5:24

**transportation**
25:20,22,25

**True**  6:8,12
7:13,15,16,
19,23 8:3,6,
10,17,19,23,
24 9:6,7,10,
11,12,13,14
10:1,2,4,8,
13,23,25
11:2,8 12:2,
3,7,8,11,14,
23 15:5,19
16:4,15,16,
20,21,24
18:24 19:2,8,
13,17,24,25
20:9,13,18
21:3,8,14,20
22:2,3,6,23
23:1,6,12
24:1,6,10,16,
21,23 25:1,8,
11 26:6,8,20
27:5,18,24
28:2,3,7
29:7,9,10
30:19 31:7,
12,21,24

**truth**  4:23,24

**try**  6:14
29:24 30:6
31:1

**turn**  27:9
28:23 31:2

**turns**  7:25

**two**  11:6
12:10 18:8,15

**type**  8:13,14

**types**  10:18

**typically**
25:15

**U**

**unaware**  21:3,
9

**undelivered**
22:25 23:18

**understand**
5:22 8:4
12:12 15:1
20:17

**understanding**
6:23 8:18
9:21,23 10:18
13:13,25 18:6
22:13,20
23:23 24:3
26:7

**undertake**
28:14

**unfulfilled**
22:22

**units**  18:21
19:15,22
20:13,18,22,
24,25 21:2,7,
11,17,20
22:4,21 23:25
24:5,15,19,22
25:8,14 26:9,
22 27:1,5
29:7

**unknown**  24:17

**unshipped**
21:3

**updates**  12:21

**upload**  6:18

**V**

**various**  29:22

**verbally**  4:10

**video**  31:2

**visibility**
15:12

**W**

**wait**  5:25 6:3

**waiting**  6:18

**waive**  4:13

**want**  26:16
27:9 30:7

**wanted**  17:15

**way**  8:1 13:17
28:20

**wiped**  20:10

**witness**  4:10,
22

**work**  5:20

**works**  5:15

**Y**

**yeah**  12:4,12,
25 14:6 17:15
20:8 22:22
31:15

**year**  8:7,8
26:16

**Z**

**Zip**  9:1

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)          Exhibit D

# UNITED STATES BANKRUPTCY COURT

__Southern__ District of __Texas__

In re __Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.)__

Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __22-90273__

Chapter __11__

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __True North Data Solutions (U.S.), Inc.__

*(Name of person to whom the subpoena is directed)*

☑ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  **see Exhibit to Subpoena**

| PLACE | DATE AND TIME |
|---|---|
| remote video conference (instructions for attending to be provided) | July 26, 2023 at 10:00a.m. (central time) |

The deposition will be recorded by this method:  **court reporter (audio and video)**

☑ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  **See Exhibit to Subpoena**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __06/30/2023__

CLERK OF COURT

OR  _____

_____
Signature of Clerk or Deputy Clerk

_____
Attorney's signature

EXHIBIT
PENGAD 800-631-6989
*Allard #1*
7.27.23

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Tribolet Advisors LLC, as Plan Administrator, who issues or requests this subpoena, are:
Nick Brown, Esq., ASK LLP, 2600 Eagan Woods Dr., Ste. 400, St. Paul, MN 55121 nbrown@askllp.com 651-289-386

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)          Exhibit D

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: True North Data Solutions (U.S.), Inc.

on *(date)* __06/30/2023__

[X] I served the subpoena by delivering a copy to the named person as follows: By cert mail to True North Data Solutions (U.

_____ Inc., to the attention of Corporation Service Company, Registered Agent, 251 Little Falls Drive

Wilmington, DE 19808 _____ on *(date)* __06/30/2023_____ ; or

[ ] I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ 40.00 _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)                                    Exhibit D

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit D

# Exhibit to Subpoena

PLEASE TAKE NOTICE, that pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, made applicable by Federal Bankruptcy Rules 7030 and 9016, True North Data Solutions (U.S.) Inc. ("True North"), is hereby requested to designate and produce for deposition one or more of its employees, officers, agents or other persons duly authorized to testify about and produce all documents regarding the following matters:

1. Any and all business transactions between True North and Compute North, LLC involving Bob's Limited, at any time between January 2021 and September 2022.

2. Any and all business transactions between Compute North, LLC and Bob's Limited involving True North, at any time between January 2021 and September 2022.

3. The purchase of approximately 300 Minerva units by Bob's Limited from Compute North, LLC in 2021.

4. The shipment to True North of approximately 300 Minerva units by or on behalf of Compute North, LLC and/or Bob's Limited, at any time between August 2021 and September 2022.

5. Any payments True North made or received from Compute North, LLC between August 2021 and September 2022 in connection with the Minerva units referenced in #3 and #4, above.

