## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | § § § § § | Case No. 22-90273 (MI) (Jointly Administered) |
| Reorganized Debtors.[1] | § § § | |
| TRIBOLET ADVISORS LLC, in its capacity as Plan Administrator and Trustee for the Mining Project Wind Down Holdings, Inc. Litigation Trust, | § § § § § § | Adv. Pro. No._____ |
| Plaintiff, | § § | |
| v. | § § § | |
| CORPUS CHRISTI ENERGY PARK, LLC and BOOTSTRAP ENERGY, LLC, | § § § | |
| Defendants. | § § | |

## **COMPLAINT**

---

[1]    The Reorganized Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238).  The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

Tribolet Advisors LLC, in its capacity as plan administrator for the confirmed *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* (the "Plan")[2] and trustee for the litigation trust established under the Plan (the "Plaintiff"), hereby files this adversary complaint (the "Complaint") against Corpus Christi Energy Park LLC ("CCEP") and Bootstrap Energy, LLC ("Bootstrap" and, together with CCEP, the "Defendants").  In support of the Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1.      Plaintiff is successor to Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its debtor affiliates (collectively, the "Debtors" and, as of the Plan's effective date, the "Reorganized Debtors").  By the Complaint, Plaintiff seeks to recover damages for breach of contract and violations of the automatic stay, to avoid certain preferential and fraudulent transfers, and to disallow the Defendants' claims.

2.      Certain of the Debtors—including Mining Project Wind Down Corpus Christi LLC f/k/a CN Corpus Christi LLC ("CNCC")—were parties to commercial arrangements with the Defendants.  These arrangements included a contract between CNCC and CCEP pursuant to which CCEP was obligated to design and construct a facility in Corpus Christi, Texas (known as the "Bootstrap Facility").  CCEP, however, failed to perform under the contract.  Plaintiff is therefore entitled to damages arising from CCEP's material breaches of its contractual obligations.

3.      Further, during the Debtors' bankruptcy cases, while the automatic stay remained in effect, the Defendants impermissibly attempted to exercise control over property of the Debtors' bankruptcy estate by marketing the Bootstrap Facility in which the Debtors' estates had an interest.

---

[2]      Case No. 22-90273, Docket No. 889.

Plaintiff is therefore entitled to damages on account of the Defendants' willful violation of the automatic stay.

4.      Plaintiff is further entitled to avoid certain transfers made and obligations incurred by the Debtors, including (i) preferential transfers to the Defendants during the 90 days prior to the Debtors' bankruptcy filings and (ii) constructively fraudulent transfers made while the Debtors were insolvent and for which the Debtors did not receive reasonably equivalent value.

5.      Finally, Plaintiff seeks to disallow the proofs of claim filed by the Defendants in the Debtors' bankruptcy cases.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and section 12.1.5 of the Plan.

7.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This adversary proceeding is a "core" proceeding within the meaning of 28 U.S.C. § 157(b).  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      This adversary proceeding relates to the chapter 11 cases captioned *In re Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), et al.*, which were filed in this Court under title 11 of the United States Code (the "Bankruptcy Code") and are jointly administered under Case No. 22-90273 (MI).

## PARTIES

10.     Plaintiff is the plan administrator for the Plan (the "Plan Administrator") and trustee for the litigation trust established under the Plan (the "Litigation Trust").  Pursuant to the Plan, Plaintiff is the sole representative of the Reorganized Debtors' estates and has authority to administer, pursue, prosecute, litigate, settle, dismiss, or otherwise take action with respect to the Debtors' claims and causes of action against the Defendants.[3]

11.     CCEP is a Texas limited liability company, having an address at 3838 Oak Lawn Avenue, Suite 1000, Dallas, Texas 75219.

12.     Bootstrap is a Texas limited liability company, having an address at 3838 Oak Lawn Avenue, Suite 1000, Dallas, Texas 75219.

## PROCEDURAL BACKGROUND

13.     On September 22, 2022 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.

14.     On February 16, 2023, the Court confirmed the Plan, which provided for the appointment of the Plan Administrator and establishment of the Litigation Trust.  The effective date of the Plan occurred on March 31, 2023 (the "Effective Date").[4]

15.     On the Effective Date, pursuant to Bankruptcy Code section 1123(b), certain retained claims and causes of action (the "Retained Causes of Action") were transferred and vested in the Litigation Trust.[5]  The Retained Causes of Action include all the Debtors' rights, remedies, claims, and causes of action against the Defendants.[6]  Plaintiff, as Plan Administrator and trustee

---

[3]     Plan § 4.2.8.

