IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | Case No. 22-90273 (MI) |
| Debtors.[1] | (Jointly Administered) |

**MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANT MIHAI'S
(I) MOTION FOR INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(1)(A)(1) AND
(II) OBJECTION TO PART OF THE PLAN ADMINISTRATOR'S DISCOVERIES
REQUEST DOCKET 1237**

Tribolet Advisors, LLC, in its capacity as Plan Administrator (the "Plan Administrator") in the above-captioned bankruptcy cases, hereby files this memorandum of law in opposition (the "Opposition") to a) the *Motion for Initial Disclosure Pursuant to Rule 26(a)(1)(A)(1): the Propounding Party is in the Solely Possession, Control, Custody Of Wages And Separation Agreement Payment Documents and Calculations, EFI etc., the Debtors (Including Insperity PEO Services L.P.) Being the Issuers of Such Documents/Information* (Docket No. 1245) (the "First Discovery Motion"), and b) the *Objection to Part of the Plan Administrator's Discoveries Request*

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

*Docket 1237* (Docket No. 1268) (the "Second Discovery Motion" and, together with the First Discovery Motion, the "Discovery Motions"), filed by Nelu Mihai (the "Claimant"), and respectfully states as follows in support thereof:

**SUMMARY OF OPPOSITION**

1. To the best the Plan Administrator can ascertain, the First Discovery Motion filed by Claimant is essentially one for a protective order, as it requests relief from the requirement to produce documents in response to the discovery requests propounded by the Plan Administrator. The basis put forth by Claimant is that the propounding party—and not Claimant—is in possession of the documents requested. To the contrary, the documents requested by the Plan Administrator in its two (2) requests for production—documents including (but not limited to) bank statements to which any transfers were made and the debt paid by such transfers—are documents to which Claimant should have access. In particular, Claimant's bank statements (limited in scope to the relevant time period) are documents to which the Plan Administrator has no access and are *solely* within Claimant's possession. At this point, however, Claimant's First Discovery Motion is ***moot***, as he voluntarily produced redacted versions of his bank statements and pay stubs (to which he previously claimed a lack of access) on the eve of the date that the documents were due. Given that Claimant has now produced that which he claimed was solely in possession of the Plan Administrator, a determination of whether he must produce the documents is unnecessary.

2. Claimant's Second Discovery Motion essentially seeks a protective order from the need to produce full bank statement copies containing personal information. The Plan Administrator has no objection to Claimant having produced redacted versions of his bank statements. Had Claimant met and conferred with the Plan Administrator and its members/counsel

prior to filing his Second Discovery Motion, the Plan Administrator or its counsel would have told Claimant the same.

3. To the extent that Claimant seeks to propound discovery requests upon the Plan Administrator via the First Discovery Motion, such a request is improper. The procedures for requesting the production of documents are found in Federal Rule of Civil Procedure 34, as incorporated by Rule 7034 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), which requires requests to be separate and specific in order to give the responding party the ability to comply or object to each individual request.[2] Moreover, as noted above, the Plan Administrator is unable to provide Claimant's bank statement records, which are solely in Claimant's possession and were the crux of the document requests propounded upon Claimant. Any request for the Plan Administrator to produce the same documents requested by the Plan Administrator to Claimant is likewise moot given Claimants disclosures of the bank statements and pay stubs.

4. In support of this Opposition, the Plan Administrator submits the *Declaration of Michael Tribolet, Managing Member of Tribolet Advisors LLC, in Support of the Plan Administrator's Objection to Claim Asserted by Nelu Mihai* (the "<u>Tribolet Declaration</u>"), attached hereto as **Exhibit 1**, and the *Declaration of Kara E. Casteel* (the "<u>Casteel Declaration</u>")*,* attached hereto as **Exhibit 2**.

