## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90273 (MI) |

**RESPONSE TO OPPOSE TO, DISAGREE WITH AND SEEK DENIAL OF THE PLAN ADMINISTRATOR'S EMERGENCY MOTION 1277 RELATED TO CLAIMS ASSERTED BY NELU MIHAI (CLAIM NO. 10029, AND EVENTUALY CLAIM 10026), AND OF THE PROPOSED ORDER 1277-1 AND OF THE PROPOSED "SUR-SUR-REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029)" – DOCKET 1277-2**

NELU MIHAI, PhD, former funding Chief Technology Officer (CTO) at Compute North LLC / Debtors, in his capacity as Creditor ("Creditor") and Claimant of the Claim no. 10029 filed on October 24, 2022, in case 22-90273 (the "Bankruptcy Case", "Case no. 22-90273"), "Respondent", hereby files this **Response / Opposition to** the "EMERGENCY MOTION FOR LEAVE TO FILE

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

SUR-SUR-REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029)", docket 1277, signed not by the Plan Administrator, but signed by Mr. Charles R. Gibbs (who does not specify his role in signing this motion), and three lawyers form ASK LLP (Ms. Kara E. Casteel, Ms. Jennifer A. Christian, Mr. Nicholas C. Brown, calling themselves as having double roles: "*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator pretending that is a Plan Administrator*", to Proposed Order 1277-1 and Proposed "SUR-SUR-REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029)", docket 1277-2, **respectfully asking the Court to reject the "*Emergency Motion*" 1277, not to issue the Proposed order 1277-1, and not to grant leave for the Plan Administrator to file the Proposed "SUR-SUR-REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029)" 1277-2, for the following legal reasons:**

1. **The motion does not have emergency attributes**. A hearing is scheduled for October 5, 2023, a Claimant request to discuss Claim 10029 was sent to the Plan Administrator and two ASK LLP lawyers.

2. **The motion is not supported by relevant evidence**.

3. **The motion is signed by a lawyer looking like acting based on *conflict of interest* with the Creditor Nelu Mihai** (the motion signer is the official unsecured creditors committee representative / attorney, while the Claimant is a former C level executive of Compute North LLC and a Creditor who did not vote for the Reorganization Plan, based on his previous two alternative Reorganization proposals for the Debtors' business without the need for assets liquidation; one proposal was firstly addressed to Debtors' Board of Directors Chair on October 2022[2], and the second proposal was supposed to be discussed

---

[2] Phone conversations about reorganization took place in October 2022, between the Debtors Board Chair, and Claimant Nelu Mihai. Claimant Nelu Mihai worked before at MEMC / SUNEDISON as Senior Vice President of Engineering and CTO. The founder of Generate Capital was the founder of Sunedison. Venture capitalists from Generate Capital were former employees of Sunedison. Claimant Nelu Mihai was the only Compute North LLC C level executive with C level S&P 500 companies experience. The Chairman of the Board declined Claimant reorganization proposal, consisting on bringing new capital in the company, restructuring the executive team, and transforming datacenters of Compute North LLC into a multi cloud for AI applications.

in a meeting requested by Claimant to the Official Creditors Committee[3]; we leave to the latitude of Creditors involved in this case to evaluate how much real desirability for profitable restructuring the Debtors had (after receiving investments of over $385M, based mainly on a business plan elaborated by the Claimant). In addition, this <u>motion does not have attached any proof that there is an unsecured creditors committee / group mandate for Mr. Gibbs to file such motion against the Creditor Nelu Mihai</u>; <u>Motion is filed without seeking to discuss with the Claimant, who invited for this Claim 10029 to a discussion, before the date of the Emergency Motion filing</u>.

4. <u>The motion does not take into consideration the *Court order 1235, issued during the August 14, 2023 hearing, for claim 10029, order imposing the Claimant to produce all the documents / discoveries related to his* "*Separation Agreement's implementation by the Debtors (March – September 2022[4]*, order concerning the Claim Asserted by Nelu</u> Mihai (Claim No. 10029)

5. **The Emergency Motion does not have any legal base or relation to the Proof of Claim 10029, asserted by Claimant for a debt related to breaching the terms of Chapter 9.a, and 10.h of the Separation Agreement signed on March 28, 2022** between Claimant and former employer, the Debtors / Compute North LLC. In fact, this so-called Emergency Motion is a disguised new Objection, signed by Mr. Gibbs and Debtors' counsel from ASK LLP, probably unsatisfied with the relevant information contained in the discoveries produced by Claimant as response to Court Order 1235 (Exhibit B attached to Emergency Order 1277: Insperity PEO Services LP paystubs for the period March – September 2022), discoveries which were in fact in the custody, control and possession of the Debtors and the Plan Administrator and his Reviewing Parties. The debt of $150,000 was in fact a *Scheduled debt*, as presented **in many Statements of Financial Affairs for Non Individuals (forms 207, dockets 301 and the following forms 207, filed on September 2022, October 2022 and November 2022.**

6. **Emergency Motion 1277, Proposed order 1277-1 and Proposed Sur-sur-reply 1277-2 are formulated as trying to change the Objection 1199 to Claim 10029**.

---

[3] The Official Creditors Committee never responded to Claimant invitation.
[4] <u>Court Order 1235</u>: "*to send a request for production of documents for the relevant periods as stated on the record*"

7.  <u>Motion 1277, order 1277-1 and proposed Reply 1277-2 differ substantially from the Plan Administrator' Declaration attached to this Emergency Motion.</u> Mr. Tribolet does not mention anything about the amount of the penalties, he also does not negate the right of Claimant to receive penalties, as imposed by the terms of Chapter 9.a and 10.h of the Separation Agreement signed between Claimant and Debtors on March 28, 2022. The Objection to Claim 10029 was filed as follows: "*The Plan Administrator objects to the Claim <u>because the supporting materials demonstrate that the Claim is comprised entirely of a penalty for failure to timely pay severance installments, the post-petition assessment of which is improper …"</u> (*contrary to the fact that the supporting material was the Separation Agreement and an example of a calculation of accrued and unpaid obligations of the Debtors according to Chapter 9.a of the Separation Agreement, <u>applied to the debt amount *scheduled* by the Debtors before the Petition Date, and, even more, erroneously presented by the Debtors, in the initials **in many Statements of Financial Affairs for Non Individuals (forms 207) and in** Financial Statements Disclosures, even as being paid to the Claimant one day before the Petition Date.</u>  The Proof of Claim 10029 does not contain the word "installments" or "penalties".

