# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), et al., | Case No. 22-90273 (MI) |
| Debtors.[1] | |

**CORRECTED RESPONSE TO DENY / REJECT THE PLAN ADMINISTRATOR'S OBJECTION 1246 TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10026), AND THE PROPOSED ORDER 1246-2, ASSOCIATED TO OBJECTION 1246**

NELU MIHAI, PhD, former funding Chief Technology Officer at Compute North LLC / Debtors, in his capacity as Creditor ("Creditor") and Claimant of the Claim no. 10026 filed on October 24th, 2022, in case 22-90273 (the "Bankruptcy Case", "Case no. 22-90273"), hereby files this Corrected Petition/ Response ("Response"), for correcting the typos "1249" into "1246" and respectfully asking the Court:

**a) to allow the Claim no. 10026 to be admitted and distributed to Claimant Nelu Mihai for the recalculated amount of $162,754.26 (one hundred sixty-two thousand seven hundred fifty four dollars and twenty three cents),** based on the recent discoveries

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

**from Insperity PEO Services, entity part of the Separation Agreement signed on March 28, 2022 between the Claimant and the Debtors (f/k/a Compute North LLC).**

b) <u>**To allow the priority distribution of the amount of at least $10,000.00 ("Priority Claim") of severance cash, based on § 507(a)(4): distribution on the Priority Claim shall be payable from the Allowed Administrative and Priority Claims Reserve.**</u>

c) <u>**To allow accelerate distribution of the amount of at least $162,754.26 ("General Unsecured Claim") of severance cash, considering the terms of Chapter 9.a of the Separation Agreement (related to penalties).**</u>

d) **To reject the "Objection" 1246 to Claim Asserted by Nelu Mihai (Claim No. 10026**) (the "Objection" document 1246 filed on 09/05/2023, asking to modify the debt amount of Proof of Claim, based on hearsay and no legal base assumptions of the Plan Administrator in his Declaration 1246-1)

e) **As well to reject "the Proposed Order" 1246-1 and the parts of the Plan Administrator's Declaration, filed by the Plan Administrator, which are inadmissible and hearsay, being not based on personal knowledge.**

f) **Claim 10026 and modified Proof of Claim 10026 should be ordered with allowance by the Court**, **both being based on legal evidence, legal grounds, and factual bases, which added legal weight to Claim 10026, as new discoveries modified Proof of Claim 10026.**

1. Nelu Mihai respectfully states as follows in support thereof:
2. <u>The Response is filed legally</u>, in less than 30 days before 09/06/2023, considering the date of service as 09/05/2023.
3. The corrected Proof of Claim is fully accurate because it proves there was **$162,754.26**, in unpaid severance obligations owing on the Petition Date. Per a contrario to Tribolet Declaration 1246-1, which was filed before new discoveries were available from Insperity PEO Services L.P. in the form of payroll stubs, the Debtors owed Claimant more than $150,000 at the time of the bankruptcy filing.
4. Nelu Mihai mentions that he maintains the enumeration of real facts and legal grounds presented in his Response to reject the Objection 1199 filed by the Plan Administrator to claim 10029, facts and real grounds applicable for the Response to Objection 1246:

Case 22-90273 Document 1301 Filed in TXSB on 10/03/23 Page 2 of 17

a) The founders of Compute North LLC / Debtors used Nelu Mihai to receive significant advice for two years before hiring him. Realizing that no venture capitalists wanted to fund them, they hired Nelu Mihai to use his professional reputation, prior business success, and his contacts in Silicon Valley to fund Compute North LLC / Debtors. It is not a coincidence that Generate Capital is located in San Francisco (Nelu Mihai's home city), and they provided $310M of the $380M OVERALL FUNDING AMOUNT.

b) Many times, during negotiations between Compute North LLC / Debtors and Nelu Mihai, after agreeing to certain terms, later the Debtors did not recognize the agreed terms.

c) The Debtors kept different, parallel, and double records and books for Nelu Mihai, many of them being altered by Compute North LLC in favor of the Compute North LLC / Debtors, even if the written and agreed contracts had other content and terms.

d) The Compute North LLAC / Debtors tried to defraud Nelu Mihai of his number of shares, decided by both parties in the hiring agreement. The Debtors falsely declared that they made a mistake in the electronic records (different from the written hiring offer/agreement), and they asked Nelu Mihai to sign another hiring agreement during the separation of Nelu Mihai from the Compute North LLC / Debtors.

