IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | Case No. 22-90273 (MI) |
| | (Jointly Administered) |
| Debtors.[1] | |

## PLAN ADMINISTRATOR'S REPLY IN SUPPORT OF OBJECTION TO CLAIM ASSERTED BY NELU MIHAI (CLAIM NO. 10026)

Tribolet Advisors, LLC, in its capacity as Plan Administrator ("Plan Administrator") in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby files this *Reply in Support of Objection to Claim Asserted by Nelu Mihai (Claim No. 10026)* (the "Reply"), along with the *Supplemental Declaration of Michael Tribolet, Managing Member of Tribolet Advisors LLC, in Support of the Plan Administrator's Objection to Claim Asserted by Nelu Mihai* (the

---

[1] On September 28, 2023, the Court entered the *Final Decree Closing Certain Cases and Amending Caption of Remaining Cases* [Docket No. 1287], closing the chapter 11 cases of the following sixteen entities: Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The chapter 11 cases of the remaining three Reorganized Debtors: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551), shall remain open and jointly administered under the above caption. The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

"Supplemental Declaration"), attached hereto as **Exhibit 1**. In support of the Reply, the Plan Administrator respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Plan Administrator confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

**A. In His Response, Claimant Concedes that the Amount of Unpaid Severance for Remaining Installment Payments is $136,363.68**

2. In Proof of Claim Number 10026 (the "Proof of Claim"), Nelu Mihai ("Claimant") asserts a general unsecured claim for unpaid severance in the sum of $150,000.00 pursuant to a pre-petition severance agreement (the "Severance Agreement") entered into between the Debtors and Claimant (the "Claim"). The Plan Administrator filed the *Objection to Claim Asserted by Nelu Mihai (Claim No. 10026)* (the "Objection"),[2] contending that the amount of unpaid severance owing to Claimant after accounting for prior installment payments is no more than $136,363.68. In his *Response to Deny / Reject the Plan Administrator's Objection 1249 to Claim Asserted by Nelu Mihai (Claim No. 10026), and the Proposed Order 1249-2, Associated to Objection 1249* (the "Response"),[3] Claimant admits that $136,363.68 in installment payments remain unpaid under

---

[2] Docket No. 1246. Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Objection.

[3] Docket No. 1291.

2

the Separation Agreement, exclusive of any alleged reimbursable withholdings.[4]

### B. Claimant's Additional Claim for "Erroneous Reductions" is Not Supported by the Evidence

3. Although not included in his Proof of Claim, Claimant contends in his Response that the Debtors erroneously withheld from his pre-petition severance payments certain amounts for taxes, social security and disability in the total sum of $26,390.58.[5]

4. Claimant concedes that the Separation Agreement provides the Debtors would withhold amounts required to be withheld by applicable tax laws or regulations;[6] Claimant asserts that while withholding was permitted, the amounts withheld were excessive.[7]

5. Claimant has provided no evidentiary basis to support his assertion that taxes were withheld in excess of the amounts required by law, instead citing to unnamed "advisors and experts in human resources, payroll, taxes from Morgan Stanley etc."[8] Those unnamed "experts" are not disclosed or available for cross-examination, and accordingly any of Claimant's assertions as to alleged over-withholding are based on inadmissible hearsay.

6. The Plan Administrator reviewed the paystubs provided by Claimant in discovery related to a separate claim by Claimant (Claim Number 10029, related to penalty amounts under the Separation Agreement), and provided a breakdown of the withholding amounts in the *Sur-Sur-Reply in Support of Plan Administrator's Objection to Claim Asserted by Nelu Mihai (Claim No.*

---

[4] *See* Response ¶ 26 ("this amount of $26,390.58 should be added to $136,363.68 (representing amount mentioned and required by the Plan Administrator to be paid to Claimant Nelu Mihai) . . . .").

[5] *See* Response ¶¶ 17-25, 27.

[6] *See* Response ¶ 31.

[7] *See* Response ¶¶ 22-25.

[8] *See* Response ¶ 17.

