**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90273 (MI) |

**CONCLUSIONS / SUPPLEMENTAL RESPONSE TO DENY THE OBJECTION 1199 TO CLAIM 10029 ASSERTED BY CLAIMANT NELU MIHAI**

NELU MIHAI, PhD, former funding Chief Technology Officer (CTO) at Compute North LLC / Debtors, in his capacity as Creditor ("Creditor") and Claimant of the Claim no. 10029 filed on October 24, 2022, in case 22-90273 (the "Bankruptcy Case", "Case no. 22-90273"), "Respondent", hereby files this Supplemental Response to Objection 1199 to Claim 10029 Asserted by Nelu Mihai"

**respectfully asking the Court to reject the "Objection 1199" and to order allowance for the Claim 10029, considering also allowance for the additional penalties incurred for delays caused by Debtors by never paying full installments before the Petition Date (between April 15 – September 22, 2022; for not paying the "scheduled" amount of $162,754.26 (at**

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

**least $136,363.68) before the Petition Date; for not paying the "scheduled" debt to hearing date, October 5,2023.**

1. **The legal base of the Claim 10029 is the same as those mentioned in the previous documents filed by Claimant: Claim 10029 is about penalties before and after the Petition Date, for an unpaid debt, also recognized as "scheduled debts" by Debtors in forms 207 and Financial Disclosure Statements (filed as Exhibits 15, docket 1301).** The legal base was presented in docket 1213 (identical with docket 1211). Only the calculations were updated by Claimant, based on the elimination (by the Claimant) of errors willfully presented by Debtors in forms 207, in the Financial Disclosures 723-2 Schedule A as being paid one day before the Petition Date: this is false, as the Claimant did not receive cash severance payment of $150,000 one day before the Petition Date.
2. The Proof of Claim 10029 is for delays in paying the cash severance pre-petition and post petition.
3. The amount of $300,000 cash severance (Chapter 9.a in the Separation Agreement signed on March 28, 2022) was agreed to be paid in full before February 15, 2023, at the same dates when the other executives were paid. The amount of $300,000.00 was never paid in full or on time, post-petition and **before September 22, 2022, the Petition Date, as proved by the Insperity PEO Services payroll stubs, new discoveries, provided to Court by the Claimant, care of the case manager. Mr. Tyler Laws, and also provided by the Plan Administrator, in Exhibit B, attached to his Emergency Motion docket 1277-2, filed on September 22th, 2023**.
4. The emails presented by the Plan Administrator in his declaration 1277-2 Exhibit A have no probatory attributes for the accrued unpaid cash severance amount left to be paid before the Petition Date, because on June 2023 Claimant Nelu Mihai was guided by the scheduled debt in the amount of $150,000 presented and recognized by Debtors in 207 Forms and in initial Financial Disclosure Statements produced by Debtors.
5. Nelu Mihai had no access to his payroll stubs, from April 2022 until September 7th, 2023.
6. The Claimant filed Claim 10026 on October 24th, 2022, based on the scheduled and recognized debt of $150,000.00, falsely presented by the reorganized Debtors as paid one day before the Petion Date.  Claimant was without possibility to calculate the exact amount of penalties and principal (no access to his company "refurbished" laptop, which

was returned back by the employer, in order to be refurbished again). He had no access to the Insperity PEO Services L.P. payroll platform and no possibility to verify the altered books and records of Debtors).

7. As presented in dockets 1258 and 1259, the Insperity PEO Services L.P. payroll stubs for the period April 1, 2022 – September 16th, 2022 prove that the remaining unpaid cash severance amount is **$162,754.26 (one hundred sixty-two thousand seven hundred fifty four dollars and twenty six cents).**

8. In addition, it was proved that, before September 2021 – March 2022, Compute North LLC (Debtors) several times did not pay Claimant Nelu Mihai with the full amount of his wages, many mistakes and subtractions being made illegally (as an example, for Nelu Mihai, the Compute North LLC / Debtors took his contributions for 401(k), without depositing them into Nelu Mihai's 401(k) account kept by a 401(k) plan administrator: this illegal procedure was repeated for at least two months, causing retirement investment losses to Claimant Nelu Mihai. His money remained in the Debtors accounts, accruing interest, but not being invested in the retirement account of the owner of the 401(k) contributions, the Claimant.)

