## PARTIAL ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS PARTIAL ASSIGNMENT AND ASSUMPTION AGREEMENT (this "*Agreement*") is made and entered into as of April 27, 2022 (the "*Effective Date*"), by and between COMPUTE NORTH LLC, a Delaware limited liability company ("*Assignor*") and CN Wolf Hollow LLC, a Delaware limited liability company ("*Assignee*").

### PRELIMINARY STATEMENTS

WHEREAS, Assignor and each of the entities listed as a "Customer" on Exhibit A hereto (each, a "*Customer*") are party to the applicable "Master Agreements" and/or "Colocation Agreements" dated as of the date set forth on Exhibit A (each, a "*Master Agreement*") and the Order Forms (each an "*Order Form*" and, collectively the "*Order Forms*") relating to one or more data center locations (each, a "*Facility*"), pursuant to which Assignor agreed to provide the Services with respect to the applicable Customer's Mining Equipment hosted at the Facility designated thereto;

WHEREAS, Assignee is developing (or has developed) and will be (or is) the owner of one or more of the Facilities and desires to provide Services at such Facilities;

WHEREAS, under the terms of each Master Agreement, Assignor may assign, transfer, delegate or subcontract any or all of its rights under the applicable Master Agreement and the Order Forms with respect to all or a portion of the Mining Equipment hosted at the Facilities set forth thereon;

WHEREAS, a copy of each Master Agreement has been made available electronically to Assignee and a copy of each Order Form that will be subject, in whole or in part, to this Agreement (to the extent assigned pursuant to Section 2, each an "*Assigned Order Form*") is attached hereto as Exhibit B; and

WHEREAS, (a) Assignor now desires to assign to Assignee the Assigned Interests (as defined below), and Assignee desires to accept such assignment and assume from Assignor the Assumed Liabilities (as defined below), as of the Effective Date, on and subject to the terms set forth below and (b) Assignor shall retain all of the Retained Interests (as defined below) and the Retained Liabilities (as defined below).

### AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein, the parties hereto hereby agree as follows, effective as of the Effective Date:

1.    Definitions and Interpretation.

(a)    Capitalized terms used but not otherwise defined herein, shall have the meanings assigned to such terms in the applicable Master Agreement (or, if applicable, the applicable Order Form); provided in the case of a Master Agreement that does not define the term "Mining Equipment", the term "Mining Equipment" shall mean the Customer's cryptocurrency mining hardware identified on the applicable Assigned Order Form.

(b)     Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "hereof," "hereby," "herein," "hereunder" and similar terms in this Agreement refer to this Agreement as a whole and not any particular section in which such words appear, unless otherwise specified; "any" and "all" each means "any and all" and shall not be construed as terms of limitation; and, a reference to a thing (including any right or intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement. Unless otherwise expressly set forth herein, the rights and remedies of each party hereunder will be cumulative and in addition to any other rights or remedies that such party may have at law or in equity.

2.      <u>Assignment</u>.

(a)     *Assignment of Assigned Interests and Assumption of Assumed Liabilities*.

(i)      Except for the Retained Interests, Assignor hereby assigns, transfers, conveys and delivers to Assignee all of Assignor's rights, title and interest in and to each Master Agreement and the Assigned Order Form(s) insofar and only insofar as such rights, title and interest relate to the Mining Equipment listed on <u>Exhibit A</u> (the "***Assigned Mining Equipment***") from and after the Effective Date, including the right to receive payments of the Initial Setup Fee (if any), the Initial Deposit, the Monthly Service Fees, the Monthly Package Fees and any other fees due or owing under the Assigned Order Form(s) and attributable to the Assigned Mining Equipment (collectively, the "**Assigned Interests**"). For the avoidance of doubt, the Assignor and Assignee agree that the Assigned Interests exclude the right to receive payments for Acquired Hardware, Capital Equipment (if applicable) and the Compute North Pool relating to the Assigned Mining Equipment; and

(ii)     Except for the Retained Liabilities, Assignee assumes and accepts the assignment of the Assigned Interests and each and every covenant and obligation that accrues and becomes performable, due or owing under each Master Agreement and the Assigned Order Form(s) to be kept, fulfilled, observed, performed and discharged by Assignor from and after the Effective Date solely with respect to the Assigned Interests, including the obligation to provide Services in respect of the Assigned Mining Equipment from and after the Effective Date (collectively, the "**Assumed Liabilities**"). For the avoidance of doubt, the Assignor and Assignee hereby agree that the Assumed Liabilities exclude (x) the obligations for the Acquired Hardware and Capital Equipment (if applicable) that is not Mining Equipment and the Compute North Pool and (y) any obligation to find space for Customers at another Facility or to relocate Customers' equipment to another Facility.

(iii)    The Assignor hereby represents and warrants to the Assignee (A) that Exhibit A hereto accurately lists each Master Agreement to be assigned on the date hereof by the Assignor, (B) that all such Master Agreements are in full force and effect on the date hereof and were made available to the Assignee through a data room, (C) that Exhibit B contains all the applicable Order Forms that will be subject, in whole or in part, to this Agreement, and (iv) that all such Orders Forms are in full force and effect on the date hereof.

(b)     *Retention of Retained Interests and Retained Liabilities.* Notwithstanding anything herein or in the applicable Master Agreement or the Order Forms to the contrary:

(i)     The Assigned Interests do not include, and the Assignor retains and is fully able to rely upon and enforce, all of Assignor's rights, title and interest in and to (A) the each Master Agreement and the Order Form(s) that relate to any Mining Equipment that is not Assigned Mining Equipment (the "***Retained Mining Equipment***"), including the right to receive payments of the Initial Setup Fee (if any), the Initial Deposit, the Monthly Service Fees, the Monthly Package Fees and any other fees due or owing under the Order Form(s), all on a pro-rata basis to the extent attributable to the Retained Mining Equipment, (B)  the right to receive payments for Acquired Hardware, Capital Equipment (if applicable) and the Compute North Pool relating to the Assigned Mining Equipment, the Retained Mining Equipment, or both, and (C) each Master Agreement and Assigned Order Forms arising prior to the Effective Date (collectively, the "***Retained Interests***").

(ii)    Assignor shall retain the following liabilities (collectively, the "***Retained Liabilities***"):

A.     Each and every covenant and obligation that accrues or becomes performable, due or owing under a Master Agreement and the Order Forms with respect to the Assigned Mining Equipment to be kept, fulfilled, observed, performed and discharged thereunder prior to the Effective Date; and

B.     Each and every covenant and obligation that accrues or becomes performable, due or owing under a Master Agreement and the Order Forms to be kept, fulfilled, observed, performed and discharged thereunder with respect to the Retained Interests, whether such covenant or obligation accrues prior to, on or after the Effective Date.

