IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90273 (MI)<br><br>(Jointly Administered) |

### PLAN ADMINISTRATOR'S MOTION TO TREAT EXCESS CASH IN CLAIMS RESERVE ACCOUNTS AS WIND-DOWN DISTRIBUTABLE CASH FOR GENERAL UNSECURED CREDITORS

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

---

[1] On September 28, 2023, the Court entered the *Final Decree Closing Certain Cases and Amending Caption of Remaining Cases* [Docket No. 1287], closing the chapter 11 cases of the following sixteen entities: Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The chapter 11 cases of the remaining three Reorganized Debtors: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551), shall remain open and jointly administered under the above caption. The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

Tribolet Advisors, LLC, in its capacity as Plan Administrator ("Plan Administrator")[2] in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), by and through counsel, hereby files this *Motion to Treat Excess Cash in Claims Reserve Accounts as Wind-Down Distributable Cash for General Unsecured Creditors* (the "Motion"), seeking authority to apply the excess cash remaining in the accounts reserved for allowed administrative, priority, and secured claims as well as professional fees, for distributions to general unsecured creditors, and in support thereof respectfully states as follows:

PROCEDURAL BACKGROUND

1. On September 22, 2022 (the "Petition Date"), each of the above-captioned debtors (the "Debtors" and, as of the effective date of the Plan, the "Reorganized Debtors") commenced a chapter 11 case by filing a voluntary petition for relief in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2. On February 16, 2023, the Court entered an order confirming the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* (the "Confirmation Order" and "Plan", respectively).[3]

3. The Plan Administrator is governed by the Amended Plan Administrator Agreement (the "Plan Administrator Agreement").[4] Pursuant to the Plan, Confirmation Order, and Plan Administrator Agreement, the Plan Administrator is tasked with, among other things: (1) serving as the sole manager, director, and officer of the Reorganized Debtors as of the Plan's

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

[3] Docket No. 1019.

[4] Exhibit E to Docket No. 1079.

2

effective date; (2) implementing the Plan and any applicable orders of the Court; and (3) reconciling and resolving claims asserted against the Reorganized Debtors' estates.[5]

4. The effective date of the Plan occurred on March 31, 2023 (the "Effective Date").[6]

5. The Plan established and provided for the funding of a reserve account for payment of administrative and priority claims (the "Administrative and Priority Claims Reserve"). Specifically, section 2.1.2 of the Plan provides in pertinent part:

> 2.1.2  Administrative and Priority Claims Reserve
>
> As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall fund the Administrative and Priority Claims Reserve in Cash. Any Cash remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Claims and Allowed Priority Claims shall be available for distribution in accordance with the Plan.[7]

6. In addition, the Plan established and provided for the funding of a reserve account containing the sale proceeds of assets securing secured claims (the "Secured Claims Reserve"). Specifically, section 1.1.107 of the Plan provides in pertinent part:

> "Secured Claims Reserve" means the account to be established and maintained by the Plan Administrator and funded with any proceeds of the sale of assets securing the Secured Claims, less the costs of the Plan Administrator that are chargeable against such proceeds under section 506(c) of the Bankruptcy Code.[8]

7. The Plan further established and provided for the funding of an interest-bearing escrow account for payment of professional fees incurred between the Petition Date and the Effective Date (the "Professional Fee Escrow Account" and, together with the Administrative and

---

[5] Plan §§ 4.2.5, 7.3; Confirmation Order ¶¶ 53, 88; Plan Administrator Agreement § 1.3.

[6] Docket No. 1082.

[7] Plan § 2.1.2.

[8] Plan § 1.1.107.

3

Priority Claims Reserve and Secured Claims Reserve, the "Claims Reserve Accounts"). Specifically, section 2.2.2 states in pertinent part:

> On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account . . .. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.[9]

8. The Plan further provides for the collection, recovery, and distribution of certain cash (the "Wind-Down Distributable Cash") to general unsecured creditors. Section 1.1.118 of the Plan defines Wind-Down Distributable Cash as follows:

> "Wind-Down Distributable Cash" means (a) Cash on hand as of the Effective Date; (b) Cash or non-Cash consideration, as monetized, received by or on behalf of the Debtors after the Effective Date; (c) any Excess Sale Proceeds; and (d) the net proceeds of any Retained Causes of Action recovered by the Litigation Trust, minus (e) (1) Cash held in the Distribution Reserve Accounts; (2) U.S. Trustee Fees, and (3) the Professional Fee Escrow Account.[10]

9. Section 4.2.3 of the Plan authorizes the Plan Administrator to "administer, liquidate, monetize, and distribute the Wind-Down Distributable Cash, in accordance with the Plan Administrator Agreement."[11]

10. As set forth in the *Declaration of Michael Tribolet in Support of the Plan Administrator's Motion to Treat Excess Cash in Claims Reserve Accounts as Wind-Down Distributable Cash for General Unsecured Creditors* (the "Tribolet Declaration"), a copy of

---

[9] Plan § 2.2.2.

