# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), *et al.*, | Case No. No. 22-90273 (MI) |
| Debtors.[1] | (Jointly Administered) |
| Tribolet Advisors LLC, as Litigation Trustee of the Litigation Trust for Mining Project Wind Down Holdings, | |
| Plaintiff, | Adv. No. **Refer to Summons** |
| v. | |
| MVP Logistics, LLC, | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

---

[1] On September 28, 2023, the Court entered the *Final Decree Closing Certain Cases and Amending Caption of Remaining Cases* [Docket No. 1287], closing the following sixteen entities: Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The chapter 11 cases of the remaining three Reorganized Debtors: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551), shall remain open and jointly administered under the above caption. The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

-1-

Tribolet Advisors LLC, in its capacity as Litigation Trustee of the Litigation Trust for Mining Project Wind Down Holdings (the "**Plaintiff**" or "**Trustee**"), by and through its undersigned counsel, files this complaint (the "**Complaint**") to avoid and recover transfers against MVP Logistics, LLC ("**Defendant**") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its affiliated debtors (collectively, the "**Debtors**")[2] pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "**Bankruptcy Code**") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334 and the *Order of*

---

[2] The "Debtors" are all entities listed in footnote 1.

-2-

*Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). The underlying chapter 11 bankruptcy cases are captioned *Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), et al.,* Case No. 22-90273 (MI).

4. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). In addition, Plaintiff confirms its consent, pursuant to Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue of the Debtors' chapter 11 cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

## PROCEDURAL BACKGROUND

7. On September 22, 2022 (the "**Petition Date**"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8. On September 23, 2023, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 43].[3]

---

[3] All docket items referenced are from Case No. 22-90273, under which the Debtors' bankruptcy cases are jointly administered.

-3-

9. On February 16, 2023, the Court entered an order (the "**Confirmation Order**") [Docket No. 1019] confirming the *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and Its Debtor Affiliates* (the "**Plan**") [Docket No. 1019-1] with all supplements and exhibits thereto, as it has been and may be amended, altered, modified, revised, or supplemented from time to time, including: i) the *Second Amended Schedule of Retained Causes of Action* (the "**Retained Causes of Action Schedule**") [Docket No. 843-1], and ii) the *Mining Project Wind Down Holdings, Inc. Amended Litigation Trust Agreement* (the "**Trust Agreement**"). [Docket No. 1079-2, Ex. F].].

10. The effective date of the Plan (the "**Effective Date**") occurred on March 31, 2023. [Docket No. 1869]. In accordance with the Plan and Confirmation Order, the Trust was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Trust Agreement.

11. Pursuant to paragraph 78 of the Confirmation Order and Section 7.2 of the Plan, the Retained Causes Action,[4] including all retained Avoidance Actions under sections 547 through 550 of the Bankruptcy Code, were transferred to the Trust. [Docket No. 1454].

## THE PARTIES

12. Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff was appointed as Trustee and was granted the requisite and exclusive authority to pursue, investigate, institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Retained Causes of Action, including this avoidance action.

---

[4] All terms not defined herein shall have those meanings as ascribed to them in the Confirmation Order, Plan, and/or Litigation Trust Agreement.

13. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that was a third party logistics company to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business has been and is located at 10205 10th Avenue North, Suite A, Plymouth, Minnesota 55441. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of Minnesota.

## FACTUAL BACKGROUND

14. As more fully discussed in the *Disclosure Statement for the Second Amended Joint Liquidating Chapter 11 Plan of Compute North Holdings, Inc. and Its Debtor Affiliates* (the "**Disclosure Statement**"),[5] the Debtors were a leader in and focused on the development and management of sustainable and cost-efficient computer data centers that could be used by customers in the blockchain, cryptocurrency mining, and distributed computing space. The Debtors operated three fully operational facilities and two partially operational facilities which provided services to approximately 84 customers and which contained over 467 containers. The services provided by the Debtors included a) hosting cryptocurrency mining services, b) Bitcoin mining, and c) cryptocurrency equipment sales. As of the Petition Date, the Debtors employed 148 people, including 87 full time salaried employees, 60 full time hourly employees, and 1 part time hourly employee.

