IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>MINING PROJECT WIND DOWN HOLDINGS, INC. (f/k/a Compute North Holdings, Inc.), *et al.*,<br><br>    Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 22-90273 (MI)<br><br>(Jointly Administered) |
| TRIBOLET ADVISORS LLC, AS PLAN ADMINISTRATOR AND TRUSTEE FOR THE MINING PROJECT WIND DOWN HOLDINGS, INC. LITIGATION TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>RELM INSURANCE LTD., BANYAN RISK LTD., DAVID PERRILL, DRAKE HARVEY III, KYLE WENZEL, BRETT KITTILSTVED, AND BREANNA BAKER,<br><br>    Defendants. | Adv. Pro. No. _____ |

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238).  The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

**COMPLAINT FOR INJUNCTIVE RELIEF**

Tribolet Advisors LLC ("Plaintiff"), in its capacity as (i) plan administrator for the confirmed chapter 11 plan (the "Plan") of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its debtor affiliates (collectively, the "Debtors" and, as of the Plan's effective date, the "Reorganized Debtors") and (ii) trustee for the Mining Project Wind Down Holdings, Inc. Litigation Trust established under the Plan (the "Litigation Trust"), files this adversary complaint (the "Complaint") for a temporary injunction against the following defendants (collectively, the "Defendants"): (i) the Debtors' insurers—Relm Insurance Ltd. and Banyan Risk Ltd. (collectively, the "Insurers"); and (ii) the defendants in *BitNile, Inc. v. Perrill, et al.*, Case No. 0:22-cv-02911-WMW-DLM (D. Minn.) (the "Minnesota Action")—David Perrill, Drake Harvey III, Kyle Wenzel, Brett Kittilstved, and Breanna Baker (collectively, the "Minnesota Defendants"). In support of the Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE ACTION**

1. Plaintiff, as the successor to the Debtors, brings this action to ensure that the limited proceeds of certain insurance policies issued to the Debtors by the Insurers (collectively, the "D&O Policies") will be preserved and made available to the Debtors' creditors rather than be depleted by the claims brought by a single unsecured creditor—Sentinum, Inc. (f/k/a BitNile Inc.) ("BitNile").

2. There are competing claims involving the Debtors' former directors and officers: (i) the claims asserted by BitNile in the Minnesota Action and (ii) the claims transferred to the Litigation Trust under the Plan that are being pursued by Plaintiff in accordance with the Plan's mandate. Both sets of claims implicate the D&O Policies.

3. Despite BitNile's and the Litigation Trust's competing claims against the insureds under the D&O Policies, the Litigation Trust is the only victim with claims that are covered under

2

the D&O Policies' terms. The claims for which BitNile seeks to recover in the Minnesota Action—claims for fraud and conspiracy to commit fraud—are excluded from coverage under the D&O Policies. Accordingly, any payment from the D&O Policies to the Minnesota Defendants would deplete the policies on non-covered claims while reducing the amounts available to satisfy the Litigation Trust's covered claims.

4. The allocation and distribution of proceeds from the D&O Policies are vitally important to the Litigation Trust and its recovery efforts. Because the D&O Policies represent a limited pool of assets, Plaintiff's directive to bring claims and recover money for the benefit of the Debtors' creditors would be irreparably damaged if the D&O Policies were depleted in an action benefiting a single creditor.

5. Absent an appropriate injunction to preserve the D&O Policies, their limited proceeds may be expended before the Litigation Trust has had the opportunity to litigate its claims, which would be to the direct detriment of the Debtors' creditors. Plaintiff therefore requests that the Defendants be enjoined from utilizing the D&O Policies' proceeds in connection with the Minnesota Action until Plaintiff resolves, whether through settlement or litigation, the Litigation Trust's own claims against the Debtors' former directors and officers.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012, Section 12 of the Plan, and the Court's inherent authority and jurisdiction to interpret and enforce its own orders.

7. The Plan provides that the Court retains "exclusive jurisdiction over all matters arising out of or relating to" the Plan.

8. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This matter is a "core" proceeding that may be heard and determined by the Court pursuant to 28 U.S.C. § 157(b).

