IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MINING PROJECT WIND DOWN HOLDINGS, | § | CASE NO. 22-90273-MI |
| INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | § | |
| | § | (Jointly Administered) |
| Reorganized Debtors.[1] | § | |
| | § | |

### RESPONSE OF DAVID PERRILL TO THE AMENDED EMERGENCY MOTION OF THE PLAN ADMINISTRATOR AND LITIGATION TRUSTEE FOR ORDER (I) AUTHORIZING AMENDMENT TO LITIGATION TRUST AGREEMENT AND (II) GRANTING RELATED RELIEF

David Perrill ("Mr. Perrill"), hereby files his Response (this "Response") to the

*Amended Emergency Motion of the Plan Administrator and Litigation Trustee for Order*

*(I) Authorizing Amendment to Litigation Trust Agreement and (II) Granting Related Relief*

---

[1] On September 28, 2023, the Court entered the Final Decree Closing Certain Cases and Amending Caption of Remaining Cases [Docket No. 1287], closing the chapter 11 cases of the following sixteen entities: Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The chapter 11 cases of the remaining three Reorganized Debtors: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); and Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551), remain open and jointly administered under the above caption. The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

[ECF No. 1482] (the "Motion"), and, in opposition to the relief requested in the Motion, respectfully states as follows:

I.      BACKGROUND

1.      Mr. Perrill is a former executive officer and director of Compute North Holdings, Inc. n/k/a Mining Project Wind Down Holdings, Inc. and its affiliated companies (the "Debtors"). In 2017, Mr. Perrill co-founded the Debtors, which grew to become a leader in Bitcoin, energy, and data center operations. The Debtors raised over $85 million in equity and achieved a valuation of nearly $950 million during its 2022 Series B funding round. The Debtors earned significant accolades, including recognition as the fastest-growing company in Minnesota, and Mr. Perrill was named Ernst & Young Entrepreneur of the Year. Alongside the Series B funding, Compute North refinanced its debt through Generate Lending, LLC ("Generate"), which provided a $300 million debt commitment. Shortly thereafter, Generate invoked technical defaults and aggressively enforced these defaults, which destabilized the Debtors and precipitated the Debtors' financial challenges. ECF No. 683 at 34. In July 2022, upon the advice of the Debtors' restructuring counsel, the Debtors formed an independent committee to guide the company through its financial difficulties and ensure impartiality in decision-making with respect to a potential bankruptcy filing. On September 1, 2022, the Debtors' board asked Mr. Perrill to step down as CEO. On September 22, 2022, the Debtors filed their chapter 11 petitions, and the Debtors' assets were subsequently liquidated.

2.      On January 31, 2023, the Debtors filed their *Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [ECF No. 889] (the "Plan"). On February 16, 2023, the Court entered its *Order (A) Approving the Debtors' Disclosure Statement on a Final Basis and (B)*

2

*Confirming the Third Amended Joint Liquidating Chapter 11 Plan of Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) and its Debtor Affiliates* [ECF No. 1019] (the "Confirmation Order"). Included in the Debtors' plan supplement were the Litigation Trust Agreement [ECF No. 1079-2] and the Plan Administrator Agreement [ECF No. 1079-1]. Upon the Effective Date of the Plan, Tribolet Advisors, LLC was appointed as Plan Administrator and Litigation Trustee (the "Litigation Trustee"), and Decimal Digital Currency I, LLC and Touzi Capital, LLC ("Touzi") were appointed to the Plan Oversight Committee. See Confirmation Order ¶ 53.

3. Despite allegations to the contrary, Mr. Perrill was not enriched by the Debtors, and, in fact, lost more than $1.33 million that he contributed to the Debtors in addition to his equity holdings that had been valued at over $107 million. Moreover, Mr. Perrill was entitled to $300,000 in severance which the Debtors never paid.[2] To add insult to injury and despite the Plan's broad releases in favor of Mr. Perrill and other officers and directors, Mr. Perrill has had to incur more than $560,000 in legal costs defending unfounded allegations made by the Litigation Trustee and others. As a result of the Litigation Trustee's actions, these amounts have not been reimbursed by the Debtors' D&O liability insurers. See ECF No. 1472.

4. The Plan provides for broad releases in favor of Mr. Perrill, to the extent his liability exceeds the coverage amounts of applicable D&O policies, except for actual fraud, willful misconduct, or gross negligence. See Plan § 9.3; 1.1.98.[3] Nevertheless, the Liquidating

---

[2] Mr. Perrill filed a proof of claim for his unpaid severance. See Claims Register No. 10002.