6. Any payments True North made or received from Bob's Limited between August 2021 and September 2022 in connection with the Minerva units referenced in #3 and #4, above.

7. All communications between True North and Bob's Limited regarding or related to Compute North, LLC between January 2021 and the present.

1

Exhibit D

8. All communications between True North and Compute North, LLC regarding or related to Bob's Limited between January 2021 and the present, including but not limited to the email communications attached hereto.

Pursuant to Rule 30(b)(6), True North has a duty to confer with the Plan Administrator in good faith about the matters for examination and to designate each person who will testify.

A check for the attendance fee accompanies this Subpoena. Any eligible travel fees under 28 U.S.C. 1821 shall be reimbursed.

Once you are ready to confer about the matters for examination, or should you have any questions about this Subpoena, please contact Nicholas Brown at nbrown@askllp.com or 651-289-3867.

Exhibit D

## Re: Transition

Peter Allard <peter@truenorthds.com>
Wed 11/17/2021 6:19 AM
To: matthew@get.love <matthew@get.love>;Ro Shirole <ro.shirole@computeholding.com>
Cc: TNDS Finance <finance@truenorthds.com>
Matthew,

Your message has been received and confirmed.

Regards,

Peter Allard
President
c.1-780-983-8159
e. peter@truenorthds.com



---

**From:** matthew@get.love <matthew@get.love>
**Sent:** November 17, 2021 2:40 AM
**To:** Peter Allard <peter@truenorthds.com>; Ro Shirole <ro.shirole@computenorth.com>
**Cc:** TNDS Finance <finance@truenorthds.com>
**Subject:** Re: Transition

Good morning gents—

Thanks for your email Peter.

I confirm and acknowledge and agree to the transition of the 300 Minervas to True North. I confirm that we want the 300 Minerva's which we ordered through Compute North to be sent directly to True North in Alberta from Minerva in China. They should not go to the USA at all but rather should go to True North in Alberta directly from Minerva.

Many thanks and best regards,
Matthew Merchant



**From:** Peter Allard <peter@truenorthds.com>
**Date:** Tuesday, 16 November 2021 at 20:40
**To:** Ro Shirole <ro.shirole@computenorth.com>, matthew@get.love <matthew@get.love>
**Cc:** TNDS Finance <finance@truenorthds.com>
**Subject:** Transition

Gentlemen,

After having the opportunity to communicate with each of you independently I can confirm that the request to have (300) Minerva MV7 units re-directed from the Compute North facility to the True North facility has not been contested and we will be free to continue as discussed.

I would request that each Ro and Matthew respond to this email chain with acknowledgement and agreement to this transition to ensure that we maintain proper transparency.

Feel free to contact me directly if there are any questions or concerns.

Regards,

Peter Allard
President
c.1-780-983-8159
e. peter@truenorthds.com



Exhibit D

**Re: Transition**

Peter Allard <peter@truenorthds.com>
Wed 11/17/2021 6:19 AM
To: matthew@get.love <matthew@get.love>;Ro Shirole <ro.shirole@computeholding.com>
Cc: TNDS Finance <finance@truenorthds.com>
Matthew,

Your message has been received and confirmed.

Regards,

Peter Allard
President
c.1-780-983-8159
e. peter@truenorthds.com



---

**From:** matthew@get.love <matthew@get.love>
**Sent:** November 17, 2021 2:40 AM
**To:** Peter Allard <peter@truenorthds.com>; Ro Shirole <ro.shirole@computenorth.com>
**Cc:** TNDS Finance <finance@truenorthds.com>
**Subject:** Re: Transition

Good morning gents—

Thanks for your email Peter.

I confirm and acknowledge and agree to the transition of the 300 Minervas to True North. I confirm that we want the 300 Minerva's which we ordered through Compute North to be sent directly to True North in Alberta from Minerva in China. They should not go to the USA at all but rather should go to True North in Alberta directly from Minerva.

Many thanks and best regards,
Matthew Merchant

---

**From:** Peter Allard <peter@truenorthds.com>
**Date:** Tuesday, 16 November 2021 at 20:40
**To:** Ro Shirole <ro.shirole@computenorth.com>, matthew@get.love <matthew@get.love>
**Cc:** TNDS Finance <finance@truenorthds.com>
**Subject:** Transition

Exhibit D

Gentlemen,

After having the opportunity to communicate with each of you independently I can confirm that the request to have (300) Minerva MV7 units re-directed from the Compute North facility to the True North facility has not been contested and we will be free to continue as discussed.

I would request that each Ro and Matthew respond to this email chain with acknowledgement and agreement to this transition to ensure that we maintain proper transparency.

Feel free to contact me directly if there are any questions or concerns.

Regards,

Peter Allard
President
c.1-780-983-8159
e. peter@truenorthds.com