[4]     Docket No. 1082.

[5]     Plan § 4.2.8.

[6]     The Retained Causes of Action are described in the *Schedule of Retained Causes of Action* [Docket No. 818].

for the Litigation Trust, has authority to administer, pursue, prosecute, litigate, settle, dismiss, or otherwise take action in furtherance of resolving each Retained Cause of Action.

## **FACTUAL BACKGROUND**

16.     The Debtors were developers and managers of computer data centers, providing facilities, energy, and related services for cryptocurrency mining customers.

17.     Prior to the Petition Date, certain Debtors entered into contractual agreements with the Defendants.  The most significant of these agreements was that certain *Agreement Between Owner and Design-Builder Lump Sum*, dated March 16, 2022, between CNCC and CCEP (the "DB Contract").  The DB Contract required CCEP to design and build the Bootstrap Facility in accordance with the terms thereof.

18.     The Bootstrap Facility was to be built on approximately 33.5 acres of land located at 1290 McKinzie Road, Corpus Christi Texas 78410 (the "Project Site"), which is owned by Bootstrap.  Upon completion, the Bootstrap Facility would consist of a 300-megawatt high voltage substation connecting to the Electric Reliability Council of Texas ("ERCOT") transmission grid, together with an office building, utility connections, and other improvements.  The Bootstrap Facility was anticipated to have the capacity to host approximately 167 modular containers.

19.     In March of 2022, Bootstrap offered to procure and deliver a 3-Phase, 250MVA, Power Transformer (the "Transformer") to the Debtors for use at the Bootstrap Facility.  The related purchase order, PO00026, dated May 12, 2022 (the "Transformer PO") provided for a total purchase price of $4,568,950.00, with an initial payment of $454,250.00 being due by March 31, 2022 (the "Slot Reservation Payment").  The Debtors made the Slot Reservation Payment on March 30, 2022.  The Transformer was never delivered and, upon information and belief, remains in Bootstrap's possession.

20.     The DB Contract was executed on March 16, 2022.  The DB Contract required CCEP to deliver certain items to CNCC by dates specified therein.

21.     *First*, the DB Contract included a representation and covenant that CCEP would furnish a letter of agreement with AEP Texas that was satisfactory to CNCC (the "AEP Letter Agreement").  The AEP Letter Agreement would provide CNCC with 300 megawatts of interconnection capacity.  CCEP was required to provide the AEP Letter Agreement within 60 days of execution of the DB Contract.  The deadline to provide the AEP Letter Agreement expired on May 15, 2022 (the "AEP Deadline").

22.     *Second*, the DB Contract required CCEP to convey fee title to the Project Site to CNCC by no later than June 6, 2022 (the "Title Deadline").

23.     In connection with the execution of the DB Contract and development of the Bootstrap Facility, the Debtors made payments to CCEP in the aggregate amount of $11,786,976.90 (the "DB Payments").[7]  CNCC made the DB Payments in reliance upon CCEP performing its obligations under the DB Contract, which included, among other things, delivering a satisfactory AEP Letter Agreement by the AEP Deadline and fee title to the Project Site by the Title Deadline.

24.     In February of 2022, prior to the execution of the DB Contract, CCEP had provided CNCC with a draft AEP Letter Agreement (the "February AEP Draft").  CNCC determined that CCEP was an attractive partner for the Bootstrap Facility, in part, because CNCC understood that CCEP had already completed 300-megawatt load studies with the local utility, AEP Texas, with respect to the Project Site.

---

[7]     The DB Payments consist of a $3,134,380 payment made by wire on February 4, 2022, a $8,005,500 payment made by wire on March 16, 2022, and a payment of $647,096.90 made on August 30, 2022.

25.     On May 13, 2022, CCEP provided another draft AEP Letter Agreement to CNCC that contained material adverse changes from the February AEP Draft and was unsatisfactory to CNCC.  CCEP acknowledged these deficiencies at the time and informed CNCC that AEP Texas was taking action to revise the AEP Letter Agreement.

26.     CCEP misrepresented its ability to produce a satisfactory AEP Letter Agreement. Further, the DB Contract expressly provided that an AEP delay was not a force majeure event for purposes of CCEP's obligation to present a satisfactory AEP Letter Agreement to CNCC.  CCEP's failure to deliver the AEP Letter Agreement by the AEP Deadline constituted a breach of the DB Contract.

27.     CCEP additionally failed to honor its obligation to transfer fee title to the Project Site to CCEP by the Title Deadline, which also constituted a breach of the DB Contract.