5. Any remaining documents potentially sought by Claimant beyond the bank statements and pay stubs a) have previously been provided by the Plan Administrator, b) were

---

[2] Although the title of the First Discovery Motion references Rule 26(a)(1)(A)(1), which governs initial disclosures, the contents of the First Discovery Motion go beyond such a request. In any event, initial disclosure rules are inapplicable to contested proceedings. *See* Fed. R. Bankr. P. 3007, Adv. Committee Notes (indicating contested matters initiated by an objection to a claim are governed by Fed. R. Bankr. P. 9014); Bankruptcy Rule 9014(c) (providing Federal Rules applicable to contested proceedings and excluding Rule 26(a)(1) disclosures).

already provided by Claimant, or c) are produced herewith in response to the First Discovery Motion. The Plan Administrator previously provided the record of gross payments to Claimant from April 15, 2022, through September 16, 2022, after a review of the books and records of the above-captioned debtors (the "Debtors" and, as of the effective date of the Plan, the "Reorganized Debtors"). *See* Docket No. 1230 (*Reply in Support of Plan Administrator's Objection to Claim Asserted by Nelu Mihai (Claim No. 10029)* (the "Reply")). Claimant himself provided the copy of the severance agreement, which provides that both the severance payments and the $7,258.23 one-time payment of "additional consideration" are subject to "applicable deductions and withholdings." *See* Claim No. 10029, ¶¶ 9(d) and 10(h), attached to the Tribolet Declaration as **Exhibit A**.[3]

6. The Plan Administrator, through its professionals, reviewed email records in its possession to ascertain whether any additional documents within the Plan Administrator's custody and control could provide additional information on the number and type of payments received by Claimant prior to the September 22, 2022 (the "Petition Date"). Attached as **Exhibit B** to the Tribolet Declaration is an email from the Debtors to Insperity PEO Services, L.P. ("Insperity") dated April 12, 2022, which directs Insperity to add certain payments to the Debtors' April 15, 2022 payroll. As it relates to Claimant, the Debtors directed Insperity to begin the twenty-two (22) severance payments of $13,636.36, as well as a "one-time payout of $7,258.23, per the severance agreement."

7. Claimant also appears to assert that Insperity is either a Debtor or under the direct control of the Plan Administrator. While the Debtors had a "co-employment relationship" with

---

[3] This also comports with IRS guidance, which indicates severance payments are subject to withholding requirements. *See* IRS Pub. 4128: *Tax Impact of Job Loss*, p. 2, available at https://www.irs.gov/pub/irs-pdf/p4128.pdf.

4

Insperity,[4] it is a non-Debtor separate entity which provided human-resources related functions to the Debtors (and other businesses) including payroll, employee benefits, timecards, and certain employee records. *See* Wage Motion, ¶ 10. As demonstrated by Claimant, he was equally able to obtain his paystubs from Insperity (and perhaps in an easier position to do so).

8.      Finally, the Plan Administrator notes that Claimant has filed at least eleven (11) responses and motions related to the objection to claim number 10029 (detailed below). Some of these documents are directly contradictory; Claimant filed the First Discovery Motion seeking relief from producing any documents claiming no access to the same, and then produced the documents requested several weeks later. In the interim, the Plan Administrator's counsel drafted a response to the First Discovery Motion on the basis that Claimant refused to produce documents. The multiple filings by Claimant require multiple responses and/or revisions to documents on the part of the Plan Administrator's counsel, costing the Reorganized Debtors' estates legal fees and depleting the resources available for all creditors. While the 5th Circuit has not opined on whether 28 U.S.C. § 1927 is available as to pro se parties,[5] the Plan Administrator requests that at a minimum, Claimant be required to keep to the same brief restrictions and requirements as those for parties represented by counsel.

---

[4]   *See Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wage Motion"), Docket No. 18, ¶ 10.

[5]   *Owens v. Experian Info. Sols. Inc.*, No. 4:23-CV-79-SDJ-KPJ, 2023 WL 3818357, *6 (E.D. Tex. June 5, 2023) (noting it is unclear as to whether sanctions for monetary damages are allowed against pro se parties in Fifth Circuit); *Jurado v. Cobb*, No. 7:21-CV-00268, 2021 WL 4155808, *5 (S.D. Tex. Sept. 13, 2021) (agreeing that the plaintiff's pattern of filing lawsuits demonstrated harassment and delay, declining to impose sanctions at that time, but warning plaintiff that if she filed another suit, the court would consider monetary sanctions).