8.  **The motion tries to recharacterize the content of the documents filed and signed by Mr. Charles R. Gibbs in his second Objection to Claim 10029, in docket 1230.**

9.  **The emergency Motion tries to illegally strike the Response to the second new Objection docket 1230 to Claim 10029 (docket 1258 and 1259)). This docket 1230, signed by Mr. Charles R. Gibbs, "induces new …theories"** (the Debtors lawyers eliminate the obligation of withdrawal of taxes from the severance payments, assumed in Chapter 10.h of the Separation Agreement, by subtracting only the amounts imposed by "applicable tax laws and regulations"[5]  (legally, <u>only federal, state taxes and social security for the annual income up to $147,000 should have been subtracted from the cash severance gross amounts of $13,636.36, and all subtractions should have been done legally, according to the same W4 form used during his employment (as per IRS Publication 15 Circular E) and "*filing status"* of the Claimant;</u> the docket 1230's signers

---

[5] Chapter 10.h Separation Agreement: Withholding Taxes. The Company shall be entitled to withhold from any payment due to Executive hereunder any amounts required to be withheld <u>by applicable tax laws or regulations</u>

provide a table with gross amounts paid before the Petition Date to Claimant, ignoring the fact that the net amounts paid were much smaller, erroneous, and illegal deductions were subtracted from the gross amounts stipulated in Chapter 9.a of the Separation Agreement. These subtracted amounts became accrued and unpaid debts, carrying penalties until the difference was paid in the next instalment. The docket 1230 has content which is a veritable new objection, <u>addressing the pre-petition penalties identified in the Financial Disclosure Statement 723-2 Schedule A and other new discoveries</u> reinforcing the legality of Claim 10029**.** The Claimant presented all these aspects in his response on docket1213, the confirmations that the aspects presented in the Response to Objection 1199 to Claim 10029 appeared from the case documents and the new discoveries. **<u>The legal base of the Claim 10029 is the same, Claim 10029 is about penalties before and after the Petition Date, for an unpaid debts, recognized as "scheduled debts" by Debtors in the forms 207.</u>** The legal base was presented in docket 1213 (identical with docket 1211). Only the calculations were updated by Claimant, based on the elimination (by the Claimant) of errors willfully presented by Debtors in forms 207, in the Financial Disclosures 723-2 Schedule A as being paid one day before the Petition Date: this is false, as the Claimant did not receive payment one day before the Petition Date. The check with such payment should be identified, the Debtors are responsible for this amount, which was never paid to Claimant.  In other case documents, including the Transcriptions of the 2022 Court hearings the former CFO of the Debtors sustained that the scheduled debt of $150,000 was paid on September 21, 2022.  After Claimant disputed such payment, the CFO recognized that no payment was made.

10. <u>The Emergency Motion does not address an emergency, and it tries to misinform the Court about the California and federal working compensation laws and taxation laws. Even more, Mr. Tribolet does not mention anything related to tax laws and publications in his Declaration attached to Docket 1277, his declaration is contrary to the Proposed Sur-sur reply 1277-2.</u> Why Mr. Gibbs and Debtors ASK LLP counsel want to overload the Court with personal opinions about accounting, federal and California taxation laws, California worker compensation laws and regulations, and what the term "delay" means

in accounting[6]? Why Mr. Gibbs never discussed about settling the Claim 10029 asserted by Claimant Nelu Mihai, who offered even during 2022 to help, with his long expertise in high tech, to efficiently reorganize the Debtors' business?

11. <u>The motion is Debtors' allegation seeking extra ways to hinder and delay the hearing scheduled for October 5, 2023</u>. The Court should also reject this motion considering the precedent situations between Compute North LLC and Claimant, during his employment with Debtors[7], and considering the essential merit of the Claimant in funding the Debtors with approx. $385M, and considering the Claimant's offers to help the Creditors to make efficient decisions to reorganize the Debtors' business.

12. Respondent disputes the allegations/evidence contained in the Motion Schedule A Sur-sur Reply Proposal 1277-2, and contends as follows:

13. The proposed Sur-Sur Reply 1277-2 contains errors related to calendar dates, during the Claimant's employment, not related to Claim 10029. For example, no FSA was withheld from March 31, 2022, payroll payment (the last day of employment), as Mr. Gibbs incorrectly writes on page 4, paragraph 6. In fact, the FSA was illegally withheld on April 15th 2022 (Claimant was not employed after March 31, 2022). Another error committed by Mr. Gibbs consists in changing the legal rules for the optional FSA deductions: the FSA is not related or calculated based on the working days as Mr. Gibbs incorrectly assumes. It is illegal to subtract FSA after the termination date.

14. The proposed Sur-Sur Reply 1277-2 has generalizations, not applicable to Claim 10029 and the Separation Agreement breaching by Debtors before the Petition Date and after.

15. The proposed Sur-Sur Reply 1277-2 contains an altered, willfully changed email from Mr. Michael A. Tribolet, the Plan Administrator, to Claimant, on June 6, 2023, exhibit /

---

[6] In accounting the FIFO (first in first out) method is usually used to calculate penalties when a debt is not paid in full at the due date. The unpaid portion becomes accrued unpaid debt and is subject to penalties starting with the due date, until the next installment is paid eventually on the next due date. In mortgages, the penalties are calculated using another method, in which the penalties have priority in being posted as paid, before any principal being considered paid. The calculations of penalties for Claim 10029 was done by financial experts, tax lawyers, HR experts using the more generous FIFO method, not the "mortgages" method.

[7] Previous defrauding intentions: altering the performances records of Claimant, for not paying him a bonus for 2021, not sending Claimants contributions to 401(k) to the retirement plan administrator, not paying the medical insurance for Claimant and his family, as agreed in the Separation Agreement, illegally changing the number of shares stipulated in the employment offer agreed with Claimant Nelu Mihai etc.

email (**Exhibit 9-1**) which differ substantially from the certified for conformity with the original email filed by Claimant. The email presented on Exhibit A in docket 1277 has no date and time (this is an impossible situation; every email has the date and time of sending and receiving). Was the erasing of the date and time an intention to give the false impression of a different succession of emails occurred between Mr. Tribolet and Claimant? The email exchange was related to another different subject: on the subject of recognition by Mr. Tribolet that Claim 10029 was in fact about pre-petition and post-petition obligations (penalties), as stipulated in Chapter 9.a and 10.h of the Separation Agreement signed with Debtors on March 28, 2022.  The debt of $150,000 was presented by Debtors as a **SCHEDULED DEBT in 207 Form from, September 2023, October 2022, and November 2022. More than that the Debtor erroneously presented the "scheduled" debt as being paid to Claimant one day before the Petition Date.**