e) The misrepresentation, late payments, and alteration of the records were evident both before and after the Bankruptcy Notice was filed on 09/22/2022.

f) The $320 M investment brought in by Generate Capital and National Grid Partners was invested in a business plan and product strategy elaborated by Nelu Mihai, which was supposed to transform Compute North LLC / Debtors into an AI-focused company with intelligent connections to the energy national grid, and by reducing dramatically the contribution of the bitcoin mining to the Compute North LLC / Debtor revenue. These two investors invested in Compute North LLC / Debtor solely attracted by this vision of investing mainly in AI. The investors asked Nelu Mihai to provide them with a plan for converting all the data centers into AI and regular IT data centers in case of a crash in crypto markets. These investors did not believe in a business plan based only on Bitcoin mining. After closing the funding round, Compute North LLC has decided to invest and invested all the received funds solely in bitcoin mining equipment (proof in the financial records of Compute North LLC / Debtor. Clearly, this decision, in contradiction with the business plan presented to investors, created tremendous dissatisfaction for these two

major venture capital investors. This significant deviation triggered the collapse of the Compute North LLC / Debtor company.

g) Generate Capital questioned this different use of funds/money, questioned the ability of the executive team (the CEO and CFO left; it is not clear if they left or they were forced / advised to suddenly leave in June / July 2022) and Generate Capital stopped making available the funds for Compute North LLC.

h) The prior overspending put Compute North / Debtors in the inability to pay the debt. Underscored: Compute North / Debtors did not go bankrupt because of the downturn of the bitcoin market: the Debtors had enough money ($385M) to survive for two–three more years.

5. The Proof of Claim in the amount of $150,000.00 was initially based on the amount recognized by Debtors to be "payable" to Claimant Nelu Mihai, amount made public in the books and records of the reorganized Debtors. This initial amount of the Proof of Claim is an amount recognized by the Debtors as being a debt to Creditor Nelu Mihai, a priority debt representing accrued unpaid severance wages, unpaid but due before the Petition Date, September 22, 2022. The severance wages were supposed to be paid in the amount of $300,000.00, as per the terms of the Separation Agreement, signed between Claimant Creditor Nelu Mihai and Compute North LLC on March 28, 2022. The last day of employment was March 31, 2022. The Effective Date as per Separation Agreement terms was April 15, 2022.

6. The amount of $300,000.00 was agreed to be paid in full before February 15, 2023, at the same dates when the other executives were paid. The amount of $300,000.00 was never paid in full, the **Debtors has never paid 12 installments of $13636.36. The debtor subtracted illegal taxes and deductions before September 22, 2022, the Petition Date. The accrued unpaid amount is <u>$162,754.26 (one hundred sixty-two thousand seven hundred fifty four dollars and twenty six cents)</u>, as proven by the Insperity PEO Services payroll stubs, new discoveries, provided to Court by the Claimant, care of the case manager. Mr. Tyler Laws, and also by the Plan Administrator, in Exhibit B, attached to his Emergency Motion docket 1277-2, filed on September 22th, 2023**.

7. First, after declaring bankruptcy under Chapter 11, the Debtors untruthfully declared in their bankruptcy documents of case 22-90273 (Financial Status Disclosure Statements of

Compute North LLC / Debtors), filed before Reorganization Plan confirmation and before the Court named the Plan Administrator, that they paid Claimant Nelu Mihai, one day before the Petition Date, September 22th, 2022, severance cash in the amount of $150,000.00. This public false information constitutes disparagement, because the Insperity PEO Services L.P. payroll stubs ( obtained with difficulty after the Plan Administrator lawyers issued a First Request for Discoveries, discoveries that were always in their solely custody, possession and control) prove that no amount of $150,000.00 was paid to Claimant one day before the Petition Date or in any other day after March 31, 2022, the Termination Date for the former CTO of Compute North LLC.

8. During an ulterior Court hearing, Nelu Mihai and other Creditors pointed out that false payments were posted in the ("Financial Status Disclosure Statements of Compute North LLC / Debtors" as being paid one day before the Petition Date. Even more, the former new CFO, declared that the financial records staying at the base of the "Financial Status Disclosure Statements of Compute North LLC / Debtors" were accurate.