10029) (the "Sur-Sur Reply").[9] As noted in the Sur-Sur-Reply, the varying amounts of the withholdings were due to the Social Security phase-out reached on the May 27, 2022 paycheck ($147,000 for 2022);[10] the California SDI phase-out reached on the May 27, 2022 paycheck ($1,601.60 maximum for 2022);[11] and the additional Medicare withholdings on the July 22, 2022 paycheck for individuals earning over a certain amount ($200,000 or $250,000, depending on filing status).[12] Any withholding is credited in the taxpayer's year-end tax return.

| Date | Severance | Additional | Total Gross | FSA- Pre | FSA- Pre | Fed Taxes | CA SIT | CA SDI | SocSec | Medicare | Total Deduct | Net After Deductions | YTD Gross |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/15/202 | $13,636.36 | $7,258.23 | $20,894.59 | $105.77 | $105.77 | $4,550.27 | $1,365.08 | $227.51 | $1,282.35 | $299.90 | $7,936.65 | $12,957.94 | $117,398.73 |
| 4/29/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | $150.00 | $845.45 | $197.73 | $5,093.18 | $8,543.18 | $131,035.09 |
| 5/13/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | $150.00 | $845.45 | $197.73 | $5,093.18 | $8,543.18 | $144,671.45 |
| 5/27/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | $37.05 | $295.62 | $197.73 | $4,430.40 | $9,205.96 | $158,307.81 |
| 6/10/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $197.73 | $4,097.73 | $9,538.63 | $171,944.17 |
| 6/24/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $197.73 | $4,097.73 | $9,538.63 | $185,580.53 |
| 7/8/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $197.73 | $4,097.73 | $9,538.63 | $199,216.89 |
| 7/22/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $291.45 | $4,191.45 | $9,444.91 | $212,853.25 |
| 8/5/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $320.45 | $4,220.45 | $9,415.91 | $226,489.61 |
| 8/19/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $320.45 | $4,220.45 | $9,415.91 | $240,125.97 |
| 9/2/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $320.45 | $4,220.45 | $9,415.91 | $253,762.33 |
| 9/16/2022 | $13,636.36 | $ - | $13,636.36 | | | $3,000.00 | $900.00 | | | $320.45 | $4,220.45 | $9,415.91 | $267,398.69 |

The Plan Administrator also indicated in the Sur-Sur-Reply that, to the extent there was any inadvertent over-withholding on the California SDI tax due to severance pay not being classified as wages by the State of California, the Plan Administrator is willing to concede a pre-petition claim up to the amount of $564.56 for any over-withholdings that cannot be refunded by the State of California.[13]

---

[9]  Docket No. 1277-2. The Sur-Sur Reply was filed as an exhibit to the *Plan Administrator's Emergency Motion for Leave to File Sur-Sur-Reply in Support of the Plan Administrator's Objection to Claim Asserted by Nelu Mihai (Claim No. 10029)*. A hearing on the emergency motion is set for October 5, 2023.

[10] *See* Sur-Sur-Reply, Exhibit C to Tribolet Declaration.

[11] *See* Sur-Sur-Reply, Exhibit D to Tribolet Declaration.

[12] *See* Sur-Sur-Reply, Exhibit E to Tribolet Declaration. As indicated by the IRS, an employer is required to withhold additional Medicare tax on wages in excess of $200,000 even if employee is filing jointly.

[13] The Plan Administrator notes there is a process by which Claimant can seek a refund from California for any alleged overpayment of SDI. https://edd.ca.gov/siteassets/files/pdf_pub_ctr/de1964.pdf

7. A review of the withholding amounts demonstrates that, other than the SDI, the withholdings are in alignment with the tax brackets set by the applicable federal and state governments. *See* Supplemental Declaration, ¶¶ 8-9. For federal taxes, the severance payments were withheld at the 22% level; California taxes were withheld at the 6.6% level. *Id.* Payroll deductions for withholding are usually levelized through the year on a percentage basis to take into account that the employee's marginal tax rate increases over the year. *See* Supplemental Declaration, ¶ 10. Given that the Claimant's payment stopped with the Debtors' Chapter 11 filing in September 2022, with the anticipated additional severance payments unpaid, it would not be unusual for Claimant to have been over-withheld at that point. *Id.* What Claimant characterizes as "illegal" were standard withholding practices and procedures. To the extent that Claimant's withholdings would have exceeded the amount due for 2022, he would have received tax refunds by the State of California and/or the federal government.