9. After new consultations with advisors and experts in human resources, payroll, taxes lawyers etc. who analyzed copies of the payroll stubs from Insperity PEO Services L.P. and after running payroll programs for the Claimant's W4 and filing status, income in 2022 etc. it was discovered and reconfirmed that:

10. (a) each payment of "cash severance" before the Petition Date was not in full, was not conform to the Separation Agreement signed on March 28, 2022. Not paying in full means that every installment payment is subject to penalties for delays, because the reductions amounts are subject to penalties according to Chapter 9.a of the Separation Agreement. By making incomplete, partial payments on 4/15/2022, 4/29/2022 and on May, June, July, August and September 16, 2022, Debtors induced delays for these partial payments; therefore, all the reductions are subject to penalties.

11. b) **the penalties for delay caused by the illegal subtraction of the FSA amount of $211.54 are:**

- <u>**$681.16**[2] (for 161 delay days between April 15, 2022 due date and Petition Date). The payroll stub 10208869 dated 4/15/2022, for a paper check cashed on 4/18/2022, (not from the March 31, 2022 last check / payroll stub, as incorrectly Mr. Charles R. Gibbs and ASK LLP team state in docket no. 1277-2, ¶1 d., docket related to other Claim 10029)</u> shows an illegal reduction with $211.54 for so-called FSA (Flexible Spending Account). The illegality comes from the facts and legislations as follows: Claimant Nelu Mihai did not ask to have FSA deductions from his severance cash payments; FSAs are an IRS-regulated benefit; FSA is optional / voluntary and it can be salary reduction only if the payee is employed[3]; the FSA is deducted from an employee[4] only by-monthly[5]; the last check on May 31,2022 should not have extra FSA deductions; the Plan Administrator affirmation that a former employer has rights to deduct FSA that was "*not deducted in the last check*" is an invention of the Plan Administrator's team, absurd and contradictory to the *IRS Publication 969 Cat. 24216S, the California Labor Laws* and other legislation. The Plan Administrator's team's allegations about FSA, in docket 1277-2 ¶6 page 4 and 5, are at least extreme, if not lacking respect for law and the Separation Agreement terms and should not be taken into consideration by the Court, because they do not have any legal base. A lawyer has no right to change the meaning of the "final paycheck", which, at least in California, is mandatory to be paid in the last day of employment, which constitutes payment for "*all the accrued but unpaid obligations*", as also stipulated in Chapter 8 of the Severance Package[6]. The California Labor Administration applies serious sanctions to any employer, no matter from which state, for not paying on time the final paycheck. **More than that, the FSA was subtracted illegally by the Debtors,**

---

[2] Exhibit 4 Penalties for delays of reductions as FSA
[3] FSAs are usually funded through voluntary salary reduction agreements with your employer (IRS Publication 969, page 18)
[4] You contribute to your FSA by electing an amount to be voluntarily withheld from your pay by your employer (IRS Publication 969, page 18)
[5] At the beginning of the plan year, you must designate how much you want to contribute. Then, your employer will deduct amounts periodically (generally, every payday) in accordance with your annual election. You can change or revoke your election only if specifically allowed by law and the plan. (IRS Publication 969, page 18)
[6] "accrued but unpaid vacation, expense reimbursements, wages, and other benefits due to the Executive under any Company-provided plans, policies, or arrangements as of the Executive's termination date (the "Accrued Obligations")

  **and went into the bank accounts of Debtors: therefore, the Debtors are responsible to also pay the Claimant after September 22, 2022.**

- **$1,599.24 is the amount for not paying back to Claimant the FSA, calculated from September 22, 2022 to October 5, 2023 \*the Court hearing date).**

**The total amount for penalties for delays caused by not returning to the Claimant the FSA illegally subtracted from the April 15, 2022 severance installment is $681.16 + $1,599.24 meaning $2,280.40.**

**The Plan Administrator did not oppose that it was a delay caused by illegal FSA retention by Debtors, starting with April 15, 2022 until, post and including the hearing of October 5, 2023.**