(c)     *Fees.* To the extent Assignor has received or receives payment from a Customer of amounts paid by such Customer for the account of the Assigned Interests or Assigned Liabilities, Assignor shall transfer such amounts to Assignee concurrently with the execution of this Agreement or within three (3) business days following the date when such fee is received by Assignor, whichever occurs last.  To the extent Assignee receives payment from a Customer of amounts paid by such Customer for the account of the Retained Interests or Retained Liabilities, Assignee shall transfer such amounts to Assignor within three (3) business days following the date when such fee is received by Assignee.

104296171.3

(d)     *Further Assurances.* From time to time, at Assignee's or Assignor's request, Assignor or Assignee, as applicable, shall execute and deliver to the other, or cause to be executed and delivered to the other, such further instruments and documents as either party may reasonably request as necessary or desirable in order to consummate the transactions contemplated by this Agreement.

(e)     *Notices.* Assignee and Assignor each covenants and agrees that such party shall promptly deliver to the other party copies of any notices, information, certificates, records and any and all other documents required to be provided by a Customer under the applicable Master Agreement or Assigned Order Form(s).

(f)     *External Documents.* The applicable Master Agreement incorporates by reference Assignor's Customer Handbook, Acceptable Use Policy and Customer Portal Terms of Use (collectively, "***External Documents***"), true and complete copy of which have been made available electronically to Assignee. Assignor hereby agrees and covenants not to make any changes to the External Documents without Assignee's prior written consent. Assignor further agrees that money damages may not be a sufficient remedy for any breach of this Section 2(f) and that Assignee shall be entitled to seek injunctive or other equitable relief to remedy or prevent any breach or threatened breach of this Section 2(f). Such remedy shall not be the exclusive remedy for any breach of this Section 2(f) but shall be in addition to all other rights and remedies available to it at law or in equity.

3.     Several Liability. Assignee and Assignor agree that, notwithstanding anything to the contrary contained in the applicable Master Agreement or the Order Forms, from and after the Effective Date, the obligations of Assignor and Assignee under the applicable Master Agreement and the Assigned Order Forms are the several obligations of each of them, and not joint or collective obligations, and shall be performed (a) by Assignee with respect to the Assigned Interests and Assigned Liabilities and (b) by Assignor with respect to the Retained Interests and Retained Liabilities.

4.     Indemnification.

(a)     Assignor and Assignee agree that Assignor shall have no liability for, and Assignee agrees to release, defend, indemnify, and hold harmless Assignor from and against any and all third-party claims, liabilities, damages, costs and expenses (including reasonable legal fees and expenses actually incurred) arising out of or relating to the Assumed Liabilities.

(b)     Assignor and Assignee agree that Assignee shall have no liability for, and Assignor agrees to release, defend, indemnify, and hold harmless Assignee from and against any and all third-party claims, liability, damages, costs and expenses (including reasonable legal fees and expenses actually incurred) arising out of or relating to the Retained Liabilities.

5.    <u>Miscellaneous</u>.

(a)    Each provision of this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

(b)    This Agreement constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding between them relating hereto. This Agreement shall not be superseded, terminated, modified, or amended except by express written agreement of the parties hereto.

(c)    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document. The parties may sign and transmit an electronic signature of this Agreement (whether by facsimile, pdf, email, or other electronic means), which signature shall be binding on the party whose name is contained therein.

(d)    This Agreement and the obligations of the parties hereto shall be construed and enforced in accordance with the laws of the State of Minnesota, excluding any conflicts of law rule or principle which might refer such construction to the laws of another state or country. Any dispute, claim, counterclaim or controversy of any kind arising under or relating to this Agreement is and shall continue to be subject to the exclusive jurisdiction of the courts of the State of Minnesota or of the federal courts sitting in the State of Minnesota, and the parties submit to the jurisdiction of such courts in respect of any such action or proceeding brought in such courts. The parties waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of venue of any such action or proceeding in such courts and any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum. Each party hereto irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated thereby.

(e)    IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, RELIANCE, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF BUSINESS, OR COST OF COVER OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY THEREOF.

(f)    If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

[<i>Signature page follows</i>]

IN WITNESS WHEREOF, the parties have executed this Agreement the Effective Date.

**COMPUTE NORTH LLC,**
as Assignor

By: _____*Tad Piper*_____
    Name: Tad Piper
    Title: Authorized Person

**CN WOLF HOLLOW LLC,**
as Assignee

By: _____*Tad Piper*_____
    Name: Tad Piper
    Title: Authorized Person

[Signature Page to Partial Assignment and Assumption Agreement – MN Law]

## <u>EXHIBIT A</u>

### Agreement Description



| # | Deal ID | Customer | MSA Date | Order Form Date | Assigned Qty | Model(s) |
|---|---------|----------|----------|-----------------|--------------|----------|
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| 6 | 8595426454 | Compass Mining Inc | 3/18/2021 | 4/22/2022 | 24,415 | Bitmain Antminer S19j Pro (100T) – 24,415 |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |
| █ | ████ | ████ | ████ | ████ | █ | ████ |

# **EXHIBIT B**

## ASSIGNED ORDER FORMS

*[Attached]*



**Exhibit A – Order Form**

**Customer:** Compass Mining, Inc.

**Facility:** Wolf Hollow, TX (TX10 Data Center)
Minden, NE (NE13 Data Center)
Future Facility - TBD

**Equipment and Fees – New Order Batch # 011 (superseding Prior Orders Batch #003, #004, #005, #006, 007, and #009):**

| Batch # | 011 | | |
|---|---|---|---|
| Deal ID | 8595426454 | | |
| Order Type | ☒ New Order   ☐ Renewal   ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | |
| 13,336 | Bitmain S19j Pro (100TH) | 31 | |
| 1,200 | Bitmain S19i Pro (100TH) | 31 | |
| 1,800 | Bitmain S19j Pro (100TH) | 31 | |
| 6,400 | Bitmain S19j Pro (100TH) | 31 | |
| 3,300 | Bitmain S19j Pro (100TH) | 31 | |
| 6,500 | Bitmain S19j Pro (100TH) | 31 | |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $142,820.03 (equivalent to $0.059 / kWh) | | |
| Total Monthly Package Fee (per unit) | Select @ $2.00 | | |
| Equipment Term | 60 Months | | |