[10] Plan § 1.1.118. For the sake of clarity, the Administrative and Priority Claims Reserve and the Secured Claims Reserve are among the Distribution Reserve Accounts established by the Plan.

[11] Plan § 4.2.3.

4

which is attached hereto as **Exhibit A**, the claims reconciliation process is complete and all allowed secured, administrative and priority claims (hereafter collectively referred to as the "Allowed Priority Claims") have been paid or otherwise satisfied as of the date of this Motion. A list of the Allowed Priority Claims is attached hereto as **Exhibit B**.

11. In addition, and as set forth in the Tribolet Declaration, all Allowed Professional Fee Claims (as referenced in section 2.2.2 of the Plan) have been paid or otherwise satisfied as of the date of this Motion. A list of the Allowed Professional Fee Claims is attached hereto as **Exhibit C**.

12. After satisfaction of all such Allowed Priority Claims and Allowed Professional Fee Claims, excess funds in the total amount, as of the date of this Motion, of $484,656.52 (the "Excess Reserve Funds") remain in the Claims Reserve Accounts, as follows:

|      | Claims Reserve Account | Account Balance |
|------|------------------------|-----------------|
| i.   | Administrative and Priority Claims Reserve | $293,366.19 |
| ii.  | Secured Claims Reserve | $ 20,755.26 |
| iii. | Professional Fee Escrow Account | $170,974.22 |
|      | Total: | $485,095.67 |

13. The Plan Administrator anticipates that the Professional Fee Escrow Account will generate additional interest payments between the date of this Motion and the date of an order approving this Motion, so that the total amount of Excess Reserve Funds will increase to the extent of any such interest payments.

14. By this Motion, the Plan Administrator seeks authority to treat the Excess Reserve Funds as Wind-Down Distributable Cash under the Plan, such that the Excess Reserve Funds be

5

made available for distributions to general unsecured creditors in accordance with the terms of the Plan.

## BASIS FOR RELIEF

15. As set forth above, the Plan contemplates the establishment of the Claims Reserve Accounts to ensure the full payment of the Allowed Priority Claims and Allowed Professional Fee Claims.

16. However, the Plan is arguably ambiguous concerning the permitted application of any excess funds remaining in the Claims Reserve Accounts following the satisfaction of all such Allowed Priority Claims and Allowed Professional Fee Claims.[12]

17. Absent clear direction from the Plan on the permitted use of the Excess Reserve Funds, the Plan Administrator seeks, out of an abundance of caution, an order authorizing application of the Excess Reserve Funds toward distributions to allowed general unsecured claims.

18. The Motion is properly brought before the Court, which retains jurisdiction over the interpretation and enforcement of the Plan, including to "ensure that distributions to holders of Allowed Claims . . . are made pursuant to the provisions of the Plan" and "enter and implement such orders as may be necessary to execute, implement, or consummate the terms of the Plan."[13]

19. In addition, section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

---

[12] *Compare* Plan § 2.1.2 ("[a]ny Cash remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Claims and Allowed Priority Claims shall be available for distribution in accordance with the Plan.") with Plan § 1.1.118 ("'Wind-Down Distributable Cash'" means: (a) Cash on hand as of the Effective Date . . . minus (e) (1) Cash held in the Distribution Reserve Accounts . . . and (3) the Professional Fee Escrow Account").

[13] Plan §§ 12.1.4, 12.1.7.

20. The Plan Administrator submits that the relief requested herein will further the Plan Administrator's obligations and responsibilities under the Plan, Confirmation Order, and Plan Administrator Agreement.

21. No party will be prejudiced by the relief requested herein.

WHEREFORE, Tribolet Advisors, LLC, as Plan Administrator in the above-captioned Bankruptcy Cases, respectfully requests entry of an order, a proposed form of which is attached hereto, authorizing the application and use of the Excess Reserve Funds as Wind-Down Distributable Cash available for distribution to general unsecured creditors, and for such other relief as the Court deems just and proper.

DATED: March 5, 2024

Respectfully submitted,

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone:   (214) 295-8000
Facsimile:   (972) 232-3098
Email:       crgibbs@mwe.com

*– and –*

Kara E. Casteel (admitted *pro hac vice*)
Jennifer A. Christian (admitted *pro hac vice*)
Nicholas C. Brown (admitted *pro hac vice*)
**ASK LLP**
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone:   (651) 289-3846
Facsimile:   (651) 406-9676

E-mail:  kcasteel@askllp.com
jchristian@askllp.com
nbrown@askllp.com

*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator*

**Certificate of Service**

I certify that on March 5, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

In addition, I certify that on March 5, 2024, I delivered a copy of the foregoing document to Epiq Corporate Restructuring, LLC, as Claims, Noticing, and Solicitation Agent, with instructions to serve it on the master service list in the above-captioned Bankruptcy Cases, all holders of Allowed Priority Claims appearing on the claims register of the above-captioned Bankruptcy Cases and also identified on Exhibit B to the Motion, and all holders of Allowed Professional Fee Claims identified on Exhibit C to the Motion.

*/s/ Charles R. Gibbs*
Charles R. Gibbs