15. Prior to the Petition Date, the Debtors, as a hosting services provider, maintained business relationships with various business entities and individuals, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

---

[5] Docket No. 683.

16. The financial difficulties that led to the Debtors' decision to file the chapter 11 cases are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Cases are set forth in the Disclosure Statement and are incorporated herein by reference.[6] As noted in the Disclosure Statement, in 2022 cryptocurrency prices collapsed while the rates charged for electricity, essential for cryptocurrency mining, increased.

17. As described in section 3.2.1 of the Plan and section 1.D of the Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

18. During the ninety (90) days before and including the Petition Date, that is between June 24, 2022 and September 22, 2022 (the "**Preference Period**"), the Debtors continued to operate their business, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise, to various entities.

19. Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements for the purchase of goods and/or services from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "**Agreements**"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account,

---

[6] In particular, the Debtors' prepetition debt structure can be found in section 3.B of the Disclosure Statement, and facts leading to the chapter 11 filing can be found in Article IV.

which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," "Invoice Amount," and the "Payment Date."

20. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A hereto (the "**Transfer**" or "**Transfers**"). The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

21. Plaintiff is seeking to avoid all of the Transfers made by the applicable Debtor(s) to Defendant within the Preference Period.

22. Prior to filing this Complaint, and as part of the due diligence requirements under the statutes applicable to this action, Plaintiff undertook a review of the information and data underlying this avoidance action, which review included, among other things, the identification of the entities on the Retained Causes of Action Schedule.

23. Additionally, on or about October 24, 2023, Plaintiff, through counsel, sent a demand letter (the "**Demand Letter**") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

24. Plaintiff also performed Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the Debtors' books and records in Plaintiff's possession and identified that Defendant potentially has $96,905.68 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an

affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the Debtors' electronic books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this preliminary new value number is subject to adjustment. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

25. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), including the review and evaluation described in the three immediately preceding paragraphs, Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

26. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code. It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtors, as well as interests of the Debtors in property, to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this original Complaint to include the following: (a) further information regarding the Transfer(s); (b) additional transfers; (c) modifications of and/or revision to Defendant's name; (d) additional defendants; (e) additional Debtor plaintiffs; and/or (f) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

27. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

28. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made each Transfer to or for the benefit of Defendant in an aggregate amount not less than $322,608.62.

29. Each Transfer was made from the Debtor(s) identified on Exhibit A, and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

30. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

31. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

32. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

33. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

34. Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

35. As a result of each Transfer, Defendant received more than Defendant would have received if: (a) the Debtors' chapter 11 cases were cases under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) Defendant received distributions on account of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, and as described in the Plan and Disclosure Statement, the Debtors' liabilities exceed their assets such that the Debtors' unsecured creditors, among other creditors, will not receive payment of their claims in full from the Debtors' bankruptcy estates.

36. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## Second Claim for Relief
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

37. Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

38. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s)

making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "**Potentially Fraudulent Transfers**"); and

  A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

  B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

  C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

  39. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

### Third Claim for Relief
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

  40. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with the allegations contained in this Third Claim for Relief.

  41. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "**Avoidable Transfers**").

  42. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

  43. Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## Fourth Claim for Relief
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

44. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

45. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

46. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

47. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against Plaintiff or the Debtors must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

48. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate

and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.  On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors or Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to section 502(d) and (j) of the Bankruptcy Code; and

C.  Such other and further relief as this Court may deem just and proper.

Dated: April 17, 2024

**ASK LLP**

By: /s/ *Kara E. Casteel*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
Richard Reding, Esq., MN SBN 0389945
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3842
Fax: (651) 406-9676
Email: rreding@askllp.com

*Attorneys for Plaintiff*