10. The Court may grant the relief sought in the Complaint pursuant to sections 105 and 1142 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11. In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## THE PARTIES

**I.   Plaintiff**

12. Tribolet Advisors LLC, in its capacity as plan administrator for the Plan and trustee for the Litigation Trust, is Plaintiff herein and may be served in this case through its undersigned counsel.

13. The Litigation Trust was established to bring certain of the Debtors' causes of action and to recover funds for the benefit of the Debtors' creditors.

14. Pursuant to the Plan, Plaintiff is the sole representative of the Reorganized Debtors' estates and has authority to administer, pursue, prosecute, litigate, settle, dismiss, or otherwise take action with respect to the claims and causes of action of the Debtors that were preserved under the Plan.

## II. The Insurers

15. Defendant Relm Insurance Ltd. ("Relm"), upon information and belief, is a Bermuda limited company.

16. Defendant Banyan Risk Ltd. ("Banyan"), upon information and belief, is a Bermuda limited company.

## III. The Minnesota Defendants

17. Defendant David Perrill, an individual, upon information and belief, resides in Eden Prairie, Minnesota, and was the founder and former Chief Executive Officer of the Debtors and a member of the Debtors' Board of Directors.

18. Defendant Drake Harvey III, an individual, upon information and belief, resides in Jacksonville, Florida, and was the former Chief Operating Officer, Chief Executive Officer, and President of the Debtors.

19. Defendant Kyle Wenzel, an individual, upon information and belief, resides in Minneapolis, Minnesota, and was the former Chief Commercial Officer and Vice President of Sales of the Debtors.

20. Defendant Brett Kittilstved, an individual, upon information and belief, resides in Minneapolis, Minnesota, and was the former Director of Sales of the Debtors.

21. Defendant Breanna Baker, an individual, upon information and belief, resides in Hopkins, Minnesota, and was the former Enterprise Account Executive of the Debtors.

## BACKGROUND

### I. The Chapter 11 Cases

22. The Debtors commenced these chapter 11 cases on September 22, 2022 (the "Petition Date").

5

23. On February 16, 2023, the Court entered an order confirming the Plan (the "Confirmation Order"). The effective date of the Plan occurred on March 31, 2023 (the "Effective Date").

24. On the Effective Date, all remaining estate assets were vested in the Reorganized Debtors to be administered, liquidated, and distributed by Plaintiff in accordance with the Plan and Plan Administrator Agreement.

25. Pursuant to the Plan and Confirmation Order, Plaintiff, in its capacity as plan administrator for the Plan, became the sole manager, director, and officer of the Reorganized Debtors. Plaintiff's responsibilities include making all disbursements and distributions required under the Plan and Plan Administrator Agreement.

26. Plaintiff also serves as trustee for the Litigation Trust. On the Effective Date, pursuant to Bankruptcy Code section 1123(b), certain retained claims and causes of action (the "Retained Causes of Action") were transferred and vested in the Litigation Trust. The Retained Causes of Action include any and all causes of action related to the Reorganized Debtors' insurance policies.

## II. The Litigation Trust Claims

27. After the Effective Date, Plaintiff began an investigation into the Retained Causes of Action and the circumstances precipitating the Debtors' bankruptcy filings. This investigation revealed serious breaches of fiduciary duty and other acts of malfeasance by certain of the Debtors' former directors, officers, and/or high-ranking employees (collectively, the "Directors and Officers").

28. On June 27, 2024, Plaintiff sent a demand letter and draft complaint (the "Draft Complaint") to certain Directors and Officers, which include several of the Minnesota Defendants.

The claims set forth in the Draft Complaint (collectively, the "Estate D&O Claims") include claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and others.

29. If a negotiated settlement of the Estate D&O Claims cannot be reached, Plaintiff intends to file the Draft Complaint and pursue the Estate D&O Claims to judgment.

30. The Draft Complaint seeks to recover damages in excess of $100 million on behalf of the Debtors' creditors, which far exceeds the limits of the D&O Policies.

### III. The Minnesota Action

31. On November 15, 2022, BitNile filed the Minnesota Action in the United States District Court for the District of Minnesota (the "Minnesota Court").