[3] Retained Causes of Action were not released, but Mr. Perrill is not identified as a party that is the subject of a Retained Cause of Action. See ECF No. 843, Ex. B.

3

Trustee filed the adversary proceeding styled as *Tribolet Advisors, LLC, as Plan Administrator and Trustee for the Mining Project Wind Down Holdings Inc. Litigation Trust v. David Perrill, et al.*, Adversary Proceeding No. 24-03278 (the "D&O Proceeding"), alleging various causes of action which were released under the Plan.

     5.     Section 4.8 of the Plan provides:

> After the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

Plan § 4.8. Section 5.4 of the Plan provides, in part: "Coverage for defense and indemnity under any of the D&O Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies." Id. § 5.4. Despite the Plan's clear mandate that Mr. Perrill would be entitled to continued insurance coverage, and that the Litigation Trustee would not cause the Reorganized Debtors to impair Mr. Perrill's coverage, the Litigation Trustee filed the adversary proceeding styled as *Tribolet Advisors, LLC, as Plan Administrator and Trustee for the Mining Project Wind Down Holdings Inc. Litigation Trust v. Relm Insurance Ltd., et al.*, Adversary Proceeding No. 24-03144 (the "Relm Proceeding"), in which the Litigation Trustee seeks a judgment "enjoining the Insurers and Minnesota Defendants [including Mr. Perrill] from using the proceeds from the D&O Policies to pay any amount in connection with the [Bitnile litigation pending in Minnesota] until such time that the Litigation Trust has resolved, through a final non-

4

appealable settlement or judgment, the Estate D&O Claims." Relm Proceeding, Second Amended Complaint for Injunctive Relief at 16.[4]

6. Touzi and its principal Eng Taing were sued in California state court on August 10, 2023. Mot. ¶ 6. On November 20, 2024, the Securities and Exchange Commission filed a complaint against Touzi and Mr. Taing for allegedly misleading investors and misusing investor funds in violation of federal securities laws. Id. On October 7, 2024, a receiver (the "Receiver") was appointed in the California state court action. Id. ¶ 7. The Litigation Trustee asserts that "it became aware of the Receiver's appointment on January 9, 2025." Id.[5] The Litigation Trustee was given notice of various allegations that Touzi had committee fraud by November 25, 2024, at the latest, when Vince Faridini, an individual that claims to have invested with Touzi, began filing serval notices on the Debtors' docket, including a *Notice of Pending Litigation* [ECF No. 1461], and *Plaintiff's Amendment to Motion for Relief* [ECF No. 1468], in which Mr. Faridini asked that the Court "Reassess the role of Touzi Capital LLC and Eng Taing on the oversight committee and take appropriate action to protect the estate's integrity." Despite the allegations swirling around Touzi, no action was apparently taken by the Litigation Trustee to determine whether it was appropriate to remove Touzi from the Plan Oversight Committee.

7. Section 8.01(g) of the Litigation Trust Agreement provides:

Following the Effective Date, the Litigation Trustee, on behalf of the Litigation Trust, shall file with the Bankruptcy Court, no later than 45 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the

---

[4] Similarly, the Litigation Trustee's recent opposition to the Debtors' insurer seeking relief to ensure that it could advance defense costs to Insured's was entirely at odds with the plain terms of the Plan.

[5] The Litigation Trustee does not indicate how it became aware of the Receiver's appointment.

5

administration of the Litigation Trust Assets, Distributions made by it, and other matters relating to the implementation of the Litigation Trust and the Plan.

Litigation Trust Agreement § 8.01(g). A review of the docket does not review any semi-annual reports having been filed since the Effective Date. As a result, creditors have no insight into what Litigation Trust Assets have been administered, what recoveries have been made, or how much the Litigation Trust is expending on specious litigation such as the D&O Proceeding and Relm Proceeding.[6]

## II. DISCUSSION

8. Through the Motion, the Litigation Trustee seeks an amendment to the Litigation Trust Agreement and an order "deeming the Plan Administrator Agreement and the Plan (together, the 'Plan Documents') amended to reflect such amendment." Mot. at 2. The Litigation Trustee is requesting emergency relief, but the Litigation Trustee has provided no explanation of the emergency except that "the Plan Documents require ongoing consultation with the Plan Oversight Committee as well as the approval of the Plan Oversight Committee with respect to **certain** matters, the [Litigation Trustee] submits that granting the requested relief on an expedited basis is necessary to facilitate the continued implementation of the Plan." Id. ¶ 16. Nowhere does the Litigation Trustee explain what the "certain matters" are that require approval.