28.     On June 7, 2022, CNCC sent CCEP a letter stating that CCEP was in breach of the DB Contract.  In particular, the letter explained that CCEP had represented that it had received a draft of the AEP Letter Agreement for a total of 550 megawatts that would provide CNCC with a point of delivery for 300 megawatts of electricity consumption on a timeline that would permit substantial completion of the Bootstrap Facility by October 31, 2022, and CCEP covenanted to present the AEP Letter Agreement for 300 megawatts of customer interconnection by the AEP Deadline.  The letter explained that, due to CCEP's breach of the DB Contract, CNCC was entitled to terminate the DB Contract and receive a refund of all amounts paid under the DB Contract and that CNCC was placing a hold on future payments due to CCEP's breaches.

29.     In response to CNCC's June 7 letter, CCEP sent CNCC a notice letter on June 16, 2022 stating (i) CCEP was stopping work for CNCC's failure to pay amounts allegedly owed after CCEP's submission of an application for payment in the amount of $647,096.90 under the *Design-*

*Build Change Order Form*, Change Order No. CO-10001, rev1, dated May 12, 2022 (the "<u>Change Order</u>"), pertaining to the procurement of distribution circuit breakers; and (ii) that an excused delay had occurred due to a change in policy by ERCOT affecting its interim large load interconnection process.  CCEP stated in its June 16 letter that ERCOT's policy change affected the timing of the execution by AEP of the AEP Letter Agreement.

30.     On August 10, 2022, CCEP presented another draft AEP Letter Agreement to CNCC that was again unsatisfactory to CNCC due to material adverse changes from the February AEP Draft.  These material adverse changes included, among other items, deletion of a target completion date for the temporary tap work, which would have an adverse impact on the project's schedule, and substantial changes to the security posting requirements, which would have an adverse impact on the project's costs.

31.     On August 11, 2022, CCEP sent CNCC a "Notice of Intent to Terminate for Cause" based upon CNCC's alleged failure to make an initial payment in the amount of $718,996.56 that was due upon execution of the Change Order.

32.     On August 18, 2022, CNCC, through counsel, provided CCEP with notice that CCEP had materially breached the DB Contract by violating its representation and covenant to provide a satisfactory AEP Letter Agreement to CNCC and failing to convey fee title to the Project Site by the applicable deadlines.

33.     In reliance upon CCEP fulfilling its obligations under the DB Contract, the Debtors, in total, invested more than $12 million in the development of the Bootstrap Facility.

34.     Between August 24, 2022 and September 20, 2022, during the 90-day preference period, Debtor Compute North LLC ("<u>CN LLC</u>") made the following transfers to Bootstrap:

| Payment Date | Payment Amount |
|---|---|
| 08/24/2022 | $7,000.00 |
| 08/30/2022 | $647,096.90 |
| 08/31/2022 | $7,000.00 |
| 09/09/2022 | $7,000.00 |
| 09/14/2022 | $7,000.00 |
| 09/20/2022 | $7,000.00 |
| **Total** | **$682,096.90** |

(collectively, the "Preferential Transfers").[8]  The Preferential Transfers were made under duress after the Defendants threatened to terminate the DB Contract if these payments were not made.

35.     After the Petition Date, on November 12, 2022, CCEP filed a proof of claim against CNCC in the amount of $14,906,026.00 for amounts CCEP alleges that it is owed under the DB Contract and related change orders (Claim No. 10057, the "CCEP Claim").  On the same date, Bootstrap filed a proof of claim against CNCC in the amount of $4,114,700.00 for amounts Bootstrap alleges that it is owed under the Transformer PO (Claim No. 10058, the "Bootstrap Claim" and, together with the CCEP Claim, the "Proofs of Claim").

36.     While the chapter 11 cases were ongoing and the automatic stay remained in effect, the Defendants, upon information and belief, began pursuing a potential new partner to finish the Bootstrap Facility.  Bootstrap posted a public advertisement on its LinkedIn page that it would be attending an industry event and further requesting that attendees inquire about its Corpus Christi Energy Park project.

37.     On December 15, 2022, due to CCEP's repeated breaches of its obligations under the DB Contract, counsel for the Debtors sent a letter to counsel for the Defendants notifying the Defendants that the Debtors were terminating the DB Contract for cause, as provided in the DB Contract.  The Debtors expressly reserved their ability to pursue all rights and remedies available

---

[8]     To the extent there were additional transfers made to the Defendants during the preference period, Plaintiff reserves the right to supplement the request for recovery.

to them with respect to existing breaches of the DB Contract as well as any additional rights and remedies under the Bankruptcy Code.