## JURISDICTION AND VENUE

9. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Plan Administrator confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

10. On October 24, 2022, Claimant filed Proof of Claim number 10029, asserting a general unsecured claim in the amount of $220,909.03 (the "Claim"). The amounts in the claim are comprised entirely of penalty amounts for the alleged failure to timely pay severance installments under a separation agreement.

11. The Plan Administrator filed an objection (the "Objection") to the Claim on July 7, 2023, asserting that post-petition assessment of penalty amounts for failure to pay severance installments was improper and unrecoverable under the law. (Docket No. 1199).[6]

12. Claimant filed multiple responses to the Objection from August 8–13, 2023. (Docket No. 1211, 1213, 1219, 1223, 1224, 1225, 1228, 1229).

13. The Plan Administrator filed the Reply in support of the Objection on August 14, 2023. (Docket No. 1230). This Reply was served on Claimant via email after filing. *See* Casteel Declaration, **Exhibit Y** (email of service).[7]

---

[6] Claimant also filed a separate claim (claim no. 10026) concerning unpaid severance amounts separate from the Claim for penalty amounts. The Plan Administrator filed a separate objection to the amount of that claim on September 5, 2023. (Docket No. 1246). A preliminary hearing for that claim objection has not been held, and accordingly no discovery has yet been propounded specifically as to that claim.

[7] Claimant alleges that the reply brief filed by the Plan Administrator was "not serviced to me during the 08/14/2023 hearing." *See* First Discovery Motion, ¶ 5. The reply brief was emailed directly to Claimant at 8:41 a.m. prior to the 10:00 a.m. Monday morning hearing. Claimant filed multiple responses to the Objection, many of which occurred Friday, August 11th into and including Sunday, August 13th, 2023. Once it appeared as though the

14. The Court held a hearing on the Objection on August 14, 2023. (Docket No. 1235). At the hearing, the Court authorized the Plan Administrator to propound requests for production of documents upon Claimant. The Court set the Objection for an evidentiary hearing on October 5, 2023. (Docket No. 1235).

15. On August 18, 2023, the Plan Administrator served requests for production upon Claimant (the "Discovery Requests") via email and mail. (Docket No. 1237). Specifically, the Plan Administrator sought "all Documents, including, but not limited to, bank statements, pay remittances/stubs, or check copies, concerning any of the Transfers made to You by the Debtors from March 2022 through and including September 2022." *See* Casteel Declaration, **Exhibit Z**. As provided in Bankruptcy Rule 7034, responses to the Discovery Requests were due within 30 days of service, or by September 18, 2023.

16. On August 30, 2023, Claimant filed his First Discovery Motion. (Docket No. 1245). Claimant did not attempt to meet and confer with the Plan Administrator's counsel to discuss the discovery requests prior to filing his First Discovery Motion.

17. On September 10, 2023, Claimant filed a *Response to Deny/Reject the Supplement 1230 to Objection 1199 and Proposed Order 1199-2 to Claim Asserted by Nelu Mihai (Claim No. 10029)* (the "Sur-Reply"), responding to the Plan Administrator's Reply in support of the Objection. (Docket No. 1258). Defendant did not seek leave to file a sur-reply. The Sur-Reply contains a listing of the record of bank deposits.

18. On September 10, 2023, Claimant filed a *Supplemental Response from Nelu Mihai to Deny/Reject the Reply 1230, In Relation to Denial of Objection 1199 and Proposed Order 1199-*

---

multiple responses had come to an end, the Plan Administrator finalized its reply brief. To the extent Claimant is concerned with the lack of time to review the Plan Administrator's reply prior to the hearing, the Plan Administrator would direct Claimant to his own voluminous responses.

7

*2 to Claim Asserted by Nelu Mihai (Claim No. 10029)* (the "Second Sur-Reply") (Docket No. 1259). Defendant did not seek leave to file a second sur-reply.

19. On September 16, 2023, Claimant filed his Second Discovery Motion. Claimant did not attempt to meet and confer with the Plan Administrator's counsel to discuss the discovery requests prior to filing his Second Discovery Motion.[8]

20. On September 17, 2023, Defendant produced redacted bank statements and pay stubs to the Plan Administrator. (Docket No. 1269).