16. The Objection 1199 is only about the amount of the penalties after Petition Date. Claim 10029 is about penalties (pre-petition and post-petition), not about the amount subject to penalties. Mr. Tribolet, in his email form June 6, 2023, recognized practically that Claimant is entitled to receive both pre-petition and post-petition date penalties, Mr. Tribolet represents the exact amounts of dollars offered to Claimant as pre-petition penalties. Mr. Tribolet also informed Claimant, in that email from June 6, 2023, that a so-called rejection of the "contract" was requested by the Debtors. This is only an assumption, not based on facts: the Separation agreement was implemented by Debtors after the Termination Date, but breached in regards to amounts paid as "cash severance", illegal substructions that caused substantial delays, and unpayment of the 'Scheduled' amount of at least $150,000 (debt presented by Debtors in many 207 Forms 207 retrievable, in case dockets from the fall of 2022. The Plan Administrator was not assigned by Court when the 207 Forms were filed by *Debtors in Possession* and when the former CFO presented in a hearing the amount of $150,000 as a  a recognized scheduled debt. The misinformation for paying this scheduled debt to Claimant one day before the petition date was disputed in Court, and the Debtors affirmed that it was not paid; but the legal attribute of "scheduled debt" remains applicable).

17. The motion and Sur-sur Reply present unfairly formal names of documents filed by Claimant as being "multiple responses" and "sur-reply", while, in fact, the names of the

<u>filed documents are only formal aspects. The content of the filed documents is what it</u>
<u>matters.</u>  The choice of the formal names of the filed documents was caused by the
unfriendly user interface of Pacer  or by problems appeared because of the technical
issues in setting Claimant access to Pacer. For example, **the Emergency Motion**
**misinforms the Court about the number of responses given by Claimant to**
**Objection 1199 to Claim 10029, ignoring that new discoveries were produced, typos**
**were corrected, access to Pacer was granted through a Court order, (but without**
**effective access, due to technical issues etc).**  Response 1211 is identical with docket
1213 because the Claimant did not have approval to electronic access to Pacer platform
and sent his response to Objection by mail (having no control on the date of the envelope
delivery). Grace to a Court order, he obtained access to Pacer  and, to be sure that the
Response will be filed timely, he filed the response in docket 1213: docket 1219 and
1224 are identical, they are motions for material correction for the title of the Claimant
with Compute North LLC: CTO, not VP of Engineering. One motion was filed with the
help of the case manager, another one was filed thru Pacer, because the Pacer was not set
properly, and Claimant did not have real access to Pacer.  Docket 1223 was filed to prove
to the Court that the Debtors misrepresented the amount of money paid to the Claimant as
severance, paid time off etc. and that there were numerous delays in paying "cash
severance" before the Petition Date[8]. Docket 1225 contains proof that the Debtors
maintained double or erroneous records about the cash severance and debts for the
Claimant – docket 723-2 Schedule A contains more errors in regards to cash severance
payments, which were not corrected[9].  Docket 1228 is for correcting typos related to the
debt obligations' calculations.  Docket 1229 is about Exhibits related to the calculations
of the debt amount in Claim 10029).

---

[8] "Docket 723-2 filed on December 21, 2022, Revised Disclosure Statement, Schedule 2
One year payments (to Debtors), pages 157 to 162 prove that the affirmations of the
Plan administrator in its Objection are not sustained. The Company Compute North LLC / Debtors did
not pay in time the amount obliged to thru the "Severance Contract" signed on March 28, 2022 between
the Claimant and the Company /Debtors."

[9] "…. Debtors falsely stated, in the previous Disclosure Statements, that the Claimant, Nelu Mihai, was
paid with the whole amount of $300,000. The Claimant indicated these false statements of the Debtors in
the hearing of 2022. Not even now the false elements in the Amended Disclosure statements were not
corrected. That proves that double records and books were kept by Compute North LLC / Debtors."

18. <u>Movant's description of the proceedings related to Claim 10029 is not accurate. The motion and Sur-sur-reply 1277-2 try to change the history of the filings for Claim 10029.</u> **Even the name of the document in docket no. 1230 (***"Reply (related document(s):[1199] Objection to Claim, [1211] Response, [1213] Notice, [1219] Generic Motion, [1223] Response, [1224] Generic Motion, [1225] Response, [1226] Response, [1228] Response, [1229] Response). (Attachments: # (1) Exhibit 1 - Supplemental Declaration)(Gibbs, Charles)"* indicates that it is a veritable new objection[10], based on **A Supplemental Declaration of the Plan Administrator**, new objection and new declaration requiring a response in less than 30 days from the service date.  Is it legal to attribute the name of 'sur reply" to legal response to the new Objection 1230 to Claim 10029?

19. <u>The Opposition is filed legally</u>, before the hearing scheduled for 10/05/2023.

20. *Respondent asserts the following:*

21. The Proof of Claim 10029 is for delays in paying the cash severance pre-petition and post petition.

22. The amount of $300,000 cash severance was agreed to be paid in full before February 15, 2023, at the same dates when the other executives were paid. The amount of $300,000.00 was never paid in full, **before September 22, 2022, the Petition Date, as proved by the Insperity PEO Services payroll stubs, new discoveries, provided to Court by the Claimant, care of the case manager. Mr. Tyler Laws, and also provided by the Plan Administrator, in Exhibit B, attached to his Emergency Motion docket 1277-2, filed on September 22th, 2023**.

23. The emails presented by the Plan Administrator in his declaration 1277-2 Exhibit A have no probatory attributes for the accrued unpaid cash severance amount left to be paid before the Petition Date, because on June 2023 Claimant Nelu Mihai was guided by the scheduled debt in the amount of $150,000 presented and recognized by Debtors in 207 Forms and in initial Financial Disclosure Statements produced by Debtors.

---

[10] "The Plan Administrator hereby files this Reply in further support of the Claim Objection and <u>the Supplemental Declaration of Michael Tribolet</u>, Managing Member of Tribolet Advisors LLC, in Support of the Plan Administrator's Objection to Claim Asserted by Nelu Mihai, attached hereto as Exhibit 1 (the "Supplemental Declaration")"

24. Nelu Mihai had no access to his payroll stubs, from April, 2022 until September 7th, 2023.

25. The Claimant filed Claim 10026 on October 24th, 2022, based on the scheduled and recognized debt of $150,000.00, falsely presented by the reorganized Debtors as paid one day before the Petion Date.  Claimant was without possibility to calculate the exact amount of penalties and principal (no access to his company "refurbished" laptop, which was returned back by the employer, in order to be refurbished again). He had no access to the Insperity PEO Services L.P. payroll platform and no possibility to verify the altered books and records of Debtors).