9. The first ("Financial Status Disclosure Statements of Compute North LLC / Debtors" were corrected for eliminating some of the debts which were not paid in fact one day before the Petition Date, including the correction of the amount of $150,000.00 for Creditor Nelu Mihai, which became a recognized priority debt in the amount of at least $150,000.00.

10. The emails presented by the Plan Administrator in his declaration 1277-2 Exhibit A have no probatory attributes for the accrued unpaid severance wages amount left to be paid before the Petition Date, because at the moment of sending these emails, in June 2023, Claimant Nelu Mihai was guided by the initial Financial Disclosure Statements produced by the Reorganized Debtors, the Compute North LLC former CFO statements in Court.

11. Nelu Mihai had no access to his payroll stubs, after March 31, 2022 until September 7th, 2023 (after the Plan Administrator filed the Objection to Claim 10026; the Plan Administrator and his Reviewing Parties sustain that they did not have access to the Insperity PEO Services L.P. records, so their statements prove that the Plan Administrator did not investigate accurately the records and books of the Debtors, and the Objection is base only on hearsay and erroneous assumptions, not having legal base).

12. The Claimant filed Claim 10026 on October 24th, 2022, based on the recognized debt of $150,000.00, falsely presented by the reorganized Debtors as paid one day before the Petion Date and based on his gross calculations, but without any possibility to calculate the exact debt amount (no access to his company "refurbished" laptop, which was asked back by the employer, in order to be refurbished again; no access to the Insperity PEO Services L.P. payroll platform, no possibility to verify the altered books and records of the reorganized Debtors).

13. As presented in dockets 1258 and 1259, which are maintained as addenda to this Response (only for the Legal allegations related to Claim 10026 and explanations to illegal redactions etc.), the Insperity PEO Services L.P. payroll stubs for the period April 1, 2022 – September 16th, 2022, prove that the remaining cash severance amount left unpaid is **$162,754.26 (one hundred sixty-two thousand seven hundred fifty four dollars and twenty six cents).**

14. In addition, it was proven that, before September 2021 – March 2022, Compute North LLC (Debtors) several times did not pay Claimant Nelu Mihai with the full amount of his wages, many mistakes and subtractions being made illegally (as an example, for Nelu Mihai, the Compute North LLC / Debtors took his contributions for 401(k), without depositing them into Nelu Mihai's 401k account kept by a 401(k) plan administrator: this illegal procedure repeated for at least two months, causing retirement investment losses to Claimant Nelu Mihai, because his money remained in the Debtors accounts, accruing interest, but not being invested in the retirement account of the owner of the 401(k) contributions, the Claimant.)

15. The Objection should be rejected, being evident that Claimant Nelu Mihai is entitled to receive the allowance for his corrected Proof of claim no. 10026 and be credited/awarded according to this Response reflected in a Court Order in favor of Creditor Nelu Mihai, considering the certitude that the breaching of the Separation Agreement fully justifies the rejection of the Objection 1246 and Declaration 1246-1, as well of the Proposed Order associated with the Objection 1246.

16. In this accurate table, based on the real paychecks kept by Debtors at Insperity PEO Services L.P., there is the last column, representing the percentage of diminutions of each amount represented erroneously by the Debtors in their table of docket 1230 (**between**

**30,05% and 37,25%,** meaning that **every single by-monthly payment was reduced by at least a third or a quarter, pre-Petition Date.** Also, column four states the real amounts paid to Claimant Nelu Mihai, in relation to Separation Agreement, after April, 2022 (his Termination Date was March 31, 2022). Similarly, column three states the exact transferred amounts by EFT, into Nelu Mihai's bank account.

| Payroll Check No. | Date of EFT (Direct Deposit) | Amount paid ($) | Unpaid amount ($) | The Debtors wrongly stated "as paid" amount ($) | Unpaid percentage (%) |
|---|---|---|---|---|---|
| 67596944 | 9/16/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 67294781 | 9/2/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 66988605 | 8/19/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 66685164 | 8/5/2022 | 9,415.91 | 4,220.45 | 13,636.36 | 30.94997492 |
| 13,636.36 | 7/22/2022 | 9,444.91 | 4,191.45 | 13,636.36 | 30.7373082 |
| 66044876 | 7/8/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65733005 | 6/24/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65416407 | 6/10/2022 | 9,538.63 | 4,097.73 | 13,636.36 | 30.05002801 |
| 65145314 | 5/27/2022 | 9,206.06 | 4,430.30 | 13,636.36 | 32.48887533 |
| 64880454 | 5/13/2022 | 8,543.18 | 5,093.18 | 13,636.36 | 37.34999663 |
| 64593683 | 4/29/2022 | 8,543.18 | 5,093.18 | 13,636.36 | 37.34999663 |
| 10208869 | 4/15/2022 | 12,957.94 | 7,936.65 | 20,894.59 | 37.9842342 |

The last row includes the payments of $7,258.23 stipulated in the Chapter 9.d of the Separation Agreement, which has no link with the "severance cash payments" from chapter 9.a of The Separation Agreement.