8. In contrast, the amounts claimed by Claimant as the appropriate withholdings for the severance payments are far below the tax bracket rates for married persons with Claimant's income sources. *See* Supplemental Declaration, ¶ 11. In addition to the gross $170,894.55 in pre-petition severance payments Claimant received, he also received salary (and thus additional taxable income to reach higher tax brackets) in January through March 2022.

9. Moreover, the Plan Administrator objects to the Claimant's attempt to make a claim against the bankruptcy estates for wrongful tax withholdings when such withholdings, assuming *arguendo* they were erroneous, are subject to reimbursement by the relevant taxing authority. For example, Claimant contends that the Debtors improperly withheld $1,573.64 in federal tax from each severance installment, in the total amount of $19,696.89, as a result of an inconsistency between the Debtors' payroll system and the withholding instructions contained in Claimant's

form W-4. However, to the extent the Debtors over-withheld federal income tax, such withholdings would be eligible for a refund on Claimant's federal income tax return. The Plan Administrator objects to Claimant's efforts to seek a double recovery on allegedly erroneous tax withholdings when Claimant presumably has or has the ability to seek a refund from the relevant taxing authority.[14] This is especially true when any allowed claim for Claimant for any of his funds held by governmental entities, and not the Debtors' estates, will impact the distribution of other similarly-situated creditors.

10. Contrary to Claimant's assertion, there are no "complex variables"[15] that would prevent the calculation of Claimant's tax liability or unfairly burden Claimant from seeking reimbursement for any erroneous withholdings. Claimant sets forth in his Response the calculations and rationale behind his assertions that certain withholdings were improper. The corresponding federal and state taxing authorities have procedures in place for individuals seeking refunds for over or erroneous withholdings. Claimant's remedy is to pursue a refund with the proper taxing authority, rather than file a claim against the bankruptcy estates.

### C. The Plan Administrator Concedes that a Portion of the Claim is Eligible for Priority Treatment

11. In his Response Claimant raises, for the first time, that a portion of the Claim should be treated as a priority wage claim under 11 U.S.C. § 507(a)(4). Notwithstanding Claimant's delay in asserting a priority claim at this juncture in the Bankruptcy Cases, the Plan Administrator agrees that a portion of the Claim related to unpaid severance is eligible for priority treatment. *See, e.g.*, *In re ADI Liquidation, Inc.*, 560 B.R. 105, 109 (Bankr. D. Del. 2016) (employee eligible for

---

[14] The Plan Administrator reserves the right to seek copies of Claimant's 2022 tax returns for purposes of confirming the amount of tax withholdings claimed by Claimant and ultimate tax liability or refund.

[15] *See* Response ¶ 26.

priority claim for severance under § 507(a)(4) where employment was terminated within 180 days of the petition date). Bankruptcy Code sections 507(a)(4) and 507(a)(5) institute a ceiling on the amount of unpaid severance eligible for priority, which was $15,150 on the Petition Date. Claimant previously received $3,163.78 in payment of his priority claim for contributions under an employee benefit plan under Proof of Claim 10028. Therefore, Claimant is eligible for a priority claim under 11 U.S.C. § 507(a)(4) in the amount of $11,986.22.

## CONCLUSION

12. The Plan Administrator reiterates his request that the Claim be modified by reducing the amount to $136,363.68, but subject to allowing a priority claim in the amount of $11,986.22, with the balance of $124,377.46 being classified as a general unsecured claim.

Dated: October 4, 2023                    Respectfully submitted,

/s/ Charles R. Gibbs
Charles R. Gibbs
Texas State Bar No. 7846300
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        crgibbs@mwe.com

– and –

Kara E. Casteel (admitted *pro hac vice*)
Jennifer A. Christian (admitted *pro hac vice*)
Nicholas C. Brown (admitted *pro hac vice*)
**ASK LLP**
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone:    (651) 289-3846
Facsimile:    (651) 406-9676
E-mail:       kcasteel@askllp.com

                                                  jchristian@askllp.com
                                                  nbrown@askllp.com

*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator*

## Certificate of Service

I certify that on October 4, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

I further certify that on October 4, 2023, I caused a copy of the foregoing document to be served by First Class Mail and electronic mail to the Claimant at the following address:

Nelu Mihai
201 Harrison Street
Suite 210
San Francisco, CA 94105
nelumihai@icloud.com

*/s/ Charles R. Gibbs*
Charles R. Gibbs