**No financial audit was done for 2022 for Debtors.**

**In conclusion the amount of $2,280.40 is due to be paid to the Claimant.**

12. e) illegal diminutions of **$565.01** (five hundred sixty-five dollars and one cent) were done starting with April 15, 2022 for **SDI** (State Disability Insurance), ignoring the *IRS Publication 15 regulations*, and the income until every payroll date, and other legislation applicable), other illegal amounts were erroneously subtracted from checks 10208869 (4/15/2022), 64593683 (4/29/2022), 64880454 (5/13/2022), 65145314 (5/27/2022) as California State Disability Insurance, meaning illegal subtractions / withholdings. According to California legislation, "*no SDI deductions withheld from severance and lump sum payments."* Compute North LLC was o Minnesota company, while the Claimant Creditor Nelu Mihai was and is a California resident, where a former employee who receives severance payments is not entitled to receive unemployment disability insurance payments[7]; therefore, any SDI diminution from cash severance is not allowed and cannot be claimed as credit from California state[8], at least because Claimant did not have two employers in 2022. The former employee Nelu Mihai at Compute North LLC

---

[7] Section 1265; Severance pay is not wages for unemployment insurance purposes. California Supreme Court: *Powell and Byrd vs. California Unemployment Insurance Appeals Board* (63 Cal. 2d 103, 1965)

[8] Instructions for Form 540 line 47: *You may claim a credit for excess State Disability Insurance (SDI) or Voluntary Plan Disability Insurance (VPDI) if you meet all of the following conditions: You had two or more California employers during 2022. You received more than $145,600 in gross wages from California sources. The amounts of SDI (or VPDI) withheld appear on your federal Form(s) W-2. Be sure to attach your federal Form(s) W-2 to the lower front of your Form 540.*

was never able to receive disability insurance even he would have been disabled and SDI was subtracted illegally from his severance cash installments. An example of an inapplicable generalization is in docket 1277-2, ¶ 5 d: where Mr. Charles R. Gibbs, a Texas resident probably, invokes an inapplicable regulation about a so-called "*California SDI phase-out reached at the time of the issuance of the May 27, 2022 paycheck*" while the *California Tax Regulations 540 Form Booklet* and others interdict SDI deductions for unemployed individuals and severance payments.  More than that, to send the Claimant to seek refund from California state, after Plan Administrator's recognition that there were done abusive over-withholdings can be interpreted not only as not related to the taxation procedures, but as cynical and improper. This type of generalization and moving the responsibility of the payments under the Separation Agreement to the California state is also incompatible with the Texas State, well known for the respect of individual rights. and denying to Claimant Nelu Mihai of what he is entitled to, according to the terms of Chapter 10.h of the Separation Agreement[9]. **Debtors recognized the delay incurred for illegal retention of SDI, in docket 1304 (Reply by the Plan Administrator to response to Objection to Claim 10026).** Surprisingly, Mr. Gibbs and ASK LLP lawyers sent the Claimant to take the illegally subtracted amount of $565.01 (over SDI not allowed to be taken from severance payments) to California state authorities, and, more than that, they attached an EDD form, without reading the content of that form where it written in the first paragraph: "*Do not file a claim for a refund with the Employment Development Department unless you are not required to file a California personal income tax return with the Franchise Tax Board (FTB) for the year in question. ……. Please complete a separate form for each individual.*". This paragraph on the EDD form indicates clearly that the Claimant never can obtain the amount of $565.01 from California state, because the Claimant is a California resident and is required to file a personal tax return with the California state tax authorities. The Court is respectfully asked to sanction such inappropriate allegations, personal opinions, not based on laws, allegations that also prove the lack of legality of the Objection 1199 to Claim 10029 and of the Objection 1246 to Claim 10026. Do the signers of this docket 1304 understand that the Claimant

---

[9] Chapter 10.h. Separation Agreement *"Withholding Taxes. The Company shall be entitled to withhold from any payment due to Executive hereunder any amounts required to be withheld by **applicable** tax laws or regulations.*

has a "married filing jointly status", as posted on every pay stub, as a W4 (W4 is an IRS document "Employee's Withholding Certificate")? Do they understand that their allegations in docket 1304 about an increase of the tax bracket during a fiscal year do not have legal basis, and are contradicted by the IRS and California state laws? All the allegations in docket 1304 about federal and state tax increase during the year have no reflection in the IRS, California tax laws, they constitute only wrong personal opinions, and the Objection 1199 and 1246 should be denied.