**SUPERSEDED PRIOR ORDERS:**

| Batch # | 009 | | |
|---|---|---|---|
| Deal ID | 6223246493 | | |
| Order Type | ☐ New Order   ☐ Renewal   ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | |
| 0 ~~13,336 (1,667/mo May-Dec 2022)~~ | Bitmain S19j Pro (100TH) | 31 | |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.054 / kWh) | | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | | |
| Equipment Term | 60 Months | | |

| Batch # | 007 | | |
|---|---|---|---|
| Deal ID | 6037873821 | | |
| Order Type | ☐ New Order   ☐ Renewal   ☒ Change Order | | |
| **Equipment** | | | |
| Quantity | Model | Unit Efficiency (W/TH) | |
| 0 ~~1,200 (200/mo Jan 2022 – June 2022)~~ | Bitmain S19i Pro (100TH) | 31 | |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.054 / kWh) | | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | | |
| Equipment Term | 60 Months | | |



| Batch # | 006 |
|---|---|
| Deal ID | 6015810139 |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order |
| Equipment | |

| Quantity | Model | Unit Efficiency (W/TH) |
|---|---|---|
| 0 ~~1,800 (300/mo Jan 2022 - June 2022)~~ | Bitmain S19j Pro (100TH) | 31 |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.054 / kWh) | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | |
| Equipment Term | 60 Months | |

| Batch # | 005 |
|---|---|
| Deal ID | 5997275284 |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order |
| Equipment | |

| Quantity | Model | Unit Efficiency (W/TH) |
|---|---|---|
| 0 ~~6,400 (3,200/month Mar-Apr 2022)~~ | Bitmain S19j Pro (100TH) | 31 |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.54 / kWh) | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | |
| Equipment Term | 60 Months | |

| Batch # | 004 |
|---|---|
| Deal ID | 5943160066 |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order |
| Equipment | |

| Quantity | Model | Unit Efficiency (W/TH) |
|---|---|---|
| 0 ~~3,300~~ | Bitmain S19j Pro (100TH) | 31 |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.054 / kWh) | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | |
| Equipment Term | 5 Years | |

| Batch # | 003 |
|---|---|
| Deal ID | 4829443495 |
| Order Type | ☐ New Order    ☐ Renewal    ☒ Change Order |
| Equipment | |

| Quantity | Model | Unit Efficiency (W/TH) |
|---|---|---|
| 0 ~~6,500 (March 2022)~~ | Bitmain S19j Pro (100TH) | 31 |
| Hosting Services Rate (USD) | Anticipated Daily Rate: $0.00 (equivalent to $0.54 / kWh) | |
| Total Monthly Package Fee (per unit) | Select @ $3.00 | |
| Equipment Term | 5 Years | |



## Package Details:

| | Basic | Select | Premier |
|---|---|---|---|
| **Core Features** | | | |
| Equipment | Customer Provided | Customer Provided | Customer Provided |
| Equipment Managed | No | Yes | Yes |
| Rack Space | X | X | X |
| 240V Power | X | X | X |
| Ambient Air Cooling | X | X | X |
| Redundant Internet Connectivity | X | X | X |
| Physical Security | X | X | X |
| **Technical Support** | | | |
| Basic Remote Hands | X | X | X |
| Advanced Remote Hands | | X | X |
| SLA Level | Network & Power | Hashrate Performance | Hashrate Performance |
| VPN Access | X | | |
| RMA Processing | | X | X |
| **Premium Features** | | | |
| Miner Configuration | | X | X |
| Miner Monitoring | | X | X |
| Alert Management and Proactive Response | | X | X |
| Automated Rules-based Reboots | | X | X |
| Stock Firmware Upgrades | | X | X |
| Compute North Pool (U.S.-based pool) | | | X |
| Pool to Hash Performance Monitoring, Audit, Reconciliation | | | X |
| Discounted Pool Fee | | | X |
| Performance Enhancing Firmware<br>• Overclocking, Underclocking, Auto-tuning, Upgrades<br>• Customer provided (subject to Compute North approval) or<br>• Compute North provided (miner model limited) | | | X |

## Payment and Billing Terms:

- **Monthly Fees:**

  - Deposits: Last two months of Monthly Service and Package Fees are due upon execution of this Order Form (the "Initial Deposit"), however, Customer has previously paid deposits, which shall be applied upon execution of this Order Form and only the remaining balance is due as follows: Remaining Initial Deposit balance due thirty (30) days prior to deployment date as confirmed in writing by Compute North*.

| Initial Deposit | |
|---|---|
| Service Fees: ($142,820.03/day x 30 days/mo. x 2 mos.) | $8,569,201.536 |
| Package Fees: (32,536 miners x $2/miner x 2 mos.) | + $130,144.00 |
| Initial Deposit (Change Order) | $8,699,345.54 |
| - Previous Deposits Received | - $5,083,374.84 |
| **Remaining Initial Deposit Due** | **$3,615,970.70*** |

Equipment installation will not begin until received.



* Customer's previously paid deposits shall be applied upon execution of this Order Form and the Remaining Initial Deposit Due shall be due and payable thirty (30) days prior to the deployment date as confirmed in writing by Compute North.

▪ The Monthly Service Fee is payable based on the actual hashrate performance of the Equipment per miner type per location as a percentage of the anticipated monthly hashrate per miner type. Customer shall pay a minimum service fee monthly in advance equal to seventy percent (70%) of the Expected Monthly Service Fee (the "Minimum Service Fee") based on the Anticipated Daily Rate. The Minimum Service Fee is nonrefundable.

▪ The actual Monthly Service Fee is determined using the Hashrate Performance Adjustment:

Hashrate Performance Adjustment = Expected Monthly Service Fees x
(100% - Actual hashrate performance percentage by model type)

Any Monthly Service Fee owed in excess of the Minimum Service Fee net of the Hashrate Performance Adjustment will be invoiced monthly in arrears. Customer is not eligible for service credits.

▪ Monthly Service Fees and Monthly Package Fees will be invoiced monthly beginning on the date of Installation and are due upon receipt of invoices submitted by Compute North. Late payments will incur interest at the lesser of 1.5% per month (18% annum) or the maximum amount allowed under applicable law.

▪ Pricing is subject to monthly automated ACH payments. Other payment methods may be subject to a service fee.

| Billing Example – Minimum Service Fee | |
|---|---|
| Anticipated Daily Rate (One Miner) | $4.00 |
| Period (Days in the Month) | 30 |
| Number of Units | 10 |
| Expected Total Monthly Service Fees | $1,200.00 |
| | x 70% |
| **Monthly Minimum Service Fee** | **$840.00** |

| Billing Example: 96% hashrate performance | | Billing Example: 105% hashrate performance | |
|---|---|---|---|
| Expected Total Monthly Service Fees | $1,200.00 | Expected Total Monthly Service Fees | $1,200.00 |
| Hashrate Performance Adjustment (-4%) | -$48.00 | Hashrate Performance Adjustment (5%) | $60.00 |
| Total Monthly Service Fee | $1,152.00 | Total Monthly Service Fee | $1,260.00 |
| Minimum Service Fee (Prepaid) | -$840.00 | Minimum Service Fee (Prepaid) | -$840.00 |
| **Balance Due** | **$312.00** | **Balance Due** | **$420.00** |

**Real-Time Interruptible Power:**

Real-time interruptible power may not be available for all Equipment. When real-time interruptible power is available, Customer consents to Compute North installing, configuring and maintaining software (including firmware) on the applicable Equipment and using such software to provide real-time interruptible power services subject to this Agreement. Customer acknowledges and agrees that its use of such software is subject to Compute North's agreement with the licensor(s) thereof.