32. In a three-count complaint, BitNile alleges that the Minnesota Defendants are liable to BitNile for (i) fraud, (ii) fraudulent concealment, and (iii) civil conspiracy. (Dkt. No. 1.) BitNile seeks to recover monetary damages against the Minnesota Defendants in an amount to be determined at trial, plus expenses, costs, and fees (including attorney's fees).

33. On February 13, 2023, the Minnesota Defendants filed a motion seeking to dismiss the Minnesota Action for failure to state a claim on which relief can be granted. (Dkt. No. 24.) On September 5, 2023, the Minnesota Court denied the Motion. (Dkt. No. 45.)

34. As of the date hereof, the Minnesota Action remains pending before the Minnesota Court.

### IV. The D&O Policies

35. Prior to the Petition Date, the Debtors obtained the following D&O Policies: (i) Policy No. RILPDO5992022 from Relm, with a policy period from March 21, 2022 to September 21, 2028; (ii) Policy No. RILPDO5992022 from Relm, with a policy period from

September 22, 2022 to September 21, 2028; and (iii) Policy No. 101-XDO-1030-101 from Banyan, with a policy period from August 4, 2022 through September 22, 2028.

36. Current and former directors, officers, other members of the Debtors' management team, and employees are covered under the D&O Policies. The D&O Policies, however, expressly exclude from coverage any claims based upon, arising out of, or attributable to "any deliberately fraudulent act or omission."

37. The treatment of the D&O Policies was a critical component in the negotiation and approval of the Plan. Both the Plan and Confirmation Order provide that all insurance policies issued to the Debtors before the Petition Date, including the D&O Policies, would continue in effect after the Effective Date and that, to the extent the insurance policies constitute executory contracts, the Plan constituted a motion to assume such policies. The Plan also expressly reserved all causes of action against any party that provided insurance coverage to the Reorganized Debtors for claims arising under or related to any applicable policy, which include the D&O Policies.

38. The Directors and Officers named in the Draft Complaint likely lack sufficient personal assets to pay a large judgment. More significantly—unlike BitNile—the Litigation Trust's ability to recover on account of the Estate D&O Claims is circumscribed by the Plan's releases.

39. The D&O Policies collectively provide, at most, $10 million in coverage. Moreover, upon information and belief, approximately $2 million of that amount has already been paid out from the D&O Policies as of the date hereof. If the Litigation Trust reaches a favorable resolution of the Estate D&O Claims, Plaintiff believes the amount of insurance under the D&O Policies will be insufficient to cover the Estate D&O Claims.

40. Because the proceeds of the D&O Policies are likely inadequate to satisfy the Estate D&O Claims, the distribution of any proceeds from the D&O Policies directly affects the assets available to the Litigation Trust and, therefore, implementation of the Plan. The settlement embodied in the Plan was the result of extensive negotiations by the official creditors' committee on behalf of the creditors who are the beneficiaries of the Litigation Trust. To induce creditors to support the Plan and the releases granted thereunder, the Plan specifically contemplated that the Litigation Trust would have the benefit of the D&O Policies and the proceeds therefrom to pursue recoveries for creditors for the massive losses they sustained.

41. Depletion of the D&O Policies threatens to leave the Litigation Trust with little to no avenue for recovery (or, at least, no meaningful recovery) with respect to its claims against the Directors and Officers who, as alleged in the Draft Complaint, recklessly and in bad faith caused the Debtors' bankruptcy. Consequently, the Litigation Trust's mandate and right to pursue and resolve the Estate D&O Claims would be substantially impaired if the Insurers made any payment with respect to the Minnesota Action prior to the settlement or adjudication of the Estate D&O Claims.

42. Therefore, to prevent irreparable injury to the Debtors' estates and creditors, Plaintiff requests that the Court temporarily enjoin the Defendants from utilizing any proceeds of the D&O Policies until the Litigation Trust has had an opportunity to resolve the Estate D&O Claims.