9. Mr. Perrill has grave concerns regarding the Plan Oversight Committee's oversight to date and the fact that Touzi has continued to serve on the Plan Oversight

---

[6] Upon information and belief, the Litigation Trust has spent over $13,700 maintaining the Debtors' phone, email, and conferencing systems even though the Reorganized Debtors have no employees or operations. Semi-annual reporting might shed some light on whether Litigation Trust resources are being properly utilized.

6

Committee to date. Mr. Perrill does not oppose the resignation of Touzi from the Plan Oversight Committee, but allowing a single member would necessarily cut down on actual oversight and presumably continue the *status quo* of wasteful litigation that drains the estate's resources and is in stark violation of the Plan's terms.

10. Given that the Litigation Trust Agreement contemplates that a Plan Oversight Committee member can resign, there is no reason to amend the Litigation Trust Agreement.[7] Instead, a successor member of the Plan Oversight Committee should be appointed. The Plan Oversight Committee should continue to have at least two members, and if a replacement member of the Plan Oversight Committee cannot be chosen, the United States Trustee should appoint a replacement member.

11. As noted in the Motion, the Debtors seek to modify not just the Litigation Trust Agreement, but also request that the Court "[deem] the Plan Administrator Agreement and the Plan (together, the 'Plan Documents') amended to reflect such amendment." Mot. at 2; see also Mot. ¶ 11. Although the Litigation Trustee included a redline reflecting the proposed changes to the Litigation Trust Agreement, the Litigation Trustee did not include anything reflecting the proposed amendments to the Plan Documents. At a minimum, the Litigation Trustee should be required to file their proposed amendments to the Plan Documents before the Court allows such "deemed" amendments.

12. As the Litigation Trustee admits, the Plan has been substantially consummated. As a result, Bankruptcy Code section 1127(b) prevents modification of the Plan except in

---

[7] Section 6.05(b) of the Litigation Trust Agreement provides: "A member of the Plan Oversight Committee may resign at any time by providing a written notice (with email being sufficient) of resignation to the remaining members of the Plan Oversight Committee. Such resignation will be effective when a successor is appointed as provided herein." Id. § 6.05(b).

7

unforeseen circumstances. See id. ¶ 13. The Litigation Trustee argues that the modification should be approved because it is simply "a ministerial change affecting the Plan Oversight Committee's internal governance." Id. ¶ 15. However, if properly functioning, the Plan Oversight Committee will have oversight on all significant litigation decisions in these cases. Removing one-half of the Plan Oversight Committee and leaving in place a single member that has apparently not exercised oversight is not the answer.

### III. CONCLUSION

13. The Litigation Trustee asserts that it needs emergency relief to alter the terms of the Litigation Trust Agreement and Plan Documents, but has provided no explanation of the emergency. Mr. Perrill does not object to the removal of Touzi from the Plan Oversight Committee, but the United States Trustee should select a replacement for Touzi that will actually exercise real oversight over the Litigation Trustee and perhaps reign in some the wasteful litigation being pursued. The Court should order compliance with the Litigation Trust Agreement's reporting requirements. Such reporting should, at a minimum, include: the value of the Litigation Trust Assets by category of asset; the Litigation Trust's administrative expenses by category; any distributions; and information regarding the Litigation Trustee's progress towards fully administering the Litigation Trust Assets.

Dated:  January 24, 2025
      Atlanta, GA

**KILPATRICK TOWNSEND & STOCKTON LLP**

By:  /s/ *Colin M. Bernardino*

Patrick E. Gaas
Texas Bar No. 07562790
Heather Asselin
Texas Bar No. 00797143
TC Energy Center

700 Louisiana, Suite 4300
Houston, Texas 77002
Telephone:  (281) 809-4100
Facsimile:  (281) 829-0787
pgaas@ktslaw.com
hasselin@ktslaw.com

-and-

Colin M. Bernardino
Georgia Bar. No. 054879 (admitted *pro hac vice*)
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6515
Email:  cbernardino@ktslaw.com

*Counsel to David Perrill*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of January, 2025, a true and correct copy of the foregoing Response was served by electronic transmission upon all parties eligible to receive service through this Court's CM/ECF system.

/s/ Colin M. Bernardino