38.     On December 20, 2022, the Court entered an agreed order providing that (i) the DB Contract was deemed terminated as of the date of the order and (ii) any and all existing claims and defenses of the parties arising from the DB Contract were preserved for future determination by the Court.

## CAUSES OF ACTION

### Count One
### (Breach of Contract)

39.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

40.     On March 16, 2022, CNCC and CCEP entered into the DB Contract, and the DB Contract was a valid, legally binding, and enforceable contract between CNCC and CCEP.

41.     CNCC complied with the applicable provisions of the DB Contract, or CCEP waived those provisions or is estopped from asserting any purported non-compliance with those provisions.

42.     CCEP breached the DB Contract by, among other things, (i) repeatedly failing to deliver a satisfactory AEP Letter Agreement to CNCC and (ii) failing to convey fee title to the Project Site.

43.     These breaches constituted defaults under the DB Contract.

44.     CNCC suffered damages in an amount not less than $11,786,976.90 as a direct and proximate result of CCEP's material breaches of the DB Contract.

45.     In view of the foregoing, Plaintiff is entitled to a monetary judgment in an amount to be determined at trial, but which is not less than $11,786,976.90, plus attorneys' fees, costs and expenses, and interest.

## Count Two
**(Violations of Automatic Stay)**

46.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

47.     The automatic stay arising under Bankruptcy Code section 362(a) prohibits, among other things, any act to obtain possession of property of the estate or to exercise control over property of the estate.

48.     The Debtors had a legal or equitable interest in the Bootstrap Facility, and, under Bankruptcy Code section 541, the Debtors' legal or equitable interest became property of their bankruptcy estates upon the Petition Date.

49.     Despite having actual knowledge of the Debtors' chapter 11 cases, the Defendants took steps to market the Bootstrap Facility.

50.     By marketing the Bootstrap Facility while the automatic stay was in effect, the Defendants knowingly and willfully attempted to exercise control over property of the Debtors' bankruptcy estates in violation of the automatic stay.

51.     In view of the foregoing, Plaintiff is entitled to recover actual and punitive damages for the Defendants knowing and willful violations of the automatic stay.

## Count Three
**(Avoidance of Preferential Transfers – 11 U.S.C. § 547(b))**

52.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

53.     Within 90 days of the Petition Date, the Debtors made the Preferential Transfers to the Defendants in an aggregate amount of not less than $682,096.90.

54.     Each Preferential Transfer was made by CN LLC and constituted a transfer of an interest in property of CN LLC.

55.     Each Preferential Transfer was made on or within 90 days before the Petition Date.

56.     Each Preferential Transfer was to or for the benefit of a creditor within the meaning of Bankruptcy Code section 547(b)(1) because (i) the Defendants were creditors of the Debtors with respect to which such Preferential Transfer was made and (ii) each Preferential Transfer reduced or satisfied a debt or debts then owed by the Debtors to the Defendants.

57.     Each Preferential Transfer was made while the Debtors were insolvent.  Plaintiff is entitled to the presumption of insolvency for each transfer made within 90 days of the Petition Date pursuant to Bankruptcy Code section 547(f).

58.     The chapter 7 liquidation analysis shows that unsecured creditors of the Debtors are receiving less than 100% distributions on account of their claims.  Therefore, as a result of each Preferential Transfer, the Defendants received more than they would have received if: (i) the Debtors' chapter 11 cases were cases under chapter 7 of the Bankruptcy Code; (ii) the Preferential Transfers had not been made; and (iii) the Defendants received distributions on account of their debts under the provisions of the Bankruptcy Code.

59.     In view of the foregoing, each Preferential Transfer is avoidable pursuant to Bankruptcy Code section 547(b).

### Count Four
### (Avoidance of Constructive Fraudulent Transfers – 11 U.S.C. § 548(a))

60.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

61.     The Debtors made the DB Payments in the amount of $11,786,976.90 and the Slot Reservation Payment in the amount of $454,250.00 (the "Fraudulent Transfers" and, together with the Preferential Transfers, the "Avoidable Transfers"), which were made in reliance upon the Defendants performing under the DB Contract and delivering the Transformer.

62.     The Fraudulent Transfers were made by the Debtors and constituted transfers of an interest in property of the Debtors.