**ARGUMENT**

A. **Claimant's Discovery Motions are Moot**

21. Under Article III of the Constitution, the Court need only determine actual cases and controversies. *See Tex. Gen. Land Office v. Pearl Res. LLC (In re Pearl Res. LLC),* 643 B.R. 436 (Bankr. S.D. Tex. 2022). A controversy becomes moot if any set of circumstances eliminates the controversy after the commencement of the action. *Env't Conservation Org. v. City of Dall,* 529 F.3d 519, 527 (5th Cir. 2008).

22. Claimant did not appear to want to produce discovery, indicating that the documents requested were solely in the custody of the Plan Administrator. Claimant also indicated, to the extent he would produce bank statements, that said copies would be redacted or otherwise limited in scope. Now, however, Claimant has produced his pay stubs and redacted/limited versions of his bank statements, complying with the Plan Administrator's discovery requests. Thus, a controversy over the production no longer exists, and the issue is moot.

---

[8] Claimant sent an email to the Plan Administrator's counsel on September 7, 2023, indicating his assertion that the claims objections had no merit and requesting a call to discuss the same. The email did not request a discussion to narrow the scope of discovery or provide any redaction protection.

### B. Claimant's Request for a "Protective Order" Through the Discovery Motions Does Not Have Merit

23. Even if Claimant's Discovery Motions were not moot, however, he still would not be entitled to the relief sought. Claimant seeks relief from being required to produce documents requested in the Plan Administrator's requests for production. Under Federal Rule 26(c)(1), a protective order may be issued to the extent a movant demonstrates that the discovery sought by the opposing party causes "annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A motion for a protective order also requires that the movant certify they attempted in good faith with the opposing party to resolve a discovery dispute prior to involving the court. *Wright v. Csabi (In re Wright)*, 658 B.R. 770, 777 (Bankr. S.D. Tex. 2017) (citing rule). Only once the two requirements of 1) certification of conferment or attempted conferment and 2) the need for protection have been demonstrated can a court fashion a remedy. *Id.* at 780. The decision on whether to grant a motion for a protective order is left to the sound discretion of the Court. *Skyport Glob. Commc'ns v. Intelsat Corp. (In re Skyport Glob. Commc'ns, Inc.)*, 408 B.R. 687, 691 (Bankr. S.D. Tex. 2009).

24. Claimant fails the meet and confer element, as Claimant made no effort to contact the Plan Administrator's counsel concerning the requests prior to filing the Discovery Motions with the Court. Had Claimant made such effort, the Plan Administrator's counsel could have a) explained that the Plan Administrator sought bank records to which it had no access, and b) indicated that Claimant could also attempt to access his own paystubs through Insperity. On this basis alone, the Discovery Motions should be denied.

25. Additionally, Claimant has established no "annoyance, embarrassment, oppression, or undue burden or expense" rising to the level of a protective order. The "annoyance" of accessing

9

his bank statements online, or attempting to log on to his former paystub provider, are typical litigation requirements, and not the type of "annoyance" for which protective orders provide relief.

## CONCLUSION

26.     Claimant has not met either of the two requirements for a protective order, and his Discovery Motions should be denied. Furthermore, Claimant should be required to adhere to the brief and motion filings limits expected of parties represented by counsel, as the duplicative filings require the incurrence of more legal fees that will detract from the overall recovery of all creditors.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Plan Administrator prays this Court enter an order denying Claimant's Discovery Motions, and such further relief is just and proper.

Dated: September 20, 2023

Respectfully submitted,

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: crgibbs@mwe.com

– and –

Kara E. Casteel (admitted *pro hac vice*)
Jennifer A. Christian (admitted *pro hac vice*)
Nicholas C. Brown (admitted *pro hac vice*)
**ASK LLP**
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 289-3846
Facsimile: (651) 406-9676
E-mail: kcasteel@askllp.com
jchristian@askllp.com
nbrown@askllp.com

*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator*

**Certificate of Service**

      I certify that on September 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      I further certify that on September 20, 2023, I caused a copy of the foregoing document to be served by First Class Mail and electronic mail to claimant Nelu Mihai at the following addresses:

Nelu Mihai
201 Harrison Street
Suite 210
San Francisco, CA 94105
nelumihai@icloud.com

*/s/ Charles R. Gibbs*
Charles R. Gibbs