26. As presented in dockets 1258 and 1259, the Insperity PEO Services L.P. payroll stubs for the period April 1, 2022 – September 16th, 2022, prove that the remaining unpaid cash severance amount is **$162,754.26 (one hundred sixty-two thousand seven hundred fifty four dollars and twenty six cents).**

27. In addition, it was proved that, before September 2021 – March 2022, Compute North LLC (Debtors) several times did not pay Claimant Nelu Mihai with the full amount of his wages, many mistakes and subtractions being made illegally (as an example, for Nelu Mihai, the Compute North LLC / Debtors took his contributions for 401(k), without depositing them into Nelu Mihai's 401(k) account kept by a 401(k) plan administrator: this illegal procedure was repeated for at least two months, causing retirement investment losses to Claimant Nelu Mihai. His money remained into the Debtors accounts, accruing interest, but not being invested in the retirement account of the owner of the 401(k) contributions, the Claimant.)

28. In this accurate table[11], based on the real paychecks kept by Debtors at Insperity PEO Services L.P., on the last column are represented the percentage of diminutions of each installment amount (**between 30,05% and 37,25%,** meaning that **every single by-monthly payment was reduced by at least a third or a quarter, pre-Petition Date.** Also, column four states the real amounts paid to Claimant Nelu Mihai, in relation to Separation Agreement, after April, 2022 (his Termination Date was March 31, 2022).

---

[11] Exhibit 1 (Percentages of reductions)

29. After new consultations with advisors and experts in human resources, payroll, taxes from Morgan Stanley etc. who analyzed copies of the payroll stubs from Insperity PEO Services L.P. it was discovered and reconfirmed that:

30. (a) each payment of "cash severance" before the Petition Date was not in full, was not conform to the Separation Agreement signed on March 28, 2022. Not paying in full means that every installment payment is subject to penalties for delays, because the reductions amounts are subjects to penalties according to Chapter 9.a of the Separation Agreement. By making incomplete, partial payments on 4/15/2022, 4/29/2022 and on May, June, July, August and September 16, 2022, Debtors induced delays for these partial payments; therefore all the reductions are subject to penalties.

31. b) **the penalties for not paying the amount of $211.54 are $681.16**[12] (for 161 delay days between April 15, 2022 due date and Petition Date). The payroll stub 10208869 dated 4/15/2022, for a paper check cashed on 4/18/2022, not from the March 31, 2022 last check / payroll stub, as incorrectly Mr. Charles R. Gibbs and ASK LLP team state in docket no. 1277-2, ¶1 d., docket related to other Claim 10029, shows an illegal reduction with $211.54 for so-called FSA (Flexible Spending Account). The illegality comes from the facts and legislations as follows: Claimant Nelu Mihai did not ask to have FSA deductions from his severance cash payments; FSAs are an IRS-regulated benefit; FSA is optional / voluntary and it can be salary reduction only if the payee is employed[13]; the FSA is deducted from an employee[14] only by-monthly[15]; the last check on May 31,2022 should not have extra FSA deductions; the Plan Administrator affirmation that a former employer has rights to deduct FSA that was "*not deducted in the last check*" is an invention of the Plan Administrator's team, absurd and contradictory to the *IRS Publication 969 Cat. 24216S, the California Labor Laws* and other legislation. The Plan

---

[12] Exhibit 4 Penalties for delays of reductions as FSA
[13] FSAs are usually funded through voluntary salary reduction agreements with your employer (IRS Publication 969, page 18)
[14] You contribute to your FSA by electing an amount to be voluntarily withheld from your pay by your employer (IRS Publication 969, page 18)
[15] At the beginning of the plan year, you must designate how much you want to contribute. Then, your employer will deduct amounts periodically (generally, every payday) in accordance with your annual election. You can change or revoke your election only if specifically allowed by law and the plan. (IRS Publication 969, page 18)

Administrator's team's allegations about FSA, in docket 1277-2 ¶6 page 4 and 5, are at least extreme, if not lacking respect for law and the Separation Agreement terms, and should not be taken into consideration by the Court, because they do not have any legal base. A lawyer has no rights to change the meaning of the "final paycheck", which, at least in California, is mandatory to be paid in the last day of employment, which constitutes payment for "*all the accrued but unpaid obligations*", as also stipulated in Chapter 8 of the Severance Package[16]. The California Labor Administration applies serious sanctions to any employer, not matter from which state, for not paying in time the final paycheck. If Compute North would have failed to pay you your paycheck within the allotted time (March 31, 2022) or takes illegal (like extra FSA) or unfair deductions from Claimant final paycheck, the Claimant is entitled to compensation. Under California labor laws, Claimant is entitled to "waiting time penalties" or a full day of wages for each day late Claimant full paycheck is.

32.  c) illegal diminutions were done by Debtors starting with April 15, 2022 as **federal taxes** (ignoring the "filing status"[17] declared by the Claimant in his W4 and ignoring the IRS regulations of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them, should be the base of the federal taxes withdrawal[18]. The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect that there is an unpaid severance amount of **$19,696.89**; Nelu Mihai filed an email exchange between Compute North LLC HR representative *Amanda Piff <amanda.piff@computenorth.com>* (**Exhibit 8**[19], filed by the Plan Administrator himself in his Declaration docket 1273-1) from the HR Department of

---

[16] "accrued but unpaid vacation, expense reimbursements, wages, and other benefits due to the Executive under any Company-provided plans, policies, or arrangements as of the Executive's termination date (the "Accrued Obligations")

[17] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)

[18] A Form W-4 for 2021 or earlier years remains in effect for 2022 unless the employee gives you a 2022 Form W-4 (IRS Publication 15 – 2022, page 22)

[19] Exhibit 8: HR Compute North LLC, Tuesday, April 12, 2022 7:24 PM: "Hi Team- Please add the following pay to employees for the 4/15 payroll. Commissions taxed at supplemental rates Nelu Mihai Severance- Nelu Mihai - $20,894.59 This number includes the first payment of 22 for severance $13,636.36 plus the one-time payout of $7,258.23, per the severance agreement. Thank you, Amanda"