17. After new consultations with advisors and experts in human resources, payroll, taxes from Morgan Stanley etc. who analyzed copies of the payroll stubs from Insperity PEO Services L.P. it was discovered and reconfirmed that:

18. (a) each payment of "cash severance" before the Petition Date was not in full, was not conform to the Separation Agreement signed on March 28, 2022;

19. b) one of the illegal underpayments (payroll stub 10208869 dated 4/15/2022, for a paper check cashed on 4/18/2022, not from the March 31, 2022 last check / payroll stub, as incorrectly Mr. Charles R. Gibbs and ASK LLP team state in docket no. 1277-2, ¶1 d., docket related to other Claim 10029), which were done erroneously, is for **Flexible**

**Spending Account**, on 4/15/2022, in the amount of **$211.54** (Claimant Nelu Mihai did not ask to have FSA deductions from his severance cash payments; FSAs are an IRS-regulated benefit; FSA is optional / voluntary and it can be salary reduction only if the payee is employed[2]; the FSA is subtracted from the paycheck of an employee[3] in equal amounts[4] per month; the "final paycheck" on March 31,2022 should not have extra FSA deductions; the Plan Administrator affirmation that a former employer has rights to deduct FSA that was "*not deducted in the last check*" is an invention of the Plan Administrator's team, absurd and contradictory to the *IRS Publication 969 Cat. 24216S, the California Labor Laws* and other legislation.

20. c) illegal diminutions in the amount **$19,696.89** were done by Debtors starting with April 15, 2022 as **federal taxes** (ignoring the "filing status"[5] declared by the Claimant in his W4 and ignoring the IRS regulations of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them, should be the base of the federal taxes withdrawal[6]**.** The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect that there is an unpaid severance amount of **$19,696.89**; Nelu Mihai filed an email exchange between Compute North LLC HR representative *Amanda Piff <amanda.piff@computenorth.com>* (**Exhibit A**[7], filed by the Plan Administrator himself in his Declaration docket 1273-1) from the HR Department of Compute North, proving that Debtors wrongly diminished the wages of the Claimant, incorrectly considering the severance cash as "*supplemental*

---

[2] FSAs are usually funded through voluntary salary reduction agreements with your employer (IRS Publication 969, page 18)
[3] You contribute to your FSA by electing an amount to be voluntarily withheld from your pay by your employer (IRS Publication 969, page 18)
[4] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)
[5] A Form W-4 for 2021 or earlier years remains in effect for 2022 unless the employee gives you a 2022 Form W-4 (IRS Publication 15 – 2022, page 22)
[6] HR Compute North LLC, Tuesday, April 12, 2022 7:24 PM: "Hi Team- Please add the following pay to employees for the 4/15 payroll. Commissions taxed at supplemental rates Nelu Mihai Severance- Nelu Mihai - $20,894.59 This number includes the first payment of 22 for severance $13,636.36 plus the one-time payout of $7,258.23, per the severance agreement. Thank you, Amanda"
[7] Rxhibit A, attached to this Response

*wages*" (bonuses) and wrongly ignoring that there was no supplement to any wage, and ignoring the W4 given by Claimant Nelu Mihai to Compute North in 2021, when he was hired, applying wrongly a higher rate instead of a marginal tax rate based on the expected income of $300,000, agreed upon on the Separation Agreement Chapter 9.a. Severance Payments should have been *as part as normal wages* (in the Exbibit A, Claimant is considered "an employee" receiving "normal wages")