**The penalties calculated for delays and not making the full cash severance payments (due to reductions with SDI illegal deductions from severance) are $1,661.83[10] (before the petition date).**

- <u>**The SDI was taken illegally by the Debtors**</u>**: therefore, the Debtors are responsible to also pay the Claimant after September 22, 2022.**
- <u>**$4,271.48**</u> **(378 days x 2/100 x $565.01**) **is the amount for not paying to Claimant the SDI for 378 days, calculated from September 22, 2022 to October 5, 2023, the Court hearing date**).

**The total amount for penalties for delays caused by illegally subtracting $565.01 for SDI is $1,661.83 +** <u>**$4,271.48**</u> **meaning $5,933.31.**

**The Plan Administrator did not oppose that it was a delay caused by illegal SDI retention by Debtors.**

**No financial audit was done for 2022 for Debtors.**

<u>**In conclusion the amount of $$5,933.31 is due to be paid to the Claimant by Debtors.**</u>

13. c) illegal diminutions were done by Debtors starting with April 15, 2022 as **federal taxes** (ignoring the "filing status"[11] declared by the Claimant in his W4 and ignoring the IRS regulations of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form (filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them) should be the base of the federal taxes

---

[10] Exhibit 5 Penalties Calculations table / declaration for delays induced by SDI illegal reduction of the severance installments, before the Petition Date

[11] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)

withdrawal[12]. The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect that there is an unpaid severance amount of **$19,696.89**; Nelu Mihai filed an email exchange between Compute North LLC HR representative *Amanda Piff <amanda.piff@computenorth.com>* (**Exhibit 8**[13], filed by the Plan Administrator himself in his Declaration docket 1273-1) from the HR Department of Compute North, proving that Reorganized Debtors wrongly diminished the wages of the Claimant, incorrectly considering the severance cash as "*supplemental wages*" (bonuses) and wrongly ignoring that there was no supplement to any wage, and ignoring the W4 given by Claimant Nelu Mihai to Compute North in 2021, when he was hired; applying wrongly a higher rate instead of a marginal tax rate based on the expected income of $300,000, agreed on the Separation Agreement Chapter 9.a. Severance Payments should have been *as part as normal wages* (in the Exbibit A, Claimant is considered "an employee" receiving "normal wages"). **The penalties calculated for delays (due to reductions by over withdrawals of federal taxes) and not making payments on time are $31,895.77**[14] **(before the petition date).**

14. f) The payroll checks obtained from Insperity PEO Services L.P. numbered 10208869, 64593683, 64880454, 65145314, 65416407, 65733005, 66044876, 66363671, 66988605, 67294781 and 67596944 reflect illegal severance cash reductions before the Petition Date totaling **$5,181.29** (five thousand one hundred eighty-one dollars and twenty-nine cents), as *state taxes* erroneous reductions. The Debtors incorrectly ignored the "filing status"[15] and the "taxable income" declared by the Claimant in his W4 and ignored the IRS regulations of *Form 540 Booklet* and of *Publication 15 (Circular E) 2022, page 21, Effective Date of Form W4*, imposing that a W4 form filed by Nelu Mihai with the Debtors in 2021, when Nelu Mihai started his employment with them, should be the base

---

[12] A Form W-4 for 2021 or earlier years remains in effect for 2022 unless the employee gives you a 2022 Form W-4 (IRS Publication 15 – 2022, page 22)

[13] Exhibit 8: HR Compute North LLC, Tuesday, April 12, 2022 7:24 PM: "Hi Team- Please add the following pay to employees for the 4/15 payroll. Commissions taxed at supplemental rates Nelu Mihai Severance- Nelu Mihai - $20,894.59 This number includes the first payment of 22 for severance $13,636.36 plus the one-time payout of $7,258.23, per the severance agreement. Thank you, Amanda"

[14] Exhibit 2 Penalties calculated pre petition for delays by reductions as federal taxes

[15] The amount of any federal income tax withholding must be based on filing status, income (including income from other jobs), deductions, and credits. (IRS Publication 15 – 2022, page 22)

of the *state taxes* withdrawal. **The penalties calculated for delays and not making the payments on time for the amount of $5,181.29 are $8,381.49[16].**