**Deployment Priority:**

Customer's deployment priority was established pursuant to the Prior Agreement and Prior Order Forms. Customer's deployment priority has not changed due to any change orders or other modifications made pursuant to this Order Form. Additionally:

• Compute North will deploy a minimum of 35 MW for energization of the Equipment at its Wolf Hollow data center facility (or an alternative Compute North facility) on or before July 31, 2022, with the remaining 65 MW deployed for energization of the remaining Equipment by August 31, 2022.



- If all of Customer's Equipment in Batch #011 has not been deployed and energized by August 31, 2022, the Hosting Service Rate for the balance of any undeployed Equipment in Batch #011 shall be reduced to an amount that is equivalent to $0.057/kWh for the final six (6) months of the Equipment Term for such equipment.
- Compute North will provide weekly written updates to Customer regarding the scheduled deployments to ensure Customer of the deployment guarantee herein, and the time any further deposits are required.

**Invoice Detail:**

| Contact Name | Thomas Heller |
|---|---|
| Email | thomas@compassmining.io |
| Phone | (888) 871-3071 |
| Billing Street | 111 Congress Ave Suite 500, |
| Billing City/State/Zip/Country | Austin, TX 78701 |

**Firmware:**

Customer acknowledges and agrees that its use of alternate or non-standard firmware may be subject to third-party fees or other charges, which shall be Customer's sole responsibility. Customer acknowledges and agrees that Compute North's consent to Customer's use of alternate or non-standard firmware and its provision of services relating thereto is for Customer's convenience on an as-is basis, that Customer's use of alternate or non-standard firmware is at Customer's sole risk, that Customer's use of alternate or non-standard firmware may affect the Equipment's power consumption and may require corresponding adjustments to the Monthly Service Fees for such Equipment, and that Compute North does not make any warranties or guarantees, whether express or implied, with respect thereto.

**Order Type:**

☒ **For orders designated as "Renewal" or "Change Order":** This Order Form replaces all then-existing order forms under the applicable Agreement between Compute North and Customer for the identified Equipment, with all other order forms remaining in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

☒ **For orders designated as "New":** This Addendum is and shall be in addition to all then-existing order forms under the applicable Agreement between Compute North and Customer, which order forms shall remain in full force and effect. The Previous Orders and Equipment List attached and appended hereto identifies the Equipment that remains subject to a prior order form as of the date of this Order Form.

**Compute North LLC**

By: _Kyle Wenzel_

Name: Kyle Wenzel

Its: Chief Commercial Officer

**Compass Mining, Inc.**

By: _Whitney Gibbs_

Name: Whitney Gibbs

Its: CEO



**Previous Orders and Deployed Equipment List, not otherwise effected by this new order:**

| Batch # | Equipment Type | Quantity | Facility |
|---|---|---|---|
| 001 | Whatsminer M30S | ~~104~~ 66 | Kearney, NE USA (NE05 Data Center) |
| 001 | Whatsminer M32 | ~~21~~ 275 | Kearney, NE USA (NE05 Data Center) |
| 001 | Canaan A1246 | ~~237~~ 0 | Kearney, NE USA (NE05 Data Center) |
| 001 | Goldshell HS5 | ~~700 400~~ 129 | Kearney, NE USA (NE05 Data Center) |
| 008 | Bitmain S19j Pro (100TH) | 120 | Kearney, NE USA (NE05 Data Center) |
| 008 | Bitmain S19 (95TH) | 180 | Kearney, NE USA (NE05 Data Center) |
| 010 | Bitmain S19j (90TH) | ~~158~~ 85 | Kearney, NE USA (NE05 Data Center) |
| 010 | Bitmain S19 (95T) | 39 | Kearney, NE USA (NE05 Data Center) |
| 010 | Bitmain S19 Pro (110T) | 84 | Kearney, NE USA (NE05 Data Center) |
| 010 | Bitmain S19j Pro (104T) | 20 | Kearney, NE USA (NE05 Data Center) |
| 010 | Avalon 1166 Pro (75T) | 12 | Kearney, NE USA (NE05 Data Center) |
| 010 | Avalon 1166 Pro (78T) | 29 | Kearney, NE USA (NE05 Data Center) |
| 010 | Avalon 1166 Pro (81T) | 66 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S (74T) | 2 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S (76T) | 22 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S (78T) | 27 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S (80T) | 38 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S+ (80T) | 120 | Kearney, NE USA (NE05 Data Center) |
| 010 | Whatsminer M31S+ (82T) | 29 | Kearney, NE USA (NE05 Data Center) |
| 010 | Bitmain S19 (90T) | 73 | Kearney, NE USA (NE05 Data Center) |

# Signature Certificate

Reference number: N2KFI-QWXFY-DXKT4-UFEH2

| Signer | Timestamp | Signature |
|--------|-----------|-----------|

**Whitney Gibbs**
Email: whit@compassmining.io

| | |
|---|---|
| Sent: | 22 Apr 2022 19:42:33 UTC |
| Viewed: | 22 Apr 2022 19:55:27 UTC |
| Signed: | 22 Apr 2022 21:12:31 UTC |

*Whitney Gibbs*

IP address: 193.239.87.13
Location: Los Angeles, United States

**Kyle Wenzel**
Email: kyle.wenzel@computenorth.com

| | |
|---|---|
| Sent: | 22 Apr 2022 19:42:33 UTC |
| Viewed: | 22 Apr 2022 21:13:06 UTC |
| Signed: | 22 Apr 2022 21:13:53 UTC |

*Kyle Wenzel*

IP address: 65.158.161.156
Location: Eden Prairie, United States

Document completed by all parties on:
22 Apr 2022 21:13:53 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.





# MASTER AGREEMENT

This Master Agreement (the "**Agreement**"), dated 03/18/2021_____, is between Compute North LLC ("**Compute North**") and Compass Mining, Inc._____ ("**Customer**"). In consideration of the promises set forth below, the parties agree as follows:

1. **Services.** Subject to the terms and conditions of this Agreement, Compute North shall provide, and Customer shall pay for, the colocation, managed and other services (the "**Services**") for Customer's equipment (the "**Equipment**") identified on the order form attached hereto as Exhibit A, as may be updated in writing and duly signed by Customer and Compute North from time to time (the "**Order Form**"). Compute North shall provide the Services consistent with, and as more fully described in, its customer handbook (the "**Customer Handbook**"), available at *www.computenorth.com/handbook-sla.pdf* and incorporated herein, as Compute North may update from time to time in is sole discretion.