**COUNT I**
**Preliminary Injunction Pursuant to Bankruptcy Code Sections 105 and 1142**
**(Against All Defendants)**

43. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

44. Bankruptcy Code section 105(a) permits bankruptcy courts to issue any order or judgment, including injunctions, that are "necessary" or "appropriate" to assure the proper administration of the bankruptcy estate. 11 U.S.C. § 105(a); *see also Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 56 (E.D. Tex. 1996) ("[S]ection 105 [of 11 U.S.C.] permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." (quoting *In re American Hardwoods (American Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 625 (9th Cir. 1989))) (alterations in original). Section 1142(b) further permits bankruptcy courts to issue any order necessary to implement a confirmed chapter 11 plan. *In re WorldCom, Inc.*, 352 B.R. 369, 372 (Bankr. S.D.N.Y. 2006) ("Acting pursuant to section 1142(b), the court may issue any order necessary for the implementation of the plan." (quoting 8 Collier on Bankruptcy ¶ 1142.03 (15th ed. 2006)). Finally, pursuant to these authorities, section 12.1.10 of the Plan authorizes the Court to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan."

45. The D&O Policies and their proceeds should be preserved for the benefit of the Litigation Trust and the creditors who are the Litigation Trust's beneficiaries and should not be depleted on the non-covered claims of a single creditor in the Minnesota Action.

46. The Litigation Trust does not have adequate remedies available at law, such as monetary damages, against the Defendants if the proceeds of the D&O Policies are expended to pay amounts in connection with the Minnesota Action.

47. The Litigation Trust has and will continue to suffer irreparable harm if the Defendants are not enjoined from utilizing the D&O Policies because, among other reasons, the amount of insurance remaining under the D&O Policies is likely insufficient to cover the Estate

D&O Claims.  Further, upon information and belief, the Directors and Officers named in the Draft Complaint likely do not have sufficient personal assets to pay a judgment to the Litigation Trust.  As a result, the Litigation Trust is dependent upon receiving the proceeds of the D&O Policies to recover on the Estate D&O Claims.

48. The distribution of the proceeds from the D&O Policies affects the bankruptcy estate and the equitable allocation of property among the Debtors' creditors.  Specifically, any payment made by the Insurers on behalf of the Minnesota Defendants in connection with the Minnesota Action would reduce the amounts available under the D&O Policies—the Litigation Trust's primary and perhaps sole source of recovery on the Estate D&O Claims—and would therefore impair the assets ultimately available to the Litigation Trust for distribution to its beneficiaries in accordance with the Plan.

49. The Plan provided for the assumption of the D&O Policies and the preservation of the Debtors' claims to the D&O Policies.  The purpose of these provisions was to preserve this source of recovery and ensure that the Debtors' creditors receive their pro rata share of such assets.  The Litigation Trust, which is pursuing the Estate D&O Claims on behalf of all creditors, has a superior right to the proceeds of the D&O Policies, and its claims must be paid first to prevent the inequitable depletion of the D&O Policies.  An injunction against the Defendants, as requested herein, is therefore necessary or appropriate to carry out the provisions of the Plan.

50. The public interest would not be disserved by the requested injunction.

51. For these reasons, Plaintiff requests that the Court temporarily enjoin the Defendants from using proceeds of the D&O Policies to pay any amount in connection with the Minnesota Action until such time that the Litigation Trust has resolved, through a final non-appealable settlement or judgment, the Estate D&O Claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff (i) temporarily enjoining the Defendants from using the proceeds from the D&O Policies to pay any amount in connection with the Minnesota Action until such time that the Litigation Trust has resolved, through a final non-appealable settlement or judgment, the Estate D&O Claims, and (ii) awarding such equitable or other relief as the Court deems just and proper.

Dated: July 17, 2024

Respectfully submitted,

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Tel:   (214) 295-8000
Fax:   (972) 232-3098
Email: crgibbs@mwe.com

- *and* -

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Stacy A. Lutkus (admitted *pro hac vice*)
Jessica Greer Griffith (admitted *pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
Christopher J. Whalen (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-5404
Tel:   (212) 547-5400
Fax:   (212) 547-5444
Email: kgoing@mwe.com
       dazman@mwe.com
       salutkus@mwe.com
       ggriffith@mwe.com
       nrowles@mwe.com
       chwhalen@mwe.com

*Counsel to the Mining Project Wind Down Holdings, Inc. Litigation Trust and the Plan Administrator*