12

63.     The Fraudulent Transfers were made within two years before the Petition Date.

64.     Because the Debtors never received the benefit of their bargain due to the Defendants' failure to perform under the DB Contract and deliver the Transformer, the Debtors did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

65.     The Fraudulent Transfers were made while the Debtors either were (i) insolvent; (ii) engaged in business or a transaction, or were about to engage in business or a transaction, for which their remaining property represented unreasonably small capital; or (iii) intending to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

66.     In view of the foregoing, the Fraudulent Transfers are avoidable pursuant to Bankruptcy Code section 548(a).

**Count Five**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

67.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

68.     Plaintiff is entitled to avoid the Preferential Transfers pursuant to Bankruptcy Code section 547(b) and the Fraudulent Transfer pursuant to Bankruptcy Code section 548(a).

69.     The Defendants were the initial transferee of the Avoidable Transfers, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Avoidable Transfers were made.

70.     In view of the foregoing, Plaintiff is entitled to recover from the Defendants the Avoidable Transfers or the value thereof, plus attorneys' fees, costs and expenses, and interest under Bankruptcy Code section 550(a).

## Count Six
### (Claim Objection – 11 U.S.C. § 502)

71.     Plaintiff repeats and realleges the allegations in the preceding paragraphs.

72.     Pursuant to Bankruptcy Code section 502(b)(1), the claims of the Defendants must be disallowed to the extent that such claims are unenforceable against the Debtors and property of the Debtors under any agreement or applicable law.

73.     The CCEP Claim, which is for amounts CCEP alleges that it is owed under the DB Contract, is not enforceable against the Debtors because the Debtors validly terminated the DB Contract following CCEP's breaches.

74.     The Bootstrap Claim, which is for amounts Bootstrap alleges that it is owed under the Transformer PO, is not enforceable against the Debtors to the extent that Bootstrap can mitigate its damages by selling the Transformer.

75.     The Defendants also are transferees of transfers avoidable under Bankruptcy Code sections 547 and/or 548, which property is recoverable under Bankruptcy Code section 550.

76.     Pursuant to Bankruptcy Code section 502(d), any and all claims of the Defendant, including the Proofs of Claim and claims deemed allowed as scheduled claims in the above-captioned bankruptcy cases, must be disallowed in their entirety until such time as the Defendants pay to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon and costs.

77.     Pursuant to Bankruptcy Code section 502(j), any and all claims of the Defendants in the above-captioned bankruptcy case that were previously allowed by the Debtors or Plaintiff must be reconsidered and disallowed until such time as the Defendants pay to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon and costs.

78.     Plaintiff does not waive, but hereby preserves, all of its rights to object to any claim of the Defendants for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

79.     In view of the foregoing, Plaintiff is entitled to an order disallowing the Proofs of Claim.

## RESERVATION OF RIGHTS

80.     Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff might have against the Defendants, on any and all grounds, as allowed under the law or in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief against the Defendants:

(1)     On Count One, enter judgment against the Defendants and in favor of Plaintiff in an amount to be determined at trial, but not less than $11,786,976.90, plus attorneys' fees, costs and expenses, and interest;

(2)     On Count Two, find that the Defendants knowingly and willfully violated the automatic stay and award Plaintiff sanctions against the Defendants for their knowing and willful violations of the automatic stay;

(3)     On Count Three, order that the Preferential Transfers are avoidable pursuant to Bankruptcy Code section 547(b);

(4)     On Count Four, order that the Fraudulent Transfers are avoidable pursuant to Bankruptcy Code section 548(a);

(5)     On Count Five, order that Plaintiff is entitled to recover the Avoidable Transfers or the value thereof pursuant to Bankruptcy Code section 550 and enter judgment against the Defendants and in favor of Plaintiff in an amount equal to the amount of the Avoidable Transfers, plus attorneys' fees, costs and expenses, and interest;

(6)     On Count Six, disallow the Proofs of Claim to the extent such claims are unenforceable against the Debtors and disallow the Proofs of Claim and any other claims of the Defendants in their entirety until such time that the Defendants return any Avoidable Transfers; and

(7)     Grant such other and further relief as the Court deems just and proper.

Dated:  September 19, 2023

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/ Debbie E. Green*
Charles R. Gibbs (TX Bar No. 7846300)
Debbie E. Green (TX Bar No. 24059852)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
crgibbs@mwe.com
dgreen@mwe.com

*- and -*

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Stacy A. Lutkus (admitted *pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-5404
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
kgoing@mwe.com
dazman@mwe.com
salutkus@mwe.com
nrowles@mwe.com

*Counsel to the Mining Project Wind Down
Holdings, Inc. Litigation Trust and the Plan
Administrator*