Compute North, proving that Reorganized Debtors wrongly diminished the wages of the Claimant, incorrectly considering the severance cash as "*supplemental wages*" (bonuses) and wrongly ignoring that there was no supplement to any wage, and ignoring the W4 given by Claimant Nelu Mihai to Compute North in 2021, when he was hired, applying wrongly a higher rate instead of a marginal tax rate based on your expected income of $300,000, agreed on the Separation Agreement Chapter 9.a. Severance Payments should have been *as part as normal wages* (in the Exbibit A, Claimant is considered "an employee" receiving "normal wages"). **The penalties calculated for delays (due to reductions by over withdrawals of federal taxes) and not making payments on time are $31,895.77[20] (before the petition date).**

33. e) illegal diminutions of **$565.01** (five hundred sixty-five dollars and one cent) were done starting with April 15, 2022 for **SDI** (State Disability Insurance), ignoring the IRS Publication 15 regulations, and the income until every payroll date, and other legislation applicable), other illegal amounts were erroneously subtracted from checks 10208869 (4/15/2022), 64593683 (4/29/2022), 64880454 (5/13/2022), 65145314 (5/27/2022) as California State Disability Insurance, meaning illegal subtractions / withholdings. According to California legislation, "*no SDI deductions withheld from severance and lump sum payments.*" Compute North LLC was o Minnesota company, while the Claimant Creditor Nelu Mihai was and is a California resident, where a former employee who receives severance payments is not entitled to receive unemployment disability insurance payments[21]; therefore, any SDI diminution from cash severance is not allowed and cannot be claimed as credit from California state[22], at least because Claimant did not have two employers in 2022, the former employee Nelu Mihai at Compute North LLC never was able to receive disability insurance even he would been disabled and SDI was

---

[20] Exhibit 2 Penalties calculated pre petition for delays by reductions as federal taxes

[21] Section 1265; Severance pay is not wages for unemployment insurance purposes. California Supreme Court: *Powell and Byrd vs. California Unemployment Insurance Appeals Board* (63 Cal. 2d 103, 1965)

[22] Instructions for Form 540 line 47: *You may claim a credit for excess State Disability Insurance (SDI) or Voluntary Plan Disability Insurance (VPDI) if you meet all of the following conditions: You had two or more California employers during 2022. You received more than $145,600 in gross wages from California sources. The amounts of SDI (or VPDI) withheld appear on your federal Form(s) W-2. Be sure to attach your federal Form(s) W-2 to the lower front of your Form 540.*

subtracted illegally from his severance cash installments. An example of an inapplicable generalization is in docket 1277-2, ¶ 5 d: where Mr. Charles R. Gibbs, a Texas resident probably, invokes an inapplicable regulation about a so-called "*California SDI phase-out reached at the time of the issuance of the May 27, 2022 paycheck*" while the *California Tax Regulations 540 Form Booklet* and others interdicts SDI deductions for unemployed individuals and severance payments. More than that, to send the Claimant to seek refund from California state or IRS, after Plan Administrator's recognition that there were done abusive over-withholdings can be interpreted not only as not related to the taxation procedures, but as cynical and improper. This type of generalizations and moving the responsibility of the payments under the Separation Agreement to the California state and IRS is also incompatible with the Texas State, well known for the respect for individual rights. Why the Plan Administrator and his team should not seek them to get a refund for the over-withholdings, after paying the Claimant Nelu Mihai what he is entitled to, according to the terms of Chapter 10.h of the Separation Agreement[23]?

**The penalties calculated for delays and not making the full cash severance payments (due to reductions with SDI illegal deductions from severance) are $1,661.83[24] (before the petition date).**

34. f) The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect illegal severance cash reductions before the Petition Date totaling **$5,181.29** (five thousand one hundred eighty-one dollars and twenty-nine cents), as *state taxes* erroneous reductions. The Debtors incorrectly ignored the "filing status"[25] and the "taxable income" declared by the Claimant in his W4 and ignored the IRS regulations of *Form 540 Booklet* and of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them, should be the base

---

[23] Chapter 10.h. Separation Agreement "*Withholding Taxes. The Company shall be entitled to withhold from any payment due to Executive hereunder any amounts required to be withheld by **applicable** tax laws or regulations.*
[24] Exhibit 5 Penalties Calculations table / declaration for delays induced by SDI illegal reduction of the severance installments, before the Petition Date
[25] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)

of the *state taxes* withdrawal. **The penalties calculated for delays and not making the payments on time for the amount of $5,181.29 are $8,381.49[26].**

35. g) Debtors reduced the severance cash payments with a total amount of **$151.25** (one hundred fifty-one dollars and twenty-five cents), unpaid amount wrongly calculated as *Social Security Tax*, and illegally subtracted from severance cash installments before the Petition Date, despite the fact that the limit of $147,000 income was reached on 5/27/2022, payroll stub no. 65145314. The *IRS Regulation Publication 15 (Circular E) 2022* imposes that after the amount of $147,000 income is reached, no more social security taxes should be subtracted from the cash severance installments, according to the "filing status" declared in the unchanged W4 and printed on each Payroll stub. The unpaid amount is $295.62 -$144.37=**$151.25**. Penalties calculation: 126 days x 2%/pay x $151.25 = **$381.15** (for Claim 10029). **The penalties calculated for delays and not making the payments on time for the amount of $151.25 are $381.15[27].**

36. h) For the period April 1st 2022 to the Petition Date, the total amount of erroneous reductions as over taxation for *Medicare tax* for Claimant Nelu Mihai, who was over 65 years old and not self-employed is **$584.60** (five hundred eighty-four dollars and sixty cents), as figured in the payroll stubs nos. 66363671, 66988605, 67294781, 67596944, starting with 7/22/2022)**.** These illegal diminutions for Medicare are contrary to the terms of the Separation Agreement, Chapter 13 (Claimant being under Medicare, over 65 years old). These reductions ignore the *IRS Publication 15 (Circular E)* regulations, the Claimant's income before every payroll date in 2022, and other legislation applicable. The Claimant's experts calculated the correct Medicare taxes for every payroll stub obtained from Insperity PEO Services L.P., and there are illegal reductions at every by-monthly payment as "cash severance". Total amount of penalties for over taxation as Medicare tax for Nelu Mihai, over 65 years old and not self-employed: $17.18 + $51.54 + $85.90 + $120.27 + $118.09 = **$392.98. The penalties for delays are $392.98[28].**

---

[26] Exhibit 3 Penalties Calculations table / declaration for delays induced by illegal state tax over reduction of the severance installments, before the Petition Date
[27] Exhibit 6 Penalties Calculations table / declaration for delays induced by social security illegal reduction of the severance installments, before the Petition Date
[28] Exhibit 7 Penalties Calculations table / declaration for delays induced by Medicare illegal reduction of the severance installments, before the Petition Date