21. e) illegal diminutions of **$565.01** (five hundred sixty-five dollars and one cent) were done starting with April 15, 2022 for **SDI** (State Disability Insurance), ignoring the *IRS Publication 15 (Circular E) regulations*, and the income before every payroll date, and other legislation applicable); other illegal amounts were erroneously subtracted from checks 10208869 (4/15/2022), 64593683 (4/29/2022), 64880454 (5/13/2022), 65145314 (5/27/2022) as California State Disability Insurance, meaning illegal subtractions / withholdings. According to California legislation, "*no SDI deductions withheld from severance and lump sum payments."* Compute North LLC was o Minnesota company, while the Claimant Creditor Nelu Mihai was and is a California resident, where a former employee who receives severance payments is not entitled to receive unemployment disability insurance payments[8]; therefore, any SDI diminution from cash severance is not allowed and cannot be claimed as credit from California state[9], at least because Claimant did not *"work for two employers in 2022"*; the former employee Nelu Mihai at Compute North LLC would have never been entitled to receive disability insurance even he would have been disabled. SDI was subtracted illegally from his severance cash installments.

22. f) The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect illegal severance cash reductions before the Petition Date totaling **$5,181.29** (five thousand one hundred eighty-one dollars and twenty-nine cents),

---

[8] Section 1265; Severance pay is not wages for unemployment insurance purposes. California Supreme Court: *Powell and Byrd vs. California Unemployment Insurance Appeals Board* (63 Cal. 2d 103, 1965)

[9] Instructions for Form 540 line 47: *You may claim a credit for excess State Disability Insurance (SDI) or Voluntary Plan Disability Insurance (VPDI) if you meet all of the following conditions: You had two or more California employers during 2022. You received more than $145,600 in gross wages from California sources. The amounts of SDI (or VPDI) withheld appear on your federal Form(s) W-2. Be sure to attach your federal Form(s) W-2 to the lower front of your Form 540.*

as *state taxes* erroneous reductions. The Debtors incorrectly ignored the "filing status"[10] and the "*taxable income*" declared by the Claimant in his W4 and ignored the IRS regulations of *Form 540 Booklet* and of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them, should have been be the base of the *state taxes* withdrawals.

23. g) Debtors reduced the severance cash payments with a total amount of **$151.25** (one hundred fifty-one dollars and twenty-five cents), unpaid amount wrongly calculated as <u>Social Security Tax</u>, and illegally subtracted from severance cash installments before the Petition Date, despite the fact that the limit of $147,000 income was reached on 5/27/2022, payroll stub no. 65145314. The *IRS Regulation Publication 15 (Circular E) 2022* imposes that after the amount of $147,000 income is reached, no more social security taxes should be subtracted from the cash severance installments, according to the "filing status" declared in the unchanged W4 and printed on each Payroll stub. The unpaid amount is $295.62 -$144.37=**$151.25**.

24. h) For the period April 1st, 2022 to the Petition Date, the total amount of erroneous reductions as over taxation for *Medicare tax* for Claimant Nelu Mihai, who was over 65 years old and not self-employed is **$584.60** (five hundred eighty-four dollars and sixty cents), as figured in the payroll stubs nos. 66363671, 66988605, 67294781, 67596944, starting with 7/22/2022)**.** These illegal diminutions for Medicare are contrary to the terms of *the Separation Agreement, Chapter 13* (Claimant being under Medicare, over 65 years old). These reductions ignore the *IRS Publication 15 (Circular E)* regulations, the Claimant's income before every payroll date in 2022, and other legislation applicable. The Claimant's experts calculated the correct Medicare taxes for every payroll stub obtained from Insperity PEO Services L.P., and there are illegal reductions at every by-monthly payment as "cash severance".

25. Summarizing, the recent new discoveries (Insperity PEO Services L.P. payroll stubs, the emails between Compute North LLC HR department and Insperity PEO Services L.P. (Exhibit A), the Financial Disclosures Statements filed by the reorganized Debtors) prove

---

[10] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)

that **there is an extra unpaid cash severance amount <u>and debts according to the Separation Agreement</u>, calculated for the period April 1st 2022 to the Petition Date, in the amount of $5,181.29, plus $19,696.89, plus $151.25, plus $584.60, plus $211.54, plus $565.01 meaning <u>$26,390.58 (twenty six thousand three hundred ninety dollars and fifty eight cents),</u> which should be paid with priority, without taxation.**

26. **This amount of $26,390.58 should be added to $136,363.68 (representing amount mentioned and required by the Plan Administrator to be paid to Claimant Nelu Mihai), totaling $162,754.26.** All these amounts will not be refunded by IRS or the California Franchise Tax Board, the calculations of a "tax return" having extra and complex variables and determinations, based on a family income, filing status, annual adjusted gross income, the deductions' structure and many other personal and specific parameters.