15. g) Debtors reduced the severance cash payments with a total amount of **$151.25** (one hundred fifty-one dollars and twenty-five cents), unpaid amount wrongly calculated as *Social Security Tax*, and illegally subtracted from severance cash installments before the Petition Date, despite the fact that the limit of $147,000 income was reached on 5/27/2022, payroll stub no. 65145314. The *IRS Regulation Publication 15 (Circular E) 2022* imposes that after the amount of $147,000 income is reached, no more social security taxes should be subtracted from the cash severance installments, according to the "filing status" declared in the unchanged W4 and printed on each Payroll stub. The unpaid amount is $295.62 -$144.37=**$151.25**. Penalties calculation: 126 days x 2%/pay x $151.25 = **$381.15 (for Claim 10029). The penalties calculated for delays and not making the payments on time for the amount of $151.25 are $381.15[17].**

16. h) For the period April 1st 2022 to the Petition Date, the total amount of erroneous reductions as over taxation for *Medicare tax* for Claimant Nelu Mihai, **who was over 65 in 2022** and not self-employed is **$584.60** (five hundred eighty-four dollars and sixty cents), as figured in the payroll stubs nos. 66363671, 66988605, 67294781, 67596944, starting with 7/22/2022)**.** These illegal diminutions for Medicare are contrary to the terms of the Separation Agreement, Chapter 13 (Claimant being under Medicare, over 65 years old). These reductions ignore the *IRS Publication 15 (Circular E)* regulations, the Claimant's income before every payroll date in 2022, and other legislation applicable. The Claimant's experts calculated the correct Medicare taxes for every payroll stub obtained from Insperity PEO Services L.P., and there are illegal reductions at every by-monthly payment as "cash severance". Total amount of penalties for over taxation as Medicare tax for Nelu Mihai, over 65 years old and not self-employed: $17.18 + $51.54 + $85.90 + $120.27 + $118.09 = **$392.98. The penalties for delays are $392.98[18].**

---

[16] Exhibit 3 Penalties Calculations table / declaration for delays induced by illegal state tax over reduction of the severance installments, before the Petition Date

[17] Exhibit 6 Penalties Calculations table / declaration for delays induced by social security illegal reduction of the severance installments, before the Petition Date

[18] Exhibit 7 Penalties Calculations table / declaration for delays induced by Medicare illegal reduction of the severance installments, before the Petition Date

17. Summarizing, the recent new discoveries (Insperity PEO Services L.P. payroll stubs, the emails between Compute North LLC HR department and Insperity PEO Services L.P., the Financial Disclosures Statements of the reorganized Debtors) prove that **the penalties for the unpaid amount of $136,363.68 for 7 days until 9/22/2022 are $19,090.92.**

18. **The penalties for delays (recognized by the Plan Administrator as delays in docket 1304) caused by illegal FSA retention ($2,280.40) and illegal retention of SDI ($5,933.31) from cash severance installments, should be paid to Claimant, added to the $19,090.92 from paragraph 17,** *meaning that $27.304.63 should be for certain paid by Debtors to the Claimant (for delays caused for not paying at all the amounts of FSA, SDI and cash severance of $136,363.68.*

19. **Beside this amount, Claimant is entitled to receive penalties for delays before the Petition Date of $8,381.49, plus $31,795.77, plus $381.15, plus $392.98, meaning $40,950,90.**

20. **$40,950.90 plus 27,304.63 is $68,255.53 (sixty eight thousand two hundred fifty five dollars and sixty three cents).**

21. **To the penalties amount of $68,255.53, for penalties for unpaid accrued credit for Nelu Mihai before the Petition Date and for the recognized delays caused by illegal retentions of SDI and FSA, the Claimant requests the penalties for the unpaid amounts accrued after the Petition Date, as follows:**

22. **If the Court will allow only $136,363.68 for principal (as unlawfully requested by the lawyers of the Plan Administrator), this accrued unpaid cash severance amount is subject to penalties post petition date, as motivated by Claimant in all the documents filed by him.**

23. 
    a) For 378 days to the Hearing date of October 5, 2023 the penalties for not paying the amount of $136,363.68 are in the amount of $1,030,909.40. Adding **$68,255.53 the result is $1,099,164.93.**

24. 
    b) If the due date would be 2/14/2023 (even if no payment was done after September 16, 2022), for 161 days the penalties are (only for the amount of $136,363.68) $439,091.05. Adding **$68,255.53 the result is $507,346.58.**

25. **If the amount ordered by the Court for Claim 10026 will be higher, the amounts calculated to paragraph 22 a) or b) should be increased by new calculations.**

26. The factual basis and legal grounds for receiving also the penalties for the period after the Petition Date are also stipulated in Chapter 9.a of the Severance Agreement and submitted by Nelu Mihai.