2. **Colocation Services.**

   2.1. <u>Colocation Facility</u>. Compute North will provide cryptocurrency mining facility, including rack space, electrical power, ambient air cooling, internet connectivity and physical security ("**Colocation Services**") for the Equipment at the Compute North facility specified the Order Form (the "**Facility**") in accordance with the Customer Handbook.

   2.2. <u>Acceptable Use Policy</u>. Customer's receipt of Colocation Services and its use of Equipment under this Agreement is subject to Customer's compliance with Compute North's then-current Acceptable Use Policy, available at *www.computenorth.com/acceptable-use-policy* and incorporated herein, as Compute North may update from time to time in its sole discretion.

   2.3. <u>Customer Portal</u>. Compute North will provide Customer with access to its customer portal (the "**Customer Portal**"). Customer's access to and use of the Customer Portal is subject to, and Customer agrees to be bound by, Compute North's Terms of Use, available at *www.computenorth.com/terms-of-use/* and incorporated herein, as Compute North may update from time to time in its sole discretion. All written notices required by Customer under this Agreement shall be submitted using the Customer Portal.

   2.4. <u>Transfer of Equipment</u>. Customer shall provide prompt written notice to Compute North if it transfers legal title to any Equipment to a third party. In the event of such a transfer, Customer shall remain obligated to pay Compute North the Monthly Service Fees for the transferred Equipment for the remainder of the term applicable to such Equipment (the "**Equipment Term**") unless and until such Equipment is placed into service under, and is subject to, a colocation agreement between the acquiring third party and Compute North, which shall be at Compute North's sole discretion.

   2.5. <u>Transfer of Services</u>. Customer may not sublicense, assign, delegate or otherwise transfer its receipt of Colocation Services under this Agreement to any third party without Compute North's express written consent, which Compute North may withhold in its sole discretion. In the event Compute North gives consent, Customer shall remain fully responsible and liable to Compute North for the performance of all of Customer's obligations under this Agreement, and under no circumstances shall Compute North be deemed to be providing any Colocation Services to any third party for Customer or on its behalf.

3. **Managed Services.**

   3.1. <u>Managed Services</u>. Compute North will provide managed services for the Equipment as elected on the Order Form ("**Managed Services**"). Compute North will provide Managed Services in a professional and workmanlike manner consistent with the Customer Handbook. If Customer does



not elect Managed Services, Customer shall be solely responsible for configuring and maintaining the Equipment remotely via VPN.

3.2. <u>Third-Party Management</u>. Customer shall notify Compute North if it engages a third party to provide services on its behalf with respect to the Equipment. Customer shall be fully responsible and liable to Compute North under this Agreement for any acts or omissions by any third-party service provider acting for or on its behalf.

4. **Hardware Acquisition.** Compute North agrees to sell to Customer, and Customer agrees to buy from Compute North, such hardware, if any, elected on the Order Form ("**Acquired Hardware**"). A deposit equal to fifty percent (50%) of the fee set forth on the Order Form (the "**Hardware Deposit**") shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form, with the remaining amount due and payable by the earlier of (a) the date on which Compute North notifies Customer that the Acquired Hardware has been shipped or (b) thirty (30) days after the Hardware Deposit. Legal title to the Acquired Hardware only shall transfer to Customer when the fee for the Acquired Hardware is paid in full. The Acquired Hardware shall be Equipment subject to this Agreement upon its delivery to the Facility. Customer solely shall be responsible for determining whether the Acquired Hardware is fit and suitable for its particular purposes. Customer acknowledges that no warranty, express or implied, is provided by Compute North for any Acquired Hardware and agrees that the only warranties associated therewith are the warranties, if any, offered or made by the manufacturers thereof.

5. **Term and Termination.**

5.1. <u>Term</u>. This Agreement shall be effective as of the date on which it has been executed by both Compute North and Customer (the "**Effective Date**"), and shall remain in effect for the remainder of any Equipment Term set forth on the Order Form. The Equipment Term for the Equipment shall commence as of the date Compute North notifies Customer in writing that such Equipment has been received and turned on by Compute North.

5.2. <u>Equipment Return</u>. Upon Customer's written request, and provided Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and return the corresponding Equipment to Customer upon the expiration of an Equipment Term as provided in Section 10.4.

5.3. <u>Termination for Cause</u>. Compute North may terminate this Agreement for cause immediately upon written notice to Customer if Customer: (a) fails to make any payment(s) due pursuant to this Agreement; (b) violates, or fails to perform or fulfill any covenant or provision of this Agreement, and any such matter is not cured within ten (10) days after written notice from Compute North; (c) enters into bankruptcy, dissolution, financial failure or insolvency; or (d) enters into an assignment, sale or merger with a third party, unless approved in writing in advance by Compute North (each, a "**Default**").

5.4. <u>Effect of Default</u>. In the event of a Default by Customer, Compute North shall have the right, but not the obligation, to terminate this Agreement on written notice to Customer, and Customer shall pay immediately to Compute North all amounts then owed under this Agreement and, as liquidated damages and not a penalty, all amounts due for the remainder of the applicable term of the Agreement. If Customer fails to make any such payments, in addition to any other rights and remedies it may have, Compute North shall have the right to (a) sell or retain possession of, (b) reconfigure for Compute North's use, or (c) remove and store at Customer's expense, all or any portion of the Equipment without any cost, obligation or liability of Compute North to Customer.

6. **Fees and Payment.**



6.1. <u>Initial Fees</u>. The Initial Setup Fees and Initial Deposit set forth on the Order Form and any Hardware Deposit shall be due and payable as of the date on which Compute North and Customer have both executed the Order Form. The Initial Setup Fees, Initial Deposit and Hardware Deposit are non-refundable and non-transferrable under any circumstance.

6.2. <u>Monthly Fees</u>. On the first day of every month during the Term of this Agreement, Customer shall pay Compute North the Monthly Service Fees and Monthly Package Fees (collectively, the "**Fees**") set forth on the Order Form. Compute North reserves the right to adjust the Monthly Service Fees if the configuration or performance of the Equipment differs materially from that stated on the Order Form, as reasonably determined by Compute North.

6.3. <u>Taxes</u>. All amounts payable by Customer under this Agreement are exclusive of, and Customer shall solely be responsible for paying, all taxes, duties and fees, including federal, state and local taxes on manufacture, sales, gross income, receipts, occupation and use, not based on Compute North's income that arise out of this Agreement.

6.4. <u>Payment Method</u>. All payments due and owing under this Agreement shall be made through automated clearing house ("**ACH**") transfers by Compute North from an account established by Customer at a United States bank designated by Customer (the "**Payment Account**"). Customer hereby agrees to execute and deliver to Compute North or its ACH payment agent an authorization agreement authorizing Compute North to initiate ACH transfers from the Payment Account to Compute North in the amounts required or permitted under this Agreement. For as long as this Agreement remains effective, Customer shall be responsible for all costs, expenses or other fees and charges incurred by Compute North as a result of any failed or returned ACH transfers, whether resulting from insufficient sums being available in the Payment Account or otherwise. Any other payment method must be pre-authorized by Compute North and will be subject to a fee.