37. Summarizing, the recent new discoveries (Insperity PEO Services L.P. payroll stubs, the emails between Compute North LLC HR department and Insperity PEO Services L.P., the Financial Disclosures Statements of the reorganized Debtors) prove that **the penalties for the unpaid amount of $136,363.68 for 7 days until 9/22/2022 are $19,090.92.**

38. **The penalties for delays before the Petition Date are <u>$8,381.49, plus $31,795.77, plus $381.15, plus $392.98, plus $681.16, plus $19,090.92, meaning $60,723.47 (sixty thousand seven hundred twenty three dollars and forty seven cents).</u>**

39. **<u>To the penalties amount of $60,723.47, for penalties for unpaid accrued credit for Nelu Mihai before the Petition Date, the Claimant requests the penalties for the unpaid amounts accrued after the Petition Date.</u>** The factual basis and legal grounds for receiving also the penalties for the period after the Petition Date are stipulated in Chapter 9.a of the Severance Agreement and in submitted by Nelu Mihai.

40. Our Response is not based on Google pages with questions and answers given without indicating a legal certification of the source. Google provides information not the legal truth to each specific Court case. The calculus and references to incident laws provided in this Response were done by tax lawyers (at Morgan Stanley and other professional companies in these fields), HR specialists, lawyers, executives with experience as CEO and C level in Fortune 500 companies, and even professional tax programs like Intuit or other efficient tax programs. The incorrect, increased and illegal "cash severance" reductions of the cash severance instalments, between April 1 – September 16, 2022 (period before the Petition Date), means delays, so all these illegal reductions are subject to penalties. The errors mentioned in the Motion 1277, about FSA, SDI, social security, California sales taxes, federal taxes, Medicare deductions / over withdrawals which generated delays, were done by Compute North LLC HR and accounting departments by ignoring "*the only applicable tax and regulations*"[29] in California legislation and at federal level. The errors were also proved by the procedure of running tax programs with the data from the Insperity PEO Services L.P. payroll stubs. The errors / reductions / diminutions in the amount of $26,390.58 were confirmed as serious errors, produced by Compute North LLC HR and accounting departments. Individuals from Compute North

---

[29] Chapter 10.h Separation Agreement signed on March 28, 2022, between Claimant and Compute North LLC

LLC provided wrong information to Insperity PEO Services (about the Claimant's W4, his personal deductions, his filing status, his status of non-employee, his accumulated year income and many other parameters), erroneous information which changed illegally the withheld amounts from the cash severance installments supposed to be lawfully paid before the Petition Date, as per *Chapter 10.h of the Separation Agreement*.

41. EVIDENCE TO AUTHENTICATE EXHIBITS AND TO SUPPORT FACTS INSERTED IN THE RESPONSE:

Attached are the following documents in support of this Response:

**Exhibit 1** Percentages of cash severance installments' reductions, before petition Date

**Exhibit 2** Penalties Calculations table / declaration for delays induced by illegal federal over reduction of the severance installments, before the Petition Date

**Exhibit 3** Penalties Calculations table / declaration for delays induced by illegal state tax over reduction of the severance installments, before the Petition Date

**Exhibit 5** Penalties Calculations table / declaration for delays induced by SDI illegal reduction of the severance installments, before the Petition Date

**Exhibit 6** Penalties Calculations table / declaration for delays induced by social security illegal reduction of the severance installments, before the Petition Date

Penalties Calculations table / declaration for delays induced by FSA illegal reduction of the severance installments, before the Petition Date

**Exhibit 7** Penalties Calculations table / declaration for delays induced by Medicare illegal reduction of the severance installments, before the Petition Date

**Exhibit 8 –** Emails between Compute North HR and Insperity PEO Services

**Exhibit 9-**1 Email from Plan Administrator with time and date, June 6th, 2023

42. **CONCLUSION**

**The Claimant, Nelu Mihai, respectfully asks the Court to reject the "*Emergency Motion*" 1277, not to issue the Proposed order 1277-1, and not to grant leave for the Plan Administrator to file the Proposed "SUR-SUR-REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10029)" 1277-2.**

Respectfully submitted,

Dated: October 1st, 2023          NELU MIHAI
/s/ *Nelu Mihai*
_____

201 Harrison Street Apt. 210,
San Francisco CA 94105
Email: nelumihai@prodigy.net

Case 22-90273

Claim 10029, 10026


EXHIBIT 1

Percentages of unpaid accrued cash severance amounts before the Petition Date

| Payroll Check No. | Date of EFT (Direct Deposit) | Amount paid ($) | Unpaid amount ($) | The Debtors wrongly stated "as paid" amount ($) | Unpaid percentage (%) |
|---|---|---|---|---|---|
| 67596944 | 9/16/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 67294781 | 9/2/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 66988605 | 8/19/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 66685164 | 8/5/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 13,636.36 | 7/22/2022 | 9,444.91 | 4,191.45 | 13,636.36 | 30.7373082 |
| 66044876 | 7/8/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65733005 | 6/24/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65416407 | 6/10/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65145314 | 5/27/2022 | 9,206.06 | 4,430.30 | 13,636.36 | 32.48887533 |
| 64880454 | 5/13/2022 | 8,543.18 | 5,093.18 | 13,636.36 | 37.34999663 |
| 64593683 | 4/29/2022 | 8,543.18 | 5,093.18 | 13,636.36 | 37.34999663 |
| 10208869 | 4/15/2022 | 12,957.94 | 7,936.65 | 20,894.59 | 37.9842342 |

1

Penalties calculations for delays by reductions as Federal tax over taxing

Claim 10029   Nelu Mihai

EXHIBIT 2

| Payroll Check No. | Date of EFT (Direct Deposit) | Amount paid ($) | Correct Feredal tax ($) | The Debtors wrongly stated "as paid" amount ($) | FSA illegaly deducted ($) | Taxable amount ($) | Amount illegaly subtrated ($) | No. of delay days to Petition Date (days) | Penalties calculated for delays (reduction by federal over taxation) before the Petition Date ($) |
|---|---|---|---|---|---|---|---|---|---|
| 67596944 | 9/16/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0.00 | 13,636.36 | 1,573.64 | 7 | 220.31 |
| 67294781 | 9/2/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 21 | 660.93 |
| 66988605 | 8/19/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 35 | 1101.55 |
| 66685164 | 8/5/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 49 | 1542.16 |
| 66363671 | 7/22/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 63 | 1982.78 |
| 66044876 | 7/8/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 77 | 2423.4 |
| 65733005 | 6/24/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 91 | 2864.02 |
| 65416407 | 6/10/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 105 | 3304.64 |
| 65145314 | 5/27/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 119 | 3745.26 |
| 64880454 | 5/13/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 133 | 4185.87 |
| 64593683 | 4/29/2022 | 3,000.00 | 1,426.36 | 13,636.36 | 0 | 13,636.36 | 1,573.64 | 147 | 4626.49 |
| 10208869 | 4/15/2022 | 3,000.00 | 1,426.36 | 13,636.36 | ##### | 13,636.36 | 1,573.64 | 161 | 5138.36 |
| | | 1,550.27 | 759.21 | 7,258.23 | | 7,258.23 | 813.25 | | |
| Total | | | | | | | | | **31795.77** |
| | | | | | | 19,696.89 | | | |