27. **The following table represents the correct calculations of the illegally reductions:**

| Date of check / EFT | Gross amount supposed to be paid ($) | Erroneous Reduction as SDI ($) | ErroneousReduction as FSA ($) | Erroneous State taxes reductions ($) | Erroneous Federal Tax Reductions ($) | Erroneous Social Security ($) | Erroneous Medicare Reductions ($) | $ |
|---|---|---|---|---|---|---|---|---|
| 9/16/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | 122.72 | |
| 9/2/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | 122.72 | |
| 8/19/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | 122.72 | |
| 8/5/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | 122.72 | |
| 7/22/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | 93.72 | |
| 7/8/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | | |
| 6/24/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | | |
| 6/10/2022 | 13,636.36 | | | 414.55 | 1,573.64 | | | |
| 5/27/2022 | 13,636.36 | 37.50 | | 414.55 | 1,573.64 | 151.25 | | |
| 5/13/2022 | 13,636.36 | 150.00 | | 414.55 | 1,573.64 | | | |
| 4/29/2022 | 13,636.36 | 150.00 | | 414.55 | 1,573.64 | | | |
| 4/15/2022 | 20,854.29 | 227.51 | 211.54 | 621.24 | 2,386.85 | | | |
| | | | | | | | | |
| **Total Calculated reductions after new discoveries** | | **565.01** | **211.54** | **5181.29** | **19,696.89** | **151.25** | **584.6** | **26,390.58** |
| **Amount calculated by the Plan Administrator** | | | | | | | | **136,363.68** |

| | |
|---|---|
| **Accrued unpaid amount before the Petition Date for Claim 10026** | **162,754.26** |

28. The Counsels representing the Plan Administrator cited some "precedents" in the Objection (document 1246) referred to, in this Response. All these precedents are entirely different from Nelu Mihai's case for Proof of Claim no. 10026, and do not contain any resemblance of parts, circumstances, or legal grounds with Claim 10026 and Claimant Nelu Mihai's situation. It is a gross mistake to consider generalizations when the object of a claim is taxations and deductions. An example of an inapplicable generalization is in docket 1277-2, ¶ 5 d: where Mr. Charles R. Gibbs, a Texas resident probably, invokes an inapplicable regulation about a so-called "*California SDI phase-out reached at the time of the issuance of the May 27, 2022 paycheck*" while the *California Tax Regulations 540 Form Booklet* and others interdict SDI deductions for unemployed individuals and from severance payments. More than that, to send the Claimant to seek refund from California state or IRS, after Plan Administrator's recognition that there were done abusive over-withholdings, can be interpreted not only as not related to the taxation procedures, but as unfair and improper. This type of generalization and moving the responsibility of the payments under the Separation Agreement to the California state and IRS is also incompatible with the Texas State, well known for the respect for individual rights. All returns from state taxes are considered by IRS as income and, therefore, object to taxation. Claimant Nelu Mihai cannot receive, from IRS, the full amount of over-withholdings from his cash severance. Why the Plan Administrator and his team should not seek to get a refund for the over-withholdings, pay the legal fees for this process, after paying the Claimant Nelu Mihai what he is entitled to, according to the terms of Chapter 10.h of the Separation Agreement[11]?

29. The similarity and identity of the circumstances of the precedents with Nelu Mihai's case can be analyzed only by the Court.

30. We strongly object to using those precedents unsuitable for the current Claim and case.

31. To our knowledge, no rule in the bankruptcy law supports the Objection of the Plan Administration to the Claim no. 10026 of Claimant Nelu Mihai. More than that, the *Chapter 10.h of the Separation Agreement* imposes that the Company (Compute North

---

[11] Chapter 10.h. Separation Agreement *"Withholding Taxes. The Company shall be entitled to withhold from any payment due to Executive hereunder any amounts required to be withheld by **applicable** tax laws or regulations.*

LLC) ***"was entitled to withheld only applicable tax and regulations"***, not personal guesses made by Debtors former executives and employees in the HR or accounting departments (if such departments existed in such small company like Compute North LLC).

32. The Plan Administrator's Declaration and Objection 1246 is full of erroneous assumptions and hearsay, therefore, it is mostly inadmissible.