27. The calculus and references to incident laws provided in these Conclusions have been run also on payroll programs, tax programs, also sustained by accurate indications of applicable laws.

28. The incorrect, increased and illegal "cash severance" reductions from the cash severance instalments, between April 1 – September 16, 2022 (period before the Petition Date), generated delays, therefore all these illegal reductions are subject to penalties. The errors mentioned in the Motion 1277, about FSA, SDI, social security, California sales taxes, federal taxes, Medicare deductions / over withdrawals which generated delays, were done by Compute North LLC HR and accounting departments by ignoring "*the only applicable tax and regulations*"[19] in California legislation and at federal level. The errors were also proved by the procedure of running tax programs with the data from the Insperity PEO Services L.P. payroll stubs.

29. The errors / reductions / diminutions were confirmed (the FSA and SDI) by Debtors in docket 1304.

30. Also, the fact that there was no audit of the financials of Debtor brings new evidence that the delays were caused by Debtors.

31. The delays were caused by serious errors, errors committed starting at the level of the Compute North LLC HR and accounting departments. Individuals from Compute North LLC provided wrong information to Insperity PEO Services (about the Claimant's W4, his personal deductions, his filing status, his status of non-employee, his accumulated year income and many other parameters), erroneous information which changed illegally the withheld amounts from the cash severance installments supposed to be lawfully paid before the Petition Date, as per *Chapter 10.h of the Separation Agreement*.

---

[19] Chapter 10.h Separation Agreement signed on March 28, 2022, between Claimant and Compute North LLC

32. It is mentioned several times by the Lawyers that they are interested to preserve the money in the estate. These repeated statements beg for the following questions:
33. a) How many bitcoins have been recovered from the crypto currency wallets of Compute North?
34. b) Have the Official Creditors Committee, the Debtors lawyers requested an audit and investigation in this respect?
35. c) Has the Chief Financial Officer of Compute North (in this position before July 2022) been asked to provide guidance about how to best recover the assets of Compute North?
36. d) From the docket 1289, paragraph 15, Objection to another former executive claim for a bonus, it looks like no financial audit for 2021 and 2022 has been done for Compute North / Debtors. Is this true? If this is true, why it was not done?
37. e) Have all the business contracts between Debtors and third parties been checked to see whether it was or not a conflict of interest?
38. f) There was a claim from a creditor for $300,000 for "entertainment". Has it been approved? If it was approved was there any investigation on the receipts of these expenses?

39. The other conclusions and proofs filed by Claimant remain sustained by Claimant Nelu Mihai.
40. EVIDENCE TO AUTHENTICATE EXHIBITS AND TO SUPPORT FACTS AND CALCUALTIONS IN THIS DOCUMENT were filed as Exhibits in docket 1301, Exhibits List.
41. We respectfully remind to the Plan Administrator and his lawyers that the Court pronounced an order not allowing depositions testimony. At the minute 12:29 of the audio file for the August 14, 2023 hearing the Honorable judge Marvin Isgur ordered "**I am not allowing any deposition** *testimony because I do not think that is relevant, all that we have is a document dispute..*".

42. **SUMMARIZED CONCLUSION**

**The Claimant, Nelu Mihai, respectfully asks the Court to order allowance for the Claim 10029, taking into consideration applicable legislation, as it is, not personal opinions of**

**the Plan Administrator and Official Creditors Committee lawyers, by taking into consideration the new discoveries and the calculations based on the discoveries (payroll stubs, 207 forms, financial disclosure statements etc.) and to reject Objection 1199, proposed Order associated to Objection 1199.**

Respectfully submitted,

Dated: October 4st, 2023

NELU MIHAI
/s/ *Nelu Mihai*

_____

201 Harrison Street Apt. 210,
San Francisco CA 94105
Email: nelumihai@prodigy.net

CERTIFICATE OF SERVICE

I certify that on October 4st, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas (the "ECF System") on all parties registered to receive service via the ECF System in this case 22-90273.

                                          NELU MIHAI, PhD

_____