6.5. <u>Service Credits</u>. All requests for service credits will be governed by the then-current Compute North credit policy published at *www.computenorth.com/credit-request*. All requests for service credits must be submitted to Compute North online via this link.

7. **Security Interest.** Customer hereby grants a security interest in the Equipment and Acquired Hardware in favor of Compute North to secure the obligations of Customer under this Agreement. Compute North may, at such time as it determines appropriate, file a UCC 1 Financing Statement in such places as it determines to evidence the security interest granted by Customer to Compute North under this Agreement. Customer represents and warrants that it has not granted a security interest in the Equipment or Acquired Hardware in favor of a third party priority over the security interest granted to Compute North herein.

8. **Network and Access.**

8.1. <u>Network</u>. Compute North will provide a minimum of 100 mbps of local network connectivity to each piece of Equipment on a single Ethernet segment. Customer may elect to use Compute North's standard firewall and Dynamic Host Configuration Protocol ("**DHCP**") services by notifying Compute North in writing. Customer is solely responsible for all network and device security, including providing an appropriate firewall and managing passwords. Customer acknowledges and agrees that Compute North may monitor Customer's network usage and traffic and Customer hereby authorizes Compute North to access, collect and use data relating to the Equipment and Customer's use thereof.

8.2. <u>Access</u>. Only those persons specifically authorized by Compute North in writing may access the Facility. Compute North may deny or suspend Customer's access to the Equipment based on Compute North's then-current Security Policies and Procedures, which include, but are not limited to:



8.2.1.   All access into the Facility must be supervised by a Compute North representative;

8.2.2.   Customer shall provide two (2) day' written notice to Compute North prior to any maintenance or repair of the Equipment;

8.2.3.   Customer shall perform Equipment maintenance and repairs during normal business hours (Monday-Friday, 7AM – 6PM Central Time);

8.2.4.   Customer may request immediate or after-hour access to the Facility to perform emergency maintenance. Compute North will make every reasonable attempt to accommodate Customer's after-hour emergency access requests.

Customer shall be solely responsible for any damage or loss caused by anyone acting for or on its behalf while at the Facility.

8.3.   Hazardous Conditions. If, in the reasonable discretion of Compute North, any hazardous conditions arise on, from, or affecting the Facility, whether caused by Customer or a third party, Compute North is hereby authorized to suspend service under this Agreement without subjecting Compute North to any liability.

8.4.   Demand Response/Load Resource Participation Program. Customer acknowledges and understands that Compute North participates in various Demand Response/Load Resource Participation Programs ("**LRP Program**") at its facilities. As set forth in the Customer Handbook, the LRP Program provides the local grid operator with the capability to shut off the power load serving Compute North customers in response to emergency load situations. Customer agrees that the Fees reflect Compute North's participation in the LRP Program and that Compute North shall have no liability to Customer for any actions or omissions due to or resulting from its participation in the LRP Program.

**9.      Pause and Reactivation.**

9.1.   Equipment Pause. At Compute North's sole discretion, and provided that Customer has paid all amounts then due and owing under this Agreement, Compute North may permit Customer may pause and suspend Services for specified Equipment ("**Paused Equipment**"). The pause shall remain in effect until the earlier of (i) the six (6) month anniversary of the date upon which Services were paused and suspended and (ii) the date upon which Customer gives written notice to Compute North that it intends to resume use of the Paused Equipment. If Customer does not resume use of the Paused Equipment by the six (6) month anniversary of the date upon which Services were paused, Customer agrees that legal title to the Equipment shall transfer to Compute North and this Agreement shall be deemed terminated with respect to such Equipment.

9.2.   Reconfiguration. While Services are paused, Compute North may reconfigure and use the Paused Equipment for and on its own behalf. Such use may include revoking Customer's access to the Paused Equipment and reconfiguring the Paused Equipment so that all profits accrue to Compute North's benefit without owing any compensation, payment or other consideration to Customer. Compute North also may remove and store at Customer's risk and expense all or a portion of the Equipment and provide the space previously occupied thereby to a third party without any cost, obligation or liability to Customer. Customer acknowledges and agrees it is and shall remain solely liable for the Paused Equipment at all times during which service is paused and suspended and that Compute North shall not have any liability to Customer for its use of the Paused Equipment or for any loss, deletion or corruption of Customer's data or files on the Paused Equipment.

9.3.   Fees During Pause. Upon reconfiguration of the Paused Equipment by Compute North, Customer shall not owe Fees with respect thereto. Customer otherwise shall remain liable to Compute North



for all amounts due and payable with respect to the Paused Equipment, and the Equipment Term for such Paused Equipment shall be extended by a like period.

9.4. <u>Reactivation</u>. Within five (5) business days of receiving written notice from Customer, Compute North shall reconfigure the identified Paused Equipment for Customer's use. Customer shall pay Compute North its then-current Setup Fee for each device reconfigured for Customer's use, which shall be due and payable to Compute North with its next monthly invoice following reconfiguration.

**10. Removals and Relocation of Equipment.**

10.1. <u>Relocation</u>. Compute North may require Customer to relocate the Equipment within the facility or to another Compute North facility upon twenty (20) days' prior written notice to Customer, provided that the site of relocation shall afford comparable environmental conditions for the Equipment and comparable accessibility to the Equipment. Notwithstanding the foregoing, Compute North shall not arbitrarily or capriciously require Customer to relocate the Equipment. If the Equipment is relocated according to this Section, the reasonable costs of relocating the Equipment and improving the Facility to which the Equipment will be relocated shall be borne by Compute North.

10.2. <u>Interference</u>. If at any time the Equipment causes unacceptable interference to existing or prospective Compute North customers or their Equipment in Compute North's reasonable opinion, Compute North may require Customer to remove or relocate the Equipment at Customer's sole expense. If Customer is unable to cure such interference by relocating the Equipment, Compute North may terminate this Agreement without further obligation to Customer under this Agreement.

10.3. <u>Emergency</u>. In the event of an emergency, as determined in Compute North's reasonable discretion, Compute North may rearrange, remove, or relocate the Equipment without any liability to Compute North. Notwithstanding the foregoing, in the case of emergency, Compute North shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, or relocating the Equipment.