Claim 10029 and 10026 by Nelu Mihai
Calculations of penalties for delays due to over state reductions

EXHIBIT 3

| Payroll Check No. | Date of EFT (Direct Deposit) | Amount paid ($) | Unpaid amount ($) | The Debtors wrongly stated "as paid" amount ($) | IllegalFSA | Taxable amount ($) | Amount subtrated illegally | No. of delay days to Petition Date (days) | Penalties for delays due to illegal state tax reductions Pre Petition Date ($) |
|---|---|---|---|---|---|---|---|---|---|
| 67596944 | 9/16/2022 | 900.00 | 485.45 | 13,636.36 | 0.00 | 13,636.36 | 414.55 | 7 | 58.04 |
| 67294781 | 9/2/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 21 | 174.11 |
| 66988605 | 8/19/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 35 | 290.18 |
| 66685164 | 8/5/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 49 | 406.25 |
| 13,636.36 | 7/22/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 63 | 522.33 |
| 66044876 | 7/8/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 77 | 638.4 |
| 65733005 | 6/24/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 91 | 754.47 |
| 65416407 | 6/10/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 105 | 870.55 |
| 65145314 | 5/27/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 119 | 986.62 |
| 64880454 | 5/13/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 133 | 1102.69 |
| 64593683 | 4/29/2022 | 900.00 | 485.45 | 13,636.36 | 0 | 13,636.36 | 414.55 | 147 | 1218.76 |
| 10208869 | 4/15/2022 | 900.00 | 485.45 | 13,636,36 | 211.54 | 13,636.36 | 414.55 | 161 | 1359.09 |
| 10208869 | | 465.08 | 258.39 | 7,258.23 | | 7258.23 | 206.69 | | |
| Total | | | | | | | 5,181.23 | | 8381.49 |

Delcaration
Accurate calculations done by consulting tax lawyers, Morgan Stanley financial experts, HR epxerts etc.
Acuurate, confirmed by running on payroll programs and tax programs.
Linaxe Capital

Case 22-90273

Claim 10029, 10026


EXHIBIT 4

Accrued Penalties on unpaid accrued payroll debts calculation prior the Petition Date, creditor Nelu Mihai

Only for FSA over deductions


1) Unpaid amount wrongly subtracted on April 15, 2022 as FSA

Amount of subtracted FSA: $211.54

Number of days of non payment, prior the Petition Date: 4/15/2022 until 9/22/2022: 161 days

Penalties: 2 /100 x 161 x 211.54 = $681.16

1

State tax over taxing penalties calculations
State taxes over taxation
Nelu Mihai
Claim 10029                                                  EXHIBIT 5

| Payroll Check No. | Date of EFT (Direct Deposit) | Amount paid ($) | Unpaid amount ($) | The Debtors wrongly stated "as paid" amount ($) | FSA illegaly subtracted ($) | Taxable amount ($) | Amount illegaly subtrated ($) | No. of delay days to Petition Date (days) | Penalties calculated for delays by CA SDI reductions before the Petition Date ($) |
|---|---|---|---|---|---|---|---|---|---|
| 67596944 | 9/16/2022 | 0.00 | 0.00 | 13,636.36 | 0.00 | 13,636.36 | 0.00 | 7 | 0 |
| 67294781 | 9/2/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 21 | 0 |
| 66988605 | 8/19/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 35 | 0 |
| 66685164 | 8/5/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 49 | 0 |
| 13,636.36 | 7/22/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 63 | 0 |
| 66044876 | 7/8/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 77 | 0 |
| 65733005 | 6/24/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 91 | 0 |
| 65416407 | 6/10/2022 | 0.00 | 0.00 | 13,636.36 | 0 | 13,636.36 | 0.00 | 105 | 0 |
| 65145314 | 5/27/2022 | 37.50 | 37.50 | 13,636.36 | 0 | 13,636.36 | 37.50 | 119 | 89.25 |
| 64880454 | 5/13/2022 | 150.00 | 150.00 | 13,636.36 | 0 | 13,636.36 | 150.00 | 133 | 399 |
| 64593683 | 4/29/2022 | 150.00 | 150.00 | 13,636.36 | 0 | 13,636.36 | 150.00 | 147 | 441 |
| 10208869 | 4/15/2022 | 227.51 | 227.51 | 13,636,36 | | 13,424.82 | 227.51 | 161 | 732.58 |
| Total | | | | | | | 565.01 | | **1661.83** |

Case 22-90273

Claim 10029, 10026

EXHIBIT 6

Accrued Penalties on unpaid accrued payroll debts calculation prior the Petition Date, creditor Nelu Mihai

Only for over deductions as social security taxes

ON 4/13/2022 the YTD Gross income was $144,671.45, as mentioned in paystub 64880454 dated 5/13/2022 by Insperity PEO Services LP.

The difference $147,000 to the YTD gross income for the next paystub from 5/27/2022 is

$147,00 minus $144,671.45 meaning $2,328.55

Only this amount was supposed to be taxable for social security, in the percentage of 6.2%.

6.2 /100 x $2328.55 = $144.37

The Debtors applied social security tax for the full installment of $13,636.36, instead of using the amount of $2,328.55. The erroneous social security deducted amount was of $295.62, as it is mentioned on Insperity PEO Services LP payroll stub from 5/27/2022 no. 65145314.

The reduction that induced delay was $295.62 - $144.37 = 151.25

The IRS Regulation Publication 15 impose that after the YDT gross income of $147,000 income is reached, no more social security taxes should be subtracted from the severance installments. The number of days of non-payment, prior the Petition Date (5/27/2022 until 9/22/2022) is 126 days.