33. The Plan Administrator knows the real reason for the Compute North LLC bankruptcy and failure, but also knows the vital contribution of Nelu Mihai to attract and finalize the funding round. The judicial reality is that no existing law supports the Objection 1246.

34. The contribution of Nelu Mihai to Compute North LLC / Debtor is approx. +$340M in funding, and it would be unfair not to reject the Objection of the Plan Administrator to Claim 10026. An eventual acceptance of the Objection 1246 would nullify the written Separation Agreement signed between Claimant Creditor Nelu Mihai and Compute North LLC / Debtors and affiliates.

35. We respectfully remind the Court that, in the plan accompanying the bankruptcy, Compute North LLC misrepresented the accrued wages by erasing all the accrued but not paid wages (of $150,000.00) from the documents presented to the Court, docket 723-2, and by presenting the amount of accrued wages as "paid wages on the day before filing for bankruptcy"). This misrepresentation and alteration of the financial records before declaring bankruptcy also constitute a breach of the Separation Agreement and material disparaging action, as stipulated by Section 16 of the Separation Agreement.[12]

36. In addition, these bankruptcy processes created tremendous damage for Nelu Mihai and his family. The wife of Nelu Mihai suffered two major surgeries when Nelu Mihai was having hours and hours of meetings with venture capitalists to convince them to invest in Compute North.

37. The other Creditors did not bring $340M as an investment in the Company (Compute North LLC / Debtors).

38. The Plan Administrator's Declaration docket 1246-1 and the Objection 1246 to Claim 10026 do not have any documentary or testimonial evidence for asking a reduction of the

---

[12] *"Parties understand and agree that this mutual non-disparagement term is a material term of the Agreement and that any violation of this term would constitute a material breach of the Agreemen*t").

Proof of Claim 10026 amount, especially since these arguments are about a general situation, not based on the laws incidence, and more than that, are very belligerent toward the Claimant, the Plan Administrator and his Reviewing Parties acting not at the level of a lawful objectivity, but taking the process of objecting and responding as personal quarrels. The incident with the unredacted exhibits in docket 1277-2, filed by the Plan Administrator himself and his team, says more about unfairness and lack of documentary and testimonial evidence.

39. Our Response in not based on Google pages with questions and answers given without indicating a source of such information.
40. The calculus and references to incident laws provided in this Response were done by tax lawyers (at Morgan Stanley and other professional companies in these fields), HR specialists, lawyers, executives with experience as CEO and C level in Fortune 500 companies, and even professional tax programs like Intuit or other efficient tax programs.
41. The incorrect, illegal reductions of the cash severance instalments, between April 1 – September 16, 2022 (period before the Petition Date), were calculated erroneously by Compute North LLC, a small company. Was the internal and external financial audit performed at Compute North and its successors? The errors mentioned, but revised and recalculated in this Response, in FSA, SDI, social security, California sales taxes, federal taxes, Medicare deductions / over withdrawals were done by Compute Noth LLC HR and accounting departments, by ignoring "*the only applicable tax and regulations*"[13] in California legislation and at federal level.
42. The errors were also proved by the procedure of running tax programs with the data from the Insperity PEO Services L.P. payroll stubs, Claimant's W$ etc.. The errors / reductions / diminutions in the amount of $26,390.58 were confirmed as serious errors, caused by Compute North LLC HR and accounting departments.
43. The Plan Administrator's team's allegations about FSA, in docket 1277-2 ¶ 6 page 4 and 5, are at least extreme, if not lacking respect for Court, law and the Separation Agreement terms, and should not be taken into consideration by the Court, because they do not have any legal base. A lawyer has no right to change the meaning of the "final paycheck",

---

[13] Chapter 10.h Separation Agreement signed on March 28, 2022, between Claimant and Compute North LLC

which, at least in California, is mandatory to be paid in the last day of employment, which constitutes payment for "*all the accrued but unpaid obligations*", as also stipulated in *Chapter 8 of the Severance Package*[14]. *The California Labor Administration* applies serious sanctions to any employer, not matter from which state, for not paying on time the final paycheck. If Compute North LLC would have failed to pay the paycheck within the allotted time (March 31, 2022) or have subtracted illegal or unfair, illegal deductions from Claimant final paycheck (like extra FSA, SDI, Medicare, social security, federal or state taxes), the Claimant is entitled to compensation. Under *California Labor Laws*, Claimant is entitled to "*waiting time penalties*" or a full day of wages for each day late Claimant full paycheck is.