10.4. <u>Equipment Return</u>. Provided that Customer has paid all amounts then due and owing under this Agreement, Compute North shall decommission and make the corresponding Equipment available to Customer for pickup at, or shipment from, the Facility within five (5) business days of Customer's written request. Customer shall be responsible for packing and removing the Equipment from the Facility at its sole cost, expense and risk within seven (7) business days of the date on which Compute North notifies Customer that the Equipment is available for return. If Customer does not remove the Equipment as provided herein, Customer agrees that legal title to the Equipment shall transfer to Compute North. Customer shall remain liable to Compute North for all amounts due for the remainder of the applicable Equipment Term for such Equipment, if any.

**11. Customer Responsibilities.**

11.1. <u>Compliance with Laws</u>. Customer's use of the Facility and the Equipment located at the Facility must at all times conform to all applicable laws, including international laws, the laws of the United States of America, the laws of the states in which Customer is doing business, and the laws of the city, county and state where the Facility is located.

11.2. <u>Licenses and Permits</u>. Customer shall be responsible for obtaining any licenses, permits, consents, and approvals from any federal, state or local government that may be necessary to install, possess, own, or operate the Equipment.

11.3. <u>Insurance</u>. Customer acknowledges that Compute North is not an insurer and Equipment is not covered by any insurance policy held by Compute North. Customer is solely responsible for obtaining insurance coverage for the Equipment. Customer shall have commercial general liability



insurance for both bodily injury and property damage. This insurance shall be maintained by Customer throughout the Term of this Agreement. Compute North shall be named as an "additional insured" with respect to Customer's commercial general liability insurance, as a "named insured" with respect to real property and personal property, if applicable. Customer shall provide copies of insurance certificate showing Compute North as the additional insured or named insured as applicable within ten (10) days of this Agreement. Failure to provide said insurance certificates, or to allow the insurance to lapse or be terminated shall be a Default pursuant to this Agreement.

11.4.   <u>Equipment in Good Working Order</u>. Except with respect to Acquired Hardware, Customer shall be responsible for delivering the Equipment to the Facility in good working order and suitable for use in the Facility. Customer shall be responsible for any and all costs associated with the troubleshooting and repair of Equipment received in non-working order, including parts and labor at Compute North's then-current rates. Compute North is not responsible in any way for installation delays or loss of profits as a result of Equipment deemed not to be in good working order upon arrival at Facility.

11.5.   <u>Modification or Overclocking of Equipment</u>. Customer shall notify and obtain prior written approval from Compute North before any material modifications, alternations, firmware adjustments, over- or under-clocking, or other changes are made to Equipment ("**Modified Equipment**") that is intended to or might cause the Equipment's performance to deviate from the standard or factory specifications. If Compute North determines that any Equipment has been materially altered or modified without Compute North's prior written approval ("**Non-Compliant Equipment**"), it shall be an event of Default. In addition to any other right or remedy it might have, a Default pursuant to this Section shall subject Customer to a Non-Compliant Equipment fee equal to twenty-five percent (25%) of the monthly Fees for such Equipment for each month Equipment was non-compliant.

11.6.   <u>Representations</u>. Customer represents and warrants that (i) it is properly constituted and organized, (ii) it is duly authorized to enter into and perform this Agreement, and (iii) the execution and delivery of this Agreement and its performance of its duties hereunder will not violate the terms of any other agreement to which it is a party or by which it is bound.

12.   **Common Carrier.** Compute North and Customer agree that Compute North is acting solely as a common carrier in its capacity of providing the Service hereunder and is not a publisher of any material or information. Furthermore, Compute North has no right or ability to censor materials or information traversed through Compute North's networks.

13.   **Warranty and Disclaimer**. COMPUTE NORTH MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICES OR THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES, THE FACILITY AND ANY ACQUIRED HARDWARE ARE PROVIDED "AS IS." COMPUTE NORTH DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY AND OTHER CONDITIONS. COMPUTE NORTH MAKES NO WARRANTY WHATSOEVER, AND HEREBY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, WITH RESPECT TO GOODS AND SERVICES SUBJECT TO THIS AGREEMENT, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF NONINFRINGEMENT AND (D) WARRANTY AGAINST INTERFERENCE. COMPUTE NORTH DOES NOT WARRANT THAT (A) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM INTERRUPTION; (B) THE SERVICE OR ACQUIRED HARDWARE WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS EXPRESSLY SET FORTH HEREIN; OR (C) THE SERVICE OR ACQUIRED HARDWARE WILL PROVIDE ANY FUNCTION NOT EXPRESSLY DESIGNATED AND SET FORTH HEREIN.

14.   **Limitation of Liability.**



14.1.   Customer understands and acknowledges that, in certain situations, Services and Equipment functionality may be unavailable due to factors outside of Compute North's control. This includes, but is not limited to force majeure, weather, network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or Acts of God. COMPUTE NORTH SHALL HAVE NO OBLIGATION, RESPONSIBILITY, OR LIABILITY FOR ANY OF THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF COMPUTE NORTH'S REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER COMPUTE NORTH'S CONTROL; OR (E) DAMAGES RESULTING FROM EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.

14.2.   IN NO EVENT SHALL COMPUTE NORTH BE LIABLE TO CUSTOMER OR ANY OTHER PERSON, FIRM, OR ENTITY IN ANY RESPECT, INCLUDING, WITHOUT LIMITATION, FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS, INCLUDING, BUT NOT LIMITED TO, THOSE THAT MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF COMPUTE NORTH PURSUANT TO THIS AGREEMENT. COMPUTE NORTH'S TOTAL CUMULATIVE LIABILITY UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY COMPUTE NORTH FROM CUSTOMER IN THE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE EVENT GIVING RISE TO THE CLAIM.

14.3.   Remedy. Customer's sole remedy for Compute North's non-performance of its obligations under this Agreement shall be a refund of any fees paid to Compute North for the then-current service month. Unless applicable law requires a longer period, any action against Compute North in connection with this Agreement must be commenced within one (1) year after the cause of the action has accrued.

14.4.   Insurance loss. Customer agrees to look exclusively to Customer's insurer to recover for injury or damage in the event of any loss or injury, and releases and waives all right of recovery against Compute North.

**15.   Indemnification.** Customer shall indemnify, hold harmless and defend Compute North, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any and all third-party liability, claim, judgment, loss, cost, expense or damage, including attorneys' fees and legal expenses, arising out of or relating to the Equipment or Customer's use thereof, or any injuries or damages sustained by any person or property due to any direct or indirect act, omission, negligence or misconduct of Customer, its agents, representatives, employees, contractors and their employees and subcontractors and their employees, including due to a breach of this Agreement by Customer. Customer shall not enter into any settlement or resolution with a third party under this section without Compute North's prior written consent, which shall not be unreasonably withheld.