The delayed and unpaid amount is $295.62 -$144.37=**$151.25 (for Claim 10026).**

Penalties calculation: 126 days x 2%/pay x $151.25 = **$381.15 (for Claim 10029).**

1

Case 22-90273

Claim 10029, 10026

EXHIBIT 7

Accrued Penalties on unpaid accrued payroll debts calculation prior the Petition Date, creditor Nelu Mihai

Only for Medicare over taxing

1) Unpaid amount wrongly subtracted from the amount of $13,636.36 as additional Medicare, calculated over the legal percentage of Medicare tax of 1,45%:

Amount of tax subtracted: $330.45

Date when was due: 9/16/2022

Number of days of non payment, prior the Petition Date: 9/16/202 until 9/22/2022: 7 days

Amount supposed to eventually be subtracted, not considering that the Claimant was over 65 years old starting with March, 22, 2022L $197.73

Amount unpaid: $330.45-$197.73=**$122.72**

Penalties calculation: 7 days x 2%/pay x $122.72 =$17.18

2) Unpaid amount wrongly subtracted from the amount of $13,636.36 as additional Medicare, calculated over the legal percentage of Medicare tax of 1,45%:

Amount of tax subtracted: $330.45

Date when was due: 9/02/2022

Number of days of non payment, prior the Petition Date: 9/16/202 until 9/22/2022: 21 days

Amount unpaid, supposed to eventually be subtracted, not considering that the Claimant was over 65 years old starting with March, 22, 2022L $197.73

Amount unpaid: $330.45-$197.73=**$122.72**

Penalties calculation: 21 days x 2%/pay x $122.72 =$51.54

3) Unpaid amount wrongly subtracted from the amount of $13,636.36 as additional Medicare, calculated over the legal percentage of Medicare tax of 1,45%:

Amount of tax subtracted: $330.45

Date when was due: 8/19/2022

Number of days of non payment, prior the Petition Date: 9/16/202 until 9/22/2022:  35 days

Amount supposed to eventually be subtracted, not considering that the Claimant was over 65 years old starting with March, 22, 2022L $197.73

Amount unpaid: $330.45-$197.73=**$122.72**

Penalties calculation: 35 days x 2%/pay x $122.72 =**$85.90**

　　4) Unpaid amount wrongly subtracted from the amount of $13,636.36 as additional Medicare, calculated over the legal percentage of Medicare tax of 1,45%:

Amount of tax subtracted: $330.45

Date when was due: 8/05/2022

Number of days of non payment, prior the Petition Date: 9/16/202 until 9/22/2022: 49 days

Amount supposed to eventually be subtracted, not considering that the Claimant was over 65 years old starting with March, 22, 2022L $197.73

Amount unpaid: $330.45-$197.73=**$122.72**

Penalties calculation: 49 days x 2%/pay x $122.72 =**$120.27**


　　5) Unpaid amount wrongly subtracted from the amount of $13,636.36 as additional Medicare, calculated over the legal percentage of Medicare tax of 1,45%:

Amount of tax subtracted: $291.45

Date when was due: 7/22/2022

Number of days of non payment, prior the Petition Date: 7/22/2022 until 9/22/2022: 63 days

Amount unpaid, supposed to eventually be subtracted, not considering that the Claimant was over 65 years old starting with March, 22, 2022 $197.73

Amount unpaid $291.45-$197.73=**$93.72**

Penalties calculation: 63 days x 2%/pay x $93.72 =**$118.09**

CONCLUSION

Total amount unpaid from Medicare not legal taxation: $122.72 + $122.72 + $122.72 + $122.72 + $93.72 = **$584.60 (to be added to claim 10026, Claimant Creditor Nelu Mihai).**

Total amount penalties for over taxation as Medicare tax for Nelu Mihai, over 65 years old and not self-employed: $17.18 + $51.54 + $85.90 + $120.27 + $118.09 = **$392.98 (to be added to claim 10029, Claimant Creditor Nelu Mihai).**

| From: | Dallas EG Team 8 |
|---|---|
| To: | Spencer Barron |
| Subject: | FW: Payroll Additions |
| Date: | Thursday, April 14, 2022 3:57:43 PM |
| Attachments: | image001.png |
| | image002.png |

Thank you,

**Lisa Davis**
Payroll Implementation Specialist

545 E. John Carpenter Freeway | Suite 1200 | Irving, TX 75062
OFFICE: 972-871-5718 | EMAIL: Dallas.EGTeam8@insperity.com



**Insperity offices will be closed Friday, April 15, 2022, in observance of Good Friday.**
Please note that phone and e-mail support for benefits, 401(k) and WebSupport will be unavailable from the Insperity Contact Center on this day.

**Insperity is here to help**
We look forward to working with you prior to this holiday closure to meet your immediate payroll processing needs. If you have any questions, please contact your Insperity payroll specialist before noon on Thursday, April 14. It is our pleasure to be of service to you and the employees working at your business.

**From:** Amanda Piff <amanda.piff@computenorth.com>
**Sent:** Tuesday, April 12, 2022 7:24 PM
**To:** Dallas EG Team 8 <Dallas.EGTeam8@insperity.com>
**Subject:** Payroll Additions

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Team-

Please add the following pay to employees for the 4/15 payroll.

████████ -

Commissions taxed at supplemental rates
1. ██████████ - $5,000
2. ██████████ - $5,000
3. ██████████ - $1,000
4. ██████████ - $12,000

Severance-

**Nelu Mihai - $20,894.59**
   This number includes the first payment of 22 for severance $13,636.36 plus the one-time payout of $7,258.23, per the severance agreement.

Thank you,
Amanda

EXHIBIT 9-1

**„From:** Michael Tribolet <xxxxxxx.x.xxxxxxxx@triboletadvisors.com>
**Subject: RE: Proof of claim 10028**
**Date:** Jun 6, 2023 at 11:24 AM
**To:** Nelu Mihai <xxxxxxxxx@icloud.com>

Our position on the interest would be that it would only accrue to the date of the bankruptcy which was 9/22/22.  This was due to the contract being rejected by the Debtor.  I can instruct my counsel to file an objection in the court to this claim or I can ask you to amend your claim 10029 from $220,909.03 to $7,090.91 as calculated below.

…"

This copy is true, correct, and represents a redacted extract of the original email sent to my by Mr. Michale A.Tribolet, on June 6, 2023.

Nelu Mihai

Claimant, case 22-90273

San Francisco CA

September 4, 2023

CERTIFICATE OF SERVICE

I certify that on October 1st, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas (the "ECF System") on all parties registered to receive service via the ECF System in this case 22-90273.

NELU MIHAI, PhD

_____