44. In fact, in 2022, Claimant Creditor Nelu Mihai noticed the problem with the too small amounts of the payments and informed the CFO and HR, but no action was taken by Compute North LLC. Normally, they should have reimbursed Claimant Nelu Mihai for the illegal deductions, in order not to breach the Separation Agreement and accumulate penalties. The entire story improvised and imagined by the Plan Administrator' counselors, related to the FSA deductions, has no legal ground based on FSA regulations. FSA illegal deductions cannot be recovered from IRS, as they are not taxes, and cannot be deducted after the termination of employment.

45. It is expected that the Plan Administrator and his team (Reviewing Parties) would come with the same allegations exposed by them without legal base in docket 1277, 1277-1, 1277-2. We launch the respectful request to the Reviewing Parties and Plan Administrator to refrain from making such similar, identical erroneous allegations, and to maintain this Claim 10026 at the level of professionalism and dignity in front of the Court, by accepting that multiple over-subtractions were illegally operated by Debtors, at least for not fully knowing the California labor laws, or without deeply investigation of the applicable tax laws and regulations, as firmly stipulated in Chapter 10.h of the Separation Agreement and not only.

---

[14] "accrued but unpaid vacation, expense reimbursements, wages, and other benefits due to the Executive under any Company-provided plans, policies, or arrangements as of the Executive's termination date (the "Accrued Obligations")

46. The numerous and successive errors committed by the Plan Administrator and his Reviewing Parties in presenting the figures and facts to the Court attract the denial of this Objection 1246, Declaration 1246-1 and Proposed order. In fact, the Plan Administrator admits that at least the amount of $136,363.68 represent debt to which Claimant Nelu Mihai is entitled, but the reduction proposed by the Plan Administrator of $13,636.36 is wrongly calculated, because he ignored the unpaid amount of $26,390.58 as proved by the new discoveries and by the incident laws (federal and state taxation laws etc.). The personal and subjective personal opinions of the Plan Administrator and his Reviewing Parties have no legal weight, only the biunivocal matching with the applicable laws, identified by the Court, constitutes fair justice (example of errors: docket 1277-2 ¶ 4: no period of March 2022 is covered by first installment, payable on April 15, 2022; the "final paycheck" paid on March 31, 2022 includes the period of March 27- March 31, 2022; the Plan Administrator's team confuses the meaning of a "final paycheck" and the terms of the Chapter 8 of the Separation Agreement "Accrued Obligations").

## C. RESERVATION OF RIGHTS

47. The Claimant expressly reserves the right to amend, modify, and supplement this Response to Objection, and the right to respond to any assertion regarding the Claim and Objection. The Claimant further reserves all rights to present any evidence at a designated hearing for this proceeding to support his Claim. Claimant reserves the right to contest any other Objections asserted by the Plan Administrator on any other grounds. Nothing herein shall constitute an admission of any assertions coming from the Plan Administrator, except the evidence that at least $136,363.68 is debt to which the Claimant is entitled, from which at least $10,000.00 should be distributed as Priority Claim amount per **§ 507(a)(4)**.

## D. CONCLUSION

**48. The Claimant, Nelu Mihai, respectfully requests that the Claim 10026 and corrected Proof of Claim 10026 (as determined after new discoveries were found) be allowed in their entirety, and that the Court grant such other of allowance, by rejecting the Objection 1246 to this Claim and the Proposed Order 1246-2.**

Respectfully submitted,

Dated: October 3, 2023
                        NELU MIHAI, PhD
                        _____
                        201 Harrison Street Apt. 210
                        San Francisco CA 94105
                        Email: nelumihai@prodigy.net

## Certificate of Service

I certify that on October 3, 2023, I caused a Corrected Response to the Plan Administrator's Objection 1249, to be delivered, using Pacer system, to the U.S. Bankruptcy Court for Southern District of Texas, the Plan Administrator, Tribolet Advisors LLC, ASK LLC, Mr. Charles R. Gibbs from MCDERMOTT WILL & EMERY LLP, *Counsels to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator* and other recipients, parts in case for case 22-90273, and for case 22-90273.

                        Respectfully,
                        ……………………………………………………..
                        Nelu Mihai
                        201 Harrison Street #210,
                        San Francisco, CA 94105
                        nelumihai@prodigy.net