**16.   Miscellaneous.**

16.1.   Lease Agreement. Compute North may lease certain premises in the Facility from the Facility's owner ("**Leaser**") pursuant to a lease agreement ("**Lease**"). Customer is not a party to or a beneficiary under such Lease, if any, and has no rights thereunder; however, Customer shall be



required to adhere to any and all rules of operation established by Leaser for the Facility. Whether owned or leased by Compute North, Customer acknowledges and agrees that it does not have, has not been granted, and will not own or hold any real property interest in the Facility, that it is a licensee and not a tenant, and that it does not have any of the rights, privileges or remedies that a tenant or lessee would have under a real property lease or occupancy agreement.

16.2.  Entire Agreement. This Agreement, including the Order Form and any documents referenced herein, constitutes the parties' entire understanding regarding its subject and supersedes all prior or contemporaneous communications, agreements and understanding between them relating thereto. Customer acknowledges and agrees that it has not, and will not, rely upon any representations, understandings, or other agreements not specifically set forth in this Agreement. This Agreement shall not be superseded, terminated, modified or amended except by express written agreement of the parties that specifically identifies this Agreement.

16.3.  Waiver, Severability. The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

16.4.  Assignment. Neither this Agreement nor any right or obligation arising under this Agreement may be assigned by Customer in whole or in part, without the prior written consent of Compute North at its sole discretion. Compute North may at any time assign, transfer, delegate or subcontract any or all of its rights or obligations under this Agreement without Customer's prior written consent. Subject to the restrictions on assignment of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, and assigns.

16.5.  Force Majeure. Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions: fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing. This also includes planned service and maintenance needs.

16.6.  Governing Law. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Minnesota, without giving effect to principals of conflicts of laws. Any action arising out of or relating to this Agreement shall be brought only in the state or federal courts located in the State of Minnesota, and Recipient consent to the exclusive jurisdiction and venue of such courts. An action by a party to enforce any provision of this Agreement shall not relieve the other party from any of its obligations under this Agreement, and no failure to enforce any provision of this Agreement shall constitute a waiver of any future default or breach of that or any other provision.

16.7.  Relationship of the Parties. The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any agreements or representations on the other's behalf without the other's written consent. Additionally, Compute North shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.



16.8.    Third-Party Beneficiaries. Nothing in this Agreement is intended, nor shall anything herein be construed to confer any rights, legal or equitable, in any person or entity other than the parties hereto and their respective successors and permitted assigns.

16.9.    Construction; Interpretation. Unless the context otherwise requires, words in the singular include the plural, and in the plural include the singular; masculine words include the feminine and neuter; "or" means "either or both" and shall not be construed as exclusive; "including" means "including but not limited to"; "any" and "all" shall not be construed as terms of limitation; and, a reference to a thing (including any right or other intangible asset) includes any part or the whole thereof. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

16.10.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but which together shall constitute one and the same document.

IN WITNESS WHEREOF, the parties have executed this Agreement in a manner appropriate to each and with the authority to do so as of the date set forth below.

**Compute North LLC**

By: _Kristyan Mjolsnes_

Name: Kristyan Mjolsnes

Its: VP of Marketing

**Customer:**

By: _Thomas Heller_

Name: Thomas Heller

Its: Chief Business Office




## Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | Compute North Master Agreement v21.docx |
| **Document created:** | 03/17/2021 14:32:03 |
| **Document pages:** | 9 |
| **Document ID:** | 8f86ca2bdc4d4ad5bc49cf5914f776a15963874f |
| **Document Sent:** | 03/17/2021 17:32:59 UTC |
| **Document Status:** | Signed |
| | 03/18/2021 13:34:16UTC |

| | |
|---|---|
| **Sender:** | sales@computenorth.com |
| **Signers:** | thomas@compassmining.io, kristyan.mjolsnes@computenorth.com |
| **CC:** | |

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | sales@computenorth.com | 03/17/2021 14:32:03 pm UTC | 03/17/2021 14:32:02 pm UTC | 65.158.161.156 |
| SignNow Web Application | Copied from Template | sales@computenorth.com | 03/17/2021 14:32:04 pm UTC | 03/17/2021 14:32:02 pm UTC | 65.158.161.156 |
| iPhone Application v2 | Document Downloaded | sales@computenorth.com | 03/17/2021 16:42:57 pm UTC | | 107.77.207.234 |
| iPhone Application v2 | Document Downloaded | sales@computenorth.com | 03/17/2021 17:33:19 pm UTC | | 107.77.207.234 |
| SignNow Web Application | Viewed the Document | thomas@compassmining.io | 03/17/2021 21:23:53 pm UTC | 03/17/2021 21:23:53 pm UTC | 14.229.189.162 |
| SignNow Web Application | Document Downloaded | thomas@compassmining.io | 03/17/2021 21:24:51 pm UTC | 03/17/2021 21:24:49 pm UTC | 14.229.189.162 |
| SignNow Web Application | Viewed the Document | thomas@compassmining.io | 03/18/2021 13:27:49 pm UTC | 03/18/2021 13:27:49 pm UTC | 59.153.234.148 |
| SignNow Web Application | Signed the Document, Signature ID: 76e2b0c189c848e789a9 | thomas@compassmining.io | 03/18/2021 13:34:16 pm UTC | 03/18/2021 13:34:15 pm UTC | 59.153.234.148 |
| SignNow Web Application | Added a Text | thomas@compassmining.io | 03/18/2021 13:34:16 pm UTC | 03/18/2021 13:34:15 pm UTC | 59.153.234.148 |
| SignNow Web Application | Added a Text | thomas@compassmining.io | 03/18/2021 13:34:16 pm UTC | 03/18/2021 13:34:15 pm UTC | 59.153.234.148 |
| SignNow Web Application | Added a Text | thomas@compassmining.io | 03/18/2021 13:34:16 pm UTC | 03/18/2021 13:34:15 pm UTC | 59.153.234.148 |
| SignNow Web Application | Added a Text | thomas@compassmining.io | 03/18/2021 13:34:16 pm UTC | 03/18/2021 13:34:15 pm UTC | 59.153.234.148 |
| SignNow Web Application | Viewed the Document | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:13 pm UTC | 03/18/2021 18:32:12 pm UTC | 65.158.161.156 |
| SignNow Web Application | Signed the Document, Signature ID: bf07ab770a8d4f2f9ed4 | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:47 pm UTC | 65.158.161.156 |
| SignNow Web Application | Added a Text | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:47 pm UTC | 65.158.161.156 |
| SignNow Web Application | Added a Text | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:47 pm UTC | 65.158.161.156 |
| SignNow Web Application | Signed the Document, Signature ID: 00bced48beb64bc79933 | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:48 pm UTC | 65.158.161.156 |
| SignNow Web Application | Added a Text | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:48 pm UTC | 65.158.161.156 |
| SignNow Web Application | Added a Text | kristyan.mjolsnes@computenorth.com | 03/18/2021 18:32:49 pm UTC | 03/18/2021 18:32:48 pm UTC | 65.158.161.156 |